Hearing Date: TBD at ___ a.m. (Prevailing Eastern Time)
Objection Deadline: TBD at ___ p.m. (Prevailing Eastern Time)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Jay M. Goffman
J. Eric Ivester
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

-and-

James J. Mazza, Jr. (*pro hac vice pending*)
Louis S. Chiappetta (*pro hac vice pending*)
155 N. Wacker Dr.
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411

*Proposed Counsel for Debtors
and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SUNEDISON, INC., *et al.*, | : | Case No. 16-10992 (SMB) |
| | : | |
| Debtors.[1] | : | (Joint Administration Pending) |
| | : | |

### DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 366 (I) APPROVING DEBTORS' PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT, (II) ESTABLISHING PROCEDURES FOR

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A). The address of the Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

**RESOLVING OBJECTIONS BY UTILITY COMPANIES, AND (III) PROHIBITING
UTILITY COMPANIES FROM
ALTERING, REFUSING, OR DISCONTINUING SERVICE**

SunEdison, Inc. ("SUNE") and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" and, together with their non-Debtor affiliates, "SunEdison" or the "Company")[2] hereby move (the "Motion") this Court for entry of an order substantially in the form attached hereto as Exhibit A (the "Order"), under sections 105(a) and 366 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) approving the Debtors' proposed form of adequate assurance of postpetition payment to the Utility Companies (as defined below); (ii) establishing procedures for resolving any objections by the Utility Companies relating to the Proposed Adequate Assurance (as defined below); and (iii) prohibiting the Utility Companies from altering, refusing, or discontinuing service to, or discriminating against, the Debtors solely on the basis of the commencement of the Chapter 11 Cases (as defined below), a debt that is owed by the Debtors for services rendered prior to the Petition Date (as defined below), or on account of any perceived inadequacy of the Debtors' Proposed Adequate Assurance. In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of Patrick M. Cook, Vice-President – Capital Markets and Corporate Finance of SunEdison, Inc., in Support of Chapter 11 Petitions and First Day Pleadings (the "First Day Declaration"), filed with the Court concurrently herewith. In further support of the Motion, the Debtors, by and through their proposed undersigned counsel, respectfully represent:

---

[2] For purposes herein, the definition of "SunEdison" and "Company" does not include Terraform Power, Inc. and Terraform Global, Inc., and each of their respective direct and indirect subsidiaries, unless otherwise provided.

## JURISDICTION AND VENUE

1.       This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.       The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a) and 366 and Bankruptcy Rule 6004.

## BACKGROUND

**A.       The Chapter 11 Cases**

3.       On the date hereof (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  The Debtors have requested that the Chapter 11 Cases be jointly administered.

4.       The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

5.       To date, no creditors' committee has been appointed in these Chapter 11 Cases by the Office of the United States Trustee for the Southern District of New York (the "United States Trustee").   No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.

6.       SunEdison is one of the world's leading developers of renewable-energy solutions.   In addition to its development business, SunEdison owns, operates and/or provides maintenance services for clean power generation assets.  SunEdison's renewable-energy development business is a global enterprise with substantial development activities on six continents.

3

7.      Additional factual background information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to these Chapter 11 Cases, is set forth in detail in the First Day Declaration.[3]

## RELIEF REQUESTED

8.      By the Motion, pursuant to Bankruptcy Code sections 105(a) and 366, the Debtors seek entry of (I) the Order: (a) approving the Debtors' proposed form of adequate assurance of postpetition payment to its utilities, as that term is used in Bankruptcy Code section 366 (the "Utility Companies"); (b) approving procedures for resolving any objections by the Utility Companies relating to the Proposed Adequate Assurance; (c) prohibiting the Utility Companies from altering, refusing, or discontinuing service to, or discriminating against the Debtors solely on the basis of the commencement of the Chapter 11 Cases, a debt that is owed by the Debtors for services rendered prior to the Petition Date, or on account of any perceived inadequacy of the Debtors' Proposed Adequate Assurance.

9.      The Debtors propose to serve a copy of any order granting this Motion within three (3) business days after entry thereof.

10.     For the reasons set forth herein, the Debtors submit that the relief requested herein is in the best interest of the Debtors, their estates, creditors, stakeholders and other parties in interest, and therefore, should be granted.

## BASIS FOR RELIEF

11.     In connection with the operation of their businesses and the management of their properties, the Debtors obtain water, sewer, electricity, gas, telecommunications, waste disposal, and similar utility products and services (collectively, the "Utility Services") from the

---

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

Utility Companies. The Debtors operate facilities at a number of locations and have over 39

utility accounts related to these locations as of the Petition Date. Much of the Debtors' Utility

Services are provided under the terms of their leases of these facilities. The relief requested

herein pertains to all Utility Companies providing Utility Services to the Debtors and is not

limited to those listed on the Utility Company List (as defined herein).

12.     On average, prior to the Petition Date, the Debtors spent approximately

$125,000 each month on account of Utility Services.

13.     Uninterrupted Utility Services are essential to the Debtors' continued

operations. Should any Utility Company alter, refuse, or discontinue service, even for a brief

period, the Debtors' business operations could be severely disrupted, jeopardizing the Debtors'

reorganization efforts. It is therefore essential that the Utility Services continue uninterrupted.

**A.     The Proposed Adequate Assurance**

14.     As an initial matter, the Debtors fully intend to timely pay all undisputed

postpetition obligations owed to the Utility Companies. To provide additional assurance of

payment in conjunction with Bankruptcy Code section 366, within five (5) business days after

entry of the Order, the Debtors will (i) establish a newly-created, interest-bearing, segregated

account (the "Utility Deposit Account") and (ii) for each Utility Company listed on the Utility

Company List, place a deposit for such Utility Company equal to approximately one half (1/2) of

one month of Utility Services, based on the immediate prior invoices received from the Utility

Companies prior to the Petition Date (each such deposit, a "Utility Deposit"), into such Utility

Deposit Account, provided, however, that no Utility Deposit shall be made for any Utility

Company that already holds a deposit or prepayment equal to or greater than one half (1/2) of

one month of Utility Services.

15.    The Debtors estimate, based on the average monthly cost of the Utility Services, that the aggregate of all the Utility Deposits will be approximately $62,500 – i.e., equal to one half (1/2) of one month of service across all Utility Companies.

16.    In addition, the Debtors seek authority to reduce the amount in the Utility Deposit Account by the amount of any Utility Deposit (i) on account of a Utility Company that the Debtors subsequently determine, in their sole discretion, should be removed from the Utility Company List or (ii) on account of a Utility Company that already holds a sufficient deposit or prepayment.

**B.    Adequacy of Proposed Adequate Assurance**

17.    The Debtors submit that the Utility Deposits to be held in the Utility Deposit Account constitute adequate assurance to the Utility Companies (the "Proposed Adequate Assurance").  Accordingly, upon entry of the Order, any Utility Company that fails to serve upon the Adequate Assurance Notice Parties (as defined below) an Additional Assurance Request (as defined below) or file an Objection (as defined below) to the Motion as described below, shall be deemed to have been provided with adequate assurance of payment as required by Bankruptcy Code section 366 and shall be prohibited from altering, refusing, or discontinuing Utility Services, including as a result of unpaid charges for prepetition Utility Services.  In addition, such Utility Company will further be deemed to have waived any right to seek additional adequate assurance during the course of the Debtors' Chapter 11 Cases, except as provided in Bankruptcy Code section 366(c)(3).  If, however, a Utility Company believes adequate assurance beyond that proposed is necessary, the Debtors submit that the Utility Company must make an Additional Assurance Request pursuant to the procedures described below (the "Adequate Assurance Procedures").

6

### C.    Adequate Assurance Procedures

18.    Given the acute harm any disruption in Utility Services would cause, but recognizing the right of the Utility Companies to evaluate the Proposed Adequate Assurance on a case-by-case basis, the Debtors propose the following Adequate Assurance Procedures to resolve Adequate Assurance Requests in an orderly and fair manner:

19.    If a Utility Company is not satisfied with the Proposed Adequate Assurance and seeks additional adequate assurance of payment, it must serve a request for additional adequate assurance (an "Additional Assurance Request") upon (i) SunEdison, Inc., 13736 Riverport Dr., Maryland Heights, Missouri 63043, Attn: Martin H. Truong, (ii) Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, 26th Floor, New York, New York, 10036, Attn: J. Eric Ivester, Esq. and 155 N. Wacker Dr., Chicago, Illinois 60606, Attn: James J. Mazza, Jr., Esq. and Louis S. Chiappetta, Esq. and (iii) counsel to the Tranche B Lenders (as defined in the debtor-in-possession credit agreement) and the steering committee of the second lien creditors (the "Steering Committee"), Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn: Arik Preis and Kristine Manoukian (collectively, the "Adequate Assurance Notice Parties") so that it is received no later than 20 days after entry of the order granting the relief requested herein.

20.    Each Additional Assurance Request must: (i) be made in writing; (ii) set forth the amount and form of additional assurance of payment requested; (iii) set forth the type of Utility Services, any account numbers, and the location for which Utility Services are provided; (iv) include a summary of the Debtors' payment history to such Utility Company, including whether the Utility Company holds any deposits or other security, and if so, in what amount; and (v) set forth why the Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance of payment.

7

21.     Upon a Debtors' receipt of an Additional Assurance Request, the Debtors will have the greater of (i) fourteen (14) days from the receipt of such Additional Assurance Request or (ii) thirty (30) days entry of the order granting the relief requested in this Motion (the "Resolution Period") to negotiate with the requesting Utility Company and resolve its Additional Assurance Request. To facilitate negotiations, the Debtors and any Utility Company may, without notice or further order of the Court, extend the Resolution Period by such additional period as they shall mutually agree.

22.     Should the Debtors be unable to reach a mutual resolution with respect to an Additional Assurance Request within the Resolution Period, the Debtors shall file a motion with the Court seeking a hearing to determine the adequacy of assurance of payment with respect to a particular Utility Company (the "Determination Motion") and, if the Determination Motion is not withdrawn, the Court will determine the adequacy of the Proposed Adequate Assurance with respect to that Utility Company. The Debtors request that any Utility Company that makes an Additional Assurance Request be prohibited from altering, refusing, or discontinuing service, including as a result of unpaid charges for prepetition services, pending resolution of such Additional Assurance Request by agreement or Court order.

23.     The Debtors request that all Utility Companies who do not timely file an objection or make an Additional Assurance Request pursuant to the Adequate Assurance Procedures be deemed to consent to the Proposed Adequate Assurance and be bound by any order entered by this Court granting the Motion.

**D.     Objection Deadline**

24.     Bankruptcy Code section 366 arguably places the burden to provide adequate assurance that is satisfactory to the Utility Companies on the Debtors. Similarly, if a Utility Company does not accept any proposed adequate assurance, section 366 arguably places

8

the burden to seek court review of the adequacy of the proposed adequate assurance on the Debtors.

25.     Such an interpretation of section 366 is subject to potential abuse by a Utility Company. For example, on the 29th day following the Petition Date, a Utility Company could announce that the Debtors' Proposed Adequate Assurance is not acceptable, demand an unreasonably large deposit alleging payment risk from the Debtors, and threaten to terminate Utility Service the next day unless the Debtors comply with its demand. This would effectively leave the Debtors with two equally oppressive and potentially costly choices: succumb to a Utility Company's last-minute demands for an unreasonably large deposit or face the cessation of essential services at the risk of irreparable disruption to its business.

26.     The Debtors may resolve any Additional Assurance Request, Objection, or Determination Motion (as defined below) by mutual agreement with the Utility Company and may, in connection with any such agreement, in its sole discretion with notice to the Required Consenting Parties (as defined in DIP Credit Agreement), modify the Utility Deposit contributed to the Utility Deposit Account for the benefit of such Utility Company and/or provide the Utility Company with an alternative form of adequate assurance of payment, without further order of this Court, if the Debtors believe such additional assurance is reasonable; provided, however, that the Debtors shall maintain a summary record of such agreements and their respective terms, and such summary record and the agreements themselves shall be available to any official committee appointed in this case and the United States Trustee upon demand.

**E.    Subsequent Modifications of Utility Company List and Procedures for Subsequently Identified Utility Companies**

27.     Although the Debtors have made an extensive and good-faith effort to identify all of the Debtors' providers of Utility Services on Schedule 1 annexed to the Order (the

"Utility Company List"),[4] certain Utility Companies that currently provide Utility Services to the Debtors may have been inadvertently omitted. To the extent that the Debtors identify additional Utility Companies, the Debtors seek authority, in their sole discretion, to amend or supplement the Utility Company List. The Debtors will file any such amendments and serve copies of the Motion, and the Order(s) (if and when entered) on such newly-identified Utility Companies (each a "Subsequently Identified Utility Company").

28.     The Debtors request that any entered orders relating to the Motion be binding on all Utility Companies, regardless of when such Utility Company was added to the Utility Company List; provided, however, that if additional parties are added, the Debtors may increase the amount of the Utility Deposit Account by an amount equal to the cost of one half (1/2) of one month of Utility Services provided by such Subsequently Identified Utility Company to the Debtors, based on the three immediate prior invoices received from that Subsequently Identified Utility Company prior to the Petition Date.

29.     In addition, any Subsequently Identified Utility Company shall have the right to make an Additional Assurance Request on the Adequate Assurance Notice Parties within fourteen (14) days after it receives notice of the Motion as provided for in paragraph 27 (the "Additional Assurance Request Deadline"). Any such request must be actually received by the Adequate Assurance Notice Parties by the Additional Assurance Request Deadline. If no timely Additional Assurance Request is filed, the provisions of the Order, shall apply to the Subsequently Identified Utility Company. Should any Subsequently Identified Utility Company make an Additional Assurance Request, the Debtors request that such Subsequently Identified Utility Company be prohibited from discontinuing, altering, or refusing service to the Debtors,

---

[4]    The Debtors reserve the right to argue that any of the entities now or hereafter listed on the Utility Company List are not "utilities" within the meaning of Bankruptcy Code section 366(a).

including as a result of unpaid charges for prepetition services, pending resolution of such request.

**F.    Procedures for Untimely Additional Adequate Assurance Requests**

30.    In the event that any Utility Company files and/or serves an Additional Assurance Request after the applicable deadline, the Debtors request that such Additional Assurance Request be treated as a request under Bankruptcy Code section 366(c)(3) and shall be granted, if at all, only after the Court adjudicates any disputes between the parties following the Utility Company making such request schedules such request for hearing, on notice, in accordance with the provisions of the Bankruptcy Code, including section 366(c)(3), and the Bankruptcy Rules.

**G.    Prohibition on Altering, Refusing, or Discontinuing Service**

31.    Pending the entry of the Order with respect to the Motion and pending resolution of any Additional Assurance Request, Objection, or Determination Motion, the Debtors respectfully request that the Utility Companies, including the Subsequently Identified Utility Companies, be prohibited from (i) discriminating against the Debtors, (ii) altering, refusing, or discontinuing service to the Debtors, or (iii) requiring payment of a deposit or receipt or any other security for continued service other than the Utility Deposit, as a result of the Debtors' bankruptcy filings or any outstanding prepetition invoices.

32.    The Debtors maintain that the relief requested herein strikes a fair balance between protecting the rights of the Utility Companies and the rights of the Debtors under the Bankruptcy Code and the need for the Debtors to continue to receive, for the benefit of their estates, the Utility Services upon which the Debtors depend. The Debtors do not believe that the Utility Companies will be prejudiced by the Proposed Adequate Assurance, the requirement to

11

provide the Debtors with uninterrupted access to Utility Services, or the procedures for resolving

objections to the Proposed Adequate Assurance.

## APPLICABLE AUTHORITY

**A.    The Proposed Adequate Assurance Provides Utility Companies with Adequate Assurance of Payment.**

33.    Bankruptcy Code section 366(a) provides:

Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

11 U.S.C. § 366(a). Bankruptcy Code section 366(b) goes on to provide, however, that:

Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date.

Id. § 366(b).

34.    The policy underlying Bankruptcy Code section 366 is to protect debtors

from utility service cutoffs upon the filing of a bankruptcy case, while at the same time providing

utility companies with adequate assurance that the debtor will pay for postpetition services.  See

H.R. Rep. No. 95-595, at 350 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6306; see also In re

Jones, 369 B.R. 745, 748 (B.A.P. 1st Cir. 2007) ("The purpose of § 366 is 'to prevent the threat

of termination from being used to collect pre-petition debts while not forcing the utility to

provide services for which it may never be paid.'") (quoting Begley v. Philadelphia Elec. Co.,

760 F.2d 46, 49 (3d Cir. 1985)). As set forth herein, the relief requested in the Motion is

consistent with the Bankruptcy Code's policy goals.

35.    Specifically, under Bankruptcy Code section 366(b), a debtor must furnish

what it considers to be adequate assurance of payment within twenty (20) days after the entry of

the order for relief in the form of a deposit or other security for postpetition service. Bankruptcy Code section 366(c)(1)(A) defines "assurance of payment" to include, among other things, "a cash deposit." 11 U.S.C. § 366(c)(1)(A)(i). Here, the Debtors propose to place a deposit equal to one half (1/2) of one month of Utility Services into the Utility Deposit Account for the benefit of any Utility Company that requests a Utility Deposit. The Proposed Adequate Assurance is similar to adequate assurance approved by bankruptcy courts in this district in other cases. See, e.g., In re Mark IV Industries, Inc., Case No. 09-12795 (SMB) (Bankr. S.D.N.Y. May 15, 2009); In re Refco Inc., Case No. 05-60006 (RDD) (Bankr. S.D.N.Y. Dec. 9, 2005). Accordingly, the Proposed Adequate Assurance provides the Utility Companies with adequate assurance of payment consistent with the requirements of Bankruptcy Code section 366(c)(1)(A)(i).

**B.    The Debtors' Proposed Adequate Assurance Procedures Properly Balance the Interests of the Utility Companies and Those of the Debtors and Their Estates.**

36.    The Court should also approve the Debtors' proposed Adequate Assurance Procedures because they provide the Utility Companies with a fair and orderly process for seeking modification of the Proposed Adequate Assurance while protecting the Debtors from being forced to address numerous additional assurance requests in a disorganized manner and at a time when the Debtors' efforts could be more productively focused on the seamless continuation of the Debtors' operations in chapter 11.

37.    In fact, the Adequate Assurance Procedures are merely a practical manifestation of the policy goal embodied in Bankruptcy Code section 366. Congress enacted section 366 to protect a debtor from utility service cutoffs upon a bankruptcy filing while, at the same time, providing utility companies with adequate assurance that the debtor will pay for postpetition services. See H.R. Rep. No. 95-595, at 350 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6306. Thus, section 366 protects a debtor by enjoining utilities from altering, refusing, or

discontinuing services solely on account of unpaid prepetition amounts for a period of thirty (30) days after the bankruptcy filing, and it protects utility companies by permitting them to alter, refuse, or discontinue service after thirty (30) days if the debtors have not furnished "adequate assurance" of payment.

38.    Here, notwithstanding a determination that the Debtors' Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Companies believe they have under sections 366(b) and (c)(2) are wholly preserved under the Adequate Assurance Procedures. See In re Circuit City Stores, Inc., No. 08-35653, 2009 WL 484553, at *6 (Bankr. E.D. Va. Jan. 14, 2009) (adopting similar adequate assurance procedures and holding that "notwithstanding [a] determination on an interim basis that the adequate assurance proposed by the [d]ebtors constitute[d] sufficient adequate assurance under 366(b), [the] utility companies . . . [could still] exercise their rights under 366(c)(2) in accordance with the [p]rocedures established by the [c]ourt"). The Utility Companies still may choose, in accordance with the established Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. See id. at *6. On the other hand, the Adequate Assurance Procedures avoid a haphazard and chaotic process whereby each of the Debtors' Utility Companies – over 200 – could make an extortionate, last-minute demand for adequate assurance which the Debtors would be pressured to pay under the threat of losing critical Utility Services. See id.

39.    In short, the Adequate Assurance Procedures ensure all parties act in good faith when exercising their rights under Bankruptcy Code section 366. Therefore, because the Adequate Assurance Procedures are reasonable and in accord with the purposes of section 366, the Court should grant the relief requested here. Similar procedures have been approved by this bankruptcy court in this district in other cases. See, e.g., In re Relativity Fashion, LLC, Case No.

14

15-11989 (MEW) (Bankr. S.D.N.Y. Aug. 27, 2015); In re Chassix Holdings, Inc., Case No. 15-10578 (MEW) (Bankr. S.D.N.Y. Mar. 12, 2015); In re LHI Liquidation Co. Inc., Case No. 13-14050 (MG) (Bankr. S.D.N.Y. Dec. 15, 2013); In re LightSquared, Inc., Case No. 12-12080 (SCC) (Bankr. S.D.N.Y. June 11, 2012); In re Hawker Beechcraft, Inc., Case No. 12-11873 (SMB) (Bankr. S.D.N.Y. June 1, 2012); In re Eastman Kodak Co., Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Feb. 16, 2012); In re AMR Corp., Case No. 11- 15463 (SHL) (Bankr. S.D.N.Y. Dec. 23, 2011); In re General Maritime Corp., Case No. 11-15285(MG) (Bankr. S.D.N.Y. Dec. 9, 2011); In re Borders Group., Inc., Case No. 11-10614 (MG) (Bankr. S.D.N.Y. Mar. 16, 2011); In re Great Atl.& Pac. Tea Co., Inc., Case No. 10-24549 (RDD) (Bankr. S.D.N.Y. Jan. 12, 2011); In re Blockbuster, Inc., Case No. 10-14997 (CGM) (Bankr. S.D.N.Y. Oct. 20, 2010); In re Uno Rest. Holdings Corp., Case No. 10-10209 (MG) (Bankr. S.D.N.Y. Mar. 10, 2010).

40.     Further, the Court possesses the power, under Bankruptcy Code section 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Proposed Adequate Assurance and the Adequate Assurance Procedures are necessary and appropriate to carry out the provisions of the Bankruptcy Code and they will ensure that the Debtors' Utility Services are continued without prejudicing the Utility Companies.

41.     For the reasons set forth above, the Debtors submit that the relief requested herein is in the best interest of the Debtors, their estates, creditors, stakeholders, and other parties in interest and, therefore, should be granted.

### WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

42.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of

15

property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

43.     Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code section 365; or (e) otherwise affect the Debtors' rights under Bankruptcy Code section 365 to assume or reject any executory contract with any party subject to this Motion.

## NOTICE

44.     Notice of this Motion shall be given to (a) the Office of the United States Trustee for the Southern District of New York; (b) counsel to the administrative agent under the Debtors' prepetition first lien credit agreement; (c) counsel to the Tranche B Lenders/Steering Committee; (d) counsel to the administrative agent under the Debtors' prepetition second lien credit agreement; (e) counsel to the collateral trustee under the Debtors' prepetition second lien credit agreement; (f) counsel to the indenture trustee under each of the Debtors' outstanding bond issuances; (g) the U.S. Attorney for the Southern District of New York; (h) counsel to the administrative agent under the proposed postpetition debtor-in-possession financing facility; (i) the parties listed in the consolidated list of forty (40) largest unsecured creditors filed by the

Debtors in these Chapter 11 Cases; (j) the Internal Revenue Service; (k) the Securities and Exchange Commission; and (l) any such other party entitled to notice pursuant to Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York. The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

45.    No previous request for the relief sought herein has been made to this Court or any other court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated:  New York, New York
       April 21, 2016

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  _/s/ Jay M. Goffman_
     Jay M. Goffman
     J. Eric Ivester
     Four Times Square
     New York, New York 10036-6522
     Telephone: (212) 735-3000
     Fax: (212) 735-2000

     -and-

     James J. Mazza, Jr. (*pro hac vice pending*)
     Louis S. Chiappetta (*pro hac vice pending*)
     155 N. Wacker Dr.
     Chicago, Illinois 60606-1720
     Telephone: (312) 407-0700
     Fax: (312) 407-0411

*Proposed Counsel for Debtors and Debtors in Possession*

## **EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **SUNEDISON, INC.**, *et al.*, | : | **Case No. 16-10992 (SMB)** |
| | : | |
| **Debtors.**[1] | : | **(Joint Administration Pending)** |
| | : | |
| | : | |

### ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 366 (I) APPROVING DEBTORS' PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT, (II) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY COMPANIES, AND (III) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICE

Upon the motion (the "Motion")[2] of the Debtors for an order, pursuant to sections 105(a), 363(b), 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving the Debtors' proposed form of adequate assurance of postpetition payment to the Utility Companies; (ii) establishing procedures for resolving any objections by the Utility Companies relating to the Proposed Adequate Assurance; and (iii) prohibiting the Utility Companies from altering, refusing or discontinuing service to, or discriminating against, the Debtors solely on the basis of the commencement of the Chapter 11 Cases, a debt that is owed by

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A). The address of the Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

the Debtors for services rendered prior to the Petition Date, or on account of any perceived inadequacy of the Debtors' Proposed Adequate Assurance, all as more fully described in the Motion; and upon the First Day Declaration; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and other parties in interest; and after due deliberation thereon, and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED that:**

1.      The Motion is GRANTED solely to the extent set forth herein.

2.      The Proposed Adequate Assurance constitutes "adequate assurance of payment" for purposes of Bankruptcy Code section 366.

3.      Within five (5) business days after entry of this Order, the Debtors will (i) establish a newly-created, interest-bearing, segregated account (the "Utility Deposit Account") and (ii) for each Utility Company listed on the Utility Company List, place a deposit for such Utility Company equal to approximately one half (1/2) of one month of Utility Services, based on the average monthly cost of the Utility Services received from the Utility Companies calculated based on the three immediate prior invoices received from that Utility Company prior to the Petition Date (each such deposit, a "Utility Deposit") into such Utility Deposit Account, provided, however, that no Utility Deposit shall be made for any Utility Company that already holds a deposit or prepayment equal to or greater than one half (1/2) of one month of Utility Services provided by that Utility Company, based on the average of the three immediate prior invoices received from that Utility Company prior to the Petition Date. In addition, if a Utility Company holds a deposit or prepayment that is less than one half (1/2) of one month of Utility Services provided by that Utility Company, based on the average of the three immediate prior

2

invoices received from that Utility Company prior to the Petition Date, the Utility Deposit for that Utility Company shall be reduced by the amount of any prepetition deposit or prepayment.

4.      Except as the amount may be reduced by application of the provisions of this Order, the amount of $62,449.00 deposited in the Utility Deposit Account on account of the Utility Deposits within five (5) days after the entry of this Order and shall be held for the purpose of providing adequate assurance of payment to each Utility Company for its postpetition Utility Services to the Debtors.

5.      The Debtors may reduce the Utility Deposit to the extent that it includes an amount (i) on account of a Utility Company that the Debtors subsequently determine, in their sole discretion, should be removed from the Utility Company List or (ii) that is already held by a Utility Company as a deposit or prepayment.

6.      The following procedures (the "Adequate Assurance Procedures") for any Utility Company not satisfied with the Proposed Adequate Assurance to request additional adequate assurance (an "Additional Assurance Request") are approved:

(a)      If a Utility Company is not satisfied with the Proposed Adequate Assurance and seeks additional adequate assurance of payment, it must serve an Additional Assurance Request upon (i) SunEdison, Inc., 13736 Riverport Dr., Maryland Heights, Missouri 63043, Attn: Martin H. Truong; (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, 24th Floor, New York, New York, 10036, Attn: J. Eric Ivester, Esq. and 155 N. Wacker Dr., Chicago, Illinois 60606, Attn: James J. Mazza, Esq. and Louis S. Chiappetta, Esq.; and (iii) counsel to the Tranche B Lenders/Steering Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn: Arik Preis and Kristine Manoukian (collectively, the "Adequate Assurance Notice Parties").

(b)      Each Additional Assurance Request must (i) be made in writing; (ii) set forth the amount and form of additional assurance of payment requested; (iii) set forth the type of Utility Services, any account numbers, and the location for which Utility Services are provided; (iv) include a summary of the Debtors' payment history to such Utility Company, including whether the Utility Company holds any deposits or other security, and if so, in what amount; and (v) set forth why the

Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance of payment.

(c)    Upon the Debtors' receipt of an Additional Assurance Request, the Debtors will have the greater of (i) fourteen (14) days from the receipt of such Additional Assurance Request and (ii) thirty (30) days from the Petition Date (the "Resolution Period") to negotiate with the requesting Utility Company and resolve its Additional Assurance Request. The Debtors and any Utility Company may, without notice or further order of the Court, extend the Resolution Period by such additional period as they shall mutually agree.

(d)    The Debtors may resolve any Additional Assurance Request, Objection, or Determination Motion (as defined below) by mutual agreement with the Utility Company and may, in connection with any such agreement, on notice to the Required Consenting Parties (as defined in the DIP Credit Agreement), modify the amount contributed to the Utility Deposit Account for the benefit of such Utility Company and/or provide the Utility Company with an alternative form of adequate assurance of payment, without further order of this Court, if the Debtors believe such additional assurance is reasonable; provided, however, that the Debtors shall maintain a summary record of such agreements and their respective terms, and such summary record and the agreements themselves shall be provided to the DIP Agent (as defined in the Interim Order (I) Authorizing Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing Pursuant to Bankruptcy Code Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e), and (B) Utilize Cash Collateral Pursuant to Bankruptcy Code Section 363, (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to Bankruptcy Code Sections 361, 362, 363 and 364, and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001(b) and (c) (the "Interim DIP Order")) and the Tranche B Lenders/Steering Committee and, upon request, be available to any official committee appointed in the case, and the United States Trustee.

(e)    Should the Debtors be unable to reach a mutual resolution with respect to an Additional Assurance Request within the Resolution Period, the Debtors shall file a motion with the Court seeking a hearing to determine the adequacy of assurance of payment with respect to a particular Utility Company (the "Determination Motion") with the Court and, if the Determination Motion is not withdrawn, the Court will determine the adequacy of the Proposed Adequate Assurance with respect to that Utility Company. Pending a resolution of such Determination Motion, the relevant Utility Company shall not discontinue, alter or refuse service to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

7.    The Utility Companies identified on Schedule 1 annexed to this Order (the "Utility Company List"), including Subsequently Identified Utility Companies, are prohibited

from (i) discriminating against the Debtors, (ii) altering, refusing, or discontinuing service to the Debtors, or (iii) requiring payment of a deposit or receipt or any other security for continued service other than the Utility Deposit, as a result of the Debtors' bankruptcy filing or any outstanding prepetition invoices, other than in accordance with the Adequate Assurance Procedures.

8.      If an amount relating to postpetition Utility Services provided by a Utility Company is unpaid beyond any applicable grace period, such Utility Company may request a disbursement from the Utility Deposit Account (a "Disbursement Request"), in no case to exceed the amount of the Utility Deposit contributed to the Utility Deposit Account for the benefit of such Utility Company, by giving notice to (i) SunEdison, Inc., 13736 Riverport Dr., Maryland Heights, Missouri 63043, Attn: Martin H. Truong; and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, 26th Floor, New York, New York, 10036, Attn: J. Eric Ivester, Esq. and 155 N. Wacker Dr., Chicago, Illinois 60606, Attn: James J. Mazza, Esq. and Louis S. Chiappetta, Esq. A Disbursement Request shall only be honored on the date that is five (5) business days after the date of the Disbursement Request.

9.      Any Utility Company that fails to submit an Additional Assurance Request or file an Objection as set forth in this Order shall be deemed to have adequate assurance of payment that is satisfactory to it within the meaning of Bankruptcy Code section 366 and shall be forbidden from altering, refusing, or discontinuing service to the Debtors on account of any prepetition charges, subject to the Utility Company's rights to seek a modification of adequate assurance under section 366(c)(3) of the Bankruptcy Code.

10.      The Debtors are authorized in their discretion to amend the Utility Company List hereto to add or delete any Utility Company, and this Order shall apply to any

such Subsequently Identified Utility Company that is added to such schedule.  Such amendment

shall be accomplished by filing with this Court a notice and serving the same on the affected

Utility Company, counsel to the Tranche B Lenders/Steering Committee, counsel to the DIP

Agent and the DIP Arrangers (as defined in Interim DIP Order), and counsel to the official

committee of unsecured creditors (the "Creditors' Committee").  Any Utility Company added to

the Utility Company List subsequent to the date of the Motion shall have the right to make an

Additional Assurance Request in compliance with the Adequate Assurance Procedures as set

forth in this Order.

    11. This Order shall be binding on all Utility Companies providing Utility

Services to the Debtors, regardless of when or if such Utility Company was added to the Utility

Company List; provided, however, that if additional parties are added, the Debtors may increase

the amount of the Utility Deposit by an amount equal to the cost of one half (1/2) of one month

of Utility Services provided by such Subsequently Identified Utility Company to the Debtors.

    12. Nothing herein constitutes a finding that any entity is or is not a Utility

Company hereunder or under Bankruptcy Code section 366, whether or not such entity is listed

on Schedule 1 attached hereto.

    13. This Order is without prejudice to the Debtors', the Creditors'

Committee's, and the relevant Required Consenting Parties' rights to contest the amounts of any

amounts owed to a Utility Company.  Nothing in this Order or the Motion shall be deemed to

constitute postpetition assumption or adoption of any agreement under Bankruptcy Code section

365.

    14. Neither the provisions contained herein, nor any actions or payments made

by the Debtors pursuant to this Order, shall be deemed an admission as to the validity of the

6

underlying obligation or a waiver of any rights the Debtors may have to subsequently dispute such obligation on any ground that applicable law permits.

15.    Nothing in this Order or the Motion shall be deemed to constitute postpetition assumption or adoption of any agreement under Bankruptcy Code section 365. Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

16.    Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to any applicable requirements imposed on the Debtors under the Interim Order (I) Authorizing Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing Pursuant to Bankruptcy Code Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e), and (B) Utilize Cash Collateral Pursuant to Bankruptcy Code Section 363, (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to Bankruptcy Code Sections 361, 362, 363, and 364, and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001(b) and (c) (the "Interim DIP Order") and any related final order (together, the "DIP Financing Orders") and the other DIP Loan Documents (as defined therein), and any such payments shall be in accordance with the DIP Budget (as defined in the DIP Financing Orders) in effect in connection with such orders (subject to Permitted Budget Variances).

17.    The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied by the contents of the Motion.

18.    Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

19.    The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

20.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated:  New York, New York
              _____, 2016

_____
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit  1**

Schedule  of Utilities

1275412-NYCSR03A - MSW

| Vendor | Service | Account Number | Provider Address | Estimated Monthly Amount | Adequate Assurance Amount |
|---|---|---|---|---|---|
| 8X8 | Telecom | N/A | 2125 O'Nel Dr. San Jose, CA 95131 | $ 2,500 | $ 1,250 |
| ACC Business | Telecom | 1197707 | 400 West Ave Rochester, NY 14611 | $ 2,700 | $ 1,350 |
| AT&T | Telecom | 831-000-5749 237 | PO Box 5025 Carol Stream, IL 60197-5025 | $ 5,100 | $ 2,550 |
| | Telecom | 23444489759354 | N/A | $ 3,800 | $ 1,900 |
| | Telecom | 8310005939671 | N/A | $ 6,250 | $ 3,125 |
| AT&T Total | | | | $ 15,150 | $ 7,575 |
| Atlantatech Online | Telecom | 003675 | 1010 Wayne Ave Suite 630 Silver Spring, MD 20910 | $ 3,400 | $ 1,700 |
| Centracom | Telecom | N/A | 35 South State Fairview, UT 84629 | $ 900 | $ 450 |
| Central Maine Power Company | Electric | 441-171-2528-005 | Central Maine Power PO Box 847810 Boston, MA 02284-7810 | $ 1,100 | $ 550 |
| CenturyLink | Telecom | 9285673366253B | PO Box 29040 Phoenix, AZ 85039-9040 | $ 13,770 | $ 6,885 |
| Charter | Telecom | 8345780640257460 | 8413 Excelsior Drive #120 Madison, Wisconsin 53717-1970 | $ 1,450 | $ 725 |
| Coastside Communications | Telecom | N/A | P.O. Box 640597 San Francisco, CA 94164-0597 | $ 350 | $ 175 |
| Cogent | Telecom | SUNEDISO00005 | Cogent Communications, Inc. P.O. Box 791087 Baltimore, MD 21279-1087 | $ 1,750 | $ 875 |
| Comcast | Telecom | 20001420672011 | PO Box 5025 1250 Berlin Rd. Cherry Hill, NJ 08034-0404 | $ 520 | $ 260 |
| Fair Point Communications | Telecom | 266002172 | 266 - FAIRPOINT COMMUNICATIONS PO Box 580028 Charlotte, NC 28258-0028 | $ 1,000 | $ 500 |
| Freewire Broadband | Telecom | N/A | 7327 SW Barnes Rd. #702 Portland, OR 97225 | $ 2,900 | $ 1,450 |
| Global Voice and Data | Telecom | N/A | 3031 Tisch Way, Suite 902 San Jose, CA 95128 | $ 1,400 | $ 700 |
| Invesco | Electric | 73200-002-0000-020 | 13155 Noel Rd Suite 500 Dallas, TX 75240 | $ 4,815 | $ 2,408 |
| Invesco | Water | 73541-002-0000-020 | 13155 Noel Rd Suite 500 Dallas, TX 75240 | $ 271 | $ 136 |
| Lehi City Power Department | Electric | N/A | 560 West Glen Carter Drive Lehi, Utah 84043 | $ 700 | $ 350 |
| Lightpath | Telecom | 54148 | Cablevision Lightpath, Inc. PO Box 360111 Pittsburgh, PA 15251-6111 | $ 900 | $ 450 |
| MetTel | Telecom | N/A | PO Box 9660 Manchester, NH 03108-9660 | $ 450 | $ 225 |
| National Grid | Gas and Electric | 200025858 | 300 Erie Blvd. West Syracuse NY 13202 | $ 201 | $ 101 |
| Optimum | Telecom | 54148 | PO Box 360111 Pittsburgh, PA 15251-6111 | $ 400 | $ 200 |
| Questar | Gas | N/A | P.O. Box 45360 Salt Lake City, UT 84 | $ 100 | $ 50 |
| Southern CA Edison | Electric | 2-37-041-4104 | P.O. Box 300 Rosemead, CA 91772-0001 | $ 2,500 | $ 1,250 |
| Salt River Project | Electric | N/A | P.O. Box 52025 Phoenix, AZ 85072-2025 | $ 96 | $ 48 |
| Time Warner Cable | Internet | 202-714637501-001 | PO Box 70872 Charlotte, NC 28272-0872 | $ 265 | $ 133 |
| Tower Stream | Telecom | 14432 | PO Box 414061 Boston, MA 02241-4061 | $ 800 | $ 400 |
| Time Warner Telecom | Telecom | 310548 | PO Box 910182 Denver, CO 80291-0182 | $ 1,000 | $ 500 |
| Verizon | | 672375490-00001 | PO Box 660108 Dallas, TX 75266-0108 | $ 4,400 | $ 2,200 |
| | | 12535120040764500 | PO Box 920041 Dallas, TX 75392-0041 | $ 100 | $ 50 |
| | | 9150243321 | PO Box 15043 Albany, NY 12212-5043 | $ 8,700 | $ 4,350 |
| | | 12573119666936900 | PO Box 920041 Dallas, TX 75392-0041 | $ 9,200 | $ 4,600 |
| | | 9150228693 | PO Box 15043 Albany, NY 12212-5043 | $ 3,350 | $ 1,675 |
| Verizon Total | Telecom | | | $ 12,550 | $ 6,275 |
| XO Communications | Telecom | 04000000343572 | XO Communications File 50550 Los Angeles, CA 90074-0550 | $ 2,150 | $ 1,075 |
| Zayo Group | Telecom | 008814 | PO Box 952136 Dallas, TX 75395-2136 | $ 915 | $ 458 |
| Jackson International Pte Ltd | Water and Electricity | N/A | (Singapore) (SGD 977) | $ 726 | $ 363 |
| Tuas Power Supply | Electricity | | (Singapore) (SGD 8432) | $ 6,268 | $ 3,134 |
| | | | Total Adequate Assurance Amount | | $ 62,449 |

Note: Exchange Rates as of April 21, 2016