UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
In re:                                                           :   Case No. 16-10992 (SMB)
                                                                 :
SUNEDISON, INC. *et al.*[1]                                      :   Chapter 11
                                                                 :
           Debtors.                                              :   (Jointly Administered)
-----------------------------------------------------------------X

# ORDER REGARDING *SUA SPONTE*
# CONSIDERATION OF RECUSAL

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge**

        The official committee of unsecured creditors (the "Committee") of SunEdison, Inc. and its affiliated debtors (collectively, the "Debtors") seeks to retain Weil, Gotshal & Manges LLP ("Weil") as its counsel. My wife was an equity partner in Weil prior to her retirement on September 30, 2015. For the reasons set forth below, I conclude that my wife's connection to Weil, including the receipt of retirement benefits and the return of her capital, does not mandate my recusal from this case.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A). The address of the Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

## BACKGROUND

The Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code on April 21, 2016. In accordance with section 1102(a) of the Bankruptcy Code, William K. Harrington, United States Trustee for Region 2, formed the Committee on April 29, 2016.[2] Section 1103(a) authorizes the Committee to employ attorneys to represent it, and the Committee seeks to employ Weil as its counsel. The Committee is a "party in interest" in the chapter 11 cases, 11 U.S.C. § 1109(b), and I assume for the purpose of this decision that it is a "party to the proceeding" within the meaning of 28 U.S.C. § 455. *Cf.* JCUS Comm. on Codes of Conduct, Advisory Op. No. 100 (June 2009) ("[I]f a creditor accepts appointment to a committee of creditors, that change in status is sufficient to make each such creditor or interest holder 'a party' because of the statutory responsibilities assumed by acceptance of such an appointment.") (interpreting Canon 3C). Accordingly, Weil will represent a party to the bankruptcy case, and will seek compensation subject to this Court's approval.

My wife was an equity partner in Weil from 1999 until her retirement on September 30, 2015. She no longer works at Weil, and does not maintain an office there. She has no interest or equity in the firm. She receives retirement benefits in the form of monthly pension payments under various pension plans, one or more of which is ultimately funded by Weil. The aggregate amount of her monthly pension payments is fixed, is not subject to any cost-of-living or similar

---

[2]     The members of the Committee are (1) BOKF, N.A., as Indenture Trustee; (2) AQR DELTA Master Account, L.P.; (3) Advantage Opportunities Fund, LP; (4) D.E. Shaw Composite Holdings, LLC; (5) Flextronics Industrial, Ltd.; (6) Albemarle Corporation; and (7) Vivint Solar, Inc. My wife never represented or performed services for any of these entities. (*See Notice of Appointment of Official Committee of Unsecured Creditors*, dated Apr. 29, 2016 (ECF Doc. # 148).)

upward adjustment and will not change during her lifetime.  In addition, my wife will receive the return of her capital over the next, approximate four years.  The principal amount is also fixed but will earn interest based on the Prime Rate during the repayment period.

## DISCUSSION

Section 455 of title 28 governs disqualification of a federal judge.[3]  It provides in pertinent part:

> (a) Any . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> . . .
>
> (4)  He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
>
> (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person: . . . (iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding . . . .

28 U.S.C. § 455.  With certain exceptions that are not relevant, a "'financial interest' means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party." 28 U.S.C. § 455(d)(4).  A direct ownership interest in a party or the subject matter of the controversy without regard to amount requires disqualification; a remote, contingent financial or other benefit is an "other interest" within the

---

[3] Section 144 of title 28 also addresses disqualification on grounds of bias or prejudice.  It applies to district court judges and not bankruptcy judges, although the standards for disqualification under §§ 144 & 455(b)(1) are the same.  *In re Teligent, Inc.,* No. 01–12974, 2005 WL 267956, at *2 n.7 (Bankr. S.D.N.Y. Feb. 3, 2005).

meaning of § 455(b)(4) that requires disqualification only if the outcome will substantially affect that interest. *See In re New Mexico Nat. Gas Antitrust Litig.*, 620 F.2d 794, 796 (10th Cir. 1980).

"Section 455(b)(5)(iii) is in part redundant of, and in part supplemental to, this provision of § 455(b)(4)." 13D CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 3547 (3d ed, 2016). It supplements §455(b)(4) because it examines the interests of persons within the third degree of relationship with the judge or his spouse while § 455(b)(4) focuses on a much narrower range of relationships. The two provisions are redundant, however, when applied to spouses because both mandate disqualification of the judge when he or his spouse have interests, other than "financial interests," that may be substantially affected by the outcome.

My wife does not have any direct ownership interest or involvement in the affairs of SunEdison or any other party in the case. She does not, therefore, have a "financial interest" within the meaning of § 455(b)(4). Instead, the question is whether her interest in receiving a pension ultimately funded by Weil and the return of her capital may be substantially affected by the outcome of the SunEdison case, and more specifically, by any compensation that Weil will receive with the Court's approval. Given the overlap between § 455(b)(4) and (b)(5)(iii), the Court will limit its inquiry to the latter.

### A.  Section 455(b)(5)(iii)

Section 455(b)(5)(iii) mandates disqualification if the judge's spouse has "an interest that could be substantially affected by the outcome of the proceeding." Even if my wife were still an equity partner in Weil, there is no *per se* rule that requires disqualification where the judge's spouse or other person within the third degree of relationship is an equity partner in the law firm representing a party in the case. In *Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77 (2d Cir.

- 4 -

1996), several defendants were represented by Cahill, Gordon & Reindel ("Cahill"). District Judge John S. Martin, Jr. presided over the case. Donald J. Mulvihill, a Cahill partner, was married to the sister of Judge Martin's wife, and was within the third degree of relationship. *Id.* at 83. After the District Court entered a preliminary injunction against Cahill's clients, they appealed and argued, *inter alia*, that Judge Martin was obligated to recuse himself under 28 U.S.C. § 455(b)(5)(iii).[4]

The Second Circuit rejected a *per se* rule requiring disqualification. "It would simply be unrealistic to assume . . . that partners in today's law firms invariably 'have an interest that could be *substantially affected* by the outcome of' any case in which any other partner is involved." *Pashaian*, 88 F.3d at 83 (emphasis in original) (quoting § 455(b)(5)(iii)); *accord In re Digital Music Antitrust Litig*, No. 06 MDL NO. 1780(LAP), 2007 WL 632762, at *13 (S.D.N.Y. Feb. 27, 2007). The Court agreed with the District Court's conclusion that, given (i) the amount at stake in the litigation, (ii) Mulvihill's participation in Cahill's net income, and (iii) Cahill's total revenue of $117,500,000, Mulvihill's interest would not be "substantially affected" by the outcome of the case. *Pashaian*, 88 F.3d at 84; *accord Rubin-Schneiderman v. Merit Behavioral Care Corp.*, No. 00 civ. 8101 (PAC), 2005 WL 2249750, at *1 (S.D.N.Y. Sept. 15, 2005) ("Considering the size of Kelley, Drye & Warren, the dollar amount of business it does, and the size and value of this action," the trial judge, whose brother was a partner in Kelley, Drye, which represented two of the defendants, was not required to recuse himself because "it would not be plausible to find that there is an interest that could be substantially affected by the outcome of the proceeding.") (internal quotation marks and citation omitted); *cf. Canino v. Barclays Bank, PLC*,

---

[4] After he entered the preliminary injunction, Judge Martin disqualified himself from future involvement in the exercise of his discretion. *See Pashaian*, 88 F.3d at 84.

No. 94 Civ. 6314 (SAS), 1998 WL 7219, at *4 (S.D.N.Y. Jan. 7, 1998) (judge's spouse, who was a partner in a firm that represented the defendant in unrelated matters, did not have an interest that could be substantially affected by the outcome of the proceedings and was not disqualified under 28 U.S.C. § 455(b)(4)).  It follows that an associate in the firm who does not work on the matter does not have an interest that might be substantially affected by the outcome.  *Faith Temple Church v. Town of Brighton*, 348 F. Supp. 2d 18, 20-21 (W.D.N.Y. 2004) (citing and discussing authorities); *Nisselson v. Empyrean Inv. Fund, L.P.* (*In re MarketXT Holdings Corp.*), Adv. P. No. 05-01268 (ALG), 2006 WL 2583644, at *6 (Bankr. S.D.N.Y. July 21, 2006) (collecting cases).

The *Pashaian* Court expressly rejected the *per se* recusal rule adopted by the Fifth Circuit in *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101 (5th Cir.), *cert. denied*, 449 U.S. 820 (1980). There, the Court held that partner of a firm related to a judge within the third degree of relationship will "always" have an interest that could be substantially affected by the outcome of the proceeding.  *Id.* at 1113; *accord Pashaian* 88 F.3d at 83.  The *Potashnick* Court contrasted its conclusion with the Fifth Circuit's earlier ruling in *United States ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456 (5th Cir. 1977), *cert. denied*, 434 U.S. 1035 (1978), which held that the trial judge was not required to disqualify himself based on his son's status as an associate in the firm representing the defendant.  The son did not work on the matter and his salary interest was too remote to constitute a disqualifying "financial interest." *Id.* at 463.  In contrast, "[t[he outcome of any proceeding handled by a law firm may affect the partners' financial interests as well as certain noneconomic interests, including the reputation and goodwill of the firm." *Potashnick*, 609 F.2d at 1113.

16-10992-smb    Doc 240    Filed 05/10/16    Entered 05/10/16 15:26:31    Main Document
Pg 7 of 9


The discussion of the Fifth Circuit case law brings me to *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368 (5th Cir. 2002), *cert. denied*, 538 U.S. 944 (2003), the only case the Court has been able to locate that addressed retired partners. It is directly on point. There, Baker Botts represented the defendant Pennzoil. The district court judge's father-in-law was a retired Baker Botts partner receiving retirement benefits from the firm at the time the case was assigned to her. After he passed away, and during the pendency of the action, the judge's spouse received death benefits from the firm. *Id.* at 377. The father-in-law's retirement benefit (and death benefit provided after his death) was paid in fixed amounts subject to an upward adjustment based on the lesser of (1) the cost of living adjustment set forth by the U.S. Department of Labor's U.S. Consumer Price Index, or (2) the percentage increase in income of the fifth highest paid partner at Baker Botts. *Id*. at 377-78.

The plaintiff moved for disqualification under section 455(b)(5)(iii). It argued that the component of the cost of living adjustment took into account the income of the fifth highest paid partner, and this interest was sufficient to require the judge's disqualification. *Id.* at 378. The Fifth Circuit rejected the argument. First, no matter how much the fifth highest paid partner earned, the Consumer Price Index always placed a ceiling on the upward adjustment. *Id.* Second, the interests of the district judge's father-in-law and husband were more remote than an associate's interest in the firm. An associate's continued employment and bonus might depend on the financial success of the firm, and yet, the associate's interest was insufficient in *Weinberger* to require disqualification. *Id. A fortiori*, the more remote interests of the judge's father-in-law and spouse receiving retirement and death benefits from the firm representing the defendant did not require district judge's disqualification under 28 U.S.C. § 455(b)(5)(iii). *Id.*

While my wife obviously has an interest in receiving pension payments from a plan funded by Weil as well as the return of her capital in Weil, those interests will not be substantially affected by the amount of compensation Weil does or does not receive in this case. According to its website, Weil has 1,100 attorneys and twenty offices, *see* WEIL, GOTSHAL & MANGES LLP, *About Weil*, http://www.weil.com/about-weil (last visited May 9, 2016), and presumably represents many other clients. Moreover, my spouse's retirement benefits are fixed and will not increase regardless of the amount of fees Weil receives for representing the Committee in this case. Similarly, her capital will only increase by the interest it earns; the principal is set in stone. Her interests, in this regard, are more remote than a salaried associate whose continued employment and possible bonus depend on the success of the firm. *IQ Prods.*, 305 F.3d at 378. In conclusion, my spouse does not hold a financial or other interest that could be substantially affected by the outcome of the SunEdison case or Weil's retention and compensation, and 28 U.S.C. § 455(b)(5)(iii) does not require my disqualification.

**B.    Section 455(a)**

"The goal of section 455(a) is to avoid even the appearance of partiality." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988) (quoting *Health Servs. Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 802 (5th Cir. 1986)). Section 455(a) utilizes an objective test "which assumes that a reasonable person *knows and understands all the relevant facts*." *SEC v. Drexel Burnham Lambert Inc.* (*In re Drexel Burnham Lambert Inc.*), 861 F.2d 1307, 1313 (2d Cir. 1988) (emphasis in original), *cert. denied*, 490 U.S. 1102 (1989). The Court must examine "the record facts and the law, and then decid[e] whether a reasonable person knowing and understanding all the relevant facts would recuse the judge." *Id*. "[W]here an interest is not

direct, but is remote, contingent, or speculative, it is not the kind of interest which reasonably brings into question a judge's impartiality." *Id.*

My wife retired from Weil seven months before the *SunEdison* case was filed. She never represented the members of the Committee, and was already retired when this case was filed. A judge's impartiality cannot be reasonably questioned merely because his child is or will become an associate at the firm representing a party as long as the child does not work on the matter. *See, e.g.*, *Weinberger*, 557 F.2d at 463-64; *Cloverdale Equip. Co. v. Manitowoc Eng'g Co.*, 964 F. Supp. 1152, 1155-56 (E.D. Mich. 1997), *aff'd*, 149 F.3d 1182 (6th Cir. 1998) (unpublished decision); *Faith Temple Church*, 348 F. Supp. 2d at 21; *MarketXT*, 2006 WL 2583644, at *6. My wife's status as a retired partner is even more remote, and I conclude that it does not raise a reasonable question about my impartiality. *IQ Prods.*, 305 F.3d at 378. Accordingly, my recusal is not required under section 455(a).

So ordered.

Dated: New York, New York
       May 10, 2016

                                          /s/ *Stuart M. Bernstein*
                                          STUART M. BERNSTEIN
                                          United States Bankruptcy Judge