May 20, 2016

Hon. Stuart M. Bernstein
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004
bernstein.chambers@nysb.uscourts.gov


SunEdison Inc. Case No. 16-10992

Re: Why An Official Committee Of Equity Security Holders Should Not Be Appointed with hearing to be held on 6/7/2016 at 10:00 AM at Courtroom 723.


Dear Judge Bernstein,


I would respectfully like to offer an objection to the motion by submitting the following details. As an active investor, I believe it's vital for the markets to function unabatedly by recognizing there are two sides to an equity trade. Two investors can fundamentally evaluate a company and come to two different conclusions. Where one investor might take a bottom-up approach, another may conclude that a top-down approach makes more sense. An equity committee would only serve the interests of a bottom-up investor while dismissing the top-down investors' thesis  altogether.

For the following reason(s), I do not believe an equity committee is justified in this case.

## OBJECTION

1. The appointment of an equity committee in a chapter 11 case is rare and an exceptional measure. It should not be done unless the movant establishes both that a substantial likelihood exists that equity holders will receive a meaningful distribution and that the appointment of an equity committee is necessary to ensure the interests of equity holders are adequately represented. Here, the Moving Shareholders have not made either showing.

### I. Moving Shareholders Have Burden of Establishing Appointment of Official Equity Committee Is Warranted

2. Section 1102(a)(2) of the Bankruptcy Code provides the statutory authority for the appointment of an official committee of equity security holders:

> *On request of a party in interest, the court **may** order the appointment of additional committees of creditors or equity security holders if **necessary** to assure adequate representation of creditors or equity security holders.*

   11 .S.C. § 1102(a)(2) (emphasis added).

3. Although the Bankruptcy Code does not offer specific guidance on when the appointment of an official equity committee is appropriate, courts interpreting this provision have determined that Congress's use of the word "necessary" implies a restrictive standard. See In re Eastman Kodak Company, 2013 Bankr. LEXIS 3325 (Bankr. S.D.N.Y. Aug. 15, 2013) (stating that "the term 'necessary' sets a high standard that is more difficult to satisfy than if the statute merely provided that a committee would be useful or appropriate."); In re Oneida Ltd., No.06-10489, 2006 WL 1288576, *1 (Bankr. S.D.N.Y. May 4, 2006) (noting that "the statute requires the [c]ourt to find that the appointment of an equity committee is 'necessary,' a high standard that is far more onerous than if the statute merely provided that a committee be 'useful.'"). Thus, the appointment of an official equity committee "should be the rare exception" to the general rule. Exide Techs. v. Wis. Inv. Bd. (In re Exide Techs.), No. 02-11125- KJC, 2002 U.S. Dist. LEXIS 27210, at *4 (D. Del. Dec. 23, 2002); see also In re Northwestern Corp., No. 03-12872 (CGC), 2004 WL 1077913, at *2 (Bankr. D. Del. May 13, 2004); In re Allied Holdings, Inc., No. 05-12515 (CRM), 2007 Bankr. LEXIS 1597, at *3 (Bankr. N.D. Ga. Mar. 13, 2007).

4. Bankruptcy courts have discretion to appoint an official equity committee solely to the extent that the specific facts and circumstances of a case justify such relief. See In re Dana Corp., 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006) ("Bankruptcy courts have discretion to examine the circumstances on a case-by-case basis to determine if additional committees are warranted."). In exercising such discretion, bankruptcy courts require the movant to establish both that "(i) *there is a **substantial likelihood** that they will receive a **meaningful** distribution in the case under a strict application of the absolute priority rule, **and** (ii) they are unable to represent their interests in the bankruptcy case without an official committee*." Williams Commc'ns Grp., Inc., 281 B.R. 216, 223 (Bankr. S.D.N.Y. 2002) (emphasis added); see also Dana Corp., 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006); In re Spansion. Inc., 421 B.R. 151, 157 (Bankr. D. Del. 2009); In re Nat'l R.V. Holdings, Inc., 390 B.R. 690, 696 (Bankr. C.D. Cal. 2008).

5. It is the movant who bears the burden of proof under this rigorous standard. See, e.g., Dana Corp., 344 B.R. at 38 (stating that "[t]he movant has the burden of proving that the appointment of an additional committee is necessary"); In re Winn-Dixie Stores, Inc., 326 B.R. 853, 857 (Bankr. M.D. Fla. 2005) ("The party seeking the appointment of an additional committee bears the burden of proving it is not adequately represented"); In re Dow Corning Corp., 194 B.R. 121, 144 (Bankr. E.D. Mich. 1996) rev'd on other grounds, 212 B.R. 258 (E.D. Mich. 1997) (same).

## II. Moving Shareholders Fail to Meet Their Burden of Demonstrating That Appointment of Official Equity Committee Is Warranted

6. The Moving Shareholders fail to satisfy either of the two elements of the standard adopted by bankruptcy courts for determining whether the appointment of an official equity committee is warranted. Accordingly, the Motion should be denied.

### A. Moving Shareholders Fail to Establish Substantial Likelihood that Equity Holders Will Receive Meaning Distribution in These Cases

7. While the I would like nothing more than for the Moving Shareholders to be able to demonstrate a substantial likelihood that they will receive a distribution under a strict application of the absolute priority rule as the logical corollary would be that unsecured creditors have a substantial likelihood of being paid in full, the Moving Shareholders have not done so. To the contrary, all indications are that SunEdison is insolvent and, thus, under the absolute priority rule, its equity holders have no right to any recovery.

8. As one notable example of this, which the Moving Shareholders ignore, the Debtors' unsecured notes have traded at pennies on the dollar following the Petition Date notwithstanding the public unavailability of the balance sheet information which have left shareholders with no more than an assumption that the equity of SunEdison has value. These trading prices suggest that sophisticated market participants believe unsecured creditors will receive distributions far less than the full amount of their claims and that a substantial likelihood exists that equity holders will receive no recovery, let alone a meaningful recovery.

### B. Moving Shareholders Fail to Show that An Equity Committee Is Necessary for Adequate Representation of Their Interests

9. The Moving Shareholders also fail to demonstrate that their interests cannot be adequately represented in the Cases absent the appointment of an official equity committee. Even assuming that the Debtors' officers and directors do not serve as adequate representation to equity holders, the Moving Shareholders have not demonstrated that the interests of equity holders are so misaligned with unsecured creditors such that the appointment of an official equity committee is **necessary** for the adequate representation of their interests.

10. Given the prospect that unsecured creditors will not receive a full recovery in the Cases, the Committee's constituency and equity holders have parallel interests: both are motivated to maximize the value available for distribution while challenging any claims that are not properly entitled to distribution from the estate. See, e.g., In re Ampex Corp., No. 08-11094, 2008 WL 2051128, at *2 ("The Creditors' Committee will not only be seeking to ascertain the bona fides of the Debtors' future pension obligations but also is incentivized to seek maximum recoveries generally."); In re Leap Wireless Int'l, Inc., 295 B.R. 135, 139-40 (Bankr. S.D. Cal. 2003) (stating that motivation of official committee of unsecured

creditors was similar to that of movant shareholders – each sought to achieve the highest valuation possible for the debtor); Williams Commc'n Group, 281 B.R at 222-23 ("[T]he Creditors' Committee has sufficiently aligned or parallel interests with the Shareholders to preclude the need for an additional committee."). The Committee intends to continue to devote substantial efforts to maximizing the value of the Debtors' estates. While the Committee takes these actions for the primary benefit of the Debtors' unsecured creditors, the Debtors' equity holders are, and will remain, beneficiaries of the Committee's efforts to maximize value.

11. Just as importantly, the Moving Shareholders, like all equity holders, have standing to be heard in the Cases pursuant to section 1109(b) of the Bankruptcy Code. To the extent that Moving Shareholders, or any other equity holder, make a substantial contribution to these Cases, they may be reimbursed pursuant to section 503(b)(3)(D) of the Bankruptcy Code for their efforts as an administrative expense.

## **CONCLUSION**

12. For the reasons set forth above, the Court should deny the Motion.

## **Supplemental information**

On September 30, 2015 SunEdison reported, within their balance sheet (10-Q), $20.714 billion of assets and $16.141 billion of liabilities. In the same filing, the company reported that:

> "As of September 30, 2015 we own 43% of TERP and 34% of GLBL. We include both entities in our consolidated financial statements on the basis that we control of TERP and GLBL. However, TERP and GLBL and their subsidiaries are separate legal entities with their own creditors and other stakeholders. The renewable energy generation assets that TERP and GLBL and its subsidiaries have acquired and expect to acquire in the future are and will be legally owned by those entities and are not available to satisfy claims of creditors of SunEdison or our other non-TERP or GLBL subsidiaries. Except to the extent provided in certain agreements entered into with TERP and GLBL and its subsidiaries with respect to acquisitions and for the receipt of selected services and financial support from SunEdison, SunEdison has no obligations with respect to TERP or GLBL or for the benefit of its creditors."

On September 30, 2015 TerraForm Power reported, within their balance sheet (10-Q), $5.534 billion of assets and $2.996 billion of liabilities that were consolidated within SunEdison's balance sheet. During the same period, TerraForm Global reported $2.893 billion of assets and $1.462 billion of liabilities that were consolidated within SunEdison's balance sheet.

Dilution has also played a major role in eroding the value of SunEdison. For September 30, 2016 the outstanding shares of SunEdison stock was 319.5 million. Since that time, the shares outstanding have risen to 436 million per Document #4 "Declaration of Patrick M. Cook" of the court docket. In addition, on April 22, 2016 Wall Street Journal reported that only $18 million of cash remained on SunEdison's balance sheet. Furthermore, it is well known among valuation experts that intangible assets have no carrying value in bankruptcy, especially in regards to liquidation.

I ask the court to consider these facts and rule on them accordingly.


James E. Hodges
Jameshodges15@gmail.com