HEARING DATE: JUNE 7, 2016 AT 10:00 A.M. (PREVAILING EASTERN TIME)
OBJECTION DEADLINE: MAY 31, 2016 AT 4:00 P.M. (PREVAILING EASTERN TIME)

CHAPMAN AND CUTLER LLP
James M. Heiser
111 West Monroe Street
Chicago, Illinois 60603
Telephone: (312) 845-3000

-and-

Steven Wilamowsky
1270 Avenue of the Americas
New York, New York 10020
Telephone: (212) 655-6000

*Counsel for PNC Energy Capital, LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **In re:** | Chapter 11 |
| **SUNEDISON, INC.,** *et al.,* | Case No. 16-10992 (SMB) |
| Debtors.[1] | (Jointly Administered) |
|  | Related to Docket No. 312 |

**OBJECTION OF PNC ENERGY CAPITAL, LLC TO DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A), 363(B), AND 541(A)(1) AND BANKRUPTCY RULES 2002, 6004, AND 9006 AUTHORIZING AND APPROVING PROCEDURES FOR (A) THE SALE OR TRANSFER OF ASSETS OF NON-DEBTOR SUBSIDIARIES; (B) THE SALE OR TRANSFER OF *DE MINIMIS* ASSETS; AND (C) TAKING CORPORATE ACTION IN CONNECTION THEREWITH**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A). The address of the Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

3994690.01.14.docx

PNC Energy Capital, LLC ("*PNCEC*"), by and through its undersigned counsel, hereby submits this objection (the "*Objection*") to the *Debtors' Motion for Order Pursuant to Bankruptcy Code Sections 105(a), 363(b), and 541(a)(1) and Bankruptcy Rules 2002, 6004, and 9006 Authorizing and Approving Procedures for (A) the Sale or Transfer of Assets of Non-Debtor Subsidiaries; (B) the Sale or Transfer of De Minimis Assets; and (C) Taking Corporate Action in Connection Therewith* [Docket No. 312] (the "*Motion*," and the proposed order, the "*Proposed Order*"), and in support thereof, respectfully states as follows:[2]

### PRELIMINARY STATEMENT

1.  PNCEC acts as lessor in approximately one hundred outstanding long-term sale-leaseback transactions with the Debtors and/or their non-debtor subsidiaries, involving various commercial and utility scale Projects. Certain of the Debtors also serve as guarantors, providers of operations and maintenance support, or in other capacities in connection with the sale-leaseback arrangements. PNCEC also holds security interests in the membership interests of certain non-debtor project-level subsidiaries.

2.  Given the dearth of information currently available about the state of the Debtors' businesses and the apparent need for a comprehensive investigation of the Debtors' pre-petition transactions, PNCEC respectfully submits that the Motion should be denied or postponed as premature. At a minimum, if additional subsidiaries were to file for bankruptcy, the Court should not pre-approve the use of the *De Minimis* Asset Sale Procedures for future debtors.

3.  To the extent that the Debtors meet their burden of demonstrating that some relief is appropriate, then the *De Minimis* Asset Sale Procedures and the Non-Debtor Asset Sale Procedures (together, the "*Procedures*") should, at a minimum, be substantially modified.

---

[2]   Capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

PNCEC does not object in principle to: (i) establishing a process for conducting sales and transferring Projects or other related assets to suitable counterparties that are capable of providing the required support for each Project or related asset acquired; or (ii) appropriate "comfort orders" for parties who engage in sale transactions with the Debtors or their non-debtor affiliates. However, the Procedures as proposed are unreasonable and should be rejected or modified for at least the following four reasons:

- *First*, the Procedures do not provide adequate time for affected parties to evaluate the proposed transactions, because they allow only between two (2) and seven (7) days for parties to object. While the Court can shorten the 21-day period required under Rule 2002 for "cause," the Motion does not offer any evidence or even argument as to why expedited relief is appropriate or necessary.

- *Second*, the Procedures do not clearly provide for notice to all affected parties in each potential sale transaction. As just one example, the definition of "Non-Debtor Asset Sale Notice Parties" purports to limit notice to a limited core notice group and "any known affected creditor(s)." This definition is vague and open to interpretation, and should be expanded to explicitly require notice to all parties to contracts involving the Project at issue, such as lessors, power purchasers, and any other parties owed notice under applicable transaction documents, in order to ensure that PNCEC and similarly situated stakeholders have an opportunity to object.

- *Third*, the Procedures do not provide adequate disclosure regarding the purchaser in each transaction. The Procedures do not permit regulated financial institutions, such as PNCEC, to adequately comply with various "know your customer" requirements detailed below, and should be modified to require reasonable disclosure regarding purchasers and their beneficial owners. Further, the Procedures do not give affected parties any assurance that the potential purchaser of Project assets or a Project-level subsidiary has the financial wherewithal and operational skillset to perform the tasks previously performed by the Debtors or any non-debtor affiliate. At a minimum, the Procedures should require a statement setting forth how the acquirer is capable of filling their new role, so that such purchaser's fitness can be evaluated by their future counterparties.

- *Finally*, the Order should make clear that nothing in the Procedures purports to impair or modify the contractual rights of PNCEC or any other non-debtor party, and that any sale must proceed only if and to the extent permitted by the applicable transaction documents.

**BACKGROUND**

4.      On April 21, 2016 (the "*Petition Date*"), the debtors and debtors in possession (the "*Debtors*") in the above captioned cases (the "*Chapter 11 Cases*") filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*").

5.      The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

6.      On April 29, 2016, the United States Trustee for Region 2 appointed an official committee of unsecured creditors [Docket No. 148].

7.      No trustee or examiner has been appointed in the Chapter 11 Cases.

8.      At present, the Debtors have not provided basic disclosure regarding their corporate structure, such as an organizational chart identifying their approximately 2,000 non-debtor subsidiaries. The Debtors have not yet filed their Schedules of Assets and Liabilities ("*Schedules*") or their Statements of Financial Affairs ("*Statements*"). Rather, the Debtors have filed two motions seeking extensions of time to prepare, finalize and file what they state will be voluminous Schedules and Statements [Docket Nos. 19 and 306] (the "*Extension Motions*").[3] If the Debtors' second Extension Motion is approved, the Debtors will not be required to file their Schedules and Statements until July 20, 2016, at the earliest.

9.      Through the Motion, filed months before the Debtors will likely file their Schedules and Statements, the Debtors seek entry of an order authorizing and approving procedures enabling them to: (a) consent to and take corporate actions in order to cause their non-Debtor subsidiaries to sell or transfer non-Debtor assets; and (b) sell or transfer certain 'low value' renewable energy project systems and associated assets, as well as what they have

---

[3]     The Court entered an order [Docket No. 64] granting the Debtors' first extension request. The Debtors' Schedules and Statements are presently due on June 6, 2016 absent further extension.

referred to as 'surplus, obsolete, non-core or burdensome' assets. For the reasons set forth below, the Motion should be denied.

**OBJECTION**

I. **THE LACK OF ADEQUATE DISCLOSURE WARRANTS DENYING THE MOTION WITHOUT PREJUDICE AS PREMATURE**

10. As a threshold matter, the Debtors have failed to provide sufficient information about the current state of their finances, internal organizational structure, or restructuring and/or liquidation plans to determine whether or not the Procedures are necessary or appropriate for the administration of their estates. Accordingly, the Motion should be denied or put off until, at the earliest: (a) the completion of a satisfactory investigation of the Debtors' businesses, financial affairs and pre-petition transactions and the delivery to all interested parties of a comprehensive report detailing the results of such investigation; (b) the filing of the Debtors' Schedules and Statements; and (c) the disclosure to the Court and to creditors of the complete organizational structure of the Debtors and the more than 2,000 non-debtor affiliates described in the Motion.

11. Because the Debtors have not yet filed their Schedules or Statements and have themselves identified potentially significant lapses in internal financial monitoring and controls (*See, e.g., Debtors' Motion for Entry of an Order (I) Appointing an Examiner and (II) Granting Related Relief* [Docket No. 11], ¶ 2), it is impossible to know at this juncture what percentage of the Debtors' overall business might be included in the Motion's definition of *de minimis* or non-debtor assets. The Debtors have failed to provide parties with a complete organizational chart detailing the interrelationships among its over 2,000 subsidiaries, thus making it impossible to understand and adequately assess whether particular categories of non-Debtor affiliates or projects are likely to be included in the proposed sales or the impact of the proposed *de minimis*

5

and non-Debtor sales on the Debtors' business as a whole, let alone on any particular non-Debtor affiliate and its project.

12.     Further, the Proposed Order provides that "[t]his Order shall apply to the cases of any of the Debtors' affiliates that file for relief under the Bankruptcy Code and that are jointly administered with these Chapter 11 Cases, including any of the Debtors' affiliates that subsequently commence chapter 11 cases." (Proposed Order, ¶ 8). Given the dearth of information available about the Debtors' affairs, the Debtors should not be permitted to extend the application of the Procedures from twenty-six debtor entities to over 2,000 entities without further order of this Court.

**II.     AT A MINIMUM, THE PROCEDURES SHOULD BE MODIFIED TO PROTECT THE DUE PROCESS RIGHTS OF ALL AFFECTED PARTIES**

**A.     The Debtors Have Not Shown Cause to Shorten the 21 Day Period Set forth in Rule 2002(a)(2)**

13.     PNCEC does not object, in principle, to the approval of an asset sales procedure for the Debtors, to the extent that the Debtors can demonstrate a need for such relief. However, the Procedures provide for unreasonably short objection time frames. Were the Procedures to be adopted, the Debtors would be required to provide just two days' notice for *de minimis* asset sales under $5 million, seven days' notice for *de minimis* asset sales over $5 million, and seven days' notice for non-Debtor asset sales over $10 million. (Proposed Order ¶¶ 2, 4).

14.     Here, although the Debtors acknowledge that they must show cause to shorten the notice period, the Motion fails to provide any evidence or argument as to why urgent relief is needed. The request to shorten the notice period should be denied on this basis alone.

6

15. Bankruptcy Rule 2002 requires debtors in possession to provide a minimum of 21 days' notice of proposed sales of property outside the ordinary course of business to "the debtor, the trustee, all creditors and indenture trustees" as well as any committee appointed under Bankruptcy Code section 1102. (Fed. R. Bankr. P. 2002(a)(2)). The purpose of this provision of Rule 2002 is to afford creditors "an opportunity to object to the sale and raise a dispute for the court's attention." Fed. R. Bankr. P. 2002, Advisory Committee Note (1983). "Efficiency and expediency [] cannot be achieved at the expense of required protections under the Bankruptcy Code." *In re Borders Grp., Inc.*, 453 B.R. 477, 480 (Bankr. S.D.N.Y. 2011) (finding reduced notice time appropriate under the circumstances of that case where *de minimis* asset value threshold was lower than in the present case and in which assets to be sold were more clearly identified, but requiring notice for *de minimis* asset sales be provided to all 2002 Parties even for asset sales valued at less than $300,000); *see also* Henry E. Hildebrand III, *Getting Noticed: The New Notice Requirements of Section 342*, 13 Am. Bankr.Inst. L.Rev. 533 (2005) ("Notice is the fulcrum upon which our bankruptcy system balances the interests of creditors and debtors. Getting accurate and detailed notice of anticipated and potential actions to creditors is not only a requirement of the statute and rules, but it is a basic element of due process"). To the degree that urgent relief is needed for a particular circumstance, the Debtors are free to seek expedited relief on an *ad hoc* basis. However, the Debtors have not shown good cause to shorten the 21-day notice period provided for in Rule 2002(a)(2).

16. Notwithstanding the Debtors' assertion that they "do not believe that Court approval is necessary for the non-Debtors to consummate the Non-Debtor Asset Sales," they nevertheless seek approval of such sales pursuant to, among other provisions, Bankruptcy Code section 363, and seek to have purchasers of assets sold through such sales protected by section

7

363(m).  (*Proposed Order*, ¶ 2).  If the Debtors wish to gain these protections, then they should also be required to comply with applicable due process requirements.  *In re Borders Grp., Inc.*, 453 B.R. 477 (Bankr. S.D.N.Y. 2011) (requiring debtors to meet statutory requirements in connection with proposed *de minimis* asset sales where debtor sought to gain protection of section 363(m), among other provisions).

17.    If the Procedures are approved as currently drafted, the Debtors and their affiliates would be permitted to divest the estates of an unquantified number of assets, without providing affected parties with adequate notice or time to object.  As the Debtors have acknowledged, these Chapter 11 Cases are incredibly complex, the Debtors' internal financial controls and reporting have been compromised and there has, to this point, been only limited disclosure of the Debtors' relevant financial and organizational information.  Absent any justification for shortening the notice period under Rule 2002(a)(2), the full 21 day notice period should be enforced.

**B.    Notice Should Be Given to All Parties Requesting Service Under Rule 2002, Together with All Parties to any Project Documents**

18.    Throughout the Procedures, the Debtors also propose to provide notice to a smaller set of parties than those who have requested service under Rule 2002 (the "*2002 Parties*").  The Debtors have not attempted to show cause why notice should be curtailed, and to do so would potentially deprive affected parties of their right to be heard.

19.    For example, the definition of "Non-Debtor Asset Sale Notice Parties" purports to limit notice to the core notice group and "any known affected creditor(s)."  This definition is vague and leaves open to interpretation whether PNCEC or a similarly situated party would be an "affected creditor" that is "known" to the Debtors in connection with the sale of any Project or Project-level assets.  Even the question of whether a party is a "creditor" is open to interpretation in this case depending on the nature of their claims against the estate or their

8

relationship with the non-debtor entity in question. Given that the Debtors purport to invoke the protections of §363(m), a party that is affected that did not receive notice could potentially be left without a remedy should a sale close without such party having received notice under the Procedures.

20. The Court should adopt a cautious approach and require broad notice. In the orders cited by the Debtors establishing procedures for the sale of *de minimis* assets, notice is routinely provided to 2002 Parties as well as parties affected by such sales. *See, e.g., In re Energy Future Holdings Corp.*, Case No. 14-10979 (CSS), Docket No. 764 (Bankr. D. Del. June 3, 2014) (for sales above $250,000, notice must be given, at minimum and among others, to all 2002 Parties affected by such sales); *In re Lear Corp.*, Case No. 09-14326 (ALG), Docket No. 267 (Bankr. S.D.N.Y. July 31, 2009) (for sales above $1,000,000, notice must be given, at minimum and among others, to all 2002 Parties and all other known affected creditors); *In re Visteon Corp.*, Case No. 09-11786 (CSS), Docket No. 601 (Bankr. D. Del. July 17, 2009) (for sales above $500,000, notice must be given, at minimum and among others, to all 2002 Parties and all other known affected creditors); *In re Charter Commc'ns, Inc.*, Case No. 09-11435 (JMP), Docket No. 187 (Bankr. S.D.N.Y. Apr. 15, 2009) (for sales above $1,000,000, notice must be given, at minimum and among others, to all 2002 Parties and all other known affected creditors).

21. Therefore, the Debtors should be required to provide notice of all asset sales pursuant to the Motion to: (i) all parties on the Rule 2002 service list and (ii) the parties to the "Project Documents" as defined in each sale-leaseback master purchase agreement or the equivalent documents for other types of transactions.

C.  **Additional Purchaser Disclosure Should Be Required, and the Order Should Expressly Reserve the Rights of Contracting Parties**

22.     The Procedures provide Project counterparties no assurance that any purchaser of assets has the financial wherewithal and operational skill set to perform tasks presently performed by the Debtors. Rather, the only disclosure that is provided is the name of the purchaser and a statement that the transfer was the result of an arms-length transaction. See, (Proposed Order ¶¶ 2, 4). While the issue of whether a particular purchaser is qualified may be decided in connection with any objection that is filed, for purposes of the Procedures, it is important that affected parties have adequate disclosure regarding the purchaser, particularly given that that the acquiring entity may be a special purpose entity affiliated with an unknown or undisclosed third party.

23.     The Court should also require broad purchaser disclosure to allow affected financial institutions, such as PNCEC, to comply with various "know your customer" and anti-money laundering rules and regulations, including, without limitation, the USA PATRIOT Act, Title III of Pub. L. 107-56 (the "*Patriot Act*"). For example, the Patriot Act, among other federal laws and regulations, prevents PNCEC and other similarly situated parties from maintaining contractual relationships with certain prohibited persons. PNCEC may also be required to obtain, verify and record, *inter alia*, information that identifies the purchaser and each of their beneficial owners, including the name, address, tax identification number and other information that will allow PNCEC to identify the purchaser and their affiliates in accordance with the Patriot Act and ensure that they are not otherwise persons prohibited from becoming PNCEC customers.[4] Without these additional purchaser disclosures, it may not be possible for PNCEC

---

[4] *See also* 31 C.F.R. §§ 1010, 1020, 1023, *et al.*, Customer Due Diligence Requirements for Financial Institutions – Final Rule (May 11, 2016), which newly issued rule contains customer due diligence

10

and others similarly situated to participate in the proposed transaction or otherwise comply with their statutory and regulatory obligations.

24.     Further, in connection with most completed Projects, a non-debtor subsidiary enters into an agreement with a third party, typically referred to as an "off taker"[5], who agrees to purchase power from the non-debtor subsidiary pursuant to a power purchase agreement under which the off-taker pays a fixed price per kW of energy delivered. The non-debtor subsidiary then undertakes an obligation to operate and maintain the solar equipment so that it will generate energy that can be sold under the power purchase agreements, monitor the amount of energy delivered, and bill and collect amounts due under the power purchase agreement, which obligations are typically sub-contracted to the Debtor or other non-debtor subsidiary to perform. At a minimum, if a sale proposed under the Procedures involves assets that comprise a Project that has been placed in service and is subject to ongoing operation, maintenance, energy delivery and collections requirements, the Procedures should require a statement describing how the acquirer is capable of performing on relevant Project-level contracts and filling the role previously filled by the Debtors or non-debtor affiliates so that counterparties can object if there is concern about a purchaser's ability to perform in the Debtors' or non-debtor affiliate's stead.

25.     Finally, the Order should make clear that nothing in the Procedures purports to impair or modify the contractual obligations of any non-debtor party, and that any sale must proceed if and to the extent permitted by applicable transaction documents. For example, in many contracts involving PNCEC Projects or Project assets, a change of control will constitute

---

requirements for covered financial institutions and includes a new requirement to identify and verify the identity of beneficial owners of legal entity customers, subject to certain exclusions and exemptions.

[5]   The off takers include a diverse array of constituents, including school districts, government offices, retailers and public utilities.

an event of default, or require consent and a demonstration of an ability to perform in order to obtain such consent. The Order should be clear that the Procedures do not authorize a modification of any non-debtor agreements or impair the rights of any third parties and that any sales must proceed, if at all, in accordance with the agreements to which any Debtor or non-debtor subsidiary are a party.

### **RESERVATION OF RIGHTS**

26. PNCEC reserves all rights with respect to the Motion or any subsequent proposed sale or transfer, as well as the right to supplement this Objection.


[REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK]

WHEREFORE, for the reasons articulated herein, this Court should (a) postpone consideration of the Motion or deny the relief sought in the Motion without prejudice until such time as (i) a satisfactory investigation of the Debtors' businesses, financial affairs and pre-petition transactions has been completed and a comprehensive report detailing the results of such investigation has been delivered to all interested parties, (ii) the Debtors have filed their Schedules and Statements, and (iii) the Debtors have disclosed to the Court and to creditors the complete organizational structure of the Debtors and the non-debtor affiliates described in the Motion, or (b) alternatively, require that the Debtors make those changes to the Procedures and Proposed Order identified in this Objection to ensure adequate notice and objection rights are preserved for all interested parties, and (c) grant such other and further relief as may be just and proper.

Dated: Chicago, Illinois
       May 31, 2016

           CHAPMAN AND CUTLER LLP

           By: */s/ James M. Heiser*
              James M. Heiser
              111 West Monroe Street
              Chicago, Illinois 60603
              Telephone: (312) 845-3000

           -and-

           Steven Wilamowsky
           1270 Avenue of the Americas
           New York, New York 10020
           Telephone: (212) 655-6000

           *Counsel for PNC Energy Capital, LLC*