**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | |
| | Chapter 11 |
| **SUNEDISON, INC., *et al.*,** | |
| | Case No. 16-10992 (SMB) |
| **Debtors.** | |
| | (Jointly Administered) |

**OBJECTION OF AKUO ENERGY USA, INC. TO THE DEBTORS' MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 363(b), 1107, AND 1108 AND BANKRUPTCY RULES 2002, 6004, 9006, AND 9019 AUTHORIZING AND APPROVING ENTRY INTO COMMITMENT LETTER FOR CERTAIN PROJECT SALES AND GRANTING RELEASES IN CONNECTION THEREWITH**

Akuo Energy USA, Inc. ("Akuo"), by and through its undersigned counsel, hereby files this objection to the *Debtors' Motion for Order Pursuant To Bankruptcy Code Sections 105(A), 363(B), 363(F), 363(M), 1107, and 1108 and Bankruptcy Rules 2002, 6004, 9006, And 9019 Authorizing and Approving Entry Into Commitment Letter for Certain Project Sales and Granting Releases In Connection Therewith* [Dkt. No. 374] (the "Motion"), and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Akuo does not object generally to the Debtors' efforts to sell or transfer its interests in the Sunflower Project to Novatus Holdings.[1] Rather, Akuo objects to the Debtors' request to grant to Novatus Holdings the exclusive right to enter into an agreement to purchase the Rocksprings Project for a limited period of time. Such grant of exclusivity will have one of two possible effects, neither of which is in the best interests of the Debtors' creditors: the grant

[1] Unless otherwise stated, all capitalized terms not defined herein shall have the same meaning as set forth in the Motion.

of exclusivity will (1) as a practical matter, exclude all potential competing bidders on the Rocksprings Project, or (2) destroy value in the Rocksprings Project, as time is of the essence. In order to avoid the occurrence of either of these two possibilities, Akuo respectfully requests that the grant of exclusivity to Novatus Holdings in connection with the Rocksprings Project be denied.

## JURISDICTION AND VENUE

2.  The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4.  On April 21, 2016 (the "Petition Date"), the Debtors each filed a voluntary petition in the above-captioned Court seeking relief under chapter 11 of title 11 of the United States Code and, continually since the Petition Date, the Debtors have operated as debtors-in-possession with respect to their bankruptcy estates [Dkt. No. 1].

5.  Akuo is a Chicago-based subsidiary of France's leading independent renewable energy power producer. Akuo and Rocksprings Val Verde Wind Holdings, LLC ("Wind Holdings"), a Delaware limited liability company and a non-debtor affiliate of the Debtors, entered into a purchase and sale agreement, dated as of July 2, 2015, whereby Akuo sold to Wind Holdings all of its equity interests in the Rocksprings Project (the "Project PSA"). For several years prior to the sale, Akuo had been the originator of the project, the 100% owner of the project, and had fully developed the project with regard to land rights, permitting, interconnection, valuable offtake power purchase agreements, environmental studies, design, energy assessments, engineering, and more, making Rocksprings a turnkey project. Akuo

therefore remains highly familiar with the facts surrounding the current state of the Rocksprings Project, on which construction commenced at the end of 2015. There currently remains approximately $18.4 million dollars of unpaid purchase price due and owing from Wind Holdings to Akuo under the Project PSA.

6. Pursuant to Section 3.4 of the Project PSA, Akuo was granted an exclusive right "in its sole discretion" to repurchase the Rocksprings Project in the event that Wind Holdings did not deliver to Akuo a payment of 80% of the unpaid purchase price, on or before the earlier of (i) the commencement of construction or (ii) December 31, 2015. No such payment was made. Akuo did not exercise the purchase option prior to the Petition Date, because it was led to believe that the Debtors would complete a project financing which would include payment in full of the unpaid purchase price to Akuo.

7. On May 20, 2016, the Debtors filed the Motion, seeking authorization for the Company to (i) sell or transfer its interests in the Sunflower Project to Novatus Holdings free and clear (the "Sunflower Sale"), (ii) grant to Novatus Holdings the exclusive right to enter into one or more agreements to purchase the Remaining Projects, including the Rocksprings Project, for a limited period of time and subject to the conditions set forth in the Commitment Letter attached as Exhibit B to the Motion (the "Commitment Letter"), and (iii) approve releases of causes of action against Novatus Holdings and related parties with respect to transactions consummated under a certain *Master Membership Interest Purchase and Sale Agreement*, dated as of October 26, 2015, by and among Blue Sky West Capital, LLC, First Wind Oakfield Portfolio, LLC, First Wind Panhandle Holdings III, LLC, DSP Renewables, LLC, and Hancock Renewables Holdings,

LLC and Terra Nova, as amended and restated on March 25, 2016 (the "MIPSA"). Motion, pp. 2, 5.

8. Specifically, the Debtors wish to enter into the Sunflower Sale pursuant to that certain Commitment Letter, dated as of May 19, 2016, by and between the Debtors and Novatus Holdings. *Id.,* pp. 8-9. The Commitment Letter provides that upon execution of a Purchase and Sale Agreement for the Sunflower Sale, Novatus Holdings will be provided with a limited exclusive right to purchase the Remaining Projects. *Id.,* p. 11. In particular, if SUNE and Novatus Holdings negotiate a purchase price for the Rocksprings Project that is reasonably acceptable to SUNE, Novatus Holdings will also receive exclusivity with respect to the Rocksprings Project. *Id.*

9. The contemplated exclusivity grant will expire on the earlier of (i) the date that is thirty days after the execution and delivery of the PSA by the parties thereto and (ii) the date that is forty-five days after the date of the Letter Agreement. Motion, Exhibit B, ¶ 7(a). Under the Commitment Letter, Novatus Holdings is to have the exclusive right to purchase, "by sale of equity, assets, merger or other similar transaction," the Rocksprings Project, provided that the exclusivity period shall not become effective until the date that SUNE and Novatus have agreed in principle to a purchase price for the Rocksprings project reasonably acceptable to SUNE. *Id.*

10. Akuo possesses, under the Project PSA, an exclusive repurchase option over the Rocksprings Project and has actively expressed to the Debtors an interest in purchasing the Rocksprings Project. In fact, Akuo, with authorization and approval from SunEdison, had begun preliminary due diligence on the Rocksprings Project. If the Debtors' request in this Motion is granted, however, Akuo may be foreclosed from completing its required due diligence or from exercising its previously bargained-for purchase option.

11. Through the Motion, the Debtors seek to lock in Novatus Holdings as the stalking horse bidder for the Remaining Projects, including the Rocksprings Project, to the exclusion of all other parties who may wish to serve as the Stalking Horse bidder or offer competing bids.

**ARGUMENT**

12. It is the overarching objective of sales in bankruptcy to maximize value to the estate. *In re Metaldyne Corp.,* 409 B.R. 661, 667-68 (Bankr. S.D.N.Y. 2009). To that end, courts recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales. *In re Dura Auto. Sys., Inc.,* Case No. 06-11202, 2007 WL 7728109, at *90 (Bankr. D. Del. Aug. 15, 2007) (citing *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656–57 (Bankr. S.D.N.Y. 1992)).

A. **The Grant of Exclusivity Will Chill Bidding or Eliminate it Entirely.**

13. In the Motion, the Debtors have asserted a great need for the Sunflower Project to be consummated in the immediate future in order to preserve the value of the Project: if turbine deliveries are not made in July or August 2016, the Sunflower Project would not be able to achieve commercial operation by the deadlines set forth in its power purchase agreement. Motion, p. 8. The Debtors allege that the Sunflower Project is most at risk of significant value decline on a near-term basis, thus warranting a quick sale of the asset, as opposed to a marketing process in search of the highest and best bids. *Id.,* p. 7.

14. The Debtors also mention that the same exigencies which apply to the Sunflower Project also apply to the Remaining Projects. Motion, p. 7 ("Continued delay in achieving a near-term Financed Project Sale increase the risk of cost increases and schedule delays in respect

of the Remaining Projects. If costs continue to increase, the value of the Remaining Projects decreases.") Akuo believes that this is particularly true for the Rocksprings Project, which loses further value for the Debtors' estates as each day passes and may eventually be impossible to sell.

15. Despite this, the Debtors have proposed to grant exclusivity to Novatus Holdings for an extended period, creating a delay in time before any other potential bidders are able to study the Rocksprings Project or perform due diligence. Potential bidders for the Rocksprings Project, such as Akuo, who may be ready and willing to start due diligence with the aim of preparing worthwhile offers, are thus sidelined until the expiration of the exclusivity period, notwithstanding that the Rocksprings Project is continually declining in value. In particular, based on the preliminary analysis completed by Akuo, if a purchase of the Rocksprings Project is not completed by August 2016, the value of the Rocksprings Project will drastically decline, due to the termination of, and the liquidation damages associated with, its existing power purchase agreements.

16. The Debtors allege that, at the lapse of the exclusivity period, the Debtors "shall have the right to actively solicit higher and better offers for those Remaining Projects." Motion, p. 11. This statement, however, will most likely be a red herring. At the lapse of exclusivity, it is likely that the same argument used by the Debtors to justify the quick Sunflower Sale now will be used to justify the quick sale of the Rocksprings Project to Novatus Holdings. Court approval will likely be sought on an expedited basis, on the grounds that the Rocksprings Project will need to be sold right away to Novatus Holdings in order to avoid further deterioration in value.

17. If those events were to occur, there will not be enough time for Akuo, or competing bidders, to perform or complete their own due diligence or negotiate with the Debtors over the purchase of the Rocksprings Project. The grant of exclusivity effectively prevents Akuo from exercising its contractually-bargained purchase option, and prevents all other potential bidders from participating in the sale, even if the potential bidders could have submitted higher or better bids for the Rocksprings Project. The grant of exclusivity therefore comes at a large opportunity cost to the estate, and chills, if not eliminates entirely, the competitive bidding process contemplated by the Bankruptcy Code.

B. **The Grant of Exclusivity Destroys Further Value.**

18. Even if the Debtors do not immediately approach the Court at the end of exclusivity period with a request for a quick sale to be approved to avoid a further loss in value to the Rocksprings Project, competing bidders will be required to start their diligence efforts only at the lapse of the exclusivity period. The Debtors have alleged that due diligence for the Sunflower Sale is a "process that typically takes several weeks if not months," and the same is likely to be true for the Rocksprings Project. *Id.,* p. 10. As a result, in order to give Akuo or other competing bidders ample time to perform due diligence and put together offers at the lapse of the exclusivity period, further delay would be required.

19. This further delay, however, will cause the Rocksprings Project to deteriorate even further in value. The exclusivity period is time which the Debtors' estates cannot lose with respect to the Rocksprings Project; to add on the cost of additional time at the end of the exclusivity period will significantly destroy what value the Rocksprings Project may have had.

20. Time is of the essence. This is not a situation in which the Debtors can engage in a long marketing process for the Rocksprings Project in order to ensure that the highest and best

bid is received. The Debtors recognize and admit this, and in fact wield the continually declining value of the Projects as reason for the Court to approve the Sunflower Sale. At the same time, however, the Debtors wish to play it the other way, arguing that the creation of the exclusivity period, during which the value of the Remaining Projects will further deteriorate, "will merely set a floor for potentially higher and better offers." *Id.,* p. 12. Contrary to the Debtors' assertion that the exclusivity period is the "best means to preserve estate value," the grant of exclusivity to Novatus Holdings creates further delays which come at a direct cost to the estate, and which will likely wind up significantly reducing, if not destroying, any value which the Rocksprings Project still has. Furthermore, if any party should be granted exclusivity for Rocksprings Project, it should be Akuo, by nature of its historic relationship to the project and its existing repurchase option for the project under the Project PSA. Akuo is also the party most likely to be able to execute and perform on a purchase transaction for the Rocksprings Project in a timely manner.

### C. The Grant of Exclusivity is Ambiguous as to Rocksprings Project and Creates Even More Uncertainty for Potential Bidders.

21. The Commitment Letter states the following:

> "…Novatus shall have the exclusive right to purchase, by sale of equity, assets, merger or other similar transaction . . . the Rocksprings project (as defined in Annex 1 hereto); provided, however, that the Exclusivity Period with respect to the Rocksprings project shall not become effective until the date that SUNE and Novatus have agreed in principal [sic] to a purchase price for the Rocksprings project reasonably acceptable to SUNE, in each case pursuant to a definitive purchase and sale agreement with respect to the applicable Remaining Project on terms and conditions mutually acceptable to Novatus and SUNE."

Motion, Exh. B, ¶ 7(a).

22. The proviso clause quoted above creates even more uncertainty for Akuo and other potential bidders on Rocksprings Project. The Debtors describe the proviso clause as granting Novatus Holdings exclusivity "only if SUNE and Novatus Holdings negotiate a purchase price . . . that is reasonably acceptable to SUNE." Motion, p. 11. Neither the Commitment Letter nor the Motion describes whether Akuo or other interested potential bidders are permitted to come in and perform due diligence before the Exclusivity Period begins and, if they are, whether their work will be immediately curtailed by the commencement of the Exclusivity Period.

23. In addition, if SUNE and Novatus Holdings are to "negotiate a purchase price . . . pursuant to a definitive purchase and sale agreement with respect to the applicable Remaining Project" prior to the start of the exclusivity period, it is not clear what benefit the exclusivity period serves since the purchase and sale agreement will have already been negotiated as to all material terms including price.

24. In sum, for the Rocksprings Project, it is unclear what the full extent of the requested exclusivity is, creating additional uncertainty for potential bidders on the Rocksprings Project.

**CONCLUSION**

For all the foregoing reasons, Akuo respectfully requests that the Debtors be denied authorization to grant Novatus Holdings the exclusive right to enter into an agreement to purchase the Rocksprings Projects under the terms set forth in the Commitment Letter. In order to avoid the exclusion or elimination of potential competing bidders or Akuo's repurchase option, and to avoid unnecessary deterioration of project value, the Debtors should be free to permit other possible bidders to perform due diligence now, and free to negotiate with all

prospective bidders now. In so doing, the Debtors can allow the market to set the best and highest price for the asset, even in light of the need for a swift sale to avoid further deterioration of project value.

Novatus Holdings already possesses a significant competitive advantage; it has already performed "significant due diligence" on the Remaining Projects, including the Rocksprings Project. *Id.,* p. 11. This advantage should not be increased even further by the grant of exclusivity; such grant will come at a direct cost to the Debtors' estate and effectively forecloses all other bidders from participating in the sale, benefitting only Novatus Holdings as purchaser. If exclusivity is not denied, bidding will be chilled by the absence of a level playing field for all bidders, or, in order to ensure that there is a level playing field after the end of the exclusivity period, further estate value will be irreparably lost.

Dated: New York, New York  
       June 1, 2016

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By: /s/ Edwin E. Smith  
    Edwin E. Smith  
    Melissa Y. Boey  
    101 Park Ave.  
    New York, NY 10178-0060  
    Telephone: (212) 309-6825

*Counsel for Akuo Energy USA, Inc.*