Hearing Date: June 7, 2016 at 10:00 a.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Matthew S. Barr
Joseph H. Smolinsky
Jill Frizzley

*Proposed Counsel to Official
Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SUNEDISON, INC., *et al.*, | Case No. 16-10992 (SMB) |
| Debtors.[1] | (Jointly Administered) |

**RESPONSE OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO ORDER TO SHOW CAUSE WHY ORDER SHOULD NOT BE ENTERED
PURSUANT TO 11 U.S.C. § 1102(a)(2) DIRECTING UNITED STATES TRUSTEE
TO APPOINT AN OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS**

TO THE HONORABLE STUART M. BERNSTEIN,
UNITED STATES BANKRUPTCY JUDGE

The Official Committee of Unsecured Creditors (the "**Creditors' Committee**") of SunEdison, Inc. and its affiliates that are debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") submit this response to the Order to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A). The address of the Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

Show Cause directing parties in interest to show cause why an order should not be entered pursuant to 11 U.S.C. § 1102(a)(2) directing the United States Trustee to appoint an official committee of equity security holders (ECF No. 356) (the "**Order to Show Cause**") and respectfully represent as follows:

## Preliminary Statement

1. The appointment of an Equity Committee is inappropriate in these chapter 11 cases for several reasons, including:

   - There is no evidence that equity will receive any recovery in these cases based on the application of the absolute priority rule;

   - Equity holder interests are protected by the Debtors' board and management and the Creditors' Committee's duty to maximize the value of the Debtors' estates; and

   - Debtors' secured and unsecured claims are trading at levels well below par showing the market believes these estates are insolvent.

2. Appointment of an Equity Committee will further strain the Debtors' estates with additional administrative costs of added professional fees and expenses, depleting the already slim projected recoveries to the Debtors' unsecured creditors.

## Background

3. On April 21, 2016 (the "**Petition Date**"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of title 11, United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

4. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b). The Debtors' estates are not consolidated.

2

5. On April 29, 2016, the United States Trustee for Region 2 (the "**U.S. Trustee**") appointed the Creditors' Committee (ECF No. 148).[2]

6. In the weeks following the Petition Date, the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") received several letters and e-mails[3] from parties alleging to be shareholders of Debtor SunEdison, Inc. (the "**Equity Holders**") requesting the appointment of an official committee to represent shareholders' interests in these chapter 11 cases (the "**Equity Committee**"). In response to the Equity Committee Requests, the Bankruptcy Court issued the Order to Show Cause.

**Response**

7. Section 1102(a)(2) of the Bankruptcy Code provides "[o]n request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee." 11 U.S.C. § 1102(a)(2).

8. The appointment of an official equity committee should be the rare exception, as the statute requires a court to find that "appointment of an official committee is 'necessary' for equity holders' interests to be adequately represented, a high standard that is far more onerous than if the statute merely provided that a committee be useful or appropriate." *In re Eastman Kodak Co.*, 2012 WL 2501071, at *2 (Bankr. S.D.N.Y. June 28, 2012); *In re Oneida Ltd.*, 2006 WL 1288576, at *1 (Bankr. S.D.N.Y. May 4, 2006) (same); *see also In re Dana*

---

[2] The members of the Creditors' Committee are: (1) BOKF, N.A., as Indenture Trustee; (2) AQR DELTA Master Account, L.P.; (3) Advantage Opportunities Fund, LP; (4) D.E. Shaw Composite Holdings, LLC; (5) Flextronics Industrial, Ltd.; (6) Albemarle Corporation; and (7) Vivint Solar, Inc.

[3] (i) Letter dated April 25, 2016, from Sven Gothel (ECF No. 354); (ii) Letter dated May 11, 2016, from Sergey Smolin (ECF No. 319); and (iii) e-mail dated May 19, 2016 (ECF No. 353) (collectively, the "**Equity Committee Requests**").

3

WEIL:\95728181\4\76491.0003

*Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006) ("The appointment of an additional committee under section 1102(a)(2) is considered 'extraordinary relief'").

9. The movant has the burden of proving that the appointment of an additional committee is necessary to insure adequate representation of the moving party. *See In re Dana Corp.*, 344 B.R. at 38; *In re Enron Corp.*, 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002); *Albero v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 68 B.R. 155, 158 (S.D.N.Y. 1986). An equity committee should not be appointed unless equity holders establish that (i) there is a substantial likelihood that they will receive a meaningful distribution in the case under a strict application of the absolute priority rule, and (ii) they are unable to represent their interests in the bankruptcy case without an official committee. *In re Williams Commc'ns Grp., Inc.*, 281 B.R. 216, 223 (Bankr. S.D.N.Y. 2002). The Equity Holders failed to satisfy their burden on both elements.

**A.     Equity Holders Failed to Establish That They Are Likely to Receive a Meaningful Distribution in These Chapter 11 Cases**

10. The appointment of an Equity Committee raises cost concerns, since the appointment of an Equity Committee will be "closely followed by applications to retain attorneys and accountants." *In re Williams*, 281 B.R. at 220 (quoting *In re Saxon Indus., Inc.* 39 B.R. 945, 947 (Bankr. S.D.N.Y. 1984)); *see also In re Beker Indus. Corp.*, 55 B.R. 945, 949 (Bankr. S.D.N.Y. 1985) (stating that appointment of an equity committee gives rise to cost concerns). Therefore, "[n]o equity committee should be appointed when it appears that a debtor is hopelessly insolvent because neither the debtor nor the creditors should have to bear the expense of negotiating over the terms of what is in essence a gift." *In re Emons Indus.*, 50 B.R. 692, 694 (Bankr. S.D.N.Y. 1985). Under a strict reading of the absolute priority rule, equity holders are not entitled to distribution unless all unsecured claims are paid in full. *See* 11 U.S.C.

4

§ 1129(b)(2)(B). If the Equity Holders have no economic interest to protect, the appointment of an Equity Committee is not warranted.

11. Certain of the Equity Committee Requests assert that the appointment of an Equity Committee is appropriate because the Debtors' first day filings reflect that the Debtors' assets are over $4 billion greater than the Debtors' liabilities, showing that the Debtors are, in fact, solvent. However, the Equity Holders seemingly ignore that these numbers, contained in the Debtors' voluntary petitions, include the consolidated assets and liabilities of non-debtors, including TerraForm Power, Inc. and Terraform Global, Inc., and are book value, which is not indicative of true value of the Debtors' assets. *See, e.g.*, *Voluntary Petition of SunEdison, Inc.*, Exhibit A, n.2 (ECF No. 1). Therefore, these numbers do not accurately reflect the Debtors' true financial position.

12. All indications thus far lead the Creditors' Committee to believe that the Debtors are insolvent to the extent that equity holders will not receive any distribution in these cases. *See* 11 U.S.C. § 101(32) (defining insolvency "with reference to an entity…[as] financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation…."). A balance sheet, however, is not the only indication of insolvency. Courts in this district have looked at other factors when determining insolvency, such as trading price for a debtor's bonds as well as the need for cash infusion to fund the debtor's operations during a chapter 11 case. *See In re Williams*, 281 B.R. at 220-21.

13. First, the trading prices of the Debtors' secured and unsecured bonds indicate that equity holders are unlikely to receive a recovery in these chapter 11 cases. In fact, the current trading prices of SunEdison's second lien and unsecured debt imply that the Debtors' value falls far below its liabilities of $2.7 billion of funded indebtedness plus potentially

5

hundreds of millions of other unsecured claims.[4]  Significant value in excess of current market implications would be necessary for equity to receive a meaningful distribution; there is, unfortunately, no reasonable expectation of such value.

14.  Further, the requirement of a significant capital infusion is indicative of a debtor's financial condition.  *See In re Williams*, 281 B.R. at 221.  On the first day of these chapter 11 cases the Debtors filed a motion seeking debtor-in-possession financing,[5] as well as two declarations in support of such motion.  The Debtors' advisors stated that "the Debtors' business and the Debtors' reorganization efforts hinge upon obtaining immediate access to financing."  *Declaration of Mark W. Hojnacki in Support of Debtors' Motion for Interim and Final Orders (I) Authorizing Debtors (A) to Obtain Senior Secured Superpriority Postpetition Financing Pursuant to Bankruptcy Code Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)91), and 364(e) and (B) to Utilize Cash Collateral Pursuant to Bankruptcy Code Section 363, (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to Bankruptcy Code Sections 361, 362, 363 and 364 and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)* at ¶ 6 (ECF No. 35).  Additionally, the Debtors announced at the First Day Hearing that "it's not clear, first of all, where the values are in this case; first, second lien, [or] unsecured creditors."  First Day Hearing Tr. 112:4-5.  Based on these unrefuted

---

[4] *See, e.g.*, Bloomberg, L.P., SunEdison Historical Price Table, January 13, 2016 to May 31, 2016 (last visited May 31, 2016).

[5] *Debtors' Motion for Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing Pursuant to Bankruptcy Code Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (b) to Utilize Cash Collateral Pursuant to Bankruptcy Code Section 363, (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to Bankruptcy Code Sections 361, 362, 363, and 364 and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)* (ECF No. 26).

facts, the Equity Holders have failed to establish (and cannot establish) that they are likely to receive any recovery in these cases, let alone a meaningful distribution.[6]

### B. Equity Holders Failed to Establish That They Cannot Represent Their Interests Without an Equity Committee

15. The Bankruptcy Code does not define what constitutes "adequate representation." Instead, the court retains the discretion to appoint an equity committee based on the facts of each case. *In re Williams*, 281 B.R. at 220; *In re Enron Corp.*, 279 B.R. at 685 (stating that courts have discretion to appoint an equity committee, even if inadequate representation is found). Instead, courts employ a balancing test to weigh the cost of an equity committee versus the concern for adequate representation. *See In re Williams*, 281 B.R. at 220.

16. There are sources of "adequate representation" for shareholders other than an Equity Committee. For example, a company's board of directors acts on behalf of the shareholders and the insolvency of a company does not absolve the board of that fiduciary duty. *See Commodities Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1983). The Equity Holders are also not disenfranchised from participating in the chapter 11 process, as equity holders have standing to be heard on any issue in a chapter 11 case under section 1109 of the Bankruptcy Code. *See* 11 U.S.C. § 1109(b) ("A party in interest, including…an equity security holder…may raise and may appear and be heard on any issue in a case under this chapter."); *see also In re Williams*, 281 B.R. at 223 ("[I]n most cases, even those equity holders who do expect a distribution in the case can adequately represent their interest without an official committee.").

17. Another factor weighing against the appointment of an Equity Committee is that the interests of the Creditors' Committee are aligned with those of the Equity Holders.

---

[6] The Creditors' Committee would like nothing more than for equity to be in the money and for unsecured creditors to be paid in full. Unfortunately, that would likely take a miracle given the current facts and circumstances of these cases.

*See id.* at 222-23 ("The Creditors' Committee has sufficiently aligned or parallel interests with the Shareholders to preclude the need for an additional committee."). As discussed above, the Debtors do not yet know where the value will break in these chapter 11 cases, and whether the unsecured creditors will receive any recovery on account of their claims. Therefore, the Creditors' Committee is extremely motivated to maximize the value of the Debtors' estates, which, if such efforts are successful enough, necessarily would inure to the benefit of the Equity Holders without the additional cost of an official committee.

18. The Equity Holders have failed to establish that the appointment of an Equity Committee is the only route to ensure their adequate representation in these cases, particularly when weighed against the additional costly burden placed on the Debtors' estates and creditors.

### Conclusion

19. The Equity Holders have not met their burden of demonstrating that the Debtors' shareholders are likely to receive a meaningful distribution in these chapter 11 cases. Further, they have not shown that the shareholders lack adequate representation. Therefore, the Equity Holders have not established the need for an Equity Committee.

WHEREFORE the Creditors' Committee respectfully requests that this Court not order the U.S. Trustee to appoint an official committee of equity security holders in these chapter 11 cases.

Dated: June 2, 2016
     New York, New York

/s/ Matthew S. Barr
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007
Matthew S. Barr
Joseph H. Smolinsky
Jill Frizzley

*Proposed Counsel to Official Committee of Unsecured Creditors*