16-10992-smb    Doc 452    Filed 06/03/16    Entered 06/03/16 01:51:36    Main Document
                                                Pg 1 of 16

| | |
|---|---|
| **WAYNE GREENWALD, P.C.** | Hearing Date: June 7, 2016 |
| *Attorneys for the* | Hearing Tine: 10:00 a.m. |
| *Investor Recovery Charitable Trust*[1] | |
| at 475 Park Avenue South - 26th Floor | |
| New York, New York 10016 | |
| Tel. No. 212-983-1922 | |
| Wayne M. Greenwald, Esq. | |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re                                                    Case No.
                                                         16-10992-SMB
SUNEDISON, INC., *et al.*,                               Jointly Administered
                              Debtors.[2]                Chapter 11
-----------------------------------------------------------X

# THE INVESTOR RECOVERY CHARITABLE TRUST'S  RESPONSE TO THE  ORDER TO SHOW CAUSE FOR AN WHY ORDER SHOULD NOT BE ENTERED, PURSUANT TO 11 U.S.C. § 1102(A)(2), DIRECTING THE UNITED STATES TRUSTEE TO APPOINT AN OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS AND SUPPORTING THE APPOINTMENT OF A COMMITTEE

---

[1] The  Investor Recovery Charitable Trust (the "Trust") is, effectively, an *ad hoc* equity security holders committee.  It speaks for 268 individuals owning 13,056,693 shares of the Debtor's common stock.  The Trust's constituents include individuals excluded from the Debtor's "Directly Registered Equity Holders Service List"

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc.  These Debtors are referred to collectively as the "Debtor."

TO:  HON. STUART M. BERNSTEIN
     UNITED STATES BANKRUPTCY JUDGE

The Investor Recovery Charitable Trust (the "Trust"), by its attorneys, Wayne Greenwald P.C., represents:

## PRELIMINARY STATEMENT

1. The Trust submits this response to this Court's May 20, 2016, Order to Show Cause why an order should not be entered, pursuant to 11 U.S.C. § 1102(a)(2), directing the United States Trustee to appoint an official committee of equity security holders (ECF Doc No. 356) (the "Order to Show Cause").

2. The Trust supports the entry of orders, pursuant to 11 U.S.C. § 1102(a)(2), appointing an official committee of equity security holders (an "Equity Committee") in this case.

3. An Equity Committee should be appointed in this case because:

    A.)  The Debtor is substantially solvent.

    B.)  Its shares are widely held and publicly traded.

    C.)  This case is huge and complex.

    D.)  Appointing an Equity Committee now reduces delay and cost.

    E.)  This case is in its infancy.

F.) The Debtor's management proved their inability to represent Equity Holders'[3] interests.

G.) No one else can represent Equity Holders' interests.

H.) An Equity Committee may generate "new value" to facilitate a reorganization.

These matters are elucidated herein.

## CAUSE EXISTS TO APPOINT AN
## OFFICIAL EQUITY COMMITTEE IN THIS CASE

4. Considerations for appointing an Equity Committee include:

1. Whether the shares are widely held and publicly traded;

2. The size and complexity of the chapter 11 case;

3. The delay and additional cost that would result if the court grants the motion;

4. The likelihood of whether the debtors are insolvent;

5. The timing of the motion relative to the status of the chapter 11 case; and

6. Other factors relevant to the adequate representation issue.

*In re Nat'l R.V. Holdings, Inc.*, 390 B.R. 690, 695-96 (Bankr. C.D. Cal.

---

[3] Holders of common stock shares are referred to as "Equity Holders.".

2008), *In re Eastman Kodak Co.* 2012 WL 2501071, *2, (Bankr. S.D.N.Y.)

5. "No one factor is dispositive, and the amount of weight that the court should place on each factor may depend on the circumstances of the particular Chapter 11 case. *Id.*

6. These factors support appointing an Equity Committee in this case.

**Debtor's Solvency**

7. The Debtor's schedules and statements of financial affairs are not filed.

8. No operating reports are filed.

9. However, according to the "Declaration of Patrick M. Cook Pursuant to Local Bankruptcy Rule 1007-2 and In Support of Chapter 11 Petitions and First Day Pleadings" (ECF Doc # 4) (the "Local Rule Declaration" Annexed hereto and incorporated herein as Exhibit "A."), "as of December 31, 2015 the Debtors' unaudited consolidated financial statements, as prepared in accordance with U.S. generally accepted accounting principles ("GAAP"), aggregated $22,558,901,863 in total assets and $17,938,469,411 in total liabilities.

10. Thus, there is $4,620,432,452 in equity representing more than a 20% cushion of assets to liabilities.

11. This is substantial equity.

**Timing of Motion**

12. This case was filed on April 21, 2016.

13. It is in its infancy.

14. The Debtors' schedules are not yet filed.

15. No operating reports are filed.

16. On May 11, 2016, this Court heard "First Day Motions."

17. Forming an Equity Committee now will avoid acts by other parties-in-interest which could diminish Equity Holders' rights.

**Share Distribution**.

18. The Debtor's shares are publicly traded.

19. There are 436 million outstanding shares of common stock in the Debtor. Local Rule Declaration ¶ 48.

20. The Debtor states that there are approximately 214 share- holders of record. *Id.*

21. The Trust believes there are substantially more equity security holders than the Debtor represents.[4]

---

[4] The Debtor served copies of the Order granting its Equity Trading Motion on 207 persons named on its Directly Registered Equity Holders Service List plus 185 "Nominees", who

**Case Size and Complexity**

22. This case is large and complex.

23. This case is comprised of 32 associated cases joined for administration.

24. The 111 page Local Rule Declaration's contents evidences this case's complexity.

25. Rather repeating the Local Rules Declaration's contents at length, it is incorporated herein by reference.

26. Augmenting the case's complexity, the Debtor's Equity Holders have their own issues with the Debtor and its management.

27. Some of these will be summarized later.

**Inadequate Representation of Equity**

28. The Equity Holders' interests are not adequately represented without an Equity Committee.

29. The: A.)"Objection of Bokf, N.A., as Convertible Notes Indenture Trustee, to Appointment of Official Committee of Equity Security Holders"(ECF Doc # 424); B.) James Hodges' "Objection of Bokf, N.a., as Convertible Notes Indenture Trustee, To Appointment of Official Committee" (ECF Doc # 377)

---

apparently are the agents for Equity Holders with shares held in "street name."

and C.) "Response of Official Committee of Unsecured Creditors to Order to Show Cause Why Order Should Not Be Entered Pursuant to 11 U.S.C. § 1102(a)(2) Directing United States Trustee to Appoint an Official Committee of Equity Security Holders" (ECF Doc # 448) (the "Objections") evidence creditors' usual anti-Equity Committee sentiments.

30. They complain that investors should not have the Debtor's estate pay to protect their interests when creditors may not be paid fully.

31. The Creditors Committee's objection questions the Debtor's $4.6+ billion in equity.

32. It complains that the valuation is based on a consolidated balance sheet.

33. However, no evidence is offered challenging the Debtor's valuation.

34. Nor does the Creditors' Committee explain how value based on a consolidated balance sheet is dis-creditable.

35. The other objectors' hypocritical position is that holders of high-risk subordinated debt deserve a representative committee, but other investors do not.

36. However, it is inescapable that unsecured creditors want to preserve the Debtor's value . . . for themselves.

37. Creditors really have no interest in preserving equity if they perceive that they

are not being paid in full.

38. The Objections expose creditors' ant-Equity Holders sentiments despite the only evidence of value establishing that substantial equity exists.

39. That institutional bias necessitates official representation for Equity Holders through an Equity Committee.

## Ineffective Directors in this Case

*The Trading Order*

40. The Debtor's management's lack of concern for public Equity Holders was already shown by the "Debtors' Motion for Interim Order and Final Order Pursuant to Bankruptcy Code Sections 105(a), 362(a)(3) and 541 and Bankruptcy Rule 3001 Establishing Notice and Hearing Procedures for Trading in Equity Securities in Debtors" (ECF Doc # 14) (the "Equity Trading Motion").

41. The Equity Trading Motion's purpose was to "establish procedures for continuously monitoring the trading of their equity securities, so that the Debtors can preserve their ability to seek substantive relief at the appropriate time, particularly if it appears that additional trading may jeopardize the use of their NOLs . . . " Local Rule Declaration ¶ 156.

42. The Equity Trading Motion's proof of service (ECF Doc # 44. Annexed hereto and incorporated herein as Exhibit "B.") shows that the Equity Trading Motion was not served on any of the Debtor's Equity Holders.

43. The Equity Trading Motion was unopposed.

44. The proof of service for the Interim Order on the Equity Trading Motion (ECF Doc # 218) (Annexed hereto and incorporated herein as Exhibit "C.") shows that the order was served by first class mail on what the Debtor called "Directly Registered Equity Holders Service List."

45. The Directly Registered Equity Holders Service List has 207 names

46. The Final Order granting the Equity Trading Motion was served *via* overnight mail or next business day service on the "Directly Registered Equity Holders Service List" **plus** 185 "Nominees."

47. The Nominees apparently are the agents for Equity Holders with shares held in "street name."

48. Annexed hereto and incorporated herein as Exhibit "D" is a copy the proof of service for Final Order granting the Equity Trading Motion.

49. These events show that the Debtor and its management have no qualms in denying Equity Holders basic due process and act quickly to enforce their surreptitiously abridging Equity Holders' rights.

50. How can they be trusted to protect the Equity Holders' fiancial interests?

51. Curiously, the Debtor does not know how many Equity Holders it has. See, Local Rule Declaration ¶ 48.

*This Motion*

52. The Court's Order to Show Cause was issued on May 20, 2016.

53. No proof of service for the order to show cause was filed.

54. It appears that the Debtor did not serve the Order to Show Cause on the Directly Registered Equity Holders Service List or the Nominees.

55. The Debtor and its directors abdicated when they had a chance to give the Equity Holders a voice for their interests.

56. In less than two months of this case, the Debtor and its directors abandoned the Equity Holders at least twice.

57. Protecting the Equity Holders' interests required little effort by or expense to the Debtor,

58. Equity Holders cannot rely on the Debtor and its directors to protect their interests

**Unreliable Directors Pre-Petition**

59. The Local Rule Declaration admits the aggressive growth strategy created the illiquidity necessitating this case.

60. The need for this case illustrates the Debtor's and its directors' irresponsibility.

61. The Local Rule Declaration refers to an action by Appaloosa Management LP, against the Debtor and its management in Delaware Chancery Court.

62. That action concerns the Debtor's senior management's conduct in connection with the proposed acquisition of Vivint Solar, Inc.

63. The Trust reports that, after considering the evidence, the judge said SunEdison's process to gain approval appeared "inherently suspect," citing "troubling" circumstances over how the deal came about that "raise serious questions about the process."

64. Similarly, on April 1, 2016, TerraForm Global Inc. ("Global"), commenced an action against the Debtor alleging, among other things, the Debtor induced Global to prepay its purchase of projects with the purpose of concealing the Debtor's management's misrepresentations about the Debtor's liquidity.

65. The Trust reports that SEC and Department of Justice are investigating the Debtors' activities.

66. Equity Holders have no reason to trust the Debtor, its management or the Creditors' Committee to represent their interests.

67. The record, so far[5], shows that they won't.

68. It is unfair and unreasonable to force Equity Holders to rely on the Debtor and its management to protect their interests.

69. The Debtor and its management have shown that they just won't do it.

**No Additional Delay and Limited Cost**

70. An Equity Committee will not delay this case.

71. Appointing an Equity Committee now will avoid a learning curve later.

72. Granting Equity Holders an official representative will avoid or reduce individual Equity Holders from randomly popping into this case to assert their views on parochial issues.

73. A singular, authoritative voice for Equity Holders will reduce the case's expense.

74. There are expenses associated with another official committee.

75. However, those expenses' cost will be regulated by the "reasonableness"

---

[5]The Trust has limited resources to develop the record prior to the hearing on the Order to Show Cause. The Trust is confident that with additional time and finances the record would be developed further.

requirement associated with fee applications.

76. Equity Committee professionals will know in advance that this case offers no "feeding frenzy."

77. Morever, the Equity Committee professionals can share raw information obtained by other professionals in the case.

78. This would reduce those services to fact analysis instead of expensive information gathering.

**Other Factors Relevant  - New Value**

79. Unlike other parties-in-interest, Equity Holders have an incentive to bring "new value" to the table.

80. Moreover, Equity Holders have a means for providing that "new value."

81. The Court and parties are aware of the pending actions against the Debtor and its management.

82. Upon information and belief, Equity Holders have claims against the Debtor's officers and directors.

83. Upon information and belief, those claims are covered by errors and omissions or other insurance coverage.

84. An Equity Committee can "reign in" individual Equity Holders from

commencing actions for individual benefit in favor of a process using insurance proceeds for a "new value" contribution.

85. No other party in interest can suggest that individual Equity Holders should consider the needs and benefits of the entire Equity Holder community.

**Recent Wisdom**

86. Recently, in *In re Horsehead Corp.,* No. 16-10287 (Bankr. D. Del. May 2, 2016) ("*Horsehead*")[6] the Bankruptcy Court faced a similar quandary.

87. Deciding to appoint an equity committee, that court opined:

> "appointing a committee to be able to contest a valuation thesis is appropriate[] because the entire plan rises or falls[sic] on that valuation thesis."

Hearing Tr.: p 101: l. 22-25, asked

> "how do I make a determination today as to whether there's a reasonable likelihood of return to equity, if I don't know what the value is?"

Hearing Tr. p. 88: l. 4-7, and went on:

---

[6] See, Ashby & Geddes, DELAWARE BANKRUPTCY INSIDER, http://www.abi.org/feed-item/insider%E2%80%99s-scoop-bankruptcy-court-grants-motions-to-form-an-official-equity-committee-due#.V04Z6A6AQuo.email.

> And if there's enough uncertainty as to what value is and to not act is to act by disenfranchising the shareholders, for practical purposes, shouldn't the Court act to preserve the potential value to equity in this unusual circumstance? And I don't just mean a situation where there's been a long trend towards insolvency. This company was making statements as late as November of 2015 that it was clearly solvent to the tunes of tens of millions of dollars.

Hearing Tr. P. 88: l. 10-16

88. This Court faces nearly identical issues.

89. However, the value of this Debtor's assets is uncontradicted: $22,558,901,863 in assets versus $17,938,469,411 in liabilities

90. The *Horsehead* court recounted that debtor's "statements as late as November of 2015 that it was clearly solvent to the tunes of tens of millions of dollars."

91. This Debtor's December 31, 2015, GAAP compliant, unaudited consolidated financial statements show its solvency by more than $4.6 billion.

92. Every consideration supports appointing an Equity Committee in this case.

    A.) The Debtor is substantially solvent.

    B.) Its shares are widely held and publicly traded.

    C.) This case is huge and complex.

    D.)    Appointing an Equity Committee now reduces delay and cost.

    E.)    This case is in its infancy.

    F.)    The Debtor's management proved their inability to represent Equity Holders' interests.

    G.)    No one else can represent Equity Holders' interests.

    H.)    An Equity Committee may generate "new value" to facilitate a reorganization.

93.    Cause exists to appoint an Equity Committee in this case.

**WHEREFORE**, the Trust requests that this Court enter orders: a.) pursuant to 11 U.S.C. § 1102(a)(2) directing the United States Trustee to appoint an official Equity Committee in this case; and b.) granting such other and further relief as this Court deems proper.

Dated: New York, New York
       June 2, 2016

                        WAYNE GREENWALD, P.C.
                        *Attorneys for the*
                        *Investor Recovery Charitable Trust*
                        475 Park Avenue South - 26th Floor
                        New York, New York 10016
                        212-983-1922

                        By:  /s/Wayne M. Greenwald  Pres.
                                Wayne M. Greenwald