Hearing Date:  June 8, 2016 at 10:00 a.m. (Prevailing Eastern Time)
Objections Due: June 7, 2016 at 4:00 p.m. (Prevailing Eastern Time)

TOGUT, SEGAL & SEGAL LLP
Albert Togut
Frank A. Oswald
Neil Berger
Patrick Marecki
One Penn Plaza
New York, New York 10119
Telephone: (212) 594-5000
Fax: (212) 967-4258

*Proposed Co-counsel for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SUNEDISON, INC., *et al.*, | Case No. 16-10992 (SMB) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' MOTION FOR ORDER PURSUANT TO
BANKRUPTCY CODE SECTIONS 105(a), 362, AND 365, BANKRUPTCY
RULES 4001, 6004, AND 9006, AND LOCAL BANKRUPTCY RULE 9077-1
TO COMPEL PERFORMANCE OF TRINA SOLAR, INC.'S OBLIGATIONS
UNDER EXECUTORY CONTRACTS AND TO ENFORCE THE AUTOMATIC STAY**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A). The address of the Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

TO THE HONORABLE STUART M. BERNSTEIN,
UNITED STATES BANKRUPTCY JUDGE:

SunEdison, Inc. ("SUNE") and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" and, together with their non-Debtor affiliates, "SunEdison" or the "Company") hereby apply to this Court (the "Motion") for entry of an order (the "Order"), substantially in the form attached hereto as Exhibit A, under sections 105(a), 362 and 365 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001, 6004, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9077-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules"): (i) compelling Trina Solar, Inc. ("Trina") to perform under its executory contracts with the Debtors by delivering to Debtor NVT, LLC ("NVT") modules paid for by the Debtors; and (ii) enforcing the automatic stay to prevent Trina from continuing any actions to interfere with property of the Debtors' chapter 11 estates, including withholding delivery of modules purchased and paid for by the Debtors.  In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of Patrick M. Cook, Vice-President – Capital Markets And Corporate Finance of SunEdison, Inc., in Support of Chapter 11 Petitions and First Day Pleadings (the "First Day Declaration") [Docket No. 4], filed with the Court on the Petition Date (as defined below).  In further support of the Motion, the Debtors, by and through their undersigned co-counsel, respectfully represent:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The legal predicates for the relief requested herein are Bankruptcy Code sections 105(a), 362 and 365, Bankruptcy Rules 4001, 6004, and 9006, and Local Bankruptcy Rule 9077-1.

**BACKGROUND**

A. **The Chapter 11 Cases**

3. On April 21, 2016 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered.

4. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

5. On April 29, 2016 an official creditors' committee (the "Committee") was appointed for these Chapter 11 Cases by the United States Trustee for the Southern District of New York (the "United States Trustee"). No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.

6. SunEdison is one of the world's leading developers of renewable-energy solutions. In addition to its development business, SunEdison owns, operates, and/or provides maintenance services for clean power generation assets. SunEdison's renewable-energy development business is a global enterprise with substantial activities on six continents.

7. Additional factual background information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to these Chapter 11 Cases, is set forth in detail in the First Day Declaration.[2]

**B.     Trina's Refusal to Deliver Modules Purchased and Paid For By the Debtors Pursuant to the Debtors' Agreements with Trina**

8. On January 28, 2014, Debtor SunEdison Products Singapore, Pte. Ltd. entered into a Module Supply Agreement with Changzhou Trina Solar Energy Co., Ltd., dated as of January 28, 2014 (the "Module Supply Agreement," attached hereto as Exhibit B). The Module Supply Agreement contains the terms and conditions pursuant to which the Debtors purchase, and Trina sells and delivers, photovoltaic modules. The Module Supply Agreement provides that as part of those purchase and sale transactions, the Debtors place purchase orders, and Trina acknowledges and confirms acceptance of purchase orders in the form of sales order acknowledgments.

9. Pursuant to Amendment Number One to the Module Supply Agreement, dated as of November 24, 2014 ("Amendment One," attached hereto as Exhibit C), all orders for U.S. purchases must be issued by NVT to Trina.[3]

10. Amendment Number Four to the Module Supply Agreement, dated as of July 6, 2015 ("Amendment Four," attached hereto as Exhibit D) confirms that NVT is an authorized "Buyer" under the Module Supply Agreement.[4]

---

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

[3]  Trina is a Delaware corporation and a related subsidiary of Changzhou Trina Solar Energy Co., Ltd., with a principal place of business at 100 Century Center Court, Suite 501, San Jose, CA 95112. See id.

[4]  For completeness of the record, Module Supply Agreement Amendment Number Two, dated as of December 3, 2014, Amendment Number Three, dated as of May 1, 2015, and Amendment Number Five, dated as of August 27, 2015, are attached hereto as Exhibits E, F, and G, respectively.

11. On August 19, 2015, NVT issued a purchase order (TL027415) (the "Purchase Order," attached hereto as Exhibit H) to Trina for the purchase of Trina modules TSM-310PD14 (the "Modules") with an agreed purchase price of $432,531.84 (the "Purchase Price").

12. Trina accepted the Purchase Order by its sales order acknowledgement, dated as of February 24, 2016 (the "Sales Order," attached hereto as Exhibit I, collectively with the Module Supply Agreement, as amended, and the Purchase Order, the "Agreements"). The Sales Order provides that shipment will be released once payment is made.

13. The Sales Order states that the Modules were scheduled to arrive at EXW Port of Long Beach, California, on March 25, 2016. The Debtors understand, based on Trina's representations, that the Modules are currently located in Trina's warehouse located in California.

14. On April 5, 2016, NVT paid Trina the full amount of the Purchase Price required by the Agreements. See April 5, 2016 Payment Receipt, attached hereto as Exhibit J.

15. Trina has ignored its obligations under the Agreements, and has refused and failed to deliver the Modules to NVT despite having received payment in full. Trina's delivery of the Modules was required by May 2, 2016.

16. On May 20, 2016, the Debtors sent a written demand to Trina for delivery of the Modules and informed Trina that its failure to deliver the Modules constituted a breach of the Agreements and a violation of the automatic stay provided by Bankruptcy Code section 362 (the "Automatic Stay"). See May 20, 2016 letter, attached hereto as Exhibit K.

17. Over the course of the next several days, the Debtors provided Trina with additional information relating to the Modules, including the lot numbers for the Modules being

4

held by Trina and confirmation of the Debtors' payment of the Purchase Price.  See email correspondence, attached hereto as Exhibit L.

18.     On May 27, 2016, Trina assured the Debtors that Trina would release the Modules that day.  See id.

19.     In fact, Trina did not release the Modules to the Debtors as promised.  On May 31, 2016, after the Debtors' inquiry as to why Trina had still not released the Modules despite it's agreement to do so, Trina's counsel advised that "[b]oth Sinosure [Trina's export insurer] and Trina directly have been instructed to release the goods (both by our office and Sinosure directly)."  See id.

20.     Notwithstanding its promises and assurances that the Modules would be released to the Debtors, Trina has continued to withhold release of the Modules, even though Trina acknowledges that the Debtors purchased the Modules and have paid the Purchase Price.

**RELIEF REQUESTED**

21.     By this Motion, the Debtors seek entry of an order, pursuant to sections 105(a), 362 and 365 of the Bankruptcy Code, Bankruptcy Rules 4001, 6004, and 9006, and Local Bankruptcy Rule Rule 9077-1: (i) compelling Trina to perform under its executory contracts with the Debtors by delivering to NVT Modules ordered and paid for by the Debtors; and (ii) enforcing the automatic stay to prevent Trina from taking any actions to exercise control over property of the Debtors' chapter 11 estates, including withholding delivery of Modules purchased and paid for by the Debtors.

**PRELIMINARY STATEMENT**

22.     The Debtors are forced to file this Motion because Trina—for reasons unknown to the Debtors—has refused to deliver the Modules to NVT as required by the

5

Agreements. There is no dispute that the Debtors have fully paid for the Modules, and Trina has not even attempted to justify its current refusal to perform under the Agreements. Indeed, Trina's own counsel, and its export insurer, have both expressly directed Trina to release the Modules. Yet Trina has repeatedly, and without explanation, refused to do so.

23. The Debtors need the Modules now. The Modules, which were required to be delivered to port and clear customs by May 2, 2016, are a necessary component of a critical solar power utility construction project currently underway in Utah (the "Utility Project"). Trina's failure to deliver the Modules has impaired the Debtors' ability to meet contractual deadlines and milestones relating to the Utility Project, and has exposed the Debtors to significant and unnecessary additional expenses, including lost commercial and test revenue, missed interconnection dates, a delayed ability to commission the utility plant, and materially increased labor costs to reduce the impact of the delays caused by Trina. See Declaration of Kirk Hayes, attached hereto as Exhibit M.

24. This Motion seeks to enforce one of the most basic protections afforded by the automatic stay and to compel Trina to perform under the terms of its executory contracts.

**BASIS FOR RELIEF**

A. **The Agreements Are Executory Contracts Under Which Trina Must Continue to Perform**

   1. **The Agreements Are Enforceable Executory Contracts**

25. The Module Supply Agreement, Purchase Order, and Sales Order are together a prepetition executory contract under which Trina is obligated to continue performing.

26. An executory contract is a contract "on which performance remains due to some extent on both sides." In re Bradlees Stores, Inc., No. 00-16033 (BRL), 2001 WL

6

1112308, at *6 (S.D.N.Y. Sept. 20, 2001) (citation omitted); see also In re Ionosphere Clubs, 85 F.3d 992, 998-999 (2d Cir.1996) (citation omitted).

27. The Agreements are executory contracts because material performance still remains due on both sides—the Debtors and Trina have continuing obligations under the Module Supply Agreement. See, e.g., In re Bradlees Stores, Inc., 2001 WL 1112308, at *10; In re Teligent, Inc., 268 B.R. 723, 730 (Bankr. S.D.N.Y. 2001) (citing Vern Countryman, Executory Contracts in Bankruptcy: Part 1, 57 Minn. L. Rev. 439, 460 (1973)).

### 2. A Non-Debtor Counterparty Must Continue to Perform Under an Executory Contract Until the Debtors Decide Whether to Assume or Reject

28. Until the Debtors assume or reject the Agreements, Trina must continue to perform its obligations under them. See N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 531 (1984).

29. An executory contract is not enforceable against the debtor, but it is still enforceable by the debtor against the counterparty, until the debtor assumes it. See, e.g., id.; see also In re Lyondell Chem. Co., No. 13 CIV. 3881 (RA), 2014 WL 975507, at *4 (S.D.N.Y. Mar. 11, 2014) (quoting In re Chateaugay Corp., 10 F.3d 944, 954–55 (2d Cir.1993)) ("[t]he purpose of this provision [section 365], the Second Circuit has explained, is 'to allow a debtor to reject executory contracts in order to relieve the estate of burdensome obligations while at the same time providing a means whereby a debtor can force others to continue to do business with it when the bankruptcy filing might otherwise make them reluctant to do so.'"); In re Penn Traffic Co., 524 F.3d 373, 382 (2d Cir. 2008) (quoting In re Pub. Serv. Co. of New Hampshire, 884 F.2d 11, 14 (1st Cir. 1989)) ("Ordinarily, the [Chapter 11] debtor need not commit itself to assumption or rejection of such a contract until a reorganization plan is confirmed. In the meantime, the executory contract remains in effect and creditors are bound to

honor it."); In re Lehman Bros. Holdings Inc., No. 08-13555 (JMP) (Bankr. S.D.N.Y. Sept. 17, 2009) [Docket No. 5209] (Order Pursuant to Sections 105(a), 362 and 365 of the Bankruptcy Code to Compel Performance of Contract and to Enforce the Automatic Stay) (enforcing swap agreement because that agreement was an executory contract that had not yet been assumed or rejected); In re McLean Indus., Inc., 96 B.R. 440, 449 (Bankr. S.D.N.Y. 1989) ("a debtor-in-possession's ability to continue to perform and to compel performance with respect to assumable executory contracts is usually the life blood of its reorganization").

30. Based upon the foregoing, Trina is required to continue to perform under the Agreements, including without limitation, by immediately releasing the Modules to the Debtors, while the Debtors ascertain whether to assume or reject the contracts. See, e.g., In re Lyondell Chem. Co., 2014 WL 975507, at *4; see also In re Penn Traffic Co., 524 F.3d at 382.

31. The Debtors have paid Trina in full for the Modules. Trina has not, and cannot, provide any justification for its failure to deliver the Modules to NVT. To the contrary, Trina's counsel has acknowledged that the Modules not only have been paid for in full, but that they should be released to NVT. See email correspondence, attached hereto as Exhibit L.

32. Even if the Debtors were in default under the Agreements—which they are not—Trina would still be required to perform. See, e.g., U.S. v. Dewey Freight Sys. Inc., 31 F.3d 620, 625 (8th Cir. 1994) (holding that an unassumed executory contract is not enforceable against the debtor, notwithstanding debtor's default thereunder); In re Monarch Capital Corp., 163 B.R. 899, 906 (Bankr. D. Mass. 1994) (same); In re Whitcomb & Keller Mortg. Co., 715 F.2d 375, 378-79 (7th Cir. 1983) (affirming bankruptcy court's entry of a restraining order that prohibited non-debtor counterparty from ceasing to provide essential

services to debtor pending debtor's determination to assume or reject agreement and notwithstanding debtor's pre-petition arrearage); In re Kemeta, LLC, 470 B.R. 304, 324 (Bankr. D. Del. 2012) (holding that section 365 assumes the debtor has defaulted and then provides the debtor with a statutory right to cure with no limitation related to the passage of time).

33. Further, pursuant to section 365 of the Bankruptcy Code, a debtor's executory contract may not be terminated or modified solely because of the debtor's financial condition or bankruptcy case. Section 365(e) of the Bankruptcy Code provides:

> Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—
> (A) the insolvency or financial condition of the debtor at any time before the closing of the case;
> (B) the commencement of a case under this title; or
> (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

11 U.S.C. 365(e)(1).

34. Accordingly, Trina must continue to honor its obligations under the Agreements, and Trina cannot terminate or modify the Agreements (i.e. refuse to comply with the delivery terms provided for therein) because of the commencement of the bankruptcy cases, or based on the Debtors' financial condition.

**B.    The Court Has the Authority to Compel Trina's Performance Under the Agreements and Enforce the Automatic Stay**

9

35. Trina's attempt to circumvent its obligations under the Agreements by refusing to deliver the Modules is an exercise over the Debtors' contractual rights, which are property of the Debtors' estates.

36. Section 362(a) of the Bankruptcy Code provides, in pertinent part, that commencement of a bankruptcy case under the Bankruptcy Code "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate . . . or to exercise control over property of the estate." 11 U.S.C. § 362. The scope of the automatic stay is broad and bars "any action which would inevitably have an adverse impact on the property of the . . . estate." In re Prudential Lines, Inc., 119 B.R. 430, 432 (S.D.N.Y. 1990), aff'd, 928 F.2d 565 (2d Cir. 1991) (citation omitted).

37. Bankruptcy courts consistently compel performance by contract counterparties under executory contracts when those counterparties have interfered with a debtor's property by failing to perform contractual obligations, and thus violated the automatic stay. See, e.g., In re Broadstripe, LLC, 402 B.R. 646, 657 (Bankr. D. Del. 2009) (finding that, by refusing to perform its obligations under an executory contract, counterparty interfered with debtor's property rights in such contract and violated the automatic stay); see also In re Ernie Haire Ford, Inc., 403 B.R. 750, 760 (Bankr. M.D. Fla. 2009) ("[The debtor's] rights under these executory contracts are property of the bankruptcy estate, and, therefore, exercising a terminable-at-will provision is not permitted without relief from [the] stay."); In re Lehman Bros. Holdings Inc., No. 08-13555 (JMP) (Bankr. S.D.N.Y. Sept. 17, 2009) [Docket No. 5209] (Order Pursuant to Sections 105(a), 362 and 365 of the Bankruptcy Code to Compel Performance of Contract and to Enforce the Automatic Stay) (enforcing swap agreement because that agreement was an executory contract that had not yet been assumed or rejected); In re Baltimore Marine Indus.,

476 F.3d 238, 240 (4th Cir. 2007) ("Amounts owed to the debtor under existing contracts are included within the estate."); In re Enron Corp., 300 B.R. 201, 212 (Bankr. S.D.N.Y. 2003) ("Courts have consistently held that contract rights are property of the estate, and that therefore those rights are protected by the automatic stay.") (citations and internal quotations omitted); In re Albion Disposal, Inc., 152 B.R. 794, 798 (Bankr. W.D.N.Y. 1993) (debtors' "rights under an executory contract are property of the estate, protected by the automatic stay").

38. Trina's refusal to deliver the Modules pursuant to the Agreements is negatively impacting the Debtors' property rights, business, and reorganization efforts. These contractual rights have significant value for the Debtors' estates because delivery of the Modules is a necessary component of the Utility Project currently underway in Utah. Trina's delivery of the Modules to port and through customs was required to occur by May 2, 2016, and Trina's failure to do so has severely jeopardized the Company's ability to meet contractual milestones and deadlines relating to the Utility Project, including an August 1, 2016 mechanical completion deadline and an August 30, 2016 substantial completion deadline. See Declaration of Kirk Hayes.

39. Trina's refusal to honor its contractual obligations has exposed the Debtors to lost commercial and test revenue, missed interconnection dates, a delayed ability to commission the utility plant, and significantly increased labor costs to reduce the impact of the delays caused by Trina. Trina's failure and refusal to release the Modules also exposes the Debtors to substantial damage claims by the utility owner and other contractors in the Utility Project who rely upon the Debtors' time performance of their contractual obligations. See id.

40. Trina's continued refusal to deliver the Modules under the terms of the Agreements constitutes a knowing violation of the Automatic Stay. See, e.g., In re Broadstripe,

LLC, 402 B.R. at 657 ("By refusing to perform its obligations under the Member Agreement, NCTC is interfering with Broadstripe's property rights under the Member Agreement and acting in violation of the automatic stay.").[5]

### C.    Section 105(a) Provides Additional Support for the Relief Requested

41.    The Court's general equitable power, codified in section 105(a) of the Bankruptcy Code, provides additional support for the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); see also United States v. Energy Res. Co., 495 U.S. 545, 549 (1990); In re Continental Airlines, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code"); Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm., 321 B.R. 147, 166 (D.N.J. 2005) (reciting the power of the bankruptcy court to "issue any order . . . that is necessary or appropriate to carry out the provisions of . . . [title 11]").

42.    Here, section 105(a) supports entry of the Order, which will ensure Trina's compliance with sections 365 and 362 of the Bankruptcy Code. If the relief requested herein is not granted, the Debtors will suffer severe adverse consequences, including potentially irreparable damage to their business. Under these circumstances, the Court should enter an order under section 105(a) compelling Trina to perform by delivering the Modules to NVT.

---

[5]    The Debtors reserve all rights to seek the imposition of sanctions, actual damages, including costs and attorneys' fees, related to such violation of the automatic stay, as well as other appropriate relief. See, e.g., Fidelity Mortg. Investors v. Camelia Builders. Inc., 550 F.2d 47 (2d Cir. 1976), cert denied, 429 U.S. 1093 (1977); Soares v. Brockton Credit Union (In re Soares), 197 F.3d 969 (1st Cir. 1997); Coffee v. Atlantic Bus. & Community Dev. Corp. (In re Atlantic Bus. & Community Dev. Corp.), 901 F.2d 325 (3d. Cir. 1990).

12

**NOTICE**

43. As demonstrated above, Trina has been withholding release of the Modules without any justification despite having actual knowledge of the commencement of these Chapter 11 Cases, the effect of the Automatic Stay, and the Debtors' need for the immediate release of the Modules. Moreover, the Debtors will suffer immediate harm absent prompt relief from this Court.

44. Based upon the foregoing, the Debtors respectfully submit that ample cause has been shown for a reduction of time for notice of consideration of this Motion pursuant to Bankruptcy Rule 9006(c), and the Debtors request entry of an Order to Show Cause scheduling a hearing to consider this Motion during the next omnibus hearing for this case on June 7, 2016 at 2:00 p.m.

45. Notice of this Motion shall be given to (a) the Office of the United States Trustee for the Southern District of New York; (b) counsel to the administrative agent under the Debtors' prepetition first lien credit agreement; (c) counsel to the Tranche B Lenders and the steering committee of the second lien creditors (the "Steering Committee"); (d) counsel to the administrative agent under the Debtors' prepetition second lien credit agreement; (e) counsel to the collateral trustee under the Debtors' prepetition second lien credit agreement; (f) counsel to the indenture trustee under each of the Debtors' outstanding bond issuances; (g) the U.S. Attorney for the Southern District of New York; (h) counsel to the administrative agent under the proposed postpetition debtor in possession financing facility; (i) counsel to the Committee in these Chapter 11 Cases; (j) counsel to TerraForm Power, Inc. and TerraForm Global, Inc.; (k) the Internal Revenue Service; (l) the Securities and Exchange Commission; (m) counsel to Trina Solar, Inc.; and (n) any such other party entitled to notice pursuant to Rule 9013-1(b) of the

Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York. The Debtors submit that no other or further notice need be provided.

## RESERVATION OF RIGHTS

46. Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code section 365; or (e) otherwise affect the Debtors' rights under Bankruptcy Code section 365 to assume or reject any executory contract with any party subject to this Motion.

## NO PRIOR REQUEST

No previous request for the relief sought herein has been made to this Court or any other court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enters an Order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: New York, New York
       June 3, 2016

                                                 SunEdison, Inc., et al.
                                                 Debtors and Debtors in Possession
                                                 By their Co-Counsel
                                                 TOGUT, SEGAL & SEGAL LLP
                                                 By:


                                                 */s/ Frank A. Oswald*
                                                 Albert Togut
                                                 Frank A. Oswald
                                                 Neil Berger
                                                 Patrick Marecki
                                                 One Penn Plaza, Suite 3335
                                                 New York, New York 10119
                                                 Telephone: (212) 594-5000
                                                 Fax:(212) 967-4256

15