```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
                                        :
In re:                                  :    Case No. 16-10992 (SMB)
                                        :
SUNEDISON, INC. et al.¹                 :    Chapter 11
                                        :
        Debtors.                        :    (Jointly Administered)
-------------------------------------------------X
```

## MEMORANDUM DECISION DENYING MOTION BY VIVINT SOLAR, INC. FOR RELIEF FROM THE AUTOMATIC STAY

**A P P E A R A N C E S:**

WILSON SONSINI GOODRICH & ROSATI P.C.
*Counsel for Vivint Solar, Inc.*
1301 Avenue of the Americas, 40th Floor
New York, New York 10019

    Steven M. Schatz, Esq.
    Benjamin Hoch, Esq.
    Robert M. Hemm, Esq.
        Of Counsel

TOGUT, SEGAL & SEGAL LLP
*Co-Counsel for the Debtors and Debtors-in-Possession*
One Penn Plaza, Suite 3335
New York, New York 10119

    Al Togut, Esq.

---

[1] The Debtors in these chapter 11 cases include SunEdison, Inc.; SunEdison DG, LLC; SUNE Wind Holdings, Inc.; SUNE Hawaii Solar Holdings, LLC; First Wind Solar Portfolio, LLC; First Wind California Holdings, LLC; SunEdison Holdings Corporation; SunEdison Utility Holdings, Inc.; SunEdison International, Inc.; SUNE ML 1, LLC; MEMC Pasadena, Inc.; Solaicx; SunEdison Contracting, LLC; NVT, LLC; NVT Licenses, LLC; Team-Solar, Inc.; SunEdison Canada, LLC; Enflex Corporation; Fotowatio Renewable Ventures, Inc.; Silver Ridge Power Holdings, LLC; SunEdison International, LLC; Sun Edison LLC; SunEdison Products Singapore Pte. Ltd.; SunEdison Residential Services, LLC; PVT Solar, Inc.; SEV Merger Sub Inc.; Sunflower Renewable Holdings 1, LLC; Blue Sky West Capital, LLC; First Wind Oakfield Portfolio, LLC; First Wind Panhandle Holdings III, LLC; DSP Renewables, LLC; Hancock Renewables Holdings, LLC; EverStream Holdco Fund I, LLC; Buckthorn Renewables Holdings, LLC; Greenmountain Wind Holdings, LLC; Rattlesnake Flat Holdings, LLC; Somerset Wind Holdings, LLC; SunE Waiawa Holdings, LLC; SunE MN Development, LLC; SunE MN Development Holdings, LLC; SunE Minnesota Holdings, LLC. The address of the Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

    Frank A. Oswald, Esq.
    Brian F. Moore, Esq.
    Minta J. Nester, Esq.
        Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

    Claimant Vivint Solar, Inc. ("Vivint") seeks relief from the automatic stay to liquidate its prepetition claims against two Debtors arising from an unconsummated merger transaction in the Delaware Chancery Court. The Debtors oppose the motion, and for the reasons that follow it is denied.

## BACKGROUND

    SunEdison, Inc. ("SunEdison") is a holding company that, along with approximately two thousand direct and indirect debtor and non-debtor affiliates, is in the business of developing renewable energy projects. On July 20, 2015, SunEdison and its wholly-owned subsidiary, SEV Merger Sub Inc. ("SEV"), entered into an Agreement and Plan of Merger (the "Original Merger Agreement") with Vivint. (*Vivint Solar, Inc.'s Motion for an Order Pursuant to Bankruptcy Code Section 362, Bankruptcy Rule 4001, and Local Bankruptcy Rule 4001-1 Granting Limited Relief from Automatic Stay*, dated July 7, 2016 ("*Motion*"), at ¶ 5 (ECF Doc. # 719); *Debtors' Response and Objection to Vivint Solar, Inc.'s Motion for an Order Pursuant to,* inter alia*, Bankruptcy Code Section 362 Granting Limited Relief from Automatic Stay*, dated Aug. 9, 2016 ("*Response*"), at ¶ 2 & n.2 (ECF Doc. # 944).) Under the Original Merger Agreement, SunEdison agreed to acquire Vivint for approximately $2.2 billion in consideration consisting of $9.89 per share in cash, $3.31 per share worth of SunEdison common

stock, and $3.30 per share of SunEdison convertible notes.  (*Motion* at ¶ 5; *Response* at ¶ 2.)

The parties did not close on the merger contemplated by the Original Merger Agreement.  Instead, in October 2015, they entered into an amendment pursuant to which the cash consideration was decreased by $2.00 per share and the stock consideration was increased by $0.75 per share (the "Amended Merger Agreement").  (*Motion* at ¶¶ 6, 8; *Response* at ¶ 4.)  The net effect was to decrease the consideration to be paid for Vivint by $1.25 per share.  (*Motion* at ¶ 8; *Response* at ¶ 4.)  The parties failed to close on the Amended Merger Agreement transaction, (*Motion* at ¶ 30; *Response* at ¶ 5), and on March 7, 2016, Vivint gave notice to SunEdison that Vivint was terminating the transaction.  (*Motion* at ¶ 15; *Response* at ¶ 6.)

The next day, Vivint filed a complaint in the Delaware Chancery Court against SunEdison and SEV (the "Merger Litigation").  (*Declaration of Thomas J. Martin in Support of Vivint Solar, Inc.'s Motion for an Order Pursuant to Bankruptcy Code Section 362, Bankruptcy Rule 4001, and Local Bankruptcy Rule 4001-1 Granting Limited Relief from Automatic Stay*, dated July 7, 2016 ("*Martin Declaration*"), Ex. A ("*Complaint*") (ECF Doc. # 720).)  The *Complaint* sought a declaratory judgment that the defendants had breached the Amended Merger Agreement and asserted unliquidated damage claims sounding in breach of contract and breach of the duty of good faith and fair dealing.  (*Complaint* at ¶¶ 47-60.)  SunEdison and SEV filed an answer to the *Complaint* on April 20, 2016.  (*Declaration of Minta J. Nester, Esq.*, dated Aug. 9, 2016, Ex. A ("*Answer*") (ECF Doc. # 945).)  The *Answer* denied that the Debtors had breached the Amended Merger Agreement without excuse or justification,

(*Answer* at ¶ 50), and asserted, as affirmative defenses, that (i) Vivint had failed to state a claim upon which relief may be granted, (ii) Vivint had failed to mitigate its damages and (iii) the damages sought by Vivint pursuant to section 7.02(b) of the Amended Merger Agreement constituted an unenforceable penalty.  (*Answer* at 31.)

The next day, April 21, 2016 (the "Petition Date"), SunEdison and twenty-five affiliates, including SEV, filed chapter 11 petitions thereby staying the Merger Litigation.[2]  The Debtors then sought to retain the law firm of Joseph Hage Aaronson LLC ("Aaronson") as special counsel for several litigation matters in Delaware, including the defense of SunEdison and SEV in the Merger Litigation.  (*Debtors' Amended Application Pursuant to Bankruptcy Code Sections 327(e) and 328(a), Bankruptcy Rule 2014(a), and Local Bankruptcy Rule 2014-1 for Authorization to Employ and Retain Joseph Hage Aaronson LLC as Special Counsel to the Debtors* Nunc Pro Tunc *to the Petition Date*, dated April 29, 2016, at ¶¶ 11-13 ("*Retention Application*") (ECF Doc. # 151).)  The *Retention Application* noted that, although "the Debtors expect that the automatic stay will block the immediate prosecution of the pending litigation against the Debtors, it is likely that the litigation will continue against the Debtors in one forum or another."  (*Id.* at ¶ 14.)  According to the Debtors, resolution of the matters for which they sought to retain Aaronson would "have a very major effect on stakeholder recoveries" because the "claims asserted in these actions are massive."  (*Id.* at ¶ 14.)

Vivint now seeks relief from the automatic stay for "cause" pursuant to Section 362(d)(1) of the Bankruptcy Code to liquidate the amount of its claim expeditiously in

---

[2]   Since then, several other affiliates have commenced chapter 11 cases in this Court.  The current universe of debtors is identified in footnote 1.

- 4 -

the Delaware Chancery Court or, in the alternative, to try the dispute through an expedited trial in this Court.³ (*Motion* at ¶ 1.) According to Vivint, it is the Debtors' single largest unsecured creditor and its damages in the Merger Litigation are estimated at between $750 million and $1 billion. (*Motion* at ¶ 28 & n. 10.) Vivint argues that establishing the precise amount of its claim is essential to providing adequate information to the creditor body and to confirming a plan. (*Id.* at ¶¶ 28-29.) In addition, Vivint contends that the Delaware Chancery Court presents the most efficient forum to resolve the claims because it "adjudicates merger cases all the time," (*id.* at ¶ 30), the Merger Litigation presents a "straightforward" dispute, (*id.*), and the Debtors' counsel had previously been willing to try the case in the Delaware Chancery Court in 2016. (*Id.* at ¶ 31.) In support, Vivint cites to a pre-Petition Date email thread in which an attorney from Aaronson apparently agreed to an "understanding that the parties will work cooperatively towards trial dates sometime in 2016" as part of an agreement to extend SunEdison's and SEV's deadline to respond to the *Complaint* for three weeks. (*Id.* at ¶ 31; *Martin Declaration*, Ex. D.) Finally, Vivint argues that relief from the automatic stay will not unduly harm the Debtors or other creditors, as the Merger Litigation will only result in a liquidated claim. (*Motion* at ¶¶ 34-35.)

---

³    The Court has set September 23, 2016 as the deadline for filing proofs of claim in these chapter 11 cases. (*Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof*, dated Aug. 10, 2016, at ¶ 4 (ECF Doc. # 948).) Vivint will presumably file a proof of claim by the bar date, which will be deemed allowed absent an objection to its allowance. *See* 11 U.S.C. § 502(a). If the dispute is not resolved consensually, the Debtors will presumably object to the proof of claim. The objection will initiate a contested matter in this Court, and provide the procedural basis for trying the dispute in this Court. Until then, there is no basis to adjudicate the allowance or amount of Vivint's claim in this Court.

16-10992-smb    Doc 1168    Filed 09/13/16    Entered 09/13/16 10:02:36    Main Document
Pg 6 of 12

The Debtors oppose the *Motion*. They contend that granting the *Motion* will divert their attention and resources to defending the Merger Litigation and encourage other unsecured creditors to seek stay relief. (*Response* at ¶¶ 28, 43.) In their view, the Debtors' current efforts should instead focus on the chapter 11 cases, including negotiating and formulating a plan and continuing to sell assets for the benefit of the Debtors' stakeholders. (*Response* at ¶¶ 37-39.) The Debtors also deny that stay relief will serve judicial economy. The Debtors note that the Merger Litigation was in its early stages as of the Petition Date, and the Delaware Chancery Court is not a "specialized tribunal" with unique abilities to resolve the Merger Litigation. (*Response* at ¶¶ 45-51.)

Vivint's reply largely reiterates the arguments made in the *Motion*. (*Reply to Debtors Objection to Vivint Solar, Inc.'s Motion for an Order Pursuant to Bankruptcy Code Section 362, Bankruptcy Rule 4001, and Local Bankruptcy Rule 4001-1 Granting Limited Relief from Automatic Stay*, dated Aug. 10, 2016 ("*Reply*") (ECF Doc. # 956).) Vivint also argues that the burden of litigating the Merger Litigation will be mitigated because the Debtors have replaced their CEO and CFO and have retained separate, special counsel (Aaronson) to represent them in the Merger Litigation. (*Reply* at ¶ 7.)

The Court held a hearing on the *Motion* on August 18, 2016. At the hearing, Vivint proposed that the Court lift the stay and set "milestones," including an exchange of documents in October 2016 and a meet-and-confer among the parties to negotiate a schedule for the Merger Litigation. (*Transcript of August 18, 2016 Hearing* at 20:17-21, 22:22-23:8 (ECF Doc. # 1093).)

## DISCUSSION

Section 362(d)(1) of the Bankruptcy Code authorizes the Court to grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define "cause," but courts are guided by the factors enumerated in *Sonnax Indus., Inc. v. Tri Component Prods. Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280 (2d Cir. 1990):

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Id.* at 1286. Not all of the factors are relevant in every case, *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999), and the Court need not assign equal weight to each factor. *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994). The movant bears the initial burden of making a *prima facie* showing of "cause" for relief from the stay, but the ultimate burden of persuasion rests with the debtor to show an absence of "cause." *Mazzeo*, 167 F.3d at 142; *Sonnax*, 907 F.2d at 1285; *see* 11 U.S.C. § 362(g)(2).

Applying the relevant *Sonnax* factors, the Court concludes that the *Motion* should be denied. Prosecution of the Merger Litigation at this time will interfere substantially with the progress of the bankruptcy case, (Factor # 2), and prejudice the

interests of the other creditors, (Factor # 7), by diverting the Debtors' resources and personnel at a critical time in the case.[4] The Debtors' efforts up to this point have included numerous sales of renewable energy project assets. (*Response* at ¶ 37.) The chapter 11 docket indicates twelve notices of presentment regarding the sale or transfer of Debtor assets and eight motions to approve private sales or bid procedures for auctions of Debtor assets. The Debtors have focused substantial efforts on continuing to market and sell assets and developing a plan, (*Response* at ¶¶ 18, 37-38), and one of the purposes of the automatic stay is to allow the Debtors to focus on emergence from chapter 11 by granting a respite, at least temporarily, from the litigation of claims. *Carrera v. Bally Total Fitness of Greater New York (In re Bally Total Fitness of Greater New York, Inc.)*, 411 B.R. 142, 147 (S.D.N.Y. 2009); *see Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 64 (2d Cir. 1986) (noting that the automatic stay "provides the debtor with 'a breathing spell from his creditors'" (quoting S. Rep. No. 95-989, at 54-55 (1978)). Although prior management has been replaced and the Debtors' current management may not have to testify as fact witnesses in the Merger Litigation, the continuation of the Merger Litigation at this time will enmesh the Debtors, at a minimum, in time-consuming document and written discovery. *See Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 10-00036 (RJH), 2010 WL 4630327, at *4 (S.D.N.Y. Nov. 8, 2010) (noting bankruptcy court's rationale that stay relief would prejudice other creditors by forcing estate to expend resources to defend litigation).

---

[4]     And obviously, the Merger Litigation does not primarily involve third parties (Factor # 6).

The Debtors also fear the potential "floodgate" effects of stay relief. As noted in the *Retention Application* (which Vivint cites in support of the *Motion*), the Debtors are defendants in several lawsuits asserting "massive" claims that could have a "very major effect on stakeholder recoveries." (*Retention Application* at ¶ 14.) Granting stay relief to Vivint may encourage other claimants to file their own stay relief motions. *See In re Residential Capital, LLC*, No. 12-12020 (MG), 2012 WL 3556912, at *3 (Bankr. S.D.N.Y. Aug. 16, 2012) ("Lifting the stay to allow Ulbrich to proceed with her damages claims in another forum could open the floodgates for other movants who also seek stay relief. Such litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize . . . ."). The Debtors would then have to expend resources to object to those motions in this Court and, if unsuccessful, devote further resources to litigating those claims. *Carrera v. Bally Total Fitness of Greater New York (In re Bally Total Fitness of Greater New York, Inc.)*, 402 B.R. 616, 623 (Bankr. S.D.N.Y.) ("[G]ranting relief could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case . . . ."), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009); *see also Motors Liquidation Co.*, 2010 WL 4630327, at *5 (noting that potential for opening floodgates to "other litigants with garden variety claims" is "the very state of affairs the automatic stay was enacted to prevent").

For the same reason, the balancing of the harms favors continuation of the automatic stay (Factor # 12). The Court has already described the effect that diverting resources to defend the Merger Litigation may have on the case and the creditors. On the other hand, postponing the liquidation of Vivint's claims will not adversely affect Vivint. The claim will be paid, if at all, under a confirmed plan. Furthermore, although

the claim is large, the plan will pay it in "bankruptcy dollars," and the terms of a plan will indicate the true worth of the claim to the parties who must spend real dollars to litigate it.

In addition, liquidating the claim now as opposed to later does not promote judicial economy (Factor # 10). The claim will have to be liquidated if it cannot be consensually resolved, but expedition will not save time or money. Instead, it will force the Debtors to spend money now on professional fees. Moreover, the parties are not ready for trial (Factor # 11) – the Debtors filed their *Answer* one day before the Petition Date – and although the Delaware Chancery Court has substantial experience in complex merger litigation, this is not a complex case. The litigation does not concern the actions of the Board or appraisal rights, and Vivint has described it as a "straightforward" breach of contract action. (*Motion* at ¶ 30.) Indeed, Vivint's alternative request to try the dispute in this Court shows that the Merger Litigation does not require adjudication in a "specialized tribunal" (Factor # 4).

The one factor weighing in favor of granting the *Motion* is that it will completely resolve the issues between the Debtors and Vivint (Factor # 1). But even then, final resolution following the exhaustion of the appellate process may be years away, and occur long after the Debtors have confirmed a plan. In any event, the balance of the *Sonnax* factors militates against granting stay relief.

Finally, the case law cited by Vivint is distinguishable. In *Pieklik v. Hudgins (In re Hudgins)*, 102 B.R. 495 (Bankr. E.D. Va. 1989), the court found that it was necessary to allow a personal injury claim to proceed in state court because a bankruptcy court

cannot estimate personal injury claims for purposes of distribution, 28 U.S.C. § 157(b)(2)(B), and the prompt liquidation of the claim was important to confirming a chapter 13 plan. *Hudgins*, 102 B.R. at 497. Here, while Vivint may ultimately be correct that it has the largest claim, none of the other stakeholders who are typically involved in plan negotiations, including the Official Committee of Unsecured Creditors and the prepetition and postpetition lenders, have expressed the need to liquidate the Vivint claim immediately.

Additionally, although the court in *In re Mack*, 347 B.R. 911 (Bankr. M.D. Fla. 2006) quoted the general statement from the legislative history of Section 362(d) that "[i]t will often be more appropriate to permit proceedings to continue in their place of origin," that statement is explicitly applicable when it will result in "no great prejudice to the bankruptcy estate." *Id.* at 916 (quoting S. Rep. No. 95-989, at 50 (1978). Tellingly, the court's stated bases for its holding included, *inter alia*, that (i) the litigation at issue had been underway for several years and (ii) the debtor had engaged in "egregious conduct" in the litigation and had "filed his bankruptcy case with unclean hands with the purpose to further thwart" that litigation. *Id.* No such facts exist here that would favor immediate adjudication in the Delaware Chancery Court.

Similarly, the state court actions in *In re Project Orange Associates, LLC*, 432 B.R. 89 (Bankr. S.D.N.Y. 2010) had been pending for approximately a year and half as of the petition date, *id.* at 95-96, the parties had engaged in substantial discovery, *id.*, and a motion for summary judgment and other significant proceedings were scheduled for a hearing the day after the petition date. *Id.* at 100 ("Both the summary judgment motion in the Yellowstone Action and the Eviction Proceeding were scheduled to be heard by

Justice DeJoseph on April 30, 2010—one day after the Debtor filed for Chapter 11 protection in this Court."). Under those facts, the bankruptcy court determined that the state court was a more efficient forum to resolve certain issues of state law, including landlord-tenant law, that were prerequisites to the debtor's reorganization efforts. *Id.* at 107-08. The Merger Litigation, in contrast, is in its infancy, and Vivint has not shown that its resolution is essential to the confirmation of a plan of reorganization.

In summary, Vivint's claim is large and must be resolved either consensually or through litigation. The questions presented by the *Motion* are when and where that litigation will occur. For the reasons stated, Vivint has failed to make a *prima facie* showing that its claim must be liquidated immediately or within a short (or any) timeframe whether here or in Delaware Chancery Court. Accordingly, the *Motion* is denied. Settle order on notice.

Dated: New York, New York
      September 13, 2016

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge