**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------- x
In re:                                                        :
                                                              :   Chapter 11
SUNEDISON, INC., et al.,                                      :   Case No. 16-10992 (SMB)
                                                              :   (Jointly Administered)
                                                              :
                                                              :
                          Debtors.                            :
------------------------------------------------------------- x
                                                              :
OFFICIAL COMMITTEE OF UNSECURED                               :   Adversary Proceeding
CREDITORS, on behalf of the estates of the Debtors,           :   No. 16-01228 (SMB)
                                                              :
                          Plaintiff,                          :
                                                              :
              v.                                              :
                                                              :
WELLS FARGO BANK, N.A., et al.,                               :
                                                              :
                          Defendants.                         :
------------------------------------------------------------- x
```

**STIPULATION OF FACTS IN CONNECTION WITH DISPOSITION OF OID**
**CONTESTED MATTERS**

WHEREAS, the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") commenced the above-captioned Adversary Proceeding by filing an Adversary Complaint on October 20, 2016 [AP Dkt. No. 1];

WHEREAS, the Creditors' Committee filed an Amended Adversary Complaint on November 22, 2016 [AP Dkt. Nos. 12, 13];

WHEREAS, the First, Second, and Third Causes of Action asserted in the Adversary Proceeding seek to disallow portions of (a) Proof of Claim No. 3555 filed by Wilmington Savings Fund Society, FSB, as Prepetition Second Lien Administrative Agent, and (b) Proof of Claim No. 1490 filed by Wilmington Trust, National Association, as Trustee for the 5% Guaranteed Convertible Senior Secured Notes due July 2, 2018 (collectively, the "**Second Lien**

**Claims**") as unmatured interest in the form of unamortized original-issue discount ("**OID**") under Section 502(b)(2) of the Bankruptcy Code (the "**OID Objections**");

WHEREAS, on October 20, 2016, BOKF, N.A., solely in its capacity as Indenture Trustee with respect to the (i) 2.00% convertible unsecured notes due 2018, (ii) 0.25% convertible unsecured notes due 2020, (iii) 2.75% convertible unsecured notes due 2021, (iv) 2.375% convertible unsecured notes due 2022, (v) 2.625% convertible unsecured notes due 2023, and (vi) 3.375% convertible unsecured notes due 2025, issued by SunEdison, Inc. ("**SUNE**") filed a claim objection in the underlying bankruptcy case (the "**BOKF Objection**") seeking to disallow portions of the Second Lien Claims as unmatured interest in the form of unamortized OID (the "**BOKF Objection**" and, together with the OID Objections, the "**OID Contested Matters**") [Bankr. Dkt. No. 1455];

WHEREAS, pursuant to the *Stipulation and Agreed Order (I) Setting Briefing Schedule and Hearing Date on Defendants' Motions to Dismiss Amended Complaint; and (II) Granting Leave with Respect to Page Limitations* filed on November 21, 2016 [AP Dkt. No. 8], the parties hereto agreed that the OID Objections are claim objections that have commenced a contested matter in accordance with Bankruptcy Rules 3007 and 9014 on a schedule to be determined;

WHEREAS, on January 10, 2017, the Court held a conference and directed the parties hereto to seek to negotiate a stipulation of undisputed material facts that may be relevant to the disposition of the OID Contested Matters;

IT IS HEREBY STIPULATED by the parties hereto, through their undersigned counsel that, **solely for the purposes of the OID Contested Matters**, the following facts should be accepted as true by the Court:

2

A. **The Term Loans**

1. On January 11, 2016, SUNE entered into a Second Lien Credit Agreement (the "**Prepetition Second Lien Term Loan**") among SUNE, as borrower, each lender from time to time party thereto (the "**Prepetition Second Lien Term Loan Lenders**"), Deutsche Bank AG New York branch as administrative agent, and others, pursuant to which term loans (the "**Term Loans**") in a principal amount of US $725 million, due July 2018, were issued consisting of (a) US $500 million in principal amount of Tranche A-1 term loans (the "**Tranche A-1 Term Loans**") and (b) US $225 million in principal amount of Tranche A-2 term loans (the "**Tranche A-2 Term Loans**"). On or around April 7, 2016, Deutsche Bank AG New York was replaced by Wilmington Savings Fund Society FSB, as successor administrative agent ("**WSFS**").

2. A copy of the forms of notes for the Term Loans is attached as Exhibit A.

3. A copy of the Second Lien Credit Agreement governing the Prepetition Second Lien Facility is attached as Exhibit B.

4. The Prepetition Second Lien Facility provides at section 2.09(a):

> "Borrower agrees to pay on the Closing Date to each Lender party to this Agreement as a Lender of Tranche A-1 Term Loans on the Closing Date, as fee compensation for the funding of such Lender's Tranche A-1 Term Loan, a closing fee in an amount equal to 4.00% of the stated principal amount of such Lender's Tranche A-1 Term Loan, payable to such Lender from the proceeds of its Tranche A-l Term Loan as and when funded on the Closing Date. Such closing fee will be in all respects fully earned, due and payable on the Closing Date and non-refundable and non-creditable thereafter."

5. 4.00% of the $500 million stated principal amount on the Tranche A-1 Term Loans is $20 million.

6. If the $20 million fee were treated as unmatured interest in the form of unamortized OID, then as of April 21, 2016 (the "**Petition Date**"), US $18 million remained unamortized based on a constant yield method of amortization.

B. **The Warrants**

7. The Prepetition Second Lien Facility obligated SUNE to issue to the Prepetition Second Lien Term Loan Lenders 28.7 million warrants (the "**Warrants**") to purchase SUNE common stock. The Warrants were issued on January 11, 2016, and were immediately exercisable for a strike price of US $0.01. See Exhibit B at section 6.19:

> "Borrower shall issue Warrants to each Initial Lender (other than the Fronting Arrangers) and each Schedule 2.09 Lender on the Closing Date (each a "Warrant Holder"), for the account of such

3

>> Warrant Holder or its designee, to purchase the number of shares of the common stock of the Borrower set forth opposite the name of such Person on Schedule 6.19, which number shall correspond to 39,526 shares of common stock of the Borrower per $1,000,000 of Term Loans provided by such Lender. Notwithstanding anything to the contrary in the foregoing, no such issuance shall be required or shall be effective unless and until the Person to whom the Warrant is to be issued pursuant to this Section 6.19 countersigns the applicable Warrant (thereby making the representations set forth in the form of Warrant attached as Exhibit B hereto). For U.S. federal income tax purposes, the Term Loans to be held by the Warrant Holders, together with the Warrants, shall be treated as an investment unit, and the "issue price" of the Term Loans shall be determined by the Borrower (in consultation with the Administrative Agent) based on the relative fair market values of the Term Loans and the Warrants on the "issue date". For purposes of the preceding sentence, the issue date shall be the first date on which a substantial amount of the Term Loans are in good faith believed by the Borrower to be sold to persons other than bond houses, brokers or similar organizations acting in the capacity of underwriters, placement agents or wholesalers. The Borrower will provide any information reasonably requested from time to time by the Administrative Agent or any Lender regarding the original issue discount associated with any Term Loans for U.S. federal income tax purposes."

8. Exercise of the Warrants would not terminate or otherwise convert the Term Loans to equity. In other words, the Prepetition Second Lien Term Loan Lenders could both exercise the Warrants and continue to retain the Term Loans.

9. The Warrants had a market value of $84 million at issuance.

10. If the $84 million were treated as unmatured interest in the form of unamortized OID, then as of the Petition Date, US $75 million remained unamortized based on a constant yield method of amortization.

**C. The Notes Exchange**

11. Also on January 11, 2016, SUNE issued US $225 million in aggregate principal amount of 5% second-lien senior secured convertible notes due 2018 (the "**New Notes**", and together with the Term Loans, the "**Prepetition Second Lien Facilities**") under an indenture dated as of January 11, 2016, among SUNE, as borrower, Wilmington Trust, National Association, as trustee, and others.

12. The New Notes were issued in an exchange (the "**Notes Exchange**," and, together with the issuance of the Term Loans, the "**January 2016 Transactions**", and the lenders involved in the January 2016 Transactions, together with their successors in

4

interest, the "**Prepetition Second Lien Lenders**") which is described in the form 8-K filed by SUNE on January 7, 2016 (the "**January 7 8-K**"). A copy of the January 7 8-K is attached hereto as Exhibit C.

13. The exchange agreements reflecting the exchange of outstanding SUNE unsecured convertible notes (the "**Old Notes**") for New Notes are attached to the Declaration of Deborah J. Newman in Further Support of the Second Lien Defendants' Motion to Dismiss, filed in the above-captioned adversary proceeding at Dkt. 45.

14. Not all holders of Old Notes were given the opportunity to exchange their Old Notes for New Notes.

15. As of the closing of the Notes Exchange, the market value of the Old Notes that were exchanged for New Notes was $132 million, based on a weighted average trading price of $0.3929 per $1 of face value.

16. The difference between the market value of the Old Notes that were traded in and the face value of the New Notes that SUNE was obligated to repay was US $93 million.

17. If the $93 million were treated as unmatured interest in the form of unamortized OID, then as of the Petition Date, US $85 million remained unamortized based on a constant yield method of amortization.

18. As of the closing of the Notes Exchange, the market value of the New Notes was $177 million, based on a trading price of $0.7867 per $1 of face value.

19. The difference between the market value of the New Notes and the face value of the New Notes that SUNE was obligated to repay was $48 million.

20. If the $48 million were treated as unmatured interest in the form of unamortized OID, then as of the Petition Date, US $43.5 million remained unamortized based on a constant yield method of amortization.

21. The directors and officers of SUNE provided material false and misleading information to the Second Lien Lenders in connection with the January 2016 Transactions, including (among other things) that:

    a. SUNE was projecting approximately $223 million of EBITDA from its Services Business for 2016;

    b. SUNE had over $1.3 billion in cash-on-hand; and

    c. There were no ongoing investigations concerning SUNE.

22. At no time at or before January 11, 2016 had a default or Event of Default (as defined in the respective Indentures, Credit Agreements, Security Agreements, or other agreements governing the such obligations) been declared with respect to (i) a certain US $169 million second-lien term loan issued as of August 11, 2015 by Goldman

5

Sachs Bank USA, (ii) a certain US $750 million senior secured first lien letter of credit facility, dated as of February 28, 2014, and amended from time to time thereafter, and (iii) the Old Notes.

D. **The Financial Situation for SUNE**

23. SUNE expanded aggressively in the years leading up to the petition date using borrowed and invested capital. Between December 2013 and January 2016, SUNE committed to over $18 billion in acquisitions funded by approximately $24 billion of capital raised through debt and equity offerings.

24. Several of these investments proved disastrous, requiring intensive capital commitments and consequently limiting SUNE's capacity to acquire additional projects due to its unwillingness or inability to pay for the same in cash.

25. As a result, SUNE's stock price dropped by approximately two-thirds between July 20, 2015 and August 31, 2015, and continued to trend downward thereafter.

26. In August 2015, SUNE was forced to make an unexpected outlay of cash to acquire $30 million in Class A common stock of one of its two "YieldCo" subsidiaries, TerraForm Global, Inc. This unexpected outlay of cash put further strain on SUNE's liquidity.

27. Shortly thereafter, in October 2015, share prices of SUNE's other YieldCo subsidiary, TerraForm Power, Inc., fell below a critical threshold for a margin loan that SUNE had entered into to finance one of its acquisitions, and as a result SUNE was required to repay the $439 million balance of the loan. This prepayment obligation further depleted SUNE's remaining cash reserves.

28. On December 24, 2016, SUNE disclosed that an investor presentation had been provided to certain of its potential and existing financing sources. A copy of the form 8-K filed by SUNE on December 24, 2015 referencing the presentation is attached hereto as Exhibit D, and a copy of the presentation is attached hereto as Exhibit E.

29. On January 7, 2016, SUNE disclosed that an investor presentation had been provided to certain of its potential and existing financing sources. The January 7 8-K referenced the presentation, and a copy of the presentation is attached hereto as Exhibit F.

30. Market indicators showed a growing lack of confidence in SUNE's business. For example, SUNE's outstanding unsecured convertible notes were trading at significant discounts to par.

E. **Miscellaneous**

31. No party hereto shall be precluded from offering evidence in addition to these stipulated facts.

6

32. Wilmington Savings Fund Society, FSB is entering into this stipulation only as to the recitals and paragraphs 1-12 and 23-31.

33. Wilmington Trust, National Association is entering into this stipulation only as to the recitals and paragraphs 11-31.

Dated: New York, New York
February 16, 2017


By:/s/   Michael S. Kim
Michael S. Kim
Jeremy C. Hollembeak
Benjamin J.A. Sauter
Joe Slaughter
Kobre & Kim LLP
800 Third Avenue
Telephone: (212) 488 1200
jeremy.hollembeak@kobrekim.com; benjamin@sauter@kobrekime.com.
(*Special Counsel to the Official Committee of Unsecured Creditors*)


By:/s/   Leo T. Crowley
Leo T. Crowley
Dania Slim
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036
Telephone: (212) 858-1000
leo.crowley@pillsburylaw.com.
*(Counsel to defendant Wilmington Savings Fund Society, FSB, in its capacity as successor Administrative Agent for the Prepetition Second Lien Facility)*


By:/s/   Andrew Goldman
Andrew Goldman
WilmerHale
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
andrew.goldman@wilmerhale.com
*(Counsel to Defendant Wilmington Trust, National Association, in its capacity as Indenture Trustee for the Prepetition Second Lien Notes and Collateral Trustee under the Prepetition Security Agreement)*

7

By:/s/  David Zensky
Daniel H. Golden
David M. Zensky
Erik Preis
Deborah J. Newman
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
dgolden@akingump.com; apreis@akingump.com; dzensky@akingump.com;
djnewman@akingump.com
(*Counsel to the Second Lien Lender Defendants Listed on Schedule A hereto*)


By: /s/  J. Christopher Shore
J. Christopher Shore
Harrison L. Denman
Michele J. Meises
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
cshore@whitecase.com; harrison.denman@whitecase.com
(*Counsel to BOKF, N.A., as Convertible Notes Trustee*)