**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SUNEDISON, INC., *et al.*, | Case No. 16-10992 (SMB) |
| Debtors.[1] | Jointly Administered |

### ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN SENIOR SECURED, SUPERPRIORITY, REPLACEMENT POSTPETITION FINANCING PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 361, 362, 364(C)(1), 364(C)(2), 364(C)(3), 364(D)(1), AND 364(E), AND (B) UTILIZE CASH COLLATERAL PURSUANT TO BANKRUPTCY CODE SECTION 363, (II) AUTHORIZING USE OF PROCEEDS TO REPAY EXISTING SENIOR SECURED SUPERPRIORITY, POSTPETITION FINANCING, AND (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO BANKRUPTCY CODE SECTIONS 361, 362, 363 AND 364

Upon the motion, dated April 4, 2017 (the "**Motion**"), of SunEdison, Inc. ("**SUNE**"

or "**DIP Borrower**") and certain of its affiliates, the debtors and debtors in possession

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); Everstream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE MN Development, LLC (8669); SunE MN Development Holdings, LLC (5388); SunE Minnesota Holdings, LLC (8926); Terraform Private Holdings, LLC (3523); SunEdison Products, LLC (3557); Hudson Energy Solar Corporation (1344); SunE REIT-D PR, LLC (2171); First Wind Energy, LLC (5519); First Wind Holdings, LLC (4445); Vaughn Wind, LLC (9605); Maine Wind Holdings, LLC (4825); SunEdison International Construction, LLC (6257); and EchoFirst Finance Co., LLC (1607). The address of the Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

(collectively, the "**Debtors**" and together with their non-Debtor affiliates, the "**Company**") in the above-captioned cases (the "**Chapter 11 Cases**"), seeking entry of this order (together with all annexes, schedules and exhibits hereto, including, without limitation, Annex I (the "**Replacement Intercreditor Annex**") and Annex II (the "**Committee Settlement Annex**) hereto, the "**Replacement DIP Order**," and, together with the Original Interim DIP Order and the Original Final DIP Order (each as defined below), the "**DIP Orders**"), pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), seeking, among other things, the following relief:

(i) The Court's authorization, pursuant to sections 363 and 364(c)(1), (2), (3), (d)(1) and (e) of the Bankruptcy Code:

(a)    for the DIP Borrower to enter into a non-amortizing, senior-secured, priming, superpriority debtor-in-possession replacement new money term loan facility in an aggregate principal amount not to exceed $640,000,000 at any time outstanding (the "**Replacement New Money DIP Facility**"),[2] and to obtain replacement new money term loans (the "**Replacement New Money DIP Loans**") and incur the obligations thereunder, pursuant to the terms and conditions of the Replacement DIP Documents (defined below), provided by the lenders from time to time party thereto, or their respective permitted successors and assigns, in each

---

[2]    Capitalized terms used herein but not otherwise defined herein shall have the meanings given to them in the Replacement DIP Credit Agreement (defined below).

case, to repay in full all obligations under the Existing DIP Facilities (defined below) (except for the Remaining Second Lien Obligations (as defined in the Intercreditor Annex attached as Annex I to the Original Final DIP Order (the "**Original Intercreditor Annex**") and any accrued and unpaid interest thereon)) in accordance with this Replacement DIP Order and the other Replacement DIP Documents, to pay related fees and expenses, and otherwise for use in accordance with the DIP Budget (defined below) (subject to Permitted Budget Variances) or for Specified Disbursements and to cash collateralize Existing L/Cs (defined below) in accordance with the L/C Cash Collateralization Agreements (as defined below);

(b)      subject to the terms and conditions set forth herein and in the Replacement DIP Credit Agreement, for the aggregate outstanding principal amount of the Remaining Second Lien Obligations (and all accrued and unpaid interest thereon), to continue to be substituted and exchanged for, and deemed to be Loans "rolled-up" and issued and outstanding under the Replacement DIP Credit Agreement and the other Replacement DIP Documents (the "**Second Lien Roll-Up Loans**," and together with the Replacement New Money DIP Facility, the "**Replacement DIP Facilities**"; and the holders of the Second Lien Roll-Up Loans, the "**Roll-Up Lenders**"), pursuant to the terms and conditions of the Replacement DIP Credit Agreement and the other Replacement DIP Documents, which Second Lien Roll-Up Loans shall be junior and subject to the Replacement New Money DIP Facility in all respects; provided that such Second Lien Roll-Up Loans, which were approved by this Court on a final basis as of June 9, 2016 pursuant to the

Original Final DIP Order, shall be deemed to be effective on and as of the Closing

Date as a result of the Roll-Up Election (as further defined and described herein);

and

(c)       for each Debtor who is a Guarantor under the Replacement DIP

Documents (the "**Debtor DIP Guarantors**", and together with any non-Debtor

subsidiaries and affiliates of the DIP Borrower who are Guarantors from time to

time under the Replacement DIP Documents, the "**DIP Guarantors**" and,

collectively with the DIP Borrower and each other Loan Party under the

Replacement DIP Documents, the "**DIP Loan Parties**", and all DIP Loan Parties

that are Debtors in these Chapter 11 Cases, the "**Debtor DIP Loan Parties**"), to

jointly and severally guarantee on an unsecured or secured basis (such guarantors,

guaranteeing on a secured basis, the "**Secured DIP Guarantors**") as provided in

this Replacement DIP Order and the other Replacement DIP Documents, the DIP

Borrower's and the other DIP Loan Parties' obligations in respect of the

Replacement New Money DIP Facility and the Second Lien Roll-Up Loans (in each

case, subject to their relative priorities as set forth in this Replacement DIP Order

(including the Replacement Intercreditor Annex) and in the other Replacement DIP

Documents);

(ii)       the Court's authorization for the DIP Borrower to amend and restate

the Existing DIP Credit Agreement (defined below) and for the DIP Borrower and

each other Debtor DIP Loan Party to execute and deliver the Amended and Restated

Senior Secured Superpriority Debtor-in-Possession Credit Agreement among the DIP

Borrower, Cantor Fitzgerald Securities, LLC, as Administrative Agent and Collateral

Agent (in such capacities, the "**DIP Agent**"), Deutsche Bank AG New York Branch

("**DBNY**"), as Collateral Sub-Agent (in such capacity, the "**Collateral Sub-Agent**")[3],

Deutsche Bank Securities Inc. ("**DBSI**"), Goldman Sachs Lending Partners LLC

("**GS**"), and Bank of America Merrill Lynch, as Joint Lead Arrangers and Joint

Bookrunners (collectively, in their respective capacities, the "**DIP Arrangers**"),

DBNY, GS, SVP, LLC, Tennenbaum Capital Partners, LLC, Cyrus Capital Partners,

L.P., Sound Point Capital Management, LP, Bank of America, N.A., Merced Capital,

LP and Luxor Capital, LLC (collectively, in their respective capacities, the "**Specified**

**Lenders**"), and the other Lenders from time to time party thereto (in such capacities,

collectively with the Specified Lenders, the "**DIP New Money Lenders**", and together

with the Roll-Up Lenders, the "**Replacement DIP Lenders**"), in the form attached as

**Exhibit A** hereto (as may be amended, supplemented, modified, or waived from time

to time, in accordance with its terms and subject to paragraph 22(m) hereof,

the "**Replacement DIP Credit Agreement**" and, together with this Replacement DIP

Order and all other agreements, documents and instruments delivered or executed in

connection therewith, including, without limitation, the Commitment Letter and any

other fee arrangements or agreements, the DIP Budget and all other Loan Documents

(as defined in the Replacement DIP Credit Agreement), in each case as hereafter

amended, supplemented, or otherwise modified from time to time, collectively, the

"**Replacement DIP Documents**"), and each other Replacement DIP Document, in

---

[3]    All references to the DIP Agent in its capacity as collateral agent in this Replacement DIP Order, including, without limitation, with respect to any release, indemnity or expense reimbursement provisions, shall be deemed to also include a reference to the Collateral Sub-Agent.

each case, to which it is a party, and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(iii)    the Court's authorization for the DIP Borrower (a) to cash collateralize (x) all issued and undrawn Letters of Credit as of the Closing Date (collectively, the "**Existing L/Cs**") issued by Wells Fargo Bank, National Association, KeyBank National Association and Royal Bank of Canada (each, an "**Applicable Issuer**") and related obligations in an aggregate amount equal to 105% of the amount available to be drawn under such Existing L/Cs (or, with respect to any Applicable Issuer, such greater minimum amount of cash collateral required pursuant to the applicable L/C Cash Collateralization Agreement) and (y) all fees related thereto (and, with respect to any such Existing L/C, denominated in a currency other than U.S. dollars, to provide such additional cash collateral as may be reasonably required by one or more of the Applicable Issuers, from time to time solely in connection with potential or actual fluctuations in the applicable exchange rate or to provide cash collateral in such other currency, as such Applicable Issuer may elect; provided that, as a result of any cancellation, expiration, permitted amendment or reduction of any Existing L/C or changes in relevant currency exchange rates, the aggregate amount of such cash collateral may exceed such amount referred to above solely as a result of such excess amounts not yet being required to be returned pursuant to the terms of the applicable L/C Cash Collateralization Agreements, (b) as replacement credit support for any Existing L/C, to  provide such other cash collateral arrangements to or for the benefit of the beneficiaries of such Existing L/C or affiliates thereof (any such beneficiaries or affiliates thereof provided such replacement credit support,

6

collectively, the "**Applicable L/C Beneficiaries**") relating to the obligations supported by such Existing L/C as may be permitted under Sections 7.01(dd) and 7.03(w) of the Replacement DIP Credit Agreement; <u>provided</u> that in no event shall the amount of any such cash collateral arrangement pursuant to this clause (b) exceed 105% of the undrawn amount of the relevant Existing L/C being replaced (as in effect prior to such replacement and cancellation or expiration of such Existing L/C) (clauses (a) and (b), collectively, the "**L/C Cash Collateralization**"), (c) to extend, renew, amend or otherwise modify (other than to increase the amount available to be drawn thereunder) any Existing L/C at the Applicable Issuer's sole discretion (at the request of the Debtors) (and without any obligation to do so) and/or replacement L/C Cash Collateralization arrangements; provided that no such extension or renewal shall provide for an expiry date applicable to any Existing L/C that extends beyond October 23, 2017, (d) to establish one or more cash collateral accounts in connection with the L/C Cash Collateralization (including, as applicable, accounts with the Applicable Issuers) (the "**L/C Blocked Accounts**"), and (e) to execute and enter into a reimbursement and cash collateral agreement (or similar agreement) with each of the Applicable Issuers (such agreements, in the form attached hereto as Exhibit C, and otherwise reasonably satisfactory to the Applicable Issuers and the Specified Lenders) and, as applicable, cash collateral agreements (or similar agreements) with the Applicable L/C Beneficiaries in connection with any replacement L/C Cash Collateralization arrangements and certain related documentation (collectively, the "**L/C Cash Collateralization Agreements**"), and to perform all such other and further acts as may be required or advisable in connection with the foregoing

7

(including the payment of fees and expenses in connection therewith) (collectively, (a), (b), (c), (d) and (e) above, the "**Replacement L/C Arrangements**");

(iv)      the Court's authorization for the Debtors to immediately use proceeds of the Replacement New Money DIP Facility to pay in full all obligations under the Existing DIP Facilities (except for the Remaining Second Lien Obligations and any accrued and unpaid interest thereon) in accordance with the DIP Orders and the other Replacement DIP Documents, and to otherwise use proceeds of the Replacement DIP Facilities, and to continue to use Cash Collateral and the Prepetition Collateral (each as defined below) in accordance with this Replacement DIP Order and the other Replacement DIP Documents, including the proposed budget prepared by the DIP Loan Parties and annexed hereto as **Exhibit B** (as updated, amended, supplemented, otherwise modified, or replaced, from time to time pursuant to the Replacement DIP Documents, in each case, in accordance with the Replacement DIP Credit Agreement, the "**DIP Budget**"), subject to Permitted Budget Variances and Specified Disbursements, and as otherwise provided herein and in the other Replacement DIP Documents;

(v)      the Court's authorization to grant (a) to the DIP Agent for the benefit of the Replacement DIP Lenders (including the Roll-Up Lenders) and the other secured parties under the Replacement DIP Documents (collectively with the DIP Agent, the "**DIP Secured Parties**") in respect of their respective DIP Obligations (defined below) (subject to their relative priorities as set forth in this Replacement DIP Order (including the Replacement Intercreditor Annex) and in the other Replacement DIP Documents), superpriority administrative claims pursuant to section 364(c)(1) of

the Bankruptcy Code, and liens on and security interests in all assets and property of

the DIP Borrower and the Debtors that are Secured DIP Guarantors (now owned or

hereafter acquired) pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the

Bankruptcy Code, subject to the Carve-Out (defined below), and (b) to the Applicable

Issuers (and, if applicable, effective upon entry into any relevant Replacement L/C

Arrangement with an Applicable L/C Beneficiary, such Applicable L/C Beneficiary),

superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy

Code and liens on the Specified L/C Collateral (defined below), pursuant to sections

364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, in each case as and to the

extent set forth in this Replacement DIP Order and the other Replacement DIP

Documents (and excluding any Excluded Property);

(vi)       the Court's authorization to continue to use "cash collateral" as such

term is defined in section 363 of the Bankruptcy Code (the "**Cash Collateral**") and

the Prepetition Collateral in which the Prepetition Second Lien Creditors (defined

below) have an interest, in accordance with this Replacement DIP Order and the other

Replacement DIP Documents, including the DIP Budget;

(vii)      the Court's authorization, subject to the Carve-Out, (a) to continue

to grant to the Prepetition Second Lien Secured Parties (subject to the priorities set

forth in this Replacement DIP Order (including the Replacement Intercreditor Annex)

and in the other Replacement DIP Documents), (x) the Second Lien Adequate

Protection Liens (defined below), solely to the extent of and as compensation for any

Diminution in Value (defined below), and (y) in accordance with Section 6.27 of the

Replacement DIP Credit Agreement and Schedule 6.27 to the Replacement DIP Credit

Agreement, other liens and claims against the DIP Loan Parties, and (b) of the capitalization of interest, and the payment of fees and expenses, to, among others, the (x) the Prepetition Second Lien Administrative Agent (defined below) for the benefit of the Prepetition Second Lien Lenders, and (y) the Prepetition Second Lien Notes Trustee (defined below) and the Prepetition Second Lien Collateral Trustee (defined below) for the benefit of the Prepetition Second Lien Noteholders, in each case as set forth more fully below;

(viii)    the modification by the Court of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Replacement DIP Facilities, this Replacement DIP Order and the other Replacement DIP Documents;

(ix)    a waiver of the Debtors' right to surcharge against the DIP Collateral (defined below), the Specified L/C Collateral or, solely to the extent set forth herein, the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code;

(x)    the Court's authorization for the Debtors to cause and require the other DIP Loan Parties to become parties to the Replacement DIP Documents in a manner, and to the extent, required by the Replacement DIP Documents, and to grant and/or continue to grant any Liens and perform all obligations securing repayment under the Replacement DIP Documents and any other agreements entered into in connection therewith, and to submit to the jurisdiction of this Court with regard to any and all disputes regarding the Replacement DIP Documents or this Replacement DIP Order, subject to the terms and provisions of the Replacement DIP Documents,

including, without limitation, Section 6.17 of the Replacement DIP Credit Agreement; and

(xi)    the Court's waiver of any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Replacement DIP Order and providing for the immediate effectiveness thereof.

The Court having considered the Motion, the terms of the Replacement DIP Facilities and the Replacement DIP Documents, the declarations filed in support of the Motion, and the evidence submitted at the hearing held before this Court on April 25, 2017 (the "**Hearing**") to consider entry of this Replacement DIP Order; and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and Local Bankruptcy Rule 9014, due and proper notice of the Motion and the Hearing having been given; and it appearing that approval of the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their stakeholders, and is otherwise fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and essential for the continued operation of the Debtors' business, as well as the maximization of the value of the Debtors' estates and for their emergence from chapter 11; and all objections, if any, to the entry of this Replacement DIP Order having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    **Petition Date**.    On April 21, 2016[4] (the "**Petition Date"),** the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "**Court**").  The Debtors have continued in the

---

[4] Certain of the Debtors filed voluntary petitions after April 21, 2016.

management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner having expanded powers (beyond those set forth under sections 1106(a)(3) and (4) of the Bankruptcy Code) under section 1104 of the Bankruptcy Code has been appointed in the Chapter 11 Cases.

B.  **Jurisdiction and Venue.**  The Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. § 1334.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.  **Committee Formation.**  On April 29, 2016, the United States Trustee for the Southern District of New York (the "**United States Trustee**") appointed an official committee of unsecured creditors (the "**Committee**") in the Chapter 11 Cases [Docket No. 148].

D.  **Existing DIP Facilities.**  On April 26, 2016, (1) this Court entered an Interim Order (I) Authorizing Debtors to (A) Obtain Senior Secured, Superpriority, Postpetition Financing Pursuant to Bankruptcy Code Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and (B) Utilize Cash Collateral Pursuant to Bankruptcy Code Section 363, (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to Bankruptcy Code Sections 361, 362, 363 and 364, and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) [Docket No. 87] (the "**Original Interim DIP Order**"), and (2) the DIP Borrower entered into that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement, dated April 26, 2016 (as amended, restated, supplemented, or otherwise modified immediately prior to the Closing Date, the "**Existing DIP Credit Agreement**", together with the Original DIP Orders (defined below) and the other Loan Documents (as defined in the Existing DIP Credit Agreement), the "**Existing DIP Documents**"; and the facilities thereunder, collectively, the

12

"**Existing DIP Facilities**") with Deutsche Bank AG, New York Branch, as Administrative Agent

(the "**Existing DIP Agent**"), DBSI, Barclays Bank PLC, Apollo Credit Opportunity Fund III AIV

I LP, Goldman Sachs Bank US, and Macquarie (USA) Inc., as Joint Lead Arrangers and Joint

Bookrunners, the Applicable Issuers, and the Lenders party thereto (together with the Joint Lead

Arrangers and the L/C Issuers, the "**Existing DIP Lenders**", and collectively with the Existing

DIP Agent, the "**Existing DIP Secured Parties**").  On June 9, 2016, the Court entered an order

approving the Existing DIP Credit Agreement and the Existing DIP Facilities on a final basis

[Docket No. 523] (the "**Original Final DIP Order**", and together with the Original Interim DIP

Order, and any and all exhibits, schedules and annexes thereto, the "**Original DIP Orders**").

E.   **Notice.**   Notice of the Hearing and the relief requested in the Motion has been

provided by the Debtors, by telecopy, email, overnight courier and/or hand delivery, to: (a) the

United States Trustee; (b) counsel to the Committee; (c) counsel to the Prepetition First Lien

Agent; (d) counsel to the Tranche B Lenders/Steering Committee (as defined in that certain

Verified Statement Pursuant to Bankruptcy Rule 2019 [Docket No. 1977]); (e) counsel to the

Prepetition Second Lien Administrative Agent (defined below), (f) counsel to the Prepetition

Second Lien Collateral Trustee, (g) counsel to the indenture trustee under each of the Debtors'

other  outstanding bond issuances; (h) counsel to each of the Applicable Issuers; (i) counsel to the

Existing DIP Agent (defined below) and the DIP Arrangers under (as defined in the Existing DIP

Credit Agreement, (j) counsel to the DIP Agent; (k) counsel to the Specified Lenders; (l) the U.S.

Attorney for the Southern District of New York; (m) counsel to the indenture trustee for the

Debtors' convertible senior notes; (n) counsel to TerraForm Power, Inc. and TerraForm Global

Inc.; (o) the parties listed on the Core 2002 Service List; (p) the Internal Revenue Service; (q) the

Securities and Exchange Commission; (r) all other parties asserting a lien on, or a security interest

in, the assets of the Debtors to the extent reasonably known to the Debtors; and (s) any such other party entitled to notice pursuant to Local Bankruptcy Rule 9013-1(b) (collectively, the "**Notice Parties**").  Under the circumstances, such notice of the Hearing and the relief requested in the Motion constitutes due, sufficient and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b), (c) and (d), and the Local Bankruptcy Rules.

      F.    **Stipulations as to Prepetition Secured Indebtedness.**  The DIP Loan Parties permanently, immediately, and irrevocably continue to acknowledge, represent, stipulate and agree to the stipulations set forth in paragraph F of the Original Final DIP Order, and such stipulations (including all defined terms as defined therein) are incorporated herein and made a part of this Replacement DIP Order by reference, as if set forth in full herein, provided that with respect to clauses IV and V of paragraph F, the reference in each such clause to "the Intercreditor Annex" shall be deemed to be replaced with "the Original Intercreditor Annex and the Replacement Intercreditor Annex."

      G.    **Stipulations as to Prepetition Secured Obligations.**  Without limiting the rights of the Committee as and solely to the extent set forth in paragraph 9 hereof, the DIP Loan Parties permanently, immediately, and irrevocably acknowledge, represent, stipulate and agree:

      (i)    Prepetition First Lien Secured Obligations.

      (a)    As of the Petition Date, the Debtors party to the Prepetition First Lien Loan Documents were indebted and liable to the Prepetition First Lien Secured Parties under the Prepetition First Lien Loan Documents, without objection, defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $686,315,008.44 (subject to currency fluctuations) with

respect to the Prepetition First Lien Credit Facility, plus all accrued and unpaid interest thereon, and any fees, expenses, reimbursement obligations, including, without limitation, any attorneys', accountants', consultants', appraisers' and financial and other advisors' fees that are chargeable or reimbursable under the Prepetition First Lien Loan Documents, and all other Obligations under (and as defined in) the Prepetition First Lien Credit Agreement (collectively, the "**Prepetition First Lien Secured Obligations**").

(b)    **Enforceability of the Prepetition First Lien Secured Obligations.** The Prepetition First Lien Secured Obligations and the Prepetition First Lien Loan Documents are (a) legal, valid, binding, non-avoidable, and enforceable against each Debtor that is a party to the Prepetition First Lien Loan Documents, and (b) not subject to any contest, attack, objection, recoupment, defense, counterclaim, offset, subordination, re-characterization, avoidance or other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise (except insofar as such Prepetition First Lien Secured Obligations and liens in respect thereof are expressly subordinated in accordance with the provisions of this Replacement DIP Order or the Original DIP Orders, and except for the rights and remedies set forth in the Prepetition Intercreditor Agreement, as amended by the Original Intercreditor Annex and the Replacement Intercreditor Annex).

(c)    **Enforceability of Prepetition First Priority Liens.**    The Prepetition First Priority Liens granted by the Debtors party to the Prepetition First Lien Loan Documents thereunder, to or for the benefit of the Prepetition First Lien

Agent and the other Prepetition First Lien Secured Parties, as security for the Prepetition First Lien Secured Obligations encumber the Prepetition First Lien Collateral, as the same existed on or at any time prior to the Petition Date. The Prepetition First Priority Liens have been properly recorded and perfected under applicable non-bankruptcy law, and are legal, valid, enforceable, non-avoidable, and not subject to contest, avoidance, attack, offset, re-characterization, subordination or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise (except insofar as such Prepetition First Lien Secured Obligations and liens in respect thereof are expressly subordinated in accordance with the provisions of this Replacement DIP Order and/or the Original DIP Orders, and except for the rights and remedies set forth in the Prepetition Intercreditor Agreement, as amended by the Original Intercreditor Annex and the Replacement Intercreditor Annex). As of the Petition Date, and without giving effect to this Replacement DIP Order, the Debtors are not aware of any liens or security interests over the Prepetition First Lien Collateral of the Loan Parties (under and as defined in the Prepetition First Lien Credit Agreement) having priority over the Prepetition First Priority Liens, except (i) as expressly permitted under the Prepetition First Lien Loan Documents and (ii) for carriers', warehousemen's, mechanics', materialmen's, repairmen's or other like Liens set forth on Schedule 7.01 of the Replacement DIP Credit Agreement to the extent such Liens have priority over the Prepetition First Priority Liens by operation of law or statute. The Prepetition First Priority Liens were granted to or for the benefit of the Prepetition First Lien Agent and the other Prepetition First Lien Secured Parties for

fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby.

(ii)     <u>Prepetition Second Lien Obligations.</u>

(a)     As of the Petition Date, the Debtors party to the applicable Prepetition Second Lien Documents were indebted and liable to: (x) the Prepetition Second Lien Loan Parties under the Prepetition Second Lien Loan Documents, without objection, defense, counterclaim or offset of any kind, in the aggregate principal amount of $725,000,000 with respect to the Prepetition Second Lien Credit Facility, and all accrued and unpaid interest thereon, and any fees, expenses, reimbursement obligations, including, without limitation, any attorneys', accountants', consultants', appraisers' and financial and other advisors' fees that are chargeable or reimbursable under the Prepetition Second Lien Loan Documents, and all other Obligations under (and as defined in) the Prepetition Second Lien Credit Agreement (collectively, the "**<u>Prepetition Second Lien Loan Obligations</u>**"); and (y) the Prepetition Second Lien Noteholders and Prepetition Second Lien Notes Trustee under the Prepetition Second Lien Note Documents, without objection, defense, counterclaim or offset of any kind, in the aggregate principal amount of $225,000,000 with respect to the Prepetition Second Lien Indenture, and all accrued and unpaid interest thereon, and any fees, expenses, reimbursement obligations, including, without limitation, any attorneys', accountants', consultants', appraisers' and financial and other advisors' fees that

are chargeable or reimbursable under the Prepetition Second Lien Note Documents, and all other Obligations under (and as defined in) the Prepetition Second Lien Indenture (collectively, "**Prepetition Second Lien Note Obligations**", and together with the Prepetition Second Lien Loan Obligations, the "**Prepetition Second Lien Obligations**"; the Prepetition Second Lien Obligations and the Prepetition First Lien Secured Obligations, collectively, the "**Prepetition Secured Obligations**").

(b)    **Enforceability of the Prepetition Second Lien Obligations.**  The Prepetition Second Lien Obligations and the Prepetition Second Lien Loan Documents are (a) legal, valid, binding, non-avoidable and enforceable against each Debtor that is a party to the Prepetition Second Lien Documents, and (b) not subject to any contest, attack, objection, recoupment, defense, counterclaim, offset, subordination, re-characterization, avoidance or other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise (except insofar as such Prepetition Second Lien Obligations and liens in respect thereof are expressly subordinated in accordance with the provisions of this Replacement DIP Order and/or the Original DIP Orders and except for the rights and remedies set forth in the Prepetition Intercreditor Agreement, as amended by the Original Intercreditor Annex and the Replacement Intercreditor Annex).

(c)    **Enforceability of Prepetition Second Priority Liens.**    The Prepetition Second Priority Liens granted by the Debtors party to, and under, the Prepetition Second Lien Documents to or for the benefit of the respective

Prepetition Second Lien Secured Parties as security for the Prepetition Second Lien

Obligations encumber the Prepetition Second Lien Collateral, as the same existed

on or at any time prior to the Petition Date.  The Prepetition Second Priority Liens

have been properly recorded and perfected under applicable non-bankruptcy law,

and are legal, valid, enforceable, non-avoidable, and not subject to contest,

avoidance, attack, offset, re-characterization, subordination or other challenge of

any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy

law or otherwise (except insofar as such Prepetition Second Lien Obligations and

liens in respect thereof are expressly subordinated in accordance with the provisions

of this Replacement DIP Order, and except for the rights and remedies set forth in

the Prepetition Intercreditor Agreement, as amended by the Original Intercreditor

Annex and the Replacement Intercreditor Annex).  As of the Petition Date, and

without giving effect to this Replacement DIP Order, the Debtors are not aware of

any liens or security interests over the Prepetition Second Lien Collateral of the

Loan Parties (under and as defined in the Prepetition Second Lien Credit

Agreement) having priority over the Prepetition Second Priority Liens, except (i)

the Prepetition First Priority Liens, (ii) as expressly permitted under the Prepetition

Second Lien Documents, and (iii)  for carriers', warehousemen's, mechanics',

materialmen's, repairmen's or other like Liens set forth on Schedule 7.01 of the

Replacement DIP Credit Agreement to the extent such Liens have priority over the

Prepetition Second Priority Liens by operation of law or statute.  The Prepetition

Second Priority Liens were granted to or for the benefit of the Prepetition Second

Lien Secured Parties for fair consideration and reasonably equivalent value, and

were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby.

(iii)    **Indemnity.**  The Prepetition Secured Parties, the Existing DIP Secured Parties, and the DIP Secured Parties have acted in good faith, and without negligence, misconduct or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting or obtaining requisite approvals of the Replacement DIP Facilities and the use of Cash Collateral, including in respect of the granting of the DIP Liens (defined below) and the Adequate Protection Liens, and any of the other rights, remedies, privileges, benefits and protections granted hereunder or pursuant to any other Replacement DIP Document, any challenges or objections to the Replacement DIP Facilities or the use of Cash Collateral, and all documents related to and all transactions contemplated by the foregoing.  For the avoidance of doubt, and notwithstanding anything to the contrary herein, the indemnity rights provided under the Original DIP Orders shall survive notwithstanding entry of this Replacement DIP Order.  Accordingly, the Prepetition Secured Parties, the Existing DIP Secured Parties, and the DIP Secured Parties shall be and hereby are indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto.  No exception or defense in contract, law or equity exists as of the date of this Replacement DIP Order, to any obligation set forth, as the case may be, in this paragraph G, in the Replacement DIP Documents, in the Existing DIP Documents, or in the Prepetition Debt Documents to indemnify and/or hold harmless the DIP Agent, any other DIP Secured Party, any Existing DIP Secured Party, or any Prepetition Secured Party, as the case may be, and any such defenses are hereby waived.

(iv)    **No Control.**    None of the DIP Secured Parties, Existing DIP Secured

Parties, or Prepetition Secured Parties are control persons or insiders of the Debtors or any of their

affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or

arising from the Replacement DIP Facilities, the Replacement DIP Documents, the Existing DIP

Facilities, the Existing DIP Documents, and/or the Prepetition Debt Documents.

(v)    **No Claims or Causes of Action.**    As of the date hereof, there exist no

claims or causes of action against any of the DIP Agent, the other DIP Secured Parties, the Existing

DIP Secured Parties, or the Prepetition Secured Parties with respect to, in connection with, related

to, or arising from the Replacement DIP Documents, the Existing DIP Documents and/or the

Prepetition Debt Documents, in each case that may be asserted by the DIP Loan Parties, other than

the claims and causes of action that have been asserted by (x) the Committee against the Prepetition

Secured Parties in the adversary proceeding previously filed in the Chapter 11 Cases on October

20, 2016, Official Committee of Unsecured Creditors v. Wells Fargo Bank, N.A., Adv. Pro. No.

16-01228 (the "**Filed Committee Adversary Proceeding**"), (y) the OID Allowance Objections

(as defined in the Stipulation and Agreed Order (Adv.Pro. No. 16-01228, Docket No. 8)), and (z)

BOKF N.A.'s Objection to Proofs of Claim Nos. 1490 and 3555 (Docket No. 1455) (clauses (y)

and (z) together, the "**OID Objections**").

(vi)    **Release**.    The Debtors, on behalf of themselves and their respective estates,

forever and irrevocably release, discharge, and acquit all former, current and future DIP Secured

Parties, Existing DIP Secured Parties, and Prepetition Secured Parties, the respective Affiliates of

the DIP Secured Parties, the Existing DIP Secured Parties, and the Prepetition Secured Parties, and

each of their respective former, current and future officers, employees, directors, agents,

representatives, owners, members, partners, financial and other advisors and consultants, legal

advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors

and successors in interest of each DIP Secured Party, each Existing DIP Secured Party, and each

Prepetition Secured Party and their respective Affiliates (collectively, the "Releasees") of and from

any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action,

indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies,

proceedings, losses, damages, injuries, reasonable attorneys' fees, costs, expenses, or judgments

of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued,

unaccrued, fixed, contingent, pending or threatened including, without limitation, all legal and

equitable theories of recovery, arising under common law, statute or regulation or by contract, of

every nature and description, arising out of, in connection with, or relating to the Replacement DIP

Facilities, the Replacement DIP Documents, Existing DIP Facilities, the Existing DIP Documents,

the Prepetition First Lien Credit Facility, the Prepetition Second Lien Credit Facility, the

Prepetition Second Lien Indenture, and the Prepetition Debt Documents and/or the transactions

contemplated hereunder or thereunder including, without limitation, (x) any so-called "lender

liability" or equitable subordination claims or defenses, (y) any and all claims and causes of action

arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to

the validity, priority, perfection or avoidability of the liens or claims of the DIP Agent, the other

DIP Secured Parties, the Existing DIP Secured Parties and/or the Prepetition Secured Parties.  The

Debtors further waive and release any defense, right of counterclaim, right of setoff or deduction

of the payment of the Prepetition First Lien Secured Obligations, the Prepetition Second Lien

Obligations, Existing DIP Obligations (defined below), and the DIP Obligations that the Debtors

now have or may claim to have against the Releasees arising out of, connected with, or relating to

any and all acts, omissions or events occurring prior to the entry of this Replacement DIP Order.

H.  **Immediate Need for Postpetition Financing and Use of Cash Collateral.**  Good cause has been shown for entry of this Replacement DIP Order.  The Existing DIP Facilities will mature on April 26, 2017, and all obligations under such facilities will be come due and owing on such date, in accordance with the terms of the Existing DIP Credit Agreement and the other Existing DIP Documents.  The Debtors need additional time to be able to confirm a chapter 11 plan, and to consummate the proposed transactions with the YieldCos.  To date, the ability of the DIP Loan Parties to finance their operations, to preserve and maintain the value of their assets and to maximize the return for all creditors has required the availability of working capital from the Existing DIP Facilities and the use of Cash Collateral. In the absence of continued access to financing through the proposed Replacement DIP Facilities and the use of Cash Collateral, the continued operation of the DIP Loan Parties' businesses would not be possible, and serious and irreparable harm to the Debtors and their estates and creditors would occur.  Accordingly, an immediate need exists for the DIP Loan Parties to enter into the Replacement DIP Facilities and continue to use Cash Collateral, in order to repay the Existing DIP Obligations (except for the Remaining Second Lien Obligations and any accrued and unpaid interest thereon) that are maturing (and cash collateralize Existing L/Cs) and continue their operations, to pay the costs and expenses of administering the Chapter 11 Cases, and to administer, preserve and maximize the value of their businesses and estates, to allow them to emerge from Chapter 11.

I.  **No Credit Available on More Favorable Terms.**  The Debtors have been unable to obtain financing on more favorable terms and conditions than those provided in this Replacement DIP Order and in the other Replacement DIP Documents from sources other than the Replacement DIP Lenders, based on the circumstances of these Chapter 11 Cases and the DIP Loan Parties' current financial condition, financing arrangements and capital structure.  The

Debtors have been unable to obtain: (a) adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense, (b) credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code, (c) credit for money borrowed secured by a lien on property of the estate that is not otherwise subject to a lien, or (d) credit for money borrowed secured by a junior lien on property of the estate which is subject to a lien.  The Debtors are unable to obtain credit for borrowed money without granting the DIP Liens and the DIP Superpriority Claims (defined below) to (or for the benefit of) the DIP Secured Parties, in each case in accordance with the terms of this Replacement DIP Order, the Replacement DIP Credit Agreement, and the other Replacement DIP Documents.

J.    **Use of Cash Collateral and Proceeds of the Replacement New Money DIP Facility, DIP Collateral and Prepetition Collateral.**

(i)    As a condition to entry into the Replacement DIP Credit Agreement (and the issuance of the Replacement New Money DIP Loans thereunder), the DIP Agent and the Replacement DIP Lenders require, and the Debtors agree, that proceeds of the Replacement New Money DIP Loans shall be used (a) to ~~irrevocably~~ Pay in Full (for purposes of this clause (a), defined consistently with "Payment in Full" set forth in the Existing DIP Credit Agreement) the aggregate outstanding principal amount of all then-outstanding (1) Tranche A Term Loans (as defined in the Existing DIP Credit Agreement), (2) Tranche B Term Loans (as defined in the Existing DIP Credit Agreement), (3) Tranche A-1 Roll-Up Loans (as defined in the Existing DIP Credit Agreement), (4) Tranche A-2 Roll-Up Loans (as defined in the Existing DIP Credit Agreement), (5) L/C Borrowings (as defined in the Existing DIP Credit Agreement), and (6) Specified Second Lien Obligations (as defined in the Original Intercreditor Annex), and all other accrued and unpaid Obligations under (and as defined in) the Existing DIP Credit Agreement (the

"**Existing DIP Obligations**") related to any of the foregoing, in each case as of the Closing Date (collectively, the "**Refinancing**"), (b) to consummate the Replacement L/C Arrangements (including the L/C Cash Collateralization), (c) to pay fees, costs, and expenses related to the Replacement DIP Facilities, the Refinancing and the Replacement L/C Arrangements (including the L/C Cash Collateralization Agreements), and (d) with proceeds remaining following application thereof as described in clauses (a) through (c) above, for such other purposes as are consistent with this Replacement DIP Order and the other Replacement DIP Documents, including, without limitation, the DIP Budget (subject to Permitted Budget Variances) and for Specified Disbursements.  **[SMB: 5/1/17]**

(ii)    All Cash Collateral and all proceeds of the Prepetition Collateral and DIP Collateral (defined below), including proceeds realized from a sale or disposition thereof, or from payment thereon, and all proceeds of the Replacement DIP Facilities, shall only be used and/or applied in accordance with (x) the terms and conditions of this Replacement DIP Order (including the Replacement Intercreditor Annex), (y) the DIP Budget (subject to Permitted Budget Variances) and for Specified Disbursements, and (z) the other Replacement DIP Documents, and for no other purposes.

K.    **Adequate Protection for the Prepetition Second Lien Secured Parties.**  The Prepetition Second Lien Secured Parties have negotiated in good faith regarding the Debtors' use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Debtors' estates and continued operation of the DIP Loan Parties' businesses, in accordance with the terms hereof.  The Prepetition Second Lien Secured Parties have agreed to permit the Debtors to use the Prepetition Collateral, including the Cash Collateral, in accordance with the terms hereof and, except as otherwise permitted hereunder, the DIP Budget (subject to Permitted Budget

Variances) until the occurrence of the Termination Date (defined below), subject to the terms and conditions set forth in this Replacement DIP Order and in the other Replacement DIP Documents, including the protections afforded parties acting in "good faith" under section 363(m) of the Bankruptcy Code. The Prepetition Second Lien Secured Parties are entitled to the adequate protection as and to the extent (subject to their relative priorities) set forth in this Replacement DIP Order and in the other Replacement DIP Documents, pursuant to sections 361, 362 and 363 of the Bankruptcy Code. Based on the Motion and on the record presented to the Court at the Hearing, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) are fair and reasonable, reflect the DIP Loan Parties' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the Prepetition Second Lien Secured Parties' consent thereto; provided, that nothing in this Replacement DIP Order or other Replacement DIP Documents shall (x) be construed as a consent by any Prepetition Second Lien Secured Party that it would be adequately protected in the event any debtor-in-possession financing (including of the type approved hereby) is provided by a third party (i.e., other than the Replacement DIP Lenders in the amounts set forth in the Commitment Letter), or a consent to the terms of any other such financing, including the consent to any lien encumbering the Prepetition Collateral (whether senior or junior) or to the use of Cash Collateral (except under the terms hereof), or (y) prejudice, limit or otherwise impair the rights of the Prepetition Second Lien Secured Parties to seek new, different or additional adequate protection under any circumstances.

L.    **Section 552.** In light of, as applicable, the subordination of the Prepetition Second Priority Liens and the Second Lien Adequate Protection Liens to the DIP Liens and the Carve-Out, and the granting of the DIP Liens on the Prepetition Collateral, the Prepetition Second Lien

Secured Parties are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

M.    **Extension of Financing.**  The DIP Secured Parties have indicated a willingness to provide financing to the DIP Loan Parties in accordance with the Replacement DIP Credit Agreement and the other Replacement DIP Documents (including the DIP Budget (subject to Permitted Budget Variances)) and subject to (i) the entry of this Replacement DIP Order, (ii) approval of each provision of the Replacement DIP Credit Agreement, and (iii) findings by this Court that such financing is essential to the Debtors' estates (and the continued operation of the DIP Loan Parties), that the DIP Secured Parties are good faith financiers, and that the DIP Secured Parties' claims, superpriority claims, security interests and liens and other protections granted (and/or continued) under the DIP Orders and the Replacement DIP Facilities (including the DIP Superpriority Claims and the DIP Liens (subject to their relative priorities as set forth in this Replacement DIP Order, including the Replacement Intercreditor Annex, and in the other Replacement DIP Documents)), will not be affected by any subsequent reversal, modification, vacatur, stay or amendment of, as the case may be, this Replacement DIP Order, the Original DIP Orders, or any other order, as provided in section 364(e) of the Bankruptcy Code.

N.    **Business Judgment and Good Faith Pursuant to Section 364(e).**

(i)    ~~The terms and conditions of the Replacement DIP Facilities (including, without limitation, in respect of the Second Lien Roll Up Loans), the Replacement DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and consideration.~~

(ii)     ~~All obligations incurred, payments made, and transfers or grants (to the~~ ~~extent not otherwise continued) of security set forth in this Replacement DIP Order and the other~~ ~~Replacement DIP Documents by any DIP Loan Party are granted to or for the benefit of the DIP~~ ~~Secured Parties for fair consideration and reasonably equivalent value, and are granted~~ ~~contemporaneously with the making of the loans and/or commitments and other financial~~ ~~accommodations secured thereby.~~

(iii)     The Replacement DIP Facilities and the Replacement DIP Documents were negotiated in good faith and at arm's length among the DIP Loan Parties, the DIP Arrangers, the DIP Agent, the other DIP Secured Parties, and the Prepetition Secured Parties, and the extension of credit

(iv)     ~~The use of the proceeds to be extended~~ under the Replacement DIP Facilities and the Replacement DIP Documents will be so extended in good faith and for valid business purposes and uses~~, as a consequence of which the DIP Secured Parties are entitled to the~~ ~~protection and benefits of section 364(e) of the Bankruptcy Code~~.  **[SMB: 5/1/17]**

O.     **~~Relief Essential; Best Interest.~~**  ~~The relief requested in the Motion (and provided~~ ~~in this Replacement DIP Order) is necessary, essential and appropriate for the continued operation~~ ~~of the DIP Loan Parties' businesses and the management and preservation of their assets and~~ ~~property.  It is in the best interest of the Debtors' estates that the DIP Loan Parties be allowed to~~ ~~enter into the Replacement DIP Documents, effect the Refinancing, incur the DIP Obligations~~ ~~(including, without limitation, in respect of the Second Lien Roll-Up Loans) and the Replacement~~ ~~L/C Obligations (as defined below), continue to grant the liens and claims contemplated herein~~ ~~and under the other Replacement DIP Documents to the DIP Secured Parties and the Prepetition~~ ~~Second Lien Secured Parties, grant the liens and claims contemplated herein and under the~~

~~Replacement L/C Arrangements (including liens and claims pursuant to the L/C Cash
Collateralization Agreements to the Applicable Issuers), and use DIP Collateral and Prepetition
Collateral, including the Cash Collateral, as contemplated herein.~~  **[SMB: 5/1/17]**

P.   **Roll-Up Election**.  On April 5, 2017, the Debtors launched the process (the "**Roll-Up Election**") whereby each holder of Tranche B Roll-Up Dollar Amount (as defined in the Existing DIP Credit Agreement) (such holder, a "**Tranche B Roll-Up Rights Holder**") was provided notice to exercise their right (the "**Tranche B Roll-Up Right**") to substitute and exchange an aggregate principal amount of (x) Prepetition Second Lien Loans and (y) Prepetition Second Lien Notes, in each case held by such Tranche B Roll-Up Rights Holder, equal to such Tranche B Roll-Up Rights Holder's Tranche B Roll-Up Dollar Amount into Tranche B Roll-Up Loans (as defined in the Existing DIP Credit Agreement).  As set forth in that certain Roll-Up Notice Letter (together with the documentation detailed therein as filed with the Court on April 5, 2017 [Docket No. 2741] and supplemented on April 18, 2017 [Docket No. 2796], the "**Roll-Up Election Materials**"), (x) each Tranche B Roll-Up Rights Holder as of 5:00 p.m. (New York City time) on April 3, 2017, was provided a copy of the Roll-Up Election Materials, (y) each Tranche B Roll-Up Rights Holder listed on the register of the Existing DIP Agent as of 5:00 p.m. (New York City time) on April 14, 2017, was permitted to exercise the Tranche B Roll-Up Rights with respect to the Prepetition Second Lien Loans and/or the Prepetition Second Lien Notes held by such Tranche B Roll-Up Rights Holder as of such date, and (z) each Tranche B Roll-Up Rights Holder exercising its Tranche B Roll-Up Right delivered (or caused to be delivered) the fully completed, executed Roll-Up Election Materials, in accordance with the instructions set forth therein, by 5:00 p.m. (New York City time) on April 21, 2017.  In accordance with the Roll-Up Election Materials, the Tranche B Advisors (as defined in the Existing DIP Credit Agreement)

will deliver, in escrow, the Tranche B Roll-Up Effective Date Notice (as defined in the Existing DIP Credit Agreement) to the Existing DIP Agent and the DIP Borrower prior to the closing of the Refinancing, such that, consistent with the Original Final DIP Order and the Existing DIP Credit Agreement, the Tranche B Roll-Up Effective Date (as defined in the Original Final DIP Order), shall occur immediately upon closing of the Refinancing without any further action of any person.

**NOW, THEREFORE,** on the Motion of the Debtors and the record before this Court with respect to the Motion, including the record made during the Hearing, and with the consent of the Debtors, the Prepetition Secured Parties, the DIP Secured Parties and all other parties that objected to the relief requested in the Motion and in this Replacement DIP Order having consented to this Replacement DIP Order or withdrawn their objections, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.    **Motion Granted.**   The Motion is granted in accordance with the terms and conditions set forth in this Replacement DIP Order.  Any objections to the Motion with respect to entry of this Replacement DIP Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled.

2.    **Replacement DIP Facilities and Replacement L/C Arrangements.**

(a)    **DIP Obligations, etc.**

(i)    The Debtors are expressly and immediately authorized and empowered to, and to cause the other DIP Loan Parties (to the extent permitted under applicable law) to, enter into the Replacement DIP Documents, and to incur and to perform the DIP Obligations (including, without limitation, in respect of the Second Lien Roll-Up Loans) in

accordance with and subject to this Replacement DIP Order and the other Replacement DIP Documents, to enter into, execute and/or deliver (to the extent not previously entered into, executed and/or delivered) all Replacement DIP Documents, and all other instruments, certificates, agreements and documents, and to take all actions, which may be reasonably required or otherwise necessary for the performance by the DIP Loan Parties under this Replacement DIP Order and the other Replacement DIP Documents, including the continued effectiveness (or creation, to the extent applicable) and perfection of the DIP Liens described and provided for herein.  The Debtors are hereby authorized to pay, and to cause the other DIP Loan Parties (to the extent permitted under applicable law) to pay, all principal, interest, fees (which shall be payable in accordance with the Commitment Letter, the  Replacement DIP Credit Agreement, and the other Replacement DIP Documents), and expenses, indemnities and other amounts described herein and in the other Replacement DIP Documents as such shall accrue and become due hereunder or thereunder, including, without limitation, the reasonable fees and expenses of (a) White & Case LLP ("**W&C**"), in its capacity as counsel to the DIP Agent and certain of the DIP Arrangers, but solely in such capacity, and any other counsel (including any special, local or "conflicts" counsel), and any replacement of any of the foregoing (collectively, the "**DIP Agent Professionals**"), (b) Akin Gump Strauss Hauer and Feld LLP, as counsel, and Houlihan Lokey and J.P. Morgan Securities LLC ("**JPM**") as financial advisors (subject, in the case of JPM, to the terms of that certain Engagement Letter, dated March 7, 2017, by and among the DIP Borrower, JPM, Akin Gump and the other parties thereto and any required Bankruptcy Court approvals for the making of payments thereunder), and any other advisor or consultant, as may be reasonably required, or counsel (including any special, local or "conflicts" counsel) to the other Specified Lenders and the Roll-Up Lenders (collectively, the "**Specified Advisors**"), (c) Latham & Watkins LLP, as counsel to

the Prepetition First Lien Agent (the "**Prepetition First Lien Agent Professionals**"), including in connection with and/or related to the Filed Committee Adversary Proceeding, and (d) W&C, solely in its capacity as counsel to certain Prepetition First Lien Lenders (together with the Prepetition First Lien Agent Professionals, the "**Prepetition First Lien Professionals**"), including in connection with and/or related to the Filed Committee Adversary Proceeding, in each case as and to the extent provided for herein and in the other Replacement DIP Documents (collectively, all loans, advances, extensions of credit, financial accommodations, fees, expenses and other liabilities, and all other Obligations (including indemnities and similar obligations) under the Replacement DIP Documents, the "**DIP Obligations**").  The Replacement DIP Documents and all DIP Obligations represent, constitute and evidence, as the case may be, valid and binding obligations of the DIP Loan Parties, enforceable against the DIP Loan Parties, their estates and any successors thereto in accordance with their terms (subject only to the last sentence of clauses (b)(iv) and (b)(v) of this paragraph 2), and to their relative priorities as set forth in this Replacement DIP Order and the other Replacement DIP Documents).  All obligations incurred, payments made, and transfers or grants of security set forth in this Replacement DIP Order and the other Replacement DIP Documents by any DIP Loan Party are granted to or for the benefit of the DIP Secured Parties for fair consideration and reasonably equivalent value, and are granted contemporaneously with the making of the loans and/or commitments and other financial accommodations secured thereby.  No obligation incurred, payment made, transfer or grant of security set forth in the Replacement DIP Documents by any DIP Loan Party as approved under this Replacement DIP Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim (subject only to the last sentence of clauses (b)(iv)

and (b)(v) of this paragraph 2).  The term of the Replacement DIP Facilities commences on the

Closing Date and shall continue until the Termination Date, subject to the terms and conditions set

forth in this Replacement DIP Order and in the other Replacement DIP Documents, including the

protections afforded a party acting in good faith under section 364(e) of the Bankruptcy Code.

        (ii)      The Debtors are expressly and immediately authorized and

empowered to, and to cause the other DIP Loan Parties (to the extent permitted under applicable

law) to, enter into the L/C Cash Collateralization Agreements and other Replacement L/C

Arrangements, and to incur and to perform the obligations under the L/C Cash Collateralization

Agreements and the other Replacement L/C Arrangements, in accordance with and subject to this

Replacement DIP Order and the L/C Cash Collateralization Agreements and Replacement L/C

Arrangements, to enter into, execute and/or deliver all L/C Cash Collateralization Agreements and

Replacement L/C Arrangements, and all other instruments, certificates, agreements and

documents, and to take all actions, which may be reasonably required or otherwise necessary for

the performance by the DIP Loan Parties under the L/C Cash Collateralization Agreements and

Replacement L/C Arrangements, including the creation and perfection of the L/C Cash Collateral

Liens described and provided for herein.  The Debtors are hereby authorized to pay, and to cause

the other DIP Loan Parties (to the extent permitted under applicable law) to pay, and each

Applicable Issuer (and, if applicable, effective upon the entry into any relevant Replacement L/C

Arrangement with an Applicable L/C Beneficiary, such Applicable L/C Beneficiary) is hereby

authorized to apply the applicable Specified L/C Collateral toward the payment of, all principal,

interest, unreimbursed amounts, fees (which shall be payable in accordance with the Replacement

DIP Credit Agreement, the L/C Cash Collateralization Agreements, or the Replacement L/C

Arrangements), and expenses, indemnities and other amounts described herein and in the L/C Cash

Collateralization Agreements and Replacement L/C Arrangements, in each case as such shall accrue and become due hereunder or thereunder, including, without limitation, the reasonable fees and expenses of legal counsel to each Applicable Issuer in accordance with the applicable L/C Cash Collateralization Agreement (collectively, the "**Applicable Issuer Professionals**"),  in each case as and to the extent provided for herein and in the L/C Cash Collateralization Agreements and the other Replacement L/C Arrangements (collectively, all such fees, expenses, other liabilities, and other obligations (including indemnities and similar obligations)  under the L/C Cash Collateralization Agreements and other Replacement L/C Arrangements, the "**Replacement L/C Obligations**").   The L/C Cash Collateralization Agreements and all Replacement L/C Obligations represent, constitute and evidence, as the case may be, valid and binding obligations of the DIP Loan Parties, enforceable against the DIP Loan Parties, their estates and any successors thereto in accordance with their terms, and to their relative priorities as set forth in this Replacement DIP Order and the other L/C Cash Collateralization Agreements).   All obligations incurred, payments made, and transfers or grants of security set forth in this Replacement DIP Order, the other Replacement DIP Documents or the L/C Cash Collateralization Agreements and other Replacement L/C Arrangements with respect to the Replacement L/C Obligations by any DIP Loan Party are granted to or for the benefit of the Applicable Issuers (and, (x) to the extent applicable, the Existing DIP Secured Parties and (y) if applicable, effective upon the entry into any relevant Replacement L/C Arrangement with an Applicable L/C Beneficiary, such Applicable L/C Beneficiary) for fair consideration and reasonably equivalent value, and are granted contemporaneously with the making of the financial accommodations secured thereby.   No obligation incurred, payment made, transfer or grant of security set forth in the Replacement DIP Documents or the L/C Cash Collateralization Agreements by any DIP Loan Party as approved

under this Replacement DIP Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.   The term of the L/C Cash Collateralization Agreements commences on the Closing Date and shall continue (i) with respect to each Applicable Issuer, until the business day following the later of the date on which (A) no Existing L/C issued by such Applicable Issuer is outstanding and (B) the Applicable Issuer has no further obligations to honor any drawing (or make any payment in respect of any drawing) in respect of any Existing L/C and the Applicable Issuer has reflected the same in its records in accordance with its customary policies and procedures) and (ii) with respect to any Applicable L/C Beneficiary party to any other Replacement L/C Arrangement, until the obligations supported thereby have been satisfied or the relevant cash collateralization is no longer required, in any such case, in accordance with the terms of the Replacement L/C Arrangement, but in any event no later than the Maturity Date, in each case, subject to the terms and conditions set forth in this Replacement DIP Order and in the other Replacement DIP Documents and L/C Cash Collateralization Agreements, including the protections afforded a party acting in good faith under section 364(e) of the Bankruptcy Code.

(b)    **Authorization to Borrow, etc.**   In order to continue to operate the Company's business, subject to the terms and conditions of this Replacement DIP Order and the other Replacement DIP Documents:

(i)    The DIP Borrower is hereby authorized to borrow under the Replacement New Money DIP Facility, and the Debtor DIP Guarantors are authorized to, and to cause the other DIP Guarantors to, guarantee repayment of, all DIP Obligations in respect of the Replacement New Money DIP Facility, up to an aggregate principal amount of $640,000,000

incurred pursuant to, and in accordance with, this Replacement DIP Order and the other Replacement DIP Documents.

(ii)    The DIP Borrower is hereby authorized and directed to use the proceeds of the Replacement New Money DIP Loans to (A) consummate the Refinancing and the Replacement L/C Arrangements (including the L/C Cash Collateralization), (B) to pay fees, costs, and expenses related to the Replacement DIP Facilities and the Refinancing, (C) to pay fees, costs, and expenses related to the L/C Cash Collateralization Agreements and the Replacement L/C Agreements, and (D) with proceeds remaining following application thereof as described in clauses (A) through (C) above, for such other purposes as are consistent with the DIP Budget (subject to Permitted Budget Variances) and for Specified Disbursements.

(iii)    For the avoidance of doubt, and notwithstanding the occurrence of the Refinancing (and without limiting Section 10.26 of the Replacement DIP Credit Agreement), all indemnification and reimbursement obligations under the Existing DIP Facilities (including, without limitation, reimbursement and indemnity obligations under Section 10.04 of the Existing DIP Credit Agreement incurred prior to, on or after entry of this Replacement DIP Order) and the Original Final DIP Order (including, without limitation, with respect to any claims or any pending litigation or other proceedings against any Agent, any Lenders and/or any L/C Issuers (each as defined in the Existing DIP Credit Agreement, and solely in such respective capacities, the "**Existing Indemnified Parties**"), and any other

contingent obligations of the DIP Borrower and the other DIP Loan Parties that may be owed to any such Existing Indemnified Parties (solely in such respective capacities) under the express terms of the Existing DIP Credit Agreement and the other Existing DIP Documents, in each case  pursuant to provisions expressly stated to survive any repayment under, or termination of, the Existing DIP Facilities shall survive and, commencing as of the date of entry of this Replacement DIP Order, constitute DIP Obligations under the Replacement New Money DIP Facility.

(iv)      This Replacement DIP Order shall be final as of the date hereof regarding the continued validity, extent and enforceability of the Tranche A Roll-Up Loans (as defined in the Existing DIP Credit Agreement) and the liens and claims in respect thereof.  Notwithstanding the foregoing (but subject to the provisions of paragraph 9 hereof and the terms of the Replacement Intercreditor Annex), the Court may, after notice and a hearing, determine to unwind all or a portion of any postpetition protection provided to the Tranche A Lenders (as defined in the Existing DIP Credit Agreement) by virtue of the Tranche A Roll-Up Loans or any pay down of the Tranche A Roll-Up Loans, as applicable, solely in the event (1) there is a timely and successful challenge in the Filed Committee Adversary Proceeding to the validity, enforceability, extent, perfection, or priority of the Prepetition First Lien Claims or the Prepetition First Priority Liens, or a determination that the Prepetition First Lien Claims were undersecured as of the Petition Date, and (2) the Tranche A Roll-Up Loans unduly advantage

the Tranche A Roll-Up Lenders (as defined in the Existing DIP Credit Agreement).  Notwithstanding anything to the contrary set forth in this Replacement DIP Order, the Replacement L/C Obligations, the L/C Cash Collateralization, and any other Replacement L/C Arrangements, and all obligations of the DIP Borrower and the other DIP Loan Parties and all liens, claims and rights of the Applicable Issuers (and, if applicable, effective upon the entry into any relevant Replacement L/C Arrangement with an Applicable L/C Beneficiary, such Applicable L/C Beneficiary) thereunder and under this Replacement DIP Order, including, without limitation, the L/C Blocked Account, the L/C Superpriority Claims, the L/C Cash Collateral Liens, and the Specified L/C Collateral (as such terms are defined herein), are valid and enforceable in all respects and shall not be subject to challenge by any party in interest including, without limitation, through the Filed Committee Adversary Proceeding or the OID Objections.

(v)        The DIP Borrower is hereby authorized to incur, and the Debtor DIP Guarantors are authorized to, and to cause the other DIP Guarantors to, guarantee repayment of, any DIP Obligations in respect of the Second Lien Roll-Up Loans incurred pursuant to, and in accordance with, this Replacement DIP Order and the other Replacement DIP Documents.  This Replacement DIP Order shall be final as of the date hereof regarding the continued validity, extent and enforceability of the Tranche B Roll-Up Loans (as defined in the Existing DIP Credit Agreement) (including the Second Lien Roll-Up Loans) and the liens and claims in respect thereof.

Notwithstanding the foregoing (but subject to the provisions of paragraph 9 hereof), the Court may, after notice and a hearing, determine to unwind all or a portion of any postpetition protection provided to the Tranche B Lenders (as defined in the Existing DIP Credit Agreement) or the Roll-Up Lenders by virtue of the Tranche B Roll-Up Loans, the Roll-Up Loans or any pay down of the Tranche B Roll-Up Loans  (in each case, including Second Lien Roll-Up Loans), as applicable, in the event (1) there is a timely and successful challenge in the Filed Committee Adversary Proceeding or the OID Objections to the validity, enforceability, extent, perfection, or priority of more than $600 million (in the aggregate) of the Prepetition Second Lien Claims or the Prepetition Second Priority Liens, or a determination that more than $600 million (in the aggregate) of the Prepetition Second Lien Claims were undersecured as of the Petition Date, and (2) the Tranche B Roll-Up Loans unduly advantage the Tranche B Roll-Up Lenders (as defined in the Existing Credit Agreement).

(c)    **Conditions Precedent.**  The DIP Secured Parties shall have no obligation to make any Replacement New Money DIP Loans or any other financial accommodation hereunder or under the other Replacement DIP Documents (and the Debtors shall not make any request therefor) unless all conditions precedent to making Replacement New Money DIP Loans under the Replacement DIP Documents have been satisfied or waived in accordance with the terms of the Replacement DIP Documents.

(d)    **DIP Collateral; Specified L/C Collateral.**  As used herein, "DIP Collateral" shall mean, subject to the limitations and exceptions set forth in this paragraph 2(d)

and the Committee Settlement Annex, all now owned or hereafter acquired assets and property, whether real or personal, tangible or intangible, of the DIP Borrower and the Secured DIP Guarantors as, and to the extent, set forth in the Replacement DIP Documents, including, without limitation, all Prepetition Collateral, all assets and property of the DIP Borrower and the Secured DIP Guarantors pledged under the Replacement DIP Documents to secure the DIP Obligations, and all of their respective cash, investments of such cash, inventory, accounts receivable, including intercompany accounts (and all rights associated therewith), other rights to payment whether arising before or after the Petition Date, contracts, contract rights, chattel paper, goods, investment property, inventory, accounts, deposit accounts (including, without limitation, any DIP Facilities Blocked Accounts, and any other cash collection, "lockbox" and "concentration" accounts provided for in the Replacement DIP Documents), "core concentration accounts," "cash collateral accounts", and in each case all amounts on deposit therein from time to time, equity interests, including all Equity Interests of their respective direct and indirect domestic subsidiaries and certain of their respective direct foreign subsidiaries, in each case, as and to the extent set forth in the Replacement DIP Documents, securities accounts, securities entitlements, securities, commercial tort claims, books, records, plants, equipment, general intangibles, documents, instruments, interests in leases and leaseholds, interests in real property (provided that no interests in real property of any Debtor DIP Loan Party shall constitute DIP Collateral until clause (d) of Schedule 6.14(b) of the Replacement DIP Credit Agreement has been satisfied with respect to such real property, and from and after the satisfaction or waiver thereof such real property shall automatically and without further action by any DIP Loan Party, any DIP Secured Party or the Bankruptcy Court constitute DIP Collateral of such Debtor DIP Loan Party for all purposes of the Replacement DIP Documents), fixtures, payment intangibles, tax or other refunds, insurance

proceeds (subject to the terms of the Committee Settlement Annex), letters of credit, letter of credit rights, supporting obligations, machinery and equipment, patents, copyrights, trademarks, tradenames, other intellectual property, all licenses therefor, any claims and causes of action of the DIP Borrower and the Secured DIP Guarantors of any kind or nature, and all proceeds, rents, profits, products and substitutions, if any, of any of the foregoing.  The DIP Collateral shall (x) not include any causes of actions for preferences, fraudulent conveyances, and other avoidance power claims under sections 502(d), 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code (the "**Avoidance Actions**") or proceeds thereof, (y) not include any Excluded Property, and (z) be subject to any other limitations expressly set forth in the Replacement DIP Documents, including, without limitation, Sections 6.14 and 6.17 of the Replacement DIP Credit Agreement.  For the avoidance of doubt, notwithstanding the exclusion of Avoidance Actions as set forth in the foregoing sentence and (x) solely for that portion of the Replacement DIP Facilities that replaces the Tranche B Roll-Up Loans (as defined in the Existing DIP Credit Agreement) unless the Court determines to unwind the Tranche B Roll-Up Loans, and (y) otherwise to the extent provided in the Committee Settlement Annex, the DIP Collateral shall include D/O Insurance Proceeds (as defined, and to the extent set forth, in  the Committee Settlement Annex)  and  other  insurance proceeds,  subject to the terms of the Committee Settlement Annex.  DIP Collateral shall only include the proceeds of any D/O Policy (as defined in the Committee Settlement Annex) or any other insurance policy solely to the extent of the DIP Borrower's and the Secured DIP Guarantors' respective rights, title and interest in, to and under such D/O Policy or other insurance policy.  Notwithstanding anything to the contrary in this Replacement DIP Order, the Replacement DIP Documents, or the Committee Settlement Annex, (a) inclusion of an insurance policy within the definition of D/O Policies (as such term is used in the Committee Settlement

Annex) shall not constitute any finding or determination as to whether such insurance policy is or is not property of the estate or DIP Collateral; and (b) nothing in this Replacement DIP Order, the Replacement DIP Documents, or the Committee Settlement Annex shall (i) constitute a finding or determination that the proceeds of any D/O Policy or any other insurance policy are, or are not, property of the DIP Loan Parties or their respective estates (and the rights of all parties in interest to assert that such policy or proceeds are, or are not, property of the DIP Loan Parties or their respective estates are hereby preserved) or (ii) affect, impair, prejudice or otherwise alter the terms and conditions of any D/O Policy, any other insurance policy, any related agreements, and/or any related reservation(s) of rights in connection therewith, including the rights of any other named or contemplated beneficiary or other party under any policy.    Notwithstanding any provision of the Replacement DIP Credit Agreement, this Replacement DIP Order or any other DIP Document to the contrary, no Subsidiary of the DIP Borrower: (i) shall be, or later be required to become, a Loan Party or Guarantor, to the extent such Subsidiary is contractually prohibited from doing so; (ii) shall be required to grant a security interest, pledge or otherwise encumber any of its assets, to the extent such Subsidiary is contractually prohibited from doing so with respect to any such asset; or (iii) shall incur any indebtedness, to the extent such Subsidiary is contractually prohibited from doing so (unless, in each case, the DIP Borrower or the applicable Subsidiary has obtained consent from the applicable contractual counterparty to take any such action after using commercially reasonable efforts to obtain the same and only so long as such prohibition was not created solely in contemplation of the Replacement DIP Documents or this Replacement DIP Order).    For the avoidance of doubt, the interests of the Debtors in Silver Ridge Power LLC are not included in DIP Collateral. Notwithstanding any provision of this Replacement DIP Order, the Replacement DIP Credit

Agreement, or any other Replacement DIP Document to the contrary, DIP Collateral shall not include the L/C Blocked Accounts and the funds contained as cash collateral therein (collectively, the "**Specified L/C Collateral**"); <u>provided</u> that, immediately upon the return to the DIP Borrower of (i) any such funds previously constituting Specified L/C Collateral, pursuant to, or as required by, any Replacement DIP Document or L/C Cash Collateralization Agreement (to the extent such funds are not applied for any other Replacement L/C Arrangement permitted under the Replacement DIP Credit Agreement) and/or (ii) any cash collateral provided by a DIP Loan Party in connection with (and subject to the terms of any Replacement L/C Arrangement permitted under the Replacement DIP Credit Agreement), in each case, all such returned funds shall at such time, without any further action or authorization required from the Court or any other party, no longer constitute Specified L/C Collateral and shall instead constitute DIP Collateral and must be immediately deposited by the DIP Loan Parties into a DIP Facilities Blocked Account under the sole dominion and control of the DIP Agent in accordance with the terms of the Replacement DIP Credit Agreement, subject to (x) the DIP Liens and DIP Superpriority Claims (each as defined below) and (y) the Second Lien Adequate Protection Liens and Second Lien Adequate Protection Claims (each as defined below), in each case, subject to their relative priorities as set forth below (and in the Replacement Intercreditor Annex), and for the avoidance of doubt, (1) such returned funds shall at such time (without any further action or authorization required from the Court or any other party) no longer be subject to the L/C Cash Collateral Liens or L/C Superpriority Claims, and (2) any claims that the DIP Loan Parties may have to the return of such funds otherwise constituting Specified L/C Collateral or other cash collateral, shall constitute DIP Collateral and shall be subject to the DIP Liens, DIP Superpriority Claims, Second Lien Adequate Protection

Liens and Second Lien Adequate Protection Claims, in each case, subject to their relative priorities as set forth below and in the Replacement Intercreditor Annex) .

(e)     **DIP Liens; L/C Cash Collateral Liens.**  Effective immediately upon the entry of this Replacement DIP Order in respect of the Replacement New Money DIP Facility and the Second Lien Roll-Up Loans, in each case subject to the Committee Settlement Annex and the Carve-Out as set forth more fully herein and in the other Replacement DIP Documents, the DIP Agent for the benefit of the DIP Secured Parties and in order to secure the DIP Obligations continues to be granted the following security interests and liens granted under the Original DIP Orders, which shall continue to be valid, binding, fully perfected, continuing, enforceable and non-avoidable (all liens and security granted and/or continued to be granted under this Replacement DIP Order to the DIP Agent for the benefit of the respective DIP Secured Parties in respect of the DIP Obligations under the Replacement New Money DIP Facility, and the Second Lien Roll-Up Loans, subject to their relative priorities as set forth below and in the Replacement Intercreditor Annex, the "**DIP Liens**"):

(i)     pursuant to sections 364(c)(2) of the Bankruptcy Code and the Security Documents, first priority liens on and security interests in all DIP Collateral that was not encumbered by valid, enforceable, perfected and non-avoidable liens as of the Petition Date; and

(ii)     pursuant to sections 364(c)(3) and 364(d) of the Bankruptcy Code and the Security Documents, priming liens on and security interests in all other DIP Collateral, which liens and security interests shall in each case be (x) junior only to any (1) pre-existing liens as of the Petition Date of a third party, *i.e.*, not any Prepetition Secured Parties (a "**Third Party**

**Lienholder**") on the DIP Collateral, but solely to the extent that such liens

and security interests of Third Party Lienholders were, in each case, as of

the Petition Date, valid, enforceable, perfected and non-avoidable liens or

were perfected subsequent to the Petition Date as permitted by section

546(b) of the Bankruptcy Code, and which were senior to the Prepetition

First Priority Liens and Prepetition Second Priority Liens, and were

permitted by the terms of the applicable Prepetition Debt Documents (the

"**Senior Third Party Liens**"), and (2) Permitted Prior Liens on the DIP

Collateral, and (y) senior to all other liens on and security interests in the

DIP Collateral, including, without limitation, the Prepetition First Priority

Liens, the Prepetition Second Priority Liens and the Second Lien Adequate

Protection Liens, and the liens (other than Permitted Prior Liens) of all Third

Party Lienholders which are *pari passu* with or junior to and subject to the

Prepetition First Priority Liens and/or the Prepetition Second Priority Liens.

Notwithstanding anything to the contrary contained in this Replacement DIP Order or any other

Replacement DIP Document, all DIP Liens securing DIP Obligations in respect of the

Replacement New Money DIP Facility shall be senior and prior to any DIP Liens securing any

Second Lien Roll-Up Loans.  Effective immediately upon the entry of this Replacement DIP

Order, each Applicable Issuer (and, if applicable, effective upon the entry into any relevant

Replacement L/C Arrangement with an Applicable L/C Beneficiary, such Applicable L/C

Beneficiary) is granted pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy

Code and the L/C Cash Collateralization Agreements, priming liens on and security interests in all

Specified L/C Collateral (the "**L/C Cash Collateral Liens**"), which liens and security interests shall be senior to all other liens on and security interests in such Specified L/C Collateral.

(f)    **DIP Financing Liens Senior to Other Liens.**  Effective immediately upon entry of  this Replacement DIP Order in respect of the Replacement New Money DIP Facility and the Second Lien Roll-Up Loans, the DIP Liens shall secure all of the DIP Obligations in respect of the Replacement New Money DIP Facility and the Second Lien Roll-Up Loans, subject to their relative priorities set forth in this Replacement DIP Order and the Replacement Intercreditor Annex, and such liens (and any superpriority claims and other senior liens, including adequate protection liens, granted hereunder or granted under the Original DIP Orders and continued hereunder) have, and shall continue at all times to have, a higher priority and remain senior to the rights of the Debtors, any chapter 7 or chapter 11 trustee, and any secured, administrative priority, unsecured or other claims of any party in these Chapter 11 Cases under the Bankruptcy Code (subject only to any Senior Third Party Liens, Permitted Prior Liens or the Carve-Out), and the DIP Liens and adequate protection liens granted herein or granted under the Original DIP Orders and continued herein shall not become subject, junior, or subordinated to any "priming" or other lien, nor made *pari passu* with any other lien, under Bankruptcy Code section 364 or otherwise, in these Chapter 11 Cases (subject only to any Senior Third Party Liens, Permitted Prior Liens or the Carve-Out), including to (1) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (2) any lien or security interest (other than Senior Third Party Liens and Permitted Prior Liens) existing on or arising on or after the Petition Date (but shall be subject to the Carve Out), or (3) other than as expressly set forth herein, including the Replacement Intercreditor Annex, any other lien, claim or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.  The DIP Liens

(subject to their relative priorities) and the Second Lien Adequate Protection Liens are and shall continue to be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (such Chapter 11 Cases or proceedings, "**Successor Cases**"), and/or upon the dismissal of any of the Chapter 11 Cases.  The DIP Liens and the Second Lien Adequate Protection Liens shall not be subject to section 510 of the Bankruptcy Code, to the "equities of the case" exception of section 552 of the Bankruptcy Code, or to section 506(c) of the Bankruptcy Code, or (and solely with respect to the Second Lien Adequate Protection Liens, subject to paragraph 9 hereto) sections 549, 550 or 551 of the Bankruptcy Code.

   (g) **DIP Superpriority Claims and L/C Superpriority Claims.**  (i) Effective immediately upon the entry of this Replacement DIP Order in respect of the Replacement New Money DIP Facility and the Second Lien Roll Up Loans, subject to the Carve-Out, the DIP Agent, for the benefit of the respective DIP Secured Parties is hereby granted (or continues to be granted) pursuant to section 364(c)(1) of the Bankruptcy Code, subject to their relative priorities as set forth below, allowed claims against the Debtor DIP Loan Parties in the amount of the respective DIP Obligations (all such claims granted to the DIP Agent for the benefit of the respective DIP Secured Parties in respect of the DIP Obligations under the Replacement New Money DIP Facility and the Second Lien Roll-Up Loans the "**DIP Superpriority Claims**"), which, subject to the Carve-Out and the Committee Settlement Annex (including the provision regarding Excess Non-Prepetition 1L/2L Obligor Sale Proceeds (as defined therein)), shall be (or shall continue to be) payable from and have recourse to all applicable DIP Collateral, and which shall be (or shall continue to be) enforceable against each of the DIP Loan Parties (jointly and severally), with priority over any and

all administrative expenses and all other claims asserted against the Debtors now existing or hereafter arising of any kind whatsoever, including all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including sections 105, 326, 327, 328, 330, 331, 363, 364, 365, 503, 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which DIP Superpriority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and shall be payable from and have recourse to all DIP Collateral, whether now existing or hereafter acquired, of the Debtor DIP Loan Parties and all proceeds thereof (excluding Avoidance Actions and any proceeds thereof). Other than the Carve-Out and as expressly provided herein, including in paragraph 11 hereof, the Replacement Intercreditor Annex, and the Committee Settlement Annex (to the extent applicable), no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings or in any Successor Cases, and no priority claims are, or will be, senior to, prior to, or *pari passu* with the DIP Liens, the DIP Superpriority Claims, or any of the DIP Obligations, or with any other claims of the DIP Secured Parties arising hereunder or under the other Replacement DIP Documents, or otherwise in connection with the Replacement DIP Facilities. Notwithstanding anything to the contrary contained in this Replacement DIP Order or any other Replacement DIP Document, the DIP Superpriority Claim in respect of the Replacement New Money DIP Facility shall be senior and prior to any DIP Superpriority Claim in respect of any Second Lien Roll-Up Loans.

(ii)        Effective immediately upon the entry of this

Replacement DIP Order in respect of the L/C Cash Collateralization

Agreements and the other Replacement L/C Arrangements, each Applicable

Issuer (and, if applicable, effective upon the entry into any relevant

Replacement L/C Arrangement with an Applicable L/C Beneficiary, such

Applicable L/C Beneficiary) is hereby granted pursuant to section 364(c)(1)

of the Bankruptcy Code allowed claims against the DIP Borrower in the

amount of the Replacement L/C Obligations (all such claims granted to each

Applicable Issuer (and, if applicable, an Applicable L/C Beneficiary) in

respect of the Replacement L/C Obligations under the applicable L/C Cash

Collateralization Agreements and the other Replacement L/C

Arrangements, the "**<u>L/C Superpriority Claims</u>**"), which shall be payable

from and have recourse to all Specified L/C Collateral, and which shall be

enforceable against the DIP Borrower with priority over any and all

administrative expenses and all other claims asserted against the Debtors

now existing or hereafter arising of any kind whatsoever, including all other

administrative expenses of the kind specified in sections 503(b) and 507(b)

of the Bankruptcy Code, and over any and all other administrative expenses

or other claims arising under any other provision of the Bankruptcy Code,

including sections 105, 326, 327, 328, 330, 331, 363, 364, 365, 503, 506(c),

507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code, whether or not

such expenses or claims may become secured by a judgment lien or other

non-consensual lien, levy, or attachment, which L/C Superpriority Claims

shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and shall be payable from and have recourse only to all Specified L/C Collateral, whether now existing or hereafter acquired, of the Debtor DIP Loan Parties and all proceeds thereof.

3.      **Authorization and Approval to Use Cash Collateral and Proceeds of Replacement New Money DIP Facility.**  Subject to the terms and conditions of this Replacement DIP Order and the other Replacement DIP Documents, and to the adequate protection granted to (or continued) or for the benefit of the Prepetition Second Lien Secured Parties as hereinafter set forth, the DIP Loan Parties are each authorized to (a) use the Cash Collateral and (b) request and use proceeds of the Replacement New Money DIP Facility, in each case of clauses (a) and (b), in compliance with the terms and covenants set forth in the Replacement DIP Credit Agreement, including such terms and covenants relating to the DIP Budget.  The DIP Budget may only be amended, supplemented, modified, restated, replaced, or extended in accordance with the Replacement DIP Credit Agreement.  Notwithstanding anything herein to the contrary, subject only to the Debtors' rights under paragraph 19(b), the Debtors' right to request or use proceeds of Replacement New Money DIP Loans or to use Cash Collateral shall terminate on the Termination Date.  Nothing in this Replacement DIP Order or in the other Replacement DIP Documents shall authorize the disposition of any assets of the Debtors or their estates or other proceeds resulting therefrom outside the ordinary course of business, except as permitted herein or therein (subject to any required Court approval).

4.      **Adequate Protection for Prepetition Second Lien Secured Parties.**  As adequate protection for the interests of the Prepetition Second Lien Secured Parties in the Prepetition

Collateral (including Cash Collateral), the Prepetition Second Lien Agents, for the benefit of the

applicable Prepetition Second Lien Secured Parties, shall receive (or shall continue to receive)

adequate protection as follows (which, for the avoidance of doubt, shall not extend to any portion

of the Prepetition Second Lien Secured Claims that are deemed to be (or are) exchanged for the

Second Lien Roll-Up Loans):

(a)        **Second Lien Adequate Protection Liens.**  To the extent of, and in an

aggregate amount equal to, any diminution in value of their interests in the Prepetition Collateral,

from and after the Petition Date, calculated in accordance with section 506(c) of the Bankruptcy

Code, resulting from, among other things, the use, sale or lease by the Debtors of the Prepetition

Collateral (including the use of Cash Collateral), the granting of the DIP Liens, and the

subordination of the Prepetition Second Priority Liens thereto and to the Carve-Out, and the

imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code

(collectively, "**Diminution in Value**"), pursuant to sections 361, 363(e) and 364(d) of the

Bankruptcy Code, the Prepetition Second Lien Collateral Trustee, for the benefit of the Prepetition

Second Lien Secured Parties, shall have replacement security interests in and liens upon (the

"**Second Lien Adequate Protection Liens**") all of the DIP Collateral, which Second Lien

Adequate Protection Liens shall be junior and subject to the DIP Liens, any Senior Third Party

Liens, and any Permitted Prior Lien.

(b)        **Second Lien Adequate Protection Claims.**  To the extent of any aggregate

Diminution in Value of the Prepetition Second Lien Secured Parties' interests in the Prepetition

Collateral, the Prepetition Second Lien Secured Parties shall have, subject in each case to the

payment of the Carve-Out, an allowed administrative expense claim against each of the Debtor

DIP Loan Parties (the "**Second Lien Adequate Protection Claim**"), as provided for in section

507(b) of the Bankruptcy Code, in each case payable from and having recourse to all DIP Collateral of the Debtor DIP Loan Parties; provided, that the Prepetition Second Lien Secured Parties shall not receive or retain any payments, property, distribution or other amounts in respect of the Second Lien Adequate Protection Claim unless and until the DIP Obligations and (without duplication) the DIP Superpriority Claims have indefeasibly been Paid in Full; and provided further that the Second Lien Adequate Protection Claim shall be junior and subject to the DIP Superpriority Claims.

(c)    **Adequate Protection Payments, etc.**  All accrued and unpaid interest on the applicable Prepetition Second Lien Obligations (solely to the extent of any Prepetition Second Lien Obligations that do not, pursuant to this Replacement DIP Order or the Original DIP Orders, constitute Second Lien Roll-Up Loans, calculated at the applicable non-default rates provided for in the respective Prepetition Second Lien Documents, shall (x) upon entry of this Replacement DIP Order, to the extent incurred prior to the Closing Date, and (y) thereafter, monthly in arrears, in each case be capitalized and added to the unpaid principal amount of the Prepetition Second Lien Obligations; provided that in the event of a final determination that the Prepetition Second Lien Secured Parties are undersecured as of the Petition Date, capitalized interest received pursuant to this paragraph 4(c) may be disgorged.  Notwithstanding the foregoing, any accrued and/or capitalized interest pursuant to this paragraph 4(c) with respect to any Prepetition Second Lien Obligations that are subsequently replaced with Second Lien Roll-Up Loans shall be subject to reduction pursuant to Section 2.08(d) of the Replacement DIP Credit Agreement.

(d)    Promptly upon receipt of invoices therefor, the Debtors shall pay in connection with the negotiation, execution, administration and monitoring of the Prepetition Second Lien Documents, the Replacement DIP Documents and/or the Replacement DIP Facilities

as of the Petition Date; and thereafter, without duplication of any amounts to be paid pursuant to

paragraph 21(b) hereof, (x) all reasonable and documented fees, costs and expenses of the

Prepetition Second Lien Administrative Agent, Prepetition Second Lien Notes Trustee, and

Prepetition Second Lien Collateral Trustee, including, in each case, all reasonable and documented

professional and advisory fees, costs and expenses of a single primary legal counsel (and, to the

extent necessary, any local counsel) on behalf of each of the Prepetition Second Lien

Administrative Agent, Prepetition Second Lien Notes Trustee, and Prepetition Second Lien

Collateral Trustee, respectively (collectively, the "**Prepetition Second Lien Agents'**

**Professionals**"), and (y) all reasonable and documented professional and advisory fees, costs and

expenses of advisors to the Tranche B Lenders/Steering Committee, including, without limitation,

the reasonable and documented fees and expenses of any legal or financial advisor or consultant,

as may be reasonably required, in each case as determined by holders of a majority in principal

amount of the Prepetition Second Lien Claims, and any counsel (including local, special, or

"conflicts" counsel), and any replacement of any of the foregoing (the "**Tranche B**

**Lenders/Steering Committee Professionals**") in each case as determined by holders of a majority

in principal amount of the Prepetition Second Lien Claims.  Payments of any amounts set forth in

this clause (d) shall not be subject to disgorgement.

      5.     **Monitoring of Collateral.**  Without limiting Section 6.11 of the Replacement DIP

Credit Agreement, (w) the DIP Agent, (x) the Specified Advisors, (y) the Tranche B

Lenders/Steering Committee, and (z) the applicable Prepetition Second Lien Agent (so long as any

action taken by such Prepetition Second Lien Agent under this paragraph 5 is taken at the direction

of the applicable requisite lenders), and in each case their respective consultants and advisors as

identified herein and in the Replacement DIP Credit Agreement, shall be given reasonable access

to the Debtors' books, records, assets and properties for purposes of monitoring the Debtors'

business and the value of the DIP Collateral (including Prepetition Collateral), and shall be

permitted to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral

examinations and inventory appraisals in respect of the DIP Collateral, the results of which shall

be shared with the Committee on a confidential basis.

6.    **Financial Reporting, etc.**    The Debtors shall provide the DIP Agent, the

Replacement DIP Lenders, the Prepetition Second Lien Agents, the Tranche B Lenders/Steering

Committee (in each case of the foregoing, subject to applicable confidentiality agreements), and

the Committee (subject to the applicable confidentiality provisions in its bylaws), with the monthly

financial reporting given to the United States Trustee.  The DIP Borrower shall provide the DIP

Agent and Specified Advisors all of the financial reporting as required under and in all instances

consistent with the Replacement DIP Documents, subject to any waivers or extensions therefor in

accordance with the Replacement DIP Credit Agreement.  The DIP Borrower shall provide each

of the Prepetition Second Lien Agents, the Tranche B Lenders/Steering Committee (in each case,

subject to applicable confidentiality agreements), and the Committee (subject to the applicable

confidentiality provisions in its bylaws), copies of all of the financial reporting delivered from time

to time to the DIP Agent and the Specified Advisors pursuant to the Replacement DIP Documents.

7.    **Subordination of Intercompany, Affiliate Liens.**    All intercompany or affiliate

claims (and, to the extent secured, all such liens) of the Debtors and other DIP Loan Parties

(including any such claims or liens resulting from the Replacement DIP Documents), if any (other

than any liens granted to the DIP Secured Parties), will be contractually subordinated to the

obligations under the Replacement DIP Documents, the Second Lien Adequate Protection Liens

and Second Lien Adequate Protection Claims, and the liens granted to the Prepetition Second Lien

Secured Parties, on the terms set forth in the Intercompany Note or such other terms permitted under the Replacement DIP Credit Agreement.

8.      **L/C Cash Collateral Liens, DIP Lien and Adequate Protection Replacement Lien Perfection.** This Replacement DIP Order shall be sufficient and conclusive evidence of (or of the continuation of) the validity, perfection and priority of the respective DIP Liens, the Adequate Protection Liens (in each case, subject to their relative priorities and to paragraph 9 of this Replacement DIP Order), and the L/C Cash Collateral Liens, without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the respective DIP Liens, the Adequate Protection Liens, and the respective L/C Cash Collateral Liens, or to entitle the DIP Liens, the Adequate Protection Liens, and the respective L/C Cash Collateral Liens to the priorities granted herein.  Notwithstanding the foregoing, the DIP Agent, the Prepetition Second Lien Collateral Trustee, or each Applicable Issuer (and, if applicable, each Applicable L/C Beneficiary) (solely with respect to such Applicable Issuer's (or, if applicable, such Applicable L/C Beneficiary's) respective L/C Cash Collateral Liens), as applicable, may, in their respective sole discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar documents, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases.  The DIP Loan Parties shall execute and deliver to the DIP Agent, the Prepetition Second Lien Collateral Agent, or each Applicable Issuer (or, if applicable, Applicable L/C Beneficiary) (as applicable), all such financing statements,

mortgages, security agreements, notices and other documents, and otherwise cooperate and assist in any such filings, as the DIP Agent, the Prepetition Second Lien Collateral Trustee, or the Applicable Issuer(s) (or, as applicable, any Applicable L/C Beneficiary) may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens, the Adequate Protection Liens, and the L/C Cash Collateral Liens.  The DIP Agent, the Prepetition Second Lien Collateral Trustee, or each Applicable Issuer (or, if applicable, any Applicable L/C Beneficiary), as applicable, in their respective sole discretion, may file a photocopy of this Replacement DIP Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Replacement DIP Order.  To the extent that the Prepetition First Lien Agent, any Prepetition Second Lien Agent, or the Existing DIP Agent is the secured party under any account control agreement, listed as additional insured, loss payee under any of the Debtors' insurance policies or is the secured party under any loan document, financing statement, deed of trust, mortgage or other instrument or document which may otherwise be required under the law of any jurisdiction to validate, attach, perfect or prioritize liens (any such instrument or document, a "**Security Document**"), the DIP Agent is also deemed to be the secured party under such account control agreement, loss payee under the Debtors' insurance policies and the secured party under each such Security Document, and shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement) and shall act in that capacity and distribute any proceeds recovered or received in accordance with the terms of this Replacement DIP Order, as applicable, and the other Replacement DIP Documents.  Notwithstanding the foregoing, (i) the Prepetition First Lien Agent (and any affiliate

thereof), any Prepetition Second Lien Agent, and each Debtor party to such control agreement are hereby authorized to terminate such control agreements (the "**Prepetition Control Agreements**")  and close accounts subject to such control agreements (the "**Prepetition Blocked Accounts**"), (ii) Debtors will open one or more accounts (the "**New Blocked Accounts**") on or before August 31, 2017 with the DIP Agent (or another financial institution satisfactory to the DIP Agent, acting at the direction of the Required Lenders) that are subject to control agreements reasonably satisfactory to the DIP Agent, acting at the direction of the Required Lenders, and that will replace the Prepetition Blocked Accounts as the Debtors' main operating accounts, (iii) the Debtors will transfer all funds in the Prepetition Blocked Accounts into the New Blocked Accounts as agreed by the DIP Agent and the Debtors until the Prepetition Blocked Accounts are closed and (iv) all Prepetition Blocked Accounts will be closed and all Prepetition Control Agreements terminated on or before September 30, 2017.   The Prepetition First Lien Agent or Existing DIP Agent (in its capacity as Collateral Sub-Agent) shall serve as agent for the DIP Agent and the Prepetition Second Lien Collateral Trustee (subject to their relative priorities) for purposes of perfecting their security interests and liens on all DIP Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.   Notwithstanding the foregoing, the DIP Agent will take possession of all stock certificates held by the Prepetition First Lien Agent at the location such certificates are held by the Prepetition First Lien Agent within 30 days after the Closing Date.   In no event will any of the actions taken pursuant to this paragraph 8 alter the validity, priority, perfection or enforceability of any liens held by the DIP Agent, the Prepetition First Lien Agent or the Prepetition Second Lien Collateral Trustee in the collateral described in this paragraph 8, it being understood and agreed that such actions are taken solely for administrative convenience.

9.     **Reservation of Certain Third Party Rights and Bar of Challenges and Claims.**

(i)     The Debtors' acknowledgments, stipulations, and releases contained in the

DIP Orders (including this Replacement DIP Order), including paragraph G hereof (collectively,

the "**Claims Stipulations**"), shall continue to be binding on the Debtors and their estates, and their

respective representatives, successors, and assigns, and subject only to the Filed Committee

Adversary Proceeding and, solely with respect to the Prepetition Second Lien Secured Parties, the

OID Objections, if (and only to the extent) an order is entered by a court of competent jurisdiction

and becomes final and non-appealable in favor of the plaintiff sustaining any challenge or claim

in such adversary proceeding and contested matters, on each of the Debtors' estates, all creditors

thereof and each of their respective representatives, successors, and assigns, including any trustee

appointed or elected for any of the Debtors, whether such trustee or representative is appointed in

chapter 11 or chapter 7 (a "Trustee").  The stipulations and admissions contained in the DIP Orders

(including this Replacement DIP Order), including the Claims Stipulations, shall be binding upon

all other parties in interest, including any Trustee, in each case subject only to the Filed Committee

Adversary Proceeding and, solely with respect to the Prepetition Second Lien Secured Parties, the

OID Objections, if (and only to the extent) an order is entered by a court of competent jurisdiction

and becomes final and non-appealable in favor of the plaintiff sustaining any challenge or claim

in such adversary proceeding or contested matters.  The Prepetition First Lien Secured Obligations

and/or the Prepetition Second Lien Obligations, as applicable, to the extent not challenged or not

successfully challenged in the Filed Committee Adversary Proceeding or, solely with respect to

the Prepetition Second Lien Secured Parties, the OID Objections, shall constitute allowed claims,

not subject to any Avoidance Actions or any other claims, counterclaims, causes of action,

complaints, remedies, objections, contests or defenses (whether characterized as a counterclaim,

setoff, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined by section 101(5) of the Bankruptcy Code), impairment, subordination (whether equitable, contractual or otherwise) (except as a result of the relative priorities set forth in this Replacement DIP Order and in the Prepetition Intercreditor Agreement and Collateral Trust Agreement, each as amended by the Original Intercreditor Annex and the Replacement Intercreditor Annex), or other challenge of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law, for all purposes in these Chapter 11 Cases and any subsequent chapter 7 case, if any.  Other than with respect to the Filed Committee Adversary Proceeding and, solely with respect to the Prepetition Second Lien Secured Parties, the OID Objections, the Prepetition First Lien Secured Obligations, the Prepetition First Priority Liens, the Prepetition Second Lien Obligations, the Prepetition Second Priority Liens, and the Prepetition Secured Parties shall not be subject to any other or further challenge and any party in interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including any successor thereto (including any estate representative or a Trustee).  The stipulations and admissions contained in the DIP Orders (including this Replacement DIP Order), including the Claims Stipulations, shall continue to remain binding and preclusive (as provided herein) on the Committee and any other Person (as defined in the Prepetition Debt Documents) or party in these Chapter 11 Cases, including any Trustee, except as to any such findings and admissions that are expressly and successfully challenged in the Filed Committee Adversary Proceeding or, solely with respect to the Prepetition Second Lien Secured Parties, the OID Objections.  For the avoidance of doubt, (x) notwithstanding the fact that the Tranche A Roll-Up Loans and the Tranche B Roll-Up Loans (each as defined in the Existing DIP Credit Agreement) continue to be approved on a final basis, any prepetition liens and claims of

any Prepetition Secured Parties that have been deemed exchanged for the respective Roll-Up

Loans (as defined in the Existing DIP Credit Agreement) shall remain subject only to the Filed

Committee Adversary Proceeding and, solely with respect to the Prepetition Second Lien Secured

Parties, the OID Objections, and if (and only to the extent) an order is entered by a court of

competent jurisdiction and becomes final and non-appealable in favor of the plaintiff, sustaining

any challenge or claim in such Filed Committee Adversary Proceeding or, solely with respect to

the Prepetition Second Lien Secured Parties, the OID Objections, may result in the invalidity of

the corresponding liens and claims under the respective Roll-Up Loans, as applicable and (y) in

the event any judgment is granted in respect of the Filed Committee Adversary Proceeding or the

OID Objections, in no event shall the DIP Agent, any DIP Arranger, or any Replacement New

Money DIP Lender (in their respective capacities as such under the Replacement DIP Facilities)

have any liability or other obligation in respect thereof.  Nothing in this Replacement DIP Order

vests or confers on any person or Trustee standing or authority to pursue any cause of action

belonging to the Debtors or their estates.

(ii)    The Existing DIP Secured Parties and, in any event, the Existing

Indemnified Parties, shall retain all of their indemnification and expense reimbursement rights

under the Original Final DIP Order and the Existing DIP Credit Agreement and other applicable

Existing DIP Documents, including, without limitation, their respective rights for indemnification

and expense reimbursement in respect of any claim asserted (including any challenge commenced

pursuant to the Original Final DIP Order), and such indemnification and expense reimbursement

rights (as well as the Debtors' obligation to maintain the requisite level of cash-collateralization of

the Existing L/Cs (or, if applicable, replacement credit support for any Existing L/C) pursuant to

the L/C Cash Collateralization Agreements and the Replacement DIP Credit Agreement) shall

have the highest priority in the waterfall provisions of the Replacement Intercreditor Annex, the

Replacement DIP Credit Agreement and other applicable Replacement DIP Documents.

10. **Carve-Out.**

(i)    Subject to the terms and conditions contained in this paragraph 10, the DIP

Liens, the DIP Superpriority Claims, the Prepetition Second Priority Liens, the Second Lien

Adequate Protection Liens, and the Second Lien Adequate Protection Claims, which have the

relative lien and payment priorities as set forth herein and in the Replacement Intercreditor Annex,

shall be subject and subordinate to a carve-out (the "**Carve-Out**"), which shall be comprised of

the following: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office

of the United States Trustee pursuant to 28 U.S.C. § 1930(a), (ii) all reasonable and documented

fees and expenses of up to $250,000 incurred by a trustee under section 726(b) of the Bankruptcy

Code, (iii) the Litigation Trust Funds (as defined in the Committee Settlement Annex), to the extent

not previously funded, and (iv) to the extent allowed at any time, all accrued and unpaid reasonable

fees, costs and expenses (the "**Professional Fees**") incurred by persons or firms retained by the

Debtors or the Committee, pursuant to section 327, 328 or 363 of the Bankruptcy Code

(collectively, "**Professionals**") (x) at any time before or on the day of delivery by the DIP Agent

of a Carve-Out Trigger Notice (defined below), whether allowed by the Court prior to or after

delivery of a Carve-Out Trigger Notice (excluding, for the avoidance of doubt, any restructuring,

success, transaction or similar back-ended fee of any Professional), and (y) after the date (the

"**Trigger Date**") on which the DIP Agent provides written notice (the "**Carve-Out Trigger**

**Notice**") that an Event of Default has occurred and has triggered the Carve-Out, to the extent

allowed at any time, the payment of any Professional Fees of Professionals in an amount not

exceeding $3,000,000 in the aggregate incurred after the Trigger Date.  The dollar limitation in

clause (iv)(y) above on fees and expenses shall not be reduced or increased by the amount of any

compensation or reimbursement of expenses paid prior to the occurrence of an Event of Default in

respect of which the Carve-Out is invoked.  The ability of any party to object to the fees, expenses,

reimbursement or compensation described above shall not be impaired by the terms of the Carve-

Out.

    (ii)  Other than the Investigation Budget authorized under the Original Final DIP

Order, which was permitted to be used solely as provided therein, and which has been exhausted,

no portion of the Carve-Out, no proceeds of the Existing DIP Facilities or Replacement DIP

Facilities, and no proceeds of the DIP Collateral, any Specified L/C Collateral, or any Prepetition

Collateral, including Cash Collateral, or any other amounts, may be used, directly or indirectly,

for the purpose of, or for the payment of the fees and expenses of any person incurred in connection

with, (i) investigating, challenging, or in relation to the challenge of, any of the Prepetition Secured

Obligations, DIP Obligations or the Existing DIP Obligations, or the Prepetition Secured Parties',

the DIP Secured Parties', or the Existing DIP Secured Parties' liens or claims (or the value of their

respective Prepetition Collateral or the DIP Collateral), or in the initiation or prosecution of any

claim, action, or litigation, or assertion of any defense or counterclaim, against any of the

Prepetition Secured Parties, the DIP Secured Parties, or the Existing DIP Secured Parties (or their

respective agents, professionals, consultants, employees, officers, subsidiaries, Affiliates or other

similar persons), including, without limitation, any claim under Chapter 5 of the Bankruptcy Code,

or any state, local or foreign law, in respect of, or relating to, the Prepetition Secured Obligations,

the Prepetition Debt Documents, the DIP Obligations, the Replacement DIP Documents, the

Existing DIP Obligations or the Existing DIP Documents, or in objecting to, preventing, hindering

or delaying the realization by the applicable Prepetition Secured Parties, the DIP Secured Parties,

any Applicable Issuer, and any Existing DIP Secured Parties upon any Prepetition Collateral, DIP

Collateral, or Specified L/C Collateral, respectively, or the enforcement or exercise of any of their

respective rights under the DIP Orders, any other Replacement DIP Document, Existing DIP

Document, Prepetition Debt Document, or L/C Cash Collateralization Agreement, as applicable,

(ii) in requesting authorization, or supporting any request for authorization, to obtain non-

consensual use of cash collateral or any postpetition financing (whether equity or debt) or other

financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise,

other than (x) from the DIP Lenders or (y) if such financing is sufficient to indefeasibly pay and

satisfy all DIP Obligations in full in cash (including the cash collateralization of any Existing L/Cs

in accordance with the Replacement DIP Documents) and such financing is immediately so used,

(iii) in connection with any claims or causes of actions against the Releasees, including formal or

informal discovery proceedings in anticipation thereof, and/or in invalidating, setting aside,

avoiding, recharacterizing, subordinating, or otherwise challenging, in whole or in part, any

Prepetition Secured Obligations, DIP Obligations, Existing DIP Obligations, Prepetition First

Priority Liens, Prepetition Second Priority Liens, Adequate Protection Liens or DIP Liens, or (iv)

otherwise in connection with any attempts to modify any of the rights granted to the DIP Secured

Parties, the Existing DIP Secured Parties, or the Prepetition Secured Parties hereunder or under

the other Replacement DIP Documents or Existing DIP Documents.

11.    **Litigation Trust**.  Subject to the terms and conditions of the Committee Settlement

Annex, and in accordance with a litigation trust agreement and related documentation, which shall

in each case be consistent with the terms of the Committee Settlement Annex and any chapter 11

plan, and otherwise in form and substance acceptable to the Committee in its sole discretion and

reasonably acceptable to the Required Lenders, and the Debtors (other than any documentation or

provisions thereof providing for a trustee, oversight board, or other positions of trust governance, which positions shall be established and, upon creation of the trust, appointed in the sole discretion of the Committee or as set forth in any chapter 11 plan), the Debtors are authorized to use Cash Collateral or proceeds of the Replacement DIP Facilities to fund a litigation trust (to the extent not already funded) (the "**Litigation Trust**") in the amount, and subject to the terms (including any reduction of such amount), set forth in the Committee Settlement Annex and any chapter 11 plan.

12.    **Payment of Compensation.**  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any of the Debtors or any Committee or shall limit or otherwise affect the right of the DIP Secured Parties and/or the Prepetition Secured Parties or any other party in interest to object to the allowance and payment of any such fees and expenses. No professional fees shall be paid absent a Court order allowing such payment pursuant to a fee application on notice, or other procedure permitted by the order entered by the Court allowing interim compensation [Docket No. 258] or the order entered by the Court authorizing the payment of fees of ordinary course professionals [Docket No. 517].  So long as no Event of Default exists that has not been waived in writing, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed by the Court and payable under sections 330 and 331 of the Bankruptcy Code or compensation procedures approved by the Court, as the same may be due and payable and the same shall not reduce the Carve Out Trigger Notice Cap.

13.    **Section 506(c) Claims.**  Subject to the Carve-Out, as a further condition of the Replacement DIP Facilities and the Replacement New Money DIP Loans under the Replacement DIP Credit Agreement and the other Replacement DIP Documents, any obligation of the DIP Secured Parties to make Replacement New Money DIP Loans, and the Debtors' authorization to use the Cash Collateral, the Debtors (and any successors thereto or any representatives thereof,

including any trustees appointed in the Chapter 11 Cases or any Successor Cases) shall be deemed

to have waived any rights, benefits or causes of action under section 506(c) of the Bankruptcy

Code as they may relate to or be asserted against the DIP Secured Parties, the DIP Liens, the DIP

Collateral, the Applicable Issuers, the L/C Cash Collateral Liens, the Specified L/C Collateral, the

Prepetition Secured Parties, the Prepetition Liens, the Adequate Protection Liens, or the Prepetition

Collateral.  Except with respect to the Carve-Out, nothing contained in this Replacement DIP

Order or in the other Replacement DIP Documents shall be deemed a consent by the Prepetition

Secured Parties or the DIP Secured Parties to any charge, lien, assessment or claim against, or in

respect of, the DIP Collateral, the Specified L/C Collateral or the Prepetition Collateral under

section 506(c) of the Bankruptcy Code or otherwise.  Notwithstanding any provision of the

Replacement DIP Credit Agreement, this Replacement DIP Order or any other Replacement DIP

Document to the contrary, the DIP Loan Parties shall not grant any security interest (other than the

security interest granted to the Applicable Issuers in connection with the L/C Cash

Collateralization (and, if applicable, effective upon the entry into any relevant Replacement L/C

Arrangement with an Applicable L/C Beneficiary, such Applicable L/C Beneficiary in connection

with the relevant replacement L/C Cash Collateralization)) in any funds in the L/C Blocked

Accounts which constitute Specified L/C Cash Collateral.

14.    **Collateral Rights; Limitations in Respect of Subsequent Court Orders.**  Unless

the DIP Agent (at the direction of the Required Lenders (subject to any additional voting, consent

or other requirements and rights set forth in the Replacement DIP Credit Agreement)) has provided

its prior written consent in accordance with the Replacement DIP Credit Agreement and all DIP

Obligations have been indefeasibly Paid in Full, or will be indefeasibly Paid in Full upon

consummation of the transaction described in subparagraph (a) below, there shall not be entered

in these Chapter 11 Cases or in any Successor Case (including in each case any proceeding ancillary thereto), any order which authorizes any of the following: (a) except to the extent expressly permitted by the Replacement DIP Credit Agreement, the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral and/or, with respect to the Debtor DIP Loan Parties, is entitled to priority administrative status which is superior to or *pari passu* with those granted pursuant to the DIP Orders and/or continued or granted pursuant to this Replacement DIP Order to or for the benefit of the DIP Secured Parties (subject to their relative priorities as set forth in the Replacement Intercreditor Annex), or (b) the use of Cash Collateral for any purpose other than for the Payment in Full of the DIP Obligations (subject to their relative priorities set forth in the Replacement Intercreditor Annex) or as otherwise expressly permitted under the Replacement DIP Credit Agreement and in accordance with the DIP Budget (subject to Permitted Budget Variances) or for Specified Disbursements.

15.    **Proceeds of Subsequent Financing.** Without limiting the provisions and protections of paragraph 14 above, if at any time prior to the Payment in Full of all DIP Obligations (subject to their relative priorities as set forth in this Replacement DIP Order and in the other Replacement DIP Documents), in each case in accordance with the Replacement Intercreditor Annex, including subsequent to the confirmation of any chapter 11 plan or plans (the "**Plan**") with respect to the Debtors, the Debtors, the Debtors' estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt in violation of this Replacement DIP Order or the other Replacement DIP Documents, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Agent for application in accordance with the priorities set forth in the Replacement

Intercreditor Annex, the Replacement DIP Documents and the relevant Prepetition Debt Documents, as applicable.

16.    **Cash Management**.    Proceeds of the Replacement New Money DIP Loans incurred by the DIP Borrower and proceeds of asset sales shall be deposited into one or more DIP Facilities Blocked Account under the sole dominion and control of the DIP Agent (unless otherwise expressly authorized under the Replacement DIP Credit Agreement), and shall be disbursed, in accordance with the terms and conditions set forth in the Replacement DIP Credit Agreement, including to consummate the Refinancing and the Replacement L/C Arrangements (including the L/C Cash Collateralization). The Debtors' cash management system shall at all times be maintained (i) in accordance with the terms of the Replacement DIP Documents and the order entered by this Court on July 8, 2016 approving the maintenance of the Debtors' cash management system [Docket No. 742] (the "**Cash Management Order**"), and (ii) in a manner which in any event shall be consistent with this Replacement DIP Order and the Replacement DIP Credit Agreement. The DIP Agent shall be deemed to have "control" over all cash management accounts (including any DIP Facilities Blocked Accounts) of the DIP Borrower and the Secured DIP Guarantors as set forth in the Replacement DIP Documents for all purposes of perfection under the Uniform Commercial Code. Absent an Event of Default, all amounts collected in such cash management accounts, including the DIP Facilities Blocked Accounts, may only be used in accordance with (a) this Replacement DIP Order, (b) the DIP Budget (subject to Permitted Budget Variances) and for Specified Disbursements, and (c) the other Replacement DIP Documents; after the occurrence and during the continuance of an Event of Default, subject only to the Debtors' rights under paragraph 19(b), all such amounts shall be applied in accordance with paragraph 19(b).

17.    **Disposition of DIP Collateral.**  The Debtors shall not sell (including, without limitation, any sale and leaseback transaction), transfer (including any assignment of rights), lease, encumber or otherwise dispose of any portion of the DIP Collateral or the Specified L/C Collateral, except as expressly permitted by the Replacement DIP Credit Agreement and the L/C Cash Collateralization Agreements, respectively.

18.    **Survival of Certain Provisions.**  In the event of the entry of any order converting any of these Chapter 11 Cases into a Successor Case, and in any event notwithstanding any such conversion, the Carve-Out, the DIP Liens, the DIP Superpriority Claims, the Second Lien Adequate Protection Liens, the Second Lien Adequate Protection Claims, the L/C Cash Collateral Liens and the L/C Superpriority Claims shall continue in these proceedings and in any Successor Case, and such Carve-Out, DIP Liens, DIP Superpriority Claims, Second Lien Adequate Protection Liens, Second Lien Adequate Protection Claims, L/C Cash Collateral Liens, and L/C Superpriority Claims shall remain enforceable and shall maintain their respective priorities as provided by this Replacement DIP Order (including the Replacement Intercreditor Annex and subject to the Committee Settlement Annex).

19.    **Events of Default; Rights and Remedies Upon Event of Default.**

(a)    Any automatic stay otherwise applicable to the DIP Secured Parties is hereby modified so that, (i) upon and after the occurrence of the Termination Date, the DIP Agent (or the other DIP Secured Parties, to the extent expressly permitted under the Replacement DIP Documents) shall, subject to subparagraph (b) of this paragraph 19, be immediately entitled to exercise all of its rights and remedies in respect of the DIP Collateral, in accordance with this Replacement DIP Order and the other Replacement DIP Documents, as applicable.  The term "**Termination Date**" shall mean the earliest to occur of (i) the Stated Maturity Date (including

any extension of such date that is permitted by the express terms of the Replacement DIP Credit Agreement, subject to any conditions precedent thereto), (ii) the "effective date" of a plan of reorganization or liquidation for the DIP Borrower and/or its affiliated Debtors (or substantially all of them) ; (iii) the consummation of a sale (in one transaction or in a series of transactions) of all or substantially all of the assets of the DIP Borrower and its subsidiaries pursuant to section 363 of the Bankruptcy Code (or otherwise); and (iv) the acceleration of the loans and the termination of all Commitments in accordance with the terms of this Replacement DIP Order and the other Replacement DIP Documents (including, without limitation, as a result of the occurrence of an Event of Default under the Replacement DIP Facilities).

(b)      Notwithstanding the foregoing subparagraph (a) of this paragraph 19, immediately following the giving of notice by the DIP Agent to the Debtors, counsel to the Debtors, counsel for the Committee, and the United States Trustee of the occurrence and continuance of an Event of Default: (i) all Commitments of the Replacement DIP Lenders to provide any Replacement New Money DIP Loans shall immediately be suspended; (ii) the Debtors shall have no right to request or use any proceeds of any Replacement DIP Facilities or DIP Collateral (including, without limitation, any proceeds from the sale or disposition of any DIP Collateral), or to use Cash Collateral, other than towards the satisfaction of the DIP Obligations and the Carve-Out, provided that during the Default Notice Period (defined below), the DIP Loan Parties and their Subsidiaries shall be permitted to continue to use any Cash Collateral and proceeds of Replacement New Money DIP Loans previously drawn from any DIP Facilities Blocked Account (and any other cash on hand or on deposit in any deposit account or other bank account of a DIP Loan Party or any Subsidiary that is not a DIP Facilities Blocked Account, subject to any limitations set forth in the Replacement DIP Credit Agreement, and solely in the ordinary

course of business in accordance with the DIP Budget and the applicable Replacement DIP

Documents, and to satisfy the Carve-Out (it being understood that, for purposes hereof, "ordinary

course of business" does not include buying projects or developing assets for their ultimate sale,

but may include using cash for the management of projects, required utilities payments and other

critical payments necessary to continue operations); (iii) except as otherwise expressly provided

in this paragraph 19(b), the Debtors shall deliver and cause the delivery of the proceeds of the

Replacement DIP Facilities and the DIP Collateral to the DIP Agent as provided herein and in the

Replacement DIP Documents; and (iv) the DIP Agent shall be permitted to apply such proceeds

in accordance with the terms of this Replacement DIP Order and the other Replacement DIP

Documents.  The Debtors and the Committee shall be entitled to an emergency hearing before this

Court within seven (7) calendar days after the giving of written notice by the DIP Agent of the

occurrence of an Event of Default (such 7-calendar day period, the "**Default Notice Period**");

provided, that the only issue that may be raised at such hearing shall be whether an Event of Default

has in fact occurred and is continuing, and such entities hereby waive their right to seek any relief,

whether under section 105 of the Bankruptcy Code or otherwise, that would in any way impair,

limit, restrict or delay the rights and remedies of the DIP Agent (or the other DIP Secured Parties,

to the extent expressly permitted under the Replacement DIP Documents, including the

Replacement Intercreditor Annex) under the Replacement DIP Documents.  If the Debtors or the

Committee do not contest the occurrence or continuance of the Event of Default during the Default

Notice Period, or if the Debtors or the Committee do timely contest the occurrence or continuance

of an Event of Default and the Court after notice and a hearing declines to stay the enforcement

thereof, the Termination Date shall be deemed to have occurred for all purposes and the automatic

stay as to the DIP Agent shall automatically terminate in all respects.  Nothing herein shall preclude

the DIP Agent (or any Replacement DIP Lenders, to the extent authorized to do so under the

Replacement DIP Credit Agreement) from seeking an order from the Court upon written notice

(electronically (including via facsimile) in a manner that generates a receipt for delivery, or via

overnight mail) to the United States Trustee, counsel to the Debtors and counsel to the Committee

authorizing the DIP Agent (or any Replacement DIP Lenders, to the extent authorized to do so

under the Replacement DIP Credit Agreement), the Prepetition Second Lien Agent or the

Prepetition Second Lien Notes Trustee, as applicable, to exercise any enforcement rights or

remedies with respect to the DIP Collateral or the Prepetition Collateral on less than seven (7)

days' notice, subject to their relative rights and priorities as set forth in this Replacement DIP

Order (including the Replacement Intercreditor Annex, and the terms of the Committee Settlement

Annex), and the Replacement DIP Credit Agreement, or the Debtors' right to contest such relief.

(c)     Upon the occurrence of the Termination Date (but subject, only in the case

of the occurrence of the Termination Date resulting from an Event of Default, to the provisions of

paragraph 19(b)), the DIP Agent is authorized to exercise all rights and remedies taken in

accordance with the Replacement DIP Credit Agreement and proceed under or pursuant to the

applicable Replacement DIP Documents.  All proceeds realized in connection with the exercise of

the rights and remedies of the applicable DIP Secured Parties shall be turned over and applied in

accordance with the terms of this Replacement DIP Order (including the Replacement Intercreditor

Annex and the Committee Settlement Annex) and the other Replacement DIP Documents.

(d)     The automatic stay imposed under section 362(a) of the Bankruptcy Code

is hereby modified pursuant to the terms of the Replacement DIP Documents as necessary to (i)

permit the Debtor DIP Loan Parties to grant the Second Lien Adequate Protection Liens and the

DIP Liens and to incur all DIP Obligations and all liabilities and obligations to the applicable

Prepetition Secured Parties hereunder and under the other Replacement DIP Documents and the

applicable Prepetition Debt Documents, as the case may be, (ii) authorize the DIP Agent or the

applicable Prepetition Secured Party, as applicable, to retain and apply payments, and otherwise

enforce its and the applicable DIP Secured Parties' (or applicable Prepetition Secured Parties', as

applicable) respective rights and remedies hereunder, subject to the rights and priorities set forth

in the Replacement DIP Credit Agreement and in this Replacement DIP Order, including the

Replacement Intercreditor Annex and the Committee Settlement Annex, and (iii) authorize each

Applicable Issuer (and, if applicable, effective upon the entry into any relevant Replacement L/C

Arrangement with an Applicable L/C Beneficiary, such Applicable L/C Beneficiary) to perform,

and exercise any and all rights and remedies, under this Replacement DIP Order, the Replacement

DIP Credit Agreement, its respective L/C Cash Collateralization Agreement, and its respective

Bank Account Agreements (as defined in and consistent with the Cash Management Order), in the

case of each of clauses (i), (ii) and (iii), without further notice, application, motion, hearing or

order of the Court.

(e)        Nothing included herein shall prejudice, impair, or otherwise affect the

rights of the DIP Agent (or the other DIP Secured Parties, subject to the terms of the Replacement

DIP Documents, including the Replacement Intercreditor Annex), the Existing Indemnified

Parties, the Prepetition Second Lien Administrative Agent or the Prepetition Second Lien Notes

Trustee, as applicable (on behalf of the applicable DIP Secured Parties or Prepetition Secured

Parties, as the case may be), or the Applicable Issuers (in respect of the Existing L/Cs and to the

extent expressly permitted under the Replacement DIP Documents or the L/C Cash

Collateralization Documents) or in respect of each Applicable Issuers' rights and claims pursuant

to this Replacement DIP Order, including without limitation paragraph 9, subject to their relative

rights and priorities as set forth in the Replacement DIP Credit Agreement or this Replacement

DIP Order (including the Replacement Intercreditor Annex), to seek any other or supplemental

relief in respect of the Debtors (including, as the case may be, other or additional adequate

protection) nor the DIP Agent's and the Replacement DIP Lenders' rights to suspend or terminate

the making of Replacement New Money DIP Loans or use of Cash Collateral in accordance with

this Replacement DIP Order or the other Replacement DIP Documents.

(f)      Notwithstanding anything in this Replacement DIP Order, or the other

Replacement DIP Documents to the contrary, none of the Prepetition Secured Parties (for the

avoidance of doubt, other than any Applicable Issuer (and, if applicable, effective upon the entry

into any relevant Replacement L/C Arrangement with an Applicable L/C Beneficiary, such

Applicable L/C Beneficiary) with respect to the Specified L/C Collateral or any account

maintained at the Applicable Issuer and subject to a Bank Account Agreement) shall be permitted

to exercise any rights or remedies unless and until the DIP Obligations are indefeasibly Paid in

Full.

(g)      Notwithstanding anything in this Replacement DIP Order to the contrary,

none of the Prepetition Secured Parties shall be permitted to exercise any rights or remedies in

respect of liens on equity of Yieldco, Yieldco II, Yieldco Intermediate, and Yieldco II Intermediate

absent further order of the Court after notice and a hearing in accordance with paragraph 19(b),

and all parties in interest, including the Yieldco, Yieldco II, Yieldco Intermediate, Yieldco II

Intermediate, the Replacement DIP Lenders, the DIP Agent, and the Prepetition Secured Parties,

reserve all rights and defenses with respect thereto.

20.      **Applications of Proceeds of Collateral, Payments and Collections.**

(a)      As a condition to the Replacement New Money DIP Loans and the authorization to use Cash Collateral, each Debtor has agreed that proceeds of any DIP Collateral, Prepetition Collateral, any amounts held on account of the DIP Collateral and Prepetition Collateral and all payments and collections received by the Debtors with respect to all proceeds of DIP Collateral and Prepetition Collateral and all other amounts remitted by any non-Debtors affiliate to any Debtors in respect of, among other things, asset sales and certain other transactions in accordance with the Replacement DIP Credit Agreement, shall only be used and applied by the Debtors in accordance with this Replacement DIP Order (including, without limitation, the Replacement Intercreditor Annex and the Committee Settlement Annex), the Replacement DIP Credit Agreement (including, without limitation, Section 7.15 thereof), the other Replacement DIP Documents (including repayment and reduction of the DIP Obligations), and, except as otherwise expressly provided in the Replacement DIP Credit Agreement, the DIP Budget (subject to Permitted Budget Variances), and for Specified Disbursements.

(b)      Subject to the Debtors' rights under paragraph 19(b) and the funding of the Carve-Out, upon and after the occurrence of the Termination Date all proceeds of DIP Collateral and Prepetition Collateral, whenever received, shall be paid and applied in accordance with this Replacement DIP Order, the Replacement DIP Credit Agreement, and the Replacement Intercreditor Annex, and subject to the Committee Settlement Annex.

21.    **Proofs of Claim, etc.**  None of the DIP Secured Parties or the Existing DIP Secured Parties (including the Applicable Issuers) shall be required to file proofs of claim in any of the Chapter 11 Cases or any Successor Cases for any claim allowed herein or under the Existing DIP Documents, and none of the Prepetition Secured Parties shall be required to file proofs of claim in any of the Chapter 11 Cases or any Successor Cases for any claim in respect of the Prepetition

First Lien Secured Obligations or the Prepetition Second Lien Obligations.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or any Successor Cases to the contrary, the DIP Agent, on behalf of itself and the DIP Secured Parties, the Existing DIP Agent, on behalf of the Existing DIP Secured Parties,  the Prepetition First Lien Agent, on behalf of the Prepetition First Lien Secured Parties, and the Prepetition Second Lien Administrative Agent and the Prepetition Second Lien Notes Trustee, on behalf of the applicable Prepetition Second Lien Secured Parties (subject to their relative priorities as set forth in this Replacement DIP Order, the Original DIP Orders, and in the other Replacement DIP Documents, including the Replacement Intercreditor Annex, and to the Committee Settlement Annex, respectively), are hereby authorized and entitled, in each of their sole and absolute discretion, but not required, to file (and amend and/or supplement, as each sees fit) a proof of claim and/or aggregate proofs of claim in each of the Chapter 11 Cases or any Successor Cases for any claim allowed herein; for avoidance of doubt, any such proof of claim, in each case, may (but is not required to) be filed as one consolidated proof of claim against all of the Debtors, rather than as separate proofs of claim against each Debtor.  Any proof of claim filed by the DIP Agent, the Existing DIP Agent, the Prepetition First Lien Agent, the Prepetition Second Lien Administrative Agent and the Prepetition Second Lien Notes Trustee shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the respective DIP Secured Parties, the Existing DIP Secured Parties or the Prepetition Secured Parties.  Any order that has been or will be entered by the Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in any of the Chapter 11 Cases or any Successor Cases shall not apply to the DIP Agent, the other DIP Secured Parties, the Existing DIP Secured Parties or the Prepetition Secured Parties.

22.    **Other Rights and Obligations.**

(a)    **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Replacement DIP Order.**  Based on the findings set forth in this Replacement DIP Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the Replacement DIP Facilities as approved by this Replacement DIP Order, in the event any or all of the provisions of this Replacement DIP Order are hereafter modified, amended, vacated or stayed by a subsequent order of this Court or any other court, the DIP Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code~~, and no such appeal, modification, amendment or vacatur shall affect the validity and enforceability of any advances made hereunder, or the liens or priority authorized or created hereby or thereby. Notwithstanding any such modification, amendment or vacatur, any claim granted to the DIP Secured Parties or to the Applicable Issuers hereunder or under the Original DIP Orders arising prior to the effective date of such modification, amendment, vacatur or stay of any DIP Liens or of the DIP Superpriority Claims granted to or for the benefit of the applicable DIP Secured Parties or of any L/C Cash Collateral Liens or L/C Superpriority Claims granted to or for the benefit of the Applicable Issuers shall be governed in all respects by the original provisions of this Replacement DIP Order, and such DIP Secured Parties and Applicable Issuers shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Liens, the DIP Superpriority Claims, the L/C Cash Collateral Liens and the L/C Superpriority Claims, as applicable granted herein (subject to their relative priorities as set forth in this Replacement DIP Order and in the other Replacement DIP Documents, including the Replacement Intercreditor Annex), with respect to any such claim~~.

(b)      Because the Replacement New Money DIP Loans and the Replacement L/C

Obligations are made in reliance on this Replacement DIP Order, the DIP Obligations and

Replacement L/C Obligations incurred by the Debtor DIP Loan Parties or owed the DIP Secured

Parties and Applicable Issuers, respectively, prior to the effective date of any stay, modification or

vacatur of this Replacement DIP Order shall not, as a result of any subsequent order in the Chapter

11 Cases or in any Successor Cases, be disallowed or subordinated, lose their lien priority or

superpriority administrative expense claim status, or be deprived of the benefit of the status of the

liens and claims granted to the DIP Secured Parties and the Applicable Issuers under this

Replacement DIP Order (in each case, subject to their relative priorities as set forth in this

Replacement DIP Order and in the other Replacement DIP Documents, including the Replacement

Intercreditor Annex, and subject to the terms of the Committee Settlement Annex) **except as**

**otherwise provided in 11 U.S.C. § 364(e)**.  **[SMB: 5/1/17]**

(c)      **Expenses.**  The Debtors will pay all reasonable and documented expenses

incurred by the DIP Agent, the DIP Agent Professionals, the Replacement DIP Lenders (and the

Specified Advisors), the Tranche B Lenders/Steering Committee (including the Tranche B

Lenders/Steering Committee Professionals, without duplication of any payments made to the

Specified Advisors), the Applicable Issuers (including each of their primary counsel), the

Applicable Issuer Professionals, the Existing DIP Agent and Tranche A Lenders (as defined in the

Existing DIP Credit Agreement) (including their primary counsel and financial advisor, but not

including any financial advisory fees after the date hereof), the Prepetition First Lien Agent, the

Prepetition First Lien Professionals, the Prepetition Second Lien Administrative Agent, the

Prepetition Second Lien Notes Trustee, the Prepetition Second Lien Collateral Trustee, and the

Prepetition Second Lien Agents' Professionals, in each case, in accordance herewith and with the

other Replacement DIP Documents, in connection with (i) the preparation, execution, delivery,

funding and administration of the Replacement DIP Documents, including, without limitation, all

due diligence fees and expenses incurred or sustained in connection with the Replacement DIP

Documents and the Existing DIP Documents, (ii) the administration of the Prepetition Debt

Documents and the Existing DIP Documents, (iii) the Chapter 11 Cases or any Successor Cases,

or (iv) enforcement of any rights or remedies under the Replacement DIP Documents, the Existing

DIP Documents or the Prepetition Debt Documents, in each case whether or not the transactions

contemplated hereby are fully consummated.  The DIP Agent, the DIP Agent Professionals, the

Replacement DIP Lenders (and the Specified Advisors), the Existing DIP Agent and the Tranche

A Lenders (including their primary counsel and financial advisor, but solely to the extent of any

financial advisory fees incurred prior to the date hereof), the Tranche B Lenders/Steering

Committee (including the Tranche B Lenders/Steering Committee Professionals), the Prepetition

First Lien Agent, the Prepetition First Lien Professionals, the Applicable Issuers (including each

of their primary counsel), the Prepetition Second Lien Administrative Agent, the Prepetition

Second Lien Notes Trustee, the Prepetition Second Lien Collateral Trustee, and the Prepetition

Second Lien Agents' Professionals shall not be required to comply with the United States Trustee

fee guidelines or file any fee applications with the Court, but shall provide reasonably detailed

statements (redacted if necessary for privileged, confidential or otherwise sensitive information)

to the United States Trustee and counsel for each of the Committee and the Debtors.  Thereafter,

within ten (10) days of presentment of such statements, the Debtors shall pay in cash all such fees

and expenses (to the extent limited to the professionals listed above) of the DIP Agent, the DIP

Agent Professionals, the Replacement DIP Lenders (and the Specified Advisors), the Existing DIP

Agent and the Tranche A Lenders (including their primary counsel and financial advisor (but

solely to the extent of any financial advisory fees incurred prior to the date hereof)), the Tranche

B Lenders/Steering Committee (including the Tranche B Lenders/Steering Committee

Professionals, without duplication of any payment made to the Specified Advisors), the Prepetition

First Lien Agent, the Prepetition First Lien Professionals, the Applicable Issuers (including each

of their primary counsel), the Prepetition Second Lien Administrative Agent, the Prepetition

Second Lien Notes Trustee, the Prepetition Second Lien Collateral Trustee, and the Prepetition

Second Lien Agents' Professionals. For the avoidance of doubt, and without limiting any of the

forgoing or any other provision of this Replacement DIP Order (but subject to the limitation of the

professionals mentioned above), the fees specified in Section 2.09 of the Replacement DIP Credit

Agreement and any fees specified in the L/C Cash Collateralization Agreements are, irrespective

of any subsequent order approving or denying the Replacement DIP Facilities or any other

financing pursuant to section 364 of the Bankruptcy Code, fully entitled to all protections of section

364(e) of the Bankruptcy Code and are deemed fully earned, indefeasibly paid, non-refundable,

irrevocable, and non-avoidable as of the applicable dates specified in Section 2.09 of the

Replacement DIP Credit Agreement or in the L/C Cash Collateralization Agreements,

respectively.

(d)    **DIP Loan Parties**. ~~The non-Debtor DIP Loan Parties hereby submit
themselves to the jurisdiction of the Court to resolve any and all disputes regarding the
Replacement DIP Documents, this Replacement DIP Order, and agree to be bound by this Court's
decisions with regard to any such disputes or orders.~~ The DIP Loan Parties are hereby authorized

to grant liens and claims to the DIP Secured Parties, the Applicable Issuers (and, if applicable,

effective upon the entry into any relevant Replacement L/C Arrangement with an Applicable L/C

Beneficiary, such Applicable L/C Beneficiary), and the Prepetition Secured Parties, subject to their

relative priorities set forth in this Replacement DIP Order (including the Replacement Intercreditor Annex), which liens and claims shall (except to the extent expressly provided in paragraph 9 of this Replacement DIP Order with respect to Prepetition Secured Parties) not be subject to challenge, dispute, subordination, contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined by section 101(5) of the Bankruptcy Code), impairment, subordination (whether equitable, contractual or otherwise) (except as a result of the relative priorities set forth in this Replacement DIP Order, including the Intercreditor Annex) or other challenge of any kind under applicable law, as a result of the mechanics set forth in the Replacement Intercreditor Annex.  To the extent permitted by applicable law, the Debtors shall cause any controlled non-Debtor affiliate not to take any actions seeking to avoid any transfers made, or obligations incurred, in furtherance of the transactions contemplated by the Replacement DIP Documents.  **[SMB: 5/1/17]**

(e)    **Credit-Bid.**  Subject to the terms and conditions of the Replacement DIP Credit Agreement and the Replacement Intercreditor Annex, the DIP Agent, with the consent of the Required Lenders (subject to any additional voting, consent or other requirements set forth in the Replacement DIP Credit Agreement), shall have the right (on behalf of the Replacement DIP Lenders) to credit-bid the amount of the DIP Obligations in connection with any sale of all or substantially all of the Debtors' assets and property, including, without limitation, any sale occurring pursuant to section 363 of the Bankruptcy Code or included as part of any plan of reorganization subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

(f)    **Binding Effect.**  The provisions of this Replacement DIP Order shall be binding upon and inure to the benefit of the DIP Secured Parties, the Existing DIP Secured Parties,

the Prepetition Secured Parties, the Debtors, and the other DIP Loan Parties, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Chapter 11 Cases, in any Successor Cases, or upon dismissal of any such Chapter 11 or Chapter 7 case.

(g)    **No Waiver.**  The failure of the DIP Secured Parties, the Applicable Issuers, or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Replacement DIP Order, the other Replacement DIP Documents, the Replacement L/C Arrangements, the Prepetition First Lien Loan Documents or otherwise, or the Prepetition Second Lien Loan Documents or otherwise, as applicable, shall not constitute a waiver of any of the DIP Secured Parties', the Applicable Issuers' or Prepetition Secured Parties' rights hereunder, thereunder, or otherwise.   Notwithstanding anything herein, but subject to the Replacement Intercreditor Annex, paragraph 22(j) hereof and Section 10.24 of the Replacement DIP Credit Agreement, the entry of this Replacement DIP Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses or remedies of the DIP Secured Parties or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law against any other person or entity in any court, including without limitation, the rights of the DIP Agent, the Prepetition First Lien Agent, the Prepetition Second Lien Agent, the Prepetition Second Lien Notes Trustee and the Tranche B Lenders/Steering Committee, in each case, on behalf of their respective constituents, (i) to request conversion of the Chapter 11 Cases to cases under Chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases, or (ii) to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan, or (iii) to exercise any of the rights,

claims or privileges (whether legal, equitable or otherwise) on behalf of the DIP Secured Parties or the applicable Prepetition Secured Parties, as applicable.

(h)    **No Third Party Rights.**    Except as explicitly provided for herein, this Replacement DIP Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

(i)    **Consent.**    Nothing in this Replacement DIP Order shall be construed to convey on any individual DIP Secured Party or Prepetition Secured Party any consent, voting or other rights beyond those (if any) set forth in the Replacement DIP Documents and Prepetition Debt Documents, as applicable.

(j)    **No Marshaling.**    Neither the DIP Secured Parties nor the Prepetition First Lien Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral, Specified L/C Collateral, or the Prepetition Collateral, as applicable.

(k)    **Intercreditor Matters**.    Except as provided herein with respect to the Replacement Intercreditor Annex, nothing in this Replacement DIP Order shall be construed to impair, modify or otherwise affect any intercreditor, subordination or similar agreement or arrangement in respect of the Prepetition Secured Obligations, including the Prepetition Intercreditor Agreement, which are enforceable to the fullest extent provided by section 510(a) of the Bankruptcy Code and applicable law, subject to Section 10.24 of the Replacement DIP Credit Agreement.    Notwithstanding anything to the contrary in the foregoing, the Replacement Intercreditor Annex, including to the extent it modifies the Prepetition Intercreditor Agreement, and the terms of Section 10.24 of the Replacement DIP Credit Agreement are fully enforceable and have been agreed (or deemed to be agreed) to by, and on behalf of, each of the applicable

Prepetition Secured Parties.  For the avoidance of doubt, the Replacement Intercreditor Annex is in full force and effect against, and is binding on, the DIP Secured Parties and the Prepetition Secured Parties (including in their respective capacities under the Prepetition Intercreditor Agreement) and subject to the Debtors' rights as set forth in Section 6.27 and Schedule 6.27 of the Replacement DIP Credit Agreement, all other parties.

(l)     **Section 552(b).**   The DIP Secured Parties and the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Secured Parties or the Prepetition Secured Parties with respect to proceeds, product, offspring or profits of any DIP Collateral, Specified L/C Collateral, or Prepetition Collateral in their respective capacities under the Prepetition Intercreditor Agreement.

(m)    **Employee Incentive/Retention Plans.** The Debtors shall not seek approval of any employee incentive or retention plan (or any similar sort of retention or incentive program) without the prior reasonable consent of the Required Lenders (after consultation with the Committee).

(n)    **Amendment.**   As provided in, subject to, and consistent with their respective rights under the Replacement DIP Documents (including, without limitation, Section 10.01 of the Replacement DIP Credit Agreement), the DIP Borrower and the applicable DIP Loan Parties, as the case may be, and the Replacement DIP Lenders (subject to any applicable terms of the Replacement DIP Credit Agreement), and as acknowledged by the DIP Agent, may amend, modify, supplement or waive any provision of the Replacement DIP Documents, and the Debtors may pay fees in connection therewith, and are authorized to enter into any such amendment, modification, supplement or waiver, without further notice to or approval of the Court, unless such

amendment, modification, supplement or waiver (v) is inconsistent with or contravenes the terms

of the Committee Settlement Annex, without the express written consent of the Committee, (w)

directly or indirectly decreases the amounts preserved under the Carve-Out, (x) increases the

interest rate (other than as a result of the imposition of the default rate or changes to any base rate,

LIBOR or similar component thereof) or fees (other than consent fees in connection with such

amendment, modification, supplement or waiver) charged in connection with any Replacement

DIP Facility, (y) increases the commitments of the Replacement DIP Lenders to make

Replacement New Money DIP Loans under the Replacement DIP Documents, or (z) changes the

Termination Date to an earlier date.   No waiver, modification, or amendment of any of the

provisions of this Replacement DIP Order shall be effective unless set forth in writing, signed by,

or on behalf of, the DIP Borrower, the other applicable DIP Loan Parties (to the extent required

by the applicable Replacement DIP Document), the Replacement DIP Lenders (to the extent

required by the Replacement DIP Credit Agreement), and shall be acknowledged by the DIP

Agent, subject to their respective rights and, in each case, subject to, and as provided in, the

Replacement DIP Documents (including, without limitation, Section 10.01 of the Replacement

DIP Credit Agreement), and approved by the Court (to the extent required by this paragraph 22(m))

after notice to parties in interest; provided that, notwithstanding anything to the contrary herein or

in the other Replacement DIP Documents, (i) there may be no waiver, modification or amendment

of any provision set forth under the heading "Economics" in the Committee Settlement Annex by

virtue of the occurrence or continuance of an Event of Default under the Replacement DIP

Documents, or otherwise without the consent of the DIP Borrower, the other applicable DIP Loan

Parties (to the extent required by the applicable Replacement DIP Document), the DIP Agent (at

the direction or instruction of the requisite Replacement DIP Lenders in accordance with Section

10.01 of the Replacement DIP Credit Agreement), and the Committee, (ii) there may be no waiver, modification, amendment and/or supplement of any provision of the Committee Settlement Annex without the prior written consent of the Committee; and (iii) there may be no waiver, modification, amendment and/or supplement of any provision of this Replacement DIP Order, the Replacement Intercreditor Annex, or the other Replacement DIP Documents relating to any aspect of the L/C Cash Collateralization with any Applicable Issuer or any of the rights and remedies of such Applicable Issuer with respect thereto (including as an Existing DIP Secured Party and an Existing Indemnified Party), or any L/C Cash Collateralization Agreement with such Applicable L/C Issuer, without the consent of such Applicable Issuer, and (iv) there may be no waiver, modification, amendment and/or supplement of any provision of this Replacement DIP Order, the Replacement Intercreditor Annex, or the other Replacement DIP Documents relating to the priority of indemnity, reimbursement and similar claims of any Existing DIP Secured Party (including, for avoidance of doubt, any Existing Indemnified Party), including as provided in paragraph 9(ii) hereof, without the consent of such Existing DIP Secured Party.

(o)     **Priority of Terms**.  To the extent of any conflict between or among (a) the express terms or provisions of any of the Replacement DIP Documents, the Motion, any other order of this Court (including, without limitation, the Cash Management Order and the Original DIP Orders), or any other agreements, on the one hand, and (b) the terms and provisions of this Replacement DIP Order, on the other hand, unless such term or provision herein is phrased in terms of "defined in" or "as set forth in" the Replacement DIP Credit Agreement, the terms and provisions of this Replacement DIP Order shall govern.

(p)     **Survival of Orders.**  The provisions of this Replacement DIP Order (including, without limitation, the Replacement Intercreditor Annex, the Committee Settlement

Annex, and the terms of Section 10.24 of the Replacement DIP Credit Agreement) and any actions

taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any

Plan in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under Chapter

7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of the

Chapter 11 Cases, (iv) withdrawing of the reference of any of the Chapter 11 Cases from this Court

or (v) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11

Cases in this Court.  The terms and provisions of this Replacement DIP Order, including the DIP

Liens, DIP Superpriority Claims, L/C Cash Collateral Liens and L/C Superpriority Claims granted

(or continued) pursuant to the DIP Orders and any protections granted to or for the benefit of the

Prepetition Secured Parties (including the adequate protection liens and claims granted to such

parties, as applicable), shall continue in full force and effect notwithstanding the entry of such

order, and such DIP Liens, DIP Superpriority Claims, L/C Cash Collateral Liens and L/C

Superpriority Claims shall maintain their respective priorities as provided by the DIP Orders

(including this Replacement DIP Order), the other Replacement DIP Documents and the

Prepetition Debt Documents (as the case may be), including any amended intercreditor

arrangement or agreements in respect thereof (as modified in accordance with the Replacement

Intercreditor Annex and Section 10.24 of the Replacement DIP Credit Agreement), and the

Committee Settlement Annex, until all of the DIP Obligations and Existing DIP Obligations

(subject to their relative priorities as set forth in the DIP Orders (including this Replacement DIP

Order), and including the Replacement Intercreditor Annex and the other Replacement DIP

Documents, and subject to the Committee Settlement Annex) have been Paid in Full and the

Prepetition Secured Obligations (to the extent secured) have been discharged.  The rights and

claims of the relevant parties to the original Committee Settlement Annex to the Original Final

DIP Order are reserved with respect to whether the maturity date under the Existing DIP Facilities has occurred, or will occur, for purposes of the original Committee Settlement Annex to the Original Final DIP Order.

(q)    **Enforceability.**  This Replacement DIP Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon execution hereof.  Any finding of fact shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.

(r)    **No Waivers or Modification of Order.**  The Debtors irrevocably waive any right to seek any modification or extension of this Replacement DIP Order without the prior written consent of the Required Lenders (subject to any additional voting, consent or other requirements and rights set forth in the Replacement DIP Credit Agreement implicated or affected by such modification or extension) in accordance with the Replacement DIP Credit Agreement (and/or, to the extent such modification relates to rights granted to the Committee hereunder or in the Committee Settlement Annex, without the prior written consent of the Committee), and no such consent shall be implied by any other action, inaction or acquiescence of the Replacement DIP Lenders or the Committee.  This Replacement DIP Order may not be modified to alter relative lien priority of the DIP Liens, the Prepetition First Priority Liens, the Prepetition Second Priority Liens and the Second Lien Adequate Protection Liens as set forth herein, the Replacement Intercreditor Annex, and subject to the Committee Settlement Annex.

(s)    **Prepetition Document**.  This Replacement DIP Order (including, without limitation, the Replacement Intercreditor Annex) is not intended to, and shall not, constitute a First

Lien Credit Agreement and/or a Second Lien Credit Agreement (each as defined in the Prepetition

Intercreditor Agreement).

(t)    **Waiver of Any Applicable Stay.**  Any applicable stay (including, without

limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this

Replacement DIP Order.

23.    **Limitation of Liability**.

(a)    In determining to make any loan or having made any loan under the

Replacement DIP Credit Agreement or the Existing DIP Credit Agreement or permitting the use

of Cash Collateral pursuant to this Replacement DIP Order or the Original Final DIP Order, the

other Replacement DIP Documents or the Prepetition Debt Documents, the DIP Secured Parties

and the Prepetition Secured Parties shall not be deemed to be in control of the operations of the

DIP Loan Parties or to be acting as a "responsible person" or "owner or operator" with respect to

the operation or management of the DIP Loan Parties, so long as the DIP Secured Parties actions'

and/or Prepetition Secured Parties' actions do not constitute, within the meaning of 42 U.S.C.

§ 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility

owned or operated by a DIP Loan Party, or otherwise cause liability to arise to the federal or state

government or the status of responsible person or managing agent to exist under applicable law

(as such terms, or any similar terms, are used in the United States Comprehensive Environmental

Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq*., as amended, or any similar

federal or state statute).    Furthermore, nothing in this Replacement DIP Order, the other

Replacement DIP Documents, or the Prepetition Debt Documents shall in any way be construed

or interpreted to impose or allow the imposition upon the DIP Secured Parties or the Prepetition

Secured Parties of any liability for any claims arising from the prepetition or postpetition activities

of any of the DIP Loan Parties; provided, that this sentence shall not apply to any liabilities owed to, or rights or causes of action held by, the United States or any Governmental Unit (as defined by section 101(27) of the Bankruptcy Code).  For the avoidance of doubt, any conflict between this Paragraph 23(a) and Paragraph 23(a) of the Original Final DIP Order shall be governed by this Replacement DIP Order.

(b)    **No Impact on Compliance with Laws.**  Nothing in this Replacement DIP Order, the Replacement DIP Documents, or the Prepetition Debt Documents shall permit the DIP Loan Parties to violate 28 U.S.C. § 959(b).

(c)    As to the United States, its agencies, departments, or agents, nothing in this Replacement DIP Order or the Agreements shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

24.    **Exercise of Roll-Up**.  The Roll-Up Election (to the extent not previously approved by the Original Final DIP Order) and the Roll-Up Election Materials (including, without limitation, the notice, instructions, procedures set forth therein) are hereby approved in all respects.  Due and sufficient notice of the Roll-Up Election and the Roll-Up Election Materials has been provided to all necessary and applicable parties.  The Roll-Up Election shall be binding on all parties pursuant to the terms thereof and as further set forth in the Roll-Up Election Materials, the DIP Orders, the Existing DIP Credit Agreement, and the Replacement DIP Credit Agreement.

25.    **Limitations on Liens/Guaranties**.    For the avoidance of doubt, and notwithstanding anything to the contrary in the Replacement DIP Documents, or this Replacement DIP Order, TerraForm Private, LLC and its direct and indirect subsidiaries and any other entity in which TerraForm Private, LLC owns, directly or indirectly, any equity interest (collectively, "**TerraForm Private Entities**") shall not be required to provide guarantees or liens or otherwise

pledge their assets as credit support for any of the DIP Obligations incurred by the DIP Borrower and/or the other DIP Loan Parties, nor shall any of the TerraForm Private Entities be otherwise bound by any of the terms of this Replacement DIP Order.

26.    [**Reserved**.]

27.    **Insurance, Surety Limitations**.

(a)    For the avoidance of doubt and notwithstanding anything herein to the contrary or the Replacement DIP Documents (including, without limitation, any other provision that purports to be preemptory or supervening), (i) to the extent ACE American Insurance Company and/or any of its affiliates (collectively, and together with each of their successors "**Chubb**") had valid, enforceable, perfected and non-avoidable liens and/or security interest on the DIP Collateral as of the Petition Date, which liens and/or security interests were senior to the liens and/or security interests of each of the Prepetition Secured Parties and were permitted by the terms of the applicable Prepetition Debt Documents, such liens and/or security interests shall be senior to any liens and/or security interests granted pursuant to this Replacement DIP Order, (ii) the DIP Agent, the Replacement DIP Lenders and the other Prepetition Secured Parties do not have liens and/or security interests on any letter(s) of credit for which Chubb is the beneficiary or any proceeds thereof and (iii) this Replacement DIP Order does not grant the Debtors any right to use any property (or proceeds thereof) held by Chubb as collateral to secure obligations under insurance policies and related agreements.

(b)    Notwithstanding anything in this Replacement DIP Order or the Replacement DIP Documents to the contrary, the entry of this Replacement DIP Order is without prejudice to, and does not constitute a waiver of, any rights of the sureties under (i) any surety bonds on which the DIP Loan Parties are principals or indemnitors under applicable law, (ii) any

indemnity and related agreements with the DIP Loan Parties or (iii) applicable law (including but not limited to the common law of equitable subrogation).   Entry of this Replacement DIP Order also shall not limit such sureties' rights to seek entry of an order mandating the segregation of proceeds, receivables, claims, and contract balances on projects bonded by such sureties or the right of any party (including, without limitation, the Debtors, the DIP Agent or the Replacement DIP Lenders) to object thereto.

28.    **Yieldco and Committee Notices.**  SunEdison shall provide to the Committee and to each of Yieldco, Yieldco II, Yieldco Intermediate, and Yieldco II Intermediate a copy of any notice delivered by the DIP Agent or the other DIP Secured Parties under any Replacement DIP Document with respect to any Event of Default within three (3) business days after the DIP Borrower has received such notice.  SunEdison shall also deliver to the Committee, subject to the applicable confidentiality provisions in the Committee's bylaws, which delivery may be on a professionals' eyes only basis:  (i) to the extent not otherwise publicly available, any report, notice, or other deliverable it is required to provide to any entity under sections 6.01, 6.02 (other than section 6.02(i) to the extent such information is not requested by the DIP Agent or the Specified Advisors), or 6.03 of the Replacement DIP Credit Agreement (but only to the extent actually provided thereunder) promptly after delivery thereof to the DIP Agent, (ii) notice of any voluntary or mandatory prepayment of any DIP Obligations pursuant to section 2.05 of the Replacement DIP Credit Agreement or any other prepayment of any principal amount of DIP Obligations, and a summary description of the source of proceeds used to make such payment, or (iii) other written materials required to be delivered from time to time to the DIP Agent and the Specified Advisors pursuant to the Replacement DIP Documents.  Failure by SunEdison to timely deliver any notice

required by this paragraph 28 to be delivered to the Committee and/or to Yieldco, Yieldco II,

Yieldco Intermediate, or Yieldco II Intermediate, shall not affect the validity of any such notice.

29.    **Committee Consultation Rights**.  The Committee shall continue to be afforded

consultation rights (with five (5) days' notice, to the extent reasonably practicable) by the DIP

Agent and the Replacement DIP Lenders in respect of (a) any items expressly set forth in this

Replacement DIP Order as consultation rights, (b) any waiver, amendment and/or consent to the

Replacement DIP Documents affecting any disposition, or series of related dispositions, of pre- or

postpetition assets of the DIP Loan Parties with aggregate proceeds in excess of $2,000,000,

subject to and without limiting any rights, obligations and benefits set forth in the proposed

procedures agreed to by the Debtors, the Committee, the DIP Agent, and the Replacement DIP

Lenders as set forth in the proposed Order Pursuant to Bankruptcy Code Sections 105(a), 363(b),

and 541(a)(1) and Bankruptcy Rules 2002, 6004, and 9006 Authorizing and Approving Procedures

for (A) the Sale or Transfer of Assets of Non-Debtor Subsidiaries; (B) the Sale or Transfer of De

Minimis Assets; and (C) Taking Corporate Action in Connection Therewith [Docket No. 479],

and/or (c) any amendment, modification and/or supplement to the DIP Budget, provided that (i)

such consultation rights shall be consultation rights only and shall not be deemed to create any

approval rights or rights to seek Bankruptcy Court relief in favor of the Committee with respect to

any of the foregoing actions, and (ii) nothing contained in this paragraph 29 shall be deemed to

limit the ability of the Committee to raise any objections to actions taken by the DIP Agent and

the Replacement DIP Lenders in violation of the Replacement DIP Documents.

30.    **Yieldco Agreement**.

(a)    For purposes of this paragraph 30, (i) the "YieldCos" shall mean,

collectively, YieldCo and YieldCo II and their respective subsidiaries, (ii) the "Settlement

Agreements" shall mean the Settlement Agreements entered into as of March 6, 2017 among each

YieldCo, respectively, and certain of the Debtors, (iii) the "Voting and Support Agreements" shall

mean the Voting and Support Agreements dated as of March 6, 2017, by and among each YieldCo,

respectively, Orion US Holdings LLP ("Brookfield"), the respective merger subsidiaries affiliated

with Brookfield (the "Applicable Merger Subs"), SUNE and certain of its subsidiaries and (iv) the

"Creditor Support Agreements" shall mean the creditor support agreements dated as of March 6,

2017, by and among each YieldCo respectively, Brookfield, the respective Applicable Merger

Subs and certain Supporting 2L Holders (as defined in the Creditor Support Agreements).

   (b)  All DIP Liens, DIP Superpriority Claims, Second Lien Adequate Protection

Liens and Second Lien Adequate Protection Claims, to the extent securing, attributable to or

providing adequate protection in respect of the DIP Obligations related to the Second Lien Roll-

Up Loans, in each case, shall be subject and subordinated to administrative claims of the YieldCos

that accrue after the Petition Date and before the Trigger Date, in a total amount not to exceed the

YieldCo Carveout Cap (as defined below) (the "**Carved-Out Yieldco Administrative Claims**");

provided, however, that the ability of any party to object to such claims shall not be impaired by

the terms of this Replacement DIP Order; and provided further, that the YieldCos shall retain the

burden of proof under section 503 of the Bankruptcy Code and any other applicable provision of

the Bankruptcy Code to establish the treatment of such claims as administrative expense or other

priority claims under section 503 or any other applicable section of the Bankruptcy Code.  The

"**YieldCo Carveout Cap**" shall mean $20 million. This paragraph 30, and the Carved-Out Yieldco

Administrative Claims and YieldCo Carveout Cap set forth hereunder, shall not be deemed

effective and will not be binding on any party until a Settlement Agreement has been terminated

at a time when (i) the Court has not entered final and non-appealable orders to approve the

Settlement Agreements and the Voting and Support Agreements or (ii) SunEdison is in material breach of any of the Settlement Agreements or Voting and Support Agreements or a Supporting 2L Creditor is in material breach of either Creditor Support Agreement.

31.    **India**.  The Replacement DIP Lenders shall not take, and the Debtors shall not pledge, any equity interest in any entity incorporated under the laws of India as collateral in connection with the Replacement DIP Facility.

32.    **Retention of Jurisdiction.**  The Court has and will retain jurisdiction to enforce this Replacement DIP Order according to its terms.

33.    **Non-Debtor Reservation of Rights**.  For the avoidance of doubt, subject in all respects to any rights that parties may have under the Replacement Intercreditor Annex (including, without limitation, their rights to enforce the priority waterfall), nothing in this Replacement DIP Order or the Replacement DIP Loan Documents shall (or shall be construed to) (a) release any rights or claims that any non-Debtor party may have against any other non-Debtor party (and, for purposes of this provision, the Committee is a "Debtor" party), or (b)(i) provide or create any indemnification obligation, or expand or increase any existing indemnification obligation, in each case arising under the Prepetition Second Lien Documents or relating to the Prepetition Second Lien Loans or the Prepetition Second Lien Notes or (ii) waive, limit, suspend, eliminate, amend, modify or otherwise alter in any way any indemnification obligations arising under the Prepetition Second Lien Documents or relating to the Prepetition Second Lien Loans and/or Prepetition Second Lien Notes, which are valid and enforceable to the extent set forth in the Prepetition Second Lien Documents or any related agreement.

34.    **DIP Agent Actions**.  For the avoidance of doubt, any action taken or not taken (or permitted to be taken or not taken) by the DIP Agent under this Replacement DIP Order shall only

be permitted to be taken (or not taken) in accordance with the Replacement DIP Credit Agreement,

including, without limitation, the authorizations and directions set forth therein.

So ordered.

Dated: New York, New York
May 1, 2017

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge