**Hearing Date: June 22, 2017 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: June 15, 2017 at 4:00 p.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Jay M. Goffman
J. Eric Ivester
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

-and-

James J. Mazza, Jr. (admitted *pro hac vice*)
Louis S. Chiappetta (admitted *pro hac vice*)
155 N. Wacker Dr.
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411

*Counsel for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | : | **Chapter 11** |
|  | : |  |
| **SUNEDISON, INC., *et al.*,** | : | **Case No. 16-10992 (SMB)** |
|  | : |  |
| **Debtors.[1]** | : | **(Jointly Administered)** |
|  | : |  |

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); EverStream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE MN Development, LLC (8669); SunE MN Development Holdings, LLC (5388); SunE Minnesota Holdings, LLC (8926); TerraForm Private Holdings, LLC (5993); Hudson Energy Solar Corporation (3557); SunE REIT-D PR, LLC (5519); SunEdison Products, LLC (4445); SunEdison International Construction, LLC (9605); Vaughn Wind, LLC (4825); Maine Wind Holdings, LLC (1344); First Wind Energy, LLC (2171); First Wind Holdings, LLC (6257); and EchoFirst Finance Co., LLC (1607).  The address of the Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

**NOTICE OF DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY
CODE SECTIONS 105, 362, 363(B), AND 365(A) AND BANKRUPTCY RULES 6004
AND 9019 AUTHORIZING AND APPROVING ENTRY INTO A TRANSITION
SERVICES AGREEMENT WITH TERRAFORM POWER, INC. REGARDING
<u>TRANSITION OF A PORTION OF THE GAM BUSINESS</u>**

**PLEASE TAKE NOTICE** that SunEdison, Inc. and certain of its affiliates, the

debtors and debtors in possession in the above-captioned cases (collectively, the "<u>Debtors</u>")

hereby file the *Debtors' Motion For Order Pursuant To Bankruptcy Code Sections 105, 362,*

*363(B), And 365(A) And Bankruptcy Rules 6004 And 9019 Authorizing And Approving Entry*

*Into A Transition Services Agreement With Terraform Power, Inc. Regarding Transition Of A*

*Portion Of The GAM Business* (the "<u>Motion</u>").

**PLEASE TAKE FURTHER NOTICE** that responses or objections to the

Motion and the relief requested therein, if any, must be made in writing and (a) filed with the

Bankruptcy Court no later than **4:00 p.m. (Prevailing Eastern Time) on June 15, 2017** (the

"<u>Objection Deadline</u>") and (b) served so as to be actually received by the following parties by the

Objection Deadline:

(i)      the Debtors, SunEdison, Inc., 13736 Riverport Dr., Maryland Heights,
Missouri 63043;

(ii)      counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, Four
Times Square, New York, NY 10036, Attn: Jay M. Goffman (<u>Jay.Goffman@skadden.com</u>), J.
Eric Ivester (<u>Eric.Ivester@skadden.com</u>), and 155 North Wacker Dr., Chicago, IL 60606, Attn:
James J. Mazza, Jr. (<u>James.Mazza@skadden.com</u>) and Louis S. Chiappetta
(<u>Louis.Chiappetta@skadden.com</u>);

(iii)      the Office of the United States Trustee, U.S. Federal Office Building, 201
Varick Street, Suite 1006, New York, NY 10014, Attn: Paul Schwartzberg
(<u>Paul.Schwartzberg@usdoj.gov</u>);

(iv)      counsel to the administrative agent under the Debtors' prepetition first lien
credit agreement, Latham & Watkins, 330 North Wabash Avenue, Suite 2800, Chicago, IL, Attn:
Richard Levy (<u>richard.levy@lw.com</u>) and Brad Kotler (<u>brad.kotler@lw.com</u>);

(v)     counsel to the Tranche B Lenders (as defined in the debtor-in-possession credit agreement) and the steering committee of the second lien creditors, Akin Gump Strauss Hauer & Field, LLP, One Bryant Park, Bank of America Tower, New York, NY, 10036, Attn: Arik Preis (apreis@akingump.com) and Naomi Moss (nmoss@akingump.com);

(vi)    counsel to the administrative agent under the Debtors' prepetition second lien credit agreement, Pillsbury Winthrop Shaw Pittman LLP, 1540 Broadway, New York, NY 10036, Attn: Daniel S. Brown (daniel.brown@pillsburylaw.com);

(vii)   counsel to the collateral trustee under the Debtors' prepetition second lien credit agreement and the indenture trustee under each of the Debtors' outstanding bond issuances, WilmerHale, 7 World Trade Center, New York, NY  10007, Attn: Andrew Goldman (andrew.goldman@wilmerhale.com);

(viii)  the Office of the United States Attorney for the Southern District of New York, 86 Chambers Street, 3rd Floor, New York, NY 10007;

(ix)    counsel to the administrative agent under the postpetition debtor-in-possession financing facility, White & Case LLP, 1155 Avenue of the Americas, New York, NY 10036-2787, Attn: Scott Greissman (sgreissman@whitecase.com) and Elizabeth Feld (efeld@whitecase.com);

(x)     counsel to the ad hoc group of certain holders of the Debtors' convertible senior notes, White & Case LLP, 1155 Avenue of the Americas, New York, NY 10036-2787, Attn: Tom Lauria (tlauria@whitecase.com);

(xi)    counsel to the official committee of unsecured creditors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Matthew S. Barr, David J. Lender, Jonathan D. Polkes, Joseph H. Smolinsky and Jill Frizzley (SunEWeilBFR@weil.com) and Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019, Attn: Lorenzo Marinuzzi (lmarinuzzi@mofo.com), Jennifer Marines (jmarines@mofo.com) and Jonathan I. Levine (jonlevine@mofo.com);

(xii)   counsel to TerraForm Power, Inc. and TerraForm Global, Inc., Sullivan & Cromwell, 125 Broad Street, New York, NY 10004, Attn: Michael H. Torkin (torkinm@sullcrom.com), Andrew G. Dietderich (dietdericha@sullcrom.com), John L. Hardiman (hardimanj@sullcrom.com) and David R. Zylberberg (zylberbergd@sullcrom.com);

(xiii)  the Internal Revenue Service, 290 Broadway, New York, NY 10007, Attn: District Director;

(xiv)   the Securities and Exchange Commission, 200 Vesey Street, Suite 400, New York, NY 10281, Attn: Bankruptcy Department.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge for the Southern District of New York, in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom 723, New York, New York 10004 (the "Bankruptcy Court"), on **June 22, 2017 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing"), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that unless a written objection to the Motion, with proof of service, is filed with the Bankruptcy Court and a courtesy copy delivered to the Honorable Stuart M. Bernstein's chambers by the Objection Deadline, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order attached to the Motion, which order may be entered with no further notice or opportunity to be heard.

Dated: June 1, 2017
      New York, New York

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  */s/ J. Eric Ivester*
      Jay M. Goffman
      J. Eric Ivester
      Four Times Square
      New York, New York 10036-6522
      Telephone: (212) 735-3000
      Fax: (212) 735-2000
      -and-
      James J. Mazza, Jr. (admitted *pro hac vice*)
      Louis S. Chiappetta (admitted *pro hac vice*)
      155 N. Wacker Dr.
      Chicago, Illinois 60606-1720
      Telephone: (312) 407-0700
      Fax: (312) 407-0411

*Counsel for Debtors and Debtors in Possession*

Hearing Date: June 22, 2017 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: June 15, 2017 at 4:00 p.m. (Prevailing Eastern Time)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Jay M. Goffman
J. Eric Ivester
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

-and-

James J. Mazza, Jr. (admitted *pro hac vice*)
Louis S. Chiappetta (admitted *pro hac vice*)
155 N. Wacker Dr.
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411

*Counsel for Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | : | **Chapter 11** |
|  | : |  |
| **SUNEDISON, INC.,** *et al.,* | : | **Case No. 16-10992 (SMB)** |
|  | : |  |
| **Debtors.**[1] | : | **Jointly Administered** |
|  | : |  |

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); Everstream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE MN Development, LLC (8669); SunE MN Development Holdings, LLC (5388); SunE Minnesota Holdings, LLC (8926); Terraform Private Holdings, LLC (5993); Hudson Energy Solar Corporation (3557); SunE REIT-D PR, LLC (5519); SunEdison Products, LLC (4445); SunEdison International Construction, LLC (9605); Vaughn Wind, LLC (4825); Maine Wind Holdings, LLC (1344); First Wind Energy, LLC (2171); First Wind Holdings, LLC (6257); and EchoFirst Finance Co., LLC (1607). The address of the Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

**DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE
SECTIONS 105, 362, 363(B), AND 365(A) AND BANKRUPTCY RULES 6004 AND 9019
AUTHORIZING AND APPROVING ENTRY INTO A TRANSITION SERVICES
AGREEMENT WITH TERRAFORM POWER, INC. REGARDING TRANSITION OF A
<u>PORTION OF THE GAM BUSINESS</u>**

SunEdison, Inc. ("<u>SUNE</u>") and certain of its affiliates, the debtors and debtors in

possession in the above-captioned cases (collectively, the "<u>Debtors</u>" and, together with their non-

Debtor affiliates, "<u>SunEdison</u>" or the "<u>Company</u>"),[2] hereby move (the "<u>Motion</u>") this Court for

entry of an order substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Order</u>"), under

sections 105, 362, 363(b), and 365(a) of title 11 of the United States Code (the "<u>Bankruptcy

Code</u>"), and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>") authorizing, but not directing, the Debtors to enter into the Court-Approved

Provisions[3] of the transition services agreement (the "<u>GAM TSA</u>," attached at <u>Exhibit B</u>), dated

June 1, 2017, by and between SUNE, certain affiliates of SunEdison listed in <u>Appendix 1</u> to the

GAM TSA (such affiliates of SunEdison together, the "<u>Service Providers</u>"), and TERP (together

with SunEdison and the Service Providers, the "<u>Parties</u>") providing for: (i) the transition of

certain employees of the Global Asset Management North American business unit (the "<u>GAM

Business</u>") and employee-related obligations from SunEdison to TERP; (ii) certain transitionary

GAM Business services from SunEdison and certain of its affiliates to TERP and certain of its

affiliates; and (iii) the waiver of certain claims arising under the Master Services Agreement and

TERP Contracts (as those are defined in the GAM TSA).  In support of the Motion, the Debtors

rely upon and incorporate by reference the Declaration of Philip J. Gund (the "<u>Gund

---

[2]    For purposes herein, the definition of "SunEdison" and "Company" does not include Terraform Power, Inc.
(together with TerraForm Power, LLC and TerraForm Power Operating, LLC, "<u>TERP</u>") and Terraform Global,
Inc., and each of their respective direct and indirect subsidiaries, collectively the "<u>YieldCos</u>", unless otherwise
provided.

[3]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the
GAM TSA.

Declaration") attached hereto as Exhibit C.  In further support of the Motion, the Debtors, by and

through their proposed undersigned counsel, respectfully represent:

## PRELIMINARY STATEMENT

1.    Throughout the Chapter 11 Cases, the Debtors have engaged in robust sale

and marketing efforts to monetize assets and maximize value for the estates.  In connection with

these efforts, beginning in May 2016, SunEdison conducted a marketing process for its GAM

Business.  A significant portion of the GAM Business volume (approximately 60%) is

attributable to services provided to affiliates of TerraForm Power, Inc. ("TERP") and TerraForm

Global, Inc. ("GLBL," and together with TERP, the "YieldCos").[4]

2.    Simultaneously with the Debtors' marketing process, and in connection

with the YieldCos' exploration of strategic alternatives that ultimately resulted in the proposed

merger transactions between the YieldCos and affiliates of Brookfield Asset Management, Inc.,

the YieldCos evaluated whether they would continue receiving operating and asset management

services from the GAM Business (either from SUNE or a purchaser of the GAM Business), and

they informed the Debtors in late fourth quarter of 2016 that they generally would exercise

asserted rights under their agreements with the GAM Business—certain of which were disputed

by the Debtors—to terminate their relationships with the GAM Business.  Because the services

provided to the YieldCos  comprised such a large portion of the GAM Business volume, the

value of the GAM Business was limited by the YieldCos' decision to terminate their relationship

with the GAM Business.  In light of this, ultimately, in February 2017, the one party still

pursuing purchasing the GAM Business ceased negotiations.

---

[4]    Approximately 45% of the volume of the GAM Business is attributable to services provided to TERP and 15% of the volume of the GAM Business is attributable to services provided to GLBL.

3

3.      The GAM Business has not operated at a profit since at least December

2016.  Accordingly, while the Debtors have tried to gauge interest in a substantially reduced

GAM Business, the Debtors have also focused efforts on reducing costs associated with

operating the GAM Business.

4.      After considering its alternatives, the Debtors determined that immediate

rejection of the Management Services Agreements and the TERP Contracts would have a

detrimental effect on TERP –  one of the Company's most valuable assets – because TERP-

affiliated Service Recipients rely on the GAM Business for monitoring, reporting, and

management and operation of their facilities, including compliance with certain regulatory

requirements and the terms of certain credit facilities.  Accordingly, the Debtors determined to

work with TERP to facilitate an orderly transition of the GAM Business employees, including

employee-related obligations, and GAM Business services to develop in-house capabilities or

alternative third party providers.[5]

5.      The Debtors and TERP have engaged in good faith negotiations to reach

an agreement that preserves the value of TERP, preserves the jobs of up to 138 employees—73

of which were previously transferred to TERP and 65 employees that have been identified as

potential hires, and relieves the Debtors of the obligations and costs associated with providing

GAM Business services to TERP.  Gund Declaration ¶ 10.  At its core, the GAM TSA provides

for the orderly transition of GAM Business employees who provide asset management and

operating and maintenance services to TERP as well as the transition of service responsibilities

performed by such employees.  In particular, the GAM TSA between SUNE, certain affiliates of

---

[5]    The Debtors have also determined to work with GLBL to facilitate a similar orderly transition of certain global
asset management employees to GLBL.  However, the Debtors and GLBL have not yet documented the terms
of any transition services agreement.

SUNE ("Service Providers"), certain of which are Debtors, and TERP will provide the terms and

conditions by which certain affiliates of TERP ("Service Recipients") and certain of their

respective affiliates and designees are permitted to make and have made offers of employment to

employees of the Service Providers. The GAM TSA also will provide the terms and conditions

by which SUNE, Service Providers, TERP, and Service Recipients will cooperate in order to

transition or subcontract to new service providers the services and obligations that are the subject

of asset management and operation and maintenance contracts ("TERP Contracts") between the

Service Providers and the Service Recipients.

      6.     In addition, as detailed more fully below, the GAM TSA also (i) waives

alleged defaults and breaches arising after December 18, 2016 under the Management Services

Agreement resulting from the transition of the GAM Employees; (ii) waives alleged defaults and

breaches arising after December 18, 2016 under the TERP Contracts (other than for non-

performance of the SUNE Direct Services, which will continue until the TERP Contracts are

terminated or rejected) and indemnifies the Debtors with respect to claims arising under the

TERP Contracts; and (iii) provides that all TERP Contracts will be terminated or rejected by

September 30, 2017.[6]

      7.     For the foregoing reasons, the Debtors believe that the GAM TSA is in the

best interests of their estates, creditors, and other parties in interest and request that the Court

enter an order approving the GAM TSA.

---

[6]    This provision is subject to the Plan which provides for automatic rejection of all contracts that are not
identified on Exhibit 8.1 to the Plan as of the Effective Date. Accordingly, if the Effective Date occurs prior to
September 30, such contracts may be rejected on the Effective Date.

**JURISDICTION AND VENUE**

8.    This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

9.    The legal predicates for the relief requested herein are Bankruptcy Code sections 105, 362, 363(b), and 365(a) and Bankruptcy Rules 6004 and 9019.

**BACKGROUND**

**A.    The Chapter 11 Cases**

10.    On April 21, 2016,[7] twenty-six of the Debtors filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court, with additional Debtors filing voluntary petitions on June 1, July 20, August 9, August 10, December 16, 2016 and April 7, 2017 (collectively, the "Chapter 11 Cases").  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered.

11.    The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

12.    On April 29, 2016, the Office of the United States Trustee for the Southern District of New York appointed an Official Committee of Unsecured Creditors (the "Committee"). To date, no trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.

---

[7]    Except as otherwise indicated, references herein to the "Petition Date" shall mean April 21, 2016.

13.     Additional factual background information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to these Chapter 11 Cases, is set forth in detail in the First Day Declaration.

**B.     The GAM Business**

14.     The GAM Business services the renewable energy assets of SunEdison and third parties, including the renewable energy assets owned by affiliates of TERP.   The GAM Business includes renewable operations centers ("ROCs") that provide monitoring of renewable energy systems and measure such systems' outputs in minute-level increments.   Under certain asset management and operation and maintenance ("O&M") contracts, SunEdison personnel (or subcontractors) are responsible for contract management accounting and other administrative services, corrective and preventive maintenance of projects, as well as maintaining the renewable-energy assets in good working order.   Since at least December 2016, the GAM Business has not been operating at a profit for the Debtors.

15.     The GAM Business is comprised of an information technology, management, and processes platform that was anticipated to generate profits on the margin produced by a high volume of business.   Historically, 60% of the volume of business generated by the GAM Business are services provided to the YieldCos and their affiliates, of which 45% is attributable to services provided to TERP  and its affiliates (such affiliates, the "Service Recipients") and 15% is attributable to services provided to GLBL and its affiliates.   The Service Recipients currently rely on the GAM Business to provide necessary services to operate the projects, as well as to remain in compliance with certain regulatory requirements (including the Federal Energy Regulatory Commission ("FERC")) and certain of their respective credit agreements.

7

16.     As part of the Company's efforts to monetize assets, beginning in May 2016, the Debtors undertook a marketing process with respect to the GAM Business.  Initially, approximately 14 parties included the GAM Business in their bids on Company assets.  After reviewing these bids, the Company engaged in more substantive discussions regarding the GAM Business assets with three parties, who conducted detailed diligence on the GAM Business.

17.     Following the filing of the Chapter 11 Cases and simultaneously with the marketing process, the YieldCos undertook an evaluation of the asset management and O&M contracts pursuant to which the GAM Business provided services.  By late fourth quarter of 2016, the YieldCos had informed the Debtors that they would seek to terminate their relationships with the GAM Business by exercising asserted rights under their respective contracts—certain of which the Debtors disputed.[8]

18.     As a result, the value of the GAM Business was significantly impacted, given the 60% volume of GAM Business services historically attributable to the YieldCos.  This, in turn, had a significant impact on SUNE's efforts to market and sell the GAM Business, resulting in all but one party that had expressed interest falling away.  Eventually, in February 2017, after months of negotiations, the sole remaining party interested in purchasing the GAM Business ceased negotiations as a result of the decrease in volume.

19.     Thereafter, the Company evaluated alternatives for the GAM Business that would maximize estate value and reduce costs.  The Company determined that stopping services to TERP altogether without an orderly transition and simply rejecting all TERP Contracts and/or terminating all GAM employees would have a detrimental effect on the value of TERP.  The

---

[8]     As explained below, whether or not TERP had enforceable rights under the TERP Contracts and Management Services Agreement to terminate these agreements was disputed by the Debtors and would have been the subject of litigation between the parties.

Service Recipients rely on the ROC services provided by the GAM Business for monitoring and reporting requirements, including compliance with certain regulatory requirements (including FERC). In addition, the Service Recipients rely on the GAM Business for management and operation of their facilities. These services are also required in order to remain in compliance with certain credit agreements.

20.     Accordingly, the Debtors determined to work with TERP to facilitate an orderly transition of the GAM Business employees, including employee-related obligations and contracts, and GAM Business services to develop in-house capabilities or alternative third party providers.

**C.     The GAM TSA**[9]

21.     The GAM TSA is the result of six months of good faith, arms' length negotiations between the Debtors and TERP regarding the transition of the GAM Business employees and services.

22.     While the parties were negotiating the GAM TSA, during the first quarter of 2017, TERP continued to pay all fees payable under the TERP Contracts and the Management Services Agreement. In addition, during that same period, TERP reimbursed SunEdison for the costs of certain GAM Business employees providing services to TERP. For services provided after March 31, 2017, TERP will reimburse SunEdison for the costs of remaining GAM Business employees providing services to TERP as well as GAM Business-related costs incurred by the Company in the provision of services to TERP, and will pay a margin.

23.     Key provisions of the GAM TSA, include:[10]

---

[9]     Capitalized terms used herein have the meaning ascribed them in the GAM TSA.

- SUNE Waiver of Non-Compete Agreements:  The Company has agreed to waive any non-compete and non-solicit restrictions on the employees that have already or will be transitioned to TERP.

- TERP Waivers and Indemnification:  TERP has agreed to provide certain waivers and indemnifications (collectively, the "TERP Waivers") related to the Management Services Agreement and the TERP Contracts:

  o TERP will irrevocably waive any alleged defaults or breaches of SunEdison arising after December 18, 2016 under the Management Services Agreement arising out of or resulting from the transition of employment of GAM Employees from Service Providers to New Employers.

  o TERP will also irrevocably waive any alleged defaults or breaches of SunEdison and each Service Provider arising after December 18, 2016 under each TERP Contract arising out of or resulting from (i) any action or inaction by a Service Provider to perform obligations under the TERP Contracts other than SUNE Direct Services required under the GAM TSA to be performed, (ii) the termination of the TERP Contracts as contemplated by Section 2.1 of the GAM TSA, or (iii) any event contemplated by the GAM Gateway Letter Agreement.

  o TERP, and to the extent not subject to a required consent by any third party, the Service Recipients will indemnify and hold harmless SunEdison and each relevant Service Provider for all Losses arising after December 18, 2016 arising out of, resulting from or in connection with (1) any actions or omissions arising out of services delegated or subcontracted by a Service Provider to a New Employer or a TERP Subcontractor or otherwise provided by the New Employers or the TERP Subcontractor, including any such services provided pursuant to a TERP Subcontract, (2) any action or inaction by a Service Provider to perform obligations under the TERP Contracts other than SUNE Direct Services required under the GAM TSA to be performed, (3) the termination of the TERP Contracts as contemplated by Section 2.1 of the GAM TSA, or (4) all claims waived under the GAM TSA.

- Agreement Not to Reject Contracts:  Other than as otherwise set forth in the GAM TSA or in any plan of reorganization, and subject to certain conditions, the Debtors have agreed not to reject or terminate the TERP Contracts until September 30, 2017.

- SUNE Waiver of Termination Fees:  All TERP Contracts will be terminated by September 30, 2017, or Service Providers will have the right to reject any TERP Contracts after September 30, 2017.  Upon a Service Recipient's notice, Service

---

*(cont'd from previous page)*

[10]  Any summary contained herein is qualified in its entirety by reference to the relevant provisions of the GAM TSA.

Providers will execute a termination agreement and waive any termination fees payable under the TERP Contract.

- <u>Performance of SUNE Direct Services</u>:  Subject to the conditions set forth in the GAM TSA, Service Providers will continue to provide certain transitionary service to Service Recipients.

- <u>Transitional Arrangements</u>:  The Service Providers will subcontract with TERP to provide the services under the TERP Contracts (except the SUNE Direct Services). Under these subcontracts, the Service Provider will pay TERP each month on the terms set forth in the GAM TSA.  The subcontract will terminate upon the termination or rejection of the applicable TERP Contract.  Related to these transitional arrangements, each Service Provider agrees to use commercially reasonable efforts to assign certain contracts and agreements used by a Service Provider in the performance of any TERP Contract.

## RELIEF REQUESTED

24.    By this Motion, the Debtors seek entry of an order substantially in the form attached hereto as <u>Exhibit A</u>, pursuant to Bankruptcy Code sections 105(a), 362, 363(b), and 365(a) and Bankruptcy Rules 6004 and 9019 authorizing the Debtors to enter into the GAM TSA.  For the reasons set forth herein, the Debtors submit that the relief requested herein is in the best interest of the Debtors, their estates, creditors, stakeholders, and other parties in interest, and therefore, should be granted.

## APPLICABLE AUTHORITY

25.    This Court has discretion to approve the Debtor's entry into the GAM TSA under Bankruptcy Code section 363 after notice and a hearing.  <u>See</u> <u>Comm. of Equity Sec. Holders v. Lionel Corp.</u> (<u>In re Lionel Corp.</u>), 722 F.2d 1063 (2d Cir. 1983).  The procedure for approving a settlement in bankruptcy is set forth in Bankruptcy Rule 9019, which states:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

**A.      The Debtors' Entry into the GAM TSA Should be Approved under Bankruptcy Code Section 363**

26.      Under Bankruptcy Code section 363(b)(1), a debtor in possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In determining whether to authorize a debtor to use property under Bankruptcy Code section 363(b)(1), courts require the debtor to demonstrate that a sound business purpose justifies its actions. See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983).

27.      Once the debtor has articulated a valid business purpose, courts consider whether relief is justified under the business judgment rule. See Lionel Corp., 722 F.2d at 1071. "The business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule has "vitality" in chapter 11 cases and presumes that a debtor's management decisions are reasonable. See Integrated Resources, 147 B.R. at 656; Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").

28.      Here, there are sound business justifications supporting the Debtors' entry into the GAM TSA. Entry into the GAM TSA is in the best interests of the Debtors' estates because it maximizes value of one of the Debtors' most valuable assets – TERP, while reducing costs associated with the continued operation of the GAM Business.

12

29.     As the record has made clear, it is in the Debtors' best interest to preserve and enhance the value of the YieldCos, including TERP.  Because TERP is currently dependent on the GAM Business to provide services necessary for operation and management of its assets and compliance with certain regulatory requirements and certain credit agreements, an immediate rejection of the relevant contracts and severance of the GAM Business employees would be detrimental to the Service Recipients.  Gund Declaration ¶ 7.  The GAM TSA allows for an orderly transition of the GAM Business employees to TERP and the GAM Business services to new subcontractors, which will permit TERP and the Service Recipients a period  to prepare to operate their assets independently from SunEdison, which is in the process of substantially winding down operations.  Gund Declaration ¶ 14.

30.     The GAM TSA also allows the Company to reduce costs associated with continuing to operate the GAM Business for the benefit of TERP.  Specifically, TERP has assumed certain GAM Business employee obligations, including payroll and benefits, thereby allowing the Debtors to avoid up to approximately $2.3 million of severance obligations—$1.1 million of severance obligations for the employees that have already been hired by TERP and approximately $1.2 million for the employees that have been identified as potential hires, and obligations arising under key employee retention programs.  Gund Declaration ¶ 11.  In addition, the GAM TSA has the result of preserving the jobs of up to 138 GAM Business employees.

31.     The GAM TSA provides also for termination or rejection of the TERP Contracts and the Management Services Agreement by September 30, 2017.  Accordingly, after September 30, 2017 at the latest, the Debtors will have no further obligations to continue performing under the TERP Contracts.  Gund Declaration ¶ 11.

13

32.     In addition to the foregoing, the GAM TSA provides certain waivers by TERP, and to the extent third party approval is not required, by Service Recipients, of claims arising after December 18, 2016 (the date that TERP began offering employment to certain GAM Business employees) under the Management Services Agreement and the TERP Contracts. The Company disputes that TERP or the Service Recipients have any valid claims under these agreements.  In addition, TERP will indemnify SunEdison and the Service Providers for losses arising after December 18, 2016 resulting from services delegated to subcontractors, performance or non-performance under the TERP Contracts (other than SUNE Direct Services), and termination of the TERP Contracts.

33.     In exchange for these benefits, the GAM TSA requires the Service Providers to execute a termination agreement to terminate any applicable TERP Contract upon the request of the applicable Service Recipient and waive and release any amounts payable post-termination thereunder, including any termination fees.  The Debtors believe that determination of whether the TERP Contracts and Management Services Agreement were terminable by their terms, and therefore, whether the Debtors would be entitled to any termination fees thereunder would likely be subject to expensive litigation between the relevant parties.  Moreover, in light of: (i) the TERP value that will be preserved by an orderly transition of GAM business employees and services, (ii) the waiver of claims and indemnities that TERP will provide under the GAM TSA, (iii) the fact that TERP (A) during the first quarter, paid all fees payable under the TERP Contracts and Management Services Agreement and reimbursed the Company for the costs of certain GAM Business employees who provided services to TERP and (B) for services provided after March 31, 2017, will reimburse the Company for the costs of certain GAM Business employees who provide services to TERP as well as GAM Business-related costs

14

incurred by the Company in the provision of services to TERP, and will pay a margin, and

(iv) the substantially reduced services the Service Providers will provide and attendant reduced

costs, the Debtors view the waiver of payments arising under the TERP Contracts, including any

termination fees, as reasonable.  Gund Declaration ¶ 14.

34.    For the foregoing reasons, the Debtors' entry into the GAM TSA

represents a sound exercise of their business judgment.  Gund Declaration ¶ 16.

**B.    The GAM TSA Should be Approved under Bankruptcy Rule 9019**

35.    Moreover, this Court has authority to approve the GAM TSA pursuant to

Bankruptcy Rule 9019.  Rule 9019 provides, in relevant part, that "[o]n motion by the trustee and

after notice and a hearing, the court may approve a compromise or settlement." Bankruptcy Rule

9019(a). Settlements and compromises are "a normal part of the process of reorganization."

Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S.

414, 424 (1968) (quoting Case v. L.A. Lumber Prods. Co., 308 U.S. 106, 130 (1939)); see also In

re Adelphia Commc'ns Corp., 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (decision to accept or

reject settlement lies within sound discretion of bankruptcy court).

36.    Approval of a compromise under Bankruptcy Rule 9019(a) is appropriate

when the compromise is fair and equitable and is in the best interests of a debtor's estate. See,

e.g., TMT Trailer Ferry, 390 U.S. at 424; Adelphia Commc'ns, 327 B.R. at 159 ("The settlement

need not be the best that the debtor could have obtained.  Rather, the settlement must fall 'within

the reasonable range of litigation possibilities.'") (citations omitted) (quoting In re Penn Cent.

Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979)); Nellis v. Shugrue, 165 B.R. 115, 121

(S.D.N.Y. 1994) ("The obligation of the bankruptcy court is to determine whether a settlement is

in the best interest of an estate before approving it.").  In general, compromises in the bankruptcy

context should be approved unless they "'fall below the lowest point in the range of reasonableness.'" Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (quoting Newman v. Stein, 464 F. 2d 689, 693 (2d Cir. 1972)).

37.     Courts in this district have considered the following factors when determining whether a proposed settlement or compromise is in the best interests of a debtor's estate: (a) the balance between the likelihood of plaintiff's or defendants' success should the case go to trial vis-à-vis the concrete present and future benefits held forth by the settlement without the expense and delay of a trial and subsequent appellate procedures; (b) the prospect of complex and protracted litigation if the settlement is not approved; (c) the proportion of the class members who do not object or who affirmatively support the proposed settlement; (d) the competency and experience of counsel who support the settlement; (e) the relative benefits to be received by individuals or groups within the class; (f) the nature and breadth of releases to be obtained by the directors and officers as a result of the settlement; and (g) the extent to which the settlement is truly the product of arm's-length bargaining, and not of fraud or collusion. See In re Iridium Operating LLC, 478 F.3d 452, 462 (2d Cir. 2007), (citing TMT Trailer Ferry, 390 U.S. at 424 25); Adelphia Commc'ns, 327 B.R. at 159-60; accord In re Texaco Inc., 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988).

38.     A bankruptcy court need not determine that all of the foregoing criteria favor approval of a compromise, and the proposed compromise need not be the best agreement that the debtor could have achieved under the circumstances. See Adelphia Commc'ns, 327 B.R. at 159 60; Penn Cent., 596 F.2d at 1114.  Instead, the bankruptcy court's "role is to determine whether the settlement as a whole is fair and equitable," In re Lee Way Holding Co., 120 B.R. 881, 890 (Bankr. S.D. Ohio 1990), and to ascertain whether the settlement falls "'within the

16

reasonable range of litigation possibilities.'" In re Telesphere Commc'ns, Inc., 179 B.R. 544,

553 (Bankr. N.D. Ill. 1994). To that end, bankruptcy courts should not substitute their own

judgment for that of the debtor, but rather should "canvass the issues" to affirm that the proposed

settlement falls above "the lowest point in the range of reasonableness.'" Adelphia Commc'ns,

327 B.R. at 159 (quoting W.T. Grant Co., 699 F.2d at 608 (2d Cir. 1983)); accord Air Line Pilots

Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.), 156 B.R. 414, 426

(S.D.N.Y. 1993), aff'd sub nom. Sobchack v. Am. Nat'l Bank & Trust Co., 17 F.3d 600 (2d Cir.

1994).

   39. Here, the GAM TSA is well above the lowest rung in the range of

reasonableness. The GAM TSA: (i) allows the Debtors to maximize the value of their interests

in TERP by providing for an orderly transition of GAM Business employees to TERP and GAM

Business services to new subcontractors so that the Service Recipients can continue operating

their assets (which ultimately drive the value of TERP) without complete dependence upon

SunEdison; (ii) relieves SunEdison of performing under the TERP Contracts or Management

Services Agreement after September 30, 2017; (iii) reduces the Company's GAM Business

employee-related obligations, including severance obligations and key employee retention

obligations; and (iv) preserves the jobs of up to 138 GAM Business employees. In addition,

TERP has agreed to waive certain claims, which SunEdison disputes, and will indemnify SUNE

and the Service Providers for certain claims arising after employees began transitioning from the

Debtors to TERP.

   40. As a result of the YieldCos' decision not to continue using the Service

Providers to provide GAM Business services, the volume of business conducted by the GAM

Business has been reduced by approximately 60%. Consequently, the value of the GAM

Business has substantially declined and, to date, while the Debtors are involved in negotiations to liquidate the remaining GAM Business, the Debtors have not entered into any definitive agreements to sell remaining GAM Business assets.

41.    As an alternative to the GAM TSA, the Debtors would likely reject the TERP Contracts and the Management Services Agreement and sever GAM Business employees. Gund Declaration ¶ 15.  As described above, immediate rejection of these contracts and/or severance of GAM Business employees would be detrimental to TERP and would likely result in expensive litigation to resolve, among other things, the amounts payable under the TERP Contracts, including any termination fees, breaches of contract claims by TERP and the Company, and payment of severance obligations.  Gund Declaration ¶ 15.  With the GAM TSA in place, the Debtors can avoid the uncertainties associated with these issues.

42.    Finally, the GAM TSA was negotiated at arm's-length with experienced counsel who understand the complexity of the entities involved and implications of failing to reach a settlement.

43.    Accordingly, the Debtors submit that the Iridium factors weigh in favor of finding that the GAM TSA is in the best interests of the Debtors' estates and should be approved by the Court.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

44.    The Debtors also request that the Court waive any applicable stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate without

interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request

that the Court waive the fourteen day stay imposed by Bankruptcy Rule 6004(h), as the exigent

nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

45.     Nothing contained herein is or should be construed as: (a) an admission as

to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any

claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any

executory contract or unexpired lease pursuant to Bankruptcy Code section 365; or (e) otherwise

affect the Debtors' rights under Bankruptcy Code section 365 to assume or reject any executory

contract with any party subject to this Motion.

## NOTICE

46.     Notice of this Motion shall be given to (a) the Office of the United States

Trustee for the Southern District of New York; (b) counsel to the administrative agent under the

Debtors' prepetition first lien credit agreement; (c) counsel to the Tranche B Lenders (as defined

in the DIP Credit Agreement) and the steering committee of the second lien creditors (the

"Steering Committee"); (d) counsel to the administrative agent under the Debtors' prepetition

second lien credit agreement; (e) counsel to the collateral trustee under the Debtors' prepetition

second lien credit agreement; (f) counsel to the indenture trustee under each of the Debtors'

outstanding bond issuances; (g) the U.S. Attorney for the Southern District of New York;

(h) counsel to the administrative agent under the postpetition debtor-in-possession financing

facility; (i) counsel to the Committee in these Chapter 11 Cases; (j) counsel to TerraForm Power,

Inc. and TerraForm Global, Inc.; (k) the Internal Revenue Service; (l) the Securities and

Exchange Commission; (m) counsel to the Landlord; and (n) any such other party entitled to

notice pursuant to Rule 9013-1(b) of the Local Bankruptcy Rules for the United States

Bankruptcy Court for the Southern District of New York.  The Debtors submit that no other or

further notice need be provided.

## NO PRIOR REQUEST

47.    No previous request for the relief sought herein has been made to this

Court or any other court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: New York, New York
   June 1, 2017

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: */s/ J. Eric Ivester*    
   Jay M. Goffman
   J. Eric Ivester
   Four Times Square
   New York, New York 10036-6522
   Telephone: (212) 735-3000
   Fax: (212) 735-2000

   -and-

   James J. Mazza, Jr. (admitted *pro hac vice*)
   Louis S. Chiappetta (admitted *pro hac vice*)
   155 N. Wacker Dr.
   Chicago, Illinois 60606-1720
   Telephone: (312) 407-0700
   Fax: (312) 407-0411

   *Counsel for Debtors and Debtors in Possession*

**<u>EXHIBIT A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | : **Chapter 11** |
| | : |
| **SUNEDISON, INC.,** *et al.*, | : **Case No. 16-10992 (SMB)** |
| | : |
| **Debtors.**[1] | : **(Jointly Administered)** |
| | : |

## ORDER GRANTING DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A), 362, 363(B), AND 365(A) AND BANKRUPTCY RULES 6004 AND 9019 AUTHORIZING AND APPROVING THE TRANSFER AND TRANSITION OF A PORTION OF THE GLOBAL ASSET MANAGEMENT BUSINESS UNIT TO CERTAIN AFFILIATES OF TERRAFORM POWER, INC.

Upon the motion (the "Motion")[2] of the Debtors for an Order, pursuant to sections

105(a), 362, 363(b) and 365(a) of title 11 of the United States Code (the "Bankruptcy Code"),

and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") authorizing and approving the Debtors' entry into, and performance of their obligations

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); Everstream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE MN Development, LLC (8669); SunE MN Development Holdings, LLC (5388); SunE Minnesota Holdings, LLC (8926); Terraform Private Holdings, LLC (5993); Hudson Energy Solar Corporation (3557); SunE REIT-D PR, LLC (5519); SunEdison Products, LLC (4445); SunEdison International Construction, LLC (9605); Vaughn Wind, LLC (4825); Maine Wind Holdings, LLC (1344); First Wind Energy, LLC (2171); First Wind Holdings, LLC (6257); and EchoFirst Finance Co., LLC (1607). The address of the Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

under, that certain transition services agreement (the "GAM TSA"), by and among SunEdison, Inc., the Service Providers listed in Appendix 1 to the GAM TSA, and TerraForm Power, Inc.; and upon the Gund Declaration; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is fair and equitable and in the best interests of the Debtors, their estates, their creditors, their stakeholders, and other parties in interest; and after due deliberation and good cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED to the extent set forth herein.

2.      The GAM TSA and all of its provisions are hereby approved.

3.      The Debtors are authorized to enter into, perform their obligations under and deliver all documents contemplated by the GAM TSA, and are authorized to take all other actions to implement the transactions and compromises contemplated by the GAM TSA (the "GAM Transaction"), in each case, pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019.

4.      The GAM TSA shall be binding on all parties thereto (including, but not limited to, any subsequently appointed chapter 11 or chapter 7 trustee or any representative of the Debtors' estates appointed pursuant to 11 U.S.C. § 1123) and in each case, on each of their predecessors or successors.

5.      TerraForm Power, Inc. and its direct and indirect subsidiaries are not, and shall not be deemed to be, successors to the Debtors as a result of the entry into the GAM TSA or the

consummation of GAM Transaction and, except as expressly provided in the GAM TSA, are not

obligated to pay any liabilities or obligations of the Debtors as a result thereof.

6.      To the extent the automatic stay provisions of section 362 of the Bankruptcy Code

would otherwise apply, such provisions are vacated and modified to effectuate all of the terms of

the GAM TSA.

7.      The negotiation and execution of the GAM TSA was at arm's-length, without

collusion and in good faith, and all times each party thereto was represented by competent,

independent counsel of its choosing.

8.      Any objections to the Motion or the relief requested therein that have not been

withdrawn, waived, or settled, and all reservations of rights included therein, are hereby

overruled on the merits and denied with prejudice.

9.      Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and

enforceable immediately upon entry hereof.

10.     The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied by

the contents of the Motion.

11.     The Debtors are authorized and empowered to take all actions necessary to

implement the relief granted in this Order.

12.     This Court shall retain exclusive jurisdiction with respect to all matters arising

from or related to the implementation or interpretation of this Order.

Dated:  New York, New York

_____, 2017

_____
HONORABLE STUART M. BERNSTEIN

## **EXHIBIT B**

**Transition Services Agreement**

By electronic mail to the Service Recipients listed in Appendix 1

June 1, 2017

Dear Ladies and Gentlemen:

**Transition of a portion of the "Global Asset Management" North American business unit (the "GAM Business") owned by certain affiliates of SunEdison, Inc. ("SunEdison") to certain affiliates of TerraForm Power, Inc. ("TERP")**

This letter agreement (this "**Agreement**") between SunEdison, certain affiliates of SunEdison listed in Appendix 1 (such affiliates of SunEdison together, the "**Service Providers**"), and TERP (together with SunEdison and the Service Providers, the "**Parties**" and each, a "**Party**") sets out the principal terms and conditions pursuant to which:

(a) certain affiliates of TERP listed in Appendix 1 party to certain TERP Contracts (the "**Service Recipients**") and TerraForm Power, LLC, or their respective designees who provide services, directly or indirectly, to the Service Recipients (collectively, the "**New Employers**") have been and are permitted to make an offer of employment to the former and current employees of the Service Providers listed in Appendix 2 and those employees offered employment pursuant to Section 1.2(c) (collectively, the "**GAM Employees**"); and

(b) TERP and Service Providers will cooperate, and TERP will use commercially reasonable efforts to cause the Service Recipients to cooperate, so that the services and obligations encompassed in the Asset Management and Operation and Maintenance contracts between the relevant Service Providers and the relevant Service Recipients for the Projects set forth in Appendix 3 (the "**TERP Contracts**"), will be transitioned to New Employers or be performed by or subcontracted to, in each case in whole or in part, the New Employers.

The Parties agree and acknowledge that (a) Sections 1.1-1.3, 1.5, 1.6(d), 1.6(e), 1.6(f), 1.7, 1.8, 1.9, Section 2.3, Section 4, Section 5 (solely with respect to the Ordinary Course Provisions), Section 6, Section 7, Section 8 and Section 9 of this Agreement (the "**Ordinary Course Provisions**") constitute a valid and legally binding agreement of each of TERP, SunEdison and the Service Providers as of the date of this Agreement and (b) all other terms and provisions of this Agreement (the "**Court-Approved Provisions**") shall become legally binding upon each Party upon the entry of the Approval Order (defined below) by the bankruptcy court (the "**Bankruptcy Court**") in the jointly-administered chapter 11 cases of SunEdison and its debtor-affiliates (the "**Bankruptcy Cases**"); provided that if the Approval Order is stayed, reversed, vacated or modified on appeal, the Court-Approved Provisions shall be null and void. As used in this Agreement, "**Debtors**" means any entities that file chapter 11 petitions in the Bankruptcy Cases.

Each Service Provider and SunEdison, respectively, represents and warrants to the other Parties that (a) it has full legal right, power, and authority to execute this Agreement, (b) the execution, delivery, and performance of this Agreement and the representations, warranties, and terms herein have been duly authorized by all necessary action on behalf of such Party, (c) this Agreement has been duly executed and delivered by such Party and constitutes a legal, valid and binding obligation of such Party enforceable against such Party in accordance with its terms; provided that the Court-Approved Provisions shall not be

valid and binding obligations of each Service Provider and SunEdison until the entry of the Approval Order by the Bankruptcy Court, and with respect to the Court-Approved Provisions, each of the foregoing representations and warranties is subject to the entry of the Approval Order by the Bankruptcy Court.

TERP represents and warrants to the other Parties that (a) it has the full legal right, power, and authority to execute this Agreement, (b) the execution, delivery, and performance of this Agreement and the representations, warranties, and terms herein have been duly authorized by all necessary action on behalf of TERP, and (c) this Agreement has been duly executed and delivered by TERP and constitutes a legal, valid and binding obligation of TERP enforceable against TERP in accordance with its terms; provided that the Court-Approved Provisions shall not be valid and binding obligations of TERP until the entry of the Approval Order by the Bankruptcy Court.

## 1.    Hiring of GAM Employees by New Employers

1.1    Notwithstanding any non-compete or non-solicit restrictions imposed by SunEdison or any Service Provider, that any Service Recipient or GAM Employee may be subject to, SunEdison and each Service Provider hereby confirms and agrees that each Service Recipient was authorized and may, in the future, make employment offers in accordance with Sections 1.2 and 1.3 to the GAM Employees now or in the past employed by the applicable Service Provider, and SunEdison and each Service Provider hereby consent to the delivery of such employment offer (including any offers occurring prior to the date hereof and after November 1, 2016) and agree to cooperate with each applicable Service Recipient to facilitate the transition of employment, in accordance with Sections 1.2 and 1.3, of each GAM Employee who accepts an employment offer from such Service Recipient.  TERP shall cause each Service Recipient to cooperate with SunEdison and the applicable Service Providers to facilitate the transition of employment, in accordance with Sections 1.2 and 1.3, of each GAM Employee who accepts an employment offer from a New Employer.

1.2    The Parties agree that such offers have been and shall be made in the time frames described by this Section 1.2.  For the purposes of this Agreement, the relevant GAM Employee's "**Transfer Date**" shall be the date on which his or her employment with the applicable New Employer (as defined below) commences or should have commenced but for an Employment Failure (as defined below).

(a)    TERP confirms that those GAM Employees listed as receiving Wave 1 Offers in Appendix 2 (such GAM Employees, the "**First Wave Employees**") and those GAM Employees listed as receiving Wave 2 Offers in Appendix 2 (such GAM Employees, the "**Second Wave Employees**") have commenced employment with TerraForm Power, LLC.  The applicable Service Provider confirms as of the date of this Agreement that each First Wave Employee and Second Wave Employee may commence or has commenced employment with any New Employer.

(b)    TERP shall bear Service Providers' cost for payroll and benefits for the Second Wave Employee from and after January 1, 2017, in an amount equal to such Second Wave Employee's SE Gross Pay for such period, times one hundred thirty percent (130%).  As used herein, "**SE Gross Pay**" shall mean the amount of base salary earned by such Second Wave Employee during such period, determined by SunEdison. For the avoidance of doubt, any invoices for such costs invoiced to TERP prior to the execution date of this Agreement shall become due and payable upon execution of this Agreement.  In addition, TERP shall pay, or cause to be paid, directly to the First Wave

Employees and the Second Wave Employees, the payments contemplated for such GAM Employees under all SunEdison incentive plans approved by a court prior to the date hereof no later than the dates set forth in such incentive plans, and TERP hereby acknowledges prior receipt of the information set forth in such incentive plans applicable to the First Wave Employees and the Second Wave Employees. SunEdison hereby acknowledges receipt prior to the date hereof of all amounts due and owing to it pursuant to this Section 1.2(b) with respect to the months of January, February and March, 2017.

(c)     As of the date of this Agreement, Service Providers shall make available to Service Recipients the services of those employees listed as Third Wave Employees in Appendix 2 (such employees, the "**Third Wave Employees**"), for the period set forth in Appendix 2 (as such period may be extended by written agreement of SunEdison and TERP, which agreement may be provided by email) for each Third Wave Employee to the extent that such Third Wave Employees remain voluntarily employed by Service Providers and have not been terminated for cause. TERP shall have the right to cause the New Employers to deliver offers to the Third Wave Employees. The applicable Service Provider shall promptly accept all resignations received by such Service Provider and sent by each Third Wave Employee who accepts employment with any of the New Employers upon such Service Provider's receipt of the resignation and written notice of such acceptance from TERP, so as to allow such Third Wave Employee to commence employment with the applicable New Employer. In addition to the amount for the Third Wave Employees reflected in any invoices sent to TERP prior to the execution of this Agreement, TERP shall bear Service Providers' cost for payroll and benefits for each Third Wave Employee from and after April 1, 2017, in an amount equal to such Third Wave Employee's SE Gross Pay for such period, times the portion of such employees time devoted to TERP, times one hundred thirty percent (130%) until the earlier to occur of (i) the next scheduled reduction in force date in the calendar month following the month in which the Service Providers receive notice from TERP that a New Employer will not make an offer to such Third Wave Employee, in which case such Third Wave Employee shall not be available to TERP after such scheduled reduction in force date, or (ii) the date such Third Wave Employee commences work with a New Employer. Invoices for such costs invoiced to TERP shall be due and payable by TERP within 5 business days after receipt. For the avoidance of doubt, any invoices for such costs invoiced to TERP prior to the execution date of this Agreement shall become due and payable upon execution of this Agreement. If the Third Wave Employee commences work with a New Employer, TERP shall pay, or cause to be paid, directly to such Third Wave Employee, the payments contemplated for such Third Wave Employees under all SunEdison incentive plans approved by the Bankruptcy Court prior to the date hereof no later than the dates set forth in such incentive plans. SunEdison hereby acknowledges receipt prior to the date hereof of all amounts due and owing to it pursuant to this Section 1.2(c) with respect to the months of January, February and March, 2017.

(d)     If a Service Provider terminates the employment of any current employee of the Service Providers (regardless whether such person is listed on Appendix 2 but excluding any transfers among affiliates of SunEdison) on or after the date hereof, then such Service Provider shall use commercially reasonable efforts, to the extent permitted by law, to provide TERP notice thereof as soon as practical, but in any event on or before the fifteenth (15th) day of the month with respect to employees terminated in the previous

month, and New Employers shall have the right to make an offer of employment to such person.

(e)    TERP shall provide SunEdison written notice of (i) all offers made to employees of the Service Providers, including but not limited to the Third Wave Employees, (ii) acceptance of such offers, and (iii) the expiration of offers without an acceptance.

1.3    TERP shall cause, and hereby confirms, covenants and agrees that, all employment offers sent by any New Employer in accordance with Section 1.2 above shall (i) include terms and conditions that are no less favorable to such GAM Employee than such GAM Employee's current terms and conditions of employment, (ii) honor their continuity of service with the applicable Service Provider for all purposes relating to the terms or conditions of their employment or compensation therefor, and (iii) comply with any laws relating to (a) the relevant GAM Employee's employment by such New Employer on or after the relevant GAM Employee's Transfer Date and (b) the transfer of such GAM Employee's employment applicable to such New Employer.

1.4    In consideration of the New Employers' employment of the GAM Employees, each Service Provider hereby confirms, with respect to each GAM Employee, that it will provide each First Wave Employee and Second Wave Employee a waiver letter with respect to any non-compete and non-solicit restrictions such GAM Employee may have become subject to in connection with his or her employment with the respective Service Provider, substantially in the form attached in Appendix 4 promptly after entry of the Approval Order and in no event later than 10 business days thereafter.  Each Service Provider hereby confirms that it will provide each Third Wave Employee who receives an offer of employment from a New Employer a waiver letter with respect to any non-compete and non-solicit restrictions such Third Wave Employee may have become subject to in connection with his or her employment with the respective Service Provider, substantially in the form attached in Appendix 4 promptly after receipt of notice of such offer being made and in no event later than 10 business days thereafter.  The waiver letters provided for in this Section 1.4 will be intended to serve as a waiver of any rights of SunEdison or any of its affiliates with respect to such rights with effect from each such GAM Employee's Transfer Date.  In addition, substantially simultaneously with the delivery of such letters, SunEdison shall provide TERP with written confirmations of the same.

1.5    TERP shall indemnify each relevant Service Provider against all liabilities (including any costs arising from termination of such GAM Employee's employment) arising as a direct result of:

(a)    the breach by TERP or any New Employer of TERP's obligations with respect to such GAM Employee set forth in Section 1.3 above; and

(b)    the termination by TERP or any New Employer of any GAM Employee's employment as a direct result of any failure by any applicable New Employer to employ such GAM Employee pursuant to the employment offer made by such applicable New Employer as provided in Sections 1.2 and 1.3 after such GAM Employee has accepted such employment offer (such event, an "**Employment Failure**");

provided, that in the event (i) the Bankruptcy Court does not approve the terms of Section 1.4, or (ii) (a) if SunEdison, any Service Provider, or any official or ad hoc committee of creditors in the Bankruptcy Cases or a trustee administering any trust established for the benefit of creditors or interest holders in connection with the Bankruptcy Cases, commences a cause of action asserting any claim against TERP or any New Employer arising from or in connection with TERP or such New Employer making employment offers to any GAM Employee in a manner consistent with

4

Sections 1.2 and 1.3, and (b) and the termination of the employment of such GAM Employee is a direct result of such cause of action, the indemnity contained in this Section 1.5 with respect to such GAM Employee shall be null and void.

1.6      (a)      TERP, TerraForm Power, LLC and TerraForm Power Operating, LLC (collectively, "**TerraForm Power**") hereby irrevocably waives any alleged defaults or breaches of SunEdison arising after December 18, 2016 under the Management Services Agreement (defined below) arising out of or resulting from the transition of employment of the GAM Employees from the Service Providers to the New Employers taking into account the transition of First Wave Employees, Second Wave Employees and Third Wave Employees impact on the work of the remaining GAM Employees; provided that TerraForm Power's claims, defenses and rights to (x) in connection with the assumption of the Management Services Agreement, adequate assurance of future performance and/or cure payments and (y) to the extent not otherwise waived in writing, any prepetition general unsecured claim arising out of rejection of the Management Services Agreement (an "**MSA Rejection Damages Claim**"), including with respect to the determination of any amount of such MSA Rejection Damages Claim, in each case arising out of, resulting from, or in connection with any alleged defaults or breaches waived under this Section 1.6(a), are preserved in all respects.   The "**Management Services Agreement**" means the Management Services Agreement dated as of July 23, 2014 by and among TerraForm Power and SunEdison, which SunEdison asserts is a standalone agreement and TerraForm Power asserts is part of an integrated agreement between TerraForm Power, SunEdison and SunEdison Holdings Corporation.

(b)      TerraForm Power hereby irrevocably waives any alleged defaults or breaches of SunEdison and each Service Provider arising after December 18, 2016 under each TERP Contract arising out of or resulting from (i) any action or inaction by a Service Provider to perform obligations under the TERP Contracts other than SUNE Direct Services required hereunder to be performed, (ii) the termination of the TERP Contracts as contemplated by Section 2.1, or (iii) any event contemplated by the GAM Gateway Letter Agreement (as defined in Section 4 hereof); provided that TerraForm Power's (and, for the avoidance of doubt, each Service Recipient's) claims, defenses and rights to (x) in connection with the assumption of a TERP Contract, adequate assurance of future performance and/or cure payments or (y) to the extent not otherwise waived in writing, any prepetition general unsecured claim arising out of rejection of a TERP Contract (an "**TERP Contract Rejection Damages Claim**" and together with the MSA Rejection Damages Claim, the "**Rejection Damages Claims**"), including with respect to the determination of any amount of such TERP Contract Rejection Damages Claim, in each case arising out of, resulting from or in connection with any alleged defaults or breaches waived under this Section 1.6(b), are preserved in all respects.

(c)      TerraForm Power hereby indemnifies and holds harmless, and to the extent not subject to a required consent by any third party (including without limitation those that require consent of financing parties, tax equity owners or sale-leaseback counterparties related to such Service Recipient), TERP shall cause the Service Recipients to indemnify and hold harmless, SunEdison and each relevant Service Provider for all Losses arising after December 18, 2016, in each case, arising out of, resulting from or in connection with (1) any actions or omissions arising out of services delegated or subcontracted by a Service Provider to a New Employer or TERP Subcontractor or otherwise provided by New Employers or TERP Subcontractor, including any such services provided pursuant to a TERP Subcontract, (2) any action or inaction by a Service Provider to perform obligations under the TERP Contracts other than SUNE Direct Services required hereunder to be performed, (3) the termination of the TERP Contracts as contemplated

by Section 2.1, or (4) all claims waived under this Agreement; <u>provided</u>, for the avoidance of doubt, that the indemnification in this Section 1.6(c) shall only apply to the period occurring prior to the assumption or rejection of the applicable TERP Contract or Management Services Agreement, and, for the avoidance of doubt, to the extent not otherwise waived in writing, shall exclude Settlement Agreement Preserved Claims (defined below), including claims for rejection damages.  "**Losses**" means all claims, liabilities, losses, damages, fines, penalties, judgments, settlements, awards, costs and expenses (including reasonable fees and expenses of counsel, consultants, experts and other professional fees).

(d)      TerraForm Power hereby (i) irrevocably waives any alleged defaults or breaches of SunEdison and each Service Provider arising between December 18, 2016 and the "Stop Date" (as defined below) under each TERP Contract (other than SUNE Direct Services required hereunder to be performed) and the Management Services Agreement, as applicable, and (ii) indemnifies and holds harmless SunEdison and each Service Provider for all Losses, in each case arising out of or resulting from the transition of employment of the GAM Employees from the Service Providers to the New Employers, taking into account the transition of First Wave Employees, Second Wave Employees and Third Wave Employees impact on the work of the remaining GAM Employees during the period between December 18, 2016 and the Stop Date; <u>provided</u> that TerraForm Power's claims, defenses and rights to (x) in connection with the assumption of the Management Services Agreement or any TERP Contract, adequate assurance of future performance and/or cure payments and (y) to the extent not otherwise waived in writing, any Rejection Damages Claim, including with respect to the determination of any amount of such Rejection Damages Claim, in each case arising out of, resulting from or in connection with any alleged defaults waived under this Section 1.6(d), are preserved in all respects.  "**Stop Date**" means the date which is the earlier of (x) the date the Bankruptcy Court enters the Approval Order and (y) July 20, 2017 (or such later date as TERP agrees in writing in its sole discretion).

(e)      TerraForm Power hereby indemnifies and holds harmless SunEdison and each relevant Service Provider for all Losses, in each case, arising out of, resulting from or in connection with (1) any actions or omissions arising out of services delegated or subcontracted by a Service Provider to a New Employer or TERP Subcontractor or otherwise provided by New Employers or TERP Subcontractor, including any such services provided pursuant to a TERP Subcontract during the period between April 1, 2017 and the Stop Date, or (2) any action or inaction by a Service Provider to perform obligations under the TERP Contracts other than SUNE Direct Services required hereunder to be performed during the period between April 1, 2017 and the Stop Date; <u>provided</u>, for the avoidance of doubt, that the indemnification in this Section 1.6(e) shall only apply to the period occurring prior to the assumption or rejection of the applicable TERP Contract, and, for the avoidance of doubt, shall exclude Settlement Agreement Preserved Claims, including claims for rejection damages.

(f)      Notwithstanding anything in this Section 1.6 to the contrary, nothing in this Section 1.6 shall (i) modify or abrogate TERP's ability to assert those claims in the Chapter 11 Cases that are expressly preserved pursuant to Section 3(a) of the Settlement Agreement subject to and in accordance with the terms thereof subject to and in accordance with the terms thereof or, if the Settlement Agreement is terminated, prepetition general unsecured claims against any Debtor (collectively, the "**Settlement Agreement Preserved Claims**"), in each case to the extent such claims are not otherwise waived in writing, (ii) reduce the amount of any Settlement Agreement Preserved Claim, to the extent such claims are not otherwise waived in writing,  relative to the amount of such claim as if this Agreement was never entered into, or (iii) preserve any claim(s) not expressly preserved under the Settlement Agreement or listed on Exhibit E thereto.  For

purposes of this Agreement, "**Settlement Agreement**" shall mean the Settlement Agreement, entered into as of March 6, 2017, between SunEdison and certain of its Debtor affiliates on the one hand and TERP and certain of its affiliates on the other hand (as may be amended, modified or supplemented from time to time), and filed as Exhibit B to Docket No. 2570 in the Chapter 11 Cases.

1.7    TERP acknowledges and agrees that SunEdison and the Service Providers will desire the provision of services from certain GAM Employees hired by a New Employer after their Transfer Date (such GAM Employees, the "**Reverse Service Providers**").  From time to time, SunEdison may request the Reverse Service Providers to provide service to SunEdison for a period of time after their Transfer Date and ending on or prior to September 30, 2017.  In addition, from time to time during such period, SunEdison may request to speak to GAM Employees to inquire about work they provided for the Service Providers prior to the Transfer Date and knowledge acquired in connection therewith.  TERP shall use commercially reasonable efforts to cause each New Employer to cooperate with SunEdison to make the Reverse Service Providers reasonably available to SunEdison and to facilitate the provision of services by the Reverse Service Providers as contemplated by this Agreement.  In the event that the Reverse Service Providers provide a material amount of time (in TERP's reasonable discretion) on the provision of these services to SunEdison, TERP will invoice SUNE each pay period for an appropriate portion of their time in an amount equal to (the "**Reverse Services Fee**"): such Reverse Service Provider's TERP Gross Pay for such period, <u>times</u> the percentage of time providing services to SunEdison during such period, <u>times</u> one hundred thirty percent (130%).  As of the date hereof, SunEdison and TERP have agreed as to the estimated percentage of time providing reverse services and as to the amount of TERP Gross Pay for certain First Wave Employees and Second Wave Employees, and such agreed amounts shall continue until the provision of services by such Reverse Service Provider is terminated by SunEdison in accordance with the terms of this Section 1.7; <u>provided</u>, <u>however</u>, that if the actual percentage of time providing reverse services differs from the estimated amount for any Reverse Services Provider, then TERP shall provide notice of the amount of divergence thereof within 15 days after the end of each applicable month and the proposed appropriate adjustment to the Reverse Services Fee (such amount the "**RS True-Up Amount**").  As used herein, "**TERP Gross Pay**" shall mean the amount of base salary earned by such Reverse Service Provider during such pay period, as determined by TERP. Services provided by any GAM Employees under any TERP Subcontract or in connection with SunEdison's or a Service Provider's obligation under this Agreement in favor of TERP or an affiliate thereof shall not be considered reverse services provided pursuant to this Section 1.7.

1.8    Notwithstanding the transfer of GAM Employees, TERP agrees to cause each Service Recipient (a) to continue paying the applicable Service Provider the fees for service in each of the TERP Contracts (as adjusted and pursuant to the terms hereof) to which it is a party until the earlier of (i) the date such TERP Contract is rejected or terminated in accordance with Section 2.1, (ii) the date such TERP Contract is rejected or terminated in accordance with the Settlement Agreement, or (iii) September 30, 2017 (the "**Contract Termination Date**"), and (b) to pay all fees, costs, and other amounts under such TERP Contracts which are due and payable to the Service Provider, are in arrears as of the date hereof (other than fees resulting from the termination of such TERP Contracts) and have been contested in writing by TERP (the "**Contested Fees**") within 15 days after the resolution of such dispute; <u>provided</u> that if the Court-Approved Provisions are not approved by the Stop Date, TERP's obligations under this Section 1.8 shall be suspended with respect to any fees incurred after the Stop Date until an Approval Order is entered.

7

1.9     Upon receipt of all such fees, costs and other amounts under each such TERP Contract which are due and payable to the Service Provider and are in arrears as of the date hereof, the applicable non-Debtor Service Provider shall pay all due and payable, outstanding vendor payments relating to power plants owned by Service Recipients in connection with which such non-Debtor Service Provider has entered into TERP Contracts (the "**Current Non-Debtor Outstanding Vendor Payments**"), and the applicable Debtor Service Provider shall pay all due and payable, outstanding vendor payments relating to such power plants owned by Service Recipients in connection with which such Debtor Service Provider has entered into a TERP Contract which were incurred after the filing of Bankruptcy Cases (the "**Current Debtor Outstanding Vendor Payments**") in each case, no later than five business days after receipt of such fees.  To the knowledge of the Service Providers, Appendix 5 sets forth the amounts of Contested Fees, Current Non-Debtor Outstanding Vendor Payments and Current Debtor Outstanding Vendor Payments, together with the relevant Service Provider and relevant counterparty.  Each Debtor Service Provider represents and warrants that it has all necessary authority, including from the bankruptcy court in the Bankruptcy Cases, to make payments after the filing of the Bankruptcy Cases in the ordinary course of business.  In the event TERP becomes aware of a due and payable, outstanding vendor payment (i) relating to a power plant owned by a Service Recipient which a Service Provider is obligated to pay in connection with its performance of services under a TERP Contract as modified by this Agreement and (ii) incurred after the commencement of the Bankruptcy Cases (a "**Future Outstanding Vendor Payment**"), TERP may notify in writing the applicable Service Provider of such Future Outstanding Vendor Payment (such notice to include the amount due and payable and the date such amount was due and payable).  If, within 10 business days after such Service Provider's receipt of notice of the Future Outstanding Vendor Payment, the applicable Service Provider has not (a) paid such Future Outstanding Vendor Payment or (b) notified TERP in writing that it disputes such Future Outstanding Vendor Payment (such notice to include information reasonably demonstrating that such Future Outstanding Vendor Payment is not due and payable in its asserted amount), TERP may provide such Service Provider a second written notice of the Future Outstanding Vendor Payment.  If, within five business days after such Service Provider's receipt of such second notice, the Service Provider has not (a) paid such Future Outstanding Vendor Payment or (b) notified TERP in writing that it disputes such Future Outstanding Vendor Payment (such notice to include information reasonably demonstrating that such Future Outstanding Vendor Payment is not due and payable in its asserted amount), TERP may pay such outstanding vendor payment specified in the notice directly to such vendor and set off such payment against any payment payable by TERP under Section 3.1(c)(iii).  Contemporaneously with such payment, TERP shall provide SunEdison written confirmation of any payments made by TERP pursuant to this Section 1.9.

## 2.     Asset Management and O&M Contracts

2.1

(a)     In connection with the employment of the GAM Employees, except as set forth in this Section 2.1 or in any plan of reorganization confirmed in the Bankruptcy Cases, each Service Provider agrees not to reject or terminate the TERP Contracts as long as such Service Provider is paid under the TERP Contracts when due and payable in accordance with its terms, as modified by this Agreement; provided, however, each Service Provider has the right to suspend a service performed under a TERP Contract, including a SUNE Direct Service, in the event that the Service Provider does not have a required permit or license to perform such service or such service is prohibited by applicable

law.  For the avoidance of doubt, notwithstanding anything to the contrary herein, neither TERP nor any Service Recipient shall be liable for payment for any services rejected or suspended pursuant to the immediately preceding sentence.

(b)     Upon at least ten (10) days' notice from the relevant Service Recipient, which notices may be given by such Service Recipient from time to time at any time on or after the date hereof in such Service Recipient's sole discretion, and in consideration of the indemnity provided by TERP under Section 1.6 hereof, the relevant Service Providers, with the express consent of SunEdison, hereby agree to (i) execute a termination agreement with the relevant Service Provider to terminate any of the applicable TERP Contracts with no surviving obligations thereunder, and (ii) waive and release any amounts payable thereunder arising as a result of, or accruing after, such termination, including any termination fees.

(c)     Notwithstanding anything to the contrary herein, the relevant Service Providers, with the express consent of SunEdison, hereby agree that no fees for service shall be incurred following termination in accordance with this Section 2.1.  TERP shall cause each Service Recipient to terminate its respective TERP Contracts no later than September 30, 2017; TERP acknowledges and agrees that if any TERP Contracts have not been terminated by the applicable Service Recipient on or before September 30, 2017, the Service Providers may exercise their right to reject the remaining TERP Contracts in the Bankruptcy Cases.

(d)     For the avoidance of doubt, nothing in this Section 2.1 shall modify the rights and obligations of any party to the Settlement Agreement as set forth therein (including Sections 2(c) and 2(e) thereof).

2.2     TERP hereby agrees, commencing on the date hereof, to cause each Service Recipient to pay to the applicable Service Provider, from the date hereof and thereafter until each applicable TERP Contract is terminated or rejected, all amounts due to the Service Provider under each applicable TERP Contract.  Each Service Provider hereby agrees to perform the SUNE Direct Services as if such services are within the scope of any TERP Contract as modified by the terms of this Agreement; provided, that the Service Providers shall have no obligation to perform any SUNE Direct Service to the extent (i) the employee who performed a service as of the date hereof (a) voluntarily departs from employment by such Service Providers, or (b) is a Third Wave Employee (1) who does not commence employment or other relationship with a New Employer, or (2) whose cost for payroll and benefits are not borne by TERP pursuant to Section 1.2(c), and, in each case is no longer employed by a Service Provider, or (ii) the assets required to perform a service have been transferred to a third party.  TERP may terminate a SUNE Direct Service as of the first day of any calendar month after the date hereof by providing notice to the Service Providers no later than fifteen (15) days before the last day of the preceding month.  In the event that any entity or line of business is sold or otherwise disposed of and such entity or line of business is providing SUNE Direct Services at the time sold or otherwise disposed of by SunEdison, SunEdison shall use commercially reasonable efforts to subcontract the SUNE Direct Services to such purchaser.

2.3     In connection with the termination of the TERP Contracts, prior to May 31, 2017, TERP may provide each Service Provider under a TERP Contract with a written request for documentation and data (each such request to include sufficient detail to enable the Service Provider to locate the electronic folder in SAM and applications containing the requested documentation and data)

(such documentation and data, as requested, the "**Requested TERP Project Information**").  For clarity, TERP shall be entitled to receive Requested TERP Project Information solely to the extent such Requested TERP Project Information: (a) relates to a project subject to a TERP Contract, and (b) is required or useful for the operation of such TERP project, to the extent retained by SunEdison or a Service Provider in its role as a service provider under the TERP Contracts.  Each Service Provider shall use commercially reasonable efforts to transfer the Requested TERP Project Information to an electronic location which may be accessed by TERP within a reasonable period of time after receipt of such request notice.  Following the date on which the final TERP Contract terminates (the "**TERP Contract Termination Date**"), TERP may, within fourteen (14) days (such 14th day, the "**Second Request Deadline**"), submit one final written request for Requested TERP Project Information: (a) for which TERP has previously submitted a request, and (b) that was generated between the final date of the Requested TERP Project Information previously provided by the Service Provider and the TERP Contract Termination Date.  Each Service Provider shall use commercially reasonable efforts to transfer such supplemental Requested TERP Project Information to an electronic location which may be accessed by TERP within a reasonable period of time after receipt of such request notice.  Notwithstanding the foregoing, the Service Providers shall have no obligation to provide (x) documentation customarily stored on the project site or (y) documentation in the possession of GAM Employees working for the New Employers. The Service Providers shall use commercially reasonable efforts to maintain data and documentation to the extent such data and documentation (a) relates to a TERP project subject to a TERP Contract, and (b) is required or useful for the operation of such TERP project, through the Second Request Deadline.

2.4     From and after the date hereof through 21 calendar days after the date hereof, SunEdison and TERP shall negotiate in good faith the transfer to TERP or its direct or indirect subsidiaries of certain fixed assets and parts of inventory currently held by SunEdison and certain of its direct and indirect subsidiaries, including Clipper turbine parts, at a mutually agreed-upon fair market amount and terms, and if required, such transfer shall be subject to the approval of the bankruptcy court under the Bankruptcy Cases.  If SunEdison and TERP have not agreed on a price and terms as of the date that is 21 calendar days after the date hereof, neither Party shall have an obligation to continue such negotiations.

## 3.     Transitional Arrangements

3.1     Each relevant Service Provider hereby delegates to TERP, which may further delegate to a New Employer that is an Affiliate of TERP without release of TERP as a result of such further delegation (TERP or such Affiliate delegate of TERP, each a "**TERP Subcontractor**"), certain of the services to be performed under such TERP Contract  as set forth below and TERP hereby accepts such delegation, in each case, on the terms set forth herein and for a term to commence no earlier than the Effective Date and terminate no later than the Contract Termination Date (the "**TERP Subcontract**").  The following terms shall apply to each TERP Subcontract:

   (a)     the provision of services and transfer of duties pursuant to the TERP Subcontract shall be covered by the waivers and indemnities provided herein in accordance with the terms hereof,

   (b)     the TERP Subcontract shall be for the entire scope of the applicable TERP Contract, except for (A) any SUNE Direct Services, (B) any services that require a license or permit that the applicable TERP Subcontractor does not have and (C) any services, the

assignment or subcontracting of which are prohibited by applicable law or by applicable third party restrictions (including without limitation those that require consent of the financing parties or tax equity owners related to the Service Recipient), and

(c)    The terms of the relevant TERP Contract shall apply, mutatis mutandis, to the TERP Subcontract, except that

(i)    the relevant TERP Subcontract shall automatically terminate upon the termination or rejection of the applicable TERP Contract,

(ii)    There shall be an aggregate monthly calculation related to services provided by the TERP Subcontractors (such services, the "**Subcontracted Services**") with respect to all TERP Contracts that have not been terminated or rejected between the Service Providers and TERP Subcontractors as follows:

(1) the aggregate amount received by the Service Providers under the TERP Contracts for such month as set forth in Section 2.2, <u>minus</u> (2) (A) 100% <u>minus</u> the Subcontracted Percentage then in effect <u>multiplied</u> by (B) the Fixed Fee under the TERP Contracts for such month, <u>minus</u> (3) an amount equal to any costs and expenses incurred in accordance with the terms of the TERP Contracts (such costs and expenses, the "**Contract Reimbursed Costs and Expenses**"), <u>minus</u> (4) an amount equal to the sum of (i) 105% of the aggregate cost of the services under the TERP Contracts set forth in Section A of Appendix 6, as determined by the Service Providers in lieu of the charges set forth in the TERP Contract for such services, if applicable, and (ii) the aggregate cost of personnel services under the TERP Contracts set forth in Section B of Appendix 6, calculated at the rate of 130% of the applicable gross salary for such individuals (such services in this clause (4), collectively, the "**SUNE Direct Services**"), <u>minus</u> (5) an amount equal to a proportionate allocation, consistent with past practices, of any third party costs and expenses of SunEdison or a Service Provider to maintain any licenses, permits or insurance required to perform the SUNE Direct Services or to maintain the TERP Contracts in effect after March 31, 2017, as contemplated by this Agreement (such costs and expenses, the "**Contract Maintenance Costs and Expenses**") <u>plus</u> (6) the Reverse Services Fee for such month, as adjusted by any applicable RS True-Up Amount (such amount determined for all of the TERP Contracts, the "**Net Payment**"); <u>provided</u> that SunEdison shall provide invoices for all amounts retained pursuant to clauses (3), (4) and (5) within 15 days after the end of each month. As used herein, the "**Subcontracted Percentage**" shall mean: (1) from April 1, 2017 through May 31, 2017, 97.5%, (2) June 1, 2017 through June 30, 2017, 95%, and (3) July 1, 2017 and thereafter, 90%.

11

(iii)     Within five (5) business days after the issuance of such invoice, TERP may provide notice of any contested amount invoiced (the "**Contested Amount**") and, subject to the terms of this Section 3.1(c)(iii), the Contested Amount shall be omitted from calculation of the Net Payment until such dispute is resolved. Within ten (10) business days, (1) if the Net Payment amount is positive, the Service Providers shall remit the Net Payment to TERP for the benefit of each applicable TERP Subcontractors, or, (2) if the Net Payment amount is negative, the TERP shall remit the Net Payment to the Service Providers; provided, that if excluding the Contested Amount from such calculation increases the amount the Service Provider would be obligated to pay TERP for such month, (A) the Contested Amount shall be included in the calculation of the Net Payment and (B) the Service Provider shall hold the Contested Amount until such dispute is resolved.

(iv)     the Service Providers shall have no obligation to indemnify the TERP Subcontractor under the TERP Subcontract.

(d)     Notwithstanding anything to the contrary herein, TERP hereby agrees that the services under the TERP Contract not assumed by the TERP Subcontractor pursuant to Section 3.1(b)(B) are included in the waiver of obligations set forth in Section 1.6(b).

3.2     Subject to the exceptions set forth in this Section 3.2, each applicable non-Debtor Service Provider hereby agrees to assign, and each applicable Debtor Service Provider agrees to use commercially reasonable efforts to assign, any vendor contract, existing subcontract under the TERP Contracts, or other service agreement in existence and used by a Service Provider in the performance of any TERP Contract that is solely related to projects subject to a TERP Contract (collectively, the "**Vendor Contracts**") to such New Employer as TERP notifies the applicable Service Provider, other than, in each case, those Vendor Contracts still used or necessary for the business of such Service Provider (including but not limited to SUNE Direct Services) at the time of request for assignment. In the case of any Vendor Contracts with non-Debtor Service Providers that require consent of the counterparty, each applicable Service Provider shall use commercially reasonable efforts to obtain such consent to assignment provided, that the Service Providers shall have no obligation to pay any fees or other monies to acquire such consent of the counterparty. The Service Providers' obligations under this Section 3.2 shall be in addition to, and shall not reduce in any respect, the obligations of the Debtors under Section 2(f) of the Settlement Agreement.

## 4.     Intellectual Property

4.1     As of the date hereof, SunEdison and TERP have entered into a separate letter agreement and are negotiating a second related letter agreement to address intellectual property matters relating to the transition of a portion of the GAM Business to TERP and its affiliates (such letters, collectively, the "**GAM Gateway Letter Agreement**"), and in the event of a conflict between the GAM Letter Agreement and this Agreement, the GAM Gateway Letter Agreement shall control.

## 5.     Third Party Beneficiaries

5.1     The Parties agree and acknowledge that the Service Recipients are intended third-party beneficiaries of Sections 1.4, 2.2 and this 5.1.

5.2     The Parties agree and acknowledge that the GAM Employees are intended third-party beneficiaries of Sections 1.1, 1.3, 1.4 and this 5.2.

## 6.     Costs

6.1     The Parties will pay their own costs and expenses incurred in connection with this Agreement and, except as set forth in Section 3.1, the further transactions contemplated hereunder, whether or not they proceed.

## 7.     Confidentiality

7.1     The Service Providers shall and TERP shall cause the Service Recipients to, and each shall cause their respective affiliates (provided, that, for purposes of this Agreement, SunEdison and its direct and indirect subsidiaries other than TERP and its direct and indirect subsidiaries shall not be regarded as affiliates of TERP and the Service Recipients, and TERP and its direct and indirect subsidiaries shall not be regarded as affiliates of SunEdison and the Service Providers), directors, officers, employees and agents to, treat as strictly confidential and not disclose or use any information received or obtained as a result of entering into this Agreement, including, for the avoidance of doubt, the terms of this Agreement, except to the extent that:

(a)     the disclosure or use is required by any bankruptcy and/or insolvency proceedings, law, any regulatory body or any stock exchange;

(b)     the disclosure or use is required for the purpose of any judicial proceedings arising out of this Agreement or any other agreement entered into under or pursuant to this Agreement;

(c)     the disclosure is made to a tax authority in connection with the tax affairs of the disclosing Party;

(d)     the disclosure or use is made in connection with the rejection of any debtor Service Provider contracts or release of any claims related thereto;

(e)     the disclosure is required to enable Service Provider to meet any employee information or consultation obligations in accordance with applicable law;

(f)     the disclosure is made to professional advisers or actual or potential bidders, investors and financiers of either Party on terms that such professional advisers or bidders, investors and financiers undertake to comply with confidentiality obligations broadly equivalent to those set out in this paragraph including, in particular, the lenders, together with their professional advisers, under the Senior Secured Superpriority Debtor-in-Possession Credit Agreement dated April 26, 2016 under which SunEdison is the borrower (as amended, restated, supplemented or otherwise modified from time to time, the "**DIP Credit Agreement**") and their advisors, subject to the confidential provisions set forth in the DIP Credit Agreement, and any lenders to, or tax equity investors in, any Service Recipients, and their respective advisors;

(g)     the information is or becomes publicly available (other than by breach of this Agreement);

(h)     the disclosure or use is made to a direct or indirect potential purchaser of TERP or a Service Recipient;

13

(i)      the other Parties to this Agreement have given prior written approval to the disclosure or use; or

(j)      the information is independently developed after the date of this Agreement;

provided that prior to disclosure or use of any information pursuant to this paragraph, the Party concerned shall promptly notify the other Parties of such requirement providing the other Party with the opportunity to contest such disclosure or use or otherwise to agree the timing and content of such disclosure or use.

7.2    For the avoidance of doubt, in connection with any motion or other pleading seeking entry of the Approval Order, SunEdison and TERP shall use commercially reasonable efforts to file under seal (a) any commercially sensitive information of TERP, SunEdison or any Service Provider or Service Recipient or (b) sensitive information identifying any current or former GAM Employee.

## 8.    Bankruptcy Court and Settlement

8.1    SunEdison shall use commercially reasonable efforts to obtain entry by the Bankruptcy Court of an order substantially in the form attached as Exhibit A hereto (the "**Approval Order**") at the first omnibus hearing in the Bankruptcy Cases held more than 25 days after the date of this Agreement; provided, however, that SunEdison, with the prior written consent of TERP (such consent not to be unreasonably withheld) may adjourn the hearing on the Approval Order to a later date.

8.2    Notwithstanding anything in this Agreement to the contrary, any claims, rights or defenses that are specifically waived by TERP (a) under the Settlement Agreement or (b) otherwise in writing, in each case, are, upon the effectiveness of such waiver, also deemed waived under this Agreement. All references in this Agreement to TERP waivers "in writing" shall mean a waiver provided in writing (including by email) by an officer of TERP or TERP's outside legal counsel.

8.3    SunEdison shall not, and shall cause its debtor affiliates not to, file or support any motion, pleading or other document that is inconsistent with this Agreement, provided that, nothing in this Agreement shall prevent SunEdison or its Debtor affiliates from exercising their fiduciary duties after consultation with outside counsel.

## 9.    Governing law and jurisdiction

9.1    This letter and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) will be governed by and construed in accordance with New York law.

9.2    Each Party agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement in the Bankruptcy Court and, solely in connection with claims arising under this Agreement: (i) irrevocably submits to the exclusive jurisdiction and the authority of the Bankruptcy Court, (ii) waives any objection to laying venue in any such action or proceeding in the Bankruptcy Court, and (iii) waives any objection that the Bankruptcy Court is an inconvenient forum, does not have jurisdiction over any party, or lacks the constitutional authority to enter final orders in connection with such action or proceeding. Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in

any legal proceeding arising out of, or relating to, this Agreement or the transactions contemplated hereby (whether based on contract, tort or any other theory). It is understood and agreed that money damages may not be a sufficient remedy for any breach or threatened breach of this Agreement and that each Party shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach or threatened breach by the other to the extent permitted by law.

9.3    Provided that TerraForm Power has executed this Agreement and delivered it to SunEdison, this Agreement shall be effective upon delivery by SunEdison to TERP as to TerraForm Power, SunEdison and any of SunEdison's affiliates who execute this letter prior to such delivery by SunEdison.  In the event that a SunEdison affiliate listed in Appendix 1 is not able to execute this Agreement contemporaneously with SunEdison because such affiliate requires consents to execute this Agreement, SunEdison will use commercially reasonable efforts to obtain the consents required for such entity to execute this Agreement.

*[Remainder of this page intentionally left blank.]*

Yours faithfully,

Signed: ....................................................

Director/attorney-in-fact, duly authorized for and on behalf of **SunEdison, Inc.**

Signed: ....................................................

Director/attorney-in-fact, duly authorized for and on behalf of **Team Solar Inc.**

Signed: ....................................................

Director/attorney-in-fact, duly authorized for and on behalf of **NVT Licenses, LLC**

Signed:

Director/attorney-in-fact, duly authorized for and on behalf of **First Wind O&M, LLC**

Signed: ....................................................

Director/attorney-in-fact, duly authorized for and on behalf of **Enfinity America Corporation**

Signed: ....................................................

Director/attorney-in-fact, duly authorized for and on behalf of **SunEdison Puerto Rico Contracting LLC**

*[Signature Page to Transition Services Agreement]*

**TERP AGREEMENT AND ACKNOWLEDGEMENT**

We confirm our agreement to this letter of agreement.

Signed: ...................................

Thomas Studebaker, Chief Operating Officer, duly authorized for and on behalf of **TerraForm Power, Inc.**

Signed: ...................................

Thomas Studebaker, Chief Operating Officer, duly authorized for and on behalf of **TerraForm Power, LLC** (for the sole, limited purpose of providing the waivers in Section 1.6)

Signed: ...................................

Thomas Studebaker, Chief Operating Officer, duly authorized for and on behalf of **TerraForm Power Operating, LLC** (for the sole, limited purpose of providing the waivers in Section 1.6)

Date ...............................

*[Signature Page to Transition Services Agreement]*

**Exhibit A – Approval Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | **Chapter 11** |
| | : | |
| **SUNEDISON, INC.,** *et al.,* | : | **Case No. 16-10992 (SMB)** |
| | : | |
| **Debtors.**[1] | : | **(Jointly Administered)** |
| | : | |
| | : | |

**ORDER GRANTING DEBTORS' MOTION FOR ORDER PURSUANT TO
BANKRUPTCY CODE SECTIONS 105(A), 362, 363(B), AND 365(A) AND
BANKRUPTCY RULES 6004 AND 9019 AUTHORIZING AND APPROVING THE
TRANSFER AND TRANSITION OF A PORTION OF THE GLOBAL ASSET
MANAGEMENT BUSINESS UNIT TO CERTAIN AFFILIATES OF TERRAFORM
POWER, INC.**

Upon the motion (the "Motion")[2] of the Debtors for an Order, pursuant to sections

105(a), 362, 363(b) and 365(a) of title 11 of the United States Code (the "Bankruptcy Code"),

and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); Everstream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE MN Development, LLC (8669); SunE MN Development Holdings, LLC (5388); SunE Minnesota Holdings, LLC (8926); Terraform Private Holdings, LLC (5993); Hudson Energy Solar Corporation (3557); SunE REIT-D PR, LLC (5519); SunEdison Products, LLC (4445); SunEdison International Construction, LLC (9605); Vaughn Wind, LLC (4825); Maine Wind Holdings, LLC (1344); First Wind Energy, LLC (2171); First Wind Holdings, LLC (6257); and EchoFirst Finance Co., LLC (1607). The address of the Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Rules") authorizing and approving the Debtors' entry into, and performance of their obligations

under, that certain transition services agreement (the "GAM TSA"), by and among SunEdison,

Inc., the Service Providers listed in Appendix 1 to the GAM TSA, and TerraForm Power, Inc.;

and upon the Gund Declaration; and due and sufficient notice of the Motion having been given

under the particular circumstances; and it appearing that no other or further notice need be

provided; and it appearing that the relief requested by the Motion is fair and equitable and in the

best interests of the Debtors, their estates, their creditors, their stakeholders, and other parties in

interest; and after due deliberation and good cause appearing therefor, it is hereby

## ORDERED, ADJUDGED AND DECREED THAT:

1.      The Motion is GRANTED to the extent set forth herein.

2.      The GAM TSA and all of its provisions are hereby approved.

3.      The Debtors are authorized to enter into, perform their obligations under and

deliver all documents contemplated by the GAM TSA, and are authorized to take all other

actions to implement the transactions and compromises contemplated by the GAM TSA  (the

"GAM Transaction"), in each case, pursuant to sections 105, 363 and 365 of the Bankruptcy

Code and Bankruptcy Rules 6004 and 9019.

4.      The GAM TSA shall be binding on all parties thereto (including, but not limited

to, any subsequently appointed chapter 11 or chapter 7 trustee or any representative of the

Debtors' estates appointed pursuant to 11 U.S.C. § 1123) and in each case, on each of their

predecessors or successors.

5.      TerraForm Power, Inc. and its direct and indirect subsidiaries are not, and shall

not be deemed to be, successors to the Debtors as a result of the entry into the GAM TSA or the

consummation of GAM Transaction and, except as expressly provided in the GAM TSA, are not obligated to pay any liabilities or obligations of the Debtors as a result thereof.

6.      To the extent the automatic stay provisions of section 362 of the Bankruptcy Code would otherwise apply, such provisions are vacated and modified to effectuate all of the terms of the GAM TSA.

7.      The negotiation and execution of the GAM TSA was at arm's-length, without collusion and in good faith, and all times each party thereto was represented by competent, independent counsel of its choosing.

8.      Any objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled on the merits and denied with prejudice.

9.      Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

10.     The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied by the contents of the Motion.

11.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

12.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated: New York, New York

_____, 2017

_____
HONORABLE STUART M. BERNSTEIN

**Appendix 1 – Service Providers and Service Recipients**

**Service Providers**

1. Team-Solar Inc
2. NVT Licenses, LLC
3. First Wind O&M, LLC
4. SunE Greenfield Limited
5. Enfinity America Corporation
6. SunEdison Puerto Rico Contracting LLC
7. SunEdison Chile Construction Limitada


**Service Recipients**

1. AEE Renewables UK 31 Limited
2. Amanecer Solar SpA
3. Berkley East Solar LLC
4. Bishop Hill Energy LLC
5. Blue Sky East LLC
6. Boyton Solar Park Limited
7. Brynteg Solar Limited
8. California Ridge Wind Energy LLC
9. CalRENEW-1 LLC
10. Cambridge Solar Power Limited
11. Canandaigua Power Partners LLC
12. Canandaigua Power Partners II LLC
13. Capital Dynamics US Solar-PA 1 LLC
14. CD US Solar MT 2 LLC
15. CD US Solar MT 3 LLC
16. CD US Solar MT2 LLC
17. CES Sterling LLC
18. Daisy No 1 Limited
19. Dessie Solar Center LLC
20. DG Solar Lessee, LLC
21. DG Solar Lessee II, LLC
22. Eastern Long Island Solar Project LLC
23. Enfinity Arizona 2 CampVerde USD, LLC
24. Enfinity Arizona 3 Winslow USD, LLC
25. Enfinity Colorado DHA 1, LLC
26. Enfinity NorCal 1 FAA LLC
27. Erie Wind LLC
28. Evergreen Gen Lead LLC

29.    Evergreen Wind Power  LLC
30.    Evergreen Wind Power III, LLC
31.    Evergreen Wind Power V LLC
32.    Fall River Commerce Solar LLC
33.    Fall River Innovation Sola LLC
34.    Gehrlicher Solar America Corp.
35.    Gilbert Solar Facility I LLC
36.    Graham Solar Center
37.    Green Cove Management LLC
38.    Hudson Energy Solar Corp.
39.    Hudson Solar Project 1 Corp.
40.    Hudson Solar Project 2 LLC
41.    Hudson USB ITC OWNER  LLC
42.    Hudson USB ITC OWNER 2 LLC
43.    Imperial Valley Solar 1 Services LLC
44.    Integrys NJ Solar LLC
45.    ISH SOLAR AZ LLC
46.    ISH Solar Beach LLC
47.    ISH Solar CA LLC
48.    ISH SOLAR Central LLC
49.    ISH Solar Grin LLC
50.    ISH SOLAR Hospitals LLC
51.    ISH SOLAR Mouth LLC
52.    Kaheawa Wind Power LLC
53.    Kaheawa Wind Power II LLC
54.    Kahuku Wind Power LLC
55.    KS SPV 24 Limited
56.    Mass Midstate Solar 1 LLC
57.    Mass Midstate Solar 3 LLC
58.    Millbury Solar LLC
59.    MSP Fairwind Limited
60.    MTS Hill Farm Solar Limited
61.    National University Solar Facility I LLC
62.    Nautilus Sequoia I LLC
63.    Nautilus Solar Cresskill BOE LLC
64.    Nautilus Solar Frederick BOE LLC
65.    Nautilus Solar Gibbstown LLC
66.    Nautilus Solar Hazlet BOE LLC
67.    Nautilus Solar I LLC
68.    Nautilus Solar KMBS LLC
69.    Nautilus Solar Lindenwold BOE LLC
70.    Nautilus Solar Medford BOE LLC

Appendix 1 – Page 2

71.    Nautilus Solar Medford Lakes LLC
72.    Nautilus Solar Ocean City One LLC
73.    Nautilus Solar Ocean City Two LLC
74.    Nautilus Solar Silvermine LLC
75.    Nautilus Solar Talbot County LLC
76.    Nautilus Solar Wayne BOE LLC
77.    Nautilus Solar WPU LLC
78.    New York Wind, LLC
79.    Niagara Wind Power, LLC
80.    Norrington Solar Farm Limited
81.    Prairie Breeze Wind Energy LLC
82.    Rattlesnake Wind I LLC
83.    RE Bellflower LLC
84.    RE Cudahy LLC
85.    RE Downey 2 LLC
86.    RE Fontana 2 LLC
87.    RE Irvine LLC
88.    RE San Diego LLC
89.    Regulus Solar LLC
90.    SE Bury Lane Solar Limited
91.    Shankle Solar Center LLC
92.    Solar Man LLC
93.    Solar PPA Partnership One LLC
94.    Solar Star California II LLC
95.    Solar Star NAFB LLC
96.    Solar Star New Jersey I LLC
97.    Solar Star New Jersey II LLC
98.    Solar Star New Jersey VI LLC
99.    Solar Star TM2 LLC
100.    South Plains Wind Energy, LLC
101.    SPS Atwell Island LLC
102.    Sterling Solar LLC
103.    Sun Devil Solar LLC
104.    SunE Alamosa 1 LLC
105.    SunE B9 Holdings LLC
106.    SunE Bearpond Lessee LLC
107.    SunE Burthy Farm Solar Limited
108.    SunE coalinga SH Owner LLC
109.    SunE Corcoran SP Owner LLC
110.    SunE DDR PSNJ LLC
111.    SunE Dedham LLC
112.    SunE GIL1 LLC

113.    SunE GIL2 LLC
114.    SunE GIL3 LLC
115.    SunE Green Energy Limited
116.    SunE Gresham WWTP LLC
117.    SunE HB LLC
118.    SunE Irvine LLC
119.    SunE J10 Holdings LLC
120.    SunE KHL PSNJ LLC
121.    SunE KHL1004 Hillsboro LLC
122.    SunE KHL968 Orange LLC
123.    SunE Little Neath Solar Limited
124.    SunE OC PSNJ LLC
125.    SunE Pleasant Valley SP Owner LLC
126.    SunE Prestop Park Limited
127.    SunE Project 1 Limited
128.    SunE REIT-D PR LLC
129.    SunE Solano SP Owner LLC
130.    SunE Solar XV Lessor LLC
131.    SunE Solar XVI Lessor LLC
132.    SunE Sundorne Grove Limited
133.    SunE Wasco SP Owner LLC
134.    SunE WF Bellingham LLC
135.    SunE WF Cambridge LLC
136.    SunE WF Framingham LLC
137.    SunE WF10217 West Hartford LLC
138.    SunE WMT PR2 LLC
139.    Sunsave 10 (Fareham) Limited
140.    Sunsave 11(Wrockwardine Farm) Limited
141.    Sunsave 14 (Fenton) Limited
142.    SunSave 15 (Westwood) Limited
143.    Sunsave 17 (Castle Combe) Limited
144.    SunSave 20 (Knowlton) Limited
145.    Sunsave 31 (Horam) Limited
146.    Sunsave 43 (Epwell) Limited
147.    Sunsave 6 (Manston) Limited
148.    TerraForm Power Operating, LLC
149.    TerraForm Solar XVII, LLC
150.    TerraForm Solar XVIII, LLC
151.    Terraform Utility Solar XIX LLC
152.    Terraform Utility Solar XVII LLC
153.    Terraform Utility Solar XVIII LLC
154.    True South Renewables Inc

233846.01B-HOUSR01A - MSW

155.    Uxbridge Solar LLC
156.    Vermont Wind LLC
157.    Waldo Solar Energy Park of Gainesville LLC

233846.01B-HOUSR01A - MSW

**Appendix 2 – GAM Employees**

**[Not Filed]**

## Appendix 3 – TERP Contracts

| Project # | Project Name | Country |
|---|---|---|
| CL-12-0023 | CAP I | Chile |
| IL-15-0045 | IL - Tennessee Valley Authority (TVA) - California Ridge - Invenergy | USA |
| IL-15-0044 | IL - Tennessee Valley Authority (TVA) - Bishop Hill - Invenergy | USA |
| TX-15-0044 | TX - Merrill Lynch Commodities (Hedge) - Rattlesnake - Invenergy | USA |
| NE-15-0003 | NE - Omaha Public Power District - Prairie Breeze - Invenergy | USA |
| TX-14-0113 | TX - Morgan Stanley - South Plains I - First Wind | USA |
| NY-15-0171 | NY - NYSERDA - Cohocton 1 - First Wind | USA |
| ME-15-0012 | ME - Market Sales and Harvard University - Stetson ME Phase 1 + Phase 2 - First Wind | USA |
| CA-11-0152 | CA - SCE - Regulus Solar | USA |
| ME-15-0011 | ME - BHE/CMP - Rollins ME - First Wind | USA |
| ME-15-0010 | ME - NB Power - Mars Hill ME - First Wind | USA |
| VT-15-0028 | VT - VEC - Sheffield VT - First Wind | USA |
| NY-15-0172 | NY - Market Sales  and NYSERDA - Steel Winds NY Phase 1 + Phase 2 - First Wind | USA |
| ME-15-0009 | ME - NSTAR Electric Company - Bull Hill ME - First Wind | USA |
| HI-15-0046 | HI - Maui Electric Company (MECO) - Kaheawa HI Phase 1 - First Wind | USA |
| HI-15-0048 | HI - Hawaii Electric Company - Kahuku HI - First Wind | USA |
| CA-11-0056 | CA - RPU - Hemet - AP North Lake I | USA |
| HI-15-0047 | HI - Maui Electric Company (MECO) - Kaheawa HI Phase 2 - First Wind | USA |
| NV-13-0023 | River Mountains Solar | USA |
| NV-11-0010 | NV - Nellis AFB - Nellis | USA |
| CO-06-0001 | CO - Xcel - Alamosa CS#1 - UB | USA |
| NJ-14-0255 | NJ - U.S. Foodservice - Swan Creek | USA |
| FL-12-0036 | FL - Lakeland Electric - Lakeland - Bluebird | USA |
| NC-13-0045 | NC - Progress Energy - Graham | USA |
| NC-13-0046 | NC - Progress Energy - Shankle | USA |
| NC-13-0001 | NC - Progress Energy - Bear Pond | USA |
| NC-13-0044 | NC - Progress Energy - Dessie | USA |
| MA-14-0238 | MA - University of MA Lowell - FW MA Solar Warren A - First Wind | USA |
| MA-14-0239 | MA - University of MA Medical - FW MA Solar Warren B - First Wind | USA |
| MA-14-0248 | MA - Billerica - Shaffer Landfill Trust | USA |
| CA-11-0219 | CA - CDCR - Corcoran State Prison | USA |
| MA-13-0111 | MA - Upper Blackstone - Treasure Valley | USA |
| MA-14-0249 | MA - True North - Triton/Salisbury/Newburyport | USA |
| MA-13-0008 | MA - New Bedford - Plymouth | USA |
| MA-14-0240 | MA - Town of Orange - FW MA Solar Warren C - First Wind | USA |
| NC-08-013C | NC - Duke Energy - Davidson III | USA |
| MA-14-0247 | MA - Franklin II - Cistercian Nuns | USA |
| MA-11-0138 | MA - Fall River Housing Authority - Rehoboth - Arnold Brothers | USA |
| NY-14-0162 | NY - LIPA - Cohalan Court Complex | USA |

| MA-13-0002 | MA - Cape Cod - Dartmouth | USA |
| UT-12-0021 | UT - RMP - Cedar City - Fiddler's Canyon 1 | USA |
| UT-12-0023 | UT - RMP - Cedar City - Fiddler's Canyon 2 | USA |
| UT-12-0035 | UT - RMP - Fiddler's Canyon 3 | USA |
| MA-14-0237 | MA - Town of Millbury - FW MA Solar Millbury - First Wind | USA |
| MA-15-0135 | MA - Town of Berkley - Berkley - Integrys | USA |
| MA-13-0016 | MA - Somerset Housing Authority - Uxbridge (SREC II) | USA |
| UT-12-0018 | UT - RMP - South Milford (Phillips) | USA |
| MA-14-0042 | MA - Fall River - Innovation | USA |
| UT-13-0020 | UT - RMP - Milford 2 | USA |
| MA-13-0317 | MA - Bridgewater State University - Solar Way | USA |
| MA-14-0043 | MA - Fall River - Uxbridge | USA |
| MA-14-0246 | MA - Franklin I - Cistercian Nuns | USA |
| MA-14-0040 | MA - Leominster - South Street | USA |
| NC-08-013D | NC - Duke Energy - Davidson IV | USA |
| UT-14-0001 | UT - RMP - Beryl | USA |
| UT-14-0003 | UT - RMP - Cedar City - Cedar Valley | USA |
| UT-14-0005 | UT - RMP - Milford - Granite Peak | USA |
| UT-14-0006 | UT - RMP - Milford - Laho Solar | USA |
| UT-14-0007 | UT - RMP - Milford Flat | USA |
| UT-14-0002 | UT - RMP - Paragonah - Buckhorn | USA |
| MA-12-0063 | MA - Bristol Community College - Fall River | USA |
| MA-13-0109 | MA - Westford - Hubbardston | USA |
| NY-14-0163 | NY - LIPA - Deer Park | USA |
| MA-13-0185 | MA - Bourne - Holliston I | USA |
| VT-13-0003 | VT - Vepp - Middlebury - Champlain Valley | USA |
| VT-13-0014 | VT - VEPP - Bridport | USA |
| MD-15-0026 | MD - Cecil - CCVT HS | USA |
| PR-12-0001 | PR - Janssen - Gurabo | USA |
| CA-11-0215 | CA - DSH - Coalinga State Hospital | USA |
| MA-13-0191 | MA - Palmer - Baptist Hill II | USA |
| MA-14-0163 | MA - Auburn - Rutland | USA |
| MD-14-0003 | MD - Cecil County SD - Bay View ES | USA |
| UT-14-0004 | UT - RMP - Greenville | USA |
| MA-15-0128 | MA - Town of Sterling - Sterling - Integrys | USA |
| AZ-15-0043 | AZ - Town of Gilbert - Gilbert Solar Facility I - Gilbert - Integrys - SPG | USA |
| MD-08-0047 | MD - UMES - Princess Anne | USA |
| NY-14-0164 | NY - LIPA - Dennison | USA |
| MD-14-0077 | MD - Elkton - WTP | USA |
| MD-14-0002 | MD - Pocomoke City - Waste Water Treatment | USA |
| CA-14-0721 | CA - SCE - Horn | USA |

233846.01B-HOUSR01A - MSW

| CA-14-0722 | CA - SCE - Ma | USA |
|------------|---------------|-----|
| CA-14-0719 | CA - SCE - Watts I | USA |
| CA-14-0718 | CA - SCE - Vinam | USA |
| CA-14-0713 | CA - SCE - Arrache 8083 I | USA |
| CA-14-0714 | CA - SCE - Arrache 8083 II | USA |
| CA-14-0716 | CA - SCE - Arrache 4013 | USA |
| CA-14-0729 | CA - SCE - LandPro Mitchell | USA |
| CA-14-0730 | CA - SCE - LandPro Rudy | USA |
| CA-13-0359 | Prologis - Rochester - SCE SPVP (RAP-5791) (WDAT1083FT) (CAISO ID 14GEN1028) | USA |
| MA-13-0009 | MA - Palmer - Baptist Hill I | USA |
| NY-13-0103 | NY - RIT - Solar Liberty | USA |
| MD-14-0040 | MD - Columbia Association - Nixon Farms II | USA |
| CA-11-0223 | CA - CDCR - Wasco State Prison | USA |
| CA-14-0724 | CA - SCE - Rutan II | USA |
| CA-14-0723 | CA - SCE - Rutan I | USA |
| CA-14-0427 | CA - Chino - San Antiono W - Nau | USA |
| NJ-14-0113 | NJ - Kingsway Board of Education - Swedesboro | USA |
| NJ-15-0064 | NJ - Skillman Buiness Park LLC - Skillman - Integrys | USA |
| MA-14-0245 | MA - Grafton WD - Follette Street | USA |
| CA-10-0402 | CA - SCE - Snowline - White Road (Central) | USA |
| CA-10-0401 | CA - SCE - Snowline - White Road (North) | USA |
| CA-11-0111 | CA - SCE - Snowline - White Road (South) | USA |
| CA-10-0400 | CA - SCE - Snowline - Duncan Road (North) | USA |
| CA-10-0094 | CA - SCE - Hesperia | USA |
| NC-08-013E | NC - Duke Energy - Davidson V | USA |
| CA-11-0224 | CA - CDCR - Pleasant Valley State Prison | USA |
| MA-13-0174 | MA - Webster - Grafton - SREC II | USA |
| NY-14-0166 | NY - LIPA - Riverhead | USA |
| MN-14-0001 | MN - Shakopee - Met Council WTP | USA |
| MA-13-0110 | MA - Upper Blackstone - Belchertown | USA |
| NJ-15-0057 | NJ - Toyota Motor Sales, U.S.A., Inc. - West Caldwell - Integrys | USA |
| NJ-15-0048 | NJ - Central Regional School District - Bayville - Integrys | USA |
| MD-15-0027 | MD - Cecil - Leeds ES | USA |
| MD-13-0029 | MD - Chimes - Nixon Farms I | USA |
| CA-11-0227 | CA - CDCR - Solano State Prison | USA |
| CA-14-0715 | CA - SCE - Arrache 8083 III | USA |
| CA-14-0717 | CA - SCE - Nunn | USA |
| PR-11-0015 | PR - V. Suarez - Bayamon | USA |
| CA-14-0728 | CA - SCE - LandPro Madelyn | USA |
| PA-14-0007 | PA - Moravian Academy - Bethlehem - HES | USA |

Appendix 3 – Page 3

| MA-12-0172 | MA - Tri-County Votech SD - Tri-County Votech HS | USA |
|---|---|---|
| CA-14-0711 | CA - SCE - Arrache 4006 I | USA |
| CA-14-0725 | CA - SCE - Rutan III | USA |
| CA-14-0712 | CA - SCE - Arrache 4006 II | USA |
| MA-14-0041 | MA - Fall River - Commerce | USA |
| VT-13-0006 | VT - VEPP - Springfield | USA |
| CA-12-0307 | CA - SCE - Ontario | USA |
| MA-12-0121 | MA - Lincoln Sudbury SD - Lincoln Sudbury HS | USA |
| NM-09-0062 | NM - Santa Fe - Paseo Real WTP | USA |
| CA-09-0062 | CA - Madera - WTP | USA |
| CA-11-0113 | CA - SCE - Snowline - Duncan Road (South) | USA |
| CA-14-0102 | CA - FAA - Mather | USA |
| CA-13-0133 | CA - SCE - Pico Rivera | USA |
| CA-15-0251 | CA - Kaiser Foundation Hospitals - Downey - Integrys | USA |
| CA-15-0253 | CA - Kaiser Foundation Hospitals - Irvine - Integrys | USA |
| CA-15-0254 | CA - Kaiser Foundation Hospitals - San Diego - Integrys | USA |
| CA-15-0252 | CA - Kaiser Foundation Hospitals - Fontana - Integrys | USA |
| CA-09-0072 | CA - Ingomar Packing - Los Banos | USA |
| CA-09-0038 | CA - NAVFAC MCAGCC - 29 Palms | USA |
| NJ-14-0043 | NJ - Raymour & Flanigan - Gibbstown - Nau | USA |
| CA-14-0061 | CA - DOT - Fontana | USA |
| CA-10-0387 | CA - Huntington Beach - Central Library | USA |
| NY-14-0165 | NY - LIPA - North County | USA |
| AZ-14-0033 | AZ - Marana Health Center - Marana | USA |
| CA-08-0044 | CA - CSU - Monterey Bay - Butler St. Lot | USA |
| PA-14-0004 | PA - Church Farm School - Exton - HES | USA |
| VT-13-0015 | VT - VEPP - Rutland | USA |
| GA-14-0008 | GA - Georgia Power - Alma | USA |
| GA-14-0011 | GA - Georgia Power - Nunn | USA |
| GA-14-0033 | GA - Georgia Power - Douglas | USA |
| GA-14-0032 | GA - Georgia Power - Chester | USA |
| MA-13-0023 | MA - Home Depot - Norton I | USA |
| MA-13-0260 | MA - Home Depot - Norton IV | USA |
| GA-14-0029 | GA - Georgia Power - Arlington | USA |
| MA-13-0025 | MA - Webster - Grafton | USA |
| MA-13-0262 | MA - Mass Maritime - Mattapoisett II | USA |
| MA-13-0022 | MA - Plymouth Housing Authority - Mattapoisett I | USA |
| MA-13-0190 | MA - Bourne - Holliston II | USA |
| NY-14-0161 | NY - LIPA - Brentwood | USA |
| MA-13-0259 | MA - Kohls - Norton III | USA |
| NH-15-0001 | NH - Peterborough - DPW | USA |

| MA-13-0024 | MA - Home Depot - Berlin I | USA |
|---|---|---|
| MA-13-0254 | MA - Home Depot - Berlin II | USA |
| MA-13-0255 | MA - Home Depot - Berlin III | USA |
| MA-13-0256 | MA - Home Depot - Berlin IV | USA |
| NJ-14-0156 | NJ - North Warren Regional BOE - Blairstown - HES | USA |
| NJ-14-0066 | NJ - Wayne BOE - Anthony Wayne MS - Nau | USA |
| CA-09-0280 | CA - San Jose - Central Services Yard II | USA |
| CA-08-053O | CA - CSU - Pomona - Lot M | USA |
| CA-14-0429 | CA - Sequoia Prop - Meadowfields - Nau | USA |
| CA-15-0249 | CA - Kaiser Foundation Hospitals - Bellflower - Integrys | USA |
| CA-14-0008 | CA - Fremont - Police Combined | USA |
| NJ-14-0150 | NJ - Macy's Corporate Services  - Deptford - HES | USA |
| NJ-14-0225 | NJ - Holmdel Township BOE - Satz Intermediate School/Holmdel HS | USA |
| NJ-14-0157 | NJ - Town of Hammonton - Hammonton - HES | USA |
| NJ-15-0054 | NJ - AT&T - Secaucus - Integrys | USA |
| CA-10-0388 | CA - Huntington Beach - Civic Center | USA |
| NJ-14-0067 | NJ - Wayne BOE - Wayne Hills HS - Nau | USA |
| NJ-14-0045 | NJ - Hazlet BOE - Raritan HS - Nau | USA |
| NJ-14-0049 | NJ - Lindenwold BOE - High School - Nau | USA |
| MA-11-0050 | MA - Iron Mountain - Northborough | USA |
| AZ-15-0042 | AZ - Town of Prescott Valley (WWTP) -  Prescott Valley - Integrys | USA |
| NJ-14-0159 | NJ - Township of Lakewood - 1 American Ave - Lakewood - HES | USA |
| NJ-14-0060 | NJ - WPU - REC Cntr - Nau | USA |
| CA-08-054P | CA - CSU - San Bernardino - Student Union II | USA |
| NY-13-0002 | NY - Anheuser Busch - Bronx | USA |
| NJ-14-0186 | NJ - Toms River Regional Schools - Intermediate East - Toms River - HES | USA |
| NJ-14-0205 | NJ - JLJ Associates LLC & Shoprite of Carteret - Carteret - HES | USA |
| CA-14-0720 | CA - SCE - Watts II | USA |
| NJ-14-0059 | NJ - WPU - Century Hall - Nau | USA |
| TX-13-0105 | TX - AT&T - Lancaster | USA |
| NJ-14-0151 | NJ - Macy's Corporate Services - Paramus - HES | USA |
| CA-09-0054 | CA - Sutter Health - Auburn - Education II | USA |
| MA-14-0329 | MA - Big Y Foods, Inc. - Springfield - HES | USA |
| AZ-13-0118 | AZ - Pima County - Fleet Services Center | USA |
| NJ-15-0068 | NJ - Appliance Dealers Cooperative - Monroe - Integrys | USA |
| NJ-14-0185 | NJ - Toms River Regional Schools - HS South - Toms River - HES | USA |
| NJ-14-0065 | NJ - Wayne BOE - Schuyler Colfax MS - nau | USA |
| NJ-14-0047 | NJ - Konica - 100 Williams - Nau | USA |
| NJ-14-0199 | NJ - Sutherland Packaging - Andover - HES | USA |
| NJ-14-0153 | NJ - Macy's Corporate Services - Wayne - HES | USA |

Appendix 3 – Page 5

| | | |
|---|---|---|
| NJ-15-0055 | NJ - Mannington Mills - Mannington I - Salem - Integrys | USA |
| NJ-15-0061 | NJ - J.C. Penney Corporation, Inc. - Wayne - Integrys | USA |
| MD-15-0003 | MD - Montgomery CS - Sherwood HS | USA |
| CA-15-0250 | CA - Kaiser Foundation Hospitals - Cudahy - Integrys | USA |
| CA-15-0264 | CA - J.C. Penney Corporation, Inc. - Palmdale - Integrys | USA |
| AZ-13-0120 | AZ - Pima County - Northwest YMCA | USA |
| NJ-14-0224 | NJ - Holmdel Township BOE - Village ES | USA |
| AZ-15-0041 | AZ - Town of Prescott Valley (Tank Farm) - Prescott Valley - Integrys | USA |
| NJ-14-0204 | NJ - Pimentel Investments - Newark - HES | USA |
| NJ-14-0155 | NJ - Macy's Corporate Services - Lawrenceville - HES | USA |
| AZ-13-0056 | AZ - Yavapai County - Detention Center | USA |
| CA-13-0275 | CA - Palm Springs SD - Nellie Coffman MS | USA |
| AZ-13-0049 | AZ - Humboldt SD - Bradshaw HS | USA |
| NJ-14-0177 | NJ - Toms River Regional Schools - Intermediate South - Beachwood - HES | USA |
| MD-14-0021 | MD - Talbot County - County Community - Nau | USA |
| AZ-13-0114 | AZ - ASU - University Center Building C South | USA |
| NJ-15-0050 | NJ - County of Monmouth - Agriculture Building - Freehold - Integrys | USA |
| PA-15-0003 | PA - Bellefonte Area SD - HS - Bellfonte - Integrys | USA |
| NJ-14-0029 | NJ - Medford BOE - Chairville - Nau | USA |
| NJ-14-0028 | NJ - Medford BOE - Kirby's Mill ES - Nau | USA |
| NJ-15-0063 | NJ - J.C. Penney Corporation, Inc. - East Brunswick - Integrys | USA |
| NJ-14-0035 | NJ - Cresskill BOE - Cresskill - Nau | USA |
| HI-13-0039 | HI - Kaiser - Waipio Medical Offices (Oahu) | USA |
| PA-15-0001 | PA - Bald Eagle Area SD - HS - Bald Eagle - Integrys | USA |
| CA-15-0245 | CA - County of Santa Clara #1 - San Jose - Integrys | USA |
| NJ-15-0052 | NJ - County of Monmouth -  Human Services - Freehold - Integrys | USA |
| FL-14-0009 | FL - Waldo - Gainesville - Nau | USA |
| NJ-14-0201 | NJ - Eastman Companies - Livingston - HES | USA |
| MD-14-0020 | MD - Fredericks BOE - Public School - Nau | USA |
| PR-13-0029 | PR - GFR Media - Guaynabo - El Nuevo Dia Rooftop | USA |
| MA-13-0258 | MA - Home Depot - Norton II | USA |
| NJ-15-0047 | NJ - Union Beach BOE - Union Beach - Integrys | USA |
| NJ-14-0058 | NJ - WPU - Valley Road - Nau | USA |
| PA-14-0014 | PA - CIT - Easton | USA |
| AZ-13-0113 | AZ - ASU - University Center Building B North | USA |
| NJ-14-0056 | NJ - WPU - Wayne Hall - Nau | USA |
| AZ-15-0070 | AZ - Pima County, AZ - Sheriff Admin | USA |
| AZ-14-0023 | AZ - Winslow USD - Winslow HS | USA |
| NJ-14-0242 | NJ - Township Municipal Utilities Authority - Jackson - HES | USA |
| NJ-14-0152 | NJ - Macy's Corporate Services - Woodbridge - HES | USA |

Appendix 3 – Page 6

| MA-14-0244 | MA - Canton SD - Canton HS | USA |
|---|---|---|
| NJ-14-0208 | NJ - General Plumbing Supply - Edison - HES | USA |
| NJ-14-0202 | NJ - TransWorld Marketing - E Rutherford - HES | USA |
| NJ-14-0034 | NJ - Medford BOE - Memorial MS - Nau | USA |
| CA-15-0248 | CA - SBWMA  Recycling - San Carlos - Integrys | USA |
| CA-15-0265 | CA - J.C. Penney Corporation, Inc. - Redlands - Integrys | USA |
| NJ-14-0197 | NJ - Passaic Valley HS BOE - Little Falls - HES | USA |
| NJ-07-0008 | NJ - Owens Corning - Kearny | USA |
| CA-13-0005 | CA - Palm Springs SD - Bella Vista ES | USA |
| CA-13-0276 | CA - Palm Springs SD - Raymond Cree MS | USA |
| CA-15-0246 | CA - County of Santa Clara #2 - San Jose - Integrys | USA |
| NJ-14-0046 | NJ - Hazlet BOE - Middle School - Nau | USA |
| NJ-07-0058 | NJ - Kohl's - Princeton | USA |
| OR-09-0005 | OR - Gresham - WTP | USA |
| NJ-12-0073 | NJ - Symrise - Teterboro | USA |
| AZ-13-0119 | AZ - Pima County - PECOC | USA |
| OR-14-0004 | OR - Beaverton - Sexton Mountain | USA |
| NJ-14-0223 | NJ - Holmdel Township BOE - Indian Hill ES | USA |
| NJ-14-0112 | NJ - Greenwich SD - Greenwich ES | USA |
| CA-15-0262 | CA - J.C. Penney Corporation, Inc. - El Cajon - Integrys | USA |
| PA-14-0011 | PA - BASD - Farmersville ES | USA |
| MD-15-0020 | MD - Montgomery CS - Redland MS | USA |
| PA-14-0012 | PA - BASD - Freedom HS | USA |
| NJ-14-0154 | NJ - Macy's Corporate Services - Bridgewater - HES | USA |
| NJ-15-0053 | NJ - County of Monmouth - Western Branch Library - Freehold - Integrys | USA |
| PA-14-0006 | PA - Gettysburg College - Gettysburg - HES | USA |
| NJ-14-0226 | NJ - Yeshiva Yishrei Lev - Lakewood - HES | USA |
| NJ-14-0187 | NJ - Toms River Regional Schools - East Dover ES - Toms River - HES | USA |
| NJ-14-0216 | NJ - Barnegat Township BOE Barnegat HS - Barnegat - HES | USA |
| NJ-14-0215 | NJ - Barnegat Township BOE - Russell O Brackman MS - Barnegat - HES | USA |
| FL-14-0007 | FL - Exchange Place - Gainesville - Nau | USA |
| MD-15-0019 | MD - Montgomery CS - Watkins Mill HS | USA |
| PA-14-0017 | PA - Colonial SD - Colonial MS | USA |
| CA-12-0035 | CA - Irvine SD - University HS V | USA |
| MA-14-0211 | MA - Big Y Foods, Inc. - Lee - HES | USA |
| CT-15-0012 | CT - PLG 500 Milford and Pilgrim Colonial - Milford - Integrys | USA |
| CA-09-0235 | CA - San Jose - Central Services Yard I | USA |
| NJ-14-0149 | NJ - Fantastic Industries - Carteret - HES | USA |
| AZ-15-0064 | AZ - Pima County, AZ - Kino YMCA | USA |
| NJ-14-0033 | NJ - Medford BOE - Haines - Nau | USA |

Appendix 3 – Page 7

| PR-09-0054 | PR - DDRC Plaza del Atlantico - Arecibo | USA |
|---|---|---|
| NJ-14-0193 | NJ - Toms River Regional Schools - Silver Bay ES - Toms River - HES | USA |
| NJ-14-0031 | NJ - Medford BOE - Cranberry - Nau | USA |
| CT-14-0007 | CT - Thule Distribution - Seymour - Nau | USA |
| MA-14-0258 | MA - Canton SD - Galvin MS | USA |
| CA-08-0053 | CA - CSU - Pomona - Kellogg Gym | USA |
| NJ-14-0206 | NJ - Abundant Life Church - Dayton - HES | USA |
| CA-15-0247 | CA - SBWMA Recology - San Carlos - Integrys | USA |
| NJ-14-0183 | NJ - Toms River Regional Schools  - Cedar Grove ES - Toms River - HES | USA |
| NJ-14-0195 | NJ - Toms River Regional Schools  - Walnut Street ES - Toms River - HES | USA |
| NJ-15-0058 | NJ - J.C. Penney Corporation, Inc. - Cherry Hill - Integrys | USA |
| CA-15-0257 | CA - National University - Kearny Mesa Campus (Building AB) - San Diego - Integrys - SPG | USA |
| CA-09-0075 | CA - AT&T - San Diego | USA |
| PA-14-0010 | PA - BASD - East Hills MS | USA |
| NJ-14-0219 | NJ - BOE of Township of Teaneck Benjamin Franklin MS - Teaneck - HES | USA |
| NJ-14-0192 | NJ - Toms River Regional Schools - Pine Beach ES - Pine Beach - HES | USA |
| NJ-09-0087 | NJ - Lord and Taylor - Lawrenceville | USA |
| NJ-07-0041 | NJ - Kohl's - Hamilton Township | USA |
| NJ-09-0094 | NJ - Lord and Taylor - Paramus | USA |
| MD-11-0026 | MD - Kohl's - Forest Hill | USA |
| NJ-15-0069 | NJ - Mazza & Sons, Inc. - Tinton Falls - Integrys | USA |
| NJ-14-0211 | NJ - Barnegat Township BOE - Cecil S. Collins ES - Barnegat - HES | USA |
| NJ-14-0188 | NJ - Toms River Regional Schools - North Dover ES - Toms River - HES | USA |
| NJ-14-0189 | NJ - Toms River Regional Schools  - West Dover ES - Toms River - HES | USA |
| PA-14-0009 | PA - BASD - Buchanan ES | USA |
| PA-15-0002 | PA - Bald Eagle Area SD - ES - Wingate - Integrys | USA |
| NJ-15-0062 | NJ - J.C. Penney Corporation, Inc. - Woodbridge - Integrys | USA |
| MD-15-0021 | MD - Montgomery CS - Sligo MS | USA |
| CA-15-0266 | CA - J.C. Penney Corporation, Inc. - Santa Clarita - Integrys | USA |
| PA-14-0013 | PA - BASD - Spring Garden ES | USA |
| NJ-14-0203 | NJ - Plastico Products - Irvington - HES | USA |
| NJ-15-0056 | NJ - Mannington Mills - Mannington II - Salem - Integrys | USA |
| NJ-14-0082 | NJ - Sussex Wantage BOE - Sussex - Nau | USA |
| CA-09-0161 | CA - Irvine SD - Rancho San Joaquin MS | USA |
| NJ-15-0060 | NJ - J.C. Penney Corporation, Inc. - Deptford - Integrys | USA |
| AZ-13-0077 | AZ - ASU - Rural Road Parking Structure 4 | USA |
| CT-07-0009 | CT - Kohl's - Orange | USA |
| PR-09-0066 | PR - DDRC Plaza del Norte #2 - Hatillo | USA |

Appendix 3 – Page 8

| MA-14-0212 | MA - Big Y Foods, Inc. - Franklin - HES | USA |
|---|---|---|
| NJ-14-0111 | NJ - Greenwich SD  - Stewartsville MS | USA |
| CA-13-0334 | CA - HARD MHGC - Alameda | USA |
| NJ-14-0050 | NJ - Lindenwold BOE - Middle School - Nau | USA |
| NJ-14-0036 | NJ - Medford Lakes - Nau | USA |
| PA-14-0015 | PA - Yuasa Battery - Laureldale | USA |
| NJ-10-0125 | NJ - AT&T - Trenton | USA |
| CA-13-0449 | CA - Rosedale USD - Freedom Middle School | USA |
| AZ-13-0112 | AZ - Yavapai County - Court | USA |
| NJ-14-0207 | NJ - Calvary Tabernacle - Cranford - HES | USA |
| NJ-14-0081 | NJ - Konica - 101 Williams - Nau | USA |
| NJ-14-0052 | NJ - Lindenwold BOE - School 5 - Nau | USA |
| CA-12-0040 | CA - Irvine SD - Woodbury ES | USA |
| TX-14-0032 | TX - Iron Mountain - Pflugerville | USA |
| AZ-14-0020 | AZ - Camp Verde USD - Camp Verde ES | USA |
| CA-13-0363 | CA - Fremont - Aqua Adventure Water Park | USA |
| OR-07-0002 | OR - Kohl's - Hillsboro | USA |
| NJ-09-0028 | NJ - Kohl's - Linden | USA |
| CA-09-0413 | CA - Irvine SD - Irvine HS - Roof | USA |
| CA-09-0272 | CA - Irvine SD - District Office | USA |
| NJ-09-0095 | NJ - Lord and Taylor - Wayne | USA |
| CA-15-0256 | CA - National University - Spectrum Campus - Business Park - San Diego - Integrys - SPG | USA |
| NJ-14-0196 | NJ - Toms River Regional Schools  - Washington ES - Toms River - HES | USA |
| CA-12-0037 | CA - Irvine SD - Stonegate ES | USA |
| NJ-14-0030 | NJ - Medford BOE - Allen - Nau | USA |
| NJ-14-0220 | NJ - BOE of Township of Teaneck Bryant ES - Teaneck - HES | USA |
| CA-13-0445 | CA - Rosedale USD - Independence ES | USA |
| CA-14-0837 | CA - Central Unified School District - Fresno - Saroyan Elementary School | USA |
| AZ-15-0066 | AZ - Pima County, AZ - Adult Probation | USA |
| NY-15-0033 | NY - Hendrick Hudson SD - Furnace Woods ES | USA |
| AZ-14-0019 | AZ - Camp Verde USD - Camp Verde HS | USA |
| PA-14-0018 | PA - Colonial SD - Plymouth Whitemarsh HS | USA |
| AZ-14-0021 | AZ - Camp Verde USD - Multi-Purpose Complex | USA |
| CA-13-0460 | CA - Palm Springs SD - Finchy ES | USA |
| CA-13-0441 | CA - Rosedale USD - Almondale ES | USA |
| CA-13-0444 | CA - Rosedale USD - Del Rio ES | USA |
| NJ-14-0198 | NJ - Yeshiva Toras Chaim - Lakewood - HES | USA |
| CA-10-0306 | CA - Huntington Beach - City Yard | USA |
| NY-15-0035 | NY - Hendrick Hudson SD - Buchanan Verplanck ES | USA |

Appendix 3 – Page 9

| NJ-14-0213 | NJ - Barnegat Township BOE Lillian M Dunfee ES - Barnegat - HES | USA |
| NJ-14-0040 | NJ - Ocean City II - Public Works Bldg - Nau | USA |
| CA-13-0446 | CA - Rosedale USD - North Rosedale ES | USA |
| NJ-14-0212 | NJ - Barnegat Township BOE Joseph T Donahue ES - Barnegat - HES | USA |
| NJ-15-0051 | NJ - County of Monmouth - County Courthouse - Freehold - Integrys | USA |
| NJ-11-0199 | NJ - Iron Mountain - East Brunswick - 22 Kimberly Rd | USA |
| CA-13-0455 | CA - Palm Springs SD - Cathedral City ES | USA |
| CA-15-0263 | CA - National University - Spectrum Campus - Library - Integrys - SPG | USA |
| AZ-14-0025 | AZ - Winslow USD - District Office | USA |
| CA-09-0004 | CA - SuperValu - Carlsbad | USA |
| CA-09-0003 | CA - SuperValu - Oceanside | USA |
| CA-11-0598 | CA - Palm Springs SD - Cabot Yerxa ES | USA |
| NJ-08-0122 | NJ - Whole Foods - Union | USA |
| NJ-14-0057 | NJ - WPU - Facilities Bldg - Nau | USA |
| AZ-13-0057 | AZ - Quartzsite - WTP | USA |
| NY-15-0034 | NY - Hendrick Hudson SD - Lindsey ES | USA |
| NJ-11-0200 | NJ - Iron Mountain - East Brunswick - 20 Kimberly Rd | USA |
| NJ-09-0093 | NJ - Lord and Taylor - Woodbridge | USA |
| CA-13-0443 | CA - Rosedale USD - Centennial ES | USA |
| NJ-11-0201 | NJ - Iron Mountain - East Brunswick - 30 Kimberly Rd | USA |
| NJ-09-0090 | NJ - Lord and Taylor - Bridgewater | USA |
| NJ-14-0217 | NJ - BOE of Township of Teaneck Hawthorne ES - Teaneck - HES | USA |
| NJ-14-0069 | NJ - West New York - St. Joseph - Nau | USA |
| NJ-14-0062 | NJ - Wayne BOE - Lafayette ES - Nau | USA |
| CA-08-054A | CA - CSU - San Bernardino - College of Education | USA |
| NJ-09-0001 | NJ - DDRC - Hamilton - 150kW | USA |
| HI-13-0040 | HI - Kaiser - Mapunapuna Medical Offices (Honolulu) | USA |
| NY-15-0032 | NY - Hendrick Hudson SD - Blue Mountain MS | USA |
| PA-14-0016 | PA - Colonial SD - Colonial ES | USA |
| CT-08-0015 | CT - Whole Foods - Cheshire - Exp | USA |
| NJ-14-0055 | NJ - WPU - Power Avenue - Nau | USA |
| PA-14-0008 | PA - Springside Chestnut Hill Academy - Philadelphia - HES | USA |
| CA-09-0275 | CA - Irvine SD - College Park ES | USA |
| NJ-14-0061 | NJ - Wayne BOE - Packanack Lake - Nau | USA |
| CA-13-0442 | CA - Rosedale USD - American ES | USA |
| AZ-14-0024 | AZ - Winslow USD - Winslow Jr. HS | USA |
| NJ-08-0111 | NJ - Bloomingdale's - Wayne | USA |
| AZ-14-0027 | AZ - Winslow USD - Washington ES | USA |
| NJ-14-0114 | NJ - Orange SD - Lincoln Avenue ES | USA |
| FL-14-0008 | FL - Green Cove - Gainesville - Nau | USA |
| AZ-13-0052 | AZ - La Paz County - Golf Course | USA |

Appendix 3 – Page 10

| | | |
|---|---|---|
| HI-13-0035 | HI - Kaiser - Nanaikeola Medical Offices (Honolulu) | USA |
| NJ-14-0184 | NJ - Toms River Regional Schools - Educ Learn - Toms River - HES | USA |
| PA-15-0004 | PA - Bellefonte Area SD - Marion-Walker ES - Integrys | USA |
| NJ-14-0200 | NJ - Bais Chinuch L'Bonos Bais Rochel - Lakewood - HES | USA |
| CA-09-0254 | CA - Irvine SD - Plaza Vista ES | USA |
| NJ-14-0194 | NJ - Toms River Regional Schools - Transcom Facility - Toms River - HES | USA |
| HI-13-0034 | HI - Kaiser - Koolau Medical Offices (Oahu) | USA |
| NJ-09-0022 | NJ - DDRC Route 22 Retail Shopping Center - Union | USA |
| CA-09-0005 | CA - SuperValu - Alpine | USA |
| CA-10-0237 | CA - Irvine SD - Maintenance II | USA |
| NJ-14-0110 | NJ - Orange SD - Park Avenue ES | USA |
| CA-15-0133 | CA - National University - Kearny Mesa (Building D) - San Diego - Integrys - SPG | USA |
| CA-13-0355 | CA - UC Berkeley - MLK Student Union | USA |
| AZ-13-0051 | AZ - La Paz County - Public Works Facility | USA |
| CO-08-0039 | CO - Kohl's - Thornton | USA |
| CO-08-0038 | CO - Kohl's - Littleton | USA |
| CO-08-0029 | CO - Kohl's - Arapahoe Crossing | USA |
| CO-08-0030 | CO - Kohl's - Arvada | USA |
| CO-09-0003 | CO - Kohl's - Aurora | USA |
| CO-08-0031 | CO - Kohl's - Aurora East | USA |
| CO-08-0034 | CO - Kohl's - Greeley | USA |
| CO-08-0036 | CO - Kohl's - Lone Tree | USA |
| CO-08-0037 | CO - Kohl's - Louisville | USA |
| CO-08-0040 | CO - Kohl's - Westminster | USA |
| NJ-08-0112 | NJ - Bloomingdale's - Hackensack | USA |
| NJ-14-0044 | NJ - Hazlet BOE - Lillian ES - Nau | USA |
| NY-15-0031 | NY - Hendrick Hudson SD - HHHS | USA |
| NJ-14-0051 | NJ - Lindenwold BOE - School 4 - Nau | USA |
| NJ-14-0048 | NJ - Jersey City - Liberty Science - Nau | USA |
| NJ-14-0221 | NJ - BOE of Township of Teaneck HS - Teaneck - HES | USA |
| CA-09-0290 | CA - Irvine SD - University HS I | USA |
| NJ-14-0068 | NJ - Solomon Shechter - Nau | USA |
| CO-09-0062 | CO - Micro Motion - Boulder | USA |
| CT-13-0001 | CT - ISO-NE - Data Center | USA |
| PA-14-0003 | PA - Ancillae Assumpta Academy - Wyncote - HES | USA |
| AZ-13-0050 | AZ - La Paz County - County Office | USA |
| CT-14-0030 | CT - Meriden - Casimir Elementary | USA |
| NJ-14-0032 | NJ - Medford BOE - Transport Ctr - Nau | USA |
| AZ-14-0022 | AZ - Winslow USD - Bonnie Brennan ES | USA |
| CO-09-0063 | CO - DDRC Centenial Prom - Denver | USA |

Appendix 3 – Page 11

| | | |
|---|---|---|
| NJ-14-0218 | NJ - BOE of Township of Teaneck Thomas Jefferson MS - Teaneck - HES | USA |
| MA-08-0029 | MA - Whole Foods - Framingham | USA |
| NJ-14-0038 | NJ - Ocean City I - Civic Center - Nau | USA |
| NJ-09-0020 | NJ - DDRC Nassau Pavilion III - Princeton | USA |
| CA-09-0259 | CA - Irvine SD - Northwood ES - Roof | USA |
| PA-14-0005 | PA - Delaware Valley Friends School - Paoli - HES | USA |
| NJ-14-0063 | NJ - Wayne BOE - Theunis ES - Nau | USA |
| CA-13-0365 | CA - Fremont - Irvington Community Center | USA |
| MA-08-0030 | MA - Whole Foods - Cambridge | USA |
| AZ-13-0058 | AZ - Quartzsite - Town Hall | USA |
| PR-09-0064 | PR - DDRC Plaza Isabela - Isabela | USA |
| MA-09-0013 | MA - Whole Foods - Dedham | USA |
| NJ-14-0064 | NJ - Wayne BOE - Terhune ES - Nau | USA |
| CA-09-0284 | CA - Irvine SD - Venado MS | USA |
| NJ-14-0037 | NJ - Ocean City I - Firehouse - Nau | USA |
| CT-07-0012 | CT - Whole Foods - West Hartford | USA |
| CA-09-0250 | CA - Irvine SD - South Lake MS | USA |
| NJ-14-0148 | NJ - CPI Connector Products, Inc. - Cinnaminson - HES | USA |
| CO-09-0056 | CO - DDRC Univ Hills Shopping Ctr - Denver | USA |
| CA-09-0289 | CA - Irvine SD - University HS II | USA |
| CA-09-0288 | CA - Irvine SD - University HS III | USA |
| MA-07-0001 | MA - Whole Foods - Bellingham | USA |
| CA-09-0271 | CA - Irvine SD - Early Childhood Learning Center | USA |
| NJ-09-0026 | NJ - DDRC - Hamilton - 60kW | USA |
| CA-15-0141 | CA - National University - Kearny Mesa (Building C) - San Diego - Integrys - SPG | USA |
| CA-09-0252 | CA - Irvine SD - Santiago Hills ES | USA |
| CA-09-0055 | CA - Sutter Health - Auburn - Education I | USA |
| CA-09-0355 | CA - Irvine SD - Lakeside MS | USA |
| CA-09-0253 | CA - Irvine SD - Springbrook ES | USA |
| NJ-14-0041 | NJ - Ocean City II - Vehicle Mnt Bldg - Nau | USA |
| NJ-09-0018 | NJ - DDRC Nassau Pavilion II - Princeton | USA |
| CA-09-0262 | CA - Irvine SD - Maintenance I | USA |
| NJ-15-0070 | NJ - GLB Bridgewater - Bridgewater - 1130 US Route 22 - Integrys | USA |
| NJ-15-0067 | NJ - Advance at Park Place LLC - 200 Park Place - Integrys | USA |
| NJ-15-0093 | NJ - Advance at Park Place LLC - 210 Park Place - Integrys | USA |
| NJ-15-0094 | NJ - Advance at Park Place LLC - 220 Park Place - Integrys | USA |
| NJ-15-0095 | NJ - Advance at Park Place LLC - 230 Park Place - Integrys | USA |
| NJ-15-0080 | NJ - GLB Bridgewater - Bridgewater - 1140 US Route 22 - Integrys | USA |
| NJ-15-0081 | NJ - GLB Bridgewater - Bridgewater - 1150 US Route 22 - Integrys | USA |
| NJ-14-0222 | NJ - BOE of Township of Teaneck Eugene Field - Teaneck - HES | USA |

| CA-09-0291 | CA - Irvine SD - Turtle Rock ES | USA |
|---|---|---|
| PA-15-0005 | PA - Bellefonte Area SD - ES - Pleasant Gap - Integrys | USA |
| NJ-15-0082 | NJ - GLB Bridgewater - Bridgewater - 1160 US Route 22 - Integrys | USA |
| NJ-14-0214 | NJ - Barnegat Township BOE Robert L Horbelt ES - Barnegat - HES | USA |
| CA-09-0286 | CA - Irvine SD - University HS IV | USA |
| PA-14-0002 | PA - Pennsylvania - Sycamore Hill Farm - Bethlehem - HES | USA |
| PR-09-0055 | PR - DDRC Plaza Isabela #2 - Isabela | USA |
| NJ-09-0023 | NJ - DDRC Nassau Pavilion I - Princeton | USA |
| AZ-14-0026 | AZ - Winslow USD - Jefferson ES | USA |
| NJ-14-0039 | NJ - Ocean City I - Cultural Arts - Nau | USA |
| NJ-14-0146 | NJ - Congregation Kehilas Raintree - Lakewood - HES | USA |
| NJ-14-0158 | NJ - Township of Lakewood - 1555 Pine St - Lakewood - HES | USA |
| NJ-14-0227 | NJ - Yeshiva Gedola of Carteret (42 Noe Street) - Carteret - HES | USA |
| NJ-14-0042 | NJ - Ocean City II - Police Station - Nau | USA |
| CA-13-0351 | CA - UC Berkeley - Eshleman Hall | USA |
| NJ-14-0228 | NJ - Yeshiva Gedola of Carteret (44 Noe Street) - Carteret - HES | USA |
| HI-13-0041 | Kona - Kaiser - Enfinity | USA |
| HI-13-0038 | Honolulu Medical Offices - Kaiser - Enfinity | USA |
| CA-14-0399 | CA - PGE - Atwell Island - Sam | USA |
| CA-14-0291 | CA - PGE - CalRenew1 - Meridian | USA |

Appendix 3 – Page 13

**Appendix 4 – Form of Waiver Letters**

*(See attached)*

SC1:4383790.2B



Dear [Name of the Employee]:

This letter is on behalf of SunEdison, Inc., its subsidiaries and affiliates and any successor (jointly, "SunEdison") and your transition from SunEdison to employment by [TERP/GLBL]**.**

About your employment with SunEdison you may have agreed to certain restrictive covenants, including for example that:

- You would protect SunEdison's confidential or proprietary information and not use or disclose said confidential or proprietary information to third parties, both during and after your employment with SunEdison (such commitment or any commitment with similar effect, the "Confidentiality Commitment");

- For a period of time, you would not engage in or contribute your knowledge to any work or activity that involves a product, process, apparatus, service or development which is competitive with or similar to a product, process, apparatus, service or development on which you worked or with respect to which you had access to confidential or proprietary information while at SunEdison (such commitment, or any commitment similarly limiting your ability to engage in any activity that may be competitive with SunEdison, a "Non-Compete");

- You would be required to disclose to SunEdison all ideas, inventions, or discoveries, which you may conceive or make, alone or with others, during your employment with SunEdison and for a period of time after your separation from SunEdison, that ideas, inventions, or discoveries would be presumed to have been conceived by SunEdison (such covenant, or any covenant with a similar effect the "Post Termination Extension of Ideas"); and

- You would not solicit, induce or attempt to solicit or induce SunEdison employees to leave or take any action to discourage or divert any SunEdison customers (or otherwise interfere with SunEdison's continuing relationship with its customers) for a period of time following your employment termination with SunEdison (such commitment, or any commitment with a similar effect, a "Non-Solicit");

*without the express written consent of a duly authorized officer of SunEdison.*

In connection with your transition to employment with [TERP/GLBL], on behalf of SunEdison:

- I agree on behalf of SunEdison that the Non-Compete shall no longer apply to you and is forever waived by SunEdison.

- I agree on behalf of SunEdison that the Confidentiality Commitment shall not apply the extent -- and only to the extent -- necessary for the performance of your duties of employment to [TERP/GLBL]. However, with respect to any employment except TERP/GLBL, I would remind

Appendix 4 – Page 15



you that the Confidentiality Commitment is perpetual, is not waived, and your Confidentiality Commitment will continue forever.

- Your Non-Solicit and your Post Termination Extension of Ideas also both continue until they expire per the terms of those agreements.

Congratulations on your transition to [TERP/GLBL].  I wish you and [TERP/GLBL] much success.

Sincerely,


_____
[Name of Duly Authorized SunEdison Officer


Copy: Personnel File


Appendix 4 – Page 16

**Appendix 5 – Contested Fees and Vendor Payments**

**[Not Filed]**

## Appendix 6 – SUNE Services

**Section A:**

**Non-Personnel Services**

All services related to the following, excluding personnel support:

1. Maintain cellular and telecommunications data service contracts related to plant sites or provision of services.
2. Maintain server and Data Center Services
   a. GAM data centers in Boston and San Francisco
   b. Data lines for above data centers
   c. GAM AWS environment
   d. Hardware support from HP (server contract)
   e. F5 Load Balancing Hardware
   f. Backup Tape Storage for Boston Center
3. Maintain GAM Applications
   a. Software supporting GAM services and data path including SEEDS, SEEDS mapping tool, Trees, SMART DB, SunEdison Connect, Maximo, Maximo mobile tool
   b. Supporting software and applications required for the above software to function
4. Maintain Data Networking otherwise required to support SUNE services
5. Maintain storage of electronic data related to the TERP Contracts and transfer of such data to TERP, New Employers or Service Providers pursuant to Section 2.3 of the Agreement
6. Renewable Operations Center Services
   a. Maintain a NERC compliant facility
   b. Maintain data lines for ROC facilities
   c. 24/7 Monitoring of assets
   d. Respond to alarm and alert conditions and dispatch field service personnel
   e. Work order management
   f. Compliance activities, including but not limited to applicable local and federal regulations, NERC and project agreements
   g. Outage and curtailment tracking, management and execution
   h. Coordination with Utility, Scheduling Coordinator, ISO/RTOs and other project stakeholders
   i. Monitor / reset turbine per procedures and protocols
   j. Monitor site security and notify personnel or local emergency agencies in case of an event
   k. Monitor operation of substations, collector systems, and point of interconnect for proper operation
      i. EWP01 and EWP25 icing
      ii. STE01 icing
      iii. ROL eagle shutdown

   iv. KWP Storm curtailment
  l. Respond to environmental concerns: sound complaints, icing, force majeure events; dispatching personnel as necessary
  m. Main point of contact for Utilities / ISO.  Dispatch turbines, breakers or curtail site accordingly
  n. Coordinate switching with site and Utility
  o. Download SEL relay files when necessary
  p. Reactive power control where needed
  q. FAA light outage reporting
  r. Systems that support the above services
  s. Services as set forth in Section E, below

7. Performance analytics and reporting services
8. SCADA support services
9. Power Factors Support Services as set forth in Section C, below
10. GE Vestas Digital Support Services as set forth in Section D, below
11. Project Accounting Transition Services for FY 2015 and 2016.
12. Utilization of SUNE facilities (or a portion thereof) as required to support TERP Contracts
13. Provision of Account Management and O&M Services as may be provided by the Service Providers in the ordinary course
14. Other services that TERP and/or the Service Recipients request and the Service Providers agree to provide

**Section B:**

**Personnel Services**

1. Personnel support for the services set forth in Section A

The provision of the non-personnel (Section A) and personnel (Section B) services set forth above shall be subject and pursuant to the terms and conditions of this Agreement and the TERP Contracts as if such terms and conditions were incorporated into this Agreement; provided that in the event of a conflict between the terms of this Agreement and the TERP Contracts, the terms and conditions of this Agreement shall control.

**Section C:**

**Power Factors Support Services**

Appendix 6 – Page 2

233846.01B-HOUSR01A - MSW

Support services with respect to Power Factors implementation shall be as provided for pursuant to, and subject to the terms and conditions of, the GAM Gateway Letter Agreement dated March 16, 2017.

**Section D:**

**GE/Vestas Digital Support Services**

Support, similar to Power Factors above, to facilitate on-boarding of GE/Vestas Digital (GE's equivalent product to Power Factors) for TERP windfarms; provided that, execution of such support shall be subject to the parties executing a separate agreement similar to the GAM Gateway Letter Agreement setting forth the terms and conditions related thereto.

**Section E:**

**Requested TERP Project Information**

The provision of the information below subject to the terms of Section 2.3, including but not limited to, the information required by Section 2.3.

**Phase 1 Items – Requested TERP Project Information**
1. **Raw Data**
   SCADA Remote Access
   RTAC Remote Access
   Individual Event Recorder access
   Battery Energy Storage KWP2
   AWS, Metologica, etc feeds
   Any server data not housed at site level – Connection into SUNE reporting software

2. **Procedures**
   Remote access and breaker operating procedures

3. **Documentation**
   PI Files
   All Current Directives
   Planned Events

4. **Contacts**
   All utility contacts
   All ISO and Regulatory contacts
   All Distribution Lists

All pertinent hyperlinks

**Phase 2 Items – Requested TERP Project Information to be delivered after the TERP Contract Termination Date**

1. **Raw Data**

    Firmware Versions

    SEL Remote Access

    Remote breaker controls

    Any server data not housed at site level – other data

    Asset hierarchies

    Fault Code Lists

    Turbine parameter list tables

2. **Procedures**

    All Procedures from Breeze

    All utility outage procedures

    All Daily Task Lists

    All Planned Event Procedures

    Fault Troubleshooting Guides

    All NERC specific protocols

    All ISO specific protocols

3. **Documentation**

    Historical Outage documentation

    Historical ROC Logs

    Turbine Change Log

    Call recording historical files

    All Shared Drive files

4. **Contacts**

    All dedicated phone lines

    ISO Certificates

    All local service provider contacts

    List of local provider account numbers

**Section F:**

**Vendor Contracts**

Services relating to activities under Section 3.2 of the Agreement.

Appendix 6 – Page 4

**<u>EXHIBIT C</u>**

**Gund Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | : | **Chapter 11** |
|  | : |  |
| **SUNEDISON, INC.,** *et al.*, | : | **Case No. 16-10992 (SMB)** |
|  | : |  |
| **Debtors.**[1] | : | **Jointly Administered** |
|  | : |  |
|  | : |  |

## DECLARATION OF PHILIP J. GUND IN SUPPORT OF DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 362, 363(B), AND 365(A) AND BANKRUPTCY RULES 6004 AND 9019 AUTHORIZING AND APPROVING ENTRY INTO A TRANSITION SERVICES AGREEMENT WITH TERRAFORM POWER, INC. REGARDING TRANSITION OF A PORTION OF THE GAM BUSINESS

I, Philip J. Gund, being duly sworn, deposes, and says:

1.      I am the Chief Financial Officer of SunEdison, Inc. ("SUNE") and certain of its

affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the

"Debtors" and, together with their non-Debtor affiliates, "SunEdison" or the "Company").

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); Everstream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE MN Development, LLC (8669); SunE MN Development Holdings, LLC (5388); SunE Minnesota Holdings, LLC (8926); Terraform Private Holdings, LLC (5993); Hudson Energy Solar Corporation (3557); SunE REIT-D PR, LLC (5519); SunEdison Products, LLC (4445); SunEdison International Construction, LLC (9605); Vaughn Wind, LLC (4825); Maine Wind Holdings, LLC (1344); First Wind Energy, LLC (2171); First Wind Holdings, LLC (6257); and EchoFirst Finance Co., LLC (1607). The address of the Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

2.      I submit this declaration (this "Declaration") in support of the Debtors' Motion For Order Pursuant To Bankruptcy Code Sections 105, 363(B), And 365(A) And Bankruptcy Rules 6004 And 9019 Authorizing And Approving Entry Into A Transition Services Agreement with TerraForm Power, Inc. Regarding Transition Of A Portion Of The GAM Business (the "Motion"),[2] filed contemporaneously herewith by the Debtors.  Except as otherwise indicated, I have personal knowledge of the information contained herein, either directly or through the Debtors' professionals working at my direction, members of management of the Debtors, or the Debtors' other advisors, and my review of the relevant documents.  If I were called to testify, I would testify competently to the facts set forth herein.

3.      As the Chief Financial Officer, I am directly involved in a substantial number of the Company's asset sales, including negotiating and closing such transactions.  I joined SunEdison in late June 2016.  I have more than 30 years of professional experience, including 26 years working with troubled companies, their creditors, investors, and court-appointed officials. I am familiar with the Debtors' historical and ongoing relationship with the Yieldcos.

4.      Throughout the Chapter 11 Cases, the Debtors have engaged in robust sale and marketing efforts to monetize assets and maximize value for the estates.  Since May 2016, the Debtors conducted a marketing process of the GAM Business.  The GAM Business is comprised of an information technology, management, and processes platform that was anticipated to generate profits on the margin produced by a high volume of business.  Historically, 60% of the volume of business generated by the GAM Business are services provided to the YieldCos and their affiliates, of which 45% is attributable to services provided to TERP  and its affiliates (such

---

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the GAM TSA.

2

affiliates, the "Service Recipients") and 15% is attributable to services provided to GLBL and its affiliates. Initially, approximately 14 different parties demonstrated an interest in the GAM Business by submitting a bid that included the GAM Business. After reviewing these bids, the Company engaged in more substantive discussions regarding the GAM Business assets with three parties, who conducted detailed diligence on the GAM Business.

5. Simultaneous with the Debtors' marketing process, the Yieldcos were also evaluating the asset management and O&M contracts pursuant to which the GAM Business provided services. By late fourth quarter of 2016, the YieldCos had informed the Debtors that they would seek to terminate their relationships with the GAM Business by exercising asserted rights under their respective contracts—certain of which the Debtors disputed.

6. As a result, the value of the GAM Business was significantly impacted, given the 60% volume of GAM Business services historically attributable to the YieldCos. This, in turn, had a significant impact on SUNE's efforts to market and sell the GAM Business. Eventually, in February 2017, after months of negotiations, the sole remaining party interested in purchasing the GAM Business ceased negotiating as a result of a significant decrease in volume.

7. Thereafter, the Company evaluated alternatives for the GAM Business that would maximize estate value and reduce costs. The Company determined that stopping services to TERP altogether without an orderly transition and simply rejecting all TERP Contracts and/or terminating all GAM employees would have a detrimental effect on TERP's value. The Service Recipients rely on the ROC services provided by the GAM Business for monitoring and reporting requirements, including compliance with certain regulatory requirements (including FERC). In addition, the Service Recipients rely on the GAM Business for management and

operation of their facilities. I understand that these services are also required in order to remain in compliance with certain credit agreements.

8.      Accordingly, the Company was determined to work with TERP to facilitate an orderly transition of the GAM Business employees and GAM Business services to develop TERP in-house capabilities or alternative third party providers.

9.      The GAM TSA is the result of six months of good faith, arms' length negotiations with experienced counsel who understand the complexity of the entities involved and implications of failing to reach a settlement. While the parties were negotiating the GAM TSA, during the first quarter of 2017, TERP continued to pay all fees payable under the TERP Contracts and the Management Services Agreement. In addition, during that same period, TERP reimbursed SunEdison for the costs of certain GAM Business employees providing services to TERP. After March 31, 2017, TERP will reimburse SunEdison for the costs of remaining GAM Business employees providing services to TERP and other GAM Business-related costs incurred by the Company in their provision of services to TERP, and will pay a margin.

10.     The GAM TSA will permit TERP and the Service Recipients a period to prepare to operate their assets independently from SunEdison, which is in the process of substantially winding down operations. In addition, the GAM TSA preserves the jobs of up to 138 employees—73 of which were previously transferred to TERP and 65 employees that have been identified as potential hires.

11.     The GAM TSA will also allow the Company to reduce certain costs of the GAM Business. Specifically, TERP has assumed certain GAM Business employee obligations, including payroll and benefits, thereby allowing the Debtors to avoid up to approximately $2.3 million of severance obligations—$1.1 million of severance obligations for employees that have

4

already been hired by TERP and approximately $1.2 million for the employees that have been identified as potential hires—and obligations arising under key employee retention programs.  In addition, the GAM TSA allows the parties to terminate or reject the TERP Contracts and Management Services Agreement by September 30, 2017 at the latest, after which, the Debtors will have no further obligations to continue performing under these agreements.

12.    Under the GAM TSA, TERP has agreed to waive certain claims arising after December 18, 2016 under the TERP Contracts and the Management Services Agreement.  The Company disputes that TERP or the Service Recipients have any valid claims under these agreements.  In addition, TERP will indemnify the Company for losses arising after December 18, 2016 resulting from services delegated to subcontractors, performance or non-performance under the TERP Contracts (other than SUNE Direct Services), and termination of the TERP Contracts.

13.    The GAM TSA requires the Service Providers to execute a termination agreement to terminate any applicable TERP Contract upon the request of the applicable Service Recipient and waive and release any amounts payable thereunder accruing at or subsequent to termination including, any termination fees.  The Company believes that determination of whether the TERP Contracts and Management Services Agreement were terminable by their terms, and therefore, whether the Debtors would be entitled to any termination fees thereunder would likely be subject to expensive litigation between the relevant parties.

14.    I believe that, under the circumstances, entry into the TSA will maximize the value of the Company's interests in TERP while allowing the Company to reduce costs of the GAM Business.  In addition, in light of: (i) the TERP value that will be preserved by an orderly transition of GAM business employees and services, (ii) the waiver of claims and indemnities

5

that TERP will provide under the GAM TSA, (iii) the fact that TERP (A) during the first quarter, paid all fees payable under the TERP Contracts and Management Services Agreement and reimbursed the Company for the costs of certain GAM Business employees who provided services to TERP and (B) after March 31, 2017, will reimburse the Company for the costs of certain GAM Business employees who provide services to TERP as well as GAM Business-related costs incurred by the Company in the provision of services to TERP, and will pay a margin, and (iv) the substantially reduced services the Service Providers will provide and attendant reduced costs, I believe the waiver of payments arising under the TERP Contracts, including any termination fees, is reasonable.

15.    In light of the impact of the YieldCos' decision to terminate agreements with the GAM Business on the value of the GAM Business and the marketing process, if the Debtors did not enter in the GAM TSA, the Debtors would likely seek to reject the TERP Contracts and the Management Services Agreement.  As described herein, immediate rejection of these contracts and/or severance of GAM Business employees would be detrimental to TERP and would likely result in litigation to resolve the various claims that would arise in connection therewith, including any termination fees, breaches of contract claims by TERP and the Company, and payment of severance obligations.

16.    For the foregoing reasons, and in consultation with the Debtors' advisors, I believe that entry into the GAM TSA represents sound business judgement and is in the best interests of the Debtors' estates and creditors.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, information, and belief, and after reasonable inquiry, the foregoing is true and correct.

Dated: June 1, 2017

*/s/ Philip J. Gund*____

By:     Philip J. Gund