UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
                                                :
In re:                                          :   Case No. 16-10992 (SMB)
                                                :
SUNEDISON, INC. *et al.*[1]                     :   Chapter 11
                                                :
         Debtors.                               :   (Jointly Administered)
-------------------------------------------------X

# MEMORANDUM DECISION AND ORDER DENYING
# MOTION FOR A RULE 2004 EXAMINATION

**A P P E A R A N C E S:**

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
*Counsel for the Debtors and
 Debtors-in-Possession*
Four Times Square
New York, New York 10036

    Jay M. Goffman, Esq.
    J. Eric Ivester, Esq.
        Of Counsel

    —and—

One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899

    Anthony W. Clark, Esq.
        Of Counsel

---

[1] The Debtors in these chapter 11 cases include SunEdison, Inc.; SunEdison DG, LLC; SUNE Wind Holdings, Inc.; SUNE Hawaii Solar Holdings, LLC; First Wind Solar Portfolio, LLC; First Wind California Holdings, LLC; SunEdison Holdings Corporation; SunEdison Utility Holdings, Inc.; SunEdison International, Inc.; SUNE ML 1, LLC; MEMC Pasadena, Inc.; Solaicx; SunEdison Contracting, LLC; NVT, LLC; NVT Licenses, LLC; Team-Solar, Inc.; SunEdison Canada, LLC; Enflex Corporation; Fotowatio Renewable Ventures, Inc.; Silver Ridge Power Holdings, LLC; SunEdison International, LLC; Sun Edison LLC; SunEdison Products Singapore Pte. Ltd.; SunEdison Residential Services, LLC; PVT Solar, Inc.; SEV Merger Sub Inc.; Sunflower Renewable Holdings 1, LLC; Blue Sky West Capital, LLC; First Wind Oakfield Portfolio, LLC; First Wind Panhandle Holdings III, LLC; DSP Renewables, LLC; Hancock Renewables Holdings, LLC; EverStream HoldCo Fund I, LLC; Buckthorn Renewables Holdings, LLC; Greenmountain Wind Holdings, LLC; Rattlesnake Flat Holdings, LLC; Somerset Wind Holdings, LLC; SunE Waiawa Holdings, LLC; SunE MN Development, LLC; SunE MN Development Holdings, LLC; SunE Minnesota Holdings, LLC; and TerraForm Private Holdings, LLC.

SULLIVAN & CROMWELL LLP
*Counsel for TerraForm Power, LLC and
  TerraForm Power, Inc.*
125 Broad Street
New York, New York 10004

    Andrew G. Dietderich, Esq.
    John L. Hardiman, Esq.
    Veronica W. Ip, Esq.
        Of Counsel

DEBEVOISE & PLIMPTON LLP
*Counsel to Madison Dearborn Capital
  Partners IV, L.P. and D. E. Shaw
  Composite Holdings, L.L.C.*
919 Third Avenue
New York, New York 10022

    Shannon Rose Selden, Esq.
    My Chi To, Esq.
    Dana Roizen, Esq.
    Christopher Updike, Esq.
    Erica Weisgerber, Esq.
    Derek Wikstrom, Esq.
        Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

      The Debtors, TerraForm Power, LLC ("TerraForm LLC") and TerraForm Power, Inc. ("TerraForm Inc." and, together with TerraForm LLC, "TERP") seek authorization to examine Madison Dearborn Capital Partners IV, L.P. and D. E. Shaw Composite Holdings, L.L.C. (collectively, "Shaw") pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"). (*Joint Motion of the Debtors and TERP for an Order Pursuant to Fed. R. Bankr. 2004 Authorizing the Examination of D.E. Shaw Composite Holdings, L.L.C. and Madison Dearborn Capital Partners, IV L.P.*, dated Mar. 30, 2017 (the "*Motion*") (ECF Doc. # 2692).) The proposed examination relates to a certain sale agreement between the parties and related non-bankruptcy litigation

brought by Shaw against TERP IN New York state court. Shaw opposed the Rule 2004 motion, the Court denied TERP's motion from the bench and reserved decision on the Debtors' motion to conduct a Rule 2004 examination. For the reasons that follow, the *Motion* is denied.

## BACKGROUND

### A.    The Purchase and Sale Agreement

SunEdison, Inc. ("SUNE") and non-debtor TERP are affiliated entities, and SUNE's most valuable assets are its interests in TERP. On November 17, 2014, SUNE, TERP and Shaw, among others, entered into a Purchase and Sale Agreement ("PSA")[2] pursuant to which SUNE agreed to pay approximately $1 billion in cash and debt in exchange for an energy development platform, a project pipeline, and energy projects in various stages of development. (PSA at §§ 2.01, 2.03; *see Declaration of Patrick M. Cook Pursuant to Local Bankruptcy Rule 1007-2 and In Support of Chapter 11 Petitions and First Day Pleadings*, dated Apr. 21, 2016, at ¶ 54 (ECF Doc. # 4).) SUNE also agreed to pay up to $510 million in incremental conditional cash payments based upon the completion and operability of the purchased energy projects by certain deadlines ("Earnout Project Payments"). (PSA at § 2.04(a) & (b).) If, however, an "Acceleration Event" occurred, a term that included SUNE's bankruptcy, (PSA at § 1.01), any unpaid Earnout Project Payments (collectively, the "Accelerated Earnout Payment") would become immediately due and owing from the "Buyers." The PSA provided:

> In the event that an Acceleration Event shall occur, *Buyers* shall immediately deliver or cause to be delivered the aggregate Accelerated

---

[2]    A copy of the PSA is annexed to the *Motion* as Exhibit B.

- 3 -

>   Earnout Payment to the Paying Agent on behalf of the Sellers for each
>   Earnout Project for which no Earnout Project Payment has been made.

(PSA at § 2.04(g) (emphasis added).)

The definition of "Buyers" is the main source of the dispute between Shaw and TERP. The PSA defined the term "Buyers" to include both SUNE and TerraForm LLC. In addition, TerraForm Inc. guaranteed TerraForm LLC's PSA obligations. (PSA at § 6.21.) According to Shaw, these provisions are unambiguous, and their net effect rendered TERP severally liable with SUNE for the Accelerated Earnout Payment.[3] (*Declaration of Shannon Rose Selden in Support of the Objection of D. E. Shaw Composite Holdings, L.L.C. and Madison Dearborn Capital Partners IV, L.P. to the Joint Motion of the Debtors and TERP for an Examination Order Pursuant to Federal Rule of Bankruptcy Procedure 2004*, dated Apr. 13, 2017 (the "*Selden Declaration*"), Ex. 2 ("*State Court Amended Complaint*"), at ¶¶ 27-33 (ECF Doc. # 2784); PSA § 2.09 (stating that the obligations of each Buyer are several, not joint).) TERP contends that the PSA is ambiguous, and TerraForm LLC is not included in the term "Buyers."

On November 18, 2015, Shaw wrote letters to TERP demanding confirmation of TERP's ability to pay its obligations under the PSA (the "November 18, 2015 Letters"). (*State Court Amended Complaint* at ¶¶ 10, 41.) Approximately three months later, TERP responded rejecting Shaw's interpretation of the PSA and denying responsibility

---

[3] Shaw and SUNE entered into a "Payment Agreement" on December 29, 2015 pursuant to which Shaw agreed to forbear from collection and SUNE agreed to pay the $231 million Earnout Project Payment in installments. (*Motion*, Ex. C.) TERP was not a party to the Payment Agreement.

for any Accelerated Earnout Payment that SUNE might have to pay.  (*State Court Amended Complaint* at ¶¶ 10, 42.)

### B.    State Court Litigation

On April 3, 2016, Shaw commenced an action against TERP in the New York Supreme Court, Commercial Division (the "State Court Action") seeking a declaratory judgment regarding TERP's obligations under the PSA.  The case was assigned to Justice Shirley Kornreich.  SUNE's chapter 11 filing on April 21, 2016 triggered an Acceleration Event under the PSA,[4] and the Accelerated Earnout Payment became due from the "Buyers" pursuant to § 2.04(g).  Shaw then filed 24 proofs of claim against SUNE and other Debtors.  In addition, it amended its original complaint in the State Court Action to assert that TERP breached §§ 2.04(g) and 6.21 of the PSA by failing to pay the $231 million that became due upon SUNE's chapter 11 filing.[5]  (*State Court Amended Complaint* at ¶¶ 45-57.)  TERP moved to dismiss the State Court Action pursuant to NYCPLR 3211(a)(7) and (a)(10), or alternatively, to stay the action, arguing that SUNE, a non-party, was a necessary party as a joint obligor for the Accelerated Earnout Payment.  (*Memorandum of Law In Support of Defendants' Motion to Dismiss the Amended Complaint, D.E. Shaw Composite v. Terraform Power, LLC*, dated July 5, 2016, at 13-22, Index No. 651752/2016 (N.Y. Sup. Ct.), Doc. # 18.)  The motion to dismiss has been argued and is *sub judice.*

---

[4]    Shaw also contends that an Acceleration Event occurred on or about April 17, 2016 when SUNE terminated the employment of Michael Alvarez and Pete Keel (*State Court Amended Complaint* at ¶¶ 9, 34-39.)

[5]    TERP disputes that $231 million is the correct amount of its liability, if any.  (*See Motion* at ¶ 10; *Selden Declaration*, Ex. 1 ("Tr. (1/24/17)") at 15:2-23.)

- 5 -

## C.     The Brookfield/TERP Acquisition and the SUNE/TERP Settlement

In the meantime, the Debtors and TerraForm, Inc. were engaged in a joint marketing process for the sale of TerraForm Inc.  (*See Declaration of John S. Dubel In Support of Debtors' Motion for Order Pursuant to Bankruptcy Code Sections 105, 362, 363(b), and 365(a) and Bankruptcy Rules 6004, 6006, and 9019 and Local Bankruptcy Rule 6006-1 Authorizing and Approving Certain Settlement Agreements Among the Debtors and the Yieldcos*, dated Mar. 10, 2017 ("*Dubel Declaration*"), at ¶ 13 (ECF Doc. # 2571).)  On March 6, 2017, TerraForm Inc. entered into a definitive agreement with Brookfield Asset Management Inc. ("Brookfield") pursuant to which Brookfield agreed to become TerraForm Inc.'s sponsor and controlling shareholder (the "Brookfield/TERP Acquisition").[6]  (*Selden Declaration*, Ex. 3; *Dubel Declaration* at ¶ 13.)  Concurrently, the Debtors, TERP and their respective subsidiaries entered into a settlement agreement (the "TERP Settlement")[7] resolving various disputes, including their claims *inter se*.[8]  On March 10, 2017, the Debtors filed motions seeking approval to enter into the TERP Settlement and a related Voting Support Agreement by which SUNE agreed to vote its TERP shares in favor of the Brookfield/TERP Acquisition.  The Court approved both motions on June 7, 2017.  (*Order Granting Debtors' Motion for Order Pursuant to Bankruptcy Code Sections 105, 363(b), and 365 and Bankruptcy*

---

[6]     Brookfield simultaneously entered into a separate definitive agreement to acquire TerraForm Global Inc., an affiliate of SUNE and TerraForm Power, Inc., but that agreement is not relevant to the resolution of this *Motion*.

[7]     A copy of the TERP Settlement is annexed as Exhibit B to the *Debtors' Motion for Order Pursuant to Bankruptcy Code Sections 105, 362, 363(b), and 365(a), Bankruptcy Rules 6004, 6006, and 9019, and Local Bankruptcy Rule 6006-1 Authorizing and Approving Certain Settlement Agreements Among the Debtors and the Yieldcos*, dated Mar. 10, 2017 (ECF Doc. # 2570).

[8]     The Debtors entered into a similar settlement agreement with TerraForm Global Inc. and its subsidiaries, but that settlement is not relevant to the resolution of this *Motion*.

*Rules 6004 and 9019 Authorizing and Approving Certain Settlement Agreements Among the Debtors and the Yieldcos*, dated June 7, 2017 (ECF Doc. # 3292); *Order Granting Debtors' Motion for Order Approving Performance Under the TERP VSA and TERP IDR Transfer Agreement in Connection With the Proposed TERP Merger*, dated June 7, 2017 (ECF Doc. # 3294).)

The Brookfield/TERP Acquisition is relevant to the Rule 2004 request. If it is consummated, SUNE will own 36.9% of TerraForm Inc.'s Class A shares, (*see* TERP Settlement at Section 2(a)), and an adverse judgment against TERP will diminish the overall value of SUNE's TerraForm Inc. shares. Moreover, TERP must issue additional Class A shares to Brookfield in accordance with a specific formula in the event of a loss resulting from the State Court Action. (*See Selden Declaration*, Ex. 3 at § 6.17; *Motion* at ¶ 12.) This will dilute the interests of the other Class A shareholders, including SUNE.

### D.    The Joint Rule 2004 Motion

On March 30, 2017, the Debtors and TERP jointly filed the instant *Motion* with this Court. The *Motion* seeks Rule 2004 discovery from Shaw through the following six requests (the "Requests"):

1. All Documents and Communications regarding any parties' rights and obligations under Section 2.04 and/or Section 2.09 of the 2014 PSA, including, but not limited to, all documents that refer or relate to any Accelerated Earnout Payment or Earnout Project Payment or their definitions under Section 1.01 of the 2014 PSA.

2. All Documents and Communications provided to, received from, or prepared for any Board, any committee of any Board, and/or any investment or management committee concerning the 2014 PSA or the Payment Agreement.

3. All Communications with any Seller concerning the 2014 PSA, Proposed Amendment No. 2[9] or the Payment Agreement.

4. All Documents and Communications provided to, received from, or prepared for any Board, any committee of any Board, and/or any investment or management committee concerning any proposed amendments to the 2014 PSA, including, but not limited to, Proposed Amendment No. 2, or the Payment Agreement.

5. All drafts of, and proposed amendments to, the 2014 PSA and any Annex thereto, and the Payment Agreement.

6. All Documents and Communications concerning the November 18, 2015 Letters.

(Requests at 6-7.)

The Debtors and TERP contend that they need the Rule 2004 discovery because an adverse outcome in the State Court Action will reduce the value of SUNE's stake in TERP. (*Motion* at ¶ 2.) "Uncertainty about the nature or magnitude of [Shaw's] claims could therefore complicate the financing and implementation of the Debtors' plan of reorganization" and affect recoveries. (*Id.* at ¶¶ 2, 4.) The discovery may mitigate any concerns among SUNE's financing sources and TERP's stockholders, (*id.* at ¶ 3), and it will allow the Debtor to evaluate Shaw's proofs of claim. (*Id.* at ¶ 20.) The movants concluded that the discovery "is necessary to facilitate the Debtors' prosecution of these Chapter 11 Cases and stockholder approval of the Brookfield Acquisition. The disposition of TERP is critically important to the formulation of a plan of reorganization of the Debtors, as well as proceeds available for distribution to secured and unsecured creditors of the estate." (*Id.* at ¶ 22.)

---

[9]   None of the parties discuss any specific proposed amendment to the PSA in the *Motion* or other pleadings. The Requests simply define "Proposed Amendment No. 2" as "the draft 'Amendment No. 2 to Purchase and Sale Agreement, dated as of December 28, 2015, by and among SunEdison, Inc., TerraForm Power, LLC, D.E. Shaw Composite Holdings, L.L.C. and Madison Dearborn Capital Partners IV, L.P.,' including any prior versions and/or any drafts thereof."

Shaw objected to the *Motion*. As a preliminary matter, Shaw maintains that the Requests violate the "pending proceeding" rule in light of the pending State Court Action. (*Objection of D. E. Shaw Composite Holdings, L.L.C. and Madison Dearborn Capital Partners IV, L.P. to the Joint Motion of the Debtors and TERP for an Examination Order Pursuant to Federal Rule of Bankruptcy Procedure 2004*, dated Apr. 13, 2017 ("*Shaw Objection*"), at ¶¶ 1, 37, 40-51 (ECF Doc. # 2783).) As to the merits, although the Debtors say they need the disclosure to present a confirmable chapter 11 plan, plans are frequently confirmed notwithstanding pending, unresolved litigation. (*Id.* at ¶¶ 52-53.) Similarly, while TERP contends that greater disclosure is necessary for shareholders to vote on the Brookfield/TERP Acquisition, TERP has acknowledged that closing the Brookfield/TERP Acquisition is not contingent upon resolution of the State Court Action. (*Id.* at ¶¶ 54-56.) More fundamentally, any uncertainty regarding the State Court Action will not be resolved through the Rule 2004 Requests. (*Id.* at ¶¶ 64-73.) Rather, the only way to dispel any uncertainty is to litigate the State Court Action to judgment. (*Id.* at ¶ 64.)

### E.     The Subsequent Case Events

After the *Motion* was filed but while it remained undecided, the Debtors made substantial progress in bringing the cases to a successful conclusion. In addition to obtaining approval of the TERP Settlement and the Voting Support Agreement, they procured $640 million in replacement debtor in possession financing, (*Order (I) Authorizing Debtors to (A) Obtain Senior Secured, Superpriority, Replacement Postpetition Financing Pursuant to Bankruptcy Code Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e), and (B) Utilize Cash Collateral Pursuant to*

*Bankruptcy Code Section 363, (II) Authorizing Use of Proceeds to Repay Existing Senior Secured Superpriority, Postpetition Financing, and (III) Granting Adequate Protection to Prepetition Secured Parties Pursuant to Bankruptcy Code Sections 361, 362, 363 and 364*, dated May 1, 2017 (ECF Doc. # 2880)), secured up to $300 million in exit financing through a rights offering, equity commitment and backstop agreement, (*Order Authorizing and Approving (I) (A) Entry into the Backstop Commitment Letter, (B) Equity Commitment Agreement, (C) Payment of the Fees and Expenses and (II) the Rights Offering Procedures and Related Forms*, dated June 6, 2017 (ECF Doc. # 3283)), and filed a joint plan and obtained approval of their disclosure statement. (*Order (A) Approving the Adequacy of the Debtors' Disclosure Statement; (B) Approving Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Joint Proposed Plan; (C) Approving the Form of Various Ballots and Notices in Connection Therewith; and (D) Scheduling Certain Dates with Respect Thereto*, dated June 13, 2017 (ECF Doc. # 3319).) The hearing to confirm the Debtors plan of reorganization is scheduled for July 20, 2017.

## DISCUSSION

### A.     Introduction

Rule 2004 provides in relevant part that the Court may authorize the examination of any entity relating "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate."  FED. R. BANKR. P. 2004(b).  In chapter 11 cases, the examination may extend to matters relating "to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration

given or offered therefor, and any other matter relevant to the case or to the formulation of a plan." *Id.* The party seeking Rule 2004 discovery has the burden to show good cause for the examination it seeks, and relief lies within the sound discretion of the Bankruptcy Court. *Picard v. Marshall* (*In re Bernard L. Madoff Inv. Secs. LLC*), Adv. Pro. No. 08-01789, 2014 WL 5486279, at *2 (Bankr. S.D.N.Y. Oct. 30, 2014); *see In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) (Rule 2004 gives the Court "significant" discretion).

Relevance alone is not sufficient to justify a Rule 2004 request. *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991). A party seeking to conduct a Rule 2004 examination must also show good cause, such as the proposed examination "'is necessary to establish the claim of the party seeking the examination, or . . . denial of such request would cause the examiner undue hardship or injustice,'" *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004) (quoting *In re Dinubilo*, 177 B.R. 932, 943 (E.D. Cal. 1993)); *accord In re AOG Entm't, Inc.*, 558 B.R. 98, 109 (Bankr. S.D.N.Y. 2016); *Drexel Burnham*, 123 B.R. at 712, and the Court must "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *Drexel Burnham*, 123 B.R. at 712; *accord In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991); *see In re SunEdison, Inc.*, 562 B.R. 243, 250 (Bankr. S.D.N.Y. 2017) ("The spirit of proportionality is consistent with the historic concerns regarding the burden on the producing party and is relevant to the determination of cause.")

**B.     The Pending Proceeding Rule**

The Court denied TERP's request for Rule 2004 discovery from the bench based on the "pending proceeding" rule.  Under the rule, "once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not by Rule 2004," *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002); *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) ("The well recognized rule is that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to the Fed. R. Bankr. P. 7026 *et seq.*, rather than by a Fed. R. Bankr. P. 2004 examination."), and the principle applies to pending state court litigation.  *See Snyder v. Society Bank*, 181 B.R. 40, 42 (S.D. Tex. 1994) *aff'd sub nom. In re Snyder*, 52 F.3d 1067 (5th Cir. 1995).  The pending proceeding rule is based on the different safeguards that attend Rule 2004 and civil litigation discovery, and reflects a concern that a party to litigation could circumvent his adversary's rights by using Rule 2004 rather than civil discovery to obtain documents or information relevant to the lawsuit.  *In re Glitnir banki hf.*, No. 08–14757 (SMB), 2011 WL 3652764, at *4 (Bankr. S.D.N.Y. Aug. 19, 2011); *In re Wash. Mut., Inc.*, 408 B.R. 45, 51 (Bankr. D. Del. 2009); *Enron Corp.*, 281 B.R. at 840-41; *Bennett Funding Group*, 203 B.R. at 29-30.

The State Court Action is a pending proceeding within the meaning of the rule.  TERP can seek discovery relating to the meaning of "Buyer" or the merits of the action pursuant to the NYCPLR.  Although NYCPLR 3214(b) generally stays discovery upon the filing of a motion to dismiss unless the court orders otherwise, Justice Kornreich's Local Rules of Court governing the State Court Action explicitly provide that "[d]iscovery is

not stayed by the filing of a dispositive motion or a mediation, unless otherwise directed by the court." N.Y. R. COM. N.Y. Part 54, at p. 1607 (McKinney 2017). TERP cannot circumvent the pending proceeding rule by seeking one-sided discovery through a Rule 2004 request in this Court.[10]

C.    **The Debtors' Request**

Shaw also argues that the Debtors are barred from taking Rule 2004 discovery under the pending proceeding rule. (*Shaw Objection* at ¶ 37.) The Debtors are not parties to the State Court Action, and hence, the rule does not apply to them. The Debtors are entitled to Rule 2004 discovery from Shaw if they can establish cause. They argue that cause exists because the outcome of the State Court Action will have a material effect on the value of an important asset, the TERP shares.

Relevance, however, is not enough; the Debtors must show that they need the discovery for some appropriate purpose, or that the failure to get the discovery will result in hardship or injustice. This they have not done. Rule 2004 may permit a debtor to conduct discovery into the value of the stock owned in a non-debtor subsidiary in appropriate circumstances, such as where the debtor owns a controlling interest and must decide whether to take control of the subsidiary in order to sell or liquidate its assets. *In re Petroforte Brasileiro de Petroleo Ltda.*, 542 B.R. 899 (Bankr. S.D. Fla. 2015). This is not the case here. Rule 2004 unquestionably allows a debtor to take pre-litigation discovery into claims that it owns. *See In re Belton*, No. 15 CV 1934 (VB), 2015 WL 6163083, at *2 n.3 (S.D.N.Y. Oct. 14, 2015) ("A Rule 2004 examination is a very

---

[10]    This is not intended to suggest that a stay of discovery would render the pending proceeding rule inapplicable.

broad, pre-litigation discovery process designed to assist the trustee in revealing the nature and extent of the estate, ascertaining assets, and discovering whether any wrongdoing has occurred.") (citing *In re Corso*, 328 B.R. 375, 383 (E.D.N.Y. 2005)). This is also not the case. But Rule 2004 does not reach so far as to allow a debtor to take discovery from participants in third-party litigation involving claims it does not own or defenses it will not assert simply because the outcome may affect the value of an asset the debtor does own. In fact, the Court requested supplemental briefing on this point, but the Debtors were unable to cite any authority to support their use of Rule 2004 to discover the merits of claims asserted in third party litigation against a subsidiary in order to value its stock ownership.

The Debtors have failed to demonstrate that the discovery they seek is needed to accomplish the purposes they have identified. They assert that they need the information to finalize their plan, ensure accurate disclosure, reassure lenders and secure exit financing, and confirm and implement their plan. Debtors frequently accomplish these goals despite litigation contingencies. More importantly, the Debtors procured $640 million in replacement debtor in possession financing and up to $300 million in exit financing, settled with TERP and committed to support the Brookfield/TERP Acquisition (which is not dependent on the outcome of the State Court Action), finalized a plan, obtained approval of their disclosure statement and scheduled a confirmation hearing, all without receiving the Rule 2004 discovery. The value of the Debtors' TERP shares may fluctuate as a result of the outcome of the State Court Action as well as for many other reasons, but the lack of discovery has not prevented the Debtor from achieving the goals it set.

The Debtors request to use Rule 2004 to estimate the contingent future value of a subsidiary's stock based on the outcome of pending litigation also lacks any limiting principle.  The difficulties were evident during colloquy between the Court and counsel.  At oral argument, the Court posed two hypotheticals.  First, could a debtor use Rule 2004 to take discovery from a third party regarding claims it asserted against the debtor's most important customer in non-bankruptcy litigation that threatened the survival of that customer?  (Tr. 4/20 at 26:11-16.)  Debtors' counsel initially implied that the claim against the customer was too indirect, (Tr. 4/20 at 26:18-19), but then reconsidered and said the use of Rule 2004 to examine the strength of that claim was "possible."  (Tr. 4/20 at 27:1-4.)  The Court then hypothesized that a debtor's most significant asset was Microsoft stock and queried whether the debtor could use Rule 2004 discovery to obtain information from Microsoft's adversary in a patent litigation pending in another court.  (Tr. 4/20 at 27:23-28:3.)  Counsel intimated that it would depend on the percentage of Microsoft stock the debtor owned, (Tr. 4/20 at 28:11-12), and if the debtor owned 35% of Microsoft's stock and was a controlling shareholder, a Rule 2004 examination would be justified.  (Tr. 4/20 at 28:25-29:3.)

Counsel's responses demonstrate the uncertainty involved in extending Rule 2004 to discover the merits of third party claims against other third parties.  The demise of a key customer may have a significant effect on the debtor's business, but what about litigation against a less important customer or against a supplier?  Counsel suggested in the Microsoft hypothetical that Rule 2004 discovery would be appropriate if the hypothetical debtor owned a 35% controlling interest in Microsoft, but what if he owned 25% or 10% or 1%?  For that matter, why limit the use of Rule 2004 to litigation?  Under

the Debtors' reasoning, any item of information that may have an effect on the value of a debtor's asset would be subject to discovery under Rule 2004. There is no clear line that can be drawn between permissible Rule 2004 discovery and a request, if any, that exceeds its scope.

The circumstances of the joint Rule 2004 request also give me pause. The request and the movants' arguments focused on TERP's liability to Shaw. TERP could pursue that discovery in state court, and is therefore barred from seeking the same discovery through Rule 2004 under the pending proceeding rule. The Debtors and TERP are united in interest regarding the desired outcome of the State Court Action, and the Debtors appear to be using Rule 2004 to help TERP get through Rule 2004 what it should instead seek in the State Court Action. Although the Debtors also suggest that they need discovery from Shaw to evaluate its claims against the various estates, the Debtors have not disputed their liability or focused a single request on the computation of Shaw's claims against the estates. In fact, SUNE is committed to pay $231 million to Shaw under the Payment Agreement. (*Motion*, Ex. C.) In short, they have failed to show any necessity for the Rule 2004 discovery, or that they will suffer injustice or hardship if they do not get it.

Accordingly, the *Motion* is denied. So ordered.

Dated: New York, New York
      June 16, 2017

                                                   /s/ *Stuart M. Bernstein*
                                                  STUART M. BERNSTEIN
                                          United States Bankruptcy Judge