SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Jay M. Goffman
J. Eric Ivester
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

-and-

James J. Mazza, Jr. (admitted *pro hac vice*)
Louis S. Chiappetta (admitted *pro hac vice*)
155 N. Wacker Dr.
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411

*Counsel for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | : | **Chapter 11** |
|  | : |  |
| **SUNEDISON, INC., *et al.*,** | : | **Case No. 16-10992 (SMB)** |
|  | : |  |
| **Debtors.**[1] | : | **(Jointly Administered)** |
|  | : |  |

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); Everstream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE MN Development, LLC (8669); SunE MN Development Holdings, LLC (5388); SunE Minnesota Holdings, LLC (8926); Terraform Private Holdings, LLC (5993); Hudson Energy Solar Corporation (3557); SunE REIT-D PR, LLC (5519); SunEdison Products, LLC (4445); SunEdison International Construction, LLC (9605); Vaughn Wind, LLC (4825); Maine Wind Holdings, LLC (1344); First Wind Energy, LLC (2171); First Wind Holdings, LLC (6257); and EchoFirst Finance Co., LLC (1607). The address of the Debtors' corporate headquarters is Two CityPlace Drive, 2nd floor, St. Louis, MO 63141.

## NOTICE OF FILING OF PLAN SUPPLEMENT DOCUMENTS

**PLEASE TAKE NOTICE** that on June 12, 2017, SunEdison, Inc. and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") filed the Amended *Notice Of Filing Of Solicitation Version of First Amended Disclosure Statement for First Amended Joint Plan Of Reorganization Of SunEdison, Inc. And Its Debtor Affiliates* (Docket No. 3314), which attached as Exhibit A thereto the First Amended Joint Plan of Reorganization of SunEdison, Inc. and its Debtor Affiliates (the "Plan").[2]

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Plan, attached hereto as Exhibits 2.1 through 8.1 (the "Plan Supplement") are the following Plan Supplement documents, as each may be amended, modified, or supplemented from time to time:

>**Exhibit 2.1**: Administrative Claim Request Form
>
>**Exhibit 6.5**: Reinstated Second Lien Claim Modification Terms
>
>**Exhibit 6.15-1**: Form of Certificate of Incorporation
>
>**Exhibit 6.15-2**: Form of Bylaws
>
>**Exhibit 6.20**: Retained Causes of Action
>
>**Exhibit 7.1**: Form of GUC/Litigation Trust Agreement
>
>**Exhibit 7.6**: GUC/Litigation Trust Causes of Action
>
>**Exhibit 8.1**: Schedule of Assumed Contracts and Unexpired Leases

**PLEASE TAKE FURTHER NOTICE** that certain of these documents remain subject to continuing negotiations among the Debtors and interested parties with respect hereto. The Debtors reserve all rights to amend, modify, or supplement the Plan Supplement and any of the documents contained therein in accordance with the terms of the Plan. To the extent material

---

[2]   Unless otherwise indicated, capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan.

amendments or modifications are made to any of these documents, the Debtors will file a

blackline version with the Bankruptcy Court prior to the Confirmation Hearing marked to reflect

such amendments or modifications.

           **PLEASE TAKE FURTHER NOTICE** that the Plan Supplement is integral to,

part of, and incorporated by reference into the Plan; however, these documents have not been

approved by the Bankruptcy Court at this time.

           **PLEASE TAKE FURTHER NOTICE** that the Confirmation Hearing is

scheduled to commence at 10:00 a.m. (prevailing Eastern Time) on July 20, 2017, before the

Honorable Stuart M. Bernstein, at the Bankruptcy Court, One Bowling Green, Courtroom 723,

New York, New York 10004. This hearing may be continued by the Bankruptcy Court or by the

Debtors without further notice other than by announcement of same in open court and/or by

filing and serving a notice of adjournment.

Dated: July 6, 2017
      New York, New York

                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                        By:   */s/ J. Eric Ivester*_____
                              Jay M. Goffman
                              J. Eric Ivester
                              Four Times Square
                              New York, New York 10036-6522
                              Telephone: (212) 735-3000
                              Fax: (212) 735-2000

                              -and-

                              James J. Mazza, Jr. (admitted *pro hac vice*)
                              Louis S. Chiappetta (admitted *pro hac vice*)
                              155 N. Wacker Dr.
                              Chicago, Illinois 60606-1720
                              Telephone: (312) 407-0700
                              Fax: (312) 407-0411

                            *Counsel for Debtors and Debtors in Possession*

**<u>EXHIBIT 2.1</u>**

**Administrative Claim Request Form**

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | ADMINISTRATIVE CLAIM REQUEST FORM |
|---|---|

Name of Debtor:

Case No.:

NOTE: This form should only be used to make a claim for an administrative claim arising on or after the applicable petition date set forth in the instructions below through and including _____ **IT SHOULD NOT BE USED FOR CLAIMS ARISING PRIOR TO APRIL 21, 2016 (OR LATER APPLICABLE PETITION DATE AS SET FORTH IN THE INSTRUCTIONS BELOW).**

Name of Creditor (The person or other entity to whom the debtor owes money or property):

❑ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where notices should be sent:

❑ Check box if you have never received any notices from the bankruptcy court in this case.

❑ Check box if the address differs from the address on the envelope sent to you by the court.

**ADMINISTRATIVE CLAIM**

Telephone number:

Email Address:

Last four digits of account or other number by which creditor identifies debtor:

_____     _____     _____     _____

Check here if this claim

❑ replaces

❑ amends     a previously filed claim, dated: _____

**1. Basis for Claim:**
- ❑ Goods sold
- ❑ Medical Malpractice
- ❑ Services performed
- ❑ Money loaned
- ❑ Personal injury/wrongful death
- ❑ Taxes
- ❑ Other

❑ Retiree benefits as defined in 11 U.S.C. § 1114(a)

❑ Wages, salaries, and compensation (fill out below)

Last four digits of SS#: _____

Unpaid compensation for services performed

from _____  to _____
      (date)            (date)

**2. Date debt was incurred (must be on or after _____):**

**3. If court judgment, date obtained:**

**4. Total Amount of Administrative Claim : $ _____**

❑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Brief Description of Claim (attach any additional information):**

**6. Credits and Setoffs:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

**7. Supporting Documents:**

Attach copies of supporting document, such as promissory notes, contracts, security agreements, and evidence of perfection of liens. DO NOT SEND ORIGINAL DOCUMENTS.  If the documents are not available, explain.  If the documents are voluminous, attach a summary.  Any attachment must be 8-1/2" by 11".

**8. DATE-STAMPED COPY:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

**9. Assignment:**

❑ If the Claimant has obtained this claim by Assignment, a copy is attached hereto

**THIS SPACE IS FOR COURT USE ONLY**

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): | |
|---|---|---|

*Penalty for presenting fraudulent claim:*  Fine up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571.

# INSTRUCTIONS FOR ADMINISTRATIVE CLAIM REQUEST FORM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to these general rules.*

## ----DEFINITIONS----

| | | |
|---|---|---|
| **DEBTOR**<br>The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.<br><br>**CREDITOR**<br>A creditor is any person, corporation, or other entity to whom the debtor owes a debt. | **ADMINISTRATIVE CLAIM**<br>Any right to payment constituting a cost or expense of administration of the Chapter 11 Cases arising under 11 U.S.C. § 503(b) of the Bankruptcy Code for the period from the commencement of this case through _____, <u>provided</u>, <u>however</u>, that Holders of (i) Original DIP Facility Claims, (ii) Replacement DIP Facility Claims, (iii) Professional Claims, (iv) Administrative Claims Allowed by an order of the Bankruptcy Court on or before the Effective Date, or (v) Administrative Claims that are not Disputed and arose in the ordinary course of business and was paid or are to be paid in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim do not need to file an Administrative Claim Request Form. | **ADMINISTRATIVE CLAIMS BAR DATE**<br>Pursuant to Article 2.1 of the Plan, , all requests for payment of an Administrative Claim that has arisen between the applicable petition date and _____ must be filed no later than _____. |

## Items to be completed in Administrative Claim Request Form (if not already filled in)

**Name of Debtor and Case Number:**

If your claim form is not preprinted with the name of the debtor and the case number, fill in the name of the debtor in the bankruptcy case and the bankruptcy case number. If you previously received a notice of the case from the Court, your name and address is near the top of the notice.

**Information about Creditor:**

Complete the section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed an administrative proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this administrative proof of claim replaces or changes an administrative proof of claim that was already filed, check the appropriate box on the form.

**1. Basis for Claim:**

Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in the last four digits of your social security number and the dates of work for which you were not paid.

**2. Date Debt Incurred:**

Fill in the date when the debt first was owed by the debtor.

**3. Court Judgments:**

If you have a court judgment for this debt, state the date the court entered the judgment.

**4. Total Amount of Claim:**

Fill in the total amount of the entire administrative claim. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate boxes on the form and attach an itemization of the interest and charges.

**5. Brief Description of Administrative Claim:**

Describe the Administrative Claim including, but not limited to, the actual and necessary costs and expenses of operating the Debtor's Estate or any actual and necessary costs and expenses of operating the Debtor's businesses.

**6. Offsets, Credits and Setoffs:**

By signing this administrative proof of claim, you are stating under oath that in calculating the amount of your claim you have given the debtor credit for all payments received from the debtor.

**7. Supporting Documents:**

You must attach to this administrative proof of claim form copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

**8. Date-Stamped Copy:**

To receive an acknowledgement of the filing of your Administrative Claim, enclose a stamped, self-addressed envelope and copy of this Administrative Claim Request Form.

## Applicable Petition Dates

| Debtor | Case Number | Petition Date |
|---|---|---|
| SunEdison, Inc. | 16-10992 | April 21, 2016 |
| SunEdison DG, LLC | 16-10991 | April 21, 2016 |
| SUNE Wind Holdings, Inc. | 16-11010 | April 21, 2016 |
| SUNE Hawaii Solar Holdings, LLC | 16-11011 | April 21, 2016 |
| First Wind Solar Portfolio, LLC | 16-11012 | April 21, 2016 |
| First Wind California Holdings, LLC | 16-11013 | April 21, 2016 |
| SunEdison Holdings Corporation | 16-10993 | April 21, 2016 |
| SunEdison Utility Holdings | 16-10994 | April 21, 2016 |
| SunEdison International, Inc. | 16-10995 | April 21, 2016 |
| SUNE ML 1,LLC | 16-10996 | April 21, 2016 |
| MEMC Pasadena, Inc. | 16-10997 | April 21, 2016 |
| Solaicx | 16-10998 | April 21, 2016 |
| SunEdison Contracting, LLC | 16-10999 | April 21, 2016 |
| NVT, LLC | 16-11000 | April 21, 2016 |
| Team-Solar, Inc. | 16-11002 | April 21, 2016 |
| SunEdison Canada, LLC | 16-11003 | April 21, 2016 |
| Enflex Corporation | 16-11005 | April 21, 2016 |
| Fotowatio Renewable Ventures, Inc. | 16-11006 | April 21, 2016 |
| Silver Ridge Power Holdings, LLC | 16-11007 | April 21, 2016 |
| SunEdison International, LLC | 16-11008 | April 21, 2016 |
| Sun Edison, LLC | 16-11009 | April 21, 2016 |
| NVT Licenses, LLC | 16-11001 | April 21, 2016 |
| SunEdison Products Singapore PTE, Ltd. | 16-11014 | April 21, 2016 |
| SEV Merger Sub Inc. | 16-11015 | April 21, 2016 |
| SunEdison Residential Services, LLC | 16-11017 | April 21, 2016 |
| PVT Solar, Inc. | 16-11016 | April 21, 2016 |
| Sunflower Renewable Holdings 1, LLC | 16-11626 | June 1, 2016 |
| Blue Sky West Capital, LLC | 16-11627 | June 1, 2016 |
| First Wind Oakfield Portfolio, LLC | 16-11628 | June 1, 2016 |
| First Wind Panhandle Holdings III, LLC | 16-11629 | June 1, 2016 |
| DSP Renewables, LLC | 16-11630 | June 1, 2016 |
| Hancock Renewables Holdings, LLC | 16-11631 | June 1, 2016 |
| EverStream HoldCo Fund I, LLC | 16-12058 | July 20, 2016 |
| Buckthorn Renewables Holdings, LLC | 16-12298 | August 9, 2016 |
| Greenmountain Wind Holdings, LLC | 16-12299 | August 9, 2016 |
| Rattlesnake Flat Holdings, LLC | 16-12300 | August 9, 2016 |
| Somerset Wind Holdings, LLC | 16-12301 | August 9, 2016 |
| SunE Waiawa Holdings, LLC | 16-12302 | August 9, 2016 |
| SunE MN Development, LLC | 16-12314 | August 10, 2016 |
| SunE MN Development Holdings, LLC | 16-12315 | August 10, 2016 |
| SunE Minnesota Holdings, LLC | 16-12316 | August 10, 2016 |
| TerraForm Private Holdings, LLC | 16-13523 | December 16, 2016 |
| Hudson Energy Solar Corporation | 17-10935 | April 7, 2017 |
| SunE REIT-D PR, LLC | 17-10936 | April 7, 2017 |
| SunEdison Products, LLC | 17-10937 | April 7, 2017 |
| SunEdison International Construction, LLC | 17-10938 | April 7, 2017 |
| Vaughn Wind, LLC | 17-10939 | April 7, 2017 |
| Maine Wind Holdings, LLC | 17-10940 | April 7, 2017 |
| First Wind Energy, LLC | 17-10941 | April 7, 2017 |
| First Wind Holdings, LLC | 17-10942 | April 7, 2017 |
| EchoFirst Finance Co., LLC | 17-10943 | April 7, 2017 |

Please send original, completed administrative proof of claim as follows:

**By Mail, Hand, or Overnight Courier:**

SunEdison, Inc. Claims Processing Center

c/o Prime Clerk LLC

830 3rd Avenue, 3rd Floor

New York, NY 10022

Any proof of claim submitted by facsimile or email will not be accepted.

**All claims must be received on or before _____ at _____ Prevailing _____ Time.**

## EXHIBIT 6.5

**Reinstated Second Lien Claim Modification Term Sheet**

*Draft*

**EXHIBIT 6.5**

**REINSTATED SECOND LIEN CLAIM MODIFICATION TERMS**

i.    <u>Borrower</u>: [Reorganized SunEdison].

ii.   <u>Guarantors</u>: [●].

iii.  <u>Lenders</u>: As set forth in the Plan.

iv.   <u>Principal</u>: $[X] million of senior secured first lien term loans (the "<u>Term Loans</u>").

v.    <u>Maturity</u>: Three (3) years from the Effective Date.

vi.   <u>Interest Rate</u>: L + 5.0% per annum, payable-in-kind, quarterly in arrears.

vii.  <u>Mandatory Prepayments/Cash Sweep</u>: All Unrestricted Cash above $[x] million in the aggregate will be automatically swept on a quarterly basis and applied first to all accrued and unpaid interest as of such date and thereafter as a mandatory prepayment of the then outstanding principal amount of the Term Loans.

viii. <u>Voluntary Prepayments</u>:  Permitted in whole or in part without premium or penalty, subject to customary notice requirements and LIBOR breakage costs.

ix.   <u>Scheduled Amortization</u>:  None.

x.    <u>Conversion</u>: [On the third (3rd) anniversary of the Effective Date (the "<u>Conversion Date</u>"), all outstanding Term Loans that are not paid in cash in immediately available funds shall automatically convert into outstanding shares (the "<u>Converted Shares</u>") of Reorganized SUNE common stock (the "<u>Common Stock</u>").  On the Conversion Date, if there have been no prepayments of the principal of the Term Loans and all interest thereon has been paid-in-kind and remains outstanding as additional Term Loans as of the Conversion Date, the Term Loans and all accrued but unpaid interest thereon shall convert into a number of Converted Shares such that, after giving effect to such conversion, the Converted Shares shall equal 50% of the total outstanding shares of Common Stock on a fully diluted basis.  If any principal of the Term Loans has been prepaid, the number of Converted Shares issued upon conversion shall be reduced proportionately to the extent of any such prepayments].

xi.   <u>Voting</u>: Except for provisions customarily requiring approval by each affected Lender, Lenders holding more than 50% of the aggregate outstanding principal amount of the Term Loans.

xii.  <u>Collateral</u>: First priority perfected liens on and security interests in substantially all assets of the Borrower and the Guarantors, subject to exceptions TBD by Steering Group.

xiii. <u>Covenants</u>:  The documentation governing the Term Loans shall contain affirmative and negative covenants (and events of default) for financings of this type and others to be mutually agreed among the Borrower and the Steering Group

xiv.  <u>Assignments</u>:  Assignments shall not be subject to the consent of Reorganized SUNE.  With respect to any assignment of any portion of the Term Loans, such assignment shall be subject to minimum threshold of $[1,000,000].

xv.   <u>Governing Law</u>:  New York.

**<u>EXHIBIT 6.15-1</u>**

**Form of Certificate of Incorporation**

**SECOND AMENDED AND RESTATED
CERTIFICATE OF INCORPORATION
OF
SUNEDISON, INC.**

THIS SECOND AMENDED AND RESTATED CERTIFICATE OF INCORPORATION of SunEdison, Inc., a corporation duly organized and existing under the laws of the State of Delaware (the "***Corporation***"), hereby certifies as follows:

1.      The name of the Corporation is SunEdison, Inc.  The Corporation filed its original Certificate of Incorporation with the Delaware Secretary of State on October 1, 1984 under the name of "Dynamit Nobel Silicon Holdings, Inc."

2.      This Second Amended and Restated Certificate of Incorporation, which amends and restates the Amended Certificate of Incorporation of the Corporation, effective May 30, 2013, as thereafter amended, was duly adopted, without the need for approval by the Board of Directors or the stockholders of the Corporation, in accordance with §§ 242, 245 and 303 of the General Corporation Law of the State of Delaware (the "***DGCL***")  and in accordance with that certain [*First Amended Joint Plan of Reorganization on SunEdison, Inc. and its Debtor Affiliates*] (the "***Plan***") approved by order of the United States Bankruptcy Court for the District of Southern New York (the "***Court***") in *In re: SUNEDISON, et al.*, under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101-1330), as amended (the "***Bankruptcy Code***").

3.      The Certificate of Incorporation of the Corporation (this "***Certificate of Incorporation***") is hereby amended and restated in its entirety to read as follows:

ARTICLE I
NAME

The name of the corporation is SunEdison, Inc.

ARTICLE II
PURPOSE

The purpose for which the Corporation is organized is to engage in any lawful act or activity for which corporations may be organized under the DGCL.

ARTICLE III
REGISTERED AGENT

The street address of the registered office of the Corporation in the State of Delaware is [2711 Centerville Road, Suite 400 in the City of Wilmington, County of New Castle, postal code 19808], and the name of the Corporation's initial registered agent at such address is [Corporation Service Company].

ARTICLE IV
CAPITALIZATION

Section 4.1    Authorized Capital Stock.  The total number of shares of capital stock that the Corporation is authorized to issue is [•] shares, divided into two classes consisting of [•] shares of common stock, par value $0.01 per share ("**Common Stock**").

Notwithstanding anything herein to the contrary, the Corporation shall not issue non-voting equity securities of any class, series or other designation to the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code; *provided*, *however*, that the foregoing restriction (i) shall have no further force and effect beyond that required under Section 1123(a)(6) of the Bankruptcy Code, (ii) shall only have such force and effect to the extent and for so long as such Section 1123(a)(6) is in effect and applies to the Corporation and (iii) may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

Section 4.2    Common Stock.

(a)    Except as expressly set forth otherwise herein, the Common Stock shall have (i) all rights and privileges typically associated with such securities as set forth in the DGCL, including, without limitation, the right to receive dividends, the right to vote on all matters presented to the holders of Common Stock for a vote and the rights upon a liquidation and (ii) the additional rights and privileges set hereinafter set forth.

(b)    Dividends may be paid on the Common Stock, as and when declared by the Board, out of the assets of the Corporation legally available for the payment of such dividends. If and when dividends on Common Stock are declared payable from time to time by the Board, whether payable in cash, in property or in shares of capital stock of the Corporation, the holders of Common Stock shall be entitled to share equally, pro rata, based on the number of shares of Common Stock held by each such holder, in such dividends.

(c)    Each holder of shares of Common Stock, as such, shall be entitled to one vote for each share of Common Stock held of record by such holder on all matters on which stockholders generally are entitled to vote.

Section 4.3    Certain Restrictions on Transfer.

(a)    Unless otherwise expressly approved by the Board (and in the case of clause "(ii)," approved by at least [70]% of the Board), no shares of Common Stock shall be Transferred if: (i) such Transfer would, if consummated, result in any violation of the Securities Act or any state securities or "blue sky" laws or regulations, or any other applicable federal or state laws or order of any Governmental Authority having jurisdiction over the Corporation, or (ii) such Transfer would, if consummated (after taking into account any other proposed Transfers for which a notice thereof has been previously delivered to the Board, but not yet consummated), result in any class of equity securities of the Corporation being held of record by more than 200 Persons or could otherwise, as the Board may from time to time reasonably determine, require the Corporation to register its Common Stock or any other equity securities of the Corporation under the Exchange Act (as a result of the number of stockholders or otherwise), unless at the

2

time of such Transfer the Corporation is already subject to the reporting obligations under Sections 13 or 15(d) of the Exchange Act.

(b)     A transferee of shares of Common Stock must satisfy the requirements of, and represent that the Transfer was made in accordance with, the provisions of this Certificate of Incorporation and the By-laws of the Corporation. Any attempted or purported Transfer of all or a portion of the shares of Common Stock by any Person in violation of this <u>Section 4.3(b)</u> shall be null and void *ab initio* and of no force or effect whatsoever; the purported transferee will not be treated as an owner of shares of Common Stock for any purposes, and the Company will not register such Transfer of shares of Common Stock.

## ARTICLE V
## DIRECTORS

Section 5.1    <u>Generally</u>.  The annual meeting of the stockholders for the election of the directors of the Corporation (the "***Directors***") and for the transaction of such other business as may properly come before the meeting shall be held at such date, time and place, if any, as shall be determined solely by the resolution of the Board in its sole and absolute discretion. The business and affairs of the Corporation shall be managed by, or under the direction of, the Board. Subject to the following paragraph, the stockholders shall have the right to elect a number of Directors of the Board (as set forth in the By-Laws) to be designated as Directors, in accordance with the By-Laws. The number of Directors may be increased or decreased from time to time as provided in the By-Laws. With respect to each matter brought before the Board (or any committee thereof) for vote, each Director shall be entitled to cast one vote.

Section 5.2    <u>Number, Class and Term</u>.  The number of Directors shall be 3.  No decrease in the number of directors shall shorten the term of any incumbent director.  There shall be a Class I, Class II and Class III Director and the initial Directors of each class shall be as set forth on <u>Schedule 1</u> attached hereto.  Each Director shall serve for a term ending on the date of the third annual meeting following the annual meeting at which such director was elected; provided, that each Director initially appointed to Class I shall serve for an initial term expiring at the Corporation's first annual meeting of stockholders following the effectiveness of this provision; each director initially appointed to Class II shall serve for an initial term expiring at the corporation's second annual meeting of stockholders following the effectiveness of this provision; and each director initially appointed to Class III shall serve for an initial term expiring at the Corporation's third annual meeting of stockholders following the effectiveness of this provision; provided further, that the term of each Director shall continue until the election and qualification of a successor and be subject to such Director's earlier death, resignation or removal.

Section 5.3    <u>Election</u>.  Except with respect to vacancies, as provided in the By-Laws of the Corporation, directors shall be elected by a plurality of the votes present in person or represented by proxy at the annual meetings of stockholders for which the election of such Director shall have been designated in accordance with <u>Section 5.2</u> above, and each director so elected shall hold office until the next election of the class for which such Director shall have been chosen and until his or her successor is duly elected and qualified or until his or her earlier death, resignation, disqualification or removal.

3

Section 5.4    <u>Vacancies</u>.  Vacancies on the Board by reason of death, resignation, retirement, disqualification, removal from office, or otherwise, and newly created directorships resulting from any increase in the authorized number of Directors shall be solely filled by a majority of the Directors then in office, although less than a quorum, or by a sole remaining Director and shall not be filled by the stockholders.  A Director elected to fill a vacancy or a newly created directorship shall hold office until the next election of the class for which such Director shall have been chosen, subject to the election and qualification of a successor and to such Director's earlier death, resignation or removal.

Section 5.5    <u>No Written Ballot Required</u>.  Unless and except to the extent that the By-Laws shall so require, the election of directors need not be by written ballot.

Section 5.6    <u>Cumulative Voting</u>.  There shall not be cumulative voting by stockholders in the election of Directors.

ARTICLE VI<br>
LIMITATION OF DIRECTOR LIABILITY;<br>
INDEMNIFICATION AND ADVANCEMENT OF EXPENSES

Section 6.1    <u>Limitation of Director Liability</u>.  To the fullest extent that the DGCL or any other law of the State of Delaware as the same exists or is hereafter amended permits the limitation or elimination of the liability of directors, no person who is or was a director of the Corporation shall be personally liable to the Corporation or any of its stockholders for monetary damages for breach of fiduciary duty as a director.  Any repeal or amendment of this <u>Section 6.1</u> by the stockholders of the Corporation or by changes in law, or the adoption of any other provision of this Certificate of Incorporation inconsistent with this <u>Section 6.1</u> will, unless otherwise required by law, be prospective only (except to the extent such amendment or change in law permits the Corporation to further limit or eliminate the liability of directors) and shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or amendment or adoption of such inconsistent provision with respect to acts or omissions occurring prior to such repeal or amendment or adoption of such inconsistent provision.

Section 6.2    <u>Indemnification and Advancement of Expenses</u>.

(a)    To the fullest extent permitted by applicable law, as the same exists or may hereafter be amended, the Corporation shall indemnify and hold harmless each person who is or was made a party or is threatened to be made a party to or is otherwise involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (a "***proceeding***") by reason of the fact that he or she is or was a director or officer of the Corporation or, while a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust, other enterprise or nonprofit entity, including service with respect to an employee benefit plan (an "***indemnitee***"), whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent, or in any other capacity while serving as a director, officer, employee or agent, against all expenses, liability and loss (including, without limitation, attorneys' fees, judgments, fines, ERISA excise

4

taxes and penalties and amounts paid in settlement) reasonably incurred or suffered by such indemnitee in connection with such proceeding. The right to indemnification conferred by this Section 6.2 shall include the right to be paid by the Corporation the expenses incurred in defending or otherwise participating in any such proceeding in advance of its final disposition; provided, however, that, if the DGCL requires, an advancement of expenses shall be made only upon delivery to the Corporation of an undertaking, by or on behalf of the indemnitee, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal that the indemnitee is not entitled to be indemnified for the expenses under this Section 6.2 or otherwise. The rights to indemnification and advancement of expenses conferred by this Section 6.2 shall be contract rights and such rights shall continue as to an indemnitee who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators. Notwithstanding the foregoing provisions of this Section 6.2, except for proceedings to enforce rights to indemnification and advancement of expenses, the Corporation shall indemnify and advance expenses to an indemnitee in connection with a proceeding (or part thereof) initiated by such indemnitee only if such proceeding (or part thereof) was authorized by the Board.

(b)     The Corporation hereby acknowledges that certain Directors (the "**Specified Persons**") may have rights to indemnification and advancement of expenses provided by a stockholder of the Corporation or its affiliates (directly or through insurance obtained by any such entity) (collectively, the "**Stockholder Indemnitors**"). The Corporation hereby agrees and acknowledges that (i) it is the indemnitor of first resort with respect to the Specified Persons, (ii) it shall be required to advance the full amount of expenses incurred by the Specified Persons, as required by the terms of this Certificate of Incorporation, without regard to any rights the Specified Persons may have against the Stockholder Indemnitors and (iii) it irrevocably waives, relinquishes and releases the Stockholder Indemnitors from any and all claims against the Stockholder Indemnitors for contribution, subrogation or any other recovery of any kind in respect thereof. The Corporation further agrees that no advancement or payment by the Stockholder Indemnitors on behalf of the Corporation with respect to any claim for which the Specified Persons have sought indemnification from the Corporation shall affect the foregoing and the Stockholder Indemnitors shall have a right of contribution and/or be subrogated to the extent of such advancement or payment to all of the rights of recovery of the Specified Persons against the Corporation. These rights shall be a contract right.

(c)     The rights to indemnification and advancement of expenses conferred on any indemnitee by this Section 6.2 shall not be exclusive of any other rights that any indemnitee may have or hereafter acquire under law, this Certificate of Incorporation, the By-Laws, an agreement, vote of stockholders or disinterested directors, or otherwise.

(d)     Any repeal or amendment of this Section 6.2 by the stockholders of the Corporation or by changes in law, or the adoption of any other provision of this Certificate of Incorporation inconsistent with this Section 6.2, shall, unless otherwise required by law, be prospective only (except to the extent such amendment or change in law permits the Corporation to provide broader indemnification rights on a retroactive basis than permitted prior thereto), and shall not in any way diminish or adversely affect any right or protection existing at the time of such repeal or amendment or adoption of such inconsistent provision in respect of any act or omission occurring prior to such repeal or amendment or adoption of such inconsistent provision.

(e)      This <u>Section 6.2</u> shall not limit the right of the Corporation, to the extent and in the manner authorized or permitted by law, to indemnify and to advance expenses to persons other than indemnitees.

## ARTICLE VII
## BY-LAWS

The By-Laws of the Corporation may be adopted, amended, altered or repealed only with the consent of the stockholders holding two-thirds of Common Stock.

## ARTICLE VIII
## AMENDMENT OF CERTIFICATE OF INCORPORATION

The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation in the manner now or hereafter prescribed by this Certificate of Incorporation and the DGCL.  The Certificate of Incorporation of the Corporation may be amended, altered or repealed only with the consent of the stockholders holding two-thirds of Common Stock.  Except as set forth in <u>ARTICLE VII</u>, all rights, preferences and privileges herein conferred upon stockholders, directors or any other persons by and pursuant to this Certificate of Incorporation in its present form or as hereafter amended are granted subject to the right reserved in this Article.

## ARTICLE IX
## CORPORATE OPPORTUNITIES

9.1      Each stockholder (who is not also an employee of the Corporation or any of its subsidiaries), each member of the Board or any committee thereof (other than an employee of the Corporation or any of its subsidiaries), each member of any board of directors, board of managers or similar governing body of any subsidiary of the Corporation (other than an employee of the Corporation or any of its subsidiaries), and any one or more of the respective Affiliates, managers, directors, principals, officers, employees and other representatives of each such stockholder, member of the Board (or committee thereof) or member of any board of directors, board of managers or similar governing body of any subsidiary of the Corporation who is not (in any such case) also an employee of the Corporation or any of its subsidiaries (the foregoing Persons being referred to, collectively, as "***Identified Persons***" and, each individually, as an "***Identified Person***") may now engage, may continue to engage, or may, in the future, decide to engage, in the same or similar activities or lines of business as those in which the Corporation or any of its Affiliates, directly or indirectly, now engage or may engage or other business activities that overlap with, are complementary to, or compete with those in which the Corporation or any of its Affiliates, directly or indirectly, now engage or may engage (any such activity or line of business, an "***Opportunity***").  No Identified Person shall have any duty to refrain, directly or indirectly, from (i) engaging in any Opportunity or (ii) otherwise competing with the Corporation or any of its Affiliates.  No Identified Person shall have any duty or obligation to refer or offer to the Corporation or any of its Affiliates any Opportunity, and the Corporation hereby renounces any interest or expectancy of the Corporation in, or in being offered, an opportunity to participate in any Opportunity which may be a corporate (or analogous) or business opportunity for the Corporation or any of its Affiliates.

6

9.2    In the event that any Identified Person acquires knowledge of a potential transaction or other corporate (or analogous) or business opportunity which may be an Opportunity for the Corporation or any of its Affiliates, such Identified Person shall have no duty to communicate or offer such Opportunity to the Corporation or any of its Affiliates and shall not be liable to the Corporation or the stockholders for breach of any purported fiduciary duty by reason of the fact that such Identified Person pursues or acquires such Opportunity for itself, or offers or directs such Opportunity to another Person (including any Affiliate of such Identified Person). Notwithstanding Section 9.1 and this Section 9.2, the Corporation does not renounce any intent or expectancy it may have in any Opportunity that is offered to an officer or Director of the Corporation (whether or not such individual is also an officer or director of a stockholder) if such Opportunity is expressly offered to such Person in his or her capacity as an officer or Director of the Corporation or knowledge of such Opportunity is acquired by such Person solely as a result of such Person's position as an officer or Director of the Corporation.

9.3    The Identified Persons may now own, may continue to own, and from time to time may acquire and own, investments in one or more other entities (such entities, collectively, "**Related Companies**") that are direct competitors of, or that otherwise may have interests that do or could conflict with those of, the Corporation, any of the stockholders or any of their respective Affiliates, and (a) the enjoyment, exercise and enforcement of the rights, interests, privileges, powers and benefits granted or available to the Identified Persons under this Certificate of Incorporation and/or any other agreement with the Company, shall not be in any manner reduced, diminished, affected or impaired, and the obligations of the Identified Persons under this Agreement shall not be in any manner augmented or increased, by reason of any act, circumstance, occurrence or event arising from or in any respect relating to (i) the ownership by an Identified Person of any interest in any Related Company, (ii) the affiliation of any Related Company with an Identified Person or (iii) any action taken or omitted by an Identified Person in respect of any Related Company, (b) no Identified Person shall, by reason of such ownership, affiliation or action, become subject to any fiduciary duty to the Corporation, any of the stockholders or any of their respective Affiliates, (c) none of the duties imposed on an Identified Person, whether by contract or law, do or shall limit or impair the right of any Identified Person lawfully to compete with the Corporation, any of the stockholders or any of their respective Affiliates and (d) the Identified Persons are not and shall not be obligated to disclose to the Corporation, any of the stockholders or any of their respective Affiliates any information related to their respective businesses or opportunities, including acquisition opportunities, or to refrain from or in any respect to be restricted in competing against the Corporation, any of the stockholders or any of their respective Affiliates in any such business or as to any such opportunities.

ARTICLE X
CERTAIN DEFINITIONS

As used in this Certificate of Incorporation, the following terms shall have the following meanings:

(a)    "*Affiliate*" means, with respect to any Person, any Person who, directly or indirectly, controls, is controlled by or is under common control with that Person, and the term "control" (including the terms "controlled", "controlled by" and

7

"under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by contract (including proxy) or otherwise; provided, however, that for the avoidance of doubt no stockholder shall be deemed an affiliate of any other stockholder solely on account of ownership of securities of the Corporation.

(b)     "*Exchange Act*" means the Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

(c)     "*Governmental Authority*" means any nation or government, any state or other political subdivision thereof, any entity, authority or body exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government, including any government authority, agency, department, board, body, commission or instrumentality of the U.S. or any other nation, or any state or other political subdivision thereof, any court, tribunal or arbitrator and any self-regulatory organization.

(d)     "*Person*" means an individual, partnership, corporation, unincorporated organization, joint stock company, limited liability company, partnership, association, trust, joint venture or any other entity, or a governmental agency or political subdivision thereof

(e)     "*Securities Act*" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

(f)     "*Transfer*" means, when used as a verb, to sell, transfer, assign, convey or otherwise dispose, and when used as a noun, any direct or indirect sale, transfer, assignment, conveyance or other disposition, including by merger, operation of law, bequest or pursuant to any domestic relations order, whether voluntarily or involuntarily; provided, that (i) no Transfer of shares of Common Stock or other securities shall be deemed to have occurred as a result of the entry into, modification of or existence of any Qualified Pledge until such time as the pledgee commences any action to foreclose upon such shares of Common Stock or other securities, or any shares of Common Stock or other securities are delivered upon settlement or termination of such Qualified Pledge (whichever occurs first), (ii) with respect to any stockholder that is a widely held "investment company" as defined in the Investment Company Act of 1940, as amended, or any publicly traded company whose securities are registered under the Exchange Act, a sale, transfer, gift, hypothecation, pledge, assignment, devise or other disposition of ownership interests in such investment company or publicly traded company shall not be deemed a Transfer; and (iii) with respect to any stockholder that is a private equity fund, hedge fund or similar vehicle, any Transfer of limited partnership or other similar non-controlling interests in any entity which is a pooled investment vehicle holding other material investments and which is an equityholder (directly or indirectly) of a stockholder, or the change in control of

8

any general partner, manager or similar person of such entity, will not be deemed to be a Transfer for purposes hereof.

(g)     "***Qualified Pledge***" means a *bona fide* pledge of Common Stock in connection with a secured borrowing transaction, the pledgee with respect to which is a financial institution in the business of engaging in secured lending and similar transactions which has entered into such transaction in the ordinary course of such business.

[Signature page follows]

IN WITNESS WHEREOF, the Corporation has caused this Second Amended and Restated Certificate of Incorporation, which amends and restates the Amended Certificate of Incorporation of the Corporation, to be made, executed and acknowledged by its duly authorized officer this [_] day of [_], 2017, as directed by and provided for by that certain confirmation order of the United States Bankruptcy Court for the District of Southern New York entered [____] approving the Plan.

SUNEDISON, INC.

_____
Name:
Title:

## **Schedule 1**

### **Initial Directors**

Class 1 Director: [____]

Class 2 Director: [____]

Class 3 Director: [____]

**EXHIBIT 6.15-2**

**Form of Bylaws**

SECOND AMENDED AND RESTATED BY-LAWS

OF

SUNEDISON, INC.,

a Delaware corporation

(the "*Corporation*")

(Adopted as of [____], 2017)

## SECOND AMENDED AND RESTATED BY-LAWS

### OF

### SUNEDISON, INC.

### ARTICLE I.
### OFFICES

**Section 1.1.    Registered Office**.  The registered office of the Corporation within the State of Delaware shall be located at either (a) the principal place of business of the Corporation in the State of Delaware or (b) the office of the corporation or individual acting as the Corporation's registered agent in Delaware.

**Section 1.2.    Additional Offices**.  The Corporation may, in addition to its registered office in the State of Delaware, have such other offices and places of business, both within and outside the State of Delaware, as the Board of Directors of the Corporation (the "**Board**") may from time to time determine or as the business and affairs of the Corporation may require.

### ARTICLE II.
### STOCKHOLDERS MEETINGS

**Section 2.1.    Annual Meetings**.  Unless directors are elected by written consent in lieu of an annual meeting as permitted by applicable law or an annual meeting is otherwise not required by applicable law, an annual meeting of stockholders shall be held at such place and time and on such date as shall be determined by the Board and stated in the notice of the meeting, provided that the Board may in its sole discretion determine that the meeting shall not be held at any place, but may instead be held solely by means of remote communication pursuant to Section 9.5(a).  At each annual meeting, subject to the terms of the Stockholder Agreement, the stockholders shall elect directors of the Corporation then up for election and may transact any other business as may properly be brought before the meeting.  Stockholders may, unless the Corporation's Certificate of Incorporation, as the same may be amended or restated from time to time (the "**Certificate of Incorporation**"), provides otherwise, act by written consent to elect directors; provided, however, that if such consent is less than unanimous, such action by written consent may be in lieu of holding an annual meeting only if all of the directorships to which directors could be elected at an annual meeting held at the effective time of such action are vacant and are filled by such action.

**Section 2.2.    Special Meetings**.   Except as otherwise required by applicable law or provided in the Certificate of Incorporation, special meetings of stockholders, for any purpose or purposes, may be called only by the Chairman of the Board or the President, by the Board, or by the Secretary at the request in writing of stockholders holding shares representing at least 25% of the voting power of the outstanding shares entitled to vote on the matter for which such meeting is to be called.  The Secretary shall call such a meeting upon receiving such a request.  Special meetings of stockholders shall be held at such place and time and on such date as shall be determined by the Board and stated in the Corporation's notice of the meeting, provided that the Board may in its sole discretion determine that the meeting shall not be held at any place, but may instead be held solely by means of remote communication pursuant to Section 9.5(a).

Section 2.3.   **Notices**.   Notice of each stockholders meeting stating the place, if any, date and time of the meeting, the means of remote communication, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such meeting, and the record date for determining the stockholders entitled to vote at the meeting if such date is different from the record date for determining stockholders entitled to notice of the meeting shall be given in the manner permitted by Section 9.3 to each stockholder entitled to vote thereat as of the record date for determining the stockholders entitled to notice of the meeting.   Such notice shall be given by the Corporation not less than 10 nor more than 60 days before the date of the meeting.   If said notice is for a stockholders meeting other than an annual meeting, it shall in addition state the purpose or purposes for which the meeting is called, and the business transacted at such meeting shall be limited to the matters so stated in the Corporation's notice of meeting (or any supplement thereto).

Section 2.4.   **Quorum**.   Except as otherwise provided by applicable law, the Certificate of Incorporation or these By-Laws, the presence, in person or by proxy, at a stockholders meeting of the holders of shares of outstanding capital stock of the Corporation representing a majority of the voting power of all outstanding shares of capital stock of the Corporation entitled to vote at such meeting shall constitute a quorum for the transaction of business at such meeting, except that when specified business is to be voted on by a class or series of stock voting as a class, the holders of shares representing a majority of the voting power of the outstanding shares of such class or series shall constitute a quorum of such class or series for the transaction of such business.   If a quorum shall not be present at any meeting of the stockholders, the chairman of the meeting or the stockholders entitled to vote thereat so present, by a majority in voting power thereof, may adjourn the meeting from time to time in the manner provided in Section 2.6 until a quorum shall attend.   The stockholders present at a duly convened meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough stockholders to leave less than a quorum.   Shares of its own stock belonging to the Corporation or to another corporation, if a majority of the voting power of the shares entitled to vote in the election of directors of such other corporation is held, directly or indirectly, by the Corporation, shall neither be entitled to vote nor be counted for quorum purposes; provided, however, that the foregoing shall not limit the right of the Corporation or any such other corporation to vote shares held by it in a fiduciary capacity.

Section 2.5.   **Voting of Shares**.

(a)   Voting Lists.   The Secretary shall prepare, or shall cause the officer or agent who has charge of the stock ledger of the Corporation to prepare, at least 10 days before each meeting of stockholders, a complete list of the stockholders of record entitled to vote at the meeting (provided, however, if the record date for determining the stockholders entitled to vote is less than 10 days before the meeting date, the list shall reflect the stockholders entitled to vote as of the tenth day before the meeting date), arranged in alphabetical order for each class of stock and showing the address and the number of shares registered in the name of each stockholder. Nothing contained in this Section 2.5(a) shall require the Corporation to include electronic mail addresses or other electronic contact information on such list.   Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours for a period of at least 10 days prior to the meeting: (i) on a reasonably accessible electronic network, provided that the information required to gain access to such list is provided

with the notice of the meeting, or (ii) during ordinary business hours, at the principal place of business of the Corporation. If the Corporation determines to make the list available on an electronic network, the Corporation may take reasonable steps to ensure that such information is available only to stockholders of the Corporation. If the meeting is to be held at a place, then the list of stockholders entitled to vote at the meeting shall be produced and kept at the time and place of the meeting during the whole time thereof, and may be examined by any stockholder who is present. If a meeting of stockholders is to be held solely by means of remote communication as permitted by Section 9.5(a), then such list shall be open to the examination of any stockholder during the whole time of the meeting on a reasonably accessible electronic network, and the information required to access such list shall be provided with the notice of meeting. The stock ledger shall be the only evidence as to who are the stockholders entitled to examine the list required by this Section 2.5(a) or to vote in person or by proxy at any meeting of stockholders.

(b)    Manner of Voting. At any stockholders meeting, every stockholder entitled to vote may vote in person or by proxy. If authorized by the Board, the voting by stockholders or proxyholders at any meeting conducted by remote communication may be effected by a ballot submitted by electronic transmission (as defined in Section 9.3(c)), provided that any such electronic transmission must either set forth or be submitted with information from which the Corporation can determine that the electronic transmission was authorized by the stockholder or proxyholder. The Board, in its discretion, or the chairman of the meeting of stockholders, in such person's discretion, may require that any votes cast at such meeting shall be cast by written ballot.

(c)    Proxies. Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by proxy, but no such proxy shall be voted or acted upon after three years from its date, unless the proxy provides for a longer period. Proxies need not be filed with the Secretary until the meeting is called to order, but shall be filed with the Secretary before being voted. Without limiting the manner in which a stockholder may authorize another person or persons to act for such stockholder as proxy, either of the following shall constitute a valid means by which a stockholder may grant such authority:

(i)    A stockholder may execute a writing authorizing another person or persons to act for such stockholder as proxy. Execution may be accomplished by the stockholder or such stockholder's authorized officer, director, employee or agent signing such writing or causing such person's signature to be affixed to such writing by any reasonable means, including, but not limited to, by facsimile signature.

(ii)    A stockholder may authorize another person or persons to act for such stockholder as proxy by transmitting or authorizing the transmission of an electronic transmission to the person who will be the holder of the proxy, provided that any such electronic transmission must either set forth or be submitted with information from which it can be determined that the electronic transmission was authorized by the stockholder.

Any copy, facsimile telecommunication or other reliable reproduction of the writing or transmission authorizing another person or persons to act as proxy for a stockholder may be

3

substituted or used in lieu of the original writing or transmission for any and all purposes for which the original writing or transmission could be used; provided that such copy, facsimile telecommunication or other reproduction shall be a complete reproduction of the entire original writing or transmission.

(d)    Limitation on Proxies and Voting Agreements.    Notwithstanding the foregoing and including in connection with a Qualified Pledge (as defined in the Certificate of Incorporation), no Person that holds Common Stock shall grant any proxy or enter into or agree to be bound by any voting trust with respect to any shares of Common Stock, nor enter into any stockholder agreements or arrangements of any kind with any person with respect to any shares of Common Stock inconsistent with these Bylaws or the Certificate of Incorporation, including agreements or arrangements with respect to the acquisition, disposition or voting of shares of Common Stock, nor shall any Person that holds Common Stock act, for any reason, as a member of a group or in concert with any other Persons in connection with the acquisition, disposition or voting of shares of Common Stock in any manner which is inconsistent with the provisions of these Bylaws or the Certificate of Incorporation.

(e)    Required Vote.    The election of directors shall be determined by a plurality of the votes cast by the stockholders present in person or represented by proxy at the meeting and entitled to vote thereon.    All other matters shall be determined by the vote of a majority of the votes cast by the stockholders present in person or represented by proxy at the meeting and entitled to vote thereon, unless the matter is one upon which, by applicable law, the Certificate of Incorporation or these By-Laws, a different vote is required, in which case such provision shall govern and control the decision of such matter.

(f)    Inspectors of Election.    The Board may, and shall if required by law, in advance of any meeting of stockholders, appoint one or more persons as inspectors of election, who may be employees of the Corporation or otherwise serve the Corporation in other capacities, to act at such meeting of stockholders or any adjournment thereof and to make a written report thereof.    The Board may appoint one or more persons as alternate inspectors to replace any inspector who fails to act.    If no inspectors of election or alternates are appointed by the Board, the chairman of the meeting shall appoint one or more inspectors to act at the meeting.    Each inspector, before discharging his or her duties, shall take and sign an oath faithfully to execute the duties of inspector with strict impartiality and according to the best of his or her ability.    The inspectors shall ascertain and report the number of outstanding shares and the voting power of each; determine the number of shares present in person or represented by proxy at the meeting and the validity of proxies and ballots; count all votes and ballots and report the results; determine and retain for a reasonable period a record of the disposition of any challenges made to any determination by the inspectors; and certify their determination of the number of shares represented at the meeting and their count of all votes and ballots.    No person who is a candidate for an office at an election may serve as an inspector at such election.    Each report of an inspector shall be in writing and signed by the inspector or by a majority of them if there is more than one inspector acting at such meeting.    If there is more than one inspector, the report of a majority shall be the report of the inspectors.

Section 2.6.    Adjournments.    Any meeting of stockholders, annual or special, may be adjourned by the chairman of the meeting or by the stockholders present and entitled to vote

threat, by a majority in voting power thereof, from time to time, whether or not there is a quorum, to reconvene at the same or some other place. Notice need not be given of any such adjourned meeting if the date, time, place, if any, thereof, and the means of remote communication, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such adjourned meeting are announced at the meeting at which the adjournment is taken. At the adjourned meeting the stockholders, or the holders of any class or series of stock entitled to vote separately as a class, as the case may be, may transact any business that might have been transacted at the original meeting. If the adjournment is for more than 30 days, notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting. If after the adjournment a new record date for stockholders entitled to vote is fixed for the adjourned meeting, the Board shall fix a new record date for notice of such adjourned meeting in accordance with Section 2.3 and shall give notice of the adjourned meeting to each stockholder of record entitled to vote at such adjourned meeting as of the record date fixed for notice of such adjourned meeting.

**Section 2.7.    Conduct of Meetings**. The chairman of each annual and special meeting of stockholders shall be the Chairman of the Board or, in the absence (or inability or refusal to act) of the Chairman of the Board, the President (if he or she shall be a director) or, in the absence (or inability or refusal to act) of the President or if the President is not a director, such other person as shall be appointed by the Board, or in the absence of such appointment, a chairman chosen at the meeting. The date and time of the opening and the closing of the polls for each matter upon which the stockholders will vote at a meeting shall be announced at the meeting by the chairman of the meeting. The Board may adopt such rules and regulations for the conduct of the meeting of stockholders as it shall deem appropriate. Except to the extent inconsistent with these By-Laws or such rules and regulations as adopted by the Board, the chairman of any meeting of stockholders shall have the right and authority to convene and to adjourn the meeting, to prescribe such rules, regulations and procedures and to do all such acts as, in the judgment of such chairman, are appropriate for the proper conduct of the meeting. Unless and to the extent determined by the Board or the chairman of the meeting, meetings of stockholders shall not be required to be held in accordance with the rules of parliamentary procedure. The secretary of each annual and special meeting of stockholders shall be the Secretary or, in the absence (or inability or refusal to act) of the Secretary, an Assistant Secretary so appointed to act by the chairman of the meeting. In the absence (or inability or refusal to act) of the Secretary and all Assistant Secretaries, the chairman of the meeting may appoint any person to act as secretary of the meeting.

**Section 2.8.    Consents in Lieu of Meeting**. Unless otherwise provided by the Certificate of Incorporation, any action required or permitted to be taken at any annual or special meeting of stockholders may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum voting power that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the Corporation to its registered office in the State of Delaware, the Corporation's principal place of business, or the Secretary. Every written consent shall bear the date of signature of each stockholder who signs the consent and no written consent shall be effective to take the corporate action referred to therein unless, within 60 days of the date the earliest dated consent is delivered to the Corporation, a written consent or consents

signed by a sufficient number of holders to take such action are delivered to the Corporation by delivery to the Corporation's registered office in the State of Delaware, the Corporation's principal place of business, or the Secretary. Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.  An electronic transmission consenting to the action to be taken and transmitted by a stockholder, proxyholder or a person or persons authorized to act for a stockholder or proxyholder shall be deemed to be written, signed and dated for purposes hereof if such electronic transmission sets forth or is delivered with information from which the Corporation can determine that such transmission was transmitted by a stockholder or proxyholder (or by a person authorized to act for a stockholder or proxyholder) and the date on which such stockholder, proxyholder or authorized person transmitted such transmission.  The date on which such electronic transmission is transmitted shall be deemed to be the date on which such consent was signed.  No consent given by electronic transmission shall be deemed to have been delivered until such consent is reproduced in paper form and delivered to the Corporation by delivery either to the Corporation's registered office in the State of Delaware, the Corporation's principal place of business, or the Secretary. Delivery made to the Corporation's registered office shall be made by hand or by certified or registered mail, return receipt requested.  Notwithstanding the limitations on delivery in the previous sentence, consents given by electronic transmission may be otherwise delivered to the Corporation's principal place of business or to the Secretary if, to the extent, and in the manner provided by resolution of the Board.  Any copy, facsimile or other reliable reproduction of a consent in writing may be substituted or used in lieu of the original writing for any and all purposes for which the original writing could be used; provided that such copy, facsimile or other reproduction shall be a complete reproduction of the entire original writing.  Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to notice of the meeting if the record date for notice of such meeting had been the date that written consents signed by a sufficient number of holders were delivered to the Corporation as provided in this <u>Section 2.8</u>.

## ARTICLE III.
## DIRECTORS

**Section 3.1.    Powers**.  The business and affairs of the Corporation shall be managed by or under the direction of the Board, which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute or by the Certificate of Incorporation or by these By-Laws required to be exercised or done by the stockholders. Directors need not be stockholders or residents of the State of Delaware. Notwithstanding the foregoing, neither the Corporation, nor any of its subsidiaries shall take any of the following actions without the prior written consent of stockholders holding two-thirds of the outstanding Common Stock:

a)   create, authorize or issue, or grant any options, warrants, or other rights to purchase or obtain, any securities of the Corporation or any of its subsidiaries;

b)   create any subsidiaries;

c)   purchase, redeem or otherwise acquire for value (or pay into or set aside a sinking fund for such purpose) equity securities of the Corporation or its subsidiaries;

d) voluntarily initiate any liquidation, dissolution or winding up of the Corporation or any of its subsidiaries, or permit the commencement of a proceeding for bankruptcy, insolvency, receivership or similar action against the Corporation or any of its subsidiaries;

e) change or enter into any new line of business;

f) incur any indebtedness other than a working capital facility with a capacity of no more than $[1,000,000];

g) pay any dividends on, or make any distributions with respect to, the securities of the Corporation;

h) acquire any assets or make any investments in, or acquire the securities of, any person;

i) grant or permit to exist any liens other than (A) liens associated with debt permitted by clause (f) above and (B) liens arising by operation of law;

j) hire or fire any officer of the Corporation or its subsidiaries earning a base salary of more than $[250,000];

k) enter into, amend or terminate any contract that involves payments in excess of $[1,000,000];

l) change the auditors of the Corporation or any of its subsidiaries;

m) settle any litigation that involves payment in excess of $[1,000,000];

n) enter into any mergers, consolidations, reorganizations, recapitalizations business combinations, other sale of the Corporation or other similar transactions resulting in a change of control of the Corporation, or sale of all or substantially all of the Corporation's assets

o) change the tax status of the Corporation, effect a reorganization or make or revoke any tax election with respect to the Corporation or its Subsidiaries;

p) amend or modify the Corporation's organizational documents, including the Certificate of Incorporation and these Bylaws;

q) authorize or issue any shares of stock other than Common Stock; or

r) agree to, or enter into any contract to do, to any of the foregoing.

**Section 3.2.    Number; Term**.  The number of directors of the Corporation shall be 3. No decrease in the number of directors shall shorten the term of any incumbent director.  There shall be a Class I, Class II and Class III Director and the initial Directors of each class shall be as set forth on Schedule 1 of the Certificate of Incorporation.  Each Director shall serve for a term ending on the date of the third annual meeting following the annual meeting at which such director was elected; provided, that the Director initially appointed to Class I shall serve for an

initial term expiring at the Corporation's first annual meeting of stockholders following the effectiveness of this provision; the director initially appointed to Class II shall serve for an initial term expiring at the corporation's second annual meeting of stockholders following the effectiveness of this provision; and the director initially appointed to Class III shall serve for an initial term expiring at the Corporation's third annual meeting of stockholders following the effectiveness of this provision; provided further, that the term of each Director shall continue until the election and qualification of a successor and be subject to such Director's earlier death, resignation or removal.  A director elected to fill a vacancy or a newly created directorship shall hold office until the next election of directors, subject to the election and qualification of a successor and to such director's earlier death, resignation or removal.

**Section 3.3.    Newly Created Directorships and Vacancies**.  Except as otherwise provided in the Certificate of Incorporation, vacancies resulting from death, resignation, retirement, disqualification, removal or other cause and newly created directorships resulting from an increase in the number of directors elected by all of the stockholders having the right to vote as a single class may be filled by a majority vote of the directors then in office, even if less than a quorum, by a sole remaining director, or by the stockholders.  Except as otherwise provided in the Certificate of Incorporation, if the holders of any class or classes of stock or series thereof are entitled to elect one or more directors by the Certificate of Incorporation, vacancies and newly created directorships of such class or classes or series may be filled only by a majority of the directors elected by such class or classes or series thereof then in office, by a sole remaining director so elected, or by the stockholders of such class or classes or series thereof.  Except as otherwise provided in the Certificate of Incorporation, any director elected or chosen in accordance with this Section 3.3 shall hold office for the remainder of the applicable term and until his or her successor shall have been elected and qualified, subject to such director's earlier death, resignation, retirement, disqualification or removal.

**Section 3.4.    Compensation**.  Unless otherwise restricted by the Certificate of Incorporation or these By-Laws, the Board shall have the authority to fix the compensation of directors.  The directors may be reimbursed their expenses, if any, of attendance at each meeting of the Board and may be paid either a fixed sum for attendance at each meeting of the Board or other compensation as director.  No such payment shall preclude any director from serving the Corporation in any other capacity and receiving compensation therefor.  Members of committees of the Board may be allowed like compensation and reimbursement of expenses for attending committee meetings.

### ARTICLE IV.
### BOARD MEETINGS

**Section 4.1.    Annual Meetings**.  The Board shall meet as soon as practicable after the adjournment of each annual stockholders meeting at the place of the annual stockholders meeting unless the Board shall fix another time and place and give notice thereof in the manner required herein for special meetings of the Board.  No notice to the directors shall be necessary to legally convene this meeting, except as provided in this Section 4.1.

**Section 4.2.    Regular Meetings**.  Regularly scheduled, periodic meetings of the Board may be held without notice at such times, dates and places as shall from time to time be determined by the Board.

**Section 4.3.    Special Meetings**.  Special meetings of the Board (a) may be called by the Chairman of the Board and (b) shall be called by the Chairman of the Board or Secretary on the written request of at least two of the directors then in office, or the sole director if there be only one, and shall be held at such time, date and place as may be determined by the person calling the meeting or, if called upon the request of directors or the sole director, as specified in such written request.  Notice of each special meeting of the Board shall be given, as provided in Section 9.3, to each director (i) at least 24 hours before the meeting if such notice is oral notice given personally or by telephone or written notice given by hand delivery or by means of a form of electronic transmission and delivery; (ii) at least two days before the meeting if such notice is sent by a nationally recognized overnight delivery service; and (iii) at least five days before the meeting if such notice is sent through the United States mail.  If the Secretary shall fail or refuse to give such notice, then the notice may be given by the officer who called the meeting or the directors who requested the meeting.  Any and all business that may be transacted at a regular meeting of the Board may be transacted at a special meeting.  Except as may be otherwise expressly provided by applicable law, the Certificate of Incorporation, or these By-Laws, neither the business to be transacted at, nor the purpose of, any special meeting need be specified in the notice or waiver of notice of such meeting.  A special meeting may be held at any time without notice if all the directors are present or if those not present waive notice of the meeting in accordance with Section 9.4.

**Section 4.4.    Quorum; Required Vote**.  A majority of the Board, but in any event not less than one-third of the Whole Board (as defined below), shall constitute a quorum for the transaction of business at any meeting of the Board, and the act of a majority of the directors present at any meeting at which there is a quorum shall be the act of the Board, except as may be otherwise specifically provided by applicable law, the Certificate of Incorporation or these By-Laws.  If a quorum shall not be present at any meeting, a majority of the directors present may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum is present.  "*Whole Board*" shall mean the total number of directors that the Corporation would have if there were no vacancies.

**Section 4.5.    Consent In Lieu of Meeting**.  Unless otherwise restricted by the Certificate of Incorporation or these By-Laws, any action required or permitted to be taken at any meeting of the Board or any committee thereof may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions (or paper reproductions thereof) are filed with the minutes of proceedings of the Board or committee.  Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

**Section 4.6.    Organization**.  The chairman of each meeting of the Board shall be the Chairman of the Board or, in the absence (or inability or refusal to act) of the Chairman of the Board, the President (if he or she shall be a director) or in the absence (or inability or refusal to act) of the President or if the President is not a director, a chairman elected from the directors

present. The Secretary shall act as secretary of all meetings of the Board. In the absence (or inability or refusal to act) of the Secretary, an Assistant Secretary shall perform the duties of the Secretary at such meeting. In the absence (or inability or refusal to act) of the Secretary and all Assistant Secretaries, the chairman of the meeting may appoint any person to act as secretary of the meeting.

## ARTICLE V.
## COMMITTEES OF DIRECTORS

**Section 5.1.    Establishment**. The Board may designate one or more committees, each committee to consist of one or more of the directors of the Corporation. Each committee shall keep regular minutes of its meetings and report the same to the Board when required. The Board shall have the power at any time to fill vacancies in, to change the membership of, or to dissolve any such committee.

**Section 5.2.    Available Powers**. Any committee established pursuant to Section 5.1 hereof, to the extent permitted by applicable law and by resolution of the Board, shall have and may exercise all of the powers and authority of the Board in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers that may require it.

**Section 5.3.    Alternate Members**. The Board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of such committee.

**Section 5.4.    Procedures**. Unless the Board otherwise provides, the time, date, place, if any, and notice of meetings of a committee shall be determined by such committee. At meetings of a committee, a majority of the number of members of the committee (but not including any alternate member, unless such alternate member has replaced any absent or disqualified member at the time of, or in connection with, such meeting) shall constitute a quorum for the transaction of business. The act of a majority of the members present at any meeting at which a quorum is present shall be the act of the committee, except as otherwise specifically provided by applicable law, the Certificate of Incorporation, these By-Laws or the Board. If a quorum is not present at a meeting of a committee, the members present may adjourn the meeting from time to time, without notice other than an announcement at the meeting, until a quorum is present. Unless the Board otherwise provides and except as provided in these By-Laws, each committee designated by the Board may make, alter, amend and repeal rules for the conduct of its business. In the absence of such rules each committee shall conduct its business in the same manner as the Board is authorized to conduct its business pursuant to Article III and Article IV of these By-Laws.

## ARTICLE VI.
## OFFICERS

**Section 6.1.    Officers**. Subject to Section 6.4, the officers of the Corporation elected by the Board may include a manager, President, Treasurer, Secretary and such other officers (including without limitation a Chief Executive Officer, Chief Financial Officer, Vice Presidents, Assistant Secretaries and Assistant Treasurers) as the Board from time to time may determine.

Officers elected by the Board shall each have such powers and duties as generally pertain to their respective offices, subject to the specific provisions of this Article VI. Such officers shall also have such powers and duties as from time to time may be conferred by the Board. If such an officer has been elected, the President may also appoint such other officers (including without limitation one or more Vice Presidents and Controllers) as may be necessary or desirable for the conduct of the business of the Corporation. Such other officers shall have such powers and duties and shall hold their offices for such terms as may be provided in these By-Laws or as may be prescribed by the Board or, if such officer has been appointed by the President as permitted hereby, as may be prescribed by the appointing officer.

**Section 6.2.    Term of Office; Removal; Vacancies**.    The elected officers of the Corporation shall be elected or appointed by the Board from time to time in its discretion. All officers elected or appointed by the Board shall hold office in accordance for such term as may be prescribed by the Board. Any officer may be removed, with or without cause, at any time by the Board. Any officer appointed by the President may also be removed, with or without cause, by the President unless the Board otherwise provides. Any vacancy occurring in any elected office of the Corporation may be filled by the Board.

**Section 6.3.    Other Officers**. The Board may delegate the power to appoint such other officers and agents, and may also remove such officers and agents or delegate the power to remove same, as it shall from time to time deem necessary or desirable.

**Section 6.4.    Manager**.

(a)    Immediately    following    consummation    of    its    reorganization ("**Emergence**") in accordance with that certain [*First Amended Joint Plan of Reorganization on SunEdison, Inc. and its Debtor Affiliates*], and its Debtor Affiliates approved by order of the United States Bankruptcy Court for the Southern District of New York in *In re: SUNEDISON, Inc., et al.*, under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101-1330)], as amended, the powers and authority customarily granted to a Chief Executive Officer and President shall be vested in a manager (the "**Manager**"), elected upon the approval and consent of a majority of the Board, who shall have the authority to act in the name and on behalf of the Corporation, and make such decisions, as are ordinarily vested in such positions, subject to any restrictions or conditions that the Board may impose.

(b)    Until such time as the Board determines to appoint additional officers, the Manager shall also have the authority to act as the Corporation's treasurer and secretary and to take any other action required or permitted of an officer of the Corporation as contemplated by the DGCL.

(c)    Any replacement for the Manager shall be appointed in accordance with the other provisions of these By-Laws and the Certificate of Incorporation.

**Section 6.5.    Multiple Officeholders; Stockholder and Director Officers**.    Any number of offices may be held by the same person unless the Certificate of Incorporation or

these By-Laws otherwise provide.  Officers need not be stockholders or residents of the State of Delaware.

## ARTICLE VII.
## SHARE CERTIFICATES

**Section 7.1.    Certificates for Shares**.  Shares of stock in the Corporation need not be certificated.  The Corporation may, at its election, issue to any stockholder of record a certificate certifying the number and class of shares owned by him in the Corporation, which shall be in such form as shall be prescribed by the Board.

**Section 7.2.    Multiple Classes of Stock**.  If the Corporation shall be authorized to issue more than one class of stock or more than one series of any class, the Corporation shall (a) cause the powers, designations, preferences and relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences or rights to be set forth in full or summarized on the face or back of any certificate that the Corporation issues to represent shares of such class or series of stock or (b) in the case of uncertificated shares, within a reasonable time after the issuance or transfer of such shares, send to the registered owner thereof a written notice containing the information required to be set forth on certificates as specified in clause (a) above; provided, however, that, except as otherwise provided by applicable law, in lieu of the foregoing requirements, there may be set forth on the face or back of such certificate or, in the case of uncertificated shares, on such written notice a statement that the Corporation will furnish without charge to each stockholder who so requests the powers, designations, preferences and relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences or rights.

**Section 7.3.    Signatures**.  Each certificate representing capital stock of the Corporation shall be signed by or in the name of the Corporation by (a) the Chairman of the Board, the President or a Vice President and (b) the Treasurer, an Assistant Treasurer, the Secretary or an Assistant Secretary of the Corporation.  Any or all the signatures on the certificate may be a facsimile.  In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, such certificate may be issued by the Corporation with the same effect as if such person were such officer, transfer agent or registrar on the date of issue.

**Section 7.4.    Consideration and Payment for Shares**.

(a)    Subject to applicable law and the Certificate of Incorporation, shares of stock may be issued for such consideration, having in the case of shares with par value a value not less than the par value thereof, and to such persons, as determined from time to time by the Board.  The consideration may consist of any tangible or intangible property or benefit to the Corporation including cash, promissory notes, services performed, contracts for services to be performed or other securities.

(b)    Subject to applicable law and the Certificate of Incorporation, shares may not be issued until the full amount of the consideration has been paid, unless upon the face or

back of each certificate issued to represent any partly paid shares of capital stock or upon the books and records of the Corporation in the case of partly paid uncertificated shares, there shall have been set forth the total amount of the consideration to be paid therefor and the amount paid thereon up to and including the time said certificate representing certificated shares or said uncertificated shares are issued.

**Section 7.5.    Lost, Destroyed or Wrongfully Taken Certificates**.

(a)    If an owner of a certificate representing shares claims that such certificate has been lost, destroyed or wrongfully taken, the Corporation shall issue a new certificate representing such shares or such shares in uncertificated form if the owner: (i) requests such a new certificate before the Corporation has notice that the certificate representing such shares has been acquired by a protected purchaser; (ii) if requested by the Corporation, delivers to the Corporation a bond sufficient to indemnify the Corporation against any claim that may be made against the Corporation on account of the alleged loss, wrongful taking or destruction of such certificate or the issuance of such new certificate or uncertificated shares; and (iii) satisfies other reasonable requirements imposed by the Corporation.

(b)    If a certificate representing shares has been lost, apparently destroyed or wrongfully taken, and the owner fails to notify the Corporation of that fact within a reasonable time after the owner has notice of such loss, apparent destruction or wrongful taking and the Corporation registers a transfer of such shares before receiving notification, the owner shall be precluded from asserting against the Corporation any claim for registering such transfer or a claim to a new certificate representing such shares or such shares in uncertificated form.

**Section 7.6.    Transfer of Stock**.

(a)    If a certificate representing shares of the Corporation is presented to the Corporation with a stock power or other indorsement requesting the registration of transfer of such shares or an instruction is presented to the Corporation requesting the registration of transfer of uncertificated shares, the Corporation shall register the transfer as requested if:

(i)    such transfer is compliance with all of the restrictions on transfer set forth in these By-Laws and the Certificate of Incorporation;

(ii)    in the case of certificated shares, the certificate representing such shares has been surrendered;

(iii)    (A) with respect to certificated shares, the indorsement is made by the person specified by the certificate as entitled to such shares; (B) with respect to uncertificated shares, an instruction is made by the registered owner of such uncertificated shares; or (C) with respect to certificated shares or uncertificated shares, the indorsement or instruction is made by any other appropriate person or by an agent who has actual authority to act on behalf of the appropriate person;

(iv)    the Corporation has received a guarantee of signature of the person signing such indorsement or instruction or such other reasonable assurance that the indorsement or instruction is genuine and authorized as the Corporation may request;

13

(v)    the transfer does not violate any restriction on transfer imposed by the Corporation that is enforceable in accordance with Section 7.8; and

(vi)    such other conditions for such transfer as shall be provided for under applicable law have been satisfied.

(b)    Whenever any transfer of shares shall be made for collateral security and not absolutely, the Corporation shall so record such fact in the entry of transfer if, when the certificate for such shares is presented to the Corporation for transfer or, if such shares are uncertificated, when the instruction for registration of transfer thereof is presented to the Corporation, both the transferor and transferee request the Corporation to do so.

**Section 7.7.    Registered Stockholders**.    Before due presentment for registration of transfer of a certificate representing shares of the Corporation or of an instruction requesting registration of transfer of uncertificated shares, the Corporation may treat the registered owner as the person exclusively entitled to inspect for any proper purpose the stock ledger and the other books and records of the Corporation, vote such shares, receive dividends or notifications with respect to such shares and otherwise exercise all the rights and powers of the owner of such shares, except that a person who is the beneficial owner of such shares (if held in a voting trust or by a nominee on behalf of such person) may, upon providing documentary evidence of beneficial ownership of such shares and satisfying such other conditions as are provided under applicable law, may also so inspect the books and records of the Corporation.

**Section 7.8.    Effect of the Corporation's Restriction on Transfer**.    A written restriction on the transfer or registration of transfer of shares of the Corporation or on the amount of shares of the Corporation that may be owned by any person or group of persons, if permitted by the DGCL and noted conspicuously on the certificate representing such shares or, in the case of uncertificated shares, contained in a notice sent by the Corporation to the registered owner of such shares within a reasonable time after the issuance or transfer of such shares, may be enforced against the holder of such shares or any successor or transferee of the holder including an executor, administrator, trustee, guardian or other fiduciary entrusted with like responsibility for the person or estate of the holder.

**Section 7.9.    Transfer Agents**. The Board may appoint one or more transfer agents or registrars and may require for the validity thereof that certificates representing shares bear the signature of any transfer agent or registrar so appointed.

## ARTICLE VIII.
## INDEMNIFICATION

**Section 8.1.    Right to Indemnification**.    Each person who was or is made a party or is threatened to be made a party to or is otherwise involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "***proceeding***"), by reason of the fact that he or she is or was a director or officer of the Corporation or, while a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust, other enterprise or nonprofit entity, including service with

14

respect to an employee benefit plan (hereinafter a "***Covered Person***"), whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent, or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized or permitted by applicable law, as the same exists or may hereafter be amended, against all expenses, liability and loss (including, without limitation, attorneys' fees, judgments, fines, ERISA excise taxes and penalties and amounts paid in settlement) reasonably incurred or suffered by such Covered Person in connection with such proceeding; provided, however, that, except as provided in Section 8.3 with respect to proceedings to enforce rights to indemnification and advancement of expenses, the Corporation shall indemnify a Covered Person in connection with a proceeding (or part thereof) initiated by such Covered Person only if such proceeding (or part thereof) was authorized by the Board.

**Section 8.2.   Right to Advancement of Expenses**.   In addition to the right to indemnification conferred in Section 8.1, a Covered Person shall also have the right to be paid by the Corporation the expenses (including, without limitation, attorneys' fees) incurred in defending, testifying, or otherwise participating in any such proceeding in advance of its final disposition (hereinafter an "***advancement of expenses***"); provided, however, that, if the Delaware General Corporation Law ("***DGCL***") requires, an advancement of expenses incurred by a Covered Person in his or her capacity as a director or officer of the Corporation (and not in any other capacity in which service was or is rendered by such Covered Person, including, without limitation, service to an employee benefit plan) shall be made only upon delivery to the Corporation of an undertaking (hereinafter an "***undertaking***"), by or on behalf of such Covered Person, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal (hereinafter a "***final adjudication***") that such Covered Person is not entitled to be indemnified for such expenses under this Article VIII or otherwise.

**Section 8.3.   Right of Indemnitee to Bring Suit**.   If a claim under Section 8.1 or Section 8.2 is not paid in full by the Corporation within 60 days after a written claim therefor has been received by the Corporation, except in the case of a claim for an advancement of expenses, in which case the applicable period shall be 20 days, the Covered Person may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim.   If successful in whole or in part in any such suit, or in a suit brought by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the Covered Person shall also be entitled to be paid the expense of prosecuting or defending such suit.   In any suit brought by (a) the Covered Person to enforce a right to indemnification hereunder (but not in a suit brought by a Covered Person to enforce a right to an advancement of expenses) it shall be a defense that, and (b) the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the Corporation shall be entitled to recover such expenses upon a final adjudication that, the Covered Person has not met any applicable standard for indemnification set forth in the DGCL.   Neither the failure of the Corporation (including its directors who are not parties to such action, a committee of such directors, independent legal counsel, or its stockholders) to have made a determination prior to the commencement of such suit that indemnification of the Covered Person is proper in the circumstances because the Covered Person has met the applicable standard of conduct set forth in the DGCL, nor an actual determination by the Corporation (including a determination by its directors who are not parties

to such action, a committee of such directors, independent legal counsel, or its stockholders) that the Covered Person has not met such applicable standard of conduct, shall create a presumption that the Covered Person has not met the applicable standard of conduct or, in the case of such a suit brought by the Covered Person, shall be a defense to such suit.  In any suit brought by the Covered Person to enforce a right to indemnification or to an advancement of expenses hereunder, or by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the burden of proving that the Covered Person is not entitled to be indemnified, or to such advancement of expenses, under this Article VIII or otherwise shall be on the Corporation.

Section 8.4.    **Non-Exclusivity of Rights**.    The rights provided to Covered Persons pursuant to this Article VIII shall not be exclusive of any other right that any Covered Person may have or hereafter acquire under applicable law, the Certificate of Incorporation, these By-Laws, an agreement, a vote of stockholders or disinterested directors, or otherwise.

Section 8.5.    **Insurance**.    The Corporation may maintain insurance, at its expense, to protect itself and/or any director, officer, employee or agent of the Corporation or another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss, whether or not the Corporation would have the power to indemnify such person against such expense, liability or loss under the DGCL.

Section 8.6.    **Indemnification of Other Persons**.    This Article VIII shall not limit the right of the Corporation to the extent and in the manner authorized or permitted by law to indemnify and to advance expenses to persons other than Covered Persons.  Without limiting the foregoing, the Corporation may, to the extent authorized from time to time by the Board, grant rights to indemnification and to the advancement of expenses to any employee or agent of the Corporation and to any other person who is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to an employee benefit plan, to the fullest extent of the provisions of this Article VIII with respect to the indemnification and advancement of expenses of Covered Persons under this Article VIII.

Section 8.7.    **Amendments**.    Any repeal or amendment of this Article VIII by the Board or the stockholders of the Corporation or by changes in applicable law, or the adoption of any other provision of these By-Laws inconsistent with this Article VIII, shall, to the extent permitted by applicable law, be prospective only (except to the extent such amendment or change in applicable law permits the Corporation to provide broader indemnification rights to Covered Persons on a retroactive basis than permitted prior thereto), and will not in any way diminish or adversely affect any right or protection existing hereunder in respect of any act or omission occurring prior to such repeal or amendment or adoption of such inconsistent provision.

Section 8.8.    **Certain Definitions**.    For purposes of this Article VIII, (a) references to "other enterprise" shall include any employee benefit plan; (b) references to "fines" shall include any excise taxes assessed on a person with respect to an employee benefit plan; (c) references to "serving at the request of the Corporation" shall include any service that imposes duties on, or involves services by, a person with respect to any employee benefit plan, its participants, or beneficiaries; and (d) a person who acted in good faith and in a manner such person reasonably

16

believed to be in the interest of the participants and beneficiaries of an employee benefit plan shall be deemed to have acted in a manner "not opposed to the best interest of the Corporation" for purposes of Section 145 of the DGCL.

**Section 8.9.    Contract Rights**.  The rights provided to Covered Persons pursuant to this Article VIII (a) shall be contract rights based upon good and valuable consideration, pursuant to which a Covered Person may bring suit as if the provisions of this Article VIII were set forth in a separate written contract between the Covered Person and the Corporation, (b) shall fully vest at the time the Covered Person first assumes his or her position as a director or officer of the Corporation, (c) are intended to be retroactive and shall be available with respect to any act or omission occurring prior to the adoption of this Article VIII, (d) shall continue as to a Covered Person who has ceased to be a director or officer of the Corporation, and (e) shall inure to the benefit of the Covered Person's heirs, executors and administrators.

**Section 8.10.  Severability**.  If any provision or provisions of this Article VIII shall be held to be invalid, illegal or unenforceable for any reason whatsoever:  (a) the validity, legality and enforceability of the remaining provisions of this Article VIII shall not in any way be affected or impaired thereby; and (b) to the fullest extent possible, the provisions of this Article VIII (including, without limitation, each such portion of this Article VIII containing any such provision held to be invalid, illegal or unenforceable) shall be construed so as to give effect to the intent manifested by the provision held invalid, illegal or unenforceable.

## ARTICLE IX.
## MISCELLANEOUS

**Section 9.1.    Place of Meetings**.  If the place of any meeting of stockholders, the Board or committee of the Board for which notice is required under these By-Laws is not designated in the notice of such meeting, such meeting shall be held at the principal business office of the Corporation; provided, however, if the Board has, in its sole discretion, determined that a meeting shall not be held at any place, but instead shall be held by means of remote communication pursuant to Section 9.5 hereof, then such meeting shall not be held at any place.

**Section 9.2.    Fixing Record Dates**.

(a)    In order that the Corporation may determine the stockholders entitled to notice of any meeting of stockholders or any adjournment thereof, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which record date shall not be more than 60 nor less than 10 days before the date of such meeting.  If the Board so fixes a record date, such date shall also be the record date for determining the stockholders entitled to vote at such meeting unless the Board determines, at the time it fixes such record date, that a later date on or before the date of the meeting shall be the date for making such determination.  If no record date is fixed by the Board, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the business day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the business day next preceding the day on which the meeting is held.  A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the

meeting; provided, however, that the Board may fix a new record date for determination of stockholders entitled to vote at the adjourned meeting, and in such case shall also fix as the record date for stockholders entitled to notice of such adjourned meeting the same or an earlier date as that fixed for determination of stockholders entitled to vote in accordance with the foregoing provisions of this <u>Section 9.2</u> at the adjourned meeting.

(b)     In order that the Corporation may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted, and which record date shall be not more than 60 days prior to such action.  If no record date is fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the Board adopts the resolution relating thereto.

(c)     In order that the Corporation may determine the stockholders entitled to consent to corporate action in writing without a meeting, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which date shall not be more than 10 days after the date upon which the resolution fixing the record date is adopted by the Board.  If no record date has been fixed by the Board, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board is otherwise required, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation by delivery to its registered office in the State of Delaware, its principal place of business, or the Secretary.  Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.  If no record date has been fixed by the Board and prior action by the Board is otherwise required, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be at the close of business on the day on which the Board adopts the resolution taking such prior action.

### Section 9.3.    Means of Giving Notice.

(a)     <u>Notice to Directors</u>. Whenever under applicable law, the Certificate of Incorporation or these By-Laws notice is required to be given to any director, such notice shall be given either (i) in writing and sent by hand delivery, through the United States mail, or by a nationally recognized overnight delivery service for next day delivery, or (ii) by means of facsimile telecommunication, electronic mail or other form of electronic transmission.  A notice to a director will be deemed given as follows: (i) if given by hand delivery, when actually received by the director, (ii) if sent through the United States mail, when deposited in the United States mail, with postage and fees thereon prepaid, addressed to the director at the director's address appearing on the records of the Corporation, (iii) if sent for next day delivery by a nationally recognized overnight delivery service, when deposited with such service, with fees thereon prepaid, addressed to the director at the director's address appearing on the records of the Corporation, or (iv) if sent by facsimile telecommunication, electronic mail or any other form of electronic transmission, when receipt is confirmed in writing by such director.

(b)      Notice to Stockholders.  Whenever under applicable law, the Certificate of Incorporation or these By-Laws notice is required to be given to any stockholder, such notice may be given (i) in writing and sent either by hand delivery, through the United States mail, or by a nationally recognized overnight delivery service for next day delivery, or (ii) by means of a form of electronic transmission consented to by the stockholder, to the extent permitted by, and subject to the conditions set forth in, Section 232 of the DGCL.  A notice to a stockholder shall be deemed given as follows:  (i) if given by hand delivery, when actually received by the stockholder, (ii) if sent through the United States mail, when deposited in the United States mail, with postage and fees thereon prepaid, addressed to the stockholder at the stockholder's address appearing on the stock ledger of the Corporation, (iii) if sent for next day delivery by a nationally recognized overnight delivery service, when deposited with such service, with fees thereon prepaid, addressed to the stockholder at the stockholder's address appearing on the stock ledger of the Corporation, and (iv) if given by a form of electronic transmission consented to by the stockholder to whom the notice is given and otherwise meeting the requirements set forth above, (A) if by facsimile transmission, when directed to a number at which the stockholder has consented to receive notice, (B) if by electronic mail, when directed to an electronic mail address at which the stockholder has consented to receive notice, (C) if by a posting on an electronic network together with separate notice to the stockholder of such specified posting, upon the later of (1) such posting and (2) the giving of such separate notice, and (D) if by any other form of electronic transmission, when directed to the stockholder.  A stockholder may revoke such stockholder's consent to receiving notice by means of electronic communication by giving written notice of such revocation to the Corporation.  Any such consent shall be deemed revoked if (1) the Corporation is unable to deliver by electronic transmission two consecutive notices given by the Corporation in accordance with such consent and (2) such inability becomes known to the Secretary or an Assistant Secretary or to the Corporation's transfer agent, or other person responsible for the giving of notice; provided, however, the inadvertent failure to treat such inability as a revocation shall not invalidate any meeting or other action.

(c)      Electronic Transmission.  "*Electronic transmission*" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process, including but not limited to transmission by telex, facsimile telecommunication, electronic mail, telegram and cablegram.

(d)      Notice to Stockholders Sharing Same Address.  Without limiting the manner by which notice otherwise may be given effectively by the Corporation to stockholders, any notice to stockholders given by the Corporation under any provision of the DGCL, the Certificate of Incorporation or these By-Laws shall be effective if given by a single written notice to stockholders who share an address if consented to by the stockholders at that address to whom such notice is given.  A stockholder may revoke such stockholder's consent by delivering written notice of such revocation to the Corporation.  Any stockholder who fails to object in writing to the Corporation within 60 days of having been given written notice by the Corporation of its intention to send such a single written notice shall be deemed to have consented to receiving such single written notice.

19

(e)    Exceptions to Notice Requirements.  Whenever notice is required to be given, under the DGCL, the Certificate of Incorporation or these By-Laws, to any person with whom communication is unlawful, the giving of such notice to such person shall not be required and there shall be no duty to apply to any governmental authority or agency for a license or permit to give such notice to such person.  Any action or meeting that shall be taken or held without notice to any such person with whom communication is unlawful shall have the same force and effect as if such notice had been duly given.  If the action taken by the Corporation is such as to require the filing of a certificate with the Secretary of State of Delaware, the certificate shall state, if such is the fact and if notice is required, that notice was given to all persons entitled to receive notice except such persons with whom communication is unlawful.

Whenever notice is required to be given by the Corporation, under any provision of the DGCL, the Certificate of Incorporation or these By-Laws, to any stockholder to whom (1) notice of two consecutive annual meetings of stockholders and all notices of stockholder meetings or of the taking of action by written consent of stockholders without a meeting to such stockholder during the period between such two consecutive annual meetings, or (2) all, and at least two payments (if sent by first-class mail) of dividends or interest on securities during a 12-month period, have been mailed addressed to such stockholder at such stockholder's address as shown on the records of the Corporation and have been returned undeliverable, the giving of such notice to such stockholder shall not be required.  Any action or meeting that shall be taken or held without notice to such stockholder shall have the same force and effect as if such notice had been duly given.  If any such stockholder shall deliver to the Corporation a written notice setting forth such stockholder's then current address, the requirement that notice be given to such stockholder shall be reinstated.  If the action taken by the Corporation is such as to require the filing of a certificate with the Secretary of State of Delaware, the certificate need not state that notice was not given to persons to whom notice was not required to be given pursuant to Section 230(b) of the DGCL.  The exception in subsection (1) of the first sentence of this paragraph to the requirement that notice be given shall not be applicable to any notice returned as undeliverable if the notice was given by electronic transmission.

Section 9.4.    Waiver of Notice.  Whenever any notice is required to be given under applicable law, the Certificate of Incorporation, or these By-Laws, a written waiver of such notice, signed before or after the date of such meeting by the person or persons entitled to said notice, or a waiver by electronic transmission by the person entitled to said notice, shall be deemed equivalent to such required notice.  All such waivers shall be kept with the books of the Corporation.  Attendance at a meeting shall constitute a waiver of notice of such meeting, except where a person attends for the express purpose of objecting to the transaction of any business on the ground that the meeting was not lawfully called or convened.

Section 9.5.    Meeting Attendance via Remote Communication Equipment.

(a)    Stockholder Meetings.  If authorized by the Board in its sole discretion, and subject to such guidelines and procedures as the Board may adopt, stockholders and proxyholders not physically present at a meeting of stockholders may, by means of remote communication:

(i)    participate in a meeting of stockholders; and

20

(ii)    be deemed present in person and vote at a meeting of stockholders, whether such meeting is to be held at a designated place or solely by means of remote communication, provided that (A) the Corporation shall implement reasonable measures to verify that each person deemed present and permitted to vote at the meeting by means of remote communication is a stockholder or proxyholder, (B) the Corporation shall implement reasonable measures to provide such stockholders and proxyholders a reasonable opportunity to participate in the meeting and to vote on matters submitted to the stockholders, including an opportunity to read or hear the proceedings of the meeting substantially concurrently with such proceedings, and (C) if any stockholder or proxyholder votes or takes other action at the meeting by means of remote communication, a record of such votes or other action shall be maintained by the Corporation.

(b)    Board Meetings.    Unless otherwise restricted by applicable law, the Certificate of Incorporation, or these By-Laws, members of the Board or any committee thereof may participate in a meeting of the Board or any committee thereof by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other.   Such participation in a meeting shall constitute presence in person at the meeting, except where a person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting was not lawfully called or convened.

**Section 9.6.    Dividends**.    The Board may from time to time declare, and the Corporation may pay, dividends (payable in cash, property or shares of the Corporation's capital stock) on the Corporation's outstanding shares of capital stock, subject to applicable law and the Certificate of Incorporation.

**Section 9.7.    Reserves**.    The Board may set apart out of the funds of the Corporation available for dividends a reserve or reserves for any proper purpose and may abolish any such reserve.

**Section 9.8.    Contracts and Negotiable Instruments**.    Except as otherwise provided by applicable law, the Certificate of Incorporation or these By-Laws, any contract, bond, deed, lease, mortgage or other instrument may be executed and delivered in the name and on behalf of the Corporation by such officer or officers or other employee or employees of the Corporation as the Board may from time to time authorize.   Such authority may be general or confined to specific instances as the Board may determine.   The Chairman of the Board, the President or any Vice President may execute and deliver any contract, bond, deed, lease, mortgage or other instrument in the name and on behalf of the Corporation.   Subject to any restrictions imposed by the Board, the Chairman of the Board, President or any Vice President may delegate powers to execute and deliver any contract, bond, deed, lease, mortgage or other instrument in the name and on behalf of the Corporation to other officers or employees of the Corporation under such person's supervision and authority, it being understood, however, that any such delegation of power shall not relieve such officer of responsibility with respect to the exercise of such delegated power.

**Section 9.9.  Fiscal Year**.  The fiscal year of the Corporation shall be fixed by the Board.

**Section 9.10.  Seal**.  The Board may adopt a corporate seal which shall be in such form as the Board determines.  The seal may be used by causing it or a facsimile thereof to be impressed, affixed or otherwise reproduced.

**Section 9.11.  Books and Records**.  The books and records of the Corporation may be kept within or outside the State of Delaware at such place or places as may from time to time be designated by the Board.

**Section 9.12.  Resignation**.  Any director, committee member or officer may resign by giving notice thereof in writing or by electronic transmission to the Chairman of the Board, the President or the Secretary.  The resignation shall take effect at the time specified therein, or at the time of receipt of such notice if no time is specified or the specified time is earlier than the time of such receipt.  Unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

**Section 9.13.  Surety Bonds**.  Such officers, employees and agents of the Corporation (if any) as the Chairman of the Board, President or the Board may direct, from time to time, shall be bonded for the faithful performance of their duties and for the restoration to the Corporation, in case of their death, resignation, retirement, disqualification or removal from office, of all books, papers, vouchers, money and other property of whatever kind in their possession or under their control belonging to the Corporation, in such amounts and by such surety companies as the Chairman of the Board, President or the Board may determine.  The premiums on such bonds shall be paid by the Corporation and the bonds so furnished shall be in the custody of the Secretary.

**Section 9.14.  Securities of Other Corporations**.  Powers of attorney, proxies, waivers of notice of meeting, consents in writing and other instruments relating to securities owned by the Corporation may be executed in the name of and on behalf of the Corporation by the Chairman of the Board, President or any Vice President.  Any such officer may, in the name of and on behalf of the Corporation, take all such action as any such officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation in which the Corporation may own securities, or to consent in writing, in the name of the Corporation as such holder, to any action by such corporation, and at any such meeting or with respect to any such consent shall possess and may exercise any and all rights and power incident to the ownership of such securities and which, as the owner thereof, the Corporation might have exercised and possessed.  The Board may from time to time confer like powers upon any other person or persons.

**Section 9.15.  Forum for Adjudication of Disputes**.  Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of a fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action asserting a claim arising pursuant to any provision of

22

the DGCL, or (iv) any action asserting a claim governed by the internal affairs doctrine.  Any person or entity purchasing or otherwise acquiring any interest in shares of capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this <u>Section 9.15</u>.

      **Section 9.16.  Amendments**.  The Board shall not have the power to adopt, amend, alter or repeal the By-Laws.  The By-Laws may be adopted, amended, altered or repealed only with the consent of the stockholders holding two-thirds of the outstanding Common Stock.

*     *     *     *     *

## **EXHIBIT 6.20**

### **Retained Causes of Action**

**EXHIBIT 6.20**

**RETAINED CAUSES OF ACTION**[1]

Article 6.20 of the Plan provides that, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors shall retain and may (but are not required to) enforce all rights to commence and pursue any and all Causes of Action that are not (a) released pursuant to Article 11.5 of the Plan or an order of the Bankruptcy Court or (b) GUC/Litigation Trust Causes of Action, whether arising before or after the Petition Date, including any actions or categories of actions specifically enumerated in this Exhibit 6.20, and such Causes of Action shall vest in the Reorganized Debtors as of the Effective Date.

"GUC/Litigation Trust Causes of Action" means all Causes of Action of the Debtors' Estates as of the Effective Date, including all Estate Avoidance Actions (other than Avoidance Actions against the Yieldcos and Avoidance Actions against the Prepetition First Lien Secured Parties and the Second Lien Creditors), to the extent such Causes of Action are not released, or settled with the consent of the Creditors' Committee, pursuant to Article 11.5 of the Plan or released or settled pursuant to an Order of the Bankruptcy Court (including the order approving the D&O Settlement Agreement [Docket No. 3453] (the "D&O Settlement Approval Order")) or the Committee/BOKF Plan Settlement Term Sheet.

For the avoidance of doubt, pursuant to the D&O Settlement Agreement and D&O Settlement Approval Order, the only GUC/Litigation Trust Causes of Action that are preserved with respect to the Individual Defendants (as defined in the D&O Settlement Agreement) are preference actions that may be brought under section 547 of the Bankruptcy Code.   To the extent any provision in the Plan (including this Plan Supplement) is inconsistent with the terms of the D&O Settlement Agreement or the D&O Settlement Approval Order, the D&O Settlement Agreement or the D&O Settlement Approval Order, as applicable, shall control.

**No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against them. The Debtors and Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided in the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the Debtors and Reorganized Debtors expressly reserve all Causes of Action for later adjudication.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Amended Joint Plan of Reorganization of SunEdison, Inc. and its Debtor Affiliates, filed on June 12, 2017 [Docket No. 3314].

Any Causes of Action pursuant to which the Reorganized Debtors seek to recover proceeds from Earnout Assets, Residual Assets, or Repatriated Cash shall be preserved and retained, and shall remain with the Reorganized Debtors and shall not be transferred to the GUC/Litigation Trust.

For the avoidance of doubt, the consent of the Reorganized Debtors shall be required to bring, settle, release, compromise, or enforce GUC/Litigation Trust Causes of Action (or decline to do any of the foregoing) to the extent such GUC/Litigation Trust Causes of Action interfere with (i) the Reorganized Debtors' collection of Earnout Proceeds, Residual Assets Proceeds, or Repatriated Cash or (ii) the continuing operations of TERP.

## **EXHIBIT 7.1**

**Form of GUC/Litigation Trust Agreement**

This Litigation Trust Agreement (the "**Litigation Trust Agreement**"), dated as of _____, 2017 (the "**Effective Date**"),[1] by and among SunEdison, Inc. and certain of its affiliates (collectively, the "**Debtors**" and together with their non-Debtor affiliates, the "**Company**") and Drivetrain, LLC, as the trustee (the "**Original Trustee**"), is executed in order to establish a litigation trust (the "**Litigation Trust**") in connection with (i) the Committee Settlement incorporated as Annex II (the "**Committee Settlement**") to the *Order (I) Authorizing Debtors to (a) Obtain Senior Secured, Superpriority, Replacement Postpetition Financing Pursuant to Bankruptcy Code Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e), and (b) Utilize Cash Collateral Pursuant to Bankruptcy Code Section 363, (II) Authorizing Use of Proceeds to Repay Existing Senior Secured Superpriority, Postpetition Financing, and (III) Granting Adequate Protection to Prepetition Secured Parties Pursuant to Bankruptcy Code Sections 361, 362, 363 and 364* [ECF No. 2880] (together with all exhibits and annexes thereto, including, without limitation, the Committee Settlement, the "**Final DIP Order**") and (ii) the *First Amended Joint Plan of Reorganization of SunEdison Inc. and its Debtor Affiliates* [ECF No. 3314—Exhibit A to the Disclosure Statement] (as amended, the "**Plan**"), including the *Term Sheet for Settlement Among Debtors, Tranche B Roll Up Lenders/Steering Committee of Prepetition Second Lien Lenders and Noteholders, the Official Committee of Unsecured Creditors, and BOKF, N.A.* incorporated therein [ECF No. 3314—Exhibit 6.1 to the Plan] (the "**Global Settlement Term Sheet**"). Capitalized terms used in this Litigation Trust Agreement and not otherwise defined shall have the meanings ascribed to them in the Plan.

WITNESSETH

WHEREAS, commencing on April 21, 2016 and continuing from time to time thereafter, each Debtor commenced a case (collectively, the "**Chapter 11 Cases**") by filing a petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the Southern District of New York (the "**Bankruptcy Court**") which Chapter 11 Cases are jointly administered under case no. 16-10992 (SMB);

WHEREAS, on April 29, 2016, the United States Trustee for the Southern District of New York appointed an official committee of unsecured creditors (as may be reconstituted from time to time, the "**Creditors' Committee**") in the Chapter 11 Cases;

WHEREAS, on November 28, 2016, the Debtors funded $10,000,000 into a segregated bank account with U.S. Bank National Association to be controlled by the Debtors for the benefit of the general unsecured creditors pending the establishment of the Litigation Trust;

WHEREAS, on May 1, 2017, the Bankruptcy Court entered the Final DIP Order, including the Committee Settlement attached thereto;

WHEREAS, on June 9, 2017, the Debtors, the Tranche B Roll Up Lenders/Steering Committee of Prepetition Second Lien Lenders and Noteholders (the "**Ad Hoc Group**"), the Creditors' Committee, and BOKF, N.A. ("**BOKF**") executed the Global Settlement Term Sheet;

---

[1] NTD: This draft contemplates that parties will enter into this agreement on the same day as the Effective Date for the Plan.

WHEREAS, on June 11, 2017, the Debtors filed the Plan;

WHEREAS, on [July 6, 2017], the Debtors filed the [*Plan Supplement*] [ECF No. [NUMBER]] (the "**Plan Supplement**");

WHEREAS, on [July 20, 2017], the Bankruptcy Court entered an order confirming the Plan [ECF No. [NUMBER]] (the "**Confirmation Order**");

WHEREAS, the Litigation Trust is created pursuant to, and to effectuate certain provisions of, the Final DIP Order, the Committee Settlement contained therein, the Plan, and the Global Settlement Term Sheet, pursuant to which the Litigation Trust will hold the Litigation Trust Assets (as defined herein);

WHEREAS, the Litigation Trust is organized for the sole purpose of liquidating the Litigation Trust Assets in an expeditious but orderly manner for the benefit of the Litigation Trust Beneficiaries, including the investigation and prosecution of the Litigation Trust Causes of Action (as defined herein), with no objective to continue or engage in the conduct of a trade or business, except, to the extent reasonably necessary to effectuate, and consistent with, the liquidating purpose of the Litigation Trust;

WHEREAS, the Litigation Trust is intended to be classified for U.S. federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and thus as a "grantor trust" within the meaning of Sections 671 through 677 of the Internal Revenue Code of 1986, as amended (the "**IRC**"), with the Litigation Trust Beneficiaries treated for U.S. federal income tax purposes as the grantors and owners of their respective shares of the Litigation Trust Assets (as defined herein), other than with respect to any assets allocable to, or retained on account of, Disputed Claims (*i.e.*, the GUC Disputed Claims Reserve); and

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein, in the Final DIP Order, the Committee Settlement, the Plan, and the Global Settlement Term Sheet, the Debtors or, from and after the Effective Date, any successor thereto, by merger, consolidation, or otherwise (the "**Reorganized Debtors**"), the Creditors' Committee and the Litigation Trustee (as defined herein) agree as follows:

ARTICLE 1

ESTABLISHMENT OF LITIGATION TRUST

1.1    Establishment of Litigation Trust; Appointment of Original Trustee and Litigation Trust Oversight Board.

(a)    Pursuant to the Final DIP Order, the Committee Settlement contained therein, the Plan, and the Global Settlement Term Sheet, the Debtors and the Creditors' Committee hereby establish a trust which shall be known as the "SunEdison Litigation Trust" on behalf of holders of Class A Litigation Trust Interests (including and subject to the rights of the Convertible Senior Notes Indenture Trustee) and Class B Litigation Trust Interests (each as

2

defined herein, and collectively, the "**Litigation Trust Beneficiaries**") in accordance with the Plan and the Global Settlement Term Sheet.

(b)    The Original Trustee is hereby appointed as trustee of the Litigation Trust and agrees to accept and hold the Litigation Trust Assets in trust for the Litigation Trust Beneficiaries subject to the terms of this Litigation Trust Agreement, the Plan, and the Confirmation Order.  The Original Trustee and each successor trustee serving from time-to-time duly appointed hereunder (the "**Litigation Trustee**") shall have all the rights, powers, and duties set forth herein.  The term of the Original Trustee shall be for three (3) years, subject to an extension of such term by a majority vote of the Litigation Trust Oversight Board (as defined herein).

(c)    A board created and selected by the Creditors' Committee (the "**Litigation Trust Oversight Board**") is hereby appointed to oversee the Litigation Trust and the activities of the Litigation Trustee.  The Litigation Trust Oversight Board shall consist of three (3) members and each successor member serving from time-to-time duly appointed hereunder (each, a "**Litigation Trust Oversight Board Member**"), one of whom shall be the Litigation Trustee and a majority of whom shall be "United States persons" within the meaning of Section 7701(a)(30) of the IRC, and shall have all the rights, powers, and duties set forth herein.  The term of each Litigation Trust Oversight Board Member, other than the Litigation Trustee (collectively, such other Litigation Trust Oversight Board Members, the "**Non-Trustee Oversight Board Members**") shall be five (5) years, subject to an extension of such term by a majority vote of the Litigation Trust Oversight Board if the term of the Litigation Trust is extended beyond its original five (5) year term.

1.2    Transfer of Assets and Rights to Litigation Trustee.

(a)    On the Effective Date, the Debtors, pursuant to terms of the Global Settlement Term Sheet, the Plan, and the Confirmation Order, hereby transfer, assign and deliver to the Litigation Trust, without recourse, all of their respective rights, title, and interests, free and clear of any and all Liens, Claims (other than Claims in the nature of setoff or recoupment), encumbrances or interests of any kind in such property of any other Person or Entity, in and to:

(i) all Causes of Action of the Debtors' Estates as of the Effective Date, including all Estate Avoidance Actions (other than Avoidance Actions against the YieldCos and Avoidance Actions against the Prepetition First Lien Secured Parties and the Second Lien Creditors), to the extent such Causes of Action are not released or settled with the consent of the Creditors' Committee, pursuant to Article 11.5 of the Plan or released or settled pursuant to an Order of the Bankruptcy Court (including the order approving the D&O Settlement Agreement [Docket No. 3453] (the "**D&O Settlement Approval Order**"))[2] or the Global Settlement Term

---

[2] For the avoidance of doubt, pursuant to the D&O Settlement Agreement and the D&O Settlement Approval Order, the only Estate Causes of Action against the Individual Defendants (as defined in the D&O Settlement Agreement) that are preserved for transfer to the Litigation Trust are preference actions that may be brought under section 547 of the Bankruptcy Code.  To the extent any provision in the Plan (including this Litigation Trust Agreement and the other exhibits to the Plan Supplement) is inconsistent with the terms of the D&O Settlement Agreement or the D&O Settlement Approval Order, the D&O Settlement Agreement or the D&O Settlement Approval Order, as applicable, shall control.

Sheet prior to the Effective Date, including the Causes of Action set forth on **Exhibit A** (the "**Litigation Trust Causes of Action**"); and

(ii) Cash of $57,500,000.00 representing the sum of (A) the initial funding for the Litigation Trust as contemplated by the Committee Settlement; (B) proceeds allocable from the D&O Insurance in the amount of $32,000,000.00, pursuant to the terms of the D&O Settlement Agreement and the D&O Settlement Approval Order; and (C) the settlement of certain Avoidance Actions in connection with the YieldCo Settlement Motion; plus at least $5,000,000.00 in Cash on account of Professional Fee Reductions (the "**Voluntary Professional Fee Reduction Amount**"), as well as all additional Voluntary Professional Fee Reductions that exceed the Voluntary Professional Fee Reduction Amount (collectively, the "**Litigation Trust Initial Cash Assets**", and together with the Litigation Trust Causes of Action, the proceeds of the Litigation Trust Causes of Action, and the Net Avoidance Action Proceeds (as defined herein), the "**Litigation Trust Assets**").

(b)     On the Effective Date, the Litigation Trust shall assume responsibility for the Claims Reconciliation Process (as defined in Annex I of the Global Settlement Term Sheet), including with respect to the initiation or continuance of claims objection prosecution. Copies of the Debtors' books and records that relate to claims objections shall be made available to the Litigation Trust promptly following the Effective Date. On and after the Effective Date, the Reorganized Debtors shall use commercially reasonable efforts to cooperate with the Litigation Trust in connection with due diligence and other reasonable assistance regarding the prosecution of the Claims Reconciliation Process and the Litigation Trust Causes of Action as may be reasonably requested by the Litigation Trust, including with respect to providing all relevant documents, evidence, and existing information in their possession or in the possession of their advisors or representatives on the Effective Date. Following the Effective Date, if the actual, reasonable, and documented out-of-pocket costs and expenses of the Reorganized Debtors (including fees and expenses of outside third-parties and/or firms; but not including charges for salaried employees of the Reorganized Debtors) incurred in carrying out the services described in this paragraph and/or Annex 1 of the Global Settlement Term Sheet exceed $250,000 in the aggregate (the amount exceeding $250,000 defined as "**Excess Expenses**"), the Litigation Trust shall promptly reimburse the Reorganized Debtors for the Excess Expenses. The parties shall agree in writing to the scope of work and expected charges regarding requests by the Litigation Trust that are expected to result in the incurrence of out-of-pocket costs prior to the Reorganized Debtors' performance of such tasks or incurrence of such costs and expenses. The Litigation Trustee and/or the Litigation Trust Oversight Board shall raise any disputes relating to a reimbursement request within thirty (30) days of receipt thereof, and the Bankruptcy Court shall resolve any such disputes that are not resolved among the parties.

(c)     To the extent any Litigation Trust Assets cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Litigation Trust Assets shall be deemed to have been retained by the Debtors and the Litigation Trustee shall be deemed to have been designated as a representative of the Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Litigation Trust Assets on behalf of the Debtors. Notwithstanding the foregoing, all net proceeds of such Litigation Trust Assets shall be transferred to the Litigation

Trust to be distributed to the Litigation Trust Beneficiaries consistent with the Plan and the Global Settlement Term Sheet.

(d) The transfer of the Liquidating Trust Assets shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other tax, pursuant to section 1146(a) of the Bankruptcy Code.

(e) The Litigation Trust Trustee will seek to preserve and protect all applicable privileges and work-product relating to the Claims Reconciliation Process and the Litigation Trust Causes of Action, including but not limited to any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral).  The Litigation Trust Trustee's receipt of such information shall not waive any privileges and all such privileges are preserved.

1.3    Title to Litigation Trust Assets.

Transfer of the Litigation Trust Assets to the Litigation Trust shall be made for the benefit of the Litigation Trust Beneficiaries to the extent such Litigation Trust Beneficiaries are entitled to beneficial interests therein (the "**Litigation Trust Interests**").  The Litigation Trust Interests shall be comprised of two tranches of interests, which will be provided on the Effective Date to (a) holders of General Unsecured Claims (the "**Class A Litigation Trust Interests**") and (b) holders of Second Lien Claims (the "**Class B Litigation Trust Interests**").  The Litigation Trust Interests shall have the respective rights to share in the Litigation Trust Assets and the governance rights set forth on **Exhibit B** hereto (the "**Litigation Trust Interests Overview**").  Upon the transfer of the Litigation Trust Assets, the Litigation Trust shall succeed to all of the right, title, and interest of the Debtors in and to the Litigation Trust Assets and the Debtors shall not have any further interest in or with respect to the Litigation Trust Assets or the Litigation Trust.

1.4    Nature and Purpose of Litigation Trust.

(a)    Purpose.  The Litigation Trust is organized and established as a trust, subject to the terms and conditions contained herein, in the Final DIP Order, the Plan, and the Global Settlement Term Sheet, for the sole purpose of liquidating the Litigation Trust Assets in an expeditious but orderly manner for the benefit of the Litigation Trust Beneficiaries, including the investigation and prosecution of the Litigation Trust Causes of Action, with no objective to continue or engage in the conduct of a trade or business, except, to the extent reasonably necessary to effectuate, and consistent with, the liquidating purpose of the Litigation Trust.

(b)    Fees and Expenses.  From and after the Effective Date, the Litigation Trust shall pay fees and expenses of professionals retained by the Litigation Trustee incurred in the investigation and prosecution of Litigation Trust Causes of Action ("**Investigation/Prosecution Fees and Expenses**") subject in all respects to the procedures and approvals to be established by the Litigation Trust Oversight Board (the "**Approval Procedures**").

(c)    Actions of Litigation Trustee.  Subject to Section 3.8 hereof, the Litigation Trustee shall, in an expeditious but orderly manner, liquidate and convert to cash the Litigation

Trust Assets, make timely distributions in accordance with <u>Article 6</u> of this Litigation Trust Agreement, and not unduly prolong the duration of the Litigation Trust. The liquidation of the Litigation Trust Assets may be accomplished through the prosecution, compromise and settlement, abandonment, dismissal or assignment of any or all claims, rights or causes of action, or otherwise. With respect to Litigation Trust Assets involving asserted Claims of less than $1,000,000, the Litigation Trustee shall have the absolute right to pursue, settle and compromise or not pursue any and all such Litigation Trust Assets as it determines is in the best interests of the Litigation Trust Beneficiaries and consistent with the purposes of the Litigation Trust. With respect to Litigation Trust Assets involving asserted Claims of $1,000,000 or more, the Litigation Trustee shall have the right to pursue, settle and compromise or not pursue any and all such Litigation Trust Assets as it determines is in the best interests of the Litigation Trust Beneficiaries, and consistent with the purposes of the Litigation Trust, subject to approval by the majority vote of the Litigation Trust Oversight Board. The Litigation Trustee shall have no liability for the outcome of any such decision except for any damages caused by gross negligence, willful misconduct, or knowing violation of law.

(d)    <u>Relationship</u>. This Litigation Trust Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust. The Litigation Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Litigation Trustee or the Litigation Trust Beneficiaries, or any of them, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint ventures. The relationship of the Litigation Trust Beneficiaries to the Litigation Trust and the Litigation Trustee shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Litigation Trust Agreement.

1.5    <u>Incorporation of the Plan, Global Settlement Term Sheet, and Committee Settlement</u>.

Both (i) the Plan (including the Global Settlement Term Sheet) and (ii) to the extent not superseded by the Plan (including the Global Settlement Term Sheet), the Final DIP Order (including the Committee Settlement) are hereby incorporated into this Litigation Trust Agreement and made a part hereof by this reference; *provided, however*, to the extent that there is a conflict between the provisions of the Litigation Trust Agreement and the Final DIP Order (including the Committee Settlement), the Plan (including the Global Settlement Term Sheet), or the Confirmation Order, the terms of the Confirmation Order shall control.

1.6    <u>Appointment as Representative</u>.

Upon the Effective Date, the Litigation Trustee is appointed as the duly appointed representative of the Debtors and their estates with respect to the Litigation Trust Assets, and, as such, upon such appointment, the Litigation Trustee succeeds to all of the rights and powers of a trustee in bankruptcy with respect to prosecution of the Litigation Trust Assets for the benefit of the Litigation Trust Beneficiaries.

1.7 <u>Reservation of Rights Regarding Litigation Trust Causes of Action</u>.

**No Entity may rely on the absence of a specific reference in the Plan or the Plan Supplement to any Litigation Trust Cause of Action against them as any indication that the Litigation Trust will not pursue any and all available Litigation Trust Causes of Action against them. The Litigation Trust expressly reserves all rights to prosecute any and all Litigation Trust Causes of Action against any Entity, except as otherwise provided in the Plan or an order of the Bankruptcy Court.** Unless a specific Litigation Trust Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the Litigation Trust expressly reserves such Litigation Trust Causes of Action for later adjudication.

ARTICLE 2

LITIGATION TRUST INTERESTS

2.1 <u>Allocation of Litigation Trust Interests</u>.

As of the Effective Date, the Litigation Trust shall be authorized to make distributions of Litigation Trust Interests to Litigation Trust Beneficiaries in accordance with the Plan (including the Global Settlement Term Sheet) and the Confirmation Order. The distribution of the Litigation Trust Interests shall be accomplished as and when determined by the Litigation Trustee in consultation with the Litigation Trust Oversight Board. The aggregate number and face value of the Class A Litigation Trust Interests to be distributed to holders of allowed General Unsecured Claims on a *pro rata* basis or Class B Litigation Trust Interests to be distributed to holders of allowed Second Lien Claims on a *pro rata* basis shall be determined by the Litigation Trustee, in accordance with the Plan (including the Global Settlement Term Sheet) and the Confirmation Order.

2.2 <u>Interests Beneficial Only</u>.

The ownership of a Litigation Trust Interest shall not entitle any Litigation Trust Beneficiary to any title in or to the assets of the Litigation Trust as such (which title shall be vested in the Litigation Trustee) or to any right to call for a partition or division of the assets of the Litigation Trust or to require an accounting.

2.3 <u>Evidence of Beneficial Interests</u>.

Subject to <u>Section 2.5(c)</u> hereof, the ownership of Litigation Trust Interests when issued initially shall be represented by the recording of such ownership in an electronic book-entry system ("**Book Entry System**") maintained by either the Litigation Trust or an agent of the Litigation Trust. A Litigation Trust Beneficiary shall be deemed the "holder of record" (hereinafter "<u>holder</u>") of the Litigation Trust Interest(s) recorded in its name for purposes of all applicable United States federal and state laws, rules and regulations. The Litigation Trustee shall, upon the written request of a holder of a Litigation Trust Interest, provide reasonably adequate documentary evidence of such holder's Litigation Trust Interest, as indicated in the Book Entry System. The expense of providing such documentation shall be borne by the requesting holder.

2.4    <u>Securities Law Registration</u>.

It is intended that the Litigation Trust Interests shall not constitute "securities."  If the Litigation Trustee determines, with the advice of counsel, that the Litigation Trust is required to comply with registration and reporting requirements of the Securities Exchange Act of 1934, as amended (the "**Exchange Act**"), or the Investment Company Act of 1940, as amended (the "**Investment Company Act**"), then the Litigation Trustee shall take any and all actions to comply with such registration and reporting requirements, if any, and file periodic reports with the Securities and Exchange Commission (the "**SEC**").  Notwithstanding the foregoing procedure, nothing herein shall be deemed to preclude the Litigation Trustee from amending this Litigation Trust Agreement to make such changes as are deemed necessary or appropriate by the Litigation Trustee, with the advice of counsel, to ensure that the Litigation Trust is not subject to registration or reporting requirements of the Exchange Act, or the Investment Company Act.

2.5    <u>Transferability; Records</u>.

(a)    The Litigation Trust Interests shall be freely negotiable and transferable to the extent provided herein and permitted by applicable securities laws.

(b)    Pursuant to the Book Entry System, the Litigation Trust shall maintain, or cause an agent of the Litigation Trust to maintain, a copy of each assignment instrument delivered to it from time to time and a register (which may be electronic) for the recordation of the names and addresses of the Litigation Trust Beneficiaries, and the amount and class of their respective Litigation Trust Interests from time to time.  Any transfer of a Litigation Trust Interest shall not be effective unless and until such transfer is recorded in the Book Entry System in accordance with the terms herein.  Subject to <u>Section 2.5(c)</u>, the entries in the Book Entry System shall be conclusive absent manifest error, and the Litigation Trust and the Litigation Trustee shall treat each person whose name is recorded in the Book Entry System pursuant to the terms hereof as the owner of Litigation Trust Interests indicated therein for all purposes of this Litigation Trust Agreement, notwithstanding notice to the contrary.

(c)    Notwithstanding any provision to the contrary, the Litigation Trustee shall not recognize, and shall not record, any transfer of Litigation Trust Interests unless and until sufficient information regarding the sale and transferee (as reasonably determined by the Litigation Trustee) is provided using the litigation trust interest transfer form (attached hereto as **Exhibit C**, the "**Litigation Trust Interest Transfer Form**") and such Litigation Trust Interest Transfer Form and any other information requested by the Litigation Trustee is received and approved by the Litigation Trustee, including, without limitation, any tax information (including, without limitation, social security numbers or other tax identification numbers) and completed Internal Revenue Service ("**IRS**") forms as the Litigation Trustee, in its sole discretion, deems necessary or appropriate.

(d)    Transfers of Litigation Trust Interests shall be recorded on the Book Entry System in accordance with such practices and procedures as shall be prescribed by the Litigation Trustee under the supervision of the Litigation Trust Oversight Board, provided that the Litigation Trustee need not reflect any transfer and will give notice to such holder that no transfer has been recognized in the event the Litigation Trustee reasonably believes that such

transfer (i) would constitute a violation of applicable laws or (ii) would cause the Litigation Trust to be required to register Litigation Trust Interests under, and/or to become subject to the reporting requirements of Sections 13 or 15(d) of the Exchange Act.

ARTICLE 3

LITIGATION TRUSTEE

3.1    Net Avoidance Action Proceeds.

All proceeds recovered by the Litigation Trust (or for the benefit of unsecured creditors) on account of Avoidance Actions (as defined in the Plan), net of fees and expenses expended to prosecute such Avoidance Actions (including fees paid on a contingency arrangement, any expenses of prosecuting the Litigation Trust Causes of Action or administering the Litigation Trust, including, without limitation, the costs associated with preparation of the Litigation Trust Reports (as defined below), and any taxes imposed on or with respect to such proceeds, all of which shall be deducted prior to any distribution of Net Avoidance Action Proceeds), other than proceeds from the Avoidance Actions against the YieldCos that are settled in connection with the YieldCo Avoidance Allocation, whether such Net Avoidance Actions Proceeds are recovered pursuant to the successful prosecution or settlement of such Avoidance Actions (the "**Net Avoidance Action Proceeds**") shall be added to the Litigation Trust Assets and held as part thereof (and to which title shall be vested in the Litigation Trustee).

3.2    Collection of Income.

The Litigation Trustee shall collect all income earned with respect to the Litigation Trust Assets, which shall thereupon become Litigation Trust Assets and held as a part of the Litigation Trust (and which title shall be vested in the Litigation Trust).

3.3    Funding and Payment of Litigation Trust Expenses.

(a)    The Litigation Trustee shall maintain a litigation expense fund (the "**Litigation Expense Fund**") in an amount (i) as is reasonably necessary to meet contingent liabilities and to maintain the value of the assets of the Litigation Trust during litigation, (ii) to pay reasonable administrative expenses (including but not limited to, the costs and expenses of the Litigation Trustee (including reasonable fees, costs, and expenses of professionals), any taxes imposed on the Litigation Trust or fees and expenses in connection with, arising out of or related to the Litigation Trust Assets), and (iii) to satisfy other liabilities incurred or assumed by the Litigation Trust (or to which the assets are otherwise subject) in accordance with this Litigation Trust Agreement.  The amounts held in the Litigation Expense Fund shall be subject to [periodic] review by the Litigation Trust Oversight Board.

(b)    The Litigation Expense Fund shall initially be funded from the Litigation Trust Initial Cash Assets and, thereafter, from any other Litigation Trust Assets.  Accordingly, the Litigation Trustee may retain from the Net Avoidance Action Proceeds and proceeds of other Litigation Trust Causes of Action and add to the Litigation Expense Fund such amounts as the Litigation Trustee deems reasonable and appropriate to ensure that the Litigation Expense Fund will be adequate to meet the expenses and liabilities described in subsection (a) of this Section.

9

3.4    Distributions.

The Litigation Trustee shall distribute the net distributable assets of the Litigation Trust to the Litigation Trust Beneficiaries in accordance with the provisions of Article 6.

3.5    Tenure, Removal, and Replacement of Litigation Trustee.

(a)    The Litigation Trustee shall serve for three (3) years, until resignation and the appointment of a successor pursuant to subsection (b) below, removal pursuant to subsection (c) below, or death (if applicable).  The Litigation Trust Oversight Board shall be authorized to extend the term of the Litigation Trustee.

(b)    The Litigation Trustee may resign by giving not less than sixty (60) days' prior written notice to the Litigation Trust Oversight Board, with a copy to counsel for the holders of Class B Litigation Trust Interests.  Such resignation shall become effective on the later to occur of: (i) the day specified in such notice and (ii) the appointment of a successor trustee as provided herein and the acceptance by such successor trustee of such appointment.  If a successor trustee is not appointed or does not accept its appointment within sixty (60) days following delivery of notice of resignation, the Litigation Trustee may file a motion with the Bankruptcy Court, upon notice and hearing, for the appointment of a successor trustee.

(c)    The Litigation Trustee may be removed by the affirmative vote of the majority of Litigation Trust Oversight Board by written consent or at the meeting of the Litigation Trust Oversight Board called for the purpose of removing the Litigation Trustee.  Such removal shall become effective on the date action is taken by the Litigation Trust Oversight Board.

(d)    In the event of the death (in the case of a Litigation Trustee that is a natural person), dissolution (in the case of a Litigation Trustee that is not a natural person), resignation pursuant to Section 3.5(b) hereof, or removal of the Litigation Trustee pursuant to Section 3.5(c) hereof, the Litigation Trust Oversight Board may appoint a successor Litigation Trustee subject to the requirement that any successor Litigation Trustee be a "United States person" within the meaning of Section 7701(a)(30) of the IRC.  Such appointment shall specify the date on which such appointment shall be effective.  Notice of the appointment of a successor Litigation Trustee shall be filed with the Bankruptcy Court.

(e)    Immediately upon the appointment of any successor Litigation Trustee, all rights, powers, duties, authority, and privileges of the predecessor Litigation Trustee hereunder shall be vested in and undertaken by the successor trustee without any further act.  The successor Litigation Trustee shall not be liable personally for any act of the predecessor Litigation Trustee.

(f)    Upon the appointment of a successor Litigation Trustee, the predecessor Litigation Trustee (or the duly appointed legal representative of a deceased Litigation Trustee) shall, if applicable, when requested in writing by the successor Litigation Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor trustee upon the trust herein expressed, without recourse to the predecessor Litigation Trustee, all the estates, properties, rights, powers and trusts of such predecessor Litigation Trustee, and shall duly assign, transfer, and deliver to such successor Litigation Trustee all property and money held hereunder,

10

and all other assets and documents relating to the Litigation Trust, the Litigation Trust Assets, or the Litigation Trust Interests then in its possession and held hereunder.

(g)    The appointment of a successor Litigation Trustee will be evidenced by the successor Litigation Trustee's filing with the Bankruptcy Court of a notice of appointment, which notice will include the name, address, and telephone number of the successor Litigation Trustee.

3.6    Acceptance of Appointment by Successor Litigation Trustee.

Any successor Litigation Trustee appointed hereunder shall execute an instrument accepting such appointment and assuming all of the obligations of the predecessor Litigation Trustee hereunder and thereupon the successor Litigation Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts, and duties of its predecessor in the Litigation Trust hereunder with like effect as if originally named herein.

3.7    Role of Litigation Trustee.

In furtherance of and consistent with the purpose of the Litigation Trust, the Litigation Trustee shall have the power to (i) prosecute, compromise and settle, abandon, assign, or dismiss for the benefit of the Litigation Trust Beneficiaries all claims, rights, and causes of action transferred to the Litigation Trust (whether such suits are brought in the name of the Litigation Trustee or otherwise), and (ii) otherwise perform the functions and take the actions provided or permitted in this Litigation Trust Agreement, subject to the terms and conditions contained herein (including approval by the majority of the Litigation Trust Oversight Board for actions related to Litigation Trust Assets involving asserted Claims of $1,000,000 or more, as described in Section 2.1(c)). In all circumstances, the Litigation Trustee shall act in the best interests of all the Litigation Trust Beneficiaries and in furtherance of the purpose of the Litigation Trust.

3.8    Authority of Litigation Trustee.

Subject to any limitations contained herein, in the Plan, the Confirmation Order, or the Global Settlement Term Sheet, the Litigation Trustee shall have the following powers and authorities:

(a)    hold legal title to any and all rights of the holders of the Litigation Trust Interests in or arising from the Litigation Trust Assets, including, without limitation, collecting and receiving any and all money and other property belonging to the Litigation Trust and the right to vote any claim or interest relating to a Litigation Trust Asset in a case under the Bankruptcy Code and receive any distribution thereon;

(b)    perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code, including, without limitation, commencing, prosecuting or settling causes of action, enforcing contracts or asserting claims, defenses, offsets and privileges, but only as such duties and powers relate to the Litigation Trust Assets;

11

(c)     protect and enforce the rights to the Litigation Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(d)     obtain (with the Litigation Expense Fund) reasonable insurance coverage with respect to the liabilities and obligations of the Litigation Trustee and the Litigation Trust Oversight Board under this Litigation Trust Agreement (in the form of an errors and omissions policy or otherwise);

(e)     obtain (with the Litigation Expense Fund) insurance coverage with respect to real and personal property that may become assets of the Litigation Trust, if any;

(f)     retain and pay out of the Net Avoidance Action Proceeds such counsel and other professionals, including, without limitation, any professionals previously retained by the Creditors' Committee, as the Litigation Trustee shall select to assist the Litigation Trustee in its duties, on such terms as the Litigation Trustee deems reasonable and appropriate, without Bankruptcy Court approval; the Litigation Trustee may commit the Litigation Trust to and shall pay such counsel and other professionals reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred pursuant to the Approval Procedures; *provided, that* the Litigation Trustee shall file a notice summarizing the key terms of any retention (including the economic terms thereof) regarding the retention of any such advisors on a contingency fee basis (other than the Litigation Trustee) (each such notice, a "**Contingency Fee Advisor Retention Notice**") on the docket of the Bankruptcy Court and, following the filing of any Contingency Fee Advisor Retention Notice, at the request of any of the holders of Class B Litigation Trust Interests (or their advisor at the instruction of a holder), the Litigation Trustee shall provide additional information regarding the proposed contingency fee engagement (including the actual engagement letter on a confidential basis, if so requested).

(g)     retain and pay out of the Litigation Trust Expense Fund an independent public accounting firm to perform such reviews and/or audits of the financial books and records of the Litigation Trust as may be required by the SEC and applicable securities laws and as may be reasonable and appropriate in the Litigation Trustee's discretion and to prepare and file any tax returns, information returns, or periodic or current reports as required by applicable securities laws, for the Litigation Trust as may be required; the Litigation Trustee may commit the Litigation Trust to and shall pay such independent public accounting firm reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred;

(h)     retain and pay out of the Net Avoidance Action Proceeds such third parties to assist the Litigation Trustee in carrying out its powers and duties under this Litigation Trust Agreement; the Litigation Trustee may commit the Litigation Trust to and shall pay all such persons or entities reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred pursuant to the Approval Procedures, as well as commit the Litigation Trust to indemnify any such parties in connection with the performance of services (provided that such indemnity shall not cover any losses, costs, damages, expenses or liabilities that result from the recklessness, gross negligence, willful misconduct, or knowing violation of law by such party);

12

(i)    compromise, adjust, arbitrate, sue on or defend, pursue, prosecute, abandon, exercise rights, powers, and privileges with respect to, or otherwise deal with and settle, in accordance with the terms set forth herein, the Litigation Trust Assets;

(j)    with respect to the Litigation Trust Causes of Action, commence actions to avoid and recover transfers of the Debtors' property as permitted by the Plan and as may be permitted by the Bankruptcy Code or applicable state law;

(k)    invest any moneys held as part of the Litigation Trust in accordance with the terms of Section 3.15 hereof;

(l)    exercise all of the powers and authorities of the Litigation Trustee contained in Article 5 hereof;

(m)    subject to applicable securities laws, if any, establish and maintain a website for the purpose of providing notice of Litigation Trust activities in lieu of sending written notice to holders of Litigation Trust Interests, subject to providing notice of such website to such holders;

(n)    seek the examination of any entity, subject to the provisions of the Federal Rules of Evidence or any other applicable law or rule; and

(o)    take or refrain from taking any and all other actions that the Litigation Trustee, reasonably deems necessary or convenient for the continuation, protection and maximization of the Litigation Trust Assets or to carry out the purposes hereof.

3.9    Limitation of Litigation Trustee's Authority.

The Litigation Trustee shall, on behalf of the Litigation Trust, hold the Litigation Trust out as a trust in the process of liquidation and not as an investment company. Notwithstanding anything herein to the contrary, the Litigation Trustee shall not (i) be authorized to engage in any trade or business, (ii) take such actions inconsistent with the orderly liquidation of the assets of the Litigation Trust as are required or contemplated by applicable law, the Final DIP Order, the Plan, the Confirmation Order, and this Litigation Trust Agreement, or (iii) be authorized to engage in any investments or activities inconsistent with the treatment of the Litigation Trust as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684.

3.10    Books and Records.

The Litigation Trustee shall maintain books and records relating to the Litigation Trust Assets and income of the Litigation Trust and the payment of expenses of, and liabilities of claims against or assumed by, the Litigation Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting and securities law requirements of the Litigation Trust. Nothing in this Litigation Trust Agreement requires the Litigation Trustee to file any accounting or seek approval of any court with respect to the administration of the

Litigation Trust, or as a condition for managing any payment or distribution out of the assets of the Litigation Trust.

3.11    Inquiries into Trustee's Authority.

Except as otherwise set forth in the Litigation Trust Agreement, no Person dealing with the Litigation Trust shall be obligated to inquire into the authority of the Litigation Trustee in connection with the protection, conservation, or disposition of the Litigation Trust Assets.

3.12    Compliance with Laws.

Any and all distributions of assets of the Litigation Trust and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, without limitation, applicable federal and state securities laws.

3.13    Compensation of Litigation Trustee.

The Litigation Trustee shall be reasonably compensated out of the Litigation Trust Expense Fund or the Net Avoidance Action Proceeds for its services, and reimbursed out of the Litigation Trust Initial Cash Assets or the Net Avoidance Action Proceeds for its reasonable expenses pursuant to an engagement letter (the "**Trustee Engagement Letter**") approved by the Creditors' Committee, subject to the approval of the Bankruptcy Court prior to the entry of the Confirmation Order.  The terms of the Litigation Trustee's engagement shall include a monthly compensation arrangement for the first two (2) years of the engagement (with the Litigation Trustee having the ability to reasonably negotiate for further monthly compensation thereafter, subject to the approval of the Non-Trustee Oversight Board Members) and tiered contingent compensation arrangement for Net Avoidance Action Proceeds collected in accordance with the terms of the Trustee Engagement Letter.

3.14    Reliance by Litigation Trustee.

Except as otherwise provided herein:

(a)    the Litigation Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Litigation Trustee to be genuine and to have been signed or presented by the proper party or parties; and

(b)    Persons dealing with the Litigation Trustee shall look only to the Litigation Trust Assets to satisfy any liability incurred by the Litigation Trustee to such Person in carrying out the terms of this Litigation Trust Agreement, and the Litigation Trustee shall not have any personal obligation to satisfy any such liability.

3.15    Investment and Safekeeping of Litigation Trust Assets.

The Litigation Trustee shall invest all Cash assets transferred to the Litigation Trust, all Net Avoidance Action Proceeds, the Litigation Expense Fund, and all income earned by the Litigation Trust only in cash, cash equivalents, U.S. Treasury securities, money market

investments, and similar investments; *provided, however*, that (a) the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the guidelines of the IRS, whether set forth in IRS rulings, other IRS pronouncements or otherwise and (b) the Litigation Trustee may retain any Net Avoidance Action Proceeds received that are not cash only for so long as may be required for the prompt and orderly liquidation of such assets in cash.

3.16    Standard of Care; Exculpation.

Neither the Litigation Trustee nor any of its duly designated agents or representatives or professionals shall be liable for any act or omission taken or omitted to be taken by the Litigation Trustee in good faith, other than acts or omissions resulting from the Litigation Trustee's own gross negligence, recklessness, willful misconduct, or knowing violation of law.  The Litigation Trustee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons.  Notwithstanding such authority, the Litigation Trustee shall be under no obligation to consult with its attorneys, accountants, financial advisors or agents, and its good faith determination not to do so shall not result in the imposition of liability on the Litigation Trustee, unless such determination is based on gross negligence, recklessness, willful misconduct, or knowing violation of law.

3.17    Restriction as to Subsidiaries.

The Litigation Trust shall not hold 50% or more of the stock (in either vote or value) of any entity that is treated as a corporation for U.S. federal income tax purposes, nor be the sole member of a limited liability company, nor have any interest in an entity that is treated as a partnership for U.S. federal income tax purposes, unless such stock, membership interest, or partnership interest was obtained involuntarily or as a matter of practical economic necessity in order to preserve the value of the assets of the Litigation Trust.

ARTICLE 4

LITIGATION TRUST OVERSIGHT BOARD

4.1    Litigation Trust Oversight Board.

At all times during the existence of the Litigation Trust, there shall be a three-member Litigation Trust Oversight Board, which shall consist of (i) two (2) Non-Trustee Oversight Board Members and (ii) the Litigation Trustee, *provided*, *that* the remaining members of the Litigation Trust Oversight Board Members may elect to not fill a Non-Trustee Oversight Board Member vacancy pursuant to Section 4.2 of this Litigation Trust Agreement.  On the Effective Date, the Litigation Trust Oversight Board shall become effective and shall consist of the Original Trustee, a designee of Flextronics Industrial Ltd., and [NAME], a designee representing the interests of the Convertible Senior Noteholders.  The Litigation Trust Oversight Board Members shall owe fiduciary duties to the Litigation Trust Beneficiaries.  Upon

15

appointment, the Litigation Trust Oversight Board shall have the rights, powers, and duties described herein and shall have such other rights to operate and manage the Litigation Trust as are not inconsistent with the terms of this Litigation Trust Agreement.

4.2     Authority of Litigation Trust Oversight Board.

The Litigation Trust Oversight Board shall have the authority and responsibility to (i) oversee, review, and guide the activities and performance of the Litigation Trustee (ii) approve, by a majority vote, the prosecution, compromise and settlement, abandonment, dismissal, or assignment of Litigation Trust Causes of Action relating to asserted Claims of $1,000,000.00 or more; (iii) remove the Litigation Trustee in accordance with the provisions of Article 3 herein; (iv) adjust the minimum threshold value for the settlement or other resolution of Claims subject to its approval as set forth in section (ii) of this provision; (v) fill any Non-Trustee Oversight Board Member vacancy on the Litigation Trust Oversight Board or elect not to fill such vacancy; and (vi) act in a manner consistent with such other rights, powers, and duties described in this Litigation Trust Agreement.  The Litigation Trustee shall consult with and provide information to the Litigation Trust Oversight Board in accordance with and pursuant to the terms of this Litigation Trust Agreement, the Plan (including the Global Settlement Term Sheet), and the Confirmation Order.  The Litigation Trust Oversight Board shall have the authority to select and engage such Persons, and select and engage such professional advisors, in accordance with the Plan (including the Global Settlement Term Sheet), the Confirmation Order, and this Litigation Trust Agreement as the Litigation Trust Oversight Board deems necessary and desirable to assist the Litigation Trust Oversight Board in fulfilling its obligations under this Litigation Trust Agreement, and the Litigation Trustee shall pay, out of the Net Avoidance Action Proceeds or the Litigation Trust Initial Cash Assets, the reasonable fees of such Persons (including on an hourly, contingency, or modified contingency basis) and reimburse such Persons for their reasonable and documented out-of-pocket costs and expenses consistent with the terms of this Litigation Trust Agreement.

4.3     Regular Meetings of Litigation Trustee and Litigation Trust Oversight Board.

Meetings of the Litigation Trustee and the Litigation Trust Oversight Board are to be held with such frequency and at such place as the Litigation Trust Oversight Board may determine in its sole discretion, but in no event shall such meetings be held less frequently than quarterly.

4.4     Special Meetings of Litigation Trustee and Litigation Trust Oversight Board.

Special meetings of the Litigation Trustee and the Litigation Trust Oversight Board may be held whenever and wherever called for by the Litigation Trustee or at least two members of the Litigation Trust Oversight Board.

4.5     Notice of and Waiver of Notice for, Litigation Trustee and Litigation Trust Oversight Board.

Notice of the time and place (but not necessarily the purpose or all of the purposes) of any regular or special meeting shall be given to the Litigation Trustee and the members of the Litigation Trust Oversight Board in person or by telephone, or via email or

electronic mail.  Notice to the Litigation Trustee and the members of the Litigation Trust
Oversight Board of any such special meeting shall be deemed given sufficiently in advance when
(i) if given by mail, the same is deposited in the United States mail at least ten (10) calendar days
before the meeting date, with postage thereon prepaid, (ii) if given by electronic mail, the same is
transmitted at least three (3) Business Days prior to the convening of the meeting (to the extent
reasonably possible), or (iii) if personally delivered (including by overnight courier) or given by
telephone, the same is handed, or the substance thereof is communicated over the telephone to
the Litigation Trustee and the members of the Litigation Trust Oversight Board or to an adult
member of his/her office staff or household, at least one (1) Business Day prior to the convening
of the meeting.  The Litigation Trustee and any member of the Litigation Trust Oversight Board
may waive notice of any meeting and any adjournment thereof at any time before, during, or
after it is held, as provided by law.  Except as provided in the next sentence below, the waiver
must be in writing, signed by the Litigation Trustee or the applicable member or members of the
Litigation Trust Oversight Board entitled to the notice, and filed with the minutes or records of
the Litigation Trust.  The attendance of the Litigation Trustee or a member of the Litigation
Trust Oversight Board at a meeting shall constitute a waiver of notice of such meeting, except
when the person attends a meeting for the express purpose of objecting, at the beginning of the
meeting, to the transaction of any business because the meeting is not lawfully called or
convened.

      4.6    <u>Manner of Acting</u>.

      (a)    A majority of the total number of members of the Litigation Trust
Oversight Board then in office shall constitute a quorum for the transaction of business at any
meeting of the Litigation Trust Oversight Board.  The affirmative vote of a majority of the
members of the Litigation Trust Oversight Board present and entitled to vote at a meeting at
which a quorum is present shall be the act of the Litigation Trust Oversight Board except as
otherwise required by law or as provided in this Litigation Trust Oversight Board.  In the event
that a vote of the Litigation Trust Oversight Board taken at a meeting at which a quorum is
present results in a tie, the vote of the Litigation Trustee shall determine whether the proposed
action is approved by the Litigation Trust Oversight Board.  The Litigation Trust Oversight
Board may also take action by written consent in accordance with <u>Section 4.7</u> hereof.

      (b)    Any or all of the members of the Litigation Trust Oversight Board may
participate in a regular or special meeting by, or conduct the meeting through the use of,
conference telephone or similar communications equipment by means of which persons
participating in the meeting may hear each other, in which case any required notice of such
meeting may generally describe the arrangements (rather than or in addition to the place) for the
holding thereof.  The Litigation Trustee or any member of the Litigation Trust Oversight Board
participating in a meeting by this means is deemed to be present in person at the meeting.
Voting may, if approved by the majority of the members at a meeting, be conducted by
electronic mail or individual communications by the Litigation Trustee and each member of the
Litigation Trust Oversight Board.

      (c)    Any member of the Litigation Trust Oversight Board who is present and
entitled to vote at a meeting of the Litigation Trust Oversight Board when action is taken is
deemed to have assented to the action taken, subject to the requisite vote of the Litigation Trust

Oversight Board unless: (i) such member of the Litigation Trust Oversight Board objects at the beginning of the meeting (or promptly upon his/her arrival) to holding it or transacting business at the meeting; (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice (including by electronic transmission) of his/her dissent or abstention to the Litigation Trust Oversight Board before its adjournment. The right of dissent or abstention is not available to any member of the Litigation Trust Oversight Board who votes in favor of the action taken.

(d)      Prior to the taking of a vote on any matter or issue or the taking of any action with respect to any matter or issue, each member of the Litigation Trust Oversight Board shall report to the Litigation Trust Oversight Board any conflict of interest such member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such member might have with respect to or in connection with such matter or issue, other than solely as a Litigation Trust Beneficiary). A member who has or who may have a conflict of interest shall be deemed to be a "conflicted member" who shall not be entitled to vote or take part in any action with respect to such matter or issue (however such member shall be counted for purposes of determining the existence of a quorum); the vote or action with respect to such matter or issue shall be undertaken only by members of the Litigation Trust Oversight Board who are not "conflicted members."

4.7      <u>Litigation Trust Oversight Board's Action without a Meeting</u>.

Any action required or permitted to be taken by the Litigation Trust Oversight Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Litigation Trust Oversight Board as evidenced by one or more written consents describing the action taken, signed by all members of the Litigation Trust Oversight Board and recorded in the minutes or other transcript of proceedings of the Litigation Trust Oversight Board and the required notice of meeting has been given in accordance with <u>Section 4.5</u> hereof.

4.8      <u>Tenure, Removal and Replacement of Non-Trustee Oversight Board Members</u>.

The authority of the Non-Trustee Oversight Board Members shall be effective as of the Effective Date and shall remain and continue in full force and effect until the Litigation Trust is terminated in accordance with <u>Section 10.1</u> hereof. The service of the members of the Non-Trustee Oversight Board Members shall be subject to the following:

(a)      The Non-Trustee Oversight Board Members will serve for five (5) years (subject to extension of such term by a majority vote of the Litigation Trust Oversight Board if the term of the Litigation Trust is extended beyond its original five (5) year term), until death or resignation pursuant to <u>subsection (b)</u> below or removal pursuant to <u>subsection (c)</u> below.

(b)      A Non-Trustee Oversight Board Member may resign at any time by providing a written notice of resignation to the remaining members of the Litigation Trust Oversight Board. Any Non-Trustee Oversight Board Member who resigns shall continue to serve until the earlier of (i) the appointment of his or her successor; (ii) a determination by a majority of the remaining Litigation Trust Oversight Board Members to not fill the vacancy

18

created by the resigning Non-Trustee Oversight Board Member; and (iii) ninety (90) days after the delivery of such written notice.

(c)    A Non-Trustee Oversight Board Member may be removed by the majority vote of the other members of the Litigation Trust Oversight Board, written resolution of which shall be delivered to the removed Litigation Trust Oversight Board member; provided, however, that such removal may only be made for Cause.  For purposes of this Section 4.8(c), "Cause" shall be defined as:  (i) such Litigation Trust Oversight Board member's theft or embezzlement or attempted theft or embezzlement of money or tangible or intangible assets or property; (ii) such Litigation Trust Oversight Board member's violation of any law (whether foreign or domestic), which results in a felony indictment or similar judicial proceeding; (iii) such Litigation Trust Oversight Board member's recklessness, gross negligence, willful misconduct, or knowing violation of law, in the performance of his or her duties; or (iv) such Litigation Trust Oversight Board member's failure to perform any of his or her other material duties under this Litigation Trust Agreement (including the regular attendance at meetings); *provided*, *however*, that such Litigation Trust Oversight Board member shall have been given a reasonable period to cure any alleged cause under clause (iii) (other than willful misconduct or violation of law that results in a felony indictment or similar judicial proceeding) and clause (iv).

(d)    In the event of a vacancy on the Litigation Trust Oversight Board due to the removal, death, or resignation of a Non-Trustee Oversight Board Member, a new member may be appointed to fill such position by the remaining members of the Litigation Trust Oversight Board.  In the event that there are no remaining members of the Litigation Trust Oversight Board, appointments to fill such vacancies that would have been made by the remaining members of the Litigation Trust Oversight Board shall be made upon an order entered after an opportunity for a hearing by the Bankruptcy Court, upon motion of the Litigation Trustee.  Successor members appointed to be Non-Trustee Oversight Board Members must satisfy the requirement that a majority of the Litigation Trust Oversight Board Members be "United States persons" within the meaning of Section 7701(a)(30) of the IRC.

(e)    Immediately upon the appointment of any successor member of the Litigation Trust Oversight Board, all rights, powers, duties, authority, and privileges of the predecessor member of the Litigation Trust Oversight Board hereunder shall be vested in and undertaken by the successor member of the Litigation Trust Oversight Board without any further act; and the successor member of the Litigation Trust Oversight Board shall not be liable personally for any act or omission of the predecessor member of the Litigation Trust Oversight Board.

(f) The appointment of a successor member of the Litigation Trust Oversight Board shall be evidenced by the Litigation Trustee's filing with the Bankruptcy Court of a notice of appointment, which notice shall include the name, address, and telephone number of the successor member of the Litigation Trust Oversight Board.

4.9    Compensation of Litigation Trust Oversight Board.

Each Non-Trustee Oversight Board Member of the Litigation Trust Oversight Board shall be paid, by the Litigation Trust out of the Litigation Trust Expense Fund, (i) the

amount of $[●]³ annually as compensation for performance of its duties and services hereunder (all such duties or services are referred to herein as the "**Duties**") and reasonable out-of-pocket expenses related to the Duties, and (ii) reimbursement from the Litigation Trust for reasonable, documented out-of-pocket expenses incurred in the performance of such member's Duties.  For the avoidance of doubt, Non-Trustee Oversight Board Members shall not be entitled to reimbursement of expenses incurred relating to their own attorneys or professionals.

4.10    Standard of Care; Exculpation.

None of the Litigation Trust Oversight Board, its members, designees or professionals, nor any of their duly designated agents or representatives, shall be liable for the act or omission of any other member, agent or representative of the Litigation Trust Oversight Board, nor shall the Litigation Trust Oversight Board or any of its members be liable for any act or omission taken or omitted to be taken by the Litigation Trust Oversight Board in good faith, other than acts or omissions resulting from such person's own gross negligence, recklessness, willful misconduct, or knowing violation of law.  The Litigation Trust Oversight Board and each of its members may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in good faith in accordance with advice or opinions rendered by such Persons.  Notwithstanding such authority, neither the Litigation Trust Oversight Board nor any of its members shall be under any obligation to consult with its attorneys, accountants, financial advisors and agents, and its determination not to do so shall not result in the imposition of liability on the Litigation Trust Oversight Board or, as applicable, its members or designees, unless such determination is shown to have been made in bad faith based on gross negligence, willful misconduct, or knowing violation of law.

4.11    Limitation of Litigation Trust Oversight Board's Authority.

Notwithstanding anything herein to the contrary, the Litigation Trust Oversight Board shall not (i) be authorized to engaged in any trade or business; (ii) take any action inconsistent with the orderly liquidation of the assets of the Litigation Trust as is required or contemplated by applicable law, the Final DIP Order, this Litigation Trust Agreement, the Confirmation Order, or the Plan; or (iii) be authorized to engage in any investments or activities inconsistent with the treatment of the Litigation Trust as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684.

---

³ Still under discussion.

ARTICLE 5

TAX MATTERS

5.1    <u>Tax Reporting</u>.

(a)    Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including receipt by the Litigation Trustee of a private letter ruling if the Litigation Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Litigation Trustee) and <u>Section 5.1(d)</u>, the Litigation Trust shall be treated as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and thus as a "grantor trust" within the meaning of Sections 671 through 677 of the IRC, and all parties to the Litigation Trust (including, without limitation, the Litigation Trustee, the Debtors, the Reorganized Debtors, and the Liquidating Trust Beneficiaries) shall report consistently therewith for U.S. federal income tax purposes.  Accordingly, for U.S. federal income tax purposes, the Litigation Trust Assets shall be treated by all parties as (i) having been distributed (subject to any obligations relating to such assets) by the Debtors to the Litigation Trust Beneficiaries (other than any assets allocable to the GUC Disputed Claims Reserve) in satisfaction of Allowed General Unsecured Claims and in partial satisfaction of Allowed Second Lien Claims and (ii) immediately thereafter contributed by the holder of such Claims to the Litigation Trust in exchange for Litigation Trust Interests.  Accordingly, the Litigation Trust Beneficiaries shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of the Litigation Trust Assets (other than such Litigation Trust Assets that are allocable to the GUC Disputed Claims Reserve).  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local tax purposes.

(b)    As soon as practicable after the Effective Date, (i) the Litigation Trustee, in consultation with the Litigation Trust Oversight Board and the Reorganized Debtors, shall determine the fair market value as of the Effective Date of all Litigation Trust Assets, and such determined fair market value shall be used consistently by all parties to the Litigation Trust Agreement (including the Reorganized Debtors, the Litigation Trustee, and the Litigation Trust Beneficiaries) for all U.S. federal income tax purposes, and (ii) the Litigation Trustee shall make such valuation available from time to time to all parties to the Litigation Trust, to the extent relevant to such parties for tax purposes.

(c)    The Litigation Trustee shall file returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this <u>Article 5</u>.  The Litigation Trustee shall, in its discretion, make any applicable tax elections on behalf of the Litigation Trust.  The Litigation Trustee shall annually send to each Litigation Trust Beneficiary a separate statement setting forth such Litigation Trust Beneficiary's share of items of income, gain, loss, deduction, or credit, in accordance with applicable Treasury Regulations and Rev. Proc. 94-45, 1994-2 C.B. 684, file (or cause to be filed) any other statements, returns (including any information returns) or disclosures relating to the Litigation Trust that is required by any governmental authority or applicable law, and pay taxes, if any, properly payable by the Litigation Trust.

21

(d)    Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Litigation Trustee of a private letter ruling if the Litigation Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Litigation Trustee), the Litigation Trustee shall (i) timely elect to treat any Litigation Trust Assets allocable to, or retained on account of, the GUC Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  All parties to the Litigation Trust Agreement (including the Litigation Trustee, the Reorganized Debtors and the Litigation Trust Beneficiaries) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing.

(e)    The Litigation Trustee may request an expedited determination of taxes of the Litigation Trust, including the GUC Disputed Claims Reserve, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the dissolution of the Litigation Trust.

5.2    Trust Taxable Income; Allocations.

(a)    Subject to Section 5.2(c) hereof, all Litigation Trust earnings shall be taxable to the Litigation Trust Beneficiaries.

(b)    Subject to Section 5.2(c) hereof, allocations of Litigation Trust taxable income shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed if, immediately prior to such deemed distribution, the Litigation Trust had distributed all of its other assets (valued for this purpose at their tax book value) to the Litigation Trust Beneficiaries, taking into account all prior and concurrent distributions from the Litigation Trust (including all distributions held in the GUC Disputed Claims Reserve).  Similarly, taxable loss of the Litigation Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the Litigation Trust.  The tax book value of the Litigation Trust Assets for this purpose shall equal their fair market value upon the Effective Date, adjusted in either case in accordance with tax accounting principles prescribed by the IRC, the regulations and other applicable administrative and judicial authorities and pronouncements.

(c)    The Litigation Trustee shall be responsible for payment, out of the Litigation Trust Assets, of any taxes imposed on the Litigation Trust or its assets, including the GUC Disputed Claims Reserve (in the latter instance, first out of any Cash allocable to, or retained on account of, the Disputed Claim to which such tax relates), including any income that may arise upon the distribution of the assets from the GUC Disputed Claims Reserve.  In the event, and to the extent, any Cash retained on account of a Disputed Claim is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of such claim such that such portion of the taxes is paid (in whole or in part) from other available Cash, such other cash sources shall be (i) reimbursed from any subsequent Cash amounts retained on account of such claim, or (ii) to the extent such claim has subsequently been resolved, deducted from any amounts otherwise distributable by the Litigation Trustee as a result of the resolution of such claim.

5.3     Withholding.

The Litigation Trustee may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state, or local tax law with respect to any payment or distribution by the Litigation Trust to or any amounts received or earned by the Litigation Trust (including with respect to Net Avoidance Action Proceeds) distributable or allocable to the Litigation Trust Beneficiaries (including beneficiaries that are not "United States persons" within the meaning of the IRC).  The Litigation Trustee may effect any withholding with respect to a Litigation Trust Beneficiary by reducing the amount currently or subsequently distributable to such beneficiary by the amount withheld. All such amounts withheld from distributions and paid to the appropriate taxing authority shall be treated as amounts distributed to such Litigation Trust Beneficiaries for all purposes of this Litigation Trust Agreement.  The Litigation Trustee shall be authorized to collect such tax information from the Litigation Trust Beneficiaries (including, without limitation, social security numbers or other tax identification numbers) as, in its sole discretion, the Litigation Trustee deems necessary to effectuate this Litigation Trust Agreement, the Plan (including the Global Settlement Term Sheet), or the Confirmation Order.  In order to receive distributions pursuant to this Litigation Trust Agreement, all Litigation Trust Beneficiaries shall be required to identify themselves to the Litigation Trustee and provide tax information and the specifics of their holdings, to the extent the Litigation Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Litigation Trustee for these purposes. This identification requirement generally applies to all holders, including those who hold their claims in "street name."  The Litigation Trustee may refuse to make a distribution to any Liquidation Trust Beneficiary that fails to furnish such information in a timely fashion, until such information is delivered, and may treat such beneficiary's Litigation Trust Interests as in respect of a Disputed Claim and, in the event such information is not received within one year of being first requested, may treat such beneficiary's Litigation Trust Interests as forfeited; *provided, however*, that, upon the delivery of such information by a Litigation Trust Beneficiary within one year of being so requested, the Litigation Trustee shall make such distribution to which the Litigation Trust Beneficiary is entitled, without additional interest occasioned by such beneficiary's delay in providing tax information; and, *provided*, further that, if the Litigation Trustee fails to withhold in respect of amounts received or distributable with respect to any such beneficiary and the Litigation Trustee is later held liable for the amount of such withholding, such beneficiary shall reimburse the Litigation Trustee for such liability (to the extent such amounts were actually distributed to such beneficiary).

ARTICLE 6

DISTRIBUTIONS

6.1    <u>Effective Date Distributions and Initial Cash Distribution</u>.

(a)    On the Effective Date, or as soon as practicable thereafter, the Litigation Trustee shall:

(i)    arrange for the distribution of Litigation Trust Interests;

(ii)    pay $2,000,000.00 of Cash from the Litigation Trust to the Convertible Senior Notes Indenture Trustee as partial payment of its fees and expenses incurred in connection with the Chapter 11 Cases; and

(iii)    set aside an amount of Cash sufficient to satisfy the charging liens of the Convertible Senior Notes Indenture Trustee after taking into account the payment made pursuant to <u>clause (i)</u> above (the "**Indenture Trustee Cash Reserve**").  In accordance with section 7.13 of the Plan, the Convertible Senior Notes Indenture Trustee's charging liens shall attach to the Indenture Trustee Cash Reserve. For the avoidance of doubt, such charging liens shall not attach to any Litigation Trust Interests upon the funding of the Indenture Trustee Cash Reserve.

(b)    The Litigation Trustee, subject to the determination of the Litigation Trustee as to any holdback necessary to fund or maintain the GUC Disputed Claims Reserve (pursuant to <u>Section 6.6</u> hereof) and the Litigation Expense Fund (in consultation with the Litigation Trust Oversight Board), shall make an initial distribution (the "**Initial Cash Distribution**") of all remaining available Cash to holders of Class A Litigation Trust Interests within sixty (60) days of the Effective Date, but in no event shall the Initial Cash Distribution be less than fifty percent (50%) of Litigation Trust Initial Cash Assets.  The Litigation Trustee shall disburse the funds in the Indenture Trustee Cash Reserve to the Convertible Senior Notes Indenture Trustee on the date of the Initial Cash Distribution in satisfaction of any amounts due in respect of such charging liens.  For the avoidance of doubt, the Cash distributed to the Convertible Senior Notes Indenture Trustee from the Indenture Trustee Cash Reserve shall be deemed to be part of the Initial Cash Distribution to Convertible Senior Noteholders (or their assignees) and shall not reduce the Initial Cash Distribution made to other Holders of General Unsecured Claims (or their assignees).[4]

6.2    <u>Annual Distribution</u>.

Subsequent to the Initial Cash Distribution, the Litigation Trustee shall, on at least an annual basis and subject to the terms of the Plan and the Global Settlement Term Sheet regarding the treatment of holders Class A Litigation Trust Interests and Class B Litigation Trust Interests, (i) distribute to the holders of Class A Litigation Trust Interests and Class B Litigation

---

[4] NTD:  The Committee and the Original Trustee continue to discuss the mechanics.

Trust Interests the Net Avoidance Action Proceeds in accordance with their respective rights under the Plan and the Global Settlement Term Sheet and (ii) distribute to the holders of Class A Litigation Trust Interests all other available Cash (treating as Cash for this purpose all investments in accordance with Section 3.15); *provided, however*, that the Litigation Trust shall retain such amounts as necessary or appropriate to maintain the GUC Disputed Claims Reserve and the Litigation Expense Fund.  Subject to and in accordance with Section 5.3 hereof, the Litigation Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Litigation Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement; *provided, further*, that the Litigation Trustee shall not be required to make a distribution pursuant this Section 6.2 if the aggregate, net amount of unrestricted Cash available for distribution is sufficiently small in amount as to make the distribution impracticable as reasonably determined by the Litigation Trustee, with the consent of the Litigation Trust Oversight Board, in accordance with the law.

6.3    Manner of Payment or Distribution.

(a)    All distributions made by the Litigation Trustee to or for the benefit of holders of Litigation Trust Interests shall be payable in Cash to the holders of Litigation Trust Interests of record as of the twentieth (20th) day prior to the date scheduled for the distribution, unless such day is not a business day, then such day shall be the following business day.  The Litigation Trustee shall distribute such cash by wire, check, or such other method as the Litigation Trustee deems appropriate under the circumstances.

(b)    To the extent the Debtors become liable for the payment of any Claims arising under section 502(h) of the Bankruptcy Code on account of Litigation Trust Assets (including the Net Avoidance Action Proceeds), the Litigation Trustee will be responsible for making distributions on account of such claims pursuant to Section 8.2 herein.

6.4    Delivery of Litigation Trust Distributions.

All distributions under this Litigation Trust Agreement to any holder of Litigation Trust Interests shall be made at the address of such holder as set forth in the Book Entry System or at such other address or in such other manner as such holder of Litigation Trust Interests shall have specified for payment purposes in a written notice to the Litigation Trustee at least twenty (20) days prior to such distribution date.  In the event that any distribution to any holder is returned as undeliverable, the Litigation Trustee shall be entitled to rely on the most current information available from the Debtors to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Litigation Trustee has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; *provided, however*, that such undeliverable or unclaimed distributions shall be deemed unclaimed property at the expiration of one year from the date of distribution. The Litigation Trustee shall reallocate the undeliverable and unclaimed distributions for the benefit of all other Litigation Trust Beneficiaries holding Litigation Trust Interests in the applicable class.

6.5    Cash Distributions.

No Cash distributions shall be required to be made to any Litigation Trust Beneficiary in an amount less than $100.00. Any funds so withheld and not distributed shall be held in reserve and distributed in subsequent distributions. Notwithstanding the foregoing, all Cash shall be distributed in the final distribution of the Litigation Trust.

6.6    Disputed Claims Reserve.

(a)    From and after the Effective Date, the Litigation Trustee shall hold and maintain the GUC Disputed Claims Reserve for the benefit of the Holders of such Disputed General Unsecured Claims, including any Cash and any other Litigation Trust Assets allocable to such Disputed Claims (*i.e.*, as if such Holders had received Litigation Trust Interests on the Effective Date and such Disputed Claims had been Allowed Claims on the Effective Date), determined based on (i) the asserted amount of such Disputed Claim, (ii) such other amount as may be agreed upon by the Holder of such Disputed Claim and the Litigation Trustee or (iii) except with respect to any Disputed General Unsecured Claims asserted by Vivint Solar, Inc., such other amount as may be deemed appropriate by the Litigation Trustee in accordance with the terms of this Litigation Trust Agreement (in each case, net of any taxes imposed on, or with respect to, the GUC Disputed Claims Reserve as relates to such Claim, including in connection with such distributions).

(b)    Holders of Disputed Claims that become Allowed Claims after the Initial Cash Distribution Date shall receive any distributions of Cash and/or Litigation Trust Interests to which they are entitled under the Plan on the next Distribution Date; *provided*, *however*, that the Litigation Trustee may determine in its discretion (subject to the approval of the Litigation Trust Oversight Board, if necessary, pursuant to the terms of this Litigation Trust Agreement) to make an immediate distribution to the holder of such Claim.

(c)    Any taxes incurred by the Litigation Trust with respect to assets allocable to, or retained on account of, a Disputed Claim (including any taxes that would be incurred upon a distribution of such assets as a result of the resolution of the Disputed Claim) will be netted against the amounts otherwise distributable from the GUC Disputed Claims Reserve in respect of, or as a result of the resolution of, such Claim. *See also* Section 5.2(c) herein. No assets allocable to, or retained on account of, a Disputed Claim will be released from the GUC Disputed Claims Reserve until such time as the Cash otherwise distributable as a result of the resolution of such Claim is sufficient to pay any taxes incurred or that would be incurred upon the distribution.

ARTICLE 7

INDEMNIFICATION

7.1    Indemnification of Litigation Trustee.

(a) To the fullest extent permitted by law, the Litigation Trust, to the extent of its assets legally available for that purpose, shall indemnify and hold harmless the Litigation Trustee and each of its directors, members, shareholders, partners, officers, agents, employees, attorneys

and other professionals (collectively, the "**Indemnified Persons**") from and against any and all losses, costs, damages, reasonable and documented out-of-pocket expenses (including, without limitation, fees and expenses of attorneys and other advisors and any court costs incurred by any Indemnified Person) or liability by reason of anything any Indemnified Person did, does, or refrains from doing for the business or affairs of the Litigation Trust, except to the extent that the loss, cost, damage, expense or liability resulted primarily from the Indemnified Person's recklessness, gross negligence, willful misconduct, or knowing violation of the law. To the extent reasonable, the Litigation Trust shall pay in advance or reimburse reasonable and documented out-of-pocket expenses (including advancing reasonable costs of defense) incurred by the Indemnified Person who is or is threatened to be named or made a defendant or a respondent in a proceeding concerning the business and affairs of the Litigation Trust.

(b)     Any Indemnified Person may waive the benefits of indemnification under this <u>Section 7.1</u>, but only by an instrument in writing executed by such Indemnified Person.

(c)     The rights to indemnification under this <u>Section 7.1</u> are not exclusive of other rights which any Indemnified Person may otherwise have at law or in equity, including without limitation common law rights to indemnification or contribution. Nothing in this <u>Section 7.1</u> will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under this Litigation Trust Agreement, or any other agreement or instrument to which that Person is a party.

ARTICLE 8

NET LITIGATION TRUST RECOVERY

8.1    <u>No Effect on Mutuality</u>.

Notwithstanding anything contained in this Litigation Trust Agreement to the contrary, nothing herein shall affect the mutuality of obligations, if any, of any holder of any claim under section 553 of the Bankruptcy Code.

8.2    <u>Bankruptcy Code Section 502(h)</u>.

Notwithstanding anything contained in this Litigation Trust Agreement to the contrary, in the event that a compromise and settlement of a Litigation Trust Cause of Action or a final order with respect to a Litigation Trust Cause of Action provides for the allowance of a claim pursuant to section 502(h) of the Bankruptcy Code against one or more of the Debtors the distributions to be made on account of such claim pursuant to the Plan shall be funded by the Litigation Trust, in the amount(s), from time to time, that all similarly situated holders of claims are entitled to receive under the Plan.

8.3    <u>Net Litigation Trust Recovery</u>.

Notwithstanding anything contained in this Litigation Trust Agreement to the contrary, in the event that a defendant in a litigation brought by the Litigation Trustee for and on behalf of the Litigation Trust (i) is required by a final order to make payment to the Litigation Trust (the "**Judgment Amount**") and (ii) is permitted by a final order to assert a right of setoff

under sections 553, 555, 556, 559, 560 and 561 of the Bankruptcy Code or applicable non-bankruptcy law against the Judgment Amount (a "**Valid Setoff**"), (y) such defendant shall be obligated to pay only the excess, if any, of the Judgment Amount over the Valid Setoff and (z) none of the Litigation Trust or the holders of the Litigation Trust Interests shall be entitled to assert a claim against the Debtors with respect to the Valid Setoff.

ARTICLE 9

REPORTS TO LITIGATION TRUST BENEFICIARIES

9.1    Reports.

(a)    The Litigation Trustee shall cause to be prepared, as applicable, either at such times as may be required by the Exchange Act, if applicable, or, not less than semi-annually, financial statements of the Litigation Trust (the "**Litigation Trust Reports**"), to be delivered to the Litigation Trust Beneficiaries together with annual income tax reporting of the Litigation Trust.  The Litigation Trust Reports shall include, among other things, descriptions in reasonable detail of all Net Avoidance Actions Proceeds collected during the relevant quarter and all fees and expenses expended in connection therewith.  To the extent required by law, the financial statements prepared as of the end of the fiscal year shall be audited by nationally recognized independent accountants in accordance with U.S. generally accepted accounting principles.  The materiality and scope of audit determinations shall be established between the Litigation Trustee and the appointed auditors with a view toward safeguarding the value of the assets of the Litigation Trust, but nothing relating to the mutually agreed scope of work shall result in any limitation of audit scope that would cause the auditors to qualify their opinion as to scope of work with respect to such financial statements.

(b)    Within ten (10) Business Days after the end of the relevant report preparation period the Litigation Trustee shall cause any information reported pursuant to Section 9.1(a) hereof to be mailed to such Litigation Trust Beneficiaries and to be filed with the Bankruptcy Court.

(c)    Any report (other than any report of confidential tax information) required to be distributed by the Litigation Trustee under Section 9.1(a) hereof shall also be distributed to the Persons listed in Section 12.6 hereof within ten (10) Business Days of its distribution to the Litigation Trust Beneficiaries under Section 9.1 hereof.  The Litigation Trustee may post any report required to be provided under this Section 9 on a web site maintained by the Litigation Trustee in lieu of actual notice to the Litigation Trust Beneficiaries (unless otherwise required by law) subject to providing notice to the Persons listed in Section 12.6 herein.

ARTICLE 10

TERM; TERMINATION OF LITIGATION TRUST

10.1    Term; Termination of Litigation Trust.

(a)    The Litigation Trustee and the Litigation Trust may be discharged or dissolved, as the case may be, at such time as (i) all of the Litigation Trust Assets have been

28

distributed pursuant to the Litigation Trust Agreement and the Plan, (ii) the Litigation Trustee determines, in its sole discretion, that the administration of any remaining Litigation Trust assets is not likely to yield sufficient additional Litigation Trust Asset Recoveries to justify further pursuit, or (iii) all distributions required to be made by the Litigation Trustee under this Litigation Trust Agreement have been made.  The Litigation Trust shall have an initial term of five (5) years.  The Bankruptcy Court, upon motion by the Litigation Trustee, on notice with an opportunity for hearing, within six (6) months before the expiration of the original term or any extended term, may extend, for a fixed period, the term of the Litigation Trust if it is necessary to facilitate or complete the liquidation of the assets of the Litigation Trust, and not unduly extend the term of the Litigation Trust; *provided*, *that*, the Litigation Trustee receive a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Litigation Trustee and the Litigation Trust Oversight Board that any extension would not adversely affect the status of the Litigation Trust as a "liquidating trust" for United States federal income tax purposes.  The Bankruptcy Court may approve multiple extensions of the term of the Litigation Trust.

(b)     The Litigation Trust may be terminated earlier than its scheduled termination if (i) the Bankruptcy Court has entered a final order closing all of or the last of the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code; and (ii) the Litigation Trustee has administered all assets of the Litigation Trust and performed all other duties required by this Litigation Trust Agreement.

(c)     If at any time the Litigation Trustee determines, in reliance upon such professionals as the Litigation Trustee may retain, that the expense of administering the Litigation Trust so as to make a final distribution to the Litigation Trust Beneficiaries is likely to exceed the value of the assets remaining in the Litigation Trust, the Litigation Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve the Litigation Trust, (ii) donate any balance to a charitable organization (A) described in Section 501(c)(3) of the IRC, (B) exempt from U.S. federal income tax under Section 501(a) of the IRC, (C) that is not a "private foundation", as defined in Section 509(a) of the IRC, and (D) that is unrelated to the Debtors, the Reorganized Debtors, the Litigation Trust, and any insider of the Litigation Trustee, and (iii) dissolve the Litigation Trust.  Upon receipt of such authority from the Bankruptcy Court, the Litigation Trustee shall (X) notify each Litigation Trust Beneficiary and (Y) file a Certificate of Cancellation with the Secretary of State of the State of Delaware.

10.2    <u>Continuance of Trust for Winding Up</u>.

After the termination of the Litigation Trust and for the purpose of litigation and winding up the affairs of the Litigation Trust, the Litigation Trustee shall continue to act as such until its duties have been fully performed.  Prior to the final distribution of all of the remaining assets of the Litigation Trust, the Litigation Trustee shall be entitled to reserve from such assets any and all amounts required to provide for its own costs and expenses, in accordance with <u>Section 3.13</u> herein, until such time as the winding up of the Litigation Trust is completed.  Upon termination of the Litigation Trust, the Litigation Trustee shall retain for a period of three years the books, records, Litigation Trust Beneficiary lists, the Trust Register, and certificates and other documents and files that have been delivered to or created by the Litigation Trustee.  At the Litigation Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after three years from the completion and winding up of the affairs of the

Litigation Trust.  Except as otherwise specifically provided herein, upon the termination of the Litigation Trust, the Litigation Trustee shall have no further duties or obligations hereunder.

ARTICLE 11

AMENDMENT AND WAIVER

11.1    Amendment and Waiver.

(a)    The Litigation Trustee may amend, supplement or waive any provision of, this Litigation Trust Agreement, without notice to or the consent of any Litigation Trust Beneficiary or the approval of the Bankruptcy Court: (i) to cure any ambiguity, omission, defect or inconsistency in this Litigation Trust Agreement provided that such amendments, supplements or waivers shall not contravene or otherwise be inconsistent with the terms of the Final DIP Order, the Committee Settlement, the D&O Settlement Agreement, the D&O Settlement Approval Order, the Plan (including the Global Settlement Term Sheet), and the Confirmation Order, adversely affect the distributions to be made or other rights under this Litigation Trust Agreement to any of the Litigation Trust Beneficiaries, the Second Lien Notes Indenture Trustee, or the Convertible Senior Notes Indenture Trustee, or adversely affect the U.S. federal income tax status of the Litigation Trust as a "liquidating trust"; (ii) to comply with any requirements in connection with the U.S. federal income tax status of the Litigation Trust as a "litigation trust"; (iii) to comply with any requirements in connection with maintaining that the Litigation Trust is not subject to registration or reporting requirements of the Exchange Act or the Investment Company Act; (iv) to make the Litigation Trust a reporting entity and, in such event, to comply with any requirements of the Exchange Act or the Investment Company Act; and (v) to evidence and provide for the acceptance of appointment hereunder by a successor trustee in accordance with the terms of this Litigation Trust Agreement.

(b)    Subject to Section 11.1(c) below, any substantive provision of this Litigation Trust Agreement may be amended or waived by the Litigation Trustee, subject to the prior approval of a majority of both the Litigation Trust Oversight Board and the holders of Class A Litigation Trust Interests held by "United States persons" within the meaning of Section 7701(a)(30) of the IRC, with the approval of the Bankruptcy Court upon notice and an opportunity for a hearing; *provided, however*, that no change may be made to this Litigation Trust Agreement that contravenes or is otherwise inconsistent with the terms of the Committee Settlement, the D&O Settlement Agreement, the D&O Settlement Approval Order, the Plan (including the Global Settlement Term Sheet), and the Confirmation Order, would adversely affect the distributions to be made under this Litigation Trust Agreement to any of the Litigation Trust Beneficiaries, the Second Lien Notes Indenture Trustee, or the Convertible Senior Notes Indenture Trustee, or adversely affect the U.S. federal income tax status of the Litigation Trust as a "liquidating trust."  Notwithstanding this Section 11.1, any amendments to this Litigation Trust Agreement shall not be inconsistent with the purpose and intention of the Litigation Trust to liquidate in an expeditious but orderly manner the Litigation Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d).

(c)    The Litigation Trust Agreement may not be amended to change the distribution of Net Avoidance Action Proceeds and Additional Net Avoidance Action Proceeds

as described in the Litigation Trust Interests Overview without the consent of 75% of the holders (in amount of Class B Litigation Trust Interests held, not number of holders) of the Class B Litigation Trust Interests that are "United States persons" within the meaning of Section 7701(a)(30) of the IRC and the requisite consent of the Litigation Trust Oversight Board and the holders of the Class A Litigation Trust Interests in accordance with Section 11.1(b).

ARTICLE 12

MISCELLANEOUS PROVISIONS

12.1    Intention of Parties to Establish a Liquidating Trust.

This Litigation Trust Agreement is intended to create a "liquidating trust" for U.S. federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Litigation Trust Agreement may be amended in accordance with Section 11.1 hereof to comply with such U.S. federal income tax laws, which amendments may apply retroactively.

12.2    Reimbursement of Trust Litigation Costs.

If the Litigation Trustee or the Litigation Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Litigation Trust Agreement or the enforcement thereof, the Litigation Trustee or the Litigation Trust, as the case may be, shall be entitled to collect any and all costs, reasonable and documented out-of-pocket expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action.  To the extent that the Litigation Trust has advanced such amounts, the Litigation Trust may recover such amounts from the non-prevailing party.

12.3    Laws as to Construction.

This Litigation Trust Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to whether any conflicts of law would require the application of the law of another jurisdiction.

12.4    Jurisdiction.

Without limiting any Person or entity's right to appeal any order of the Bankruptcy Court or to seek withdrawal of the reference with regard to any matter, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Litigation Trust Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Litigation Trust Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all actions related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties, including the Litigation Trust Beneficiaries and holders of General Unsecured Claims and Second Lien Claims, hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court.

12.5    <u>Severability</u>.

If any provision of this Litigation Trust Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid, or unenforceable to any extent, the remainder of this Litigation Trust Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Litigation Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

12.6    <u>Notices</u>.

All notices, requests or other communications to the parties hereto shall be in writing and shall be sufficiently given only if (i) delivered in person; (ii) sent by electronic mail or facsimile communication (as evidenced by a confirmed fax transmission report); (iii) sent by registered or certified mail, return receipt requested; or (iv) sent by commercial delivery service or courier.  Until a change of address is communicated, as provided below, all notices, requests and other communications shall be sent to the parties at the following addresses or facsimile numbers:

<u>If to the Litigation Trustee to</u>:

Drivetrain, LLC
630 Third Ave., 21st Floor
New York, NY  10017
Attn:    Alan J. Carr
         Tim Daileader
Email: acarr@drivetrainadvisors.com; tdaileader@drivetrainadvisors.com


With a copy to:


<u>If to the Debtors to</u>:

c/o SunEdison, Inc.
Two City Place Drive, 2nd Floor
St. Louis, MO  63141
Attn: General Counsel

With a copy to:

Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036-6522
Attn: J. Eric Ivester, Esq.
      James J. Mazza, Jr., Esq.

32

Louis S. Chiappetta, Esq.
Email: eric.ivester@skadden.com; james.mazza@skadden.com;
    louis.chiappetta@skadden.com

<u>If to the Holder of Class B Interests to</u>:

[   ]

With a copy to:

Akin, Gump, Strauss, Hauer, & Feld LLP
One Bryant Park
Bank of America Tower
New York, New York  10036
Attn:   Arik Preis
      Yochun Katie Lee
Email: apreis@akingump.com; kylee@akingump.com

<u>If to the Convertible Senior Notes Indenture Trustee, to</u>:

BOKF, N.A.
1600 Broadway, 3rd Floor
Denver, CO 80202
Attn: George F. Kubin
Email: gkubin@bokf.com

With a copy to:

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020
Attn: J. Christopher Shore, Harrison L. Denman, and Michele J. Meises
Email: cshore@whitecase.com; Harrison.denman@whitecase.com;
michele.meises@whitecase.com

and:

Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Attn: Harold L. Kaplan; Mark F. Hebbeln and Lars A. Peterson
Email: hkaplan@foley.com; mhebbeln@foley.com; lapeterson@foley.com

<u>If to the Creditors' Committee, to</u>:

Weil, Gotshal & Manges LLP
767 Fifth Avenue

> New York, NY 10065
> Attn: Matthew S. Barr, Esq.
>      Jill Frizzley, Esq.
> Email: Matthew.Barr@weil.com; jill.frizzley@weil.com

All notices shall be effective and shall be deemed delivered: (i) if by personal delivery, delivery service or courier, on the date of delivery; (ii) if by electronic mail on the date of receipt; and (iii) if by mail, on the date of receipt.  Any party from time to time may change its address, electronic mail address, or other information for the purpose of notices to that party by giving notice specifying such change to the other party hereto.

12.7    <u>Fiscal Year</u>.

The fiscal year of the Litigation Trust will begin on the first day of January and end on the last day of December of each year.

12.8    <u>Headings</u>.

The section headings contained in this Litigation Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Litigation Trust Agreement or of any term or provision hereof.

12.9    <u>Counterparts</u>.

This Litigation Trust Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all together shall constitute one agreement.

12.10   <u>Confidentiality</u>.

The Litigation Trustee and each successor trustee and any member of the Litigation Trust Oversight Board (each a "**Covered Person**") shall, during the period that they serve in such capacity under this Litigation Trust Agreement and following either the termination of this Litigation Trust Agreement or such individual's removal, incapacity, or registration hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the assets of the Litigation Trust relates or of which it has become aware in its capacity (the "**Information**"), except to the extent disclosure is required by applicable law, order, regulation or legal process.  In the event that any Covered Person is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigation, demand or similar legal process) to disclose any Information, such Covered Person will furnish only that portion of the Information, which the Covered Person, advised by counsel, is legally required to and exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Information.

12.11    Entire Agreement.

This Litigation Trust Agreement (including the Recitals), the Final DIP Order, the Committee Settlement, the Confirmation Order, and the Plan (including the Global Settlement Term Sheet) constitute the entire agreement by and among the parties hereto with respect to the subject matter hereof, and there are no representations, warranties, covenants or obligations except as set forth herein or therein.  This Litigation Trust Agreement, the Final DIP Order, and the Plan (including the Global Settlement Term Sheet) supersede all prior and contemporaneous agreements, understandings, negotiations, discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  Except as otherwise specifically provided herein, in the Final DIP Order, the D&O Settlement Approval Order, the Confirmation Order, or in the Plan (including the Global Settlement Term Sheet), nothing in this Litigation Trust Agreement is intended or shall be construed to confer upon or to give any person other than the parties thereto and their respective heirs, administrators, executors, successors, or assigns any right to remedies under or by reason of this Litigation Trust Agreement.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Litigation Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

DEBTORS:

_____

By:

Title:

CREDITORS' COMMITTEE:

_____

By:

Title:

LITIGATION TRUSTEE:

_____

By:

Title:

## **Exhibit A**

**Litigation Trust Causes of Action**

## Exhibit B

## Litigation Trust Interests Overview

**Class A Litigation Trust Interests**

The holders of Class A Litigation Trust Interests shall be entitled to:

(a) Litigation Trust Initial Cash Assets;

(b) All proceeds of Litigation Trust Assets other than Net Avoidance Action Proceeds;

(c) The initial $63.0 million of Net Avoidance Action Proceeds recovered by the Litigation Trustee; and

(d) Fifty-two percent (52%) of any Net Avoidance Actions Proceeds recovered that exceed $63.0 million in the aggregate (the "**Additional Net Avoidance Action Proceeds**").

**Class B Litigation Trust Interests**

Holders of Class B Litigation Trust Interests in the Litigation Trust shall only be entitled to the following:

Economic Rights:

(a) Forty-eight percent (48%) of the Additional Net Avoidance Action Proceeds.

Governance Rights:

(b) Delivery of the Litigation Trust Reports and reasonable periodic access to the Litigation Trustee solely through Akin, Gump, Strauss, Hauer, & Feld LLP, counsel to the holders of the Class B Litigation Trust Interests;

(c) following the filing of any Contingency Fee Advisor Retention Notice, at the request of any of the holders of Class B Litigation Trust Interests (or their advisor at the instruction of a holder) the Litigation Trustee will provide additional information regarding the proposed contingency fee engagement (including the actual engagement letter on a confidential basis, if so requested). Holders of Class B Litigation Trust Interests (or their advisors at the instruction of a holder) shall have ten (10) Business Days from the date of the filing of the Contingency Fee Advisor Retention Notice to file with the Bankruptcy Court a pleading seeking to prohibit such retention on the grounds that such retention is not consistent with the purpose of the Global Settlement Term Sheet because the engagement does not provide a sufficient incentive for such contingency fee advisor to procure Additional Net Avoidance Action Proceeds, and the Litigation Trust, Litigation Trustee, Litigation Trust Oversight Board, or the Committee may oppose such pleading (but solely with respect to such issue), and the Bankruptcy Court shall retain jurisdiction to settle such dispute;

(d) enforcement rights with regard to any and all of the above rights (and clause (e) below) (as well as the fiduciary duties owed to all holders of Litigation Trust Interests by the Litigation Trustee and the Litigation Trust Oversight Board as set forth below); and

(e) reasonable consent rights with regard to any modifications,

amendments, or supplements of the Litigation Trust Agreement that affect the terms of the "Economic Rights" or "Governance Rights" sections above.

Holders of Class B Litigation Trust Interests shall have a "silent" interest in the Litigation Trust solely to the extent of the Additional Net Avoidance Action Proceeds and the other rights set forth in the "Economic Rights" or the "Governance Rights" sections above (*i.e.*, they shall not, among other things, appoint the Litigation Trustee or the Litigation Trust Oversight Board).

**<u>Exhibit C</u>**

**Litigation Trust Interest Transfer Form**

**EXHIBIT 7.6**

**GUC/Litigation Trust Causes of Action**

**EXHIBIT 7.6**

**SCHEDULE OF GUC/LITIGATION TRUST CAUSES OF ACTION[1]**

Article 7.5 of the Plan provides that, on the Effective Date, or on such other date as is set forth in the GUC/Litigation Trust Agreement, pursuant to section 1123(b)(3) of the Bankruptcy Code, the GUC/Litigation Trust Assets shall be transferred by the Debtors (and deemed transferred) to the GUC/Litigation Trust free and clear of all Claims, Liens, charges, encumbrances, rights, and interests, without the need for any Entity to take any further action or obtain any approval and the GUC/Litigation Trust shall be authorized as the representative of the Estates to pursue GUC/Litigation Trust Causes of Action.

"GUC/Litigation Trust Causes of Action" means all Causes of Action of the Debtors' Estates as of the Effective Date, including all Estate Avoidance Actions (other than Avoidance Actions against the Yieldcos and Avoidance Actions against the Prepetition First Lien Secured Parties and the Second Lien Creditors), to the extent such Causes of Action are not released, or settled with the consent of the Creditors' Committee, pursuant to Article 11.5 of the Plan or released or settled pursuant to an Order of the Bankruptcy Court or the Committee/BOKF Plan Settlement Term Sheet.

Article 7.6(b) of the Plan provides that the GUC/Litigation Trust, with the consent of the Reorganized Debtors to the extent such GUC/Litigation Trust Causes of Action interfere with (i) the Reorganized Debtors' collection of Earnout Proceeds, Residual Assets Proceeds, or Repatriated Cash or (ii) the continuing operations of TERP, shall determine whether to bring, settle, release, compromise, or enforce such GUC/Litigation Trust Causes of Action (or decline to do any of the foregoing), and shall not be required to seek further approval of the Bankruptcy Court for such action.  The GUC/Litigation Trust or any successors may pursue such litigation claims in accordance with the best interests of the GUC/Litigation Trust or any successor holding such rights of action.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any GUC/Litigation Trust Cause of Action against them as any indication that the GUC/Litigation Trust will not pursue any and all available GUC/Litigation Trust Causes of Action against them.  The GUC/Litigation Trust expressly reserves all rights to prosecute any and all GUC/Litigation Trust Causes of Action against any Entity, except as otherwise provided in the Plan.**  Unless any GUC/Litigation Trust Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the GUC/Litigation Trust expressly reserves all GUC/Litigation Trust Causes of Action for later adjudication.  For the avoidance of doubt, any Causes of Action pursuant to which the Reorganized Debtors seek to recover proceeds from Earnout Assets, Residual Assets, or Repatriated Cash shall be preserved and retained, and shall remain with the Reorganized Debtors and shall not be transferred to the GUC/Litigation Trust.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Amended Joint Plan of Reorganization of SunEdison, Inc. and its Debtor Affiliates, filed on June 12, 2017 [Docket No. 3314].

Notwithstanding, and without limiting the generality of, Articles 7.5 and 7.6 of the Plan, the following Exhibit 7.6-1 through Exhibit 7.6-10 include specific types of Causes of Actions expressly preserved by the Debtors and the Reorganized Debtors and transferred to the GUC/Litigation Trust, including: (i) claims related to accounts receivable and accounts payable; (ii) claims related to deposits, adequate assurance postings, and other collateral postings; (iii) claims, defenses, cross-claims, and counter-claims related to litigation and possible litigation; (iv) claims related to contracts and leases, including for setoff; (v) claims related to vendor and/or customer obligations; (vi) claims related to tax credits and refunds; (vii) claims related to intellectual property; (viii) claims related to environmental matters; (ix) claims related to current or former employee matters, and (x) claims related to potential avoidance of prepetition transfers under sections 362, 502, 510, 542, 543, 547, 548, and 550 of the Bankruptcy Code. Each such exhibit is subject to the terms of the Plan and the information provided in this Exhibit 7.6.

In addition, the Debtors expressly retain and transfer to the GUC/Litigation Trust all Claims and Causes of Action (other than Avoidance Actions against the Yieldcos and Avoidance Actions against the Prepetition First Lien Secured Parties and the Second Lien Creditors) against any Entity listed in each of the creditor matrices for each Debtor (the "Creditor Matrix"), regardless of whether such Entity is listed in the following Exhibit 7.6-1 through Exhibit 7.6-10, to the extent such Entities owe or may in the future owe money to the Debtors or the Reorganized Debtors, except to the extent Claims and Causes of Action against an Entity listed in the Creditor Matrix have been settled or released through the Plan or an order of the Bankruptcy Court.

## **Exhibit 7.6-1**

### Claims Related to Accounts Receivable and Accounts Payable

Unless otherwise released by the Plan or an order of the Bankruptcy Court, the Debtors expressly reserve and transfer to the GUC/Litigation Trust all Causes of Action against or related to all Entities that owe or that may in the future owe money to the Debtors or Reorganized Debtors, including but not limited to any claims for contribution, setoff, recoupment, or indemnification, provided, however, the Debtors expressly reserve all Causes of Action to the extent that they may be asserted as recoupment, setoff, counterclaims or otherwise  against any Entities who assert that the Debtors or Reorganized Debtors owe money to them, including but not limited to any related defenses and cross claims.

For the avoidance of doubt, the consent of the Reorganized Debtors shall be required to bring, settle, release, compromise, or enforce such GUC/Litigation Trust Causes of Action (or decline to do any of the foregoing) to the extent such GUC/Litigation Trust Causes of Action interfere with (i) the Reorganized Debtors' collection of Earnout Proceeds, Residual Assets Proceeds, or Repatriated Cash or (ii) the continuing operations of TERP.

## **Exhibit 7.6-2**

### Claims Related to Deposits, Adequate Assurance Postings, and Other Collateral Postings

Unless otherwise released by the Plan or an order of the Bankruptcy Court, the Debtors expressly reserve and transfer to the GUC/Litigation Trust all Causes of Action based in whole or in part upon any and all postings of a security deposit, adequate assurance payment, or any other type of deposit or collateral.

For the avoidance of doubt, the consent of the Reorganized Debtors shall be required to bring, settle, release, compromise, or enforce such GUC/Litigation Trust Causes of Action (or decline to do any of the foregoing) to the extent such GUC/Litigation Trust Causes of Action interfere with (i) the Reorganized Debtors' collection of Earnout Proceeds, Residual Assets Proceeds, or Repatriated Cash or (ii) the continuing operations of TERP.

## **Exhibit 7.6-3**

### Claims, Defenses, Cross-Claims, and
### Counter-Claims Related to Litigation and Possible Litigation

The following Exhibit 7.6-3 includes Entities, affiliates, subsidiaries and successors and assigns, that are party to or that the Debtors believe may become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial. Unless otherwise released by the Plan or an order of the Bankruptcy Court, the Debtors expressly reserve and transfer to the GUC/Litigation Trust all claims, defenses, cross claims, setoffs and counterclaims against or related to all Entities that are party to or that may in the future become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial, regardless of whether such Entity is included on the schedule accompanying this Exhibit 7.6-3, which schedule includes such actions to which the Debtors may be party as a plaintiff or defendant. For the avoidance of doubt, the Debtors expressly reserve and transfer to the GUC/Litigation Trust all claims, defenses, cross claims, setoffs and counterclaims against or related to all Entities arising from prepetition merger and acquisition activities, regardless of whether such Entity is included on the schedule accompanying this Exhibit 7.6-3.

**For the avoidance of doubt, no Entity may rely on its omission from Exhibit 7.6-3 as any indication that the GUC/Litigation Trust will not pursue any and all available Causes of Action against them. The Debtors and the Reorganized Debtors expressly reserve and transfer to the GUC/Litigation Trust all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.**

For the avoidance of doubt, the consent of the Reorganized Debtors shall be required to bring, settle, release, compromise, or enforce such GUC/Litigation Trust Causes of Action (or decline to do any of the foregoing) to the extent such GUC/Litigation Trust Causes of Action interfere with (i) the Reorganized Debtors' collection of Earnout Proceeds, Residual Assets Proceeds, or Repatriated Cash or (ii) the continuing operations of TERP.

**SUNEDISON, INC., ET AL – LIST OF CLAIMS**

| NAME | JURISDICTION | OTHER PARTY | CONTACT INFORMATION OF PRIMARY COUNSEL | CONTACT INFORMATION OF OTHER COUNSEL |
|---|---|---|---|---|
| ADLER | INDIA | | | |
| AEROTEK | EASTERN DISTRICT OF MISSOURI | AEROTEK, INC. | SHOOK, HARDY & BACON LLP<br>MICHAEL B. BARNETT<br>MARK MOEDRITZER<br>RICHARD F. SHEARER<br>KANSAS CITY, MO 64108-2613 | |
| AGRAWAL V. TERRAFORM GLOBAL | ND CALIFORNIA | ABHISHEK AGRAWAL | | |
| AIG V. SPG | COLORADO | AIG PROPERTY CASUALTY CO., AS SUBROGEE OF JOHN PAUL DEJORIA | DWORKIN, CHAMBERS & WILLIAMS, YORK, BENSON & EVANS, P.C.<br>GERI O'BRIEN WILLIAMS<br>LACY A. SCOTT<br>3900 E. MEXICO AVENUE<br>SUITE 1300<br>DENVER, CO 80210 | |
| AIREKO CONSTRUCTION LLC | PUERTO RICO LOCAL COURT | AIREKO CONSTRUCTION LLC | ATTN: FERNANDO E. AGRAIT<br>701 AVENIDA PONCE DE LEON<br>EDIFICIO CENTROS DE SEGUROS, OFICINA 414<br>SAN JUAN PR 00907 | |
| APPALOOSSA DERIVATIVE LITIGATION | DELAWARE CHANCERY | TERRAFORM POWER APPALOOSA INVESTMENT LIMITED PARTNERSHIP I | BALLARD SPAHR LLP<br>DAVID J. MARGULES<br>ELIZABETH A. SLOAN<br>919 NORTH MARKET STREET<br>11TH FLOOR<br>WILMINGTON, DE 19801-3034 | |

| ATLANTIC SPECIALTY INSURANCE CO. | ED MISSOURI | ATLANTIC SPECIALTY INSURANCE COMPANY | CLAYBORNE SABO & WAGNER LLP<br>JOHN SABO<br>525 WEST MAIN STREET<br>SUITE 105<br>BELLEVILLE, IL 62220 |
|---|---|---|---|
| BLOOM V. SUNEDISON | ND CALIFORNIA | CHARLES BLOOM<br>SHARON BURNSTEIN | SCOTT + SCOTT ATTORNEYS AT LAW LLP |
| BROUHA (SHEFFIELD) | VERMONT | PAUL BROUHA | DENISE ANDERSON, PLC<br>35 SOUTH MAIN STREET<br>2ND FLOOR<br>HANOVER, NH 03755 |
| BRYAN MARTINEZ | SUPERIOR COURT OF CALIFORNIA FOR THE COUNTY OF ORANGE | BRYAN MARTINEZ | STEVENS & MCMILLAN<br>HEATHER MCMILLAN<br>DANIEL P. STEVENS<br>335 CENTENNIAL WAY<br>TUSTIN, CA 92780 |
| BUTLER V. SUNEDISON | AAA ARBITRATION | MARTHA BUTLER | ELLIE BOWDEN<br>418 VISTA COURT<br>BENECIA, CA 94510 |
| CARLSBAD AIRPORT SELF STORAGE LP, ET AL. | CALIFORNIA | CARLSBAD AIRPORT SELF STORAGE, COLTON CV, LP<br>COLTON PLANO, LP<br>COLTON VB, LP<br>GSC DEL AMO, LTD<br>GSC INDIO, LTD<br>GSC IRVINE/MAIN, LLC<br>GSC RANCHO I, LLC<br>GSC VICTORVILLE LP<br>ARCADIA, LP<br>SAG OCEANSIDE, LP<br>SAG PALM DESERT, LP<br>SANDERSON J. RAY<br>WOODBRIDGE SELF STORAGE, LP | KASDAN SIMONDS WEBER & VAUGHAN LLP<br>KENNETH S. KASDAN<br>ROBERT R. BRINA<br>19900 MACARTHUR BLVD.<br>SUITE 850<br>IRVINE, CA 92612-6510 |

| | | | | |
|---|---|---|---|---|
| COELHO LITIGATION | US DISTRICT COURT - MASS.<br>CASE 1:15-CV-11927-RWZ | CARLOS A. COELHO D/B/A COELHO & SONS STONEWALLS | J. ALEXANDER WATT<br>3267 MAIN STREET<br>PO BOX 881<br>BARNSTABLE, MA 02630 | |
| CONSERFRUTTA SRL V. SUNENERGY & PARTNERS S.R.L - MEAG QTA INDEMNITY RESTINCO (ROSATO TERNA) | ITALY | CONSERFRUTTA SRL V. SUNENERGY & PARTNERS S.R.L | | |
| CREAM HILL | US DISTRICT COURT CONNECTICUT | CREAM HILL CLEAN ENERGY, LLC | URY & MOSKOW, LLC<br>NEAL I. MOSKOW<br>883 BLACK ROCK TURNPIKE<br>FAIRFIELD, CT 06825 | PAWA LAW GROUP, P.C.<br>MATTHEW F. PAWA<br>WESLEY KELMAN<br>1280 CENTRE STREET<br>SUITE 230<br>NEWTON CENTRE, MA 02459 |
| DAVID SAUNDERS | CANADA, ONTARIO | DAVID SAUNDERS | BARRISTER & SOLICITOR<br>GRAHAM F. SIRMAN<br>275 ONTARIO STREET<br>SUITE 102<br>KINGSTON, ONTARIO, K7K 2X5 | |
| DAVIDE PALUMBO (EMPLOYMENT) | ITALY | DAVIDE PALUMBO | | |
| DEL MONTE ELECTRIC, INC. | CALIFORNIA STATE COURT | DEL MONTE ELECTRIC, INC. | MCINERNEY & DILLON P.C.<br>TIMOTHY L. MCINERNEY<br>BRIAN M. JUNGINGER<br>1999 HARRISON STREET, SUITE 1700<br>OAKLAND, CA 94612 | |
| DULL ET AL V. SUNEDISON, INC. INVESTMENT COMMITTEE | ED MISSOURI | JULIE DULL<br>ERIC O'DAY | | |

3

| | | | | |
|---|---|---|---|---|
| DUPONT | DELAWARE | E.I. DU PONT DE NEMOURS AND COMPANY | DUPONT LEGAL<br>IP CORPORATE COUNSEL<br>CRP 721/2152<br>THOMAS A. STEVENS<br>974 CENTRE ROAD<br>WILMINGTON, DE 19805-1269 | ASHBY & GEDDES<br>STEPHEN J. BALICK<br>LAUREN E. MAGUIRE<br>ANDREW C. MAYO<br>500 DELAWARE AVENUE<br>PO BOX 1150<br>WILMINGTON, DE 19899<br>-AND-<br>BARTLIT BECK HERMAN<br>PALENCHAR & SCOTT LLP<br> ADAM K. MORTARA<br>JOHN C. FITZPATRICK<br>TULSI E. GAONKAR<br>54 WEST HUBBARD STREET<br>SUITE 300<br>CHICAGO, IL 60654 |
| EASTCOAST SITE WORKS, INC. | NEW JERSEY STATE COURT | EASTCOAST SITE WORK, INC. | K. JOHNSON & ASSOCIATES, LLC<br>KRISTEN E. JOHNSON<br>150 CHAMBERS BRIDGE ROAD<br>SUITE 203<br>BRICK NY 08723 | |
| EASTERN MAINE ELECTRIC (EMEC) | MAINE | EASTERN MAINE ELECTRIC COOPERATIVE, INC. | PRETI, FLAHERTY, BELIVEAU & PACHIOS, LLP<br>JOHN MCVEIGH<br>ONE CITY CENTER, PO BOX 9546<br>PORTLAND, ME 04112-9546 | |
| ECHOFIRST - FORTIS | CALIFORNIA STATE COURT (SF) | FORTIS ADVISORS LLC<br>KHOSLA VENTURES II LP<br>KHOSLA VENTURES III LP<br>SIGMA ASSOCS. 8, L.P.<br>SIGMA PARTNERS 8, L.P.<br>SIGMA INVESTORS 8, L.P.<br>ENERGY & ENVIRONMENT<br>FIRST INVESTMENT L.P. | GOODWIN PROCTOR LLP<br>MICHAEL T. JONES<br>135 COMMONWEALTH DRIVE<br>MENLO PARK, CA 94025-1105 | GOODWIN PROCTOR LLP<br>HAYES P. HYDE<br>THREE EMBARCADERO CENTER<br>24TH FLOOR<br>SAN FRANCISCO, CA 94111-9991 |

| ECKA | SOUTH CAROLINA FEDERAL | ECKA GRANULES OF AMERICA, LLC | SOWELL GRAY STEPP & LAFFITTE, LLC<br>ROBERT E. STEPP<br>BENJAMIN R. GOODING<br>1310 GADSDEN STREET<br>COLUMBIA, SC 29201 |
|---|---|---|---|
| EQUIS | SINGAPORE | EQUIS | 1 GEORGE ST #14-04<br>ONE GEORGE STREET<br>049145<br>SINGAPORE |
| EVOLVE SOLAR | UTAH STATE COURT | EVOLVE SOLAR, INC. | MICHAEL BEST & FRIEDRICK, LLP<br>EVAN S. STRASSBERG<br>6995 SOUTH UNION PARK CENTER<br>SUITE 100<br>SALT LAKE CITY, UT 98047 |
| FREEDOM GROUP OF COMPANIES V. SUNEDISON UK (WRONG ENTITY SUED) | UNITED KINGDOM | FREEDOM GROUP OF COMPANIES | 7, PHOENIX SQUARE ,WYNCOLLS ROAD<br>COLCHESTER CO4 9AS<br>UNITED KINGDOM |
| FRENCH TCPA LAWSUIT | EASTERN DISTRICT OF CALIFORNIA | NORENE FRENCH | C/O BURSOR & FISHER, P.A., L TIMOTHY FISHER, ANNICK M. PERSINGER, YEREMEY O. KRIVOSHEY, 1990 NORTH CALIFORNIA BLVD., WALNUT CREEK, CA 94596 |
| FRONTIER CAL. INC. V. SUNEDISON, INC. | CALIFORNIA STATE COURT | FRONTIER CALIFORNIA INC. (VERIZON CALIFORNIA) | DIAMOND & DRAGOJEVIC, LLP, 21860 BURBANK BLVD, STE 370, WOODLAND HILLS, CA 91367 |

| GESTAMP | TEXAS STATE COURT | GESTAMP SOLARSTEEL U.S., INC. | JUSTIN KELLY, BURR & FORMAN LLP | 3400 WELLS FARGO TOWER 420 NORTH 20TH ST. BIRMINGHAM, AL 35203 |
|---|---|---|---|---|
| GOLDEN V. CHATILA (MD DERIVATIVE ACTION) | MONTGOMERY COUNTY, MARYLAND STATE COURT | JAMES GOLDEN SUNEDISON, INC. TERRAFORM GLOBAL, INC. | MURPHY, FALCON & MURPHY WILLIAM H. MURPHY III ONE SOUTH STREET 23RD FLOOR BALTIMORE, MD 21202 | THE BROWN LAW FIRM, P.A. TIMOTHY W. BROWN 127A COVE ROAD OYSTER BAY COVE, NY 11771 |
| GREENE TWEED | IN THE DISTRICT COURT OF HARRIS COUNTY, TEXAS | GREENE TWEED & CO. | MCGUIRE WOODS LLP THOMAS M. FARRELL 600 TRAVIS STREET SUITE 7500 HOUSTON, TX 77002 | |
| GULF COAST | TEXAS | GULF COAST KAPROC, INC. D/B/A ARMSTRONG/WEATHERLY & ASSOCIATES, INC. | GRAY REED & MCGRAW, P.C. JOE VIRENE 1300 POST OAK BLVD. SUITE 2000 HOUSTON, TX 77056 | |
| HELIX ELECTRIC OF NEVADA / WISZCO, LLC | NEVADA STATE COURT | WISZCO LLC | RICHARD PEEL PEEL BRIMLEY 3333 E. SERENE AVE SUITE 200 HENDERSON, NV 89074 | |
| HILLIKER | MASSACHUSETTS STATE COURT | VICTORIA HILLIKER | PHILIP J. PUGLISI BIGELOW & PUGLISI, P.C. 11 BEACON ST. SUITE 615 BOSTON, MA 02108 | |
| HOROWITZ V. SUNEDISON ET AL. (CONSOLIDATED SUNE SECURITIES CLASS ACTION) | SDNY MDL | HOROWITZ ETC. | CAREY, DANIS & LOWE LLC JAMES ROSEMERGY 8235 FORSYTH STE. 1100 ST. LOUIS, MO 63105 | GARDY AND NOTIS, LLP MARK GRADY TOWER 56 126 EAST 56TH STREET, 8TH FLOOR NEW YORK, NY 10024 |

| | | | | |
|---|---|---|---|---|
| HYDROENERGY COMPANY LTD V. NVT LICENSES LLC | UNITED KINGDOM | HYDROENERGY COMPANY LTD | | |
| INDIVIDUAL SHAREHOLDER ACTIONS (CA) (COBALT PARTNERS, GLENVIEW CAPITAL, OMEGA CAPITAL INVESTORS, OKLAHOMA FF, KINGDON ASSOCIATES, VMT II, | SDNY | | ROBBINS GELLER DARREN J. ROBBINS JAMES JACONETTE JENNIFER NUNEZ CARINGAL SCOTT H. SAHAM SUSAN G. TAYLOR 655 W BROADWAY STE. 1900 SAN DIEGO, CA 92101 -AND- ROBBINS GELLER DENNIS J HERMAN DAVID WILLIAM HALL POST MONTGOMERY CENTER, ONE MONTGOMERY STREET, SUITE 1800 SAN FRANCISCO, CA 92104 | |
| IRON WORKERS MID-SOUTH PENSION FUND V. TERRAFORM GLOBAL | ND CALIFORNIA | IRON WORKERS MID-SOUTH PENSION FUND | | |
| JONES - ERISA | ED MO AND ST. LOUIS COUNTY, MISSOURI STATE COURT | JERRY JONES MANUEL ACOSTA | DYSTART AND TAYLOR DON R. LOLLI 4420 MADISON AVENUE SUITE 200 KANSAS CITY, MO 64111 | GAINEY MCKENNA & EGLESTON THOMAS J. MCKENNA 295 MADISON AVE. 4TH FLOOR NEW YORK, NY 10017 |
| KERN COUNTY | COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY | KERN SOLAR LLC SUNE P11L HOLDINGS LLC | 1717 ARCH STREET PHILADELPHIA, PA 19103 | VENZIE, PHILLIPS & WARSHAWER BRUCE L. PHILLIPS 2032 CHANCELLOR STREET PHILADELPHIA, PA 19103 |

| | | | |
|---|---|---|---|
| KIRKLAND AND ELLIS LLP AND ITS AFFILIATES | | | 601 LEXINGTON AVE<br>NEW YORK, NY 10022<br><br>300 NORTH LASALLE<br>CHICAGO, IL 60654 |
| KPMG LLP AND ITS AFFILIATES | | | KPMG LLP<br>AON CENTER<br>SUITE 5500<br>200 EAST RANDOLPH DRIVE<br>CHICAGO, IL 60601-6436<br><br>KPMG LLP<br>SUITE 300<br>10 SOUTH BROADWAY<br>ST. LOUIS, MO 63102-1761 |
| KUNZ V. SUNEDISON | ED MISSOURI | ROBERT KUNZ | |
| LAP - ARBITRATION | ICC ARBITRATION | BTG PACTUAL BRAZIL INFRASTRUCTURE FUND II, LP<br>P2 BRASIL PRIVATE INRRASTRUCTURE FUND II, LP<br>P2 FUND II LAP CO-INVEST LP<br>P2 LAP CO-INVEST UK, LP<br>GMR HOLDING B.V.<br>ROBERTO SAHADE | QUINN EMMANUEL URQUHART & SULLIVAN, LLP<br>MICHAEL CARLINSKY,<br>TAI-HENG CHENG<br>JOHN H. CHUN<br>51 MADISON AVENUE<br>22ND FLOOR<br>NEW YORK, NY 10010 |
| LAP - COURT | NEW YORK STATE COURT | BTG PACTUAL BRAZIL INFRASTRUCTURE FUND II, LP<br>P2 BRASIL PRIVATE INRRASTRUCTURE FUND II, LP<br>P2 FUND II LAP CO-INVEST LP<br>P2 LAP CO-INVEST UK, LP<br>GMR HOLDING B.V.<br>ROBERTO SAHADE | QUINN EMMANUEL URQUHART & SULLIVAN, LLP<br>MICHAEL CARLINSKY,<br>TAI-HENG CHENG<br>JOHN H. CHUN<br>51 MADISON AVENUE<br>22ND FLOOR<br>NEW YORK, NY 10010 |

| LENNOX | CANADIAN COURT | LENNOX SNOW FENCE CO. (1982) LTD. | |
|---|---|---|---|
| LINTON V. SUNEDISON | ED MISSOURI | ROBERT LINTON | |
| MAHARAJ (EMPLOYMENT) | CANADA | AMAN MAHARAJ | RUDNER MACDONALD LLP<br>NATALIE MACDONALD<br>2 BLOOR ST W., STE. 1005<br>TORONTO, ON M4W3E2 |
| MAILLETT | MAINE | JASON MALLIETT | GILBERT & GREIF<br>ARTHUR GREIF<br>82 COLUMBIA ST, PO BOX 2339,<br>BANGOR, ME, 04402-2339 |
| MALLIETT V. FIRST WIND (EMPLOYMENT) | MAINE STATE COURT | JASON MALLIETT | ARTHUR GREIF GILBERT & GREIF<br>82 COLUMBIA ST.<br>PO BOX 2339<br>BANGOR ME 04402-2339 |
| MARATHON | AAA ARBITRATION | MARATHON CAPITAL LLC | RIMON PC<br>RICHARD MOONEY<br>ONE EMBARCADERO CENTER<br>SUITE 400<br>SAN FRANCISCO, CA 94111 |
| MARQUITA BELCHER V. PV GURU, INC. AND SUNEDISON, INC. | ALAMEDA COUNTY, CALIFORNIA | MARQUITA BELCHER | |
| MCKINSEY RECOVERY & TRANSFORMATION SERVICES U.S., LLC AND ITS AFFILIATES | | | TWO HARBOR POINT SQUARE<br>100 WASHINGTON BOULEVARD<br>STAMFORD, CT 06902 |

| MERIDIAN | MASSACHUSETTS STATE COURT | MERIDIAN ASSOCIATES, INC. | MICLANE MIDDLETON, P.A.<br>ANDREW P. BOTTI<br>300 TRADE CENTER<br>SUITE 7000<br>WOBURN, MA 01801 | |
| MICHELE BEASLEY | ARBITRATION - JAMS | MICHELE BEASLEY | 17 HOVEY AVENUE,<br>NATICK, MA 01760 | RITZ CLARK & BEN-ASHER LLP<br>JONATHAN BEN-ASHER<br>59 MAIDEN LANE<br>39TH FLOOR<br>NEW YORK, NY 10038 |
| MILFORD WIND CORRIDOR LITIGATION | DELAWARE CHANCERY | MTW RESOURCES, LLC | RATH, YOUNG AND PIGNATELLI, P.C.<br>CURT WHITTAKER<br>1 OAKMONT DRIVE<br>CONCORD, NH 03301 | |
| MO DERIVATIVE LITIGATIONS | MISSOURI STATE COURT | TROY JACKSON | COSGROVE LAW GROUP, LLC<br>DAVID B. COSGROVE<br>DANIEL V. CONLISK<br>7733 FORSYTH BLVD.<br>SUITE 1675<br>ST. LOUIS, MO 63105 | HYNES KELLER & HERNANDEZ, LLC<br>MICHAEL J. HYNES<br>3070 BRISTOL PIKE, SUITE 112<br>1150 FIRST AVENUE, SUITE 501<br>KING OF PRUSSIA, PA 19406 |
| MOODIE V. SUNEDISON | NEW YORK – SOUTHERN | | | |
| MSSA | TEXAS | MSSA S.A.S.<br>MSSA COMPANY CORPORATION | SHIPLEY SNELL MONTGOMERY LLP<br>LAINA R. MILLER<br>712 MAIN STREET<br>SUITE 1400<br>HOUSTON, TX 77002 | MURPHY & MCGONIGLE, P.C.<br>STEVEN D. FELDMAN<br>BARRY S. GOLD<br>1185 AVENUE OF THE AMERICAS<br>21ST FLOOR<br>NEW YORK, NY 10036 |

10

| MSSA - ARBITRATION | INTERNATIONAL CHAMBER OF COMMERCE | MSSA S.A.S. MSSA COMPANY CORPORATION | MURPHY & MCGONIGLE, P.C. STEVEN D. FELDMAN BARRY S. GOLD 1185 AVENUE OF THE AMERICAS 21ST FLOOR NEW YORK, NY 10036 | |
|---|---|---|---|---|
| NEVADA STATE CONTRACTORS BOARD | NEVADA STATE CONTRACTORS BOARD | NEVADA STATE CONTRACTORS BOARD | 9670 GATEWAY DRIVE SUITE 100 RENO, NV 89521 | |
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM V. SUNEDISON | ND CALIFORNIA | OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM | | |
| ORTECH CONSULTING - CANADA | CANADA | ORTECH CONSULTING INC. | BARRISTERS & SOLICITORS MARCHALL KIREWSKIE PAUL MARSHALL 201-88 DUNN STREET OAKVILLE, ONTARIO L6J 3C | |
| PACKAGING SPECIALTIES | OHIO STATE COURT | PACKAGING SPECIALTIES, INC. | PACKAGING SPECIALTIES, INC. 300 LAKE ROAD MEDINA, OH 44256 | ULMER & BERNE LLP MICHAEL S. TUCKER LIAM J. DUNN 1660 WEST 2ND STREET SUITE 1100 CLEVELAND, OH 44113 |
| PCS | NORTH CAROLINA | PCS PHOSPHATE COMPANY, INC. PCS SALES (USA), INC. | PARKER POE ADAMS & BERNSTEIN LLP CHARLES E. RAYNAL, IV PNC PLAZA 301 FAYETTEVILLE STREET SUITE 1400, PO BOX 389 RALEIGH, NC 27601 | |
| PRICEWATERHOUSECOOPERS LLP AND ITS AFFILIATES | | | 300 MADISON AVENUE NEW YORK, NY 10017 | |

| | | | | |
|---|---|---|---|---|
| PRIME SOLAR SOURCE | NEW JERSEY STATE COURT | PRIME SOLAR SOURCE, LLC | GLUCK WALRATH LLP ANDREW BAYER 4428 RIVER VIEW PLAZA TRENTON, NJ 08611 | |
| PYRAMID HOLDINGS V. TERRAFORM GLOBAL (CONSOLIDATED TERP SECURITIES CLASS ACTION) | SDNY MDL | PYRAMID HOLDINGS, ETC. | ABRAHAM FRUCHTER & TWERSKY LLP IAN BERG 11622 EL CAMINO REAL, SUITE 100 SAN DIEGO, CA 92130 -AND- ABRAHAM FRUCHTER & TWERSKY LLP LAWRENCE DONALD LEVIT JACK GERALD FRUCHTER ONE PENN PLAZA SUITE 2805 NEW YORK, NY 10119 | ANDREWS KURTH LLP CASSANDRA LYNN PORSCH 450 LEXINGTON AVENUE NEW YORK, NY 10017 |
| REFEX | INDIA | REFEX | | |
| SHIN-ETSU/SOLIACX | OREGON STATE COURT | SHIN-ETSU QUARTZ PRODUCTS CO., LTD. | LANDERHOLM P.S. TIMOTHY J. CALDERBANK 805 BROADWAY STREET SUITE 1000, PO BOX 1086 VANCOUVER, WA 98666 | |
| SKYPOWER | CANADA | SUNE SKY 13TH SIDEROAD LP SUNE SKY RYERSE LP | LENCZNER SLAGHT ROYCE SMITH GRIFFIN LLP GLENN SMITH AND MELANIE BAIRD 130 ADELAIDE ST. WEST TORONTO ON M5H 3P5 | |
| SOLOMONEDWARDSGROUP, LLC | ST. CHARLES COUNTY, MISSOURI STATE COURT | SOLOMON EDWARDS GROUP, LLC | VINCENT D. VOGLER TWO CITYPLACE DRIVE SUITE 150, P.O. BOX 419037 ST. LOUIS, MO 63141-9037 | |

| | | | | |
|---|---|---|---|---|
| SOUTH LIGHT | CANADIAN COURT | SOUTH LIGHT DESIGN / BUILD INC. | | |
| ST. MARY'S | CANADIAN COURT | CBA READY MIX DIVISION (ST. MARY'S CEMENT INC., CANADA) | | |
| SUMEI | JAPAN | SUMEI | | |
| SUNEDISON ERISA ACTIONS - USENKO | EASTERN DISTRICT OF MISSOURI | ALEXANDER Y. USENKO | WEINHAUS & POTASHNICK MARK POTASHNICK 11500 OLIVE BLVD. SUITE 133 ST. LOUIS, MO 61341 | HARWOOD FEFFER LLP ROBERT I. HARWOOD TANYA KORKHOV 488 MADISON AVENUE NEW YORK, NY 10022 |
| SUNEDISON SOLAR POWER INDIA PRIVATE LIMITED & OTHERS | INDIA | | | |
| SUNFUSION SOLAR & SANDY ELLARD | AAA | SANDY ELLARD SUNFUSION SOLAR | 7766 ARJONS DRIVE SUITE B SAN DIEGO, CA 92126 | |
| SUNPOWER V. SUNEDISON (US) | SANTA CLARA COUNTY, CALIFORNIA SUPERIOR COURT | SUNPOWER CORPORATION | KNOBBE MARTENS OLSON BEAR LLP MICHAEL K. FRIEDLAND AMY C. CHUN ALI S. RAZAI 2040 MAIN STREET, 14TH FLOOR IRVINE, CA 92614 -AND- KNOBBE MARTENS OLSON BEAR LLP BORIS ZELKIND 12790 EL CAMINO REAL SAN DIEGO, CA 92130 | |

13

| | | | | |
|---|---|---|---|---|
| SUPPLYSOURCE DC, LLC D/B/A RE \| DISTRICT | ARLINGTON COUNTY, VIRGINIA CIRCUIT COURT | SUPPLYSOURCE DC, LLC D/B/A RE \| DISTRICT | GLEN FRANKLIN KOONTZ, KOONTZ P.C. PO BOX 1176 BERRYVILLE, VA 22611 | |
| TECHCORR USA MANAGEMENT, LLC D/B/A TECHCORR USA, LLC | IN THE DISTRICT COURT OF HARRIS COUNTY, TEXAS | TECHCORR USA MANAGEMENT, LLC D/B/A TECHCORR USA, LLC | WELSH LEBLANC LLP JARED G. LEBLANC MEGHAN K. FLANERY 8 GREENWAY PLAZA SUITE 1150 HOUSTON, TX 77046 | |
| TERRASMART, LLC V. NVT LICENSES, LLC | MASSACHUSETTS STATE COURT | TERRASMART, LLC | ADAM BASCH, BACON WILSON P.C. 33 STATE STREET SPRINGFIELD, MA 01103 | |
| TOYO TANSO | OREGON STATE COURT | TOYO TANSO USA, INC. | ATER WYNNE LLP ALEXANDRA M. SCHULMAN 1331 LOVEJOY STREET SUITE 900 PORTLAND, OR 97209-3280 | |
| UNITED ELECTRIC SUPPLY CO. | MARYLAND STATE COURT | UNITED ELECTRIC SUPPLY CO., INC. | UNITED ELECTRIC SUPPLY CO., INC. 10 BELLECOR DRIVE NEW CASTLE, DE 19720 | JILL D. CARAVAGGIO 11116 INNSBROOK WAY SUITE B IJAMSVILLE, MD 21754 |
| USENKO V. SUNEDISON ET AL. (ERISA CLAIMS) | SDNY MDY (ORIGINALLY ED MISSOURI) | ALEXANDER USENKO | HARWOOD FEFFER LLP DANIELLA QUITT ROBERT I. HARWOOD TANYA KORKHOV 488 MADISON AVENUE NEW YORK, NY 10022 | WEINHAUS AND POTASHNICK MARK A. POTASHNICK 11500 OLIVE BOULEVARD SUITE 133 ST. LOUIS, MO 63141 |
| VALLEY HOME | MASSACHUSETTS STATE COURT | VALLEY HOME IMPROVEMENT, INC. | DAVID WILENSKY PO BOX 202 NORTHAMPTON, MA 01061 | |

14

| | | | | |
|---|---|---|---|---|
| VAUGHN WIND | NEW MEXICO | J&K VICENTE LLC<br>VICENTE RANCH CO., INC.<br>JOE VICENTE | JONES, SNEAD, WERTHEIM &<br>CLIFFORD, PA<br>JERRY TODD WERTHEIM<br>1800 OLD PECOS TRAIL, PO BOX 2228<br>SANTA FE, NM 87504-2228 | |
| VIVINT SHAREHOLDER CLASS<br>ACTIONS - BUSHANSKY | UTAH<br>STATE COURT | STEPHEN BUSHANSKY | ABBOTT LAW FIR<br>NELSON ABBOTT<br>3651 NORTH 100 EAST<br>SUITE 350<br>PROVO, UT 84604 | WEISSLAW LLP<br>RICHARD A. ACOCELLI<br>MICHAEL ROGOVIN<br>KELLY KEENAN<br>1500 BROADWAY<br>16TH FLOOR<br>NEW YORK, NY 10036 |
| VIVINT SHAREHOLDER CLASS<br>ACTIONS - WILLIAMS | UTAH<br>STATE COURT | ARNIE WILLIAMS | ABBOTT LAW FIRM<br>NELSON ABBOTT<br>3651 NORTH 100 EAST<br>SUITE 350<br>PROVO, UT 84604 | RIGRODSKY & LONG, P.A.<br>SETH D. RIGRODSKY<br>BRIAN D. LONG<br>GINA M. SERRA<br>JEREMY J. RILEY<br>2 RIGHTER PARKWAY, STE. 120,<br>WILMINGTON, DE 19803<br><br>-AND-<br><br>RYAN & MANISKAS, LLP<br>KATHARINE M. RYAN<br>RICHARD A. MANISKAS<br>995 OLD EAGLE SCHOOL ROAD<br>SUITE 311<br>WAYNE, PA 19087 |
| VIVINT V. SUNEDISON | DELAWARE<br>CHANCERY | VIVINT SOLAR, INC. | WILSON SONSINI GOODRICH &<br>ROSATI<br>BRADLEY D. SORRELS<br>WILLIAM CHANDLER<br>SHANNON E. GERMAN<br>IAN LISTON<br>222 DELAWARE AVENUE<br>SUITE 800<br>WILMINGTON, DE 19801 | WILSON SONSINI GOODRICH &<br>ROSATI<br>BORIS FELDMAN<br>STEVEN SCHATZ<br>GIDEON SCHOR<br>650 PAGE MILL ROAD<br>PALO ALGO, CA 94304-1050 |

| | | | |
|---|---|---|---|
| WEGEL V. VIVINT | NEW YORK STATE | BOBBI JO WEGEL MARC WEGEL | THE DRESSLER LAW FIRM PLLC RENTON D. BERSAUD 300 WEST 38TH SSTREET 3RD FLOOR NEW YORK, NY 10018 |
| XTREME POWER | HAWAII | AIG SPECIALTY INSURANCE CO. F/K/A CHARTIS SPECIALTY INSURANCE CO. XTREME POWER, INC. XTREME POWER SYSTEMS, LLC XTREME POWER GROVE, LLC | AIG -C/O VALDEZ, WEINSTEIN, AND CUELLAR |

**Exhibit 7.6-4**

Claims Related to Contracts and Leases

Unless otherwise released by the Plan or an order of the Bankruptcy Court, the Debtors expressly reserve and transfer to the GUC/Litigation Trust all Causes of Action, based in whole or in part upon any and all contracts and leases to which the Debtors or Reorganized Debtors is a party or pursuant to which the Debtors or Reorganized Debtors has any rights whatsoever. The claims and Causes of Actions reserved include, without limitation, Causes of Action against utilities, vendors, suppliers of goods or services, insurance companies, or any other parties: (a) for overpayments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, insurance claims, recoupments, liens, or setoffs; (b) for wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations; (c) for failure to fully perform or to condition performance on additional requirements under contracts with the Debtors before the assumption or rejection, if applicable, of such contracts; (d) for payments, deposits, holdbacks, reserves, or other amounts owed by any creditor, utility, supplier, vendor, insurer, surety, factor, lender, bondholder, lessor, or other party; (e) for any liens, including mechanic's, artisan's, materialmen's, possessory, or statutory liens held by the Debtors; (f) counterclaims and defenses related to any contractual obligations; (g) any turnover actions arising under section 542 or 543 of the Bankruptcy Code; (h) for unfair competition, interference with contract or potential business advantage, breach of contract, fraud, constructive breach, breach of actual/implied covenant of good faith and fair dealing, violation of confidentiality obligations, infringement of intellectual property, or any business tort claims; and (i) any accumulated service credits, both those that may apply to future vendor invoices and those from which the Debtors may be entitled to receive a refund.

For the avoidance of doubt, the consent of the Reorganized Debtors shall be required to bring, settle, release, compromise, or enforce such GUC/Litigation Trust Causes of Action (or decline to do any of the foregoing) to the extent such GUC/Litigation Trust Causes of Action interfere with (i) the Reorganized Debtors' collection of Earnout Proceeds, Residual Assets Proceeds, or Repatriated Cash or (ii) the continuing operations of TERP.

## **Exhibit 7.6-5**

### Claims Related to Vendor and Customer Obligations

Unless otherwise released by the Plan, or an order of the Bankruptcy Court the Debtors expressly reserve and transfer to the GUC/Litigation Trust all Causes of Action against or related to all vendors that owe or may in the future owe money or other obligations to the Debtors or the Reorganized Debtors, whether for unpaid invoices; unreturned, missing, or damaged inventory; indemnification; warranties; any turnover actions arising under section 542 or 543 of the Bankruptcy Code; or any other matter whatsoever.

Unless otherwise released by the Plan or an order of the Bankruptcy Court, the Debtors expressly reserve and transfer to the GUC/Litigation Trust all Causes of Action against or related to all customers that owe or may in the future owe money to the Debtors or the Reorganized Debtors, whether for unpaid invoices; unreturned, missing, or damaged inventory, warranties, or any other matter whatsoever.

For the avoidance of doubt, the consent of the Reorganized Debtors shall be required to bring, settle, release, compromise, or enforce such GUC/Litigation Trust Causes of Action (or decline to do any of the foregoing) to the extent such GUC/Litigation Trust Causes of Action interfere with (i) the Reorganized Debtors' collection of Earnout Proceeds, Residual Assets Proceeds, or Repatriated Cash or (ii) the continuing operations of TERP.

**Exhibit 7.6-6**

Claims Related to Tax Credits and Refunds

Except as otherwise provided by the Plan or an order of the Bankruptcy Court, the Debtors expressly reserve and transfer to the GUC/Litigation Trust all Causes of Action against or related to all local, state, federal and foreign taxing authorities that owe or that may in the future owe money to the Debtors or Reorganized Debtors, including claims for refunds of overpayments or other payments, provided, however, the Debtors expressly reserve all Causes of Action to the extent that they may be asserted as recoupment, setoff, counterclaims or otherwise reduce the claim of any taxing authorities who assert that the Debtors or Reorganized Debtors owe money to them.

## **Exhibit 7.6-7**

### Claims Related to Intellectual Property

Unless otherwise released by the Plan or an order of the Bankruptcy Court, the Debtors expressly reserve and transfer to the GUC/Litigation Trust any Causes of Action for unfair competition, licensing or licensing agreements, interference with contract or potential business advantage, conversion, infringement of intellectual property, or other business tort claims. Nothing in the Plan or the Plan Supplement shall impair, enlarge, or in any way alter the equitable and legal rights, obligations, and defenses of the Debtors, the Reorganized Debtors, the GUC/Litigation Trust, their affiliates or their subsidiaries regarding their intellectual property rights, and all rights with respect thereto are expressly reserved.

Notwithstanding the foregoing, any action or inaction by the Debtors, the Reorganized Debtors, the GUC/Litigation Trust, their affiliates or their subsidiaries with respect to intellectual property rights shall not be used, invoked, or applied by any Person in any proceeding to serve as the basis to enlarge, diminish, or in any way alter or affect equitable and legal rights, obligations, and defenses including, without limitation, through the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, other estoppels (judicial, equitable, or otherwise), naked license, unreasonable delay in asserting rights, adequate remedy at law, or laches, in any dispute regarding the intellectual property rights of the Debtors, the Reorganized Debtors, the GUC/Litigation Trust, their affiliates or their subsidiaries.

For the avoidance of doubt, the consent of the Reorganized Debtors shall be required to bring, settle, release, compromise, or enforce such GUC/Litigation Trust Causes of Action (or decline to do any of the foregoing) to the extent such GUC/Litigation Trust Causes of Action interfere with (i) the Reorganized Debtors' collection of Earnout Proceeds, Residual Assets Proceeds, or Repatriated Cash or (ii) the continuing operations of TERP.

**Exhibit 7.6-8**

Claims Related to Environmental Matters

Except as otherwise provided by the Plan or an order of the Bankruptcy Court, the Debtors expressly reserve and transfer to the GUC/Litigation Trust all Causes of Action against or related to all Entities or potentially responsible parties that owe or that may in the future owe money to the Debtors or Reorganized Debtors arising out of environmental or contaminant exposure matters against landlords, lessors, environmental consultants, environmental agencies or suppliers of environmental services or goods, provided, however, the Debtors expressly reserve all Causes of Action to the extent that they may be asserted as setoff, recoupment, counterclaims, or otherwise reduce the claims of any Entities or potentially responsible parties who assert that the Debtors or Reorganized Debtors owe money to them.

**Exhibit 7.6-9**

Claims Related to Current or Former Employee Matters

Unless otherwise released by the Plan or an order of the Bankruptcy Court, the Debtors expressly reserve and transfer to the GUC/Litigation Trust all claims, defenses, cross claims, and counterclaims against or related to all current or former employees that are party to or that may in the future become party to any actions, litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial, including but not limited to, claims related to intellectual property, confidentiality obligations, employment contracts, wage and benefit overpayments, travel, contractual covenants, workers' compensation, or any alleged employee wrongdoing or misconduct, provided, however, the Debtors expressly reserve all Causes of Action to the extent that they may be asserted as recoupment, setoff, counterclaims or may otherwise reduce the claim of any former or current employees who assert or may assert that the Debtors or Reorganized Debtors owe money to them.

**Exhibit 7.6-10**

Claims Related to Potential Avoidance of Prepetition Transfers Under Sections 362, 502, 510, 542, 543, 547, 548 and 550 of the Bankruptcy Code.

Except as otherwise provided by the Plan or an order of the Bankruptcy Court, the Debtors expressly reserve and transfer to the GUC/Litigation Trust all Causes of Action against or related to all Entities for avoidance of prepetition transfers under sections 362, 502, 510, 542, 543, 547, 548, and 550 of the Bankruptcy Code (other than Avoidance Actions against the Yieldcos and Avoidance Actions against the Prepetition First Lien Secured Parties and the Second Lien Creditors), regardless of whether such Entity is included on the schedule accompanying this Exhibit 7.6-10.

**For the avoidance of doubt, no Entity may rely on its omission from Exhibit 7.6-10 as any indication that the GUC/Litigation Trust will not pursue any and all available Causes of Action against them. The Debtors and the Reorganized Debtors expressly reserve and transfer to the GUC/Litigation Trust all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.**

For the avoidance of doubt, the consent of the Reorganized Debtors shall be required to bring, settle, release, compromise, or enforce such GUC/Litigation Trust Causes of Action (or decline to do any of the foregoing) to the extent such GUC/Litigation Trust Causes of Action interfere with (i) the Reorganized Debtors' collection of Earnout Proceeds, Residual Assets Proceeds, or Repatriated Cash or (ii) the continuing operations of TERP.

For the avoidance of doubt, pursuant to the D&O Settlement Agreement, which was approved by the Bankruptcy Court pursuant to an order of the Bankruptcy Court signed on June 28, 2017 [Docket No. 3453] (the "D&O Settlement Approval Order"), the only actions described in this Exhibit 7.6-10 that are preserved with respect to the Individual Defendants (as defined in the D&O Settlement Agreement) are preference actions that may be brought under section 547 of the Bankruptcy Code.  An asterisk ("*") appears next to the name of each such Individual Defendant listed on the schedule accompanying this Exhibit 7.6-10.  To the extent any provision in the Plan (including this Plan Supplement) is inconsistent with the terms of the D&O Settlement Agreement or the D&O Settlement Approval Order, the D&O Settlement Agreement or the D&O Settlement Approval Order, as applicable, shall control.

**SunEdison Inc.**
**Retained Causes of Action Listing**
Claims Related to Potential Avoidance of Prepetition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

<span style="color:red">DRAFT- SUBJECT TO MATERIAL CHANGE</span>

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Just Energy Group, Inc. | 6345 Dixie Rd #200 | | | | Mississauga | ON | L5T 2E6 | CA |
| 1111 19th Street Association | C/O Wachovia Bank | PO Box 75373 | | | Baltimore | MD | 21275-5373 | USA |
| 1st Alliance Energy Inc. | 1100 Melody Ln Ste 114-C | | | | Roseville | CA | 95678 | USA |
| 3Megawatt Gmbh | Buchberger Str. 1 | | | | Geretsried | Geretsried | D82538 | Germany |
| 7550lad LLC | 200 South Orange Ave. Suite 1375 | | | | Orlando | FL | 32801 | USA |
| 76Sr, LLC | William J. Hanlon, Esq. | Two Seaport Lane, Suite 3 | | | Boston | MA | 02210 | USA |
| 8X8 Inc. | Dept. 8080 | | | | Los Angeles | CA | 90084-8080 | USA |
| A-1 Contractors | 8401 West Doe Avenue | | | | Visalia | CA | 93291 | USA |
| Abb Inc | 125 East County Line Rd | | | | Warminster | PA | 18974 | USA |
| Abogados Y Asesores S. De R.L. | Edificio Rofisa II | Col. Lomas del Guijarro Sur | Calle Barcelona, Bloque C, Lote 15 | | Honduras | | | HONDURAS |
| ABS Netcom, Inc. | 7034 Convoy Ct | | | | San Diego | CA | 92111-1017 | USA |
| Accent Design, PLLC | 184 C.R. Howard Road | | | | Loving | NM | 88256 | USA |
| Ace Industries Inc | 6295 Mcdonough Dr | | | | Norcross | GA | 30093 | USA |
| Adams, James E | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Addesa, Raymond Matthew | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Addleshaw Goddard | Milton Gate | 6 Chiswell Street | | | London | | EC1Y4AG | United Kingdom |
| Adecco Employment Services | Dept Ch 10838 | | | | Palatine | IL | 60055-0838 | USA |
| Adecco North America LLC | Dept Ch 10838 | | | | Palatine | IL | 60055-0838 | USA |
| Adecco Usa Inc | Dept Ch 10838 | | | | Palatine | IL | 60055-0838 | USA |
| Adler Tank Rentals | 95 123 Firmenich Way | | | | Newark | NJ | 07114 | USA |
| ADP, LLC | 1851 N. Resler | | | | El Paso | TX | 79912 | USA |
| Advanced Energy Renewables Inc | Dept La 23896 | | | | Pasadena | CA | 91185-3896 | USA |
| Advantech Corporation | 380 Fairview Way | | | | Milpitas | CA | 95035 | USA |
| Aerotek Inc | 3689 Collection Center Drive | | | | Chicago | IL | 60693 | USA |
| Aetna Life And Casualty Bermuda | 151 Farmington Ave | | | | Hartford | CT | 06156 | USA |
| Afco Credit Corp | Dept Ch 10265 | | | | Palatine | IL | 60055-0265 | USA |
| Agarwal, Sandeep | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Agile Consulting Co | 306 Blue Spruce Lane | | | | Glendale Heights | IL | 60139 | USA |
| Agilent Technologies Inc | PO Box 4026 | | | | Englewood | CO | 80155 | USA |
| Aguayo, Felix O | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Air Products & Chemicals | 5200 Blazer Parkway | | | | Dublin | OH | 43017 | USA |
| Akuo Energy SAS | 140 Av. des Champs-Élysées | | | | Paris | | 75008 | France |
| Alamosa County Treasurer | PO Box 659 | | | | Alamosa | CO | 81101 | USA |
| Albemarle Corp | 451 Florida St | | | | Baton Rouge | LA | 70801-1765 | USA |
| Albert Uresti, Mpa, Pcc | Bexar County Tax Assessor-Collect | P.O. Box 293 | | | San Antonio | TX | 78299-2903 | USA |
| Alejandro Hernandez* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Alco Farms, LLC | 55 Stevens Street | | | | Ludlow | MA | 01056 | USA |
| ALLCell Technologies, LLC | Jeremiah Schatt | 2321 W. 41st st. | | | Chicago | IL | 60609 | USA |
| Alliance Roofing Company Inc. | 630 Martin Avenue | | | | Santa Clara | CA | 95050 | USA |
| Allied Industrial Sales Inc | 3003 Pasadena Frwy Ste 100 | | | | Pasadena | TX | 77503 | USA |
| Allied Waste Svcs  Disposals | 5757A Oates Rd | | | | Houston | TX | 77078 | USA |
| Altai Capital Management, L.P. | 152 West 57th St | | | | New York | NY | 10019 | USA |
| Altran Innovacion, S.L. | C/ Campezo, 1 | | | | Madrid | | 28022 | Spain |
| Altus Group Us Inc | PO Box 12419 | | | | Newark | NJ | 07101-3519 | USA |
| Alvarado Tax And Busi Advisors LLC | 104 Calle Acuarela | | | | Guaynabo | | 00969-3506 | |
| Amazon Web Services Inc | 410 Terry Avenue North | | | | Seattle | WA | 98109-5210 | USA |
| Ameresco Inc | Attn: Dominic Palma | 111 Speen St | Ste 41 | | Framingham | MA | 01701-2000 | USA |
| American Express Company | Av. Patriotismo 635 | Col. Cd de los Deportes, Del. Benito Juárez | | | México | DF | 03710 | Mexico |
| American Telesis. Inc. | PO BOX 6659 | | | | Hilton Head Island | SC | 29938 | USA |
| Andersen, Rich Ladell | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Anderson, Jeffrey S | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Antelope Valley Cattle & Milling Co. | Milling Co. | PO Box 2468 | | | Lancaster | CA | 93539-2468 | USA |
| Antonio R. Alvarez* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Anybill (Sales And Use Tax) | 1801 Pennsylvania Avenue | Suite 7 | | | Washington | DC | 20006 | USA |
| Aon Risk Services Of Missouri | 200 East Randolph Street | | | | Chicago | IL | 60601-6436 | USA |
| Aon Risk Services, Inc | 200 East Randolph Street | | | | Chicago | IL | 60601-6436 | USA |
| Aon Risk Services, Inc. Of Illinois | 200 East Randolph Street | | | | Chicago | IL | 60601-6436 | USA |
| Apex Solar Power - Authorized Installer | 64 Main Street | | | | Queensbury | NY | 12804 | USA |
| Apogee Instruments, Inc. | 721 W 1800 N. | | | | Logan | UT | 84321 | USA |
| Applus (Shanghai) Quality | No. 3999, Xiu Pu Road, | Pudong District | | | Shanghai | 2 | 201315 | China |
| Aramark Uniform Services | Aus Central Lockbox | | | | Dallas | TX | 75373-1676 | USA |
| Archer, Henry J | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Arizona Public Service Electric Company | 4 N 5th St. Mail Station 9674 | | | | Phoenix | AZ | 85004 | USA |
| Arizona Solar Concepts | 1415 E. University Dr. Suite A109 | | | | Tempe | AZ | 85281 | USA |
| Arizona Solar Concepts-Solar | 1415 E. University Dr. Suite A109 | | | | Tempe | AZ | 85281 | USA |
| Astrom Technical Advisors S.L. | Calle Serrano 8-3 Izq | | | | Madrid | | 28001 | Spain |
| AT&T | 129128801 | P.O. Box 617 | | | Los Angeles | CA | 90060-0017 | USA |
| AT&T Mobility Solutions Services | 129128801 | P.O. Box 617 | | | Los Angeles | CA | 90060-0017 | USA |
| AT&T Teleconference Services | 129128801 | P.O. Box 617 | | | Los Angeles | CA | 90060-0017 | USA |
| Atersa Grupo Elecnor | C/Embajordores 187 | | | | Madrid | | 28045 | Spain |
| Atherton, Kenneth | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |

**SunEdison Inc.**
**Retained Causes of Action Listing**
Claims Related to Potential Avoidance of Prepetition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

<span style="color:red">DRAFT- SUBJECT TO MATERIAL CHANGE</span>

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Axial Sistemas Solares, S.L | C/Riu Vinalopo, 23. P.I. Pata del Cid. | | | | Quart de Poblet | | 46930 | Spain |
| Aztec Solar Inc | 11370 Trade Center Dr | | | | Rancho Cordova | CA | 95742 | USA |
| Bachrodt, Michael | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Bala, Deepika | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Baldwin, Charles | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Ballswood | 12500 Baltimore Avenue | | | | Beltsville | MD | 20705 | USA |
| BAM Ventures | 12181 Bluff Creek Drive | | | | Playa Vista | CA | 90094 | USA |
| Banco Popular | Attn: Cesar Luis de Santos Jiménz | 5th Floor | | | Madrid | | 28001 | Spain |
| Bank Direct Capital Finance LLC | 150 North Field Dr | | | | Lake Forest | IL | 60045-4847 | USA |
| Barnes Solar Inc. | 16560 Harbor Blvd #R | | | | Fountain Valley | CA | 92708 | USA |
| Barry-Wehmiller Design Group, Inc. | 8020 Forsyth Blvd | | | | St. Louis | MO | 63105 | USA |
| Barton, John | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Batz, Elvin M | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Bay State Solar-Nvt | 231 Weaver St | | | | Fall River | MA | 02720 | USA |
| BCPG Public Company Limited | 2098 M 12th Floor | Sukhumvit Rd | | | Bangkok | | 10110 | Thailand |
| Ben Franklin Technology Partners of Southeastern PA, Investment Arm | 4801 South Broad Street | Suite 200 | Building 100 Innovation Center | The Navy Yard | Philadelphia | PA | 19112 | USA |
| Bennett, Ryan | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Berger, Daniel | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Berhorst, Tony T | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Bes Maryland I, LLC | 113 West Monument Street | | | | Baltimore | MD | 21201 | USA |
| Best Vinyl Fence & Deck, LLC | 525 S 850 E | | | | Lehi | UT | 84043 | USA |
| Big Island Toyota, Inc | 811 Kanoelehua Ave | | | | Hilo | HI | 96720 | USA |
| Bisschoff, Garren | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Bixby Land Company | Attn Property Mgmnt | 2211 Michelson Dr Ste 1 | | | Irvine | CA | 92612 | USA |
| Blackburn, Lori Lynn | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Blackline Systems Dba Osaba Inc | 21300 Victory Blvd 12th Flr | | | | Woodland Hills | CA | 91367 | USA |
| Blome, Brian A | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Bluegill Technologies, LLC | 4097 Trailcreek Rd | | | | Riverside | CA | 92505 | USA |
| Bluewave Capital LLC | 137 Newbury St Ste 400 | | | | Boston | MA | 02116-2942 | USA |
| Bockmon & Woody Electric Co., | Inc. | PO Box 118 | | | Stockton | CA | 95201 | USA |
| Bonfiglioli Vectron Gmbh | Europark Fichtenhain B6 | | | | Krefeld | | 47807 | Germany |
| Booher, Richard Thomas | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Boone, Brett R | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Boulder County Treasurer | PO Box 471 | | | | Boulder | CO | 80306 | USA |
| Bower, Jeffrey | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Box Inc | 4440 EL Camino Real | | | | Los Altos | CA | 94022 | USA |
| Brandeis, John R | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Braux Uk Limited | The Pinnacle Station Way | | | | Crawley | WEST SUSS | RH101JH | United Kingdom |
| Brian Wuebbels* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Bright Planet Solar, Inc | 69 Milk Street, Suite 308 | | | | Westborough | MA | 01581 | USA |
| Brightcove Inc | 180 Madison Ave | | | | New York | NY | 10016 | USA |
| Brio Energy-Solar | 6655 W Sahara St. B203 | | | | Las Vegas | NV | 89146 | USA |
| Brite Energy-Solar | 1267 Windham Parkway | | | | Romeoville | IL | 60446 | USA |
| Bruce W. Kingsley | 2729 Elm Street | | | | Dighton | MA | 02715 | USA |
| BTSA Netherlands Cooperatie U.A. | Prins Bernhardplein 200 | | | | Amsterdam | | 1097 JB | Netherlands |
| Build Native, Inc. | 201 Cole Street | | | | Austin | TX | 78737 | USA |
| Burdick, Paul W | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Burlage, Julie | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Burnell Controls (Kent) Ltd T/A Burnell Switchgear & Control | 11 Masthead, Capstan Court | | | | Dartford | Kent | DA2 6QG | United Kingdom |
| Burr & Tiegs Electrical | 3888 Industry Blvd # 23 | | | | Lakeland | FL | 33811 | USA |
| Burr, Sean C | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Butler, Kevin T | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Butler, Nathan | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Bwc Burnshirt River, LLC | 137 Newbury St Ste 400 | | | | Boston | MA | 02116-2942 | USA |
| Bybee Lakes Logistics Center | UNIT 238 | | | | PORTLAND | OR | 97208-4857 | USA |
| Cadmus Group Inc | 100 5th Avenue | Suite 1 | | | Walcham | MA | 02451 | USA |
| Calhoun County Tax Commissioner | 1702 Noble Street | Suite 14 & 16 | | | Anniston | AL | 36201 | USA |
| California State Board Of Equalization | 15350 Sherman Way 250 Van Nuys | | | | Van Nuys | CA | 91406 | USA |
| Calumet Specialty Pr | 1950 N Stemmond Fwy Ste 5010 | | | | Dallas | TX | 75207 | USA |
| Campbell Scientific Inc | 815 W 1800 N | | | | Logan | UT | 84321 | USA |
| Campbell, Stephen G | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Canada Revenue Agency | 555 MacKenzie Avenue | 7th Floor | Attn: Mr. John Ossowski | | Ottawa | ON | K1A 0L5 | Canada |
| Capital Safety Services | 260 Osborne Rd. | | | | Loudonville | NY | 12211 | USA |
| Caramante, Patrick | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Carlos Domenech Zornoza* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Carreden Group, Inc | 51 JFK Parkway First Floor West | | | | Short Hills | NJ | 07078 | USA |
| Casama LLC | 15 Holmes Street | | | | Rehoboth | MA | 02769 | USA |
| Cater, John Todd | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Catherine Zoi | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Cathy Kuehnert Supplemental Needs Trust | Needs Trust | 552 32nd St | | | Virginia Beach | VA | 23451 | USA |
| CCH Inc | P.O. Box 4307 | | | | Carol Stream | IL | 60197-4307 | USA |

SunEdison Inc.
**Retained Causes of Action Listing**
Claims Related to Potential Avoidance of Prepetition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

<span style="color:red">DRAFT- SUBJECT TO MATERIAL CHANGE</span>

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| CCIC-CSA International Certification Co. Ltd | Floor 1,Building 4,889 Yishan Road | | | | Shanghai | 2 | 200233 | China |
| CDW Computer Centers Inc | 200 N Milwaukee Ave | | | | Illinois | IL | 60061 | USA |
| Celestica Hong Kong Ltd. | 13-154 F Goldlion Holdings Centre | Hong Kong Shun Circuit | Siu Lek Yuen | | Hong Kong | Shatin | | China |
| Centerpoint Engineering, Inc. | 2 Market Plaza Way | # D | | | Mechanicsburg | PA | 17055 | USA |
| Cg Power Solution Usa | 7 Century Hill Dr | | | | Latham | NY | 12110-2113 | USA |
| Cha, Bruce | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Chatham Financial Kennett - Corp | 235 Whitehorse Lane | | | | Kennett Square | PA | 19348 | USA |
| Chatila, Ahmad R * | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Chembrough Group, L.P | 2213 West Lonesome Dove | | | | Deer Park | TX | 77536 | USA |
| Chicago Title Company | 3127 Transworld Drive #130 | | | | Stockton | CA | 95206 | USA |
| Chint Power Systems | Attn: President or General Counsel | 76 Koll Center Pkwy | | | Pleasanton | CA | 94566-3106 | USA |
| Chint Solar (Hk) Co Ltd | Attn: President or General Counsel | 76 Koll Center Pkwy | | | Pleasanton | CA | 94566-3106 | USA |
| Chriso'S Tree Trimming | P.O Box 22137 | | | | Bakersfield | CA | 93390 | USA |
| Christopher Cook | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Chusak, Lee F | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Cieminis, David | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Cigna Healthcare | 25500 N Norterra Dr | | | | Phoenix | AZ | 85085-8200 | USA |
| Cintas Corporation | PO Box 650838 | | | | Dallas | TX | 75265-0838 | USA |
| Citibank N. A. Uruguay | 11000 Montevideo | | | | Misiones | | | Uruguay |
| Citiguard, Inc. | 6430 Variel Ave # 101 | | | | Woodland Hills | CA | 91367 | USA |
| City Of Brockton | Finance Office | 45 School Street | | | Brockton | MA | 02301 | USA |
| City Of Broomfield | City and County of Broomfield | PO Box 47 | | | Broomfield | CO | 80038-0407 | USA |
| City Of Fall River Tax Collector | One Govt. Center | | | | Fall River | MA | 02722 | USA |
| City Of Los Angeles Dept. Of Water & Power | 111 North Hope Street | | | | Los Angeles | CA | 90012 | USA |
| City Of Mendota | 643 Quince Street | | | | Mendota | CA | 93640 | USA |
| City Of Portland | P.O. Box 4216 | | | | Portland | OR | 97208-4216 | USA |
| City Of Santa Fe Municipal Airport | 121 Aviation Drive | | | | Santa Fe | NM | 87507 | USA |
| City Of Sherman | 220 W Mulberry St | | | | Sherman | TX | 75090-5832 | USA |
| City Of Tehachapi | 115 S. Robinson St | | | | Tehachapi | CA | 93561 | USA |
| City Of Tracy | 333 Civic Center Dr | | | | Tracy | CA | 95376 | USA |
| City Of Waterbury | 236 Grand Street | | | | Waterbury | CT | 06702 | USA |
| Citysafe Security Ltd | 353 Old Laira Road | | | | Plymouth | | | United Kingdom |
| Cj Quinones Engineering, Psc | Edif. Bucare 2050 | Calle Turquesa | | | San Juan | P.R | 00969 | USA |
| Claire Gogel* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Clarke Realty, Lp | 472 Winchester Street | | | | Keene | NH | 03431 | USA |
| Claro & Cia | Attn: Attorney Handling SunEdison matters | Av. Apoquindo 3721, 14th floor | | | Santiago | | 755 0177 | Chile |
| Clayton Borgmeyer | 2529 High School Dr | | | | Brentwood | MO | 63144 | USA |
| Clayton C. Daley Jr* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Clean Energy of America Group, Inc | 22801 Ventura Blvd # 202 | | | | Woodland Hills | CA | 91364-1222 | USA |
| Clean Harbors Enviro | 500 Battleground Road | | | | La Porte | TX | 77572 | USA |
| Cognizant Technology Solutions | 211 Quality Cirice | | | | College Station | TX | 77845-4470 | USA |
| Coleman, Peter | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Colliers International Ca, Inc | 50 California Street, Suite 1900 | | | | San Francisco | CA | 94111 | USA |
| Color Art Integrated Interiors LLC | 1325 N Warson Rd | | | | Saint Louis | MO | 63132 | USA |
| Commercial Due Diligence Services, Accounts Receivable Dept. | ces, Accounts Receivable Dept. | PO Box 73173 | | | Dallas | TX | 75373-1073 | USA |
| Commerford, Jarryd | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Complete Solar Solution Inc | 1850 Gateway Drive | Ste 45 | | | San Mateo | CA | 94404 | USA |
| Comptroller Of Income Tax | 55 Newton Road | | | | Singapore | SG | 307987 | Singapore |
| Coneco Energy LLC | 4 First Street | | | | Bridgewater | MA | 02324 | USA |
| Cook, Christpher R R | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Cooper Investment Partners | 1633 Broadway | | | | New York | NY | 10019 | USA |
| Corbin'S Electric | 4829 S 38th St, | | | | Phoenix | AZ | 85040 | USA |
| Corridor Energy, LLC | 1100 Walnut St | | | | Kansas City | MO | 64106 | USA |
| County Of Nassau Nassan County Dept. Of Public Works | 1194 Prospect Avenue | Attention: Ms. Shila Shah-Gavnoudias, P.E., | Commissioner | | Westbury | NY | 11590-2723 | USA |
| County Of San Mateo | 555 County Center | | | | Redwood City | CA | 94063 | USA |
| County Of Suffolk | 100 Veterans Memorial Highway | H. Lee Dennison Building | | | Hauppauge | NY | 11788 | USA |
| Cox, Stephen | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Crane Solutions LLC | Attn: President or General Counsel | PO Box 8478 | | | Dallas | TX | 75284-0078 | USA |
| Croswhite, Alison | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Crystal Dynamics Inc | 160 N Sandpoint Rd | | | | Mead | OK | 73449 | USA |
| Csolar Iv South, LLC | 14302 FNB Parkway | | | | Omaha | NE | 68154 | USA |
| CT Corporation | PO Box 4349 | | | | Carol Stream | IL | 60197-4349 | USA |
| Cummings, Jeremy K | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Cusick, Kerinia | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Cut-N-Edge Landscape Services | 3414 Summer Solstice | | | | Rowlett | TX | 75088 | USA |
| Cwl Crane Worldwide Transportation | Ste 13.03A 13th Fl Menara Summit, P | Subang Jaya | | | Selangor | | 47600 | Singapore |
| D.E. Shaw & Company | 1166 Avenue of the Americas | Ninth Floor | | | New York | NY | 10036 | USA |
| Dac Beachcroft | Portwall Place | Portwall Lane | | | Bristol | | BS1 9HS | United Kingdom |
| Dancel, Efren A | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Danti, Anthony M | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Datareef, LLC | 5252 N. Edgewood Drive | Suite 165 | | | Provo | UT | 84604 | USA |

**SunEdison Inc.**
**Retained Causes of Action Listing**
Claims Related to Potential Avoidance of Prepetition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

<span style="color:red">DRAFT- SUBJECT TO MATERIAL CHANGE</span>

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| David Aaron Jones | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| David G. And Laurie Faylor Family Trust | Family Trust Alaska Federal | Credit Union, 1425 7th Street | | | Victorville | CA | 92395 | USA |
| David Goldman | 4878 Harbord Drive | | | | Oakland | CA | 94618 | USA |
| David Mccoy | 865 Clark Ave | | | | Webster Groves | MO | 63119 | USA |
| David Ranhoff* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| David Sathrum | 328 Monkey Valley Hollow | | | | Kenyon | MN | 55946 | USA |
| Davis, Trevor A | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Day, Simon | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Ddr Atlantico LLC, S.E. | 352288-20083-56495 / | P.O. Box 53162 | | | Atlanta | GA | 30353-1620 | USA |
| Deaton, Shane D | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Dedeaux Inland Empire Properties | Properties | 143 South Eastman Avenue | | | Los Angeles | CA | 90023 | USA |
| Del Monte Electric Co, Inc. | Attn: Terick Albert | 6998 Sierra Ct | | | Dublin | CA | 94568-2662 | USA |
| Delouche, Douglas M | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Delta Dental | 12399 Gravois Rd | | | | Saint Louis | MO | 63127-1750 | USA |
| Demand Solutions Group LLC | Department 34281 | PO Box 39 | | | San Francisco | CA | 94139 | USA |
| Demers, Michael Kevin | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Dennis And Bonnie Mcpadden | 70 Route 106 | | | | N Springfield | VT | 05150 | USA |
| Dennis Mahoney & Sons, Inc. | P.O. Box 417 | | | | Mattapoisett | MA | 02739 | USA |
| Dertzbaugh, Timothy R | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Deutsche Bank Trust Company Americas | 16 Wall St | | | | New York | NY | 10005 | USA |
| Dewinter Group, Inc. | 1901 S. Bascom Ave. Suite 660 | | | | Campbell | CA | 95008 | USA |
| Deyo, Derek J | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Diamond, Daniel A | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Dimas, Joseph | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| District View Plaza | 644 Fernandez Juncos Avenue | Suite 31 | | | San Juan | PR | 00907-3122 | USA |
| Divine Power USA, Inc. | 3650 Blue Loop Lane | | | | Arvin | CA | 93203 | USA |
| Dixieland, LLC | 69 Wildwood Street, | | | | Wilmington | MA | 01887 | USA |
| Dno Consulting Limited | 3 Sheep Street, Highworth | | | | Wiltshire | | SN6 7AA | United Kingdom |
| Dnv Kema Renewables Inc | 1501 4th Avenue Suite 900 | | | | Seattle | WA | 98101 | USA |
| Dobbs, Daniel | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Dominion Energy | 701 East Cary Street | 20th Floor | | | Richmond | VA | 23219 | USA |
| Dominion Resources Inc. | 120 Tredegar St | | | | Richmond | VA | 23219 | USA |
| Dominion Solar Projects III, Inc. | 120 Tredegar St | | | | Richmond | VA | 23219 | USA |
| Donohue, Steven | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Dotsolved Systems, Inc | 5890 Stoneridge Dr., Ste 110 | | | | Pleasanton | CA | 94588 | USA |
| Drake, Alexander R | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Duke Energy | PO Box 70515 | | | | Charlotte | NC | 28272-0515 | USA |
| Dynasolar Services, LLC | 120 Pleasant Hill Avenue North | Suite 2 | | | Sebastopol | CA | 95472 | USA |
| Dzienkowski, Karen | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| East Asia Institute Of Management Pte Ltd | 9 AH Hood Road | | | | Singapore | SG | 329975 | Singapore |
| Eastcoast Site Work, Inc. | c/o K. Johnson & Associates, LLC | Attn: Kristen E. Johnson | 15 Chambers Bridge Road, Suite 23 | | Brick | NY | 08723 | USA |
| Ebert, William H | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Eckert Seamans Cherin & Mellott LLC | Attn: Attorney Handling SunEdison matters | 6 Grant Street | | | Pittsburgh | PA | 15219 | USA |
| Ecotricity Group Limited | Lion House | Rowcroft | Stroud | | Gloucestershire | | GL5 3BY | United Kingdom |
| Edf Energy Customer Field Services (Metering) Ltd | 255 Broadway Bexleyheath | | | | Kent | | DA6 8ET | United Kingdom |
| Edf Energy Customer Field Services Gb | 255 Broadway Bexleyheath | | | | Kent | | DA6 8ET | United Kingdom |
| Efacec Equipos Eléctricos S.L. | Natea Business Park | Avda. de la Industria n?4, Edificio 1, | Escalera 2, 2? C | | Alcobendas | | 28108 | Spain |
| Effective Environmental | 945 E Pleasant Run Road | | | | Lancaster | TX | 75146 | USA |
| Ehrhart, Lindsay | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| El-Azzi, Zeina | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Eldor Contracting Corp. | 30 Corporate Drive | | | | Holtsville | NY | 11742 | USA |
| Electric Power Systems | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Emera Incorporated | 1894 Barrington Street | Barrington Tower | | | Halifax | NS | B3J 2A8 | CA |
| Emmanuel T. Hernandez* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Employee Stock Purchase Plan | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Enercon Technologies | PO Box 665 | | | | Gray | ME | 04039 | USA |
| Enertis Inc Usa | 1750 Montgomery Street | | | | San Francisco | CA | 94111 | USA |
| Enphase Energy | PO Box 204201 | | | | Dallas | TX | 75320-4201 | USA |
| Enterprise Fleet Management Customer Billing | Customer Billing | PO Box 889 | | | Kansas City | MO | 64180-0089 | USA |
| Epic Home Solar | 3807 Pasadena Ave #120 | | | | Sacramento | CA | 95747 | USA |
| Epic Home Solar-Solar | 3807 Pasadena Ave #120 | | | | Sacramento | CA | 95747 | USA |
| Equilar Inc. | 1100 Marshall St | | | | Redwood City | CA | 94063 | USA |
| Erm-West, Inc. | 1277 Treat Blvd., Suite 500 | | | | Walnut Creek | CA | 94597 | USA |
| Esa Renewables, LLC | 4150 St. Johns Pkwy Ste 1000 | | | | Sanford | FL | 32771 | USA |
| Esm Power Limited | Attn: Peter White | Woodford House | 44 North Farm Road | Scunthorpe, N Lincolnshire | | | DN17 2AY | United Kingdom |
| Eversource | One NSTAR Way SW 3087 | | | | Westwood | MA | 02090 | USA |
| EverStream Energy Capital Management LLC | 101 California Street | | | | San Francisco | CA | 94111 | USA |
| EverStream Solar Infrastructure Fund I GP LP | 101 California Street | | | | San Francisco | CA | 94111 | USA |
| EverStream Solar Infrastructure Fund I LP | 21960 Minnetonka Boulevard | Suite 210 | | | Excelsior | MN | 55331 | USA |
| Expeditors Canada Inc | 610 Lambert Pointe Dr | | | | Hazelwood | MO | 63042 | USA |
| Expeditors International Inc | 610 Lambert Pointe Dr | | | | Hazelwood | MO | 63042 | USA |

**SunEdison Inc.**
**Retained Causes of Action Listing**
Claims Related to Potential Avoidance of Prepetition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

<span style="color:red">DRAFT- SUBJECT TO MATERIAL CHANGE</span>

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Eynon Weed Control | 600 Airport Road | | | | Oceanside | CA | 92058 | USA |
| F & F Electric, Inc. | 4105 W Ironwood Hill Drive | | | | Tucson | AZ | 85745 | USA |
| Fairbanks, Benjamin | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Federal Express | Dept La | | | | Pasadena | CA | 91185 | USA |
| Federman, Fran R. | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Feeney Wireless LLC | PO Box 2549 | | | | Eugene | OR | 97402 | USA |
| Fersa Energias Renovables SA | Av. Navarra, 14 | | | | Badalona | Barcelona | 8911 | Spain |
| Fidelity Investments Institutional | P.O. Box 770002 | | | | Cincinnati | OH | 45277 | USA |
| Figuerola, Yves | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Finch, Callan W | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| First American Title Company | 2710 Meade Ctr Dr, Bldg 6, #120 | Attn: FATSCD-41 Box 1266 | | | Los Angeles | CA | 90065 | USA |
| Fischer, William J | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Fisher Scientific Corp | 13551 Collections Ctr Dr | | | | Chicago | IL | 60693 | USA |
| Five Star Impact | 13516 Palawan Way | | | | Riverton | UT | 84065 | USA |
| Flannery, Margaret | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Flex International Asia Pacific | c/o Curtis, Mallet-Prevost, Colt & Mosle LLP | Attn: Steven J. Reisman, Esq., James V. Drew, Esq. | & Cindi M. Giglio, Esq. | 11 Park Avenue | New York | NY | 10178-0061 | USA |
| Flex Intl Europe B.V. | c/o Curtis, Mallet-Prevost, Colt & Mosle LLP | Attn: Steven J. Reisman, Esq., James V. Drew, Esq. | & Cindi M. Giglio, Esq. | 11 Park Avenue | New York | NY | 10178-0061 | USA |
| Flextronics International | c/o Curtis, Mallet-Prevost, Colt & Mosle LLP | Attn: Steven J. Reisman, Esq., James V. Drew, Esq. | & Cindi M. Giglio, Esq. | 11 Park Avenue | New York | NY | 10178-0061 | USA |
| Flextronics International Europe B.V. | c/o Curtis, Mallet-Prevost, Colt & Mosle LLP | Attn: Steven J. Reisman, Esq., James V. Drew, Esq. | & Cindi M. Giglio, Esq. | 11 Park Avenue | New York | NY | 10178-0061 | USA |
| Fong, Kendall | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Forever Green Landscaping | 375 Harvard St. | Unit G | | | Leominster | MA | 01453 | USA |
| Forlexco | 2920 N Green Valley Pkwy Ste 514 | | | | Henderson | NV | 89014 | USA |
| Foster Street Acquisition LLC | 1881 Worcester Road Suite 200 | | | | Framingham | MA | 01701 | USA |
| Fraass, Scott P | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Fraga, Bekierman E Cristiano Advoga | Rua Rodrigo Silva 26 3rd Floor | | | | Rio De Janeiro | RJ | 20.011-040 | Brazil |
| Franchise Tax Board | PO Box 2952 MS A-340 | | | | Sacramento | CA | 95812-2952 | USA |
| Francisco Perez-Gundin* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Frank W. Nichols And Celestia | 2045 North Main | | | | Cedar City | UT | 84721 | USA |
| Frankenberg, John E | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Franklin Shuttle | 207 Seacliff Way | | | | Richmond | CA | 94801 | USA |
| Fraser, Kathleen | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Freewire Broadband LLC | 7327 SW Barnes Rd  Portland OR 97225-6119 | | | | | | | |
| Friedell, Benjamin | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Fromme, Ralph H | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Fuhriman, Sean | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Fuss & O'Neill | 146 Hartford Raod | | | | Manchester | CT | 06040-5992 | USA |
| Future Perfect Studios, Inc. | 2969 Hearthstone Rd. | | | | Ellicott City | MD | 21042 | USA |
| Fyrsoft LLC | 2450 Louisiana #400-405 | | | | Houston | TX | 77006 | USA |
| Gaffey Inc | 1436 N Duck Creek Rd | | | | Cleveland | TX | 77328 | USA |
| Gailey, Blake J | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Galloway, Michael R | 455 9th St | | | | Lakeport | CA | 95453 | USA |
| Garfield County Treasurer | 109 8th Street | #24 | | | Glenwood Springs | CO | 81601 | USA |
| Gary Cosh | 185 Joslin Rd, | | | | Burlington Flats | NY | 13315 | USA |
| General Electric Company | 1 Old River Road | | | | Schenactady | NY | 12345 | NY |
| General Supply Service Inc Dba: Gexpro | dba: GEXPRO | PO Box 844 | | | Dallas | TX | 75284 | USA |
| Geocon West Inc | 6960 Flanders Drive | | | | San Diego | CA | 92121-2974 | USA |
| Georganne C. Proctor* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| George Powell | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Gestalt Collective Inc. | Megan Harris | 79 Dewar Court | | | Milton | ON | L9T 5N8 | Canada |
| Gexpro | P.O. Box No. 100275 | | | | Atlanta | GA | 30384-0275 | USA |
| Giese, Peter | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Gillespie, Robert | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Gilman, Hallie | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Global Freight Solutions Inc. | 1371 Charles Willard Street | | | | Carson | CA | 90746 | USA |
| Global Power Gas & Electric LLC | 2950 W Cypress Creek Rd Suite 100 | | | | Fort Lauderdale | FL | 33309 | USA |
| Global Resource Options, Inc | 205 Billings Farm Road, Building | | | | White River Junction | VT | 05001 | USA |
| Goldman, David S | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Google Inc. Department No 33654 | 1600 Amphitheatre Pkwy | | | | Mountain View | CA | 94043-1351 | USA |
| Gordon Handelsman | 501 Pearl Dr | | | | Saint Peters | MO | 63376 | USA |
| Gorman, Jeffrey | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Grace, Eric P | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Graf, Ricardo C | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Granite State Solar, LLC | 197 N Main Street | | | | Concord | NH | 03303 | USA |
| Green Care Companies Inc | 30100 Valley Center Rd | | | | Valley Center | CA | 92082 | USA |
| Green Mountain Power | PO Box 1915 | | | | Brattleboro | VT | 05302-1915 | USA |
| Grey Global Group Inc. | 303 2nd. Street, Suite 300 North | | | | San Francisco | CA | 94107 | USA |
| Griffith, Roger | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Grossman, Matthew R | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Gsolutionz Inc | 625 E Santa Clara Street | Suite 1 | | | Ventura | CA | 93001 | USA |
| H & E Equipment Serv | 11100 Mead Rd Ste 200 | | | | Baton Rouge | LA | 70816 | USA |
| H&H Transformer, Inc. | PO Box 273, 8075 Pontiac Street | | | | Commerce City | CO | 800370273 | USA |

SunEdison Inc.
**Retained Causes of Action Listing**
Claims Related to Potential Avoidance of Prepetition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

<span style="color:red">DRAFT- SUBJECT TO MATERIAL CHANGE</span>

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| H&G Realty Trust | 383 Main St | | | | Dunstable | MA | 01827 | USA |
| Haavind As | Bygdoy Alle 2 Pb 359 Sentrum | | | | Oslo | | 0101 | Norway |
| Habitat Aid Ltd. | Hookgate  Cottage | | | | South BrewHand | | BA10 0LQ | United Kingdom |
| Halbardier, Cory V | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Halona, Michael | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Hambright Company | Shawn Scott Hambright | 32683 Summersweet Dr | | | Winchester | CA | 92596 | USA |
| Hampton Tedder Electric Company | y MSS | PO Box 2128 | | | Montclair | CA | 91763 | USA |
| Hand, Thomas | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Handelsman, Gordon | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Hanson Bridgett Marcus Vlahos | 425 Market Street | | | | San Francisco | CA | 94105 | USA |
| Harper, Lee A | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Harris, Bryan | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Hart, John L | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Hawaii Medical Service Association | P.O. Box 29330 | | | | Honolulu | HI | 96820 | USA |
| Hawaiian Electric Company, Inc. | PO Box 2750 | | | | Honolulu | HI | 96840-0001 | USA |
| Haycock, Stephen | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Hayward Area Recreation And Park District | 1099 E Street | | | | Hayward | CA | 94541 | USA |
| Hellmann Worldwide Logistics | 10450 Doral Blvd. | | | | Miami | FL | 33178 | USA |
| Henneberg, Tom William | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Hertling, Gregory M | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Hertz | Attn: President or General Counsel | 929 W. La Cadena Dr. | | | Riverside | CA | 92501 | USA |
| Hewitt Associates LLC | P.O. Box 95135 | | | | Chicago | IL | 60694-5135 | USA |
| Hewlett Packard Co | 1030 NE Circle Blvd | | | | Corvallis | OR | 97330 | USA |
| Hodges-Mace, LLC | 5775-D Glenridge Drive, | | | | Atlanta | GA | 30328 | USA |
| Hoffman, Diana | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Hoheim, Jacob | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Hollett, Tess | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Holloway, Michaelanne K | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Honiton Energy Holdings Plc | 15 Sloane Square | 2nd Floor | | | London | | SW1W 8ER | United Kingdom |
| Houston Ship Channel | 111 East Loop North | | | | Houston | TX | 77029 | USA |
| Hsef Gb | 18 Whiteside Drive | | | | Monkton South Ayrshire | | KA9 2PU | United Kingdom |
| Hsef Seguridad Y Salud, S.L. | La Cala Mijas, Calanova Sea & Golf B1, A121 | | | | Mijas | | 29649 | Spain |
| Hunton & Williams | 200 Park Ave | | | | New York | NY | 10166 | USA |
| Hupp, Joseph M | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Hurley, Kenneth C | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Hwang-Mok Park Pc | 2-KA Taepyung-RO120 | Chung-Ku | | | Seoul | KR | 100-724 | South Korea |
| Hybrid Electric Building Technologies Irvine 2, LLC | 461 2nd Street | Suite 452 | | | San Francisco | CA | 94107 | USA |
| Iadarola, Carmine Dave | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Ibm Credit Corp | 1133 Westchester ave | | | | White Plains | NY | 10604 | USA |
| Ideematec Deutschland Gmbh | Neusling 9A, | | | | Wallerfing | DE | 94574 | Germany |
| Ilan Daskal | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Imperial County Treasurer- Tax Collector Mss | Collector MSS | 94 W. Main Street, Suite 16 | | | El Centro | CA | 92243 | USA |
| Industrial Specialty Services | 91473 Collections Center Dr | | | | Chicago | IL | 60693 | USA |
| Inelsa Uk, Ltd | Attn: Veronica Miguez Magdalena | 3 More London Riverside | | | London | | SE1 2RE | United Kingdom |
| Infinity Energy, Inc. | 1108 Tinker Road Suite 150 | | | | Rocklin | CA | 95765 | USA |
| Ingenieria Mecano S.L. | Avenida Canovas del Castillo | no 6, 1st planta | | | Malaga | | 29016 | Spain |
| Inland Revenue Authority of Singapore | 55 Newton Road, | | | | Revenue House | | 307987 | Singapore |
| Inmata Solutions Inc | 42840 Christy Steel Suite 206 | | | | Fremont | CA | 94538 | USA |
| Innovative Structural Engineering Md, Inc. | Engineering MD, INC. | 3 South Main Street | | | Bel Air | MD | 21014 | USA |
| Instalaciones Negratin Sl | Calle Capileira 14 | Poligono Industrial Del Juncaril | | | Peligros | | 18210 | Spain |
| Integra Enclosures, Inc. | Post Office Box 1870 | | | | Mentor | OH | 44061 | USA |
| Interior Architects, Inc | 500 Sansome Street, 8th Floor | | | | San Francisco | CA | 94111 | USA |
| International Equipment Leasing Inc | PO Box 150 | | | | Avenel | NJ | 07001 | USA |
| International Fidelity Insurance | 1111 Raymond Blvd | | | | Newark | NJ | 07102 | USA |
| Irrevocable Trust Of William B | 9190 West Olympic Boulevard, | Suite 49 | | | Beverly Hills | CA | 90212 | USA |
| Irvine, James R | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Jabil Assembly Poland Sp. Z.O.O | UL. Lotnicza 2 | | | | Kwidzyn | PL | 82-500 | Poland |
| Jackie Denney - Kcttc | 1115 Truxton Ave 2nd Flr | | | | Bakersfield | CA | 93301-4639 | USA |
| Jadid, Ray | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| James B. Williams* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| James W Scarrow PLLC | 4631 Chesapeake Street NW | | | | Washington | DC | 20016 | USA |
| Jan Pro Cleaning Sys | 15714 SW 72nd Ave | | | | Portland | OR | 97224 | USA |
| Jane Middaugh | P O Box 474 | | | | Belmont | CA | 94002 | USA |
| Jefferson County Treasurer | 100 Jefferson County Pkwy 2520 | | | | Golden | CO | 80419-2520 | USA |
| Jensen, David | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Jensen, Stanley | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Jeremy Avenier* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Jeremy Derek Carter | 2445 S View Parkway | | | | Yuma | AZ | 85365 | USA |
| Jgsullivan Interactive | 1600 Golf Road Suite 1200 | Corporate Center | | | Rolling Meadows | IL | 60008 | USA |
| Jiang Yin Free Newenergy Electric  Power Investment Co.,Ltd | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Jinneng Clean Energy Technology Ltd | Attn: President or General Counsel | No. 1 | | | Lvliang City | | 032100 | China |

SunEdison Inc.
Retained Causes of Action Listing
Claims Related to Potential Avoidance of Prepetition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

DRAFT- SUBJECT TO MATERIAL CHANGE

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Jive Software | 915 SW Stark Street Suite 200 | | | | Portland | OR | 97205 | USA |
| John Joven | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Johns Ben / Johns Benjamin | 2235 Banbury Circle | | | | Roseville | CA | 95661 | USA |
| Johnson Design And Construction Inc. | 4830 Calle Alto, Suite G | | | | Camarillo | CA | 93012 | USA |
| Jones, David | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Jordan, Daniel J | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Joseph David Construction & Contracting Co.,Inc. | 405 Pennsylvania Avenue | | | | Linden | NJ | 07036-2870 | USA |
| Joseph Mantisi | 9 Kimberly Ann Dr. | | | | Rochester | NY | 14606 | USA |
| Joyce/Dayton Corp. | PO Box 635789 | | | | Cincinnati | OH | 45263-5789 | USA |
| Juan Kutz Azqueta Notario | C/ Velazquez 112-3ª | | | | MADRID | | | Spain |
| Julia Blunden | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Kakareka, Natalie | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Kane, Sara | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| K-Designers | 2440 Gold River Rd | Ste 1 | | | Gold River | CA | 95670 | USA |
| Kelly Receivables Funding LLC. | 999 West Big Beaver Road | | | | Troy | MI | 48084 | USA |
| Kelly, Matthew D | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Khalifeh & Partners Lawyers | Attn: Attorney Handling SunEdison matters | Khalifeh Complex | Ibn Arabi St 3 | | | | 11181 | Jordan |
| Kim & Chang | Naeja-Dong Jongno GU223 | | | | Seoul | KR | 110720 | South Korea |
| Kingsbridge Holdings LLC | 150 N Filed Drive Suite 193 | | | | Lake Forest | IL | 60045 | USA |
| Kipp Zonen Usa Inc | 125 Wilbur Place | | | | Bohemia | NY | 11716 | USA |
| Kirkland & Ellis LLP and its affiliates | 300 North LaSalle | | | | Chicago | IL | 60654 | USA |
| Klavens Law Group, P.C. | 420 Boylston Street, | 5th Floor | | | Boston | MA | 02116 | USA |
| Klb Group Performance Everyday, S.L | dba KLB Group | Avda. Can Fatjo del Aurons, 9, planta 4 | | | Santa Cugat del Valles | | 08174 | Spain |
| Knowlton Farm Nominee Trust | 43 Estabrook Ave. | | | | Grafton | MA | 01519 | USA |
| Koh Boon Hock | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Kollengode Gopal | 3002 Whisperwave Cir | | | | Redwood City | CA | 94065 | USA |
| Kumar, Sanjeev* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Kunderer, Anthony J | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Kuzilik, Robert A | 7706 N. 17th Place | | | | Phoenix | AZ | 85020 | USA |
| Ky Huynh | 316 Casselino Drive | | | | San Jose | CA | 95136 | USA |
| La Flash Consulting LLC | Harold O. LaFlash | 326 Denton Ct. | | | Pleasanton | CA | 94566 | USA |
| LA Power Center Corp | 9862 Glenoaks Blvd | | | | Sun Valley | CA | 91352 | USA |
| La Power Center Corp - Authorized Installer-Solar | 9862 Glenoaks Blvd | | | | Sun Valley | CA | 91352 | USA |
| LA Solar Group, Inc | 16238 Raymer St | | | | Los Angeles | CA | 91406 | USA |
| Lachance, Barrett | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Lafayette Center LLC | 2 Chabot St. | | | | Westbrook | ME | 04092 | USA |
| Larkin, Daniel | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Latin America Power Holding Bv | Cerro el Plomo 5680 | Piso 12 Oficina 122 | Las Condes | | Santiago | Región Metropolitana | | Chile |
| Lauritzen, Anna | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Law Office Of Melissa Harms | Attn: Attorney Handling SunEdison matters | 7 Larkspur Landing Cir #199 | | | Larkspur | CA | 94939 | USA |
| Lazarus, Rebecca | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Lbf-94, Lc | 4565 Lake Creek Farms Rd. | | | | Heber City | UT | 84032 | USA |
| Leap Consulting | 111 Chester Avenue | | | | Toronto | ON | M4K 2Z8 | Canada |
| Leblanc, Arthur | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Leo L. Koppelman, Jr. | 45737 Pelican Lane | | | | Cleveland | MN | 56017 | USA |
| Leong, Angie | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Leschaco Inc | 15355 Vantage Parkway W Ste 195 | | | | Houston | TX | 77032 | USA |
| Lewis, Nathan | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Leyden, Thomas | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Liberty Power-Nvt | 1901 W Cypress Creek Road Ste 600 | | | | Fort Lauderdale | FL | 33303 | USA |
| Life Insurance Company Of North | 1601 Chestnut St | | | | Philadelphia | PA | 19192 | USA |
| Linde Electronics | 88299 Expedite Way | | | | Chicago | IL | 60695-0001 | USA |
| Linde Electronics And Specialty Gas | 88299 Expedite Way | | | | Chicago | IL | 60695-0001 | USA |
| Linton, Robert | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Little, Ruel | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Lockton Companies LLC | 7 Times Square Tower Ste 3802 | | | | New York | NY | 10036 | USA |
| Locus Energy, LLC | 2 Hudson Place Floor 6 | | | | Hoboken | NJ | 07030 | USA |
| Long Island Solar Solutions Inc | 22 Holiday Park Drive | | | | Centereach | NY | 11720 | USA |
| Lookingpoint Inc | 391 Taylor Blvd Ste 120 | | | | Pleasant Hill | CA | 94523 | USA |
| Lopez, Juan A | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Lori Erickson | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Los Angeles County Tax | Collector | PO Box 5418 | | | Los Angeles | CA | 90054-0018 | USA |
| Lovett Inc | 6920 NE 42nd Ave | | | | Portland | OR | 97286 | USA |
| LP Daniel Engineers & Contractors Inc. | 1347 Tavern Rd, | | | | Alpine | CA | 91901-3853 | USA |
| Lucas Enviornmental, LLC | 67 Coddington Street | Suite 24 | | | Quincy | MA | 02169 | USA |
| Lvnet LLC | 2595 Fremont Street | | | | Las Vegas | NV | 89104 | USA |
| M Bar C Construction Inc. | Attn: Shannon Niestas | 674 Rancheros Dr | | | San Marcos | CA | 92069-3005 | USA |
| M.A. Mortenson Company | 700 Meadow Ln N | | | | Minneapolis | MN | 55422-4817 | USA |
| Macqueen, Aaron | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Madison Dearborn Partners, LLC and other shareholders | 70 W Madison St | #4600 | | | Chicago | IL | 60602 | USA |
| Majjiga, Jithender | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |

SunEdison Inc.
Retained Causes of Action Listing
Claims Related to Potential Avoidance of Prepetition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

DRAFT- SUBJECT TO MATERIAL CHANGE

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Makani Nui Associates, LLC | 2158 MAIN STREET | SUITE 202 | | | WAILUKU | HI | 96793 | USA |
| Manavendra Sial* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Manufacturas Braux S.L | Paseo Arco de Ladrillo, 88 planta 1 | | | | Valladolid | | 47008 | Spain |
| Maricopa County | 501 N 44th Street | Suite 2 | | | Phoenix | AZ | 85008 | USA |
| Mark Group Management | 70 Boston Road | | | | Leicester | | LE4 1AW | United Kingdom |
| Marshall & Stevens Inc. | 355 S. Grand Avenue, Suite 1750 | | | | Los Angeles | CA | 90071 | USA |
| Marshall Hayes | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Martin Truong* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Martin, Alexander | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Martinez Acosta, Armando | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Martinez Enriquez, Francisco J | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Masek, Michael J | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Matheson, George Ed | P.O. Box 1406 | | | | Anahuac | TX | 77514 | USA |
| Matina, Tiara F | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Matlock, Cory Michael | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Matthew Herzberg* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Mattioli, Michael | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Mawhinney, Luke | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Mccann, Craig | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Mccarthy Building Companies Inc | Companies Inc | 1341 North Rock Hill Road | | | St. Louis | MO | 63124 | USA |
| Mccurdy, Brian | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Mcguire, Dennis S | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Mchugh, Michael W | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Mclaughlin, Rachel | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Mcmillan, Jeffrey | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Mercer (Us) Inc. | 4 Embarcodero Ctr  Ste 400 | | | | San Francisco | CA | 94111 | USA |
| Meridian Imaging Solutions | 5775 General Washington Drive | | | | Alexandria | VA | 22312 | USA |
| Merrilees, Craig | 366 6th St. | | | | Lake Oswego | OR | 97304-2933 | USA |
| Messer, Shane | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Michael A Kast | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Michael Alvarez | P. O. Box 1530 | | | | Ross | CA | 94957 | USA |
| Microsoft Licensing Gp | c/o Bank of America | Atn: Lockbox 842467 | 195 N. Stemmons Fwy, Ste 51 | | Dallas | TX | 75207 | USA |
| Mike Lysiak | 7430 Chateau Ridge | | | | Riverside | CA | 92506 | USA |
| Mike Owen Fabrication, Inc. | 144 E. Norris Rd. | | | | Bakersfield | CA | 93308 | USA |
| Miller Bros Solar LLC | 301 Alan Wood Road | | | | Conshohocken | PA | 19428 | USA |
| Mobile Mini, Inc. | Dept La 7144 | | | | Pasadena | CA | 91185-7144 | USA |
| Mobile Modular | 4445 E Sam Houston Pkwy S | | | | Pasadena | CA | 77505 | USA |
| Modsolar LLC | 211 N. 13th Street | 4th Floor | | | Philadelphia | PA | 19107 | USA |
| Modular Space Corporation | 12603 Collection Center Dr | | | | Chicago | IL | 60693 | USA |
| Monzon, Jose | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Mooore Mcneil LLC | 2002 Richard Jones RD A307 | | | | Nashville | TN | 37215-9998 | USA |
| Moore-Mcneil, LLC | 2002 Richard Jones Rd, Suite 307A | | | | Nashville | TN | 37215-9998 | USA |
| Moradi Family Trust | c/o Shoreline Law Corp. | Attn: Andrew Pauly | 1299 Ocean Ave, Ste. 4, | | Santa Monica | CA | 90401-1007 | USA |
| Mortenson Construction | 700 Meadow Lane N | | | | Minneapolis | MN | 55422 | USA |
| Mount Saint Mary'S Abbey | 300 Arnold Street | | | | Wrentham | MA | 02093 | USA |
| Mp Alternative Energy | Main Road No. 2 | Urja Bhawan | Shivaji Nagar | | Bhopal | Madhya Pr | 462016 | India |
| Mp Km Golding Ltd | The Nest, Butts Ln | | | | Rodney Stoke | Cheddar | BS27 3UW | United Kingdom |
| Mulcahy, Thomas | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Multnomah County Tax Collector | Assessment, Recording & Taxation | P.O. Box 2716 | | | Portland | OR | 97208-2716 | USA |
| Murdock, Wade | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| My Le | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| My Nguyen | 4297 Delacroix Court | | | | San Jose | CA | 95135 | USA |
| Nagase America Corporation, California Branch | 2880 Lakeside Drive Suite 320 | | | | Santa Clara | CA | 95054 | USA |
| Nageswara Kota | 3000 N South St | | | | Pasadena | CA | 77503 | USA |
| Namaste Solar | 4571 Broadway St. | | | | Boulder | CO | 80304 | USA |
| National Grid | Massachusetts Electric Company | 4 Sylvan Road | | | Waltham | MA | 02451 | USA |
| Negratin Renewable Sl | C/ Capileira 14, Pgno. Ind. Juncaril | | | | Peligros | | 18210 | Spain |
| Neo Solar Power | 7 Li-Hsin 3rd Rd | Hsinchu Science Park | | | Hsinchu | | 30078 | Taiwan |
| Neva Corp | 11350 Brittmoore Park Dr | | | | Houston | TX | 77041 | USA |
| Next Phase Solar Inc | 2802 | 1th Street | | | Berkeley | CA | 94710 | USA |
| NexTracker, Inc. | 6200 Paseo Padre Pkwy | | | | Fremont | CA | 94555 | USA |
| Nguyen, My | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Nice Payroll Pte Ltd | 02-01 One Fullerton | | | | Singapore | SG | 049213 | Singapore |
| Nicholas, Norman | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Nmhg Financial Services Inc | 10 Riverview Dr | | | | Denbury | CT | 06810 | USA |
| North Kern State Prison | 2737 W Cecil Ave | | | | Delano | CA | 93215 | USA |
| Northern States Metals | Post Office Box 285 | | | | Brattleboro | VT | 05320-0285 | USA |
| Nova Partners Group Inc | 1090 Water View Lane | | | | Suwanee | GA | 30024 | USA |
| Novak, Lawrence B | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| NV Construction Inc. DBA GNRG Solar | 15013 Califa St | | | | Van Nuys | CA | 91411 | USA |
| NY State Processing Center | State Processing Center | PO Box 61 | | | Albany | NY | 12261 | USA |

SunEdison Inc.
**Retained Causes of Action Listing**
Claims Related to Potential Avoidance of Prepetition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

<span style="color:red">DRAFT- SUBJECT TO MATERIAL CHANGE</span>

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Nyovanie, Prosper | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| NYSE Market | 5560 New North Drive | | | | Atlana | GA | 30328 | USA |
| Oak Leaf Energy Partners Ohio, LLC | Attn: President or General Counsel | 2645 E 2nd Ave | Ste 26 | | Denver | CO | 80206-4752 | USA |
| O'Brien, Kelly | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| OI Analytical/Xylem Inc. | 1 International Drive | | | | Rye Brook | NY | 10573 | USA |
| Olmsted, Nicholas R | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Omni Logistics, Inc. | 15912 International Plaza Drive | | | | Houston | TX | 77032 | USA |
| Omni Valley Construction Corp | 9042 Independence Ave | | | | Canoga Park | CA | 91304 | USA |
| ON Search Partners | 6240 SOM Center Rd Suite 230 | | | | Solon | OH | 44139 | USA |
| Oneenergy Development, LLC | 101 Yesler Way | Suite 41 | | | Seattle | WA | 98104 | USA |
| Onlych1Ld Ltd | 1075 Adamns Street | | | | Denver | CO | 80206 | USA |
| Orbis Terrarum Projects | C/Cronos 20,P-3, L-6 | | | | Madrid | | 28037 | Spain |
| Otoole Design Associates | 2150 Schuetz Rd Suite 205 | | | | Saint Louis | MO | 63146 | USA |
| Otr Nominee Of State Teachers Retir | Retirement System | P.O. Box 633176 | | | Cincinnati | OH | 45263-3176 | USA |
| Otr Nominee Of State Teachers Retirement System | Retirement System | P.O. Box 633176 | | | Cincinnati | OH | 45263-3176 | USA |
| Oxford Global Resources, Inc. | PO Box 3256 | | | | Boston | MA | 02241-3256 | USA |
| Pacific Gas And Electric Company | 77 Beale St | | | | San Francisco | CA | 94105 | USA |
| Pacific Industrial Electric | PO Box 9788 | | | | Brea | CA | 92822-9788 | USA |
| Pacificorp | Attn: President or General Counsel | 825 NE Multnomah St. | Ste 3 | | Portland | OR | 97232-2135 | USA |
| Pagliarulo, Laura | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Paksoy Ortak Avukat Burosu | Sun Plaza Bilim Sok No:5 Kat:14 | | | | Maslak | Maslak | 34398 | Turkey |
| Panel Claw, Inc | 1600 | Osgood St#223 | | | North Andover | MA | 01845 | USA |
| Panerali, Kristen | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Paredes, Ismael | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Park, Robin | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Pashupathy Shankar Gopalan | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Patterson Consulting, Ltd. | 2112 W. Galena Blvd. | Ste. 8-433 | | | Aurora | IL | 60506 | USA |
| Paul D. Nesvold | 3995 Quaas Ave. | | | | Watertown | MN | 55388 | USA |
| Paul Gaynor | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Paul Gendron | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Pavia E Ansaldo Studio Legale | Dell'Annunciata, 7 | | | | Milano | MI | 20121 | Italy |
| Pc Housing Inc | 8525 Camino Santa Fe Ste G | | | | San Diego | CA | 92121 | USA |
| Perkin Elmer | 13633 Collections Center Dr | | | | Chicago | IL | 60693-0136 | USA |
| Peter Blackmore* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Peterson, Karen | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Pierce, Spencer Marie | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Pinsent Masons | 50/F Central Plaza, 18 Harbour Road | | | | Hong Kong | | | Hong Kong |
| Plaisted, Joshua | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Plymouth Sand & Gravel, LLC | 61, Camelot Dr | | | | Plymouth | MA | 02360 | USA |
| Polk County Tax Collector | Clark, Campbell, Lancaster & Munson, P.A. | Attn: Tim Campbell | 5 South Florida Avenue, Suite 8 | | Lakeland | FL | 33801 | USA |
| Pope, Steven A. | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Port Terminal Railroad | 8934 Manchester St | | | | Houston | TX | 77012 | USA |
| Portland General Electric | 2 World Ttade Ctr | | | | Portland | OR | 97201 | USA |
| Power Electronics Corp. | Irene Sanhermelando Rodriguez | Leonardo Da Vinci 24-26, P.T. Paterna | | | Valencia | | 46980 | Spain |
| Power Electronics Corp. Uk Ltd. | Irene Sanhermelando Rodriguez | Leonardo Da Vinci 24-26, P.T. Paterna | | | Valencia | | 46980 | Spain |
| Power Electronics Usa, Inc. | Irene Sanhermelando Rodriguez | Leonardo Da Vinci 24-26, P.T. Paterna | | | Valencia | | 46980 | Spain |
| Power, Donald | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Powerguard Speciality Insurance Ser | 135 Main Street 21St Floor | | | | San Francisco | CA | 94105 | USA |
| Prater, Paula | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Prime Source Solar LLC | 7 Cedar Street | | | | Ramsey | NJ | 07446 | USA |
| Pro Line Shipping Inc | 9940 Baldwin Place | | | | El Monte | CA | 91731 | USA |
| Pro Tech Energy Solutions LLC | 215 Executive Drive | | | | Moorestown | NJ | 08057 | USA |
| Prologis Perth Amboy Associates, LLC | Pier 1, Bay 1 | | | | San Francisco | CA | 94111 | USA |
| Prosolia Siglo Xxi | Pol. Ind. San Viconic Ctra. | Ontinyent | | | San Vicente | | 46870 | Spain |
| Pryor, Christopher | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Psnj Holdings LLC | 12500 Baltimore Ave | | | | Beltsville | MD | 20705 | USA |
| Public Service Electric & Gas Company   Attention: Graj Pizarek | Company Attention: Graj Pizarek | 8 Park PL, MC T-8 | | | Newark | NJ | 07102 | USA |
| Puntigan, Steven T | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Pure Power Systems, Inc. | 50 Harrison St STE 210 | | | | Hoboken | NJ | 07030-6087 | USA |
| PV Guru Inc. | 1444 17th St | Ste 2 | | | Santa Monica | CA | 90404 | USA |
| Qe Solar LLC | 16 South Ave West, # 207 | | | | Cranford | NJ | 07016 | USA |
| Quanta Power Generation, Inc. | Bank of America | P.O. Box 847275 | | | Dallas | TX | 75284-7275 | USA |
| Quantum Utility Generation, LLC | 1401 McKinney St # 1880 | | | | Houston | TX | 77010 | USA |
| Quick Systems Inc. | 1400 Oakmont Pl | | | | Pittsburg | CA | 94565 | USA |
| R. M. Young Company | 2801 Aero Park Drive | | | | Traverse City | MI | 49686 | USA |
| Radiance Solar, LLC | 916 Joseph E. Lowery Blvd, | NW, Suite 2 | | | Atlanta | GA | 30318 | USA |
| Raeder, Stephen | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Raghunathan, Rohini | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Randy H. Zwirn* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Rbi Solar Inc | 5513 Vine Street | | | | Cincinnati | OH | 45217 | USA |
| Rc Hunt Electric Inc. | Attn: Jeff Kuehndahl | 1863 W Alexander St | | | West Valley City | UT | 84119-2038 | USA |

SunEdison Inc.
Retained Causes of Action Listing
Claims Related to Potential Avoidance of Prepetition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

DRAFT- SUBJECT TO MATERIAL CHANGE

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Reallygreatrate Inc | 2041 Rosecrans Suite 320 | | | | El Segundo | CA | 90245 | USA |
| Rebecca Cranna* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Recchia, Steven | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Reckord, Kevin J | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Red River Island | c/o William B. Finkelstein | Dykema Cox Smith | 1717 Main Street Suite 42 | | Dallas | TX | 75201 | USA |
| Red River Island View LLC | 1125 Ocean Ave. | | | | Lakewood | NJ | 08701 | USA |
| Redcat Systems LLC | 2344 Spruce St, STE A | | | | Boulder | CO | 80302 | USA |
| Redmond, Christian D | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Regus Management LLC | 15305 Dallas Parkway Suite Addiso | 91 Main St, | | | Dallas | TX | 75202 | USA |
| Reliant Labs, Inc. | 925 Thompson Place | | | | Sunnyvale | CA | 94085 | USA |
| Renewable Energy Test Center | Attn: President or General Counsel | 46457 Landing Parkway | | | Fremont | CA | 94538 | USA |
| Renfert, Christine J | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Resor N.V. | Attn: Attorney Handling SunEdison matters | PO Box 75965 | 17 AZ | | Amsterdam | | | The Netherlands |
| Retc, LLC | 46457 Landing Parkway | | | | Fremont | CA | 94538 | USA |
| Revelation Solar Panel | Cleaning | 6185 Magnolia Ave., Ste 26 | | | Riverside | CA | 92506 | USA |
| Ricardo Aea Ltd | Gemini Building Fermi Avenue | | | | Harwell | | OX110QR | United Kingdom |
| Richard F Greene And Barbara A | 8 Warner Street | | | | Belchertown | MA | 01007 | USA |
| Richardson, Don D | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Riggs Distler & Co Inc | P.O. Box 71592 | | | | Chicago | IL | 60694-1592 | USA |
| Rik Gadhia* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Ritch, Mueller, Heather Y Nicolau | Blvd Manuel Avila Camacho 24 | Piso 2 Lomas De Chapultepec | | | Mexico City | | | Mexico |
| Robert H. Busler | 209 Mount Vernon Ave, | | | | Chestertown | MD | 21620 | USA |
| Roger B. Brown | 3 Hickory Grove | | | | Macomb | IL | 61455 | USA |
| Rohm, Matthew N | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Rosales, Kevin D | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Rounds, Colin | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Rubcich, Marc | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Ruffell, Michael Lee | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Russell, Miles | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Russo, Stefano M | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| S3 Power | PO Box 856 | | | | Norwood | MA | 02062 | USA |
| Safeco Electric Inc. | 301 Toland Street | | | | San Francisco | CA | 94124 | USA |
| Safway Services LLC | P.O. Box 843766 | | | | Los Angeles | CA | 90084-3766 | USA |
| Salehian, Afshin | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Samuel Mclanahan | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| San Bernardino County Tax Collector | Collector | 172 W. Third Street, First Floor | | | San Bernardino | CA | 92415-0360 | USA |
| Sankaran, Ravi | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Santerno Inc. Mss | 2505 International Pkwy | | | | Virginia Beach | VA | 23452 | USA |
| Sasan Aminpour | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Scher, Clifton B | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Schneider, Cody | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Schneiders & Schneiders | 779 Washington St | | | | Canton | MA | 02021 | USA |
| School Project For Utility Rate Reduction ("Spurr") | 313 West Winton Ave. | | | | Hayward | CA | 94544-1136 | USA |
| Schulte, Lynette Michele | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Schweitzer Engineering Lab Inc | 2350 NE Hopkins Court | | | | Pullman | WA | 99163 | USA |
| Scott Edwards | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Sebastian Deschler* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Sepratech Corp | 3143 S Burnside Ave | | | | Gonzales | LA | 70737 | USA |
| Serrano, Manuel Misael | 2660 S Tensleep | | | | Yuma | AZ | 85365 | USA |
| Sgurrenergy Ltd | 225 Bath Street | | | | Glasgow | | G2 4GZ | United Kingdom |
| Shafer Landfill Trust | c/o de maximis, inc. | 45 Montbrook Lane | | | Knoxville | TN | 37919 | USA |
| Shah, Anish | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Shah, Pranav | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Shane Deaton | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Shickles, Angela Sue | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Shill, Cody | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Shine Up Solar LLC | 4177 Worthington Drive, | | | | North Highlands | CA | 95660 | USA |
| Shinsung | 8 Daewangpangyo-ro 395 | | | | Bundang-Gu Seongnam-siGyeonggi, 463-420 | | | South Korea |
| Shinsung Solar Energy Co.Ltd. | 8 Daewangpangyo-ro 395 | | | | Bundang-Gu Seongnam-siGyeonggi, 463-420 | | | South Korea |
| Siegel, Thomas | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Siemens Industry, Inc. | 100 Technology Drive | Leigh-Anne Best, Sr. Accountant | | | Alpharetta | GA | 30005 | USA |
| Siemens Plc | Princess Road, Princess Parkway | | | | Manchester | | M20 2UR | United Kingdom |
| Singletary Farm LLC | 750 Richardson Road | | | | Bladenboro | NC | 28320 | USA |
| Sino-American Silicon Products Inc. | No. 8. Industrial East Road 2 | Hsinchu Science Park | | | Hsinchu | | 30078 | Taiwan |
| Skyblue Solar-Nvt | 16 Moorside Rd | | | | West Cross | | SA3 5EY | United Kingdom |
| Slack, Stephen | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Sma America, LLC | Attn: Max Mayer | 62 West Oaks Boulevard | Ste 3 | | Rocklin | CA | 95765 | USA |
| Smith, David L | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Smith, Ian | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Smith, Patrick S | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Smith, Thomas | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |

**SunEdison Inc.**
**Retained Causes of Action Listing**
Claims Related to Potential Avoidance of Prepetition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

<span style="color:red">DRAFT- SUBJECT TO MATERIAL CHANGE</span>

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Snowline Joint Unified School District/ Attn: Andrea Mendoza | District/ Attn: Andrea Mendoza | PO Box 296 | | | Phelan | CA | 92329-6000 | USA |
| Solamerica Energy Services,LLC | 1100 Peachtree Street, Suite 2800 | | | | Atlanta | GA | 30309 | USA |
| Solaredge Technologies, Inc. | 47505 Seabridge Drive | | | | Fremont | CA | 94538 | USA |
| Solaria Corporation | 6200 Paseo Padre Parkway | | | | Fremont | CA | 94555 | USA |
| Solarpack Corporacion Technologica. | Avenida de Algorta 16, 3º | Getxo | | | Biscay | | 48992 | Spain |
| Solarview Inc. (Authorized Installer)-Nvt | 1201 Elm Street, Suite 3200 | | | | Dallas | TX | 75270 | USA |
| Solon Corporation | Attn: President or General Counsel | 695 S. Country Club Road | | | Tucson | AZ | 85756 | USA |
| Solvchem Inc | 1904 Mykawa | | | | Pearland | TX | 77581 | USA |
| Sonnedix France SAS | 5 Rue De La Roberdiere | | | | Rennes | | 35000 | France |
| Southern California Edison | Attn: President or General Counsel | 2425 S Blackstone Street | | | Tulare | CA | 93274 | USA |
| Southwest Quartz, Ltd. | 6024 Williams Dr # 110 | | | | Georgetown | TX | 78633 | USA |
| Sparkmeter, Inc. | 1616 H St Nw Suite 900 | | | | Washington | DC | 20006 | USA |
| Spectrum Energy, Inc - Authorized Installer-Nvt | 3081 Route 73 S | | | | Maple Shade | NJ | 08052 | USA |
| Speedway Commerce Center LLC | Unit No. 41 | P.O. Box 5 | | | Portland | OR | 97208-5000 | USA |
| Spencer J. Carlsen | 26 Serene Court | | | | Danville | CA | 94526 | USA |
| Spencer Odgen Ltd | 33 Charlotte Street | | | | London | LO | W1T1RR | United Kingdom |
| SPG Solar, Inc. | 1039 N McDowell Blvd Suite B | | | | Petaluma | CA | 94954 | USA |
| Spivey, Charles E | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Spradlin, Randall | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Sscop Properties, LLC | 50 West Liberty Street, | Suite 9 | | | Reno | NV | 89501 | USA |
| Standard Solar Inc | 1355 Piccard Drive | Suite 3 | | | Rockville | MD | 20850 | USA |
| Starhub Ltd | 67 Ubi Avene 1, #05-01 StarHub Gree | | | | Singapore | | | Singapore |
| State Of Hawaii Dept. Of Taxation | Department of Taxation | PO Box 1425 | | | Honolulu | HI | 96806-1425 | USA |
| Steel Connections, Inc. | 43287 Brookway Dr | | | | Temecula | CA | 92592 | USA |
| Stephen Cerrone | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Stephen O'Rourke | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Stephen, Sunil | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Stephenson, Robert S | 2332 Brazoria Road | | | | Lake Jackson | TX | 77566 | USA |
| Stepp, Ryan | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Steven Tesoriere* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Stevens, Douglas | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Stewart, Joel | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Stone Roofing Company, Inc. | 730 N. Coney Avenue | | | | Azusa | CA | 91702 | USA |
| Storrusten, Josh | 2989 Vera Cruz | | | | Corona | CA | 92882 | USA |
| Stowell, Don | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Stowell, Jesse W | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Subino Business Solutions | Bibek Das | 49 Hopyard Road #1 | | | Pleasanton | CA | 94588 | USA |
| Subsidiaries of Dominion Solar Projects III, Inc. | 120 Tredegar St | | | | Richmond | VA | 23219 | USA |
| Sullivan, Jason Paddock | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Sullivan, Peter | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Sun Power Corporation Systems | Systems | PO Box 6 | | | San Francisco | CA | 94160 | USA |
| SunE Pleasant Valley SP Owner LLC | 12500 Baltimore Avenue | | | | Beltsville | MD | 20705 | USA |
| SunEdison Semiconductor Ltd. | 501 Pearl Drive | | | | St. Peters | MO | 63376 | USA |
| Sunergy Construction Inc. | 2940 Rubidoux Blvd | | | | Riverside | CA | 92509 | USA |
| SunFusion Solar Electric, Inc | 7766 Arjons Dr | | | | San Diego | CA | 92126 | USA |
| Sungard Avantgard LLC | 23975 Park Sorrento Ste 100 | | | | Calabasas | CA | 91302 | USA |
| Sunlight Solar Energy-Nvt | 50 SE Scott St #13 | | | | Portland | OR | 97702 | USA |
| Sunsational Solar Inc-Solar | 1448 Burton Mesa | | | | Lompoc | CA | 93436 | USA |
| Superior Design International, Inc. | 250 International Drive | | | | Williamsville | NY | 14221 | USA |
| SVT 1100 Perimeter Park, LP | 591 West Putnam Ave | | | | Greenwich | CT | 06830 | USA |
| Swift Fire & Security (National) Ltd | Matthew Elliot House | 64 | | | Salford Quays | | M50 2TS | United Kingdom |
| Systems Electric LLC | 457 Lummistown Rd. | | | | Cedarville | NJ | 08311 | USA |
| T Guzy Enterprises LLC-Solar | 1463 Marchbanks Dr. #2 | | | | Walnut Creek | CA | 94598 | USA |
| Tady, Chad A | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Tangent Energy Solutions, Inc. | PO Box 1140 | | | | Kennett Square | PA | 19348 | USA |
| Tangoe, Inc | 35 Executive Blvd. | | | | Orange | CT | 06477 | USA |
| Tavrida Electric North America Inc | 115 Cliveden Ave. | | | | Delta | BC | V3M6G9 | Canada |
| Taylor, Brian E | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Taylor, Daniel | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Tech Mahindra Ltd | Plot no.22 to 25 & 27 to 34, | Hyderabad | | | Telangana State | | 500081 | India |
| Technology Finance Corp. C/O Ascentium Capital LLC | P.O. Box 301593 | | | | Dallas | TX | 75303-1593 | USA |
| Tecsolgeo | 22 Notting Hill Gate, Suite 396 | | | | London | | W113JE | United Kingdom |
| Teeling, Bruce A | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Teracai Corporation Dept. 116004 | PO Box 5211 | Dept. 1164 | | | Binghamton | NY | 13902-5211 | USA |
| Terra Nova Renewable Partners | 270 Park Avenue | | | | Manhattan | NY | 10017 | USA |
| Terrasmart LLC | 9200 Estero Park Commons Blvd | Suite 7 | | | Estero | FL | 33928 | USA |
| Tetra Tech Inc | 350 Indiana Street | Suite 5 | | | Golden | CO | 80401 | USA |
| Texas Commission On Environmental Quality | P.O. Box 13087 | | | | Austin | TX | 78711-3087 | USA |
| The Bloom Organization Of Sj | 1300 Route 73, Suite 106 | | | | Mt. Laurel | NJ | 08054 | USA |
| The Hackett Group | 1001 Brickell Bay Drive Suite 3000 | | | | Miami | FL | 33131 | USA |
| The Hertz Corporation | PO Box 121124 | | | | Dallas | TX | 75312-1124 | USA |

**SunEdison Inc.**
**Retained Causes of Action Listing**
Claims Related to Potential Avoidance of Prepetition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

DRAFT- SUBJECT TO MATERIAL CHANGE

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Thiel, James | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Thies Jr, Denzil Delane | 55 9th st | Apt 35 | | | San Francisco | CA | 94103 | USA |
| Thomas A. Coleman | 6694 Old U.S. # 1 | | | | Wadley | GA | 30477 | USA |
| Thomson Reuters Tax Accounting Inc | 1500 Spring Garden St 4th Flr | | | | Philadelphia | PA | 19130 | USA |
| Thomson Weir LLC | 420 W Capitol Avenue, | Suite 4 | | | Springfield | IL | 62704 | USA |
| Thresher Communication  & Productivity Inc | 3965 Hamilton Park Dr | | | | San Jose | CA | 95130 | USA |
| Thunderbird Logistics | Interstate Capital Corp. | P.O. Box 915183 | | | Dallas | TX | 75391-5183 | USA |
| Thuraisingham, Ravi | 10420 Majestic Court | | | | Parkland | FL | 33076 | USA |
| Thyssen Krupp Elevator | 2801 Network Blvd Ste 700 | | | | Frisco | TX | 75034 | USA |
| Timothy Derrick | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Tk Hvac & Electrical Services | 11910 N Olive St. | | | | El Mirage | AZ | 85335 | USA |
| TLT Solicitors | Redcliff Street | | | | Bristol | | BS1 6TP | United Kingdom |
| Tomaszewski, John | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Top Quality Services LLC | 66 Melbourne Street | | | | Edison | NJ | 08817 | USA |
| Tordjaman, Ilan | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Town Of Andover | Town of Andover - Office of Tax C | P.O. Box 99 | | | Andover | MA | 01810 | USA |
| Town Of Belchertown | Town of Belchertown | P.O. Box 67 | | | Belchertown | MA | 01007-0607 | USA |
| Town Of Berkley Tax Collector | 1 N Main St #3 | | | | Berkley | MA | 02779 | USA |
| Town Of Berlin | 23 Linden St., | | | | Berlin | MA | 01503 | USA |
| Town Of Dartmout | P.O. Box 981003 | | | | Boston | MA | 02298-1003 | USA |
| Town Of Franklin | 355 East Central Street | Municipal Building | | | Franklin | MA | 02038 | USA |
| Town Of Grafton | 30 Providence Rd. | | | | Grafton | MA | 01519 | USA |
| Town Of Holliston Tax Office | Tax Office | P.O. Box 6737 | | | Holliston | MA | 01746 | USA |
| Town Of Mattapoisett | P. O. Box 433 | | | | Mattapoisett | MA | 02739 | USA |
| Town Of Monson | 110 Main Street | | | | Monson | MA | 01057 | USA |
| Town Of Norton Tax Collector | icipality) Town of Norton- | Tax Collector, 7 East Main St. | | | Norton | MA | 02766 | USA |
| Town Of Plymouth | 11 Lincoln Street | | | | Plymouth | MA | 02360 | USA |
| Town Of Rutland | P.O. Box 397 | | | | Fitchburg | MA | 01420 | USA |
| Town Of Salisbury | 5 Beach Road | | | | Salisbury | MA | 01952 | USA |
| Town Of Springfield | PO Box 13 | | | | Springfield | ME | 04487 | USA |
| Town Of Sterling Tax Collector | 1114 Plainfield Pike | | | | Oneco | CT | 06373 | USA |
| Township Of Robbinsville | 1 Washington Blvd | | | | Robbinsville | NJ | 08691 | USA |
| Toyota Motor Credit | Dba: Toyota Financial Services | 191 S. Western Ave. | | | Torrance | CA | 90501 | USA |
| Tr Corona Commerce Center LLC | PO Box 310300 | Property 7411 | | | Des Moines | IA | 50331-0300 | USA |
| Transamerica | 433 Edgewoodrd NE | | | | Cedar Rapids | IA | 52499 | USA |
| Transwood Inc | 2565 St Marys Ave | | | | Omaha | NE | 68101 | USA |
| TRC Companies, Inc. | 21 Griffin Road North | | | | Windsor | CT | 06095 | USA |
| Treasury Alliance Group, LLC | 5 South Washington Street, #435 | | | | Naperville | IL | 60566 | USA |
| Trimark Associates, Inc. | 2365 Iron Point Rd Suite 100 | | | | Folsom | CA | 95630 | USA |
| Trinity Solar | 2211 Allenwood Rd | | | | Wall Township | NJ | 07719 | USA |
| Triple Crown Solar Structures Inc. | 940 Windham CT Ste 7 | | | | Youngstown | OH | 44512-5060 | USA |
| Triple E Farms LLC | 1796 VT Rte 22A | | | | Bridport | VT | 05734 | USA |
| True South Renewables Inc | 1690 Scenic Ave | | | | Costa Mesa | CA | 92626-1410 | USA |
| Ttcal-Vi-Reit-Col Jackson | 11 Lorong 3 Toa Payoh Block D | | | | Singapore | SG | 319579 | Singapore |
| Tuas Power Supply Pte Ltd | 111 Somerset Road Tripleone | | | | Somerset 13-06 | SG | 238164 | Singapore |
| Tueth Keeney Cooper Mohan & JackstADT P.C. | Jackstadt P.C. | 34 N Meramec #6 | | | St Louis | MO | 63105 | USA |
| Tulare County Tax Collector, Rita A. Woodard | 221 S Mooney Blvd #104E | | | | Visalia | CA | 93291 | USA |
| Turner, Tracey L | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Tuv Sud Cert & Test China Shh | NO. 88, Heng Tong Road | | | | Shanghai | 2 | 200070 | China |
| U S Security Associates | 200 Mansell Court 5th Floor | | | | ROSWELL | GA | 30076 | USA |
| U.S Customs And Border Protection | 6650 Telecom Dr | | | | Indianapolis | IN | 46278 | USA |
| UCPC Limited | Huntingdon Road | Mount Pleasant House | Suite A, Floor 1 | | Cambridge | | CB30RN | United Kingdom |
| United Rentals (North America) Inc. | Inc. 100 First Stamford Place, | Suite 7 | | | Stemford | CT | 06902 | USA |
| United Site Services Of California | 50 Washington St. Suite 1000 | | | | Westborough | MA | 01581 | USA |
| United Site Services Of Maryland, Inc. | 50 Washington St. Suite 1000 | | | | Westborough | MA | 01581 | USA |
| United Site Services, Inc. | 50 Washington St. Suite 1000 | | | | Westborough | MA | 01581 | USA |
| United Steelworkers International Union | 60 Blvd of the Allies | | | | Pittsburgh | PA | 15222 | USA |
| Uria Menendez Abogados S.L.P. | Principe de Vergara, 187: Plaza | | | | Madrid | 28 | 28002 | Spain |
| US Customs & Border Protection | 6650 Telecom Dr | | | | Indianapolis | IN | 46278 | USA |
| US Ecology Texas Inc | 3277 Co Rd 69 | | | | Robstown | TX | 78380 | USA |
| Us Healthworks Medical Group | 1600 Genessee Ste 700 | | | | Kansas City | MO | 64102 | USA |
| US Security Associates Inc | 200 Mansell Court | 5th Floor | | | Roswell | GA | 30076 | USA |
| UTS Environmental | 9000 Liberty Rd | | | | Houston | TX | 77028 | USA |
| V3 Electric | 4972 Robert J Mathews Parkway | | | | El Dorado Hills | CA | 95762 | USA |
| Valliere, Bernard | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Van Patten, Marc C | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Vanasse Hangen Brustlin Inc | 101 Walnut Street | Post Office Box 9151 | | | Watertown | MA | 02471 | USA |
| Vaughn Industries LLC | 1201 E. Findlay Street | | | | Carey | OH | 43316 | USA |
| Velocify, Inc | 222 N. Sepulveda Blvd, Suite 1800 | | | | El Segundo | CA | 90245 | USA |
| Vendorpass Inc | 10151 Deerwood Park Blvd Bldg 200 | | | | Jacksonville | FL | 32256 | USA |
| Verizon Communications Inc. | PO Box 660794 | | | | Dallas | TX | 75266-0794 | USA |

SunEdison Inc.
**Retained Causes of Action Listing**
Claims Related to Potential Avoidance of Prepetition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

<span style="color:red">DRAFT- SUBJECT TO MATERIAL CHANGE</span>

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Viasyn Inc | 2440 Camino Ramon | Ste 299 | | | San Ramon | CA | 94583 | USA |
| Viewqwest Pte Ltd | 200 Bukit Timah Road | | | | Singapore | SG | 229862 | Singapore |
| Vikas Desai | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Vision Service Plan | 3333 Quality Dr | | | | Rancho Cordova | CA | 95670 | USA |
| Vogt Solar | St Johns Innovation Centre | Cowley Road | | | Cambridge | | CB4 0WS | United Kingdom |
| Volpe, Michael | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Vortex Web Solutions LLC | 54665 CR 33 | | | | Middlebury | IN | 46540 | USA |
| Voss, Stephen | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Vossoughi, Sasan | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Vwr Corp | 1050 Satellite Blvd | | | | Suwanee | GA | 30024 | USA |
| W. Joe Shaw, Inc. | 4101 W Pinecrest Dr. | | | | Marshall | TX | 75670 | USA |
| Wade, Kenneth | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Wageworks, Inc. | Corporate Office | | | | San Francisco | CA | 94145-0772 | USA |
| Walters Wholesale Electric Company | 3375 E Slauson Avenue | | | | Vernon | CA | 90058 | USA |
| Watson, Michael | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Weber, Andrew J | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Webfilings LLC Dba Workiva | 2900 University Blvd | | | | Ames | IA | 50010 | USA |
| WeGen Solar Inc. | 1511 E Orangethorpe Ave | | | | Fullerton | CA | 92831 | USA |
| Wells Fargo Bank N.A. | P.O. Box 63020 | | | | San Francisco | CA | 94163 | USA |
| Wep Tower D Co L.P | c/o Greenberg Traurig, LLP | Attn: Daniel J. Ansell & Heath Kushnick | 2 Park Avenue | | New York | NY | 10166 | USA |
| Werksmans Attorneys | Private Bag 10015, Sandton | | | | Gauteng | | 2146 | South Africa |
| West Coast Solar, Inc. | 2155 Elkins Way | | | | Brentwood | CA | 94513 | USA |
| Western Oilfield Supply Co | 3404 State Road | | | | Bakersfield | CA | 93308 | USA |
| Westland Resources Inc | 4001 E Paradise Falls Drive | | | | Tucson | AZ | 85712 | USA |
| Westwood Professional Services | Inc. | 7699 Anagram Drive | | | Eden Prairie | MN | 55344 | USA |
| Wfp Tower D Co. L.P. | c/o Greenberg Traurig, LLP | Attn: Daniel J. Ansell & Heath Kushnick | 2 Park Avenue | | New York | NY | 10166 | USA |
| WGL Holdings (Washington Gas/ WGSW Inc.) | 101 Constitution Ave NW | | | | Washington DC | DC | 20001 | USA |
| White, Chris | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Wholesale Carrier Services Inc | 12350 NW 39th ST Ste 101 | | | | Coral Springs | FL | 33065-2418 | USA |
| Wilks Lukoff & Bracegridle LLC | 1300 N Grant Ave #100 | | | | Wilmington | DE | 19806 | USA |
| Willard H. Wheeler | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Williams, Garry Ian | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Williamson, Susan | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Wilmington Trust Company Fees And Payments Unit | Fees And Payments Unit | Post Office Box 8955 | | | Wilmington | DE | 19899-8955 | USA |
| Wilson, Joshua | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Winmax Systems Corporation | 1551 McCarthy Blvd. Ste 101 | | | | Milpitas | CA | 95035 | USA |
| Wolf, Christina | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Woo Jin An | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Woodlawn Associates | 1 South Wacker Drive, Suite 200 | | | | Chicago | IL | 60606 | USA |
| Woongjin Energy Company Limited | 37, Gwanpyeong-dong | Techno 2-ro | Yuseong-Gu | | Daejoen | | | Korea |
| Wright, Kimberly | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Xcel Energy | Attn: President or General Counsel | Post Office Box 9477 | | | Minneapolis | MN | 55484-9477 | USA |
| Xi'an LONGi Silicon Materials Corp | No. 388, Middle Hangtian Road | | | | Chang'an District | Xi'an City | | China |
| XOOM Solar LLC | 11208 Statesville Rd #200 | | | | Huntersville | NC | 28078 | USA |
| Yavapai County Treasurer | 1015 FAIR ST | | | | Prescott | AZ | 86305-1807 | USA |
| Youneszadeh, Sam | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Zack Darling Creative Associates LLC | 751 4th St., | | | | Santa Rosa | CA | 95404-4407 | USA |
| Zajicek, Christina | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Zero Chaos | 2807 Allen ST 730 | | | | Dallas | TX | 75204 | USA |
| Zglobal Inc. | 604 Sutter Street, Suite 250 | | | | Folsom | CA | 95630 | USA |
| Zhonghuan Semiconductor Corporation | No. 12 East Haitai Road | Huayuan Industrial Park | | | Tianjin | | | China |
| Ziemke, Michael | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |

# **EXHIBIT 8.1**

**Schedule of Assumed Contracts and Unexpired Leases**

| | Debtor Name | Contract Counterparty | Contract Counterparty Address | City | State | Postal Code | Country (if other than USA) | Description of Contract or Lease | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| 1 | SunEdison Products Singapore PTE. Ltd. | Genesem Inc. | 5-30 Juan-Dong, Nam-ku | Incheon | - | 402-835 | South Korea | Capital Equipment Purchase Agreement | TBD |
| 2 | PVT Solar, Inc. | International Fidelity Insurance Company/Allegheny Casualty Company | One Newark Center, 20th Floor | Newark | NJ | 07102-5207 | - | Cash Collateral Escrow Agreement | TBD |
| 3 | SunEdison, Inc. | Druva, Inc. | 150 Mathilda Place, Suite 450 | Sunnyvale | CA | 94086 | - | Druva Customer agreement, licensing of In-Sync software (SaaS) tool through FusionStorm. | TBD |
| 4 | NVT, LLC | Wade, Kathleen | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | Education Reimbursement Agreement | $0 |
| 5 | SunEdison, Inc. | Russell, Stephanie | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | Education Reimbursement Agreement | $0 |
| 6 | SunEdison, Inc. | The Hollard Insurance Company Limited | Hollard South Africa, PO Box 87419 | Johannesberg | Houghton | 2041 | South Africa | TBD | TBD |
| 7 | SunEdison, Inc. | SunE Green HoldCo10 Limited | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | TBD | TBD |
| 8 | Sun Edison, LLC | Zurich American Insurance Company | 1400 American Lane, Tower 2, Floor 5 | Schaumburg | IL | 60196 | - | General Agreement of Indemnity, October 14, 2010 | $0 |
| 9 | SunEdison, Inc. | Nationwide Mutual Insurance Company | 7 World Trade Center, 37th Floor | New York | NY | 10007-0033 | - | General Agreement of Indemnity, September 28, 2015 | $0 |
| 10 | SunEdison, Inc. | Chubb Companies (as defined in the Plan) | c/o Chubb 436 Walnut Street | Philadelphia | PA | 19106 | - | Chubb Insurance Contracts (as defined in the Plan) | $53,484.41 |
| 11 | SunEdison, Inc. | Argonaut Insurance Company | 77 Water Street, 17th Floor | New York | NY | 10005 | - | General Indemnity Agreement | $0 |
| 12 | NVT Licenses, LLC | One Beacon Surety Group | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | | General Indemnity Agreement, February 13, 2014 | $0 |
| 13 | SunEdison, Inc. | Emmanuel Hernandez | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | General Indemnity Agreement (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 14 | SunEdison, Inc. | Clayton Daley | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | General Indemnity Agreement (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 15 | SunEdison, Inc. | Georganne Proctor | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | General Indemnity Agreement (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 16 | SunEdison, Inc. | Claire Gogel | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | General Indemnity Agreement (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 17 | SunEdison, Inc. | James Williams | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | General Indemnity Agreement (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 18 | SunEdison, Inc. | Randy Zwirn | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | General Indemnity Agreement (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 19 | SunEdison, Inc. | Antonio Alvarez | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | General Indemnity Agreement (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 20 | SunEdison, Inc. | Martin Truong | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | General Indemnity Agreement (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 21 | Sun Edison, LLC | David Ringhofer | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | Indemnification Agreement, dated April 6, 2016 (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 22 | Sun Edison, LLC | Gregory Scallen | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | Indemnification Agreement, dated April 6, 2016 (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 23 | Sun Edison, LLC | James L. McNeill | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | Indemnification Agreement, dated April 6, 2016 (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 24 | Sun Edison, LLC | Roberto Alcabao | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | South Korea | Indemnification Agreement, dated April 6, 2016 (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 25 | SunEdison, Inc. | Frysoft LLC | 900 Middlefield Rd Ste 1 | Redwood City | CA | 94063-1681 | - | Master Consulting Agreement for Microsoft Hybrid Cloud Solution. | TBD |
| 26 | SunEdison, Inc. | Box, Inc. | 21300 Victory Blvd., 12th Floor | Woodland Hills | CA | 91367 | - | Master Services Agreement for cloud storage, 4,000 enterprise account licenses to 11/1/2016 | TBD |
| 27 | SunEdison, Inc. | Blackline | 8501 LaSalle Road, Suite 200 | Baltimore | MD | 21286 | - | Order Form | TBD |
| 28 | SunEdison, Inc. | FrontierMEDEX, Inc. dba UnitedHealthcare Global | 101 California Street | San Francisco | CA | 94111 | - | Participation Agreement (Medical and Security Access) | $0 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 29 SunEdison, Inc. | ADP, Inc. | 400 W. Covina Blvd., MS 208 | San Dimas | CA | 91773 | - | Payroll Services Agreement | TBD |
| 30 SunEdison, Inc. | CDW Direct, LLC | 200 N. Milwaukee Avenue | Vernon Hills | IL | 60061 | - | Product Sales Agreement | TBD |
| 31 SunEdison Products Singapore PTE. Ltd. | Ghosh, Ritwik | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | Relocation agreement | $0 |
| 32 SunEdison Products Singapore PTE. Ltd. | Guerrero, Ismael | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | Relocation agreement | $0 |
| 33 SunEdison, Inc. | FusionStorm | 124 Grove Street, Suite 311 | Franklin | MA | 02038 | - | Software and cloud services agreement | TBD |
| 34 SunEdison, Inc. | Iron Mountain Information Management, LLC | 11740 Missouri Bottom Road | Hazelwood | MO | 63042 | - | Storage Agreement | TBD |
| 35 SunEdison, Inc. | Box, Inc. | 900 Jefferson Avenue | Redwood City | CA | 94063 | - | Storage Service Agreement | TBD |
| 36 SunEdison, Inc. | Iron Mountain Intellectual Property Management, Inc. | PO Box 27131 | New York | NY | 10087-7131 | - | Master Beneficiary Escrow Service Agreement effective May 19, 2015 | TBD |
| 37 NVT Licenses, LLC | SunE Prestop Park Limited | Eversheds House, 70 Great Bridgewater Street | Manchester | - | M1 5ES | United Kingdom | Engineering, Procurement and Construction Agreement | $113,644.40 |
| 38 NVT Licenses, LLC | Sunsave 17 (Castle Combe) Limited | Eversheds House, 70 Great Bridgewater Street | Manchester | - | M1 5ES | United Kingdom | Engineering, Procurement and Construction Agreement | $0 |
| 39 NVT Licenses, LLC | Cambridge Solar Power Limited | Eversheds House, 70 Great Bridgewater Street | Manchester | - | M1 5ES | United Kingdom | Engineering, Procurement and Construction Agreement | $481,032.90 |
| 40 NVT Licenses, LLC | Sunsave 11 (Wrockwardine Farm) Limited | Eversheds House, 70 Great Bridgewater Street | Manchester | - | M1 5ES | United Kingdom | Engineering, Procurement and Construction Agreement | $0 |
| 41 NVT Licenses, LLC | Balls Wood Solar Limited | FORESIGHT GROUP LLP, The Shard, London Bridge Street | London | - | SE1 9SG | United Kingdom | Engineering, Procurement and Construction Agreement | $23,375.81 |
| 42 NVT Licenses, LLC | PS Manor Farm Solar Limited | FORESIGHT GROUP LLP, The Shard, London Bridge Street | London | - | SE1 9SG | United Kingdom | Engineering, Procurement and Construction Agreement | $36,699.23 |
| 43 SunEdison, Inc. | Continental Casualty Company | Attn: Samantha Tenem & Carolina M. Felix, 333 South Wabash Avenue | Chicago | IL | 60604 | - | EPL Policy (as defined in the Plan) | $0 |
| 44 SunEdison, Inc. | ACE Insurance Company | Attn: John F. Varley III, 436 Walnut Street | Philadelphia | PA | 19106 | - | D&O Insurance (as defined in the Plan) | $0 |
| 45 SunEdison, Inc. | National Union Fire Insurance Co. | Attn: Svetlana Novik, 175 Water Street 18th Floor | New York | NY | 10038 | - | D&O Insurance (as defined in the Plan) | $0 |
| 46 SunEdison, Inc. | Beazley Insurance Company | 1270 Ave of the Americas # 12 | New York | NY | 10020 | - | D&O Insurance (as defined in the Plan) | $0 |
| 47 SunEdison, Inc. | Freedom Specialty Insurance Co. | Attn: Michael Walder, 250 Greenwich St | New York | NY | 10007 | - | D&O Insurance (as defined in the Plan) | $0 |
| 48 SunEdison, Inc. | Starr Indemnity & Liability Co. | Attn: Sophie Seibert, 399 Park Avenue, 8th Fl | New York | NY | 10022 | - | D&O Insurance (as defined in the Plan) | $0 |
| 49 SunEdison, Inc. | National Union Fire Insurance Co. | Attn: Svetlana Novik, 175 Water Street 18th Floor | New York | NY | 10038 | - | D&O Insurance (as defined in the Plan) | $0 |
| 50 SunEdison, Inc. | Old Republic Insurance Co. | Attn: Michael Early, 133 Oakland Ave | Greensburg | PA | 15601 | - | D&O Insurance (as defined in the Plan) | $0 |
| 51 SunEdison, Inc. | National Union Fire Insurance Co. | Attn: Svetlana Novik, 175 Water Street 18th Floor | New York | NY | 10038 | - | D&O Insurance (as defined in the Plan) | $0 |
| 52 SunEdison, Inc. | Beazley Insurance Company | 1270 Ave of the Americas # 12 | New York | NY | 10020 | - | D&O Insurance (as defined in the Plan) | $0 |
| 53 SunEdison, Inc. | Everest National Insurance Co. | Attn: Brendan J. McCartney, 477 Martinsville Rd | Liberty Corner | NJ | 07938 | - | D&O Insurance (as defined in the Plan) | $0 |
| 54 SunEdison, Inc. | Endurance American Insurance Co. | Attn: Michael K. Rappaport & John Minett, 333 Westchester Ave | West Harrison | NY | 10604 | - | D&O Insurance (as defined in the Plan) | $0 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 55 | SunEdison, Inc. | QBE Insurance Co. | Attn: Underwriting, Wall Street Plaza, 88 Pine Street, 18th Floor | New York | NY | 10005 | - | D&O Insurance (as defined in the Plan) | $0 |
| 56 | SunEdison, Inc. | AXIS Insurance Co. | Attn: Ari Magedoff, 11680 Great Oaks Way, Ste 500 | Alpharetta | GA | 30022 | - | D&O Insurance (as defined in the Plan) | $0 |
| 57 | SunEdison, Inc. | Liberty Insurance Underwriters Co. | 55 Water Street, 18th Fl. | New York | NY | 10041 | - | D&O Insurance (as defined in the Plan) | $0 |
| 58 | SunEdison, Inc. | Endurance American Insurance Co. | Attn: Michael K. Rappaport & John Minett, 333 Westchester Ave | West Harrison | NY | 10604 | - | D&O Insurance (as defined in the Plan) | $0 |
| 59 | SunEdison, Inc. | XL Specialty Insurance Co. | Attn: Marc DeSteno, 100 Constitution Plaza # 15 | Hartford | CT | 06103 | - | D&O Insurance (as defined in the Plan) | $0 |
| 60 | SunEdison, Inc. | Berkley Insurance Co. | Attn: Helaine Pruzan, 475 Steamboat Rd # 1 | Greenwich | CT | 06830 | - | D&O Insurance (as defined in the Plan) | $0 |
| 61 | SunEdison, Inc. | National Liability & Fire Insurance Co. | Attn: Tania Torno, 3024 Harney Street | Omaha | NE | 68131 | - | D&O Insurance (as defined in the Plan) | $0 |
| 62 | SunEdison, Inc. | Aspen American Insurance Co. | Management Liability Division, 590 Madison Avenue, 7th Floor | New York | NY | 10022 | - | D&O Insurance (as defined in the Plan) | $0 |
| 63 | SunEdison, Inc. | Freedom Specialty Insurance Co. | Attn: Michael Walder, 250 Greenwich St | New York | NY | 10007 | - | D&O Insurance (as defined in the Plan) | $0 |
| 64 | SunEdison, Inc. | Continental Casualty Company | Attn: Samantha Tenem & Carolina M. Felix, 333 South Wabash Avenue | Chicago | IL | 60604 | - | D&O Insurance (as defined in the Plan) | $0 |
| 65 | SunEdison, Inc. | National Union Fire Insurance Co. | Attn: Svetlana Novik, 175 Water Street 18th Floor | New York | NY | 10038 | - | D&O Insurance (as defined in the Plan) | $0 |

As used herein, the "Plan" means the First Amended Joint Plan of Reorganization of SunEdison, Inc. and its debtor affiliates (collectively, the "Debtors"), filed on June 12, 2017 [Docket No. 3314].

For the avoidance of doubt, assumption of the D&O Insurance and EPL Policy pursuant to Article 8.4 of the Plan and this schedule shall include assumption of all related agreements as provided in Article 8.4 of the Plan.