## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | **Chapter 11** |
| | : | |
| **SUNEDISON, INC.,** *et al.*, | : | **Case No. 16-10992 (SMB)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING SECOND AMENDED PLAN OF REORGANIZATION OF SUNEDISON, INC. AND ITS DEBTOR AFFILIATES

The Court having considered the Second Amended Joint Plan of Reorganization

of SunEdison, Inc. ("SUNE") and certain of its affiliates, the debtors and debtors in possession in

the above-captioned cases (collectively, the "Debtors" and, together with their non-debtor

affiliates, "SunEdison" or the "Company" or, as applicable after the Effective Date, the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); Everstream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE MN Development, LLC (8669); SunE MN Development Holdings, LLC (5388); SunE Minnesota Holdings, LLC (8926); Terraform Private Holdings, LLC (5993); Hudson Energy Solar Corporation (3557); SunE REIT-D PR, LLC (5519); SunEdison Products, LLC (4445); SunEdison International Construction, LLC (9605); Vaughn Wind, LLC (4825); Maine Wind Holdings, LLC (1344); First Wind Energy, LLC (2171); First Wind Holdings, LLC (6257); and EchoFirst Finance Co., LLC (1607). The address of the Debtors' corporate headquarters is Two CityPlace Drive, 2nd floor, St. Louis, MO 63141.

"Reorganized Debtors"),[2] dated as of June 12, 2017 [Docket No. 3314] (as may be amended or

supplemented from time to time in accordance with its terms and including all exhibits and

supplements thereto, the "Plan"),[3] and the First Amended Disclosure Statement for the First

Amended Joint Plan of Reorganization of SunEdison, Inc. and its Debtor Affiliates, dated as of

June 12, 2017 [Docket No. 3314] (as amended from time to time and including all exhibits and

supplements thereto, the "Disclosure Statement"); and upon the Order (A) Approving the

Adequacy of the Debtors' Disclosure Statement, (B) Approving Solicitation and Notice

Procedures with respect to Confirmation of the Debtors' Joint Proposed Plan, (C) Approving the

Form of Various Ballots and Notices in Connection Therewith, and (D) Scheduling Certain

Dates with Respect Thereto, entered on June 13, 2017 [Docket No. 3319] (the "Disclosure

Statement Order"); and upon the order entered on June 6, 2017 approving, among other things,

the Rights Offering Commitment Letter, the Equity Commitment Agreement, and certain

procedures associated with the Rights Offering (the "Rights Offering Procedures") and the

distribution of materials in connection therewith [Docket No. 3283] (the "Rights Offering

Procedures Order"); and the Debtors having filed, on July 6, 2017, the Plan Supplement [Docket

No. 3522], which collectively contained Exhibits 2.1, 6.5, 6.15, 6.20, 7.1, 7.6, and 8.1 to the

Plan, and on July 19, 2017, the Second Plan Supplement [Docket No. 3661], which contained a

revised Exhibit 6.5 to the Plan, and the Third Plan Supplement [Docket No. 3673], which

collectively contained revised Exhibits 7.1 and 7.6 to the Plan; and the Debtors having filed, on

July 14, 2017, the Second Amendment to the Amended and Restated Equity Commitment

---

[2]    For purposes herein, the definition of "SunEdison," "Company" and "Reorganized Debtors" does not include Terraform Power, Inc. and Terraform Global, Inc., and each of their respective direct and indirect subsidiaries, unless otherwise provided.

[3]    Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan, a copy of which is annexed hereto as Exhibit A.

2

Agreement [Docket No. 3620] and the Debtors' Motion for Entry of an Order Authorizing and

Approving Certain Amendments to the Rights Offering Procedures [Docket No. 3622]; and the

Court on July 20, 2017 and July 25, 2017 having held hearings pursuant to section 1129 of the

Bankruptcy Code to consider Confirmation (the "Confirmation Hearing"); and the Court having

considered the Debtor's Memorandum of Law (i) in Support of Confirmation of the First

Amended Plan of Reorganization of SUNE and its Debtor Affiliates and (ii) in Response to

Objections Thereto, filed by the Debtors on July 18, 2017 [Docket No. 3649] (the "Confirmation

Brief"), the Declaration of John S. Dubel, Chief Executive Officer and Chief Restructuring

Officer of the Debtors, In Support of Confirmation of The First Amended Plan of Reorganization

of SunEdison Inc. and its Debtor Affiliates [Docket No. 3531] (the "Dubel Declaration"), the

Supplemental Declaration of John S. Dubel In Support of Confirmation of The First Amended

Plan of Reorganization of SunEdison Inc. and its Debtor Affiliates [Docket No. 3646] (the

"Supplemental Dubel Declaration"), the Declaration of Philip J. Gund, Chief Financial Officer of

the Debtors, In Support of First Amended Plan of Reorganization of SunEdison Inc. and its

Debtor Affiliates [Docket No. 3621] (the "Gund Declaration"), the Declaration of Steven

Fleming, a Principal at PricewaterhouseCoopers LLP, In Support of First Amended Plan of

Reorganization of SunEdison Inc. and its Debtor Affiliates [Docket No. 3532] (the "Fleming

Declaration"), the Supplemental Declaration of Steven Fleming In Support of Confirmation of

The First Amended Plan of Reorganization of SunEdison Inc. and its Debtor Affiliates [Docket

No. 3647] (the "Supplemental Fleming Declaration"), the Declaration of Homer Parkhill,

Managing Director at Rothschild, Inc., In Support of First Amended Plan of Reorganization of

SunEdison Inc. and its Debtor Affiliates [Docket No. 3533] (the "Parkhill Declaration"), the

Declaration of Homer Parkhill In Support of Debtors' Motion for Entry of an Order Authorizing

and Approving Certain Amendments to The Rights Offering Procedures [Exhibit B to Docket

No. 3622] (the "Parkhill Rights Offering Declaration"), and the Declaration of Christina Pullo of

Prime Clerk, LLC ("Prime Clerk") Regarding Solicitation of Votes and Tabulation of Ballots

Cast on the First Amended Joint Plan of Reorganization of SunEdison, Inc. and its Debtor

Affiliates Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 3651] (the "Voting

Certification"), each filed by the Debtors (and in the case of the Voting Certification, Prime

Clerk) in advance of the Confirmation Hearing; the Court having admitted into the record and

considered evidence at the Confirmation Hearing; the Court having overruled any and all

unresolved objections to confirmation ("Confirmation") of the Plan and all reservations of rights

not consensually resolved or withdrawn unless otherwise indicated herein; the Court having

taken judicial notice of the contents of the docket of the Chapter 11 Cases (defined below)

maintained by the clerk of the Bankruptcy Court of the Southern District of New York (the

"Clerk of the Court") and/or its duly-appointed agent, including all pleadings and other

documents filed, all orders entered thereon, all hearing transcripts, and all evidence and

arguments made, proffered, or adduced at the hearings held before the applicable court during

the pendency of the Chapter 11 Cases; and after due deliberation thereon, good and sufficient

cause appearing therefor, and, in addition to the following, in accordance with the findings and

decrees made by the Court on the record at the Confirmation Hearing on July 25, 2017,

It hereby is DETERMINED, FOUND, ADJUDGED, DECREED AND

ORDERED THAT:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[4]

A.     Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and

1334(a)).  This Court has jurisdiction over the above-captioned chapter 11 cases (the "Chapter 11

Cases") pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding pursuant to 28

U.S.C. § 157(b)(2)(L), and this Court has jurisdiction to determine whether the Plan complies

with the applicable provisions of title 11 of the United States Code (the "Bankruptcy Code") and

should be confirmed.

B.     Eligibility for Relief.  The Debtors were and are Entities eligible for relief

under section 109 of the Bankruptcy Code.

C.     Commencement and Administration of the Chapter 11 Cases.  On April

21, 2016, twenty-six of the Debtors filed petitions for relief under chapter 11 of the Bankruptcy

Code in this Court, with additional Debtors filing voluntary petitions on June 1, July 20, August

9, August 10, December 16, 2016 and April 7, 2017 (as applicable, the "Petition Date").  The

Debtors have operated their businesses and managed their properties as debtors in possession

pursuant to section 1107(a) and 1108 of the Bankruptcy Code.  No trustee has been appointed in

the Chapter 11 Cases.

D.     Filing of Plan and Plan Exhibits.  On March 28, 2017, the Debtors filed

the Joint Plan of Reorganization of SUNE and its Debtor Affiliates [Docket No. 2671] and the

Disclosure Statement with Respect to the Plan of Reorganization of SUNE and its Debtor

---

[4]     All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to
Confirmation are hereby incorporated into this Confirmation Order to the extent not inconsistent herewith.
Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law,
shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated herein, to the extent it
is or may be deemed a finding of fact, shall also constitute a finding of fact.

Affiliates [Docket No. 2672]. On June 12, 2017, the Debtors filed the First Amended Plan of

Reorganization of SUNE and its Debtor Affiliates [Docket No. 3314 – Exhibit A to Disclosure

Statement] and the First Amended Disclosure Statement with Respect to the First Amended Plan

of Reorganization of SUNE and its Debtor Affiliates [Docket No. 3314]. On July 6, 2017, the

Debtors filed certain components of the Plan Supplement [Docket No. 3522], which collectively

contained Exhibits 2.1, 6.5, 6.15, 6.20, 7.1, 7.6, and 8.1 to the Plan. The Plan Supplement was

served in the manner set forth in the Affidavit of Service of Kadeem Champagnie filed by Prime

Clerk on July 13, 2017 [Docket No. 3588]. On July 19, 2017, the Debtors filed the Second Plan

Supplement [Docket No. 3661], which contained a revised Exhibit 6.5 to the Plan, and the Third

Plan Supplement [Docket No. 3673], which collectively contained revised Exhibits 7.1 and 7.6

to the Plan. The Second and Third Plan Supplements were served in the manner set forth in the

Affidavits of Service of Keenan K. Baldeo filed by Prime Clerk on July 24, 2017 [Docket Nos.

3701 and 3702]. The Plan Supplement, as amended, complies with the terms of the Plan, and the

filing and notice of the Plan Supplement materials were good and proper, and in accordance with

the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, and no other

or further notice is or shall be required.

   E.  Transmittal of Solicitation Package. On or before June 16, 2017, the

Debtors, through their solicitation agent, Prime Clerk (the "Claims and Solicitation Agent"),

caused the applicable forms of ballots in the forms attached to the Disclosure Statement Order

(as modified, collectively, the "Ballots") and the Solicitation Packages (as set forth in the

Disclosure Statement Order) to be served and distributed as required by the Disclosure Statement

Order, section 1125 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the local rules

for this Court (the "Local Rules"), all other applicable provisions of the Bankruptcy Code, and

all other applicable rules, laws, and regulations applicable to such solicitation, all as set forth in

the Affidavit of Service of Nickesha Scully regarding service of solicitation materials filed on

June 23, 2017 [Docket No. 3417] (the "Solicitation Affidavit").  The Solicitation Packages were

transmitted to all creditors entitled to vote on the Plan and sufficient time was prescribed for

creditors to accept or reject the Plan.  The transmittal and service of the Solicitation Packages

and Ballots was adequate and sufficient under the circumstances and no other or further notice is

or shall be required.

       F.     Mailing and Publication of Notice.  As described herein and as evidenced

by the Solicitation Affidavit, due, adequate and sufficient notice of the Plan and the

Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan was

given in compliance with the Bankruptcy Code and the Bankruptcy Rules.  The Debtors, through

the Claims and Solicitation Agent, caused the Confirmation Hearing Notice to be mailed to all

(a) known Holders of Claims and Interests, (b) parties that requested notice in accordance with

Bankruptcy Rule 2002, and (c) all other parties included in the Debtors' creditor and notice party

matrix.  The Debtors also published the Confirmation Hearing Notice in the national edition of

*The New York Times*, *San Francisco Chronicle*, *Houston Chronicle*, and the *Oregonian* on June

16, 2017, and the global edition of *The Wall Street Journal*, *San Mateo Daily Journal*, and *St.

Louis Post-Dispatch* on June 19, 2017, as evidenced by the affidavit of publication filed by

Prime Clerk on June 22, 2017 [Docket No. 3415], in compliance with the Disclosure Statement

Order and Bankruptcy Rule 2002(l).  Thus, the Debtors have given proper, adequate and

sufficient notice of the Confirmation Hearing and no other or further notice is or shall be

required.

G.    <u>Solicitation</u>.  Votes on the Plan were solicited in good faith and in

compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and

3018, the Disclosure Statement, the Disclosure Statement Order, the local rules of this Court, all

other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and

regulations applicable to such solicitation.  Pursuant to the Solicitation Procedures (as defined in

the Disclosure Statement Order), the Debtors transmitted Solicitation Packages (as defined in the

Disclosure Statement Order) to those Holders of Claims entitled to vote on the Plan as of the

June 5, 2017 record date, including to the Nominees (the "<u>Holders of Record</u>") (or their mailing

agents) of the Holders of Second Lien Senior Notes and Convertible Senior Notes.

H.    <u>Voting Certification</u>.  On July 18, 2017, the Claims and Solicitation Agent

filed the Voting Certification, certifying the method and results of the ballot tabulation for the

Classes entitled to vote under the Plan, Classes 1A-1B, 4A-4E, and 9E (collectively and together

with Class 10E, the "<u>Voting Classes</u>").  As evidenced by the Voting Certification, as

supplemented on the record at the Confirmation Hearing, all Voting Classes voted to accept the

Plan in accordance with section 1126 of the Bankruptcy Code except for Classes 4B-15, 4B-30,

4B-34, and 10E.

I.    <u>Plan Modifications</u>.  Subsequent to solicitation, the Debtors made certain

modifications to the Plan.  All such modifications since the entry of the Disclosure Statement

Order are consistent with all of the provisions of the Bankruptcy Code, including sections 1122,

1123, 1125, and 1127 of the Bankruptcy Code.  None of the aforementioned modifications

adversely affects the treatment of any Holder of a Claim or Interest under the Plan.  Accordingly,

pursuant to section 1127(a) of the Bankruptcy Code, none of the modifications require additional

disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section

1126 of the Bankruptcy Code.  Prior notice regarding the substance of any modifications to the

Plan, together with the filing with the Bankruptcy Court of the Plan as modified, and the

disclosure of the Plan modifications on the record at or prior to the Confirmation Hearing

constitute due and sufficient notice of any and all such modifications.  Further, in accordance

with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims or

Interests who voted to accept the Plan or who are conclusively presumed to have accepted the

Plan are deemed to have accepted the Plan as modified by the Plan modifications.  No Holder of

a Claim or Interest shall be permitted to change its vote as a consequence of the Plan

modifications unless otherwise agreed to by the Holder of the Claim or Interest and the Debtors

and such change is approved by the Court in accordance with Bankruptcy Rule 3018(a).  The

modifications to the Plan are hereby approved, pursuant to section 1127 of the Bankruptcy Code

and Bankruptcy Rule 3019.  The Plan as modified shall constitute the Plan submitted for

Confirmation.

    J.  <u>Bankruptcy Rule 3016</u>.  The Plan is dated and identifies the Entities

submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure

Statement with the Clerk of the Court satisfied Bankruptcy Rule 3016(b).

    K.  <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The

Plan satisfies section 1129(a)(1) of the Bankruptcy Code because it complies with the applicable

provisions of the Bankruptcy Code, including, but not limited to: (a) the proper classification of

Claims and Interests (11 U.S.C. §§ 1122, 1123(a)(1)); (b) the specification of Unimpaired

Classes of Claims and Interests (11 U.S.C. § 1123(a)(2)); (c) the specification of treatment of

Impaired Classes of Claims and Interests (11 U.S.C. § 1123(a)(3)); (d) provision for the same

treatment of each Claim or Interest within a Class (11 U.S.C. § 1123(a)(4)); (e) provision for

adequate and proper means for implementation of the Plan (11 U.S.C. § 1123(a)(5)); (f) the

prohibition against the issuance of non-voting equity securities (11 U.S.C. § 1123(a)(6)); (g)

adequate disclosure of the identities and affiliations of the directors and officers with respect to

the Reorganized Debtors, as set forth in the Notice of Filing of Second Plan Supplement

Documents and Disclosures Pursuant to Section 1129(a)(5) of the Bankruptcy Code [Docket No.

3661] (the "Second Plan Supplement Notice"), and the GUC/Litigation Trust Trustee and

GUC/Litigation Trust Oversight Board with respect to the GUC/Litigation Trust, as set forth in

Exhibit 7.1 of the Third Plan Supplement [Docket No. 3673] (11 U.S.C. § 1123(a)(7)); and (h)

additional plan provisions permitted to effectuate the restructuring of the Chapter 11 Cases (11

U.S.C. § 1123(b)).

> (a)    Proper Classification (11 U.S.C. §§1122 and 1123(a)(1)).  The

classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  In

accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan

adequately and properly identifies and classifies all Claims and Interests (other than

Administrative Claims, Original DIP Facility Claims, Replacement DIP Facility Claims,

Professional Claims, and Priority Tax Claims, which are addressed in Article II of the Plan, and

which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the

Bankruptcy Code).  The Plan provides for the separate classification on a debtor-by-debtor basis

of Claims and Interests into ten (10) Classes based on differences in the legal nature or priority

of such Claims and Interests.  Each Class of Claims and Interests contains only Claims or

Interests that are substantially similar to the other Claims and Interests within that Class, and

such classification therefore satisfies section 1122 of the Bankruptcy Code.  Valid business,

factual, and legal reasons exist for the separate classification of the various Classes of Claims

and Interests under the Plan, the classifications were not made for any improper purpose, and the

creation of such Classes does not unfairly discriminate between or among Holders of Claims or

Interests.  Accordingly, the requirements of section 1123(a)(1) of the Bankruptcy Code are

satisfied.

(b)    Specified Treatment of Unimpaired Classes (11 U.S.C.

§ 1123(a)(2)).  The Plan specifies in Article III that Classes 2A – 2E and 3A – 3E are

Unimpaired and certain Claims within Classes 5A – 5E and 7B – 7E could be Unimpaired under

the Plan, except to the extent Holders thereof agree to have their Claims or Interests Impaired,

thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).

The Plan specifies in Article III that Classes 1A – 1B, 4A – 4E, 6A – 6E, 9E, and 10E are

Impaired and certain Claims within Classes 5A – 5E and 7B – 7E could be Impaired under the

Plan, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)    No Discrimination (11 U.S.C. § 1123(a)(4)).  Article III of the Plan

provides for the same treatment for each Claim or Interest in each respective Class unless the

Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or

Interest.  Accordingly the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

(e)    Implementation of the Plan (11 U.S.C. § 1123(a)(5)).  Article VI of

the Plan provides for adequate and proper means for implementation of the Plan, thereby

satisfying section 1123(a)(5) of the Bankruptcy Code.

(f)    Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6)).  Article 6.15

of the Plan provides that the organizational documents of the Reorganized Debtors shall be

amended as may be required so that they are consistent with the provisions of the Plan and

otherwise comply with the Bankruptcy Code.  The Amended and Restated Certificate of

Incorporation of SUNE provides for the prohibition of the issuance of non-voting equity

securities pursuant to and to the extent required by section 1123(a)(6) of the Bankruptcy Code, as

set forth in Exhibit 6.15 of the Plan.  Accordingly, the Plan satisfies section 1123(a)(6) of the

Bankruptcy Code.

(g)    Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).

Article 6.16 of the Plan sets forth the manner of selection of the directors and officers of the

Reorganized Debtors.  The Debtors have properly and adequately disclosed the identity and

affiliations of all individuals proposed to serve on or after the Effective Date as officers or

directors of the Reorganized Debtors, as set forth in the Second Plan Supplement Notice, as well

as the GUC/Litigation Trust Trustee and GUC/Litigation Trust Oversight Board, as set forth in

Exhibit 7.1 of the Third Plan Supplement [Docket No. 3673].  The appointment, employment, or

manner of selection of such individuals or entities and the proposed compensation and

indemnification arrangements for officers and directors are consistent with the interests of

Holders of Claims and Interests and with public policy.  Thus, section 1123(a)(7) of the

Bankruptcy Code is satisfied.

(h)    Additional Plan Provisions (11 U.S.C. §1123(b)).  The Plan's

additional provisions are appropriate and consistent with the applicable provisions of the

Bankruptcy Code, including, without limitation, provisions for: (i) the general settlement of

Claims and Interests (including the Committee/BOKF Plan Settlement); (ii) distributions to

Holders of Claims; (iii) the disposition of Executory Contracts and Unexpired Leases; (iv) the

retention of, and the right to enforce, sue on, settle, or compromise (or refuse to do any of the

foregoing with respect to) certain claims or causes of action against third parties, if any, to the

extent not waived and released under the Plan or this Confirmation Order or transferred to

GUC/Litigation Trust; (v) the issuance of New SUNE Common Stock and the Reinstated Second

Lien Claims or, if applicable, the Reinstated Tranche B Roll-Up Loans, in accordance with the

Plan; (vi) the conversion and distribution of Continuing TERP Class A Shares; (vii) vesting of

assets in the Reorganized Debtors; (viii) authorization for entering into the Committee/BOKF

Plan Settlement; (ix) transferring and vesting GUC/Litigation Trust Assets to the GUC/Litigation

Trust; (x) authorization for entering into the restructuring transactions; (xi) indemnification

obligations; (xii) releases by the Debtors of the Released Parties; (xiii) releases by the Holders of

Claims of the Released Parties, subject only to the Court's determination of the Reserved Issue

(defined below); and (xiv) the exculpation of the Exculpated Parties.

L.    Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).

The Debtors have complied with the applicable provisions of the Bankruptcy Code, the

Bankruptcy Rules, the Disclosure Statement Order, and other orders of this Court, thereby

satisfying section 1129(a)(2) of the Bankruptcy Code.

M.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Debtors have

proposed the Plan in good faith and not by any means forbidden by law.  In determining that the

Plan has been proposed in good faith, the Court has examined the totality of the circumstances

surrounding the filing of the Chapter 11 Cases, the formulation and negotiation of the Plan and

all modifications thereto and the Committee/BOKF Plan Settlement.  The Chapter 11 Cases were

filed, and the Plan and all modifications thereto and the Committee/BOKF Plan Settlement were

proposed, with the legitimate and honest purpose of reorganizing and maximizing the value of

the Debtors and the recovery to Claim Holders.  Therefore, the Debtors have proposed the Plan

in good faith and not by any means forbidden by law, and section 1129(a)(3) of the Bankruptcy

Code is satisfied with respect to the Plan.

        N.      <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.

Any payment made or to be made by the Debtors for services or for costs and expenses in

connection with the Chapter 11 Cases, including administrative expense and substantial

contribution claims under sections 503 and 507 of the Bankruptcy Code, or in connection with

the Plan and incident to the Chapter 11 Cases, either has been approved by or is subject to the

approval of the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy

Code.

        O.      <u>Board of Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>.  The

Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.  Specifically, the

Debtors have disclosed the identity and the affiliation of certain individuals proposed to serve on

or after the Effective Date as officers or directors of the Reorganized Debtors.  Accordingly,

section 1129(a)(5) of the Bankruptcy Code is satisfied with respect to the Plan.

        P.      <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  Section 1129(a)(6) of the

Bankruptcy Code is satisfied because the Plan does not provide for any change in rates over

which a governmental regulatory commission has jurisdiction.

        Q.      <u>Best Interests Test (11 U.S.C. § 1129(a)(7))</u>.  The liquidation analysis

attached as <u>Exhibit C</u> to the Disclosure Statement, the Fleming Declaration, and other evidence

proffered or adduced at the Confirmation Hearing (1) are persuasive and credible, (2) are based

upon reasonable and sound assumptions, (3) provide a reasonable estimate of the liquidation

values of the Debtors upon hypothetical conversion to a case under chapter 7 of the Bankruptcy

Code, and (4) establish that each Holder of a Claim or Interest in an Impaired Class that has not

14

accepted the Plan will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.  Therefore, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

R.    Acceptance By Certain Classes (11 U.S.C. § 1129(a)(8)).  Classes 2A – 2E, 3A – 3E, 5A-5E, and 7B-7E[5] are Unimpaired by the Plan and therefore, under section 1126(f) of the Bankruptcy Code, such Classes are conclusively presumed to have accepted the Plan.  All Voting Classes voted to accept the Plan except for Classes 4B-15, 4B-30, 4B-34, and 10E, which voted to reject the Plan, and those Classes deemed to reject the Plan; therefore, section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to these Classes that voted to reject or are deemed to reject the Plan.  Accordingly, Confirmation is sought pursuant to section 1129(b) of the Bankruptcy Code with respect to such Classes.[6]

S.    Treatment of Administrative Claims, Original DIP Facility Claims, Replacement DIP Facility Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Administrative Claims, Original DIP Facility Claims, Replacement DIP Facility Claims, and Other Priority Claims under the Plan satisfies the requirements of section 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims under the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

T.    Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10)).  At least one Impaired Class of Claims in the Chapter 11 Cases voted to accept the Plan determined without

---

[5]    The Plan provides that certain Claims within Classes 5A-5E and 7B-7E shall be either Impaired or Unimpaired, thus may be presumed to accept or deemed to reject the Plan.

[6]    See Voting Certification [Docket No. 3651].

including any acceptance of the Plan by any "insiders."  Therefore, section 1129(a)(10) of the

Bankruptcy Code is satisfied with respect to the Plan.

U.       Feasibility (11 U.S.C. § 1129(a)(11)).  The Debtors' financial projections

(as revised) as of the Effective Date are reasonable, credible, and made in good faith and, along

with the capital structure of the Reorganized Debtors, and the terms of the Reinstated Second

Lien Debt, establish that the Plan is feasible and that Confirmation is not likely to be followed by

the liquidation of the Reorganized Debtors or the need for further financial reorganization of the

Reorganized Debtors except as otherwise provided for in the Plan.  Therefore, the Plan satisfies

section 1129(a)(11) of the Bankruptcy Code.

V.       Payment of Fees (11 U.S.C. § 1129(a)(12)).  The Debtors have paid or,

pursuant to the Plan, will pay by the Effective Date, fees payable under 28 U.S.C. § 1930,

thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

W.       Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  After the

Effective Date, subject to the Reorganized Debtors' rights, if any, under applicable non-

bankruptcy law, the Reorganized Debtors shall continue to pay all retiree benefits, if any, as that

term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to

subsection (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code, thereby satisfying section

1129(a)(13) of the Bankruptcy Code.

X.       Section 1129(b); Confirmation of The Plan Over Nonacceptance of

Impaired Classes.  Classes 6A – 6E and 8A are deemed to reject the Plan, and Classes 4B-15,

4B-30, 4B-34, and 10E voted to reject the Plan (the "Rejecting Voting Classes").  Pursuant to

section 1129(b) of the Bankruptcy Code, the Plan may be confirmed notwithstanding that not all

Impaired Classes have voted to accept the Plan.  All of the requirements of section 1129(a) of the

Bankruptcy Code with respect to such Classes, other than section 1129(a)(8), have been met.

With respect to Classes 6A – 6E and 8A and the Rejecting Voting Classes, no Holders of Claims

or Interests junior to the Holders of such Classes will receive or retain any property under the

Plan on account of such Claims or Interests.  Additionally, no Class of Claims or Interests is

receiving property under the Plan having a value more than the Allowed amount of such Claim

or Interest.  Further, the Plan does not unfairly discriminate among Classes of Claims and

Interests because holders of Claims with similar legal rights will not be receiving materially

different treatment under the Plan.  Specifically, classifications and recoveries under the Plan are

based on the following factors: (a) Debtor entities and claims against such entity and assets at

each entity, and (b) legal rights of holders of Claims, including rights under applicable credit and

debt agreements, security interests against the applicable Debtor, and subordination agreements.

Accordingly, the Plan is fair and equitable and does not discriminate unfairly, as required by

section 1129(b) of the Bankruptcy Code, and may be confirmed under Bankruptcy Code section

1129(b) notwithstanding such Classes' rejection or deemed rejection of the Plan.

   Y. <u>Principal Purpose of Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of

the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the

Securities Act of 1933 (15 U.S.C. § 77e).  Accordingly, the Plan satisfies the requirements of

section 1129(d) of the Bankruptcy Code.

   Z. <u>Plan Settlements</u>.  In accordance with Bankruptcy Rule 9019, the Plan is

dependent upon and incorporates the terms of compromises and settlements (the "<u>Plan

Settlements</u>"), which include, among others, the Committee/BOKF Plan Settlement.  With

respect to the Committee/BOKF Plan Settlement, which is an essential element of the Plan:

   (a) A fair and reasonable opportunity to object or be heard with respect to the
    Committee/BOKF Plan Settlement has been afforded to all interested persons

17

and entities.  An objection to the Plan was filed by CNH Capital Partners, LLC and AQR Capital Management LLC (the "AQR Objection") [Docket No. 3592], which included an objection to, *inter alia*, the Committee/BOKF Plan Settlement.  The AQR Objection, to the extent not withdrawn, waived, or settled, is hereby overruled on the merits.

(b)  The Committee/BOKF Plan Settlement (i) is fair and equitable, (ii) is in the best interests of the estates, and (iii) falls well above the lowest rung in the range of reasonableness – the relevant inquiry with respect to Bankruptcy Rule 9019 settlements – with respect to all pending litigation commenced and objections filed (or otherwise alleged or threatened) by the Creditors' Committee and BOKF, N.A. ("BOKF") and resolved pursuant to the Committee/BOKF Plan Settlement, including, without limitation, the UCC Challenge Litigation, the BOKF Objection, and disputes related to the YieldCo Settlement Motion and the Plan.  The balance between the likelihood of the Debtors' (or the Second Lien Defendants', as applicable) success on the merits with respect to such litigation, objections, and disputes after lengthy and costly litigation (and the implications for the Debtors' Plan process), when compared to the concrete and tangible benefit of the Committee/BOKF Plan Settlement weighs in favor of approval of the Committee/BOKF Plan Settlement.  Moreover, as set forth in the Disclosure Statement, litigation of the underlying claims and disputes that have been threatened or commenced by all of the various parties would be complex based on the highly fact-sensitive nature of the issues involved.  Such litigation would be protracted, costly, and dilutive to creditor recoveries, and counter to the desire of creditors for speedy distributions.  Lastly, the collectability by any party of any judgment that might be ordered is far from certain.

(c)  The Creditors' Committee supports the Committee/BOKF Plan Settlement, and upon the entry of this Confirmation Order, the approval of the Committee/BOKF Plan Settlement, and the Effective Date of the Plan, all pending litigation that has been commenced by the Creditors' Committee or BOKF shall be deemed withdrawn with prejudice in accordance with the Committee/BOKF Plan Settlement Term Sheet.  As set forth in the Voting Certification, unsecured creditors have overwhelmingly supported the Plan, and therefore, the Committee/BOKF Plan Settlement.

(d)  The negotiation and execution of the Committee/BOKF Plan Settlement by the Debtors, the Tranche B Lenders/Steering Committee of Prepetition Second Lien Lenders and Noteholders, the Creditors' Committee, and BOKF was at arm's-length and in good faith, and at all times each of the parties was represented by competent, independent counsel of their choosing.  The Committee/BOKF Plan Settlement was the product of a multi-day mediation process before Chief Judge Cecelia Morris of the Bankruptcy Court for the Southern District of New York.  The Debtors relied on independent, experienced advisors from Skadden, Arps, Slate, Meagher & Flom LLP,

18

Rothschild Inc., Brown Rudnick LLP, and PricewaterhouseCoopers LLP when exercising their business judgment to enter into the Committee/BOKF Plan Settlement.

Accordingly, the Plan Settlements are fair, equitable, reasonable, and appropriate in light of the facts and circumstances, and are in the best interests of the Debtors, the Estates, and the Holders of Claims and Interests.  The terms of the Committee/BOKF Plan Settlement are approved and the Debtors or the Reorganized Debtors, as applicable, are directed to implement, effectuate and consummate any and all documents or transactions contemplated by the Committee/BOKF Plan Settlement.

AA.    <u>Reinstated Second Lien Claims</u>.  The reinstatement of the Reinstated Second Lien Claims pursuant to the Reinstated Second Lien Modification Terms, as set forth at Exhibit 6.5 of the Plan Supplement (as amended), and the reinstatement of the Reinstated Tranche B Roll-Up Loans, if applicable, is an essential element of the Plan and is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.  The Debtors are authorized, without further approval of this Court or any other party, to issue or incur the Reinstated Second Lien Claims (and the Reinstated Tranche B Roll-Up Loans, if applicable) in accordance with the Plan and to execute and deliver all agreements, documents, instruments and certificates relating thereto, including, without limitation, any and all security agreements and other agreements and filings necessary to reflect the seniority of the Liens securing the Reinstated Second Lien Claims (and, if applicable, the Reinstated Tranche B Roll-Up Loans).

BB.    <u>Issuance of New SUNE Common Stock</u>.  The issuance of the New SUNE Common Stock is an essential element of the Plan and is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.  SUNE is authorized, without further approval of this Court or any other party, to issue the New SUNE Common Stock in accordance with the

Plan and Plan Supplement and to execute and deliver all agreements, documents, instruments and certificates relating thereto.

CC.    Conversion and Distribution of Continuing TERP Class A Shares. Without limiting, impairing, or modifying any previous order of this Court approving or governing the Jointly Supported Transactions, the proposed terms and conditions of the Debtor's retention and distribution of the Continuing TERP Class A Shares are fair and reasonable and are in the best interests of the Debtors, their Estates, and the Holders of Claims and Interests, and do not conflict with applicable law. The retention and subsequent distribution by the Debtors of the Continuing TERP Class A Shares pursuant to the Plan and the Rights Offering, is an essential element of the Plan and is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests. The Debtors are authorized, without further approval of this Court or any other party, to retain the Continuing TERP Class A Shares pursuant to the Jointly Supported Transactions and to distribute the Continuing TERP Class A Shares in accordance with the Plan and to execute and deliver all agreements, documents, instruments and certificates relating thereto.

DD.    Distributions of Securities Are Subject to Exemptions. Section 6(e) of the Equity Commitment Agreement contains a representation and warranty from the Backstop Purchasers that each Backstop Purchaser is an "accredited investor" as defined in Section 501(a) of the Securities Act. Valid Rights Exercise Forms (as defined in the Rights Offering Procedures) will require Eligible Holders (as defined in the Rights Offering Procedures) to certify that such Eligible Holder is (i) either (A) a "qualified institutional buyer," as such term is defined in Rule 144A under the Securities Act, or (B) an "institutional accredited investor" (an "IAI") within the meaning of Rule 501(a)(1), (2), (3) or (7) under the Securities Act, or (ii) an

entity in which all of the equity investors are IAIs.  The offering, issuance, and distribution of any Securities pursuant to the Plan, including offering, issuing, and/or distributing the Continuing TERP Class A Shares, the New SUNE Common Stock, and the GUC/Litigation Trust Interests to the extent any of them constitute Securities, are subject to or made in good faith and in reliance upon exemptions from the registration requirements of the Securities Act and any state or local laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealing in, a security pursuant to and subject to section 1145(a) of the Bankruptcy Code ("Section 1145"), section 4(a)(1) of the Securities Act ("Section 4(a)(1)"), and section 4(a)(2) of the Securities Act ("Section 4(a)(2)"), as follows:

(a) The Debtors are issuing 10% of New SUNE Common Stock (subject to dilution by the Put Premium) and distributing 10% of Continuing TERP Class A Shares (subject to dilution by the Put Premium) on account of and in exchange for Second Lien Claims as contemplated by the Plan, in good faith reliance upon exemption registration under the Securities Act under Section 1145.

(b) The Debtors are issuing the rights to participate in the Rights Offering contemplated by the Plan in good faith reliance upon exemption from registration under the Securities Act under Sections 4(a)(1) or 4(a)(2), as applicable.

(c) The Debtors are issuing 90% of New SUNE Common Stock in exchange for exercising rights in the Rights Offering and pursuant to the direct purchase by the Rights Offering Backstop Purchasers (as set forth in the Equity Commitment Agreement), each as contemplated by the Plan, in good faith reliance upon exemption from registration under the Securities Act under Section 4(a)(2).

(d) The Debtors are distributing 90% of Continuing TERP Class A Shares in exchange for exercising rights in the Rights Offering and pursuant to the direct purchase by the Rights Offering Backstop Purchasers (as set forth in the Equity Commitment Agreement), each as contemplated by the Plan, in good faith reliance upon exemption from registration under the Securities Act under Section 4(a)(1).

(e) The Debtors are issuing New SUNE Common Stock and distributing Continuing TERP Class A Shares for the Rights Offering Backstop Standby Fee, as contemplated by the Plan, in good faith reliance upon exemption from

registration under the Securities Act under Section 4(a)(1) and Section 4(a)(2), as applicable.

(f) The GUC/Litigation Trust Beneficiaries will receive the GUC/Litigation Trust Interests, as contemplated by the Plan, in good faith reliance upon exemption from registration under the Securities Act under Section 1145 to the extent any GUC/Litigation Trust Interest is deemed a security.

EE.    GUC/Litigation Trust.  Entry into the GUC/Litigation Trust Agreement is in the best interests of the Debtors and the Debtors' Estates and creditors.  Each of the establishment of the GUC/Litigation Trust, the selection of Drivetrain, LLC to serve as the GUC/Litigation Trust Trustee, the form of the proposed GUC/Litigation Trust Agreement (as it may be modified or amended), is appropriate and in the best interests of the Debtors' creditors. The GUC/Litigation Trust Agreement, including Exhibits A, B and C thereto, shall, upon execution, be valid, binding and enforceable in accordance with its terms.  The Holders of Claims in Classes 1A and 1B (Second Lien Claims), the Holders of Claims in Classes 4A-4E (General Unsecured Claims), and the Holders of Claims in Class 10 (SMP Claim) shall be GUC/Litigation Trust Beneficiaries, in accordance with the terms set forth in the Plan, the Committee/BOKF Plan Settlement Term Sheet, and the GUC/Litigation Trust Agreement.

FF.    Executory Contracts.  The Debtors have exercised reasonable business judgment in determining whether to assume or reject their executory contracts and unexpired leases pursuant to Article VIII of the Plan, which provides that except as otherwise provided under the Plan, each Executory Contract and Unexpired Lease of the Debtors shall be deemed automatically rejected (subject to certain exceptions, including, without limitation, those contracts that are expressly assumed pursuant to Article 8.2 of the Plan) pursuant to sections 365 and 1123 of the Bankruptcy Code subject to the occurrence of the Effective Date with such rejection to be effective as of such date.  Each assumption (pursuant to Exhibit 8.1 (the Schedule

of Assumed Contracts and Unexpired Leases) or rejection of an Executory Contract or

Unexpired Lease pursuant to Article VIII of the Plan shall be legal, valid and binding upon the

Debtors or Reorganized Debtors and their successors or assignees (if any) and all non-debtor

parties (and their assignees or successors) to such Executory Contract or Unexpired Lease, all to

the same extent as if such assumption or rejection had been effectuated pursuant to an order of

the Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.

GG.    Adequate Assurance.  The Debtors have cured, or provided adequate

assurance that the Reorganized Debtors or their successors or assignees (if any) will cure,

defaults (if any) under or relating to each of the executory contracts and unexpired leases that are

being assumed by the Debtors pursuant to the Plan.  In addition, the Debtors have provided

adequate assurance of future performance regarding the executory contracts and unexpired leases

that are being assumed by the Debtors as contemplated pursuant to section 365(b)(1)(C) of the

Bankruptcy Code.

HH.    Releases and Discharges.  The discharge, release, injunction,

indemnification and exculpation provisions described in Article XI of the Plan, including

Articles 11.2, 11.3, 11.5, 11.6, 11.7, and 11.8, were the product of extensive good faith, arm's-

length negotiations and settlements of the matters covered thereby, are otherwise approved by

this Court as appropriate pursuant to applicable law, or are consensual with respect to the third-

party releases set forth in Article 11.6 of the Plan as to all Holders of a Claim that voted to accept

the Plan; provided, however, that whether Holders of Claims entitled to vote to accept or reject

the Plan that did not in fact vote either to accept or reject the Plan are included as Releasing

Parties (defined at Article 1.195 of the Plan) and therefore subject to the releases contemplated in

Article 11.6 of the Plan, is reserved by the Court for subsequent determination (the "Reserved

23

Issue"). Such compromises and settlements are made in exchange for consideration and are fair,
equitable, reasonable, and are integral elements of the Chapter 11 Cases in accordance with the
Plan. Each of the discharge, release, injunction, indemnification and exculpation provisions set
forth in the Plan (other than those covered by the Reserved Issue): (a) is within the jurisdiction of
the Court under 28 U.S.C. §§ 1334(a), (b), and (d); (b) is an essential means of implementing the
Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) is an integral and non-severable
element of the settlements and transactions incorporated into the Plan; (d) confers a material
benefit on, and is in the best interests of, the Debtors, their Estates, and the Holders of Claims;
(e) is important to the overall objectives of the Plan to finally resolve all Claims and Interests
among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors, their
organization, capitalization, operation, and reorganization; and (f) is consistent with sections
105, 1123, 1129, and other applicable provisions of the Bankruptcy Code. The failure to give
effect to the discharge, release, injunction, indemnification and exculpation provisions set forth
in the Plan, as approved by this Confirmation Order, would impair the Debtors' ability to
confirm and implement the Plan. The discharge provisions in Article 11.2 of the Plan shall be
effective as of the Confirmation Date of the Plan, which is not a liquidating plan and is entitled
to such discharge in accordance with section 1141(d) of the Bankruptcy Code. Notwithstanding
anything to the contrary in this Order, nothing herein shall be construed as a determination,
finding of fact, conclusion of law or decree by the Court with respect to the Reserved Issue.

II.    Plan Conditions to Consummation. Each of the conditions to the Effective
Date, as set forth in Article 12.2 of the Plan, is reasonably likely to be satisfied or waived in
accordance with the terms of the Plan.

JJ.    <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of the

Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent,

including, without limitation, all pleadings and other documents filed, all orders entered, and all

evidence and arguments made, proffered, or adduced at the hearings held before the Court during

the pendency of the Chapter 11 Cases.

KK.    <u>Burden of Proof</u>.  The Debtors, as proponents of the Plan, have met their

burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a

preponderance of the evidence, which is the applicable evidentiary standard.

LL.    <u>Retention of Jurisdiction</u>.  This Court properly may retain jurisdiction over

the matters set forth in <u>Article XIII</u> of the Plan.

### <u>DECREES</u>

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

### Confirmation of Plan

1.    <u>Confirmation</u>.  The Plan, attached hereto as <u>Exhibit A</u>, including all

Exhibits attached thereto or included in the Plan Supplement, is approved and confirmed under

section 1129 of the Bankruptcy Code.  The terms of the Plan are incorporated by reference into

and are an integral part of this Confirmation Order and the Debtors are authorized to implement

their provisions and consummate the Plan without any further authorization except as expressly

required by the Plan or this Confirmation Order. Without limiting the foregoing, the

Committee/BOKF Plan Settlement and the Committee/BOKF Plan Settlement Term Sheet and

the terms contained therein, as set forth in the Plan, are hereby approved pursuant to Bankruptcy

Rule 9019.

2. <u>Notice</u>. Notice of the Plan, its exhibits, and all amendments and
modifications thereto, the Disclosure Statement and the Solicitation Packages was proper and
adequate.

3. <u>Objections</u>. For the reasons stated on the record at the Confirmation
Hearing on July 25, 2017, and by separate memorandum with respect to the objections filed by
certain Holders of Interests, all Objections and all reservations of rights that have not been
withdrawn, waived, or settled, pertaining to the Confirmation of the Plan are overruled on the
merits.

4. <u>Vesting of Assets and Operation as of the Effective Date</u>. Except as
otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the
Estates (excluding the GUC/Litigation Trust Assets) shall vest in the Reorganized Debtors
which, as Debtors, owned such property or interest in property as of the Effective Date, free and
clear of all Claims, Liens, charges, encumbrances, rights, and Interests. As of and following the
Effective Date, the Reorganized Debtors may operate their business and use, acquire, and
dispose of property and settle and compromise Claims (subject to the terms of the
Committee/BOKF Plan Settlement), Interests, or Causes of Action (excluding the
GUC/Litigation Trust Assets) without supervision of the Bankruptcy Court, free of any
restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly
imposed by the Plan, the Committee/BOKF Plan Settlement, or this Confirmation Order;
<u>provided</u>, <u>however</u>, that if any party applies for relief before the Bankruptcy Court, the
Bankruptcy Code and Bankruptcy Rules, and any other appropriate Local Rules and General
Orders, shall apply. In addition to the foregoing, net Cash of SPS (primarily Cash on hand,
Earnout Assets, Repatriated Cash, and Residual Assets) after payment of operating and

26

administrative expenses of SPS shall be distributed to Intercompany Claims and the

GUC/Litigation Trust on a <u>pro</u> <u>rata</u> basis taking into account all Intercompany Claims and

Allowed General Unsecured Claims against SPS to be determined by the Debtors or Reorganized

Debtors (as the case may be).

> 5.      <u>Reinstated Second Lien Claims</u>.  The liens contemplated by and related to
the Reinstated Second Lien Claims (and, if applicable, the Reinstated Tranche B Roll-Up Loans)
are valid, binding and enforceable liens on the collateral specified in the relevant agreements in
connection with such Reinstatement.  The guarantees, mortgages, pledges, liens, and other
security interests granted, pledged, mortgaged, assigned, conveyed, reinstated, continued or
otherwise made pursuant to or in connection with the Reinstated Second Lien Claims (and, if
applicable, the Reinstated Tranche B Roll-Up Loans) are done in good faith to the holders of
such Reinstated Second Lien Claims and, as applicable, holders of the Reinstated Tranche B
Roll-Up Loans, and shall be, and hereby are, deemed not to constitute a fraudulent conveyance
or fraudulent transfer, and shall not otherwise be subject to avoidance.

> 6.      <u>Exemptions from Registration</u>.  The Debtors are offering, issuing, and/or
distributing Securities pursuant to the Plan, including offering, issuing, and/or distributing New
SUNE Common Stock and Continuing TERP Class A Shares in good faith reliance upon
exemption from the registration requirements of the Securities Act and similar state statutes
pursuant to and subject to Section 1145, Section 4(a)(1), and Section 4(a)(2).

> 7.      <u>Exemption from Certain Transfer Taxes and Recording Fees</u>.  To the fullest
extent contemplated by section 1146(a) of the Bankruptcy Code, any transfers of property
pursuant to the Plan or any transfers of property made in connection therewith (whether such
transfers are made by the Debtors, Reorganized Debtors, or other Person) shall not be subject to

any stamp tax or similar tax, and upon entry of this Confirmation Order, the appropriate state or

local governmental officials or agents shall forgo the collection of any such tax ~~or governmental~~

~~assessment~~ and accept for filing and recordation any of the foregoing instruments or other

documents without the payment of any such tax ~~or governmental assessment~~.  The Bankruptcy

Court shall retain specific jurisdiction with respect to these matters.  **[SMB: 7/28/17]**

### Dismissal of Litigation

8.      On the Effective Date of the Plan, all pending litigation shall be deemed

withdrawn with prejudice (**subject to the entry of orders dismissing any adversary**

**proceedings or the filing** ~~and, if necessary, parties will file~~ with the Bankruptcy Court **of** any

necessary withdrawal notices).  For the avoidance of doubt, the Committee/BOKF Plan

Settlement settles any and all issues that may be in dispute (either currently or pending or that

could be commenced in the future) among the Creditors' Committee, BOKF, the Debtors and the

Tranche B Roll-Up Lenders/Steering Committee of Prepetition Second Lien Lenders and

Noteholders, including, without limitation, regarding Annex II of the Replacement DIP Facility

Order, other than any disputes that may arise with respect to the interpretation or effectuation of

the Committee/BOKF Plan Settlement, and settles any and all claims and causes of action

(current or pending or that could be commenced in the future) that the Creditors' Committee has

asserted or may assert against the Prepetition First Lien Secured Parties (as defined in the

Replacement DIP Order).  **[SMB: 7/28/17]**

### Unexpired Leases and Executory Contracts

9.      <u>Rejection and Assumption of Executory Contracts and Unexpired Leases</u>.

The Executory Contract and Unexpired Lease provisions of <u>Article VIII</u> of the Plan are

approved.

28

(a)    <u>Automatic Rejection</u>.  Except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (a) is listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" contained in <u>Exhibit 8.1</u> of the Plan; (b) has been previously assumed by the Debtors by Final Order of the Bankruptcy Court or has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (c) is the subject of a motion to assume or reject pending as of the Effective Date; (d) is an Executory Contract related to any Intercompany Claim; or (e) is otherwise assumed pursuant to the terms of the Plan.  This Confirmation Order constitutes an order of the Bankruptcy Court approving such rejections pursuant to sections 365 and 1123 of the Bankruptcy Code, with such rejections to be effective as of the Effective Date.

(b)    <u>Assumption of Executory Contracts and Unexpired Leases</u>.  On the Effective Date, each Executory Contract or Unexpired Lease listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" in <u>Exhibit 8.1</u> of the Plan shall be assumed, or assumed and assigned, as applicable, and shall vest in and be fully enforceable by the Reorganized Debtors or their assignee (if any) in accordance with its terms, except as modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing or providing for its assumption or applicable federal law.  Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cures, Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related

29

defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

(c)    Cure Procedures and Payments Related to Assumption of Executory Contracts and Unexpired Leases.  The Cure procedures and any payments related to the assumption of any Executory Contract and Unexpired Lease shall be in accordance with Article 8.5 of the Plan, as set forth in Exhibit 4-C (the Executory Contract and Unexpired Lease Notice) of the Disclosure Statement Order.

**Bar Dates and Other Deadlines**

10.    Administrative Claims Bar Date.  Except as otherwise provided herein or in the Plan and as set forth in Articles 2.2 or 2.3 of the Plan, all requests for payment of an Administrative Claim must be filed, in substantially the form of the Administrative Claim Request Form contained in Exhibit 2.1 of the Plan, with the Claims and Solicitation Agent and served on counsel for the Debtors or the Reorganized Debtors and counsel to the Supporting Second Lien Parties no later than the Administrative Claims Bar Date, which shall be thirty (30) days after the Effective Date of the Plan, unless otherwise ordered by the Bankruptcy Court (except with respect to the Original DIP Facility Claims, the Replacement DIP Facility Claims, and Professional Claims, which shall be subject to Articles 2.2 or 2.3 of the Plan).  Holders of Administrative Claims that are required to, but do not, file and request payment of such Administrative Claim(s) by the applicable Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed disallowed in full as of the Effective Date.

11.    <u>Distribution Record Date</u>.  Notwithstanding anything in the Plan or this

Confirmation Order to the contrary, the Distribution Record Date for determining which Holders

of certain Allowed Claims are eligible to receive distributions under the Plan shall be, with

respect to Second Lien Loan Claims, Replacement DIP Term Loan Claims, and Tranche B Roll-

Up Loan Claims, a date that will be determined by the Debtors and the Supporting Second Lien

Parties together, which date shall be no more than fourteen (14) days prior to the Effective Date.

**GUC/Litigation Trust**

12.    <u>The GUC/Litigation Trust</u>.  The formation, rights, powers, duties, structure,

obligations, and other matters pertaining to the GUC/Litigation Trust shall be governed by

<u>Article VII</u> of the Plan and the GUC/Litigation Trust Agreement (which such agreement shall be

substantially in the form of <u>Exhibit 7.1</u> to the Plan and is hereby approved).  Drivetrain, LLC is

hereby appointed as the GUC/Litigation Trust Trustee.

13.    <u>Transfer of GUC/Litigation Trust Assets</u>.  On the Effective Date, pursuant

to section 1123(b)(3) of the Bankruptcy Code, the GUC/Litigation Trust Assets shall be

transferred by the Debtors (and deemed transferred) to the GUC/Litigation Trust free and clear of

all Claims, Liens, charges, encumbrances, rights, and interests, without the need for any Entity to

take any further action or obtain any approval.  Thereupon, the Debtors, and the Reorganized

Debtors shall have no interest in the GUC/Litigation Trust Assets or the GUC/Litigation Trust.

On the Effective Date, the GUC/Litigation Trust shall be authorized as the representative of the

Estates to investigate, sue, settle, and otherwise administer the GUC/Litigation Trust in

accordance with the terms of the GUC/Litigation Trust Agreement and the Plan.

14.    The Debtors or the Reorganized Debtors, as the case may be, shall

cooperate with the Creditors' Committee and its Professionals in relation to the GUC/Litigation

Trust's prosecution of Avoidance Actions and Claims objections, on the terms set forth in the

Committee/BOKF Plan Settlement Term Sheet, including Annex 1 thereof.

15.    Issuance of GUC/Litigation Trust Interests.  ~~Issuance of the~~

~~GUC/Litigation Trust Interests in accordance with the Plan and the GUC/Litigation Trust~~

~~Agreement is approved.~~  The GUC/Litigation Trust Trustee is authorized and empowered,

without further approval of this Court or any other party, to take such actions and to perform

such acts as may be necessary, desirable, or appropriate to implement the issuance of the

GUC/Litigation Trust Interests in accordance with the Plan and the GUC/Litigation Trust

Agreement and to execute and deliver all agreements, documents, securities, instruments, and

certificates relating thereto.  ~~The GUC/Litigation Trust Interests shall be issued to the~~

~~GUC/Litigation Trust Beneficiaries pursuant to the Plan and the GUC/Litigation Trust~~

~~Agreement~~.  All GUC/Litigation Trust Interests issued by the GUC/Litigation Trust pursuant to

the provisions of the Plan and the GUC/Litigation Trust Agreement are hereby deemed to be

duly authorized, validly issued, fully paid, and non-assessable.  **[SMB: 7/28/17]**

16.    Exemption from Securities Laws.  To the extent any GUC/Litigation Trust

Interest is deemed to be a security, section 1145 of the Bankruptcy Code applies to the

distribution under the Plan of the GUC/Litigation Trust Interests.  In addition, to the extent

persons deemed to be "underwriters" receive GUC/Litigation Trust Interests pursuant to the

Plan, which interests are otherwise exempt from registration pursuant to section 1145 of the

Bankruptcy Code, resales of such GUC/Litigation Trust Interests would not be exempted by

section 1145 of the Bankruptcy Code from registration under the Securities Act or other

applicable law.

17.     <u>Fees and Expenses of Convertible Senior Notes Indenture Trustee</u>.  The

Senior Convertible Notes Indenture Trustee shall be entitled to payment of the Outstanding

Indenture Trustee Fees and Expenses in accordance with Section 6.1(c) of the GUC/Litigation

Trust Agreement and the charging lien or priority rights of the Convertible Senior Notes

Indenture Trustee on distributions shall be deemed to attach to distributions of Cash upon or

through the Class A Litigation Trust Interests issued or distributed in respect to the Convertible

Senior Note Claims.  The Litigation Trustee shall have no liability for, and shall be held harmless

from, any claims asserted by Convertible Senior Noteholder or any other party arising from the

Litigation Trustee's reliance on the certification provided by the Convertible Senior Notes

Indenture Trustee pursuant to Section 6.1(c) of the GUC/Litigation Trust Agreement.

## Second Lien Litigation

18.     <u>Second Lien Litigation</u>.  Notwithstanding anything to the contrary that may

be set forth (or may be construed or argued to be set forth) in the Plan, the Disclosure Statement,

or this Confirmation Order, nothing in the Plan or this Confirmation Order shall impair any

defenses, claims, counterclaims, or rights that any third parties (which, for the avoidance of

doubt, also includes the Holders of Second Lien Claims or Tranche B Roll-Up Loan Claims, if

applicable) may have, and such defenses, claims, counterclaims, or rights (including, without

limitation, any rights to seek indemnity, and any rights to seek setoff or recoupment, under any

contract or agreement, or under applicable law or equity) with respect to the Second Lien

Litigation (and any defenses thereto) are preserved and not impaired.

## Reservation of Rights

19.     Notwithstanding anything in the Plan or this Confirmation Order to the

contrary: (i) the Debtors and Reorganized Debtors hereby ratify and affirm that nothing in the

Plan or this Confirmation Order shall impair or modify any of the rights, remedies, and/or

defenses of Aspen American Insurance Company, Aspen Insurance UK Limited, Aspen

Specialty Insurance Company (collectively, "Aspen") under or in connection with (a) any surety

bonds executed by Aspen after the Petition Date at the request and/or on behalf of Debtors

(collectively, the "Bonds"), (b) the General Agreement of Indemnity dated August 29, 2016

entered into by and among Debtors and Aspen, as may be amended, modified, supplemented or

otherwise revised (the "Indemnity Agreement"), and (c) all collateral, including but not limited

to any letters of credit and the proceeds thereof (collectively, the "Collateral"), pledged by

Debtors to Aspen as security for the Debtors obligations under the Bonds and Indemnity

Agreement; (ii) the discharge or release of any Claim in the Plan or this Confirmation Order,

including under Article XI of the Plan, shall not release, discharge, preclude or enjoin any

obligation of any of the Debtors (prior to the Effective Date) or the Reorganized Debtors (on and

after the Effective Date) to Aspen under or in connection with the Bonds, Indemnity Agreement,

Collateral or the common law of suretyship as applicable thereto; (iii) all Collateral on which

Aspen had a perfected lien as of the Effective Date shall remain in place to secure all payment

and performance obligations of the Debtors and the Reorganized Debtors solely to the extent

provided for under any such agreements among the Debtors and/or the Reorganized Debtors and

Aspen; and (iv) the Reorganized Debtors hereby affirm, ratify and agree to be bound by the

Indemnity Agreement and related agreements in place, as of the Effective Date.

20.     No provision of the Confirmation Order or the Plan shall authorize (i) the

assumption, or assumption and assignment, or rejection of the Software End-User License

Agreement (the "License Agreement") between SunEdison, Inc. and SAP America, Inc.

("SAP"); or (ii) the transfer of any software or other proprietary information licensed by SAP.

Any assumption, assignment, and/or and cure amount issues related to the License Agreement shall be resolved by agreement between SAP and the Debtors or, if no agreement can be reached, by further order of the Court upon adequate notice to SAP, which shall have an opportunity to respond.  If within thirty (30) days following the Effective Date, the Debtors have not assumed the License Agreement by resolution with SAP or filed a motion to assume the License Agreement, the License Agreement shall be rejected as of such date.  Notwithstanding the foregoing, the Debtors shall have the right to file a motion to reject the License Agreement at any time prior to thirty (30) days following the Effective Date upon notice to SAP.  Upon rejection of the License Agreement, the Debtors shall comply with the end of term duties set forth in 5.4 of the License Agreement and provide a written certification to SAP as to compliance.  All rights and remedies of SAP arising under the License Agreement are preserved.  All parties' rights to object to or challenge any Claims relating to rejection are reserved.

21.    Notwithstanding anything to the contrary, nothing in the Plan or Confirmation Order (i) assumes or assigns any contracts between the Debtors and Oracle America, Inc., successor in interest to Taleo Corporation and Hyperion Solutions Corporation (collectively, "Oracle"), (ii) transfers any licenses thereunder to any third party, or (iii) expands the scope of the current license agreements between the Debtors and Oracle.

22.    Nothing in the Plan or Confirmation Order shall authorize the assumption, assumption and assignment, or rejection of the Cigna Agreements (as defined in the *Limited Objection of Cigna Entities to the First Amended Joint Plan of Reorganization of SunEdison, Inc. and its Debtor Affiliates* [Docket No. 3587] ("Cigna Objection")).  Notwithstanding the foregoing, the Debtors reserve the right to reject the Cigna Agreements provided that they give 21 days' written notice of any such rejection to Cigna.  This fully resolves the Cigna Objection.

23.     Notwithstanding anything contained herein, confirmation of the Plan with respect to the Debtors does not constitute confirmation of the Plan as to the Debtor EverStream HoldCo Fund I, LLC ("EverStream"), EverStream shall nonetheless be bound by the terms and provisions of the Committee/BOKF Plan Settlement and the Committee/BOKF Plan Settlement Term Sheet, including, without limitation, the transfer by EverStream of any GUC/Litigation Trust Causes of Action to the GUC/Litigation Trust; provided, however, that all parties' rights are reserved with respect to the priority of distributions with respect to any assets or causes of action of EverStream.

**Notice and Other Provisions**

24.     Notice of Confirmation Order and Occurrence of Effective Date.  On or before the tenth (10th) day following the occurrence of the Effective Date, the Debtors shall serve notice of entry of this Confirmation Order and occurrence of the Effective Date pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), on (a) known Holders of Claims and Interests, (b) parties that requested notice in accordance with Bankruptcy Rule 2002, and (c) all other parties included in the Debtors' creditor and notice party matrix, by causing a notice of this Confirmation Order and the occurrence of the Effective Date in substantially the form of the notice annexed hereto as Exhibit B (the "Notice of Effective Date"), which form is hereby approved, to be delivered to such parties by first class mail, postage prepaid.  The Notice of Effective Date shall also be published in *The New York Times*, *San Francisco Chronicle*, *Houston Chronicle*, *Oregonian*, *The Wall Street Journal*, *San Mateo Daily Journal*, and *St. Louis Post-Dispatch*.  Notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, or this Confirmation Order to any Entity to whom the Debtors mailed a notice of the Bar Date or Confirmation Hearing, but received such notice returned marked "undeliverable as

addressed," "moved - left no forwarding address," "forwarding order expired," or similar reason,

unless the Debtors have been informed in writing by such Person of that Person's new address.

The notice described herein is adequate and appropriate under the particular circumstances of the

Chapter 11 Cases, and no other or further notice is necessary.

25.    <u>Plan Modifications</u>.  Subject to certain restrictions and requirements set

forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions

on modifications set forth in the Plan, the Debtors, with the consent of (a) the Supporting Second

Lien Parties and (b) the Creditors' Committee (with respect to those portions of the Plan that

affect the Creditors' Committee or any Holder of General Unsecured Claims), may revoke or

withdraw, alter, amend, or modify the Plan and the Plan Supplement one or more times after

Confirmation, and to the extent necessary, may, with the consent of (x) the Supporting Second

Lien Parties and (y) the Creditors' Committee (with respect to those portions of the Plan that

affect the Creditors' Committee or any Holder of General Unsecured Claims), in each case such

consent not to unreasonably be withheld or delayed, institute proceedings in the Bankruptcy

Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the

Disclosure Statement, or this Confirmation Order, and such matters as may be necessary to carry

out the purposes and effects of the Plan and this Confirmation Order.

26.    <u>Failure to Consummate Plan and Substantial Consummation</u>.  If the

Effective Date does not occur, then the Plan, any settlement or compromise embodied in the

Plan, the assumption or rejection of executory contracts or unexpired leases effected by the Plan,

and any document or agreement executed pursuant to the Plan, shall be null and void *ab initio*.

In such event, nothing contained in the Plan or this Confirmation Order, and no acts taken in

preparation for consummation of the Plan, shall, or shall be deemed to, (a) constitute a waiver or

37

release of any Claims, Interests in, or Causes of Action by or against the Debtors or any other

Person, (b) prejudice in any manner the rights and defenses of the Debtors, the Holder of a Claim

or Interest, the Creditors' Committee, or any Person in any further proceedings involving the

Debtors, (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the

Debtors, the Creditors' Committee, or any other Person, or (d) be construed as a finding of fact

or conclusion of law with respect thereto.

27.    <u>Dissolution of Creditors' Committee</u>.  Effective on the Effective Date, the

Creditors' Committee shall dissolve automatically, and the members thereof (solely in their

capacities as Creditors' Committee members) shall be released, exculpated and discharged from

all their duties relating to the Chapter 11 Cases in accordance with Article 11 of the Plan;

<u>provided</u>, <u>however</u>, that the Creditors' Committee shall continue to exist and its Professionals

shall continue to be retained and entitled to reasonable compensation, without further order of

the Court, with respect to: (1) the preparation and prosecution of any final fee applications of the

Creditors' Committee's Court approved Professionals and (2) all final fee applications filed with

the Bankruptcy Court.

28.    <u>References to Plan Provisions</u>.  The failure to include or specifically

reference any particular provision of the Plan in this Confirmation Order shall not diminish or

impair the effectiveness of such provision, it being the intent of the Court that the Plan be

confirmed in its entirety.

29.    <u>Exhibits</u>.  Each reference to a document, agreement or summary

description that is in the form attached as an Exhibit to the Plan in this Confirmation Order, in

the Findings of Fact and Conclusions of Law, or in the Plan shall be deemed to be a reference to

such document, agreement or summary description in substantially the form of the latest version

38

of such document, agreement or summary description filed with the Court (whether filed as an attachment to the Plan or filed separately).

30.     Plan and Confirmation Order Mutually Dependent.  The provisions of this Confirmation Order and the provisions of the Plan are hereby deemed nonseverable and mutually dependent.

31.     Confirmation Order Supersedes.  Except as expressly provided in the Plan or this Confirmation Order, it is hereby ordered that this Confirmation Order shall supersede any orders of this Court issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order; provided, however, that to the extent of any conflict or inconsistency between the terms of this Confirmation Order and the Plan, on the one hand, and the YieldCo Settlement Agreements and the order approving the YieldCo Settlement Motion [Docket No 3292] (the "YieldCo 9019 Order"), on the other hand, the terms of the YieldCo 9019 Order and the YieldCo Settlement Agreements, as applicable, shall govern.

32.     Conflicts Between Confirmation Order and Plan.  The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall control.

33.     Retention of Jurisdiction.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court, except as otherwise provided in the Plan or herein, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to

the fullest extent permitted by law, including, but not limited to, the matters set forth in <u>Articles</u>

<u>VII</u>, <u>XI</u>, and <u>XIII</u> of the Plan.

34.    Notwithstanding anything to the contrary in this Order, the Plan, or any

Plan Supplement, nothing in the schedule of Retained Causes of Action (Exhibit 6.20 of the Plan

Supplement) [Docket No. 3522] shall preclude and party from asserting any available defense to

any retained cause of action asserted by or on behalf of the Debtors.

Dated: New York, New York
       July 28, 2017

/s/ ***Stuart M. Bernstein***
STUART M. BERNSTEIN
United States Bankruptcy Judge

## EXHIBIT A

**SECOND AMENDED PLAN OF REORGANIZATION OF SUNEDISON, INC. AND ITS DEBTOR AFFILIATES**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| **SUNEDISON, INC.**, *et al.*, | : **Case No. 16-10992 (SMB)** |
| | : |
| Debtors.[1] | : **Jointly Administered** |
| | : |

## SECOND AMENDED JOINT PLAN OF REORGANIZATION OF SUNEDISON, INC. AND ITS DEBTOR AFFILIATES

SKADDEN, ARPS, SLATE, MEAGHER &
   FLOM LLP
Jay M. Goffman
J. Eric Ivester
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000

James J. Mazza, Jr.
Louis S. Chiappetta

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); EverStream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE MN Development, LLC (8669); SunE MN Development Holdings, LLC (5388); SunE Minnesota Holdings, LLC (8926); TerraForm Private Holdings, LLC (5993); SunEdison Products, LLC (3557); Hudson Energy Solar Corporation (1344); SunE REIT-D PR, LLC (2171); First Wind Energy, LLC (5519); First Wind Holdings, LLC (4445); Vaughn Wind, LLC (9605); Maine Wind Holdings, LLC (4825); SunEdison International Construction, LLC (6257); and EchoFirst Finance Co., LLC (1607).  The address of the Debtors' corporate headquarters is Two City Place Drive, 2nd floor, St. Louis, MO 63141.

155 N. Wacker Dr.
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700

Anthony W. Clark
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000

*Attorneys for Debtor and Debtor-in-Possession*

Dated:          July 20, 2017

# TABLE OF CONTENTS

**Page**

Article I

DEFINITIONS, RULES OF
INTERPRETATION, AND COMPUTATION OF TIME

A.  Scope of Definitions ........................................................................................4
B.  Definitions............................................................................................................4
C.  Rules of Interpretation ...................................................................................35
D.  Computation Of Time ....................................................................................35
E.  References to Monetary Figures ...................................................................35
F.  Exhibits ..............................................................................................................36

Article II

ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS

2.1  Administrative Claims ...................................................................................36
2.2  Original and Replacement DIP Facility Claims........................................37
2.3  Professional Claims ........................................................................................39
2.4  Priority Tax Claims.........................................................................................41

Article III

CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

3.1  Classification of Claims and Interests.................................................................42

Article IV

PROVISIONS FOR TREATMENT
OF CLAIMS AND INTERESTS

4.1  Second Lien Claims .......................................................................................44
4.2  Other Secured Claims ...................................................................................45
4.3  Other Priority Claims....................................................................................46
4.4  General Unsecured Claims ..........................................................................46
4.5  Intercompany Claims ....................................................................................47
4.6  Other Subordinated Claims .........................................................................47
4.7  Interests in Debtor Subsidiaries .................................................................48
4.8  Interests in SUNE ..........................................................................................48
4.9  SPS Secured Claim .........................................................................................49
4.10  SMP Claim........................................................................................................49

## Article V

## ACCEPTANCE

5.1    Classes Entitled to Vote ...................................................................................49
5.2    Acceptance by Impaired Classes .......................................................................49
5.3    Elimination of Classes ......................................................................................49
5.4    Deemed Acceptance if No Votes Cast ..............................................................50
5.5    Cramdown ........................................................................................................50

## Article VI

## MEANS FOR IMPLEMENTATION OF THE PLAN

6.1    General Settlement of Claims and Interests .....................................................50
6.2    [RESERVED] ...................................................................................................51
6.3    Restructuring Transactions. .............................................................................51
6.4    Sources of Cash for Plan Distribution ..............................................................51
6.5    Reinstated Second Lien Claims.. ......................................................................52
6.6    Conversion and Distribution of Continuing TERP Class A Shares.....................52
6.7    Administration of Repatriated Cash, Earnout Assets, and Residual Assets .........53
6.8    Certain Transfers Between SUNE and Other Debtors..........................................53
6.9    Authorization and Issuance of New SUNE Common Stock ...............................53
6.10   GUC/Litigation Trust Initial Funding................................................................54
6.11   Exemptions from Securities Act Registration Requirements ...............................54
6.12   Cancellation of Old SUNE Securities and Agreements........................................54
6.13   Issuance and Distribution of New Securities; Execution of Plan
       Documents .......................................................................................................55
6.14   Continued Corporate Existence ........................................................................55
6.15   Certificate of Incorporation and Bylaws............................................................56
6.16   Directors and Officers of Reorganized Debtors...................................................56
6.17   Corporate Action. .............................................................................................56
6.18   Effectuating Documents; Further Transactions ...................................................56
6.19   Employment, Retirement, Indemnification and Other Agreements and
       Employee Compensation Programs...................................................................57
6.20   Preservation Of Causes Of Action ...................................................................57
6.21   Reservation of Rights........................................................................................58
6.22   Exemption from Certain Transfer Taxes and Recording Fees..............................58
6.23   Insured Claims .................................................................................................58
6.24   Intercompany Account Settlement.....................................................................58
6.25   Private Company................................................................................................58

## Article VII

## GUC/LITIGATION TRUST

7.1    GUC/Litigation Trust Agreement .....................................................................59
7.2    Class A and Class B GUC/Litigation Trust Interests...........................................59

7.3     GUC/Litigation Trust Governance.. .................................................60
7.4     Tax Treatment ......................................................................................61
7.5     GUC/Litigation Trust Assets ..............................................................62
7.6     GUC/Litigation Trust Causes of Action .............................................62
7.7     Disputed Claims Reserve .....................................................................63
7.8     Claims Objections and Transition Services. .......................................63
7.9     Indemnification and Exculpation ........................................................64
7.10    Preservation of Privilege and Defenses ..............................................64
7.11    No Bonding of GUC/Litigation Trust Claims ....................................64
7.12    Service of the Indenture Trustees .......................................................64
7.13    Delivery of Distributions on Account of Second Lien Senior Notes Claims
        and Convertible Senior Notes Claims .................................................65
7.14    Tax Determination. ..............................................................................66

## Article VIII

## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

8.1     Rejection of Executory Contracts and Unexpired Leases....................66
8.2     Assumption of Executory Contracts and Unexpired Leases.................67
8.3     Indemnification Obligations. ..............................................................68
8.4     Insurance Policies ...............................................................................69
8.5     Cure Procedures and Payments Related to Assumption of Executory
        Contracts and Unexpired Leases.........................................................71
8.6     Contracts, Intercompany Contracts, and Leases Entered into After the
        Petition Date........................................................................................72
8.7     General Reservation of Rights .............................................................73
8.8     Surety Bonds........................................................................................73

## Article IX

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS

9.1     Determination Of Claims and Interests................................................73
9.2     Claims Administration Responsibility..................................................74
9.3     Objections to Claims............................................................................74
9.4     Disallowance of Claims .......................................................................75
9.5     Estimation of Claims............................................................................75
9.6     No Interest on Disputed Claims ..........................................................75
9.7     Amendments to Claims ........................................................................76

## Article X

## PROVISIONS GOVERNING DISTRIBUTIONS

10.1    Distributions of GUC/Litigation Trust Interests to Holders of Second Lien
        Claims and General Unsecured Claims ................................................76
10.2    Time of Distributions ..........................................................................76
10.3    Distribution Agent ...............................................................................76

10.4    Currency ..........................................................................................................77
10.5    Distributions on Account of Claims Allowed as of the Effective Date ................77
10.6    Distributions on Account of Claims Allowed After the Effective Date ...............78
10.7    Delivery Of Distributions ..................................................................................79
10.8    Accrual of Dividends and Other Rights ..............................................................80
10.9    Surrender of Securities or Instruments ...............................................................80
10.10   Compliance Matters ...........................................................................................81
10.11   Claims Paid or Payable by Third Parties ............................................................81
10.12   Setoffs ...............................................................................................................82
10.13   Allocation of Plan Distributions Between Principal and Interest .........................82

Article XI

EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

11.1    Vesting of Assets ...............................................................................................83
11.2    Discharge of the Debtors ....................................................................................83
11.3    Discharge of Liabilities Related to General Unsecured Claims and
        Convertible Senior Notes Claims .......................................................................83
11.4    Compromises and Settlements ............................................................................84
11.5    Release by Debtors .............................................................................................84
11.6    Release by Holders of Claims .............................................................................85
11.7    Exculpation and Limitation of Liability ..............................................................86
11.8    Exclusions and Limitations on Exculpation, Indemnification, and Releases ........86
11.9    Injunction ..........................................................................................................89
11.10   Subordination Rights .........................................................................................89
11.11   Protection Against Discriminatory Treatment ....................................................90
11.12   Recoupment .......................................................................................................90
11.13   Release of Liens .................................................................................................91
11.14   Reimbursement or Contribution .........................................................................91

Article XII

CONDITIONS PRECEDENT

12.1    Conditions to Confirmation ................................................................................91
12.2    Conditions to the Effective Date of the Plan .......................................................91
12.3    Waiver of Conditions Precedent .........................................................................93
12.4    Notice of Effective Date .....................................................................................93
12.5    Effect of Non-Occurrence of Conditions to Consummation ................................93

iv

Article XIII

RETENTION OF JURISDICTION

Article XIV

MISCELLANEOUS PROVISIONS

14.1  Binding Effect ................................................................................................96
14.2  Payment of Statutory Fees .............................................................................96
14.3  Payment of Certain Additional Professional Fees .........................................96
14.4  Payment of Fees of Second Lien Senior Notes Indenture Trustee and
      Second Lien Collateral Trustee.......................................................................96
14.5  Modification and Amendments........................................................................96
14.6  Confirmation of the Plan .................................................................................97
14.7  Additional Documents .....................................................................................97
14.8  Dissolution of Creditors' Committee...............................................................97
14.9  Revocation, Withdrawal, or Non-Consummation ...........................................97
14.10 Notices .............................................................................................................98
14.11 Term of Injunctions or Stays...........................................................................99
14.12 Governing Law .................................................................................................99
14.13 Entire Agreement ...........................................................................................100
14.14 Severability ....................................................................................................100
14.15 No Waiver or Estoppel....................................................................................100
14.16 Conflicts .........................................................................................................100

Article XV

SECOND LIEN LITIGATION

# EXHIBITS[2]

| | |
|---|---|
| **Exhibit 2.1** | **Administrative Claim Request Form** |
| **Exhibit 6.1** | **Committee/BOKF Plan Settlement Term Sheet** |
| **Exhibit 6.5** | **Reinstated Second Lien Claim Modification Terms** |
| **Exhibit 6.15** | **Certificate of Incorporation and Bylaws** |
| **Exhibit 6.20** | **Retained Causes of Action** |
| **Exhibit 7.1** | **GUC/Litigation Trust Agreement** |
| **Exhibit 7.6** | **GUC/Litigation Trust Causes of Action** |
| **Exhibit 8.1** | **Assumed Executory Contracts and Unexpired Leases** |

---

[2]    The Exhibits, other than Exhibit 6.1, will be filed with the Plan Supplement.

## INTRODUCTION

SunEdison, Inc. ("SUNE") and certain of its affiliates, the debtors and debtors in possession (collectively, the "Debtors" and, together with their non-Debtor affiliates, "SunEdison" or the "Company") in the above-captioned cases (the "Chapter 11 Cases"), hereby propose this joint plan (this "Plan") for the resolution of the outstanding Claims and Interests. Capitalized terms used herein shall have the meanings ascribed to them in Article I.B of this Plan.

The Plan contemplates a chapter 11 reorganization resulting in two distinct corporate structures upon consummation: (1) Reorganized SUNE and its subsidiaries and (2) the GUC/Litigation Trust. The Plan incorporates, and is primarily funded by, the Debtors' sale, distribution or transfer of all of their interests in the YieldCos, either pursuant to the Jointly Supported Transactions or pursuant to the Plan immediately following the completion of the Jointly Supported Transactions. With respect to TERP, pursuant to the TERP Merger Agreement and the TERP Settlement Agreement, and in exchange for the Debtors' Class B shares of TERP Inc. common stock and Class B units of TERP LLC, the Debtors will receive Class A shares of TERP Inc. common stock, and with respect to each Class A share of TERP Inc. common stock held by them (as of immediately prior to the consummation of the merger contemplated by the TERP Merger Agreement), either (1) elect to retain one Continuing TERP Class A Share (the "TERP Share Election Alternative") and receive $4.50 in Cash or (2) elect to receive $9.52 in Cash and retain zero Continuing TERP Class A Shares, subject to the election terms set forth in the TERP Merger Agreement (the "TERP Cash Election Alternative").[3] The Debtors will only elect the TERP Cash Election Alternative in the event that (a) they do not receive a commitment to fully backstop the Rights Offering, (b) the Rights Offering Backstop Commitment is not approved by the Bankruptcy Court, or (c) the Equity Commitment Agreement is terminated prior to the date that the Debtors need to make their election.

Plan distributions will be made from a combination of equity and debt in Reorganized SUNE, interests in the GUC/Litigation Trust, Cash on hand, and Cash from proceeds received through a combination of the Rights Offering (in the TERP Share Election Alternative only) and the Jointly Supported Transactions.

In addition to the overall plan structure, the Plan also proposes or incorporates two settlements:

- First, the Plan is dependent on settlements of Claims and Causes of Action between the Debtors and each of the YieldCos. The YieldCo Settlements, negotiations of which were first announced in late January 2017, were entered into as of March 6, 2017 and the YieldCo Settlement Motion was filed with the Bankruptcy Court on March 10, 2017. As of the date hereof, the YieldCo Settlement Motion is pending

---

[3] The dollar amounts set forth for each of the TERP Share Election Alternative and the TERP Cash Election Alternative exclude a special dividend in the amount of $1.94 per TERP Class A to be paid in Cash pursuant to the TERP Merger Agreement.

before the Bankruptcy Court. As set forth herein, the value of the Debtors' settled Claims and Causes of Action will be distributed to the Debtors' creditors.

- Second, the Plan includes a settlement (the "Committee/BOKF Plan Settlement") among the Debtors, the Tranche B Roll-Up Lenders/Steering Committee of Prepetition Secured Lenders and Noteholders, the Creditors' Committee, and BOKF, N.A. (as Convertible Senior Notes Indenture Trustee). The executed term sheet for the Committee/BOKF Plan Settlement is attached hereto as Exhibit 6.1.[4] Pursuant to the Committee/BOKF Plan Settlement, on the Effective Date, the Debtors will transfer to the GUC/Litigation Trust for the benefit of Holders of General Unsecured Claims the following assets:

  - $7.5 million in Cash on account of the initial funding for the GUC/Litigation Trust as contemplated by the Committee DIP Settlement annexed to the Original DIP Facility Order and the Replacement DIP Facility Order (the "GUC/Litigation Trust Initial Funding");

  - all proceeds realized from the settlement on account of proceeds allocable from the D&O Insurance to certain estate Causes of Action against the Debtors' current or former directors or officers, which are expected to be $32 million in Cash (the "D&O Insurance Proceeds");

  - $18 million in Cash on account of the settlement of certain Avoidance Actions in connection with the YieldCo Settlement Motion (the "YieldCo Avoidance Allocation");

  - at least $5 million in Cash on account of Voluntary Professional Fee Reductions (the "Voluntary Professional Fee Reduction Amount"), as well as all additional Voluntary Professional Fee Reductions that exceed the Voluntary Professional Fee Reduction Amount; and

  - the GUC/Litigation Trust Causes of Action, subject to a sharing mechanism set forth in the Committee/BOKF Plan Settlement Term Sheet.

- Pursuant to the Committee/BOKF Plan Settlement, all pending litigation that has been commenced by the Creditors' Committee or BOKF, N.A. in the Chapter 11 Cases, including the UCC Challenge Litigation, the BOKF Objection, and the objections to the YieldCo Settlement Motion, will be held in abeyance pending the Bankruptcy Court's approval of the Committee/BOKF Plan Settlement and the Confirmation of the Plan. The Plan serves as the Debtors' motion to approve the Committee/BOKF Plan Settlement under Bankruptcy Rule 9019, and Confirmation of the Plan shall be deemed approval of such settlement. If the Committee/BOKF Plan Settlement is approved, the Plan is Confirmed, and the Plan becomes effective, all pending

---

[4]    To the extent of any inconsistency between the Plan and the Committee/BOKF Plan Settlement Term Sheet, the Committee/BOKF Plan Settlement Term Sheet shall prevail.

2

litigation will be deemed withdrawn with prejudice (and, if necessary, parties will file with the Bankruptcy Court any necessary withdrawal notices).

- The Committee/BOKF Plan Settlement also constitutes a complete settlement of any and all issues that may be in dispute (either currently or pending or that could be commenced in the future) regarding Annex II to the Replacement DIP Facility Order, including any right to receive amounts attributable to the Excess Non-Prepetition 1L/2L Obligor Sale Proceeds.

- The Creditors' Committee has agreed to support, and BOKF, N.A. has agreed not to object to, the Plan and related motions on the foregoing terms, as more fully set forth in the Committee/BOKF Plan Settlement Term Sheet.

- Holders of General Unsecured Claims, in their capacity as such, shall not be permitted to share or participate in (a) the Continuing TERP Class A Shares, (b) the Rights Offering, (c) the New SUNE Common Stock, and (d) the Reinstated Second Lien Claims.

The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code. The Supporting Second Lien Parties, who collectively hold, in the aggregate, approximately 80% in amount of the Second Lien Claims, support the Plan on the terms set forth in the Equity Commitment Agreement. The Creditors' Committee also supports, and BOKF, N.A. has agreed not to object to, the Plan on the terms set forth in the Committee/BOKF Plan Settlement. The distributions to be made to Holders of Claims are set forth herein. The Debtors' non-Debtor subsidiaries are not subject to the Chapter 11 Cases. **None of the YieldCos (defined below) nor their respective direct and indirect subsidiaries are included as "Debtors" in these Chapter 11 Cases.**

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject this Plan cannot be solicited from a Holder of a Claim or Interest until a disclosure statement has been approved by the Bankruptcy Court and distributed to Holders of Claims and Interests. The Disclosure Statement relating to this Plan was approved by the Bankruptcy Court on June 12, 2017 and has been made available to all parties whose votes are being solicited. The Disclosure Statement contains, among other things, a discussion of the Debtors' history, business, properties and operations, risk factors associated with the business and Plan, a summary and analysis of this Plan, a summary and analysis of the settlements contained in the Plan, and certain related matters.

ALL HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

Subject to the restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article XIV of this Plan, the Debtors, with the consent of the Supporting Second Lien Parties and, to the extent affecting the Creditors' Committee or any Holders of General Unsecured Claims, the reasonable consent of the Creditors' Committee, expressly reserve their rights to

3

alter, amend, modify, revoke, or withdraw this Plan, one or more times, prior to this Plan's substantial consummation.

## ARTICLE I

## DEFINITIONS, RULES OF
## INTERPRETATION, AND COMPUTATION OF TIME

### A.    Scope of Definitions

For purposes of this Plan, except as expressly provided otherwise or unless the context requires otherwise, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I.B of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

### B.    Definitions

1.1    "**2018 Convertible Senior Notes**" means the Convertible Senior Notes issued by SUNE under the 2018 Convertible Senior Notes Indenture, bearing interest at a rate of 2.00% per annum and issued in an aggregate principal amount of $600 million.

1.2    "**2018 Convertible Senior Notes Indenture**" means that certain Indenture, dated as of December 20, 2013, by and between SUNE and the Convertible Senior Notes Indenture Trustee (as may be amended or supplemented from time to time) governing the 2018 Convertible Senior Notes.

1.3    "**2020 Convertible Senior Notes**" means the Convertible Senior Notes issued by SUNE under the 2020 Convertible Senior Notes Indenture, bearing interest at a rate of 0.25% per annum and issued in an aggregate principal amount of $600 million.

1.4    "**2020 Convertible Senior Notes Indenture**" means that certain Indenture, dated as of June 10, 2014, by and between SUNE and the Convertible Senior Notes Indenture Trustee (as may be amended or supplemented from time to time) governing the 2020 Convertible Senior Notes.

1.5    "**2020 Exchangeable Notes**" means the notes issued by Seller Note, LLC and guaranteed by SUNE under the 2020 Exchangeable Notes Indenture, bearing interest at a rate of 3.75% per annum and issued in an aggregate principal amount of $336,470,000.

1.6    "**2020 Exchangeable Notes Indenture**" means that certain Indenture, dated as of January 29, 2015, by and among Seller Note, LLC, as issuer, SUNE, as guarantor, and BOKF, N.A. or its successor or successors (as may be amended or supplemented from time to time) governing the 2020 Exchangeable Notes.

1.7    "**2021 Convertible Senior Notes**" means the Convertible Senior Notes issued by SUNE under the 2021 Convertible Senior Notes Indenture, bearing interest at a rate of 2.75% per annum and issued in an aggregate principal amount of $600 million.

**1.8** "**2021 Convertible Senior Notes Indenture**" means that certain Indenture, dated as of December 20, 2013, by and between SUNE and the Convertible Senior Notes Indenture Trustee (as may be amended or supplemented from time to time) governing the 2021 Convertible Senior Notes.

**1.9** "**2022 Convertible Senior Notes**" means the Convertible Senior Notes issued by SUNE under the 2022 Convertible Senior Notes Indenture, bearing interest at a rate of 2.375% per annum and issued in an aggregate principal amount of $460 million.

**1.10** "**2022 Convertible Senior Notes Indenture**" means that certain Indenture, dated as of January 27, 2015, by and between SUNE and the Convertible Senior Notes Indenture Trustee (as may be amended or supplemented from time to time) governing the 2022 Convertible Senior Notes.

**1.11** "**2023 Convertible Senior Notes**" means the Convertible Senior Notes issued by SUNE under the 2023 Convertible Senior Notes Indenture, bearing interest at a rate of 2.625% per annum and issued in an aggregate principal amount of $450 million.

**1.12** "**2023 Convertible Senior Notes Indenture**" means that certain Indenture, dated as of May 20, 2015, by and between SUNE and the Convertible Senior Notes Indenture Trustee (as may be amended or supplemented from time to time) governing the 2023 Convertible Senior Notes.

**1.13** "**2025 Convertible Senior Notes**" means the Convertible Senior Notes issued by SUNE under the 2025 Convertible Senior Notes Indenture, bearing interest at a rate of 3.375% per annum and issued in an aggregate principal amount of $450 million.

**1.14** "**2025 Convertible Senior Notes Indenture**" means that certain Indenture, dated as of May 20, 2015, by and between SUNE and the Convertible Senior Notes Indenture Trustee (as may be amended or supplemented from time to time) governing the 2025 Convertible Senior Notes.

**1.15** "**Accredited Investor**" has the meaning set forth in section 230.501(a) of title 17 of the Code of Federal Regulations.

**1.16** "**ACE Policy**" has the meaning ascribed to such term in Article 8.4(c).

**1.17** "**Additional Net Avoidance Action Proceeds**" means any Net Avoidance Actions Proceeds recovered that exceed $63 million in the aggregate.

**1.18** "**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, but not limited to, the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estates and operating the business of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Cases, Section 503(b)(9) Claims, Professional Claims, and all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, and all Allowed Claims that are entitled to be treated as

Administrative Claims pursuant to a Final Order of the Bankruptcy Court (under section 546(c)(2)(A) of the Bankruptcy Code or otherwise).

**1.19**    "**Administrative Claims Bar Date**" means the deadline for filing proofs of or requests for payment of Administrative Claims, which shall be 30 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, and except with respect to the Original DIP Facility Claims, the Replacement DIP Facility Claims, and Professional Claims, which shall be subject to the provisions of Articles 2.2 and 2.3 hereof, as applicable.

**1.20**    "**Affected Professional**" has the meaning ascribed to such term in Article 2.3(d).

**1.21**    "**Affiliates**" has the meaning ascribed to such term by section 101(2) of the Bankruptcy Code; provided, however, that, for purposes of this Plan, the term "Affiliates" with reference to Affiliates of the Debtors or Reorganized Debtors shall not include any of the YieldCos.

**1.22**    "**Allowed**" means, for distribution purposes, a Claim or Interest, or any portion thereof, or a particular Class of Claims or Interests (a) that has been allowed by a Final Order of the Bankruptcy Court (or such other court as the Reorganized Debtor and the Holder of such Claim or Interest agree may adjudicate such Claim or Interest and objections thereto), (b) which is not the subject of a proof of Claim timely filed with the Bankruptcy Court and is Scheduled as liquidated and noncontingent, other than a Claim that is Scheduled at zero, in an unknown amount, or as disputed, but only to the extent such Claim is Scheduled as liquidated and noncontingent, (c) for which a proof of Claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which (i) no objection to its allowance has been filed within the periods of limitation fixed by this Plan, the Bankruptcy Code or by any order of the Bankruptcy Court, (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order of the Bankruptcy Court, or, (iii) following the Effective Date, with respect to General Unsecured Claims, as otherwise may be determined by the GUC/Litigation Trust in accordance with the GUC/Litigation Trust Agreement, or (d) that is expressly allowed in a liquidated amount pursuant to this Plan.

**1.23**    "**Applicable Issuer**" has the meaning ascribed to such term in the Replacement DIP Facility Order.

**1.24**    "**Assumption and Rejection Procedures**" means the expedited procedures for the Debtors to assume or reject Executory Contracts and Unexpired Leases pursuant to the Bankruptcy Court's order dated May 13, 2016 (Docket No. 280).

**1.25**    "**Avoidance Actions**" means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the Debtors and their recovery, subordination, or other remedies that may be brought by and on behalf of the Debtors and their estates under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under section 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code.

**1.26** "**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the date hereof but, with respect to amendments to the Bankruptcy Code subsequent to commencement of the Chapter 11 Cases, only to the extent that such amendments were made expressly applicable to bankruptcy cases which were filed as of the enactment of such amendments.

**1.27** "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York or such other court as may have jurisdiction over the Chapter 11 Cases.

**1.28** "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

**1.29** "**Bar Date**" means the deadlines set by the Bankruptcy Court pursuant to the Bar Date Orders or other Final Order for filing proofs of claim in the Chapter 11 Cases, as the context may require.

**1.30** "**Bar Date Orders**" means the orders entered by the Bankruptcy Court on August 10, 2016 (Docket No. 948), March 22, 2017 (Docket No. 2627), and May 16, 2017 (Docket No. 3410) and any subsequent order supplementing such orders or relating thereto.

**1.31** "**BOKF Objection**" means the *Objection to Proofs of Claim Nos. 1490 and 3555* filed by BOKF, N.A., as indenture trustee for certain convertible unsecured notes issued by SunEdison, Inc. (Docket No. 1455).

**1.32** "**Brookfield**" means Brookfield Asset Management, Inc. or one or more of its subsidiaries that are party to the Jointly Supported Transactions.

**1.33** "**Business Day**" means any day, excluding Saturdays, Sundays, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York City.

**1.34** "**Cash**" means legal tender of the United States of America and equivalents thereof.

**1.35** "**Causes of Action**" means any and all actions, claims, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable, in contract or in tort, directly or derivatively, in law, equity or otherwise, including actions brought prior to the Petition Date, actions under chapter 5 of the Bankruptcy Code, including any Avoidance Action, and actions against any Entity for failure to pay for products or services provided or rendered by any Debtor, all claims, suits or proceedings relating to

7

enforcement of the Debtors' intellectual property rights, including patents, copyrights and trademarks, and all claims or causes of action seeking recovery of the Debtors' or the Reorganized Debtors' accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtors' or the Reorganized Debtors' businesses, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

1.36    "**Certificate**" means any instrument evidencing a Claim or an Interest.

1.37    "**Chapter 11 Cases**" means the voluntary cases commenced by the Debtors under chapter 11 of the Bankruptcy Code, which are being jointly administered and are currently pending before the Bankruptcy Court under Case No. 16-10992 (SMB).

1.38    "**Chubb Companies**" shall mean ACE American Insurance Company, Westchester Fire Insurance Company, Illinois Union Insurance Company, ACE Property and Casualty Insurance Company, Indemnity Insurance Company of North America, Westchester Surplus Lines Insurance Company, Federal Insurance Company, Executive Risk Specialty Insurance Company, Executive Risk Indemnity, Inc., ESIS, Inc. and each of their respective affiliates.  For the avoidance of doubt, the Chubb Companies are "insurers" as that term is used herein.

1.39    "**Chubb Insurance Contracts**" means all insurance policies that have been issued by any of the Chubb Companies that provide coverage to any of the Debtors (or any of their predecessors), and all agreements, documents or instruments relating thereto.  For the avoidance of doubt, (i) Policy Number DON G23652389009 issued by ACE American Insurance Company, which comprises a portion of the D&O Insurance, is one of the Chubb Insurance Contracts, and (ii) the Chubb Insurance Contracts are "Insurance Contracts," as that term is used herein.

1.40    "**Claim**" means a claim against the Debtors, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code, or an Administrative Claim, as applicable.

1.41    "**Claims and Solicitation Agent**" means Prime Clerk LLC, 830 Third Avenue, 9th Floor, New York, New York 10022, Attention: SunEdison Case Administration.

1.42    "**Claims Objection Deadline**" means, as applicable (except for Administrative Claims), (a) the day that is the later of the first Business Day that is at least 180 days after the Effective Date or (b) such later date as may be established by the Bankruptcy Court upon request of the Reorganized Debtors without further notice to parties-in-interest.

1.43    "**Class**" means a category of Holders of Claims or Interests classified together pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code, as described in Article III of this Plan.

1.44    "**Class A GUC/Litigation Trust Interest**" means an interest in the GUC/Litigation Trust representing all of the GUC/Litigation Trust Assets, other than forty-eight percent (48%) of the Additional Net Avoidance Action Proceeds.

8

1.45    "**Class B GUC/Litigation Trust Interest**" means an interest in the GUC/Litigation Trust representing a right of recovery to forty-eight percent (48%) of the Additional Net Avoidance Action Proceeds as further set forth in Article 7.2(b).

1.46    "**Committee DIP Settlement**" means the Committee Settlement Annex as incorporated as Annex II to the Replacement DIP Facility Order.

1.47    "**Committee/BOKF Plan Settlement**" means the settlement among the Debtors, the Creditors' Committee, BOKF, N.A. (as Convertible Senior Notes Indenture Trustee), and the Tranche B Roll-Up Lenders/Steering Committee of Prepetition Secured Lenders and Noteholders, as set forth in the Committee/BOKF Plan Settlement Term Sheet.

1.48    "**Committee/BOKF Plan Settlement Term Sheet**" means the term sheet attached hereto as Exhibit 6.1, which sets forth the terms and conditions of the Committee/BOKF Plan Settlement.

1.49    "**Confirmation**" means the entry, within the meaning of Bankruptcy Rules 5003 and 9012, of the Confirmation Order, subject to all conditions specified in Article 12.1 having been satisfied or waived, in accordance with the terms herein.

1.50    "**Confirmation Date**" means the date on which Confirmation occurs.

1.51    "**Confirmation Hearing**" means the hearing before the Bankruptcy Court held under section 1128 of the Bankruptcy Code to consider confirmation of the Plan and related matters as such hearing may be adjourned or continued from time to time.

1.52    "**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan under section 1129 of the Bankruptcy Code in form and substance reasonably satisfactory to the Supporting Second Lien Parties and the Creditors' Committee.

1.53    "**Contingency Fee Advisor Retention Notice**" has the meaning ascribed to such term in Article 7.3.

1.54    "**Continuing TERP Class A Shares**" means the Class A shares of TERP Inc. common stock to be retained by the Debtors pursuant to the Jointly Supported Transactions.

1.55    "**Convertible Senior Noteholder**" means a Holder of Convertible Senior Notes.

1.56    "**Convertible Senior Notes**" means, collectively, the 2018 Convertible Senior Notes, the 2020 Convertible Senior Notes, the 2021 Convertible Senior Notes, the 2022 Convertible Senior Notes, the 2023 Convertible Senior Notes, the 2025 Convertible Senior Notes, and the 2020 Exchangeable Notes.

1.57    "**Convertible Senior Notes Claim**" means any and all Claims held by the Convertible Senior Noteholders against SUNE arising under or related to the Convertible Senior Notes.

**1.58**    "**Convertible Senior Notes Indenture Trustee**" means BOKF, N.A. or its successor or successors, in its or their capacity as indenture trustee for the Convertible Senior Notes pursuant to the Convertible Senior Notes Indentures.

**1.59**    "**Convertible Senior Notes Indentures**" means the 2018 Convertible Senior Notes Indenture, the 2020 Convertible Senior Notes Indenture, the 2021 Convertible Senior Notes Indenture, the 2022 Convertible Senior Notes Indenture, the 2023 Convertible Senior Notes Indenture, the 2025 Convertible Senior Notes Indenture, and the 2020 Exchangeable Notes Indenture.

**1.60**    "**Creditor**" has the meaning ascribed to such term in section 101(10) of the Bankruptcy Code.

**1.61**    "**Creditors' Committee**" means the official committee of unsecured creditors appointed pursuant to section 1102(a) of the Bankruptcy Code in the Chapter 11 Cases on April 29, 2016, as may be reconstituted from time to time.

**1.62**    "**Cure**" means the payment or other honoring of all obligations required to be paid or honored in connection with assumption of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code, including (a) the cure of any non-monetary defaults to the extent required, if at all, pursuant to section 365 of the Bankruptcy Code, and (b) with respect to monetary defaults, the distribution, within a reasonable period of time following the Effective Date, of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption (or assumption and assignment) of an Executory Contract or Unexpired Lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations or such other amount as may be agreed upon by the parties, under such Executory Contract or Unexpired Lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

**1.63**    "**Cure Notice**" means the notice of proposed Cure amount provided to counterparties to assumed Executory Contracts or Unexpired Leases pursuant to Article 8.5 of the Plan.

**1.64**    "**Cure Objection Deadline**" means the deadline for filing objections to a Cure Notice or proposed Cure, which shall be on or before fourteen (14) days after the applicable counterparty was served with a Cure Notice.

**1.65**    "**D&O Insurance**" means insurance maintained by the Debtors which covers, among others, current or former directors and officers of the Debtors or any of them, including any runoff policies or tail coverage, including, but not limited to, those insurance policies set forth in Exhibit 1 to the *Order Granting Debtors' Motion for Order Pursuant to Bankruptcy Code Sections 105 and 362, Bankruptcy Rule 4001, and Local Bankruptcy Rule 4001-1 Authorizing Modification of the Automatic Stay, to the Extent Applicable, to Allow for Reimbursement and/or Payment of Defense Costs Under Directors' and Officers' Insurance Policies* (Docket No. 368).

**1.66**    "**D&O Insurance Proceeds**" has the meaning ascribed to such term in the Introduction.

1.67    "**D&O Settlement Agreement**" means that certain Settlement Agreement contemplated to be entered into by and among the Debtors, the Creditors' Committee, and the Individual Defendants (as defined therein).  A form of the D&O Settlement Agreement was attached to the Debtors' Motion for Order Pursuant to Bankruptcy Code Sections 105(a) and 363(b), and Bankruptcy Rules 6004 and 9019, Authorizing and Approving D&O Mediation Settlement Agreement and D&O Insurance Cooperation Agreement, filed on June 7, 2017 at Docket No. 3296.

1.68    "**Debtor Group**" has the meaning ascribed to such term in Article 3.1.

1.69    "**Debtor Professionals**" has the meaning ascribed to such term in the definition of Released Parties.

1.70    "**Debtor Subsidiaries**" means each Debtor that is a direct or indirect subsidiary of SUNE.

1.71    "**Debtors**" means, collectively, SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); EverStream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE MN Development, LLC (8669); SunE MN Development Holdings, LLC (5388); SunE Minnesota Holdings, LLC (8926); TerraForm Private Holdings, LLC (5993); SunEdison Products, LLC (3557); Hudson Energy Solar Corporation (1344); SunE REIT-D PR, LLC (2171); First Wind Energy, LLC (5519); First Wind Holdings, LLC (4445); Vaughn Wind, LLC (9605); Maine Wind Holdings, LLC (4825); SunEdison International Construction, LLC (6257); and EchoFirst Finance Co., LLC (1607).

1.72    "**Disallowed**" means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, or as provided in this Plan, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) a Claim or any portion thereof that is not Scheduled and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the

11

Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.73    "**Disclosure Statement**" means the disclosure statement or any supplements thereto (including the Plan Supplement and all schedules thereto or referenced therein) that relates to this Plan, as such disclosure statement may be amended, modified, or supplemented from time to time in accordance with the terms therein, in form and substance reasonably satisfactory to the Supporting Second Lien Parties, and the Creditors' Committee, all as approved by an order of the Bankruptcy Court pursuant to sections 1125 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3017.

1.74    "**Disclosure Statement Order**" means the order entered by the Bankruptcy Court approving the Disclosure Statement, in form and substance reasonably satisfactory to the Supporting Second Lien Parties and the Creditors' Committee, as containing, among other things, "adequate information" as required by section 1125 of the Bankruptcy Code and solicitation procedures related thereto.

1.75    "**Disputed**" means with respect to a Claim, (a) any Claim as to which any Debtor or other parties-in-interest in accordance with applicable law have interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by any Debtor, or other parties-in-interest in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order, (b) any Claim scheduled by the Debtors as contingent, unliquidated, or disputed, (c) any Claim which amends a Claim scheduled by the Debtors as contingent, unliquidated, or disputed, or (d) any Claim prior to it having become an Allowed Claim.

1.76    "**Distribution Agent**" means any Entity selected by the Debtors or the Reorganized Debtors, in their sole discretion, to make or facilitate distributions pursuant to this Plan.

1.77    "**Distribution Date**" means the date selected by the Reorganized Debtors, in their sole discretion, upon which distributions to Holders of Allowed Claims entitled to receive distributions under this Plan shall commence.

1.78    "**Distribution Record Date**" means the date for determining which Holders of Allowed Claims are eligible to receive distributions under the Plan, which shall be (a) ten (10) Business Days after entry of the Confirmation Order or (b) such other date as designated by an order of the Bankruptcy Court; provided, however, that the Distribution Record Date shall not apply to any Claim governed by an Indenture.  All distributions under this Plan to Holders of Allowed Claims that are governed by an Indenture shall be made in accordance with DTC's procedures (as applicable).

1.79    "**District Court**" means the United States District Court for the Southern District of New York.

1.80    "**DTC**" means the Depository Trust Company, and its successors and assigns.

**1.81** "**Earnout Asset**" means any contract, agreement, right or other asset that gives rise to the right to receive Cash or non-Cash proceeds, including conditional or contingent consideration, in connection with the Debtors' or Reorganized Debtors' or their respective subsidiaries' disposition of any asset.

**1.82** "**Earnout Proceeds**" means the Cash or non-Cash proceeds received directly or indirectly by any Debtor or Reorganized Debtor on account of any Earnout Asset.

**1.83** "**Effective Date**" means the date on which this Plan shall take effect, which date shall be a Business Day on or after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions precedent to the effectiveness of this Plan specified in Article 12.2, have been satisfied, or, if capable of being waived in accordance with the terms herein, waived, which date shall be specified in a notice filed by the Reorganized Debtors with the Bankruptcy Court.

**1.84** "**Eligible Holder**" means a Holder of an Allowed Second Lien Claim who is an Accredited Investor.

**1.85** "**Employee Compensation Plans**" means, collectively, the KEIP, the KERP, the Utility Project Incentive Plan, the RSC Deal Incentive Plan, the C&I Deal Incentive Plan, and any other employee compensation plan implemented by the Debtors in the ordinary course of business.

**1.86** "**Entity**" has the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

**1.87** "**EPL Policy**" means insurance maintained by the Debtors related to certain employment-related claims which covers, among others, current or former directors and officers of the Debtors or any of them, including any runoff policies or tail coverage, including, but not limited to, Continental Casualty Company's Employment Practices Liability Solutions Insurance Policy Number 596411042.

**1.88** "**Equity Commitment Agreement**" means that certain Commitment Agreement, by and among SUNE and the backstop purchasers set forth therein, dated as of May 19, 2017 (as may be amended, supplemented, or modified from time to time), a copy of which is attached to the order entered by the Bankruptcy Court on June 6, 2017 at Docket No. 3283.

**1.89** "**Equity Security**" has the meaning ascribed to such term in section 101(16) of the Bankruptcy Code.

**1.90** "**ERISA**" means the Employee Retirement Income Security Act of 1974.

**1.91** "**Estates**" means the bankruptcy estates of the Debtors created pursuant to section 541 of the Bankruptcy Code.

**1.92** "**Event**" means any event, development, occurrence, circumstance or change.

13

**1.93** "**Excess Non-Prepetition 1L/2L Obligor Sale Proceeds**" has the meaning set forth in the Replacement DIP Facility Order, the determination of which amount is being settled pursuant to the Committee/BOKF Plan Settlement described in Section 6.1 herein.

**1.94** "**Exchange Act**" means the Securities Exchange Act of 1934, as now in effect or hereafter amended, and the rules and regulations of the United States Securities and Exchange Commission promulgated thereunder.

**1.95** "**Exchangeable Notes Claim**" means any and all Claims held by the Holders of 2020 Exchangeable Notes against SUNE arising under or related to the 2020 Exchangeable Notes.

**1.96** "**Exculpated Claim**" means any claim (as defined in section 101(5) of the Bankruptcy Code ) or Legal Proceeding against any Entity related to any act or omission in connection with, relating to, or arising out of the Debtors' restructuring, the Chapter 11 Cases, formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the Rights Offering, the Jointly Supported Transaction Agreements, the YieldCo Avoidance Allocation, the settlement of the Creditors' Committee's claims and Causes of Action against the Prepetition Secured Parties as proposed by the Debtors in the Plan, the settlement of Claims or renegotiation of Executory Contracts or Unexpired Leases, the negotiation of the Plan, the Original DIP Credit Agreement, the Replacement DIP Credit Agreement, the GUC/Litigation Trust Agreement, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration, consummation, and implementation of the Plan, including the issuance of Plan securities, the distribution of property under the Plan, the Jointly Supported Transactions or any other transaction contemplated by the Plan or Disclosure Statement, or in furtherance thereof.

**1.97** "**Exculpated Parties**" means, collectively, each of the following solely in their respective capacities as such: (a) the Debtors, and each of their successors and assigns, (b) the Reorganized Debtors, (c) the Rights Offering Backstop Purchasers, (d) the Supporting Second Lien Parties, (e) the Original DIP Lenders and all other Original DIP Secured Parties, (f) the Original DIP Agents, (g) the Replacement DIP Lenders, (h) the Replacement DIP Agents, (i) the Creditors' Committee and each of its members, solely in their capacity as such, (j) the Prepetition First Lien Secured Parties, (k) the Prepetition First Lien Agents, (l) the Indenture Trustees, (m) the Second Lien Agents, (n) any underwriters, arrangers, or placement agents in respect of the Second Lien Senior Notes, (o) the Second Lien Collateral Trustee, (p) TERP Inc., TERP LLC, and their respective former and current partners, agents, officers, directors, employees, representatives, attorneys and advisors (who served in such roles after April 21, 2016), (q) GLBL Inc., GLBL LLC, and their respective former and current partners, agents, officers, directors, employees, representatives, attorneys and advisors (who served in such roles after April 21, 2016), (r) the Applicable Issuers, and (s) with respect to each of the foregoing parties in clauses (a) through (r), such parties' subsidiaries, Affiliates, officers, directors, principals, members, managers, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other representatives and professionals (but solely in their capacities related to the functions that such primary exculpated party is receiving

14

exculpation for in clauses (a) through (r)); provided, that, solely with respect to the Debtors' directors and officers, this clause (s) shall apply only to (i) the  Existing Directors (and their counsel) and (ii) the Debtors' officers who continued to serve in such roles as of March, 28, 2017 (the initial filing of this Plan).

       **1.98**    "**Executory Contract**" means any contract to which any Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

       **1.99**    "**Exhibit**" means an exhibit annexed either to this Plan, contained in the Plan Supplement, or annexed as an appendix to the Disclosure Statement.

       **1.100**    "**Existing Directors**" means Antonio R. Alvarez, Clayton C. Daley, Jr., Claire Gogel, Emmanuel T. Hernandez, Georganne C. Proctor, James B. Williams and Randy H. Zwirn, each in his or her respective capacity as a director of the SUNE prior to the Effective Date.

       **1.101**    "**Existing L/Cs**" has the meaning ascribed to such term in the Replacement DIP Facility Order.

       **1.102**    "**Face Amount**" means, (a) when used in reference to a Disputed Claim or Disallowed Claim, the full stated liquidated amount claimed by the Holder of a Claim in any proof of Claim, or amendment thereof in accordance with applicable law, timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, or the amount estimated for such Claim in an order of the Bankruptcy Court, and (b) when used in reference to an Allowed Claim or Allowed Interest, the allowed amount of such Claim or Interest.  If none of the foregoing applies, the Face Amount of the Claim shall be zero ($0) dollars.

       **1.103**    "**Fee Examiner"** has the meaning ascribed to such term in Article 2.3(d).

       **1.104**    "**Final Decree**" means the decree contemplated under Bankruptcy Rule 3022.

       **1.105**    "**Final Order**" means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, is in full force and effect, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request reargument or further review or rehearing has expired and no appeal, petition for certiorari, or request for reargument or further review or rehearing has been timely filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for reargument or further review or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal or petition for certiorari or request for reargument or further review or rehearing has been or can be taken or granted; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedures, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order; provided, further, that the Debtors or Reorganized Debtors, as applicable, reserve the right to waive any appeal period for an order or judgment to become a Final Order.

**1.106** "**General Unsecured Claim**" means any Claim that is not an Administrative Claim, an Original DIP Facility Claim, Replacement DIP Facility Claim, Priority Tax Claim, Second Lien Claim, Other Secured Claim, Other Priority Claim, Intercompany Claim, or Other Subordinated Claim. Without limiting the foregoing, General Unsecured Claims include all Rejection Damages Claims that are not Allowed Section 503(b)(9) Claims and all Exchangeable Notes Claims.

**1.107** "**GLBL**" means, collectively, GLBL Inc., GLBL LLC, and their direct and indirect subsidiaries.

**1.108** "**GLBL Inc.**" means TerraForm Global, Inc.

**1.109** "**GLBL LLC**" means TerraForm Global, LLC.

**1.110** "**GLBL Merger Agreement**" means the Agreement and Plan of Merger, dated as of March 6 2017, by and among GLBL Inc. and certain affiliates of Brookfield.

**1.111** "**GLBL Settlement Agreement**" means the Settlement Agreement, dated as of March 6, 2017, by and among SUNE, GLBL Inc., and certain of their respective affiliates. A copy of the GLBL Settlement Agreement was filed as an attachment to the YieldCo Settlement Motion.

**1.112** "**GLBL Voting and Support Agreement**" means that certain Voting and Support Agreement, dated as of March 6, 2017, by and among SUNE, SunEdison Holdings Corporation, GLBL Inc., and certain affiliates of Brookfield. A copy of the GLBL Voting and Support Agreement was filed as an attachment to the Voting and Support Motion.

**1.113** "**Governmental Unit**" has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

**1.114** "**GUC Disputed Claims Reserve**" means assets of the GUC/Litigation Trust allocable to, or retained on account of, Disputed General Unsecured Claims.

**1.115** "**GUC/Litigation Trust**" means the "SunEdison GUC/Litigation Trust" established pursuant to the GUC/Litigation Trust Agreement, the Original DIP Facility Order, and the Replacement DIP Facility Order.

**1.116** "**GUC/Litigation Trust Agreement**" means the GUC/Litigation Trust Agreement, as may be amended, supplemented, restated, or otherwise modified from time to time pursuant to the terms thereof, by and between the Debtors and the GUC/Litigation Trust Trustee, the then-current form of which shall be included in the Plan Supplement, and which shall be consistent with the Committee/BOKF Plan Settlement Term Sheet.

**1.117** "**GUC/Litigation Trust Assets**" means (i) the GUC/Litigation Trust Initial Funding, (ii) the GUC/Litigation Trust Causes of Action that have not already been settled as of the Effective Date, (iii) the D&O Insurance Proceeds, (iv) the YieldCo Avoidance Allocation, and (v) the Voluntary Professional Fee Reduction Amount. Except as otherwise prescribed by this Plan or the GUC/Litigation Trust Agreement, the GUC/Litigation Trust Assets

shall be transferred to the GUC/Litigation Trust by the Debtors or by any other Person then in possession of GUC/Litigation Trust Assets, as applicable, on the Effective Date.

1.118 **"GUC/Litigation Trust Beneficiaries"** means the Holders of GUC/Litigation Trust Interests.

1.119 **"GUC/Litigation Trust Causes of Action"** mean all Causes of Action of the Debtors' Estates as of the Effective Date, including all Estate Avoidance Actions (other than Avoidance Actions against the Yieldcos and Avoidance Actions against the Prepetition First Lien Secured Parties and the Second Lien Creditors) as described in Exhibit 7.6, to the extent such Causes of Action are not released, or settled with the consent of the Creditors' Committee, pursuant to Article 11.5 of this Plan or released or settled pursuant to an Order of the Bankruptcy Court or the Committee/BOKF Plan Settlement Term Sheet.

1.120 **"GUC/Litigation Trust Initial Funding"** has the meaning ascribed to such term in the Introduction.

1.121 "**GUC/Litigation Trust Interests**" means the Class A GUC/Litigation Trust Interests and the Class B GUC/Litigation Trust Interests.

1.122 **"GUC/Litigation Trust Oversight Board"** means the oversight board created by the Creditors' Committee to oversee the GUC/Litigation Trust, the members of which shall be set forth in the Plan Supplement. Any compensation to be paid to the members of the GUC/Litigation Trust Oversight Board shall be paid, first, from the GUC/Litigation Trust Initial Funding and, then, after such funding is exhausted, from other GUC/Litigation Trust Assets. The GUC/Litigation Trust Oversight Board will owe fiduciary duties to the GUC/Litigation Trust Beneficiaries.

1.123 "**GUC/Litigation Trust Reports**" means semi-annual reports, provided by the GUC/Litigation Trust Trustee, containing, among other things, descriptions in reasonable detail of all Net Avoidance Actions Proceeds collected during the relevant half-year and all fees and expenses expended in connection therewith.

1.124 **"GUC/Litigation Trust Trustee"** means the Person selected by the Creditors' Committee or the GUC/Litigation Trust Oversight Board (as applicable) pursuant to the GUC/Litigation Trust Agreement to serve as trustee of the GUC/Litigation Trust from time to time. Any compensation to be paid to the GUC/Litigation Trust Trustee shall be paid, first, from the GUC/Litigation Trust Initial Funding and, then, after such funding is exhausted, from other GUC/Litigation Trust Assets. The GUC/Litigation Trust Trustee and the GUC/Litigation Trust Oversight Board will owe fiduciary duties to the GUC/Litigation Trust Beneficiaries.

1.125 "**Holdback Escrow Account**" means the interest-bearing escrow account into which Cash equal to the Holdback Escrow Amount shall be deposited on the Effective Date for the payment of Allowed Professional Claims (as Allowed pursuant to the terms of this Plan) to the extent not previously paid or disallowed.

1.126 "**Holdback Escrow Amount**" means the sum of (a) the aggregate amounts withheld by the Debtors as of the Confirmation Date as a holdback on payment of

17

Professional Claims pursuant to the Professional Fee Order and (b) twenty (20) percent of that portion of the unbilled fees of Professionals estimated pursuant to Article 2.3(c) of the Plan attributable to fees incurred as of the Confirmation Date, less (c) the Voluntary Professional Fee Reduction Amount; provided, however, that if a Professional does not provide an estimate pursuant to Article 2.3(c), the Debtors (with the consent of the Supporting Second Lien Parties) may estimate the unbilled fees of such Professional incurred as of the Confirmation Date, and the sum of provision (a) above and the total amount so estimated shall comprise the Holdback Escrow Amount.

     **1.127** "**Holder**" means a holder of a Claim against or Interest in the Debtors.

     **1.128** "**Impaired**" means impaired within the meaning of section 1124 of the Bankruptcy Code.

     **1.129** "**Indemnitee**" means an Existing Director or a Person employed by a Debtor or serving as a director or officer of a Debtor immediately prior to the Effective Date and who, acting in their respective capacities as such immediately prior to the Effective Date, are entitled to assert Indemnification Obligations.

     **1.130** "**Indemnification Amount**" means $750,000.

     **1.131** "**Indemnification Obligations**" means obligations of a Debtor, if any, to indemnify, reimburse, advance, or contribute to the losses, liabilities, or expenses of an Indemnitee pursuant to such Debtor's certificate of incorporation, bylaws, policy of providing employee indemnification, applicable law, or specific agreement in respect of any claims, demands, suits, causes of action, or proceedings against an Indemnitee based upon any act or omission related to an Indemnitee's service with, for, or on behalf of the Debtor.

     **1.132** "**Indenture Trustees**" means the Second Lien Senior Notes Indenture Trustee and the Convertible Senior Notes Indenture Trustee.

     **1.133** "**Indentures**" means the Convertible Senior Notes Indentures and the Second Lien Senior Notes Indenture.

     **1.134** "**Insurance Contract**" has the meaning ascribed to it in Article 8.4 of this Plan.

     **1.135** "**Insured Claims**" has the meaning ascribed to it in Article 8.4 of this Plan.

     **1.136** "**Intercompany Claim**" means a Claim or a Cause of Action by SUNE or any direct or indirect subsidiary of SUNE against SUNE or any direct or indirect subsidiary of SUNE, in each case other than (i) any Claim or Cause of Action by or against any YieldCo, (ii) any Claim or Cause of Action by a non-Debtor against another non-Debtor, and (iii) any Claim or Cause of Action by a Debtor against a non-Debtor.  For the avoidance of doubt, any Intercompany Claim of a Debtor or a non-Debtor guarantor of the Original DIP Facility, the Replacement DIP Facility, the Second Lien Loans, or the Second Lien Senior Notes constitutes

18

collateral for such Original DIP Facility Claims, Replacement DIP Facility Claims or Second Lien Claims.

1.137 "**Interest**" means any Equity Security of a Debtor existing immediately prior to the Effective Date.

1.138 "**Investigation/Prosecution Cap**" has the meaning ascribed to such term in the Committee/BOKF Plan Settlement Term Sheet.

1.139 "**Jointly Supported Transaction Agreements**" means any and all agreements entered into by and between any of the Debtors, any of the YieldCos, and/or one or more purchasers in connection with a Jointly Supported Transaction, including any asset purchase agreements, stock purchase agreements, merger agreements, or other agreements effectuating and consummating a Jointly Supported Transaction, and any exhibits, attachments, annexes, or schedules to any of the foregoing, the form(s) of which were attached to the *Debtors' Motion For Orders Approving The Debtors' Performance Under TERP VSA, The TERP IDR Transfer Agreement, And The GLBL VSA In Connection With The Yieldco Mergers* [Docket No. 2580]. The Jointly Supported Transaction Agreements include the Voting and Support Agreements, the YieldCo Settlement Agreements, and the Merger Agreements.

1.140 "**Jointly Supported Transactions**" means one or more transactions, each structured as a merger, sale, or other business combination, pursuant to which the Debtors or the YieldCos, as applicable, will transfer a material part of the equity or assets of the YieldCos, in each case that TERP or GLBL, as applicable, and SunEdison have agreed in writing. The Jointly Supported Transactions include the transactions pursuant to which Brookfield is to acquire 51% of TERP Inc.'s outstanding stock in a sponsorship merger transaction and 100% of GLBL Inc.'s outstanding stock in a whole company cash merger, in each case as more fully described in the YieldCo Settlement Motion and the Jointly Supported Transaction Agreements.

1.141 "**KEIP**" means the Key Employee Incentive Plan for certain of the Debtors' officers and management adopted by the Debtors and approved by the Bankruptcy Court on September 16, 2016 (Docket No. 1205).

1.142 "**KERP**" means the Key Employee Retention Plan for certain of the Debtors' officers and management adopted by the Debtors and approved by the Bankruptcy Court on July 29, 2016 (Docket No. 871) and on August 3, 2016 (Docket No. 903).

1.143 "**Law**" means any law (statutory or common), statute, regulation, rule, code or ordinance enacted, adopted, issued, or promulgated by any Governmental Unit.

1.144 "**L/C Borrowing**" has the meaning set forth in the Original DIP Credit Agreement.

1.145 "**L/C Borrowing Claims**" means any and all Claims against the Debtors arising under or related to the Original DIP Credit Agreement on account of L/C Borrowings, which shall be Allowed as set forth in this Plan.

**1.146** "**L/C Cash Collateralization Agreements**" has the meaning ascribed to such term in the Replacement DIP Facility Order.

**1.147** "**Legal Proceeding**" means legal, governmental, administrative, judicial, or regulatory investigations, audits, actions, suits, claims, arbitrations, demands, demand letters, notices of noncompliance or violation, or proceedings.

**1.148** "**Lien**" has the meaning ascribed to such term in section 101(37) of the Bankruptcy Code.

**1.149** "**MDL Litigation**" means the centralized and consolidated actions against SUNE, the YieldCos, the Debtors' and the YieldCos' current and former directors and officers, the underwriters of certain securities and debt offerings of the Debtors or the YieldCos, and SUNE's independent auditor pending before the Honorable P. Kevin Castel in the District Court (MDL No. 2742).

**1.150** "**Mediation**" means the private mediation process initiated pursuant to the Mediation/Stay Order.

**1.151** "**Mediation/Stay Order**" means the order (as may be amended, modified, or supplemented, from time to time) entered by the District Court on December 19, 2016 directing the parties in the MDL Litigation and certain other shareholder lawsuits to participate in a private mediation and granting a limited stay of all such actions through March 31, 2017.

**1.152** "**Merger Agreements**" means the GLBL Merger Agreement and TERP Merger Agreement.

**1.153** "**Net Avoidance Action Proceeds**" means proceeds recovered by the GUC/Litigation Trust (or for the benefit of unsecured creditors) on account of Avoidance Actions, net of fees and expenses expended to prosecute such Avoidance Actions (including fees paid on a contingency arrangement, any expenses of prosecuting the GUC/Litigation Trust Causes of Action or administering the GUC/Litigation Trust, including, without limitation, the costs associated with preparation of the GUC/Litigation Trust Reports, all of which shall be deducted prior to any distribution of Net Avoidance Action Proceeds), other than proceeds from those Avoidance Actions against the YieldCos that are settled in connection with the YieldCo Avoidance Allocation, whether such Net Avoidance Actions Proceeds are recovered pursuant to the successful prosecution or settlement of such Avoidance Actions.

**1.154** "**New Boards**" means the initial boards of directors of the Reorganized Debtors, which shall as of the Effective Date consist of members selected by the Supporting Second Lien Parties and shall be as set forth in the Plan Supplement or as announced on the record during the Confirmation Hearing.

**1.155** "**New SUNE Common Stock**" means the shares of new common stock of Reorganized SUNE.

**1.156** "**Non-Eligible Holder**" means any Holder of an Allowed Claim that is not an Eligible Holder.

1.157   "**Old SUNE Common Stock**" means shares of common stock of SUNE that are authorized, issued, and outstanding prior to the Effective Date.

1.158   "**Old SUNE Securities**" means, collectively, the Second Lien Senior Notes (other than Second Lien Senior Notes that constitute Reinstated Second Lien Claims), the Convertible Senior Notes (except for the 2020 Exchangeable Notes), and Old SUNE Common Stock, and all options, warrants, rights and other instruments evidencing an ownership interest in SUNE (whether fixed or contingent, matured or unmatured, disputed or undisputed), contractual, legal, equitable, or otherwise, to acquire any of the foregoing.

1.159   "**Order for Attachment**" means the Order for Provisional Attachment Against Claims in the Seoul Central District Court in Korea by which Woongjin Energy Co. Ltd. obtained an attachment against a receivable owed to SPS in the amount of $5,441,143.97.

1.160   "**Ordinary Course Professionals Order**" means the Bankruptcy Court's Final Order Pursuant to Bankruptcy Code Sections 105(a), 327, 330, and 331 Authorizing Debtors to Employ and Pay Professionals Utilized in the Ordinary Course of Business (Docket No. 517).

1.161   "**Original DIP Agent**" means Deutsche Bank AG New York Branch, in its capacity as administrative agent for the Original DIP Lenders pursuant to the Original DIP Credit Agreement (and, together with all other Agents under (and as defined in) the Original DIP Credit Agreement, the "Original DIP Agents").

1.162   "**Original DIP Credit Agreement**" means that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement, between SunEdison, Inc., the Original DIP Lenders, the Original DIP Agent and the other parties thereto, dated as of April 26, 2016, as has been or may be amended, restated, supplemented or otherwise modified from time to time (but not including the Replacement DIP Credit Agreement).

1.163   "**Original DIP Facility**" means the debtor-in-possession secured financing facility, consisting of a letter of credit facility and a term loan facility, provided to the Debtors by the Original DIP Lenders pursuant to the Original DIP Credit Agreement or the other DIP Loan Documents (as defined in the Original DIP Facility Order) as authorized by the Bankruptcy Court pursuant to the Original DIP Facility Order (but not including the Replacement DIP Facility).

1.164   "**Original DIP Facility Claim**" means any Claim arising under, derived from, based upon, or as a result of the Original DIP Facility, including, without limitation, any Claim arising on account of the letter of credit or term loan facilities under the Original DIP Credit Agreement.  For the avoidance of doubt, Claims arising under the Tranche A Roll-Up Loans (as defined in the Original DIP Facility Order) and Tranche B Roll-Up Loans (as defined in the Original DIP Facility Order) shall constitute Original DIP Facility Claims, except to the extent such Claims constitute Replacement DIP Facility Claims pursuant to the terms of the Replacement DIP Facility Order.  As of May 2, 2017, the Debtors believe there are no amounts outstanding under the Original DIP Facility.

21

**1.165** "**Original DIP Facility Order**" means, collectively, (a) the interim order that was entered by the Bankruptcy Court on April 26, 2016 (Docket No. 87), (b) the final order that was entered by the Bankruptcy Court on June 9, 2016 (Docket No. 523), authorizing and approving the Original DIP Facility and the agreements related thereto, in each case as amended or modified in accordance with the terms thereof.  The term "Original DIP Facility Order" includes any and all annexes, exhibits, etc. attached thereto.

**1.166** "**Original DIP Lenders**" means the banks and other financial institutions or entities from time to time party to the Original DIP Credit Agreement as lenders, including, without limitation, the L/C Issuers (as defined in the Original DIP Facility Order).

**1.167** "**Original DIP Secured Parties**" has the meaning ascribed to the term "Secured Parties" in the Original DIP Credit Agreement.

**1.168** "**Original DIP Term Loan Claim**" means any Original DIP Facility Claim arising on account of the term loans under the Original DIP Credit Agreement.

**1.169** "**Other Priority Claim**" means any Claim, other than an Administrative Claim or Priority Tax Claim, entitled to priority payment as specified in section 507(a) of the Bankruptcy Code.

**1.170** "**Other Secured Claim**" means any Secured Claim other than the following: (a) an Original DIP Facility Claim; (b) a Replacement DIP Facility Claim; or (c) a Second Lien Claim.

**1.171** "**Other Subordinated Claim**" means any Claim against the Debtors that is subject to subordination under section 510(b) or (c) of the Bankruptcy Code, whether arising from rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim, or otherwise, which Claim shall be subordinated to all Claims or Interests that are senior to or equal to the Claim or Interest represented by such security, except that if such security is Old SUNE Common Stock, such Claim has the same priority as Old SUNE Common Stock.

**1.172** "**Periodic Distribution Date**" means, as applicable, (a) the Distribution Date, as to the first distribution made by the Distribution Agent, and (b) thereafter, such Business Days selected by the Reorganized Debtors in their reasonable discretion, which shall be no less frequent than once every three (3) months unless otherwise determined by the New Board.

**1.173** "**Person**" has the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

**1.174** "**Petition Date**" means (i) April 21, 2016 with respect to the following Debtors only: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC

22

(3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A), (ii) June 1, 2016 with respect to the following Debtors only: Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A), (iii) July 20, 2016 with respect to the following Debtor only: EverStream HoldCo Fund I, LLC (9564), (iv) August 9, 2016 with respect to the following Debtors only: Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757), (v) August 10, 2016 with respect to the following Debtors only: SunE MN Development, LLC (8669); SunE MN Development Holdings, LLC (5388); SunE Minnesota Holdings, LLC (8926), (vi) December 16, 2016, with respect to the following Debtor only: TerraForm Private Holdings, LLC (5993), and (vii) April 7, 2017 with respect to the following Debtors only: SunEdison Products, LLC (3557); Hudson Energy Solar Corporation (1344); SunE REIT-D PR, LLC (2171); First Wind Energy, LLC (5519); First Wind Holdings, LLC (4445); Vaughn Wind, LLC (9605); Maine Wind Holdings, LLC (4825); SunEdison International Construction, LLC (6257); and EchoFirst Finance Co., LLC (1607).

 **1.175** "**Plan**" means this joint plan of reorganization for the resolution of outstanding Claims and Interests in the Chapter 11 Cases, as may be modified in accordance with the Bankruptcy Code, Bankruptcy Rules, and the terms herein, including the Plan Supplement and all Exhibits, supplements, appendices, and schedules, and in each case in form and substance reasonably satisfactory to the Supporting Second Lien Parties and the Creditors' Committee (as applicable pursuant to the terms of the Committee/BOKF Plan Settlement Term Sheet).

 **1.176** "**Plan Supplement**" means the supplement or supplements to the Plan containing certain Exhibits and documents relevant to the implementation of the Plan, to be filed with the Bankruptcy Court in accordance with the terms herein, and in form and substance reasonably satisfactory to the Supporting Second Lien Parties and, to the extent the Creditors' Committee or Holders of General Unsecured Claims are affected, the Creditors' Committee.

 **1.177** "**Plan Supplement Filing Date**" means the date on which the Plan Supplement shall be filed with the Bankruptcy Court, which date shall be at least seven days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court without further notice, so long as such date is prior to the Voting Deadline.

 **1.178** "**Plan Transaction Documents**" means all definitive documents and agreements to which the Debtors will be a party as contemplated by the Plan, each of which shall be in form and substance reasonably satisfactory to the Supporting Second Lien Parties and, to the extent Holders of General Unsecured Claims are affected, the Creditors' Committee, including, without limitation, (a) the Plan and any documentation or agreements related thereto, (b) the Confirmation Order and pleadings (but not declarations) in support of entry thereof, (c) the solicitation materials in respect of the Plan, the motion to approve the Disclosure Statement,

and the Disclosure Statement Approval Order, and (d) all documents that will comprise the Plan Supplements.

**1.179** "**Prepetition Indemnification Obligations**" has the meaning set forth in Article 8.3.

**1.180** "**Prepetition First Lien Administrative Agent**" means Wells Fargo Bank, National Association, and its predecessors, successors and assigns, solely in its capacity as "Administrative Agent" pursuant to the Prepetition First Lien Credit Agreement (and, together with each other Agent under (and as defined in) the Prepetition First Lien Credit Agreement, the "Prepetition First Lien Agents").

**1.181** "**Prepetition First Lien Credit Agreement**" means that certain Credit Agreement, dated as of February 14, 2014, by and among SUNE, the Prepetition First Lien Administrative Agent, and the letter of credit issuers and various lenders party thereto from time to time, as it may be amended, supplemented, amended and restated or otherwise modified from time to time.

**1.182** "**Prepetition First Lien Credit Documents**" means the Prepetition First Lien Credit Agreement, together with all other "Loan Documents" (as defined in the Prepetition Frist Lien Credit Agreement).

**1.183** "**Prepetition First Lien Secured Parties**" has the meaning set forth in the Replacement DIP Credit Agreement.

**1.184** "**Prepetition Secured Parties**" has the meaning set forth in the Replacement DIP Credit Agreement.

**1.185** "**Priority Tax Claim**" means a Claim of a Governmental Unit entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.186** "**Pro Rata**" means, with respect to Claims, at any time, the proportion that the Face Amount of a Claim in a particular Class or Classes bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class or Classes at issue; *provided*, *however*, that for purposes of distributions to Holders of Allowed General Unsecured Claims, Pro Rata shall apply on a consolidated basis.

**1.187** "**Professional**" means any Entity (a) retained in the Chapter 11 Cases by separate Final Order pursuant to sections 327, 363, and 1103 of the Bankruptcy Code or otherwise; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code; *provided*, *however*, that Professional does not include any Entity retained pursuant to the Ordinary Course Professionals Order.

**1.188** "**Professional Claim**" means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges and disbursements incurred relating to services rendered or expenses incurred after the Petition Date and prior to and including the Confirmation Date; *provided*, *however*, that none of the fees and expenses incurred by the Professionals of the Creditors' Committee with regards to actions

reimbursed by, or paid out of, the GUC/Litigation Trust Initial Funding (including, without limitation, any actions regarding the investigation and prosecution of any GUC/Litigation Trust Causes of Action) , shall constitute Professional Claims or otherwise be paid in cash pursuant to this Plan or otherwise.

      **1.189** "**Professional Fee Order**" means the order entered by the Bankruptcy Court on May 12, 2016, authorizing the interim payment of Professional Claims subject to the Holdback Escrow Amount (Docket No. 258).

      **1.190** "**Reinstated**" or "**Reinstatement**" means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the Claim Holder so as to leave such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code, or (b) notwithstanding any contractual provision or applicable law that entitles the Claim Holder to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Claim Holder for any damages incurred as a result of any reasonable reliance by such Claim Holder on such contractual provision or such applicable law; and (iv) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Claim Holder; <u>provided</u>, <u>however</u>, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, "going dark" provisions, and affirmative covenants regarding corporate existence prohibiting certain transactions or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required to be cured or reinstated in order to accomplish Reinstatement.

      **1.191** "**Reinstated Second Lien Claim Amount**" means an amount, as reasonably agreed to by the Supporting Second Lien Parties, no more than the approximate maximum value of the Earnout Assets, Repatriated Cash, Residual Assets and any other of the Debtors' assets (other than the GUC/Litigation Trust Assets) as of the Effective Date.

      **1.192** "**Reinstated Second Lien Claim Modification Terms**" means the terms upon which the Second Lien Claims that constitute Reinstated Second Lien Claims and the Second Lien Documents shall be modified, amended, supplemented or otherwise restated, in form and substance (and with final documentation) reasonably satisfactory to the Supporting Second Lien Parties and, to the extent that it serves as indenture trustee or collateral trustee with respect to the Reinstated Second Lien Claims, the Second Lien Senior Notes Indenture Trustee or the Second Lien Collateral Trustee, respectively.  A summary of the Reinstated Second Lien Claim Modification Terms, in form and substance reasonably satisfactory to the Supporting Second Lien Parties, will be set forth on <u>Exhibit 6.5</u>.  <u>Exhibit 6.5</u> will be filed with the Plan Supplement.

      **1.193** "**Reinstated Second Lien Claims**" means Second Lien Claims in an aggregate amount equal to the Reinstated Second Lien Claim Amount which shall be reinstated

in accordance with this Plan and subject to the Reinstated Second Lien Claim Modification Terms.[5]

1.194 "**Rejection Damages Claim**" means any Claim on account of the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code or the repudiation of such contract.

1.195 "**Released Parties**" means, collectively, in each case, solely in their respective capacities as such: (a) the Debtors and all of the Debtors' and Reorganized Debtors' (1) current financial advisors, attorneys, accountants, investment bankers, representatives, and other professionals (collectively, the "Debtor Professionals"); (2) current employees, consultants, Affiliates, officers and directors, including any such persons or entities retained pursuant to section 363 of the Bankruptcy Code; and (3) Existing Directors, (b) the Original DIP Agents, (c) the Original DIP Lenders and all other Original DIP Secured Parties, (d) the Replacement DIP Agents, (e) the Replacement DIP Lenders, (f) the Supporting Second Lien Parties, (g) all Professionals (to the extent not duplicative of the Entities covered by clauses (a) and (m) of this definition), (h) the Creditors' Committee and each of its members, solely in their capacity as such, (i) the Indenture Trustees, (j) the Second Lien Collateral Trustee, (k) the Second Lien Agents, (l) any underwriters, arrangers, or placement agents in respect of the Second Lien Senior Notes, (m) the Prepetition First Lien Secured Parties, (n) the Prepetition First Lien Agents, (o) the Applicable Issuers, and (p) with respect to each of the above-named Entities described in subsections (b) through (o), such Entity's current and former affiliates, subsidiaries, advisors, principals, partners, managers, members, employees, officers, directors, representatives, financial advisors, attorneys, accountants, investment bankers, consultants, agents, and other representatives and professionals, in each case to the extent a claim arises from actions taken or omissions by any such person in its capacity as a related person of one of the parties listed in clauses (b) through (o) and is released as against such party.

1.196 "**Releasing Parties**" means, collectively, in each case, in their respective capacities as such, (a) the Original DIP Lenders, (b) the Original DIP Agent, (c) the Replacement DIP Lenders, (d) the Replacement DIP Agent, (e) the Holders of Convertible Senior Notes Claims who vote to accept the Plan, (f) the Holders of Second Lien Senior Notes Claims who vote to accept the Plan, (g) the Holders of Second Lien Loan Claims who vote to accept the Plan, (h) the Creditors' Committee and each of its members, solely in their capacity as such, (i) the Indenture Trustees, (j) the Second Lien Administrative Agent, (k) to the fullest extent permitted by law, all Holders of Claims entitled to vote for or against the Plan that do not vote to reject the Plan, and (l) with respect to each of the foregoing clauses (a) through (k), to the fullest extent permitted by law, such Person's current and former affiliates, subsidiaries, managed accounts or funds, officers, directors, partners, principals, employees, agents, financial advisors, attorneys,

---

[5] To the extent that (a) the Debtors elect the TERP Cash Election Alternative and (b) the cash received from the Jointly Supported Transactions is insufficient to repay the Tranche B Roll-Up Lenders in full and in Cash, the Debtors will issue Reinstated Tranche B Roll-Up Loans in an amount and with terms necessary to render the Tranche B Roll-Up Loans Unimpaired, including, without limitation, priority (over the Reinstated Second Lien Claims) in lien and claim amount and interest, and with other terms that are identical to the current Tranche B Roll-Up Loans.

accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and officers, directors, partners, principals, employees and agents thereof, in each case in their capacity as such.  For the avoidance of doubt, in the event an Entity who is a Releasing Party also holds a Claim or Interest in a non-voting Class under the Plan, such entity will not be a Releasing Party with respect to its Claim or Interest in such non-voting Class.

   **1.197** "**Reorganized Debtors**" means the Debtors or any successor thereto, by merger, consolidation, or otherwise, from and after the Effective Date.

   **1.198** "**Reorganized SUNE**" means SUNE or any successor thereto, by merger, consolidation, or otherwise, from and after the Effective Date.

   **1.199** "**Repatriated Cash**" means Cash received, directly or indirectly, by any Debtor or Reorganized Debtor from any of the Debtors' or Reorganized Debtors' non-U.S. subsidiaries.

   **1.200** "**Replacement DIP Agent**" means Cantor Fitzgerald Securities, in its capacity as administrative agent, or any successor agent in such capacity, for the Replacement DIP Lenders pursuant to the Replacement DIP Credit Agreement (and, together with all other Agents under (and as defined in) the Replacement DIP Credit Agreement, solely in their capacities as such, the "Replacement DIP Agents").

   **1.201** "**Replacement DIP Credit Agreement**" means that certain Amended and Restated Senior Secured Superpriority Debtor-in-Possession Credit Agreement, between SunEdison, Inc., the Replacement DIP Lenders, the Replacement DIP Agent, and the other parties thereto, dated as of May 2, 2017, as has been or may be amended, restated, supplemented or otherwise modified from time to time.

   **1.202** "**Replacement DIP Facility**" means the debtor-in-possession secured financing facility, consisting of (a) a new money term loan facility in an aggregate principal amount of no less than $640 million and (b) a roll-up loan facility comprised of the Tranche B Roll-Up Loans deemed outstanding under such facility (including, in each case, any unpaid interest, fees, costs, and expenses), in each case, provided to the Debtors by the Replacement DIP Lenders pursuant to the Replacement DIP Credit Agreement and the Replacement DIP Documents (as defined in the Replacement DIP Facility Order), as authorized by the Bankruptcy Court pursuant to the Replacement DIP Facility Order.

   **1.203** "**Replacement DIP Facility Claim**" means any Claim arising under, derived from, based upon, or as a result of the Replacement DIP Facility, including, without limitation, any Replacement DIP Term Loan Claim or a Tranche B Roll-Up Loan Claim.  For the avoidance of doubt, Claims arising under the Roll-Up Loans (as defined in the Replacement DIP Credit Agreement) shall constitute Replacement DIP Facility Claims.

   **1.204** "**Replacement DIP Facility Order**" means the order that was entered by the Bankruptcy Court on May 1, 2017 (Docket No. 2880), authorizing and approving the Replacement DIP Facility and the agreements related thereto, as such order may be amended or

modified in accordance with the terms thereof. The term "Replacement DIP Facility Order" includes any and all annexes, exhibits, etc. attached thereto.

1.205 "**Replacement DIP Lenders**" means the banks and other financial institutions or entities from time to time party to the Replacement DIP Credit Agreement as lenders and the Holders of Replacement DIP Facility Claims, including any Applicable Issuers (as defined in the Replacement DIP Facility Order).

1.206 "**Replacement DIP Term Loan Claim**" means any Replacement DIP Facility Claim arising on account of or with respect to the new money term loans under the Replacement DIP Credit Agreement.

1.207 "**Residual Assets**" means assets of the Reorganized Debtors other than Repatriated Cash, Earnout Assets, and/or interests in the YieldCos, including, but not limited to, inventory, equipment, contractual rights, intellectual property, real property, fixtures, goods, and equity interests in subsidiaries.

1.208 "**Residual Assets Proceeds**" means the Cash or non-Cash proceeds received by any Debtor or Reorganized Debtor on account of any Residual Asset.

1.209 "**Restructuring Transactions**" has the meaning set forth in Article 6.3.

1.210 "**Rights Holders**" means Holders of Allowed Second Lien Claims, except the Rights Holders shall not include any Non-Eligible Holder.

1.211 "**Rights Offering**" means, in the TERP Share Election Alternative, that certain rights offering pursuant to which the Rights Holders are entitled to receive Rights Offering Subscription Rights.

1.212 "**Rights Offering Amount**" means the amount to be raised pursuant to the Rights Offering, as set forth in the Equity Commitment Agreement, as may be modified pursuant to the terms therein.

1.213 "**Rights Offering Backstop Commitment**" means the commitment provided by the Rights Offering Backstop Purchasers pursuant to the Equity Commitment Agreement to purchase the number of Rights Offering Common Stock necessary to fund the Plan with the Rights Offering Amount.

1.214 "**Rights Offering Backstop Purchasers**" means the Entities set forth in the Equity Commitment Agreement.

1.215 "**Rights Offering Backstop Put Premium**" means the put premium to be paid to the Rights Offering Backstop Purchasers, pursuant to the Equity Commitment Agreement.

1.216 "**Rights Offering Commitment Letter**" means that certain Commitment Letter, dated as of April 27, 2017, by and among the Debtors and the Rights Offering Backstop Purchasers.

**1.217** "**Rights Offering Common Stock**" means the shares of Continuing TERP Class A Shares purchased and distributed pursuant to the Rights Offering upon the exercise of the Rights Offering Subscription Rights.

**1.218** "**Rights Offering Procedures**" means those certain rights offering procedures (as may be amended, supplemented, or modified from time to time) with respect to the Rights Offering, which shall be in form and substance reasonably satisfactory to the Rights Offering Backstop Purchasers, a copy of which procedures is attached to the order entered by the Bankruptcy Court on June 6, 2017 at Docket No. 3283.

**1.219** "**Rights Offering Record Date**" means the date to be established in the Rights Offering Procedures as of which a Holder of Second Lien Claims must be an Eligible Holder for purposes of participating in the Rights Offering.

**1.220** "**Rights Offering Subscription Rights**" means subscription rights to acquire 90% of the Continuing TERP Class A Shares and 90% of the New SUNE Common Stock to be distributed on the Effective Date pursuant to the Rights Offering (in both cases, minus the direct purchase by the Rights Offering Backstop Purchasers, as set forth in the Equity Commitment Agreement and approved by the Bankruptcy Court order approving the Equity Commitment Agreement) in accordance with the Rights Offering Procedures. Participants in the Rights Offering shall receive a portion of the Reinstated Second Lien Claims in the same proportion as they will hold New SUNE Common Stock (*i.e.*, if a participant would receive 2% of New SUNE Common Stock, such participant would hold 2% of Reinstated Second Lien Claims).

**1.221** "**Rights Offering Term Sheet**" means the term sheet for the Rights Offering attached to the Rights Offering Commitment Letter as filed with the Bankruptcy Court on April 27, 2017 (Docket No. 2857).

**1.222** "**RSC Deal Incentive Plan**" means the RSC Deal Incentive Plan for certain of the Debtors' employees adopted by the Debtors and approved by the Bankruptcy Court on September 16, 2016 (Docket No. 1205).

**1.223** "**Scheduled**" means, with respect to any Claim, the status, priority, and amount, if any, of such Claim as set forth in the Schedules.

**1.224** "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs filed in the Chapter 11 Cases by the Debtors pursuant to section 521 of the Bankruptcy Code, which incorporate by reference the global notes and statement of limitations, methodology, and disclaimer regarding the Debtors' schedules and statements, as such schedules or statements have been or may be further modified, amended, or supplemented from time to time in accordance with Bankruptcy Rule 1009 or Final Orders of the Bankruptcy Court.

**1.225** "**SEC**" means the United States Securities and Exchange Commission.

**1.226** "**Second Lien Administrative Agent**" means Wilmington Savings Fund Society, FSB (as successor to Deutsche Bank AG New York Branch), and its predecessors,

successors and assigns as "Administrative Agent" pursuant to the Second Lien Credit Agreement (and, together with each other Agent under (and as defined in) the Second Lien Credit Agreement, the "Second Lien Agents").

      **1.227** "**Second Lien Claim Distribution**" means, (A) in the TERP Share Election Alternative, (i) 10% of the New SUNE Common Stock, (ii) 10% of the Continuing TERP Class A Shares, (iii) 10% of the Reinstated Second Lien Claim Amount, and (iv) 100% of the Class B GUC/Litigation Trust Interests, and (B) in the TERP Cash Election Alternative, (i) 100% of the New SUNE Common Stock, (ii) 100% of the Reinstated Second Lien Claim Amount, and (iii) 100% of the Class B GUC/Litigation Trust Interests.[6]

      **1.228** "**Second Lien Claims**" means the Second Lien Loan Claims and the Second Lien Senior Notes Claims.

      **1.229** "**Second Lien Collateral Trustee**" means Wilmington Trust, National Association or its successor, in its capacity as collateral trustee pursuant to that certain Collateral Trust Agreement, dated as of January 11, 2016, among SUNE, the guarantors named therein, the Second Lien Administrative Agent, the Second Lien Senior Notes Indenture Trustee, and Wilmington Trust, National Association as collateral trustee (as may be amended or supplemented from time to time).

      **1.230** "**Second Lien Credit Agreement**" means that certain Second Lien Credit Agreement, dated as of January 11, 2016, by and among SUNE, the Second Lien Administrative Agent, and the various lenders party thereto from time to time, as it may be amended, supplemented, amended and restated or otherwise modified from time to time.

      **1.231** "**Second Lien Creditors**" means the Second Lien Lenders and Second Lien Senior Noteholders.

      **1.232** "**Second Lien Documents**" means the Second Lien Credit Agreement, the Second Lien Senior Notes Indenture, and the related loans, notes, guarantees, pledges, security agreements, and other agreements and documents given or issued pursuant to or in connection with the Second Lien Claims.

      **1.233** "**Second Lien Litigation**" has the meaning ascribed to such term in Article XV.

      **1.234** "**Second Lien Lender**" means a lender under the Second Lien Credit Agreement.

      **1.235** "**Second Lien Loans**" means the loans under the Second Lien Credit Agreement.

---

[6]    The equity percentages set forth for the TERP Share Election Alternative do not reflect dilution attributable to the Rights Offering Backstop Put Premium.

**1.236** "**Second Lien Loan Claims**" means any and all Claims held by the Second Lien Lenders against the Debtors arising under or related to the Second Lien Credit Agreement, whether such Claims are Secured Claims or unsecured deficiency claims pursuant to section 506(a) of the Bankruptcy Code, and which Claims shall be Allowed for all purposes under this Plan in the aggregate amount of $515.1 million. For the avoidance of doubt, the Second Lien Loan Claim shall not include any Claim on account of the Tranche B Roll-Up Loans.

**1.237** "**Second Lien Senior Noteholder**" means a Holder of Second Lien Senior Notes.

**1.238** "**Second Lien Senior Notes**" means the Guaranteed Convertible Senior Secured Notes issued by SUNE under the Second Lien Senior Notes Indenture, bearing interest at a rate of 5.00% per annum and issued in an aggregate principal amount of $225 million.

**1.239** "**Second Lien Senior Notes Claims**" means any and all Claims held by the Second Lien Senior Noteholders against the Debtors arising under or related to the Second Lien Senior Notes, whether such Claims are Secured Claims or unsecured deficiency claims pursuant to section 506(a) of the Bankruptcy Code, and which Claims shall be Allowed for all purposes under this Plan in the aggregate amount of $110.1 million. For the avoidance of doubt, the Second Lien Senior Notes Claim shall not include any Claim on account of the Tranche B Roll-Up Loans.

**1.240** "**Second Lien Senior Notes Indenture**" means that certain Indenture, dated as of January 11, 2016, by and among SUNE, the guarantors named therein, and the Second Lien Senior Notes Indenture Trustee (as may be amended or supplemented from time to time).

**1.241** "**Second Lien Senior Notes Indenture Trustee**" means Wilmington Trust, National Association or its successor, in its capacity as indenture trustee for the Second Lien Senior Notes pursuant to the Second Lien Senior Notes Indenture.

**1.242** "**Section 503(b)(9) Claim**" means any Claim asserted under section 503(b)(9) of the Bankruptcy Code equal to the value of any goods received by the Debtors within 20 days before the Petition Date in which the goods have been sold to the Debtors in the Debtors' ordinary course of business.

**1.243** "**Secured Claim**" means a Claim (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

**1.244** "**Securities Act**" means the Securities Act of 1933, as now in effect or hereafter amended, and the rules and regulations of the United States Securities and Exchange Commission promulgated thereunder.

**1.245** "**Security**" has the meaning ascribed to such term in section 2(a)(1) of the Securities Act.

31

**1.246** "**Servicer**" means any indenture trustee, agent, servicer, or other authorized representative of Holders of Claims or Interests recognized by the Debtors. The Debtors recognize only Wilmington Trust, National Association, in its capacity as the Second Lien Senior Notes Indenture Trustee, and BOKF, N.A., in its capacity as Convertible Senior Notes Indenture Trustee, as a Servicer.

**1.247** "**SMP Claim**" means Claim #1711 filed by SMP Ltd., which is a subsidiary of SunEdison Products Singapore Pte. Ltd., against Debtor SunEdison Products Singapore Pte. Ltd. in the amount of $60,336,482.02.

**1.248** "**SPS Secured Claim**" means the claim by Woongjin Energy Co. Ltd. ("Woongjin") against Debtor, SunEdison Products Singapore Pte. Ltd. ("SPS") on account of the attachment obtained by Woongjin Energy Co. Ltd., against a receivable owed to SPS in the amount of $5,441,143.97 in attachment proceeding prosecuted by Woongjin in the Seoul Central District Court in Korea which claim is being reduced, allowed and converted to non-recourse in connection with the Plan in the aggregate amount of $375,000.

**1.249** "**SUNE Certificate of Incorporation and Bylaws**" means the amended and restated certificate of incorporation and bylaws of Reorganized SUNE, the form and substance of which shall be included in the Plan Supplement.

**1.250** "**SunEdison/YieldCos Settlement Agreement**" means that certain SunEdison/Yieldcos UCC Settlement Agreement, dated as of March 27, 2017, by and among SUNE, TERP, GLBL, and certain of their respective current directors and officers.

**1.251** "**Supporting Second Lien Parties**" means those Holders of Second Lien Claims who are, or who become, party to the Rights Offering Backstop Commitment or the Equity Commitment Agreement. Any provision in this Plan that requires the consent of the Supporting Second Lien Parties shall require the consent of the Supporting Second Lien Parties holding more than one-half of the Second Lien Claims held by all of the Supporting Second Lien Parties, who were Supporting Second Lien Parties as of May 26, 2017.

**1.252** "**Surety**" means any surety bond provider that has issued one or more surety bonds to any of the Debtors.

**1.253** "**TERP**" means, collectively, TERP Inc., TERP LLC, and their direct and indirect subsidiaries.

**1.254** "**TERP Cash Election Alternative**" has the meaning ascribed to such term in the Introduction.

**1.255** "**TERP Inc.**" means TerraForm Power, Inc.

**1.256** "**TERP LLC**" means TerraForm Power LLC.

**1.257** "**TERP Merger Agreement**" means the Merger and Sponsorship Transaction Agreement, dated as of March 6, 2017, by and among TERP Inc. and certain affiliates of Brookfield.

1.258  "**TERP Settlement Agreement**" means the Settlement Agreement, dated as of March 6, 2017, by and among SUNE, TERP Inc., and certain of their respective affiliates. A copy of the TERP Settlement Agreement was filed as an attachment to the YieldCo Settlement Motion.

1.259  "**TERP Share Election Alternative**" has the meaning ascribed to such term in the Introduction.

1.260  "**TERP Voting and Support Agreement**" means that certain Voting and Support Agreement, dated as of March 6, 2017, by and among SUNE, SunEdison Holdings Corporation, SUNE ML1, LLC, TERP Inc., and certain affiliates of Brookfield.  A copy of the TERP Voting and Support Agreement was filed as an attachment to the Voting and Support Motion.

1.261  "**Tranche A-1 Roll-Up Lender**" has the meaning set forth in the Original DIP Credit Agreement.

1.262  "**Tranche A-1 Roll-Up Loan**" has the meaning set forth in the Original DIP Credit Agreement.

1.263  "**Tranche A-1 Roll-Up Loan Claims**" means any and all Claims held by the Tranche A-1 Roll-Up Lenders against the Debtors arising under or related to the Original DIP Credit Agreement on account of the Tranche A-1 Roll-Up Loans, which shall be Allowed for all purposes under this Plan.

1.264  "**Tranche A-2 Roll-Up Lender**" has the meaning set forth in the Original DIP Credit Agreement.

1.265  "**Tranche A-2 Roll-Up Loan**" has the meaning set forth in the Original DIP Credit Agreement.

1.266  "**Tranche A-2 Roll-Up Loan Claims**" means any and all Claims held by the Tranche A-2 Roll-Up Lenders against the Debtors arising under or related to the Original DIP Credit Agreement on account of the Tranche A-2 Roll-Up Loans, which shall be Allowed for all purposes under this Plan.

1.267  "**Tranche B Roll-Up Lender**" has the meaning set forth in the Original DIP Credit Agreement or the meaning of the term "Roll-Up Lender" in the Replacement DIP Credit Agreement, as applicable.

1.268  "**Tranche B Roll-Up Lenders/Steering Committee of Prepetition Second Lien Lenders and Noteholders**" has the meaning set forth in the Committee/BOKF Plan Settlement.

1.269  "**Tranche B Roll-Up Loan**" has the meaning set forth in the Original DIP Credit Agreement or the meaning of the term "Roll-Up Loan" in the Replacement DIP Credit Agreement, as applicable.

**1.270** "**Tranche B Roll-Up Loan Claims**" means any and all Claims held by the Tranche B Roll-Up Lenders against the Debtors arising under or related to the Original DIP Credit Agreement or the Replacement DIP Credit Agreement on account of the Tranche B Roll-Up Loans, which shall be Allowed for all purposes under this Plan.

**1.271** "**Transition Services Agreement**" has the meaning ascribed to such term in Article 7.6.

**1.272** "**UCC Challenge Litigation**" means Adversary Proceeding No. 16-01228 commenced by the Creditors' Committee in connection with the Chapter 11 Cases.

**1.273** "**Unclaimed Distribution**" means any distribution under the Plan on account of an Allowed Claim to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' or Reorganized Debtors' request for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

**1.274** "**Unexpired Lease**" means a lease of nonresidential real property to which any Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**1.275** "**Unimpaired**" means, with respect to a Class of Claims, a Class of Claims that is not Impaired.

**1.276** "**United States**" has the meaning ascribed to such term in Article 11.8.

**1.277** "**Utility Project Incentive Plan**" means the Utility Project Incentive Plan for certain of the Debtors' employees adopted by the Debtors and approved by the Bankruptcy Court on July 29, 2016 (Docket No. 871).

**1.278** "**Voluntary Professional Fee Reduction Amount**" has the meaning ascribed to such term in the Introduction.

**1.279** "**Voluntary Professional Fee Reductions**" has the meaning ascribed to such term in Article 2.3(d).

**1.280** "**Voting and Support Agreements**" means, together, (1) the TERP Voting and Support Agreement and (2) the GLBL Voting and Support Agreement.

**1.281** "**Voting and Support Motion**" means the motion filed by the Debtors on March 14, 2017 seeking this Court's approval of the Voting and Support Agreements (Docket No. 2580).

**1.282** "**Voting Deadline**" means July 13, 2017 at 4:00 p.m. prevailing Eastern time.

1.283   "**YieldCo Avoidance Allocation**" has the meaning ascribed to such term in the Introduction.

1.284   "**YieldCo Settlement Agreements**" means, together, (1) the TERP Settlement Agreement and (2) the GLBL Settlement Agreement.

1.285   "**YieldCo Settlement Motion**" means the motion filed by the Debtors on March 10, 2017 seeking this Court's approval of the YieldCo Settlement Agreements (Docket No. 2570) as supplemented on March 24, 2017 (Docket No. 2641), as modified in accordance with the Committee/BOKF Plan Settlement Term Sheet.

1.286   "**YieldCos**" means, collectively, GLBL and TERP.

## C.    Rules of Interpretation

For purposes of this Plan, unless otherwise provided herein, (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, and neuter; (c) any reference in the Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to this Plan; (f) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (i) to the extent the Disclosure Statement is inconsistent with the terms of this Plan, this Plan shall control; (j) to the extent this Plan is inconsistent with the Confirmation Order, the Confirmation Order shall control; (k) any immaterial effectuating provision may be interpreted by the Reorganized Debtors in a manner that is consistent with the overall purpose and intent of the Plan without further Final Order of the Bankruptcy Court; (l) to the extent that any right of any Entity (other than the Debtors or Reorganized Debtors) to consent to a matter, action or otherwise is unqualified, it shall be implied that such consent right may not be unreasonably withheld; and (m) to the extent that this Plan is inconsistent with the Committee/BOKF Plan Settlement Term Sheet, the Committee/BOKF Plan Settlement Term Sheet shall control.

## D.    Computation Of Time

In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

## E.    References to Monetary Figures

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.      **Exhibits**

All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date.  After the Plan Supplement Filing Date, copies of Exhibits may be obtained upon written request to Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 (Att'n: J. Eric Ivester), or Skadden, Arps, Slate, Meagher & Flom LLP, 155 North Wacker Drive, Suite 2700, Chicago, Illinois 60606 (Att'n: James J. Mazza, Jr. and Louis S. Chiappetta), counsel to the Debtors, or by downloading such exhibits from the Debtor's informational website at https://cases.primeclerk.com/sunedison/.  To the extent any Exhibit is inconsistent with the terms of this Plan and unless otherwise provided for in the Confirmation Order, the terms of the Exhibit shall control as to the transactions contemplated thereby and the terms of this Plan shall control as to any Plan provision that may be required under the Exhibit.

## ARTICLE II

## ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS

2.1      **Administrative Claims**.  Except to the extent that the Debtors (or the Reorganized Debtors) and a Holder of an Allowed Administrative Claim agree to less favorable treatment, a Holder of an Allowed Administrative Claim (other than a Professional Claim, which shall be subject to Article 2.3 of the Plan) shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim either (a) on the Effective Date, (b) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims, without any further action by the Holders of such Allowed Administrative Claims, or (c) on such other date as agreed between the Debtors (or the Reorganized Debtors) and such Holder of an Allowed Administrative Claim[7]; provided, however, that other than Holders of (i) Original DIP Facility Claims, (ii) Replacement DIP Facility Claims, (iii) Professional Claims, (iv) Administrative Claims Allowed by an order of the Bankruptcy Court on or before the Effective Date, or (v) Administrative Claims that are not Disputed and arose in the ordinary course of business and was paid or are to be paid in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim, the Holder of any Administrative Claim shall have filed a proof of Claim form no later than the Administrative Claims Bar Date and such Claim shall have become an Allowed Claim. Except as otherwise provided herein and as set forth in Articles 2.2 or 2.3 of this Plan, all requests for payment of an Administrative Claim must be filed, in substantially the form of the Administrative Claim Request Form contained in Exhibit 2.1, with the Claims and Solicitation Agent and served on counsel for the Debtors or the Reorganized Debtors (and, if filed after the Disclosure Statement Order is entered, counsel to the Supporting Second Lien

---

[7] Subject to, in the TERP Cash Election Alternative, the issuance, if necessary, of the Reinstated Tranche B Roll-Up Loans.

36

Parties) by no later than the Administrative Claims Bar Date.  After the Effective Date, the Reorganized Debtors, with the consent of the Supporting Second Lien Parties (such consent not to be unreasonably withheld or delayed) may settle an Administrative Claim without further Bankruptcy Court approval.   In the event that the Reorganized Debtors object to an Administrative Claim and there is no settlement, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.  For the avoidance of doubt, the fees and expenses incurred by the Creditors' Committee's Professionals with regard to the investigation or prosecution of the UCC Challenge Litigation shall be paid in Cash in the amount set forth in the Committee/BOKF Plan Settlement Term Sheet.   Subject to the other provisions of the Committee/BOKF Plan Settlement, the Creditors' Committee's Professionals reserve any and all rights to seek allowance and payment of any fees and expenses in connection with matters other than (a) fees and expenses subject to the Investigation/Prosecution Cap and (b) other than as already paid, fees and expenses related to GUC/Litigation Trust Causes of Action.   For the avoidance of doubt, nothing in this Article 2.1 shall affect the rights afforded to governmental units pursuant to section 503(b)(1)(D) of the Bankruptcy Code.

## 2.2    Original and Replacement DIP Facility Claims.

(a)    **Replacement DIP Term Loan Claims**.  On the Effective Date, the Replacement DIP Term Loan Claims shall be Allowed in full, in the amount of $640 million (less any amounts paid prior to the Effective Date) plus all accrued and unpaid postpetition interest under the Replacement DIP Credit Agreement (and any unpaid fees, costs, and expenses).  Except to the extent that a Holder of a Replacement DIP Term Loan Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each and every Replacement DIP Term Loan Claim, each Holder of an Allowed Replacement DIP Term Loan Claim shall be paid in full in Cash on the Effective Date, with such payments to be distributed to the Replacement DIP Agent for the ratable benefit of the Holders of Replacement DIP Term Loan Claims.

(b)    **Original DIP Term Loan Claims.**  On the Effective Date, the Original DIP Term Loan Claims (including any unpaid interest, fees, costs, and expenses) shall be Allowed in full to the extent not previously repaid.  As of May 2, 2017, the Debtors believe that there are no amounts outstanding under the Original DIP Facility with respect to the Original DIP Term Loans.  In the event amounts are owed as Allowed Original DIP Term Loan Claims as of the Effective Date, except to the extent that a Holder of an Original DIP Term Loan Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each and every Original DIP Term Loan Claim, each Holder of an Allowed Original DIP Term Loan Claim shall be paid in full in Cash on the Effective Date, with such payments to be distributed to the Original DIP Agent for the ratable benefit of the Holders of Original DIP Term Loan Claims.

(c)    **L/C Borrowing Claims.**   On the Effective Date, the L/C Borrowing Claims (including any unpaid interest, fees, costs, and expenses) shall be Allowed in full to the extent not previously repaid.  As of May 2, 2017, the Debtors believe that there are no amounts outstanding under the Original DIP Facility with respect to the L/C Borrowings.  In the event amounts are owed as Allowed L/C Borrowing Claims as of the Effective Date, except to the extent that a Holder of an L/C Borrowing Claim agrees to less favorable treatment, in full and

final satisfaction, settlement, release, and discharge of and in exchange for each and every L/C Borrowing Claim, Holders of L/C Borrowing Claims shall be paid in full in Cash on the Effective Date, with such payments to be distributed to the Original DIP Agent for the ratable benefit of the Holders of L/C Borrowing Claims.

(d)    **Tranche A-1 Roll-Up Loan Claims.**  On the Effective Date, the Tranche A-1 Roll-Up Loan Claims shall be Allowed in full to the extent not previously repaid. As of May 2, 2017, the Debtors believe that there are no amounts outstanding under the Tranche A-1 Roll-Up Loans.  In the event amounts are owed as Allowed Tranche A-1 Roll-Up Loan Claims as of the Effective Date, except to the extent that a Holder of a Tranche A-1 Roll-Up Loan Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each and every Tranche A-1 Roll-Up Loan Claim, Holders of Tranche A-1 Roll-Up Loan Claims shall be paid in full in Cash on the Effective Date, with such payments to be distributed to the Original DIP Agent for the ratable benefit of the Holders of Tranche A-1 Roll-Up Loan Claims.

(e)    **Tranche A-2 Roll-Up Loan Claims.**  On the Effective Date, the Tranche A-2 Roll-Up Loan Claims shall be Allowed in full to the extent not previously repaid. As of May 2, 2017, the Debtors believe that there are no amounts outstanding under the Tranche A-2 Roll-Up Loans.  In the event amounts are owed as Allowed Tranche A-2 Roll-Up Loan Claims as of the Effective Date, except to the extent that a Holder of a Tranche A-2 Roll-Up Loan Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each and every Tranche A-2 Roll-Up Loan Claim, Holders of Tranche A-2 Roll-Up Loan Claims shall be paid in full in Cash on the Effective Date, with such payments to be distributed to the Original DIP Agent for the ratable benefit of the Holders of Tranche A-2 Roll-Up Loan Claims.

(f)    **Tranche B Roll-Up Loan Claims.**  On the Effective Date, the Tranche B Roll-Up Loan Claims shall be Allowed in full, in the amount of $317,549,980.22 plus accrued postpetition interest in an amount to be determined.  Except to the extent that a Holder of a Tranche B Roll-Up Loan Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each and every Tranche B Roll-Up Loan Claim, Holders of Tranche B Roll-Up Loan Claims shall be paid in full in Cash on the Effective Date, with such payments to be distributed to the Replacement DIP Agent for the ratable benefit of the Holders of Tranche B Roll-Up Loan Claims.[8]

(g)    Upon the Effective Date, subject to (a) payment in full and in Cash of the Replacement DIP Facility Claims and the Original DIP Facility Claims, and (b) any indemnification and reimbursement claims that survive under the terms of the Replacement DIP

---

[8] To the extent that (a) the Debtors elect the TERP Cash Election Alternative and (b) the cash received from the Jointly Supported Transactions is insufficient to repay the Tranche B Roll-Up Lenders in full and in Cash, the Debtors will issue Reinstated Tranche B Roll-Up Loans in an amount and with terms necessary to render the Tranche B Roll-Up Loans Unimpaired, including, without limitation, priority (over the Reinstated Second Lien Claims) in lien and claim amount and interest, and with other terms that are identical to the current Tranche B Roll-Up Loans.

Facility and the Original DIP Facility, all Liens and security interests granted to secure the Replacement DIP Facility or the Original DIP Facility shall be deemed discharged, cancelled, and released and shall be of no further force and effect.  To the extent that the Replacement DIP Lenders, the Replacement DIP Agent, the Original DIP Lenders, or the Original DIP Agent have filed or recorded publicly any Liens and/or security interests to secure the Debtors' obligations under the Replacement DIP Facility or the Original DIP Facility, the Replacement DIP Lenders, the Replacement DIP Agent, the Original DIP Lenders, or the Original DIP Agent, as the case may be, shall take any commercially reasonable steps requested by the Debtors that are necessary to cancel and/or extinguish such publicly-filed Liens and/or security interests.

(h)     On the later of the Effective Date or such other date as permitted by the Replacement DIP Facility Order, in the event any Existing L/Cs are outstanding, the Debtors shall have caused all such Existing L/Cs to be cancelled without any further liability to any Applicable Issuer.

(i)     Nothing in this Plan shall impair or otherwise affect the L/C Cash Collateralization Agreements, the obligations of the Debtors (and from and after the Effective Date, the Reorganized Debtors) thereunder, the rights and remedies of the Applicable Issuers thereunder or under the Replacement DIP Facility Order (including, without limitation, under the Replacement Intercreditor Annex (as defined in the Replacement DIP Facility Order)) or the provisions in the Replacement DIP Facility Order relating to the "Prepetition Control Agreements" and the "Prepetition Blocked Accounts" (as each such term is defined in the Replacement DIP Facility Order), and the L/C Cash Collateralization Agreements and all such applicable provisions of the Replacement DIP Financing Order shall be binding upon the Reorganized Debtors and shall remain in full force and effect from and after the Effective Date in accordance with their terms.

### 2.3    Professional Claims.

(a)     **Final Fee Applications**.  All final requests for payment of Professional Claims and requests for reimbursement of expenses of members of the Creditors' Committee must be filed no later than sixty (60) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules and prior orders of the Bankruptcy Court, the Allowed amounts of all Professional Claims and expenses shall be determined by the Bankruptcy Court.  In accordance with the Investigation/Prosecution Cap, other than as may have already been paid, and subject to the interim fee order entered by the Bankruptcy Court on December 1, 2016 (Docket No. 1711), the Original DIP Facility Order, and the Replacement DIP Facility Order, the Professional Claims of the Creditors' Committee's Professionals with regard to the investigation or prosecution of the UCC Challenge Litigation shall be deemed to be satisfied upon receipt of a payment of $2.25 million in Cash.  All Final Fee Applications shall be made in accordance with and subject to, the terms of the Committee/BOKF Plan Settlement Term Sheet.

(b)     **Payment of Interim Amounts.**  Subject to the Holdback Escrow Amount, on the Effective Date, the Debtors or the Reorganized Debtors shall pay all amounts owing to Professionals for all outstanding amounts billed relating to prior periods through the Effective Date as to which no objection has been filed (and as to which there is no then-existing

39

Court-mandated or Court-ordered prohibition on making payment or as to which such payment is not prohibited by the terms of the Committee/BOKF Plan Settlement Term Sheet). In order to receive payment on the Effective Date for such unbilled fees and expenses incurred through the Effective Date that have not yet been billed pursuant to the Professional Fee Order, no later than two (2) days prior to the Effective Date, the Professionals (who, in the case of the Creditors' Committee, shall only be permitted to take the actions set forth in Article 14.8 after the Confirmation Date) shall estimate fees and expenses due for periods that have not been billed as of the Effective Date and shall deliver such estimate to counsel for the Debtors and the Supporting Second Lien Parties. Within fifteen (15) days after the Effective Date, a Professional receiving payment for the estimated period shall submit a detailed invoice covering such period, subject to any parties' right to object as set forth in the Professional Fee Order.

(c)      **Holdback Escrow Account**. On the Effective Date, and subject to the Investigation/Prosecution Cap as set forth in Article 6.1 and the Committee/BOKF Plan Settlement Term Sheet, the Debtors or the Reorganized Debtors shall fund the Holdback Escrow Account with Cash equal to the aggregate Holdback Escrow Amount for all Professionals. The Distribution Agent shall maintain the Holdback Escrow Account in trust for the Professionals with respect to whom fees have been held back pursuant to the Professional Fee Order. Such funds shall not be considered property of the Debtors, the Reorganized Debtors, or the Estates. The remaining amount of Professional Claims owing to the Professionals shall be paid to such Professionals by the Distribution Agent from the Holdback Escrow Account when such claims are finally Allowed by the Bankruptcy Court. When all Professional Claims have been paid in full, amounts remaining in the Holdback Escrow Account, if any, shall be paid to Reorganized SUNE to be used by the Reorganized Debtors in accordance with the Plan, or distributed to holders of New SUNE Common Stock.

(d)      **Voluntary Professional Fee Reductions**. Every Entity (collectively, the "Affected Professionals") (a) retained in the Chapter 11 Cases by separate Final Order pursuant to sections 327, 363, and 1103 of the Bankruptcy Code or otherwise; (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) or 506(b) of the Bankruptcy Code; or (c) awarded compensation and reimbursement pursuant to the Original DIP Facility Order or the Replacement DIP Facility Order, will be asked to voluntarily reduce the aggregate amount of its Professional Claims earned during the course of the Chapter 11 Cases in order to assist in the funding of the Plan and the Committee/BOKF Plan Settlement (the "Voluntary Professional Fee Reductions"). It is a condition to the effectiveness of the Committee/BOKF Plan Settlement that the Voluntary Professional Fee Reductions equal at least $5 million.

In the event an Affected Professional does not agree to a Voluntary Professional Fee Reduction, such Affected Professional's fees and expenses will be subject to review and objection by a fee examiner to be appointed in these cases (the "Fee Examiner"), whose fees and expenses will be deducted from the savings realized by the Fee Examiner. For the avoidance of doubt, the Fee Examiner may only receive compensation from any savings it realizes, and in no event will the Debtors, the Debtors' estates, the Reorganized Debtors, the Second Lien Lenders or Second Lien Senior Noteholders, or any other party incur any fees, costs, or expenses relating to the Fee Examiner or its work. If, as a result of the Fee Examiner's recommendation, any fees are disallowed or reduced by the Court, or fee reductions are agreed to by any Affected

40

Professional per the Fee Examiner's recommendation, then such amounts shall be transferred to the GUC/Litigation Trust for the Holders of General Unsecured Claims. The Fee Examiner will only be permitted to examine the fees of an Affected Professional who does not agree to a Voluntary Professional Fee Reduction.

In the event the fees and expenses of an Affected Professional that has agreed to a Voluntary Professional Fee Reduction is subject to objection, any requested amounts that are Disallowed shall be deemed credited to the Voluntary Professional Fee Reduction Amount so that the Affected Professional will not receive a reduction of the amount payable to it unless the Disallowed amount exceeds the Voluntary Professional Fee Reduction agreed to by such Affected Professional.

The Voluntary Professional Fee Reduction Amount shall be funded into the GUC/Litigation Trust on the Effective Date (to the extent determined as of the Effective Date). The Distribution Agent shall distribute to the GUC/Litigation Trust for the Holders of General Unsecured Claims, the aggregate amount of the Voluntary Professional Fee Reductions. As of the date hereof, Affected Professionals have agreed to Voluntary Professional Fee Reductions in excess of $5 million.

(e)    **Post-Confirmation Date Retention**. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors shall employ and pay Professionals in the ordinary course of business (including the reasonable fees and expenses incurred by Professionals in preparing, reviewing and prosecuting or addressing any issues with respect to final fee applications). The Creditors' Committee's Professionals may only be paid for services rendered after the Confirmation Date if such services are permitted pursuant to Article 14.8 below.

**2.4    Priority Tax Claims**. On the Effective Date, except to the extent that the Debtors (or Reorganized Debtors) and a Holder of an Allowed Priority Tax Claim agree to a less favorable treatment, each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive one of the following treatments on account of such Claim: (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, (b) Cash in an amount agreed to by the Debtors (or the Reorganized Debtors) and such Holder, provided, however, that such parties may further agree for the payment of such Allowed Priority Tax Claim to occur at a later date, or (c) at the sole option of the Debtors (with the reasonable consent of the Supporting Second Lien Parties), Cash in the aggregate amount of such Allowed Priority Tax Claim plus, to the extent provided for by section 511 of the Bankruptcy Code, interest at a rate determined under applicable non-bankruptcy law, payable in installment payments over a period of not more than five (5) years after the Petition Date pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

# ARTICLE III

## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

### 3.1    Classification of Claims and Interests.

(a)    Pursuant to sections 1122 and 1123 of the Bankruptcy Code, set forth below is a designation of classes of Claims and Interests.  A Claim or Interest is placed in a particular Class for the purposes of voting on the Plan and, to the extent applicable, receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims of the kinds specified in sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified and their treatment is set forth in Article II above.

(b)    For administrative convenience, the Plan organizes the Debtors into groups (each a "Debtor Group") and assigns a letter to each Debtor Group and a number to each Class of Claims or Interests in each Debtor Group.  Notwithstanding this organizing principle, the Plan is a separate plan of reorganization or liquidation for each Debtor.  Claims and Interests belonging to a Debtor Group consisting of more than one Debtor shall be deemed to be classified in a single Class for all purposes under the Bankruptcy Code, including voting.  To the extent a Holder has a Claim that may be asserted against more than one Debtor in a Debtor Group, the vote of such Holder in connection with such Claims shall be counted as a vote of such Claim against each Debtor in such Debtor Group.  For consistency, similarly designated Classes of Claims and Interests are assigned the same number across each Debtor Group.  The Plan provides for a single Class of Holders of General Unsecured Claims without regard to Debtor entities at which such Holders hold their Claims.  For purposes of distributions to Holders of General Unsecured Claims, "Pro Rata" shall be determined where (x) the denominator is equal to all Allowed General Unsecured Claims against all Debtors and (y) the numerator is equal to the amount of a particular Holder's Allowed General Unsecured Claim.  For voting purposes, the Debtors shall tabulate ballots for Holders of General Unsecured Claims both on a Debtor-by-Debtor basis and on aggregate basis without regard to particular Debtor entities and reserve the right to seek Confirmation of the Plan under either tabulation through accepting Classes or cramdown.  Claims and Interests are classified as follows:

| Letter | Debtor Group |
|--------|--------------|
| A | **Parent**<br>    SunEdison, Inc. |
| B | **DIP and Second Lien Secured Guarantors**<br>    Buckthorn Renewables Holdings, LLC<br>    Everstream HoldCo Fund I, LLC<br>    Greenmountain Wind Holdings, LLC<br>    Rattlesnake Flat Holdings, LLC |

| # | Designation |
|---|-------------|
| 1 | Second Lien Claims |
| 2 | Other Secured Claims |
| 3 | Other Priority Claims |
| 4 | General Unsecured Claims |
| 5 | Intercompany Claims |
| 6 | Other Subordinated Claims |
| 7 | Interests in Debtor Subsidiaries |

| | | |
|---|---|---|
| | Somerset Wind Holdings, LLC<br>SunE Minnesota Holdings, LLC<br>SunE MN Development, LLC<br>SunE MN Development Holdings, LLC<br>SunE Waiawa Holdings, LLC<br>Sunflower Renewables Holdings 1, LLC<br>Enflex Corporation<br>Fotowatio Renewable Ventures, Inc.<br>MEMC Pasadena, Inc.<br>NVT Licenses, LLC<br>NVT, LLC<br>Solaicx<br>SunE ML 1, LLC<br>SunEdison Canada, LLC<br>SunEdison Contracting, LLC<br>SunEdison DG, LLC<br>SunEdison Holdings Corporation<br>SunEdison International, Inc.<br>SunEdison International, LLC<br>Sun Edison LLC<br>SunEdison Utility Holdings, Inc.<br>Team-Solar Inc.<br>First Wind Holdings, LLC<br>First Wind Energy, LLC<br>Vaughn Wind, LLC<br>Maine Wind Holdings, LLC<br>SunEdison Products, LLC<br>Hudson Energy Solar Corporation<br>SunE REIT-D PR, LLC<br>SunEdison International Construction, LLC<br>EchoFirst Finance Co., LLC | |
| C | **DIP-only Secured Guarantors**<br>Blue Sky West Capital, LLC<br>DSP Renewables, LLC<br>First Wind California Holdings, LLC<br>First Wind Oakfield Portfolio, LLC<br>First Wind Panhandle Holdings III, LLC<br>First Wind Solar Portfolio, LLC<br>Hancock Renewables Holdings, LLC<br>PVT Solar, Inc.<br>SunE Hawaii Solar Holdings, LLC<br>SunE Wind Holdings, Inc.<br>SunEdison Residential Services, LLC | |
| D | **DIP-only Unsecured Guarantor** | |

| | |
|---|---|
| 8 | Interests in SUNE |
| 9 | SPS Secured Claim |
| 10 | SMP Claim |

|   | |
|---|---|
|   | Silver Ridge Power Holdings, LLC |
|   | TerraForm Private Holdings, LLC |
| E | **Not Obligated on DIP or Second Lien Claims** |
|   | SunEdison Products Singapore Pte. Ltd |
|   | SEV Merger Sub Inc. |

The classification of Claims and Interests (as applicable) under the Plan is as set forth below.

| Class(es) | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1A – 1B | Second Lien Claims | Impaired | Entitled to Vote |
| 2A – 2E | Other Secured Claims | Unimpaired | Presumed to Accept |
| 3A – 3E | Other Priority Claims | Unimpaired | Presumed to Accept |
| 4A – 4E | General Unsecured Claims | Impaired | Entitled to Vote |
| 5A – 5E | Intercompany Claims | Impaired or Unimpaired | Deemed to Reject or Presumed to Accept |
| 6A – 6E | Other Subordinated Claims | Impaired | Deemed to Reject |
| 7B – 7E | Interests in Debtor Subsidiaries | Impaired or Unimpaired | Deemed to Reject or Presumed to Accept |
| 8A | Interests in SUNE | Impaired | Deemed to Reject |
| 9E | SPS Secured Claim | Impaired | Entitled to Vote |
| 10E | SMP Claim | Impaired | Entitled to Vote |

## ARTICLE IV

## PROVISIONS FOR TREATMENT
## OF CLAIMS AND INTERESTS

### 4.1    Second Lien Claims (Classes 1A and 1B)

(a)    Classification: Classes 1A and 1B consist of all Allowed Second Lien Claims.

(b)    Allowance:  The Second Lien Claims shall be Allowed in the amount of $625.2 million.

44

(c)     Treatment: Except to the extent that a Holder of an Allowed Second Lien Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Second Lien Claim (except as otherwise set forth herein with respect to the Reinstated Second Lien Claims), on the Effective Date or as soon as practicable thereafter, each Holder of an Allowed Second Lien Claim shall receive its Pro Rata portion of the Second Lien Claim Distribution.

In addition to the foregoing, in the TERP Share Election Alternative, each Holder of an Allowed Second Lien Claim that is an Eligible Holder shall receive its Pro Rata portion of the Rights Offering Subscription Rights.

(d)     Voting: Classes 1A and 1B are Impaired and Holders of Allowed Second Lien Claims are entitled to vote to accept or reject the Plan.

**4.2     Other Secured Claims (Classes 2A – 2E)**

(a)     Classification: Classes 2A, 2B, 2C, 2D, and 2E consist of all Allowed Other Secured Claims.

(b)     Treatment: Except as otherwise provided in and subject to Article 10.6 of this Plan, and except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release and discharge of and in exchange for each and every Allowed Other Secured Claim, each such Holder of an Allowed Other Secured Claim shall, at the option of the Debtors (with the reasonable consent of the Supporting Second Lien Parties) or the Reorganized Debtors, as applicable:

(i)     have its Allowed Other Secured Claim Reinstated and rendered Unimpaired, or otherwise have its Claim rendered Unimpaired, in each case in accordance with section 1124(2) of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of an Allowed Other Secured Claim to demand or receive payment of such Allowed Other Secured Claim prior to the stated maturity of such Allowed Other Secured Claim from and after the occurrence of a default;

(ii)     be paid in full in Cash in an amount equal to such Allowed Other Secured Claim, including postpetition interest, if any, on such Allowed Other Secured Claim required to be paid pursuant to section 506 of the Bankruptcy Code as the case may be, on the later of (x) the Effective Date and (y) the date such Other Secured Claim becomes an Allowed Claim or as soon thereafter as reasonably practicable; or

(iii)     receive such other less favorable treatment as to which the Debtors (with the reasonable consent of the Supporting Second Lien Parties) or Reorganized Debtors and such Holder of such Allowed Other Secured Claim will have agreed upon in writing.

provided, that Other Secured Claims incurred by the Debtors in the ordinary course of business may be paid in the ordinary course of business in accordance with such applicable terms and conditions relating thereto in the discretion of the Debtors (with the reasonable consent of the

45

Supporting Second Lien Parties) or Reorganized Debtors without further notice to or order of the Bankruptcy Court.  Nothing in this <u>Article 4.2</u> or elsewhere in this Plan shall preclude the Debtors (or the Reorganized Debtors) from challenging the validity of any alleged Lien or any asset of the Debtors or the value of the property that secures any alleged Lien allegedly securing an Allowed Other Secured Claim.

(c)    Voting: Classes 2A, 2B, 2C, 2D, and 2E are Unimpaired, and Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan.

### 4.3    Other Priority Claims (Classes 3A – 3E)

(a)    Classification: Classes 3A, 3B, 3C, 3D, and 3E consist of all Allowed Other Priority Claims.

(b)    Treatment:  Except as otherwise provided in and subject to <u>Article 10.6</u> of this Plan, and except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Other Priority Claim, each such Holder of an Allowed Other Priority Claim shall be paid in full in Cash on the Effective Date or on such other date as agreed between the Debtors (or the Reorganized Debtors) and such Holder of an Allowed Other Priority Claim; <u>provided</u>, <u>however</u>, that Other Priority Claims that arise in the ordinary course of the Debtors' business and which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

(c)    Voting: Classes 3A, 3B, 3C, 3D, and 3E are Unimpaired, and Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

### 4.4    General Unsecured Claims (Classes 4A – 4E)

(a)    Classification: Classes 4A through 4E consist of all Allowed General Unsecured Claims.

(b)    Allowance:  (i) the Convertible Senior Notes Claims with respect to the 2018 Convertible Senior Notes shall be Allowed in the amount of $258,543,952.22, (ii) the Convertible Senior Notes Claims with respect to the 2020 Convertible Senior Notes shall be Allowed in the amount of $488,825,666.67, (iii) the Convertible Senior Notes Claims with respect to the 2021 Convertible Senior Notes shall be Allowed in the amount of $291,932,604.17, (iv) the Convertible Senior Notes Claims with respect to the 2022 Convertible Senior Notes Claims shall be Allowed in the amount of $351,259,610.25, (v) the Convertible Senior Notes Claims with respect to the 2023 Convertible Senior Notes shall be Allowed in the amount of $281,870,349.58, (vi) the Convertible Senior Notes Claims with respect to the 2025 Convertible Senior Notes shall be Allowed in the amount of $324,326,640.63, and (vii) the

Convertible Senior Notes Claims with respect to the 2020 Exchangeable Notes shall be Allowed in the amount of $217,159,049.00 unless an objection thereto is filed prior to the Effective Date.

(c)    Treatment: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata portion, as if the SMP Claim is part of Class 4E to the extent it is Allowed, of the Class A GUC/Litigation Trust Interests subject to the specifics set forth herein. For the avoidance of doubt, Holders of Allowed General Unsecured Claims shall not receive any of the Class B GUC/Litigation Trust Interests. For purposes of this Article 4.4, Pro Rata shall apply to all Allowed General Unsecured Claims and an Allowed SMP Claim on a consolidated basis.

(d)    Voting: Classes 4A, 4B, 4C, 4D, and 4E are Impaired and Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

## 4.5    Intercompany Claims (Classes 5A – 5E)

(a)    Classification:  Classes 5A through 5E consist of all Allowed Intercompany Claims.

(b)    Treatment: On the Effective Date, and subject to any repayment obligations necessary to satisfy secured Intercompany Claims, all net Allowed Intercompany Claims (taking into account any setoffs of Intercompany Claims) held by the Debtors between and among any Affiliate of the Debtors shall be either reinstated, cancelled, released, or otherwise settled in the Debtors' discretion with the reasonable consent of the Supporting Second Lien Parties. For the avoidance of doubt, all Allowed Intercompany Claims held by any Debtor constitutes collateral of the Original DIP Lenders, the Replacement DIP Lenders, Second Lien Lenders, and Second Lien Senior Noteholders.

(c)    Voting: Classes 5A, 5B, 5C, 5D, and 5E are either:

(i)    Impaired, and Holders of Allowed applicable Class 5 Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, such Holders of Allowed Class 5 Claims are not entitled to vote to accept or reject the Plan; or

(ii)    Unimpaired, and Holders of Allowed applicable Class 5 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, Holders of Allowed Class 5 Claims are not entitled to vote to accept or reject the Plan.

## 4.6    Other Subordinated Claims (Classes 6A – 6E)

(a)    Classification:  Classes 6A through 6E consist of all Allowed Bankruptcy Code section 510(b) and (c) Claims.

47

(b)    Treatment: Holders of Allowed Other Subordinated Claims shall not receive any distributions on account of such Allowed Other Subordinated Claims.

(c)    Voting: Classes 6A, 6B, 6C, 6D, and 6E are Impaired, and Holders of Allowed Other Subordinated Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Allowed Other Subordinated Claims are not entitled to vote to accept or reject the Plan.

### 4.7    Interests in Debtor Subsidiaries (Classes 7B – 7E)

(a)    Classification:    Classes 7B through 7E consist of all Allowed Interests in Debtor Subsidiaries.

(b)    Treatment:  On the Effective Date, all Allowed Interests in Debtor Subsidiaries shall be either reinstated or cancelled in the Debtors' discretion with the consent of the Supporting Second Lien Parties.  To the extent reinstated, Interests in Debtor Subsidiaries are Unimpaired solely to preserve the Debtors' corporate structure and Holders of those Interests shall not otherwise receive or retain any property on account of such Interests.

(c)    Voting: Classes 7B, 7C, 7D, and 7E are either:

(i)    Impaired, and Holders of Allowed applicable Class 7 Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, such Holders of Allowed Class 7 Claims are not entitled to vote to accept or reject the Plan; or

(ii)    Unimpaired, and Holders of Allowed applicable Class 7 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, Holders of Allowed Class 7 Claims are not entitled to vote to accept or reject the Plan.

### 4.8    Interests in SUNE (Class 8A)

(a)    Classification:  Class 8A consists of all Interests in SUNE.

(b)    Treatment: On the Effective Date, Allowed Class 8A Interests shall be deemed automatically cancelled, released, and extinguished without further action by the Debtors or the Reorganized Debtors and the obligations of the Debtors and the Reorganized Debtors thereunder shall be discharged.

(c)    Voting: Class 8A is Impaired, and Holders of Allowed Class 8A Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Allowed Class 8A Interests are not entitled to vote to accept or reject the Plan.

**4.9    SPS Secured Claim (Class 9E)**

(a)    Classification: Class 9E consists of the SPS Secured Claim.

(b)    Treatment: The Holder of the SPS Secured Claim will receive up to $375,000 from the proceeds of the receivable, if any, that is subject to the Order for Attachment upon its release, when and if paid.

(c)    Voting: Class 9E is Impaired and the Holder of the SPS Secured Claim is entitled to vote to accept or reject the Plan.

**4.10    SMP Claim (Class 10E)**

(a)    Classification: Class 10E consists of the SMP Claim.

(b)    Treatment: Except to the extent that a Holder of an Allowed SMP Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for the SMP Claim, a Holder of an Allowed SMP Claim shall receive its Pro Rata portion, as if it were a member of Class 4E, of the Class A GUC/Litigation Trust Interests subject to the specifics set forth herein.  For the avoidance of doubt, the Holder of an Allowed SMP Claim shall not receive any of the Class B GUC/Litigation Trust Interests.  For purposes of this <u>Article 4.10</u>, Pro Rata shall apply to all Allowed General Unsecured Claims and an Allowed SMP Claim on a consolidated basis.

(c)    Voting: Class 10E is Impaired and the Holder of the SMP Claim is entitled to vote to accept or reject the Plan.

**ARTICLE V**

**<u>ACCEPTANCE</u>**

**5.1    Classes Entitled to Vote.**  Classes 1A – 1B, 4A – 4E, 9E, and 10E are entitled to vote to accept or reject this Plan.  By operation of law, Classes 2A – 2E, 3A – 3E, 5A – 5E, 6A – 6E, 7B – 7E, and 8A are either deemed to have accepted this Plan or to have rejected this Plan and are not entitled to vote.

**5.2    Acceptance by Impaired Classes.**  An Impaired Class of Claims shall have accepted this Plan if, not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code, (a) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept this Plan and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in the Class have voted to accept the Plan.

**5.3    Elimination of Classes.**  To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan for purposes of (a) voting to accept or reject this Plan and (b) determining whether it has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

49

**5.4    Deemed Acceptance if No Votes Cast.**  If no Holders of Claims eligible to vote in a particular Class vote to accept or reject the Plan, this Plan shall be deemed accepted by the Holders of such Claims in such Class.

**5.5    Cramdown.**    To the extent necessary, the Debtors shall request confirmation of this Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Debtors, with the consent of the Supporting Second Lien Parties, and, to the extent Holders of Allowed General Unsecured Claims are affected, the Creditors' Committee (in each case, such consent not to be unreasonably withheld), reserve the right to modify this Plan to the extent, if any, that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

**ARTICLE VI**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**6.1    General Settlement of Claims and Interests**.

(a)    Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute good-faith compromise and settlement of all Claims and Interests and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest.

(b)    In consideration for the compromises and settlements contained herein, including the distribution of the Class A GUC/Litigation Trust Interests for the benefit of Holders of General Unsecured Claims, the transfer of the GUC/Litigation Trust Assets to the GUC/Litigation Trust, and the settlement of any and all issues that may be in dispute (either currently or pending or that could be commenced in the future) regarding Annex II to the Replacement DIP Facility Order, including any right to receive amounts attributable to the Excess Non-Prepetition 1L/2L Obligor Sale Proceeds, and in each case as more fully set forth in the Disclosure Statement, on the Effective Date all pending litigation commenced by the Creditors' Committee or BOKF, N.A., including the UCC Challenge Litigation, the BOKF Objection, and the objections to the YieldCo Settlement Motion, shall be dismissed with prejudice in accordance with the Committee/BOKF Plan Settlement Term Sheet.

(c)    In further consideration for the settlement of the litigation commenced by the Creditors' Committee and BOKF, N.A., on or after the Effective Date (as applicable), the terms of the Committee/BOKF Plan Settlement Term Sheet shall be effectuated to the extent that they have not previously occurred.

(d)    This Plan shall be deemed a motion to settle all pending litigation that has been commenced by the Creditors' Committee or BOKF, N.A. in the Chapter 11 Cases, including the UCC Challenge Litigation, the BOKF Objection, and the objections to the YieldCo

Settlement Motion and pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and Confirmation of the Plan shall be deemed approval of such settlement.

      **6.2**    **[RESERVED]**

      **6.3**    **Restructuring Transactions**.

      (a)    On or after the Confirmation Date, the Debtors (with the reasonable consent of the Supporting Second Lien Parties and the Creditors' Committee) shall be authorized to enter into such transactions and take such other actions as may be necessary or appropriate to effect a corporate restructuring of their businesses, to otherwise simplify the overall corporate structure of the Debtors, or to organize certain of the Debtors under the laws of jurisdictions other than the laws of which such Debtors currently are organized, which restructuring may include one or more mergers, consolidations, dispositions, liquidations, or dissolutions as may be determined by the Debtors to be necessary or appropriate to result in substantially all of the respective assets, properties, rights, liabilities, duties, and obligations of certain of the Debtors vesting in one or more surviving, resulting, or acquiring Entities (collectively, the "Restructuring Transactions"). In each case in which the surviving, resulting, or acquiring Entity in any such transaction is a successor to a Debtor, such surviving, resulting, or acquiring Entity shall perform the obligations of such Debtor pursuant to the Plan to satisfy the Allowed Claims against, or Allowed Interests in, such Debtor, except as provided in any contract, instrument, or other agreement or document effecting a disposition to such surviving, resulting, or acquiring Entity, which may provide that another Debtor shall perform such obligations.

      (b)    In effecting the Restructuring Transactions, the Debtors (with the reasonable consent of the Supporting Second Lien Parties and the Creditors' Committee) shall be permitted to (i) execute and deliver appropriate agreements or other documents of merger, consolidation, restructuring, disposition, liquidation, or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable state law and such other terms to which the applicable entities may agree; (ii) execute and deliver appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, duty, or obligation on terms consistent with the terms of the Plan and having such other terms to which the applicable entities may agree; (iii) file appropriate certificates or articles of merger, consolidation, or dissolution pursuant to applicable state law; and (iv) take all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with such transactions.

      **6.4**    **Sources of Cash for Plan Distribution**. All Cash required for payments to be made under the Plan on the Effective Date shall be obtained from Cash on hand, proceeds of the Jointly Supported Transactions and, in the TERP Share Election Alternative only, proceeds of the Rights Offering.

      (a)    **Rights Offering**.  In the TERP Share Election Alternative, prior to the Effective Date and without the need for any further corporate action and without further action by the Holders of Claims or Interests, SUNE shall commence the Rights Offering

pursuant to the Rights Offering Procedures. On the Effective Date, if the TERP Share Election Alternative shall have occurred, Reorganized SUNE shall distribute the Rights Offering Common Stock to the Rights Holders that participate in the Rights Offering as of the Rights Offering Record Date pursuant to the Rights Offering Procedures and the Equity Commitment Agreement. The Rights Offering shall be fully backstopped by the Rights Offering Backstop Purchasers such that the Rights Offering results in the funding of Reorganized SUNE with the Rights Offering Amount on the terms and conditions set forth in the Rights Offering Backstop Commitment and the Equity Commitment Agreement. In exchange for providing the Rights Offering Backstop Commitment for the Rights Offering, on the Effective Date, the Rights Offering Backstop Parties will receive payment of the Rights Offering Backstop Put Premium to the extent earned and payable pursuant to the Equity Commitment Agreement and any order of the Bankruptcy Court approving such fee. For the avoidance of doubt, the Rights Offering Backstop Put Premium is a necessary expense of the Debtors' Estates and shall be deemed an Allowed Administrative Expense Claim pursuant to the order approving the Debtors' entry into the Rights Offering Commitment Letter and the Equity Commitment Agreement.

(b)    **Jointly Supported Transactions**. The Debtors or Reorganized Debtors may enter into, support, or otherwise effectuate one or more Jointly Supported Transactions pursuant to which the Debtors or Reorganized Debtors sell or otherwise dispose of some or all of their equity interests in the YieldCos to a third party purchaser. The Debtors or Reorganized Debtors are authorized to enter into and perform under the Jointly Supported Transaction Agreements and such other documents as may be required or appropriate.

**6.5    Reinstated Second Lien Claims**. On the Effective Date, the Reinstated Second Lien Claims shall be reinstated as modified pursuant to the Reinstated Second Lien Claim Modification Terms. The Debtors and Reorganized Debtors are authorized to take all actions necessary to amend the Second Lien Documents in accordance with the Reinstated Second Lien Claim Modification Terms and such amendments shall be deemed to be effective on the Effective Date. All Liens granted in connection with the Second Lien Claims and that exist over property of the Debtors (and, to the extent applicable, non-Debtors) immediately prior to the Effective Date shall remain in full force and effect following the Effective Date to the extent that the Debtors or Reorganized Debtors have not otherwise disposed of such property free and clear of such Liens in connection with this Plan, and solely to the extent of the Reinstated Second Lien Claims. The Holders of the Reinstated Second Lien Claims, and the amount held by such Holders, shall be consistent with the amounts held by such Holders of Reorganized SUNE equity.[9]

**6.6    Conversion and Distribution of Continuing TERP Class A Shares**. In accordance with the Jointly Supported Transaction Agreements, the Debtors or Reorganized

---

[9] To the extent that (a) the Debtors elect the TERP Cash Election Alternative and (b) the cash received from the Jointly Supported Transactions is insufficient to repay the Tranche B Roll-Up Lenders in full and in Cash, the Debtors will issue Reinstated Tranche B Roll-Up Loans in an amount and with terms necessary to render the Tranche B Roll-Up Loans Unimpaired, including, without limitation, priority (over the Reinstated Second Lien Claims) in lien and claim amount and interest, and with other terms that are identical to the current Tranche B Roll-Up Loans. The provisions of Section 6.5 shall apply *mutatis mutandis* to the Reinstated Tranche B Roll-Up Loans.

Debtors are authorized to exercise any exchange or conversion rights with respect to their interests in the YieldCos, including the exchange or conversion of their Class B shares in TERP Inc. and/or Class B Units in TERP LLC into Class A shares in TERP Inc. in respect of which they may elect to retain Continuing TERP Class A Shares through the TERP Share Election Alternative. The Debtors or Reorganized Debtors are authorized without further corporate or other action or approval to distribute the Continuing TERP Class A Shares to Holders of Allowed Second Lien Claims in accordance with this Plan, including the Rights Offering, free and clear of all Liens.

**6.7    Administration of Repatriated Cash, Earnout Assets, and Residual Assets**. Reorganized SUNE shall employ employees and maintain systems and back-office capabilities reasonably necessary to administer the Earnout Assets and the Residual Assets and to collect the Repatriated Cash, and shall use commercially reasonable efforts to (a) generate Earnout Proceeds and Residual Assets Proceeds therefrom and to maximize the recovery of Repatriated Cash and (b) to transfer such assets to Reorganized SUNE if not otherwise applied to the Reinstated Second Lien Claims.

**6.8    Certain Transfers Between SUNE and Other Debtors**. Following the Effective Date, the Reorganized Debtors may transfer in their sole discretion the right to receive any Earnout Proceeds, Residual Assets Proceeds, and the Repatriated Cash to Reorganized SUNE, free and clear of any Lien, except for the Liens securing the Reinstated Second Lien Claims. The Confirmation Order shall authorize the Debtors to effectuate the transfer of the right to receive Earnout Proceeds, the Residual Assets Proceeds, and Repatriated Cash in accordance with the terms of the Plan as part of the settlements and compromises contained in the Plan. All matters and transactions necessary to effectuate the transfer of the right to receive Earnout Proceeds, the Residual Assets Proceeds, or the Repatriated Cash, and any partnership, membership, or shareholder action required by the applicable Debtors in connection with such transfer will be deemed to have occurred and will be in effect, without any requirement of further action by those authorized to act on behalf of the applicable Debtors. Upon entry of the Confirmation Order, subject to the terms of the Original DIP Facility and the Replacement DIP Facility, the appropriate officers or managing members of each Debtor shall be authorized and directed to issue, execute, deliver, file, and/or record any contracts, agreements, instruments, or other documents contemplated by, or necessary or desirable to effect, the transfer of the right to receive the Earnout Proceeds, the Residual Assets Proceeds, and the Repatriated Cash in accordance with the terms of the Plan, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the transfer of the right to receive the Earnout Proceeds, the Residual Assets Proceeds, and the Repatriated Cash, in each case in the name of and on behalf of the applicable Debtor. The authorizations contained in this <u>Article 6.6</u> apply on a continuing basis to any Earnout Proceeds, Residual Assets Proceeds, or Repatriated Cash received by any Debtor (in such case, subject to the terms of the Original DIP Facility and the Replacement DIP Facility) or Reorganized Debtor following the entry of the Confirmation Order.

**6.9    Authorization and Issuance of New SUNE Common Stock**. On the Effective Date, Reorganized SUNE shall authorize and issue the New SUNE Common Stock. Distribution of New SUNE Common Stock hereunder shall constitute issuance of 100% of such New SUNE Common Stock and in each case shall be deemed issued on the Effective Date. The

issuance of New SUNE Common Stock by Reorganized SUNE is authorized without the need for any further corporate action or without any further action by the Debtors or the Reorganized Debtors, as applicable. All of the shares of New SUNE Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

**6.10    GUC/Litigation Trust Initial Funding**. On the Effective Date, the GUC/Litigation Trust Initial Funding shall be $7.5 million, in accordance with the Committee/BOKF Plan Settlement Term Sheet.

**6.11    Exemptions from Securities Act Registration Requirements**. Except as otherwise set forth in this Plan and consistent with the Jointly Supported Transaction Agreements (if applicable), the offering, issuance, and distribution of any Securities pursuant to the Plan and any and all settlement agreements incorporated therein will be exempt from the registration requirements of Section 5 of the Securities Act pursuant to section 1145 of the Bankruptcy Code, Sections 4(a)(1) and 4(a)(2) of the Securities Act, or any other available exemption from registration under the Securities Act, as applicable. Section 4(a)(2) of the Securities Act exempts transactions by an issuer not involving a public offering and Section 4(a)(1) exempts transactions by any person other than an issuer, underwriter, or dealer. In addition, under section 1145 of the Bankruptcy Code, if applicable, any Securities (other than the Continuing TERP Class A Shares) issued pursuant to the Plan and any and all settlement agreements incorporated therein will be freely transferable under the Securities Act by the recipients thereof, subject to (1) the provisions of Section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in Section 2(a)(11) of the Securities Act, and compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the SEC, if any, applicable at the time of any future transfer of such Securities or instruments, (2) the restrictions, if any, on the transferability of such Securities and instruments, including restrictions contained in the GUC/Litigation Trust Agreement (if applicable), (3) any other applicable regulatory approval, and (4) the restrictions, if any, contained in the SUNE Certificate of Incorporation and Bylaws. Except as otherwise set forth in this Plan, in reliance upon these exemptions, the offer, issuance, and distribution of Securities will not be registered under the Securities Act or any applicable state Blue Sky Laws, and may not be transferred, encumbered or otherwise disposed of in the absence of such registration or an exemption therefrom under the Securities Act or under such laws and regulations thereunder. Accordingly, the Securities may be subject to restrictions on transfer as set forth in the governing documents to such Securities.

**6.12    Cancellation of Old SUNE Securities and Agreements**. On the Effective Date, except as otherwise specifically provided for herein (including with respect to the Reinstated Second Lien Claims), (a) the Old SUNE Securities and any other note, bond, indenture, Certificate, or other instrument or document evidencing or creating any indebtedness or obligation of or ownership interest in SUNE (including the Indentures) shall be cancelled and (b) the obligations of, Claims against, and/or Interests in SUNE under, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the Old SUNE Securities and any other note, bond, indenture, Certificate, or other instrument or document evidencing or creating any indebtedness or obligation of SUNE shall be released and discharged and cancelled; provided, however, that any agreement (including the Indentures) that governs the rights of a Holder of a

Claim that is otherwise released, discharged, and cancelled and that is administered by a Servicer shall continue in effect, notwithstanding anything to the contrary contained herein, solely for the purposes of (a) enabling Holders of Allowed Claims to receive distributions under the Plan and (b) allowing and preserving the rights of any Servicer to (i) make the distributions on account of such Claims under this Plan as provided for in Articles 7.10, 7.11, and 10.5(c) of this Plan, (ii) maintain and exercise any charging liens against any such distributions for the payment of fees and expenses and for indemnification under the applicable Indenture; (iii) appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or in any other court; and (iv) enforce any obligation owed to such Servicer under the Plan; provided, further, that any indemnification and reimbursement obligations in respect of the Replacement DIP Facilities, the Existing DIP Facilities, the Prepetition Second Lien Credit Facility, the Prepetition Second Lien Notes, and/or the Prepetition First Lien Credit Facility (in each case as defined in the Replacement DIP Order) which are expressly stated to survive any repayment under, or termination of, such respective facilities shall survive any cancellation or discharge under this Plan in accordance with their respective terms, and any rights that the Agents (in each case as defined under the respective Replacement DIP Documents, Existing DIP Documents, the Prepetition Second Lien Credit Facility, the Prepetition Second Lien Notes, or the Prepetition First Lien Credit Facility (each as defined in the Replacement DIP Order)) may have under the agency provisions of such facilities shall survive any such cancellation or discharge. Notwithstanding the foregoing, in no event shall the 2020 Exchangeable Notes be cancelled with respect to any non-Debtor obligor thereof, nor shall any non-Debtor be released or discharged with respect to any obligation under the 2020 Exchangeable Notes or the 2020 Exchangeable Notes Indenture by any provision of this Plan.

**6.13    Issuance and Distribution of New Securities; Execution of Plan Documents**.  Except as otherwise provided in the Plan, on or as soon as reasonably practicable after the Effective Date, the Reorganized Debtors shall issue and/or deliver all Securities, notes, instruments, Certificates, and other documents required to be issued pursuant to the Plan and shall amend the Second Lien Documents to implement the Reinstated Second Lien Claim Modification Terms, in form and substance reasonably satisfactory to the Supporting Second Lien Parties.

**6.14    Continued Corporate Existence**.

(a)    Except as otherwise provided in the Plan, the Debtors shall continue to exist after the Effective Date as separate entities, the Reorganized Debtors, with all the powers of a corporation under applicable law in the jurisdiction in which each respective Debtor is incorporated and pursuant to its respective certificate of incorporation and bylaws or other organizational documents in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws or other organization documents are amended and restated by this Plan, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date.  To the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan without any further notice to or action, order, or approval of the Bankruptcy Court or any other court of competent jurisdiction (other than the requisite filings required under applicable state, provincial, or federal law).

55

(b)    Except as otherwise provided in the Plan, the continued existence, operation, and ownership of Affiliates is a material component of the business of the Debtors and the Reorganized Debtors, as applicable, and, as set forth in Article 11.1 of this Plan, all of the Debtors' equity interests and other property interests in such Affiliates shall vest in the Reorganized Debtors or their successors on the Effective Date.

**6.15    Certificate of Incorporation and Bylaws**.    The certificates of incorporation and bylaws (or other formation documents relating to limited liability companies, limited partnership, or other forms of Entity) of the Debtors shall be amended in a form as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code (and which shall be in form and substance reasonably satisfactory to the Supporting Second Lien Parties) and the form and substance of which shall be included in the Plan Supplement.    After the Effective Date, the Reorganized Debtors may amend and restate their respective certificates of incorporation and bylaws (or other formation documents relating to limited liability companies, limited partnership, or other forms of Entity) as permitted by applicable state corporation law and their respective charters and bylaws or other organizational documents.

**6.16    Directors and Officers of Reorganized Debtors**.    Pursuant to section 1129(a)(5) of the Bankruptcy Code, the identity and affiliations of each proposed member of Reorganized Debtors' initial board of directors and each of the initial officers of the Reorganized Debtors (and, to the extent such Person is an insider, the nature of any compensation for such Person) shall be disclosed in the Plan Supplement or as announced on the record at the Confirmation Hearing.    The number of members of the New Boards and the identities thereof, and any senior officers of the Reorganized Debtors not presently serving in such capacity, shall be determined by the Supporting Second Lien Parties.

**6.17    Corporate Action**.    Each of the matters provided for under this Plan involving the corporate structure of the Debtors or the Reorganized Debtors or corporate action to be taken by or required of the Debtors (with the reasonable consent of the Supporting Second Lien Parties) or the Reorganized Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by stockholders, creditors, or directors of the Debtors or the Reorganized Debtors.    Such actions may include, (a) the adoption and filing of the SUNE Certificate of Incorporation and Bylaws, (b) the appointment of the New Boards, and (c) the issuance and distribution of New SUNE Common Stock and (d) the distribution of Continuing TERP Class A Shares.

**6.18    Effectuating Documents; Further Transactions**.    On and after the Effective Date, the Reorganized Debtors, and the officers thereof and members of the New Boards, shall be authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan, or to otherwise comply with applicable law, in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

**6.19    Employment, Retirement, Indemnification and Other Agreements and Employee Compensation Programs**.

(a)    **Employment Agreements**.  To the extent that the Debtors intend for any employment, retirement, indemnification or other agreement with its respective directors, officers, managing members and employees to remain in place after the Effective Date, the Debtors, with the reasonable consent of the Supporting Second Lien Parties, will list such agreement on the list of  "Assumed Executory Contracts and Unexpired Leases" contained in Exhibit 8.1 of the Plan, and such agreement will be assumed as of the Effective Date.  If the Debtors do not list such agreement on the list of "Assumed Executory Contracts and Unexpired Leases" contained in Exhibit 8.1, such agreement shall be deemed rejected.  The Debtors, with the reasonable consent of the Supporting Second Lien Parties, may also enter into new employment arrangements and/or change in control agreements with individuals who will serve as officers of the Reorganized Debtors after the Effective Date.  On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors shall adopt, approve, and authorize any new employment arrangements with respect to such officers of the Reorganized Debtors without further action, order, or approval of the New Boards.

(b)    **Other Incentive Plans and Employee Benefits**.  Unless otherwise specified in this Plan, and except in connection and not inconsistent with Article 6.19(a), on and after the Effective Date, the Reorganized Debtors shall have the discretion, with the reasonable consent of the Supporting Second Lien Parties, to (a) amend, adopt, assume, and/or honor, in the ordinary course of business or as otherwise provided herein, any contracts, agreements, policies, programs, and plans for, among other things, compensation, pursuant to the terms thereof or hereof, including the Employee Compensation Plans, any incentive plan, 401(k) plan, health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation benefits, life insurance, and accidental death and dismemberment insurance for the directors, officers, and employees of the Debtors who served in such capacity from and after the Petition Date, and (b) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Petition Date.

**6.20    Preservation Of Causes Of Action**.  In accordance with section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors shall retain and may (but are not required to) enforce all rights to commence and pursue any and all Causes of Action that are not (a) released pursuant to Article 11.5 of this Plan or an order of the Bankruptcy Court or (b) GUC/Litigation Trust Causes of Action, whether arising before or after the Petition Date, including any actions or categories of actions specifically enumerated in Exhibit 6.20, and such Causes of Action shall vest in the Reorganized Debtors as of the Effective Date.  The Reorganized Debtors, in their sole and absolute discretion, shall determine whether to bring, settle, release, compromise, or enforce such Causes of Action (or decline to do any of the foregoing), and shall not be required to seek further approval of the Bankruptcy Court for such action.  The Reorganized Debtors or any successors may pursue such litigation claims in accordance with the best interests of the Reorganized Debtors or any successor holding such rights of action.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors will not pursue any and all**

57

**available Causes of Action against them.  The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided in the Plan.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the Reorganized Debtors expressly reserve all Causes of Action for transfer to the GUC/Litigation Trust and later adjudication.

**6.21    Reservation of Rights**.  With respect to Avoidance Actions that are transferred to the GUC/Litigation Trust in accordance with Article 7.5 of this Plan, the Debtors, the Reorganized Debtors, and the GUC/Litigation Trust as applicable, reserve all rights, including the right under section 502(d) of the Bankruptcy Code to use defensively the transferred Avoidance Actions as a basis to object to all or any part of a claim against any of the Estates asserted by a creditor which remains in possession of, or otherwise obtains the benefit of, the avoidable transfer.

**6.22    Exemption from Certain Transfer Taxes and Recording Fees**. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan, or any transaction entered into by the GUC/Litigation Trust, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, sales tax, use tax, or other similar tax or governmental assessment to the fullest extent contemplated by section 1146(a) of the Bankruptcy Code, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**6.23    Insured Claims**. Notwithstanding anything to the contrary contained herein, to the extent the Debtors have insurance with respect to any Allowed General Unsecured Claim, the Holder of such Allowed Claim shall (a) be paid any amount from the proceeds of insurance to the extent that the Claim is insured, and, (b) solely for the portion of such Claim that is not paid by the applicable insurance policy, receive the treatment provided for in this Plan for Allowed General Unsecured Claims.

**6.24    Intercompany Account Settlement.** The Debtors and the Reorganized Debtors, and their respective Affiliates, with the reasonable consent of the Supporting Second Lien Parties, will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan.  For the avoidance of doubt, because Intercompany Claims are the collateral of the Original DIP Facility, the Replacement DIP Facility, the Second Lien Loans, and the Second Lien Senior Notes, such transfers or settlements shall not affect distributions under the Plan.

**6.25    Private Company.** It is anticipated that the Reorganized Debtors shall be private companies as of the Effective Date and shall not register any of their respective equity with the SEC or list such equity on an exchange; provided, however, that, to the extent applicable, the Reorganized Debtors may (in the discretion of the New Boards) implement procedures to facilitate trading of such equity, e.g., providing investors with access (on a secure

website) to current information concerning the Reorganized Debtors and their subsidiaries on a consolidated basis.

## ARTICLE VII

## GUC/LITIGATION TRUST

7.1     **GUC/Litigation Trust Agreement**.  The GUC/Litigation Trust shall be established on the Effective Date and shall be governed and administered in accordance with the GUC/Litigation Trust Agreement.  The GUC/Litigation Trust Agreement shall be drafted by the Creditors' Committee's Professionals and shall be in form and substance acceptable to the Creditors' Committee and reasonably acceptable to the Debtors.   Any provisions of the GUC/Litigation Trust Agreement that affect any rights of any holders of Class B GUC/Litigation Trust Interests shall be in form and substance acceptable to the Supporting Second Lien Parties (or their advisors).  The GUC/Litigation Trust Assets or such portion of the GUC/Litigation Trust Assets as determined by the Creditors' Committee/GUC/Litigation Trust Oversight Board shall be used to fund the activities of the GUC/Litigation Trust, including the prosecution of the GUC/Litigation Trust Causes of Action.  For the avoidance of doubt, the GUC/Litigation Trust Initial Funding shall be used to prosecute GUC/Litigation Trust Causes of Action and pay other expenses of the GUC/Litigation Trust prior to any excess being distributed to Holders of Allowed General Unsecured Claims.  The GUC/Litigation Trust Agreement shall provide for (i) distributions at least once per year; (ii) an initial distribution within sixty (60) days of the Effective Date (including deposits into the GUC Disputed Claims Reserve as provided in (iii) hereof) of no less than 50% of all Cash which is transferred to the GUC/Litigation Trust on the Effective Date subject to any holdback necessary to fund or maintain the GUC Disputed Claims Reserve; and (iii) mechanics for a GUC Disputed Claims Reserve sufficient to ensure that a holder of a Disputed General Unsecured Claim which becomes Allowed after the Effective Date receives aggregate distributions from the GUC/Litigation Trust equal to what such holder would have received had such Claims been Allowed on the Effective Date (net of any taxes imposed on, or with respect to, the GUC Disputed Claims Reserve as relates to such Claim, including in connection with such distributions).  The first $2 million of Cash to be distributed from the GUC/Litigation Trust shall be distributed to the Convertible Senior Notes Indenture Trustee as partial payment of its fees and expenses incurred in connection with these Chapter 11 Cases.

7.2     **Class A and Class B GUC/Litigation Trust Interests.**

(a)     Class A GUC/Litigation Trust Interests.   Holders of Class A GUC/Litigation Trust Interests shall be entitled to share in all of the GUC/Litigation Trust Assets.

(b)     Class B GUC/Litigation Trust Interests.   Holders of Class B GUC/Litigation Trust Interests shall only be entitled to the following:

(i)     forty-eight percent (48%) of the Additional Net Avoidance Action Proceeds; provided, that, the GUC/Litigation Trust Agreement shall provide that the GUC/Litigation Trust Agreement may not be amended to change the distributions set forth in this clause (i) without the consent of 75% of the holders (in amount of Class B GUC/Litigation

Trust Interests held, not number of holders) of the Class B GUC/Litigation Trust Interests in the GUC/Litigation Trust and the requisite consent of the holders of the Class A GUC/Litigation Trust Interests in the GUC/Litigation Trust in accordance with the GUC/Litigation Trust Agreement;

(ii)    delivery of the GUC/Litigation Trust Reports;

(iii)    following the filing of any Contingency Fee Advisor Retention Notice, at the request of any of the holders of Class B GUC/Litigation Trust Interests (or their advisor at the instruction of a holder) the GUC/Litigation Trust Trustee will provide additional information regarding the proposed contingency fee engagement (including the actual engagement letter on a confidential basis, if so requested).  Holders of Class B GUC/Litigation Trust Interests (or their advisors at the instruction of a holder) shall have ten (10) Business Days from the date of the filing of the Contingency Fee Advisor Retention Notice to file with the Bankruptcy Court a pleading seeking to prohibit such retention on the grounds that such retention is not consistent with the purpose of the Committee/BOKF Plan Settlement Term Sheet because the engagement does not provide a sufficient incentive for such contingency fee advisor to procure Additional Net Avoidance Action Proceeds, and the GUC/Litigation Trust, GUC Litigation Trust Trustee, GUC Litigation Trust Oversight Board, or the Committee may oppose such pleading (but solely with respect to such issue), and the Bankruptcy Court shall retain jurisdiction to settle such dispute;

(iv)    enforcement rights with regard to any and all of the above rights (and clause (v) below) (as well as the fiduciary duties owed to all holders of GUC/Litigation Trust Interests by the GUC/Litigation Trust Trustee and the GUC/Litigation Trust Oversight Board as set forth below); and

(v)    reasonable consent rights with regard to any modifications, amendments, or supplements of the GUC/Litigation Trust Agreement that affect (i) through (iv) above.

(c)    The GUC/Litigation Trust Trustee shall provide GUC/Litigation Trust Reports to all Holders of GUC/Litigation Trust Interests.

**7.3    GUC/Litigation Trust Governance**.  The GUC/Litigation Trust Trustee, who shall administer the GUC/Litigation Trust, shall be selected by the Creditors' Committee. All GUC/Litigation Trust governance issues shall be determined by the Creditors' Committee including the composition of the GUC/Litigation Trust Oversight Board.  The GUC/Litigation Trust Trustee and the GUC/Litigation Trust Oversight Board shall owe fiduciary duties to all holders of GUC/Litigation Trust Interests.   The GUC/Litigation Trust Trustee and the GUC/Litigation Trust Oversight Board shall have the authority to retain any advisors for the purpose of carrying out their respective duties under the GUC/Litigation Trust Agreement.  The GUC/Litigation Trust Trustee shall file a notice (summarizing the key terms of such retention, including the economic terms thereof) regarding the proposed retention of any such advisors on a contingency fee basis (other than the GUC/Litigation Trust Trustee) (each such notice, a "Contingency Fee Advisor Retention Notice") on the docket of the Bankruptcy Court.

**7.4    Tax Treatment.**  It is intended that the GUC/Litigation Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and as a "grantor trust" within the meaning of Sections 671 through 679 of the Internal Revenue Code, with no objective to continue or engage in the conduct of a trade or business. In furtherance of this objective, the GUC/Litigation Trust Trustee shall, in an expeditious but commercially reasonable manner and exercising its reasonable business judgment, liquidate and convert to cash the GUC/Litigation Trust Assets (which may include the prosecution, compromise and settlement, abandonment or dismissal of any or all claims, rights or causes of action) and not unduly prolong the existence of the GUC/Litigation Trust.   All assets held by the GUC/Litigation Trust on the Effective Date shall be treated for federal income tax purposes (i) to have been distributed (subject to any obligations relating to such assets) by the Debtors or Reorganized Debtors to the GUC/Litigation Trust Beneficiaries (other than the assets allocable to Disputed Claims) in satisfaction of Allowed General Unsecured Claims and in partial satisfaction of Allowed Second Lien Claims and (ii) immediately thereafter contributed by the holder of such Claims (thereafter, the GUC/Litigation Trust Beneficiaries) to the GUC/Litigation Trust in exchange for GUC/Litigation Trust Interests. The GUC/Litigation Trust Trustee shall in good faith value all of the GUC/Litigation Trust Assets, and shall make all such values available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the GUC/Litigation Trust (including, without limitation, the Debtors, the Reorganized Debtors, the GUC/Litigation Trust Trustee, and GUC/Litigation Trust Beneficiaries) for all federal income tax purposes.  The GUC/Litigation Trust Beneficiaries shall be treated for federal income tax purposes as the grantors and owners of their respective share of the GUC/Litigation Trust Assets (other than such GUC/Litigation Trust Assets as are allocable to Disputed Claims).  The GUC/Litigation Trustee shall file tax returns and other tax filings for the GUC/Litigation Trust treating the GUC/Litigation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a).

Subject to contrary definitive guidance from the Internal Revenue Service or a court of competent jurisdiction (including the receipt by the GUC/Litigation Trust Trustee of a private letter ruling if the GUC/Litigation Trust Trustee so requests, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the GUC/Litigation Trust Trustee), the GUC/Litigation Trust Trustee may (A) timely elect to treat the GUC Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 and (B) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the GUC/Litigation Trust Trustee, the Debtors and the GUC/Litigation Trust Beneficiaries) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing.

Except as provided below, the GUC/Litigation Trust Trustee may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Internal Revenue Code or any provision of any foreign, state or local tax law with respect to any payment or distribution to the GUC/Litigation Trust Beneficiaries or any amounts received or earned by the GUC/Litigation Trust treated as allocable to the GUC/Litigation Trust Beneficiaries.  The GUC/Litigation Trust Trustee shall not withhold any amounts from any payment or distribution to a GUC/Litigation Trust Beneficiary if such beneficiary timely provides a certification in form and substance reasonably acceptable to the GUC/Litigation Trust Trustee that the GUC/Litigation Trust Beneficiary is exempt from tax with respect to such amounts.  All such

amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such GUC/Litigation Trust Beneficiaries for all purposes of the GUC/Litigation Trust Agreement.  The GUC/Litigation Trust Trustee shall be authorized to collect such tax information from the GUC/Litigation Trust Beneficiaries (including, without limitation, social security numbers or other tax identification numbers) as it, in its sole discretion, deems necessary to effectuate the Plan, the Confirmation Order and the GUC/Litigation Trust Agreement.  In order to receive distributions under the Plan, all GUC/Litigation Trust Beneficiaries will need to identify themselves to the GUC/Litigation Trust Trustee and provide tax information and the specifics of their holdings, to the extent the GUC/Litigation Trust Trustee deems appropriate. This identification requirement may, in certain cases, extend to holders who hold their securities in street name.  The GUC/Litigation Trust Trustee may refuse to make a distribution to any GUC/Litigation Trust Beneficiary that fails to furnish such information in a timely fashion, until such information is delivered; provided, however, that, upon the delivery of such information by a GUC/Litigation Trust Beneficiary, the GUC/Litigation Trust Trustee shall make such distribution to which the GUC/Litigation Trust Beneficiary is entitled, without interest; and, provided, further, that, if the GUC/Litigation Trust Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the GUC/Litigation Trust Trustee is later held liable for the amount of such withholding, such holder shall reimburse the GUC/Litigation Trust Trustee for such liability.

### 7.5    GUC/Litigation Trust Assets.

(a)    On the Effective Date, or on such other date as is set forth in the GUC/Litigation Trust Agreement, pursuant to section 1123(b)(3) of the Bankruptcy Code, the GUC/Litigation Trust Assets shall be transferred by the Debtors (and deemed transferred) to the GUC/Litigation Trust free and clear of all Claims, Liens, charges, encumbrances, rights, and interests, without the need for any Entity to take any further action or obtain any approval and the GUC/Litigation Trust shall be authorized as the representative of the Estates to pursue GUC/Litigation Trust Causes of Action.

(b)    For the avoidance of doubt, Causes of Action transferred, assigned, and delivered to the GUC/Litigation Trust shall not include any Causes of Action (i) against the YieldCos or otherwise released in the YieldCo Settlement Agreements, (ii) against any or all of the Prepetition Secured Parties in their capacities as such, (iii) against any of the DIP Secured Parties in their capacities as such (as such terms are defined in the Original DIP Facility Order), or (iv) against any of the Replacement DIP Secured Parties in their capacities as such (as such terms are defined in the Replacement DIP Facility Order).  For the avoidance of doubt, the Second Lien Litigation will not be transferred to the GUC/Litigation Trust.

### 7.6    GUC/Litigation Trust Causes of Action.

(a)    GUC/Litigation Trust Causes of Action shall exclude any action released or settled by the Debtors pursuant to this Plan or an order of the Bankruptcy Court; provided, that with respect to any settlements or releases proposed by the Debtors after the Disclosure Statement Order is entered, such settlements or releases shall require the consent of the Creditors' Committee, which consent shall not be unreasonably withheld.

(b)    The GUC/Litigation Trust, with the consent of the Reorganized Debtors to the extent such GUC/Litigation Trust Causes of Action interfere with (i) the Reorganized Debtors' collection of Earnout Proceeds, Residual Assets Proceeds, or Repatriated Cash or (ii) the continuing operations of TERP, shall determine whether to bring, settle, release, compromise, or enforce such GUC/Litigation Trust Causes of Action (or decline to do any of the foregoing), and shall not be required to seek further approval of the Bankruptcy Court for such action.  The GUC/Litigation Trust or any successors may pursue such litigation claims in accordance with the best interests of the GUC/Litigation Trust or any successor holding such rights of action.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any GUC/Litigation Trust Cause of Action against them as any indication that the GUC/Litigation Trust will not pursue any and all available GUC/Litigation Trust Causes of Action against them.  The GUC/Litigation Trust expressly reserves all rights to prosecute any and all GUC/Litigation Trust Causes of Action against any Entity, except as otherwise provided in the Plan.**  Unless any GUC/Litigation Trust Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the GUC/Litigation Trust expressly reserves all GUC/Litigation Trust Causes of Action for later adjudication.

7.7    **Disputed Claims Reserve**.  From and after the Effective Date, in accordance with the GUC/Litigation Trust Agreement, the GUC/Litigation Trust Trustee shall hold and maintain the GUC Disputed Claims Reserve for the benefit of the Holders of such Disputed General Unsecured Claims, including any amounts that would otherwise have been received by each such holder from the GUC/Litigation Trust had such Disputed Claim been an Allowed Claim on the Effective Date, determined based on (i) the asserted amount of such Disputed Claim, (ii) such other amount as may be agreed upon by the Holder of such Disputed Claim and the GUC/Litigation Trust Trustee or (iii) except with respect to any Disputed General Unsecured Claims asserted by Vivint Solar, Inc., such other amount as may be deemed appropriate by the GUC/Litigation Trust Trustee in accordance with the terms of the GUC/Litigation Trust Agreement (in each case, net of any taxes imposed on, or with respect to, the GUC Disputed Claims Reserve as relates to such Claim, including in connection with such distributions).

7.8    **Claims Objections and Transition Services.**    The Debtors or the Reorganized Debtors, as the case may be, will cooperate with the Creditors' Committee and its Professionals in relation to the GUC/Litigation Trust's prosecution of Avoidance Actions and Claims objections, on the terms set forth on Annex 1 to the Committee/BOKF Plan Settlement Term Sheet.  To that end, and consistent with Annex 1 to the Committee/BOKF Plan Settlement Term Sheet, on the Effective Date, the GUC/Litigation Trust and Reorganized SUNE will enter into an agreement (the "Transition Services Agreement") pursuant to which Reorganized SUNE will provide services, which may include personnel, systems, and access to books and records, to the GUC/Litigation Trust in connection with the administration of the GUC/Litigation Trust Assets, including claims administration and the prosecution of the GUC/Litigation Trust Causes of Action.  The Transition Services Agreement shall include customary indemnification and limitations of liability to Reorganized SUNE and its representatives that provide services to the GUC/Litigation Trust; provided, however, that the indemnification shall exclude any liability of the GUC/Litigation Trust for any claims relating to the gross negligence or willful misconduct of

Reorganized SUNE.  Any disputes regarding the appropriate terms of the Transition Services Agreement shall be resolved by the Bankruptcy Court.

**7.9    Indemnification and Exculpation**.  The GUC/Litigation Trust Trustee or the individuals comprising the GUC/Litigation Trust Trustee, as the case may be, and the GUC/Litigation Trust Trustee's agents and professionals, shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the GUC/Litigation Trust Trustee, except those acts arising out of its or their own willful misconduct or gross negligence, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the GUC/Litigation Trust Trustee, except for any actions or inactions involving willful misconduct or gross negligence.  Any indemnification or reimbursement claim of the GUC/Litigation Trust Trustee (and the other parties entitled to indemnification or reimbursement under this subsection) shall be satisfied first from the GUC/Litigation Trust Initial Funding and, then, to the extent the GUC/Litigation Trust Initial Funding is exhausted, from other GUC/Litigation Trust Assets.  The GUC/Litigation Trust Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

**7.10    Preservation of Privilege and Defenses**.  No action taken by the Debtors or Reorganized Debtors in connection with this Plan, shall be (or be deemed to be) a waiver of any privilege or immunity of the Debtors or Reorganized Debtors, as applicable, including any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral).   The Confirmation Order shall provide that notwithstanding the Reorganized Debtors' providing any privileged information (if any) to the GUC/Litigation Trust Trustee, the GUC/Litigation Trust, or any party or person associated with the GUC/Litigation Trust, such privileged information shall be without waiver in recognition of the joint and/or successorship interest in prosecuting any Claim or Cause of Action on behalf of the Estates and shall remain privileged.  The GUC/Litigation Trust Trustee will seek to preserve and protect all applicable privileges and work-product relating to the claims reconciliation process and the GUC/Litigation Trust Causes of Action, including but not limited to any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral). The GUC/Litigation Trust Trustee's receipt of such information shall not waive any privileges and all such privileges are preserved. Notwithstanding the foregoing, in the event the GUC/Litigation Trust Trustee seeks to waive any privilege on behalf of the GUC/Litigation Trust or the Debtors, as applicable, with respect to the GUC/Litigation Trust Assets, it shall get the prior written consent of the Reorganized Debtors, which consent shall not be unreasonably withheld.

**7.11    No Bonding of GUC/Litigation Trust Claims**.   There shall be no bonding of the GUC/Litigation Trust Trustee.

**7.12    Service of the Indenture Trustees**.  The applicable Indenture Trustees and their respective agents, successors and assigns, and the GUC/Litigation Trust Trustee shall facilitate the making of the Plan Distributions to the Holders of the Second Lien Senior Notes Claims and the Convertible Senior Notes Claims, to the extent applicable, in accordance with the Plan.  The GUC/Litigation Trust Trustee shall be obligated to calculate the distributions to be made on account of Class B GUC/Litigation Trust Interests and the distributions to be made to Holders of Allowed Convertible Senior Notes Claims, as applicable, and shall provide such

distribution calculations and related information to the applicable Indenture Trustees at least five (5) business days in advance of the GUC/Litigation Trust Trustee making distributions on account of Class B GUC/Litigation Trust Interests or Convertible Senior Notes Claims, as applicable.   The applicable Indenture Trustees shall only be required to act and make distributions in accordance with the Plan, shall not be required to independently verify or review the calculations prepared by the GUC/Litigation Trust Trustee with respect to distributions to be made on account of Class B GUC/Litigation Trust Interests or made to Holders of Convertible Senior Notes Claims, as applicable, and shall have no liability for actions taken in accordance with the Plan or in reliance upon distribution information and distribution calculations provided by the GUC/Litigation Trust Trustee, except solely for actions or omissions arising out of such Indenture Trustee's intentional fraud, willful misconduct, gross negligence or criminal conduct. Further, the Indenture Trustees shall have no obligation or liability for distributions under the Plan to any party who does not (i) hold a Claim against the Debtors as of the Distribution Record Date or (ii) otherwise comply with the terms of the Plan, except solely for actions or omissions arising out of such Indenture Trustee's intentional fraud, willful misconduct, gross negligence or criminal conduct.

       **7.13    Delivery of Distributions on Account of Second Lien Senior Notes Claims and Convertible Senior Notes Claims**.  Upon the occurrence of the Effective Date, the Claims of the Second Lien Senior Notes Indenture Trustee and the Convertible Senior Notes Indenture Trustee for the Second Lien Senior Notes Claims and the Convertible Senior Notes Claims, as applicable, shall be, for purposes under the Plan, including without limitation, the right to receive Plan distributions, substituted for all Claims of individual Holders of Allowed Second Lien Senior Notes Claims and Convertible Senior Notes Claims, as applicable; provided, however, that non-Cash consideration shall not be distributed in the name of the Second Lien Senior Notes Indenture Trustee or the Convertible Senior Notes Indenture Trustee.  The Second Lien Senior Notes Indenture Trustee and the Convertible Senior Notes Indenture Trustee shall hold or direct such distributions for the benefit of the Holders of Allowed Second Lien Senior Notes Claims and Convertible Senior Notes Claims, as applicable, in accordance with the Plan and the applicable Indenture.  As soon as practicable in accordance with the requirements set forth in this Article VII, the Second Lien Senior Notes Indenture Trustee and the Convertible Senior Notes Indenture Trustee, as applicable, shall arrange to deliver such distributions to or on behalf of such Holders, subject to the charging liens of the Second Lien Senior Notes Indenture Trustee and the Convertible Senior Notes Indenture Trustee, as applicable.  If the Second Lien Senior Notes Indenture Trustee or the Convertible Senior Notes Indenture Trustee is unable to make, or consents to the GUC/Litigation Trust Trustee making, such distributions, the GUC/Litigation Trust Trustee, with the cooperation of the Second Lien Senior Notes Indenture Trustee and the Convertible Senior Notes Indenture Trustee, as applicable, shall make such distributions to the extent practicable to do so, including by means of book-entry exchange through the facilities of DTC in accordance with DTC's customary practices (provided that until such distributions are made, the charging lien of the Second Lien Senior Notes Indenture Trustee and the Convertible Senior Notes Indenture Trustee, as applicable, shall attach to the property to be distributed in the same manner as if such distributions were made through the Second Lien Senior Notes Indenture Trustee or the Convertible Senior Notes Indenture Trustee, as applicable).  For the avoidance of doubt, the Second Lien Senior Notes Indenture Trustee shall have no duty to make any distributions that are not DTC eligible.  Notwithstanding the

65

foregoing, and any other provision of the Plan, the charging liens of the Convertible Senior Notes Indenture Trustee shall only attach to Cash distributions.

        **7.14    Tax Determination.**    The GUC/Litigation Trustee may request an expedited determination of Taxes of the GUC/Litigation Trust (including with respect to the GUC Disputed Claims Reserve) under section 505(b) of the Bankruptcy Code for all Tax Returns filed for, or on behalf of, the GUC/Litigation Trust (or the GUC Disputed Claims Reserve) for all taxable periods through the dissolution of the GUC/Litigation Trust.

<h3 align="center">ARTICLE VIII</h3>

<h3 align="center">UNEXPIRED LEASES AND EXECUTORY CONTRACTS</h3>

        **8.1    Rejection of Executory Contracts and Unexpired Leases**.

        (a)    **Automatic Rejection**.  Except as otherwise provided herein, each Executory Contract and Unexpired Lease shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (a) is listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" contained in Exhibit 8.1 of the Plan; (b) has been previously assumed by the Debtors by Final Order of the Bankruptcy Court or has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (c) is the subject of a motion to assume or reject pending as of the Effective Date; (d) is an Executory Contract related to any Intercompany Claim; or (e) is otherwise assumed pursuant to the terms herein.

        The Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.  Counterparties to Executory Contracts or Unexpired Leases that are deemed rejected as of the Effective Date shall have the right to assert any Claim on account of the rejection of such Executory Contracts or Unexpired Leases, including under section 502(g) of the Bankruptcy Code, subject to compliance with the requirements herein.

        (b)    **Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases**.  To the extent not inconsistent with the YieldCo Settlement Agreements, rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such contracts or leases.  In particular, notwithstanding any non-bankruptcy law to the contrary and to the extent consistent with the YieldCo Settlement Agreements, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors or the Reorganized Debtors, as applicable, from counterparties to rejected or repudiated Executory Contracts.

        (c)    **Claims Procedures Related to Rejection of Executory Contracts or Unexpired Leases**.  Unless otherwise provided by a Bankruptcy Court order, any proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and

Unexpired Leases pursuant to the Plan or otherwise must be filed with the Claims and Solicitation Agent no later than 30 days after the later of the Effective Date or the effective date of rejection. Any proofs of Claim arising from the rejection of the Executory Contracts or Unexpired Leases that are not timely filed shall be disallowed automatically and forever barred, estopped, and enjoined from assertion and shall not be enforceable against the Debtors or the Reorganized Debtors, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims.

(d) **Reservation of Rights**. Notwithstanding anything to the contrary herein, all rights of the Debtors, the Reorganized Debtors, and any counterparty to any Executory Contract or Unexpired Lease are reserved in the event that the Debtors (or the Reorganized Debtors), with the consent of the Supporting Second Lien Parties, amend their decision with respect to the rejection of any Executory Contract or Unexpired Lease.

**8.2    Assumption of Executory Contracts and Unexpired Leases**. Upon the occurrence of the Effective Date, each Executory Contract or Unexpired Lease (other than Executory Contracts or Unexpired Leases that (a) have been previously rejected by the Debtors by Final Order of the Bankruptcy Court or have been rejected by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date or (b) are the subject of a motion to reject pending as of the Effective Date) listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" in Exhibit 8.1 of the Plan shall be assumed, or assumed and assigned, as applicable, and shall vest in and be fully enforceable by the Reorganized Debtors or their assignee in accordance with its terms, except as modified by the provisions of this Plan or any order of the Bankruptcy Court authorizing or providing for its assumption or applicable federal law. With respect to each such Executory Contract and Unexpired Lease, the Debtors, with the reasonable consent of the Supporting Second Lien Parties, shall have designated a proposed Cure, and the assumption of such Executory Contracts and Unexpired Leases may be conditioned upon the disposition of all issues with respect to such Cure. The Confirmation Order shall constitute an order of the Bankruptcy Court approving any such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

(a) **Modifications, Amendments, Supplements, Restatements, or Other Agreements**. Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated pursuant hereunder.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11

67

Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

(b)        **Proofs of Claim Based on Executory Contracts or Unexpired Leases that Have Been Assumed**.  Any and all proofs of Claims based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including hereunder, except proofs of Claims asserting Cure amounts, pursuant to the order approving such assumption, including the Confirmation Order, shall be deemed disallowed and expunged from the claims register as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court.

**8.3        Indemnification Obligations**.  From and after the Effective Date, but subject to the rest of this Article 8.3, the Reorganized Debtors will indemnify each Indemnitee to the same extent of any Indemnification Obligation in effect immediately prior to the Effective Date.  The Reorganized Debtors' Indemnification Obligations shall remain in full force and effect, shall not be modified, reduced, discharged under section 1141 of the Bankruptcy Code, impaired, or otherwise affected in any way, irrespective of whether indemnification or reimbursement is owed in connection with any event occurring before, or after the Petition Date; provided, however, that the Reorganized Debtors shall have no Indemnification Obligations to an Indemnitee for any losses, liabilities, or expenses arising out of conduct determined by a Final Order to have constituted fraud, gross negligence, bad faith, or willful misconduct.  Except as expressly set forth in the proviso and, notwithstanding anything contained in any Assumed Executory Contracts and Unexpired Leases to the contrary, (i) the Reorganized Debtors' will have no indemnification liability under this Article 8.3 arising out of any losses, liabilities, or expenses relating to events that occurred prior to the Petition Date giving rise to Indemnification Obligations ("Prepetition Indemnification Obligations"), and (ii) any claims against the Debtors for any indemnification liability owed to any Indemnitee arising out of any losses, liabilities, or expenses relating to events that occurred prior to the Petition Date giving rise to Indemnification Obligations shall be treated as General Unsecured Claims; provided, however, that the Reorganized Debtors shall pay any Prepetition Indemnification Obligations of the Existing Directors in an amount up to the Indemnification Amount and shall be for fees, costs or expenses (but not judgments, losses, liabilities, or settlements payable to third parties) not covered by D&O Insurance or the EPL Policy (including, without limitation, because either (x) they are not covered by such policies or (y) such policies have been exhausted) for all such Prepetition Indemnification Obligations.  The amounts payable pursuant to the proviso in the immediately preceding sentence shall be payable by the Reorganized Debtors from time to time within five business days' notice provided by counsel to the Existing Directors, except to the extent that the Reorganized Debtors after making such payment would not have sufficient liquidity to fund ordinary course business operations for at least 90 days thereafter.  The treatment of Indemnification Obligations in this Article 8.3 shall be in complete satisfaction, discharge, and release of any Claim on account of such Indemnification Obligation of the Debtors.  In accordance with the foregoing, the Debtors and the Reorganized Debtors shall cooperate with Indemnitees in relation to Indemnification Obligations, including, but not limited to, responding to reasonable requests for information and providing access to attorneys, financial advisors, accountants and other professionals with knowledge of matters relevant to any such claim covered by an Indemnification Obligation.  For the avoidance of doubt, and notwithstanding anything to the contrary in this Plan, or any prior order of the Bankruptcy Court regarding the

68

retention of such professional, or otherwise, in no event will (a) the Debtors have any obligation to indemnify Debtor Professionals or any professional, consultant, representative, counsel or other advisor who served for the Debtors in such capacity at any time prior to the Effective Date for prepetition conduct (or Causes of Action stemming from prepetition conduct), although any such indemnification obligation may give rise to a General Unsecured Claim, and (b) the Reorganized Debtors have any obligation to indemnify Debtor Professionals or any professional, consultant, representative, counsel or other advisor who served for the Debtors in such capacity at any time prior to the Effective Date for prepetition conduct (or Causes of Action stemming from such prepetition conduct).

### 8.4    Insurance Policies.

(a)    Notwithstanding anything to the contrary in the Disclosure Statement, the Disclosure Statement Order, the Plan, the Plan Transaction Documents, the Plan Supplement, the Confirmation Order, any prepetition or administrative claim bar date order (or notice) or claim objection order, including, without limitation, the Bar Date Orders and the Administrative Claims Bar Date, any other document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that confers jurisdiction or purports to be preemptory or supervening or grants an injunction or release, including, but not limited to, the injunctions set forth in Article 11.9 of the Plan): (i) on the Effective Date, the Reorganized Debtors shall reject all insurance policies except for the D&O Insurance, the EPL Policy, and those specific insurance policies (and all agreements related thereto) that are set forth in the Plan Supplement, which shall be assumed in their entirety pursuant to sections 105 and 365 of the Bankruptcy Code as such insurance policies and such agreements related thereto may be amended or modified (such assumed insurance policies and related agreements, collectively, the "Insurance Contracts"); (ii) nothing alters, modifies or otherwise amends the terms and conditions of (or the coverage provided by) any of the Insurance Contracts (including any and all letters of credit and other collateral and security provided in relation thereto) and all debts, obligations, and liabilities of the Debtors (and, after the Effective Date, of the Reorganized Debtors) thereunder, whether arising before or after the Effective Date, shall survive and shall not be amended, modified, waived, released, discharged or impaired in any respect; (iii) nothing shall alter, modify, amend, affect, impair or prejudice the legal, equitable or contractual rights, obligations, and defenses of the insurers, the Debtors (or, after the Effective Date, the Reorganized Debtors), or any other individual or entity, as applicable, under any Insurance Contracts (including, but not limited to, (A) any agreement to arbitrate disputes, (B) any provisions regarding the provision, maintenance, use, nature and priority of collateral/security, and (C) any provisions regarding the payment of amounts within any deductible by the insurers and the obligation of the Debtors (or, after the Effective Date, the Reorganized Debtors) to pay or reimburse the applicable insurer therefor and any such rights and obligations shall be determined under the Insurance Contracts and applicable non-bankruptcy law as if the Chapter 11 Cases had not occurred; (iv) nothing alters or modifies the duty, if any, that the insurers and/or third party administrators have to pay claims covered by the Insurance Contracts and their right to seek payment or reimbursement from the Debtors (or after the Effective Date, the Reorganized Debtors) or draw on any collateral or security therefor in accordance with the terms of the Insurance Contracts; and (v) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article 11.9 of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to

69

permit:  (A) claimants with valid claims covered by any of the Insurance Contracts, including, but not limited to, valid workers' compensations claims or direct action claims against an insurer under applicable non-bankruptcy law (the "Insured Claims") to proceed with their claims, in each case against the applicable insurer, or, to the extent required by applicable law, nominally against any of the Debtors (or after the Effective Date, the Reorganized Debtors); (B) insurers and/or third party administrators to administer, handle, defend, settle, and/or pay, in the ordinary course of business and subject to the terms of the Insurance Contracts, without further order of the Bankruptcy Court, (I) all Insured Claims, and (II) all costs in relation to each of the foregoing; (C) insurers to draw against any or all of the collateral or security provided by or on behalf of the Debtors (or the Reorganized Debtors, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and the Reorganized Debtors, as applicable) and/or apply such proceeds to the obligations of the Debtors (and the Reorganized Debtors, as applicable) under the applicable Insurance Contracts, in such order as the applicable insurer may determine; and (D) the insurers and/or third party administrators to (I) cancel any policies under the Insurance Contracts, and (II) take other actions relating thereto, in each case to the extent permissible under applicable non-bankruptcy law, each in accordance with the terms of the Insurance Contracts.  For the avoidance of doubt, the Debtors or Reorganized Debtors, as applicable, shall retain the right, if any, to challenge any amounts owed under the Insurance Contracts in accordance with their terms; provided, however, that nothing in this Article 8.4(a) or any other provision of the Plan shall permit a challenge by the Debtors, Reorganized Debtors, or any other Person to rights of TERP, GLBL and their directors and officers to access coverage under the Insurance Contracts pursuant to the SunEdison/YieldCos Settlement Agreement unless and until such time as the Bankruptcy Court denies a motion to approve such agreement.

(b)      The Debtors or the Reorganized Debtors, as the case may be, shall maintain D&O Insurance and the EPL Policy providing coverage for those insureds currently covered by such policies for the remaining term of such policies and shall maintain runoff policies or tail coverage under policies in effect as of the Effective Date for a period of six years after the Effective Date, to the fullest extent permitted by such provisions, in each case insuring such parties in respect of any claims, demands, suits, Causes of Action, or proceedings against such insureds in at least the scope and amount as currently maintained by the Debtors; provided, however, that nothing in the Plan or the Confirmation Order alters the terms and conditions of the D&O Insurance.

(c)      Notwithstanding anything to the contrary contained herein, but subject to the terms and conditions of the D&O Insurance, which policies shall be assumed pursuant to this Plan, the Existing Directors shall be deemed to be the independent directors of the Reorganized Debtors solely with respect to the D&O Insurance, including, but not limited to, with respect to the rights referred to in Endorsement 12 of ACE American Insurance Company's ACE Advantage Management Protection Policy Number DON G23652389009 (the "ACE Policy") and any other provision in the D&O Insurance that permits independent directors to direct an insurer to delay any payment of Loss (as defined in the ACE Policy) otherwise due and owing to or on behalf of the Company (as defined in the ACE Policy); provided, however, that with respect to the D&O Insurance, the Existing Directors shall continue to be bound by the terms and conditions set forth in the SunEdison/YieldCos Settlement Agreement, unless and until such time as the Bankruptcy Court denies a motion to approve such agreement. Notwithstanding anything to the contrary herein or contained in any organizational or

70

governance document of the Reorganized Debtors, the New Board shall have no rights to terminate, reduce or otherwise impair the D&O Insurance or the EPL Policy and any of the rights of the Existing Directors thereunder that existed immediately before the Effective Date, including, but not  limited to, by retracting any notice sent pursuant to Endorsement 12 of the ACE Policy or any similar provision of any other D&O Insurance policy, and any such attempt by the New Board to do so shall be deemed void *ab initio*.

       **8.5**    **Cure Procedures and Payments Related to Assumption of Executory Contracts and Unexpired Leases**.  With respect to each of the Executory Contracts or Unexpired Leases listed on the schedule of "Assumed Executory Contracts and Unexpired Leases," the Debtors, with the reasonable consent of the Supporting Second Lien Parties, shall have designated a proposed Cure, and the assumption of such Executory Contract or Unexpired Lease shall be conditioned upon the disposition of all issues with respect to Cure.  Such Cure shall be satisfied by the Debtors or their assignee, if any, by payment of the Cure in Cash within 30 days following the occurrence of the Effective Date or as soon as reasonably practicable thereafter, or on such other terms as may be ordered by the Bankruptcy Court or agreed upon by the parties, with the reasonable consent of the Supporting Second Lien Parties, to the applicable Executory Contract or Unexpired Lease without any further notice to or action, order, or approval of the Bankruptcy Court.  Any provisions or terms of the Executory Contracts or Unexpired Leases to be assumed pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by Cure, or by an agreed-upon waiver of Cure.  The Debtors shall serve a counterparty to an Executory Contract or Unexpired Lease to be assumed hereunder with evidence of adequate assurance upon such counterparty's written request to the Debtors' counsel.

       If there is a dispute regarding such Cure, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors, with the reasonable consent of the Supporting Second Lien Parties, or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.  The Debtors, with the reasonable consent of the Supporting Second Lien Parties, or the Reorganized Debtors, as applicable, reserve the right either to reject or nullify the assumption of any Executory Contract or Unexpired Lease after a Final Order determining the Cure or any request for adequate assurance of future performance required to assume such Executory Contract or Unexpired Lease is made.

       Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cures, Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

       (a)    **Cure Notices**.  No later than seven (7) days prior to the Confirmation Hearing, and pursuant to the Assumption and Rejection Procedures, the Debtors shall serve upon counterparties to such Executory Contracts and Unexpired Leases a notice of

71

the proposed assumption that will (i) list the applicable Cure, if any, (ii) describe the procedures for filing objections to the proposed assumption or assumption and assignment of the applicable Executory Contract or Unexpired Lease, (iii) describe the procedures for filing objections to the proposed Cure of the applicable Executory Contract or Unexpired Lease, and (iv) explain the process by which related disputes will be resolved by the Bankruptcy Court. If no objection is timely received, the non-Debtor party to the Assumed Contract shall be deemed to have consented to the assumption of the applicable Executory Contract or Unexpired Lease.

(b)      **Cure Objections**.  If a proper and timely objection to the Cure Notice or proposed Cure was filed by the Cure Objection Deadline, the Cure shall be equal to (i) the amount agreed to between the Debtors (with the reasonable consent of the Supporting Second Lien Parties) or Reorganized Debtors and the applicable counterparty, or, (ii) to the extent the Debtors or Reorganized Debtors and counterparty do not reach an agreement regarding any Cure or any other matter related to assumption, the Bankruptcy Court shall determine the Allowed amount of such Cure and any related issues.  Objections, if any, to the proposed assumption and/or Cure must be in writing, filed with the Bankruptcy Court and served so that they are actually received by the Cure Objection Deadline.

(c)      **Hearing with Respect to Objections**.  If an objection to the proposed assumption and/or to the Cure is timely filed and received in accordance with the procedures set forth in Article 8.5(b), and the parties do not reach a consensual resolution of such objection, a hearing with respect to such objection shall be held at such time scheduled by the Bankruptcy Court or the Debtors or Reorganized Debtors.  Objections to the proposed Cure Amount or assumption of an Executory Contract or Unexpired Lease will not be treated as objections to Confirmation of the Plan.

(d)      **Reservation of Rights**.  Notwithstanding anything to the contrary herein, prior to the Effective Date, the Debtors, with the reasonable consent of the Supporting Second Lien Parties, may amend their decision with respect to the assumption of any Executory Contract or Unexpired Lease and provide a new notice amending the information provided in the applicable notice, subject to the Assumption and Rejection Procedures, and shall serve such notice on the applicable counterparty; provided, that notwithstanding anything to the contrary herein, all rights of the Debtors, the Reorganized Debtors, and any counterparty to any Executory Contract or Unexpired Lease are reserved with respect to any such amended decision or notice. In the case of an Executory Contract or Unexpired Lease designated for assumption that is the subject of a Cure Objection which has not been resolved prior to the Effective Date, the Debtors, with the reasonable consent of the Supporting Second Lien Parties, may designate such Executory Contract or Unexpired Lease for rejection at any time prior to the payment of the Cure.

8.6      **Contracts, Intercompany Contracts, and Leases Entered into After the Petition Date**.  Contracts and leases entered into after the Petition Date by the Debtors, and any Executory Contracts and Unexpired Leases assumed by the Debtors, may be performed by the Reorganized Debtors in the ordinary course of business and in accordance with the terms of such Executory Contract or Unexpired Lease.

72

**8.7** **General Reservation of Rights**.  Neither the exclusion nor inclusion of any contract or lease on <u>Exhibit 8.1</u> of the Plan, in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtors, or any of its Affiliates, has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors (with the reasonable consent of the Supporting Second Lien Parties) or the Reorganized Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

**8.8** **Surety Bonds.**

(a)    Notwithstanding anything in the Plan Transaction Documents to the contrary, nothing in the Plan Transaction Documents shall discharge, release, impair or otherwise diminish any Surety's valid rights to (1) subrogation under the applicable surety bond or indenture agreement or under applicable law or (2) setoff or recoupment to the extent permitted under applicable law.  To the extent that a Surety pays, has paid or otherwise discharges a bonded obligation, in part or in full, a Claim against any of the Debtors  which also relates to the applicable surety bond or indenture agreement, such Claim shall not be reduced by any amount paid by such Surety and such Surety's subrogation rights shall remain.  Any party to whose rights a Surety may or has become subrogated, shall also retain their set-off and recoupment rights to the extent permitted under applicable law and any such party's Claim shall not be reduced by the amount of any corresponding loss of the Surety.

(b)    Nothing in the Plan Transaction Documents shall impair a Surety's rights with respect to any and all letters of credit, proceeds drawn or to be drawn from letters of credit, other collateral of a Surety as security for bonded obligations under an existing or new Surety Bond, or any security or trust interest of any Surety or any party whose rights a Surety may become subrogated.

(c)    Notwithstanding anything in the Plan Transaction Documents to the contrary, including Section 11.14 of the Plan, to the extent the Bankruptcy Court disallows a Claim for reimbursement or contribution, all rights of a Surety under section 502(j) of the Bankruptcy Code are preserved.

(d)    Notwithstanding any provision of the Plan Transaction Documents to the contrary, any and all rights delineated for XL contained in that certain Notice of Rejection, filed with the Bankruptcy Court on October 21, 2016 (Docket No. 1457), shall not be abrogated in any manner by the Plan Transaction Documents.

## ARTICLE IX

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS

**9.1** **Determination Of Claims and Interests**.  After the Effective Date, the Reorganized Debtors shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date, including the Causes of

Action retained pursuant to Article 6.20, except with respect to any Claim or Interest deemed Allowed under the Plan or pursuant to an order of the Bankruptcy Court.

Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Interest unless and until such Claim or Interest is deemed Allowed or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Interest.  All settled claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court, pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties.  For the avoidance of doubt, any Claim determined and liquidated pursuant to (a) an order of the Bankruptcy Court or (b) applicable non-bankruptcy law (which determination has not been stayed, reversed, or amended and as to which determination or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) shall be deemed an Allowed Claim in such liquidated amount and satisfied in accordance with this Plan.

Nothing contained in this Article 9.1 shall constitute or be deemed a waiver of any claim, right, or Cause of Action that the Debtors or the Reorganized Debtors may have against any Entity in connection with or arising out of any Claim, including, without limitation, any rights under section 157(b) of title 28 of the United States Code.

**9.2    Claims Administration Responsibility**.  Except as otherwise specifically provided for in the Plan or the Committee/BOKF Plan Settlement Term Sheet, including with respect to the administration of and making distributions with respect to General Unsecured Claims in accordance with Article VII, after the Effective Date, the Reorganized Debtors shall retain responsibility for (a) administering, disputing, objecting to, compromising, or otherwise resolving all Claims against, and Interests in, the Debtors, including, without limitations, (i) filing, withdrawing, or litigating to judgment objections to Claims or Interests, (ii) settling or compromising any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court, and (iii) administering and adjusting the claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court, and (b) making distributions (if any) with respect to all Claims and Interests.

**9.3    Objections to Claims**.  Unless otherwise extended by the Bankruptcy Court, any objections to Claims (other than Administrative Claims) shall be served and filed on or before the Claims Objection Deadline (or such later date as may be established by the Bankruptcy Court upon request of the Reorganized Debtors, or the GUC/Litigation Trust Trustee, as applicable, without further notice to parties-in-interest).  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtors or the Reorganized Debtors effect service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for a Holder of a Claim or Interest is unknown, by first class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified on the proof of Claim or any attachment thereto (or at the last known addresses of such Holders of Claims if no proof of Claim is filed or if the Debtors have been notified in writing of a change of address), or (c) by first class mail, postage prepaid, on any

74

counsel that has appeared on behalf of the Holder of the Claim in the Chapter 11 Cases and has not withdrawn such appearance.

**9.4**    **Disallowance of Claims**.  Nothing herein shall in any way alter, impair, or abridge the legal effect of the Bar Date Order, or the rights of the Debtors, the Reorganized Debtors, the Creditors' Committee before the Effective Date, the GUC/Litigation Trust Trustee after the Effective Date, or other parties-in-interest to object to Claims on the grounds that they are time barred or otherwise subject to disallowance or modification.

All Claims of any Entity from which property is sought by the Debtors under section 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if (a) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

**9.5**    **Estimation of Claims**.  Before the Effective Date, the Debtors or the Reorganized Debtors, as applicable (but solely with the consent of the Supporting Second Lien Parties and the Creditor's Committee, such consent not to be unreasonably withheld), and, after the Effective Date, the GUC/Litigation Trust Trustee, may (but is not required to) at any time request that the Bankruptcy Court estimate a Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any purpose permitted thereunder, regardless of whether any party previously has objected to such Claim or Interest, and the Bankruptcy Court shall retain jurisdiction to estimate any Disputed Claim, including during the litigation of any objection to any Disputed Claim or during the pendency of any appeal relating to such objection, but without prejudice to the Holder of such Claim's right to (i) object to appropriateness of estimating such Claim (or the requested purpose of such estimation) under section 502(c) of the Bankruptcy Code or (ii) request that any such estimation should be for the purpose of determining the Allowed amount of such Claim.  In the event that the Bankruptcy Court has entered a Final Order estimating any contingent or unliquidated Claim for the express purpose of determining what amount of such Claim shall be allowed for purposes of distributions pursuant to section 502(c), that estimated amount shall, unless otherwise ordered by the Bankruptcy Court or agreed between the relevant parties, constitute a maximum limitation on the Allowed amount of such Claim for all purposes under the Plan (including for purposes of distributions), , and the Reorganized Debtors (or, in the case of General Unsecured Claims, the GUC/Litigation Trust Trustee) may, to the extent applicable, elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.   All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.  Disputed Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**9.6**    **No Interest on Disputed Claims**.  Unless otherwise specifically provided for in this Plan or as otherwise required by section 506(b) of the Bankruptcy Code, postpetition interest shall not accrue or be paid on Claims or Interests, and no Holder of a Claim or Interest

shall be entitled to interest accruing on or after the Petition Date on any Claim or Interest. Additionally, and without limiting the foregoing, unless otherwise specifically provided for in this Plan or as otherwise required by section 506(b) of the Bankruptcy Code, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made, when and if such Disputed Claim becomes an Allowed Claim.

**9.7    Amendments to Claims**.

(a)    On or after the Effective Date, except as otherwise provided herein, a Claim may not be filed or amended without the authorization of the Bankruptcy Court or the Reorganized Debtors, and, to the extent such authorization is not received, any such new or amended Claim filed shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court, provided, however, that the State of Texas and its constituent agencies may amend their proofs of claim with respect to any tax audits (i) underway, and (ii) already referenced in such proofs of claim, in each case, as of July 13, 2017, without the authorization of the Bankruptcy Court.

(b)    Notwithstanding anything to the contrary contained in this Plan, the SEC may amend any timely filed claim within 120 days following the Effective Date to the extent permitted under applicable law without the need to seek prior authorization of the Bankruptcy Court, the Debtors, or the Reorganized Debtors. After such date, the provisions of Article 9.7(a) shall apply to the SEC's Claims. For the avoidance of doubt, nothing in the immediately preceding sentence shall waive, release, modify or abrogate the Debtors' rights to object to the allowance of any Claim filed by the SEC or any amendment of any Claim filed by the SEC on any grounds under applicable law.

**ARTICLE X**

**PROVISIONS GOVERNING DISTRIBUTIONS**

**10.1    Distributions of GUC/Litigation Trust Interests to Holders of Second Lien Claims and General Unsecured Claims**. The provisions of this Article X shall not apply to distributions from the GUC/Litigation Trust to Holders of Second Lien Claims and General Unsecured Claims. Distributions from the GUC/Litigation Trust to Holders of such Allowed Claims shall be administered in accordance with and subject to, as applicable, the terms of the GUC/Litigation Trust Agreement and Article IV and Article VII of this Plan.

**10.2    Time of Distributions**. Except as otherwise provided for herein or ordered by the Bankruptcy Court, distributions under this Plan shall be made on the later of (a) the Distribution Date or (b) on the first Periodic Distribution Date that is at least 30 days after a Claim becomes Allowed; provided, however, that the Reorganized Debtors may, in their sole discretion, make one-time distributions on a date that is not a Periodic Distribution Date.

**10.3    Distribution Agent**. The Distribution Agent shall make all distributions required under this Plan except (a) as set forth in Article 10.5 below and (b) with respect to any Holder of a Claim whose Claim is governed by an agreement and is administered by a Servicer, which distributions shall be deposited with the appropriate Servicer, as applicable, who shall

deliver such distributions to the Holders of Claims in accordance with the provisions of this Plan and the terms of any governing agreement.

**10.4    Currency**.  Except as otherwise provided in the Plan or Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate as of Effective Date at 4:00 p.m. prevailing Eastern Time, mid-range spot rate of exchange for the applicable currency as published in the next *The Wall Street Journal, National Edition* following the Effective Date.

**10.5    Distributions on Account of Claims Allowed as of the Effective Date**.

(a)    **Delivery of Distributions in General**.  Except as otherwise provided in the Plan, a Final Order, or as otherwise agreed to by the relevant parties, the Distribution Agent shall make initial distributions under the Plan on account of Allowed Claims on the Initial Distribution Date, subject to the Reorganized Debtors' rights to object to Claims that have not been Allowed; provided, however, that (i) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (ii) Allowed Priority Tax Claims shall be paid in full in Cash on the Distribution Date or in installment payments over a period not more than five years after the Petition Date pursuant to section 1129(a)(c) of the Bankruptcy Code.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

(b)    **Delivery of Distributions to Servicers**.  In the case of a Holder of Claims whose Claims are governed by an agreement and administered by a Servicer, the respective Servicer shall be deemed to be the Holder of such Claims for purposes of distributions to be made hereunder; provided, however, that non-Cash consideration shall not be distributed in the name of a Servicer.  The Distribution Agent shall make all distributions on account of such Claims to the Servicers or as directed by the Servicers, in the Servicers' sole discretion.  The Servicers shall hold or direct such distributions for the benefit of Holders of such Allowed Claims, as applicable; provided, however, that the Servicer shall retain all rights under its respective agreement in connection with delivery of distributions to Claim Holders (including the right to deliver distributions subject to any charging lien under such agreement); and provided further, however, that the Debtors' obligations to make distributions in accordance with Article X shall be deemed satisfied upon delivery of distributions to each Servicer or the entity or entities designated by the Servicers.  Nothing in the Plan shall be deemed to impair, waive, or extinguish any right of any Servicer with respect to its Charging Lien against applicable Plan Distributions. For the avoidance of doubt, the Second Lien Senior Notes Indenture Trustee shall have no duty to make any distributions that are not DTC eligible.

(c)    **Fees and Expenses of Servicers**.  The Reorganized Debtors shall reimburse in Cash any Servicer for reasonable and necessary services that the Reorganized

Debtors expressly request such Servicer to perform (including reasonable attorneys' fees and documented out-of-pocket expenses) in connection with the making of distributions under this Plan to Holders of Allowed Claims or the Servicer's further performance of its duties under the Indentures until all such Allowed Claims are paid in full and a Final Decree is entered, without the need for the filing of an application with the Bankruptcy Court or approval by the Bankruptcy Court.  To the extent that there are any disputes that the reviewing parties are unable to resolve with the Servicers, the reviewing parties shall report to the Bankruptcy Court as to whether there are any unresolved disputes regarding the reasonableness of the Servicers' (and their attorneys') fees and expenses.  Any such unresolved disputes may be submitted to the Bankruptcy Court for resolution.  For the avoidance of doubt, the disallowance of any disputed fees or expenses of any Servicer shall not affect or modify in any way such Servicer's charging lien or other rights to recover such fees and expenses pursuant to its respective agreement.

**10.6    Distributions on Account of Claims Allowed After the Effective Date**.

(a)    **No Distributions Pending Allowance**.    No payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order of the Bankruptcy Court, and the Disputed Claim has become an Allowed Claim.  All objections to Claims must be filed on or before the Claims Objection Deadline.

(b)    **Distributions After Allowance**.    Payments and distributions to each respective Holder of a Claim on account of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, shall be made in accordance with provisions of this Plan that govern distributions to such Holder of a Claim.  On the first Periodic Distribution Date that is at least 30 days following the date when a Disputed Claim becomes an Allowed Claim, the Distribution Agent shall distribute to the Holder of such Allowed Claim the distribution that such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest unless required under applicable bankruptcy law; provided, however, (i) Disputed Claims that are Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (ii) Disputed Claims that are Allowed Priority Tax Claims after the Effective Date shall be paid in full in Cash on the Periodic Distribution Date that is at least 30 days after the Disputed Claim becomes an Allowed Claim or over a five-year period as provided in section 1129(a)(9)(C) of the Bankruptcy Code with annual interest provided by applicable non-bankruptcy law.

(c)    **Special Rules for Distributions to Holders of Disputed Claims**.    Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.  All distributions made pursuant to the Plan on account of a Disputed Claim that is deemed an Allowed Claim by the Bankruptcy Court shall be made together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Claim had been an Allowed

78

Claim on the dates distributions were previously made to Holders of Allowed Claims included in the applicable Class; provided, however, that no interest shall be paid on account to such Allowed Claims unless required under applicable bankruptcy law or this Plan.

### 10.7    Delivery Of Distributions.

(a)    **Record Date for Distributions**.  On the Distribution Record Date, the claims register shall be closed and the Distribution Agent shall be authorized and entitled to recognize only those record Holders listed on the claims register as of the close of business on the Distribution Record Date.  Notwithstanding the foregoing, if a Claim or Interest is transferred less than 20 days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practicable and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

(b)    **Allowed Claims**.  Distributions to Holders of Allowed Claims shall be made by the Distribution Agent or the appropriate Servicer (i) at the addresses set forth on the proofs of claim filed by such Holders of Claims (or at the last known addresses of such Holders of Claims if no proof of Claim is filed or if the Debtors have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes delivered to the Distribution Agent after the date of any related proof of Claim, (iii) at the addresses reflected in the Schedules if no proof of Claim has been filed and the Distribution Agent has not received a written notice of a change of address, or (iv) in the case of a Holder of a Claim whose Claim is governed by an agreement and administered by a Servicer, at the addresses contained in the official records of such Servicer.  The Debtors, the Reorganized Debtors, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

(c)    **Undeliverable Distributions**.  If any distribution to a Holder of a Claim is returned as undeliverable, no further distributions to such Holder of such Claim shall be made unless and until the Distribution Agent or the appropriate Servicer is notified of then-current address of such Holder of the Claim, at which time all missed distributions shall be made to such Holder of the Claim without interest, dividends, or accruals of any kind on the next Periodic Distribution Date.  Amounts in respect of undeliverable distributions shall be returned to the Reorganized Debtors until such distributions are claimed.

(d)    **Reversion**.  Any distribution under the Plan that is an Unclaimed Distribution for a period of six months after such distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revert to and vest in the Reorganized Debtors free of any restrictions thereon, and to the extent such Unclaimed Distribution is New SUNE Common Stock, shall be deemed cancelled.  Upon vesting, the Claim of any Holder or successor to such Holder with respect to such property shall be cancelled, discharged and forever barred, notwithstanding federal or state escheat, abandoned, or unclaimed property laws to the contrary.  The provisions of the Plan regarding undeliverable distributions and Unclaimed Distributions shall apply with equal force to distributions that are issued by the Debtors, the Reorganized Debtors, or the Distribution Agent made pursuant to any indenture or Certificate (but only with respect to the initial distribution by the Servicer to

79

Holders that are entitled to be recognized under the relevant indenture or Certificate and not with respect to Entities to whom those recognized Holders distribute), notwithstanding any provision in such indenture or Certificate to the contrary and notwithstanding any otherwise applicable federal or state escheat, abandoned, or unclaimed property law.

(e)  **De Minimis Distributions**.  Notwithstanding any other provision of the Plan to the contrary, the Reorganized Debtors, the Distribution Agent, and any Servicer shall not be required to make a distribution on account of an Allowed Claim if (i) the aggregate amount of all distributions authorized to be made on the Periodic Distribution Date in question is or has a value less than $1,000,000; <u>provided</u> that the Reorganized Debtors shall make, or cause to be made, a distribution on a Periodic Distribution Date of less than $1,000,000 if the Debtors expect that such Periodic Distribution Date shall be the final Periodic Distribution Date; or (ii) the amount to be distributed to the specific Holder of the Allowed Claim on the particular Periodic Distribution Date does not both (x) constitute a final distribution to such Holder and (y) have a value of at least $50.00.

(f)  **Fractional Distributions**.  Notwithstanding any other provision of the Plan to the contrary, the Reorganized Debtors, the Distribution Agent, and any Servicer shall not be required to make partial distributions or distributions of fractional shares of New SUNE Common Stock, Continuing TERP Class A Shares, or distributions or payments of fractions of dollars.  Whenever any payment or distribution of a fractional share of New SUNE Common Stock or Continuing TERP Class A Shares under the Plan would otherwise be called for, such fraction shall be deemed zero.  Whenever any payment of Cash of a fraction of a dollar pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

**10.8**    **Accrual of Dividends and Other Rights**.  For purposes of determining the accrual of dividends or other rights after the Effective Date, New SUNE Common Stock shall be deemed distributed as of the Effective Date regardless of the date on which it is actually issued, dated, authenticated, or distributed; <u>provided</u>, <u>however</u>, the Reorganized Debtors shall not pay any such dividends or distribute such other rights, if any, until after distributions of New SUNE Common Stock actually take place.

**10.9**    **Surrender of Securities or Instruments**.  As soon as practicable after the Effective Date, each Second Lien Senior Noteholder and Convertible Senior Noteholder shall surrender its note(s) to the relevant Indenture Trustee, or in the event such note(s) are held in the name of, or by a nominee of, The Depository Trust Company, the Reorganized Debtors shall seek the cooperation of The Depository Trust Company to provide appropriate instructions to the Indenture Trustees.  No distributions under the Plan shall be made for or on behalf of such Holder unless and until  such note(s) is received by the Indenture Trustees or the loss, theft or destruction of such note(s) is established to the reasonable satisfaction of the applicable Indenture Trustee, which satisfaction may require such Holder to submit (a) a lost instrument affidavit and (b) an indemnity bond holding the Debtors, the Reorganized Debtors, and the Indenture Trustees, harmless in respect of such note and distributions made thereof.  Upon compliance with this <u>Article 10.9</u> by a Second Lien Senior Noteholder or Convertible Senior Noteholder, such Holder shall, for all purposes under the Plan, be deemed to have surrendered such Claim.  Any Holder that fails to surrender such Second Lien Senior Note or Convertible

Senior Note or satisfactorily explain its non-availability to the applicable Indenture Trustee within one (1) year of the Effective Date shall be deemed to have no further Claim against the Debtors, the Reorganized Debtors (or their property), or the Indenture Trustees in respect of such Claim and shall not participate in any distribution under the Plan.  All property in respect of such forfeited distributions, including interest thereon, shall be promptly returned to the Reorganized Debtors by the applicable Indenture Trustee, and any such security shall be cancelled. Notwithstanding the foregoing, if the record Holder of a Second Lien Senior Noteholder or a Convertible Senior Noteholder is DTC or its nominee or such other securities depository or custodian thereof, or if a Second Lien Senior Notes Claim or a Convertible Senior Notes Claim is held in book-entry or electronic form pursuant to a global security held by DTC or such other securities depository or custodian thereof, then the beneficial Holder of such an Allowed Second Lien Senior Notes Claim or Allowed Convertible Senior Notes Claim shall be deemed to have surrendered such Holder's security, note, debenture or other evidence of indebtedness upon surrender of such global security by DTC or such other securities depository or custodian thereof.  Notwithstanding the foregoing, the Holders of the 2020 Exchangeable Notes shall not be required to surrender such 2020 Exchangeable Notes.

**10.10  Compliance Matters**.  In connection with the Plan and all instruments issued in connection therewith and distributions thereunder, to the extent applicable, the Debtors, Reorganized Debtors and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

For the avoidance of doubt, the Debtors and Reorganized Debtors shall comply with applicable non-bankruptcy law relating to document preservation obligations in connection with ongoing litigation.

**10.11  Claims Paid or Payable by Third Parties**.

(a)  **Claims Paid by Third Parties**.  The Claims and Solicitation Agent shall reduce in full a Claim to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors or the Reorganized Debtors. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtors or the Reorganized Debtors on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the Reorganized Debtors, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

81

(b)     **Claims Payable by Insurers**.  No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy a Claim or otherwise settle an insured Claim, then immediately upon such insurers' payment, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)     **Applicability of Insurance Contracts**.  Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Contracts.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any of the Insurance Contracts, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**10.12   Setoffs**.  Except as otherwise expressly provided for in the Plan and except with respect to any Original DIP Facility Claims, Replacement DIP Facility Claims, Second Lien Claim, Convertible Senior Notes Claim, and any distribution on account thereof, the Reorganized Debtors pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors, as applicable, may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Reorganized Debtors of any such Claims, rights, and Causes of Action that the Reorganized Debtors may possess against such Holder.  In no event shall any Holder of Claims be entitled to set off any Claim against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 or otherwise.

**10.13   Allocation of Plan Distributions Between Principal and Interest**.  To the extent that any Allowed Claim entitled to a distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

## ARTICLE XI

## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

**11.1    Vesting of Assets**.  Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estates (including Causes of Action, but excluding the GUC/Litigation Trust Assets and property that has been abandoned pursuant to an order of the Bankruptcy Court) shall vest in the Reorganized Debtors which, unless otherwise indicated in the Plan, as Debtors, owned such property or interest in property as of the Effective Date, free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests.  As of and following the Effective Date, the Reorganized Debtors may operate its business and use, acquire, and dispose of property (subject to applicable law) and settle and compromise Claims, Interests, or Causes of Action without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

**11.2    Discharge of the Debtors.  Except as otherwise specifically provided in section 1141(d) of the Bankruptcy Code, this Plan or the Confirmation Order, and effective as of the Confirmation Date: (a) the distributions and rights that are provided in this Plan, if any, and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Causes of Action, whether known or unknown, including any interest accrued on such Claims from and after the Petition Date, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtors or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims, rights, and Interests, including, but not limited to, Claims and Interests that arose before the Effective Date and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (i) a proof of claim or interest based upon such Claim, debt, right, or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim or Interest based upon such Claim, debt, right, or Interest is allowed under section 502 of the Bankruptcy Code, or (iii) the Holder of such a Claim, right, or Interest accepted this Plan; (b) the Plan shall bind all Holders of Claims and Interests notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims against and Interests in the Debtors, subject to the occurrence of the Effective Date.**

**11.3    Discharge of Liabilities Related to General Unsecured Claims and Convertible Senior Notes Claims.**  The transfer to, vesting in, and assumption by the GUC/Litigation Trust of the GUC/Litigation Trust Assets as contemplated by this Plan, among

83

other things, shall discharge the Debtors, the Reorganized Debtors, and their representatives for and in respect of all General Unsecured Claims and Convertible Senior Notes Claims.

**11.4** **Compromises and Settlements**.  This Plan is intended to incorporate the agreements reached in the GUC/Litigation Trust Agreement and the settlement regarding the UCC Challenge Litigation and the BOKF Objection as set forth in the Committee/BOKF Plan Settlement Term Sheet.  In accordance with Article 9.2 of this Plan, pursuant to Bankruptcy Rule 9019(a), the Debtors may compromise and settle various (a) Claims or Interests and (b) Causes of Action that the Debtors have against other Entities up to and including the Effective Date. After the Effective Date, any such right shall pass to the Reorganized Debtors and/or the GUC/Litigation Trust, pursuant to the terms of the GUC/Litigation Trust Agreement, and as contemplated in Article 11.1 of this Plan, without the need for further approval of the Bankruptcy Court.  Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan or any distribution to be made on account of an Allowed Claim, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that any such compromise or settlement is in the best interests of the Debtors, its Estate, and Holders of Claims and Interests, and is fair, equitable, and reasonable.

**11.5** **Release by Debtors.  Pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date, the Debtors and their Estates, the Reorganized Debtors, and each of their respective current and former Affiliates (with respect to non-Debtors, to the extent permitted by applicable law) shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived and discharged the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative Claims asserted on behalf of the Debtors), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the Original DIP Facility, the Replacement DIP Facility, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, including (without limitation) any tender rights provided under any applicable law, rule, or regulation, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the Rights Offering, the GUC/Litigation Trust Agreement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct, or gross negligence.  Notwithstanding anything to the contrary in the foregoing, the release set forth above (t) does not release the Debtor**

Professionals to the extent that such parties are identified on Exhibit 7.6-3 or Exhibit 7.6-10 of the Plan; provided, that any disagreement regarding whether a particular claim should be identified as a GUC/Litigation Trust Cause of Action shall be decided by the Bankruptcy Court, (u) does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (v) does not release, waive, address, or otherwise impact the (i) releases given as contemplated in the D&O Settlement Agreement or (ii) the various matters that are carved-out and preserved in the D&O Settlement Agreement, (w) shall not impair any defenses the Debtors may have with regard to any alleged indemnification obligation that the Debtors may have to any party, (x) shall not release any claims by any non-Debtor Affiliate of the Debtors arising in the ordinary course of business (i.e., ordinary course trade claims), (y) shall not release any claims against any non-Debtor Affiliate of the Debtors held by the Debtors that is necessary to effectuate the transactions contemplated by this Plan (including, without limitation, any claims to collect proceeds from Earnout Assets, Repatriated Cash, Residual Assets, etc.), and (z) is subject to section 1125(e) of the Bankruptcy Code to the extent applicable.

11.6    **Release by Holders of Claims.**  As of the Effective Date, subject to **Article 11.8**, the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived and discharged the Debtors, the Reorganized Debtors, their Estates, non-Debtor Affiliates, and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted or capable of being asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the Original DIP Facility, the Replacement DIP Facility, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, including (without limitation) any tender rights provided under any applicable law, rule, or regulation, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the Rights Offering, the GUC/Litigation Trust Agreement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct, or gross negligence.  Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release (i) any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (ii) any cause of action held by a governmental entity against any non-Debtor existing as of the Effective Date based on Sections 1104-1109, 1161-1169, and 1342(d) of the Employee Retirement Income Security Act.  Notwithstanding the foregoing, nothing in this Plan shall release any claims against any non-Debtor Affiliate of the Debtors arising in the ordinary course of business (i.e., ordinary course trade claims).

**11.7    Exculpation and Limitation of Liability.  To the extent permitted by section 1125(e) of the Bankruptcy Code, and subject to Article 11.8 of this Plan, the Exculpated Parties shall neither have, nor incur any liability to any Entity for any Exculpated Claim; provided, however, that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or intentional fraud to the extent imposed by applicable non-bankruptcy law.**

**The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including with regard to the distributions of the New SUNE Common Stock and Continuing TERP Class A Shares, as applicable, pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violations of any applicable, law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

**Notwithstanding anything to the contrary contained herein, subject to Article 11.8 of this Plan, the YieldCos and their respective former and current partners, agents, officers, directors, employees, representatives, attorneys and advisors (who served in such roles after the Petition Date) shall neither have, nor incur any liability to any Entity for any Exculpated Claim; provided, however, that the foregoing exculpation shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or intentional fraud to the extent imposed by applicable non-bankruptcy law.**

**Nothing in this Article shall limit the liability of any Person or Entity (other than the Debtors) for any pre- or post-petition action taken or omitted to be taken by them as a fiduciary, co-fiduciary, party in interest or knowing participant in violation of ERISA with respect to any ERISA-covered employee benefit plan sponsored by the Debtors.**

**11.8    Exclusions and Limitations on Exculpation, Indemnification, and Releases**.  Notwithstanding anything in this Plan to the contrary, no provision of this Plan or the Confirmation Order, including, without limitation, any exculpation, indemnification, or release provision, shall modify, release, or otherwise limit the liability of any Entity not specifically released or exculpated hereunder or pursuant to an order of the Bankruptcy Court, including, without limitation, any Entity who is a co-obligor or joint tortfeasor of a Released Party or who is otherwise liable under theories of vicarious or other derivative liability.  In the event that any exculpation or release provision in this Plan conflicts with Section 4 of a YieldCo Settlement Agreements, Section 4 of such YieldCo Settlement Agreement shall govern with respect to the applicable YieldCo.

As to the United States of America, its agencies, departments, or agents (collectively, the "United States"), nothing in the Plan or Confirmation Order shall limit or expand the scope of the discharge, release or injunction to which the Debtors or Reorganized Debtors are entitled to under the Bankruptcy Code, if any.  Notwithstanding any provision to the contrary, no provision of the Disclosure Statement, Plan, or Confirmation Order shall preclude the United States from,

subsequent to entry of the Effective Date, but subject to applicable law, enforcing its police or regulatory powers.

Notwithstanding anything contained in the Plan, Disclosure Statement or Confirmation Order to the contrary, nothing in the Plan or Confirmation Order shall discharge, release, impair or otherwise preclude: (1) any liability to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (2) any claim of the United States arising on or after the Effective Date; (3) any valid right of setoff or recoupment of the United States or the State of Texas or any of its constituent agencies ("Texas") against any of the Debtors; or (4) any liability of the Reorganized Debtors under police or regulatory statutes or regulations to any Governmental Unit (as defined by section 101(27) of the Bankruptcy Code), to which any Reorganized Debtor is subject as the owner, lessor, lessee or operator of property that such entity owns, operates or leases after the Effective Date; provided, however, that all of the Debtors' and the Reorganized Debtors' rights and defenses to any of the above are hereby preserved. Nor shall anything in this Confirmation Order or the Plan: (i) enjoin or otherwise bar the United States or any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in subsection (1) through (4) described in the preceding sentence; or (ii) divest any court, commission, or tribunal of jurisdiction it may have to determine whether any liabilities asserted by the United States or any Governmental Unit are discharged or otherwise barred by this Confirmation Order, the Plan, or the Bankruptcy Code.

Nothing in the Confirmation Order or the Plan shall release or exculpate any non-Debtor, including any Released Parties, from any liability to the United States or Texas, including but not limited to any liabilities arising under the Internal Revenue Code, the environmental laws, or the criminal laws, or any legal action or claim brought by the SEC, nor shall anything in this Confirmation Order or the Plan enjoin the United States or Texas from bringing any claim, suit, action or other proceeding against any non-Debtor, including any Released Party for any liability whatsoever; provided, however, that the foregoing sentence shall not limit the scope of discharge granted to the Debtors under sections 524 and 1141 of the Bankruptcy Code.

Nothing contained in the Plan or Confirmation Order shall be deemed to determine the federal tax liability of any person or entity, including but not limited to the Debtors and the Reorganized Debtors, nor shall the Plan or Confirmation Order be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of this Plan, nor shall anything in this Plan or Confirmation Order be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under the Bankruptcy Code.

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, nothing in the Plan or the Confirmation Order shall release, modify, or otherwise limit any claims or causes of action asserted or assertable by D. E. Shaw Composite Holdings, L.L.C. ("DESCO"), any of DESCO's affiliates, Madison Dearborn Capital Partners IV, L.P. ("MDCP"), any of MDCP's affiliates, each holder of Exchangeable Notes as of November 17, 2014 or December 29, 2015, or any "Sellers" under the Purchase and Sale Agreement, dated as of November 17, 2014, by and among SUNE, TERP LLC, TERP Inc., and certain other parties (as amended, supplemented, or otherwise modified, the "2014 PSA") against (1) TERP LLC, TERP Inc., or any of their non-Debtor affiliates, arising from, or related to, the 2014 PSA, the Purchase and Sale Agreement,

dated as of December 29, 2015, by and among SUNE, certain other Debtors, Seller Note, LLC, DESCO, MDCP, and certain other parties (as amended, supplemented, or otherwise modified), the Payment Agreement, dated as of December 29, 2015, by and among SUNE, DESCO, and MDCP (as amended, supplemented, or otherwise modified), or any act, omission, transaction, agreement, instrument, or document related to the foregoing (including, without limitation, claims and causes of action asserted in the case captioned D. E. Shaw Composite Holdings, L.L.C. and Madison Dearborn Capital Partners IV, L.P. v. TerraForm Power, LLC and TerraForm Power, Inc., No.651752/16 (N.Y. Sup. Ct. Apr. 3, 2016)), or (2) any non-Debtor (other than TERP LLC, TERP Inc., GLBL LLC, GLBL Inc., and any of their non-Debtor affiliates); and all such claims and causes of action, and all defenses and counterclaims related thereto, are preserved and not impaired.

Debtor, Silver Ridge Power Holdings LLC ("SRP Holdings"), is a party to the Amended and Restated Limited Liability Company Agreement of Silver Ridge Power, LLC ("SRP") dated as of July 2, 2014, as amended by that certain First Amendment to Amended and Restated Limited Liability Agreement of Silver Ridge Power, LLC dated as of December 18, 2015 (as the foregoing may have been otherwise amended from time to time, the "SRP LLC Agreement") and other miscellaneous governance or management agreements and agreements relating to sales of assets and treatments of proceeds relating to SRP and/or any of its subsidiaries (collectively, such agreements and the SRP LLC Agreement are referred to as the "SRP Agreements"). The SRP Agreements are not included among the list of "Assumed Executory Contracts and Unexpired Leases" scheduled for assumption on Exhibit 8.1 to the Plan (filed as part of the Plan Supplement) and, are therefore to be rejected effective as of the Effective Date. Notwithstanding anything in the Plan, the ballot or otherwise, R/C US Solar Investment Partnership, L.P. is not releasing or waiving (and expressly reserves) (i) any and all rights and remedies under the SRP Agreements, the Plan, the Confirmation Order and applicable law to assert (a) Claims against the Debtors on account of rejection of the SRP Agreements, (b) its rights with respect to the management of and corporate governance regarding SRP and its subsidiaries, and/or (c) its rights with respect to the allocation and distribution of proceeds arising from the sales or dispositions of assets of SRP and its subsidiaries; and (ii) any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, against any Person (other than the Debtors and Martin Truong and David Ringhofer in their capacities as directors and/or officers of SRP and SRP Holdings) arising in connection with sales or other dispositions (including, without limitation, all sale implementation rights and rights to proceeds and waterfall provisions) of any assets of SRP and/or any subsidiary of SRP, including, without limitation, any rights in relation to sales or dispositions in respect of non-Debtor entities: SRP Italia Holdings BV, Imperial County Solar, Inc. and CSOLAR IV West, LLC.

For the avoidance of doubt, nothing in the Plan or Confirmation Order, including without limitation sections 11.6 and 11.7 of the Plan, shall limit, affect, diminish or otherwise impair the rights of SMP Ltd. or any other party (i) under that certain Settlement Stipulation Term Sheet, dated March 21 2017, by and among SMP Ltd, GCL-Poly Energy Holdings Limited, and SunEdison, Inc., and the Stipulated Order approving such agreement appearing at Docket 2657 (the "Settlement Stipulation"), including, without limitation, such parties' rights with respect to any Election Pleading (as defined in the Settlement Stipulation), (ii) with respect to any proof of claim filed by SMP Ltd. in the Chapter 11 Cases, (iii) with respect to SMP Ltd.'s rehabilitation proceedings in the Republic of Korea and (iv) in that certain adversary proceeding captioned

*SMP Ltd. v. SunEdison, Inc. and GCL-Poly Energy Holdings Limited* (Case No. 17-01057) pending in the Bankruptcy Court.

Notwithstanding anything in the Plan, any Plan Supplement or in the Confirmation Order to the contrary, nothing in the Plan, any Plan Supplement or the Confirmation Order, as any of the forgoing may be amended, modified or supplemented, including, without limitation, in Articles XI and XIII of the Plan, shall: (i) limit or affect any right of the plaintiffs, including any lead plaintiff, in the Securities Litigation Actions, to fully prosecute or settle, or to enforce any judgment or settlement obtained in connection with or relating to such actions against non-Debtors, including from proceeds of applicable insurance; or (ii) release or exculpate any non-Debtor defendant from any claims or causes of action which have been or might be asserted against any non-Debtor defendant in the Securities Litigation Actions. For purposes of this paragraph, "Securities Litigation Actions" means the following, and as the complaints in such actions as against any non-Debtor defendants may be amended, and all cases consolidated thereunder, and including any appeals in connection therewith: (a) the securities class action litigation pending as part of a multi-district litigation before Judge P. Kevin Castel of the United States District Court for the Southern District of New York (the "District Court"), currently styled *Horowitz et al. v. SunEdison, Inc., et al.,* 16-cv-07917-PKC (S.D.N.Y.), (b) the securities class action litigation now pending as part of a multi-district litigation before the District Court, styled *In re Terraform Global, Inc. Securities Litigation* 16-cv-07967-PKC, and consolidated cases, 16-md-02742-PKC (S.D.N.Y.); (c) *Cobalt Partners, L.P., et al. v. SunEdison Inc., et al.,* originally filed in the California Superior Court, San Mateo County, Case No., CIV537954**;** (d) *Glenview Capital Investors, L.P., et al. v. SunEdison Inc., et al.,* originally filed in the California Superior Court, San Mateo County, Case No. CW537971; (e) *Omega Capital Investors, L.P., et al. v. SunEdison Inc., et al.,* originally filed in the California Superior Court, San Mateo County, Case No. CIV537977; (f) *Oklahoma Firefighters Pension and Retirement System v. SunEdison Inc., et al.,* originally filed in the California Superior Court, San Mateo County, Case No. CIV537965; (g) *Kingdon Associates, et al. v. TerraForm Global, Inc., et al.,* filed in the California Superior Court, San Mateo County, Case No. 16 CIV 00459; and (h) *VMTII, LLC v. TerraForm Global, Inc., et al.,* filed in the California Superior Court, San Mateo County, Case No. 16CIV01433.

**11.9    Injunction.    Subject to Article 11.8 of this Plan, the satisfaction, release, and discharge pursuant to this Article XI shall act as an injunction against any Entity commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim, Interest, or Cause of Action satisfied, released or to be released, exculpated or to be exculpated, including any Exculpated Claim, or discharged under this Plan or pursuant to the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.**

**11.10    Subordination Rights**.

(a)    Except as otherwise provided in the Plan, the allowance, classification and treatment of all Allowed Claims and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims in each Class in connection with any contractual (including, without limitation, pursuant to the

Replacement Intercreditor Annex (as defined in the Replacement DIP Facility Order)), legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise and all Claims and all rights and claims between or among Holders of Claims relating in any manner whatsoever to distributions on account of Claims or Interests, based upon any claimed subordination rights, whether asserted or unasserted, legal or equitable, shall be deemed satisfied by the distributions under the Plan to Holders of Claims having such subordination rights, and such subordination rights shall be deemed waived, released, discharged, and terminated as of the Effective Date. Except as otherwise specifically provided for in the Plan, distributions to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any Holder of a Claim by reason of any subordination rights or otherwise, so that each Holder of a Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.

(b)     Except as otherwise provided in the Plan (including Plan Exhibits), the Confirmation Order or an order of the Bankruptcy Court, the right of the Debtors or the Reorganized Debtors to seek subordination of any Claim or Interest pursuant to section 510 of the Bankruptcy Code is fully reserved, and the treatment afforded any Claim or Interest that becomes a subordinated Claim or Interest at any time shall be modified to reflect such subordination; provided, however, that the Debtors and the Reorganized Debtors shall not seek subordination of any Original DIP Facility Claim, Replacement DIP Facility Claim, or Second Lien Claim, and such Claims are Allowed in full and not subject to any subordination of any kind.  Unless the Plan (including Plan Exhibits) or the Confirmation Order otherwise provide, no distributions shall be made on account of a Claim subordinated pursuant to this Article 11.10(b) unless ordered by the Bankruptcy Court.

(c)     This Plan shall be deemed compliant with all of the provisions of that certain Collateral Trust Agreement, dated January 11, 2016, between and among SunEdison, Inc., the guarantors and additional *pari passu* lien representatives from time to time party thereto, the Second Lien Administrative Agent, the Second Lien Senior Notes Indenture Trustee, and the Second Lien Collateral Trustee.  Upon entry of the Confirmation Order, and provided that distributions under the Plan are made in accordance with the Plan and the Confirmation Order, no party shall have any further rights to enforce the Collateral Trust Agreement or the provisions thereof.

**11.11  Protection Against Discriminatory Treatment**.  Consistent with section 525 of the Bankruptcy Code and paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another entity with whom such the Reorganized Debtors has been associated, solely because the Debtors has been a debtor under chapter 11, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors is granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

**11.12  Recoupment**.  In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed

90

such recoupment and provided notice thereof in writing to the Debtors on or before the Effective Date, notwithstanding any indication in any proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**11.13   Release of Liens**.  Except as otherwise provided in the Plan (including with respect to the Reinstated Second Lien Claims) or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and its successors and assigns.

**11.14   Reimbursement or Contribution**.  If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever Disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (1) such Claim has been adjudicated as noncontingent or (2) the relevant Holder of a Claim has filed a noncontingent proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

## ARTICLE XII

## CONDITIONS PRECEDENT

**12.1   Conditions to Confirmation**.  The following are conditions precedent to the Confirmation of the Plan, each of which may be satisfied or waived in accordance with Article 12.3 of this Plan:

(a)    the Bankruptcy Court shall have entered the Disclosure Statement Order;

(b)    in the TERP Share Election Alternative, the Bankruptcy Court shall have entered an Order, in form and substance reasonably satisfactory to the Supporting Second Lien Parties, approving the Debtors' entry into the Equity Commitment Agreement;

(c)    the Confirmation Order shall have been entered; and

(d)    the YieldCos shall have withdrawn all General Unsecured Claims against the Debtors, subject to the right of TERP to assert up to one-half of the actual amount the YieldCos ultimately are required to pay (and therefore have the right to assert as a General Unsecured Claim) in connection with the Preserved DE Shaw Unsecured Claim (as defined in the YieldCo Settlement Motion), capped at one-half of $231 million, plus fees and interest.

**12.2   Conditions to the Effective Date of the Plan**.  The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 12.3 of this Plan:

91

(a)     the Bankruptcy Court shall have entered the Disclosure Statement Order, and such order shall be a Final Order;

(b)     the Bankruptcy Court shall have entered the Confirmation Order, and such order shall be a Final Order;

(c)     all Plan Transaction Documents shall be in form and substance reasonably satisfactory to the Supporting Second Lien Parties and the Creditors' Committee (as applicable);

(d)     in the TERP Share Election Alternative, the Rights Offering (and the Equity Commitment Agreement) shall have been consummated on terms and conditions reasonably satisfactory to the Supporting Second Lien Parties;

(e)     the Jointly Supported Transactions shall have closed, the terms and conditions of which Jointly Supported Transactions (including, without limitation, purchase price) shall be reasonably satisfactory to the Supporting Second Lien Parties; provided, that the Jointly Supported Transactions embodied by the YieldCo Settlement Agreements, Voting and Support Agreements, and Merger Agreements (in the forms required to be supported by the Supporting Second Lien Parties) are deemed to be reasonably satisfactory to the Supporting Second Lien Parties;

(f)     the organizational documents of the Reorganized Debtors as contemplated herein shall be in form and substance reasonably satisfactory to the Supporting Second Lien Parties, shall have been adopted and (where required by applicable law) filed with the applicable authorities of the relevant jurisdictions of organization and shall have become effective in accordance with such jurisdiction's corporation or limited liability company laws;

(g)     all authorizations, consents, certifications, approvals, rulings, no action letters, opinions or other documents or actions required by any law, regulation or order to be received or to occur in order to implement the Plan on the Effective Date shall have been obtained or shall have occurred unless (i) the Supporting Second Lien Parties and, to the extent the Creditors' Committee or Holders of General Unsecured Claims are affected, the Creditors' Committee, consent to such failure (such consent not to be unreasonably withheld) and (ii) such failure will not have a material adverse effect on the Reorganized Debtors;

(h)     each of Reorganized SUNE and the GUC/Litigation Trust shall have been established in a manner consistent with this Plan and the Committee/BOKF Plan Settlement Term Sheet and on terms and conditions reasonably satisfactory to the Supporting Second Lien Parties and, with respect to the GUC/Litigation Trust, the Creditors' Committee;

(i)     the New Boards and senior management shall have been selected as contemplated by this Plan;

(j)     all other documents and agreements necessary to implement the Plan on the Effective Date shall have been executed and delivered and all other actions required to be taken in connection with the Effective Date shall have occurred in form and substance and

in a manner reasonably satisfactory to the Supporting Second Lien Parties and the Creditors' Committee (as applicable);

(k)    the amount of the Voluntary Professional Fee Reduction shall be equal to at least $5 million; and

(l)    all statutory fees and obligations then due and payable to the Office of the United States Trustee shall have been paid and satisfied in full.

**12.3    Waiver of Conditions Precedent**.  The conditions set forth in <u>Articles 12.1</u> and <u>12.2</u> may be waived, in whole or in part, by agreement of (a) the Debtors and (b) the Supporting Second Lien Parties and (c) solely to the extent the Creditors' Committee has a consent right with respect to the conditions set forth in Articles 12.2(c) and 12.2(g), the Creditors' Committee, without any notice to any other parties-in-interest or the Bankruptcy Court and without a hearing.

**12.4    Notice of Effective Date**.  The Debtors shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date within a reasonable period of time after the conditions in <u>Article 12.2</u> of this Plan have been satisfied or waived pursuant to <u>Article 12.3</u> of this Plan.

**12.5    Effect of Non-Occurrence of Conditions to Consummation**.  If prior to consummation of the Plan, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Debtors or any other Entity, or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XIII

## <u>RETENTION OF JURISDICTION</u>

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall, to the fullest extent permissible under applicable law, have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

(a)    resolve any matters related to Executory Contracts and Unexpired Leases, including: (i) the assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear and determine the allowance of Claims resulting therefrom including the amount of Cure, if any, required to be paid; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (iii) the Reorganized Debtors' amendment, modification, or supplement after the Effective Date, pursuant to <u>Article VIII</u> of the Plan, of the lists of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (iv) any dispute regarding whether a contract or lease is or was executory or expired;

(b)    adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases, this Plan, or that were the subject of proceedings before the Bankruptcy Court prior to the Effective Date, proceedings to adjudicate the allowance of Disputed Claims and Disputed Interests, and all controversies and issues arising from or relating to any of the foregoing;

(c)    adjudicate any and all adversary proceedings and contested matters that may be commenced and maintained by the GUC/Litigation Trust or any other matters concerning administration of the GUC/Litigation Trust or any actions taken or contemplated to be taken by the GUC/Litigation Trust;

(d)    ensure that distributions to Holders of Allowed Claims are accomplished as provided herein and adjudicate any and all disputes arising from or relating to distributions under the Plan;

(e)    allow in whole or in part, disallow in whole or in part, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including hearing and determining any and all objections to the allowance or estimation of Claims or Interests filed, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest, and the resolution of request for payment of any Administrative Claim;

(f)    hear and determine or resolve any and all matters related to Causes of Action;

(g)    enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified, and/or vacated;

(h)    issue and implement orders in aid of execution, implementation, or consummation of this Plan;

(i)    consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(j)    hear and determine all applications for allowance of compensation and reimbursement of Professional Claims under this Plan or under sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code;

(k)    determine requests for the payment of Claims entitled to priority under section 507(a)(1) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto;

(l)    adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(m)    hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including

disputes arising under agreements, documents, or instruments executed in connection with this Plan and disputes arising in connection with any Entity's obligations incurred in connection with the Plan;

(n)    hear and determine all suits or adversary proceedings to recover assets of the Debtors and property of their Estates, wherever located;

(o)    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, with respect to requests under section 505(b) of the Bankruptcy Code with respect to Tax Returns filed by, or on behalf of, the GUC/Litigation Trust, or any reserve for or other amounts allocable to Disputed Claims, for all taxable periods through the dissolution of the GUC/Litigation Trust);

(p)    resolve any matters relating to the pre- and post-confirmation sales of the Debtors' assets;

(q)    hear any other matter not inconsistent with the Bankruptcy Code;

(r)    hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge;

(s)    enter a Final Decree closing the Chapter 11 Cases;

(t)    enforce all orders previously entered by the Bankruptcy Court;

(u)    hear and determine all matters relating to any Bankruptcy Code section 510(b) Claims;

(v)    hear and determine all disputes and issues arising from the GUC/Litigation Trust, the GUC/Litigation Trust Agreement, the assets and Causes of Action granted and/or assigned to the GUC/Litigation Trust, and any other related matters in connection therewith (including any items set forth in the Committee/BOKF Plan Settlement Term Sheet);

(w)    hear and determine all disputes regarding the out-of-pocket costs and expenses of the Debtors and Reorganized Debtors in connection with cooperating with the GUC/Litigation Trust Trustee with respect to GUC/Litigation Trust Causes of Actions.

All of the foregoing applies following the Effective Date; provided, that from the Confirmation Date through the Effective Date, in addition to the foregoing, the Bankruptcy Court shall retain jurisdiction with respect to all other matters of this Plan that were subject to its jurisdiction prior to the Confirmation Date; provided, further, that the Bankruptcy Court shall not have nor retain exclusive jurisdiction over any post-Effective Date agreement.  Nothing contained herein shall be construed to increase, decrease or otherwise modify the independence, sovereignty or jurisdiction of the Bankruptcy Court.

## ARTICLE XIV

## MISCELLANEOUS PROVISIONS

   **14.1 Binding Effect**.  Upon the Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, all current and former Holders of Claims, all current and former Holders of Interests, and all other parties-in-interest and their respective heirs, successors, and assigns.

   **14.2 Payment of Statutory Fees**.  All fees payable pursuant to section 1930 of title 28 of the United States Code, as of the entry of the Confirmation Order as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date.  The Reorganized Debtors shall continue to pay fees pursuant to section 1930 of title 28 of the United States Code until the Chapter 11 Cases are closed by entry of the Final Decree.

   **14.3 Payment of Certain Additional Professional Fees**.  To the extent not paid prior to the Effective Date, on the Effective Date, subject to the Voluntary Professional Fee Reduction, the Reorganized Debtors shall pay all obligations required to be paid under paragraph 2(a) of the Original DIP Facility Order or under paragraph 2(a) of the Replacement DIP Facility Order, in each case, in Cash until such obligations are satisfied in full.

   **14.4 Payment of Fees of Second Lien Senior Notes Indenture Trustee and Second Lien Collateral Trustee**.  To the extent not paid prior to the Effective Date, on the Effective Date, subject to the Voluntary Professional Fee Reduction, the Reorganized Debtors shall pay in Cash all reasonable and documented unpaid fees and expenses of the Second Lien Senior Notes Indenture Trustee and the Second Lien Collateral Trustee and its advisors, including counsel, without application to or approval of the Bankruptcy Court.

   **14.5 Modification and Amendments**.  The Debtors, with the consent of (x) the Supporting Second Lien Parties and, (y) with respect to those portions of the Plan that affect the Creditors' Committee or any Holder of General Unsecured Claims, the Creditors' Committee (in each case, such consent not to be unreasonably withheld or delayed), may alter, amend, or modify this Plan under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date and prior to substantial consummation of this Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtors may, with the consent of (a) the Supporting Second Lien Parties and, (b) with respect to those portions of the Plan that affect the Creditors' Committee or any Holder of General Unsecured Claims, the Creditors' Committee (in each case, such consent not to be unreasonably withheld or delayed), under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan.  For the avoidance of doubt, nothing in this Plan is intended to negate or override any consent requirements (including any applicable consent thresholds) set forth in the Replacement DIP Credit Agreement or the Replacement DIP Facility Order or the Committee/BOKF Plan Settlement Term Sheet.

**14.6    Confirmation of the Plan**.  The Debtors request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code.  The Debtors reserve the right to amend the Plan, with the reasonable consent of the Supporting Second Lien Parties and, with respect to those portions of the Plan that affect the Creditors' Committee or any Holder of General Unsecured Claims, the Creditors' Committee, to any extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

**14.7    Additional Documents**.  On or before the Effective Date, the Debtors, with the reasonable consent of the Supporting Second Lien Parties and, to the extent affecting the Creditors' Committee or any Holder of General Unsecured Claims, the Creditors' Committee, may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors (with the reasonable consent of the Supporting Second Lien Parties and, to the extent affecting the Creditors' Committee or any Holders of General Unsecured Claims, the Creditors' Committee) or the Reorganized Debtors, as applicable, and Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provision and intent of the Plan.

**14.8    Dissolution of Creditors' Committee**.  Effective on the Effective Date, the Creditors' Committee shall dissolve automatically, and the members thereof (solely in their capacities as Creditors' Committee members) shall be released, exculpated and discharged from all their duties relating to the Chapter 11 Cases in accordance with Article 11 hereof; provided, however, that the Creditors' Committee shall continue to exist and its Professionals shall continue to be retained and entitled to reasonable compensation, without further order of the Court, with respect to: (1) the preparation and prosecution of any final fee applications of the Creditors' Committee's Court approved Professionals and (2) all final fee applications filed with the Bankruptcy Court.

**14.9    Revocation, Withdrawal, or Non-Consummation**.

(a)    **Right to Revoke or Withdraw**.  The Debtors reserve the right (such right, following Confirmation, subject to the reasonable consent of the Supporting Second Lien Parties and the Creditors' Committee) to revoke or withdraw this Plan at any time prior to the Effective Date and file subsequent chapter 11 plans.

(b)    **Effect of Withdrawal, Revocation, or Non-Consummation**.  If the Debtors revoke or withdraw this Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan, the Committee/BOKF Plan Settlement, including with regard to the Investigation/Prosecution Cap, the settlement of the BOKF Objection, the settlement of the UCC Challenge Litigation, and any settlement or compromise approved as part of this Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims or the allocation of the distributions to be made hereunder), the assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be null and void in all respects.  In such event, nothing contained herein or in the Disclosure Statement, or the Committee/BOKF Plan

Settlement, and no acts taken in preparation for consummation of this Plan, shall be deemed to constitute a waiver or release of any Claims, Interests, or Causes of Action by or against the Debtors or any other Entity, to prejudice in any manner the rights and defenses of the Debtors, the Holder of a Claim or Interest, or any Entity in any further proceedings involving the Debtors, or to constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Creditors' Committee, BOKF, or any other Entity.

      **14.10 Notices**.  After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

      **If to the Debtors:**

c/o SunEdison, Inc.
13736 Riverport Dr.
Maryland Heights, MO 63043
Attn.: Martin H. Truong (mtruong@sunedison.com)
Senior Vice President, General Counsel and Secretary

with a copy to:

Skadden, Arps, Slate, Meagher &
  Flom LLP
Four Times Square
New York, New York 10036
Att'n:  Jay M. Goffman
      J. Eric Ivester

– and –

Skadden, Arps, Slate, Meagher &
  Flom LLP
155 North Wacker Drive, Suite 2700
Chicago, Illinois 60606
Att'n:  James J. Mazza, Jr.
      Louis S. Chiappetta

– and –

Skadden, Arps, Slate, Meagher &
  Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
Att'n:  Anthony W. Clark

**If to the Replacement DIP Agent or Original DIP Agent:**

98

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036
Att'n:  Scott Greissman
         Elizabeth Feld

**If to the Tranche B Lenders/Steering Committee:**

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, New York 10036
Att'n:  Arik Preis
         Yochun Katie Lee

**If to the Office of the United States Trustee:**

Office of the United States Trustee for the Southern District of New York
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, New York   10014
Att'n:  Paul Schwartzberg

**If to the Creditors' Committee:**
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Att'n:  Matt Barr
         Jill Frizzley

– and –

Morrison & Foerester LLP
250 West 55th Street
New York, New York 10019
Att'n:  Elizabeth Sluder

    **14.11   Term of Injunctions or Stays**.  Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

    **14.12   Governing Law**.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically

stated, the laws of the State of New York shall govern the construction and implementation of this Plan, any agreements, documents, and instruments executed in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control).  Corporate governance matters shall be governed by the laws of the state of incorporation of the Reorganized Debtors.

**14.13  Entire Agreement**.  Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**14.14  Severability**.  If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the Debtors' consent, and (c) nonseverable and mutually dependent.

**14.15  No Waiver or Estoppel**.  Upon the Effective Date, each Holder of a Claim or Interest shall be deemed to have waived any right to assert that its Claim or Interest should be Allowed in a certain amount, in a certain priority, be secured, or not be subordinated by virtue of an agreement made with the Debtors and/or their counsel, the Creditors' Committee and/or its counsel, or any other party, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court.

**14.16  Conflicts**.  In the event that the provisions of the Disclosure Statement and the provisions of the Plan conflict, the terms of this Plan shall govern.  In the event that the provisions of the Plan and the provisions of the Confirmation Order conflict, the terms of the Confirmation Order shall govern.

## ARTICLE XV

## <u>SECOND LIEN LITIGATION</u>

Notwithstanding anything to the contrary that may be set forth (or may be construed or argued to be set forth) in this Plan, the Disclosure Statement, or the Confirmation Order, including, without limitation, in <u>Articles 1</u>, <u>4.1</u>, <u>6.12</u>, <u>10.9</u>, <u>11.2</u>, <u>11.4</u>, <u>11.5</u>, <u>11.6</u>, and <u>11.7</u> of this Plan:

(a)     The term "Second Lien Litigation" shall mean any and all direct (i.e., not derivative) Causes of Action held by the Holders of Second Lien Claims (or Tranche B Roll Up Loan Claims, if applicable), or their respective successors or assigns, against any non-debtor, third party (including without limitation, any directors and officers of the Debtors and any party that is not a "Released Party" under the Plan as set forth in clause (f) below) involved in, implicated by, or related to the entry into the documents or transactions giving rise to the Second Lien Loans and Second Lien Senior Notes. The Second Lien Litigation is being or, with regard to certain potential defendants, will be prosecuted by, Kasowitz Benson Torres LLP (or any successor law firm).

(b)     Subject to clause (d) below, nothing in the Plan, Disclosure Statement or Confirmation Order shall prevent the Second Lien Lenders and the Second Lien Noteholders from asserting against (or collecting from) third parties in the Second Lien Litigation the full amount of any of their Tranche B Roll-Up Claims or Second Lien Claims, to the extent that such Claims do not receive a full recovery under this Plan.

(c)     None of the Second Lien Creditors shall provide a release under the Plan or otherwise to any current or potential defendants to the Second Lien Litigation (which includes, without limitation, the arrangers, agents, bookrunners, syndication agents, and underwriters of the Second Lien Loans and Second Lien Senior Notes, any of the Debtors' current and former principals, employees, agents, affiliates, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals) under this Plan, the Confirmation Order, or the Disclosure Statement for purposes of the Second Lien Litigation.

(d)     Nothing in the Plan, Disclosure Statement or Confirmation Order shall impair any defenses, claims, counterclaims, or rights that any third parties (which, for the avoidance of doubt, also includes the Holders of Second Lien Claims or Tranche B Roll-Up Loan Claims, if applicable) may have, and such defenses, claims, counterclaims, or rights (including, without limitation, any rights to seek indemnity, and any rights to seek setoff or recoupment, under any contract or agreement, or under applicable law or equity) with respect to the Second Lien Litigation (and any defenses thereto) are preserved and not impaired.

(e)     For the avoidance of doubt, the exculpatory and limitation of liability provisions set forth in Article 11.7 of this Plan shall not apply to the Second Lien Litigation.

(f)     None of the current or potential defendants (which includes, without limitation, the arrangers, agents, bookrunners, syndication agents, and underwriters of the Second Lien Loans and Second Lien Senior Notes, any of the Debtors' current and former principals, employees, agents, affiliates, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals) to the Second Lien Litigation shall be deemed "Released Parties" under Article 11.6 of this Plan or the Disclosure Statement for purposes of the Second Lien Litigation. For the avoidance of doubt, (x) nothing in this Article XV shall limit, impair, abridge, or otherwise affect Article 11.5 of this Plan (Release by Debtors) and (y) the Second Lien Senior Notes Indenture Trustee and the Second Lien Collateral Trustee shall not be defendants to the Second Lien Litigation.

101

Dated:  July 20, 2017

Respectfully submitted,

SUNEDISON, INC. AND ITS AFFILIATE
DEBTORS

By:  /s/ *John S. Dubel*
Name:  John S. Dubel
Title:  Chief Executive Officer of
SunEdison, Inc. and Chief Restructuring
Officer of all Debtors

## **EXHIBIT 2.1**

## ADMINISTRATIVE CLAIM REQUEST FORM

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | ADMINISTRATIVE CLAIM REQUEST FORM |
|---|---|

**Name of Debtor:**
**Case No.:**

NOTE: This form should only be used to make a claim for an administrative claim arising on or after the applicable petition date set forth in the instructions below through and including _____ **IT SHOULD NOT BE USED FOR CLAIMS ARISING PRIOR TO APRIL 21, 2016 (OR LATER APPLICABLE PETITION DATE AS SET FORTH IN THE INSTRUCTIONS BELOW).**

| | | |
|---|---|---|
| Name of Creditor (The person or other entity to whom the debtor owes money or property): | ❑ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | |
| | | ADMINISTRATIVE CLAIM |
| Name and address where notices should be sent: | ❑ Check box if you have never received any notices from the bankruptcy court in this case. | |
| | ❑ Check box if the address differs from the address on the envelope sent to you by the court. | |
| Telephone number:<br>Email Address: | | |

| Last four digits of account or other number by which creditor identifies debtor:<br><br>_____  _____  _____  _____ | Check here if this claim<br>❑ replaces<br>❑ amends    a previously filed claim, dated: _____ |
|---|---|

| **1. Basis for Claim:**<br>❑ Goods sold<br>❑ Medical Malpractice<br>❑ Services performed<br>❑ Money loaned<br>❑ Personal injury/wrongful death<br>❑ Taxes<br>❑ Other | ❑ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>❑ Wages, salaries, and compensation (fill out below)<br><br>    Last four digits of SS#: _____<br><br>Unpaid compensation for services performed<br><br>from _____    to _____<br>        (date)                    (date) |
|---|---|

| **2. Date debt was incurred (must be on or after _____):** | **3. If court judgment, date obtained:** |
|---|---|

**4. Total Amount of Administrative Claim : $ _____**

❑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Brief Description of Claim (attach any additional information):**

**6. Credits and Setoffs:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

**7. Supporting Documents:**

Attach copies of supporting document, such as promissory notes, contracts, security agreements, and evidence of perfection of liens. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. Any attachment must be 8-1/2" by 11".

**8. DATE-STAMPED COPY:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| **9. Assignment:**<br>❑ If the Claimant has obtained this claim by Assignment, a copy is attached hereto | **THIS SPACE IS FOR COURT USE ONLY** |
|---|---|

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): | |
|---|---|---|
| | | |

*Penalty for presenting fraudulent claim:* Fine up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# INSTRUCTIONS FOR ADMINISTRATIVE CLAIM REQUEST FORM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to these general rules.*

## ----DEFINITIONS----

**DEBTOR**
The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

**CREDITOR**
A creditor is any person, corporation, or other entity to whom the debtor owes a debt.

**ADMINISTRATIVE CLAIM**
Any right to payment constituting a cost or expense of administration of the Chapter 11 Cases arising under 11 U.S.C. § 503(b) of the Bankruptcy Code for the period from the commencement of this case through _____, provided, however, that Holders of (i) Original DIP Facility Claims, (ii) Replacement DIP Facility Claims, (iii) Professional Claims, (iv) Administrative Claims Allowed by an order of the Bankruptcy Court on or before the Effective Date, or (v) Administrative Claims that are not Disputed and arose in the ordinary course of business and was paid or are to be paid in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim do not need to file an Administrative Claim Request Form.

**ADMINISTRATIVE CLAIMS BAR DATE**
Pursuant to Article 2.1 of the Plan, , all requests for payment of an Administrative Claim that has arisen between the applicable petition date and _____ must be filed no later than _____.

## Items to be completed in Administrative Claim Request Form (if not already filled in)

**Name of Debtor and Case Number:**
If your claim form is not preprinted with the name of the debtor and the case number, fill in the name of the debtor in the bankruptcy case and the bankruptcy case number. If you previously received a notice of the case from the Court, your name and address is near the top of the notice.

**Information about Creditor:**
Complete the section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed an administrative proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this administrative proof of claim replaces or changes an administrative proof of claim that was already filed, check the appropriate box on the form.

**1. Basis for Claim:**
Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in the last four digits of your social security number and the dates of work for which you were not paid.

**2. Date Debt Incurred:**
Fill in the date when the debt first was owed by the debtor.

**3. Court Judgments:**
If you have a court judgment for this debt, state the date the court entered the judgment.

**4. Total Amount of Claim:**
Fill in the total amount of the entire administrative claim. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate boxes on the form and attach an itemization of the interest and charges.

**5. Brief Description of Administrative Claim:**
Describe the Administrative Claim including, but not limited to, the actual and necessary costs and expenses of operating the Debtor's Estate or any actual and necessary costs and expenses of operating the Debtor's businesses.

**6. Offsets, Credits and Setoffs:**
By signing this administrative proof of claim, you are stating under oath that in calculating the amount of your claim you have given the debtor credit for all payments received from the debtor.

**7. Supporting Documents:**
You must attach to this administrative proof of claim form copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

**8. Date-Stamped Copy:**
To receive an acknowledgement of the filing of your Administrative Claim, enclose a stamped, self-addressed envelope and copy of this Administrative Claim Request Form.

## Applicable Petition Dates

| Debtor | Case Number | Petition Date |
|---|---|---|
| SunEdison, Inc. | 16-10992 | April 21, 2016 |
| SunEdison DG, LLC | 16-10991 | April 21, 2016 |
| SUNE Wind Holdings, Inc. | 16-11010 | April 21, 2016 |
| SUNE Hawaii Solar Holdings, LLC | 16-11011 | April 21, 2016 |
| First Wind Solar Portfolio, LLC | 16-11012 | April 21, 2016 |
| First Wind California Holdings, LLC | 16-11013 | April 21, 2016 |
| SunEdison Holdings Corporation | 16-10993 | April 21, 2016 |
| SunEdison Utility Holdings | 16-10994 | April 21, 2016 |
| SunEdison International, Inc. | 16-10995 | April 21, 2016 |
| SUNE ML 1,LLC | 16-10996 | April 21, 2016 |
| MEMC Pasadena, Inc. | 16-10997 | April 21, 2016 |
| Solaicx | 16-10998 | April 21, 2016 |
| SunEdison Contracting, LLC | 16-10999 | April 21, 2016 |
| NVT, LLC | 16-11000 | April 21, 2016 |
| Team-Solar, Inc. | 16-11002 | April 21, 2016 |
| SunEdison Canada, LLC | 16-11003 | April 21, 2016 |
| Enflex Corporation | 16-11005 | April 21, 2016 |
| Fotowatio Renewable Ventures, Inc. | 16-11006 | April 21, 2016 |
| Silver Ridge Power Holdings, LLC | 16-11007 | April 21, 2016 |
| SunEdison International, LLC | 16-11008 | April 21, 2016 |
| Sun Edison, LLC | 16-11009 | April 21, 2016 |
| NVT Licenses, LLC | 16-11001 | April 21, 2016 |
| SunEdison Products Singapore PTE, Ltd. | 16-11014 | April 21, 2016 |
| SEV Merger Sub Inc. | 16-11015 | April 21, 2016 |
| SunEdison Residential Services, LLC | 16-11017 | April 21, 2016 |
| PVT Solar, Inc. | 16-11016 | April 21, 2016 |
| Sunflower Renewable Holdings 1, LLC | 16-11626 | June 1, 2016 |
| Blue Sky West Capital, LLC | 16-11627 | June 1, 2016 |
| First Wind Oakfield Portfolio, LLC | 16-11628 | June 1, 2016 |
| First Wind Panhandle Holdings III, LLC | 16-11629 | June 1, 2016 |
| DSP Renewables, LLC | 16-11630 | June 1, 2016 |
| Hancock Renewables Holdings, LLC | 16-11631 | June 1, 2016 |
| EverStream HoldCo Fund I, LLC | 16-12058 | July 20, 2016 |
| Buckthorn Renewables Holdings, LLC | 16-12298 | August 9, 2016 |
| Greenmountain Wind Holdings, LLC | 16-12299 | August 9, 2016 |
| Rattlesnake Flat Holdings, LLC | 16-12300 | August 9, 2016 |
| Somerset Wind Holdings, LLC | 16-12301 | August 9, 2016 |
| SunE Waiawa Holdings, LLC | 16-12302 | August 9, 2016 |
| SunE MN Development, LLC | 16-12314 | August 10, 2016 |
| SunE MN Development Holdings, LLC | 16-12315 | August 10, 2016 |
| SunE Minnesota Holdings, LLC | 16-12316 | August 10, 2016 |
| TerraForm Private Holdings, LLC | 16-13523 | December 16, 2016 |
| Hudson Energy Solar Corporation | 17-10935 | April 7, 2017 |
| SunE REIT-D PR, LLC | 17-10936 | April 7, 2017 |
| SunEdison Products, LLC | 17-10937 | April 7, 2017 |
| SunEdison International Construction, LLC | 17-10938 | April 7, 2017 |
| Vaughn Wind, LLC | 17-10939 | April 7, 2017 |
| Maine Wind Holdings, LLC | 17-10940 | April 7, 2017 |
| First Wind Energy, LLC | 17-10941 | April 7, 2017 |
| First Wind Holdings, LLC | 17-10942 | April 7, 2017 |
| EchoFirst Finance Co., LLC | 17-10943 | April 7, 2017 |

Please send original, completed administrative proof of claim as follows:

**By Mail, Hand, or Overnight Courier:**

SunEdison, Inc. Claims Processing Center

c/o Prime Clerk LLC

830 3rd Avenue, 3rd Floor

New York, NY 10022

Any proof of claim submitted by facsimile or email will not be accepted.

**All claims must be received on or before _____ at _____ Prevailing _____ Time.**

## **EXHIBIT 6.1**

**COMMITTEE/BOKF PLAN SETTLEMENT TERM SHEET**

**TERM SHEET FOR SETTLEMENT AMONG DEBTORS, TRANCHE B
ROLL UP LENDERS/STEERING COMMITTEE OF PREPETITION SECOND
LIEN LENDERS AND NOTEHOLDERS (THE "AD HOC GROUP"), THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS (THE "COMMITTEE"), AND BANK OF
OKLAHOMA, N.A. ("BOKF")**

**THIS TERM SHEET SETS FORTH THE MATERIAL TERMS OF THE SETTLEMENT
RESULTING FROM MEDIATION IN THE CHAPTER 11 CASES OF SUNEDISON, INC. AND
CERTAIN OF ITS AFFILIATES AS DEBTORS AND DEBTORS IN POSSESSION AND IS
SUBJECT IN ALL RESPECTS TO THE NEGOTIATION, EXECUTION, AND DELIVERY OF
THE CHAPTER 11 PLAN AND RELATED DOCUMENTS CONSISTENT WITH THE TERMS
HEREOF AND, AS TO THE DEBTORS, APPROVAL OF THE COURT. TO THE MAXIMUM
EXTENT PERMITTED UNDER APPLICABLE LAW, THIS TERM SHEET IS INTENDED TO
BE ENTITLED TO THE PROTECTIONS OF RULE 408 OF THE FEDERAL RULES OF
EVIDENCE AND ANY OTHER APPLICABLE STATUTES OR DOCTRINES PROTECTING
THE USE OR DISCLOSURE OF CONFIDENTIAL INFORMATION AND INFORMATION
EXCHANGED IN THE CONTEXT OF SETTLEMENT DISCUSSIONS, INCLUDING
MEDIATION PRIVILEGE. FURTHER, NOTHING IN THIS TERM SHEET SHALL BE AN
ADMISSION OF FACT OR LIABILITY BY THE DEBTORS, THE AD HOC GROUP, THE
COMMITTEE, ANY INDIVIDUAL MEMBER OF THE COMMITTEE, OR BOKF. THIS TERM
SHEET IS NOT AN OFFER OR A SOLICITATION WITH RESPECT TO ANY SECURITIES.
ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE
SECURITIES LAWS.**

| | |
|---|---|
| **Parties** | **Debtors**: SunEdison, Inc. ("**SUNE**"); SunEdison DG, LLC; SUNE Wind Holdings, Inc.; SUNE Hawaii Solar Holdings, LLC; First Wind Solar Portfolio, LLC; First Wind California Holdings, LLC; SunEdison Holdings Corporation; SunEdison Utility Holdings, Inc.; SunEdison International, Inc.; SUNE ML 1, LLC; MEMC Pasadena, Inc.; Solaicx; SunEdison Contracting, LLC; NVT, LLC; NVT Licenses, LLC; Team-Solar, Inc.; SunEdison Canada, LLC (6287); Enflex Corporation; Fotowatio Renewable Ventures, Inc.; Silver Ridge Power Holdings, LLC; SunEdison International, LLC; Sun Edison LLC; SunEdison Products Singapore Pte. Ltd.; SunEdison Residential Services, LLC; PVT Solar, Inc.; SEV Merger Sub Inc.; Sunflower Renewable Holdings 1, LLC; Blue Sky West Capital, LLC; First Wind Oakfield Portfolio, LLC; First Wind Panhandle Holdings III, LLC; DSP Renewables, LLC; Hancock Renewables Holdings, LLC; EverStream HoldCo Fund I, LLC; Buckthorn Renewables Holdings, LLC; Greenmountain Wind Holdings, LLC; Rattlesnake Flat Holdings, LLC; Somerset Wind Holdings, LLC; SunE Waiawa Holdings, LLC; SunE MN Development, LLC; SunE MN Development Holdings, LLC; SunE Minnesota Holdings, LLC; TerraForm Private Holdings, LLC; SunEdison Products, LLC; Hudson Energy Solar Corporation; SunE REIT-D PR, LLC; First Wind Energy, LLC; First Wind Holdings, LLC; Vaughn Wind, LLC; Maine Wind Holdings, LLC; SunEdison |

| | International Construction, LLC; and EchoFirst Finance Co., LLC (collectively, the "**Debtors**")[1] as debtors in possession in the cases filed under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). |
|---|---|
| | **Ad Hoc Group**:  The Tranche B Roll Up Lenders/Steering Committee of Prepetition Second Lien Lenders and Noteholders (the "**Ad Hoc Group**")[2]. |
| | **Committee**:  The Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases (the "**Committee**").[3] |
| | **BOKF**:  Bank of Oklahoma, N.A., in its capacity as indenture trustee for the Debtors' Convertible Senior Notes pursuant to the Convertible Senior Notes Indenture, and not in its capacity as a member of the Committee. |
| **Plan/ Disclosure Statement** | As soon as reasonably practicable, the Debtors shall file an amended Plan (in such form, the "**Amended Plan**")[4] and amended Disclosure Statement (the "**Amended Disclosure Statement**") (both in form and substance acceptable to the Ad Hoc Group and the Committee) consistent with the terms of this Term Sheet and any additional definitive documentation to effectuate the transactions contemplated by this settlement including, without limitation, the GUC/Litigation Trust Agreement (the "**Definitive Documentation**").  In the event of any inconsistency between the terms of the Amended Plan and/or the Amended Disclosure Statement and this Term Sheet, the terms of this Term Sheet shall govern.  The Amended Plan shall serve as the Debtors' motion to approve the settlement contained in this Term Sheet.

The Amended Plan shall include, among other things, removing unsecured creditors' right to share in, participate in or receive (in any form or manner) (a) the Rights Offering, (b) TERP Stock, (c) Reinstated Second Lien Claims, and (d) Equity in Reorganized SunEdison.

The Amended Disclosure Statement shall include the Committee's support for the Amended Plan, in a form and manner to be agreed by the Committee, the Debtors, and the Ad Hoc Group.

The Amended Plan shall provide for a single class of general unsecured creditors.[5]  The Amended Plan shall provide for distributions from the |

---

[1] If any entities become Debtors after May 16, 2017, they shall be deemed to be part of this settlement as part of the defined term "Debtors".

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the *Joint Plan of Reorganization of SunEdison, Inc. and Its Debtor Affiliates* [D.I. 3218] (the "**Plan**").

[3] For the avoidance of doubt, the terms of this agreement shall apply solely to the Committee in its capacity as such, and, with the exception of BOKF's obligations hereunder, shall not apply to any member of the Committee in its individual capacity.

[4] Those portions of the Amended Plan that affect the Committee or any general unsecured creditors shall not be further amended or supplemented without the Committee's reasonable consent.  If the Amended Plan is further amended or supplemented with the Committee's consent, such plan shall also constitute an "Amended Plan" under this Term Sheet.

[5] The deficiency claim held by the Second Lien Lenders and Noteholders shall not be part of the class of general unsecured creditors, and holders of such deficiency claims shall not be entitled to receive any interests in the

| | |
|---|---|
| | GUC/Litigation Trust to general unsecured creditors on a Pro Rata basis without regard to Debtors.  In other words, "Pro Rata" (for these purposes) shall be determined with the denominator equal to all allowed unsecured claims against all Debtors (other than the deficiency claim held by the Second Lien Lenders and Noteholders) and the numerator equal to the amount of a particular unsecured creditor's claim (other than the deficiency claim held by the Second Lien Lenders and Noteholders); provided, however, the Debtors reserve all rights to direct the Amended Plan to voting agent under the Amended Plan to process and tabulate ballots for general unsecured creditors on a Debtor-by-Debtor (i.e., sub-Class by sub-Class) basis or on an aggregate basis in their discretion, in consultation with the Ad Hoc Group and the Committee. |
| **General Support Obligations/ Pending Litigation/ Future Litigation** | Pending litigation (Committee and BOKF): All pending litigation that has been commenced by the Committee or BOKF (i.e., the First and Second Lien Litigation Adversary Proceeding, the OID Claim Objection, and the objections to the YieldCo 9019 Settlement and the Allocation contained therein)[6] shall be held in abeyance, and no further work (i.e., discovery, pleadings, etc.) shall be done on any such litigation, pending approval of the settlement contained herein (the "Settlement") and the Plan.  If the Settlement is not approved or the Amended Plan is not confirmed and the transactions contemplated therein are not consummated, all parties will revert to the status quo ante (except with regard to the YieldCo 9019 Settlement solely to the extent as set forth herein).  If the Settlement is approved, the Amended Plan is confirmed, and the Amended Plan becomes effective, all pending litigation will be deemed withdrawn with prejudice (and, if necessary, parties will file with the Court any necessary withdrawal notices). |
| | Future/Threatened Litigation (Committee): The Committee will not take any actions or file any pleadings inconsistent with this Term Sheet or that would have the effect of modifying the Settlement, and so long as the Amended Plan (including any amendments or supplements thereto) and the other Definitive Documentation reflects the Settlement, the Committee will support the Amended Disclosure Statement and the Amended Plan[7]. |
| | Committee Support: With regard to the Committee's support of the Chapter 11 Cases and the Amended Plan, subject to the Committee's fiduciary duties[8], the |

---

GUC/Litigation Trust on account of such deficiency claims other than the Class B Interests on the Effective Date of the Plan.

[6] Further explanation regarding the objections of the Committee and BOKF to the Yieldco 9019 Settlement and the Allocation contained therein are addressed below under the section entitled "Relation to Pending Motions: Equity Commitment Agreement and YieldCo Settlement".

[7] For the avoidance of doubt, this Settlement settles any and all issues that may be in dispute (either currently or pending or that could be commenced in the future) regarding Annex II of the Replacement DIP Facility Order (Docket No. 2880).

[8] For the avoidance of doubt, if, prior to the Confirmation Date, the Committee, in the good faith exercise of its fiduciary duties (as advised by counsel), no longer supports this Settlement or breaches any of its support or other obligations contained herein, all other parties may terminate their obligations hereunder.  If the Ad Hoc Group or the Debtors breach any of their support or obligations contained herein, the Committee may terminate its obligations hereunder.

3

|  | Committee will (a) support the Debtors in the prosecution of all pending and future motions filed by the Debtors to implement the Amended Plan and this Term Sheet and (b) actively support (which may include making filings in support of the Amended Plan and the Amended Disclosure Statement (and any item that is included in such Amended Plan or Amended Disclosure Statement, including the Rights Offering, the Equity Commitment Agreement, and the Treatment/Allowance of the Roll-Up Loans). Subsequent to the Confirmation Date, the Debtors shall meet and confer with the Committee with respect to actions that affect the amount of General Unsecured Claims and/or the assets that are to be transferred to the GUC/Litigation Trust. Prior to the Confirmation Date, the Committee reserves the right to object to such actions. Prior to the Effective Date, the Debtors shall not prosecute any objections to General Unsecured Claims without the consent of the Committee, which consent shall not be unreasonably withheld.[9] After the Effective Date, the GUC/Litigation Trust Trustee shall have the sole discretion to object to proofs of claim and to prosecute claims objections. |
|---|---|
|  | BOKF Agreement Not to Object: So long as the Committee supports the Amended Plan and Amended Disclosure Statement (and any item that is included in such Amended Plan or Amended Disclosure Statement, including the Rights Offering, the Equity Commitment Agreement, and the Treatment/Allowance of the Roll-Up Loans), BOKF will not object to the Amended Plan or Amended Disclosure Statement (and any item that is included in such Amended Plan or Amended Disclosure Statement, including the Rights Offering, the Equity Commitment Agreement, and the Treatment/Allowance of the Roll-Up Loans). |
| **Relation to Pending Motions: Equity Commitment Agreement and YieldCo Settlement** | The hearing with regard to the Debtors' *Motion for Entry of an Order Authorizing and Approving (I)(A) Entry Into the Backstop Commitment Letter, (B) Equity Commitment Agreement, (C) Payment of Fees and Expenses and (II) The Rights Offering Procedures and Related Forms* (Dkt. No. 2857] (the "**ECA Motion**") shall occur on May 19, 2017 (as currently scheduled). The Committee shall support the ECA Motion and BOKF, as part of its agreement not to object to the Amended Plan, shall not object to the ECA Motion. |
|  | The hearing with regard to the Debtors' *Motion to Authorize Debtors' Motion For Order Pursuant To Bankruptcy Code Sections 105, 362, 363(b), And 365(a), Bankruptcy Rules 6004, 6006, And 9019, And Local Bankruptcy Rule 6006-1 Authorizing And Approving Certain Settlement Agreements Among The Debtors And The YieldCos* [Dkt. No. 2570] (the "**YieldCo Settlement Motion**") shall occur on June 12, 2017 (as currently scheduled) or earlier, to the extent agreed to by the Court. The YieldCo Settlement Motion shall include the YieldCo Avoidance Allocation set forth below in the section entitled "GUC/Litigation Trust Assets"; the Committee shall support the YieldCo Settlement Motion (and the YieldCo Avoidance Allocation set forth below) and, as part of its agreement not to object to the Amended Plan, BOKF |

---

[9] For the avoidance of doubt, the Committee's consent at all points herein is subject to the Committee's fiduciary duties in these cases.

4

| | |
|---|---|
| | shall not oppose the YieldCo Settlement Motion (and the YieldCo Avoidance Allocation set forth below).[10] |
| | The orders (to the extent entered by the Bankruptcy Court) approving the ECA Motion and the Yieldco Settlement Motion shall both include a provision stating that to the extent the Settlement set forth in this Term Sheet (and/or the Amended Plan) is not approved (or confirmed), such orders are vacated (but solely, as it relates to the Yieldco Settlement Motion, with regard to the Allocation set forth therein) and all parties revert to the status quo ante with regard to both the ECA Motion and the Yieldco Settlement Motion (but solely, as it relates to the Yieldco Settlement Motion, with regard to the Allocation set forth therein). |
| **GUC/Litigation Trust** | The GUC/Litigation Trust shall be established on the Effective Date, and the GUC/Litigation Trust Assets or such portion of the GUC/Litigation Trust Assets as determined by the Committee/GUC/Litigation Trust Oversight Board shall be used to fund the activities of the GUC/Litigation Trust, including the prosecution of the GUC/Litigation Trust Causes of Action. For the avoidance of doubt, the GUC/Litigation Trust Initial Funding (other than the $2 million paid to BOKF as set forth herein in the section entitled "Committee Professional Fees Subject to Investigation / Prosecution Cap / BOKF Fees and Expenses") shall be used to prosecute GUC/Litigation Trust Causes of Action and pay other expenses of the GUC/Litigation Trust; only after such expenses are paid in full may any excess be distributed to Holders of Class A Interests in the GUC/Litigation Trust. |
| | A GUC/Litigation Trust Trustee will be selected by the Committee to administer the GUC/Litigation Trust. All GUC/Litigation Trust governance issues shall be determined by the Committee including the composition of the GUC/Litigation Trust Oversight Board, and the GUC/Litigation Trust Agreement shall be included in the Plan Supplement to be filed in advance of the Confirmation Hearing. |
| | The GUC/Litigation Trust Trustee and the GUC/Litigation Trust Oversight Board shall have the authority to retain any advisors for the purpose of carrying out their respective duties under the GUC/Litigation Trust Agreement. The GUC/Litigation Trust Trustee shall file a notice (summarizing the key terms of such retention, including the economic terms thereof) regarding the proposed retention of any such advisors on a contingency fee basis (other than the GUC/Litigation Trust Trustee) (each such notice, a "**Contingency Fee Advisor Retention Notice**") on the docket of the Bankruptcy Court. |
| | Class A Interests in the GUC/Litigation Trust shall be distributed to Holders of Allowed General Unsecured Claims, on a pro rata basis and Class B Interests in the GUC/Litigation Trust shall be distributed to Holders of Second Lien Claims on a pro rata basis, pursuant to the terms of this Settlement. |

---

[10] All references herein to the Committee's support of the Yieldco Settlement Motion (and BOKF's agreement not to object to such motion) shall apply, *mutatis mutandis*, to the *Debtors' Motion for Orders Approving the Debtors' Performance Under TERP VSA, the TERP IDR Transfer Agreement, and the GLBL VSA in Connection with the Yieldco Merger* [Dkt. No. 2580].

5

Holders of Class B Interests in the GUC/Litigation Trust shall only be entitled to the following:

(a) forty-eight percent (48%) of the Additional Net Avoidance Action Proceeds (as defined below); provided, that, the GUC/Litigation Trust Agreement shall provide that the GUC/Litigation Trust Agreement may not be amended to change the distributions set forth in this clause (a) without the consent of 75% of the Holders (in amount of Class B Interests held, not number of Holders) of the Class B Interests in the GUC/Litigation Trust and the requisite consent of the Holders of the Class A Interests in the GUC/Litigation Trust in accordance with the GUC/Litigation Trust Agreement;

(b) delivery of the GUC Litigation Trust Reports (as defined below);

(c) following the filing of any Contingency Fee Advisor Retention Notice, at the request of any of the holders of Class B Interests (or their advisor at the instruction of a holder) the GUC/Litigation Trust Trustee will provide additional information regarding the proposed contingency fee engagement (including the actual engagement letter on a confidential basis, if so requested).  Holders of Class B Interests (or their advisors at the instruction of a holder) shall have ten (10) Business Days from the date of the filing of the Contingency Fee Advisor Retention Notice to file with the Bankruptcy Court a pleading seeking to prohibit such retention on the grounds that such retention is not consistent with the purpose of this Settlement Agreement because the engagement does not provide a sufficient incentive for such contingency fee advisor to procure Additional Net Avoidance Action Proceeds, and the GUC/Litigation Trust, GUC Litigation Trust Trustee, GUC Litigation Trust Oversight Board, or the Committee may oppose such pleading (but solely with respect to such issue), and the Bankruptcy Court shall retain jurisdiction to settle such dispute.

(d) enforcement rights with regard to any and all of the above rights (and clause (e) below) (as well as the fiduciary duties owed to all holders of GUC/Litigation Trust Interests by the GUC/Litigation Trust Trustee and the GUC/Litigation Trust Oversight Board as set forth below); and

(e) reasonable consent rights with regard to any modifications, amendments, or supplements of the GUC/Litigation Trust Agreement that affect (a) through (d) above.

The GUC/Litigation Trust Agreement shall be drafted by the Committee's Professionals and shall be in form and substance acceptable to the Committee and reasonably acceptable to the Debtors.  Any provisions of the GUC/Litigation Trust Agreement relating to (a) through (e) above shall be in form and substance reasonably acceptable to the Ad Hoc Group (or its attorneys).

The GUC/Litigation Trust Trustee and the GUC/Litigation Trust Oversight Board shall owe fiduciary duties to all holders of Class A and Class B Interests in the GUC/Litigation Trust.

The Debtors or the Reorganized Debtors, as the case may be, will cooperate with the Committee and its Professionals in relation to the GUC/Litigation

| | |
|---|---|
| | Trust's prosecution of Avoidance Actions and claims objections, on the terms set forth on **Annex 1** hereto. To that end, and consistent with Annex 1, on the Effective Date, the GUC/Litigation Trust and Reorganized SunEdison will enter into an agreement (the "**Transition Services Agreement**") pursuant to which Reorganized SunEdison will provide services, which may include personnel, systems, and access to books and records, to the GUC/Litigation Trust in connection with the administration of the GUC/Litigation Trust Assets, including claims administration and the prosecution of the GUC/Litigation Trust Causes of Action. The Transition Services Agreement shall include customary indemnification and limitations of liability to Reorganized SunEdison and its representatives that provide services to the GUC/Litigation Trust, provided, however, that the indemnification shall exclude any liability of the GUC/Litigation Trust for any claims relating to the gross negligence or willful misconduct of Reorganized SunEdison. |
| **GUC/Litigation Trust Assets** | On the date the Amended Plan becomes effective (the "**Effective Date**"), the Debtors shall transfer to the GUC/Litigation trust (the "**GUC/Litigation Trust**") for the benefit the Holders of General Unsecured Claims (except as set forth herein under the heading "Avoidance Action Proceeds"), certain assets free and clear of any liens, claims or interests, including:<br><br>• $7.5 million in Cash on account of the initial funding for the GUC/Litigation Trust as contemplated by the Committee Settlement annexed to the Original DIP Facility Order and the Replacement DIP Facility Order (the "**GUC/Litigation Trust Initial Funding**");<br><br>• all proceeds realized from the settlement on account of proceeds allocable from the D&O Insurance to certain estate Causes of Action against the Debtors' current or former directors or officers, which are expected to be $32 million in Cash (the "**D&O Insurance Proceeds**");<br><br>• $18.0 million in Cash on account of the settlement of certain Avoidance Actions in connection with the YieldCo Settlement Motion (the "**YieldCo Avoidance Allocation**");<br><br>• At least $5.0 million in Cash on account of Professional Fee Reductions (as explained below in the section entitled "Voluntary Professional Fee Reductions") (the "**Voluntary Professional Fee Reduction Amount**"), as well as all additional Voluntary Professional Fee Reductions that exceed the Voluntary Professional Fee Reduction Amount; and<br><br>• all Causes of Action, including all estate Avoidance Actions (other than Avoidance Actions against the Yieldcos, the Prepetition First Lien Lenders, and the Second Lien Lenders (solely in their capacity as lenders) and Noteholders), to the extent such Causes of Action are not released, or settled with the consent of the Committee, pursuant to Article 11.5 of the Plan or released or settled pursuant to an order of the Bankruptcy Court (collectively, the "**GUC/Litigation Trust Causes of Action**", and together with the GUC/Litigation Trust Initial Funding, the D&O Insurance Proceeds, the YieldCo Avoidance Allocation, and all Voluntary Professional Fee Reductions, the "**GUC/Litigation Trust Assets**"), subject to a sharing mechanism |

| | |
|---|---|
| | with respect to Avoidance Actions set forth in the section below entitled "Avoidance Actions Proceeds". |
| **Avoidance Actions Proceeds** | With respect to any proceeds recovered by the GUC/Litigation Trust (or for the benefit of unsecured creditors) on account of Avoidance Actions, net of fees and expenses expended to prosecute such Avoidance Actions (including fees paid on a contingency arrangement, any expenses of prosecuting the GUC/Litigation Trust Causes of Action or administering the GUC/Litigation Trust, including, without limitation, the costs associated with preparation of the GUC/Litigation Trust Reports, all of which shall be deducted prior to any distribution of Net Avoidance Action Proceeds), other than proceeds from those Avoidance Actions against the YieldCos that are settled in connection with the YieldCo Avoidance Allocation (the "**Net Avoidance Actions Proceeds**"), whether such Net Avoidance Actions Proceeds are recovered pursuant to the successful prosecution or settlement of such Avoidance Actions: <br><br> • (i) The initial $63.0 million of Net Avoidance Action Proceeds recovered shall be distributed on a consolidated basis to Holders of Allowed General Unsecured Claims, other than the Holders of Second Lien Claims, on a *pro rata* basis; and <br><br> • (ii) Any Net Avoidance Actions Proceeds recovered that exceed $63.0 million in the aggregate (the "**Additional Net Avoidance Action Proceeds**") shall be distributed (a) fifty-two percent (52%) on a consolidated basis to Holders of Allowed General Unsecured Claims other than Second Lien Claims (i.e., to holders of Class A Interests in the GUC/Litigation Trust), on a *pro rata* basis and (b) forty-eight percent (48%) to Holders of Second Lien Claims or their representatives (i.e., to holders of the Class B Interests in the GUC/Litigation Trust) on a *pro rata* basis. Holders of Class B interests in the GUC/Litigation Trust (i.e., Holders of Second Lien Loans and Second Lien Senior Notes claims) shall have a "silent" interest in the GUC/Litigation Trust solely to the extent of the Additional Net Avoidance Action Proceeds and the other rights set forth in clauses (b) through (e) of the section above entitled "GUC/Litigation Trust" (i.e., they shall not, among other things, appoint the GUC/Litigation Trust Trustee or the GUC/Litigation Trust Oversight Board). <br><br> The GUC/Litigation Trust Trustee shall provide semi-annual reports (the "**GUC/Litigation Trust Reports**") to all holders of interests in the GUC/Litigation Trust. The GUC/Litigation Trust Reports shall include, among other things, descriptions in reasonable detail of all Net Avoidance Actions Proceeds collected during the relevant quarter and all fees and expenses expended in connection therewith. The Bankruptcy Court shall retain jurisdiction to determine any disputes with respect to the GUC/Litigation Trust (including the Net Avoidance Actions Proceeds), including with respect to the distributions thereof as contemplated by this section. |

| | |
|---|---|
| **Second Lien Claims' Rights Against D&O Insurance Proceeds** | Other than with respect to distributions on account of their Class B Interests in the GUC/Litigation Trust in connection with Net Avoidance Action Proceeds, on the Effective Date, the Second Lien Lenders and Noteholders shall be deemed to have waived all rights to any distribution of the GUC/Litigation Trust Assets. |
| | For the avoidance of doubt, this waiver shall also extend to any and all rights of the Tranche B Roll-Up Lenders, the Second Lien Lenders or the Second Lien Noteholders against the D&O Insurance Proceeds (as defined in the section entitled "GUC/Litigation Trust Assets"); this waiver does not include any waiver of any rights of the Second Lien Lenders and Noteholders with regard to any director and officer insurance proceeds that Second Lien Lenders and Noteholders may receive on account of their direct claims against the Debtors' current and former directors and officers, or any waiver of any rights of the Second Lien Lenders and Noteholders with regard to the Second Lien Litigation. |
| **Tranche B Roll Up Lender Rights With Regard to D&O Insurance Proceeds** | Notwithstanding any terms of the Original DIP Facility Order or the Replacement DIP Facility Order, on the Effective Date, the Tranche B Roll Up Lenders shall be deemed to have agreed to release any liens, claims or interests in all assets transferred to the GUC/Litigation Trust in accordance with this settlement, including the D&O Insurance Proceeds, and such assets shall not secure the Tranche B Roll-Up Loans (as defined in the DIP Credit Agreement). |
| | The D&O Proceeds shall not constitute adequate protection for the benefit of the Existing DIP Lenders, the Replacement DIP Lenders or the Prepetition Secured Parties. |
| **Voluntary Professional Fee Reductions** | Every Entity (collectively, the "**Affected Professionals**") (a) retained in the Chapter 11 Cases by separate Final Order pursuant to sections 327, 363, and 1103 of the Bankruptcy Code or otherwise; (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) or 506(b) of the Bankruptcy Code; or (c) awarded compensation and reimbursement pursuant to the Original DIP Facility Order or the Replacement DIP Facility Order, will be asked to voluntarily reduce the aggregate amount of its Professional Claims earned during the course of the chapter 11 cases in order to assist in the funding of this settlement (the "**Voluntary Professional Fee Reductions**").  It is a condition to the effectiveness of this settlement that the Voluntary Professionals Fee Reductions equal at least $5.0 million. |
| | The Ad Hoc Group will support the Debtors' efforts to obtain Voluntary Professional Fee Reductions from the Affected Professionals. |
| | Prior to June 6, 2017, the Debtors shall establish a schedule (with the consent of the Committee and the Ad Hoc Group, but which schedule shall be kept confidential among the advisors to the Ad Hoc Group, the advisors to the Committee and the members of the Committee) listing each Affected Professional and the amount of its agreed-to Voluntary Professional Fee Reduction, which shall have been agreed to by such Affected Professional as of such date. |
| | In the event an Affected Professional does not agree to a Voluntary Professional Fee Reduction, such Affected Professional's fees and expenses will be subject to review and objection by a fee examiner to be appointed in |

9

| | these cases (the "**Fee Examiner**"), whose fees and expenses will be deducted from the savings realized by the Fee Examiner.  For the avoidance of doubt, the Fee Examiner may only receive compensation from any savings it realizes, and in no event will the Debtors, the Debtors' estates, the Reorganized Debtors, the Second Lien Lenders or Second Lien Noteholders, or any other party incur any fees, costs, or expenses relating to the Fee Examiner or its work.  If, as a result of the Fee Examiner's recommendation, any fees are disallowed or reduced by the Court or fee reductions are agreed to by any Affected Professional per the Fee Examiner's recommendation, then such amounts shall be transferred to the GUC/Litigation Trust for the Holders of General Unsecured Claims.  The Fee Examiner will only be permitted to examine the fees of an Affected Professional who does not agree to a Voluntary Professional Fee Reduction. |
| | In the event the fees and expenses of an Affected Professional that has agreed to a Voluntary Professional Fee Reduction is subject to objection, any requested amounts that are disallowed shall be deemed credited to the Voluntary Reduction so that the Affected Professional will not receive a reduction of the amount payable to it unless the disallowed amount exceeds the Voluntary Professional Fee Reduction agreed to by such Affected Professional. |
| | The Voluntary Professional Fee Reduction Amount shall be funded into the GUC/Litigation Trust on the Effective Date.  The Distribution Agent shall distribute to the GUC/Litigation Trust for the Holders of General Unsecured Claims, the aggregate amount of the Voluntary Professional Fee Reductions. |
| **Committee Professional Fees Subject to Investigation/ Prosecution Cap / BOKF Fees a** | The Investigation/Prosecution Cap described in the Original DIP Facility Order (and the Replacement DIP Facility Order) shall be deemed increased from $175,000 to $2.25 million and the Investigation/Prosecution Cap shall be revised to expressly provide that such cap shall apply to both the investigation and prosecution of claims against the Prepetition Secured Parties.  For the avoidance of doubt, the amount set forth in this paragraph shall be paid by the Debtors' estates and shall not reduce the amounts to be paid into the GUC/Litigation Trust in accordance with this Term Sheet. |
| | The Committee agrees that the first $2 million of cash to be distributed from the GUC/Litigation Trust shall be distributed to BOKF as partial payment of its fees and expenses incurred in connection with these Chapter 11 Cases. |
| | Subject to the other provisions of this Term Sheet, the Committee Professionals reserve any and all rights to seek allowance and payment of any fees and expenses in connection with matters other than (a) fees and expenses subject to the Investigation/Prosecution Cap and (b) other than as already paid, fees and expenses related to GUC/Litigation Trust Causes of Action. |

| | |
|---|---|
| **Dissolution of Committee** | The Amended Plan shall provide that the Committee shall be dissolved on the Effective Date, and the members thereof (solely in their capacities as Committee members) shall be released and discharged from all rights and duties arising from, relating to, the Chapter 11 Cases, as well as exculpated (solely in their capacities as Committee members) from any liability, claims or causes of action in connection with these Chapter 11 Cases; provided, however, that the Committee shall exist and it professionals shall continue to be retained and entitled to reasonable compensation, without further order of the Court, with respect to: (1) the preparation and prosecution of any final fee applications of the Committee's Court approved professionals and (2) all final fee applications filed with the Bankruptcy Court. |
| **Good Faith Attempts to Reduce Costs** | All professionals in the chapter 11 cases agree in good faith to minimize work going forward to reduce costs to estate, to the extent practicable.  All parties agree in good faith to work to confirm the Amended Plan (including the Settlement) as soon as reasonably practicable. |
| **Contribution of 2L Roll-Up Lenders And Contribution of Prepetition 1L Lenders To the Settlement** | Zero (other than (a) the Voluntary Professional Fee Reductions, set forth above, and (b) the agreement regarding D&O Proceeds, as set forth above). |
| **Reduction of TERP/GLBL Claims** | The YieldCos shall withdraw all general unsecured claims against the Debtors, subject to the right of TERP to assert up to one-half of the actual amount the YieldCos ultimately are required to pay (and therefore have the right to assert as a General Unsecured Claim) in connection with the Preserved DE Shaw Unsecured Claim (as defined in the YieldCo Settlement Motion), capped at one-half of $231 million, plus fees and interest. |

11

Agreed and Accepted:

WEIL, GOTSHAL & MANGES LLP

By: _____

Matthew S. Barr
David J. Lender
Jacqueline Marcus

767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Official Committee of Unsecured
Creditors*

12

KOBRE & KIM LLP

By:

Michael S. Kim
Jeremy C. Hollembeak
Benjamin J.A. Sauter
Joseph W. Slaughter

800 Third Avenue
New York, New York 10022
Telephone (212) 488-1200

*Special Counsel to Official Committee of Unsecured
Creditors*

13

WHITE & CASE LLP

By: _____

J. Christopher Shore
Harrison L. Denman
Michele J. Meises
Colin T. West
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

Thomas E Lauria
WHITE & CASE LLP
Southeast Financial Center, Suite 4900
200 South Biscayne Blvd. Miami, FL 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744

*Attorneys for BOKF, N.A.,*
*as Convertible Notes Trustee*

FOLEY & LARDNER LLP

By: _____

Harold L. Kaplan
321 North Clark St., Suite 2800
Chicago, IL  60654
Telephone: (312) 832-4393
Facsimile: (312) 832-4700

*Attorneys for BOKF, N.A.,*
*as Convertible Notes Trustee*

14

AKIN GUMP STRAUSS HAUER & FELD LLP

By: _____

Daniel H. Golden
Erik Preis
Deborah J. Newman
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
dgolden@akingump.com
apreis@akingump.com
djnewman@akingump.com

*Counsel to the Tranche B Roll-Up Lenders /*
*Steering Committee of Prepetition Second Lien*
*Lenders and Noteholders*

15

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____

Jay M. Goffman
J. Eric Ivester
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

-and-

James J. Mazza, Jr. (admitted *pro hac vice*)
Louis S. Chiappetta (admitted *pro hac vice*)
155 N. Wacker Dr.
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411

-and-

Anthony W. Clark (admitted *pro hac vice*)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001

*Counsel to the Debtors and Debtors-in-Possession*

16

## Annex 1

**Cooperation Terms**

Prior to the Effective Date, the Debtors shall use commercially reasonable efforts to cooperate with the Creditors' Committee in connection with due diligence regarding the potential prosecution of GUC/Litigation Trust Causes of Action.  As used herein, commercially reasonable efforts by the Debtors will include efforts by the Debtors and their advisors to:  1) continue to analyze potential ordinary course defenses for those vendors receiving payments within the 90 day period leading up to the filing date including analyzing historical accounts payable trends and payments made to material vendors during the one year period prior to the filing date; 2) continue work to identify additional potential avoidance actions; and 3) prepare a "datapack" with respect to this data and other data related to preferences that can be transitioned to the Committee / Liquidating Trust professionals. The fees and expenses incurred by the Committee's professionals from June 1, 2017 through the Plan Effective Date  in connection with due diligence regarding the potential prosecution of GUC/Litigation Trust Causes of Action shall not exceed $350,000.


Prior to the Effective Date, the Debtors shall use commercially reasonable efforts to prosecute customary objections to claims, including, without limitation, objections to late-filed claims, duplicative claims, amended or superseded claims or claims filed in the wrong case (the "Claims Reconciliation Process").  On the Effective Date, the GUC/Litigation Trust shall assume responsibility for the Claims Reconciliation Process, including with respect to the initiation or continuance of Claims Objection prosecution.  Copies of the Debtors' books and records that relate to claims objections shall be made available to the GUC/Litigation Trust promptly following the Effective Date.

Following the Effective Date, the Reorganized Debtors shall use commercially reasonable efforts to cooperate with the GUC/Litigation Trust in connection with due diligence and other reasonable assistance regarding the prosecution of Claims Reconciliation Process and the GUC/Litigation Trust Causes of Action as may be reasonably requested by the GUC/Litigation Trust, including with respect to providing documents, evidence, and information.  Following the Effective Date, if the actual, reasonable, and documented out-of-pocket costs and expenses of the Reorganized Debtors  (including fees and expenses of outside third-parties and/or firms; but not including charges for salaried employees of the Reorganized Debtors) exceed $250,000 in the aggregate (the "Excess Expenses"), the GUC/Litigation Trust shall promptly reimburse the Reorganized Debtors for the Excess Expenses.  The parties shall agree in writing to the scope of work and expected charges regarding requests by the GUC/Litigation Trust that are expected to result in the incurrence of out-of-pocket costs prior to the Reorganized Debtors' performance of such tasks or incurrence of such costs and expenses.  The GUC Litigation Trust Trustee and/or the GUC/Litigation Trust Oversight Board shall raise any disputes relating to a reimbursement request within thirty (30) days of receipt thereof, and the Bankruptcy Court shall resolve any such disputes that are not resolved among the parties.

The GUC/Litigation Trust Trustee will seek to preserve and protect all applicable privileges and work-product relating to the Claims Reconciliation Process and the GUC/Litigation Trust Causes of Action, including but not limited to any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral).  The GUC/Litigation

18

Trust Trustee's receipt of such information shall not waive any privileges and all such privileges are preserved.  Material that is not directly related to the Claims Reconciliation Process or the GUC/Litigation Trust Causes of Action will be redacted and/or not disclosed to the GUC/Litigation Trust.

**EXHIBIT 6.5**

**REINSTATED SECOND LIEN CLAIM MODIFICATION TERMS**

i.    Borrower: [Reorganized SunEdison].

ii.    Guarantors:  To be determined by the Supporting Second Lien Parties, but not less than those parties that currently guarantee the Replacement DIP Facility and/or the Second Lien Loans/Notes, subject to the exceptions provided for under the Replacement DIP Facility.

iii.    Lenders: As set forth in the Plan.

iv.    Principal: No more than $150 million of senior secured first lien term loans (the "Term Loans").

v.    Maturity: Three (3) years from the Effective Date.

vi.    Interest Rate: L + 5.0% per annum, payable-in-kind, quarterly in arrears.

vii.    Mandatory Prepayments/Cash Sweep: All Unrestricted Cash above $[x] million in the aggregate will be automatically swept on a quarterly basis and applied first to all accrued and unpaid interest as of such date and thereafter as a mandatory prepayment of the then outstanding principal amount of the Term Loans.

viii.    Voluntary Prepayments:  Permitted in whole or in part without premium or penalty, subject to customary notice requirements and LIBOR breakage costs.

ix.    Scheduled Amortization:  None.

x.    Conversion: On the third (3rd) anniversary of the Effective Date (the "Conversion Date"), all outstanding Term Loans that are not paid in cash in immediately available funds shall automatically convert into outstanding shares (the "Converted Shares") of Reorganized SUNE common stock (the "Common Stock").  On the Conversion Date, if there have been no prepayments of the principal of the Term Loans and all interest thereon has been paid-in-kind and remains outstanding as additional Term Loans as of the Conversion Date, the Term Loans and all accrued but unpaid interest thereon shall convert into a number of Converted Shares such that, after giving effect to such conversion, the Converted Shares shall equal 50% of the total outstanding shares of Common Stock on a fully diluted basis.  If any principal of the Term Loans has been prepaid, the number of Converted Shares issued upon conversion shall be reduced proportionately to the extent of any such prepayments.

xi.    Voting: Except for provisions customarily requiring approval by each affected Lender, Lenders holding more than 50% of the aggregate outstanding principal amount of the Term Loans.

xii.    Collateral: First priority perfected liens on and security interests in substantially all assets of the Borrower and the Guarantors, subject to exceptions TBD by Steering Group.

xiii.    Covenants:  The documentation governing the Term Loans shall contain affirmative and negative covenants (and events of default) for financings of this type and others to be mutually agreed among the Borrower and the Steering Group

xiv.    Assignments:  Assignments shall not be subject to the consent of Reorganized SUNE.  With respect to any assignment of any portion of the Term Loans, such assignment shall be subject to minimum threshold of $[1,000,000].

xv.    Governing Law:  New York.

## EXHIBIT 6.15-1

**CERTIFICATE OF INCORPORATION**

**SECOND AMENDED AND RESTATED
CERTIFICATE OF INCORPORATION
OF
SUNEDISON, INC.**

THIS SECOND AMENDED AND RESTATED CERTIFICATE OF INCORPORATION of SunEdison, Inc., a corporation duly organized and existing under the laws of the State of Delaware (the "***Corporation***"), hereby certifies as follows:

1.      The name of the Corporation is SunEdison, Inc.  The Corporation filed its original Certificate of Incorporation with the Delaware Secretary of State on October 1, 1984 under the name of "Dynamit Nobel Silicon Holdings, Inc."

2.      This Second Amended and Restated Certificate of Incorporation, which amends and restates the Amended Certificate of Incorporation of the Corporation, effective May 30, 2013, as thereafter amended, was duly adopted, without the need for approval by the Board of Directors or the stockholders of the Corporation, in accordance with §§ 242, 245 and 303 of the General Corporation Law of the State of Delaware (the "***DGCL***")  and in accordance with that certain [*First Amended Joint Plan of Reorganization on SunEdison, Inc. and its Debtor Affiliates*] (the "***Plan***") approved by order of the United States Bankruptcy Court for the District of Southern New York (the "***Court***") in *In re: SUNEDISON, et al*., under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101-1330), as amended (the "***Bankruptcy Code***").

3.      The Certificate of Incorporation of the Corporation (this "***Certificate of Incorporation***") is hereby amended and restated in its entirety to read as follows:

ARTICLE I
NAME

The name of the corporation is SunEdison, Inc.

ARTICLE II
PURPOSE

The purpose for which the Corporation is organized is to engage in any lawful act or activity for which corporations may be organized under the DGCL.

ARTICLE III
REGISTERED AGENT

The street address of the registered office of the Corporation in the State of Delaware is [2711 Centerville Road, Suite 400 in the City of Wilmington, County of New Castle, postal code 19808], and the name of the Corporation's initial registered agent at such address is [Corporation Service Company].

ARTICLE IV
CAPITALIZATION

Section 4.1    Authorized Capital Stock.  The total number of shares of capital stock that the Corporation is authorized to issue is [●] shares, divided into two classes consisting of [●] shares of common stock, par value $0.01 per share ("***Common Stock***").

Notwithstanding anything herein to the contrary, the Corporation shall not issue non-voting equity securities of any class, series or other designation to the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code; *provided*, *however*, that the foregoing restriction (i) shall have no further force and effect beyond that required under Section 1123(a)(6) of the Bankruptcy Code, (ii) shall only have such force and effect to the extent and for so long as such Section 1123(a)(6) is in effect and applies to the Corporation and (iii) may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

Section 4.2    Common Stock.

(a)    Except as expressly set forth otherwise herein, the Common Stock shall have (i) all rights and privileges typically associated with such securities as set forth in the DGCL, including, without limitation, the right to receive dividends, the right to vote on all matters presented to the holders of Common Stock for a vote and the rights upon a liquidation and (ii) the additional rights and privileges set hereinafter set forth.

(b)    Dividends may be paid on the Common Stock, as and when declared by the Board, out of the assets of the Corporation legally available for the payment of such dividends. If and when dividends on Common Stock are declared payable from time to time by the Board, whether payable in cash, in property or in shares of capital stock of the Corporation, the holders of Common Stock shall be entitled to share equally, pro rata, based on the number of shares of Common Stock held by each such holder, in such dividends.

(c)    Each holder of shares of Common Stock, as such, shall be entitled to one vote for each share of Common Stock held of record by such holder on all matters on which stockholders generally are entitled to vote.

Section 4.3    Certain Restrictions on Transfer.

(a)    Unless otherwise expressly approved by the Board (and in the case of clause "(ii)," approved by at least [70]% of the Board), no shares of Common Stock shall be Transferred if: (i) such Transfer would, if consummated, result in any violation of the Securities Act or any state securities or "blue sky" laws or regulations, or any other applicable federal or state laws or order of any Governmental Authority having jurisdiction over the Corporation, or (ii) such Transfer would, if consummated (after taking into account any other proposed Transfers for which a notice thereof has been previously delivered to the Board, but not yet consummated), result in any class of equity securities of the Corporation being held of record by more than 200 Persons or could otherwise, as the Board may from time to time reasonably determine, require the Corporation to register its Common Stock or any other equity securities of the Corporation under the Exchange Act (as a result of the number of stockholders or otherwise), unless at the

2

time of such Transfer the Corporation is already subject to the reporting obligations under Sections 13 or 15(d) of the Exchange Act.

(b)    A transferee of shares of Common Stock must satisfy the requirements of, and represent that the Transfer was made in accordance with, the provisions of this Certificate of Incorporation and the By-laws of the Corporation. Any attempted or purported Transfer of all or a portion of the shares of Common Stock by any Person in violation of this Section 4.3(b) shall be null and void *ab initio* and of no force or effect whatsoever; the purported transferee will not be treated as an owner of shares of Common Stock for any purposes, and the Company will not register such Transfer of shares of Common Stock.

ARTICLE V
DIRECTORS

Section 5.1    Generally.  The annual meeting of the stockholders for the election of the directors of the Corporation (the "***Directors***") and for the transaction of such other business as may properly come before the meeting shall be held at such date, time and place, if any, as shall be determined solely by the resolution of the Board in its sole and absolute discretion. The business and affairs of the Corporation shall be managed by, or under the direction of, the Board. Subject to the following paragraph, the stockholders shall have the right to elect a number of Directors of the Board (as set forth in the By-Laws) to be designated as Directors, in accordance with the By-Laws. The number of Directors may be increased or decreased from time to time as provided in the By-Laws. With respect to each matter brought before the Board (or any committee thereof) for vote, each Director shall be entitled to cast one vote.

Section 5.2    Number, Class and Term.  The number of Directors shall be 3.  No decrease in the number of directors shall shorten the term of any incumbent director.  There shall be a Class I, Class II and Class III Director and the initial Directors of each class shall be as set forth on Schedule 1 attached hereto.  Each Director shall serve for a term ending on the date of the third annual meeting following the annual meeting at which such director was elected; provided, that each Director initially appointed to Class I shall serve for an initial term expiring at the Corporation's first annual meeting of stockholders following the effectiveness of this provision; each director initially appointed to Class II shall serve for an initial term expiring at the corporation's second annual meeting of stockholders following the effectiveness of this provision; and each director initially appointed to Class III shall serve for an initial term expiring at the Corporation's third annual meeting of stockholders following the effectiveness of this provision; provided further, that the term of each Director shall continue until the election and qualification of a successor and be subject to such Director's earlier death, resignation or removal.

Section 5.3    Election.  Except with respect to vacancies, as provided in the By-Laws of the Corporation, directors shall be elected by a plurality of the votes present in person or represented by proxy at the annual meetings of stockholders for which the election of such Director shall have been designated in accordance with Section 5.2 above, and each director so elected shall hold office until the next election of the class for which such Director shall have been chosen and until his or her successor is duly elected and qualified or until his or her earlier death, resignation, disqualification or removal.

3

Section 5.4    <u>Vacancies</u>.  Vacancies on the Board by reason of death, resignation, retirement, disqualification, removal from office, or otherwise, and newly created directorships resulting from any increase in the authorized number of Directors shall be solely filled by a majority of the Directors then in office, although less than a quorum, or by a sole remaining Director and shall not be filled by the stockholders.  A Director elected to fill a vacancy or a newly created directorship shall hold office until the next election of the class for which such Director shall have been chosen, subject to the election and qualification of a successor and to such Director's earlier death, resignation or removal.

Section 5.5    <u>No Written Ballot Required</u>.  Unless and except to the extent that the By-Laws shall so require, the election of directors need not be by written ballot.

Section 5.6    <u>Cumulative Voting</u>.  There shall not be cumulative voting by stockholders in the election of Directors.

ARTICLE VI
LIMITATION OF DIRECTOR LIABILITY;
INDEMNIFICATION AND ADVANCEMENT OF EXPENSES

Section 6.1    <u>Limitation of Director Liability</u>.  To the fullest extent that the DGCL or any other law of the State of Delaware as the same exists or is hereafter amended permits the limitation or elimination of the liability of directors, no person who is or was a director of the Corporation shall be personally liable to the Corporation or any of its stockholders for monetary damages for breach of fiduciary duty as a director.  Any repeal or amendment of this <u>Section 6.1</u> by the stockholders of the Corporation or by changes in law, or the adoption of any other provision of this Certificate of Incorporation inconsistent with this <u>Section 6.1</u> will, unless otherwise required by law, be prospective only (except to the extent such amendment or change in law permits the Corporation to further limit or eliminate the liability of directors) and shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or amendment or adoption of such inconsistent provision with respect to acts or omissions occurring prior to such repeal or amendment or adoption of such inconsistent provision.

Section 6.2    <u>Indemnification and Advancement of Expenses</u>.

(a)    To the fullest extent permitted by applicable law, as the same exists or may hereafter be amended, the Corporation shall indemnify and hold harmless each person who is or was made a party or is threatened to be made a party to or is otherwise involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (a "***proceeding***") by reason of the fact that he or she is or was a director or officer of the Corporation or, while a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust, other enterprise or nonprofit entity, including service with respect to an employee benefit plan (an "***indemnitee***"), whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent, or in any other capacity while serving as a director, officer, employee or agent, against all expenses, liability and loss (including, without limitation, attorneys' fees, judgments, fines, ERISA excise

4

taxes and penalties and amounts paid in settlement) reasonably incurred or suffered by such indemnitee in connection with such proceeding.  The right to indemnification conferred by this Section 6.2 shall include the right to be paid by the Corporation the expenses incurred in defending or otherwise participating in any such proceeding in advance of its final disposition; provided, however, that, if the DGCL requires, an advancement of expenses shall be made only upon delivery to the Corporation of an undertaking, by or on behalf of the indemnitee, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal that the indemnitee is not entitled to be indemnified for the expenses under this Section 6.2 or otherwise.  The rights to indemnification and advancement of expenses conferred by this Section 6.2 shall be contract rights and such rights shall continue as to an indemnitee who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators.    Notwithstanding the foregoing provisions of this Section 6.2, except for proceedings to enforce rights to indemnification and advancement of expenses, the Corporation shall indemnify and advance expenses to an indemnitee in connection with a proceeding (or part thereof) initiated by such indemnitee only if such proceeding (or part thereof) was authorized by the Board.

(b)    The Corporation hereby acknowledges that certain Directors (the "**Specified Persons**") may have rights to indemnification and advancement of expenses provided by a stockholder of the Corporation or its affiliates (directly or through insurance obtained by any such entity) (collectively, the "**Stockholder Indemnitors**").  The Corporation hereby agrees and acknowledges that (i) it is the indemnitor of first resort with respect to the Specified Persons, (ii) it shall be required to advance the full amount of expenses incurred by the Specified Persons, as required by the terms of this Certificate of Incorporation, without regard to any rights the Specified Persons may have against the Stockholder Indemnitors and (iii) it irrevocably waives, relinquishes and releases the Stockholder Indemnitors from any and all claims against the Stockholder Indemnitors for contribution, subrogation or any other recovery of any kind in respect thereof.    The Corporation further agrees that no advancement or payment by the Stockholder Indemnitors on behalf of the Corporation with respect to any claim for which the Specified Persons have sought indemnification from the Corporation shall affect the foregoing and the Stockholder Indemnitors shall have a right of contribution and/or be subrogated to the extent of such advancement or payment to all of the rights of recovery of the Specified Persons against the Corporation. These rights shall be a contract right.

(c)    The rights to indemnification and advancement of expenses conferred on any indemnitee by this Section 6.2 shall not be exclusive of any other rights that any indemnitee may have or hereafter acquire under law, this Certificate of Incorporation, the By-Laws, an agreement, vote of stockholders or disinterested directors, or otherwise.

(d)    Any repeal or amendment of this Section 6.2 by the stockholders of the Corporation or by changes in law, or the adoption of any other provision of this Certificate of Incorporation inconsistent with this Section 6.2, shall, unless otherwise required by law, be prospective only (except to the extent such amendment or change in law permits the Corporation to provide broader indemnification rights on a retroactive basis than permitted prior thereto), and shall not in any way diminish or adversely affect any right or protection existing at the time of such repeal or amendment or adoption of such inconsistent provision in respect of any act or omission occurring prior to such repeal or amendment or adoption of such inconsistent provision.

(e)     This <u>Section 6.2</u> shall not limit the right of the Corporation, to the extent and in the manner authorized or permitted by law, to indemnify and to advance expenses to persons other than indemnitees.

## ARTICLE VII
## BY-LAWS

The By-Laws of the Corporation may be adopted, amended, altered or repealed only with the consent of the stockholders holding two-thirds of Common Stock.

## ARTICLE VIII
## AMENDMENT OF CERTIFICATE OF INCORPORATION

The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation in the manner now or hereafter prescribed by this Certificate of Incorporation and the DGCL.  The Certificate of Incorporation of the Corporation may be amended, altered or repealed only with the consent of the stockholders holding two-thirds of Common Stock.  Except as set forth in <u>ARTICLE VII</u>, all rights, preferences and privileges herein conferred upon stockholders, directors or any other persons by and pursuant to this Certificate of Incorporation in its present form or as hereafter amended are granted subject to the right reserved in this Article.

## ARTICLE IX
## CORPORATE OPPORTUNITIES

9.1     Each stockholder (who is not also an employee of the Corporation or any of its subsidiaries), each member of the Board or any committee thereof (other than an employee of the Corporation or any of its subsidiaries), each member of any board of directors, board of managers or similar governing body of any subsidiary of the Corporation (other than an employee of the Corporation or any of its subsidiaries), and any one or more of the respective Affiliates, managers, directors, principals, officers, employees and other representatives of each such stockholder, member of the Board (or committee thereof) or member of any board of directors, board of managers or similar governing body of any subsidiary of the Corporation who is not (in any such case) also an employee of the Corporation or any of its subsidiaries (the foregoing Persons being referred to, collectively, as "***Identified Persons***" and, each individually, as an "***Identified Person***") may now engage, may continue to engage, or may, in the future, decide to engage, in the same or similar activities or lines of business as those in which the Corporation or any of its Affiliates, directly or indirectly, now engage or may engage or other business activities that overlap with, are complementary to, or compete with those in which the Corporation or any of its Affiliates, directly or indirectly, now engage or may engage (any such activity or line of business, an "***Opportunity***")).  No Identified Person shall have any duty to refrain, directly or indirectly, from (i) engaging in any Opportunity or (ii) otherwise competing with the Corporation or any of its Affiliates.  No Identified Person shall have any duty or obligation to refer or offer to the Corporation or any of its Affiliates any Opportunity, and the Corporation hereby renounces any interest or expectancy of the Corporation in, or in being offered, an opportunity to participate in any Opportunity which may be a corporate (or analogous) or business opportunity for the Corporation or any of its Affiliates.

9.2     In the event that any Identified Person acquires knowledge of a potential transaction or other corporate (or analogous) or business opportunity which may be an Opportunity for the Corporation or any of its Affiliates, such Identified Person shall have no duty to communicate or offer such Opportunity to the Corporation or any of its Affiliates and shall not be liable to the Corporation or the stockholders for breach of any purported fiduciary duty by reason of the fact that such Identified Person pursues or acquires such Opportunity for itself, or offers or directs such Opportunity to another Person (including any Affiliate of such Identified Person). Notwithstanding Section 9.1 and this Section 9.2, the Corporation does not renounce any intent or expectancy it may have in any Opportunity that is offered to an officer or Director of the Corporation (whether or not such individual is also an officer or director of a stockholder) if such Opportunity is expressly offered to such Person in his or her capacity as an officer or Director of the Corporation or knowledge of such Opportunity is acquired by such Person solely as a result of such Person's position as an officer or Director of the Corporation.

9.3     The Identified Persons may now own, may continue to own, and from time to time may acquire and own, investments in one or more other entities (such entities, collectively, "*Related Companies*") that are direct competitors of, or that otherwise may have interests that do or could conflict with those of, the Corporation, any of the stockholders or any of their respective Affiliates, and (a) the enjoyment, exercise and enforcement of the rights, interests, privileges, powers and benefits granted or available to the Identified Persons under this Certificate of Incorporation and/or any other agreement with the Company, shall not be in any manner reduced, diminished, affected or impaired, and the obligations of the Identified Persons under this Agreement shall not be in any manner augmented or increased, by reason of any act, circumstance, occurrence or event arising from or in any respect relating to (i) the ownership by an Identified Person of any interest in any Related Company, (ii) the affiliation of any Related Company with an Identified Person or (iii) any action taken or omitted by an Identified Person in respect of any Related Company, (b) no Identified Person shall, by reason of such ownership, affiliation or action, become subject to any fiduciary duty to the Corporation, any of the stockholders or any of their respective Affiliates, (c) none of the duties imposed on an Identified Person, whether by contract or law, do or shall limit or impair the right of any Identified Person lawfully to compete with the Corporation, any of the stockholders or any of their respective Affiliates and (d) the Identified Persons are not and shall not be obligated to disclose to the Corporation, any of the stockholders or any of their respective Affiliates any information related to their respective businesses or opportunities, including acquisition opportunities, or to refrain from or in any respect to be restricted in competing against the Corporation, any of the stockholders or any of their respective Affiliates in any such business or as to any such opportunities.

ARTICLE X
CERTAIN DEFINITIONS

As used in this Certificate of Incorporation, the following terms shall have the following meanings:

(a)     "*Affiliate*" means, with respect to any Person, any Person who, directly or indirectly, controls, is controlled by or is under common control with that Person, and the term "control" (including the terms "controlled", "controlled by" and

7

"under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by contract (including proxy) or otherwise; provided, however, that for the avoidance of doubt no stockholder shall be deemed an affiliate of any other stockholder solely on account of ownership of securities of the Corporation.

(b)     "***Exchange Act***" means the Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

(c)     "***Governmental Authority***" means any nation or government, any state or other political subdivision thereof, any entity, authority or body exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government, including any government authority, agency, department, board, body, commission or instrumentality of the U.S. or any other nation, or any state or other political subdivision thereof, any court, tribunal or arbitrator and any self-regulatory organization.

(d)     "***Person***" means an individual, partnership, corporation, unincorporated organization, joint stock company, limited liability company, partnership, association, trust, joint venture or any other entity, or a governmental agency or political subdivision thereof

(e)     "***Securities Act***" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

(f)     "***Transfer***" means, when used as a verb, to sell, transfer, assign, convey or otherwise dispose, and when used as a noun, any direct or indirect sale, transfer, assignment, conveyance or other disposition, including by merger, operation of law, bequest or pursuant to any domestic relations order, whether voluntarily or involuntarily; provided, that (i) no Transfer of shares of Common Stock or other securities shall be deemed to have occurred as a result of the entry into, modification of or existence of any Qualified Pledge until such time as the pledgee commences any action to foreclose upon such shares of Common Stock or other securities, or any shares of Common Stock or other securities are delivered upon settlement or termination of such Qualified Pledge (whichever occurs first), (ii) with respect to any stockholder that is a widely held "investment company" as defined in the Investment Company Act of 1940, as amended, or any publicly traded company whose securities are registered under the Exchange Act, a sale, transfer, gift, hypothecation, pledge, assignment, devise or other disposition of ownership interests in such investment company or publicly traded company shall not be deemed a Transfer; and (iii) with respect to any stockholder that is a private equity fund, hedge fund or similar vehicle, any Transfer of limited partnership or other similar non-controlling interests in any entity which is a pooled investment vehicle holding other material investments and which is an equityholder (directly or indirectly) of a stockholder, or the change in control of

8

any general partner, manager or similar person of such entity, will not be deemed to be a Transfer for purposes hereof.

(g)     "***Qualified Pledge***" means a *bona fide* pledge of Common Stock in connection with a secured borrowing transaction, the pledgee with respect to which is a financial institution in the business of engaging in secured lending and similar transactions which has entered into such transaction in the ordinary course of such business.

[Signature page follows]

9

IN WITNESS WHEREOF, the Corporation has caused this Second Amended and Restated Certificate of Incorporation, which amends and restates the Amended Certificate of Incorporation of the Corporation, to be made, executed and acknowledged by its duly authorized officer this [_] day of [_], 2017, as directed by and provided for by that certain confirmation order of the United States Bankruptcy Court for the District of Southern New York entered [____] approving the Plan.

SUNEDISON, INC.

_____

Name:
Title:

## <u>Schedule 1</u>

### Initial Directors

Class 1 Director: [____]

Class 2 Director: [____]

Class 3 Director: [____]

## EXHIBIT 6.15-2

### BYLAWS

SECOND AMENDED AND RESTATED BY-LAWS

OF

SUNEDISON, INC.,

a Delaware corporation

(the "***Corporation***")

(Adopted as of [_____], 2017)

## SECOND AMENDED AND RESTATED BY-LAWS

### OF

### SUNEDISON, INC.

## ARTICLE I.
## OFFICES

**Section 1.1.    Registered Office**.  The registered office of the Corporation within the State of Delaware shall be located at either (a) the principal place of business of the Corporation in the State of Delaware or (b) the office of the corporation or individual acting as the Corporation's registered agent in Delaware.

**Section 1.2.    Additional Offices**.  The Corporation may, in addition to its registered office in the State of Delaware, have such other offices and places of business, both within and outside the State of Delaware, as the Board of Directors of the Corporation (the "***Board***") may from time to time determine or as the business and affairs of the Corporation may require.

## ARTICLE II.
## STOCKHOLDERS MEETINGS

**Section 2.1.    Annual Meetings**.  Unless directors are elected by written consent in lieu of an annual meeting as permitted by applicable law or an annual meeting is otherwise not required by applicable law, an annual meeting of stockholders shall be held at such place and time and on such date as shall be determined by the Board and stated in the notice of the meeting, provided that the Board may in its sole discretion determine that the meeting shall not be held at any place, but may instead be held solely by means of remote communication pursuant to Section 9.5(a).  At each annual meeting, subject to the terms of the Stockholder Agreement, the stockholders shall elect directors of the Corporation then up for election and may transact any other business as may properly be brought before the meeting.  Stockholders may, unless the Corporation's Certificate of Incorporation, as the same may be amended or restated from time to time (the "***Certificate of Incorporation***"), provides otherwise, act by written consent to elect directors; provided, however, that if such consent is less than unanimous, such action by written consent may be in lieu of holding an annual meeting only if all of the directorships to which directors could be elected at an annual meeting held at the effective time of such action are vacant and are filled by such action.

**Section 2.2.    Special Meetings**.    Except as otherwise required by applicable law or provided in the Certificate of Incorporation, special meetings of stockholders, for any purpose or purposes, may be called only by the Chairman of the Board or the President, by the Board, or by the Secretary at the request in writing of stockholders holding shares representing at least 25% of the voting power of the outstanding shares entitled to vote on the matter for which such meeting is to be called.  The Secretary shall call such a meeting upon receiving such a request.  Special meetings of stockholders shall be held at such place and time and on such date as shall be determined by the Board and stated in the Corporation's notice of the meeting, provided that the Board may in its sole discretion determine that the meeting shall not be held at any place, but may instead be held solely by means of remote communication pursuant to Section 9.5(a).

Section 2.3.    **Notices**.    Notice of each stockholders meeting stating the place, if any, date and time of the meeting, the means of remote communication, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such meeting, and the record date for determining the stockholders entitled to vote at the meeting if such date is different from the record date for determining stockholders entitled to notice of the meeting shall be given in the manner permitted by Section 9.3 to each stockholder entitled to vote thereat as of the record date for determining the stockholders entitled to notice of the meeting.  Such notice shall be given by the Corporation not less than 10 nor more than 60 days before the date of the meeting.  If said notice is for a stockholders meeting other than an annual meeting, it shall in addition state the purpose or purposes for which the meeting is called, and the business transacted at such meeting shall be limited to the matters so stated in the Corporation's notice of meeting (or any supplement thereto).

Section 2.4.    **Quorum**.    Except as otherwise provided by applicable law, the Certificate of Incorporation or these By-Laws, the presence, in person or by proxy, at a stockholders meeting of the holders of shares of outstanding capital stock of the Corporation representing a majority of the voting power of all outstanding shares of capital stock of the Corporation entitled to vote at such meeting shall constitute a quorum for the transaction of business at such meeting, except that when specified business is to be voted on by a class or series of stock voting as a class, the holders of shares representing a majority of the voting power of the outstanding shares of such class or series shall constitute a quorum of such class or series for the transaction of such business.  If a quorum shall not be present at any meeting of the stockholders, the chairman of the meeting or the stockholders entitled to vote thereat so present, by a majority in voting power thereof, may adjourn the meeting from time to time in the manner provided in Section 2.6 until a quorum shall attend.  The stockholders present at a duly convened meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough stockholders to leave less than a quorum.  Shares of its own stock belonging to the Corporation or to another corporation, if a majority of the voting power of the shares entitled to vote in the election of directors of such other corporation is held, directly or indirectly, by the Corporation, shall neither be entitled to vote nor be counted for quorum purposes; provided, however, that the foregoing shall not limit the right of the Corporation or any such other corporation to vote shares held by it in a fiduciary capacity.

Section 2.5.    **Voting of Shares**.

(a)    Voting Lists.    The Secretary shall prepare, or shall cause the officer or agent who has charge of the stock ledger of the Corporation to prepare, at least 10 days before each meeting of stockholders, a complete list of the stockholders of record entitled to vote at the meeting (provided, however, if the record date for determining the stockholders entitled to vote is less than 10 days before the meeting date, the list shall reflect the stockholders entitled to vote as of the tenth day before the meeting date), arranged in alphabetical order for each class of stock and showing the address and the number of shares registered in the name of each stockholder. Nothing contained in this Section 2.5(a) shall require the Corporation to include electronic mail addresses or other electronic contact information on such list.  Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours for a period of at least 10 days prior to the meeting:  (i) on a reasonably accessible electronic network, provided that the information required to gain access to such list is provided

2

with the notice of the meeting, or (ii) during ordinary business hours, at the principal place of business of the Corporation.  If the Corporation determines to make the list available on an electronic network, the Corporation may take reasonable steps to ensure that such information is available only to stockholders of the Corporation.  If the meeting is to be held at a place, then the list of stockholders entitled to vote at the meeting shall be produced and kept at the time and place of the meeting during the whole time thereof, and may be examined by any stockholder who is present.   If a meeting of stockholders is to be held solely by means of remote communication as permitted by Section 9.5(a), then such list shall be open to the examination of any stockholder during the whole time of the meeting on a reasonably accessible electronic network, and the information required to access such list shall be provided with the notice of meeting.  The stock ledger shall be the only evidence as to who are the stockholders entitled to examine the list required by this Section 2.5(a) or to vote in person or by proxy at any meeting of stockholders.

(b)     Manner of Voting.    At any stockholders meeting, every stockholder entitled to vote may vote in person or by proxy.  If authorized by the Board, the voting by stockholders or proxyholders at any meeting conducted by remote communication may be effected by a ballot submitted by electronic transmission (as defined in Section 9.3(c)), provided that any such electronic transmission must either set forth or be submitted with information from which the Corporation can determine that the electronic transmission was authorized by the stockholder or proxyholder.  The Board, in its discretion, or the chairman of the meeting of stockholders, in such person's discretion, may require that any votes cast at such meeting shall be cast by written ballot.

(c)     Proxies.  Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by proxy, but no such proxy shall be voted or acted upon after three years from its date, unless the proxy provides for a longer period. Proxies need not be filed with the Secretary until the meeting is called to order, but shall be filed with the Secretary before being voted.  Without limiting the manner in which a stockholder may authorize another person or persons to act for such stockholder as proxy, either of the following shall constitute a valid means by which a stockholder may grant such authority:

(i)     A stockholder may execute a writing authorizing another person or persons to act for such stockholder as proxy.  Execution may be accomplished by the stockholder or such stockholder's authorized officer, director, employee or agent signing such writing or causing such person's signature to be affixed to such writing by any reasonable means, including, but not limited to, by facsimile signature.

(ii)     A stockholder may authorize another person or persons to act for such stockholder as proxy by transmitting or authorizing the transmission of an electronic transmission to the person who will be the holder of the proxy, provided that any such electronic transmission must either set forth or be submitted with information from which it can be determined that the electronic transmission was authorized by the stockholder.

Any copy, facsimile telecommunication or other reliable reproduction of the writing or transmission authorizing another person or persons to act as proxy for a stockholder may be

substituted or used in lieu of the original writing or transmission for any and all purposes for which the original writing or transmission could be used; provided that such copy, facsimile telecommunication or other reproduction shall be a complete reproduction of the entire original writing or transmission.

(d)    <u>Limitation on Proxies and Voting Agreements</u>.    Notwithstanding the foregoing and including in connection with a Qualified Pledge (as defined in the Certificate of Incorporation), no Person that holds Common Stock shall grant any proxy or enter into or agree to be bound by any voting trust with respect to any shares of Common Stock, nor enter into any stockholder agreements or arrangements of any kind with any person with respect to any shares of Common Stock inconsistent with these Bylaws or the Certificate of Incorporation, including agreements or arrangements with respect to the acquisition, disposition or voting of shares of Common Stock, nor shall any Person that holds Common Stock act, for any reason, as a member of a group or in concert with any other Persons in connection with the acquisition, disposition or voting of shares of Common Stock in any manner which is inconsistent with the provisions of these Bylaws or the Certificate of Incorporation.

(e)    <u>Required Vote</u>.    The election of directors shall be determined by a plurality of the votes cast by the stockholders present in person or represented by proxy at the meeting and entitled to vote thereon.    All other matters shall be determined by the vote of a majority of the votes cast by the stockholders present in person or represented by proxy at the meeting and entitled to vote thereon, unless the matter is one upon which, by applicable law, the Certificate of Incorporation or these By-Laws, a different vote is required, in which case such provision shall govern and control the decision of such matter.

(f)    <u>Inspectors of Election</u>.    The Board may, and shall if required by law, in advance of any meeting of stockholders, appoint one or more persons as inspectors of election, who may be employees of the Corporation or otherwise serve the Corporation in other capacities, to act at such meeting of stockholders or any adjournment thereof and to make a written report thereof.    The Board may appoint one or more persons as alternate inspectors to replace any inspector who fails to act.    If no inspectors of election or alternates are appointed by the Board, the chairman of the meeting shall appoint one or more inspectors to act at the meeting.    Each inspector, before discharging his or her duties, shall take and sign an oath faithfully to execute the duties of inspector with strict impartiality and according to the best of his or her ability.    The inspectors shall ascertain and report the number of outstanding shares and the voting power of each; determine the number of shares present in person or represented by proxy at the meeting and the validity of proxies and ballots; count all votes and ballots and report the results; determine and retain for a reasonable period a record of the disposition of any challenges made to any determination by the inspectors; and certify their determination of the number of shares represented at the meeting and their count of all votes and ballots.    No person who is a candidate for an office at an election may serve as an inspector at such election.    Each report of an inspector shall be in writing and signed by the inspector or by a majority of them if there is more than one inspector acting at such meeting.    If there is more than one inspector, the report of a majority shall be the report of the inspectors.

**Section 2.6.    Adjournments**.    Any meeting of stockholders, annual or special, may be adjourned by the chairman of the meeting or by the stockholders present and entitled to vote

4

thereat, by a majority in voting power thereof, from time to time, whether or not there is a quorum, to reconvene at the same or some other place. Notice need not be given of any such adjourned meeting if the date, time, place, if any, thereof, and the means of remote communication, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such adjourned meeting are announced at the meeting at which the adjournment is taken. At the adjourned meeting the stockholders, or the holders of any class or series of stock entitled to vote separately as a class, as the case may be, may transact any business that might have been transacted at the original meeting. If the adjournment is for more than 30 days, notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting. If after the adjournment a new record date for stockholders entitled to vote is fixed for the adjourned meeting, the Board shall fix a new record date for notice of such adjourned meeting in accordance with <u>Section 2.3</u> and shall give notice of the adjourned meeting to each stockholder of record entitled to vote at such adjourned meeting as of the record date fixed for notice of such adjourned meeting.

**Section 2.7.    Conduct of Meetings**. The chairman of each annual and special meeting of stockholders shall be the Chairman of the Board or, in the absence (or inability or refusal to act) of the Chairman of the Board, the President (if he or she shall be a director) or, in the absence (or inability or refusal to act) of the President or if the President is not a director, such other person as shall be appointed by the Board, or in the absence of such appointment, a chairman chosen at the meeting. The date and time of the opening and the closing of the polls for each matter upon which the stockholders will vote at a meeting shall be announced at the meeting by the chairman of the meeting. The Board may adopt such rules and regulations for the conduct of the meeting of stockholders as it shall deem appropriate. Except to the extent inconsistent with these By-Laws or such rules and regulations as adopted by the Board, the chairman of any meeting of stockholders shall have the right and authority to convene and to adjourn the meeting, to prescribe such rules, regulations and procedures and to do all such acts as, in the judgment of such chairman, are appropriate for the proper conduct of the meeting. Unless and to the extent determined by the Board or the chairman of the meeting, meetings of stockholders shall not be required to be held in accordance with the rules of parliamentary procedure. The secretary of each annual and special meeting of stockholders shall be the Secretary or, in the absence (or inability or refusal to act) of the Secretary, an Assistant Secretary so appointed to act by the chairman of the meeting. In the absence (or inability or refusal to act) of the Secretary and all Assistant Secretaries, the chairman of the meeting may appoint any person to act as secretary of the meeting.

**Section 2.8.    Consents in Lieu of Meeting**. Unless otherwise provided by the Certificate of Incorporation, any action required or permitted to be taken at any annual or special meeting of stockholders may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum voting power that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the Corporation to its registered office in the State of Delaware, the Corporation's principal place of business, or the Secretary. Every written consent shall bear the date of signature of each stockholder who signs the consent and no written consent shall be effective to take the corporate action referred to therein unless, within 60 days of the date the earliest dated consent is delivered to the Corporation, a written consent or consents

signed by a sufficient number of holders to take such action are delivered to the Corporation by delivery to the Corporation's registered office in the State of Delaware, the Corporation's principal place of business, or the Secretary. Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.   An electronic transmission consenting to the action to be taken and transmitted by a stockholder, proxyholder or a person or persons authorized to act for a stockholder or proxyholder shall be deemed to be written, signed and dated for purposes hereof if such electronic transmission sets forth or is delivered with information from which the Corporation can determine that such transmission was transmitted by a stockholder or proxyholder (or by a person authorized to act for a stockholder or proxyholder) and the date on which such stockholder, proxyholder or authorized person transmitted such transmission.   The date on which such electronic transmission is transmitted shall be deemed to be the date on which such consent was signed.   No consent given by electronic transmission shall be deemed to have been delivered until such consent is reproduced in paper form and delivered to the Corporation by delivery either to the Corporation's registered office in the State of Delaware, the Corporation's principal place of business, or the Secretary. Delivery made to the Corporation's registered office shall be made by hand or by certified or registered mail, return receipt requested.   Notwithstanding the limitations on delivery in the previous sentence, consents given by electronic transmission may be otherwise delivered to the Corporation's principal place of business or to the Secretary if, to the extent, and in the manner provided by resolution of the Board.   Any copy, facsimile or other reliable reproduction of a consent in writing may be substituted or used in lieu of the original writing for any and all purposes for which the original writing could be used; provided that such copy, facsimile or other reproduction shall be a complete reproduction of the entire original writing.   Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to notice of the meeting if the record date for notice of such meeting had been the date that written consents signed by a sufficient number of holders were delivered to the Corporation as provided in this Section 2.8.

## ARTICLE III.
## DIRECTORS

**Section 3.1.    Powers**.  The business and affairs of the Corporation shall be managed by or under the direction of the Board, which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute or by the Certificate of Incorporation or by these By-Laws required to be exercised or done by the stockholders. Directors need not be stockholders or residents of the State of Delaware. Notwithstanding the foregoing, neither the Corporation, nor any of its subsidiaries shall take any of the following actions without the prior written consent of stockholders holding two-thirds of the outstanding Common Stock:

a) create, authorize or issue, or grant any options, warrants, or other rights to purchase or obtain, any securities of the Corporation or any of its subsidiaries;

b) create any subsidiaries;

c) purchase, redeem or otherwise acquire for value (or pay into or set aside a sinking fund for such purpose) equity securities of the Corporation or its subsidiaries;

d)  voluntarily initiate any liquidation, dissolution or winding up of the Corporation or any of its subsidiaries, or permit the commencement of a proceeding for bankruptcy, insolvency, receivership or similar action against the Corporation or any of its subsidiaries;

e)  change or enter into any new line of business;

f)  incur any indebtedness other than  a working capital facility with a capacity of no more than $[1,000,000];

g)  pay any dividends on, or make any distributions with respect to, the securities of the Corporation;

h)  acquire any assets or make any investments in, or acquire the securities of, any person;

i)  grant or permit to exist any liens other than (A) liens associated with debt permitted by clause (f) above and (B) liens arising by operation of law;

j)  hire or fire any officer of the Corporation or its subsidiaries earning a base salary of more than $[250,000];

k)  enter into, amend or terminate any contract that involves payments in excess of $[1,000,000];

l)  change the auditors of the Corporation or any of its subsidiaries;

m)  settle any litigation that involves payment in excess of $[1,000,000];

n)  enter into any mergers, consolidations, reorganizations, recapitalizations business combinations, other sale of the Corporation or other similar transactions resulting in a change of control of the Corporation, or sale of all or substantially all of the Corporation's assets

o)  change the tax status of the Corporation, effect a reorganization or make or revoke any tax election with respect to the Corporation or its Subsidiaries;

p)  amend or modify the Corporation's organizational documents, including the Certificate of Incorporation and these Bylaws;

q)  authorize or issue any shares of stock other than Common Stock; or

r)  agree to, or enter into any contract to do, to any of the foregoing.

**Section 3.2.    Number; Term**.  The number of directors of the Corporation shall be 3. No decrease in the number of directors shall shorten the term of any incumbent director.  There shall be a Class I, Class II and Class III Director and the initial Directors of each class shall be as set forth on Schedule 1 of the Certificate of Incorporation.  Each Director shall serve for a term ending on the date of the third annual meeting following the annual meeting at which such director was elected; provided, that the Director initially appointed to Class I shall serve for an

initial term expiring at the Corporation's first annual meeting of stockholders following the effectiveness of this provision; the director initially appointed to Class II shall serve for an initial term expiring at the corporation's second annual meeting of stockholders following the effectiveness of this provision; and the director initially appointed to Class III shall serve for an initial term expiring at the Corporation's third annual meeting of stockholders following the effectiveness of this provision; provided further, that the term of each Director shall continue until the election and qualification of a successor and be subject to such Director's earlier death, resignation or removal.  A director elected to fill a vacancy or a newly created directorship shall hold office until the next election of directors, subject to the election and qualification of a successor and to such director's earlier death, resignation or removal.

Section 3.3.  **Newly Created Directorships and Vacancies**.  Except as otherwise provided in the Certificate of Incorporation, vacancies resulting from death, resignation, retirement, disqualification, removal or other cause and newly created directorships resulting from an increase in the number of directors elected by all of the stockholders having the right to vote as a single class may be filled by a majority vote of the directors then in office, even if less than a quorum, by a sole remaining director, or by the stockholders.  Except as otherwise provided in the Certificate of Incorporation, if the holders of any class or classes of stock or series thereof are entitled to elect one or more directors by the Certificate of Incorporation, vacancies and newly created directorships of such class or classes or series may be filled only by a majority of the directors elected by such class or classes or series thereof then in office, by a sole remaining director so elected, or by the stockholders of such class or classes or series thereof.  Except as otherwise provided in the Certificate of Incorporation, any director elected or chosen in accordance with this <u>Section 3.3</u> shall hold office for the remainder of the applicable term and until his or her successor shall have been elected and qualified, subject to such director's earlier death, resignation, retirement, disqualification or removal.

Section 3.4.  **Compensation**.  Unless otherwise restricted by the Certificate of Incorporation or these By-Laws, the Board shall have the authority to fix the compensation of directors.  The directors may be reimbursed their expenses, if any, of attendance at each meeting of the Board and may be paid either a fixed sum for attendance at each meeting of the Board or other compensation as director.  No such payment shall preclude any director from serving the Corporation in any other capacity and receiving compensation therefor.  Members of committees of the Board may be allowed like compensation and reimbursement of expenses for attending committee meetings.

## ARTICLE IV.
## BOARD MEETINGS

Section 4.1.  **Annual Meetings**.  The Board shall meet as soon as practicable after the adjournment of each annual stockholders meeting at the place of the annual stockholders meeting unless the Board shall fix another time and place and give notice thereof in the manner required herein for special meetings of the Board.  No notice to the directors shall be necessary to legally convene this meeting, except as provided in this <u>Section 4.1</u>.

**Section 4.2.    Regular Meetings**.  Regularly scheduled, periodic meetings of the Board may be held without notice at such times, dates and places as shall from time to time be determined by the Board.

**Section 4.3.    Special Meetings**.  Special meetings of the Board (a) may be called by the Chairman of the Board and (b) shall be called by the Chairman of the Board or Secretary on the written request of at least two of the directors then in office, or the sole director if there be only one, and shall be held at such time, date and place as may be determined by the person calling the meeting or, if called upon the request of directors or the sole director, as specified in such written request.  Notice of each special meeting of the Board shall be given, as provided in Section 9.3, to each director (i) at least 24 hours before the meeting if such notice is oral notice given personally or by telephone or written notice given by hand delivery or by means of a form of electronic transmission and delivery; (ii) at least two days before the meeting if such notice is sent by a nationally recognized overnight delivery service; and (iii) at least five days before the meeting if such notice is sent through the United States mail.  If the Secretary shall fail or refuse to give such notice, then the notice may be given by the officer who called the meeting or the directors who requested the meeting.  Any and all business that may be transacted at a regular meeting of the Board may be transacted at a special meeting.  Except as may be otherwise expressly provided by applicable law, the Certificate of Incorporation, or these By-Laws, neither the business to be transacted at, nor the purpose of, any special meeting need be specified in the notice or waiver of notice of such meeting.  A special meeting may be held at any time without notice if all the directors are present or if those not present waive notice of the meeting in accordance with Section 9.4.

**Section 4.4.    Quorum; Required Vote**.  A majority of the Board, but in any event not less than one-third of the Whole Board (as defined below), shall constitute a quorum for the transaction of business at any meeting of the Board, and the act of a majority of the directors present at any meeting at which there is a quorum shall be the act of the Board, except as may be otherwise specifically provided by applicable law, the Certificate of Incorporation or these By-Laws.  If a quorum shall not be present at any meeting, a majority of the directors present may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum is present.  "***Whole Board***" shall mean the total number of directors that the Corporation would have if there were no vacancies.

**Section 4.5.    Consent In Lieu of Meeting**.  Unless otherwise restricted by the Certificate of Incorporation or these By-Laws, any action required or permitted to be taken at any meeting of the Board or any committee thereof may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions (or paper reproductions thereof) are filed with the minutes of proceedings of the Board or committee.  Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

**Section 4.6.    Organization**.  The chairman of each meeting of the Board shall be the Chairman of the Board or, in the absence (or inability or refusal to act) of the Chairman of the Board, the President (if he or she shall be a director) or in the absence (or inability or refusal to act) of the President or if the President is not a director, a chairman elected from the directors

9

present. The Secretary shall act as secretary of all meetings of the Board.  In the absence (or inability or refusal to act) of the Secretary, an Assistant Secretary shall perform the duties of the Secretary at such meeting.  In the absence (or inability or refusal to act) of the Secretary and all Assistant Secretaries, the chairman of the meeting may appoint any person to act as secretary of the meeting.

## ARTICLE V.
## COMMITTEES OF DIRECTORS

**Section 5.1.    Establishment**.  The Board may designate one or more committees, each committee to consist of one or more of the directors of the Corporation.  Each committee shall keep regular minutes of its meetings and report the same to the Board when required.  The Board shall have the power at any time to fill vacancies in, to change the membership of, or to dissolve any such committee.

**Section 5.2.    Available Powers**.  Any committee established pursuant to Section 5.1 hereof, to the extent permitted by applicable law and by resolution of the Board, shall have and may exercise all of the powers and authority of the Board in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers that may require it.

**Section 5.3.    Alternate Members**.  The Board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of such committee.

**Section 5.4.    Procedures**.  Unless the Board otherwise provides, the time, date, place, if any, and notice of meetings of a committee shall be determined by such committee.  At meetings of a committee, a majority of the number of members of the committee (but not including any alternate member, unless such alternate member has replaced any absent or disqualified member at the time of, or in connection with, such meeting) shall constitute a quorum for the transaction of business.  The act of a majority of the members present at any meeting at which a quorum is present shall be the act of the committee, except as otherwise specifically provided by applicable law, the Certificate of Incorporation, these By-Laws or the Board.  If a quorum is not present at a meeting of a committee, the members present may adjourn the meeting from time to time, without notice other than an announcement at the meeting, until a quorum is present.  Unless the Board otherwise provides and except as provided in these By-Laws, each committee designated by the Board may make, alter, amend and repeal rules for the conduct of its business.  In the absence of such rules each committee shall conduct its business in the same manner as the Board is authorized to conduct its business pursuant to Article III and Article IV of these By-Laws.

## ARTICLE VI.
## OFFICERS

**Section 6.1.    Officers**.  Subject to Section 6.4, the officers of the Corporation elected by the Board may include a manager, President, Treasurer, Secretary and such other officers (including without limitation a Chief Executive Officer, Chief Financial Officer, Vice Presidents, Assistant Secretaries and Assistant Treasurers) as the Board from time to time may determine.

10

Officers elected by the Board shall each have such powers and duties as generally pertain to their respective offices, subject to the specific provisions of this Article VI. Such officers shall also have such powers and duties as from time to time may be conferred by the Board. If such an officer has been elected, the President may also appoint such other officers (including without limitation one or more Vice Presidents and Controllers) as may be necessary or desirable for the conduct of the business of the Corporation. Such other officers shall have such powers and duties and shall hold their offices for such terms as may be provided in these By-Laws or as may be prescribed by the Board or, if such officer has been appointed by the President as permitted hereby, as may be prescribed by the appointing officer.

**Section 6.2.    Term of Office; Removal; Vacancies**. The elected officers of the Corporation shall be elected or appointed by the Board from time to time in its discretion. All officers elected or appointed by the Board shall hold office in accordance for such term as may be prescribed by the Board. Any officer may be removed, with or without cause, at any time by the Board. Any officer appointed by the President may also be removed, with or without cause, by the President unless the Board otherwise provides. Any vacancy occurring in any elected office of the Corporation may be filled by the Board.

**Section 6.3.    Other Officers**. The Board may delegate the power to appoint such other officers and agents, and may also remove such officers and agents or delegate the power to remove same, as it shall from time to time deem necessary or desirable.

**Section 6.4.    Manager**.

(a)    Immediately following consummation of its reorganization ("**Emergence**") in accordance with that certain [*First Amended Joint Plan of Reorganization on SunEdison, Inc. and its Debtor Affiliates*], and its Debtor Affiliates approved by order of the United States Bankruptcy Court for the Southern District of New York in *In re: SUNEDISON, Inc., et al.*, under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101-1330)], as amended, the powers and authority customarily granted to a Chief Executive Officer and President shall be vested in a manager (the "**Manager**"), elected upon the approval and consent of a majority of the Board, who shall have the authority to act in the name and on behalf of the Corporation, and make such decisions, as are ordinarily vested in such positions, subject to any restrictions or conditions that the Board may impose.

(b)    Until such time as the Board determines to appoint additional officers, the Manager shall also have the authority to act as the Corporation's treasurer and secretary and to take any other action required or permitted of an officer of the Corporation as contemplated by the DGCL.

(c)    Any replacement for the Manager shall be appointed in accordance with the other provisions of these By-Laws and the Certificate of Incorporation.

**Section 6.5.    Multiple Officeholders; Stockholder and Director Officers**. Any number of offices may be held by the same person unless the Certificate of Incorporation or

11

these By-Laws otherwise provide.  Officers need not be stockholders or residents of the State of Delaware.

## ARTICLE VII.
## SHARE CERTIFICATES

**Section 7.1.    Certificates for Shares**.  Shares of stock in the Corporation need not be certificated.  The Corporation may, at its election, issue to any stockholder of record a certificate certifying the number and class of shares owned by him in the Corporation, which shall be in such form as shall be prescribed by the Board.

**Section 7.2.    Multiple Classes of Stock**.  If the Corporation shall be authorized to issue more than one class of stock or more than one series of any class, the Corporation shall (a) cause the powers, designations, preferences and relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences or rights to be set forth in full or summarized on the face or back of any certificate that the Corporation issues to represent shares of such class or series of stock or (b) in the case of uncertificated shares, within a reasonable time after the issuance or transfer of such shares, send to the registered owner thereof a written notice containing the information required to be set forth on certificates as specified in clause (a) above; provided, however, that, except as otherwise provided by applicable law, in lieu of the foregoing requirements, there may be set forth on the face or back of such certificate or, in the case of uncertificated shares, on such written notice a statement that the Corporation will furnish without charge to each stockholder who so requests the powers, designations, preferences and relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences or rights.

**Section 7.3.    Signatures**.  Each certificate representing capital stock of the Corporation shall be signed by or in the name of the Corporation by (a) the Chairman of the Board, the President or a Vice President and (b) the Treasurer, an Assistant Treasurer, the Secretary or an Assistant Secretary of the Corporation.  Any or all the signatures on the certificate may be a facsimile.  In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, such certificate may be issued by the Corporation with the same effect as if such person were such officer, transfer agent or registrar on the date of issue.

**Section 7.4.    Consideration and Payment for Shares**.

(a)    Subject to applicable law and the Certificate of Incorporation, shares of stock may be issued for such consideration, having in the case of shares with par value a value not less than the par value thereof, and to such persons, as determined from time to time by the Board.  The consideration may consist of any tangible or intangible property or benefit to the Corporation including cash, promissory notes, services performed, contracts for services to be performed or other securities.

(b)    Subject to applicable law and the Certificate of Incorporation, shares may not be issued until the full amount of the consideration has been paid, unless upon the face or

back of each certificate issued to represent any partly paid shares of capital stock or upon the books and records of the Corporation in the case of partly paid uncertificated shares, there shall have been set forth the total amount of the consideration to be paid therefor and the amount paid thereon up to and including the time said certificate representing certificated shares or said uncertificated shares are issued.

**Section 7.5.    Lost, Destroyed or Wrongfully Taken Certificates**.

(a)    If an owner of a certificate representing shares claims that such certificate has been lost, destroyed or wrongfully taken, the Corporation shall issue a new certificate representing such shares or such shares in uncertificated form if the owner: (i) requests such a new certificate before the Corporation has notice that the certificate representing such shares has been acquired by a protected purchaser; (ii) if requested by the Corporation, delivers to the Corporation a bond sufficient to indemnify the Corporation against any claim that may be made against the Corporation on account of the alleged loss, wrongful taking or destruction of such certificate or the issuance of such new certificate or uncertificated shares; and (iii) satisfies other reasonable requirements imposed by the Corporation.

(b)    If a certificate representing shares has been lost, apparently destroyed or wrongfully taken, and the owner fails to notify the Corporation of that fact within a reasonable time after the owner has notice of such loss, apparent destruction or wrongful taking and the Corporation registers a transfer of such shares before receiving notification, the owner shall be precluded from asserting against the Corporation any claim for registering such transfer or a claim to a new certificate representing such shares or such shares in uncertificated form.

**Section 7.6.    Transfer of Stock**.

(a)    If a certificate representing shares of the Corporation is presented to the Corporation with a stock power or other indorsement requesting the registration of transfer of such shares or an instruction is presented to the Corporation requesting the registration of transfer of uncertificated shares, the Corporation shall register the transfer as requested if:

(i)    such transfer is compliance with all of the restrictions on transfer set forth in these By-Laws and the Certificate of Incorporation;

(ii)    in the case of certificated shares, the certificate representing such shares has been surrendered;

(iii)    (A) with respect to certificated shares, the indorsement is made by the person specified by the certificate as entitled to such shares; (B) with respect to uncertificated shares, an instruction is made by the registered owner of such uncertificated shares; or (C) with respect to certificated shares or uncertificated shares, the indorsement or instruction is made by any other appropriate person or by an agent who has actual authority to act on behalf of the appropriate person;

(iv)    the Corporation has received a guarantee of signature of the person signing such indorsement or instruction or such other reasonable assurance that the indorsement or instruction is genuine and authorized as the Corporation may request;

13

(v)     the transfer does not violate any restriction on transfer imposed by the Corporation that is enforceable in accordance with Section 7.8; and

(vi)     such other conditions for such transfer as shall be provided for under applicable law have been satisfied.

(b)     Whenever any transfer of shares shall be made for collateral security and not absolutely, the Corporation shall so record such fact in the entry of transfer if, when the certificate for such shares is presented to the Corporation for transfer or, if such shares are uncertificated, when the instruction for registration of transfer thereof is presented to the Corporation, both the transferor and transferee request the Corporation to do so.

Section 7.7.    **Registered Stockholders**.   Before due presentment for registration of transfer of a certificate representing shares of the Corporation or of an instruction requesting registration of transfer of uncertificated shares, the Corporation may treat the registered owner as the person exclusively entitled to inspect for any proper purpose the stock ledger and the other books and records of the Corporation, vote such shares, receive dividends or notifications with respect to such shares and otherwise exercise all the rights and powers of the owner of such shares, except that a person who is the beneficial owner of such shares (if held in a voting trust or by a nominee on behalf of such person) may, upon providing documentary evidence of beneficial ownership of such shares and satisfying such other conditions as are provided under applicable law, may also so inspect the books and records of the Corporation.

Section 7.8.    **Effect of the Corporation's Restriction on Transfer**.   A written restriction on the transfer or registration of transfer of shares of the Corporation or on the amount of shares of the Corporation that may be owned by any person or group of persons, if permitted by the DGCL and noted conspicuously on the certificate representing such shares or, in the case of uncertificated shares, contained in a notice sent by the Corporation to the registered owner of such shares within a reasonable time after the issuance or transfer of such shares, may be enforced against the holder of such shares or any successor or transferee of the holder including an executor, administrator, trustee, guardian or other fiduciary entrusted with like responsibility for the person or estate of the holder.

Section 7.9.    **Transfer Agents**. The Board may appoint one or more transfer agents or registrars and may require for the validity thereof that certificates representing shares bear the signature of any transfer agent or registrar so appointed.

## ARTICLE VIII.
## INDEMNIFICATION

Section 8.1.    **Right to Indemnification**.   Each person who was or is made a party or is threatened to be made a party to or is otherwise involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "***proceeding***"), by reason of the fact that he or she is or was a director or officer of the Corporation or, while a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust, other enterprise or nonprofit entity, including service with

respect to an employee benefit plan (hereinafter a "***Covered Person***"), whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent, or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized or permitted by applicable law, as the same exists or may hereafter be amended, against all expenses, liability and loss (including, without limitation, attorneys' fees, judgments, fines, ERISA excise taxes and penalties and amounts paid in settlement) reasonably incurred or suffered by such Covered Person in connection with such proceeding; provided, however, that, except as provided in Section 8.3 with respect to proceedings to enforce rights to indemnification and advancement of expenses, the Corporation shall indemnify a Covered Person in connection with a proceeding (or part thereof) initiated by such Covered Person only if such proceeding (or part thereof) was authorized by the Board.

**Section 8.2.    Right to Advancement of Expenses**.    In addition to the right to indemnification conferred in Section 8.1, a Covered Person shall also have the right to be paid by the Corporation the expenses (including, without limitation, attorneys' fees) incurred in defending, testifying, or otherwise participating in any such proceeding in advance of its final disposition (hereinafter an "***advancement of expenses***"); provided, however, that, if the Delaware General Corporation Law ("***DGCL***") requires, an advancement of expenses incurred by a Covered Person in his or her capacity as a director or officer of the Corporation (and not in any other capacity in which service was or is rendered by such Covered Person, including, without limitation, service to an employee benefit plan) shall be made only upon delivery to the Corporation of an undertaking (hereinafter an "***undertaking***"), by or on behalf of such Covered Person, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal (hereinafter a "***final adjudication***") that such Covered Person is not entitled to be indemnified for such expenses under this Article VIII or otherwise.

**Section 8.3.    Right of Indemnitee to Bring Suit**.    If a claim under Section 8.1 or Section 8.2 is not paid in full by the Corporation within 60 days after a written claim therefor has been received by the Corporation, except in the case of a claim for an advancement of expenses, in which case the applicable period shall be 20 days, the Covered Person may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim.  If successful in whole or in part in any such suit, or in a suit brought by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the Covered Person shall also be entitled to be paid the expense of prosecuting or defending such suit.  In any suit brought by (a) the Covered Person to enforce a right to indemnification hereunder (but not in a suit brought by a Covered Person to enforce a right to an advancement of expenses) it shall be a defense that, and (b) the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the Corporation shall be entitled to recover such expenses upon a final adjudication that, the Covered Person has not met any applicable standard for indemnification set forth in the DGCL.  Neither the failure of the Corporation (including its directors who are not parties to such action, a committee of such directors, independent legal counsel, or its stockholders) to have made a determination prior to the commencement of such suit that indemnification of the Covered Person is proper in the circumstances because the Covered Person has met the applicable standard of conduct set forth in the DGCL, nor an actual determination by the Corporation (including a determination by its directors who are not parties

to such action, a committee of such directors, independent legal counsel, or its stockholders) that the Covered Person has not met such applicable standard of conduct, shall create a presumption that the Covered Person has not met the applicable standard of conduct or, in the case of such a suit brought by the Covered Person, shall be a defense to such suit. In any suit brought by the Covered Person to enforce a right to indemnification or to an advancement of expenses hereunder, or by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the burden of proving that the Covered Person is not entitled to be indemnified, or to such advancement of expenses, under this Article VIII or otherwise shall be on the Corporation.

Section 8.4.   **Non-Exclusivity of Rights**.   The rights provided to Covered Persons pursuant to this Article VIII shall not be exclusive of any other right that any Covered Person may have or hereafter acquire under applicable law, the Certificate of Incorporation, these By-Laws, an agreement, a vote of stockholders or disinterested directors, or otherwise.

Section 8.5.   **Insurance**.   The Corporation may maintain insurance, at its expense, to protect itself and/or any director, officer, employee or agent of the Corporation or another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss, whether or not the Corporation would have the power to indemnify such person against such expense, liability or loss under the DGCL.

Section 8.6.   **Indemnification of Other Persons**.   This Article VIII shall not limit the right of the Corporation to the extent and in the manner authorized or permitted by law to indemnify and to advance expenses to persons other than Covered Persons. Without limiting the foregoing, the Corporation may, to the extent authorized from time to time by the Board, grant rights to indemnification and to the advancement of expenses to any employee or agent of the Corporation and to any other person who is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to an employee benefit plan, to the fullest extent of the provisions of this Article VIII with respect to the indemnification and advancement of expenses of Covered Persons under this Article VIII.

Section 8.7.   **Amendments**.   Any repeal or amendment of this Article VIII by the Board or the stockholders of the Corporation or by changes in applicable law, or the adoption of any other provision of these By-Laws inconsistent with this Article VIII, shall, to the extent permitted by applicable law, be prospective only (except to the extent such amendment or change in applicable law permits the Corporation to provide broader indemnification rights to Covered Persons on a retroactive basis than permitted prior thereto), and will not in any way diminish or adversely affect any right or protection existing hereunder in respect of any act or omission occurring prior to such repeal or amendment or adoption of such inconsistent provision.

Section 8.8.   **Certain Definitions**.   For purposes of this Article VIII, (a) references to "other enterprise" shall include any employee benefit plan; (b) references to "fines" shall include any excise taxes assessed on a person with respect to an employee benefit plan; (c) references to "serving at the request of the Corporation" shall include any service that imposes duties on, or involves services by, a person with respect to any employee benefit plan, its participants, or beneficiaries; and (d) a person who acted in good faith and in a manner such person reasonably

believed to be in the interest of the participants and beneficiaries of an employee benefit plan shall be deemed to have acted in a manner "not opposed to the best interest of the Corporation" for purposes of Section 145 of the DGCL.

**Section 8.9.    Contract Rights**.  The rights provided to Covered Persons pursuant to this Article VIII (a) shall be contract rights based upon good and valuable consideration, pursuant to which a Covered Person may bring suit as if the provisions of this Article VIII were set forth in a separate written contract between the Covered Person and the Corporation, (b) shall fully vest at the time the Covered Person first assumes his or her position as a director or officer of the Corporation, (c) are intended to be retroactive and shall be available with respect to any act or omission occurring prior to the adoption of this Article VIII, (d) shall continue as to a Covered Person who has ceased to be a director or officer of the Corporation, and (e) shall inure to the benefit of the Covered Person's heirs, executors and administrators.

**Section 8.10.  Severability**.  If any provision or provisions of this Article VIII shall be held to be invalid, illegal or unenforceable for any reason whatsoever:  (a) the validity, legality and enforceability of the remaining provisions of this Article VIII shall not in any way be affected or impaired thereby; and (b) to the fullest extent possible, the provisions of this Article VIII (including, without limitation, each such portion of this Article VIII containing any such provision held to be invalid, illegal or unenforceable) shall be construed so as to give effect to the intent manifested by the provision held invalid, illegal or unenforceable.

## ARTICLE IX.
## MISCELLANEOUS

**Section 9.1.    Place of Meetings**.  If the place of any meeting of stockholders, the Board or committee of the Board for which notice is required under these By-Laws is not designated in the notice of such meeting, such meeting shall be held at the principal business office of the Corporation; provided, however, if the Board has, in its sole discretion, determined that a meeting shall not be held at any place, but instead shall be held by means of remote communication pursuant to Section 9.5 hereof, then such meeting shall not be held at any place.

**Section 9.2.    Fixing Record Dates**.

(a)    In order that the Corporation may determine the stockholders entitled to notice of any meeting of stockholders or any adjournment thereof, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which record date shall not be more than 60 nor less than 10 days before the date of such meeting.  If the Board so fixes a record date, such date shall also be the record date for determining the stockholders entitled to vote at such meeting unless the Board determines, at the time it fixes such record date, that a later date on or before the date of the meeting shall be the date for making such determination.  If no record date is fixed by the Board, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the business day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the business day next preceding the day on which the meeting is held.  A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the

meeting; provided, however, that the Board may fix a new record date for determination of stockholders entitled to vote at the adjourned meeting, and in such case shall also fix as the record date for stockholders entitled to notice of such adjourned meeting the same or an earlier date as that fixed for determination of stockholders entitled to vote in accordance with the foregoing provisions of this Section 9.2 at the adjourned meeting.

(b)    In order that the Corporation may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted, and which record date shall be not more than 60 days prior to such action.  If no record date is fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the Board adopts the resolution relating thereto.

(c)    In order that the Corporation may determine the stockholders entitled to consent to corporate action in writing without a meeting, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which date shall not be more than 10 days after the date upon which the resolution fixing the record date is adopted by the Board.  If no record date has been fixed by the Board, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board is otherwise required, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation by delivery to its registered office in the State of Delaware, its principal place of business, or the Secretary.  Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.  If no record date has been fixed by the Board and prior action by the Board is otherwise required, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be at the close of business on the day on which the Board adopts the resolution taking such prior action.

**Section 9.3.    Means of Giving Notice**.

(a)    Notice to Directors. Whenever under applicable law, the Certificate of Incorporation or these By-Laws notice is required to be given to any director, such notice shall be given either (i) in writing and sent by hand delivery, through the United States mail, or by a nationally recognized overnight delivery service for next day delivery, or (ii) by means of facsimile telecommunication, electronic mail or other form of electronic transmission.  A notice to a director will be deemed given as follows: (i) if given by hand delivery, when actually received by the director, (ii) if sent through the United States mail, when deposited in the United States mail, with postage and fees thereon prepaid, addressed to the director at the director's address appearing on the records of the Corporation, (iii) if sent for next day delivery by a nationally recognized overnight delivery service, when deposited with such service, with fees thereon prepaid, addressed to the director at the director's address appearing on the records of the Corporation, or (iv) if sent by facsimile telecommunication, electronic mail or any other form of electronic transmission, when receipt is confirmed in writing by such director.

18

(b)      Notice to Stockholders.  Whenever under applicable law, the Certificate of Incorporation or these By-Laws notice is required to be given to any stockholder, such notice may be given (i) in writing and sent either by hand delivery, through the United States mail, or by a nationally recognized overnight delivery service for next day delivery, or (ii) by means of a form of electronic transmission consented to by the stockholder, to the extent permitted by, and subject to the conditions set forth in, Section 232 of the DGCL.  A notice to a stockholder shall be deemed given as follows:   (i) if given by hand delivery, when actually received by the stockholder, (ii) if sent through the United States mail, when deposited in the United States mail, with postage and fees thereon prepaid, addressed to the stockholder at the stockholder's address appearing on the stock ledger of the Corporation, (iii) if sent for next day delivery by a nationally recognized overnight delivery service, when deposited with such service, with fees thereon prepaid, addressed to the stockholder at the stockholder's address appearing on the stock ledger of the Corporation, and (iv) if given by a form of electronic transmission consented to by the stockholder to whom the notice is given and otherwise meeting the requirements set forth above, (A) if by facsimile transmission, when directed to a number at which the stockholder has consented to receive notice, (B) if by electronic mail, when directed to an electronic mail address at which the stockholder has consented to receive notice, (C) if by a posting on an electronic network together with separate notice to the stockholder of such specified posting, upon the later of (1) such posting and (2) the giving of such separate notice, and (D) if by any other form of electronic transmission, when directed to the stockholder.   A stockholder may revoke such stockholder's consent to receiving notice by means of electronic communication by giving written notice of such revocation to the Corporation.  Any such consent shall be deemed revoked if (1) the Corporation is unable to deliver by electronic transmission two consecutive notices given by the Corporation in accordance with such consent and (2) such inability becomes known to the Secretary or an Assistant Secretary or to the Corporation's transfer agent, or other person responsible for the giving of notice; provided, however, the inadvertent failure to treat such inability as a revocation shall not invalidate any meeting or other action.

(c)      Electronic Transmission.  "*Electronic transmission*" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process, including but not limited to transmission by telex, facsimile telecommunication, electronic mail, telegram and cablegram.

(d)      Notice to Stockholders Sharing Same Address.  Without limiting the manner by which notice otherwise may be given effectively by the Corporation to stockholders, any notice to stockholders given by the Corporation under any provision of the DGCL, the Certificate of Incorporation or these By-Laws shall be effective if given by a single written notice to stockholders who share an address if consented to by the stockholders at that address to whom such notice is given.  A stockholder may revoke such stockholder's consent by delivering written notice of such revocation to the Corporation.  Any stockholder who fails to object in writing to the Corporation within 60 days of having been given written notice by the Corporation of its intention to send such a single written notice shall be deemed to have consented to receiving such single written notice.

(e)    <u>Exceptions to Notice Requirements</u>.  Whenever notice is required to be given, under the DGCL, the Certificate of Incorporation or these By-Laws, to any person with whom communication is unlawful, the giving of such notice to such person shall not be required and there shall be no duty to apply to any governmental authority or agency for a license or permit to give such notice to such person.  Any action or meeting that shall be taken or held without notice to any such person with whom communication is unlawful shall have the same force and effect as if such notice had been duly given.  If the action taken by the Corporation is such as to require the filing of a certificate with the Secretary of State of Delaware, the certificate shall state, if such is the fact and if notice is required, that notice was given to all persons entitled to receive notice except such persons with whom communication is unlawful.

Whenever notice is required to be given by the Corporation, under any provision of the DGCL, the Certificate of Incorporation or these By-Laws, to any stockholder to whom (1) notice of two consecutive annual meetings of stockholders and all notices of stockholder meetings or of the taking of action by written consent of stockholders without a meeting to such stockholder during the period between such two consecutive annual meetings, or (2) all, and at least two payments (if sent by first-class mail) of dividends or interest on securities during a 12-month period, have been mailed addressed to such stockholder at such stockholder's address as shown on the records of the Corporation and have been returned undeliverable, the giving of such notice to such stockholder shall not be required.  Any action or meeting that shall be taken or held without notice to such stockholder shall have the same force and effect as if such notice had been duly given.  If any such stockholder shall deliver to the Corporation a written notice setting forth such stockholder's then current address, the requirement that notice be given to such stockholder shall be reinstated.  If the action taken by the Corporation is such as to require the filing of a certificate with the Secretary of State of Delaware, the certificate need not state that notice was not given to persons to whom notice was not required to be given pursuant to Section 230(b) of the DGCL.  The exception in subsection (1) of the first sentence of this paragraph to the requirement that notice be given shall not be applicable to any notice returned as undeliverable if the notice was given by electronic transmission.

**Section 9.4.    Waiver of Notice**.  Whenever any notice is required to be given under applicable law, the Certificate of Incorporation, or these By-Laws, a written waiver of such notice, signed before or after the date of such meeting by the person or persons entitled to said notice, or a waiver by electronic transmission by the person entitled to said notice, shall be deemed equivalent to such required notice.  All such waivers shall be kept with the books of the Corporation.  Attendance at a meeting shall constitute a waiver of notice of such meeting, except where a person attends for the express purpose of objecting to the transaction of any business on the ground that the meeting was not lawfully called or convened.

**Section 9.5.    Meeting Attendance via Remote Communication Equipment**.

(a)    <u>Stockholder Meetings</u>.  If authorized by the Board in its sole discretion, and subject to such guidelines and procedures as the Board may adopt, stockholders and proxyholders not physically present at a meeting of stockholders may, by means of remote communication:

(i)    participate in a meeting of stockholders; and

20

(ii)    be deemed present in person and vote at a meeting of stockholders, whether such meeting is to be held at a designated place or solely by means of remote communication, provided that (A) the Corporation shall implement reasonable measures to verify that each person deemed present and permitted to vote at the meeting by means of remote communication is a stockholder or proxyholder, (B) the Corporation shall implement reasonable measures to provide such stockholders and proxyholders a reasonable opportunity to participate in the meeting and to vote on matters submitted to the stockholders, including an opportunity to read or hear the proceedings of the meeting substantially concurrently with such proceedings, and (C) if any stockholder or proxyholder votes or takes other action at the meeting by means of remote communication, a record of such votes or other action shall be maintained by the Corporation.

(b)    Board Meetings.  Unless otherwise restricted by applicable law, the Certificate of Incorporation, or these By-Laws, members of the Board or any committee thereof may participate in a meeting of the Board or any committee thereof by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other.  Such participation in a meeting shall constitute presence in person at the meeting, except where a person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting was not lawfully called or convened.

Section 9.6.    **Dividends**.    The Board may from time to time declare, and the Corporation may pay, dividends (payable in cash, property or shares of the Corporation's capital stock) on the Corporation's outstanding shares of capital stock, subject to applicable law and the Certificate of Incorporation.

Section 9.7.    **Reserves**.  The Board may set apart out of the funds of the Corporation available for dividends a reserve or reserves for any proper purpose and may abolish any such reserve.

Section 9.8.    **Contracts and Negotiable Instruments**.  Except as otherwise provided by applicable law, the Certificate of Incorporation or these By-Laws, any contract, bond, deed, lease, mortgage or other instrument may be executed and delivered in the name and on behalf of the Corporation by such officer or officers or other employee or employees of the Corporation as the Board may from time to time authorize.  Such authority may be general or confined to specific instances as the Board may determine.  The Chairman of the Board, the President or any Vice President may execute and deliver any contract, bond, deed, lease, mortgage or other instrument in the name and on behalf of the Corporation.  Subject to any restrictions imposed by the Board, the Chairman of the Board, President or any Vice President may delegate powers to execute and deliver any contract, bond, deed, lease, mortgage or other instrument in the name and on behalf of the Corporation to other officers or employees of the Corporation under such person's supervision and authority, it being understood, however, that any such delegation of power shall not relieve such officer of responsibility with respect to the exercise of such delegated power.

**Section 9.9.    Fiscal Year**.  The fiscal year of the Corporation shall be fixed by the Board.

**Section 9.10.  Seal**.  The Board may adopt a corporate seal which shall be in such form as the Board determines.  The seal may be used by causing it or a facsimile thereof to be impressed, affixed or otherwise reproduced.

**Section 9.11.  Books and Records**.  The books and records of the Corporation may be kept within or outside the State of Delaware at such place or places as may from time to time be designated by the Board.

**Section 9.12.  Resignation**.  Any director, committee member or officer may resign by giving notice thereof in writing or by electronic transmission to the Chairman of the Board, the President or the Secretary.  The resignation shall take effect at the time specified therein, or at the time of receipt of such notice if no time is specified or the specified time is earlier than the time of such receipt.  Unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

**Section 9.13.  Surety Bonds**.  Such officers, employees and agents of the Corporation (if any) as the Chairman of the Board, President or the Board may direct, from time to time, shall be bonded for the faithful performance of their duties and for the restoration to the Corporation, in case of their death, resignation, retirement, disqualification or removal from office, of all books, papers, vouchers, money and other property of whatever kind in their possession or under their control belonging to the Corporation, in such amounts and by such surety companies as the Chairman of the Board, President or the Board may determine.  The premiums on such bonds shall be paid by the Corporation and the bonds so furnished shall be in the custody of the Secretary.

**Section 9.14.  Securities of Other Corporations**.  Powers of attorney, proxies, waivers of notice of meeting, consents in writing and other instruments relating to securities owned by the Corporation may be executed in the name of and on behalf of the Corporation by the Chairman of the Board, President or any Vice President.  Any such officer may, in the name of and on behalf of the Corporation, take all such action as any such officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation in which the Corporation may own securities, or to consent in writing, in the name of the Corporation as such holder, to any action by such corporation, and at any such meeting or with respect to any such consent shall possess and may exercise any and all rights and power incident to the ownership of such securities and which, as the owner thereof, the Corporation might have exercised and possessed.  The Board may from time to time confer like powers upon any other person or persons.

**Section 9.15.  Forum for Adjudication of Disputes**.  Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of a fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action asserting a claim arising pursuant to any provision of

22

the DGCL, or (iv) any action asserting a claim governed by the internal affairs doctrine.  Any person or entity purchasing or otherwise acquiring any interest in shares of capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this <u>Section 9.15</u>.

**Section 9.16.  Amendments**.  The Board shall not have the power to adopt, amend, alter or repeal the By-Laws.  The By-Laws may be adopted, amended, altered or repealed only with the consent of the stockholders holding two-thirds of the outstanding Common Stock.

*       *       *       *       *

**EXHIBIT 6.20**

**RETAINED CAUSES OF ACTION**[1]

Article 6.20 of the Plan provides that, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors shall retain and may (but are not required to) enforce all rights to commence and pursue any and all Causes of Action that are not (a) released pursuant to Article 11.5 of the Plan or an order of the Bankruptcy Court or (b) GUC/Litigation Trust Causes of Action, whether arising before or after the Petition Date, including any actions or categories of actions specifically enumerated in this Exhibit 6.20, and such Causes of Action shall vest in the Reorganized Debtors as of the Effective Date.

"GUC/Litigation Trust Causes of Action" means all Causes of Action of the Debtors' Estates as of the Effective Date, including all Estate Avoidance Actions (other than Avoidance Actions against the Yieldcos and Avoidance Actions against the Prepetition First Lien Secured Parties and the Second Lien Creditors), to the extent such Causes of Action are not released, or settled with the consent of the Creditors' Committee, pursuant to Article 11.5 of the Plan or released or settled pursuant to an Order of the Bankruptcy Court (including the order approving the D&O Settlement Agreement [Docket No. 3453] (the "D&O Settlement Approval Order")) or the Committee/BOKF Plan Settlement Term Sheet.

For the avoidance of doubt, pursuant to the D&O Settlement Agreement and D&O Settlement Approval Order, the only GUC/Litigation Trust Causes of Action that are preserved with respect to the Individual Defendants (as defined in the D&O Settlement Agreement) are preference actions that may be brought under section 547 of the Bankruptcy Code.  To the extent any provision in the Plan (including this Plan Supplement) is inconsistent with the terms of the D&O Settlement Agreement or the D&O Settlement Approval Order, the D&O Settlement Agreement or the D&O Settlement Approval Order, as applicable, shall control.

**No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against them.  The Debtors and Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided in the Plan.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the Debtors and Reorganized Debtors expressly reserve all Causes of Action for later adjudication.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Second Amended Joint Plan of Reorganization of SunEdison, Inc. and its Debtor Affiliates.

Any Causes of Action pursuant to which the Reorganized Debtors seek to recover proceeds from Earnout Assets, Residual Assets, or Repatriated Cash shall be preserved and retained, and shall remain with the Reorganized Debtors and shall not be transferred to the GUC/Litigation Trust.

For the avoidance of doubt, the consent of the Reorganized Debtors shall be required to bring, settle, release, compromise, or enforce GUC/Litigation Trust Causes of Action (or decline to do any of the foregoing) to the extent such GUC/Litigation Trust Causes of Action interfere with (i) the Reorganized Debtors' collection of Earnout Proceeds, Residual Assets Proceeds, or Repatriated Cash or (ii) the continuing operations of TERP.

## EXHIBIT 7.1

**GUC/LITIGATION TRUST AGREEMENT**

This Litigation Trust Agreement (the "**Litigation Trust Agreement**"), dated as of _____, 2017 (the "**Effective Date**"),[1] by and among SunEdison, Inc. and certain of its affiliates (collectively, the "**Debtors**" and together with their non-Debtor affiliates, the "**Company**") and Drivetrain, LLC, as the trustee (the "**Original Trustee**"), is executed in order to establish a litigation trust (the "**Litigation Trust**") in connection with (i) the Committee Settlement incorporated as Annex II (the "**Committee Settlement**") to the *Order (I) Authorizing Debtors to (a) Obtain Senior Secured, Superpriority, Replacement Postpetition Financing Pursuant to Bankruptcy Code Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e), and (b) Utilize Cash Collateral Pursuant to Bankruptcy Code Section 363, (II) Authorizing Use of Proceeds to Repay Existing Senior Secured Superpriority, Postpetition Financing, and (III) Granting Adequate Protection to Prepetition Secured Parties Pursuant to Bankruptcy Code Sections 361, 362, 363 and 364* [ECF No. 2880] (together with all exhibits and annexes thereto, including, without limitation, the Committee Settlement, the "**Final DIP Order**") and (ii) the *First Amended Joint Plan of Reorganization of SunEdison Inc. and its Debtor Affiliates* [ECF No. 3314—Exhibit A to the Disclosure Statement] (as amended, the "**Plan**"), including the *Term Sheet for Settlement Among Debtors, Tranche B Roll Up Lenders/Steering Committee of Prepetition Second Lien Lenders and Noteholders, the Official Committee of Unsecured Creditors, and BOKF, N.A.* incorporated therein [ECF No. 3314—Exhibit 6.1 to the Plan] (the "**Global Settlement Term Sheet**").  Capitalized terms used in this Litigation Trust Agreement and not otherwise defined shall have the meanings ascribed to them in the Plan.

WITNESSETH

WHEREAS, commencing on April 21, 2016 and continuing from time to time thereafter, each Debtor commenced a case (collectively, the "**Chapter 11 Cases**") by filing a petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the Southern District of New York (the "**Bankruptcy Court**") which Chapter 11 Cases are jointly administered under case no. 16-10992 (SMB);

WHEREAS, on April 29, 2016, the United States Trustee for the Southern District of New York appointed an official committee of unsecured creditors (as may be reconstituted from time to time, the "**Creditors' Committee**") in the Chapter 11 Cases;

WHEREAS, on November 28, 2016, the Debtors funded $10,000,000 into a segregated bank account with U.S. Bank National Association to be controlled by the Debtors for the benefit of the general unsecured creditors pending the establishment of the Litigation Trust;

WHEREAS, on May 1, 2017, the Bankruptcy Court entered the Final DIP Order, including the Committee Settlement attached thereto;

WHEREAS, on June 9, 2017, the Debtors, the Tranche B Roll Up Lenders/Steering Committee of Prepetition Second Lien Lenders and Noteholders (the "**Ad Hoc Group**"), the Creditors' Committee, and BOKF, N.A. ("**BOKF**" or the "**Convertible Senior Notes Indenture Trustee**") executed the Global Settlement Term Sheet;

---

[1] NTD:  This draft contemplates that parties will enter into this agreement on the same day as the Effective Date for the Plan.

WHEREAS, on June 11, 2017, the Debtors filed the Plan;

WHEREAS, on July 6, 2017, the Debtors filed the [*Plan Supplement*] [ECF No. [NUMBER]] (the "**Plan Supplement**");

WHEREAS, on [July 20, 2017], the Bankruptcy Court entered an order confirming the Plan [ECF No. [NUMBER]] (the "**Confirmation Order**");

WHEREAS, the Litigation Trust is created pursuant to, and to effectuate certain provisions of, the Final DIP Order, the Committee Settlement contained therein, the Plan, and the Global Settlement Term Sheet, pursuant to which the Litigation Trust will hold the Litigation Trust Assets (as defined herein);

WHEREAS, the Litigation Trust is organized for the sole purpose of liquidating the Litigation Trust Assets in an expeditious but orderly manner for the benefit of the Litigation Trust Beneficiaries, including the investigation and prosecution of the Litigation Trust Causes of Action (as defined herein), with no objective to continue or engage in the conduct of a trade or business, except, to the extent reasonably necessary to effectuate, and consistent with, the liquidating purpose of the Litigation Trust;

WHEREAS, the Litigation Trust is intended to be classified for U.S. federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and thus as a "grantor trust" within the meaning of Sections 671 through 677 of the Internal Revenue Code of 1986, as amended (the "**IRC**"), with the Litigation Trust Beneficiaries treated for U.S. federal income tax purposes as the grantors and owners of their respective shares of the Litigation Trust Assets (as defined herein), other than with respect to any assets allocable to, or retained on account of, Disputed Claims (*i.e.*, the GUC Disputed Claims Reserve); and

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein, in the Final DIP Order, the Committee Settlement, the Plan, and the Global Settlement Term Sheet, the Debtors or, from and after the Effective Date, any successor thereto, by merger, consolidation, or otherwise (the "**Reorganized Debtors**"), the Creditors' Committee and the Litigation Trustee (as defined herein) agree as follows:

ARTICLE 1

ESTABLISHMENT OF LITIGATION TRUST

1.1    Establishment of Litigation Trust; Appointment of Original Trustee and Litigation Trust Oversight Board.

(a)    Pursuant to the Final DIP Order, the Committee Settlement contained therein, the Plan, and the Global Settlement Term Sheet, the Debtors and the Creditors' Committee hereby establish a trust which shall be known as the "SunEdison Litigation Trust" on behalf of holders of Class A Litigation Trust Interests (including and subject to the rights of the Convertible Senior Notes Indenture Trustee) and Class B Litigation Trust Interests (each as

3

defined herein, and collectively, the "**Litigation Trust Beneficiaries**") in accordance with the Plan and the Global Settlement Term Sheet.

(b)    The Original Trustee is hereby appointed as trustee of the Litigation Trust and agrees to accept and hold the Litigation Trust Assets in trust for the Litigation Trust Beneficiaries subject to the terms of this Litigation Trust Agreement, the Plan, and the Confirmation Order.  The Original Trustee and each successor trustee serving from time-to-time duly appointed hereunder (the "**Litigation Trustee**") shall have all the rights, powers, and duties set forth herein.  The term of the Original Trustee shall be for three (3) years, subject to an extension of such term by a majority vote of the Litigation Trust Oversight Board (as defined herein).

(c)    A board created and selected by the Creditors' Committee (the "**Litigation Trust Oversight Board**") is hereby appointed to oversee the Litigation Trust and the activities of the Litigation Trustee.  The Litigation Trust Oversight Board shall consist of three (3) members and each successor member serving from time-to-time duly appointed hereunder (each, a "**Litigation Trust Oversight Board Member**"), one of whom shall be the Litigation Trustee and a majority of whom shall be "United States persons" within the meaning of Section 7701(a)(30) of the IRC, and shall have all the rights, powers, and duties set forth herein.  The term of each Litigation Trust Oversight Board Member, other than the Litigation Trustee (collectively, such other Litigation Trust Oversight Board Members, the "**Non-Trustee Oversight Board Members**") shall be five (5) years, subject to an extension of such term by a majority vote of the Litigation Trust Oversight Board if the term of the Litigation Trust is extended beyond its original five (5) year term.

1.2    <u>Transfer of Assets and Rights to Litigation Trustee</u>.

(a)    On the Effective Date, the Debtors, pursuant to terms of the Global Settlement Term Sheet, the Plan, and the Confirmation Order, hereby transfer, assign and deliver to the Litigation Trust, without recourse, all of their respective rights, title, and interests, free and clear of any and all Liens, Claims (other than Claims in the nature of setoff or recoupment), encumbrances or interests of any kind in such property of any other Person or Entity, in and to:

(i) all Causes of Action of the Debtors' Estates as of the Effective Date, including all Estate Avoidance Actions (other than Avoidance Actions against the YieldCos and Avoidance Actions against the Prepetition First Lien Secured Parties and the Second Lien Creditors), to the extent such Causes of Action are not released or settled with the consent of the Creditors' Committee, pursuant to Article 11.5 of the Plan or released or settled pursuant to an Order of the Bankruptcy Court (including the order approving the D&O Settlement Agreement [Docket No. 3453] (the "**D&O Settlement Approval Order**"))[2] or the Global Settlement Term

---

[2] For the avoidance of doubt, pursuant to the D&O Settlement Agreement and the D&O Settlement Approval Order, the only Estate Causes of Action against the Individual Defendants (as defined in the D&O Settlement Agreement) that are preserved for transfer to the Litigation Trust are preference actions that may be brought under section 547 of the Bankruptcy Code.  To the extent any provision in the Plan (including this Litigation Trust Agreement and the other exhibits to the Plan Supplement) is inconsistent with the terms of the D&O Settlement Agreement or the D&O Settlement Approval Order, the D&O Settlement Agreement or the D&O Settlement Approval Order, as applicable, shall control.

Sheet prior to the Effective Date, including the Causes of Action set forth on **Exhibit A** (the "**Litigation Trust Causes of Action**"); and

(ii) Cash of $57,500,000.00 representing the sum of (A) the initial funding for the Litigation Trust as contemplated by the Committee Settlement; (B) proceeds allocable from the D&O Insurance in the amount of $32,000,000.00, pursuant to the terms of the D&O Settlement Agreement and the D&O Settlement Approval Order; and (C) the settlement of certain Avoidance Actions in connection with the YieldCo Settlement Motion; plus at least $5,000,000.00 in Cash on account of Professional Fee Reductions (the "**Voluntary Professional Fee Reduction Amount**"), as well as all additional Voluntary Professional Fee Reductions that exceed the Voluntary Professional Fee Reduction Amount (collectively, the "**Litigation Trust Initial Cash Assets**", and together with the Litigation Trust Causes of Action, the proceeds of the Litigation Trust Causes of Action, and the Net Avoidance Action Proceeds (as defined herein), the "**Litigation Trust Assets**").

(b)     On the Effective Date, the Litigation Trust shall assume responsibility for the Claims Reconciliation Process (as defined in Annex I of the Global Settlement Term Sheet), including with respect to the initiation or continuance of claims objection prosecution. Copies of the Debtors' books and records that relate to claims objections shall be made available to the Litigation Trust promptly following the Effective Date. On and after the Effective Date, the Reorganized Debtors shall use commercially reasonable efforts to cooperate with the Litigation Trust in connection with due diligence and other reasonable assistance regarding the prosecution of the Claims Reconciliation Process and the Litigation Trust Causes of Action as may be reasonably requested by the Litigation Trust, including with respect to providing all relevant documents, evidence, and existing information in their possession or in the possession of their advisors or representatives on the Effective Date. Following the Effective Date, if the actual, reasonable, and documented out-of-pocket costs and expenses of the Reorganized Debtors (including fees and expenses of outside third-parties and/or firms; but not including charges for salaried employees of the Reorganized Debtors) incurred in carrying out the services described in this paragraph and/or Annex 1 of the Global Settlement Term Sheet exceed $250,000 in the aggregate (the amount exceeding $250,000 defined as "**Excess Expenses**"), the Litigation Trust shall promptly reimburse the Reorganized Debtors for the Excess Expenses. The parties shall agree in writing to the scope of work and expected charges regarding requests by the Litigation Trust that are expected to result in the incurrence of out-of-pocket costs prior to the Reorganized Debtors' performance of such tasks or incurrence of such costs and expenses. The Litigation Trustee and/or the Litigation Trust Oversight Board shall raise any disputes relating to a reimbursement request within thirty (30) days of receipt thereof, and the Bankruptcy Court shall resolve any such disputes that are not resolved among the parties.

(c)     To the extent any Litigation Trust Assets cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Litigation Trust Assets shall be deemed to have been retained by the Debtors and the Litigation Trustee shall be deemed to have been designated as a representative of the Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Litigation Trust Assets on behalf of the Debtors. Notwithstanding the foregoing, all net proceeds of such Litigation Trust Assets shall be transferred to the Litigation

5

Trust to be distributed to the Litigation Trust Beneficiaries consistent with the Plan and the Global Settlement Term Sheet.

(d) The transfer of the Liquidating Trust Assets shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other tax, pursuant to section 1146(a) of the Bankruptcy Code.

(e) The Litigation Trust Trustee will seek to preserve and protect all applicable privileges and work-product relating to the Claims Reconciliation Process and the Litigation Trust Causes of Action, including but not limited to any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral).  The Litigation Trust Trustee's receipt of such information shall not waive any privileges and all such privileges are preserved. Notwithstanding the foregoing, in the event the Litigation Trust Trustee seeks to waive any privilege on behalf of the Litigation Trust or the Debtors, as applicable, with respect to the Litigation Trust Assets, it shall get the prior written consent of the Reorganized Debtors, which consent shall not be unreasonably withheld.

1.3    Title to Litigation Trust Assets.

Transfer of the Litigation Trust Assets to the Litigation Trust shall be made for the benefit of the Litigation Trust Beneficiaries to the extent such Litigation Trust Beneficiaries are entitled to beneficial interests therein (the "**Litigation Trust Interests**").  The Litigation Trust Interests shall be comprised of two tranches of interests, which will be provided on the Effective Date to (a) holders of General Unsecured Claims (the "**Class A Litigation Trust Interests**") and (b) holders of Second Lien Claims (the "**Class B Litigation Trust Interests**"). The Litigation Trust Interests shall have the respective rights to share in the Litigation Trust Assets and the governance rights set forth on **Exhibit B** hereto (the "**Litigation Trust Interests Overview**").  Upon the transfer of the Litigation Trust Assets, the Litigation Trust shall succeed to all of the right, title, and interest of the Debtors in and to the Litigation Trust Assets and the Debtors shall not have any further interest in or with respect to the Litigation Trust Assets or the Litigation Trust.

1.4    Nature and Purpose of Litigation Trust.

(a)    Purpose.  The Litigation Trust is organized and established as a trust, subject to the terms and conditions contained herein, in the Final DIP Order, the Plan, and the Global Settlement Term Sheet, for the sole purpose of liquidating the Litigation Trust Assets in an expeditious but orderly manner for the benefit of the Litigation Trust Beneficiaries, including the investigation and prosecution of the Litigation Trust Causes of Action, with no objective to continue or engage in the conduct of a trade or business, except, to the extent reasonably necessary to effectuate, and consistent with, the liquidating purpose of the Litigation Trust.

(b)    Fees and Expenses.  From and after the Effective Date, the Litigation Trust shall pay fees and expenses of professionals retained by the Litigation Trustee incurred in the investigation and prosecution of Litigation Trust Causes of Action ("**Investigation/Prosecution Fees and Expenses**") subject in all respects to the procedures and

approvals to be established by the Litigation Trust Oversight Board (the "**Approval Procedures**").

(c)    Actions of Litigation Trustee.  Subject to Section 3.8 hereof, the Litigation Trustee shall, in an expeditious but orderly manner, liquidate and convert to cash the Litigation Trust Assets, make timely distributions in accordance with Article 6 of this Litigation Trust Agreement, and not unduly prolong the duration of the Litigation Trust.  The liquidation of the Litigation Trust Assets may be accomplished through the prosecution, compromise and settlement, abandonment, dismissal or assignment of any or all claims, rights or causes of action, or otherwise.  With respect to Litigation Trust Assets involving asserted Claims of less than $1,000,000, the Litigation Trustee shall have the absolute right to pursue, settle and compromise or not pursue any and all such Litigation Trust Assets as it determines is in the best interests of the Litigation Trust Beneficiaries and consistent with the purposes of the Litigation Trust.  With respect to Litigation Trust Assets involving asserted Claims of $1,000,000 or more, the Litigation Trustee shall have the right to pursue, settle and compromise or not pursue any and all such Litigation Trust Assets as it determines is in the best interests of the Litigation Trust Beneficiaries, and consistent with the purposes of the Litigation Trust, subject to approval by the majority vote of the Litigation Trust Oversight Board.  The Litigation Trustee shall have no liability for the outcome of any such decision except for any damages caused by gross negligence, willful misconduct, or knowing violation of law.

(d)    Relationship.  This Litigation Trust Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust.  The Litigation Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Litigation Trustee or the Litigation Trust Beneficiaries, or any of them, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint ventures.  The relationship of the Litigation Trust Beneficiaries to the Litigation Trust and the Litigation Trustee shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Litigation Trust Agreement.

1.5    Incorporation of the Plan, Global Settlement Term Sheet, and Committee Settlement.

Both (i) the Plan (including the Global Settlement Term Sheet) and (ii) to the extent not superseded by the Plan (including the Global Settlement Term Sheet), the Final DIP Order (including the Committee Settlement) are hereby incorporated into this Litigation Trust Agreement and made a part hereof by this reference; *provided, however*, to the extent that there is a conflict between the provisions of the Litigation Trust Agreement and the Final DIP Order (including the Committee Settlement), the Plan (including the Global Settlement Term Sheet), or the Confirmation Order, the terms of the Confirmation Order shall control.

1.6    Appointment as Representative.

Upon the Effective Date, the Litigation Trustee is appointed as the duly appointed representative of the Debtors and their estates with respect to the Litigation Trust Assets, and, as

such, upon such appointment, the Litigation Trustee succeeds to all of the rights and powers of a trustee in bankruptcy with respect to prosecution of the Litigation Trust Assets for the benefit of the Litigation Trust Beneficiaries.

      1.7      <u>Reservation of Rights Regarding Litigation Trust Causes of Action</u>.

      **No Entity may rely on the absence of a specific reference in the Plan or the Plan Supplement to any Litigation Trust Cause of Action against them as any indication that the Litigation Trust will not pursue any and all available Litigation Trust Causes of Action against them. The Litigation Trust expressly reserves all rights to prosecute any and all Litigation Trust Causes of Action against any Entity, except as otherwise provided in the Plan or an order of the Bankruptcy Court.** Unless a specific Litigation Trust Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the Litigation Trust expressly reserves such Litigation Trust Causes of Action for later adjudication.

ARTICLE 2

LITIGATION TRUST INTERESTS

      2.1      <u>Allocation of Litigation Trust Interests</u>.

      As of the Effective Date, the Litigation Trust shall be authorized to make distributions of Litigation Trust Interests to Litigation Trust Beneficiaries in accordance with the Plan (including the Global Settlement Term Sheet) and the Confirmation Order. The distribution of the Litigation Trust Interests shall be accomplished as and when determined by the Litigation Trustee in consultation with the Litigation Trust Oversight Board. The aggregate number and face value of the Class A Litigation Trust Interests to be distributed to holders of allowed General Unsecured Claims on a *pro rata* basis or Class B Litigation Trust Interests to be distributed to holders of allowed Second Lien Claims on a *pro rata* basis shall be determined by the Litigation Trustee, in accordance with the Plan (including the Global Settlement Term Sheet) and the Confirmation Order.

      2.2      <u>Interests Beneficial Only</u>.

      The ownership of a Litigation Trust Interest shall not entitle any Litigation Trust Beneficiary to any title in or to the assets of the Litigation Trust as such (which title shall be vested in the Litigation Trustee) or to any right to call for a partition or division of the assets of the Litigation Trust or to require an accounting.

      2.3      <u>Evidence of Beneficial Interests</u>.

      Subject to <u>Section 2.5(c)</u> hereof, the ownership of Litigation Trust Interests when issued initially shall be represented by the recording of such ownership in an electronic book-entry system ("**<u>Book Entry System</u>**") maintained by either the Litigation Trust or an agent of the Litigation Trust. A Litigation Trust Beneficiary shall be deemed the "holder of record" (hereinafter "<u>holder</u>") of the Litigation Trust Interest(s) recorded in its name for purposes of all applicable United States federal and state laws, rules and regulations. The Litigation Trustee

8

shall, upon the written request of a holder of a Litigation Trust Interest, provide reasonably adequate documentary evidence of such holder's Litigation Trust Interest, as indicated in the Book Entry System.  The expense of providing such documentation shall be borne by the requesting holder.

2.4    Securities Law Registration.

It is intended that the Litigation Trust Interests shall not constitute "securities."  If the Litigation Trustee determines, with the advice of counsel, that the Litigation Trust is required to comply with registration and reporting requirements of the Securities Exchange Act of 1934, as amended (the "**Exchange Act**"), or the Investment Company Act of 1940, as amended (the "**Investment Company Act**"), then the Litigation Trustee shall take any and all actions to comply with such registration and reporting requirements, if any, and file periodic reports with the Securities and Exchange Commission (the "**SEC**").  Notwithstanding the foregoing procedure, nothing herein shall be deemed to preclude the Litigation Trustee from amending this Litigation Trust Agreement to make such changes as are deemed necessary or appropriate by the Litigation Trustee, with the advice of counsel, to ensure that the Litigation Trust is not subject to registration or reporting requirements of the Exchange Act, or the Investment Company Act.

2.5    Transferability; Records.

(a)    The Litigation Trust Interests shall be freely negotiable and transferable to the extent provided herein and permitted by applicable securities laws.

(b)    Pursuant to the Book Entry System, the Litigation Trust shall maintain, or cause an agent of the Litigation Trust to maintain, a copy of each assignment instrument delivered to it from time to time and a register (which may be electronic) for the recordation of the names and addresses of the Litigation Trust Beneficiaries, and the amount and class of their respective Litigation Trust Interests from time to time.  Any transfer of a Litigation Trust Interest shall not be effective unless and until such transfer is recorded in the Book Entry System in accordance with the terms herein.  Subject to Section 2.5(c), the entries in the Book Entry System shall be conclusive absent manifest error, and the Litigation Trust and the Litigation Trustee shall treat each person whose name is recorded in the Book Entry System pursuant to the terms hereof as the owner of Litigation Trust Interests indicated therein for all purposes of this Litigation Trust Agreement, notwithstanding notice to the contrary.

(c)    Notwithstanding any provision to the contrary, the Litigation Trustee shall not recognize, and shall not record, any transfer of Litigation Trust Interests unless and until sufficient information regarding the sale and transferee (as reasonably determined by the Litigation Trustee) is provided using the litigation trust interest transfer form (attached hereto as **Exhibit C**, the "**Litigation Trust Interest Transfer Form**") and such Litigation Trust Interest Transfer Form and any other information requested by the Litigation Trustee is received and approved by the Litigation Trustee, including, without limitation, any tax information (including, without limitation, social security numbers or other tax identification numbers) and completed Internal Revenue Service ("**IRS**") forms as the Litigation Trustee, in its sole discretion, deems necessary or appropriate.

9

(d)    Transfers of Litigation Trust Interests shall be recorded on the Book Entry System in accordance with such practices and procedures as shall be prescribed by the Litigation Trustee under the supervision of the Litigation Trust Oversight Board, provided that the Litigation Trustee need not reflect any transfer and will give notice to such holder that no transfer has been recognized in the event the Litigation Trustee reasonably believes that such transfer (i) would constitute a violation of applicable laws or (ii) would cause the Litigation Trust to be required to register Litigation Trust Interests under, and/or to become subject to the reporting requirements of Sections 13 or 15(d) of the Exchange Act.

ARTICLE 3

LITIGATION TRUSTEE

3.1    Net Avoidance Action Proceeds.

All proceeds recovered by the Litigation Trust (or for the benefit of unsecured creditors) on account of Avoidance Actions (as defined in the Plan), net of fees and expenses expended to prosecute such Avoidance Actions (including fees paid on a contingency arrangement, any expenses of prosecuting the Litigation Trust Causes of Action or administering the Litigation Trust, including, without limitation, the costs associated with preparation of the Litigation Trust Reports (as defined below), and any taxes imposed on or with respect to such proceeds, all of which shall be deducted prior to any distribution of Net Avoidance Action Proceeds), other than proceeds from the Avoidance Actions against the YieldCos that are settled in connection with the YieldCo Avoidance Allocation, whether such Net Avoidance Actions Proceeds are recovered pursuant to the successful prosecution or settlement of such Avoidance Actions (the "**Net Avoidance Action Proceeds**") shall be added to the Litigation Trust Assets and held as part thereof (and to which title shall be vested in the Litigation Trustee).

3.2    Collection of Income.

The Litigation Trustee shall collect all income earned with respect to the Litigation Trust Assets, which shall thereupon become Litigation Trust Assets and held as a part of the Litigation Trust (and which title shall be vested in the Litigation Trust).

3.3    Funding and Payment of Litigation Trust Expenses.

(a)    The Litigation Trustee shall maintain a litigation expense fund (the "**Litigation Expense Fund**") in an amount (i) as is reasonably necessary to meet contingent liabilities and to maintain the value of the assets of the Litigation Trust during litigation, (ii) to pay reasonable administrative expenses (including but not limited to, the costs and expenses of the Litigation Trustee (including reasonable fees, costs, and expenses of professionals), any taxes imposed on the Litigation Trust or fees and expenses in connection with, arising out of or related to the Litigation Trust Assets), and (iii) to satisfy other liabilities incurred or assumed by the Litigation Trust (or to which the assets are otherwise subject) in accordance with this Litigation Trust Agreement.  The amounts held in the Litigation Expense Fund shall be subject to periodic review by the Litigation Trust Oversight Board.

(b)     The Litigation Expense Fund shall initially be funded from the Litigation Trust Initial Cash Assets and, thereafter, from any other Litigation Trust Assets. Accordingly, the Litigation Trustee may retain from the Net Avoidance Action Proceeds and proceeds of other Litigation Trust Causes of Action and add to the Litigation Expense Fund such amounts as the Litigation Trustee deems reasonable and appropriate to ensure that the Litigation Expense Fund will be adequate to meet the expenses and liabilities described in subsection (a) of this Section.

3.4     Distributions.

The Litigation Trustee shall distribute the net distributable assets of the Litigation Trust to the Litigation Trust Beneficiaries in accordance with the provisions of Article 6.

3.5     Tenure, Removal, and Replacement of Litigation Trustee.

(a)     The Litigation Trustee shall serve for three (3) years, until resignation and the appointment of a successor pursuant to subsection (b) below, removal pursuant to subsection (c) below, or death (if applicable). The Litigation Trust Oversight Board shall be authorized to extend the term of the Litigation Trustee.

(b)     The Litigation Trustee may resign by giving not less than sixty (60) days' prior written notice to the Litigation Trust Oversight Board, with a copy to counsel for the holders of Class B Litigation Trust Interests. Such resignation shall become effective on the later to occur of: (i) the day specified in such notice and (ii) the appointment of a successor trustee as provided herein and the acceptance by such successor trustee of such appointment. If a successor trustee is not appointed or does not accept its appointment within sixty (60) days following delivery of notice of resignation, the Litigation Trustee may file a motion with the Bankruptcy Court, upon notice and hearing, for the appointment of a successor trustee.

(c)     The Litigation Trustee may be removed by the affirmative vote of the majority of Litigation Trust Oversight Board by written consent or at the meeting of the Litigation Trust Oversight Board called for the purpose of removing the Litigation Trustee. Such removal shall become effective on the date action is taken by the Litigation Trust Oversight Board.

(d)     In the event of the death (in the case of a Litigation Trustee that is a natural person), dissolution (in the case of a Litigation Trustee that is not a natural person), resignation pursuant to Section 3.5(b) hereof, or removal of the Litigation Trustee pursuant to Section 3.5(c) hereof, the Litigation Trust Oversight Board may appoint a successor Litigation Trustee subject to the requirement that any successor Litigation Trustee be a "United States person" within the meaning of Section 7701(a)(30) of the IRC. Such appointment shall specify the date on which such appointment shall be effective. Notice of the appointment of a successor Litigation Trustee shall be filed with the Bankruptcy Court.

(e)     Immediately upon the appointment of any successor Litigation Trustee, all rights, powers, duties, authority, and privileges of the predecessor Litigation Trustee hereunder shall be vested in and undertaken by the successor trustee without any further act. The successor Litigation Trustee shall not be liable personally for any act of the predecessor Litigation Trustee.

11

(f)    Upon the appointment of a successor Litigation Trustee, the predecessor Litigation Trustee (or the duly appointed legal representative of a deceased Litigation Trustee) shall, if applicable, when requested in writing by the successor Litigation Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor trustee upon the trust herein expressed, without recourse to the predecessor Litigation Trustee, all the estates, properties, rights, powers and trusts of such predecessor Litigation Trustee, and shall duly assign, transfer, and deliver to such successor Litigation Trustee all property and money held hereunder, and all other assets and documents relating to the Litigation Trust, the Litigation Trust Assets, or the Litigation Trust Interests then in its possession and held hereunder.

(g)    The appointment of a successor Litigation Trustee will be evidenced by the successor Litigation Trustee's filing with the Bankruptcy Court of a notice of appointment, which notice will include the name, address, and telephone number of the successor Litigation Trustee.

    3.6    <u>Acceptance of Appointment by Successor Litigation Trustee</u>.

Any successor Litigation Trustee appointed hereunder shall execute an instrument accepting such appointment and assuming all of the obligations of the predecessor Litigation Trustee hereunder and thereupon the successor Litigation Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts, and duties of its predecessor in the Litigation Trust hereunder with like effect as if originally named herein.

    3.7    <u>Role of Litigation Trustee</u>.

In furtherance of and consistent with the purpose of the Litigation Trust, the Litigation Trustee shall have the power to (i) prosecute, compromise and settle, abandon, assign, or dismiss for the benefit of the Litigation Trust Beneficiaries all claims, rights, and causes of action transferred to the Litigation Trust (whether such suits are brought in the name of the Litigation Trustee or otherwise), and (ii) otherwise perform the functions and take the actions provided or permitted in this Litigation Trust Agreement, subject to the terms and conditions contained herein (including approval by the majority of the Litigation Trust Oversight Board for actions related to Litigation Trust Assets involving asserted Claims of $1,000,000 or more, as described in <u>Section 2.1(c)</u>).  In all circumstances, the Litigation Trustee shall act in the best interests of all the Litigation Trust Beneficiaries and in furtherance of the purpose of the Litigation Trust.

    3.8    <u>Authority of Litigation Trustee</u>.

Subject to any limitations contained herein, in the Plan, the Confirmation Order, or the Global Settlement Term Sheet, the Litigation Trustee shall have the following powers and authorities:

(a)    hold legal title to any and all rights of the holders of the Litigation Trust Interests in or arising from the Litigation Trust Assets, including, without limitation, collecting and receiving any and all money and other property belonging to the Litigation Trust and the right to vote any claim or interest relating to a Litigation Trust Asset in a case under the Bankruptcy Code and receive any distribution thereon;

(b)     perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code, including, without limitation, commencing, prosecuting or settling causes of action, enforcing contracts or asserting claims, defenses, offsets and privileges, but only as such duties and powers relate to the Litigation Trust Assets;

(c)     protect and enforce the rights to the Litigation Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(d)     obtain (with the Litigation Expense Fund) reasonable insurance coverage with respect to the liabilities and obligations of the Litigation Trustee and the Litigation Trust Oversight Board under this Litigation Trust Agreement (in the form of an errors and omissions policy or otherwise);

(e)     obtain (with the Litigation Expense Fund) insurance coverage with respect to real and personal property that may become assets of the Litigation Trust, if any;

(f)     retain and pay out of the Net Avoidance Action Proceeds such counsel and other professionals, including, without limitation, any professionals previously retained by the Creditors' Committee, as the Litigation Trustee shall select to assist the Litigation Trustee in its duties, on such terms as the Litigation Trustee deems reasonable and appropriate, without Bankruptcy Court approval; the Litigation Trustee may commit the Litigation Trust to and shall pay such counsel and other professionals reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred pursuant to the Approval Procedures; *provided, that* the Litigation Trustee shall file a notice summarizing the key terms of any retention (including the economic terms thereof) regarding the retention of any such advisors on a contingency fee basis (other than the Litigation Trustee) (each such notice, a "**Contingency Fee Advisor Retention Notice**") on the docket of the Bankruptcy Court and, following the filing of any Contingency Fee Advisor Retention Notice, at the request of any of the holders of Class B Litigation Trust Interests (or their advisor at the instruction of a holder), the Litigation Trustee shall provide additional information regarding the proposed contingency fee engagement (including the actual engagement letter on a confidential basis, if so requested).

(g)     retain and pay out of the Litigation Trust Expense Fund an independent public accounting firm to perform such reviews and/or audits of the financial books and records of the Litigation Trust as may be required by the SEC and applicable securities laws and as may be reasonable and appropriate in the Litigation Trustee's discretion and to prepare and file any tax returns, information returns, or periodic or current reports as required by applicable securities laws, for the Litigation Trust as may be required; the Litigation Trustee may commit the Litigation Trust to and shall pay such independent public accounting firm reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred;

(h)     retain and pay out of the Net Avoidance Action Proceeds such third parties to assist the Litigation Trustee in carrying out its powers and duties under this Litigation Trust Agreement; the Litigation Trustee may commit the Litigation Trust to and shall pay all such

persons or entities reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred pursuant to the Approval Procedures, as well as commit the Litigation Trust to indemnify any such parties in connection with the performance of services (provided that such indemnity shall not cover any losses, costs, damages, expenses or liabilities that result from the recklessness, gross negligence, willful misconduct, or knowing violation of law by such party);

(i)      subject to section 1.2(e), waive any privilege or any defense on behalf of the Litigation Trust or the Debtors, as applicable, with respect to the Litigation Trust Assets;

(j)      compromise, adjust, arbitrate, sue on or defend, pursue, prosecute, abandon, exercise rights, powers, and privileges with respect to, or otherwise deal with and settle, in accordance with the terms set forth herein, the Litigation Trust Assets;

(k)      with respect to the Litigation Trust Causes of Action, commence actions to avoid and recover transfers of the Debtors' property as permitted by the Plan and as may be permitted by the Bankruptcy Code or applicable state law;

(l)      invest any moneys held as part of the Litigation Trust in accordance with the terms of Section 3.15 hereof;

(m)      exercise all of the powers and authorities of the Litigation Trustee contained in Article 5 hereof;

(n)      subject to applicable securities laws, if any, establish and maintain a website for the purpose of providing notice of Litigation Trust activities in lieu of sending written notice to holders of Litigation Trust Interests, subject to providing notice of such website to such holders;

(o)      seek the examination of any entity, subject to the provisions of the Federal Rules of Evidence or any other applicable law or rule; and

(p)      take or refrain from taking any and all other actions that the Litigation Trustee, reasonably deems necessary or convenient for the continuation, protection and maximization of the Litigation Trust Assets or to carry out the purposes hereof.

3.9      Limitation of Litigation Trustee's Authority.

The Litigation Trustee shall, on behalf of the Litigation Trust, hold the Litigation Trust out as a trust in the process of liquidation and not as an investment company. Notwithstanding anything herein to the contrary, the Litigation Trustee shall not (i) be authorized to engage in any trade or business, (ii) take such actions inconsistent with the orderly liquidation of the assets of the Litigation Trust as are required or contemplated by applicable law, the Final DIP Order, the Plan, the Confirmation Order, and this Litigation Trust Agreement, or (iii) be authorized to engage in any investments or activities inconsistent with the treatment of the Litigation Trust as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684.

3.10    Books and Records.

The Litigation Trustee shall maintain books and records relating to the Litigation Trust Assets and income of the Litigation Trust and the payment of expenses of, and liabilities of claims against or assumed by, the Litigation Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting and securities law requirements of the Litigation Trust. Nothing in this Litigation Trust Agreement requires the Litigation Trustee to file any accounting or seek approval of any court with respect to the administration of the Litigation Trust, or as a condition for managing any payment or distribution out of the assets of the Litigation Trust.

3.11    Inquiries into Trustee's Authority.

Except as otherwise set forth in the Litigation Trust Agreement, no Person dealing with the Litigation Trust shall be obligated to inquire into the authority of the Litigation Trustee in connection with the protection, conservation, or disposition of the Litigation Trust Assets.

3.12    Compliance with Laws.

Any and all distributions of assets of the Litigation Trust and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, without limitation, applicable federal and state securities laws.

3.13    Compensation of Litigation Trustee.

The Litigation Trustee shall be reasonably compensated out of the Litigation Trust Expense Fund or the Net Avoidance Action Proceeds for its services, and reimbursed out of the Litigation Trust Initial Cash Assets or the Net Avoidance Action Proceeds for its reasonable expenses in accordance with the compensation schedule attached hereto as **Exhibit D** (the "**Trustee Compensation Schedule**") approved by the Creditors' Committee, subject to the approval of the Bankruptcy Court prior to the entry of the Confirmation Order. The terms of the Litigation Trustee's engagement shall include a monthly compensation arrangement for the first two (2) years of the engagement (with the Litigation Trustee having the ability to reasonably negotiate for further monthly compensation thereafter, subject to the approval of the Non-Trustee Oversight Board Members) and tiered contingent compensation arrangement for Net Avoidance Action Proceeds collected in accordance with the terms of the Trustee Compensation Schedule.

3.14    Reliance by Litigation Trustee.

Except as otherwise provided herein:

(a)    the Litigation Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Litigation Trustee to be genuine and to have been signed or presented by the proper party or parties; and

(b)    Persons dealing with the Litigation Trustee shall look only to the Litigation Trust Assets to satisfy any liability incurred by the Litigation Trustee to such Person in carrying out the terms of this Litigation Trust Agreement, and the Litigation Trustee shall not have any personal obligation to satisfy any such liability.

3.15    <u>Investment and Safekeeping of Litigation Trust Assets</u>.

The Litigation Trustee shall invest all Cash assets transferred to the Litigation Trust, all Net Avoidance Action Proceeds, the Litigation Expense Fund, and all income earned by the Litigation Trust only in cash, cash equivalents, U.S. Treasury securities, money market investments, and similar investments; *provided, however*, that (a) the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the guidelines of the IRS, whether set forth in IRS rulings, other IRS pronouncements or otherwise and (b) the Litigation Trustee may retain any Net Avoidance Action Proceeds received that are not cash only for so long as may be required for the prompt and orderly liquidation of such assets in cash.

3.16    <u>Standard of Care; Exculpation</u>.

Neither the Litigation Trustee nor any of its duly designated agents or representatives or professionals shall be liable for any act or omission taken or omitted to be taken by the Litigation Trustee in good faith, other than acts or omissions resulting from the Litigation Trustee's own gross negligence, recklessness, willful misconduct, or knowing violation of law.  The Litigation Trustee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons.  Notwithstanding such authority, the Litigation Trustee shall be under no obligation to consult with its attorneys, accountants, financial advisors or agents, and its good faith determination not to do so shall not result in the imposition of liability on the Litigation Trustee, unless such determination is based on gross negligence, recklessness, willful misconduct, or knowing violation of law.

3.17    <u>Restriction as to Subsidiaries</u>.

The Litigation Trust shall not hold 50% or more of the stock (in either vote or value) of any entity that is treated as a corporation for U.S. federal income tax purposes, nor be the sole member of a limited liability company, nor have any interest in an entity that is treated as a partnership for U.S. federal income tax purposes, unless such stock, membership interest, or partnership interest was obtained involuntarily or as a matter of practical economic necessity in order to preserve the value of the assets of the Litigation Trust.

# ARTICLE 4

## LITIGATION TRUST OVERSIGHT BOARD

4.1     Litigation Trust Oversight Board.

At all times during the existence of the Litigation Trust, there shall be a three-member Litigation Trust Oversight Board, which shall consist of (i) two (2) Non-Trustee Oversight Board Members and (ii) the Litigation Trustee; *provided*, *that* the remaining members of the Litigation Trust Oversight Board Members may elect to not fill a Non-Trustee Oversight Board Member vacancy pursuant to Section 4.2 of this Litigation Trust Agreement.  On the Effective Date, the Litigation Trust Oversight Board shall become effective and shall consist of the Original Trustee, the Trustee, Mr. Robert Egan, a designee of Flextronics Industrial Ltd., and Mr. Neal Goldman, a designee representing the interests of the Convertible Senior Noteholders.  The Litigation Trust Oversight Board Members shall owe fiduciary duties to the Litigation Trust Beneficiaries.  Upon appointment, the Litigation Trust Oversight Board shall have the rights, powers, and duties described herein and shall have such other rights to operate and manage the Litigation Trust as are not inconsistent with the terms of this Litigation Trust Agreement.

4.2     Authority of Litigation Trust Oversight Board.

The Litigation Trust Oversight Board shall have the authority and responsibility to (i) oversee, review, and guide the activities and performance of the Litigation Trustee (ii) approve, by a majority vote, the prosecution, compromise and settlement, abandonment, dismissal, or assignment of Litigation Trust Causes of Action relating to asserted Claims of $1,000,000.00 or more; (iii) remove the Litigation Trustee in accordance with the provisions of Article 3 herein; (iv) adjust the minimum threshold value for the settlement or other resolution of Claims subject to its approval as set forth in section (ii) of this provision; (v) fill any Non-Trustee Oversight Board Member vacancy on the Litigation Trust Oversight Board or elect not to fill such vacancy; and (vi) act in a manner consistent with such other rights, powers, and duties described in this Litigation Trust Agreement.  The Litigation Trustee shall consult with and provide information to the Litigation Trust Oversight Board in accordance with and pursuant to the terms of this Litigation Trust Agreement, the Plan (including the Global Settlement Term Sheet), and the Confirmation Order.  The Litigation Trust Oversight Board shall have the authority to select and engage such Persons, and select and engage such professional advisors, in accordance with the Plan (including the Global Settlement Term Sheet), the Confirmation Order, and this Litigation Trust Agreement as the Litigation Trust Oversight Board deems necessary and desirable to assist the Litigation Trust Oversight Board in fulfilling its obligations under this Litigation Trust Agreement, and the Litigation Trustee shall pay, out of the Net Avoidance Action Proceeds or the Litigation Trust Initial Cash Assets, the reasonable fees of such Persons (including on an hourly, contingency, or modified contingency basis) and reimburse such Persons for their reasonable and documented out-of-pocket costs and expenses consistent with the terms of this Litigation Trust Agreement.

4.3     Regular Meetings of Litigation Trustee and Litigation Trust Oversight Board.

        Meetings of the Litigation Trustee and the Litigation Trust Oversight Board are to be held with such frequency and at such place as the Litigation Trust Oversight Board may determine in its sole discretion, but in no event shall such meetings be held less frequently than quarterly.

4.4     Special Meetings of Litigation Trustee and Litigation Trust Oversight Board.

        Special meetings of the Litigation Trustee and the Litigation Trust Oversight Board may be held whenever and wherever called for by the Litigation Trustee or at least two members of the Litigation Trust Oversight Board.

4.5     Notice of and Waiver of Notice for, Litigation Trustee and Litigation Trust Oversight Board.

        Notice of the time and place (but not necessarily the purpose or all of the purposes) of any regular or special meeting shall be given to the Litigation Trustee and the members of the Litigation Trust Oversight Board in person or by telephone, or via email or electronic mail.  Notice to the Litigation Trustee and the members of the Litigation Trust Oversight Board of any such special meeting shall be deemed given sufficiently in advance when (i) if given by mail, the same is deposited in the United States mail at least ten (10) calendar days before the meeting date, with postage thereon prepaid, (ii) if given by electronic mail, the same is transmitted at least three (3) Business Days prior to the convening of the meeting (to the extent reasonably possible), or (iii) if personally delivered (including by overnight courier) or given by telephone, the same is handed, or the substance thereof is communicated over the telephone to the Litigation Trustee and the members of the Litigation Trust Oversight Board or to an adult member of his/her office staff or household, at least one (1) Business Day prior to the convening of the meeting.  The Litigation Trustee and any member of the Litigation Trust Oversight Board may waive notice of any meeting and any adjournment thereof at any time before, during, or after it is held, as provided by law.  Except as provided in the next sentence below, the waiver must be in writing, signed by the Litigation Trustee or the applicable member or members of the Litigation Trust Oversight Board entitled to the notice, and filed with the minutes or records of the Litigation Trust.  The attendance of the Litigation Trustee or a member of the Litigation Trust Oversight Board at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.

4.6     Manner of Acting.

        (a)     A majority of the total number of members of the Litigation Trust Oversight Board then in office shall constitute a quorum for the transaction of business at any meeting of the Litigation Trust Oversight Board.  The affirmative vote of a majority of the members of the Litigation Trust Oversight Board present and entitled to vote at a meeting at which a quorum is present shall be the act of the Litigation Trust Oversight Board except as otherwise required by law or as provided in this Litigation Trust Oversight Board.  In the event

that a vote of the Litigation Trust Oversight Board taken at a meeting at which a quorum is present results in a tie, the vote of the Litigation Trustee shall determine whether the proposed action is approved by the Litigation Trust Oversight Board.  The Litigation Trust Oversight Board may also take action by written consent in accordance with Section 4.7 hereof.

(b)    Any or all of the members of the Litigation Trust Oversight Board may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.  The Litigation Trustee or any member of the Litigation Trust Oversight Board participating in a meeting by this means is deemed to be present in person at the meeting.  Voting may, if approved by the majority of the members at a meeting, be conducted by electronic mail or individual communications by the Litigation Trustee and each member of the Litigation Trust Oversight Board.

(c)    Any member of the Litigation Trust Oversight Board who is present and entitled to vote at a meeting of the Litigation Trust Oversight Board when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Litigation Trust Oversight Board unless: (i) such member of the Litigation Trust Oversight Board objects at the beginning of the meeting (or promptly upon his/her arrival) to holding it or transacting business at the meeting; (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice (including by electronic transmission) of his/her dissent or abstention to the Litigation Trust Oversight Board before its adjournment.  The right of dissent or abstention is not available to any member of the Litigation Trust Oversight Board who votes in favor of the action taken.

(d)    Prior to the taking of a vote on any matter or issue or the taking of any action with respect to any matter or issue, each member of the Litigation Trust Oversight Board shall report to the Litigation Trust Oversight Board any conflict of interest such member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such member might have with respect to or in connection with such matter or issue, other than solely as a Litigation Trust Beneficiary).  A member who has or who may have a conflict of interest shall be deemed to be a "conflicted member" who shall not be entitled to vote or take part in any action with respect to such matter or issue (however such member shall be counted for purposes of determining the existence of a quorum); the vote or action with respect to such matter or issue shall be undertaken only by members of the Litigation Trust Oversight Board who are not "conflicted members."

4.7    Litigation Trust Oversight Board's Action without a Meeting.

Any action required or permitted to be taken by the Litigation Trust Oversight Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Litigation Trust Oversight Board as evidenced by one or more written consents describing the action taken, signed by all members of the Litigation Trust Oversight Board and

recorded in the minutes or other transcript of proceedings of the Litigation Trust Oversight Board and the required notice of meeting has been given in accordance with Section 4.5 hereof.

       4.8     Tenure, Removal and Replacement of Non-Trustee Oversight Board Members.

      The authority of the Non-Trustee Oversight Board Members shall be effective as of the Effective Date and shall remain and continue in full force and effect until the Litigation Trust is terminated in accordance with Section 10.1 hereof. The service of the members of the Non-Trustee Oversight Board Members shall be subject to the following:

      (a)     The Non-Trustee Oversight Board Members will serve for five (5) years (subject to extension of such term by a majority vote of the Litigation Trust Oversight Board if the term of the Litigation Trust is extended beyond its original five (5) year term), until death or resignation pursuant to subsection (b) below or removal pursuant to subsection (c) below.

      (b)     A Non-Trustee Oversight Board Member may resign at any time by providing a written notice of resignation to the remaining members of the Litigation Trust Oversight Board. Any Non-Trustee Oversight Board Member who resigns shall continue to serve until the earlier of (i) the appointment of his or her successor; (ii) a determination by a majority of the remaining Litigation Trust Oversight Board Members to not fill the vacancy created by the resigning Non-Trustee Oversight Board Member; and (iii) ninety (90) days after the delivery of such written notice.

      (c)     A Non-Trustee Oversight Board Member may be removed by the majority vote of the other members of the Litigation Trust Oversight Board, written resolution of which shall be delivered to the removed Litigation Trust Oversight Board member; provided, however, that such removal may only be made for Cause. For purposes of this Section 4.8(c), "Cause" shall be defined as: (i) such Litigation Trust Oversight Board member's theft or embezzlement or attempted theft or embezzlement of money or tangible or intangible assets or property; (ii) such Litigation Trust Oversight Board member's violation of any law (whether foreign or domestic), which results in a felony indictment or similar judicial proceeding; (iii) such Litigation Trust Oversight Board member's recklessness, gross negligence, willful misconduct, or knowing violation of law, in the performance of his or her duties; or (iv) such Litigation Trust Oversight Board member's failure to perform any of his or her other material duties under this Litigation Trust Agreement (including the regular attendance at meetings); *provided*, *however*, that such Litigation Trust Oversight Board member shall have been given a reasonable period to cure any alleged cause under clause (iii) (other than willful misconduct or violation of law that results in a felony indictment or similar judicial proceeding) and clause (iv).

      (d)     In the event of a vacancy on the Litigation Trust Oversight Board due to the removal, death, or resignation of a Non-Trustee Oversight Board Member, a new member may be appointed to fill such position by the remaining members of the Litigation Trust Oversight Board. In the event that there are no remaining members of the Litigation Trust Oversight Board, appointments to fill such vacancies that would have been made by the remaining members of the Litigation Trust Oversight Board shall be made upon an order entered after an opportunity for a hearing by the Bankruptcy Court, upon motion of the Litigation Trustee. Successor members appointed to be Non-Trustee Oversight Board Members must

satisfy the requirement that a majority of the Litigation Trust Oversight Board Members be "United States persons" within the meaning of Section 7701(a)(30) of the IRC.

(e)     Immediately upon the appointment of any successor member of the Litigation Trust Oversight Board, all rights, powers, duties, authority, and privileges of the predecessor member of the Litigation Trust Oversight Board hereunder shall be vested in and undertaken by the successor member of the Litigation Trust Oversight Board without any further act; and the successor member of the Litigation Trust Oversight Board shall not be liable personally for any act or omission of the predecessor member of the Litigation Trust Oversight Board.

(f) The appointment of a successor member of the Litigation Trust Oversight Board shall be evidenced by the Litigation Trustee's filing with the Bankruptcy Court of a notice of appointment, which notice shall include the name, address, and telephone number of the successor member of the Litigation Trust Oversight Board.

4.9     Compensation of Litigation Trust Oversight Board.

Each Non-Trustee Oversight Board Member of the Litigation Trust Oversight Board shall be paid, by the Litigation Trust out of the Litigation Trust Expense Fund, (i) the amount of $25,000 annually as compensation for performance of its duties and services hereunder (all such duties or services are referred to herein as the "**Duties**") and reasonable out-of-pocket expenses related to the Duties, and (ii) reimbursement from the Litigation Trust for reasonable, documented out-of-pocket expenses incurred in the performance of such member's Duties.  For the avoidance of doubt, Non-Trustee Oversight Board Members shall not be entitled to reimbursement of expenses incurred relating to their own attorneys or professionals.

4.10     Standard of Care; Exculpation.

None of the Litigation Trust Oversight Board, its members, designees or professionals, nor any of their duly designated agents or representatives, shall be liable for the act or omission of any other member, agent or representative of the Litigation Trust Oversight Board, nor shall the Litigation Trust Oversight Board or any of its members be liable for any act or omission taken or omitted to be taken by the Litigation Trust Oversight Board in good faith, other than acts or omissions resulting from such person's own gross negligence, recklessness, willful misconduct, or knowing violation of law.  The Litigation Trust Oversight Board and each of its members may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in good faith in accordance with advice or opinions rendered by such Persons.  Notwithstanding such authority, neither the Litigation Trust Oversight Board nor any of its members shall be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and its determination not to do so shall not result in the imposition of liability on the Litigation Trust Oversight Board or, as applicable, its members or designees, unless such determination is shown to have been made in bad faith based on gross negligence, willful misconduct, or knowing violation of law.

21

4.11    Limitation of Litigation Trust Oversight Board's Authority.

Notwithstanding anything herein to the contrary, the Litigation Trust Oversight Board shall not (i) be authorized to engaged in any trade or business; (ii) take any action inconsistent with the orderly liquidation of the assets of the Litigation Trust as is required or contemplated by applicable law, the Final DIP Order, this Litigation Trust Agreement, the Confirmation Order, or the Plan; or (iii) be authorized to engage in any investments or activities inconsistent with the treatment of the Litigation Trust as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684.

ARTICLE 5

TAX MATTERS

5.1    Tax Reporting.

(a)    Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including receipt by the Litigation Trustee of a private letter ruling if the Litigation Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Litigation Trustee) and Section 5.1(d), the Litigation Trust shall be treated as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and thus as a "grantor trust" within the meaning of Sections 671 through 677 of the IRC, and all parties to the Litigation Trust (including, without limitation, the Litigation Trustee, the Debtors, the Reorganized Debtors, and the Liquidating Trust Beneficiaries) shall report consistently therewith for U.S. federal income tax purposes.  Accordingly, for U.S. federal income tax purposes, the Litigation Trust Assets shall be treated by all parties as (i) having been distributed (subject to any obligations relating to such assets) by the Debtors to the Litigation Trust Beneficiaries (other than any assets allocable to the GUC Disputed Claims Reserve) in satisfaction of Allowed General Unsecured Claims and in partial satisfaction of Allowed Second Lien Claims and (ii) immediately thereafter contributed by the holder of such Claims to the Litigation Trust in exchange for Litigation Trust Interests.  Accordingly, the Litigation Trust Beneficiaries shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of the Litigation Trust Assets (other than such Litigation Trust Assets that are allocable to the GUC Disputed Claims Reserve).  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local tax purposes.

(b)    As soon as practicable after the Effective Date, (i) the Litigation Trustee, in consultation with the Litigation Trust Oversight Board and the Reorganized Debtors, shall determine the fair market value as of the Effective Date of all Litigation Trust Assets, and such determined fair market value shall be used consistently by all parties to the Litigation Trust Agreement (including the Reorganized Debtors, the Litigation Trustee, and the Litigation Trust Beneficiaries) for all U.S. federal income tax purposes, and (ii) the Litigation Trustee shall make such valuation available from time to time to all parties to the Litigation Trust, to the extent relevant to such parties for tax purposes.

22

(c)      The Litigation Trustee shall file returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Article 5.  The Litigation Trustee shall, in its discretion, make any applicable tax elections on behalf of the Litigation Trust.  The Litigation Trustee shall annually send to each Litigation Trust Beneficiary a separate statement setting forth such Litigation Trust Beneficiary's share of items of income, gain, loss, deduction, or credit, in accordance with applicable Treasury Regulations and Rev. Proc. 94-45, 1994-2 C.B. 684, file (or cause to be filed) any other statements, returns (including any information returns) or disclosures relating to the Litigation Trust that is required by any governmental authority or applicable law, and pay taxes, if any, properly payable by the Litigation Trust.

(d)      Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Litigation Trustee of a private letter ruling if the Litigation Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Litigation Trustee), the Litigation Trustee shall (i) timely elect to treat any Litigation Trust Assets allocable to, or retained on account of, the GUC Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  All parties to the Litigation Trust Agreement (including the Litigation Trustee, the Reorganized Debtors and the Litigation Trust Beneficiaries) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing.

(e)      The Litigation Trustee may request an expedited determination of taxes of the Litigation Trust, including the GUC Disputed Claims Reserve, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the dissolution of the Litigation Trust.

5.2      Trust Taxable Income; Allocations.

(a)      Subject to Section 5.2(c) hereof, all Litigation Trust earnings shall be taxable to the Litigation Trust Beneficiaries.

(b)      Subject to Section 5.2(c) hereof, allocations of Litigation Trust taxable income shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed if, immediately prior to such deemed distribution, the Litigation Trust had distributed all of its other assets (valued for this purpose at their tax book value) to the Litigation Trust Beneficiaries, taking into account all prior and concurrent distributions from the Litigation Trust (including all distributions held in the GUC Disputed Claims Reserve).  Similarly, taxable loss of the Litigation Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the Litigation Trust.  The tax book value of the Litigation Trust Assets for this purpose shall equal their fair market value upon the Effective Date, adjusted in either case in accordance with tax accounting principles prescribed by the IRC, the regulations and other applicable administrative and judicial authorities and pronouncements.

(c)       The Litigation Trustee shall be responsible for payment, out of the Litigation Trust Assets, of any taxes imposed on the Litigation Trust or its assets, including the GUC Disputed Claims Reserve (in the latter instance, first out of any Cash allocable to, or retained on account of, the Disputed Claim to which such tax relates), including any income that may arise upon the distribution of the assets from the GUC Disputed Claims Reserve.  In the event, and to the extent, any Cash retained on account of a Disputed Claim is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of such claim such that such portion of the taxes is paid (in whole or in part) from other available Cash, such other cash sources shall be (i) reimbursed from any subsequent Cash amounts retained on account of such claim, or (ii) to the extent such claim has subsequently been resolved, deducted from any amounts otherwise distributable by the Litigation Trustee as a result of the resolution of such claim.

5.3       <u>Withholding</u>.

The Litigation Trustee may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state, or local tax law with respect to any payment or distribution by the Litigation Trust to or any amounts received or earned by the Litigation Trust (including with respect to Net Avoidance Action Proceeds) distributable or allocable to the Litigation Trust Beneficiaries (including beneficiaries that are not "United States persons" within the meaning of the IRC).  The Litigation Trustee may effect any withholding with respect to a Litigation Trust Beneficiary by reducing the amount currently or subsequently distributable to such beneficiary by the amount withheld.  All such amounts withheld from distributions and paid to the appropriate taxing authority shall be treated as amounts distributed to such Litigation Trust Beneficiaries for all purposes of this Litigation Trust Agreement.  The Litigation Trustee shall be authorized to collect such tax information from the Litigation Trust Beneficiaries (including, without limitation, social security numbers or other tax identification numbers) as, in its sole discretion, the Litigation Trustee deems necessary to effectuate this Litigation Trust Agreement, the Plan (including the Global Settlement Term Sheet), or the Confirmation Order.  In order to receive distributions pursuant to this Litigation Trust Agreement, all Litigation Trust Beneficiaries shall be required to identify themselves to the Litigation Trustee and provide tax information and the specifics of their holdings, to the extent the Litigation Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Litigation Trustee for these purposes.  This identification requirement generally applies to all holders, including those who hold their claims in "street name."  The Litigation Trustee may refuse to make a distribution to any Liquidation Trust Beneficiary that fails to furnish such information in a timely fashion, until such information is delivered, and may treat such beneficiary's Litigation Trust Interests as in respect of a Disputed Claim and, in the event such information is not received within one year of being first requested, may treat such beneficiary's Litigation Trust Interests as forfeited; *provided, however*, that, upon the delivery of such information by a Litigation Trust Beneficiary within one year of being so requested, the Litigation Trustee shall make such distribution to which the Litigation Trust Beneficiary is entitled, without additional interest occasioned by such beneficiary's delay in providing tax information; and, *provided*, *further* that, if the Litigation Trustee fails to withhold in respect of amounts received or distributable with respect to any such beneficiary and the Litigation Trustee is later held liable for the amount of such withholding,

24

such beneficiary shall reimburse the Litigation Trustee for such liability (to the extent such amounts were actually distributed to such beneficiary).

ARTICLE 6

DISTRIBUTIONS

6.1    Effective Date Distributions and Initial Cash Distribution.

(a)    On the Effective Date, or as soon as practicable thereafter, the Litigation Trustee shall:

(i)    arrange for the distribution of Litigation Trust Interests; and

(ii)    pay $2,000,000.00 of Cash from the Litigation Trust to the Convertible Senior Notes Indenture Trustee as partial payment of its fees and expenses incurred in connection with the Chapter 11 Cases (the "**Effective Date BOKF Professional Fees Distribution**").

(b)    The Litigation Trustee, subject to the determination of the Litigation Trustee as to any holdback necessary to fund or maintain the GUC Disputed Claims Reserve (pursuant to Section 6.6 hereof) and the Litigation Expense Fund (in consultation with the Litigation Trust Oversight Board) and subject to Section 6.1(c) herein, shall make an initial distribution (the "**Initial Cash Distribution**") of all remaining available Cash to holders of Class A Litigation Trust Interests within sixty (60) days of the Effective Date; *provided, however*, (i) in no event shall the Initial Cash Distribution be less than fifty percent (50%) of Litigation Trust Initial Cash Assets, and (ii) the Trustee shall not make the Initial Cash Distribution until at least thirty (30) days after the date that the Convertible Senior Notes Indenture Trustee provides the certification required by Section 6.1(c).

(c)    On or before the date that is five (5) days after the Effective Date, the Convertible Senior Notes Indenture Trustee shall  (i) certify to the Litigation Trustee and (ii) provide notice through DTC to the Convertible Senior Noteholders of the amount of any outstanding and estimated costs, fees, and expenses that may be properly charged against any distribution to the Convertible Senior Noteholders pursuant to the terms of the Convertible Senior Notes Indentures (the "**Outstanding Indenture Trustee Fees and Expenses**") which amount, for the avoidance of doubt, shall be net of the Effective Date BOKF Professional Fees Distribution. Provided that there is no temporary restraining order or injunction then in effect with respect to payment of the Outstanding Indenture Trustee Fees and Expenses, on the date of the Initial Cash Distribution the Litigation Trustee shall first pay the Outstanding Indenture Trustee Fees and Expenses to (and in the amount certified by) the Convertible Senior Notes Indenture Trustee from the Initial Cash Distribution on account of the Class A Litigation Trust Interests held by the Convertible Senior Noteholders; [provided, that if the amount of the Initial Cash Distribution to be distributed to Convertible Senior Noteholders (or their assignees) on account of their Class A Litigation Trust Interests is less than the Outstanding Indenture Trustee Fees and Expenses, then all Cash otherwise distributable to Convertible Senior Noteholders in respect of their Class A Litigation Trust Interests upon the Initial Cash Distribution shall be paid to the Convertible Senior Note Trustee in partial payment of the Outstanding Indenture Trustee

Fees and Expenses. Until the Outstanding Indenture Trustee Fees and Expenses are paid in full to the Senior Convertible Notes Indenture Trustee, the Senior Convertible Notes Indenture Trustee shall be paid on a priority basis from cash distributions otherwise payable to the Convertible Senior Noteholders and its charging lien or priority rights from distributions shall be deemed to attach to Cash distributions upon or through the Class A Litigation Trust Interests issued or distributed in respect to the Convertible Senior Note Claims.][3] For the avoidance of doubt, the Cash distributed to the Convertible Senior Notes Indenture Trustee for the Outstanding Indenture Trustee Fees and Expenses shall be deemed to be part of the Initial Cash Distribution to Convertible Senior Noteholders (or their assignees) and shall not reduce the Initial Cash Distribution made to other Holders of General Unsecured Claims (or their assignees).

(d) The Litigation Trustee shall have no liability for, and shall be held harmless from, any claims asserted by Convertible Senior Noteholder or any other party arising from the Litigation Trustee's reliance on the certification provided by the Convertible Senior Notes Indenture Trustee pursuant to Section 6.1(c).

6.2    Annual Distribution.

Subsequent to the Initial Cash Distribution, the Litigation Trustee shall, on at least an annual basis and subject to the terms of the Plan and the Global Settlement Term Sheet regarding the treatment of holders Class A Litigation Trust Interests and Class B Litigation Trust Interests, (i) distribute to the holders of Class A Litigation Trust Interests and Class B Litigation Trust Interests the Net Avoidance Action Proceeds in accordance with their respective rights under the Plan and the Global Settlement Term Sheet and (ii) distribute to the holders of Class A Litigation Trust Interests all other available Cash (treating as Cash for this purpose all investments in accordance with Section 3.15); *provided, however*, that the Litigation Trust shall retain such amounts as necessary or appropriate to maintain the GUC Disputed Claims Reserve and the Litigation Expense Fund.  Subject to and in accordance with Section 5.3 hereof, the Litigation Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Litigation Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement; *provided, further*, that the Litigation Trustee shall not be required to make a distribution pursuant this Section 6.2 if the aggregate, net amount of unrestricted Cash available for distribution is sufficiently small in amount as to make the distribution impracticable as reasonably determined by the Litigation Trustee, with the consent of the Litigation Trust Oversight Board, in accordance with the law.

6.3    Manner of Payment or Distribution.

(a)    All distributions made by the Litigation Trustee to or for the benefit of holders of Litigation Trust Interests shall be payable in Cash to the holders of Litigation Trust Interests of record as of the twentieth (20th) day prior to the date scheduled for the distribution, unless such day is not a business day, then such day shall be the following business day.  The

---

[3] The mechanics for payment of the Outstanding Indenture Trustee Fees and Expenses to be finalized prior to the Effective Date.

Litigation Trustee shall distribute such cash by wire, check, or such other method as the Litigation Trustee deems appropriate under the circumstances.

(b)    To the extent the Debtors become liable for the payment of any Claims arising under section 502(h) of the Bankruptcy Code on account of Litigation Trust Assets (including the Net Avoidance Action Proceeds), the Litigation Trustee will be responsible for making distributions on account of such claims pursuant to <u>Section 8.2</u> herein.

6.4    <u>Delivery of Litigation Trust Distributions</u>.

All distributions under this Litigation Trust Agreement to any holder of Litigation Trust Interests shall be made at the address of such holder as set forth in the Book Entry System or at such other address or in such other manner as such holder of Litigation Trust Interests shall have specified for payment purposes in a written notice to the Litigation Trustee at least twenty (20) days prior to such distribution date.  In the event that any distribution to any holder is returned as undeliverable, the Litigation Trustee shall be entitled to rely on the most current information available from the Debtors to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Litigation Trustee has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; *provided, however*, that such undeliverable or unclaimed distributions shall be deemed unclaimed property at the expiration of one year from the date of distribution. The Litigation Trustee shall reallocate the undeliverable and unclaimed distributions for the benefit of all other Litigation Trust Beneficiaries holding Litigation Trust Interests in the applicable class.

6.5    <u>Cash Distributions</u>.

No Cash distributions shall be required to be made to any Litigation Trust Beneficiary in an amount less than $100.00.  Any funds so withheld and not distributed shall be held in reserve and distributed in subsequent distributions.  Notwithstanding the foregoing, all Cash shall be distributed in the final distribution of the Litigation Trust.

6.6    <u>Disputed Claims Reserve</u>.

(a)    From and after the Effective Date, the Litigation Trustee shall hold and maintain the GUC Disputed Claims Reserve for the benefit of the Holders of such Disputed General Unsecured Claims, including any Cash and any other Litigation Trust Assets allocable to such Disputed Claims (*i.e.*, as if such Holders had received Litigation Trust Interests on the Effective Date and such Disputed Claims had been Allowed Claims on the Effective Date), determined based on (i) the asserted amount of such Disputed Claim, (ii) such other amount as may be agreed upon by the Holder of such Disputed Claim and the Litigation Trustee or (iii) except with respect to any Disputed General Unsecured Claims asserted by Vivint Solar, Inc., such other amount as may be deemed appropriate by the Litigation Trustee in accordance with the terms of this Litigation Trust Agreement (in each case, net of any taxes imposed on, or with respect to, the GUC Disputed Claims Reserve as relates to such Claim, including in connection with such distributions).

(b)       Holders of Disputed Claims that become Allowed Claims after the Initial Cash Distribution Date shall receive any distributions of Cash and/or Litigation Trust Interests to which they are entitled under the Plan on the next Distribution Date; *provided*, *however*, that the Litigation Trustee may determine in its discretion (subject to the approval of the Litigation Trust Oversight Board, if necessary, pursuant to the terms of this Litigation Trust Agreement) to make an immediate distribution to the holder of such Claim.

(c)       Any taxes incurred by the Litigation Trust with respect to assets allocable to, or retained on account of, a Disputed Claim (including any taxes that would be incurred upon a distribution of such assets as a result of the resolution of the Disputed Claim) will be netted against the amounts otherwise distributable from the GUC Disputed Claims Reserve in respect of, or as a result of the resolution of, such Claim. *See also* Section 5.2(c) herein.  No assets allocable to, or retained on account of, a Disputed Claim will be released from the GUC Disputed Claims Reserve until such time as the Cash otherwise distributable as a result of the resolution of such Claim is sufficient to pay any taxes incurred or that would be incurred upon the distribution.

ARTICLE 7

INDEMNIFICATION

7.1       Indemnification of Litigation Trustee.

(a) To the fullest extent permitted by law, the Litigation Trust, to the extent of its assets legally available for that purpose, shall indemnify and hold harmless the Litigation Trustee and each of its directors, members, shareholders, partners, officers, agents, employees, attorneys and other professionals (collectively, the "**Indemnified Persons**") from and against any and all losses, costs, damages, reasonable and documented out-of-pocket expenses (including, without limitation, fees and expenses of attorneys and other advisors and any court costs incurred by any Indemnified Person) or liability by reason of anything any Indemnified Person did, does, or refrains from doing for the business or affairs of the Litigation Trust, except to the extent that the loss, cost, damage, expense or liability resulted primarily from the Indemnified Person's recklessness, gross negligence, willful misconduct, or knowing violation of the law.  To the extent reasonable, the Litigation Trust shall pay in advance or reimburse reasonable and documented out-of-pocket expenses (including advancing reasonable costs of defense) incurred by the Indemnified Person who is or is threatened to be named or made a defendant or a respondent in a proceeding concerning the business and affairs of the Litigation Trust.

(b)       Any Indemnified Person may waive the benefits of indemnification under this Section 7.1, but only by an instrument in writing executed by such Indemnified Person.

(c)       The rights to indemnification under this Section 7.1 are not exclusive of other rights which any Indemnified Person may otherwise have at law or in equity, including without limitation common law rights to indemnification or contribution.  Nothing in this Section 7.1 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under this Litigation Trust Agreement, or any other agreement or instrument to which that Person is a party.

ARTICLE 8

NET LITIGATION TRUST RECOVERY

8.1    <u>No Effect on Mutuality</u>.

Notwithstanding anything contained in this Litigation Trust Agreement to the contrary, nothing herein shall affect the mutuality of obligations, if any, of any holder of any claim under section 553 of the Bankruptcy Code.

8.2    <u>Bankruptcy Code Section 502(h)</u>.

Notwithstanding anything contained in this Litigation Trust Agreement to the contrary, in the event that a compromise and settlement of a Litigation Trust Cause of Action or a final order with respect to a Litigation Trust Cause of Action provides for the allowance of a claim pursuant to section 502(h) of the Bankruptcy Code against one or more of the Debtors the distributions to be made on account of such claim pursuant to the Plan shall be funded by the Litigation Trust, in the amount(s), from time to time, that all similarly situated holders of claims are entitled to receive under the Plan.

8.3    <u>Net Litigation Trust Recovery</u>.

Notwithstanding anything contained in this Litigation Trust Agreement to the contrary, in the event that a defendant in a litigation brought by the Litigation Trustee for and on behalf of the Litigation Trust (i) is required by a final order to make payment to the Litigation Trust (the "**<u>Judgment Amount</u>**") and (ii) is permitted by a final order to assert a right of setoff under sections 553, 555, 556, 559, 560 and 561 of the Bankruptcy Code or applicable non-bankruptcy law against the Judgment Amount (a "**<u>Valid Setoff</u>**"), (y) such defendant shall be obligated to pay only the excess, if any, of the Judgment Amount over the Valid Setoff and (z) none of the Litigation Trust or the holders of the Litigation Trust Interests shall be entitled to assert a claim against the Debtors with respect to the Valid Setoff.

ARTICLE 9

REPORTS TO LITIGATION TRUST BENEFICIARIES

9.1    <u>Reports</u>.

(a)    The Litigation Trustee shall cause to be prepared, as applicable, either at such times as may be required by the Exchange Act, if applicable, or, not less than semi-annually, financial statements of the Litigation Trust (the "**<u>Litigation Trust Reports</u>**"), to be delivered to the Litigation Trust Beneficiaries together with annual income tax reporting of the Litigation Trust.  The Litigation Trust Reports shall include, among other things, descriptions in reasonable detail of all Net Avoidance Actions Proceeds collected during the relevant quarter and all fees and expenses expended in connection therewith.  To the extent required by law, the financial statements prepared as of the end of the fiscal year shall be audited by nationally recognized independent accountants in accordance with U.S. generally accepted accounting principles.  The materiality and scope of audit determinations shall be established between the

29

Litigation Trustee and the appointed auditors with a view toward safeguarding the value of the assets of the Litigation Trust, but nothing relating to the mutually agreed scope of work shall result in any limitation of audit scope that would cause the auditors to qualify their opinion as to scope of work with respect to such financial statements.

(b)    Within ten (10) Business Days after the end of the relevant report preparation period the Litigation Trustee shall cause any information reported pursuant to Section 9.1(a) hereof to be mailed to such Litigation Trust Beneficiaries and to be filed with the Bankruptcy Court.

(c)    Any report (other than any report of confidential tax information) required to be distributed by the Litigation Trustee under Section 9.1(a) hereof shall also be distributed to the Persons listed in Section 12.6 hereof within ten (10) Business Days of its distribution to the Litigation Trust Beneficiaries under Section 9.1 hereof.  The Litigation Trustee may post any report required to be provided under this Section 9 on a web site maintained by the Litigation Trustee in lieu of actual notice to the Litigation Trust Beneficiaries (unless otherwise required by law) subject to providing notice to the Persons listed in Section 12.6 herein.

ARTICLE 10

TERM; TERMINATION OF LITIGATION TRUST

10.1    Term; Termination of Litigation Trust.

(a)    The Litigation Trustee and the Litigation Trust may be discharged or dissolved, as the case may be, at such time as (i) all of the Litigation Trust Assets have been distributed pursuant to the Litigation Trust Agreement and the Plan, (ii) the Litigation Trustee determines, in its sole discretion, that the administration of any remaining Litigation Trust assets is not likely to yield sufficient additional Litigation Trust Asset Recoveries to justify further pursuit, or (iii) all distributions required to be made by the Litigation Trustee under this Litigation Trust Agreement have been made.  The Litigation Trust shall have an initial term of five (5) years.  The Bankruptcy Court, upon motion by the Litigation Trustee, on notice with an opportunity for hearing, within six (6) months before the expiration of the original term or any extended term, may extend, for a fixed period, the term of the Litigation Trust if it is necessary to facilitate or complete the liquidation of the assets of the Litigation Trust, and not unduly extend the term of the Litigation Trust; *provided*, *that*, the Litigation Trustee receive a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Litigation Trustee and the Litigation Trust Oversight Board that any extension would not adversely affect the status of the Litigation Trust as a "liquidating trust" for United States federal income tax purposes.  The Bankruptcy Court may approve multiple extensions of the term of the Litigation Trust.

(b)    The Litigation Trust may be terminated earlier than its scheduled termination if (i) the Bankruptcy Court has entered a final order closing all of or the last of the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code; and (ii) the Litigation Trustee has administered all assets of the Litigation Trust and performed all other duties required by this Litigation Trust Agreement.

(c)      If at any time the Litigation Trustee determines, in reliance upon such professionals as the Litigation Trustee may retain, that the expense of administering the Litigation Trust so as to make a final distribution to the Litigation Trust Beneficiaries is likely to exceed the value of the assets remaining in the Litigation Trust, the Litigation Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve the Litigation Trust, (ii) donate any balance to a charitable organization (A) described in Section 501(c)(3) of the IRC, (B) exempt from U.S. federal income tax under Section 501(a) of the IRC, (C) that is not a "private foundation", as defined in Section 509(a) of the IRC, and (D) that is unrelated to the Debtors, the Reorganized Debtors, the Litigation Trust, and any insider of the Litigation Trustee, and (iii) dissolve the Litigation Trust.  Upon receipt of such authority from the Bankruptcy Court, the Litigation Trustee shall (X) notify each Litigation Trust Beneficiary and (Y) file a Certificate of Cancellation with the Secretary of State of the State of Delaware.

10.2    Continuance of Trust for Winding Up.

After the termination of the Litigation Trust and for the purpose of litigation and winding up the affairs of the Litigation Trust, the Litigation Trustee shall continue to act as such until its duties have been fully performed.  Prior to the final distribution of all of the remaining assets of the Litigation Trust, the Litigation Trustee shall be entitled to reserve from such assets any and all amounts required to provide for its own costs and expenses, in accordance with Section 3.13 herein, until such time as the winding up of the Litigation Trust is completed.  Upon termination of the Litigation Trust, the Litigation Trustee shall retain for a period of three years the books, records, Litigation Trust Beneficiary lists, the Trust Register, and certificates and other documents and files that have been delivered to or created by the Litigation Trustee.  At the Litigation Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after three years from the completion and winding up of the affairs of the Litigation Trust.  Except as otherwise specifically provided herein, upon the termination of the Litigation Trust, the Litigation Trustee shall have no further duties or obligations hereunder.

ARTICLE 11

AMENDMENT AND WAIVER

11.1    Amendment and Waiver.

(a)      The Litigation Trustee may amend, supplement or waive any provision of, this Litigation Trust Agreement, without notice to or the consent of any Litigation Trust Beneficiary or the approval of the Bankruptcy Court: (i) to cure any ambiguity, omission, defect or inconsistency in this Litigation Trust Agreement provided that such amendments, supplements or waivers shall not contravene or otherwise be inconsistent with the terms of the Final DIP Order, the Committee Settlement, the D&O Settlement Agreement, the D&O Settlement Approval Order, the Plan (including the Global Settlement Term Sheet), and the Confirmation Order, adversely affect the distributions to be made or other rights under this Litigation Trust Agreement to any of the Litigation Trust Beneficiaries, the Second Lien Notes Indenture Trustee, or the Convertible Senior Notes Indenture Trustee, or adversely affect the U.S. federal income tax status of the Litigation Trust as a "liquidating trust"; (ii) to comply with any requirements in connection with the U.S. federal income tax status of the Litigation Trust as a "litigation trust";

31

(iii) to comply with any requirements in connection with maintaining that the Litigation Trust is not subject to registration or reporting requirements of the Exchange Act or the Investment Company Act; (iv) to make the Litigation Trust a reporting entity and, in such event, to comply with any requirements of the Exchange Act or the Investment Company Act; and (v) to evidence and provide for the acceptance of appointment hereunder by a successor trustee in accordance with the terms of this Litigation Trust Agreement.

(b)    Subject to Section 11.1(c) below, any substantive provision of this Litigation Trust Agreement may be amended or waived by the Litigation Trustee, subject to the prior approval of a majority of both the Litigation Trust Oversight Board and the holders of Class A Litigation Trust Interests held by "United States persons" within the meaning of Section 7701(a)(30) of the IRC, with the approval of the Bankruptcy Court upon notice and an opportunity for a hearing; *provided, however*, that no change may be made to this Litigation Trust Agreement that contravenes or is otherwise inconsistent with the terms of the Committee Settlement, the D&O Settlement Agreement, the D&O Settlement Approval Order, the Plan (including the Global Settlement Term Sheet), and the Confirmation Order, would adversely affect the distributions to be made under this Litigation Trust Agreement to any of the Litigation Trust Beneficiaries, the Second Lien Notes Indenture Trustee, or the Convertible Senior Notes Indenture Trustee, or adversely affect the U.S. federal income tax status of the Litigation Trust as a "liquidating trust."  Notwithstanding this Section 11.1, any amendments to this Litigation Trust Agreement shall not be inconsistent with the purpose and intention of the Litigation Trust to liquidate in an expeditious but orderly manner the Litigation Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d).

(c)    The Litigation Trust Agreement may not be amended to change the distribution of Net Avoidance Action Proceeds and Additional Net Avoidance Action Proceeds as described in the Litigation Trust Interests Overview without the consent of 75% of the holders (in amount of Class B Litigation Trust Interests held, not number of holders) of the Class B Litigation Trust Interests that are "United States persons" within the meaning of Section 7701(a)(30) of the IRC and the requisite consent of the Litigation Trust Oversight Board and the holders of the Class A Litigation Trust Interests in accordance with Section 11.1(b).

ARTICLE 12

MISCELLANEOUS PROVISIONS

12.1    Intention of Parties to Establish a Liquidating Trust.

This Litigation Trust Agreement is intended to create a "liquidating trust" for U.S. federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Litigation Trust Agreement may be amended in accordance with Section 11.1 hereof to comply with such U.S. federal income tax laws, which amendments may apply retroactively.

12.2    Reimbursement of Trust Litigation Costs.

If the Litigation Trustee or the Litigation Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Litigation Trust Agreement or the enforcement thereof, the Litigation Trustee or the Litigation Trust, as the case may be, shall be entitled to collect any and all costs, reasonable and documented out-of-pocket expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action.  To the extent that the Litigation Trust has advanced such amounts, the Litigation Trust may recover such amounts from the non-prevailing party.

12.3    Laws as to Construction.

This Litigation Trust Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to whether any conflicts of law would require the application of the law of another jurisdiction.

12.4    Jurisdiction.

Without limiting any Person or entity's right to appeal any order of the Bankruptcy Court or to seek withdrawal of the reference with regard to any matter, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Litigation Trust Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Litigation Trust Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all actions related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties, including the Litigation Trust Beneficiaries and holders of General Unsecured Claims and Second Lien Claims, hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court.

12.5    Severability.

If any provision of this Litigation Trust Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid, or unenforceable to any extent, the remainder of this Litigation Trust Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Litigation Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

12.6    Notices.

All notices, requests or other communications to the parties hereto shall be in writing and shall be sufficiently given only if (i) delivered in person; (ii) sent by electronic mail or facsimile communication (as evidenced by a confirmed fax transmission report); (iii) sent by registered or certified mail, return receipt requested; or (iv) sent by commercial delivery service or courier.  Until a change of address is communicated, as provided below, all notices, requests and other communications shall be sent to the parties at the following addresses or facsimile numbers:

33

<u>If to the Litigation Trustee to</u>:

Drivetrain, LLC
630 Third Ave., 21st Floor
New York, NY  10017
Attn:    Alan J. Carr
         Tim Daileader
Email: acarr@drivetrainadvisors.com; tdaileader@drivetrainadvisors.com


With a copy to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10065
Attn: Matthew S. Barr, Esq.
        Jill Frizzley, Esq.
Email: Matthew.Barr@weil.com; jill.frizzley@weil.com



<u>If to the Debtors to</u>:

c/o SunEdison, Inc.
Two City Place Drive, 2nd Floor
St. Louis, MO  63141
Attn: General Counsel

With a copy to:

Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036-6522
Attn: J. Eric Ivester, Esq.
        James J. Mazza, Jr., Esq.
        Louis S. Chiappetta, Esq.
Email: eric.ivester@skadden.com; james.mazza@skadden.com;
        louis.chiappetta@skadden.com

<u>If to the Holder of Class B Interests to</u>:

[   ]

With a copy to:

Akin, Gump, Strauss, Hauer, & Feld LLP
One Bryant Park
Bank of America Tower
New York, New York  10036
Attn:    Arik Preis
          Yochun Katie Lee
Email: apreis@akingump.com; kylee@akingump.com

If to the Convertible Senior Notes Indenture Trustee, to:

BOKF, N.A.
1600 Broadway, 3rd Floor
Denver, CO 80202
Attn: George F. Kubin
Email: gkubin@bokf.com

With a copy to:

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020
Attn: J. Christopher Shore, Harrison L. Denman, and Michele J. Meises
Email: cshore@whitecase.com; Harrison.denman@whitecase.com;
michele.meises@whitecase.com

and:

Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Attn: Harold L. Kaplan; Mark F. Hebbeln and Lars A. Peterson
Email: hkaplan@foley.com; mhebbeln@foley.com; lapeterson@foley.com

If to the Creditors' Committee, to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10065
Attn: Matthew S. Barr, Esq.
        Jill Frizzley, Esq.
Email: Matthew.Barr@weil.com; jill.frizzley@weil.com

    All notices shall be effective and shall be deemed delivered: (i) if by personal delivery, delivery service or courier, on the date of delivery; (ii) if by electronic mail on the date of receipt; and (iii) if by mail, on the date of receipt.  Any party from time to time may change its address, electronic mail address, or other information for the purpose of notices to that party by giving notice specifying such change to the other party hereto.

35

12.7    Fiscal Year.

The fiscal year of the Litigation Trust will begin on the first day of January and end on the last day of December of each year.

12.8    Headings.

The section headings contained in this Litigation Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Litigation Trust Agreement or of any term or provision hereof.

12.9    Counterparts.

This Litigation Trust Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all together shall constitute one agreement.

12.10.    Confidentiality.

The Litigation Trustee and each successor trustee and any member of the Litigation Trust Oversight Board (each a "**Covered Person**") shall, during the period that they serve in such capacity under this Litigation Trust Agreement and following either the termination of this Litigation Trust Agreement or such individual's removal, incapacity, or registration hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the assets of the Litigation Trust relates or of which it has become aware in its capacity (the "**Information**"), except to the extent disclosure is required by applicable law, order, regulation or legal process.  In the event that any Covered Person is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigation, demand or similar legal process) to disclose any Information, such Covered Person will furnish only that portion of the Information, which the Covered Person, advised by counsel, is legally required to and exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Information.

12.11    Entire Agreement.

This Litigation Trust Agreement (including the Recitals), the Final DIP Order, the Committee Settlement, the Confirmation Order, and the Plan (including the Global Settlement Term Sheet) constitute the entire agreement by and among the parties hereto with respect to the subject matter hereof, and there are no representations, warranties, covenants or obligations except as set forth herein or therein.  This Litigation Trust Agreement, the Final DIP Order, and the Plan (including the Global Settlement Term Sheet) supersede all prior and contemporaneous agreements, understandings, negotiations, discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  Except as otherwise specifically provided herein, in the Final DIP Order, the D&O Settlement Approval Order, the Confirmation Order, or in the Plan (including the Global Settlement Term Sheet), nothing in this Litigation Trust

Agreement is intended or shall be construed to confer upon or to give any person other than the parties thereto and their respective heirs, administrators, executors, successors, or assigns any right to remedies under or by reason of this Litigation Trust Agreement.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Litigation Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

DEBTORS:

_____

By:
Title:

CREDITORS' COMMITTEE:

_____

By:
Title:

LITIGATION TRUSTEE:

_____

By:
Title:

## **Exhibit A**

### **Litigation Trust Causes of Action**

Litigation Trust Causes of Action shall mean "GUC/Litigation Trust Causes of Action" as defined in the Plan, including Exhibit 7.6 thereto.

**Exhibit B**

**Litigation Trust Interests Overview**

| | |
|---|---|
| **Class A Litigation Trust Interests** | The holders of Class A Litigation Trust Interests shall be entitled to: |

(a) Litigation Trust Initial Cash Assets;

(b) All proceeds of Litigation Trust Assets other than Net Avoidance Action Proceeds;

(c) The initial $63.0 million of Net Avoidance Action Proceeds recovered by the Litigation Trustee; and

(d) Fifty-two percent (52%) of any Net Avoidance Actions Proceeds recovered that exceed $63.0 million in the aggregate (the "**Additional Net Avoidance Action Proceeds**").

| | |
|---|---|
| **Class B Litigation Trust Interests** | Holders of Class B Litigation Trust Interests in the Litigation Trust shall only be entitled to the following: |

Economic Rights:

(a) Forty-eight percent (48%) of the Additional Net Avoidance Action Proceeds.

Governance Rights:

(b) Delivery of the Litigation Trust Reports and reasonable periodic access to the Litigation Trustee solely through Akin, Gump, Strauss, Hauer, & Feld LLP, counsel to the holders of the Class B Litigation Trust Interests;

(c) following the filing of any Contingency Fee Advisor Retention Notice, at the request of any of the holders of Class B Litigation Trust Interests (or their advisor at the instruction of a holder) the Litigation Trustee will provide additional information regarding the proposed contingency fee engagement (including the actual engagement letter on a confidential basis, if so requested). Holders of Class B Litigation Trust Interests (or their advisors at the instruction of a holder) shall have ten (10) Business Days from the date of the filing of the Contingency Fee Advisor Retention Notice to file with the Bankruptcy Court a pleading seeking to prohibit such retention on the grounds that such retention is not consistent with the purpose of the Global Settlement Term Sheet because the engagement does not provide a sufficient incentive for such contingency fee advisor to procure Additional Net Avoidance Action Proceeds, and the Litigation Trust, Litigation Trustee, Litigation Trust Oversight Board, or the Committee may oppose such pleading (but solely with respect to such issue), and the Bankruptcy Court shall retain jurisdiction to settle such dispute;

(d) enforcement rights with regard to any and all of the above rights (and clause (e) below) (as well as the fiduciary duties owed to all holders of Litigation Trust Interests by the Litigation Trustee and the Litigation Trust Oversight Board as set forth below); and

(e) reasonable consent rights with regard to any modifications,

40

amendments, or supplements of the Litigation Trust Agreement that affect the terms of the "Economic Rights" or "Governance Rights" sections above.

Holders of Class B Litigation Trust Interests shall have a "silent" interest in the Litigation Trust solely to the extent of the Additional Net Avoidance Action Proceeds and the other rights set forth in the "Economic Rights" or the "Governance Rights" sections above (*i.e.*, they shall not, among other things, appoint the Litigation Trustee or the Litigation Trust Oversight Board).

**Exhibit C**

**Litigation Trust Interest Transfer Form**

**FORM OF TRANSFER NOTICE (Litigation Trust Interests)**[4]

**Class A Litigation Trust Interests**
**Class B Litigation Trust Interests**

To:              [Drivetrain, LLC or other named registrar], in its capacity as Registrar (the "**Registrar**")

Cc:              Drivetrain, LLC, as Original Trustee (the "**Trustee**") for the SunEdison Litigation Trust
                 (the "**Litigation Trust**")

Transferor:      [insert legal name of the proposed transferor] (the "**Transferor**")

Transferee:      [insert legal name of the proposed transferee] (the "**Transferee**")

Date:            [insert date, must be identical on counterpart Transfer Notices]

1.    The undersigned Transferor and Transferee hereby confirm to the Registrar that the Transferor has agreed to transfer to the Transferee the following Litigation Trust Interests of the Litigation Trust:

    **(a)**    [Class A] Litigation Trust Interests in aggregate number and face value of [# and $xx. xx] and all rights in respect thereof; and

    **(b)**    [Class B] Litigation Trust Interests in aggregate number and face value of [# and $xx. xx] and all rights in respect thereof; and

2.    The Transferor and the Transferee request the Trustee and the Registrar to effect the transfer of the [Class A or Class B] Litigation Trust Interests, the subject of this Transfer Notice, in accordance with the Litigation Trust Agreement.

3.    The Litigation Trust Interests have not been and will not be registered under the federal laws of the United States, under the securities laws of any State of the United States of America or any other jurisdiction. The Litigation Trust Interests are not "restricted securities" within the meaning of Rule 144(a)(3) made under the Securities Act of 1933, as amended (the "**Securities Act**") and may be immediately resold following issuance, without restriction under the Securities Act, by holders of Litigation Trust Interests who are not "affiliates" (as defined under the Securities Act) of the Reorganized Debtors or the Litigation Trust and have not been "affiliates" (as so defined) of the Reorganized Debtors or the Litigation Trust within the period of ninety (90) calendar days ending on the date of issuance of the Litigation Trust Interest under the Plan of Reorganization and Litigation Trust Agreement.

4.    The Transferor [is/is not] an "affiliate" (as defined in the U.S. Securities Act of 1933) of the Reorganized Debtors.

5.    The Transferee:

    **(a)**    [is/is not] an existing holder of Class A Litigation Trust Interests; and

    **(b)**    [is/is not] an existing holder of Class B Litigation Trust Interests.

6.    All payments in respect of the Litigation Trust Interests transferred to the Transferee are to be made (unless otherwise instructed by the Transferee) to the following account, which shall (until

---

43

further notice) be the registered account of the Transferee for the purposes of the Litigation Trust Agreement:

| | |
|---|---|
| **Name of bank** | : |
| **Address of bank** | : |
| **For the account of** | : |
| **EUR account number:** | |
| **IBAN** | : |
| **SWIFT code** | : |

7.     The registered address, e-mail address and contact information of the Transferee for the purposes of the register of interest holders (the "**Register**") of the Trust is stated below:

[*insert Transferee's address, e-mail address and contact information.  If the Transferee is already a holder of Litigation Trust Interests, the information provided to the Registrar (both in terms of payments and contact information) must be identical to the information already noted in the Register, or the Transferee may replace this paragraph 7 with a confirmation that the payment and contact details already noted on the Register shall apply to the transferred Litigation Trust Interests.*]

8.     The Transferee acknowledges that a transfer of title to the Litigation Trust Interests is determined solely by the entry of the transfer into the Register and that entries on the Register are conclusive evidence of title to the Litigation Trust Interests and of the date of transfer of title to Litigation Trust Interests, absent manifest error.

9.     None of the Trustee or the Registrar is required, or shall have any obligation, to accept any application for a transfer of Litigation Trust Interests, or to make any payment under or in respect of the Litigation Trust Interest to a purported Transferee, in any circumstance where any applicable requirement specified in the Litigation Trust Agreement has not been satisfied. Without limitation to the foregoing, the Trustee may refuse to register any transfer of Litigation Trust Interest unless it has received (directly or via the Registrar) a valid Transfer Notice.

10.     The Trustee, with the consultation of or at the direction of the Litigation Trust Oversight Board may restrict the effect of any transfer of Litigation Trust Interests if, in its own discretion, such transfer may subject the Trust to reporting or registration requirements under the Securities Exchange Act of 1934, or if such effect of transfer may alter or effect Article 5 of the Litigation Trust Agreement.

11.     This Transfer Notice may be executed by the Transferor and the Transferee in counterparts, each of which shall constitute an original and both of which taken together shall constitute one and the same Transfer Notice.

12.     Terms defined in the Litigation Trust Agreement shall have the same meaning in this Transfer Notice.

_____
[insert name of Transferor]

By:    [insert name of signatory] [Authorised Signatory]
        [insert title, for persons signing on behalf of corporate entities]


_____
[insert name of Transferee]

By:    [insert name of signatory] [Authorised Signatory]
        [insert title, for persons signing on behalf of corporate entities]


Acknowledged By:

_____ Effective Date: _____
Drivetrain, LLC, as Trustee to the SunEdison Litigation Trust

Name:

Title:


**Enclosures:** KYC Information for the Transferee

45

**Exhibit D**

**Trustee Compensation Schedule**

<u>Compensation Terms</u>

The Original Trustee ("Drivetrain") shall be entitled to the following compensation:

- <u>Fees</u>. As consideration for the services to be provided following the Effective Date, the Litigation Trust shall pay Drivetrain in accordance with a fixed monthly fee arrangement (the "Monthly Fees") based on the amounts set forth in the chart below. The Monthly Fees shall be payable in advance each month on the first day of each month until the termination of Drivetrain's appointment pursuant to the Litigation Trust Agreement,[5] the Plan, and the Confirmation Order; <u>provided</u>, that the Monthly Fee payable for the first and last month of Drivetrain's engagement shall be prorated for the actual number of days Drivetrain is engaged during each such month. The Monthly Fees shall be fully earned as of the first day of such month.

| YEAR (post Effective Date) | MONTHLY RATES |
|---|---|
| 1st | $  19,500 |
| 2nd | $  15,000 |
| 3rd | To be determined by agreement between Drivetrain and the Litigation Trust Oversight Board |

- <u>Expense Reimbursement</u>. In addition to any Monthly Fees and the Additional Compensation (as defined below) payable to Drivetrain, the Litigation Trust shall promptly reimburse Drivetrain, following delivery to the Litigation Trust of a reasonably detailed written invoice, for all reasonable, documented out-of-pocket expenses (including reasonable expenses of counsel and other professionals), travel and lodging, data processing and communications charges, courier services and other expenditures incurred in connection with, or arising out of Drivetrain's services provided as Original Trustee under the Litigation Trust Agreement ("Expense Reimbursement").

---

[5] Unless otherwise defined, capitalized terms shall have the meaning ascribed to such terms in the *First Amended Joint Plan of Reorganization of SunEdison Inc. and its Debtor Affiliates* [ECF No. 3314 - Exhibit A to the Disclosure Statement], or, if not defined therein, the Litigation Trust Agreement, dated as of [_____], 2017.

- <u>Additional Compensation</u>. In addition to Monthly Fees and the Expense Reimbursement, the Litigation Trust shall pay Drivetrain the following (the "Additional Compensation"):

  - o As used herein, "Net Litigation Trust Proceeds" means, on any date of determination, the aggregate amount of Litigation Trust Proceeds actually received by the Litigation Trust, less the aggregate amount of all costs and expenses, as set forth in the Litigation Trust's books and records, actually incurred (whether or not paid) by the Litigation Trust in connection with investigating, prosecuting, settling, liquidating, or disposing of the Litigation Trust Causes of Action.

  - o At such time as Net Litigation Trust Proceeds equal or exceed $50,000,000, an amount in Cash equal to 1.25% of such Net Litigation Proceeds up to $75,000,000; plus

  - o An amount in Cash equal to 1.35% of the Net Litigation Trust Proceeds, as determined on such Distribution Date, that equal or exceed $75,000,000 but are less than $100,000,000; plus

  - o An amount in Cash equal to 1.45% of the Net Litigation Trust Proceeds, as determined on such Distribution Date, that equal or exceed $100,000,000 but are less than $125,000,000; plus

  - o An amount in Cash equal to 1.55% of the Net Litigation Trust Proceeds, as determined on such Distribution Date, that equal or exceed $125,000,000.

  - o For the avoidance of doubt, the Additional Compensation is earned only if more than $50 million in Net Litigation proceeds are distributed to the Litigation Trust's beneficiaries.

The Additional Compensation, if earned, shall be paid to Drivetrain contemporaneously with the discharge of Drivetrain and termination of the Litigation Trust. In the event Drivetrain is removed as Litigation Trustee by the Litigation Trust Oversight Board pursuant to Section 3.5 of the Litigation Trust Agreement for any reason (other as a result of its gross negligence, fraud or willful misconduct), Drivetrain shall continue to be entitled to be paid Additional Compensation on further distributions based upon the schedule above when such distributions are made.

- General Terms.

  - o It is expected that Alan Carr and Tim Daileader will have primary responsibility on this matter.

  - o No amounts payable hereunder shall be subject to reduction, setoff, disgorgement or reimbursement, other than pursuant to a Final Order or with the prior written consent of Drivetrain.

  - o No fee or amount paid or payable to any other Entity by the Litigation Trust or by any other Entity shall reduce or otherwise affect the Monthly Fees, Additional Compensation, or Expense Reimbursement paid or payable to Drivetrain, except

to the extent used in calculating Net Litigation Trust Proceeds.

o   All amounts paid to Drivetrain shall be in cash, in United States currency, and on or by the dates set forth herein.

o   All other terms of Drivetrain's engagement are set forth in the Litigation Trust Agreement, the Plan, and the Confirmation Order.

**EXHIBIT 7.6**

**SCHEDULE OF GUC/LITIGATION TRUST CAUSES OF ACTION**

## EXHIBIT 7.6

## SCHEDULE OF GUC/LITIGATION TRUST CAUSES OF ACTION[1]

Article 7.5 of the Plan provides that, on the Effective Date, or on such other date as is set forth in the GUC/Litigation Trust Agreement, pursuant to section 1123(b)(3) of the Bankruptcy Code, the GUC/Litigation Trust Assets shall be transferred by the Debtors (and deemed transferred) to the GUC/Litigation Trust free and clear of all Claims, Liens, charges, encumbrances, rights, and interests, without the need for any Entity to take any further action or obtain any approval and the GUC/Litigation Trust shall be authorized as the representative of the Estates to pursue GUC/Litigation Trust Causes of Action.

"GUC/Litigation Trust Causes of Action" means all Causes of Action of the Debtors' Estates as of the Effective Date, including all Estate Avoidance Actions (other than Avoidance Actions against the Yieldcos and Avoidance Actions against the Prepetition First Lien Secured Parties and the Second Lien Creditors), to the extent such Causes of Action are not released, or settled with the consent of the Creditors' Committee, pursuant to Article 11.5 of the Plan or released or settled pursuant to an Order of the Bankruptcy Court or the Committee/BOKF Plan Settlement Term Sheet.

Article 7.6(b) of the Plan provides that the GUC/Litigation Trust, with the consent of the Reorganized Debtors to the extent such GUC/Litigation Trust Causes of Action interfere with (i) the Reorganized Debtors' collection of Earnout Proceeds, Residual Assets Proceeds, or Repatriated Cash or (ii) the continuing operations of TERP, shall determine whether to bring, settle, release, compromise, or enforce such GUC/Litigation Trust Causes of Action (or decline to do any of the foregoing), and shall not be required to seek further approval of the Bankruptcy Court for such action. The GUC/Litigation Trust or any successors may pursue such litigation claims in accordance with the best interests of the GUC/Litigation Trust or any successor holding such rights of action. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any GUC/Litigation Trust Cause of Action against them as any indication that the GUC/Litigation Trust will not pursue any and all available GUC/Litigation Trust Causes of Action against them. The GUC/Litigation Trust expressly reserves all rights to prosecute any and all GUC/Litigation Trust Causes of Action against any Entity, except as otherwise provided in the Plan.** Unless any GUC/Litigation Trust Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the GUC/Litigation Trust expressly reserves all GUC/Litigation Trust Causes of Action for later adjudication. For the avoidance of doubt, any Causes of Action pursuant to which the Reorganized Debtors seek to recover proceeds from Earnout Assets, Residual Assets, or Repatriated Cash shall be preserved and retained, and shall remain with the Reorganized Debtors and shall not be transferred to the GUC/Litigation Trust.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Second Amended Joint Plan of Reorganization of SunEdison, Inc. and its Debtor Affiliates.

Notwithstanding, and without limiting the generality of, Articles 7.5 and 7.6 of the Plan, the following Exhibit 7.6-1 through Exhibit 7.6-10 include specific types of Causes of Actions expressly preserved by the Debtors and the Reorganized Debtors and transferred to the GUC/Litigation Trust, including: (i) claims related to accounts receivable and accounts payable; (ii) claims related to deposits, adequate assurance postings, and other collateral postings; (iii) claims, defenses, cross-claims, and counter-claims related to litigation and possible litigation; (iv) claims related to contracts and leases, including for setoff; (v) claims related to vendor and/or customer obligations; (vi) claims related to tax credits and refunds; (vii) claims related to intellectual property; (viii) claims related to environmental matters; (ix) claims related to current or former employee matters, and (x) claims related to potential avoidance of prepetition transfers under sections 362, 502, 510, 542, 543, 547, 548, and 550 of the Bankruptcy Code. Each such exhibit is subject to the terms of the Plan and the information provided in this Exhibit 7.6.

In addition, the Debtors expressly retain and transfer to the GUC/Litigation Trust all Claims and Causes of Action (other than Avoidance Actions against the Yieldcos and Avoidance Actions against the Prepetition First Lien Secured Parties and the Second Lien Creditors) against any Entity listed in each of the creditor matrices for each Debtor (the "Creditor Matrix"), regardless of whether such Entity is listed in the following Exhibit 7.6-1 through Exhibit 7.6-10, to the extent such Entities owe or may in the future owe money to the Debtors or the Reorganized Debtors, except to the extent Claims and Causes of Action against an Entity listed in the Creditor Matrix have been settled or released through the Plan or an order of the Bankruptcy Court.

## **Exhibit 7.6-1**

### Claims Related to Accounts Receivable and Accounts Payable

Unless otherwise released by the Plan or an order of the Bankruptcy Court, the Debtors expressly reserve and transfer to the GUC/Litigation Trust all Causes of Action against or related to all Entities that owe or that may in the future owe money to the Debtors or Reorganized Debtors, including but not limited to any claims for contribution, setoff, recoupment, or indemnification, provided, however, the Debtors expressly reserve all Causes of Action to the extent that they may be asserted as recoupment, setoff, counterclaims or otherwise against any Entities who assert that the Debtors or Reorganized Debtors owe money to them, including but not limited to any related defenses and cross claims.

For the avoidance of doubt, the consent of the Reorganized Debtors shall be required to bring, settle, release, compromise, or enforce such GUC/Litigation Trust Causes of Action (or decline to do any of the foregoing) to the extent such GUC/Litigation Trust Causes of Action interfere with (i) the Reorganized Debtors' collection of Earnout Proceeds, Residual Assets Proceeds, or Repatriated Cash or (ii) the continuing operations of TERP.

## **Exhibit 7.6-2**

### Claims Related to Deposits, Adequate Assurance Postings, and Other Collateral Postings

Unless otherwise released by the Plan or an order of the Bankruptcy Court, the Debtors expressly reserve and transfer to the GUC/Litigation Trust all Causes of Action based in whole or in part upon any and all postings of a security deposit, adequate assurance payment, or any other type of deposit or collateral.

For the avoidance of doubt, the consent of the Reorganized Debtors shall be required to bring, settle, release, compromise, or enforce such GUC/Litigation Trust Causes of Action (or decline to do any of the foregoing) to the extent such GUC/Litigation Trust Causes of Action interfere with (i) the Reorganized Debtors' collection of Earnout Proceeds, Residual Assets Proceeds, or Repatriated Cash or (ii) the continuing operations of TERP.

## Exhibit 7.6-3

### Claims, Defenses, Cross-Claims, and
### Counter-Claims Related to Litigation and Possible Litigation

The following Exhibit 7.6-3 includes Entities, affiliates, subsidiaries and successors and assigns, that are party to or that the Debtors believe may become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial. Unless otherwise released by the Plan or an order of the Bankruptcy Court, the Debtors expressly reserve and transfer to the GUC/Litigation Trust all claims, defenses, cross claims, setoffs and counterclaims against or related to all Entities that are party to or that may in the future become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial, regardless of whether such Entity is included on the schedule accompanying this Exhibit 7.6-3, which schedule includes such actions to which the Debtors may be party as a plaintiff or defendant.  For the avoidance of doubt, the Debtors expressly reserve and transfer to the GUC/Litigation Trust all claims, defenses, cross claims, setoffs and counterclaims against or related to all Entities arising from prepetition merger and acquisition activities, regardless of whether such Entity is included on the schedule accompanying this Exhibit 7.6-3.

**For the avoidance of doubt, no Entity may rely on its omission from Exhibit 7.6-3 as any indication that the GUC/Litigation Trust will not pursue any and all available Causes of Action against them. The Debtors and the Reorganized Debtors expressly reserve and transfer to the GUC/Litigation Trust all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.**

For the avoidance of doubt, the consent of the Reorganized Debtors shall be required to bring, settle, release, compromise, or enforce such GUC/Litigation Trust Causes of Action (or decline to do any of the foregoing) to the extent such GUC/Litigation Trust Causes of Action interfere with (i) the Reorganized Debtors' collection of Earnout Proceeds, Residual Assets Proceeds, or Repatriated Cash or (ii) the continuing operations of TERP.

For the avoidance of doubt, to the extent any provision in the Plan (including this Plan Supplement) is inconsistent with the terms of the D&O Settlement Agreement or the D&O Settlement Approval Order, the D&O Settlement Agreement or the D&O Settlement Approval Order, as applicable, shall control.

For the avoidance of doubt, to the extent any provision in the Plan (including this Plan Supplement) is inconsistent with the terms of the YieldCo Settlement Agreements or the order of the Bankruptcy Court approving the YieldCo Settlement Agreements [Docket No. 3292] (the "YieldCo Settlement Approval Order"), the YieldCo Settlement Agreements or the YieldCo Settlement Approval Order, as applicable, shall control.

## SUNEDISON, INC., ET AL – LIST OF CLAIMS

| NAME | JURISDICTION | OTHER PARTY | CONTACT INFORMATION OF PRIMARY COUNSEL | CONTACT INFORMATION OF OTHER COUNSEL |
|------|--------------|-------------|----------------------------------------|--------------------------------------|
| ADLER | INDIA | | | |
| AEROTEK | EASTERN DISTRICT OF MISSOURI | AEROTEK, INC. | SHOOK, HARDY & BACON LLP<br>MICHAEL B. BARNETT<br>MARK MOEDRITZER<br>RICHARD F. SHEARER<br>KANSAS CITY, MO 64108-2613 | |
| AGRAWAL V. TERRAFORM GLOBAL | ND CALIFORNIA | ABHISHEK AGRAWAL | | |
| AIG V. SPG | COLORADO | AIG PROPERTY CASUALTY CO., AS SUBROGEE OF JOHN PAUL DEJORIA | DWORKIN, CHAMBERS & WILLIAMS, YORK, BENSON & EVANS, P.C.<br>GERI O'BRIEN WILLIAMS<br>LACY A. SCOTT<br>3900 E. MEXICO AVENUE<br>SUITE 1300<br>DENVER, CO 80210 | |
| AIREKO CONSTRUCTION LLC | PUERTO RICO LOCAL COURT | AIREKO CONSTRUCTION LLC | ATTN: FERNANDO E. AGRAIT<br>701 AVENIDA PONCE DE LEON<br>EDIFICIO CENTROS DE SEGUROS,<br>OFICINA 414<br>SAN JUAN PR 00907 | |
| APPALOOSA DERIVATIVE LITIGATION | DELAWARE CHANCERY | TERRAFORM POWER<br>APPALOOSA INVESTMENT LIMITED PARTNERSHIP I | BALLARD SPAHR LLP<br>DAVID J. MARGULES<br>ELIZABETH A. SLOAN<br>919 NORTH MARKET STREET<br>11TH FLOOR<br>WILMINGTON, DE 19801-3034 | |

| | | | |
|---|---|---|---|
| ATLANTIC SPECIALTY INSURANCE CO. | ED MISSOURI | ATLANTIC SPECIALTY INSURANCE COMPANY | CLAYBORNE SABO & WAGNER LLP<br>JOHN SABO<br>525 WEST MAIN STREET<br>SUITE 105<br>BELLEVILLE, IL 62220 |
| BLOOM V. SUNEDISON | ND CALIFORNIA | CHARLES BLOOM<br>SHARON BURNSTEIN | SCOTT + SCOTT ATTORNEYS AT LAW LLP |
| BROUHA (SHEFFIELD) | VERMONT | PAUL BROUHA | DENISE ANDERSON, PLC<br>35 SOUTH MAIN STREET<br>2ND FLOOR<br>HANOVER, NH 03755 |
| BRYAN MARTINEZ | SUPERIOR COURT OF CALIFORNIA FOR THE COUNTY OF ORANGE | BRYAN MARTINEZ | STEVENS & MCMILLAN<br>HEATHER MCMILLAN<br>DANIEL P. STEVENS<br>335 CENTENNIAL WAY<br>TUSTIN, CA 92780 |
| BUTLER V. SUNEDISON | AAA ARBITRATION | MARTHA BUTLER | ELLIE BOWDEN<br>418 VISTA COURT<br>BENECIA, CA 94510 |
| CARLSBAD AIRPORT SELF STORAGE LP, ET AL. | CALIFORNIA | CARLSBAD AIRPORT SELF STORAGE, COLTON CV, LP<br>COLTON PLANO, LP<br>COLTON VB, LP<br>GSC DEL AMO, LTD<br>GSC INDIO, LTD<br>GSC IRVINE/MAIN, LLC<br>GSC RANCHO I, LLC<br>GSC VICTORVILLE LP<br>ARCADIA, LP<br>SAG OCEANSIDE, LP<br>SAG PALM DESERT, LP<br>SANDERSON J. RAY<br>WOODBRIDGE SELF STORAGE, LP | KASDAN SIMONDS WEBER & VAUGHAN LLP<br>KENNETH S. KASDAN<br>ROBERT R. BRINA<br>19900 MACARTHUR BLVD.<br>SUITE 850<br>IRVINE, CA 92612-6510 |

2

| | | |
|---|---|---|
| COELHO LITIGATION | CARLOS A. COELHO D/B/A COELHO & SONS STONEWALLS | J. ALEXANDER WATT 3267 MAIN STREET PO BOX 881 BARNSTABLE, MA 02630 |
| CONSERFRUTTA SRL V. SUNENERGY & PARTNERS S.R.L - MEAG QTA INDEMNITY RESTINCO (ROSATO TERNA) | CONSERFRUTTA SRL V. SUNENERGY & PARTNERS S.R.L | |
| CREAM HILL | CREAM HILL CLEAN ENERGY, LLC | URY & MOSKOW, LLC NEAL I. MOSKOW 883 BLACK ROCK TURNPIKE FAIRFIELD, CT 06825 |
| DAVID SAUNDERS | DAVID SAUNDERS | BARRISTER & SOLICITOR GRAHAM F. SIRMAN 275 ONTARIO STREET SUITE 102 KINGSTON, ONTARIO, K7K 2X5 |
| DAVIDE PALUMBO (EMPLOYMENT) | DAVIDE PALUMBO | |
| DEL MONTE ELECTRIC, INC. | DEL MONTE ELECTRIC, INC. | MCINERNEY & DILLON P.C. TIMOTHY L. MCINERNEY BRIAN M. JUNGINGER 1999 HARRISON STREET, SUITE 1700 OAKLAND, CA 94612 |
| DULL ET AL V. SUNEDISON, INC. INVESTMENT COMMITTEE | JULIE DULL ERIC O'DAY | |

Column mid: US DISTRICT COURT - MASS. CASE 1:15-CV-11927-RWZ / ITALY / US DISTRICT COURT CONNECTICUT / CANADA, ONTARIO / ITALY / CALIFORNIA STATE COURT / ED MISSOURI

PAWA LAW GROUP, P.C. MATTHEW F. PAWA WESLEY KELMAN 1280 CENTRE STREET SUITE 230 NEWTON CENTRE, MA 02459

3

| DUPONT | DELAWARE | E.I. DU PONT DE NEMOURS AND COMPANY | DUPONT LEGAL<br>IP CORPORATE COUNSEL<br>CRP 721/2152<br>THOMAS A. STEVENS<br>974 CENTRE ROAD<br>WILMINGTON, DE 19805-1269 | ASHBY & GEDDES<br>STEPHEN J. BALICK<br>LAUREN E. MAGUIRE<br>ANDREW C. MAYO<br>500 DELAWARE AVENUE<br>PO BOX 1150<br>WILMINGTON, DE 19899<br>-AND-<br>BARTLIT BECK HERMAN<br>PALENCHAR & SCOTT LLP<br>ADAM K. MORTARA<br>JOHN C. FITZPATRICK<br>TULSI E. GAONKAR<br>54 WEST HUBBARD STREET<br>SUITE 300<br>CHICAGO, IL 60654 |
|---|---|---|---|---|
| EASTCOAST SITE WORKS, INC. | NEW JERSEY<br>STATE COURT | EASTCOAST SITE WORK, INC. | K. JOHNSON & ASSOCIATES, LLC<br>KRISTEN E. JOHNSON<br>150 CHAMBERS BRIDGE ROAD<br>SUITE 203<br>BRICK NY 08723 | |
| EASTERN MAINE ELECTRIC (EMEC) | MAINE | EASTERN MAINE ELECTRIC COOPERATIVE, INC. | PRETI, FLAHERTY, BELIVEAU & PACHIOS, LLP<br>JOHN MCVEIGH<br>ONE CITY CENTER, PO BOX 9546<br>PORTLAND, ME 04112-9546 | |
| ECHOFIRST - FORTIS | CALIFORNIA<br>STATE COURT (SF) | FORTIS ADVISORS LLC<br>KHOSLA VENTURES II LP<br>KHOSLA VENTURES III LP<br>SIGMA ASSOCS. 8, L.P.<br>SIGMA PARTNERS 8, L.P.<br>SIGMA INVESTORS 8, L.P.<br>ENERGY & ENVIRONMENT<br>FIRST INVESTMENT L.P. | GOODWIN PROCTOR LLP<br>MICHAEL T. JONES<br>135 COMMONWEALTH DRIVE<br>MENLO PARK, CA 94025-1105 | GOODWIN PROCTOR LLP<br>HAYES P. HYDE<br>THREE EMBARCADERO CENTER<br>24TH FLOOR<br>SAN FRANCISCO, CA 94111-9991 |
| ECKA | SOUTH CAROLINA<br>FEDERAL | ECKA GRANULES OF AMERICA, LLC | SOWELL GRAY STEPP & LAFFITTE, LLC<br>ROBERT E. STEPP<br>BENJAMIN R. GOODING<br>1310 GADSDEN STREET<br>COLUMBIA, SC 29201 | |

4

| EQUIS | SINGAPORE | EQUIS | 1 GEORGE ST #14-04 ONE GEORGE STREET 049145 SINGAPORE |
| EVOLVE SOLAR | UTAH STATE COURT | EVOLVE SOLAR, INC. | MICHAEL BEST & FRIEDRICK, LLP EVAN S. STRASSBERG 6995 SOUTH UNION PARK CENTER SUITE 100 SALT LAKE CITY, UT 98047 |
| FREEDOM GROUP OF COMPANIES V. SUNEDISON UK (WRONG ENTITY SUED) | UNITED KINGDOM | FREEDOM GROUP OF COMPANIES | 7, PHOENIX SQUARE ,WYNCOLLS ROAD COLCHESTER CO4 9AS UNITED KINGDOM |
| FRENCH TCPA LAWSUIT | EASTERN DISTRICT OF CALIFORNIA | NORENE FRENCH | C/O BURSOR & FISHER, P.A., L TIMOTHY FISHER, ANNICK M. PERSINGER, YEREMEY O. KRIVOSHEY, 1990 NORTH CALIFORNIA BLVD,, WALNUT CREEK, CA 94596 |
| FRONTIER CAL. INC. V. SUNEDISON, INC. | CALIFORNIA STATE COURT | FRONTIER CALIFORNIA INC. (VERIZON CALIFORNIA) | DIAMOND & DRAGOJEVIC, LLP, 21860 BURBANK BLVD, STE 370, WOODLAND HILLS, CA 91367 |
| GESTAMP | TEXAS STATE COURT | GESTAMP SOLARSTEEL U.S., INC. | JUSTIN KELLY, BURR & FORMAN LLP 3400 WELLS FARGO TOWER 420 NORTH 20TH ST. BIRMINGHAM, AL 35203 |
| GOLDEN V. CHATILA (MD DERIVATIVE ACTION) | MONTGOMERY COUNTY, MARYLAND STATE COURT | JAMES GOLDEN SUNEDISON, INC. TERRAFORM GLOBAL, INC. | MURPHY, FALCON & MURPHY WILLIAM H. MURPHY III ONE SOUTH STREET 23RD FLOOR BALTIMORE, MD 21202 THE BROWN LAW FIRM, P.A. TIMOTHY W. BROWN 127A COVE ROAD OYSTER BAY COVE, NY 11771 |

| | | |
|---|---|---|
| GREENE TWEED | IN THE DISTRICT COURT OF HARRIS COUNTY, TEXAS | GREENE TWEED & CO. | MCGUIRE WOODS LLP<br>THOMAS M. FARRELL<br>600 TRAVIS STREET<br>SUITE 7500<br>HOUSTON, TX 77002 |
| GULF COAST | TEXAS | GULF COAST KAPROC, INC. D/B/A ARMSTRONG/WEATHERLY & ASSOCIATES, INC. | GRAY REED & MCGRAW, P.C.<br>JOE VIRENE<br>1300 POST OAK BLVD.<br>SUITE 2000<br>HOUSTON, TX 77056 |
| HELIX ELECTRIC OF NEVADA / WISZCO, LLC | NEVADA STATE COURT | WISZCO LLC | RICHARD PEEL<br>PEEL BRIMLEY<br>3333 E. SERENE AVE<br>SUITE 200<br>HENDERSON, NV 89074 |
| HILLIKER | MASSACHUSETTS STATE COURT | VICTORIA HILLIKER | PHILIP J. PUGLISI<br>BIGELOW & PUGLISI, P.C.<br>11 BEACON ST.<br>SUITE 615<br>BOSTON, MA 02108 |
| HOROWITZ V. SUNEDISON ET AL. (CONSOLIDATED SUNE SECURITIES CLASS ACTION) | SDNY MDL | HOROWITZ ETC. | CAREY, DANIS & LOWE LLC<br>JAMES ROSEMERGY<br>8235 FORSYTH<br>STE. 1100<br>ST. LOUIS, MO 63105 | GARDY AND NOTIS, LLP<br>MARK GRADY<br>TOWER 56<br>126 EAST 56TH STREET, 8TH FLOOR<br>NEW YORK, NY 10024 |
| HYDROENERGY COMPANY LTD V. NVT LICENSES LLC | UNITED KINGDOM | HYDROENERGY COMPANY LTD | | |

6

| Case | Court | Parties | Attorneys |
|---|---|---|---|
| INDIVIDUAL SHAREHOLDER ACTIONS (CA) (COBALT PARTNERS, GLENVIEW CAPITAL, OMEGA CAPITAL INVESTORS, OKLAHOMA FF, KINGDON ASSOCIATES, VMT II, | SDNY | | ROBBINS GELLER<br>DARREN J. ROBBINS<br>JAMES JACONETTE<br>JENNIFER NUNEZ CARINGAL<br>SCOTT H. SAHAM<br>SUSAN G. TAYLOR<br>655 W BROADWAY STE. 1900<br>SAN DIEGO, CA 92101<br>-AND-<br>ROBBINS GELLER<br>DENNIS J HERMAN<br>DAVID WILLIAM HALL<br>POST MONTGOMERY CENTER, ONE MONTGOMERY STREET, SUITE 1800<br>SAN FRANCISCO, CA 92104 |
| IRON WORKERS MID-SOUTH PENSION FUND V. TERRAFORM GLOBAL | ND CALIFORNIA | IRON WORKERS MID-SOUTH PENSION FUND | GAINEY MCKENNA & EGLESTON<br>THOMAS J. MCKENNA<br>295 MADISON AVE.<br>4TH FLOOR<br>NEW YORK, NY 10017 |
| JONES - ERISA | ED MO AND ST. LOUIS COUNTY, MISSOURI STATE COURT | JERRY JONES<br>MANUEL ACOSTA | DYSTART AND TAYLOR<br>DON R. LOLLI<br>4420 MADISON AVENUE<br>SUITE 200<br>KANSAS CITY, MO 64111 |
| KERN COUNTY | COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY | KERN SOLAR LLC<br>SUNE P11L HOLDINGS LLC | 1717 ARCH STREET<br>PHILADELPHIA, PA 19103<br>VENZIE, PHILLIPS & WARSHAWER<br>BRUCE L. PHILLIPS<br>2032 CHANCELLOR STREET<br>PHILADELPHIA, PA 19103 |
| KPMG LLP AND ITS AFFILIATES | | | KPMG LLP<br>AON CENTER<br>SUITE 5500<br>200 EAST RANDOLPH DRIVE<br>CHICAGO, IL 60601-6436<br>KPMG LLP<br>SUITE 300<br>10 SOUTH BROADWAY<br>ST. LOUIS, MO 63102-1761 |

7

8

| | | | |
|---|---|---|---|
| KUNZ V. SUNEDISON | ED MISSOURI | ROBERT KUNZ | |
| LAP - ARBITRATION | ICC ARBITRATION | BTG PACTUAL BRAZIL INFRASTRUCTURE FUND II, LP P2 BRASIL PRIVATE INRRASTRUCTURE FUND II, LP P2 FUND II LAP CO-INVEST LP P2 LAP CO-INVEST UK, LP GMR HOLDING B.V. ROBERTO SAHADE | QUINN EMMANUEL URQUHART & SULLIVAN, LLP MICHAEL CARLINSKY, TAI-HENG CHENG JOHN H. CHUN 51 MADISON AVENUE 22ND FLOOR NEW YORK, NY 10010 |
| LAP - COURT | NEW YORK STATE COURT | BTG PACTUAL BRAZIL INFRASTRUCTURE FUND II, LP P2 BRASIL PRIVATE INRRASTRUCTURE FUND II, LP P2 FUND II LAP CO-INVEST LP P2 LAP CO-INVEST UK, LP GMR HOLDING B.V. ROBERTO SAHADE | QUINN EMMANUEL URQUHART & SULLIVAN, LLP MICHAEL CARLINSKY, TAI-HENG CHENG JOHN H. CHUN 51 MADISON AVENUE 22ND FLOOR NEW YORK, NY 10010 |
| LENNOX | CANADIAN COURT | LENNOX SNOW FENCE CO. (1982) LTD. | |
| LINTON V. SUNEDISON | ED MISSOURI | ROBERT LINTON | |
| MAHARAJ (EMPLOYMENT) | CANADA | AMAN MAHARAJ | RUDNER MACDONALD LLP NATALIE MACDONALD 2 BLOOR ST W., STE. 1005 TORONTO, ON M4W3E2 |
| MAILLETT | MAINE | JASON MALLIETT | GILBERT & GREIF ARTHUR GREIF 82 COLUMBIA ST, PO BOX 2339, BANGOR, ME, 04402-2339 |

| | | |
|---|---|---|
| MALLIETT V. FIRST WIND (EMPLOYMENT) | MAINE STATE COURT | JASON MALLIETT | ARTHUR GREIF GILBERT & GREIF 82 COLUMBIA ST. PO BOX 2339 BANGOR ME 04402-2339 |
| MARATHON | AAA ARBITRATION | MARATHON CAPITAL LLC | RIMON PC RICHARD MOONEY ONE EMBARCADERO CENTER SUITE 400 SAN FRANCISCO, CA 94111 |
| MARQUITA BELCHER V. PV GURU, INC. AND SUNEDISON, INC. | ALAMEDA COUNTY, CALIFORNIA | MARQUITA BELCHER | |
| MCKINSEY RECOVERY & TRANSFORMATION SERVICES U.S., LLC AND ITS AFFILIATES | | | TWO HARBOR POINT SQUARE 100 WASHINGTON BOULEVARD STAMFORD, CT 06902 |
| MERIDIAN | MASSACHUSETTS STATE COURT | MERIDIAN ASSOCIATES, INC. | MICLANE MIDDLETON, P.A. ANDREW P. BOTTI 300 TRADE CENTER SUITE 7000 WOBURN, MA 01801 |
| MICHELE BEASLEY | ARBITRATION - JAMS | MICHELE BEASLEY | 17 HOVEY AVENUE, NATICK, MA 01760 |
| MILFORD WIND CORRIDOR LITIGATION | DELAWARE CHANCERY | MTW RESOURCES, LLC | RATH, YOUNG AND PIGNATELLI, P.C. CURT WHITTAKER 1 OAKMONT DRIVE CONCORD, NH 03301 |

RITZ CLARK & BEN-ASHER LLP
JONATHAN BEN-ASHER
59 MAIDEN LANE
39TH FLOOR
NEW YORK, NY 10038

9

| | | | |
|---|---|---|---|
| MO DERIVATIVE LITIGATIONS | MISSOURI STATE COURT | TROY JACKSON | COSGROVE LAW GROUP, LLC<br>DAVID B. COSGROVE<br>DANIEL V. CONLISK<br>7733 FORSYTH BLVD.<br>SUITE 1675<br>ST. LOUIS, MO 63105 | HYNES KELLER & HERNANDEZ, LLC<br>MICHAEL J. HYNES<br>3070 BRISTOL PIKE, SUITE 112 1150<br>FIRST AVENUE, SUITE 501<br>KING OF PRUSSIA, PA 19406 |
| MOODIE V. SUNEDISON | NEW YORK – SOUTHERN | | |
| MSSA | TEXAS | MSSA S.A.S.<br>MSSA COMPANY<br>CORPORATION | SHIPLEY SNELL MONTGOMERY LLP<br>LAINA R. MILLER<br>712 MAIN STREET<br>SUITE 1400<br>HOUSTON, TX 77002 | MURPHY & MCGONIGLE, P.C.<br>STEVEN D. FELDMAN<br>BARRY S. GOLD<br>1185 AVENUE OF THE AMERICAS<br>21ST FLOOR<br>NEW YORK, NY 10036 |
| MSSA - ARBITRATION | INTERNATIONAL CHAMBER OF COMMERCE | MSSA S.A.S.<br>MSSA COMPANY<br>CORPORATION | MURPHY & MCGONIGLE, P.C.<br>STEVEN D. FELDMAN<br>BARRY S. GOLD<br>1185 AVENUE OF THE AMERICAS<br>21ST FLOOR<br>NEW YORK, NY 10036 | |
| NEVADA STATE CONTRACTORS BOARD | NEVADA STATE CONTRACTORS BOARD | NEVADA STATE CONTRACTORS BOARD | 9670 GATEWAY DRIVE<br>SUITE 100<br>RENO, NV 89521 | |
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM V. SUNEDISON | ND CALIFORNIA | OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM | ROBBINS GELLER RUDMAN & DOWD LLP<br>DENNIS J. HERMAN<br>DAVID W. HALL<br>POST MONTGOMERY CENTER<br>ONE MONTGOMERY STREET SUITE 1800<br>SAN FRANCISCO, CA 94104 | EISEMAN LEVINE LEHRAUPT & KAKOYIANNIS, P.C.<br>LAURENCE MAY<br>PETER REISER<br>ERIC ASCHKENASY<br>805 THIRD AVENUE, 10TH FL<br>NEW YORK, NY 10022 |
| ORTECH CONSULTING - CANADA | CANADA | ORTECH CONSULTING INC. | BARRISTERS & SOLICITORS<br>MARCHALL KIREWSKIE<br>PAUL MARSHALL<br>201-88 DUNN STREET<br>OAKVILLE, ONTARIO L6J 3C | |

10

| | | | |
|---|---|---|---|
| PACKAGING SPECIALTIES | OHIO STATE COURT | PACKAGING SPECIALTIES, INC. | PACKAGING SPECIALTIES, INC. 300 LAKE ROAD MEDINA, OH 44256 | ULMER & BERNE LLP MICHAEL S. TUCKER LIAM J. DUNN 1660 WEST 2ND STREET SUITE 1100 CLEVELAND, OH 44113 |
| PCS | NORTH CAROLINA | PCS PHOSPHATE COMPANY, INC. PCS SALES (USA), INC. | PARKER POE ADAMS & BERNSTEIN LLP CHARLES E. RAYNAL, IV PNC PLAZA 301 FAYETTEVILLE STREET SUITE 1400, PO BOX 389 RALEIGH, NC 27601 | JONES DAY Paula S. Quist Kristina K. Cercone 77 W. Wacker Drive Chicago, Illinois 60601-1692 |
| PRICEWATERHOUSECOOPERS LLP AND ITS AFFILIATES | | | 300 MADISON AVENUE NEW YORK, NY 10017 | |
| PRIME SOLAR SOURCE | NEW JERSEY STATE COURT | PRIME SOLAR SOURCE, LLC | GLUCK WALRATH LLP ANDREW BAYER 4428 RIVER VIEW PLAZA TRENTON, NJ 08611 | |
| PYRAMID HOLDINGS V. TERRAFORM GLOBAL (CONSOLIDATED TERP SECURITIES CLASS ACTION) | SDNY MDL | PYRAMID HOLDINGS, ETC. | ABRAHAM FRUCHTER & TWERSKY LLP IAN BERG 11622 EL CAMINO REAL, SUITE 100 SAN DIEGO, CA 92130 -AND- ABRAHAM FRUCHTER & TWERSKY LLP LAWRENCE DONALD LEVIT JACK GERALD FRUCHTER ONE PENN PLAZA SUITE 2805 NEW YORK, NY 10119 | ANDREWS KURTH LLP CASSANDRA LYNN PORSCH 450 LEXINGTON AVENUE NEW YORK, NY 10017 |
| REFEX | INDIA | REFEX | | |

11

| | | | |
|---|---|---|---|
| SHIN-ETSU/SOLIACX | OREGON STATE COURT | SHIN-ETSU QUARTZ PRODUCTS CO., LTD. | LANDERHOLM P.S. TIMOTHY J. CALDERBANK 805 BROADWAY STREET SUITE 1000, PO BOX 1086 VANCOUVER, WA 98666 |
| SKYPOWER | CANADA | SUNE SKY 13TH SIDEROAD LP SUNE SKY RYERSE LP | LENCZNER SLAGHT ROYCE SMITH GRIFFIN LLP GLENN SMITH AND MELANIE BAIRD 130 ADELAIDE ST. WEST TORONTO ON M5H 3P5 |
| SOLOMONEDWARDSGROUP, LLC | ST. CHARLES COUNTY, MISSOURI STATE COURT | SOLOMON EDWARDS GROUP, LLC | VINCENT D. VOGLER TWO CITYPLACE DRIVE SUITE 150, P.O. BOX 419037 ST. LOUIS, MO 63141-9037 |
| SOUTH LIGHT | CANADIAN COURT | SOUTH LIGHT DESIGN / BUILD INC. | |
| ST. MARY'S | CANADIAN COURT | CBA READY MIX DIVISION (ST. MARY'S CEMENT INC., CANADA) | |
| SUMEI | JAPAN | SUMEI | |
| SUNEDISON ERISA ACTIONS - USENKO | EASTERN DISTRICT OF MISSOURI | ALEXANDER Y. USENKO | WEINHAUS & POTASHNICK MARK POTASHNICK 11500 OLIVE BLVD. SUITE 133 ST. LOUIS, MO 61341 |
| SUNEDISON SOLAR POWER INDIA PRIVATE LIMITED & OTHERS | INDIA | | HARWOOD FEFFER LLP ROBERT I. HARWOOD TANYA KORKHOV 488 MADISON AVENUE NEW YORK, NY 10022 |

12

| SUNFUSION SOLAR & SANDY ELLARD | AAA | SANDY ELLARD SUNFUSION SOLAR | 7766 ARIONS DRIVE SUITE B SAN DIEGO, CA 92126 |
| --- | --- | --- | --- |
| SUNPOWER V. SUNEDISON (US) | SANTA CLARA COUNTY, CALIFORNIA SUPERIOR COURT | SUNPOWER CORPORATION | KNOBBE MARTENS OLSON BEAR LLP MICHAEL K. FRIEDLAND AMY C. CHUN ALI S. RAZAI 2040 MAIN STREET, 14TH FLOOR IRVINE, CA 92614 -AND- KNOBBE MARTENS OLSON BEAR LLP BORIS ZELKIND 12790 EL CAMINO REAL SAN DIEGO, CA 92130 |
| SUPPLYSOURCE DC, LLC D/B/A RE | DISTRICT | ARLINGTON COUNTY, VIRGINIA CIRCUIT COURT | SUPPLYSOURCE DC, LLC D/B/A RE | DISTRICT | GLEN FRANKLIN KOONTZ, KOONTZ P.C. PO BOX 1176 BERRYVILLE, VA 22611 |
| TECHCORR USA MANAGEMENT, LLC D/B/A TECHCORR USA, LLC | IN THE DISTRICT COURT OF HARRIS COUNTY, TEXAS | TECHCORR USA MANAGEMENT, LLC D/B/A TECHCORR USA, LLC | WELSH LEBLANC LLP JARED G. LEBLANC MEGHAN K. FLANERY 8 GREENWAY PLAZA SUITE 1150 HOUSTON, TX 77046 |
| TERRASMART, LLC V. NVT LICENSES, LLC | MASSACHUSETTS STATE COURT | TERRASMART, LLC | ADAM BASCH, BACON WILSON P.C. 33 STATE STREET SPRINGFIELD, MA 01103 |
| TOYO TANSO | OREGON STATE COURT | TOYO TANSO USA, INC. | ATER WYNNE LLP ALEXANDRA M. SCHULMAN 1331 LOVEJOY STREET SUITE 900 PORTLAND, OR 97209-3280 |
| UNITED ELECTRIC SUPPLY CO. | MARYLAND STATE COURT | UNITED ELECTRIC SUPPLY CO., INC. | UNITED ELECTRIC SUPPLY CO., INC. 10 BELLECOR DRIVE NEW CASTLE, DE 19720 | JILL D. CARAVAGGIO 11116 INNSBROOK WAY SUITE B IJAMSVILLE, MD 21754 |

13

| USENKO V. SUNEDISON ET AL. (ERISA CLAIMS) | SDNY MDY (ORIGINALLY ED MISSOURI) | ALEXANDER USENKO | HARWOOD FEFFER LLP DANIELLA QUITT ROBERT I. HARWOOD TANYA KORKHOV 488 MADISON AVENUE NEW YORK, NY 10022 | WEINHAUS AND POTASHNICK MARK A. POTASHNICK 11500 OLIVE BOULEVARD SUITE 133 ST. LOUIS, MO 63141 |
| VALLEY HOME | MASSACHUSETTS STATE COURT | VALLEY HOME IMPROVEMENT, INC. | DAVID WILENSKY PO BOX 202 NORTHAMPTON, MA 01061 | |
| VAUGHN WIND | NEW MEXICO | J&K VICENTE LLC VICENTE RANCH CO., INC. JOE VICENTE | JONES, SNEAD, WERTHEIM & CLIFFORD, PA JERRY TODD WERTHEIM 1800 OLD PECOS TRAIL, PO BOX 2228 SANTA FE, NM 87504-2228 | |
| VIVINT SHAREHOLDER CLASS ACTIONS - BUSHANSKY | UTAH STATE COURT | STEPHEN BUSHANSKY | ABBOTT LAW FIR NELSON ABBOTT 3651 NORTH 100 EAST SUITE 350 PROVO, UT 84604 | WEISSLAW LLP RICHARD A. ACOCELLI MICHAEL ROGOVIN KELLY KEENAN 1500 BROADWAY 16TH FLOOR NEW YORK, NY 10036 |
| VIVINT SHAREHOLDER CLASS ACTIONS - WILLIAMS | UTAH STATE COURT | ARNIE WILLIAMS | ABBOTT LAW FIRM NELSON ABBOTT 3651 NORTH 100 EAST SUITE 350 PROVO, UT 84604 | RIGRODSKY & LONG, P.A. SETH D. RIGRODSKY BRIAN D. LONG GINA M. SERRA JEREMY J. RILEY 2 RIGHTER PARKWAY, STE. 120, WILMINGTON, DE 19803 -AND- RYAN & MANISKAS, LLP KATHARINE M. RYAN RICHARD A. MANISKAS 995 OLD EAGLE SCHOOL ROAD SUITE 311 WAYNE, PA 19087 |

14

| | | | | |
|---|---|---|---|---|
| VIVINT V. SUNEDISON | DELAWARE CHANCERY | VIVINT SOLAR, INC. | WILSON SONSINI GOODRICH & ROSATI<br>BRADLEY D. SORRELS<br>WILLIAM CHANDLER<br>SHANNON E. GERMAN<br>IAN LISTON<br>222 DELAWARE AVENUE<br>SUITE 800<br>WILMINGTON, DE 19801 | WILSON SONSINI GOODRICH & ROSATI<br>BORIS FELDMAN<br>STEVEN SCHATZ<br>GIDEON SCHOR<br>650 PAGE MILL ROAD<br>PALO ALGO, CA 94304-1050 |
| WEGEL V. VIVINT | NEW YORK STATE | BOBBI JO WEGEL<br>MARC WEGEL | THE DRESSLER LAW FIRM PLLC<br>RENTON D. BERSAUD<br>300 WEST 38TH SSTREET<br>3RD FLOOR<br>NEW YORK, NY 10018 | |
| XTREME POWER | HAWAII | AIG SPECIALTY INSURANCE CO. F/K/A CHARTIS SPECIALTY INSURANCE CO.<br>XTREME POWER, INC.<br>XTREME POWER SYSTEMS, LLC<br>XTREME POWER GROVE, LLC | AIG –C/O VALDEZ, WEINSTEIN, AND CUELLAR | |

15

| | | | | |
|---|---|---|---|---|
| 21437/RD | INTERNATIONAL COURT OF ARBITRATION | | | |
| AGRAWAL | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN MATEO | TERRAFORM GLOBAL, INC. | ROBBINS GELLER RUDMAN & DOWD LLP ATTN: SHAWN A. WILLIAMS POST MONTGOMERY CENTER ONE MONTGOMERY STREET, SUITE 1800 SAN FRANCISCO, CA 92104 | ROBBINS GELLER RUDMAN & DOWD LLP ATTN: DARREN ROBBINS, JAMES JACONETTE JENNIFER CARINGAL 655 W BROADWAY SUITE 1900 SAN DIEGO, CA 92101 |
| AGRAWAL | U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA | TERRAFORM GLOBAL, INC. | ROBBINS GELLER RUDMAN & DOWD LLP ATTN: SHAWN A. WILLIAMS POST MONTGOMERY CENTER ONE MONTGOMERY STREET, SUITE 1800 SAN FRANCISCO, CA 92104 | ROBBINS GELLER RUDMAN & DOWD LLP ATTN: DARREN ROBBINS, JAMES JACONETTE JENNIFER CARINGAL 655 W BROADWAY SUITE 1900 SAN DIEGO, CA 92101 |
| AIG | DISTRICT COURT EAGLE COUNTY, CO | | | |
| AIG PROPERTY CASUALTY COMPANY, AS SUBROGEE OF JOHN PAUL DEJORIA | DISTRICT COURT, COUNTY OF EAGLE, STATE OF COLORADO | | DWORKIN CHAMBERS & WILLIAMS YORK BENSON & EVANS P.C. ATTN: GERI O'BRIEN WILLIAMS & LACY A. SCOTT 3900 E. MEXICO AVE. STE. 1300 DENVER, CO 80210 | |
| ALBEMARLE CORP. | TEXAS | MEMC PASADENA, INC. | | |
| ALBEMARLE CORPORATION, ET AL. | UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS | MEMC ELECTRONIC MATERIALS, INC. | | |
| AMAN MAHARAJ | ONTARIO SUPERIOR COURT OF JUSTICE, TORONTO, ONTARIO | | NATALIE MACDONALD RUDNER MACDONALD LLP 2 BLOOR ST W., SUITE 1005 TORONTO, ON M4W 3E2 CANADA | |

16

| Party | Court | Company | Counsel | Additional Counsel |
|---|---|---|---|---|
| ANTON S. BADRI | U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA | TERRAFORM GLOBAL | FRANCIS A. BOTTINI JR. 7817 IVANHOE AVE. STE. 102 LA JOLLA, CA 92037 | |
| APPALOOSA INVESTMENT | COURT OF CHANCERY OF THE STATE OF DE | TERRAFORM POWER | DAVID J. MARGULES ELIZABETH A. SLOAN BALLARD SPAHR LLP 919 N. MARKET ST., 11TH FL. WILMINGTON, DE 19801-3034 | |
| APPALOOSA INVESTMENT LIMITED PARTNERSHIP I ET AL. | COURT OF CHANCERY OF THE STATE OF DE | | DAVID J. MARGULES ELIZABETH A. SLOAN BALLARD SPAHR LLP 919 N. MARKET ST., 11TH FL. WILMINGTON, DE 19801-3034 | |
| ARNIE WILLIAMS | UTAH STATE COURT | | ABBOTT LAW FIRM ATTN: NELSON ABBOTT 75 SOUTH 200 EAST PROVO, UT 84604 | RIGRODSKY & LONG, P.A. ATTN: SETH D. RIGRODSKY, BRIAN D. LONG GINA M. SERRA, JEREMY J. RILEY 2 RIGHTER PARKWAY, SUITE 120 WILMINGTON, DE 19803 -AND- RYAN & MANISKAS, LLP ATTN: KATHARINE M. RYAN, RICHARD A. MANISKAS 995 OLD EAGLE SCHOOL ROAD, SUITE 311 WAYNE, PA 19087 |
| ATLANTIC SPECIALTY INSURANCE CO. | US DISTRICT COURT, EASTERN DISTRICT OF MISSOURI | | CLAYBORNE SABO & WAGNER LLP ATTN: JOHN SABO 525 W MAIN ST., SUITE 105 BELLEVILLE, IL 62220 | |
| ATLANTIC SPECIALTY INSURANCE COMPANY | UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI | | CLAYBORNE SABO & WAGNER LLP ATTN: JOHN SABO 525 W MAIN ST., SUITE 105 BELLEVILLE, IL 62220 | |
| BADRI | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN MATEO | TERRAFORM GLOBAL, INC. | FRANCIS A. BOTTINI JR. 7817 IVANHOE AVE. STE. 102 LA JOLLA, CA 92037 | |

17

| | | |
|---|---|---|
| BEASLEY | JAMS ARBITRATION - NEW YORK CITY, NY | RITZ CLARK & BEN-ASHER LLP ATTN: JONATHAN BEN-ASHER 59 MAIDEN LANE, 39TH FLOOR NEW YORK, NY 10038-4668 |
| BELTRAN | UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA | TERRAFORM GLOBAL, INC. — SCOTT + SCOTT ATTORNEYS AT LAW LLP ATTN: JOHN T. JASNOCH 707 BROADWAY, SUITE 1000 SAN DIEGO, CA 92101 |
| BELYEA | COURT OF CHANCERY OF THE STATE OF DELAWARE | VIVINT SOLAR, INC. — KAHN SWICK & FOTI, LLC ATTN: MICHAEL J. PALESTINA 206 COVINGTON ST. MADISONVILLE, LA 70447 / ANDREWS & SPRINGER LLC ATTN: PETER B. ANDREWS, CRAIG J. SPRINGER 3801 KENNETT PIKE BUILDING C, SUITE 305 WILMINGTON, DE 19807 |
| BINGHAM WIND PROJECT, MAINE | MAINE DEPARTMENT OF ENVIRONMENTAL PROTECTION (MDEP) | |
| BLOOM | CA SUPERIOR COURT, SAN MATEO COUNTY | SCOTT + SCOTT ATTORNEYS AT LAW LLP ATTN: JOHN T. JASNOCH, DONALD BROGGI, T LAUGHLIN JOSEPH HALLORAN, DAVID SCOTT 707 BROADWAY SUITE 1000 SAN DIEGO, CA 92101 |
| BLOOM ET AL | U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA | SCOTT + SCOTT ATTORNEYS AT LAW LLP ATTN: JOHN T. JASNOCH, DONALD BROGGI, T LAUGHLIN JOSEPH HALLORAN, DAVID SCOTT 707 BROADWAY SUITE 1000 SAN DIEGO, CA 92101 |
| BOBBIE JO WEGEL | SUFFOLK COUNTY SUPERIOR COURT, MA | THE DRESSLER LAW FIRM PLLCATTN: RENTON D. BERSAUD300 W 38TH S ST.3RD FL.NEW YORK, NY 10018 |
| BROUHA | U.S. DISTRICT COURT, DISTRICT OF VERMONT | VERMONT WIND, LLC — DENISE ANDERSON, PLLC 85 N. MAIN ST., SUITE 245 WHITE RIVER JUNCTION, VT 05001 |

18

| Party | Court | Entity | Address |
|---|---|---|---|
| BROUHA | (SHEFFIELD COURT) AND STATE OF VERMONT PUBLIC SERVICE BOARD; UNITED STATES DISTRICT COURT FOR THE DISTRICT OF VERMONT | VERMONT WIND, LLC | DENISE ANDERSON, PLLC 85 N. MAIN ST., SUITE 245 WHITE RIVER JUNCTION, VT 05001 |
| BRYAN MARTINEZ | CALIFORNIA STATE COURT | | STEVENS & MCMILLAN ATTN: HEATHER MCMILLAN, DANIEL P. STEVENS 335 CENTENNIAL WAY TUSTIN, CA 92780 |
| BRYAN MARTINEZ | CALIFORNIA STATE COURT - 30-2016-00844937 | | STEVENS & MCMILLAN ATTN: HEATHER MCMILLAN, DANIEL P. STEVENS 335 CENTENNIAL WAY TUSTIN, CA 92780 |
| BRYAN MARTINEZ | CALIFORNIA STATE COURT - 30-2016-00844937-CU-OE-CJC | | STEVENS & MCMILLAN ATTN: HEATHER MCMILLAN, DANIEL P. STEVENS 335 CENTENNIAL WAY TUSTIN, CA 92780 |
| BTG PACTUAL BRAZIL INFRASTRUCTURE FUND II LP ET AL. | SUPREME COURT OF THE STATE OF NEW YORK FOR THE COUNTY OF NEW YORK - CASE NO. 16-650676 | | QUINN EMMANUEL URQUHART & SULLIVAN LLP ATTN: ROBERTO SAHADE, MICHAEL CARLINSKY, TAI-HENG CHENG, JOHN H. CHUN 51 MADISON AVE., 22ND FL. NEW YORK, NY 10010 |
| BTG PACTUAL BRAZIL INFRASTRUCTURE FUND, ET AL. | SUPREME COURT OF THE STATE OF NY, COUNTY OF NY - INDEX NO. 650676/2016 | | QUINN EMMANUEL URQUHART & SULLIVAN LLP ATTN: ROBERTO SAHADE, MICHAEL CARLINSKY, TAI-HENG CHENG, JOHN H. CHUN 51 MADISON AVE., 22ND FL. NEW YORK, NY 10010 |

19

| | | | |
|---|---|---|---|
| BUSHANSKY | FOURTH JUDICIAL DISTRICT COURT UTAH | SEV MERGER SUB, INC., ET AL | WEISSLAW LLP ATTN: RICHARD A. ACOCELLI, MICHAEL ROGOVIN KELLY KEENAN 1500 BROADWAY, 16TH FLOOR NEW YORK, NY 10036 |
| CA UNEMPLOYMENT INSURANCE CODE COMPLIANCE | EMPLOYMENT DEVELOPMENT DEPARTMENT, STATE OF CALIFORNIA (EDD) | | |
| CA  COMPLIANCE UNEMPLOYMENT INSURANCE REVIEW CODE COMPLIANCE | EMPLOYMENT DEVELOPMENT DEPARTMENT, STATE OF CALIFORNIA (EDD) | | |
| CANEZ | COURT OF CHANCERY OF THE STATE OF DELAWARE | BUTTERFIELD, ET AL. | FARUQI & FARUQI LLP ATTN: JUAN E. MONTEVERDE & JAMES M. WILSON, JR. 369 LEXINGTON AVE, 10TH FL. NEW YORK, NY 10017 | FARUQI & FARUQI LLP ATTN: JAMES R. BANKO, DERRICK B. FARRELL 20 MONTCHANIN RD, SUITE 145 WILMINGTON, DE 19807 |
| CAPLES AND ROMERO | COURT OF CHANCERY OF THE STATE OF DELAWARE | VIVINT SOLAR, INC. | FRIEDMAN OSTER & TEJTEL PLLC ATTN: JEREMY S. FRIEDMAN SPENSER OSTER, DAVID TEJTEL 240 EAST 79TH STREET, SUITE A NEW YORK, NY 10075 | ANDREWS & SPRINGER LLC ATTN: PETER B. ANDREWS, CRAIG J. SPRINGER 3801 KENNETT PIKE BUILDING C, SUITE 305 WILMINGTON, DE 19807 |
| CARLOS A. COELHO D/B/A COELHO & SONS STONEWALLS | MASSACHUSETTS DISTRICT COURT - 1:15-CV-11927-RWZ | | |
| CARLOS COELHO, D/B/A/ COELHO & SONS STONEWALLS | MASSACHUSETTS DISTRICT COURT - 15-CV-11927-RWZ | | |
| CHARLES BLOOM & SHARON BURNSTEIN | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN MATEO | | SCOTT + SCOTT ATTORNEYS AT LAW LLP ATTN: JOHN T. JASNOCH, DONALD BROGGI, T LAUGHLIN JOSEPH HALLORAN, DAVID SCOTT 707 BROADWAY SUITE 1000 SAN DIEGO, CA 92101 |

20

| Party | Court | Counsel | Counsel |
|---|---|---|---|
| COBALT PARTNERS, LP, ET AL | U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA | ROBBINS GELLER RUDMAN & DOWD LLP ATTN: DENNIS HERMAN & DAVID HALL POST MONTGOMERY CENTER ONE MONTGOMERY STREET, SUITE 1800 SAN FRANCISCO, CA 94104 | ROBBINS GELLER RUDMAN & DOWD LLP ATTN: DARREN ROBBINS, JAMES JACONETTE JENNIFER CARINGAL 655 W BROADWAY SUITE 1900 SAN DIEGO, CA 92101 |
| COBALT PARTNERS, LP, ET AL. | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN MATEO | ROBBINS GELLER RUDMAN & DOWD LLP ATTN: DENNIS HERMAN & DAVID HALL POST MONTGOMERY CENTER ONE MONTGOMERY STREET, SUITE 1800 SAN FRANCISCO, CA 94104 | ROBBINS GELLER RUDMAN & DOWD LLP ATTN: DARREN ROBBINS, JAMES JACONETTE JENNIFER CARINGAL 655 W BROADWAY SUITE 1900 SAN DIEGO, CA 92101 |
| CREAM HILL CLEAN ENERGY, LLC | U. S. DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT - 3:16-CV-00291-JAM | PAWA LAW GROUP, P.C. ATTN: MATTHEW F. PAWA & WESLEY KELMAN 1280 CENTRE STREET, SUITE 230 NEWTON CENTRE, MA 02459 | NEAL I. MOSKOW URY & MOSKOW LLC 883 BLACK ROCK TURNPIKE FAIRFIELD, CT 06825 |
| CREAM HILL CLEAN ENERGY, LLC | U.S. DISTRICT COURT FOR THE STATE OF CONNECTICUT - CASE NO. 16-CV-00291 | PAWA LAW GROUP, P.C. ATTN: MATTHEW F. PAWA & WESLEY KELMAN 1280 CENTRE STREET, SUITE 230 NEWTON CENTRE, MA 02459 | NEAL I. MOSKOW URY & MOSKOW LLC 883 BLACK ROCK TURNPIKE FAIRFIELD, CT 06825 |
| E.I. DU PONT DE NEMOURS AND COMPANY | UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI - CASE NO.14-CV-01078 | BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP | BARTLIT BECK HERMAN PALENCHAR & SCOTT LLPATTN: ADAM K. MORTARA, JOHN C. FITZPATRICK,TULSI E. GAONKAR54 WEST HUBBARD STREET, SUITE 300CHICAGO, IL 60654-AND-ASHBY & GEDDESATTN: STEPHEN J. BALICK, LAUREN E. MAGUIRE,ANDREW C. MAYO500 DELAWARE AVENUE, PO BOX 1150WILMINGTON, DE 19899 |

21

| | | |
|---|---|---|
| E.I. DU PONT DE NEMOURS AND COMPANY | US DISTRICT COURT, DISTRICT OF DELAWARE - 1:14-CV-01078-SLR | BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP |
| | | BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP ATTN: ADAM K. MORTARA, JOHN C. FITZPATRICK, TULSI E. GAONKAR 54 WEST HUBBARD STREET, SUITE 300 CHICAGO, IL 60654 -AND- ASHBY & GEDDES ATTN: STEPHEN J. BALICK, LAUREN E. MAGUIRE, ANDREW C. MAYO 500 DELAWARE AVENUE, PO BOX 1150 WILMINGTON, DE 19899 |
| E.I. DU PONT DE NEMOURS AND COMPANY | US DISTRICT COURT, DISTRICT OF DELAWARE - 14-CV-01078-SLR | BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP |
| | | BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP ATTN: ADAM K. MORTARA, JOHN C. FITZPATRICK, TULSI E. GAONKAR 54 WEST HUBBARD STREET, SUITE 300 CHICAGO, IL 60654 -AND- ASHBY & GEDDES ATTN: STEPHEN J. BALICK, LAUREN E. MAGUIRE, ANDREW C. MAYO 500 DELAWARE AVENUE, PO BOX 1150 WILMINGTON, DE 19899 |

22

| | | | |
|---|---|---|---|
| EASTERN MAINE ELECTRIC COOPERATIVE, INC. | BUSINESS AND CONSUMER COURT, STATE OF MAINE, CUMBERLAND COUNTY | FIRST WIND HOLDINGS, LLC FIRST WIND NORTHEAST COMPANY, LLC NORTHEAST WIND PARTNERS II, LLC STETSON WIND HOLDINGS COMPANY, LLC | |
| ECKA GRANULES OF AMERICA LLC, | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA, ORANGEBURG DIVISION | MEMC ELECTRONIC MATERIALS, INC. MEMC PASADENA, INC. | SOWELL GRAY STEPP & LAFFITTE LLC ROBERT E. STEPP, BENJAMIN R. GOODING 1310 GADSDEN ST. COLUMBIA, SC 29201 |
| ECKA GRANULES OF AMERICA, LLC | SOUTH CAROLINA FEDERAL | MEMC ELECTRONIC MATERIALS, INC. | SOWELL GRAY STEPP & LAFFITTE LLC ROBERT E. STEPP, BENJAMIN R. GOODING 1310 GADSDEN ST. COLUMBIA, SC 29201 |
| EMPLOYEE RETIREMENT INCOME SECURITY ACT LITIGATION (JONES, USENKO, LINTON, WHEELER, DULL) | US DISTRICT COURT, EASTERN DISTRICT OF MISSOURI | | |
| EVOLVE SOLAR | UTAH STATE COURT | | EVAN S. STRASSBERG, MICHAEL BEST & FRIEDRICK, LLP 6995 SOUTH UNION PARK CENTER, SUITE 100 SALT LAKE CITY, UT 98047 |
| EVOLVE SOLAR, INC., ET AL. | FOURTH DISTRICT COURT - UTAH COUNTY, UT | | EVAN S. STRASSBERG, MICHAEL BEST & FRIEDRICK, LLP 6995 SOUTH UNION PARK CENTER, SUITE 100 SALT LAKE CITY, UT 98047 |
| FIRST WIND ENERGY | AAA | FIRST WIND HOLDINGS, LLC KAHUKU WIND POWER, LLC KAHEAWA WIND POWER II, LLC | |

23

| | | | |
|---|---|---|---|
| FORTIS ADVISORS LLC ET AL. | CALIFORNIA STATE COURT | | GOODWIN PROCTOR LLP<br>ATTN: HAYES P. HYDE<br>THREE EMBARCADERO CENTER, 24TH FL.<br>SAN FRANCISCO, CA 94111-9991 |
| FORTIS ADVISORS, LLC ET AL, | SUPERIOR COURT OF CA, COUNTY OF SAN FRANCISCO | GOODWIN PROCTOR LLP<br>ATTN: MICHAEL T. JONES<br>135 COMMONWEALTH DR.<br>MENLO PARK, CA 94025-1105 | GOODWIN PROCTOR LLP<br>ATTN: HAYES P. HYDE<br>THREE EMBARCADERO CENTER, 24TH FL.<br>SAN FRANCISCO, CA 94111-9991 |
| FRASER ET AL. | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN MATEO | GOODWIN PROCTOR LLP<br>ATTN: MICHAEL T. JONES<br>135 COMMONWEALTH DR.<br>MENLO PARK, CA 94025-1105 | TERRAFORM GLOBAL |
| | | GLANCY PRONGAY & MURRAY LLP<br>ATTN: LIONEL Z. GLANCY ROBERT V. PRONGAY<br>LESLEY F. PORTNOY<br>1925 CENTURY PARK EAST, STE. 2011<br>LOS ANGELES, CA 90067 | |
| GAMMA ENERGY LIMITED | HIGH COURT OF JUSTICE /CHANCERY DIVISION (UK) | | |
| GAMMA ENERGY LIMITED | UNITED KINGDOM | | |
| GLENVIEW CAPITAL PARTNERS, L.P. | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN MATEO - CASE NO. 537971 | ROBBINS GELLER RUDMAN & DOWD LLP | ROBBINS GELLER RUDMAN & DOWD LLPATTN: DENNIS HERMAN & DAVID HALLPOST MONTGOMERY CENTERONE MONTGOMERY STREET, SUITE 1800SAN FRANCISCO, CA 92104-AND-ROBBINS GELLER RUDMAN & DOWD LLPATTN: DARREN ROBBINS, JAMES JACONETTEJENNIFER CARINGAL655 W BROADWAY SUITE 1900SAN DIEGO, CA 92101 |

24

| | | | |
|---|---|---|---|
| GLENVIEW CAPITAL PARTNERS, L.P. ET AL | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN MATEO - CASE NO.16-CV-02264 | ROBBINS GELLER RUDMAN & DOWD LLP | ROBBINS GELLER RUDMAN & DOWD LLP ATTN: DENNIS HERMAN & DAVID HALL POST MONTGOMERY CENTER ONE MONTGOMERY STREET, SUITE 1800 SAN FRANCISCO, CA 92104 -AND- ROBBINS GELLER RUDMAN & DOWD LLP ATTN: DARREN ROBBINS, JAMES JACONETTE JENNIFER CARINGAL 655 W BROADWAY SUITE 1900 SAN DIEGO, CA 92101 |
| GLOBAL IPO LITIGATION (AGRAWAL, BADRI, FRASIER, IRON WORKERS, BELTRAN AND PYRAMID HOLDINGS) | CALIFORNIA STATE COURT AND US DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA - [NO. 3:15-CV-04981-BLF][04981] | | |
| GLOBAL IPO LITIGATION (AGRAWAL, BADRI, FRASIER, IRON WORKERS, BELTRAN AND PYRAMID HOLDINGS) | CALIFORNIA STATE COURT AND US DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA - [NO. 3:15-CV-04981-BLF][535963] | | |
| GLOBAL IPO LITIGATION (AGRAWAL, BADRI, FRASIER, IRON WORKERS, BELTRAN AND PYRAMID HOLDINGS) | CALIFORNIA STATE COURT AND US DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA - [NO. 3:15-CV-04981-BLF][536045] | | |

25

| | | | | |
|---|---|---|---|---|
| GLOBAL IPO LITIGATION (AGRAWAL, BADRI, FRASIER, IRON WORKERS, BELTRAN AND PYRAMID HOLDINGS) | CALIFORNIA STATE COURT AND US DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA - [NO. 3:15-CV-04981-BLF][536536] | | | |
| GLOBAL IPO LITIGATION (AGRAWAL, BADRI, FRASIER, IRON WORKERS, BELTRAN AND PYRAMID HOLDINGS) | CALIFORNIA STATE COURT AND US DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA - [NO. 3:15-CV-04981-BLF][536788] | | | |
| GOLDEN | MONTGOMERY COUNTY MARYLAND STATE COURT - CASE NO. 16-CV-01423 | CHATILA | MURPHY FALCON & MURPHY ATTN: WILLIAM H. MURPHY III ONE S ST. 23RD FL. BALTIMORE, MD 21202 | THE BROWN LAW FIRM, P.A. ATTN: TIMOTHY W. BROWN 127A COVE ROAD OYSTER BAY COVE, NY 11771 |
| GOLDEN | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND - CASE NO. 414172V | CHATILA | MURPHY FALCON & MURPHY ATTN: WILLIAM H. MURPHY III ONE S ST. 23RD FL. BALTIMORE, MD 21202 | THE BROWN LAW FIRM, P.A. ATTN: TIMOTHY W. BROWN 127A COVE ROAD OYSTER BAY COVE, NY 11771 |
| GRAND JUDY | SOUTHERN DISTRICT OF NEW YORK | | | |
| GREENE TWEED | DISTRICT COURT OF HARRIS COUNTY, TX | | MCGUIRE WOODS LLP ATTN: THOMAS M. FARRELL 600 TRAVIS STREET, SUITE 7500 HOUSTON, TX 77022 | |
| GREENE TWEED & CO. | TEXAS STATE COURT | MEMC PASADENA, INC. | MCGUIRE WOODS LLP ATTN: THOMAS M. FARRELL 600 TRAVIS STREET, SUITE 7500 HOUSTON, TX 77022 | |
| GULF COAST KAPROC, INC. ET AL. | 164TH JUDICIAL DISTRICT COURT OF HARRIS COUNTY, TX | MEMC PASADENA, INC. ALBEMARLE CORP. | GRAY REED & MCGRAW P.C. ATTN: JOE VIRENE 1300 POST OAK BLVD., SUITE 2000 HOUSTON, TX 77056 | |

26

| | | | | |
|---|---|---|---|---|
| HELLIGE | UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI | CHATILA | THE ROSEN LAW FIRM, P.A. ATTN: PHILLIP KIM & LAURENCE ROSEN 275 MADISON AVENUE, 34TH FLOOR NEW YORK, NY 10016 | THE BROWN LAW FIRM, P.A. ATTN: TIMOTHY W. BROWN 127A COVE ROAD OYSTER BAY COVE, NY 11771 -AND- WEHRLE LAW LLC ATTN: CHRIS WEHRLE 9909 CLAYTON RD SUITE 226 ST. LOUIS, MO 63124 |
| HIVE ENERGY LIMITED | UK | | | |
| HOROWITZ, ET AL. | UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI | | THE ROSEN LAW FIRM, P.A.ATTN: PHILLIP KIM & LAURENCE ROSEN275 MADISON AVENUE, 34TH FLOORNEW YORK, NY 10016 | GARDY AND NOTIS, LLPATTN: MARK GRADYTOWER 56126 EAST 56TH STREET, 8TH FLOORNEW YORK, NY 10024-AND-CAREY, DANIS & LOWE LLCATTN: JAMES ROSEMERGY8235 FORSYTHSTE. 1100ST. LOUIS, MO 63105-AND-WEHRLE LAW LLCATTN: CHRIS WEHRLE9909 CLAYTON RDSUITE 226ST. LOUIS, MO 63124 |
| HYUNG SUN SONG | ORANGE COUNTY SUPERIOR COURT, CALIFORNIA | ECHOFIRST FINANCE CO., LLC SUNEDISON RESIDENTIAL SERVICES, LLC AMERITECH CONSTRUCTION, INC. JAE HYUNG KIM RACHEL KIM | STEPHEN P. LAMB 9741 BOLSA AVE., SUITE 204 WESTMINSTER, CA 92683 | |
| IRON WORKERS MID-SOUTH PENSION FUND | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN | TERRAFORM GLOBAL | FRANCIS A. BOTTINI JR. 7817 IVANHOE AVE. STE. 102 LA JOLLA, CA 92037 | |

27

MATEO

| Party | Court | Counterparty | Attorney | Attorney |
|---|---|---|---|---|
| J&K VICENTE, LLC, VICENTE RANCH CO., INC., & JOE M. VICENTE | FIRST JUDICIAL DISTRICT COURT, COUNTY OF SANTA FE, NEW MEXICO | VAUGHN WIND, LLC FIRST WIND ENERGY, LLC FIRST WIND HOLDINGS, LLC MATTHEW DESMOND | | |
| JACKSON | CIRCUIT COURT OF THE STATE OF MISSOURI, ST. LOUIS COUNTY | ALVAREZ | HYNES KELLER & HERNANDEZ, LLC, ATTN: MICHAEL J. HYNES 3070 BRISTOL PIKE, SUITE 112 1150 FIRST AVENUE, SUITE 501 KING OF PRUSSIA, PA 19406 | COSGROVE LAW GROUP LLC ATTN: DANIEL V. CONLISK 7733 FORSYTH BLVD, SUITE 1675 ST. LOUIS, MO 63105 |
| JACKSON | ST. LOUIS COUNTY, MO | ALVAREZ | HYNES KELLER & HERNANDEZ, LLC, ATTN: MICHAEL J. HYNES 3070 BRISTOL PIKE, SUITE 112 1150 FIRST AVENUE, SUITE 501 KING OF PRUSSIA, PA 19406 | COSGROVE LAW GROUP LLC ATTN: DANIEL V. CONLISK 7733 FORSYTH BLVD, SUITE 1675 ST. LOUIS, MO 63105 |
| JERRY JONES AND MANUEL ACOSTA | UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI | MEMC ELECTRONIC MATERIALS, INC., ET AL | GAINEY MCKENNA & EGLESTON ATTN: THOMAS J. MCKENNA 440 PARK AVE SOUTH, 5TH FLOOR NEW YORK, NY 10016 | DYSART TAYLOR COTTER MCMONIGLE & MONTEMORE P.C. ATTN: DON R. LOLLI 4420 MADISON AVE, SUITE 200 KANSAS CITY, MO 64111 |
| JONES AND ACOSTA | U. S. DISTRICT COURT, EASTERN DISTRICT OF MO, EASTERN DIVISION | | GAINEY MCKENNA & EGLESTON ATTN: THOMAS J. MCKENNA 440 PARK AVE SOUTH, 5TH FLOOR NEW YORK, NY 10016 | DYSART TAYLOR COTTER MCMONIGLE & MONTEMORE P.C. ATTN: DON R. LOLLI 4420 MADISON AVE, SUITE 200 KANSAS CITY, MO 64111 |
| JULIE DULL AND ERIC O'DAY ET AL. | UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF MO, EASTERN DIVISION | | BOTTINI & BOTTINI, INC. ATTN: FRANCIS A. BOTTINI, JR. 7817 IVANHOE AVENUE, SUITE 102 LA JOLLA, CA 92037 | THE HEINLAW LAW FIRM LLC ATTN: RICHARD B. HEIN 7750 CLAYTON RD. SUITE 102 ST. LOUIS, MO 63117 |
| KERN SOLAR LLC, SUNE P11L HOLDINGS LLC | PENNSYLVANIA STATE COURT | | VENZIE, PHILLIPS & WARSHAWER ATTN: BRUCE L. PHILLIPS 2032 CHANCELLOR STREET PHILADELPHIA, PA 19103 | |
| KUREHA AMERICA, INC. | JAMS ARBITRATION - | | | |

28

NEW YORK CITY, NY

| | | | | |
|---|---|---|---|---|
| LAKOFF | CIRCUIT COURT OF THE STATE OF MISSOURI, ST. LOUIS COUNTY - CASE NO. 16SL-CC00299 | CHATILA | THE BROWN LAW FIRM, P.A. ATTN: TIMOTHY W. BROWN 127A COVE ROAD OYSTER BAY COVE, NY 11771 | WEHRLE LAW LLC ATTN: CHRIS WEHRLE 9909 CLAYTON RD SUITE 226 ST. LOUIS, MO 63124 |
| LAKOFF | UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI - CASE NO. 16-CV-00727 | CHATILA | THE BROWN LAW FIRM, P.A. ATTN: TIMOTHY W. BROWN 127A COVE ROAD OYSTER BAY COVE, NY 11771 | WEHRLE LAW LLC ATTN: CHRIS WEHRLE 9909 CLAYTON RD SUITE 226 ST. LOUIS, MO 63124 |
| LAKOFF MO. STATE DERIVATIVE | 16SL-CC00299 | | THE BROWN LAW FIRM, P.A. ATTN: TIMOTHY W. BROWN 127A COVE ROAD OYSTER BAY COVE, NY 11771 | WEHRLE LAW LLC ATTN: CHRIS WEHRLE 9909 CLAYTON RD SUITE 226 ST. LOUIS, MO 63124 |
| LATIN AMERICAN POWER (BTG PACTUAL BRAZIL INFRASTRUCTURE FUND II, LP, ET AL. | ICC & NY STATE COURT | | QUINN EMMANUEL URQUHART & SULLIVAN LLP ATTN: ROBERTO SAHADE, MICHAEL CARLINSKY TAI-HENG CHENG, JOHN H. CHUN 51 MADISON AVE., 22ND FL. NEW YORK, NY 10010 | |
| LICENSE CONDITION 16 | TX DEPT. OF STATE HEALTH SERVICES | | | |
| LINTON | UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI | | FRIEDMAN OSTER & TEJTEL PLLC ATTN: JEREMY S. FRIEDMAN SPENSER OSTER, DAVID TEJTEL 240 EAST 79TH STREET, SUITE A NEW YORK, NY 10075 | WEINHAUS & POTASHNICK ATTN: MARK POTASHNICK 11500 OLIVE BLVD., SUITE 133 ST. LOUIS, MO 61341 |
| MAHARAJ | CANADA | | NATALIE MACDONALD RUDNER MACDONALD LLP 2 BLOOR ST W., SUITE 1005 TORONTO, ON M4W 3E2 CANADA | |

29

| Name | Court | Party | Attorney 1 | Attorney 2 |
|---|---|---|---|---|
| MALLINGER | CIRCUIT COURT OF THE STATE OF MISSOURI, ST. LOUIS COUNTY | CHATILA | JOHNSON & WEAVER, LLPATTN: MICHAEL I. FISTEL40 POWDER SPRINGS STREETMARIETTA, GA 30064 | LAW OFFICES OF JOSEPH V. NEILLATTN: JOSEPH V. NEILL5201 HAMPTON AVE.ST. LOUIS, MO 63109 |
| MALLINGER | ST. LOUIS COUNTY, MO | CHATILA | JOHNSON & WEAVER, LLP ATTN: MICHAEL I. FISTEL 40 POWDER SPRINGS STREET MARIETTA, GA 30064 | LAW OFFICES OF JOSEPH V. NEILL ATTN: JOSEPH V. NEILL 5201 HAMPTON AVE. ST. LOUIS, MO 63109 |
| MALLINGER | UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI - CASE NO. 16-CV-00732 | CHATILA | JOHNSON & WEAVER, LLP ATTN: MICHAEL I. FISTEL 40 POWDER SPRINGS STREET MARIETTA, GA 30064 | LAW OFFICES OF JOSEPH V. NEILL ATTN: JOSEPH V. NEILL 5201 HAMPTON AVE. ST. LOUIS, MO 63109 |
| MARATHON CAPITAL, INC. | AMERICAN ARBITRATION ASSOCIATION - SAN FRANCISCO, CA | FIRST WIND HOLDINGS, LLC | | |
| MARATHON CAPITAL, LLC | AAA | FIRST WIND HOLDINGS, LLC | | |
| MARTINEZ B. EVOLVE SOLAR, INC | SUPERIOR COURT OF CA, ORANGE COUNTY | | STEVENS & MCMILLAN ATTN: HEATHER MCMILLAN, DANIEL P. STEVENS 335 CENTENNIAL WAY TUSTIN, CA 92780 | |
| MEMC PASADENA, INC. | U. S. DISTRICT COURT OF THE SOUTHERN DISTRICT OF TX, HOUSTON DIVISION | ALBEMARLE CORPORATION | | |
| MERIDIAN | COMMONWEALTH OF MASSACHUSETTS, SUPERIOR COURT | | MICLANE MIDDLETON P.A. ATTN: ANDREW P. BOTTI 300 TRADE CENTER SUITE 7000 WOBURN, MA 01801 | |
| MERIDIAN ASSOCIATES, INC. | CANADA | | MICLANE MIDDLETON P.A. ATTN: ANDREW P. BOTTI 300 TRADE CENTER SUITE 7000 WOBURN, MA 01801 | |

30

| | | |
|---|---|---|
| MICHAEL PETRAN | INDEMNIFICATION/ WORKERS' COMP CLAIM | LAURENCE M. ROSEN THE ROSEN LAW FIRM P.A. 355 S. GRAND AVE. SUITE 2450 LOS ANGELES, CA 90071 |
| MICHELE BEASLEY | JAMS | RITZ CLARK & BEN-ASHER LLP ATTN: JONATHAN BEN-ASHER 59 MAIDEN LANE, 39TH FLOOR NEW YORK, NY 10038-4668 |
| MITESH PATEL | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN MATEO | TERRAFORM GLOBAL  LAURENCE M. ROSEN THE ROSEN LAW FIRM P.A. 355 S. GRAND AVE. SUITE 2450 LOS ANGELES, CA 90071 |
| MOODIE | EASTERN DISTRICT OF MO | POMERANTZ LLP ATTN: JEREMY A. LIEBERMAN, J. ALEXANDER HOOD II, MAC GORRIE 600 THIRD AVENUE, 20TH FLOOR NEW YORK, NY 10016  CUNEO GILBERT & LADUCA LLP ATTN: MICHAEL J. FLANNERY 7733 FORSYTH BLVD., SUITE 1675 ST. LOUIS, MO 63106 |
| MOODIE | UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI | POMERANTZ LLP ATTN: JEREMY A. LIEBERMAN, J. ALEXANDER HOOD II, MAC GORRIE 600 THIRD AVENUE, 20TH FLOOR NEW YORK, NY 10016  CUNEO GILBERT & LADUCA LLP ATTN: MICHAEL J. FLANNERY 7733 FORSYTH BLVD., SUITE 1675 ST. LOUIS, MO 63106 |
| MSSA S.A.S. | DISTRICT COURT OF HARRIS COUNTY, TX 333 JUDICIAL DISTRICT | MSSA CO., CORP  MURPHY & MCGONIGLE P.C. ATTN: STEVEN D. FELDMAN, BARRY S. GOLD 1185 AVE. OF THE AMERICAS, 21ST FL. NEW YORK, NY 10036  SHIPLEY SNELL MONTGOMERY LLP ATTN: LAINA R. MILLER 712 MAIN ST., SUITE 1400 HOUSTON, TX 77002 |
| MSSA S.A.S. | ICC | MSSA COMPANY CORPORATION  MURPHY & MCGONIGLE P.C. ATTN: STEVEN D. FELDMAN, BARRY S. GOLD 1185 AVE. OF THE AMERICAS, 21ST FL. NEW YORK, NY 10036  SHIPLEY SNELL MONTGOMERY LLP ATTN: LAINA R. MILLER 712 MAIN ST., SUITE 1400 HOUSTON, TX 77002 |
| MTW RESOURCES, LLC | DELAWARE CHANCERY COURT | FIRST WIND HOLDINGS, LLC FIRST WIND UTAH HOLDINGS, LLC |

31

FIRST WIND CAPITAL, LLC

| | | | |
|---|---|---|---|
| NORENE FRENCH | US DISTRICT COURT, EASTERN DISTRICT OF CALIFORNIA | BURSOR & FISHER P.A. | BURSOR & FISHER P.A. ATTN: TIMOTHY FISHER, ANNICK M. PERSINGER YEREMEY O. KRIVOSHEY 1990 N. CALIFORNIA BLVD. WALNUT CREEK, CA 94596 |
| NORENE FRENCH, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED | U.S. DISTRICT COURT, EASTERN DISTRICT OF CA | BURSOR & FISHER P.A. | BURSOR & FISHER P.A. ATTN: TIMOTHY FISHER, ANNICK M. PERSINGER YEREMEY O. KRIVOSHEY 1990 N. CALIFORNIA BLVD. WALNUT CREEK, CA 94596 |
| NPDES STORM WATER DISCHARGE GENERAL PERMIT 1200-COLS | OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY, 811 SW SIXTH AVENUE, PORTLAND, OREGON, 97204-1390 | | |
| OKLAHOMA FIREFIGHTERS PENSION AND RET. SYS. | SUPERIOR COURT OF CA, SAN MATEO COUNTY - [NO. CIV 537965] | ROBBINS GELLER RUDMAN & DOWD LLP | ROBBINS GELLER RUDMAN & DOWD LLP ATTN: DARREN ROBBINS, JAMES JACONETTE JENNIFER CARINGAL 655 W BROADWAY SUITE 1900 SAN DIEGO, CA 92101 -AND- ROBBINS GELLER RUDMAN & DOWD LLP ATTN: DENNIS HERMAN & DAVID HALL POST MONTGOMERY CENTER ONE MONTGOMERY STREET, SUITE 1800 SAN FRANCISCO, CA 92104 |

32

| | | | |
|---|---|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM | U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA - CASE NO. 16-CV-02267 | ROBBINS GELLER RUDMAN & DOWD LLP | ROBBINS GELLER RUDMAN & DOWD LLPATTN: DARREN ROBBINS, JAMES JACONETTEJENNIFER CARINGAL655 W BROADWAY SUITE 1900SAN DIEGO, CA 92101-AND-ROBBINS GELLER RUDMAN & DOWD LLPATTN: DENNIS HERMAN & DAVID HALLPOST MONTGOMERY CENTERONE MONTGOMERY STREET, SUITE 1800SAN FRANCISCO, CA 92104 |
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM. | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN MATEO - CASE NO. CIV 537965 | ROBBINS GELLER RUDMAN & DOWD LLP | ROBBINS GELLER RUDMAN & DOWD LLP ATTN: DARREN ROBBINS, JAMES JACONETTE JENNIFER CARINGAL 655 W BROADWAY SUITE 1900 SAN DIEGO, CA 92101 -AND- ROBBINS GELLER RUDMAN & DOWD LLP ATTN: DENNIS HERMAN & DAVID HALL POST MONTGOMERY CENTER ONE MONTGOMERY STREET, SUITE 1800 SAN FRANCISCO, CA 92104 |

33

| | | |
|---|---|---|
| OMEGA CAPITAL INV., LP | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN MATEO | ROBBINS GELLER RUDMAN & DOWD LLP | ROBBINS GELLER RUDMAN & DOWD LLP ATTN: DARREN ROBBINS, JAMES JACONETTE JENNIFER CARINGAL 655 W BROADWAY SUITE 1900 SAN DIEGO, CA 92101 -AND- ROBBINS GELLER RUDMAN & DOWD LLP ATTN: DENNIS HERMAN & DAVID HALL POST MONTGOMERY CENTER ONE MONTGOMERY STREET, SUITE 1800 SAN FRANCISCO, CA 92104 |
| OMEGA CAPITAL INVESTORS, L.P. ET AL | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN MATEO | ROBBINS GELLER RUDMAN & DOWD LLP | ROBBINS GELLER RUDMAN & DOWD LLP ATTN: DARREN ROBBINS, JAMES JACONETTE JENNIFER CARINGAL 655 W BROADWAY SUITE 1900 SAN DIEGO, CA 92101 -AND- ROBBINS GELLER RUDMAN & DOWD LLP ATTN: DENNIS HERMAN & DAVID HALL POST MONTGOMERY CENTER ONE MONTGOMERY STREET, SUITE 1800 SAN FRANCISCO, CA 92104 |
| PATEL | SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN MATEO | TERRAFORM GLOBAL, INC. | LAURENCE M. ROSEN THE ROSEN LAW FIRM P.A. 355 S. GRAND AVE. SUITE 2450 LOS ANGELES, CA 90071 |

34

| | | | |
|---|---|---|---|
| PAUL BROUHA | US DISTRICT COURT, DISTRICT OF VERMONT | VERMONT WIND, LLC NORTHEAST WIND PARTNERS II, LLC FIRST WIND HOLDINGS, LLC TERRAFORM POWER, INC. | DENISE ANDERSON, PLLC 85 N. MAIN ST., SUITE 245 WHITE RIVER JUNCTION, VT 05001 |
| PCS PHOSPHATE COMPANY, INC. AND PCS SALES (USA), INC. | NORTH CAROLINA STATE COURT | | JONES DAY ATTN: PAULA S. QUIST 77 WEST WACKER DRIVE CHICAGO, IL 60601-1692 | PARKER POE ADAMS & BERNSTEIN LLP ATTN: CHARLES E. RAYNAL, IV PNC PLAZA 301 FAYETTEVILLE ST., SUITE 1400 RALEIGH, NC 27601 |
| PRIME SOLAR SOURCE, LLC | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: CAMDEN COUNTY | TERRAFORM, INC. HUDSON ENERGY SOLAR CORP. | GLUCK WALRATH LLP ATTN: ANDREW BAYER 4428 RIVER VIEW PLAZA TRENTON, NJ 08611 |
| PRIME SOLAR SOURCE, LLC | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: CAMDEN COUNTY | TERRAFORM, INC. HUDSON ENERGY SOLAR CORP. | GLUCK WALRATH LLP ATTN: ANDREW BAYER 4428 RIVER VIEW PLAZA TRENTON, NJ 08611 |
| REDISTRICT | IN THE CIRCUIT COURT FOR ARLINGTON COUNTY, VA | | |
| RICHARD WHEELER ET AL. | UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF MO, EASTERN DIVISION | | GAINEY MCKENNA & EGLESTON ATTN: THOMAS J. MCKENNA, GREGORY M. EGLESTON 440 PARK AVENUE SOUTH NEW YORK, NY 10016 |
| ROBERT LINTON, ET AL. | UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF MO, EASTERN DIVISION | | FRIEDMAN OSTER & TEJTEL PLLC ATTN: JEREMY S. FRIEDMAN SPENSER OSTER, DAVID TEJTEL 240 EAST 79TH STREET, SUITE A NEW YORK, NY 10075 | WEINHAUS & POTASHNICK ATTN: MARK POTASHNICK 11500 OLIVE BLVD., SUITE 133 ST. LOUIS, MO 61341 |
| SEC | U.S. SECURITIES AND EXCHANGE COMMISSION - [MHO-12908] | | |

35

| | | | |
|---|---|---|---|
| SELECTIVE WAY INSRUANCE CO. A/S/O A&E CLOTHING CORP. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION MIDDLESEX VICINAGE | GREEN POWER DEVELOPERS, LLC 100 WESLEY WHITE REALTY, LLC JOSEPH A. MASSRE CONTRACTING, LLC ET AL. | |
| SIMON FRASER ET AL. | UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA | TERRAFORM GLOBAL, INC. | GLANCY PRONGAY & MURRAY LLP ATTN: LIONEL Z. GLANCY ROBERT V. PRONGAY LESLEY F. PORTNOY 1925 CENTURY PARK EAST, STE. 2011 LOS ANGELES, CA 90067 |
| SOLOMONEDWARDSGROUP, LLC | 11TH JUDICIAL CIRCUIT COURT, ST. CHARLES COUNTY, MISSOURI | | VINCENT D. VOGLER TWO CITY PLACE DR., SUITE 150 P.O. BOX 419037 ST. LOUIS, MO 63141-9037 |
| SOLOMONEDWARDSGROUP, LLC | MISSOURI STATE COURT | | VINCENT D. VOGLERTWO CITY PLACE DR., SUITE 150P.O. BOX 419037ST. LOUIS, MO 63141-9037 |
| SONG | LA COUNTY SUPERIOR COURT, CA | ECHOFIRST | STEPHEN P. LAMB 9741 BOLSA AVE., SUITE 204 WESTMINSTER, CA 92683 |
| SUNE SKY 13TH SIDEROAD LP AND SUNE SKY RYERSE LP | ONTARIO SUPERIOR COURT OF JUSTICE, TORONTO, ONTARIO | SUNEDISON CANADIAN CONSTRUCTION LP SUNEDISON CANADA, LLC MEMC ELECTRONIC MATERIALS, INC. | GLENN SMITH AND MELANIE BAIRD, LENCZNER SLAIGHT ROYCE SMITH GRIFFIN LLP 130 ADELAIDE ST. WEST SUITE 2600 TORONTO, ON M5H 3P5 CANADA |
| SUNEDISON AND GLOBAL "DOUBLE DERIVATIVE" | CIRCUIT COURT, MONTGOMERY COUNTY, MD | (GOLDEN V. CHATILA, ET AL.) | MURPHY FALCON & MURPHY ATTN: WILLIAM H. MURPHY III ONE S ST. 23RD FL. BALTIMORE, MD 21202 |
| SUNEDISON INDIVIDUAL SHAREHOLDER LAWSUITS | CA SUPERIOR COURT, SAN MATEO COUNTY - [CIV 537954] | (COBALT, OMEGA, GLENVIEW) | THE BROWN LAW FIRM, P.A. ATTN: TIMOTHY W. BROWN 127A COVE ROAD OYSTER BAY COVE, NY 11771 |

36

| | | | |
|---|---|---|---|
| SUNEDISON INDIVIDUAL SHAREHOLDER LAWSUITS | CA SUPERIOR COURT, SAN MATEO COUNTY - [CIV 537965] | (COBALT, OMEGA, GLENVIEW) | |
| SUNEDISON INDIVIDUAL SHAREHOLDER LAWSUITS | CA SUPERIOR COURT, SAN MATEO COUNTY - [CIV 537971] | (COBALT, OMEGA, GLENVIEW) | |
| SUNEDISON INDIVIDUAL SHAREHOLDER LAWSUITS | CA SUPERIOR COURT, SAN MATEO COUNTY - [CIV 537977] | (COBALT, OMEGA, GLENVIEW) | |
| SUNEDISON SHAREHOLDER DERIVATIVE CASES | MISSOURI STATE COURT | MALINGER JACKSON LAKOFF HELLIGE | |
| SUNEDISON SHAREHOLDER LITIGATION MISSOURI | US DISTRICT COURT, EASTERN DISTRICT OF MISSOURI | HOROWITZ MOODIE KUNZ | |
| SUNEDISON, INC. F/K/A/ MEMC ELECTRONIC MATERIALS, INC. | GENERAL COURT OF JUSTICE SUPERIOR COURT DIVISION, STATE OF NORTH CAROLINA, COUNTY OF WAKE | PCS PHOSPHATE COMPANY, INC. PCS SALES (USA), INC. | JONES DAY ATTN: PAULA S. QUIST 77 WEST WACKER DRIVE CHICAGO, IL 60601-1692 | PARKER POE ADAMS & BERNSTEIN LLP ATTN: CHARLES E. RAYNAL, IV PNC PLAZA 301 FAYETTEVILLE ST. , SUITE 1400 RALEIGH, NC 27601 |
| SUNFUSION SOLAR & SANDY ELLARD | AAA | | |
| SUNFUSION SOLAR, SANDY ELLARD | CONTRA COSTA SUPERIOR COURT | | |
| SUPPLYSOURCE DC, LLC | VIRGINIA STATE COURT | | KOONTZ P.C. P.O. BOX 1176 BERRYVILLE, VA 22611 |
| SUPPLYSOURCES DC, LLC, D/B/A/ RE DISTRICTV. | CIRCUIT COURT FOR ARLINGTON COUNTY, VA - [CASE NO. 013CL16000718-00] | | KOONTZ P.C. P.O. BOX 1176 BERRYVILLE, VA 22611 |
| TAIMAX | TAIWAN | WOONGJIN ENERGY CO., LTD | |

37

| | | |
|---|---|---|
| TERRAFORM GLOBAL, INC. | DELAWARE CHANCERY COURT | SULLIVAN & CROMWELL LLP ATTN: ANDREW G. DIETDERICH, MICHAEL H. TORKIN JOHN L. HARDIMAN AND DAVID R. ZYLBERBERG 125 BROAD STREET NEW YORK, NY 10004 |
| | | SULLIVAN & CROMWELL LLP ATTN: RICHARD H. KLAPPER, BRIAN FRAWLEY WILLIAM H. WAGENER 125 BROAD STREET NEW YORK, NY 10004 -AND- YOUNG CONAWAY STARGATT & TAYLOR, LLP ATTN: MARTIN S. LESSNER, PAUL J. LOUGHMAN MERYEM Y. DEDE 1000 NORTH KING STREET WILMINGTON, DE 19801 |
| TERRAFORM GLOBAL, INC., | COURT OF CHANCERY OF THE STATE OF DELAWARE | SULLIVAN & CROMWELL LLP ATTN: ANDREW G. DIETDERICH, MICHAEL H. TORKIN JOHN L. HARDIMAN AND DAVID R. ZYLBERBERG 125 BROAD STREET NEW YORK, NY 10004 |
| | | SULLIVAN & CROMWELL LLP ATTN: RICHARD H. KLAPPER, BRIAN FRAWLEY WILLIAM H. WAGENER 125 BROAD STREET NEW YORK, NY 10004 -AND- YOUNG CONAWAY STARGATT & TAYLOR, LLP ATTN: MARTIN S. LESSNER, PAUL J. LOUGHMAN MERYEM Y. DEDE 1000 NORTH KING STREET WILMINGTON, DE 19801 |
| TOYO TANSO USA, INC. | MULTNOMAH COUNTY CIRCUIT COURT | MEMC ELECTRONIC MATERIALS, INC., A DE CORP. SUNEDISON SEMICONDUCTOR, LLC ATER WYNNE LLP ATTN: ALEXANDRA M. SCHULMAN 1331 NW LOVEJOY STREET, SUITE 900 PORTLAND, OR 97209-3280 |
| TOYO TANSO USA, INC. | OREGON STATE COURT | ATER WYNNE LLP ATTN: ALEXANDRA M. SCHULMAN 1331 NW LOVEJOY STREET, SUITE 900 PORTLAND, OR 97209-3280 |

38

| | | | | |
|---|---|---|---|---|
| USENKO | EASTERN DISTRICT OF MO - [NO. 4:16-CV-00076-RWS] | | WEINHAUS & POTASHNICK ATTN: MARK POTASHNICK 11500 OLIVE BLVD. STE. 133 ST. LOUIS, MO 61341 | HARWOOD FEFFER LLP ATTN: ROBERT I. HARWOOD & TANYA KORKHOV 488 MADISON AVENUE NEW YORK, NY 10022 |
| USENKO | UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI - CASE NO. 16-CV-00076 | | WEINHAUS & POTASHNICK ATTN: MARK POTASHNICK 11500 OLIVE BLVD. STE. 133 ST. LOUIS, MO 61341 | HARWOOD FEFFER LLP ATTN: ROBERT I. HARWOOD & TANYA KORKHOV 488 MADISON AVENUE NEW YORK, NY 10022 |
| VALLEY HOME IMPROVEMENT | MASSACHUSETTS STATE COURT | | DAVID WILENSKY P.O. BOX 202 NORTHHAMPTON, MA 01061 | |
| VALLEY HOME IMPROVEMENT INC. | HAMPSHIRE COUNTY SUPERIOR COURT | | DAVID WILENSKY P.O. BOX 202 NORTHHAMPTON, MA 01061 | |
| VIVINT SOLAR, INC. | COURT OF CHANCERY OF THE STATE OF DE | SEV MERGER SUB, INC. | WILSON SONSINI GOODRICH & ROSATI | WILSON SONSINI GOODRICH & ROSATI ATTN: SHANNON E. GERMAN, IAN LISTON GINA M. SERRA, JEREMY J. RILEY 650 PAGE MILL ROAD PALO ALTO, CA 94304-1050 -AND- WILSON SONSINI GOODRICH & ROSATI ATTN: BORIS FELDMAN, STEVEN SCHATZ, GIDEON SCHOR 650 PAGE MILL ROAD PALO ALTO, CA 94304-1050 |

39

| | | |
|---|---|---|
| VIVINT SOLAR, INC. | DELAWARE CHANCERY COURT | WILSON SONSINI GOODRICH & ROSATI<br>ATTN: SHANNON E. GERMAN, IAN LISTON<br>GINA M. SERRA, JEREMY J. RILEY<br>650 PAGE MILL ROAD<br>PALO ALTO, CA 94304-1050<br>-AND-<br>WILSON SONSINI GOODRICH & ROSATI<br>ATTN: BORIS FELDMAN, STEVEN SCHATZ, GIDEON SCHOR<br>650 PAGE MILL ROAD<br>PALO ALTO, CA 94304-1050 |
| WHEELER | UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI | GAINEY MCKENNA & EGLESTON<br>ATTN: THOMAS J. MCKENNA,<br>GREGORY M. EGLESTON<br>440 PARK AVENUE SOUTH<br>NEW YORK, NY 10016<br><br>DYSART TAYLOR COTTER MCMONIGLE & MONTEMORE P.C.<br>ATTN: DON R. LOLLI<br>4420 MADISON AVE.<br>KANSAS CITY, MO 64111 |
| WILLIAMS | DISTRICT COURT OF THE STATE OF UTAH, FOURTH JUDICIAL DISTRICT, UTAH COUNTY | ABBOTT LAW FIRM<br>ATTN: NELSON ABBOTT<br>75 SOUTH 200 EAST<br>PROVO, UT 84604<br><br>RIGRODSKY & LONG, P.A.<br>ATTN: SETH D. RIGRODSKY, BRIAN D. LONG<br>GINA M. SERRA, JEREMY J. RILEY<br>2 RIGHTER PARKWAY, SUITE 120<br>WILMINGTON, DE 19803<br>-AND-<br>RYAN & MANISKAS, LLP<br>ATTN: KATHARINE M. RYAN,<br>RICHARD A. MANISKAS<br>995 OLD EAGLE SCHOOL ROAD,<br>SUITE 311<br>WAYNE, PA 19087 |
| WISZCO, LLC | DISTRICT COURT, CLARK COUNTY NEVADA | FIRST WIND ENERGY, LLC<br>RIVER MOUNTAINS SOLAR, LLC<br>WILMINGTON TRUST CO. SP SERVS., INC., AKA AND/OR DBA WILMINGTON TRUST NAT. ASSOC., AKA AND/OR WILMINGTON TRUST CO. | |

40

| | | AMERICAS<br>TERRAFORM UTILITY SOLAR<br>XIX, LLC<br>BOE BONDING COS., ET AL. |
|---|---|---|
| ZHONGHUAN HONG KONG<br>HOLDING LIMITED | HONG KONG | |

41

## **Exhibit 7.6-4**

### Claims Related to Contracts and Leases

Unless otherwise released by the Plan or an order of the Bankruptcy Court, the Debtors expressly reserve and transfer to the GUC/Litigation Trust all Causes of Action, based in whole or in part upon any and all contracts and leases to which the Debtors or Reorganized Debtors is a party or pursuant to which the Debtors or Reorganized Debtors has any rights whatsoever. The claims and Causes of Actions reserved include, without limitation, Causes of Action against utilities, vendors, suppliers of goods or services, insurance companies, or any other parties: (a) for overpayments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, insurance claims, recoupments, liens, or setoffs; (b) for wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations; (c) for failure to fully perform or to condition performance on additional requirements under contracts with the Debtors before the assumption or rejection, if applicable, of such contracts; (d) for payments, deposits, holdbacks, reserves, or other amounts owed by any creditor, utility, supplier, vendor, insurer, surety, factor, lender, bondholder, lessor, or other party; (e) for any liens, including mechanic's, artisan's, materialmen's, possessory, or statutory liens held by the Debtors; (f) counterclaims and defenses related to any contractual obligations; (g) any turnover actions arising under section 542 or 543 of the Bankruptcy Code; (h) for unfair competition, interference with contract or potential business advantage, breach of contract, fraud, constructive breach, breach of actual/implied covenant of good faith and fair dealing, violation of confidentiality obligations, infringement of intellectual property, or any business tort claims; and (i) any accumulated service credits, both those that may apply to future vendor invoices and those from which the Debtors may be entitled to receive a refund.

For the avoidance of doubt, the consent of the Reorganized Debtors shall be required to bring, settle, release, compromise, or enforce such GUC/Litigation Trust Causes of Action (or decline to do any of the foregoing) to the extent such GUC/Litigation Trust Causes of Action interfere with (i) the Reorganized Debtors' collection of Earnout Proceeds, Residual Assets Proceeds, or Repatriated Cash or (ii) the continuing operations of TERP.

## **Exhibit 7.6-5**

Claims Related to Vendor and Customer Obligations

Unless otherwise released by the Plan, or an order of the Bankruptcy Court the Debtors expressly reserve and transfer to the GUC/Litigation Trust all Causes of Action against or related to all vendors that owe or may in the future owe money or other obligations to the Debtors or the Reorganized Debtors, whether for unpaid invoices; unreturned, missing, or damaged inventory; indemnification; warranties; any turnover actions arising under section 542 or 543 of the Bankruptcy Code; or any other matter whatsoever.

Unless otherwise released by the Plan or an order of the Bankruptcy Court, the Debtors expressly reserve and transfer to the GUC/Litigation Trust all Causes of Action against or related to all customers that owe or may in the future owe money to the Debtors or the Reorganized Debtors, whether for unpaid invoices; unreturned, missing, or damaged inventory, warranties, or any other matter whatsoever.

For the avoidance of doubt, the consent of the Reorganized Debtors shall be required to bring, settle, release, compromise, or enforce such GUC/Litigation Trust Causes of Action (or decline to do any of the foregoing) to the extent such GUC/Litigation Trust Causes of Action interfere with (i) the Reorganized Debtors' collection of Earnout Proceeds, Residual Assets Proceeds, or Repatriated Cash or (ii) the continuing operations of TERP.

## **Exhibit 7.6-6**

### Claims Related to Tax Credits and Refunds

Except as otherwise provided by the Plan or an order of the Bankruptcy Court, the Debtors expressly reserve and transfer to the GUC/Litigation Trust all Causes of Action against or related to all local, state, federal and foreign taxing authorities that owe or that may in the future owe money to the Debtors or Reorganized Debtors, including claims for refunds of overpayments or other payments, provided, however, the Debtors expressly reserve all Causes of Action to the extent that they may be asserted as recoupment, setoff, counterclaims or otherwise reduce the claim of any taxing authorities who assert that the Debtors or Reorganized Debtors owe money to them.

## **Exhibit 7.6-7**

### Claims Related to Intellectual Property

Unless otherwise released by the Plan or an order of the Bankruptcy Court, the Debtors expressly reserve and transfer to the GUC/Litigation Trust any Causes of Action for unfair competition, licensing or licensing agreements, interference with contract or potential business advantage, conversion, infringement of intellectual property, or other business tort claims. Nothing in the Plan or the Plan Supplement shall impair, enlarge, or in any way alter the equitable and legal rights, obligations, and defenses of the Debtors, the Reorganized Debtors, the GUC/Litigation Trust, their affiliates or their subsidiaries regarding their intellectual property rights, and all rights with respect thereto are expressly reserved.

For the avoidance of doubt, the consent of the Reorganized Debtors shall be required to bring, settle, release, compromise, or enforce such GUC/Litigation Trust Causes of Action (or decline to do any of the foregoing) to the extent such GUC/Litigation Trust Causes of Action interfere with (i) the Reorganized Debtors' collection of Earnout Proceeds, Residual Assets Proceeds, or Repatriated Cash or (ii) the continuing operations of TERP.

**Exhibit 7.6-8**

Claims Related to Environmental Matters

 Except as otherwise provided by the Plan or an order of the Bankruptcy Court, the Debtors expressly reserve and transfer to the GUC/Litigation Trust all Causes of Action against or related to all Entities or potentially responsible parties that owe or that may in the future owe money to the Debtors or Reorganized Debtors arising out of environmental or contaminant exposure matters against landlords, lessors, environmental consultants, environmental agencies or suppliers of environmental services or goods, provided, however, the Debtors expressly reserve all Causes of Action to the extent that they may be asserted as setoff, recoupment, counterclaims, or otherwise reduce the claims of any Entities or potentially responsible parties who assert that the Debtors or Reorganized Debtors owe money to them.

## **Exhibit 7.6-9**

### Claims Related to Current or Former Employee Matters

Unless otherwise released by the Plan or an order of the Bankruptcy Court, the Debtors expressly reserve and transfer to the GUC/Litigation Trust all claims, defenses, cross claims, and counterclaims against or related to all current or former employees that are party to or that may in the future become party to any actions, litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial, including but not limited to, claims related to intellectual property, confidentiality obligations, employment contracts, wage and benefit overpayments, travel, contractual covenants, workers' compensation, or any alleged employee wrongdoing or misconduct, provided, however, the Debtors expressly reserve all Causes of Action to the extent that they may be asserted as recoupment, setoff, counterclaims or may otherwise reduce the claim of any former or current employees who assert or may assert that the Debtors or Reorganized Debtors owe money to them.

**Exhibit 7.6-10**

Claims Related to Potential Avoidance of Prepetition Transfers Under Sections 362, 502, 510, 542, 543, 547, 548 and 550 of the Bankruptcy Code.

Except as otherwise provided by the Plan or an order of the Bankruptcy Court, the Debtors expressly reserve and transfer to the GUC/Litigation Trust all Causes of Action against or related to all Entities for avoidance of prepetition transfers under sections 362, 502, 510, 542, 543, 547, 548, and 550 of the Bankruptcy Code (other than Avoidance Actions against the Yieldcos and Avoidance Actions against the Prepetition First Lien Secured Parties and the Second Lien Creditors), regardless of whether such Entity is included on the schedule accompanying this Exhibit 7.6-10.

**For the avoidance of doubt, no Entity may rely on its omission from Exhibit 7.6-10 as any indication that the GUC/Litigation Trust will not pursue any and all available Causes of Action against them. The Debtors and the Reorganized Debtors expressly reserve and transfer to the GUC/Litigation Trust all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.**

For the avoidance of doubt, the consent of the Reorganized Debtors shall be required to bring, settle, release, compromise, or enforce such GUC/Litigation Trust Causes of Action (or decline to do any of the foregoing) to the extent such GUC/Litigation Trust Causes of Action interfere with (i) the Reorganized Debtors' collection of Earnout Proceeds, Residual Assets Proceeds, or Repatriated Cash or (ii) the continuing operations of TERP.

For the avoidance of doubt, pursuant to the D&O Settlement Agreement, which was approved by the Bankruptcy Court pursuant to an order of the Bankruptcy Court signed on June 28, 2017 [Docket No. 3453] (the "D&O Settlement Approval Order"), the only actions described in this Exhibit 7.6-10 that are preserved with respect to the Individual Defendants (as defined in the D&O Settlement Agreement) are preference actions that may be brought under section 547 of the Bankruptcy Code.  An asterisk ("*") appears next to the name of each such Individual Defendant listed on the schedule accompanying this Exhibit 7.6-10.  To the extent any provision in the Plan (including this Plan Supplement) is inconsistent with the terms of the D&O Settlement Agreement or the D&O Settlement Approval Order, the D&O Settlement Agreement or the D&O Settlement Approval Order, as applicable, shall control.

SunEdison Inc.
Retained Causes of Action Listing
Claims Related to Potential Avoidance of Preposition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Just Energy Group, Inc. | 6345 Dixie Rd #200 | | | | Mississauga | ON | L5T 2E6 | CA |
| 1111 19th Street Association | C/O Wachovia Bank | PO Box 75373 | | | Baltimore | MD | 21275-5373 | USA |
| 1st Alliance Energy Inc. | 1100 Melody Ln Ste 114-C | | | | Roseville | CA | 95678 | USA |
| 3Megawatt Gmbh | Bochheggerstr. 1 | | | | Geretsried | | DE82538 | Germany |
| 750deal LLC | 200 South Orange Ave. Suite 1375 | | | | Orlando | FL | 32801 | USA |
| 765i, LLC | William I. Hanlon, Esq. | Two Seaport Lane, Suite 3 | | | Boston | MA | 02210 | USA |
| 8X8 Inc. | Dept. 3080 | | | | Los Angeles | CA | 90084-8080 | USA |
| A-1 Contractors | 8401 West Doe Avenue | | | | Visalia | CA | 93291 | USA |
| Abb Inc | 125 East County Line Rd | | | | Warminster | PA | 18974 | USA |
| Abogados Y Asesores S. De R.L. | Edificio Rufia II | Col. Lomas del Guijarro Sur | Calle Barcelona, Bloque-C, Lote 15 | | Honduras | | | HONDURAS |
| ABS Netcom, Inc. | 7834 Convoy Ct | | | | San Diego | CA | 92111-1017 | USA |
| Accent Design, PLLC | 184 C.R. Howard Road | | | | Loving | NM | 88256 | USA |
| Ace Industries Inc | 6255 Mcdonough Dr | | | | Norcross | GA | 30093 | USA |
| Adams, James E. | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Adams, Raymond Matthew | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Addleshaw Goddard | Milton Gate | 6 Chiswell Street | | | London | | EC1Y4AG | United Kingdom |
| Adecco Employment Services | Dept Ch 10838 | | | | Palatine | IL | 60055-0838 | USA |
| Adecco North America LLC | Dept Ch 10838 | | | | Palatine | IL | 60055-0838 | USA |
| Adecco Usa Inc | Dept Ch 10838 | | | | Palatine | IL | 60055-0838 | USA |
| Adler Tank Rentals | 95 123 Firnench Way | | | | Newark | NJ | 07114 | USA |
| ADP, LLC | 1851 N. Resler | | | | El Paso | TX | 79912 | USA |
| Advanced Energy Renewables Inc | Dept 34 33896 | | | | Pasadena | CA | 91185-3896 | USA |
| Advarmech Corporation | 380 Fairview Way | | | | Milpitas | CA | 95035 | USA |
| Aerotek Inc | 3689 Collection Center Drive | | | | Chicago | IL | 60693 | USA |
| Aetna Life And Casualty Bermuda | 151 Farmington Ave | | | | Hartford | CT | 06156 | USA |
| Afco Credit Corp | Dept Ch 10281 | | | | Palatine | IL | 60055-0265 | USA |
| Agarwal, Sandeep | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Agile Consulting Co | 306 Blue Spruce Lane | | | | Glendale Heights | IL | 60139 | USA |
| Agilent Technologies Inc | PO Box 4026 | 2321 W. 41st st. | | | Englewood | CO | 80155 | USA |
| Agjaviv, Felix O | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Air Products & Chemicals | 5200 Blazer Parkway | | | | Dublin | OH | 43017 | USA |
| Aixui Energy SAS | 140 Av. des Champs-Elysées | | | | Paris | | 75008 | France |
| Alameda County Treasurer | PO Box 24519 | | | | Alameda | CA | 810 | USA |
| Albemarle Corp | 451 Florida St | | | | Baton Rouge | LA | 70801-1765 | USA |
| Albert Uresti, Mpa, Pcc | Bexar County Tax Assessor-Collect | P.O. Box 293 | | | San Antonio | TX | 78298-2903 | USA |
| Alejandro Hernandez* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Alico Farms, LLC | 55 Stevens Street | | | | Ludlow | MA | 01056 | USA |
| ALLCell Technologies, LLC | Jeremiah Schatt | | | | Chicago | IL | 60609 | USA |
| Alliance Roofing Company Inc. | 630 Martin Avenue | | | | Santa Clara | CA | 95050 | USA |
| Allied Industrial Sales Inc | 300 Hyaats-a-Fwy Ste 100 | | | | Pasadena | TX | 77503 | USA |
| Allied Waste Svcs Disposals | 5757A Oates Rd | | | | Houston | TX | 77078 | USA |
| Altai Capital Management, L.P. | 152 West 57th St | | | | New York | NY | 10019 | USA |
| Altair Innovacion, S.L. | C/ Orense 81 | | | | Madrid | | 28020 | Spain |
| Altus Group Us Inc. | PO Box 23419 | | | | Newark | NJ | 07103-3519 | USA |
| Alvarado Tax And Bus Advisors LLC | 104 Calle Azuzrela | | | | Guaynabo | | 00969-3506 | USA |
| Amazon Web Services Inc | 410 Terry Avenue North | | | | Seattle | WA | 98109-5210 | USA |
| Ambimon Inc | Attn: Chris Serna | Ste-41 | | | Framingham | MA | 01701-2000 | USA |
| American Express Company | Av. Parroctornio 635 | Col. Cd de los Deportes, Del. Benito Juárez | | | México | DF | 03710 | Mexico |
| American Telesis, Inc. | PO BOX 6659 | | | | Hilton Head Island | SC | 29938 | USA |
| Anderson, Rich Ladell | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Anderson, Jeffrey S | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Antelope Valley Cattle & Milling Co. | Milling Co. | | | | Lancaster | CA | 93539-2468 | USA |
| Antonio R. Alvarez* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Aogeh (Sales And Use Tax) | 180 Massachusetts Avenue | | | | Washington | DC | 20002 | USA |
| Aon Risk Services Of Missouri | 200 East Randolph Street | | | | Chicago | IL | 60601-6436 | USA |
| Aon Risk Services, Inc | 200 East Randolph Street | | | | Chicago | IL | 60601-6436 | USA |
| Aon Risk Services, Inc. Of Illinois | 200 East Randolph Street | | | | Chicago | IL | 60601-6436 | USA |
| Apex Solar Power - Authorized Installer | 64 Main Street | | | | Queensbury | NY | 12804 | USA |
| Apogee Instruments, Inc. | 721 W 1800 N. | | | | Logan | UT | 84321 | USA |
| Apple (Shanghai) Quality | No. 3999, Xiu Pu Road, | Pudong District | | | Shanghai | | 201315 | China |
| Applus Uniform Services | Post Office LockBox | | | | Dallas | TX | 75373-1676 | USA |
| Archer, Henry J | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Arizona Public Service Electric Company | 4 N 5th St. Mail Station 9674 | | | | Phoenix | AZ | 85004 | USA |
| Arizona Solar Concepts | 1415 E. University Dr. Suite A109 | | | | Tempe | AZ | 85281 | USA |
| Arizona Solar Concepts Solar | 1415 E. University Dr. Suite A109 | | | | Tempe | AZ | 85281 | USA |
| Astrom Technical Advisors S.L. | Calle Serrano 8-3 Izq | | | | Madrid | | 28001 | Spain |
| AT&T | 12912B801 | P.O. Box 617 | | | Los Angeles | CA | 90060-0017 | USA |
| AT&T Mobility Solutions Services | 12912B801 | P.O. Box 617 | | | Los Angeles | CA | 90060-0017 | USA |
| AT&T Teleconference Services | 12912B801 | P.O. Box 617 | | | Los Angeles | CA | 90060-0017 | USA |
| Atersa Grupo Elecnor | C/Imhajontores 187 | | | | Madrid | | 28045 | Spain |
| Athenton, Kenneth | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |

SunEdison Inc.
Retained Causes of Action Listing
Claims Related to Potential Avoidance of Preposition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Axial Sistemas Solares, S.L. | C/Rio Viñalopo, 23, P.I. Pata del Cid. | | | | Quart de Poblet | | 46930 | Spain |
| Aztec Solar Inc. | 11370 Trade Center Dr | | | | Rancho Cordova | CA | 95742 | USA |
| Bachroth, Michael | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Bala, Deepika | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Baldwin, Charles | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Ballowood | 12500 Baltimore Avenue | | | | Beltsville | MD | 20705 | USA |
| BAM Ventures | 12181 Bluff Creek Drive | 5th Floor | | | Playa Vista | CA | 90094 | USA |
| Banco Popular | Attn: Oscar Luis de Santos Jiménez | Velázquez 34 | | | Madrid | | 28001 | Spain |
| Bank Direct Capital Finance LLC | 150 North Field Dr | | | | Lake Forest | IL | 60045-4847 | USA |
| Barnes Solar Inc. | 16560 Harbor Blvd #R | | | | Fountain Valley | CA | 92708 | USA |
| Barry-Wehmiller Design Group, Inc. | 8020 Forsyth Blvd | | | | St. Louis | MO | 63105 | USA |
| Barton, John | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Batz, Elvin M | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Bay Data Solar-Nat | 231 Weaver St | | | | Fall River | MA | 02720 | USA |
| BCPG Public Company Limited | 2098 M 12th Floor | Sukhumvit Rd | | | Bangkok | | 10110 | Thailand |
| Ben Franklin Technology Partners of Southeastern PA, Investment Arm | 4801 South Broad Street | Suite 200 | Building 100 Innovation Center | The Navy Yard | Philadelphia | PA | 19112 | USA |
| Bennett, Ryan | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Berger, Daniel | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Berhorst, Tony T | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Bes Maryland I, LLC | 113 West Monument Street | | | | Baltimore | MD | 21201 | USA |
| Best Vinyl Fence & Deck, LLC | 525 S 850 E | | | | Lehi | UT | 84043 | USA |
| Big Island Toyota Inc. | 811 Kanoelehua Ave | | | | Hilo | HI | 96720 | USA |
| Bischoff, Garren | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Bixby Land Company | Attn Property Mgmt | 2211 Michelson Dr Ste 1 | | | Irvine | CA | 92612 | USA |
| Blackburn, Lori Lynn | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Blackline Systems Dba Osaba Inc | 21300 Victory Blvd 12th Flr | | | | Woodland Hills | CA | 91367 | USA |
| Bleime, Brian A | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Bluegill Technologies, LLC | 4097 Trailcreek Rd | | | | Riverside | CA | 92505 | USA |
| Bluewater Capital LLC | 137 Newbury St Ste 400 | | | | Boston | MA | 02116-2942 | USA |
| Bockmon & Woody Electric Co., Inc. | | PO Box 118 | | | Stockton | CA | 95201 | USA |
| Bonfiglioli Vectron Gmbh | Europark Fichtenhain B6 | | | | Krefeld | | 47807 | Germany |
| Booher, Richard Thomas | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Boone, Brett R | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Boulder County Treasurer | PO Box 471 | | | | Boulder | CO | 80306 | USA |
| Bright Planet Solar, Inc. | 69169 Ramal, Suite 308 | | | | Westborough | MA | 01581 | USA |
| Brightcove Inc. | 180 Madison Ave | | | | New York | NY | 10016 | USA |
| Brio Energy-Solar | 6655 W Sahara St, B203 | | | | Las Vegas | NV | 89146 | USA |
| Brite Energy-Solar | 1267 Windham Parkway | | | | Romeoville | IL | 60446 | USA |
| Bruce W. Kingsley | 2722 Elm Street | | | | Dighton | MA | 02715 | USA |
| BTSA Netherlands Cooperatie U.A. | Prins Bernhardplein 200 | | | | Amsterdam | | 1097 JB | Netherlands |
| Build Nation, Inc. | 201 Colt Street | | | | Austin | TX | 78737 | USA |
| Burdick, Paul W | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Burlage, Julie | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Burnell Controls (Kent) Ltd T/A Burnell Switchgear & Control | 11 Masthead, Capstan Court | | | | Dartford | Kent | DA2 6QG | United Kingdom |
| Burr & Tags Electrical | 3888 Industry Blvd # 23 | | | | Lakeland | FL | 33811 | USA |
| Burr, Sean C | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Butler, Kevin T | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Butler, Nathan | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Bws Burnham River, LLC | 815 W 1800 N | | | | Logan | UT | 84321 | USA |
| Byrnes Lakes Logistics Center | UNIT 338 | 7th Floor | Attn: Mr. John Olszowski | | | | | USA |
| Cadmus Group Inc | 100 5th Avenue | Suite 1 | | | Waltham | MA | 02451 | USA |
| Calhoun County Tax Commissioner | 1702 Noble Street | Suite 14 & 16 | | | Anniston | AL | 36201 | USA |
| California State Board Of Equalization | 15350 Sherman Way 250 Van Nuys | | | | Van Nuys | CA | 91406 | USA |
| Calumet Specialty Pr | 1950 N Stemmond Fwy Ste 5010 | | | | Dallas | TX | 75207 | USA |
| Campbell Scientific Inc | 815 W 1800 N | | | | Logan | UT | 84321 | USA |
| Campbell, Stephen G | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Candelo Revenue Agency | 555 MacKenzie Avenue | | | | Ottawa | ON | | Canada |
| Capital Safety Services | 260 Osborne Rd. | | | | Loudonville | NY | 12211 | USA |
| Caramante, Patrick | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Carbos Dominicos Remosa* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Camden Group, Inc. | 51 JFK Parkway First Floor West | | | | Short Hills | NJ | 07078 | USA |
| Casama LLC | 15 Holmes Street | | | | Rehoboth | MA | 02769 | USA |
| Cater, John Todd | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Catherine Dot | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Cathy Kuehnert Supplemental Needs Trust | Needs Trust | 552 32nd St | | | Virginia Beach | VA | 23451 | USA |
| CCH Inc. | P.O. Box 4307 | | | | Carol Stream | IL | 60197-4307 | USA |

**SunEdison Inc.**
**Retained Causes of Action Listing**
**Claims Related to Potential Avoidance of Preposition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code**
**DRAFT as of 7/6/17**

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| CCIC CSA International Certification Co. Ltd | Floor 1,Building 4,889 Yishan Road | | | | Shanghai | 2 | 200233 | China |
| CDW Computer Centers Inc | 200 N Milwaukee Ave | | | | Illinois | IL | 60061 | USA |
| Celestica Hong Kong Ltd. | 13-15 4 F Goldlion Holdings Centre | Hong Kong Shun Circuit | Siu Lek Yuen | | Hong Kong | Shatin | | China |
| Centerpoint Engineering, Inc. | 2 Market Plaza Way | #D | | | Mechanicsburg | PA | 17055 | USA |
| Cg Power Solution Usa | 7 Century Hill Dr | | | | Latham | NY | 12110-2113 | USA |
| Cha, Bruce | 2 Ckplace Drive | | | | St. Louis | MO | 63141 | USA |
| Chatham Financial Kennett - Corp | 235 Whitehorse Lane | | | | Kennett Square | PA | 19348 | USA |
| Chatila, Ahmad R * | 2 Ckplace Drive | | | | St. Louis | MO | 63141 | USA |
| Chenbrough Group, L.P | 2213 West Lonesome Dove | | | | Deer Park | TX | 77536 | USA |
| Chicago Title Company | 3127 Transworld Drive #330 | | | | Stockton | CA | 95206 | USA |
| Chint Power Systems | Attn: President or General Counsel | 76 Koll Center Pkwy | | | Pleasanton | CA | 94566-3106 | USA |
| Chint Solar (Xm) Co Ltd | Attn: President or General Counsel | 76 Koll Center Pkwy | | | Pleasanton | CA | 94566-3106 | USA |
| Chrio'S Tree Trimming | P.O Box 22137 | | | | Bakersfield | CA | 93390 | USA |
| Christopher Cook | 2 Ckplace Drive | | | | St. Louis | MO | 63141 | USA |
| Chu,Lit, Lee F | 2 Ckplace Drive | | | | St. Louis | MO | 63141 | USA |
| Cieminis, David | 2 Ckplace Drive | | | | St. Louis | MO | 63141 | USA |
| Cigna Healthcare | 25500 N Norterra Dr | | | | Phoenix | AZ | 85085-8200 | USA |
| Cintas Corporation | PO Box 650838 | | | | Dallas | TX | 75265-0838 | USA |
| Citibank N. A. Uruguay | 1100 Montevideo | | | | Misiones | | | Uruguay |
| Citiguard, Inc. | 6480 Variel Ave # 101 | | | | Woodland Hills | CA | 91367 | USA |
| City Of Brockton | Finance Office | 45 School Street | | | Brockton | MA | 02301 | USA |
| City Of Broomfield | City And County Of Broomfield | PO Box 47 | | | Broomfield | CO | 80038-0407 | USA |
| City Of Fall River | One Govt. Center | | | | Fall River | MA | 02722 | USA |
| City Of Fall River Tax Collector | One Govt. Center | | | | Fall River | MA | 02722 | USA |
| City Of Los Angeles Dept. Of Water & Power | 111 North Hope Street | | | | Los Angeles | CA | 90012 | USA |
| City Of Mendota | 643 Quince Street | | | | Mendota | CA | 93640 | USA |
| City Of Portland | P.O Box 4216 | | | | Portland | OR | 97208-4216 | USA |
| City Of Santa Fe Municipal Airport | 121 Aviation Drive | | | | Santa Fe | NM | 87507 | USA |
| City Of Sherman | 220 W Mulberry St | | | | Sherman | TX | 75090-5832 | USA |
| City Of Tehachapi | 115 S. Robinson St | | | | Tehachapi | CA | 93561 | USA |
| City Of Tracy | 333 Civic Center Dr | | | | Tracy | CA | 95376 | USA |
| City Of Waterbury | 236 Grand Street | | | | Waterbury | CT | 06702 | USA |
| Citycall Security Ltd | 353 Old Laira Road | | | | Plymouth | | | United Kingdom |
| Cj Quinones Engineering, Psc | Edif. Bucaré 2050 | Calle Turquesa | | | San Juan | P.R | 00969 | USA |
| Claire Gogan * | 2 Ckplace Drive | | | | St. Louis | MO | 63141 | USA |
| Clarke Realty, Lp | 472 Winchester Street | | | | Keene | NH | 03431 | USA |
| Claro & Cia | Attn: Attorney Handling SunEdison matters | Av. Apoquindo 3721, 14th floor | | | Santiago | | 755 0177 | Chile |
| Clayton Borgmeyer | 2529 High St | | | | Brentwood | MO | 63144 | USA |
| Clayton C. Daley Jr* | 2 Ckplace Drive | | | | St. Louis | MO | 63141 | USA |
| Clean Energy Of America Group, Inc | 22803 Ventura Blvd # 202 | | | | Woodland Hills | CA | 91364-1222 | USA |
| Clean Harbors Enviro | 500 Willow Pond Road | | | | La Porte | TX | 97972 | USA |
| Cognizant Technology Solutions | 211 Quality Cirlce | | | | College Station | TX | 77845-4470 | USA |
| Coleman, Peter | 2 Ckplace Drive | | | | St. Louis | MO | 63141 | USA |
| Colliers International Ca, Inc | 50 California Street, Suite 1900 | | | | San Francisco | CA | 94111 | USA |
| Color Art Integrated Interiors LLC | 1325 N Warson Rd | | | | Saint Louis | MO | 63132 | USA |
| Commercial Due Diligence Services,  Accounts Receivable Dept. | ces, Accounts Receivable Dept. | PO Box 73173 | | | Dallas | TX | 75373-1073 | USA |
| Commerford, Jarryd | 2 Ckplace Drive | | | | St. Louis | MO | 63141 | USA |
| Complete Solar Solution Inc | 1854 Gateway Drive | Ste 45 | | | San Mateo | CA | 94404 | USA |
| Comptroller Of Income Tax | 55 Newton Road | | | | Singapore | SG | 307987 | Singapore |
| Conco Energy LLC | 4 First Street | | | | Bridgewater | MA | 02324 | USA |
| Cook, Christpher Rk | 2 Ckplace Drive | | | | St. Louis | MO | 63141 | USA |
| Cooper Investment Partners | 1633 Broadway | | | | New York | NY | 10019 | USA |
| Corbin'S Electric | 4829 S 38th St, | | | | Phoenix | AZ | 85040 | USA |
| Corridor Energy, LLC | 1100 Walnut St | | | | Kansas City | MO | 64106 | USA |
| County Of Nassau County Dept. Of Public Works | 1541 Front Avenue | Attention: Ms. Shila Shah-Gavnoudias, P.E., | Commissioner | | Westbury | NY | 11590-2723 | USA |
| County Of San Mateo | 555 County Center | | | | Redwood City | CA | 94063 | USA |
| County Of Suffolk | 100 Veterans Memorial Highway | H. Lee Dennison Building | | | Hauppauge | NY | 11788 | USA |
| Cox, Stephen | 2 Ckplace Drive | | | | St. Louis | MO | 63141 | USA |
| Crane Solutions LLC | Attn: President or General Counsel | PO Box 8478 | | | Dallas | TX | 75266-0078 | USA |
| Crowvhite, Alison | 2 Ckplace Drive | | | | St. Louis | MO | 63141 | USA |
| Crystal Dynamics Inc | 160 N Sandpoint Rd | | | | Mead | OK | 73449 | USA |
| CSolar Iv South, LLC | 14502 FNB Parkway | | | | Omaha | NE | 68154 | USA |
| CT Corporation | PO Box 4349 | | | | Carol Stream | IL | 60197-4349 | USA |
| Cummings, Jeremy K | 2 Ckplace Drive | | | | St. Louis | MO | 63141 | USA |
| Cusick, Kenna | 2 Ckplace Drive | | | | St. Louis | MO | 63141 | USA |
| Cut N Edge Landscape Services | 3420 Foster Solstice | | | | Rowlett | TX | 75088 | USA |
| Cwt Crane Worldwide Transportation | Ste 13.03A 13th Fl Menara Summit, P | Subang Jaya | | | Selangor | | 47600 | Singapore |
| D.E. Shaw & Company | 1166 Avenue of the Americas | Ninth Floor | | | New York | NY | 10036 | USA |
| Dac Beachcroft | Portwall Place | Portwall Lane | | | Bristol | | BS1 9HS | United Kingdom |
| Danzel, Efren A | 2 Ckplace Drive | | | | St. Louis | MO | 63141 | USA |
| Danti, Anthony M | 2 Ckplace Drive | | | | St. Louis | MO | 63141 | USA |
| Datareef, LLC | 5252 N Edgewood Drive | Suite 165 | | | Provo | UT | 84604 | USA |

SunEdison Inc.
Retained Causes of Action Listing
Claims Related to Potential Avoidance of Preposition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| David Aaron Jones | 2 Crayloce Drive | | | | St. Louis | MO | 63141 | USA |
| David G. And Laurie Taylor Family Trust | Family Trust Alaska Federal | Credit Union, 1425 7th Street | | | Vestaville | CA | 92395 | USA |
| David Goldman | 4878 Harbord Drive | | | | Oakland | CA | 94618 | USA |
| David Mosley | 865 Clark Ave | | | | Webster Groves | MO | 63119 | USA |
| David Rathoff* | 2 Crayloce Drive | | | | St. Louis | MO | 63141 | USA |
| David Sathrum | 328 Monkey Valley Hollow | | | | Kenyon | MN | 55946 | USA |
| Davis, Trevor A | 2 Crayloce Drive | | | | St. Louis | MO | 63141 | USA |
| Day, Simon | 2 Crayloce Drive | | | | St. Louis | MO | 63141 | USA |
| DB/ Atlantico LLC, S.E. | 35228-20083-56495 / | P.O. Box 53162 | | | Atlanta | GA | 30353-1620 | USA |
| Deaton, Shane D | 2 Crayloce Drive | | | | St. Louis | MO | 63141 | USA |
| Deibaux Inland Empire Properties | Properties | 143 South Eastman Avenue | | | Los Angeles | CA | 90023 | USA |
| Del Monte Electric Co, Inc. | Attn: Abert | 6998 Sierra Ct. | | | Dublin | CA | 94568-2662 | USA |
| Delouthe, Douglas M | 2 Crayloce Drive | | | | St. Louis | MO | 63141 | USA |
| Delta Dental | 12399 Gravois Rd | PO Box 39 | | | Saint Louis | MO | 63127-1750 | USA |
| Demand Solutions Group LLC | Dept #44301 | | | | San Francisco | CA | 94143-0481 | USA |
| Demers, Michael Kevin | 2 Crayloce Drive | | | | St. Louis | MO | 63141 | USA |
| Dennis And Bonnie Magadden | 70 Route 106 | | | | N Springfield | VT | 05150 | USA |
| Dennis Mahoney & Sons, Inc. | P.O. Box 417 | | | | Mattapoisett | MA | 02739 | USA |
| Dershowsky, Timothy R | 120 Putledge St | | | | St. Louis | MO | 63141 | USA |
| Deutsche Bank Trust Company Americas | 16 Wall St | | | | New York | NY | 10005 | USA |
| Dewinter Group, Inc. | 1901 S. Bascom Ave, Suite 660 | | | | Campbell | CA | 95008 | USA |
| Diryo, Derek | 2 Crayloce Drive | | | | St. Louis | MO | 63141 | USA |
| Diamond, Daniel A | 2 Crayloce Drive | | | | St. Louis | MO | 63141 | USA |
| Dimas, Joseph | 2 Crayloce Drive | | | | St. Louis | MO | 63141 | USA |
| District View Plaza | 644 Fernandez Juncos Avenue | Suite 31 | | | San Juan | PR | 00907-3122 | USA |
| Divine Power USA, Inc. | 1650 West Linco Lane | | | | Arvin | IL | 59310 | USA |
| Dixieland, LLC | 69 Wildwood Street, | | | | Wilmington | MA | 01887 | USA |
| Dno Consulting Limited | 35 Imep Street, Highworth | | | | Wiltshire | | SN6 7AA | United Kingdom |
| Dnv Koma Renewables Inc | 1501 4th Avenue Suite 900 | | | | Seattle | WA | 98101 | USA |
| Dobbs, Daniel | 2 Crayloce Drive | | | | St. Louis | MO | 63141 | USA |
| Dominion Energy | 701 East Cary Street | | | | Richmond | VA | 23219 | USA |
| Dominion Resources Inc. | 120 Tredegar St | 20th Floor | | | Richmond | VA | 23219 | USA |
| Dominion Solar Projects III, Inc. | 120 Tredegar St | | | | Richmond | VA | 23219 | USA |
| Donohue, Steven | 2 Crayloce Drive | | | | St. Louis | MO | 63141 | USA |
| Dotoxfeed Systems, Inc | 5890 Stoneridge Dr., Ste 110 | | | | Pleasanton | CA | 94588 | USA |
| Drake , Alexander R | 2 Crayloce Drive | | | | St. Louis | MO | 63141 | USA |
| Duke Energy | PO Box 1321 | | | | Charlotte | NC | 28217 | USA |
| Dynasolar Services, LLC | 120 Pleasant Hill Avenue North | Suite 2 | | | Sebastopol | CA | 95472 | USA |
| Dzienkowski, Karen | 2 Crayloce Drive | | | | St. Louis | MO | 63141 | USA |
| East Asia Institute Of Management Pte Ltd | 9 Ah Hood Road | 15 Chambers Bridge Road, Suite 23 | | | Singapore | SG | 329975 | Singapore |
| Eastcoast Site Work, Inc. | c/o K. Johnson & Associates, LLC | Attn: Kristen E. Johnson | | | Brick | NJ | 08723 | USA |
| Ebert, William H | 2 Crayloce Drive | | | | St. Louis | MO | 63141 | USA |
| Eckert Seamans Cherin & Mellott LLC | Attn: Attorney Handling SunEdison matters | 6 Grant Street | | | Pittsburgh | PA | 15219 | USA |
| EcoHelios Group Limited | Leon House | Rowcroft | Stroud | | Gloucestershire | | GL5 3BF | United Kingdom |
| Edf Energy Customer Field Services (Metering) Ltd | 255 Broadway Bexleyheath | | | | Kent | | DA6 8ET | United Kingdom |
| Edf Energy Customer Field Services Gb | 255 Broadway Bexleyheath | | | | Kent | | DA6 8ET | United Kingdom |
| Efacec Energia Electricos S.L. | Naida Building | Avda. de la Industria n74, Edificio L, | Escalera 2, 2? C | | Alcobendas | | 28108 | Spain |
| Effective Environmental | 945 E Pleasant Run Road | | | | Lancaster | TX | 75146 | USA |
| Ehrhart, Lindsay | 2 Crayloce Drive | | | | St. Louis | MO | 63141 | USA |
| El-Aziz, Zeina | 2 Crayloce Drive | | | | St. Louis | MO | 63141 | USA |
| Elder Contracting Corp. | 3042 Emerald Drive | | | | Holtsville | NY | 11742 | USA |
| Electric Power Systems | 2 Crayloce Drive | | | | St. Louis | MO | 63141 | USA |
| Emera Incorporated | 1894 Barrington Street | Barrington Tower | | | Halifax | NS | B3J 2A8 | CA |
| Emmanuel T. Harmastader* | 2 Crayloce Drive | | | | St. Louis | MO | 63141 | USA |
| Employee Stock Purchase Plan | 2 Crayloce Drive | | | | St. Louis | MO | 63141 | USA |
| Enecon Technologies | PO Box 655 | | | | Gray | ME | 04039 | USA |
| Enertis Inc Usa | 1750 Montgomery Street | | | | San Francisco | CA | 94111 | USA |
| Enphase Energy | PO Box 204120 | | | | Dallas | TX | 75320-4201 | USA |
| Enterprise Fleet Management Customer Billing | Customer Billing | PO Box 889 | | | Kansas City | MO | 64180-0089 | USA |
| Epic Home Solar | 3807 Pasadena Ave #120 | | | | Sacramento | CA | 95747 | USA |
| Epic Home Solar-Solar | 3807 Pasadena Ave #120 | | | | Sacramento | CA | 95747 | USA |
| Equifair Inc. | 1100 Marshall St | | | | Redwood City | CA | 94063 | USA |
| Erni-West, Inc. | 1277 Tited Blvd , Suite 500 | | | | Walnut Creek | CA | 94597 | USA |
| Esa Renewables, LLC | 4150 St. Johns Pkwy Ste 1000 | | | | Sanford | FL | 32771 | USA |
| Esco Buxton Limited | Attn: PJ White | Woodford House | 44 North Farm Road | Scunthorpe, N Lincolnshire | | | DN17 2XY | United Kingdom |
| Eversource | One NSTAR Way,SW 3087 | | | | Westwood | MA | 02090 | USA |
| EverStream Energy Capital Management LLC | 101 California Street | | | | San Francisco | CA | 94111 | USA |
| EverStream-Solar Infrastructure Fund I GP LP | 101 California Street | | | | San Francisco | CA | 94111 | USA |
| EverStream-Solar Infrastructure Fund I LP | 21969 Winterwood Boulevard | Suite 210 | | | Excelsior | MN | 55331 | USA |
| Expeditors Canada Inc | 610 Lambert Pointe Dr | | | | Hazelwood | MO | 63042 | USA |
| Expeditors International Inc | 610 Lambert Pointe Dr | | | | Hazelwood | MO | 63042 | USA |

SunEdison Inc.
Retained Causes of Action Listing
Claims Related to Potential Avoidance of Preposition Transfers Under Sections 502, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Eynon Weed Control | 600 Airport Road | | | | Oceanside | CA | 92058 | USA |
| F & E Electric, Inc. | 4105 W Ironwood Hill Drive | | | | Tucson | AZ | 85745 | USA |
| Fairbanks, Benjamin | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Federal Express | Dept L.A. | | | | Pasadena | CA | 91185 | USA |
| Federman, Fran R. | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Feeney Wireless LLC | PO Box 2549 | | | | Eugene | OR | 97402 | USA |
| Fersa Energias Renovables SA | Av. Navarra, 14 | | | | Badalona | Barcelona | 8911 | Spain |
| Fidelity Investments Institutional | P.O. Box 770002 | | | | Cincinnati | OH | 45277 | USA |
| Figueroa, Yves | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Finch, Callan W | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| First American Title Company | 2701 Maple Ctr Dr, Bldg 6, #120 | | | | Los Angeles | CA | 90065 | USA |
| Fischer, William J | 2 Cityplace Drive | Attn: FATSCD-41 Box 1266 | | | St. Louis | MO | 63141 | USA |
| Fisher Scientific Corp | 13551 Collections Ctr Dr | | | | Chicago | IL | 60693 | USA |
| Five Star Impact | 13516 Polawon Way | | | | Riverton | UT | 84065 | USA |
| Flannery, Raymond | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Flex International Asia Pacific | C/o Curtis, Mallet-Prevost, Colt & Mosle LLP | Attn: Steven I. Reisman, Esq., James V. Drew, Esq. | & Cindi M. Giglio, Esq. | 11 Park Avenue | New York | NY | 10178-0061 | USA |
| Flex Intl Europe B.V. | C/o Curtis, Mallet-Prevost, Colt & Mosle LLP | Attn: Steven I. Reisman, Esq., James V. Drew, Esq. | & Cindi M. Giglio, Esq. | 11 Park Avenue | New York | NY | 10178-0061 | USA |
| Flextronics International | C/o Curtis, Mallet-Prevost, Colt & Mosle LLP | Attn: Steven I. Reisman, Esq., James V. Drew, Esq. | & Cindi M. Giglio, Esq. | 11 Park Avenue | New York | NY | 10178-0061 | USA |
| Flextronics International Europe B.V. | C/o Curtis, Mallet-Prevost, Colt & Mosle LLP | Attn: Steven I. Reisman, Esq., James V. Drew, Esq. | & Cindi M. Giglio, Esq. | 11 Park Avenue | New York | NY | 10178-0061 | USA |
| Fong, Kendall | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Forever Green Landscaping | 375 Harvard St | Unit G | | | Leominster | MA | 01453 | USA |
| Forlenza | 2050 Green Valley Pkwy Ste 554 | | | | Henderson | NV | 89014 | USA |
| Foster Street Acquisition LLC | 1881 Worcester Road Suite 200 | | | | Framingham | MA | 01701 | USA |
| Fraass, Scott P | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Fraga, Bekerman E Constano Adevoga | Rua Rodrigo Silva 26 3rd Floor | | | | Rio De Janeiro | RJ | 20.011-040 | Brazil |
| Franchise Tax Board | PO Box 942857 | | | | Sacramento | CA | 95812-2857 | USA |
| Francisco Perez-Gundin* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Frank W. Nichols And Celestia | 2065 North Main | | | | Cedar City | UT | 84721 | USA |
| Frankenberg, John E | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Franklin Deville | 207 Seagull Way | | | | Richmond | CA | 94801 | USA |
| Fraser, Kathleen | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Freewire Broadband LLC | 7327 SW Barnes Rd. Portland OR 97225-6119 | | | | | | | |
| Friedel, Benjamin | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Fromme, Ralph H | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Fuhriman, Sean | 1 DR Mason Road | | | | Schenectady | NY | 12345 | USA |
| Fuis & O'Neill | 146 Hartford Road | PO Box 844 | | | Manchester | CT | 06040-0992 | USA |
| Future Perfect Studios, Inc. | 290 Hudson Rd | | | | Ellicott City | MD | 21043 | USA |
| Fysoft LLC | 2450 Louisiana #400-405 | | | | Houston | TX | 77006 | USA |
| Gaffey Inc | 1416 N Duck Creek Rd | | | | Cleveland | TX | 77328 | USA |
| Galloway, John E | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Galloway, Michael R | 455 9th St | | | | Lakeport | CA | 95453 | USA |
| Garfield County Treasurer | 109 8th Street | | | | Glenwood Springs | CO | 81601 | USA |
| Gary Cosh | 185 Josim Rd. | #24 | | | Burlington Flats | NY | 13315 | USA |
| General Electric Company | 1 Old River Road | | | | Schenectady | NY | 12345 | USA |
| General Supply Service Inc Dba: Grayaro | dba: GDXPRO | | | | Dallas | TX | 75284 | USA |
| Geocon West Inc | 6960 Flanders Drive | | | | San Diego | CA | 92121-2974 | USA |
| Georganov C. Proctor* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| George Powell | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Getall Collective Inc. | Megan Harris | 79 Dewar Court | | | Milton | ON | L9T 5N8 | Canada |
| Giagos | P.O. Box No. 100275 | | | | Atlanta | GA | 30384-0275 | USA |
| Giese, Peter | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Gillespie, Robert | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Gilman, Hallie | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Global Freight Solutions Inc. | 197 N Main Street | | | | Carson | CA | 90745 | USA |
| Global Power Gas & Electric LLC | 2950 W Cypress Creek Rd Suite 100 | | | | Fort Lauderdale | FL | 33309 | USA |
| Global Resource Options, Inc | 205 Billings Farm Road, Building | | | | White River Junction | VT | 05001 | USA |
| Goldman, David S | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Google Inc, Department No 33854 | 1600 Amphitheatre Pkwy | | | | Mountain View | CA | 94043-1351 | USA |
| Gordon Handelsman | 501 Pearl Dr | | | | Saint Peters | MO | 63376 | USA |
| Gorman, Jeffrey | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Grace, Eric P | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Graf, Ricardo C | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Granite State Solar, LLC | 197 N Main Street | | | | Concord | NH | 03303 | USA |
| Green Care Companies Inc | 30100 Valley Center Rd | | | | Valley Center | CA | 92082 | USA |
| Green Mountain Power | PO Box 1915 | | | | Brattleboro | VT | 05302-1915 | USA |
| Grey Global Group Inc. | 303 2nd Street, Suite 300 North | | | | San Francisco | CA | 94107 | USA |
| Griffith, Roger | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Grossman, Matthew R | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Guidelines Inc | 625 N Santa Clara Street | Suite 1 | | | Ventura | CA | 93001 | USA |
| H & E Equipment Serv | 11100 Mead Rd Ste 200 | | | | Baton Rouge | LA | 70816 | USA |
| H & H Transformer, Inc. | PO Box 273, 8075 Pontiac Street | | | | Commerce City | CO | 80037-0273 | USA |

SunEdison Inc.
Retained Causes of Action Listing
Claims Related to Potential Avoidance of Preposition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| H&G Realty Trust | 383 Main St | | | | Dunstable | MA | 01827 | USA |
| Haavind As | Bigdoy Alle 2 Pb 359 Sentrum | | | | Oslo | | 0101 | Norway |
| Habitat Aid Ltd | Hookgate Cottage | | | | South Brewhand | | BA10 0LG | United Kingdom |
| Halburtler, Cory V | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Hallova, Michael | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Hambright Company | Shawn Scott Hambright | 32683 Summerswent Dr | | | Winchester | CA | 92596 | USA |
| Hampton Tedder Electric Company | y MSS | PO Box 2228 | | | Montclair | CA | 91763 | USA |
| Hand, Thomas | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Handelmann, Gordon | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Hanson Bridgett Marcus Vlahos | 425 Market Street | | | | San Francisco | CA | 94105 | USA |
| Harper, Lee A | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Harris, Bryan | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Hart, John L | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Hawaii Medical Service Association | P.O. Box 29300 | | | | Honolulu | HI | 96820 | USA |
| Hawaiian Electric Company, Inc. | P.O. Box 2750 | | | | Honolulu | HI | P0968-2701 | USA |
| Haycock, Stephen | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Hayward Area Recreation And Park District | 1099 E Street | | | | Hayward | CA | 94541 | USA |
| Heilmann Worldwide Logistics | 10450 Doral Blvd | | | | Miami | FL | 33178 | USA |
| Henneberg, Tony William | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Herting, Gregory M | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Hertz | Attn: President or General Counsel | 929 W. La Cadena Dr. | | | Riverside | CA | 92501 | USA |
| Hewitt Associates LLC | P.O. Box 95135 | | | | Chicago | IL | 60694-5135 | USA |
| Hewlett Packard Co | 1030 NE Circle Blvd | | | | Corvallis | OR | 97330 | USA |
| Hodges-Mace, LLC | 5775-D Glenridge Drive, | Suite 462 | | | Atlanta | GA | 30328 | USA |
| Hoffman, Diana | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Hohlein, Jacob | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Holdett, Tess | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Holloway, Michaelene K | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Honiton Energy Holdings Plc | 15 Sloane Square | 2nd Floor | | | London | | SW1W 8ER | United Kingdom |
| Houston Ship Channel | 111 East Loop North | | | | Houston | TX | 77029 | USA |
| Hsef Gb | 18 Whiteside Drive | | | | Monkton South Ayrshire | | KA9 2PU | United Kingdom |
| Hsef Seguridad Y Salud, S.L. | La Cala Mijas, Calanova Sea & Golf 81, A121 | | | | Mijas | | 29649 | Spain |
| Hunton & Williams | 200 Park Ave | | | | New York | NY | 10166 | USA |
| Hupp, Joseph M | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Hurley, Kenneth C | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Hwang Mok Park Pc | 2-KR Taepyung-RD120 | Chung-Ku | | | Seoul | KR | 100-724 | South Korea |
| Hybrid Electric Building Technologies Irvine 2, LLC | 462 3rd Street | Suite 462 | | | San Francisco | CA | 94107 | USA |
| Iadarola, Carmine Dave | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Ibm Credit Corp | 1133 Westchester ave | | | | White Plains | NY | 10604 | USA |
| Idemetec Deutschland Gmbh | Nestpl 9A | | | | Walferling | DE | 90574 | Germany |
| Ilan Dakkal | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Imperial County Treasurer- Tax Collector Miss | Collector MSS | 94 W. Main Street, Suite 16 | | | El Centro | CA | 92243 | USA |
| Industrial Specialty Services | 91473 Collections Center Dr | | | | Chicago | IL | 60693 | USA |
| Ineba Uk, Ltd | Attn: Veronica Magdalena | 3 Nkom London Riverside | | | London | | GB | United Kingdom |
| Infinity Energy, Inc. | 1108 Tinker Road Suite 150 | | | | Rocklin | CA | 95765 | USA |
| Ingeniria Mecanio S.L. | Avenida Canovas del Castillo | no 6, 1st planta | | | Malaga | | 29016 | Spain |
| Inland Revenue Authority of Singapore | 55 Newton Road | | | | Revenue House | | 307987 | Singapore |
| Innata Solutions Inc | 42840 Christy Steel Suite 206 | | | | Fremont | CA | 94538 | USA |
| Innovative Structural Engineering Md, Inc. | Engineering MD, INC. | 3 South Main Street | | | Bel Air | MD | 21014 | USA |
| Instalaciones Negrain Sl | Calle Cajadero 14 | Poligono Industrial Del Juncaril | | | Pelgira | | 18210 | Spain |
| Integra Enclosures, Inc. | Ford Drive 1870 | | | | Mentor | OH | 44060 | USA |
| Interior Architects, Inc | 500 Sansome Street, 8th Floor | | | | San Francisco | CA | 94111 | USA |
| International Equipment Leasing Inc | PO Box 150 | | | | Avenel | NJ | 07001 | USA |
| International Fidelity Insurance | 1 Newark Center | | | | Newark | NJ | 07102 | USA |
| Intivation Trust Of William B | 9370 Wilshire Boulevard, | Suite 49 | | | Beverly Hills | CA | 90212 | USA |
| Irvine, James R | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Jabil Assembly Poland Sp. Z.O.O | Ul. Lotnicza 2 | | | | Kwidzyn | PL | 82-500 | Poland |
| Jacke Dennery - Acttc | 1115 Truxtun Ave 2nd Flr | | | | Bakersfield | CA | 93301-4639 | USA |
| Jadid, Ray | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| James B Williams* | 4631 Chesapeake Street NW | | | | Washington | DC | 20016 | USA |
| James W Sorrow PLLC | 1574 NW 72nd Ave | | | | Portland | OR | 97224 | USA |
| Jane Pro Cleaning Svs | P O Box 474 | | | | Belmont | CA | 94002 | USA |
| Jane Middaugh | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Jefferson County Treasurer | 100 Jefferson County Pkwy 2520 | | | | Golden | CO | 80419-2520 | USA |
| Jensen, David | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Jensen, Stanley | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Jeremy Avenier* | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Jeremy Denis Carter | 2485 S View Parkway | | | | Yuma | AZ | 85365 | USA |
| Jigualbun International | 1600 Golf Road Suite 1200 | Corporate Center | | | Rolling Meadows | IL | 60008 | USA |
| Jiang Yin Free Newenergy Electric Power Investment Co., Ltd | 2 Citiplace Drive | | | | St. Louis | MO | 63141 | USA |
| Jinneng Clean Energy Technology Ltd | Attn: President or General Counsel | No. 1 | | | Lvliang City | | 032100 | China |

SunEdison Inc.
Retained Causes of Action Listing
Claims Related to Potential Avoidance of Preposition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Jive Software | 915 SW Stark Street Suite 200 | | | | Portland | OR | 97205 | USA |
| John Joven | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |
| Johns Ben / Johns Benjamin | 2235 Banbury Circle | | | | Roseville | CA | 95661 | USA |
| Johnson Design And Construction Inc. | 4830 Cable Atto, Suite G | | | | Camarillo | CA | 93012 | USA |
| Jones, David | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |
| Jordan, Daniel J | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |
| Joseph David Construction & Contracting Co.,Inc. | 405 Pennsylvania Avenue | | | | Linden | NJ | 07036-2870 | USA |
| Joseph Mantisi | 9 Kimberly Ann Dr. | | | | Rochester | NY | 14606 | USA |
| Joyce/Dayton Corp. | PO Box 635789 | | | | Cincinnati | OH | 45263-5789 | USA |
| Juan Katz Azqueta Notario | C/ Velazquez 112-3ª | | | | MADRID | | | Spain |
| Julie Blunden | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |
| Kalameka, Natalie | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |
| Kane, Sara | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |
| K-Designers | 2440 Gold River Rd | Ste 1 | | | Gold River | CA | 95670 | USA |
| Kelly Akonkalkulos Funding LLC | 999 West Big Beaver Road | | | | Troy | MI | 48084 | USA |
| Kelly, Matthew D | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |
| Khalifeh & Partners Lawyers | Attn: Attorney Handling SunEdison matters | Khalifeh Complex | Ibn Arabi St 3 | | Seoul | KR | 11181 | Jordan |
| Kim & Chang | Nanja-dong Jongno 60223 | | | | Seoul | KR | 110720 | South Korea |
| Kingsbridge Holdings LLC | 150 N Field Drive Suite 195 | | | | Lake Forest | IL | 60045 | USA |
| Kipp Zonen Usa Inc | 125 Wilbur Place | | | | Bohemia | NY | 11716 | USA |
| KI Power Center Corp | 300 North LaSalle | | | | Chicago | IL | 60654 | USA |
| Kitchens Law Group, P.C. | 425 Preston Street | | | | Boston | MA | 02116 | USA |
| Klb Group Performance Everyday, S.L. | dba KLB Group | Avda. Cari Fatjo del Aurona, 9, planta 4 | | | Santa Ciugat del Valles | | 08074 | Spain |
| Knowlton Farm Nominee Trust | 43 Estabrook Ave. | | | | Grafton | MA | 01519 | USA |
| Koh Boon Hock | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |
| Kohteipete Gopalal | 3001 Winchester Cir | | | | Redwood City | CA | 63141 | USA |
| Kumar, Sanjeev* | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |
| Kunderer, Anthony J | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |
| Kusila, Robert A | 7700 N. 12th Place | | | | Phoenix | AZ | 85020 | USA |
| Ky Huynh | 316 Castelino Drive | | | | San Jose | CA | 95136 | USA |
| La Flash Consulting LLC | Harold O. LaFlash | 326 Denton Ct. | | | Pleasanton | CA | 94566 | USA |
| LA Power Center Corp | 9862 Glenoaks Blvd | | | | Sun Valley | CA | 91352 | USA |
| La Power Center Corp - Authorized Installer-Solar | 9862 Glenoaks Blvd | | | | Sun Valley | CA | 91352 | USA |
| LA Solar Group, Inc | 16238 Raymer St | | | | Los Angeles | CA | 91406 | USA |
| Lachance, Barrett | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |
| Lafayette Center LLC | 2 Chabot St | | | | Westbrook | ME | 04092 | USA |
| Larkin, Daniel | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |
| Latin America Power Holding Bv | Cerro el Plomo 5680 | Piso 12 Oficina 122 | Las Condes | | Santiago | | | Region Metropolitana Chile |
| Lauritsen, Anna | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |
| Law Office Of Melissa Harms | Attn: Attorney Handling SunEdison matters | 7 Larkspur Landing Cir #199 | | | Larkspur | CA | 94939 | USA |
| Lazarus, Rebecca | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |
| Lbf-54, Lc | 4565 Lake Creek Farms Rd. | | | | Heber City | UT | 84032 | USA |
| Leija Consulting | 111 Chester Avenue | | | | Toronto | ON | M4K2Z8 | Canada |
| Leblanc, Arthur | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |
| Lee L. Koppelman, Jr. | 45737 Pelican Lane | | | | Cleveland | MO | 56017 | USA |
| Leong, Angie | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |
| Leschaco Inc | 15753 Vintage Parkway W Ste 195 | | | | Houston | TX | 77032 | USA |
| Lewis, Nathan | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |
| Leyden, Thomas | 1901 W Cypress Creek Road Ste 600 | | | | Fort Lauderdale | FL | 33303 | USA |
| Liberty Power-Nvt | 1650 S Dixie Hwy | | | | Philadelphia | PA | 19192 | USA |
| Life Insurance Company Of North | 88293 Expedite Way | | | | Chicago | IL | 60695-0001 | USA |
| Linde Electronics | 88293 Expedite Way | | | | Chicago | IL | 60695-0001 | USA |
| Linde Electronics And Specialty Gas | 88293 Expedite Way | | | | Chicago | IL | 60695-0001 | USA |
| Linton, Robert | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |
| Little, Paul | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |
| Loxton Companies LLC | 7 Times Square Tower Ste 3802 | | | | New York | NY | 10036 | USA |
| Leiqo Consulting | 2 Hudson Place Floor 6 | | | | Hoboken | NJ | 07030 | USA |
| Locus Energy, LLC | 229 Vesley Park Drive | | | | Centereach | NY | 11720 | USA |
| Long Island Solar Solutions Inc | 391 Taylor Blvd Ste 120 | | | | Pleasant Hill | CA | 94523 | USA |
| Lookingpoint Inc | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |
| Lopez, Juan A | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |
| Lori Erickson | Collector | PO Box 5418 | | | St. Louis | MO | 63141 | USA |
| Los Angeles County Tax | 6920 NE 42nd Ave | | | | Portland | OR | 97286 | USA |
| Lovett Inc | 1347 Tawn Rd. | | | | Alpine | CA | 91901-3853 | USA |
| LP David Engineers & Contractors Inc. | 67 Coddington Street | Suite 24 | | | Quincy | MA | 02169 | USA |
| Lucas Environmental, LLC | 2395 Fremont Street | | | | Las Vegas | NV | 89104 | USA |
| Lvnet LLC | 674 Rancheros Dr | | | | San Marcos | CA | 92069-3005 | USA |
| M Bar C Construction Inc. | Attn: Shannon Nieetas | | | | Minneapolis | MN | 55422-4817 | USA |
| Maciunew, Aaron | 700 Meadow Ln N | | | | St. Louis | MO | 63135 | USA |
| Madison Dearborn Partners, LLC and other shareholders | 70 W Madison St | #4600 | | | Chicago | IL | 60602 | USA |
| Majiga, Jithender | 2 CityPlace Drive | | | | St. Louis | MO | 63141 | USA |

**SunEdison Inc.**
**Retained Causes of Action Listing**
**Claims Related to Potential Avoidance of Preposition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code**
**DRAFT as of 7/6/17**

| Third Party | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| Makani Nui Associates, LLC | 2158 MAIN STREET | SUITE 202 | | WAILUKU | HI | 96793 | USA |
| Maneevieta Siat* | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Manufacturas Braux S.L. | Paseo Arco de Ladrillo, 88 planta 1 | | | Valladolid | | 47008 | Spain |
| Maricopa County | 501 N 44th Street | Suite 2 | | Phoenix | AZ | 85008 | USA |
| Mark Group Management | 70 Boston Road | | | Leicester | | LE4 1AW | United Kingdom |
| Marshall & Stevens Inc. | 355 S. Grand Avenue, Suite 1750 | | | Los Angeles | CA | 90071 | USA |
| Marshall Hayes | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Martin Truong* | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Martin, Alexander | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Martinez Acosta, Armando | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Martinez Enriquez, Francisco J | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Masek, Michael J | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Matheson, George Ed | P.O. Box 1406 | | | Anahuac | TX | 77514 | USA |
| Matias, Tiara F | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Mattioli, Cory Mitchael | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Matthew Herzberg* | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Matticoli, Michael | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Mawdsley, Luke | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Mcann, Craig | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Mccarthy Building Companies Inc | Companies Inc | 1341 North Rock Hill Road | | St. Louis | MO | 63124 | USA |
| Mcconly, Brian | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Mcgaughy, Derrick S | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Mchugh, Michael W | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Mclaughlin, Rachel | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Mcmillen, Jeffrey | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Mentz (Us) Inc. | 4 Embarcadero Ctr Ste 400 | | | San Francisco | CA | 94111 | USA |
| Meridian Imaging Solutions | 5775 General Washington Drive | | | Alexandria | VA | 22312 | USA |
| Merrilees, Craig | 366 6th St. | | | Lake Oswego | OR | 97034-2933 | USA |
| Messer, Shane | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Michael A Rast | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Michael Alvarez | P. O. Box 1530 | | | Ross | CA | 94957 | USA |
| Microsoft Licensing Gp | c/o Bank of America | Attn: Lockbox 842467 | 195 N. Stemmons Fwy, Ste 51 | Dallas | TX | 75207 | USA |
| Mike Lyczak | 7405 Chelsea Ridge | | | Riverside | CA | 92506 | USA |
| Mike Owen Fabrication, Inc. | 144 E. Norris Rd. | | | Bakersfield | CA | 93308 | USA |
| Miller Bros Solar LLC | 301 Alan Wood Road | | | Conshohocken | PA | 19428 | USA |
| Mobile Mini, Inc. | 4445 San Houston Pkwy S | | | Pasadena | CA | 91185-7144 | USA |
| Mobile Modular | 211 N. 13th Street | | | Pasadena | CA | 19107 | USA |
| Modsolar LLC | Dept 12 | | | Philadelphia | PA | 19107 | USA |
| Modular Space Corporation | 12603 Collection Center Dr | | | Chicago | IL | 60693 | USA |
| Monroe, Brian | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Mooore Mitrell LLC | 2002 Richard Jones Rd A307 | | | Nashville | TN | 37215-9998 | USA |
| Moore-Morell, LLC | 2002 Richard Jones Rd, Suite 307A | | | Nashville | TN | 37215-9998 | USA |
| Morrell Family Trust | c/o Shoreline Law Corp. | Attn: Andrew Pauly | 1299 Ocean Ave, Ste 4, | Santa Monica | CA | 90401-1007 | USA |
| Morrison Construction | 700 Meadow Lane N | | | Minneapolis | MN | 55422 | USA |
| Mount Saint Mary's Abbey | 300 Arnold Street | | | Wrentham | MA | 02093 | USA |
| My Alternative Energy | Main Road No. 2 | Urja Bhawan | Shivaji Nagar | Bhopal | Madhya Pradesh | 462016 | India |
| Mx Joint GmbH Ltd | The Pines, Halls Ln | | | Rodney Stoke | Cheddar | BS27 3UW | United Kingdom |
| Mulakhu, Thomas | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Multnomah County Tax Collector | Assessment, Recording & Taxation | P.O. Box 2716 | | Portland | OR | 97208-2716 | USA |
| Murdock, Wade | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| My Le | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| My Nguyen | 4297 Delacroix Court | | | San Jose | CA | 95135 | USA |
| Nagase America Corporation, California Branch | 2881 Lakeside Drive Suite 320 | | | Santa Clara | CA | 95054 | USA |
| Nageswara Kisla | 1000 South St | | | Pasadena | CA | 91030 | USA |
| Namaste Solar | 475 Broadway St. | | | Boulder | CO | 80305 | USA |
| National Grid | Massachusetts Electric Company | 4 Sylvan Road | | Waltham | MA | 02451 | USA |
| Negratín Renewable SI | C/ Cazlona 14, 7gno. Ind. Juncaril | | | Peligros | | 18210 | Spain |
| Next Solar Power | 7 Li Hsin 2nd Rd | Hsinchu Science Park | | Hsinchu | | 30078 | Taiwan |
| Neva Corp | 11350 Brittmoore Park Dr | | | Houston | TX | 77041 | USA |
| Next Phase Solar Inc. | 2802 | | | Berkeley | CA | 94710 | USA |
| NexTracker, Inc. | 6200 Paseo Padre Pkwy | | | Fremont | CA | 94555 | USA |
| Nguyen, My | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Nice Payroll Pte Ltd | 02-01 One Fullerton | | | Singapore | SG | 049213 | Singapore |
| Nisholski, Norman | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| Nmtg Financial Services Inc | 10 Westview Dr | | | Danbury | CT | 06810 | USA |
| North Kern State Prison | 2737 W Cecil Ave | | | Delano | CA | 93215 | USA |
| Northern States Metals | Post Office Box 285 | | | Brattleboro | VT | 05320-0285 | USA |
| Nova Partners Group Inc | 1890 Water View Lane | | | Suwanee | GA | 30024 | USA |
| Novak, Lawrence R | 2 Citiplace Drive | | | St. Louis | MO | 63141 | USA |
| NV Construction Inc. DBA GNRG Solar | 15033 Califa St | | | Van Nuys | CA | 91411 | USA |
| NY State Processing Center | State Processing Center | PO Box 61 | | Albany | NY | 12261 | USA |

**SunEdison Inc.**
**Retained Causes of Action Listing**
**Claims Related to Potential Avoidance of Preposition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code**
**DRAFT as of 7/6/17**

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Nyewarie, Prosper | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| NYSE Market | 5560 New North Drive | | | | Atlanta | GA | 30328 | USA |
| Oak Leaf Energy Partners Ohio, LLC | Attn: President or General Counsel | 2645 E 2nd Ave | | | Denver | CO | 80206-4752 | USA |
| O'Brien, Kelly | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| OJ AnalytiqAlyStem Inc. | 1 International Drive | | | | Rye Brook | NY | 10573 | USA |
| Olmsted, Nicholas R | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Omni Logistics, Inc. | 15912 International Plaza Drive | | | | Houston | TX | 77032 | USA |
| Omni Valley Construction Corp | 9042 Independence Ave | | | | Canoga Park | CA | 91304 | USA |
| ON Search Partners | 6240 SOM Center Rd Suite 230 | | | | Solon | OH | 44139 | USA |
| Oneenergy Development, LLC | 101 Yesler Way | Suite 41 | | | Seattle | WA | 98104 | USA |
| OnlyXr1Ltd Ltd | 1075 Adams Street | | | | Denver | CO | 80206 | USA |
| Orbis Terrarum Projects | C/Osnio 20 P-3, 1-6 | | | | Madrid | | 28017 | Spain |
| Otoole Design Associates | 2150 Schuetz Rd Suite 205 | | | | Saint Louis | MO | 63146 | USA |
| Ori Nominee Of State Teachers Retir | Retirement System | P.O. Box 6313176 | | | Cincinnati | OH | 45263-3176 | USA |
| ORI Nominee of State Teachers Retirement System | Retirement System | P.O. box 6313176 | | | Cincinnati | OH | 45263-3176 | USA |
| Oxford Global Resources, Inc. | PO box 3256 | | | | Boston | MA | 02241-3256 | USA |
| Pacific Gas And Electric Company | 77 Beale St | | | | San Francisco | CA | 94105 | USA |
| Pacific Industrial Electric | PO box 9788 | | | | Brea | CA | 92822-9788 | USA |
| Pacificorp | 825 NE Multnomah St. | | | | Portland | OR | 97232-2135 | USA |
| Pagliarulo, Laura | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Pakozy Orilik Avukat Burosu | Sun Plaza Bilim Sok No:5 Kat:14 | Osgood 59F223 | Ste 3 | | Maslak | | 34398 | Turkey |
| Panel Claw, Inc. | 1600 | | | | North Andover | MA | 01845 | USA |
| Panteli, Kristian | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Paredes, Ismael | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Park, Robin | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Parhusantho Shankar Gopalan | 2 Cityplace Drive | Ste. 8-433 | | | St. Louis | MO | 63141 | USA |
| Patterson Consulting, Ltd. | 2112 W. Galena Blvd. | | | | Aurora | IL | 60506 | USA |
| Paul D. Newvold | 3995 Quasa Ave. | | | | Watertown | MN | 55388 | USA |
| Paul Gaynor | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Paul Gendron | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Pavai E Ansaldo Studio Legale | Dell'Annunciata, 7 | | | | Milano | MI | 20121 | Italy |
| Pc Housing Inc | 8525 Camino Santa Fe Ste G | | | | San Diego | CA | 92121 | USA |
| Perkin Elmer | 13631 Collections Center Dr | | | | Chicago | IL | 60693-0136 | USA |
| Peter Blackmore* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Peterson, Karen | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Pierce, Spencer Marie | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Pinient Motorcos | 50/7 Central Plaza, 18 Harbour Road | | | | Hong Kong | | | Hong Kong |
| Plaisted, Joshua | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Plymouth Sand & Gravel, LLC | 61 Carver Dr | | | | Plymouth | MA | 02360 | USA |
| Polk County Tax Collector | Clark, Campbell, Lancaster & Munson, P.A. | Attn: Tim Campbell | 5 South Florida Avenue, Suite 8 | | Lakeland | FL | 33801 | USA |
| Pippn, Steven A. | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Port Terminal Railroad | 8914 Manchester St | | | | Houston | TX | 77012 | USA |
| Portland Railroad | 2 World Trade Ctr | | | | Portland | OR | 97201 | USA |
| Power Electronics Corp. | Irene Sanhermelando Rodriguez | Leonardo Da Vinci 24-26, P.T. Paterna | | | Valencia | | 46980 | Spain |
| Power Electronics Corp, Uk Ltd. | Irene Sanhermelando Rodriguez | Leonardo Da Vinci 24-26, P.T. Paterna | | | Valencia | | 46980 | Spain |
| Power Electronics Usa, Inc. | Irene Sanhermelando Rodriguez | Leonardo Da Vinci 24-26, P.T. Paterna | | | Valencia | | 46980 | Spain |
| Power Donleiel | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Powerguard Speciality Insurance Ser | 135 Main Street 21St Floor | | | | San Francisco | CA | 94105 | USA |
| Prater, Paula | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Prime Source Solar LLC | 7 Cedar Street | | | | Ramsey | NJ | 07446 | USA |
| Pro Line Shipping Inc | 9943 Buchan Place | | | | El Monte | CA | 91733 | USA |
| Pro Tech Energy Solutions LLC | 215 Executive Drive | | | | Moorestown | NJ | 08057 | USA |
| Prologis Perth Amboy Associates, LLC | Pier 1, Bay 1 | Ontinyent | | | San Francisco | CA | 94111 | USA |
| Prosolia Siglo Xxi | Pol. Ind. San Vicont Ctra. | | | | San Vicente | | 46670 | Spain |
| Prpic, Christopher | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Psrj Holdings LLC | 12500 Baltimore Ave | | | | Beltsville | MD | 20705 | USA |
| Public Service Electric & Gas Company  Attention: Graj Pizarek | Company Attention: Graj Pizarek | 8 Park PL, MC T-8 | | | Newark | NJ | 07102 | USA |
| Purrtgain, Steven T | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Pure Power Systems, Inc. | 50 Harrison St STE 210 | Ste 2 | | | Hoboken | NJ | 07030-6087 | USA |
| PV Guru Inc. | 1444 17th St | | | | Santa Monica | CA | 90404 | USA |
| Qe Solar LLC | 16 South Ave West, # 207 | P.O. Box 847275 | | | Cranford | NJ | 07016 | USA |
| Quanta Power Generation, Inc. | Bank of America | | | | Dallas | TX | 75284-7275 | USA |
| Quantum Utility Generation, LLC | 1401 McKinney St # 1880 | | | | Houston | TX | 77010 | USA |
| Quick Systems Inc. | 1400 Oakmont Pl | | | | Pittsburg | CA | 94565 | USA |
| R. M. Young Company | 2801 Aero Park Drive | NW, Suite 2 | | | Traverse City | MI | 49686 | USA |
| Radiance Solar, LLC | 916 Joseph E. Lowery Blvd. | | | | Atlanta | GA | 30318 | USA |
| Raeder, Stephen | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Raghunathan, Rohini | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Randy W. Davis* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Rbi Solar Inc | 5513 Vine Street | 1863 W Alexander St | | | Cincinnati | OH | 45217 | USA |
| Rc Hunt Electric Inc. | Attn: Jeff Kuehndall | 1863 W Alexander St | | | West Valley City | UT | 84119-2038 | USA |

SunEdison Inc.
Retained Causes of Action Listing
Claims Related to Potential Avoidance of Preposition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

| Third Party | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| Realfragmatrate Inc | 2041 Rosecrans Suite 320 | | | El Segundo | CA | 90245 | USA |
| Rebecca Cranna* | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Recchia, Steven | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Reckord, Kevin J | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Red River Island | c/o William R. Finkelstein | Dykema Cox Smith | 1717 Main Street Suite 42 | Dallas | TX | 75201 | USA |
| Red River Island View LLC | 1125 Ocean Ave. | | | Lakewood | NJ | 08701 | USA |
| Redtail Systems LLC | 2384 Spruce St, STE A | | | Boulder | CO | 80302 | USA |
| Redmond, Christian D | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Regus Management LLC | 15305 Dallas Parkway Suite Addico | 91 Main St. | | Dallas | TX | 75202 | USA |
| Reliant Labs, Inc. | 925 Thompson Place | | | Sunnyvale | CA | 94085 | USA |
| Renewable Energy Test Center | Attn: President or General Counsel | 46457 Landing Parkway | | Fremont | CA | 94538 | USA |
| Renfert, Christine J | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Resor N.V. | Attn: Attorney Handling Sunfidison matters | PO Box 75965 | | Amsterdam | | | The Netherlands |
| Rotc, LLC | 46457 Landing Parkway | | 17 AZ | Fremont | CA | 94538 | USA |
| Revelation Solar Panel | Gemini Building Femi Avenue | 6185 Magnolia Ave., Ste 26 | | Riverside | CA | 92506 | USA |
| Ricardo Aea Ltd | 8 Warner Street | | | Harwell | | OX110DB | United Kingdom |
| Richard F Greene And Barbara A | 2 Cityplace Drive | | | Belchertown | MA | 01007 | USA |
| Richardson, Don D | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Riggs Stickler & Co Inc | P.O. Box 17592 | | | Chicago | IL | 60617592 | USA |
| Rik Gashtur* | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Ritch, Mueller, Heather Y Nicolau | Blvd Manuel Avila Camacho 24 | Piso 2 Lomas De Chapultepec | | Mexico City | | | Mexico |
| Robert M. Bullard* | 209 Mount Vernon Ave, | | | Chestertown | MD | 21620 | USA |
| Roger B. Brown | 3 Hickory Grove | | | Macomb | IL | 61455 | USA |
| Rohn, Matthew N | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Rosales, Kevin D | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Rounds, Colin | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Rubioth, Marc | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Ruffell, Michael Lee | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Russell, Miles | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Russo, Stefano M | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| S3 Power | PO Box 856 | | | Norwood | MA | 00062 | USA |
| Safeco Electric Inc. | 301 Toland Street | | | San Francisco | CA | 94124 | USA |
| Safway Services LLC | P.O. Box 843766 | | | Los Angeles | CA | 900843766 | USA |
| Salehian, Afshin | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Samuel Molanahan | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| San Bernardino County Tax Collector | Collector | 172 W. Third Street, First Floor | | San Bernardino | CA | 924150360 | USA |
| Sankaran, Ravi | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Santerno Inc, Mss | 2905 International Pkwy | | | Virginia Beach | VA | 23452 | USA |
| Sasan Armajoour | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Scher, Clifford B | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Schneider, Cody | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Schneiders & Schneiders | 779 Washington St | | | Canton | MA | 02021 | USA |
| School Project For Utility Rate Reduction ("Spurr") | 313 West Winton Ave. | | | Hayward | CA | 945441136 | USA |
| Schulte, Lynette Michele | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Schweitzer Engineering Lab Inc | 2350 NE Hopkins Court | | | Pullman | WA | 99163 | USA |
| Scott Edwards | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Sebastian Diedrikser* | 3143 S Burnside Ave | | | Gonzales | LA | 70737 | USA |
| Seprotech Corp | 2660 S Tenskep | | | Yuma | AZ | 85365 | USA |
| Serrano, Manuel Misael | 225 Bath Street | | | Glasgow | | G2 462 | United Kingdom |
| Sgovimergy Ltd | c/o Prakash Inc. | 45 Montbrook Lane | | Knoxville | TN | 07919000 | USA |
| Shafer Landfill Trust | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Shah, Anish | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Shah, Pravav | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Shane Cohen | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Shankul, Jason | 100 Technology Drive | | | Manchester | | M020 1UR | United Kingdom |
| Shickley, Angela Sue | 750 Richardson Road | | | Bladenboro | NC | 28320 | USA |
| Shil, Cody | No. 8. Industrial East Road 2 | Hsinchu Science Park | | Hsinchu | | 30078 | Taiwan |
| Shine Up Solar LLC | 4177 Worthington Drive, | | | North Highlands | CA | 95660 | USA |
| Shinsung | 8 Daewoangsangro-ro 355 | | | Bundang-Gu Seongnam-si(yeongju), | | 463-420 | South Korea |
| Shinsung Solar Energy Co.Ltd. | 8 Daewoangsangro-ro 355 | | | Bundang-Gu Seongnam-si(yeongju), | | 463-420 | South Korea |
| Siegel, Thomas | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Siemens Industry, Inc. | 100 Technology Drive | Leigh-Anne Best, Sr. Accountant | | Alpharetta | GA | 30005 | USA |
| Sienrero PK | Princess Road, Princess Parkway | | | St. Louis | MO | 63141 | USA |
| Singletary Farm LLC | 750 Richardson Road | | | Bladenboro | NC | 28320 | USA |
| Sino-American Silicon Products Inc. | No.8. Industrial East Road 2 | Hsinchu Science Park | | Hsinchu | | 30078 | Taiwan |
| Skyblue Solar Wel. | 16 Moorside Rd | | | West Cross | | SA3 5EY | United Kingdom |
| Slack, Stephen | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Sma America, LLC | Attn: Max Mayer | 62 West Oaks Boulevard | Ste 3 | Rocklin | CA | 95765 | USA |
| Smith, David L | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Smith, Ian | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Smith, Patrick S | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Smith, Thomas | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |

**SunEdison Inc.**
**Retained Causes of Action Listing**
**Claims Related to Potential Avoidance of Proposition Transfers Under Sections 362, 502, 510, 542, 543, 548, and 550 of the Bankruptcy Code**
**DRAFT as of 7/6/17**

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Stowline Joint Unified School District/ Attn: Andrea Mendoza | District / Attn: Andrea Mendoza | PO Box 296 | | | Phelan | CA | 92329-6000 | USA |
| Solamerica Energy Services,LLC | 1100 Peachtree Street, Suite 2800 | | | | Atlanta | GA | 30309 | USA |
| Solaredge Technologies, Inc. | 47505 Seabridge Drive | | | | Fremont | CA | 94538 | USA |
| Solaria Corporation | 6200 Paseo Padre Parkway | | | | Fremont | CA | 94555 | USA |
| Solarpack Corporation Technologica | Avenida de Algorta 16, 3º | Getxo | | | Bizcay | | 48992 | Spain |
| Solarview Inc. (Authorized Installer)-Net | 1201 Elm Street, Suite 3200 | | | | Dallas | TX | 75270 | USA |
| Solon Corporation | Attn: President or General Counsel | 695 S. Country Club Road | | | Tucson | AZ | 85756 | USA |
| Solschem Inc. | 1904 Maikawa | | | | Pearland | TX | 77581 | USA |
| Sonnedis France SAS | 5 Rue De La Roberdiere | | | | Rennes | | 35000 | France |
| Southern California Edison | Attn: President or General Counsel | | | | Tulare | CA | 93274 | USA |
| Southwest Quartz, Ltd. | 6024 William Dr # 110 | 2425 S Blackstone Street | | | Georgetown | TX | 78633 | USA |
| Spaktender, Inc. | 16516 Ih Row Suite 900 | | | | Washington | DC | 20006 | USA |
| Spectrum Energy, Inc.- Authorized Installer-Net | 3681 Route 73 S | | | | Maple Shade | NJ | 08052 | USA |
| Speedway Commerce Center LLC | Unit No. 41 | P.O. Box 5 | | | Portland | OR | 97208-5000 | USA |
| Spencer L Graham | 26 Sefton Court | | | | Danville | CA | 94506 | USA |
| Spencer Odgers Ltd | 33 Charlotte Street | | | | London | LO | W1T1RR | United Kingdom |
| SPG Solar, Inc. | 1039 N McDowell Blvd Suite 8 | | | | Petaluma | CA | 94954 | USA |
| Spivey, Charles E | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Spradlin, Randall | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Sicoop Properties, LLC | 50 West Liberty Street, | Suite 9 | | | Reno | NV | 89501 | USA |
| Standard Solar Inc | 1355 Picard Drive | Suite 3 | | | Rockville | MD | 20850 | USA |
| StartUid LLC | 67 Ubi Avenue 1, #05-03, StarHub Gree | | | | Singapore | | | Singapore |
| State Of Hawaii Dept. Of Taxation | Department Of Taxation | PO Box 1425 | | | Honolulu | HI | 96806-1425 | USA |
| Steel Connections, Inc. | 43287 Brookway Dr | | | | Temecula | CA | 92592 | USA |
| Stephen Cerrone | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Stephen O'Rourke | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Stephen, Sunil | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Stephenson, Robert S | 2332 Bazona Road | | | | Lake Jackson | TX | 77566 | USA |
| Stepp, Ryan | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Steven Trahiere* | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Stevens, Douglas | 7766 Arjons Dr | | | | San Diego | CA | 92126 | USA |
| Stewart, Joel | 23975 Park Sorrento Ste 100 | | | | Calabasas | CA | 91302 | USA |
| Stone Roofing Company, Inc. | 787 N. Corey Avenue | | | | Azusa | CA | 91702 | USA |
| Storizaten, Josh | 2989 Vera Cruz | | | | Corona | CA | 92882 | USA |
| Stowell, Don | 2989 Vera Cruz | | | | Corona | CA | 92882 | USA |
| Stowell, Jesse W | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Subco Business Solutions | Rne4-508 | 49 Hopyard Road #1 | | | Pleasanton | CA | 63141 | USA |
| Subsidiaries of Dominion Solar Projects III, Inc. | 120 Tredegar St | | | | Richmond | VA | 23219 | USA |
| Sulivan, Jason Paddock | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Sullivan, Peter | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Sun Power Corporation Systems | Systems | PO Box 6 | | | San Francisco | CA | 94160 | USA |
| Sunit Pleasant Valley SP Owner LLC | 12500 Baltimore Avenue | | | | Beltsville | MD | 20705 | USA |
| SunEdison Semiconductor Ltd. | 501 Pearl Drive | | | | St Peters | MO | 63376 | USA |
| Sunergy Construction Inc. | 2940 Rubicon Blvd | | | | Riverside | CA | 63141 | USA |
| SunErasion Solar Electric, Inc. | 7766 Arjons Dr | | | | San Diego | CA | 92126 | USA |
| Sungard Avantgard LLC | 23975 Park Sorrento Ste 100 | | | | Calabasas | CA | 91302 | USA |
| Sunlight Solar Energy Net | 50 SE Scott St #13 | | | | Portland | OR | 97702 | USA |
| Sunnational Solar Inc-Solar | 1448 Buron Mesa | | | | Lompoc | CA | 93436 | USA |
| Superior Design International, Inc. | 250 International Drive | | | | Williamsville | NY | 14221 | USA |
| SVT 1100 Perimeter Park, LP | 591 West Putnam Ave | | | | Greenwich | CT | 06830 | USA |
| Swift Fin & Security (National) Ltd | 22 Northern Rd., Suite 396 | 64 | | | Salford Quays | | M50131 | United Kingdom |
| Systems Electric LLC | 457 Lummistown Rd. | | | | Cedarville | NJ | 08311 | USA |
| T Guay Enterprises LLC-Solar | 1463 Marchbanks Dr. #2 | | | | Walnut Creek | CA | 94598 | USA |
| Tafa, Chad A | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Tangent Energy Solutions, Inc. | PO Box 1140 | | | | Kennett Square | PA | 19348 | USA |
| Tangoe, Inc | 35 Executive Blvd. | | | | Orange | CT | 06477 | USA |
| Tavrida Electric North America Inc | 115 Glenlen Ave. | | | | Delta | BC | V3M6G9 | Canada |
| Taylor, Brian E | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Taylor, Daniel | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Tech Mahindra Ltd | Plot no.22 to 25 & 27 to 34, | Hyderabad | | | Telangana State | | 500081 | India |
| Technology Finance Corp. C/O Ascentium Capital LLC | P.O. Box 301593 | | | | Dallas | TX | 75303-1593 | USA |
| Tecnologies | 22 Northing Hill Gate, Suite 396 | | | | London | | W011JHE | United Kingdom |
| Teeling, Bruce A | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Teracai Corporation Dept. 116004 | PO Box 5211 | Dept. 1164 | | | Binghamton | NY | 13902-5211 | USA |
| Terra Nova Renewable Partners | 270 First Avenue | | | | Manhattan | NY | 10017 | USA |
| Terrasmart LLC | 9200 Estero Park Commons Blvd | | | | Estero | FL | 33928 | USA |
| Tetra Tech Inc | 350 Indiana Street | | | | Golden | CO | 80401 | USA |
| Texas Commission On Environmental Quality | P.O. Box 13087 | | | | Austin | TX | 78711-3087 | USA |
| The Bloom Organization Of Sj | 1305 Route 73 Suite 106 | | | | Mt. Laurel | NJ | 08054 | USA |
| The Hackett Group | 1001 Brickell Bay Drive Suite 3000 | | | | Miami | FL | 33131 | USA |
| The Hertz Corporation | PO Box 121124 | | | | Dallas | TX | 75312-1124 | USA |

SunEdison Inc.
Retained Causes of Action Listing
Claims Related to Potential Avoidance of Preptition Transfers Under Sections 362, 502, 510, 542, 543, 544, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

| Third Party | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Thiel, James | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Thies Jr, Denzil Delane | 55 9th st | Apt 35 | | | San Francisco | CA | 94103 | USA |
| Thomas A. Coleman | 6684 Old U.S. # 1 | | | | Wadley | GA | 30477 | USA |
| Thomson Reuters Tax Accounting Inc | 1305 Spring Garden St 4th Flr | | | | Philadelphia | PA | 19130 | USA |
| Thomson Weir LLC | 420 W Capitol Avenue | Suite 4 | | | Springfield | IL | 62704 | USA |
| Thresher Communication . & Productivity Inc | 3965 Hamilton Park Dr | | | | San Jose | CA | 95130 | USA |
| Thunderbird Logistics | Interstate Capital Corp. | P.O. Box 915183 | | | Dallas | TX | 75391-5183 | USA |
| Thurmingham, Ravi | 10420 Majestic Court | | | | Parkland | FL | 33076 | USA |
| Thyssen Krupp Elevator | 2801 Network Blvd Ste 700 | | | | Frisco | TX | 75034 | USA |
| Timothy Derrick | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Tjk Hvac & Electrical Services | 13910 N Olive St. | | | | El Mirage | AZ | 85335 | USA |
| TLT Solicitors | Redcliff Street | | | | Bristol | | BS1 6TP | United Kingdom |
| Tomaszewski, John | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Top Quality Services LLC | 66 Melbourne Street | | | | Edison | NJ | 08817 | USA |
| Torchansky, Ilan | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Town Of Andover | Town of Andover - Office of Tax C | P.O. Box 99 | | | Andover | MA | 01810 | USA |
| Town Of Belchertown | Town of Belchertown | P.O. Box 67 | | | Belchertown | MA | 01007-0607 | USA |
| Town Of Berkley Tax Collector | 1 N Main St #3 | | | | Berkley | MA | 02779 | USA |
| Town Of Berlin | 23 Linden St. | | | | Berlin | MA | 01503 | USA |
| Town Of Boston | P.O. Box 981003 | | | | Boston | MA | 02298-1003 | USA |
| Town Of Dartmout | 355 East Central Street | | | | Franklin | MA | 02038 | USA |
| Town Of Franklin | 30 Providence Rd. | | | | Grafton | MA | 01519 | USA |
| Town Of Grafton | Tax Office | P.O. Box 6737 | | | Holliston | MA | 01746 | USA |
| Town Of Holliston Tax Office | P. O. Box 433 | | | | Mattapoisett | MA | 02739 | USA |
| Town Of Mattapoisett | 110 Main Street | | | | Monson | CT | 06073 | USA |
| Town Of Monson | (opt4) Town of Norton- | Tax Collector, 7 East Main St. | | | Norton | MA | 02057 | USA |
| Town Of Norton Tax Collector | 11 Lincoln Street | | | | Plymouth | MA | 02360 | USA |
| Town Of Plymouth | P.O. Box 397 | | | | Fitchburg | MA | 01420 | USA |
| Town Of Rutland | 5 Beach Road | | | | Salisbury | MA | 01952 | USA |
| Town Of Salisbury | PO Box 13 | | | | Springfield | ME | 04487 | USA |
| Town Of Springfield | 1114 Plainfield Pike | | | | Oneco | CT | 06373 | USA |
| Town Of Sterling Tax Collector | 1 Washington Blvd | | | | Robbinsville | NJ | 08691 | USA |
| Township Of Robbinsville | Dba Toyota Financial Services | 191 S. Western Ave. | | | Torrance | CA | 90501 | USA |
| Toyota Motor Credit | PO Box 310300 | Property 7411 | | | Des Moines | IA | 50331-0300 | USA |
| Tr Corona Commerce Center LLC | 433 Edgewoodrd NE | | | | Cedar Rapids | IA | 52499 | USA |
| Transamerica | 2565 St Marys Ave | | | | Omaha | NE | 68101 | USA |
| Transwood Inc | 21 Griffin Road North | | | | Windsor | CT | 06095 | USA |
| TRC Companies, Inc | 5 South Washington Street, #435 | | | | Naperville | IL | 60566 | USA |
| Treasury Alliance Group, LLC | 2365 Iron Point Rd Suite 100 | | | | Folsom | CA | 95630 | USA |
| Trimark Associates, Inc. | 221 E Merano #104E | | | | Wall Township | NJ | 07719 | USA |
| Trinity Solar | 940 Windham CT Ste 7 | | | | Youngstown | OH | 44512-5060 | USA |
| Triple Crown Solar Structures Inc. | 1796 VT Rte 22A | | | | Bridport | VT | 05734 | USA |
| Triple E Farms LLC | 1690 Scenic Ave | | | | Costa Mesa | CA | 92626-1410 | USA |
| True South Renewables Inc | 11 Lorong 3 Toyoh Block D | | | | Singapore | SG | 319579 | Singapore |
| Tual Hi-Rem Gul Jackson Jr | 111 Somerset Road Triplezone | | | | Somerset 13-06 | SG | 238164 | Singapore |
| Tuas Power Supply Pte Ltd | Jackstad! P.C. | | | | St Louis | MO | 63105 | USA |
| Tueth Keeney Cooper Mohan & Jackst AOT P.C. | 221 S Michigan Blvd #104E | | | | Visali | CA | 63141 | USA |
| Tuohane Counsterfax Tax Collector, Rita A. Woodard | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Turner, Tracey L | NO. 38, Heng Tong Road | | | | Shanghai | 2 | 200070 | China |
| Tuv Sud Cert & Test China Shh | 200 Marsoll Court 5th Floor | | | | ROSWELL | GA | 30076 | USA |
| U S Security Associates | 6650 Telecom Dr | | | | Indianapolis | IN | 46278 | USA |
| U.S Customs And Border Protection | Huntingdon Road | Mount Pleasant House | Suite A, Floor 1 | | Cambridge | | CB30RN | United Kingdom |
| UCPC Limited | Inc. 160 First Stamford Place, | Suite 7 | | | Stamford | CT | 06902 | USA |
| United Rentals (North America) Inc. | 50 Washington St. Suite 1000 | | | | Westborough | MA | 01581 | USA |
| United Services Of California | 50 Washington St. Suite 1000 | | | | Westborough | MA | 01581 | USA |
| United Services Of Maryland, Inc. | 50 Washington St. Suite 1000 | | | | Westborough | MA | 01581 | USA |
| United Services, Inc. | 60 Brd of the Allies | | | | Pittsburgh | PA | 15222 | USA |
| United Steelworkers International Union | Principe de Vegara, 187-Plaza | | | | Madrid | 28 | 28002 | Spain |
| Unia Intensenal Abogados S.L.P. | 6650 Telecom Dr | | | | Indianapolis | IN | 46278 | USA |
| US Customs & Border Protection | 3277 Co Rd 69 | | | | Robstown | TX | 78380 | USA |
| U.S Ecology Texas Inc. | 1600 Genessee Ste 700 | | | | Kansas City | MO | 64102 | USA |
| Us Healthworks Medical Group | 200 Mansoll Court | 5th Floor | | | Roswell | GA | 30076 | USA |
| US Security Associates Inc | 9000 Liberty Rd | | | | Houston | TX | 77028 | USA |
| UTS Environmental | 4972 Robert J Mathews Parkway | | | | El Dorado Hills | CA | 95762 | USA |
| V3 Electric | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Valliere, Benjamin | 2 Cityplace Drive | | | | St. Louis | MO | 63141 | USA |
| Van Patten, Marc C | 101 Walnut Street | Post Office Box 9551 | | | Watertown | MA | 02471 | USA |
| Vanasse Hangen Brustlin Inc | 1201 E Findlay Street | | | | Carey | OH | 43316 | USA |
| Vaughn Industries LLC | 2221 N. Sepulveda Blvd, Suite 1800 | | | | El Segundo | CA | 90245 | USA |
| Velocity, Inc. | 10151 Deerwood Park Bldg 200 | | | | Jacksonville | FL | 32256 | USA |
| Vendorpass Inc | PO Box 660794 | | | | Dallas | TX | 75266-0794 | USA |
| Verizon Communications Inc. | | | | | | | | |

SunEdison Inc.
Retained Causes of Action Listing
Claims Related to Potential Avoidance of Prepetition Transfers Under Sections 362, 510, 510, 542, 543, 548, and 550 of the Bankruptcy Code
DRAFT as of 7/6/17

| Third Party | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| Vasyn Inc | 2441 Camino Ramon | Ste 299 | | San Ramon | CA | 94583 | USA |
| Viewpoint Pte Ltd | 200 Bukit Timah Road | | | Singapore | SG | 229862 | Singapore |
| Vikas Desai | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Vision Service Plan | 3333 Quality Dr | | | Rancho Cordova | CA | 95670 | USA |
| Vogt Solar | St Johns Innovation Centre | Cowley Road | | Cambridge | | CB4 0WS | United Kingdom |
| Volpe, Michael | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Vortex Web Solutions LLC | 5465 E Cir 33 | | | Middlebury | IN | 46540 | USA |
| Voss, Stephen | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Vossough, Susan | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Vser Corp | 1050 Satellite Blvd | | | Suwanee | GA | 30024 | USA |
| W. Joe Shaw, Inc. | 4101 W Pine rest Dr. | | | Marshall | TX | 75670 | USA |
| Wade, Kenneth | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Wagoworks, Inc. | Corporate Office | | | San Francisco | CA | 94145-0772 | USA |
| Walters Wholesale Electric Company | 3375 E Slauson Avenue | | | Vernon | CA | 90058 | USA |
| Watson, Michael | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Weber, Andrew J | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| WebFilings LLC Dba Workiva | 2900 University Blvd | | | Ames | IA | 50010 | USA |
| WeGoln Solar Inc. | 1511 E Orangethorpe Ave | | | Fullerton | CA | 92831 | USA |
| Wells Fargo Bank N.A. | P.O. Box 63020 | | | San Francisco | CA | 94163 | USA |
| Wep Tower D Co. LP | c/o Greenberg Traurig, LLP | 2 Park Avenue | | New York | NY | 10166 | USA |
| Werksmans Attorneys | Private Bag 10015, Sandton | | | Gauteng | | 2146 | South Africa |
| West Coast Solar, Inc. | 2155 Elkins Way | | | Brentwood | CA | 94513 | USA |
| Western Oilfield Supply Co | 3404 State Road | | | Bakersfield | CA | 93308 | USA |
| Westland Resources Inc | 4001 E Paradise Falls Drive | | | Tucson | AZ | 85712 | USA |
| Westwood Professional Services Inc. | | 7699 Anagram Drive | | Eden Prairie | MN | 55344 | USA |
| Wfp Tower D Co, L.P. | c/o Greenberg Traurig, LLP | Attn: Daniel J. Ansell & Heath Kushnick | 2 Park Avenue | New York | NY | 10166 | USA |
| WGL Holdings (Washington Gas/ WGSW Inc.) | 101 Constitution Ave NW | | | Washington DC | DC | 20001 | USA |
| White, Chris | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Wholesale Carrier Services Inc | 12150 NW 39th St Ste 101 | | | Coral Springs | FL | 33065-2418 | USA |
| Wilks Lukoff & Bracegirdle LLC | 1300 N Grant Ave #100 | | | Wilmington | DE | 19806 | USA |
| Willard H. Wheeler | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Williams, Garry Ian | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Williamson, Susan | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Wilmington Trust Company Fees And Payments Unit (other than in capacity as Released Party) | Fees And Payments Unit | Post Office Box 8955 | | Wilmington | DE | 19899-8955 | USA |
| Wilson, Joshua | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Winmax Systems Corporation | 1551 McCarthy Blvd. Ste 101 | | | Milpitas | CA | 95035 | USA |
| Wolf, Christina | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Woo Jin An | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Woodlawn Associates | 1 South Wacker Drive, Suite 200 | | | Chicago | IL | 60606 | USA |
| Wooriggn Energy Company Limited | 37, Gwanpyeongjeong | Techno 2-ro | Yuseong-Gu | Daejeon | | | Korea |
| Wright, Kimberly | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Xcel Energy | Attn: President or General Counsel | Post Office Box 9477 | | Minneapolis | MN | 55484-9477 | USA |
| Xi'an LONGi Silicon Materials Corp | No. 388, Middle Changqin Road | | | Chang'an District | Xi'an City | | China |
| XOOM Solar LLC. | 11208 Statesville Rd #200 | | | Huntersville | NC | 28078 | USA |
| Yavapai County Treasurer | 1015 Fair St | | | Prescott | AZ | 86305-1807 | USA |
| Younesizadeh, Sam | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Zack Gerling Creative Associates LLC | 751 Fourth Street | | | Santa Rosa | CA | 95404-4407 | USA |
| Zajicek, Christina | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |
| Zeno Chaos | 2807 Allen ST 730 | | | Dallas | TX | 75204 | USA |
| Zglobal Inc. | 604 Sutter Street, Suite 250 | | | Folsom | CA | 95630 | USA |
| Zhonghuan Semiconductor Corporation | No. 12 East Haitai Road | Huayuan Industrial Park | | Tianjin | | | China |
| Ziemke, Michael | 2 Cityplace Drive | | | St. Louis | MO | 63141 | USA |

## **EXHIBIT 8.1**

**ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

| | Debtor Name | Contract Counterparty | Contract Counterparty Address | City | State | Postal Code | Country (if other than USA) | Description of Contract or Lease | Cure Amount |
|---|---|---|---|---|---|---|---|---|---|
| 1 | SunEdison Products Singapore PTE. Ltd. | Genesem Inc. | 5-30 Juan-Dong, Nam-ku | Incheon | - | 402-835 | South Korea | Capital Equipment Purchase Agreement | TBD |
| 2 | PVT Solar, Inc. | International Fidelity Insurance Company/Allegheny Casualty Company | One Newark Center, 20th Floor | Newark | NJ | 07102-5207 | - | Cash Collateral Escrow Agreement | TBD |
| 3 | SunEdison, Inc. | Druva, Inc. | 150 Mathilda Place, Suite 450 | Sunnyvale | CA | 94086 | - | Druva Customer agreement, licensing of In-Sync software (SaaS) tool through FusionStorm. | TBD |
| 4 | NVT, LLC | Wade, Kathleen | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | Education Reimbursement Agreement | $0 |
| 5 | SunEdison, Inc. | Russell, Stephanie | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | Education Reimbursement Agreement | $0 |
| 6 | SunEdison, Inc. | The Holland Insurance Company Limited | Holland South Africa, PO Box 87419 | Johannesberg | Houghton | 2041 | South Africa | TBD | TBD |
| 7 | SunEdison, Inc. | SunE Green HoldCo10 Limited | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | TBD | TBD |
| 8 | Sun Edison, LLC | Zurich American Insurance Company | 1400 American Lane, Tower 2, Floor 5 | Schaumburg | IL | 60196 | - | General Agreement of Indemnity, October 14, 2010 | $0 |
| 9 | SunEdison, Inc. | Nationwide Mutual Insurance Company | 7 World Trade Center, 37th Floor | New York | NY | 10007-0033 | - | General Agreement of Indemnity, September 28, 2015 | $0 |
| 10 | SunEdison, Inc. | Chubb Companies (as defined in the Plan) | c/o Chubb 436 Walnut Street | Philadelphia | PA | 19106 | - | Chubb Insurance Contracts (as defined in the Plan) | $53,484.41 |
| 11 | SunEdison, Inc. | Argonaut Insurance Company | 77 Water Street, 17th Floor | New York | NY | 10005 | - | General Indemnity Agreement | $0 |
| 12 | NVT Licenses, LLC | One Beacon Surety Group | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | General Indemnity Agreement, February 13, 2014 | $0 |
| 13 | SunEdison, Inc. | Emmanuel Hernandez | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | | General Indemnity Agreement (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 14 | SunEdison, Inc. | Clayton Daley | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | | General Indemnity Agreement (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 15 | SunEdison, Inc. | Georganne Proctor | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | General Indemnity Agreement (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 16 | SunEdison, Inc. | Claire Gogel | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | General Indemnity Agreement (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 17 | SunEdison, Inc. | James Williams | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | General Indemnity Agreement (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |

| # | Entity | Contact | Address | City | State | Zip | Country | Description | Amount |
|---|--------|---------|---------|------|-------|-----|---------|-------------|--------|
| 18 | SunEdison, Inc. | Randy Zwirn | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | General Indemnity Agreement (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 19 | SunEdison, Inc. | Antonio Alvarez | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | General Indemnity Agreement (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 20 | SunEdison, Inc. | Martin Truong | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | General Indemnity Agreement (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 21 | Sun Edison, LLC | David Ringhofer | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | Indemnification Agreement, dated April 6, 2016 (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 22 | Sun Edison, LLC | Gregory Scallen | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | Indemnification Agreement, dated April 6, 2016 (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 23 | Sun Edison, LLC | James L. McNeill | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | Indemnification Agreement, dated April 6, 2016 (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 24 | Sun Edison, LLC | Roberto Alcabao | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | South Korea | Indemnification Agreement, dated April 6, 2016 (subject in all respects to the treatment of Indemnification Obligations under the Plan, including as set forth in Article 8.3 of the Plan) | $0 |
| 25 | SunEdison, Inc. | Frysoft LLC | 900 Middlefield Rd Ste 1 | Redwood City | CA | 94063-1681 | - | Master Consulting Agreement for Microsoft Hybrid Cloud Solution. | TBD |
| 26 | SunEdison, Inc. | Box, Inc. | 21300 Victory Blvd, 12th Floor | Woodland Hills | CA | 91367 | - | Master Services Agreement for cloud storage. 4,000 enterprise account licenses to 11/1/2016 | TBD |
| 27 | SunEdison, Inc. | Blackline | 8501 LaSalle Road, Suite 200 | Baltimore | MD | 21286 | - | Order Form | TBD |
| 28 | SunEdison, Inc. | FrontierMEDEX, Inc. dba UnitedHealthcare Global | 101 California Street | San Francisco | CA | 94111 | - | Participation Agreement (Medical and Security/Access) | $0 |
| 29 | SunEdison, Inc. | ADP, Inc. | 400 W. Covina Blvd., MS 208 | San Dimas | CA | 91773 | - | Payroll Services Agreement | TBD |
| 30 | SunEdison, Inc. | CDW Direct, LLC | 200 N. Milwaukee Avenue | Vernon Hills | IL | 60061 | - | Product Sales Agreement | TBD |
| 31 | SunEdison Products Singapore PTE. Ltd. | Ghosh, Ritwik | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | Relocation agreement | $0 |
| 32 | SunEdison Products Singapore PTE. Ltd. | Guerrero, Ismael | Two CityPlace Drive, 2nd floor | St. Louis | MO | 63141 | - | Relocation agreement | $0 |
| 33 | SunEdison, Inc. | FusionStorm | 124 Grove Street, Suite 311 | Franklin | MA | 02038 | - | Software and cloud services agreement | TBD |
| 34 | SunEdison, Inc. | Iron Mountain Information Management, LLC | 11740 Missouri Bottom Road | Hazelwood | MO | 63042 | - | Storage Agreement | TBD |
| 35 | SunEdison, Inc. | Box, Inc. | 900 Jefferson Avenue | Redwood City | CA | 94063 | - | Storage Service Agreement | TBD |

| # | Debtor | Counterparty | Address | City | State | Zip | Country | Description | Amount |
|---|--------|--------------|---------|------|-------|-----|---------|-------------|--------|
| 36 | SunEdison, Inc. | Iron Mountain Intellectual Property Management, Inc. | PO Box 27131 | New York | NY | 10087-7131 | - | Master Beneficiary Escrow Service Agreement effective May 19, 2015 | TBD |
| 37 | NVT Licenses, LLC | SunE Prestop Park Limited | Eversheds House, 70 Great Bridgewater Street | Manchester | | M1 5ES | United Kingdom | Engineering, Procurement and Construction Agreement | $113,644.40 |
| 38 | NVT Licenses, LLC | Sunsave 17 (Castle Combe) Limited | Eversheds House, 70 Great Bridgewater Street | Manchester | | M1 5ES | United Kingdom | Engineering, Procurement and Construction Agreement | $0 |
| 39 | NVT Licenses, LLC | Cambridge Solar Power Limited | Eversheds House, 70 Great Bridgewater Street | Manchester | | M1 5ES | United Kingdom | Engineering, Procurement and Construction Agreement | $481,032.90 |
| 40 | NVT Licenses, LLC | Sunsave 11 (Wrockwardine Farm) Limited | Eversheds House, 70 Great Bridgewater Street | Manchester | | M1 5ES | United Kingdom | Engineering, Procurement and Construction Agreement | $0 |
| 41 | NVT Licenses, LLC | Balls Wood Solar Limited | FORESIGHT GROUP LLP, The Shard, London Bridge Street | London | | SE1 9SG | United Kingdom | Engineering, Procurement and Construction Agreement | $23,375.81 |
| 42 | NVT Licenses, LLC | PS Manor Farm Solar Limited | FORESIGHT GROUP LLP, The Shard, London Bridge Street | London | | SE1 9SG | United Kingdom | Engineering, Procurement and Construction Agreement | $36,699.23 |
| 43 | SunEdison, Inc. | Continental Casualty Company | Attn: Samantha Tenem & Carolina M. Felix, 333 South Wabash Avenue | Chicago | IL | 60604 | - | EPL Policy (as defined in the Plan) | $0 |
| 44 | SunEdison, Inc. | ACE Insurance Company | Attn: John F. Varley III, 436 Walnut Street | Philadelphia | PA | 19106 | - | D&O Insurance (as defined in the Plan) | $0 |
| 45 | SunEdison, Inc. | National Union Fire Insurance Co. | Attn: Svetlana Novik, 175 Water Street 18th Floor | New York | NY | 10038 | - | D&O Insurance (as defined in the Plan) | $0 |
| 46 | SunEdison, Inc. | Beazley Insurance Company | 1270 Ave of the Americas # 12 | New York | NY | 10020 | - | D&O Insurance (as defined in the Plan) | $0 |
| 47 | SunEdison, Inc. | Freedom Specialty Insurance Co. | Attn: Michael Walder, 250 Greenwich St | New York | NY | 10007 | - | D&O Insurance (as defined in the Plan) | $0 |
| 48 | SunEdison, Inc. | Starr Indemnity & Liability Co. | Attn: Sophie Seibert, 399 Park Avenue, 8th Fl | New York | NY | 10022 | - | D&O Insurance (as defined in the Plan) | $0 |
| 49 | SunEdison, Inc. | National Union Fire Insurance Co. | Attn: Svetlana Novik, 175 Water Street 18th Floor | New York | NY | 10038 | - | D&O Insurance (as defined in the Plan) | $0 |
| 50 | SunEdison, Inc. | Old Republic Insurance Co. | Attn: Michael Early, 133 Oakland Ave | Greensburg | PA | 15601 | - | D&O Insurance (as defined in the Plan) | $0 |
| 51 | SunEdison, Inc. | National Union Fire Insurance Co. | Attn: Svetlana Novik, 175 Water Street 18th Floor | New York | NY | 10038 | - | D&O Insurance (as defined in the Plan) | $0 |
| 52 | SunEdison, Inc. | Beazley Insurance Company | 1270 Ave of the Americas # 12 | New York | NY | 10020 | - | D&O Insurance (as defined in the Plan) | $0 |
| 53 | SunEdison, Inc. | Everest National Insurance Co. | Attn: Brendan J. McCartney, 477 Martinsville Rd | Liberty Corner | NJ | 07938 | - | D&O Insurance (as defined in the Plan) | $0 |
| 54 | SunEdison, Inc. | Endurance American Insurance Co. | Attn: Michael K. Rappaport & John Minett, 333 Westchester Ave | West Harrison | NY | 10604 | - | D&O Insurance (as defined in the Plan) | $0 |
| 55 | SunEdison, Inc. | QBE Insurance Co. | Attn: Underwriting, Wall Street Plaza, 88 Pine Street, 18th Floor | New York | NY | 10005 | - | D&O Insurance (as defined in the Plan) | $0 |
| 56 | SunEdison, Inc. | AXIS Insurance Co. | Attn: Ari Magedoff, 11680 Great Oaks Way, Ste 500 | Alpharetta | GA | 30022 | - | D&O Insurance (as defined in the Plan) | $0 |
| 57 | SunEdison, Inc. | Liberty Insurance Underwriters Co. | 55 Water Street, 18th Fl. | New York | NY | 10041 | - | D&O Insurance (as defined in the Plan) | $0 |
| 58 | SunEdison, Inc. | Endurance American Insurance Co. | Attn: Michael K. Rappaport & John Minett, 333 Westchester Ave | West Harrison | NY | 10604 | - | D&O Insurance (as defined in the Plan) | $0 |
| 59 | SunEdison, Inc. | XL Specialty Insurance Co. | Attn: Marc DeStero, 100 Constitution Plaza #15 | Hartford | CT | 06103 | - | D&O Insurance (as defined in the Plan) | $0 |
| 60 | SunEdison, Inc. | Berkley Insurance Co. | Attn: Helaine Pruzan, 475 Steamboat Rd # 1 | Greenwich | CT | 06830 | - | D&O Insurance (as defined in the Plan) | $0 |
| 61 | SunEdison, Inc. | National Liability & Fire Insurance Co. | Attn: Tania Torno, 3024 Harney Street Management Liability Division, 590 | Omaha | NE | 68131 | - | D&O Insurance (as defined in the Plan) | $0 |
| 62 | SunEdison, Inc. | Aspen American Insurance Co. | Madison Avenue, 7th Floor | New York | NY | 10022 | - | D&O Insurance (as defined in the Plan) | $0 |

| 63 | SunEdison, Inc. | Freedom Specialty Insurance Co. | Attn: Michael Walder, 250 Greenwich St | New York | NY | 10007 | - | D&O Insurance (as defined in the Plan) | $0 |
| 64 | SunEdison, Inc. | Continental Casualty Company | Attn: Samantha Tenerm & Carolina M. Felix, 333 South Wabash Avenue | Chicago | IL | 60604 | - | D&O Insurance (as defined in the Plan) | $0 |
| 65 | SunEdison, Inc. | National Union Fire Insurance Co. | Attn: Svetlana Novik, 175 Water Street 18th Floor | New York | NY | 10038 | - | D&O Insurance (as defined in the Plan) | $0 |

As used herein, the "Plan" means the First Amended Joint Plan of Reorganization of SunEdison, Inc. and its debtor affiliates (collectively, the "Debtors"), filed on June 12, 2017 [Docket No. 3314].

For the avoidance of doubt, assumption of the D&O Insurance and EPL Policy pursuant to Article 8.4 of the Plan and this schedule shall include assumption of all related agreements as provided in Article 8.4 of the Plan.

## EXHIBIT B

**NOTICE OF EFFECTIVE DATE**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

| | |
|---|---|
| Jay M. Goffman | Anthony W. Clark (admitted *pro hac vice*) |
| J. Eric Ivester | One Rodney Square |
| Four Times Square | P.O. Box 636 |
| New York, New York 10036-6522 | Wilmington, Delaware 19899-0636 |
| Telephone: (212) 735-3000 | Telephone:  (302) 651-3000 |
| Fax: (212) 735-2000 | Fax:  (302) 651-3001 |

-and-

James J. Mazza, Jr. (admitted *pro hac vice*)
Louis S. Chiappetta (admitted *pro hac vice*)
155 N. Wacker Dr.
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411

*Counsel for Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | |
| **In re:** | : | **Chapter 11** |
| | : | |
| **SUNEDISON, INC.,** *et al.,* | : | **Case No. 16-10992 (SMB)** |
| | : | |
| **Debtors.**[1] | : | **(Jointly Administered)** |
| | : | |

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); Everstream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE MN Development, LLC (8669); SunE MN Development Holdings, LLC (5388); SunE Minnesota Holdings, LLC (8926); Terraform Private Holdings, LLC (5993); Hudson Energy Solar Corporation (3557); SunE REIT-D PR, LLC (5519); SunEdison Products, LLC (4445); SunEdison International Construction, LLC (9605); Vaughn Wind, LLC (4825); Maine Wind Holdings, LLC (1344); First Wind Energy, LLC (2171); First Wind Holdings, LLC (6257); and EchoFirst Finance Co., LLC (1607).  The address of the Debtors' corporate headquarters is Two CityPlace Drive, 2nd floor, St. Louis, MO 63141.

**NOTICE OF ENTRY OF ORDER CONFIRMING SECOND AMENDED
JOINT PLAN OF REORGANIZATION OF
<u>SUNEDISON, INC. AND ITS DEBTOR AFFILIATES</u>**

**TO ALL CREDITORS, INTEREST HOLDERS, AND OTHER PARTIES IN INTEREST:**

   **PLEASE TAKE NOTICE** that on _____, 2017, the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") entered an order [Docket No. [●]] (the "<u>Confirmation Order</u>") confirming the Second Amended Joint Plan of Reorganization of SunEdison, Inc. and Its Debtor Affiliates (as may be amended, modified, or supplemented from time to time and including all exhibits and supplements thereto, the "<u>Plan</u>"). Copies of the Confirmation Order and the Plan, together with all pleadings and orders of the Bankruptcy Court in the above-captioned chapter 11 cases, are publicly available by accessing the Bankruptcy Court's website, http://www.nysb.uscourts.gov, for a nominal charge (a PACER account is required), or by accessing the website of the Debtors' claims, noticing and balloting agent, Prime Clerk, LLC (the "<u>Administrative Agent</u>"), https://cases.primeclerk.com/sunedison, free of charge.

   **PLEASE TAKE FURTHER NOTICE** that on _____, 2017, the Effective Date of the Plan occurred. All conditions precedent to consummation of the Plan set forth in Article XII therein have either been satisfied or waived in accordance with the Plan and Confirmation Order.

   **PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Plan or the Confirmation Order, all requests for payment of an Administrative Claim must be filed with the Administrative Agent on or before the date that is thirty (30) days after the Effective Date.

   **PLEASE TAKE FURTHER NOTICE** that all final requests for payment of Professional Claims for services rendered to the Debtors from the Petition Date through and including _____, 2017, shall be filed with the Bankruptcy Court on or before the date that is sixty (60) days after the Effective Date.

   **PLEASE TAKE FURTHER NOTICE** pursuant to Article VIII of the Plan, except as otherwise provided in the Plan, each Executory Contract or Unexpired Lease is deemed automatically rejected as of the Effective Date unless any such Executory Contract or Unexpired Lease: (a) is listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" contained in Exhibit 8.1 of the Plan; (b) has been previously assumed by the Debtors by Final Order of the Bankruptcy Court or has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (c) is the subject of a motion to assume or reject pending as of the Effective Date; (d) is an Executory Contract related to any Intercompany Claim; or (e) is otherwise assumed pursuant to the terms of the Plan.

   **PLEASE TAKE FURTHER NOTICE** that, unless otherwise provided by a Bankruptcy Court order, any proofs of Claim asserting Claims arising from the rejection of the

Executory Contracts and Unexpired Leases pursuant to the Plan or otherwise must be filed with the Claims and Solicitation Agent no later than 30 days after the later of the Effective Date or the effective date of rejection.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Article VIII, except as otherwise set forth in the Plan or Confirmation Order, each Executory Contract or Unexpired Lease listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" in Exhibit 8.1 of the Plan are deemed assumed as of the Effective Date, and shall be assumed, or assumed and assigned, as applicable, and shall vest in and be fully enforceable by the Reorganized Debtors or their successors or assignees (if any) in accordance with its terms, except as modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing or providing for its assumption or applicable federal law.  Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated pursuant to the Plan.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving any such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that, unless a counterparty to an assumed Executory Contract or Unexpired Lease filed a proper and timely objection to the Cure Notice or proposed Cure on or before fourteen (14) days after the applicable counterparty was served with a Cure Notice, such counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting, collecting, or seeking to collect any additional amounts relating thereto against the Debtors or the Reorganized Debtors, or the property of any of them.

**PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on the Debtors, Reorganized Debtors, any Holder of a Claim against, or Interest in, the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder or Entity voted to accept the Plan.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Dated: New York, New York
        [●], 2017

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: */s/ DRAFT*_____
    Jay M. Goffman
    J. Eric Ivester
    Four Times Square
    New York, New York 10036-6522
    Telephone: (212) 735-3000
    Fax: (212) 735-2000

    -and-

    James J. Mazza, Jr. (admitted *pro hac vice*)
    Louis S. Chiappetta (admitted *pro hac vice*)
    155 N. Wacker Dr.
    Chicago, Illinois 60606-1720
    Telephone: (312) 407-0700
    Fax: (312) 407-0411

    Anthony W. Clark (admitted *pro hac vice*)
    One Rodney Square
    P.O. Box 636
    Wilmington, Delaware 19899-0636
    Telephone: (302) 651-3000

    *Counsel for Debtors and Debtors in Possession*