SULLIVAN & CROMWELL LLP
John L. Hardiman
Veronica W. Ip
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Fax: (212) 558-3588

*Counsel for TerraForm Global, Inc. and
TerraForm Power, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| SUNEDISON, INC., *et al.*,[1] | ) Case No. 16-10992 (SMB) |
| Debtors. | ) |
| | ) Jointly Administered |

**THE YIELDCOS' RESPONSE TO THE OBJECTION OF CARLOS DOMENECH ZORNOZA AND FRANCISCO PEREZ GUNDIN TO THE DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A) AND 363(B), AND BANKRUPTCY RULES 6004 AND 9019, AUTHORIZING AND APPROVING D&O INSURANCE ALLOCATION AGREEMENT**

TerraForm Global, Inc. ("Global") and TerraForm Power, Inc. ("TERP," and together

with Global, the "Yieldcos") hereby submit this response (the "Response") to the *Objection of*

*Carlos Domenech Zornoza and Francisco Perez Gundin to the Debtors' Motion for Order*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); EverStream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE MN Development, LLC (8669); SunE MN Development Holdings, LLC (5388); SunE Minnesota Holdings, LLC (8926); and TerraForm Private Holdings, LLC (5993). The address of the Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

*Pursuant to Bankruptcy Code Sections 105(a) and 363(b), and Bankruptcy Rules 6004 and 9019, Authorizing and Approving D&O Insurance Allocation Agreement* (the "Objection").

As part of the Response, the Yieldcos rely upon and incorporate by reference the Declaration of Timothy J. Perla (the "Perla Declaration"), a partner of the law firm WilmerHale, filed concurrently herewith. In further support of this Response, the Yieldcos, by and through their undersigned counsel, respectfully represent as follows:

## PRELIMINARY STATEMENT

1. The Objection is based on four false premises: that the D&O Policies (as defined below) cover only unindemnified directors and officers; that Carlos Domenech Zornoza ("Domenech") and Francisco Perez Gundin ("Perez," and together with Domenech, the "Objectors") are unindemnified directors and officers; that the priority of payment provision of the D&O Policies has been triggered; and that the releases contemplated by the SunEdison/Yieldcos Insurance Allocation Agreement (the "Agreement")[2] would release the Objectors' affirmative employment-related claims. In fact:

- The D&O Policies cover unindemnified directors and officers; indemnification obligations of SunEdison, TERP and Global; and securities claims against SunEdison, TERP and Global;

- The Objectors are not unindemnified directors and officers, as Global is a solvent entity which is indemnifying the Objectors with respect to the litigation covered by the Agreement (including defense costs incurred to date);

---

[2] The Agreement is attached as Exhibit 1 to *Debtors' Motion for Order Pursuant to Bankruptcy Code Sections 105(a) and 363(b), and Bankruptcy Rules 6004 and 9019, Authorizing and Approving D&O Insurance Allocation Agreement* (the "Motion") [Docket No. 3979].

- The priority of payment provision of the D&O Policies does not come into play until an amount "due and owing" under the D&O Policies exceeds policy limits, which has not occurred; and

- The plain language of the releases contemplated by the Agreement does not encompass any of the Objectors' purported affirmative claims, and the Objectors, given the opportunity to make that language even clearer on the point, declined to do so.

2. Of the two Objectors, only Domenech is a defendant in any remaining actions covered by the D&O Policies as the only action to which Perez is a party[3] has already been settled using D&O insurance in an amount approved by this Court[4] and only awaits final class action court approval to be fully resolved. Thus, at issue is the objection of one Global former director (and officer) who now and for the foreseeable future has **no** direct right under the D&O Policies to **any** insurance coverage, much less priority of payment – contending that Global should not receive $20 million of otherwise disputed D&O Policy proceeds which Global would use to settle cases against him pursuant to its indemnification obligations. The Objection is not only meritless but self-defeating, since the Agreement eliminates the risk that insureds other than Global and the Objectors could obtain those policy proceeds for themselves. Indeed, if the Objectors were correct that the priority of payment provision has been triggered, the only ones entitled to proceeds of the D&O Policies would be the unindemnified SunEdison officers and directors. Applause, rather than an objection, is in order and, in fact, every other defendant

---

[3] *Chamblee* v. *TerraForm Power, Inc, et al.*, No. 1:16-cv-08039-PKC (S.D.N.Y.).

[4] See *Order Granting Limited Relief From the Automatic Stay* [Docket No. 4008].

SC1:4496337.13

Global director and officer has eagerly signed onto the Agreement. The Objection should be rejected.

**RESPONSE**

**I.    The D&O Policies Do Not Cover Only Unindemnified Directors and Officers.**

3.    The Objectors' characterization of the D&O Policies subject to the Agreement as "Global Side A Policies" is highly misleading. The D&O Policies provide coverage for (1) unindemnified officers and directors of SunEdison, Global and TERP ("Side A Coverage"); (2) the indemnification obligations of SunEdison, Global and TERP to their officers and directors ("Side B Coverage") and (3) securities claims against SunEdison, Global and TERP themselves ("Side C Coverage"). They thus provide A, B and C coverage to three corporate entities and their directors and officers, not simply Side A Coverage for Global's directors and officers. As a result, multiple entities have claims to those insurance proceeds.

4.    The Agreement thus secures for Global unfettered use of $20 million of the proceeds of these shared policies, which it can now use to settle the remaining cases in which its officers and directors, including Domenech (but not Perez) are named as defendants. (Agreement ¶ 3.) Equally importantly, the Agreement ensures that SunEdison's unindemnified directors and officers will not have access to this $20 million and thus cannot exhaust the remaining policy limits through settlements of the claims against them.

**II.    The Objectors Are Not Entitled to the D&O Policies Because They Are Indemnified by Global.**

5.    The Objectors contend that the Court should not approve the Agreement because they are entitled to the proceeds of the D&O Policies that are allocated under the Agreement. The Objectors, however have no interest in the D&O Policies at this time at all. The Side A Coverage that the Objectors purport to be entitled to is limited to "all Loss for which the Insured

-4-

Persons *are not indemnified* by the Company." (ACE Advantage Management Protection Policy Declarations, effective July 15, 2015 through July 15, 2016, § 1.A) (emphasis added).[5] The Objectors do not contest that they are indemnified by Global for any losses they may sustain as a result of being named as individual defendants in the litigation covered by the Agreement and do not assert that any indemnification obligations owed to them are not currently being satisfied. Thus, the Objectors are neither entitled to, nor have any need for, Side A Coverage.

6.      Almost in passing, the Objectors suggest that Global might not be able to indemnify them in the future because its potential insolvency is "an outcome far from remote at the current time." (Objection at 14.)[6] Yet the Objectors present no support for this speculation and do not explain why it would be a logical basis for objecting to the Agreement, which takes $20 million of disputed funds and puts them in Global's coffers for the express purpose of being used to settle claims against officers and directors, including the Objectors. Their speculative argument is much like the one rejected in *In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 53 (S.D.N.Y. 2003), which the court characterized as "akin to a car owner with collision coverage claiming he has the right to proceeds from his policy simply because there is a prospective possibility that his car will collide with another tomorrow."

---

[5]  The ACE Advantage Management Protection Policy Declarations (the "Policy Declarations") are attached as Exhibit A to the Objection.

[6]  Notably, even were Global to become insolvent and therefore unable to comply with its indemnification obligations, nothing in the Agreement prevents the Objectors from obtaining coverage under (i) the $50 million SunEdison Side A Difference in Conditions ("DIC") policies, which provide excess Side A Coverage to unindemnified officers and directors of Global who, like Objectors, served in their positions at SunEdison's direction, or (ii) the $50 million Global Side A DIC policies, which similarly provide excess Side A Coverage to unindemnified officers and directors.

**III.    The Priority of Payment Provision Has Not Been Triggered**

7.      The Objectors' assertion that the Agreement "breach[es] the terms of the payment priority provisions of the D&O Policies by allocating $20 million of the proceeds to Global" (Objection ¶ 30) is based on a complete misreading of those provisions.  Those provisions do not even come into play until "the amount of any Loss which is otherwise due and owing by the Insurer exceeds the then-remaining Limit of Liability applicable to the Loss."  (Policy Declarations § 15.)  The D&O Policies expressly disclaim any obligation of the insurers to consider potential future payment obligations when paying claims, unless the priority of payment clause has been triggered.  (*See id.* § 7.C.)[7]  Here, the liability limit has not been reached—indeed the Agreement exists to allocate remaining funds of approximately $50 million—and nothing is "due and owing" with respect to those remaining funds.  Thus, the priority of payment provisions have not been triggered.

8.      Bankruptcy courts that have examined priority of payment provisions similar to that at issue here agree that they are triggered only when amounts actually owed exceed the policy limit.  *See, e.g.*, *In re Licking River Mining, LLC*, 2016 WL 3251890, at *9 (Bankr. E.D. Ky. June 6, 2016) ("While the Policy provides that the Movants' Coverage A claims will be paid ahead of Debtors' Coverage B claims, the order of payment provisions come into play only when the claims submitted for payment exceed the liability limit.  Thus, until that time, neither party has superior rights to the proceeds."); *In re Health Diagnostic Lab., Inc.*, 551 B.R. 218, 234 (Bankr. E.D. Va. May 12, 2016) ("The order of payments provision in the Insurance Policies applies only in the instance that an actual loss exceeds the policy limits.  Prior to exceeding the

---

[7]  Section 7.C of the Policy Declarations states that "[s]ubject to the terms of Section XV, Payment Priority, the Insurer is entitled to pay Loss as it becomes due and payable by the insurers, without consideration of other future obligations."

remaining available limits of coverage under the Insurance Policies, the Insurer is required to provide coverage for all insureds under the Insurance Policies.  As the claims to date do not exceed the policy limits, the Debtors' current right to proceeds under the Insurance Policies is not subordinated to that of the Individual Insureds.").  Thus the Objectors, who as stated above have no right to payment at all from the insurers at the present time, surely have no priority right and their efforts to take refuge in the unripe priority of payment provisions of the D&O Policies should be rejected.

**IV.    The Objectors' Rights Are Protected Under the Agreement**

9.      Finally, the Objectors complain that the Agreement could result in the release of their own, separate affirmative employment-related claims against the Yieldcos, their directors and officers, and certain SunEdison directors and officers.  There is no basis for this concern.  The Agreement expressly requires that the terms and releases of any settlement of a Remaining Global Claim (as defined in the Agreement) "shall be in a form customary and appropriate for the type of claim being settled" (Agreement ¶ 8), and it is neither customary nor appropriate to include in a securities litigation settlement agreement a provision that the individual defendants must release employment-related claims against their former employer.  Indeed, TERP's settlement agreement in *Chamblee* has already been signed and contains no such provision.

10.     Besides being without merit, the Objection is also disingenuous.  During the negotiations of the Agreement, Global's counsel expressly told counsel for the Objectors that Global had no intention of seeking such a release in a settlement of the Remaining Global Claims, and invited counsel for the Objectors to propose additional language if the Objectors felt additional language was needed to make that point even clearer.  (*See* Declaration of Timothy J. Perla (the "Perla Declaration") ¶¶ 3-5.)  Counsel for the Objectors did not respond to this

invitation (*see id.* ¶ 6), an omission that could only be interpreted as acknowledgement that the Agreement in fact proposed no such release.[8]

11.  It should be also noted that nothing in the Agreement requires the Objectors to sign a settlement of Remaining Global Claims, in which event there is no possibility of their Affirmative Claims being released.

**WHEREFORE**, the Yieldcos respectfully request that the Court grant the relief requested in the Motion and such other and further relief as it deems just and proper.

Dated: September 27, 2017
   New York, New York

                                       SULLIVAN & CROMWELL LLP

                                       By: /s/ John L. Hardiman
                                       John L. Hardiman
                                       Veronica W. Ip
                                       125 Broad Street
                                       New York, New York 10004
                                       Telephone: (212) 558-4000
                                       Fax: (212) 558-3588

                                       *Counsel for TerraForm Global, Inc. and TerraForm Power, Inc.*

---

[8] To the extent the Objectors are claiming that the Agreement might prejudice them by reducing the amount of coverage available to the defendants they have sued on their Affirmative Claims (*see* Objection ¶ 14), this argument is not viable. A plaintiff asserting unliquidated claims against insureds in a pending lawsuit has no right to object to payments to the insureds by the insurers. *See, e.g., In re Laminate Kingdom LLC*, 2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar. 13, 2008) (rejecting claim to insurance proceeds of bankruptcy Trustee as plaintiff against others; "the Code provides the Trustee no different status than a non-bankruptcy plaintiff with an unliquidated claim which may be covered by insurance proceeds"); *In re Allied Digital Technologies Corp.*, 306 B.R. 505, 513 (Bankr. D. Del. Mar. 16, 2004) ("The Trustee's real concern is that payment of defense costs may affect his rights as a plaintiff seeking to recover from the D&O Policy rather than as a potential defendant seeking to be protected by the D&O Policy. In this way, the Trustee is no different than any third party plaintiff suing defendants covered by a wasting policy. No one has suggested that such a plaintiff would be entitled to an order limiting the covered defendants' rights to reimbursement of their defense costs.").