## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| SUNEDISON, INC., *et al.*, | ) | Case No. 16-10992 (SMB) |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |

## FIFTH & FINAL FEE APPLICATION OF LAZARD FRÈRES AND CO. LLC, AS INVESTMENT BANKER TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD MAY 3, 2016 THROUGH DECEMBER 29, 2017

| | |
|---|---|
| Name of Applicant: | **Lazard Frères & Co. LLC** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **July 8, 2016 *nunc pro tunc* to May 3, 2016** |
| Interim Period for which compensation and/or reimbursement is sought: | **August 1, 2017 through December 29, 2017** |
| Interim Amount of compensation sought as actual, reasonable, and necessary: | $8,237,500.00 |
| Interim Amount of Expenses sought as actual, reasonable, and necessary: | $0.00 |
| Final Period for which compensation and/or reimbursement is sought: | **May 3, 2016 through December 29, 2017** |
| Interim Amount of compensation sought as actual, reasonable, and necessary: | $11,947,370.97 |
| Interim Amount of Expenses sought as actual, reasonable, and necessary: | $27,001.71 |
| Less: Amounts Paid to Date: | ($3,375,485.58) |
| Net Amount of Compensation Requested: | **$8,598,887.10** |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International Inc. (4551); SUNE ML1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A). The address of Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

This is a:  ___ monthly     ___ interim     x  final application

The total time expended for fee application preparation was approximately 1.5 hours.

### FEE SUMMARY – 5th Interim Period

| Date Filed | Period Covered | Requested | | Paid | | Balance Due (incl. holdbacks) |
|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses | |
| Current | 08/01/17-12/29/17 | $8,237,500.00 | $0.00 | $0.00 | $0.00 | $8,237,500.00 |
| **Total** | **08/01/17-12/29/17** | **$8,237,500.00** | **$0.00** | **$0.00** | **$0.00** | **$8,237,500.00** |

### FEE SUMMARY – Petition Date through 5th Interim Period

| Date Filed | Period Covered | Requested | | Paid | | Balance Due (incl. holdbacks) |
|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses | |
| 08/01/16 | 05/03/16-06/30/16 | $483,870.97 | $23,401.20 | $423,483.87 | $23,401.20 | $60,387.10 |
| 08/30/16 | 07/01/16-07/31/16 | $250,000.00 | $1,088.98 | $225,000.00 | $1,088.98 | $25,000.00 |
| 09/30/16 | 08/01/16-08/31/16 | $226,000.00[2] | $381.45 | $225,000.00 | $381.45 | $1,000.00 |
| 10/31/16 | 09/01/16-09/30/16 | $250,000.00 | $381.04 | $225,000.00 | $381.04 | $25,000.00 |
| 11/30/16 | 10/01/16-10/31/16 | $250,000.00 | $0.00 | $225,000.00 | $0.00 | $25,000.00 |
| 12/23/16 | 11/01/16-11/30/16 | $250,000.00 | $141.25 | $225,000.00 | $141.25 | $25,000.00 |
| 01/26/17 | 12/01/16-12/31/16 | $250,000.00 | $0.00 | $225,000.00 | $0.00 | $25,000.00 |
| 02/28/17 | 01/01/17-01/31/17 | $250,000.00 | $0.00 | $225,000.00 | $0.00 | $25,000.00 |
| 03/31/17 | 02/01/17-02/28/17 | $250,000.00 | $360.63 | $225,000.00 | $360.63 | $25,000.00 |
| 05/11/17 | 03/01/17-03/31/17 | $250,000.00 | $0.00 | $225,000.00 | $0.00 | $25,000.00 |
| 06/02/17 | 04/01/17-04/30/17 | $250,000.00 | $620.15 | $225,000.00 | $620.15 | $25,000.00 |
| 06/30/17 | 05/01/17-05/31/17 | $250,000.00 | $548.32 | $225,000.00 | $548.32 | $25,000.00 |
| 08/01/17 | 06/01/17-06/30/17 | $250,000.00 | $0.00 | $225,000.00 | $0.00 | $25,000.00 |
| 09/07/17 | 07/01/17-07/31/17 | $250,000.00 | $78.69 | $225,000.00 | $78.69 | $25,000.00 |
| Current | 08/01/17-12/29/17 | $8,237,500.00 | $0.00 | $0.00 | $0.00 | $8,237,500.00 |
| **Total** | **05/03/16-12/29/17** | **$11,947,370.97** | **$27,001.71** | **$3,348,483.87** | **$27,001.71** | **$8,598,887.10** |

---

[2] In connection with settlement of dispute over use of DIP facility proceeds or proceeds of DIP collateral or prepetition collateral to pay any fees and expenses (including professional fees) for any challenge of the DIP secured parties' or the prepetition secured parties' liens and claims Lazard has voluntarily agreed to a reduction of its fees for the first interim fee period in the amount of $24,000. This reduction is in addition to other voluntary reductions described herein.

## COMPENSATION BY LAZARD PROFESSIONALS
## AUGUST 1, 2017 THROUGH DECEMBER 29, 2017

| Name of Professional Individual | Position of the Applicant and Area of Expertise | Hourly Billing Rate (including Changes) | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Ken Ziman | Managing Director | n/a | 13.0 | n/a |
| Levi Quaintance | Associate | n/a | 16.0 | n/a |
| Denis Aven | Analyst | n/a | 26.0 | n/a |
| **TOTALS** | | | **55.0** | **$312,500.00**[3] |

[3] In addition the net Monthly Fees requested for the period from August 2017 through December 2017 Lazard is seeking Success Fees as defined in its Engagement Letter date May 3, 2016, as amended by the Retention Order . Please see Exhibit D for a detailed fee calculation.

## COMPENSATION BY LAZARD PROFESSIONALS
## MAY 3, 2016 THROUGH DECEMBER 29, 2017

| Name of Professional Individual | Position of the Applicant and Area of Expertise | Hourly Billing Rate (including Changes) | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Ken Ziman | Managing Director | n/a | 404.0 | n/a |
| Jonathan Mir | Managing Director | n/a | 52.0 | n/a |
| Libby Howard | Vice President | n/a | 110.0 | n/a |
| Levi Quaintance | Associate | n/a | 825.5 | n/a |
| Clifford York | Associate | n/a | 82.0 | n/a |
| Rory Sheppard | Analyst | n/a | 88.0 | n/a |
| Andrew Morton | Associate | n/a | 216.0 | n/a |
| Denis Aven | Analyst | n/a | 647.5 | n/a |
| **TOTALS** | | | **2,426.0** | **$11,947,370.97** |

## COMPENSATION BY CATEGORY SUMMARY
## AUGUST 1, 2017 THROUGH DECEMBER 29, 2017

| Project Categories | Total Hours | Total Fees |
|---|---|---|
| Interface with Professionals, Official Committees, and Other Parties-In-Interest | 27.5 | n/a |
| Business Operations Planning, Monitoring, Reporting and Analysis and Projections | 0.0 | n/a |
| Preparation and/or review of Court Filings | 0.0 | n/a |
| Court Testimony/Deposition and Preparation | 0.0 | n/a |
| Valuation Analysis | 0.0 | n/a |
| Capital Structure Review and Analysis | 0.0 | n/a |
| Merger & Acquisition Activity | 0.0 | n/a |
| Financing including DIP and Exit Financing | 0.0 | n/a |
| General Corporate Finance, Research and Analysis, and Other Due Diligence | 27.5 | n/a |
| Fee Application, Engagement | 4.0 | n/a |
| Employee Retention Program | 0.0 | n/a |
| **TOTAL** | **55.0** | **$312,500.00[4]** |

---

[4] In addition the net Monthly Fees requested for the period from August 2017 through December 2017 Lazard is seeking Success Fees as defined in its Engagement Letter date May 3, 2016, as amended by the Retention Order . Please see Exhibit D for a detailed fee calculation.

**COMPENSATION BY CATEGORY SUMMARY**
**MAY 3, 2017 THROUGH DECEMBER 29, 2017**

| Project Categories | Total Hours | Total Fees |
|---|---|---|
| Interface with Professionals, Official Committees, and Other Parties-In-Interest | 798.5 | n/a |
| Business Operations Planning, Monitoring, Reporting and Analysis and Projections | 207.5 | n/a |
| Preparation and/or review of Court Filings | 19.5 | n/a |
| Court Testimony/Deposition and Preparation | 44.0 | n/a |
| Valuation Analysis | 33.0 | n/a |
| Capital Structure Review and Analysis | 14.0 | n/a |
| Merger & Acquisition Activity | 49.5 | n/a |
| Financing including DIP and Exit Financing | 71.5 | n/a |
| General Corporate Finance, Research and Analysis, and Other Due Diligence | 1,168.5 | n/a |
| Fee Application, Engagement | 20.0 | n/a |
| Employee Retention Program | 0.0 | n/a |
| **TOTAL** | **2,426.0** | **$11,947,370.97** |

## EXPENSE SUMMARY FOR THE FIANL PERIOD
## MAY 3, 2016 THROUGH DECEMBER 29, 2017

| Expense Category | Service Provider (if applicable) | Total Expenses |
|---|---|---|
| Car Services and Taxis | | $4,445.71 |
| Electronic Information | | 268.55 |
| Employee Meals | | 1,222.26 |
| Meals-Meetings/travel | | 573.46 |
| Temporary Wages | | 17.57 |
| Travel | | 20,474.16 |
| **Total Expenses** | | **$27,001.71** |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| SUNEDISON, INC., *et al.*, | ) | Case No. 16-10992 (SMB) |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |

**FIFTH & FINAL FEE APPLICATION OF LAZARD FRÈRES AND CO. LLC,**
**AS INVESTMENT BANKER TO OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION AND**
**REIMBURSEMENT OF EXPENSES FOR THE PERIOD**
**MAY 3, 2016 THROUGH DECEMBER 29, 2017**

TO THE HONORABLE STUART M. BERSTEIN,
UNITED STATES BANKRUPTCY JUDGE:

Lazard Frères & Co. LLC, ("Lazard"), Investment Banker to Official Committee

of Unsecured Creditors (collectively the "Creditors' Committee"), hereby submits its Fifth

Interim and Final Fee Application (the "Application") for an allowance of compensation for

professional services rendered to the Committee and for reimbursement of actual and necessary

expenses incurred in connection with such services from August 1, 2017 through and including

December 29, 2017 (the "Interim Compensation Period") and May 3, 2016 through and

including December 29, 2017 (the "Final Compensation Period") as set forth in their engagement

letter (the "Engagement Letter"), attached hereto as **Exhibit A**.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International Inc. (4551); SUNE ML1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A). The address of Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

## JURISDICTION, VENUE AND STATUTORY PREDICATES

1.   The United States Bankruptcy Court for the Southern District of New York (this "Court"), has jurisdiction over this Interim Application pursuant to 28 U.S.C. §§ 157 and 1334 and Amended Standing Order of Reference M-431.   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to U.S.C. 28 § 157(b).

2.   The statutory bases for the relief requested herein are sections 328(a) and 1103(a) of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules").

## BACKGROUND

3.   On April 21, 2016 (the "Petition Date"), the Debtors filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (this "Court").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.   On July 8, 2016, this Court entered that certain Order Pursuant to 11 U.S.C. §§ 328(a) and 1103(a), Bankruptcy Rule 2014 and Local Rule 2014-1, authorizing the employment and retention Lazard Freres & Co. LLC as Investment Banker to the Official Committee of Unsecured Creditors *nunc pro tunc* to May 3, 2016 (the "Retention Order") attached hereto as **Exhibit B.**

5.    On July 28, 2017, the Court entered an order approving the Amended Joint Chapter 11 Plan of Reorganization (such Order, the "Confirmation Order").

6.    On December 29, 2017, the Plan became effective (the "Effective Date").

## COMPENSATION REQUEST

7.    By this Application, Lazard seeks allowance of compensation for professional services rendered to the Creditors' Committee during the Interim Compensation Period in the aggregate amount of $8,237,500.00 (the "Interim Compensation Amount"). Lazard also seeks final approval of all fees and expenses incurred during the Final Compensation Period.  A detailed calculation of Lazard's total fee and expenses is set forth on **Exhibit E** hereto.  As set forth therein, Lazard is seeking final approval of fees in the amount of $11,947,370.97 consisting of Monthly Fees (as defined in the Engagement Letter) of $4,959,870.97, a Restructuring Fee (as defined in the Retention Order) of $7,500,000 and a Contingent Fee (as defined in the Engagement Letter) of $2,000,000 less $2,512,500 of crediting and other voluntary reductions[2]. Lazard is also seeking reimbursement of expenses in the amount of $27,001.71 for a total amount of $11,974,372.68 (the "Final Compensation Amount").

8.    For the convenience of the Court and all parties in interest, attached hereto

9.    as **Exhibit D** is a summary setting forth the name of each professional for whose work on these reorganization cases compensation is sought.

---

[2] Credits and reductions include a 50% credit of the Monthly Fees for the months of November 2016 through December 2017 (as defined in the Engagement Letter), as well as a voluntary fee reductions in the amount of

## SUMMARY OF SERVICES

10.     The Managing Directors, Vice President, Associates and Analyst of Lazard who rendered professional services during the Final Compensation Period in these cases are as follows: Ken Ziman (Managing Director); Jonathan Mir (Managing Director); Libby Howard (Vice President); Levi Quaintance (Associate); Clifford Yook (Associate); Rory Shepard (Analyst); Andrew Morton (Analyst) and Denis Aven (Analyst).

11.     During the Final Compensation Period, the Creditors' Committee relied heavily on the experience and expertise of the above-named persons in dealing with matters described in Paragraph 11. As a result, Lazard's highly skilled professionals devoted significant time and effort to perform properly and expeditiously the required professional services.

12.     A summary of some of the services rendered by Lazard during the Final Compensation Period are as follows:

A.   *Assistance with General Bankruptcy* – Lazard participated in weekly, if not daily, planning sessions and other periodic meetings with the Creditors' Committee and their legal counsel and restructuring advisor concerning process and strategy issues related to the bankruptcy. Lazard participated in numerous meetings with the Creditors' Committee and presented materials regarding the Debtors' business plan, reorganization strategy, asset sale strategy, bankruptcy process and other strategic issues. In addition, Lazard participated in discussions with various creditors and parties-in-interest to keep them informed about the Debtors' operations, financial projections, capital structure, asset sale procedures and other key events.

B.   *Oversight of Diligence with the Debtors* – Lazard reviewed, performed due diligence on and analyzed materials created by the Debtors and their advisors. Lazard engaged in regular conversations with the Debtors and their advisors. Lazard attended a number of diligence meetings, management presentations and calls on a number of different topics and work streams.

---

$450,000 and an additional voluntary 25% credit of Lazard's Monthly Fees for the months of August 2017 through December 2017 (as per an agreement between Lazard and the Debtors).

C.  *Meetings and Discussions with Creditors* – Lazard, along with the Creditor Committee's legal counsel and restructuring advisor, participated in numerous meetings and discussions with other creditor constituencies. Lazard reported the content of these discussions to the Creditors' Committee and analyzed the financial implications of any material topics of discussion.

D.  *Review of Asset Sales* – Lazard has maintained regular discussions with the Debtors and their Advisors to review proposed asset sales and their impact on the estate. In the case of the sale of the Debtors' publicly traded, "YieldCo" subsidiaries, Terraform Power and Terraform Global, Lazard attended numerous diligence sessions with the Debtors' advisors, the YieldCo advisors and the acquirer. Lazard diligence the financial projections prepared by the YieldCo advisors and advised the committee on implications for valuation of the Debtor's equity stake in the YieldCos.

E.  *Settlement Negotiations* – Lazard supported the Creditors' Committee and its counsel in its settlement discussions with the Debtors and other creditor constituencies, including preparation for and participation in the mediation between the Creditors' Committee, the Debtors and other creditors and helping to develop and assess the financial implications of various potential settlement structures.

F.  *Litigation Analysis* – Lazard supported the Creditors' Committee and their counsel in analyzing potential claims which could be asserted against the Debtors and third parties in the absence of a consensual settlement. Lazard assessed the financial basis for these claims, helped counsel to the Creditors' Committee to understand the strength of these claims and probabilities of success. Lazard also prepared for potential testimony in support of these claims.

G.  *Claims Analysis* – Lazard supported the Creditors' Committee, their counsel and the Debtors in analyzing unliquidated unsecured claims asserted during the case. At the Debtors' request, Lazard estimated potential liquidated claim amounts under various scenarios. This analysis was used to negotiate settlements of unliquidated unsecured claims in order to define the unsecured claims pool.

H.  *Preparation of Court Filings* – Lazard assisted the Creditors' Committee and its legal counsel in the preparation and review of various court filings.

## ACTUAL AND NECESSAY DISBURSEMENTS OF LAZARD

13. As set forth in **Exhibit E** hereto, Lazard expended $27,001.71 in out-of-pocket expenses relating to its professional services during the Final Application Period. These charges are intended to cover Lazard's out-of-pocket costs paid to third parties related to this engagement, which costs are not incorporated into Lazard's aggregate fees. Lazard has maintained detailed records of actual and necessary expenses incurred during the Final Application Period. With respect to expenses, it should be noted that Lazard has absorbed certain expenses customarily charged by other professionals in bankruptcy cases. For example, Lazard does not allocate office telephonic charges by client and thus these costs are absorbed by Lazard in its overhead and not charged to the Creditors' Committee. Lazard respectfully submits that the expenses for which it seeks allowance during the Final Application Period are necessary and reasonable both in scope and amount.

## NOTICE

14. It is respectfully submitted that the amount requested by Lazard is fair and reasonable given (a) the complexity of the issues presented, (b) the time and labor required, (c) the skill necessary to perform the financial advisory services, (d) the preclusion of other employment, and (e) the customary fees charged to clients in bankruptcy and non-bankruptcy situations.

**WHEREFORE**, Lazard respectfully requests: (a) allowance be made to Lazard in the aggregate sum of $8,237,500.00 as compensation for the professional services rendered during the Interim Compensation Period, and (b) that allowance be made to Lazard in the aggregate sum of $11,947,370.00 as compensation for professional services rendered during the Final Compensation Period, and the aggregate sum of $27,001.71 for reimbursement of actual

and necessary costs and expenses incurred during the Final Compensation Period; and (c) such

other and further relief as the Court may deem just and proper.

Dated:       February 27, 2018
             New York, New York

LAZARD FRERES & CO. LLC.

Ken Ziman
Managing Director
Lazard Frères & Co. LLC
30 Rockefeller Plaza, 61st Floor
New York, NY 10020
(212/632-6000)
Investment Banker to the Debtor

# EXHIBIT A

# Engagement Letter

# LAZARD

As of May 3, 2016

OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF SUNEDISON, INC.

Attention:      Ms. Melinda C. Franek
                Vice President
                AQR DELTA Master Account, L.P.
                2 Greenwich Plaza, 4th Floor
                Greenwich, CT 06830

                Mr. Donald Heap
                Vice President
                Flextronics Industrial, Ltd.
                600 Shiloh Road
                Plano, TX 75074

Dear Ladies and Gentlemen:

This letter and the accompanying exhibit confirm the terms under which the Official Committee of Unsecured Creditors of SunEdison, Inc., et al (the "Committee") has engaged Lazard Frères & Co. LLC to act as investment banker to the Committee in connection with the matters set forth herein. For purposes hereof, the term "Company" means, collectively, SunEdison, Inc. and its subsidiaries and affiliates that are debtors in the chapter 11 cases (Case No. 16-10992 (Jointly Administered))[1].

I.      Scope of Services. Lazard shall perform the following investment banking services for the Committee, in each case as necessary and if requested:

    A.      review and analyze the business, operations, liquidity, assets and liabilities, financial condition and prospects of the Company;

    B.      review and analyze the Company's business plan;

    C.      evaluate the Company's debt capacity in light of its projected cash flows;

---

[1] It is expressly understood and agreed that all references to obligations of the Company under the terms of the Engagement Letter and Exhibit A shall be obligations of the Company pursuant to the order entered by the Court pursuant to and in accordance with the application of the Committee to retain Lazard as its investment banker.

Engagement Letter
Page 2

D.    review and provide an analysis of any proposed capital structure for the Company;

E.    review and provide an analysis of any valuation of the Company or its assets;

F.    advise and attend meetings of the Committee as well as meetings with the Company or other third parties as appropriate in connection with the matters set forth herein;

G.    advise and assist the Committee in evaluating the financial aspects of any potential DIP loans or other financing by the Company;

H.    review, analyze and advise the Committee with respect to the existing debt structures of the Company, and potential refinancing alternatives for existing secured debt;

I.    advise and assist the Committee in analyzing strategic alternatives potentially available to the Company;

J.    review and provide an analysis of any restructuring plan (as the same may be modified from time to time, a "Plan") proposed by any party;

K.    review and provide an analysis of any new securities, other consideration or other inducements to be offered and/or issued under the Plan or otherwise;

L.    assist the Committee and/or participate in negotiations with the Company;

M.    provide testimony, as necessary, with respect to matters on which we have been engaged to advise the Committee in any proceeding before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"); and

N.    provide the Committee with other financial restructuring advice.

In rendering its services to the Committee hereunder, Lazard is not assuming any responsibility for the Committee's, the Company's, any creditor's or any other person's underlying business decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any other transaction(s) or decision(s). Lazard shall not have any obligation or responsibility to provide accounting, audit, "crisis management," or business consultant services for the Company or any other person or entity and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements. Nothing in this agreement is intended to obligate or commit Lazard or any of its affiliates to provide any services other than those set forth above. The Committee confirms that it will rely on its own counsel, accountants and other similar expert advisors for legal, accounting, tax and other specialist advice.

The Committee shall use all reasonable efforts to assist Lazard in obtaining from the Company all information concerning the business, assets, liabilities, operations, cash flows, properties,

financial condition and prospects of the Company that Lazard reasonably requests in connection with the services to be performed for the Committee hereunder. The Committee acknowledges that at all times during Lazard's engagement Lazard will be assuming that all information furnished to Lazard (i) is accurate and complete in all material respects and (ii) does not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which such statements are made. The Committee further recognizes and confirms that in advising the Committee pursuant to its engagement hereunder, Lazard will be using and relying on publicly available information and on data, material and other information furnished to Lazard by the Company, the Committee and other parties. It is understood that in performing under this engagement, Lazard is not assuming any responsibility for independent verification of such information. Lazard will not, as part of its engagement, undertake any appraisal of any of the assets or liabilities of the Company or of any third party.

II.     Compensation.  As consideration for the services being provided by Lazard, Lazard's compensation for services rendered under this agreement shall be paid by the Company and will consist of the following cash fees and expense reimbursements:

A.     Monthly Fee.

   (i)     A monthly fee (the "Monthly Fee") of $250,000 for each month of Lazard's engagement hereunder, payable in accordance with any applicable orders of the Court. The Monthly Fee for the month of May 2016 shall be payable pro-rated such that we shall not be paid for the first two (2) days of the month.

   (ii)     50% of all Monthly Fees paid in respect of any month commencing with the month of November 2016 shall be credited (without duplication) against any Restructuring Fee (defined below). For the avoidance of doubt, if the Restructuring Fee is not payable, there shall be no crediting of the Monthly Fees.

B.     Restructuring Fee. A fee (the "Restructuring Fee"), payable upon consummation of any Restructuring², of $8,500,000.

C.     Contingent Fee.  An additional fee (the "Contingent Fee"), payable upon consummation of any Restructuring supported by the Committee, of $2,000,000.

---

As used in this Agreement, the term "Restructuring" shall mean any restructuring, reorganization, rescheduling, recapitalization or repayment of all or any material portion of the Company's outstanding indebtedness or any sale of all or material portion of the Company or its securities or assets, however such result is achieved, including, without limitation, through a Plan confirmed by the Bankruptcy Court, an exchange offer or consent solicitation, covenant relief, rescheduling of debt maturities, change in interest rates, other amendments to the Company's debt instruments, settlement or forgiveness of debt, conversion of debt into equity, repayment of the Company's debt instruments, issuance of new securities, raising of new debt, equity or hybrid capital, or the sale or other transfer of equity, assets or other interests of the Company.

D.   Expense Reimbursement. In addition to any fees that may be payable to Lazard, the Company shall promptly reimburse Lazard for all expenses (including fees and expenses of counsel, if any), travel and lodging, data processing and communications charges, courier services and other expenditures incurred in connection with, or arising out of Lazard's activities under or contemplated by, this engagement.

E.   No fee payable to any other person, by the Company, the Committee or any other person or entity, shall reduce or otherwise affect any fee payable hereunder.

F.   All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

III.   Retention in Chapter 11 Proceedings. The Committee agrees that it will use its best efforts to retain Lazard as investment banker to the Committee on the terms and conditions set forth in this agreement (including Exhibit A) under the provisions of and subject to the standard of review set forth in Section 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and agrees that the arrangements hereunder are reasonable under the standards set forth in Section 328(a). Lazard shall be under no obligation to provide any services under this agreement unless Lazard's retention under the terms of this agreement is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court (the "Retention Order"), which Retention Order is acceptable to Lazard in its sole discretion. The retention application shall note that in so agreeing to seek Lazard's retention under Section 328(a) of the Bankruptcy Code, the Committee acknowledges that it believes that Lazard's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring, that the value to the Company of Lazard's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the deferred fees, including the Restructuring Fee and Contingent Fee, is reasonable regardless of the number of hours to be expended by Lazard's professionals in the performance of the services to be provided hereunder, and that the deferred fee shall not be considered to be "bonuses" or fee enhancements under applicable law.

IV.   Indemnification. As a material part of the consideration for Lazard to furnish its services under this agreement, Lazard requires that the Company indemnify, exculpate, reimburse and provide contribution to Lazard in accordance with the provisions attached hereto as Exhibit A. The provisions of Exhibit A are an integral part of this agreement, and the terms thereof are incorporated in entirety by reference herein. The terms of Exhibit A shall survive any termination or expiration of this agreement or Lazard's engagement, and the Retention Order shall provide for such survival.

V.   Termination. Lazard's engagement hereunder will automatically terminate upon consummation of a Restructuring and may be earlier terminated by either the Committee or Lazard at any time, provided, however, that (a) termination or expiration of Lazard's engagement hereunder shall not affect the Company's obligations pursuant to Exhibit A, and the Company's and the Committee's obligations and agreements under paragraphs

IV, this paragraph V, VI, VII, VIII, and XII hereof, which shall continue, (b) notwithstanding any such termination or expiration, Lazard shall remain entitled to any fees accrued on or prior to such termination or expiration pursuant to paragraph II but not yet paid prior to such termination or expiration and to reimbursement of expenses pursuant to paragraph II incurred prior to such termination or expiration, and (c) in the case of termination by the Committee, Lazard shall remain entitled to full payment of all fees contemplated by paragraph II hereof in respect of any Restructuring announced or resulting from negotiations occurring during the period from the date hereof until twelve months following such termination.

VI.  Independent Contractor.  Lazard has been retained under this agreement as an independent contractor to the Committee; nothing herein is intended to create or shall be construed as creating a fiduciary relationship between Lazard and the Committee or its members or any other person or entity.  The Committee acknowledges that Lazard is not the agent of and is not authorized to bind the Committee in any action or decision.  The advice (oral or written) rendered by Lazard pursuant to this agreement is intended solely for the benefit and use of the Committee solely in its capacity as the Committee in considering the matters to which this agreement relates, and such advice may not be relied upon by any other person or entity (including its members or the Company), used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner for any purpose, nor shall any public references to Lazard be made by the Committee or the Company, without the prior consent of Lazard.  Notwithstanding the foregoing, nothing herein shall prohibit any party hereto from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure.

VII.  Limitation of Liability.  The Committee agrees that neither Lazard nor any Indemnified Persons (as defined in Exhibit A) shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company, the Committee or its members, or their respective members, partners, employees, agents, respective affiliates or security holders for or in connection with this engagement or any transactions or conduct in connection therewith except, in the case of the Committee, to the extent that any losses, claims, damages, liabilities or expenses incurred by the Committee are found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's bad faith or gross negligence.  The Retention Order shall provide for such limitation of liability.

VIII.  Successors and Assigns.  This agreement (including Exhibit A hereto) shall be binding upon Lazard, the Committee, and the Company and their respective successors and assigns.  Each party hereto recognizes that Lazard has been engaged solely on behalf of the Committee and that Lazard's engagement is not deemed to be on behalf of and is not intended to confer any rights upon the Company, any shareholder, creditor, member, owner or partner of the Company or the Committee, or any other person or entity not a party hereto other than the Indemnified Persons.  The Company's obligations hereunder (including Exhibit A hereto) are joint and several .

Engagement Letter
Page 6

IX.    Authority.  Each party hereto represents and warrants that it has all requisite power and authority to enter into this agreement and the transactions contemplated hereby.  Each party hereto further represents and warrants that this agreement has been duly and validly authorized by all necessary corporate or other action on the part of such party, has been duly executed and delivered by such party and constitutes a legal, valid and binding agreement of such party, enforceable in accordance with its terms.

X.    Lazard Affiliates.  In connection with the services to be provided hereunder, Lazard may employ the services of its affiliates and may share with any such entity any information concerning the Company, provided that Lazard and such entities shall hold any nonpublic information confidential in accordance with their respective customary policies relating to nonpublic information.  Any such entity so employed shall be entitled to all of the benefits afforded to Lazard hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its costs and expenses on the same basis as Lazard.

XI.    Miscellaneous.  This agreement and Exhibit A constitute the entire understanding of the parties hereto as to the matters set forth herein and in Exhibit A, and shall supersede all prior understandings and proposals, whether written or oral, relating to any of the matters contemplated herein or in Exhibit A.  This agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same instrument.  This agreement may only be amended or waived by a writing signed by the parties hereto.

XII.    Choice of Law.  This agreement and any claim related directly or indirectly to this agreement (including any claim concerning advice provided pursuant to this agreement) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law.  No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York, the United States District Court for the Southern District of New York, or, during the pendency of the Company's chapter 11 proceedings, the Bankruptcy Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts.  Each party hereto hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding.  ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS AGREEMENT OR CONDUCT IN CONNECTION WITH THIS ENGAGEMENT IS HEREBY WAIVED BY EACH PARTY HERETO.

Engagement Letter<br>Page 7

If the foregoing agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO. LLC

By: _____

Kenneth S. Ziman
Managing Director

AGREED TO AND ACCEPTED
as of the date first above written:

On behalf of the OFFICIAL COMMITTEE
OF UNSECURED CREDITORS
OF SUNEDISON, INC.

AQR DELTA MASTER ACCOUNT, L.P.
Co-Chairman of the Committee

By: _____
Name:   Melinda C. Franek

FLEXTRONICS INDUSTRIAL, LTD.
Co-Chairman of the Committee

By: _____
Name:   Donald Heap

Engagement Letter
Page 8

## EXHIBIT A

In connection with our engagement to advise and assist the Official Committee of Unsecured Creditors of SunEdison, Inc., *et al* (the "Committee") with the matters set forth in the engagement letter of even date herewith and attached hereto (the "Engagement Letter"), for good and valuable consideration, receipt of which is acknowledged, SunEdison, Inc. and its subsidiaries and affiliates that are debtors in the chapter 11 cases (Case No. 16-10992 (Jointly Administered)) (jointly and severally, the "Company") will be subject to the terms of this Exhibit A.* Capitalized terms used herein without definition shall have the meanings assigned to them in the Engagement Letter. It is understood and agreed that in the event that Lazard Frères & Co. LLC or any of our affiliates, or any of our or their respective directors, officers, members, employees, agents or controlling persons, if any (each of the foregoing, including Lazard Frères & Co, LLC, being an "Indemnified Person"), become involved in any capacity in any action, claim, proceeding or investigation brought or threatened by or against any person, including the Company's security holders or creditors, related to, arising out of or in connection with our engagement, the Company will promptly reimburse each such Indemnified Person for its legal and other expenses (including the cost of any investigation and preparation) as and when they are incurred in connection therewith.    The Company will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expenses to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with our engagement, whether or not any pending or threatened action, claim, proceeding or investigation giving rise to such losses, claims, damages, liabilities or expenses is initiated or brought by the Company or on its behalf and whether or not in connection with any action, claim, proceeding or investigation in which the Company or any such Indemnified Person are a party, except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's bad faith or gross negligence. No Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its security holders or creditors related to, arising out of or in connection with our engagement except to the extent that any loss, claim, damage or liability is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's bad faith or gross negligence. If multiple claims are brought against any Indemnified Person in an arbitration related to, arising out of or in connection with our engagement, and indemnification is permitted under applicable law with respect to at least one such claim, any arbitration award shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for hereunder, except to the extent the arbitration award expressly states that the award, or any portion thereof, is based solely on a claim as to which indemnification is not available.

---

* It is expressly understood and agreed that all references to obligations of the Company under the terms of the Engagement Letter and this Exhibit A shall be obligations of the Company pursuant to the order entered by the Court pursuant to and in accordance with the Lazard retention application.

If for any reason the foregoing indemnification is held unenforceable or is otherwise unavailable, then the Company shall contribute to the loss, claim, damage, liability or expense for which such indemnification is held unenforceable in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by the Company and its security holders and creditors on the one hand and the Indemnified Persons on the other hand in the matters contemplated by our engagement as well as the relative fault of the Company and such persons with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations. For the purposes hereof the relative benefits received, or sought to be received, by the Company and its security holders and creditors and the Indemnified Persons shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid by or to the Company and its security holders and creditors, as the case may be, pursuant to any transaction (whether or not consummated) in connection with which we have been engaged to perform investment banking services bears to (ii) the fees paid or proposed to be paid to us in connection with such engagement; provided, however, that, to the extent permitted by applicable law, in no event shall we or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to us for such investment banking services. The Company's reimbursement, indemnity and contribution obligations under this agreement shall be joint and several, shall be in addition to any liability which the Company may otherwise have, shall not be limited by any rights we or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company, ourselves, and any other Indemnified Persons.

Without our prior written consent (which will not be unreasonably withheld), the Company will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, proceeding or investigation in respect of which indemnification or contribution could be sought hereunder (whether or not we or any other Indemnified Persons are an actual or potential party to such claim, action, proceeding or investigation), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Person from all liability arising out of such claim, action, proceeding or investigation. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby. This Exhibit A and any claim related directly or indirectly to this Exhibit A shall be governed and construed in accordance with the laws of the State of New York (without giving regard to the conflicts of law provisions thereof). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York or, during the pendency of the Company's chapter 11 proceedings, the Bankruptcy Court for the Southern District of New York, and each of us hereby submits to the jurisdiction of such courts. The Company hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable. The Company (on its own behalf and, to the extent permitted by applicable law, on behalf of its security holders and creditors) waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to, arising out of or in connection with our engagement or this Exhibit A. The obligations set forth in this Exhibit A shall remain in effect indefinitely, notwithstanding any termination or expiration of our engagement.

# EXHIBIT B

# Retention Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| SUNEDISON, INC., *et al.*, | Case No. 16-10992 (SMB) |
| Debtors.[1] | (Jointly Administered) |

**ORDER PURSUANT TO 11 U.S.C. §§ 328(a) AND 1103(a), BANKRUPTCY
RULE 2014 AND LOCAL RULE 2014-1 FOR ENTRY OF AN ORDER
AUTHORIZING THE EMPLOYMENT AND RETENTION OF LAZARD
FRÈRES & CO. LLC AS INVESTMENT BANKER TO OFFICIAL
COMMITTEE OF UNSECURED CREDITORS _NUNC PRO TUNC_ TO MAY 3, 2016**

Upon the application (the "**Application**")[2] of the Official Committee of
Unsecured Creditors (the "**Creditors' Committee**") of SunEdison, Inc., *et al.* (the "**Debtors**")
pursuant to sections 328(a) and 1103 of Title 11 of the United States Code (the "**Bankruptcy
Code**"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),
and Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the Southern
District of New York (the "**Local Rules**") authorizing the retention and employment of Lazard
Frères & Co. LLC ("**Lazard**") as investment banker to the Creditors' Committee *nunc pro tunc*
to May 4, 2016, on the terms set forth in the Engagement Letter, all as more fully set forth in the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A). The address of the Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

[2] Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Application.

Declaration of Kenneth S. Ziman, Managing Director of Lazard, in support of the Application (the "**Ziman Declaration**"); and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided to the Notice Parties, and it appearing that no other or further notice need be provided; and the Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court; and the Court having determined that the terms and conditions of Lazard's employment, including the Fee Structure set forth in the Engagement Letter, attached as **Exhibit "1"** hereto, are reasonable as required by section 328(a) of the Bankruptcy Code; and upon the Court finding that Lazard represents no adverse interests in connection with these cases and that it is a disinterested person as that term is defined in section 101(14) of the Bankruptcy Code and as used in section 328(c) of the Bankruptcy Code; and upon further finding that the employment of Lazard is necessary and is in the best interests of the Creditors' Committee; and the relief requested in the Application being warranted; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    The Application is GRANTED as set forth herein.

2.    The Creditors' Committee is authorized, pursuant to sections 328(a) and 1103(a) of the Bankruptcy Code, to engage Lazard as its investment banker in these chapter 11 cases,

*nunc pro tunc* to May 3, 2016, for the purposes set forth in and upon the terms of the Engagement Letter.

3.      The Engagement Letter, including, without limitation, the Monthly Fee, the Restructuring Fee, the Contingent Fee (each as defined in the Engagement Letter), and the Indemnity Provisions, are approved pursuant to section 328(a) of the Bankruptcy Code, *provided, however*, that notwithstanding anything to the contrary in the Application or the Engagement Letter, the Restructuring Fee shall be reduced from $8,500,000 to $7,500,000.

4.      The Debtors shall promptly reimburse Lazard for all reasonable expenses incurred by Lazard and the reasonable fees and expenses of outside counsel, if any, retained by Lazard, without the need for such legal counsel to be retained as professionals in these chapter 11 cases.

5.      None of the fees payable to Lazard shall constitute a "bonus" or fee enhancement under applicable law.

6.      Lazard shall file fee applications for monthly, interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court; *provided, however,* that the fees and expenses payable to Lazard pursuant to the Engagement Letter, including without limitation, the Monthly Fee, Restructuring Fee, and the Contingent Fee (each as defined in the Engagement Letter) shall be subject to review pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code.

7.      Notwithstanding anything to the contrary in this Order and any provision to the contrary in the Application or the Engagement Letter, the Office of the United States Trustee for

the Southern District of New York shall have the right to object to Lazard's request for compensation and reimbursement based on the reasonableness standard provided in section 330 of the Bankruptcy Code.

8.      The Indemnity Provisions set forth in the Engagement Letter are approved, subject during the pendency of these chapter 11 cases to the following:

a.      All requests for payment of indemnity, contribution, or otherwise pursuant to the Engagement Letter shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Engagement Letter, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the orders of this Court, and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought; provided that in no event shall any person be indemnified or receive contribution to the extent that any claim arose or expense has resulted from any such losses finally judicially determined by a court of competent jurisdiction to have primarily resulted from the bad faith, self-dealing, breach of fiduciary duty, if any, gross negligence, or willful misconduct on the part of that or any other Indemnified Persons;

b.      In no event shall any Indemnified Person be indemnified or receive contribution or other payment under the Indemnity Provisions **or be entitled to any limitation on or exoneration from its liability** to the extent the Debtors or a representative of the estate asserts a claim for, and the Court determines by final order that such claim primarily arose out of, such Indemnified Person's bad-faith, self-dealing or breach of fiduciary duty (if any), gross negligence, or willful misconduct; and **[SMB: 7/8/16]**

c.      In the event that any Indemnified Person seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the Engagement Letter, the invoices and supporting time records from such attorneys shall be annexed to Lazard's own applications, both interim and final, and such invoices and time records shall be subject to the U.S. Trustee Guidelines and the approval of the Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code.

4

9.      Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any order of this Court, or any guidelines established by the U.S. Trustee regarding submission and approval of fee applications, Lazard and its professionals shall be excused from: (a) the requirement to maintain or provide detailed time records for services rendered postpetition in accordance with the Fee Guidelines and (b) providing or conforming to any schedule of hourly rates.  Instead, notwithstanding that Lazard does not charge for its services on an hourly basis, Lazard will instead be entitled to maintain time records (in summary format) of its services rendered for the Creditors' Committee in half-hour (0.50) increments, not tenth-hour (0.10) increments, setting forth, in summary format, a description of the services rendered and the professionals rendering such services, and will present such records together with its fee applications filed with this Court.

10.     The Debtors are authorized to, and shall, pay Lazard's compensation and reimburse Lazard for its costs and expenses as provided in the Engagement Letter, in accordance with the fee application process approved by this Court.

11.     The Creditors' Committee and the Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

12.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

13.     Notwithstanding anything to the contrary in the Engagement Letter or the Indemnification Letter, this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order and Lazard's retention in these chapter 11 cases.

Dated: **July 8th** , 2016
New York, New York

/s/ STUART M. BERNSTEIN

_____

THE HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT C

# Ziman Certification

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| SUNEDISON, INC., *et al.*, | ) | Case No. 16-10992 (SMB) |
| | ) | |
| Debtors.[6] | ) | Jointly Administered |

### CERTIFICATION OF LAZARD FRÈRES & CO. LLC

| | |
|---|---|
| STATE OF NEW YORK    ) | |
| ) | ss: |
| COUNTY OF NEW YORK  ) | |

I, Ken Ziman, hereby certify that:

1.      I am a Managing Director with Lazard Frères & Co. LLC, an investment bank with principal offices located at 30 Rockefeller Plaza, New York, New York 10020. I am authorized to execute this Certification in connection with Lazard's Fourth Interim Fee Application in the above-referenced bankruptcy cases.

2.      In accordance with the Local Guidelines, I certify that:

a.      I have read Lazard's application, dated February27, 2018, for final compensation and reimbursement of expenses for the period of May 3, 2016 through and including December 29, 2017 (the "**Application**");[7]

b.      to the best of my knowledge, information and belief, insofar as I can tell after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines, except as specifically noted in the certification and described in the Application;

---

[6] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number sre as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); Sabine Mid-Continent LLC (6939); Sabine Oil & Gas Finance Corporation (2567); Sabine South Texan Gathering LLC (1749); Sabine South Texas LLC (5616); and Sabine Williston Basin LLC (4440). The location of Debtor Sabine Oil & Gas Corporation's corporate headquarters and the Debtors' service address is: 1415 Louisiana, Suite 1600, Houston, Texas 77002

[7] All capitalzed terms used but not otherwise defined herein shall have the meaning set forth in the Application.

c.     except to the extent that fees or disbursements are prohibited by the Local Guidelines, the fees and disbursements sought are billed at rates and in accordance with practices customarily employed by Lazard and generally accepted by Lazard's clients; and

d.     in providing a reimbursable service, Lazard does not make a profit on the service, whether the service is performed by Lazard in-house or through a third party.

e.     A copy of the Application has been provided to the United States Trustee and the Committee contemporaneously with the filing hereof.

Ken Ziman
Managing Director

Dated: 2/27/2018

# EXHIBIT D

# Details of Hours Expended

**SunEdison, Inc.**
**Lazard Frères & Co. LLC**
**Summary of Services Rendered by Project**

**May 2016 - December 2017**

| Code # | Project Description | Total |
|---|---|---|
| 1 | Interface with Professionals, Official Committees, and Other Parties-In-Intere | 798.5 |
| 2 | Business Operations Planning, Monitoring, Reporting and Analysis, and Projectio | 207.5 |
| 3 | Preparation and/or Review of Court Filing | 19.5 |
| 4 | Court Testimony/Deposition and Preparatio | 44.0 |
| 5 | Valuation Analysis | 33.0 |
| 6 | Capital Structure Review and Analysis | 14.0 |
| 7 | Merger & Acquisition Activity | 49.5 |
| 8 | Financing Including DIP and Exit Financin | 71.5 |
| 9 | General Corporate Finance, Research and Analysis, and Other Due Diligenc | 1,168.5 |
| 10 | Fee Application, Engagemen | 20.0 |
| 11 | Employee Retention Progran | 0.0 |
| **TOTAL** | | **2,426.0** |

**Summary of Services Rendered by Professional**

| Name | Total |
|---|---|
| Ken Ziman, Managing Director | 404.0 |
| Jonathan Mir, Managing Director | 52.0 |
| Libby Howard, Vice President | 111.0 |
| Levi Quaintance, Associate | 825.5 |
| Clifford Yook, Associate | 82.0 |
| Rory Shepard, Analyst | 88.0 |
| Andrew Morton, Analyst | 216.0 |
| Denis Aven, Analyst | 647.5 |
| **TOTAL** | **2,426.0** |

**SunEdison, Inc.**
**Lazard Frères & Co. LLC**
**Summary of Services Rendered by Project**

**May 2016 - December 2017**

| Code # | Project Description | Ken Ziman Managing Director | Jonathan Mir Managing Director | Libby Howard Vice President | Levi Quaintance Associate | Clifford Yook Associate | Rory Shepard Analyst | Andrew Morton Analyst | Denis Aven Analyst | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Interface with Professionals, Official Committees, and Other Parties-In-Interest | 227.5 | 28.0 | 38.0 | 264.0 | 14.5 | 14.5 | 54.5 | 157.5 | 798.5 |
| 2 | Business Operations Planning, Monitoring, Reporting and Analysis, and Projections | 8.5 | 6.5 | 19.5 | 56.0 | 25.5 | 35.5 | 53.0 | 3.0 | 207.5 |
| 3 | Preparation and/or Review of Court Filings | 2.5 | 0.0 | 0.0 | 7.0 | 0.0 | 0.0 | 3.0 | 7.0 | 19.5 |
| 4 | Court Testimony/Deposition and Preparation | 41.5 | 0.0 | 0.0 | 1.5 | 0.0 | 0.0 | 0.0 | 1.0 | 44.0 |
| 5 | Valuation Analysis | 0.0 | 0.0 | 0.0 | 0.0 | 15.0 | 15.0 | 0.0 | 3.0 | 33.0 |
| 6 | Capital Structure Review and Analysis | 3.0 | 0.0 | 0.0 | 7.0 | 0.0 | 0.0 | 4.0 | 0.0 | 14.0 |
| 7 | Merger & Acquisition Activity | 0.0 | 0.0 | 0.0 | 47.5 | 0.0 | 0.0 | 0.0 | 2.0 | 49.5 |
| 8 | Financing Including DIP and Exit Financing | 8.0 | 0.5 | 1.5 | 26.0 | 2.5 | 2.5 | 30.5 | 0.0 | 71.5 |
| 9 | General Corporate Finance, Research and Analysis, and Other Due Diligence | 111.0 | 17.0 | 52.0 | 403.5 | 24.5 | 20.5 | 71.0 | 471.0 | 1,170.5 |
| 10 | Fee Application, Engagement | 2.0 | 0.0 | 0.0 | 13.0 | 0.0 | 0.0 | 0.0 | 3.0 | 18.0 |
| 11 | Employee Retention Program | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| TOTAL | | 404.0 | 52.0 | 111.0 | 825.5 | 82.0 | 88.0 | 216.0 | 647.5 | 2,426.0 |

# EXHIBIT E

# Fee Calculation

Official Committee of Unsecured Creditors of SunEdison Inc.
Fifth Interim & Final Fee Application
Lazard Frères & Co. LLC

### Fee Calculation

#### Fifth Interim Period - August 1, 2017 - December 29, 2017

| Item | | Amount Incurred |
|------|---|---|
| Monthly Fee:  August 1, 2017 - August 31, 2017 | | $250,000.00 [1] |
| Monthly Fee:  September 1, 2017 - September 30, 2017 | | 250,000.00 |
| Monthly Fee:  October 1, 2017 - October 31, 2017 | | 250,000.00 |
| Monthly Fee:  November 1, 2017 - November 30, 2017 | | 250,000.00 |
| Proratd Monthly Fee:  December 1, 2017 - Decemebr 29, 2017 | | 250,000.00 |
| Restructuring Fee | $7,500,000.00 [2] | - |
| Less: 50% Monthly Fee Credit [Nov 16 - Jul 17] | (1,125,000.00) [3] | - |
| Less: 75% Monthly Fee Credit [Aug 17 - Dec 17] | (937,500.00) [4] | - |
| Less: Agreed Upon Fee Reduction | (450,000.00) [5] | - |
| Net Restructuring Fee | | 4,987,500.00 |
| Contingent Fee | | 2,000,000.00 [6] |
| **TOTAL** | | **$8,237,500.00** |

#### Final Application Period - May 3, 2016 - December 29, 2017

| Item | | Amount Incurred |
|------|---|---|
| Prorated Monthly Fee:  May 3, 2016 - May 31, 2016 | | $233,870.97 [7] |
| Monthly Fees:  June 1, 2016 - Deember 29, 2018 | | $4,726,000.00 [8] |
| Restructuring Fee | $7,500,000.00 [2] | - |
| Less: 50% Monthly Fee Credit [Nov 16 - Jul 17] | (1,125,000.00) [3] | - |
| Less: 75% Monthly Fee Credit [Aug 17 - Dec 17] | (937,500.00) [4] | - |
| Less: Agreed Upon Fee Reduction | (450,000.00) [5] | - |
| Net Restructuring Fee | | 4,987,500.00 |
| Contingent Fee | | 2,000,000.00 [6] |
| **TOTAL** | | **$11,947,370.97** |

### Summary of Out-of-Pocket Expenses [9]

#### Final Application Period - May 3, 2016 - December 29, 2017

| Item | Amount Incurred |
|------|---|
| Car Services and Taxis | $4,445.71 |
| Electronic Information Service | 268.55 |
| Employee Meals | 1,222.26 |
| Meals-Meetings/Travel | 573.46 |
| Temporary Wages | 17.57 |
| Travel | 20,474.16 |
| **TOTAL** | **$27,001.71** |

[1]  Lazard's retention was approved pursuant to the terms set forth in the Engagement Letter dated May 3, 2016 (the "Engagement Letter") as amended by the Retention Order dated July 8, 2016 (Dkt. No. 734).

[2]  Pursuant to section II(B) of the Engagement Letter, as amended by section 3 of the Retention Order, a fee (the "Restructuring Fee"), payable upon consummation of any Restructuring , of $8,500,000 shall be reduced to $7,500,000.

[3]  Pursuant to section II(A)(ii) of the Engagement Letter, 50% of all Monthly Fees paid in respect of any month commencing with the month of November 2016 shall be credited (without duplication) against any Restructuring Fee [$250,000x9x50% = $1,125,000].

[4]  Following discussion with the Debtors, Lazard has a agreed to credit an additional 25% of its monthly fee beginning in August 2017 (without duplication) against any Restructuring Fee [$250,000 x 5 x 75% = $937,500].

[5]  In addition to increased crediting, Lazard has agreed to a voluntary fee reduction of $450,000.

[6]  Pursuant to section II(C) of the Engagement Letter, An additional fee (the "Contingent Fee"), payable upon consummation of any Restructuring supported by the Committee, of $2,000,000.

[7]  This amount reflects a prorated professional fee for the 29-day period from May 3, 2016 through May 31, 2016 [$250,000 / 31 x 29 = $233,870.97].

[8]  The Final DIP Order in these cases prohibited use of any DIP facility proceeds or proceeds of DIP collateral or prepetition collateral or prepetition collateral to pay any fees and expenses (including professional fees) for any challenge of the DIP secured parties' or the prepetition secured parties' liens and claims. Accordingly, Lazard agreed to a reduction of its fees for the first interim fee period in the amount of $24,000

[9]  Additional expense detail will be furnished upon request.

# LAZARD

## DEAL OPEN ITEMS BY CATEGORY

### ALL EXPENSES

### NYC05966 - OFFICIAL COMMITTEE OF UNSECURE

**Currency: USD - US Dollar**

| EXPENSE TYPE | TRANS DATE | DESCRIPTION | BALANCE |
|---|---|---|---|
| OPENING BALANCE | 01-Jan-1900 | | 0.00 |
| | | | |
| **Car Services and Taxis** | | | |
| | 25-May-2016 | Ziman-Car- to mtg with UCC anc co 05/06/2016 / Cash | 52.52 |
| | 03-Jun-2016 | Yook-TRISTAR WORLDWIDE Office to EWR (SUV with 3 ppl) 05/11/2016 / AMEX | 246.82 |
| | 03-Jun-2016 | Yook-UBER Car -SunEd meeting to SF Lazard office 05/12/2016 / AMEX | 122.83 |
| | 03-Jun-2016 | Yook-AFFILIATED TAXI from dinner to SFO SAN MATEO 05/13/2016 / AMEX | 63.00 |
| | 03-Jun-2016 | Yook-AFFILIATED TAXI from SF office to dinner SAN MATEO 05/13/2016 / AMEX | 16.00 |
| | 03-Jun-2016 | Yook-YELLOW CAR from hotel to client meeting SAN FRANC 05/11/2016 / AMEX | 11.55 |
| | 03-Jun-2016 | Yook-VERIFONE TAXI from meeting at Skadden to office 05/06/2016 / AMEX | 10.79 |
| | 03-Jun-2016 | Yook-UBER from client meeting to SF office 05/12/2016 / AMEX | 8.44 |
| | 03-Jun-2016 | Yook-UBER from SF office to client meeting 05/12/2016 / AMEX | 7.55 |
| | 07-Jun-2016 | Morton-Car-home to EWR 05/10/2016 / AMEX | 66.32 |
| | 07-Jun-2016 | Morton-Car-from hotel to client mtg 05/11/2016 / AMEX | 41.27 |
| | 08-Jun-2016 | Quaintance-Car-from EWR to home 05/13/2016 / AMEX | 102.04 |
| | 08-Jun-2016 | Quaintance-Car-from home to EWR 05/11/2016 / AMEX | 94.36 |
| | 08-Jun-2016 | Quaintance-Car-SFO to hotel in SF 05/11/2016 / AMEX | 64.23 |
| | 08-Jun-2016 | Howard-UBER from home to meeting at Skadden (NYC)     05/06/2016 / AMEX | 59.16 |
| | 08-Jun-2016 | Quaintance-Car-from home to EWR 04/29/2016 / AMEX | 58.31 |
| | 13-Jun-2016 | Shepard- Taxi - from hotel to airport SFO   05/12/2016 / AMEX | 22.80 |
| | 13-Jun-2016 | Shepard- Taxi - from dinner in SF to hotel   05/11/2016 / AMEX | 17.85 |
| | 13-Jun-2016 | Shepard-Taxi-from hotel in SF to dinner 05/11/2016 / AMEX | 15.25 |
| | 13-Jun-2016 | Shepard-Taxi-from meeting in SF to hotel 05/12/2016 / AMEX | 12.55 |
| | 13-Jun-2016 | Shepard-Taxi-from hotel in SF to dinner 05/10/2016 / AMEX | 11.25 |
| | 27-Jun-2016 | Ziman-Car-from EWR to home NYC 05/12/2016 / AMEX | 145.04 |
| | 27-Jun-2016 | Ziman-Car-from home NYC to EWR 05/11/2016 / AMEX | 135.81 |
| | 28-Jun-2016 | Howard-TRISTAR WORLDWIDE Car- from meeting in SF to SFO 05/12/2016 / AMEX | 148.04 |
| | 28-Jun-2016 | Howard-TRISTAR WORLDWIDE Car-from EWR to home   05/12/2016 / AMEX | 145.04 |
| | 03-Jun-2016 | Yook-UBER - from NY office to home  05/07/2016 Time: 22:35 / AMEX | 17.44 |
| | 03-Jun-2016 | Yook-UBER - from NY office to home  05/06/2016 Time: 11:22 / AMEX | 15.00 |
| | 03-Jun-2016 | Yook-FA MANAGEMENT - from NY office to home  05/10/2016 Time: 23:59 / AMEX | 12.88 |
| | 07-Jun-2016 | Morton-Car to home late night 05/13/2016 Time: 22:02 / AMEX | 35.00 |
| | 07-Jun-2016 | Morton-Car home after 12am(5/9) 05/10/2016 Time: 01:36 / AMEX | 7.00 |
| | 08-Jun-2016 | Quaintance-Car to home late night 05/10/2016 Time: 23:24 / AMEX | 30.61 |

16-10992-dsj   Doc 4673   Filed 02/27/18   Entered 02/27/18 17:16:10   Main Document   Pg 40 of 50

# LAZARD

## DEAL OPEN ITEMS BY CATEGORY

### ALL EXPENSES

### NYC05966 - OFFICIAL COMMITTEE OF UNSECURE

**Currency: USD - US Dollar**

| EXPENSE TYPE | TRANS DATE | DESCRIPTION | BALANCE |
|---|---|---|---|
| **Car Services and Taxis** | 08-Jun-2016 | Quaintance-Car to home late night 05/04/2016 Time: 22:18 / AMEX | 23.15 |
| | 08-Jun-2016 | Quaintance-Car home after 12am(5/6) 05/06/2016 Time: 00:49 / AMEX | 22.45 |
| | 08-Jun-2016 | Quaintance-Car home after 12am(5/9) 05/10/2016 Time: 05:59 / AMEX | 21.13 |
| | | Subtotal: | 1,863.48 |
| **Electronic Information Service** | | | |
| | 07-Jun-2016 | Morton-Internet on plane 05/12/2016 / AMEX | 39.95 |
| | 07-Jun-2016 | Morton-Internet on plane 05/10/2016 / AMEX | 26.95 |
| | 08-Jun-2016 | Quaintance-Internet on plane 05/11/2016 / AMEX | 39.95 |
| | 08-Jun-2016 | Howard-GOGOAIR.COM        877-350-0 05/10/2016 / AMEX | 33.95 |
| | 08-Jun-2016 | Quaintance-Internet on plane 05/11/2016 / AMEX | 31.95 |
| | 08-Jun-2016 | Howard-GOGOAIR.COM        877-350-0 05/12/2016 / AMEX | 31.95 |
| | 08-Jun-2016 | Howard-In room internet 05/10/2016 / AMEX | 14.95 |
| | 08-Jun-2016 | Howard-In room internet 05/12/2016 / AMEX | 14.95 |
| | 13-Jun-2016 | Shepard-GOGOAIR.COM        877-350-0 05/10/2016 / AMEX | 33.95 |
| | | Subtotal: | 268.55 |
| **Employee Meals** | | | |
| | 20-Jun-2016 | Quaintance-M 04-MAY-2016 Toloache (W 50th  Time: 20:38 / GRUBHUB HOLDINGS INC | 26.25 |
| | 20-Jun-2016 | Quaintance-M 03-MAY-2016 Naya Express  Time: 20:04 / GRUBHUB HOLDINGS INC | 26.25 |
| | 20-Jun-2016 | Shepard-M 07-MAY-2016 TAO  Time: 19:26 / GRUBHUB HOLDINGS INC | 26.24 |
| | 20-Jun-2016 | Yook-M 07-MAY-2016 TAO  Time: 19:26 / GRUBHUB HOLDINGS INC | 26.24 |
| | 20-Jun-2016 | Quaintance-M 05-MAY-2016 The Little Beet  Time: 19:23 / GRUBHUB HOLDINGS INC | 25.82 |
| | 20-Jun-2016 | Shepard-M 07-MAY-2016 City Sandwich  Time: 11:40 / GRUBHUB HOLDINGS INC | 15.58 |
| | 22-Jun-2016 | Quaintance-M 18-MAY-2016 Angelo's Pizza  Time: 20:51 / GRUBHUB HOLDINGS INC | 26.25 |
| | 22-Jun-2016 | Shepard-M 18-MAY-2016 Juice Healthy Fo  Time: 18:00 / GRUBHUB HOLDINGS INC | 26.25 |
| | 22-Jun-2016 | Shepard-M 09-MAY-2016 Dig Inn - 55th S  Time: 18:18 / GRUBHUB HOLDINGS INC | 26.25 |
| | 22-Jun-2016 | Quaintance-M 16-MAY-2016 Hummus Kitchen (  Time: 21:04 / GRUBHUB HOLDINGS INC | 26.25 |
| | 22-Jun-2016 | Quaintance-M 09-MAY-2016 Istanbul Kebab H  Time: 19:51 / GRUBHUB HOLDINGS INC | 26.25 |
| | 22-Jun-2016 | Quaintance-M 10-MAY-2016 Angelo's Pizzeri  Time: 20:11 / GRUBHUB HOLDINGS INC | 26.25 |
| | 22-Jun-2016 | Yook-M 13-MAY-2016 Lavo  Time: 19:56 / GRUBHUB HOLDINGS INC | 25.98 |
| | 22-Jun-2016 | Shepard-M 13-MAY-2016 Lavo  Time: 19:56 / GRUBHUB HOLDINGS INC | 25.97 |
| | | Subtotal: | 355.83 |
| **Meals-Meetings/Travel** | | | |
| | 03-Jun-2016 | Yook-BURMA LOVE SAN FRANC Bfast 1p 05/11/2016 / AMEX | 20.56 |
| | 03-Jun-2016 | Yook-BURMA LOVE SAN FRANC Dinner 2ppl 05/11/2016 / AMEX | 130.00 |

16-10992-dsj    Doc 4673    Filed 02/27/18    Entered 02/27/18 17:16:10    Main Document    Pg 41 of 50

# LAZARD

**DEAL OPEN ITEMS BY CATEGORY**

ALL EXPENSES

**NYC05966 - OFFICIAL COMMITTEE OF UNSECURE**

Currency: USD - US Dollar

| EXPENSE TYPE | TRANS DATE | DESCRIPTION | BALANCE |
|---|---|---|---|
| **Meals-Meetings/Travel** | 03-Jun-2016 | Yook-Dinner at hotel 1p 05/13/2016 / AMEX | 56.58 |
| | 03-Jun-2016 | Yook-THE GROVE YERBA BUEN SAN FRANC Bfast 1p 05/11/2016 / AMEX | 26.79 |
| | 08-Jun-2016 | Howard-Dinner (1) 05/11/2016 / AMEX | 62.90 |
| | 08-Jun-2016 | Quaintance-bfast while traveling 05/11/2016 / AMEX | 11.55 |
| | 13-Jun-2016 | Shepard-IZZY'S STEAKS & CH 5 SAN FRANC Dinner (2ppl) 05/12/2016 / AMEX | 130.00 |
| | 13-Jun-2016 | Shepard-THE GROVE YERBA BUEN SAN FRANC Dinner 1p 05/11/2016 / AMEX | 26.24 |
| | 13-Jun-2016 | Shepard-THE GROVE YERBA BUEN SAN FRANC Bfast 1p 05/11/2016 / AMEX | 19.68 |
| | 24-Jun-2016 | Morton-bfast while traveling 05/28/2016 / Cash | 11.00 |
| | | Subtotal: | 495.30 |
| **Travel** | 03-Jun-2016 | Yook-UNITED AIRLINES EWR/SFO coach 05/10/2016 / AMEX | 1,724.00 |
| | 03-Jun-2016 | Yook-DELTA AIR LINES SFO/JFK coach 05/12/2016 / AMEX | 832.45 |
| | 03-Jun-2016 | Yook-AMERICAN EXPRESS TICKET FEE 05/10/2016 / AMEX | 35.00 |
| | 03-Jun-2016 | Yook-AMERICAN EXPRESS TICKET FEE 05/09/2016 / AMEX | 35.00 |
| | 03-Jun-2016 | Yook-AMERICAN EXPRESS TICKET FEE 05/10/2016 / AMEX | 35.00 |
| | 07-Jun-2016 | Morton-United SFO/JFK coach 05/12/2016 / AMEX | 1,891.35 |
| | 07-Jun-2016 | Morton-Delta EWR/SFO coach 05/10/2016 / AMEX | 1,724.00 |
| | 08-Jun-2016 | Howard-UNITED AIRLINES EWR/SFO/EWR coach 05/10/2016 / AMEX | 3,615.35 |
| | 08-Jun-2016 | Quaintance-United EWR/SFO coach 05/11/2016 / AMEX | 2,025.80 |
| | 08-Jun-2016 | Quaintance-United SFO/EWR coach 05/12/2016 / AMEX | 1,724.00 |
| | 08-Jun-2016 | Howard-AMERICAN EXPRESS TICKET FEE 05/10/2016 / AMEX | 35.00 |
| | 13-Jun-2016 | Shepard-UNITED AIRLINES EWR/SFO coach 05/10/2016 / AMEX | 1,724.00 |
| | 13-Jun-2016 | Shepard-DELTA AIR SFO/JFK coach 05/12/2016 / AMEX | 605.32 |
| | 13-Jun-2016 | Shepard-AMERICAN EXPRESS TICKET FEE 05/09/2016 / AMEX | 35.00 |
| | 13-Jun-2016 | Shepard-AMERICAN EXPRESS TICKET FEE 05/10/2016 / AMEX | 35.00 |
| | 13-Jun-2016 | Shepard-AMERICAN EXPRESS TICKET FEE 05/10/2016 / AMEX | 35.00 |
| | 03-Jun-2016 | Yook-ST REGIS Hotel SF 2 nights @$ 571.50 S SAN FRANC 05/13/2016 / AMEX | 1,332.74 |
| | 08-Jun-2016 | Howard-ST REGIS 2 nights @$ 571.50 SAN FRANC 05/12/2016 / AMEX | 1,332.74 |
| | 13-Jun-2016 | Shepard-ST REGIS 2 nights @$ 571.50 SAN FRANC 05/12/2016 / AMEX | 1,332.74 |
| | 30-Jun-2016 | Quaintance-Hotel SF 1 night @$280 05/12/2016 / AMEX | 308.55 |
| | | Subtotal: | 20,418.04 |

**CLOSING BALANCE as of 30-Jun-2016**   <u>23,401.20</u>

16-10992-dsj   Doc 4673   Filed 02/27/18   Entered 02/27/18 17:16:10   Main Document   Pg 42 of 50

# LAZARD

## DEAL OPEN ITEMS BY CATEGORY

### ALL EXPENSES

### NYC05966 - OFFICIAL COMMITTEE OF UNSECURE

Currency: USD - US Dollar

| EXPENSE TYPE | TRANS DATE | DESCRIPTION | BALANCE |
|---|---|---|---|
| OPENING BALANCE | 01-Jan-1900 | | 0.00 |
| | | | |
| Car Services and Taxis | | | |
| | 07-Jul-2016 | Yook-Car from SFO to Hotel (SUV) 3 ppl 05/19/2016 / AMEX | 173.10 |
| | 07-Jul-2016 | Yook-Car JFK to home from SunEd meeting 05/16/2016 / AMEX | 148.62 |
| | 11-Jul-2016 | Shepard-Car-R/T SF hotel to mtg to SF hotel 05/11/2016 / AMEX | 330.00 |
| | 11-Jul-2016 | Shepard-Car-from SF hotel to client mtg 05/12/2016 / AMEX | 165.60 |
| | 11-Jul-2016 | Shepard-Car-from JFK to home NY 05/13/2016 / AMEX | 111.47 |
| | 07-Jul-2016 | Yook-Car to office from home on Saturday 05/14/2016 Time: 11:09 / AMEX | 15.00 |
| | 07-Jul-2016 | Yook-Car home from office on Tuesday 06/01/2016 Time: 23:24 / AMEX | 15.00 |
| | 07-Jul-2016 | Yook-Car home from office on Saturday 05/14/2016 Time: 19:59 / AMEX | 10.79 |
| | 29-Jul-2016 | Yook-Car home from office on Tuesday 06/14/2016 Time: 22:06 / AMEX | 15.00 |
| | | Subtotal: | 984.58 |
| Employee Meals | | | |
| | 01-Jul-2016 | Shepard-M 05-JUN-2016 ABA Turkish Rest Time: 19:36 / GRUBHUB HOLDINGS INC | 26.24 |
| | | Subtotal: | 26.24 |
| Meals-Meetings/Travel | | | |
| | 07-Jul-2016 | Yook-Lunch 1p SunEd meeting 05/12/2016 / AMEX | 35.00 |
| | 11-Jul-2016 | Shepard- Lunch (1) SF  05/12/2016 / AMEX | 35.00 |
| | 11-Jul-2016 | Shepard - Dinner (1) after landing in NYC 05/13/2016 / AMEX | 8.16 |
| | | Subtotal: | 78.16 |
| | | CLOSING BALANCE as of  31-Jul-2016 | 1,088.98 |

16-10992-dsj   Doc 4673   Filed 02/27/18   Entered 02/27/18 17:16:10   Main Document   Pg 43 of 50

# LAZARD

## DEAL OPEN ITEMS BY CATEGORY

### ALL EXPENSES

### NYC05966 - OFFICIAL COMMITTEE OF UNSECURE

Currency: USD - US Dollar

| EXPENSE TYPE | TRANS DATE | DESCRIPTION | BALANCE |
|---|---|---|---|
| OPENING BALANCE | 01-Jan-1900 | | 0.00 |
| **Car Services and Taxis** | | | |
| | 03-Aug-2016 | Mir-Taxi from MDConf to Mtg in NYC 06/14/2016 / AMEX | 30.36 |
| | 04-Aug-2016 | Quaintance-Car-from 30 Rock to Weil mtg 07/07/2016 / AMEX | 15.44 |
| | 22-Aug-2016 | Ziman-Car-to sune mtg from 30 Rock 06/14/2016 / Cash | 25.30 |
| | | Subtotal: | 71.10 |
| **Employee Meals** | | | |
| | 03-Aug-2016 | Quaintance-M 09-JUN-2016 Angelo's Pizza  Time: 20:13 / GRUBHUB HOLDINGS INC | 26.25 |
| | 03-Aug-2016 | Quaintance-M 14-JUN-2016 Naya Express (56  Time: 19:23 / GRUBHUB HOLDINGS INC | 26.25 |
| | 03-Aug-2016 | Quaintance-M 13-JUN-2016 Naya Express (56  Time: 19:11 / GRUBHUB HOLDINGS INC | 26.25 |
| | 03-Aug-2016 | Quaintance-M 08-JUN-2016 Schnippers Quali  Time: 21:05 / GRUBHUB HOLDINGS INC | 26.24 |
| | 03-Aug-2016 | Shepard-M 15-JUN-2016 Ravagh  Time: 17:36 / GRUBHUB HOLDINGS INC | 26.24 |
| | 03-Aug-2016 | Shepard-M 07-JUN-2016 Mangia  Time: 19:34 / GRUBHUB HOLDINGS INC | 26.08 |
| | 03-Aug-2016 | Shepard-M 14-JUN-2016 A Asosan Sushi  Time: 17:41 / GRUBHUB HOLDINGS INC | 25.95 |
| | 03-Aug-2016 | Quaintance-M 11-JUN-2016 Philly Cheese St  Time: 14:01 / GRUBHUB HOLDINGS INC | 15.53 |
| | 19-Aug-2016 | Quaintance-M 12-JUL-2016 Naya Express (56  Time: 19:40 / GRUBHUB HOLDINGS INC | 26.25 |
| | 19-Aug-2016 | Quaintance-M 30-JUN-2016 Toloache (W 50th  Time: 19:21 / GRUBHUB HOLDINGS INC | 26.25 |
| | 19-Aug-2016 | Quaintance-M 13-JUL-2016 Hummus Kitchen  Time: 20:30 / GRUBHUB HOLDINGS INC | 25.74 |
| | 19-Aug-2016 | Quaintance-M 25-JUN-2016 Sarge's Delicate  Time: 16:48 / GRUBHUB HOLDINGS INC | 15.75 |
| | | Subtotal: | 292.78 |
| **Temporary Wages** | | | |
| | 14-Jun-2016 | Morton-Word processing job charges / CHARTWELL STAFFING SOLUTIONS | 17.57 |
| | | Subtotal: | 17.57 |
| | | **CLOSING BALANCE as of 31-Aug-2016** | **381.45** |

16-10992-dsj    Doc 4673    Filed 02/27/18    Entered 02/27/18 17:16:10    Main Document    Pg 44 of 50

# LAZARD

## DEAL OPEN ITEMS BY CATEGORY

### ALL EXPENSES

### NYC05966 - OFFICIAL COMMITTEE OF UNSECURE

**Currency: USD - US Dollar**

| EXPENSE TYPE | TRANS DATE | DESCRIPTION | | BALANCE | STATUS |
|---|---|---|---|---|---|
| **OPENING BALANCE** | 01-Jan-1900 | | | 0.00 | |
| | | | | | |
| **Car Services and Taxis** | | | | | |
| | 26-Sep-2016 | Ziman-Car-from office to SUNE mtg 09/13/2016 / AMEX | | 10.70 | R |
| | 08-Jun-2016 | Quaintance-Car to home late night 04/27/2016 Time: 22:34 / AMEX | | 41.68 | R |
| | 08-Jun-2016 | Quaintance-Car home after 12am(4/26) 04/27/2016 Time: 03:10 / AMEX | | 26.08 | R |
| | 08-Jun-2016 | Quaintance-Car home after 12am(4/28) 04/29/2016 Time: 02:13 / AMEX | | 25.59 | R |
| | 08-Jun-2016 | Quaintance-Car to home late night 04/13/2016 Time: 23:12 / AMEX | | 24.94 | R |
| | 08-Jun-2016 | Quaintance-Car to home late night 04/20/2016 Time: 22:57 / AMEX | | 23.87 | R |
| | 08-Jun-2016 | Quaintance-Car to home late night 04/22/2016 Time: 23:01 / AMEX | | 23.85 | R |
| | 08-Jun-2016 | Quaintance-Car to home late night 04/26/2016 Time: 23:02 / AMEX | | 23.12 | R |
| | 08-Jun-2016 | Quaintance-Car home after 12am(4/19) 04/20/2016 Time: 00:31 / AMEX | | 22.74 | R |
| | 08-Jun-2016 | Quaintance-Car home after 12am(4/14) 04/15/2016 Time: 02:09 / AMEX | | 20.27 | R |
| | 26-Sep-2016 | Aven-NYBLACKCAR 8/29MonLateO-H10:15 08/29/2016 Time: 22:15 / AMEX | | 31.19 | R |
| | 26-Sep-2016 | Aven-JUNOcar9/6TueLateO-H23:19 09/06/2016 Time: 23:19 / AMEX | | 19.03 | R |
| | 26-Sep-2016 | Aven-JUNOcar9/12MonLateO-H23:53 09/12/2016 Time: 23:53 / AMEX | | 18.96 | R |
| | 26-Sep-2016 | Aven-CAB 9/8ThurBackToOffice00:45 09/08/2016 Time: 00:45 / AMEX | | 16.56 | R |
| | | | Subtotal: | 328.58 | |
| **Employee Meals** | | | | | |
| | 27-Sep-2016 | Quaintance-M 02-AUG-2016 Abaya Thai (form Time: 21:13 / GRUBHUB HOLDINGS INC | | 26.25 | R |
| | 27-Sep-2016 | Quaintance-M 18-JUL-2016 Aki Sushi Time: 21:07 / GRUBHUB HOLDINGS INC | | 26.21 | R |
| | | | Subtotal: | 52.46 | |
| | | **CLOSING BALANCE as of 30-Sep-2016** | | **381.04** | |

16-10992-dsj   Doc 4673   Filed 02/27/18   Entered 02/27/18 17:16:10   Main Document   Pg 45 of 50

# LAZARD

## DEAL OPEN ITEMS BY CATEGORY

### ALL EXPENSES

### NYC05966 - OFFICIAL COMMITTEE OF UNSECURE

Currency: USD - US Dollar

| EXPENSE TYPE | TRANS DATE | DESCRIPTION | | BALANCE |
|---|---|---|---|---|
| **OPENING BALANCE** | 01-Jan-1900 | | | **0.00** |
| | | | | |
| **Car Service & Taxis** | | | | |
| | 29-Nov-2016 | Aven-Cab11/3ThurLateO-H22:08 11/03/2016 Time: 22:08 / AMEX | | 39.47 |
| | 29-Nov-2016 | Aven-Cab10/13 ThursLate O-H22:42 10/13/2016 Time: 22:42 / AMEX | | 23.08 |
| | | | Subtotal: | 62.55 |
| **Employee Meals** | | | | |
| | 11-Oct-2016 | Quaintance-M 15-AUG-2016 Naya Express  Time: 19:09 / GRUBHUB HOLDINGS INC | | 26.24 |
| | 25-Nov-2016 | Quaintance-M 29-AUG-2016 Naya Express  Time: 19:58 / GRUBHUB HOLDINGS INC | | 26.24 |
| | 25-Nov-2016 | Quaintance-M 30-AUG-2016 Haru Times Squar  Time: 19:09 / GRUBHUB HOLDINGS INC | | 26.22 |
| | | | Subtotal: | 78.70 |
| | | **CLOSING BALANCE as of  30-Nov-2016** | | **141.25** |

16-10992-dsj   Doc 4673   Filed 02/27/18   Entered 02/27/18 17:16:10   Main Document
Pg 46 of 50

# LAZARD

## DEAL OPEN ITEMS BY CATEGORY

### ALL EXPENSES

### NYC05966 - OFFICIAL COMMITTEE OF UNSECURE

**Currency: USD - US Dollar**

| EXPENSE TYPE | TRANS DATE | DESCRIPTION | BALANCE | STATUS |
|---|---|---|---|---|
| **OPENING BALANCE** | 01-Jan-1900 | | **0.00** | |
| **Car Services and Taxis** | | | | |
| | 01-Feb-2017 | Quaintance-Car: from mtg back to office 01/03/2017 / AMEX | 15.85 | R |
| | 03-Feb-2017 | Ziman-Car: from Sune mtg to home 01/05/2017 / AMEX | 14.20 | R |
| | 31-Jan-2017 | Yook-UBER   *US JAN05 D34 HELP.UBER 01/06/2017 Time: 10:25 / AMEX | 39.25 | R |
| | 01-Feb-2017 | Quaintance-Car-from work to home 12/14/2016 Time: 22:24 / AMEX | 36.05 | R |
| | 01-Feb-2017 | Aven-JUNO car1/6FriLateO-H 10:07pm 01/06/2017 Time: 22:07 / AMEX | 33.86 | R |
| | 01-Feb-2017 | Aven-JUNO car1/3TueLateO-H 11:24pm 01/03/2017 Time: 23:24 / AMEX | 33.35 | R |
| | 01-Feb-2017 | Quaintance-Car from work to home 01/12/2017 Time: 22:02 / AMEX | 24.65 | R |
| | 01-Feb-2017 | Quaintance-Car-from work to home 01/04/2017 Time: 23:21 / AMEX | 23.74 | R |
| | 01-Feb-2017 | Quaintance-Car from work to home 01/11/2017 Time: 23:29 / AMEX | 23.31 | R |
| | 01-Feb-2017 | Quaintance-Car from work to home 01/13/2017 Time: 22:20 / AMEX | 23.12 | R |
| | 01-Feb-2017 | Quaintance-Car home after 12 am(1/9) 01/10/2017 Time: 01:43 / AMEX | 21.95 | R |
| | 01-Feb-2017 | Quaintance-Car to home from work-H 01/03/2017 Time: 12:13 / AMEX | 15.18 | R |
| | | Subtotal: | 304.51 | |
| **Travel** | | | | |
| | 24-Feb-2017 | Quaintance-Internet on plane 01/22/2017 / AMEX | 29.17 | R |
| | 24-Feb-2017 | Quaintance-Internet on plane 01/20/2017 / AMEX | 26.95 | R |
| | | Subtotal: | 56.12 | |
| | | **CLOSING BALANCE as of 28-Feb-2017** | **360.63** | |

16-10992-dsj    Doc 4673    Filed 02/27/18    Entered 02/27/18 17:16:10    Main Document    Pg 47 of 50

# LAZARD

## DEAL OPEN ITEMS BY CATEGORY

### ALL EXPENSES

### NYC05966 - OFFICIAL COMMITTEE OF UNSECURE

Currency: USD - US Dollar

| EXPENSE TYPE | TRANS DATE | DESCRIPTION | BALANCE [1] |
|---|---|---|---|
| OPENING BALANCE | 01-Jan-1900 | | 0.00 |
| **Car Service & Taxis** | | | |
| | 06-Mar-2017 | Yook-UBER *US JAN17 VVN HELP.UBER 01/18/2017 Time: 22:07 / AMEX | 39.58 |
| | 21-Mar-2017 | Aven-JUNOcar1/18WedLate O-H 10:54pm 01/18/2017 Time: 22:54 / AMEX | 38.38 |
| | 21-Mar-2017 | Aven-JUNOcar 2/9ThurLateO-H10:19pm 02/09/2017 Time: 22:19 / AMEX | 36.98 |
| | 21-Mar-2017 | Aven-JUNOcar 1/19ThurLateO-H10:39p 01/19/2017 Time: 22:39 / AMEX | 36.12 |
| | 04-Apr-2017 | Aven-JUNOcar2/23ThurLateO-H10:43pm 02/23/2017 Time: 22:43 / AMEX | 41.37 |
| | 04-Apr-2017 | Aven-JUNOcar2/14 TuesLateO-H10:38pm 02/14/2017 Time: 22:38 / AMEX | 40.78 |
| | 04-Apr-2017 | Aven-JUNOcar2/15WedLateO-H 10:07pm 02/15/2017 Time: 22:07 / AMEX | 39.46 |
| | 04-Apr-2017 | Aven-JUNO2/23Overnite2/22O-H12:18am 02/22/2017 Time: 00:18 / AMEX | 39.01 |
| | 27-Apr-2017 | Quaintance-Car to home from work 03/28/2017 Time: 22:27 / AMEX | 23.13 |
| | | Subtotal: | 334.81 |
| **Employee Meals** | | | |
| | 15-Mar-2017 | Quaintance-M 11-JAN-2017 Toloache (W 50th Time: 20:59 / GRUBHUB HOLDINGS INC | 26.25 |
| | 15-Mar-2017 | Quaintance-M 09-JAN-2017 Hummus & Pita Co Time: 21:00 / GRUBHUB HOLDINGS INC | 26.25 |
| | 15-Mar-2017 | Quaintance-M 03-JAN-2017 F.I.S.H. Poke Ba Time: 20:34 / GRUBHUB HOLDINGS INC | 23.93 |
| | 21-Mar-2017 | Quaintance-M 07-FEB-2017 Bill's Bar & Bur Time: 19:37 / GRUBHUB HOLDINGS INC | 26.25 |
| | 21-Mar-2017 | Quaintance-M 06-FEB-2017 Bareburger (E 52 Time: 20:02 / GRUBHUB HOLDINGS INC | 26.25 |
| | 21-Mar-2017 | Quaintance-M 24-JAN-2017 Naya Express Time: 19:20 / GRUBHUB HOLDINGS INC | 26.25 |
| | 21-Mar-2017 | Quaintance-M 18-JAN-2017 Naya Express Time: 19:49 / GRUBHUB HOLDINGS INC | 26.25 |
| | 21-Mar-2017 | Quaintance-M 01-FEB-2017 Toloache (W 50th Time: 19:54 / GRUBHUB HOLDINGS INC | 26.17 |
| | 28-Apr-2017 | Quaintance-M 10-MAR-2017 Pulse Time: 19:53 / GRUBHUB HOLDINGS INC | 26.15 |
| | 28-Apr-2017 | Quaintance-M 06-MAR-2017 Pulse Time: 20:27 / GRUBHUB HOLDINGS INC | 25.89 |
| | 28-Apr-2017 | Quaintance-M 02-MAR-2017 Pulse Time: 20:15 / GRUBHUB HOLDINGS INC | 25.70 |
| | | Subtotal: | 285.34 |
| | | **CLOSING BALANCE as of 30-Apr-2017** | **620.15** |

16-10992-dsj   Doc 4673   Filed 02/27/18   Entered 02/27/18 17:16:10   Main Document   Pg 48 of 50

# LAZARD

## DEAL OPEN ITEMS BY CATEGORY

### ALL EXPENSES

### NYC05966 - OFFICIAL COMMITTEE OF UNSECURE

Currency: USD - US Dollar

| EXPENSE TYPE | TRANS DATE | DESCRIPTION | | BALANCE |
|---|---|---|---|---|
| OPENING BALANCE | 01-Jan-2014 | | | 0.00 |
| Car Services and Taxis | | | | |
| | 25-May-2017 | Quaintance-Car-from home to court/poughke 05/09/2017 / AMEX | | 370.06 |
| | | | Subtotal: | 370.06 |
| Employee Meals | | | | |
| | 19-May-2017 | Quaintance-M 06-APR-2017 Roast Kitchen (M  Time: 19:40 / GRUBHUB HOLDINGS INC | | 26.12 |
| | 19-May-2017 | Quaintance-M 27-MAR-2017 Cafe Duke  Time: 20:25 / GRUBHUB HOLDINGS INC | | 26.10 |
| | | | Subtotal: | 52.22 |
| Taxis for late working | | | | |
| | 19-May-2017 | Aven-JUNO3/15Wed.LateO-H11:40pm 03/15/2017 Time: 23:40 / AMEX | | 48.21 |
| | 19-May-2017 | Aven-JUNO3/16ThurLateO-H10:12pm 03/16/2017 Time: 22:12 / AMEX | | 32.28 |
| | 19-May-2017 | Aven-JUNO3/22WedLateO-H11:27pm 03/22/2017 Time: 23:27 / AMEX | | 27.75 |
| | 25-May-2017 | Quaintance-Car to home from work 03/08/2017 Time: 22:01 / Cash | | 17.80 |
| | | | Subtotal: | 126.04 |
| | | CLOSING BALANCE as of  31-May-2017 | | 548.32 |

16-10992-dsj   Doc 4673   Filed 02/27/18   Entered 02/27/18 17:16:10   Main Document   Pg 49 of 50

# LAZARD

## DEAL OPEN ITEMS BY CATEGORY

### ALL EXPENSES

### NYC05966 - OFFICIAL COMMITTEE OF UNSECURE

Currency: USD - US Dollar

| EXPENSE TYPE | TRANS DATE | DESCRIPTION | BALANCE |
|---|---|---|---|
| **OPENING BALANCE** | 01-Jan-2014 | | **0.00** |
| | | | |
| **Employee Meals** | | | |
| | 23-Jun-2017 | Quaintance-M 04-MAY-2017 Naya Express  Time: 20:33 / GRUBHUB HOLDINGS INC | 26.24 |
| | 23-Jun-2017 | Quaintance-M 09-MAY-2017 #Mightybols - Hu  Time: 20:05 / GRUBHUB HOLDINGS INC | 26.23 |
| | 23-Jun-2017 | Quaintance-M 01-MAY-2017 Cafe Duke  Time: 19:08 / GRUBHUB HOLDINGS INC | 26.22 |
| | | Subtotal: | 78.69 |
| | | **CLOSING BALANCE as of  31-Jul-2017** | **78.69** |

16-10992-dsj    Doc 4673    Filed 02/27/18    Entered 02/27/18 17:16:10    Main Document    Pg 50 of 50